UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s.,<br><br>       Plaintiff,<br><br>v.<br><br>ANDREW WEISS and WEISS ASSET MANAGEMENT, LLC,<br><br>       Defendants.<br><br>ANDREW WEISS, WEISS ASSET MANAGEMENT LLC, K T, INC. and CVF INVESTMENTS, LTD.,<br><br>       Counterclaim-plaintiffs,<br><br>v.<br><br>KOTVA a.s., MARTIN BENDA, RICHARD HARAZIM, FORMINSTER ENTERPRISES, LTD., SPV CO and JOHN DOES 1–5,<br><br>       Counterclaim-defendants. | C.A. No. 05-10679-RCL |

**COUNTERCLAIM PLAINTIFFS' OPPOSITION TO KOTVA'S MOTION TO DISMISS**

Counterclaim-plaintiffs Andrew Weiss ("Weiss"), Weiss Asset Management LLC ("WAM"), K T, Inc. ("K T") and CVF Investments Ltd. ("CVF") hereby submit their Opposition to counterclaim-defendant Kotva a.s.'s Motion to Dismiss.

**I.    SUMMARY OF THE FACTS**

The facts as the Court must view them for the purposes of Kotva's motion to dismiss are set forth in detail in the Counterclaim. To summarize, this case arises out of a conflict in Massachusetts, the Czech Republic and Cyprus. At issue is the counterclaim-defendants'

conspiracy to misuse their control over Kotva to freeze out Kotva's minority shareholders and harm the minority shareholder's representatives. In furtherance of this conspiracy, the counterclaim-defendants have committed a series of unlawful acts.

On one side of this case are the counterclaim-plaintiffs. Counterclaim-plaintiffs K T and CVF are minority shareholders of the plaintiff, Kotva, and shareholders in a Czech investment fund called the Trend fund ("Trend"). Counterclaim-plaintiff Weiss is a professor of economics at Boston University and the President of Weiss Capital LLC. Weiss Capital is responsible for managing CVF's and K T's investments. *See* Counterclaim ¶ 16.

On the other side is the Forminster Group. Kotva is presently a corporate shell and alter ego of the Forminster Group, which is able to exercise its control over Kotva as a result of a massive theft of Kotva shares and other assets from Trend. *Id.* ¶¶ 42–50, 52. In late 2003, representatives of the Forminster Group approached a representative of Weiss Capital and offered to purchase CVF's shares in Kotva, but at a price far below what the shares were worth. *Id.* ¶ 21. Negotiations between the Forminster Group and Weiss Capital continued through 2004. *Id.* ¶¶ 26–32. In May 2004, the Forminster Group, through its representatives, Martin Benda and Richard Harazim, boldly informed Weiss that they would use their control over Kotva to seize Kotva's only valuable asset, a department store in downtown Prague (the "Department Store"), and convert it for the Forminster Group's own benefit, leaving CVF's investment in Kotva worthless. *Id.* ¶ 24. Weiss took steps to protect his investors, including authorizing lawsuits in the Czech courts. *Id.* ¶¶ 33–34.

While continuing to negotiate with Weiss Capital over a purchase price for the Kotva shares and, later, shares in Trend as well, the Forminster Group was also secretly moving to gain leverage over Weiss as a representative of the minority shareholders. *Id.* ¶¶ 26–32. Thinking

that increased pressure on Weiss would eliminate him as an obstacle to its unlawful acts, the Forminster Group—through Kotva—initiated sham criminal charges against Weiss in the Czech Republic and then filed this lawsuit against Weiss and WAM[1] in Boston.  *Id.* ¶¶ 33–34, 38–40.  True to its word, the Forminster Group also followed through on its threat to strip Kotva of the Department Store.  It moved the Department Store through a series of shell companies and then sold it for approximately $70 million.  *Id.* ¶¶ 53–58.  Rather than distribute the sale proceeds proportionally among Kotva's shareholders, the Forminster Group keeps the money for itself in an offshore company in Cyprus.  *Id.* ¶¶ 59–60.

The wholesale looting of a company is nothing new for the Forminster Group.  In fact, it gained control of Kotva as a result of one of the most notorious scandals in the post-Communist Czech Republic, known as the Trend Scandal or Trend Tunneling.  *Id.* ¶¶ 42–50.  The Czech press adopted the word "tunneling" to describe the process by which a company's management embezzles the company's assets and moves them through a series of intermediaries until the intended recipients of the assets are able to liquidate the assets and abscond with the loot.  Most of the shares of Kotva that the Forminster Group controls were embezzled from Trend.  *Id.*

## II.     SUMMARY OF THE CLAIMS

The counterclaim consists of three groups of claims.[2]

First, Weiss and WAM have asserted claims arising out of the Forminster Group's efforts to use the Czech and United States legal systems to intimidate Weiss and coerce him into abandoning his investor's claims in the Czech litigation and capitulating to the Forminster

---

[1] Weiss is also the President and Chief Investment Officer of Weiss Asset Management.  It is Weiss Capital, however, that has formal responsibility for CVF's investments.

[2] Exhibit 1 to the Counterclaim is a chart illustrating, for each count of the counterclaim, which counterclaim-plaintiffs are asserting the claim and which counterclaim-defendants are named for that particular count.

3

Group's freeze-out of Kotva's minority shareholders. These efforts constitute an abuse of process (Count I), civil conspiracy (Count II) and unfair and deceptive trade practices (Count VII).

Second, K T and CVF have asserted claims arising out of the same series of events—the Forminster Group's efforts to purchase their shares in Kotva and freeze out the minority shareholders by converting the Department Store for its own benefit. The Forminster Group's freeze-out has directly injured K T and CVF, entitling K T and CVF to damages for civil conspiracy (Count II), conversion of the proceeds of the sale of the Department Store (Count III), unjust enrichment (Count IV), abuse of control of Kotva and breach of fiduciary duty to Kotva's shareholders (Count V) and unfair and deceptive trade practices (Count VII). K T and CVF also seek a constructive trust (Count VI) and declaratory relief (Count VIII) to protect their rights.

Third, K T and CVF seek declaratory relief arising out of the Trend Tunneling (Count VIII). More specifically, K T and CVF contend that Forminster is not the rightful owner of the Kotva shares that it currently controls because, as explained in the Counterclaim, those shares are stolen property to which Forminster has no good legal title.

As an afterthought in its Motion to Dismiss, Kotva suggests that K T and CVF were not properly joined as parties because they did not file motions to intervene. Kotva asks the Court to strike their claims. Kotva's argument misinterprets the Federal Rules of Civil Procedure to create technical procedural requirements when none exist in derogation of the rule that "[t]hey shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." FED. R. CIV. P. 1. Weiss and WAM—who were already parties—properly joined K T and CVF pursuant to Fed. R. Civ. P. 13 and 20. Rule 13(h) expressly provides that "[p]ersons other than those made parties to the original action may be made parties to a

4

counterclaim or cross-claim in accordance with the provisions of Rules 19 and 20." Rule 20(a) provides for liberal joinder of parties. Thus, defendants who file a counterclaim with their responsive pleading have "the right to join additional parties to the counterclaim or cross-claim without leave of court." 4 MOORE'S FEDERAL PRACTICE § 20.02[2][b][ii], at 20-18 (3d ed. 2005). In this case, Weiss and WAM joined K T and CVF as counterclaim-plaintiffs in their Answer and Counterclaim and Kotva cannot object to this use of Rule 20 any more than a defendant could object to being sued by multiple plaintiffs who it injured in "the same transaction, occurrence, or series of transactions or occurrences." FED. R. CIV. P. 20(a).

### III.    COUNTERCLAIM-PLAINTIFFS WEISS AND WAM STATE A CLAIM FOR ABUSE OF PROCESS (COUNT I)

The Court is familiar with the standard governing a motion to dismiss. Federal Rules of Civil Procedure 8 and 12 establish a notice pleading standard. Thus, the court must "accept as true the well-pleaded factual allegations of the [counterclaim], draw all reasonable inferences therefrom in the [counterclaim-]plaintiff's favor and determine whether the [counterclaim], so read, sets forth facts sufficient to justify recovery on any cognizable theory." *Martin v. Applied Cellular Technology, Inc.*, 284 F.3d 1, 6 (1st Cir. 2002). To prevail, Kotva must demonstrate that "it appears beyond a doubt that the [counterclaim-]plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957).

Applying this standard, Kotva's motion to dismiss Count I, the abuse of process claim, is baseless. Kotva does not dispute that it has used criminal and civil process and that Weiss and WAM have suffered damages as a result. *See* Kotva's Mot. to Dismiss at 14 (listing elements of abuse of process claim). Instead, Kotva argues that its motives in using Czech criminal process and U.S. civil process were not improper motives. Kotva is free to make this argument at trial; for now, the Court must look only at the allegations of the Counterclaim.

5

The Counterclaim describes in some detail the background behind Kotva's decision to pursue criminal charges against Weiss and file a civil suit against Weiss and WAM. Kotva's motive was to increase the Forminster Group's leverage over Weiss and cause him to abandon his efforts in the Czech courts and accept a lower price for his investors' shares in Kotva and Trend. *See* Counterclaim ¶ 34 ("[Kotva's] motive in causing Czech law enforcement to bring the criminal charge was to obtain an unfair advantage over Weiss in its efforts to coerce Weiss to abandon his investors' claims in the Czech courts that were contrary to the Forminster Group's interests (the 'Czech litigation')."); *id.* ¶ 40 ("[Kotva's] bad faith motive in filing this [civil] case was to obtain an additional unfair advantage over Weiss in its efforts to coerce Weiss to abandon his investors' claims in the Czech litigation.").

Filing a criminal charge and a civil suit to gain leverage over another person in a commercial dispute or civil case are textbook examples of the sort of improper motive that will support an abuse of process claim. This Court has repeatedly denied motions to dismiss in analogous circumstances. *See Gouin v. Gouin*, 249 F. Supp. 2d 62, 70–71 (D. Mass. 2003) (denying motion to dismiss abuse of process counterclaim when counterclaim-defendant had initiated multiple civil and criminal actions with motives of "harassment and intimidation" and to force counterclaim-plaintiff to "turn over the kids" in a custody dispute); *Savin Corp. v. Rayne*, C.A. No. 00-11728-PBS, 2001 U.S. Dist. LEXIS 20574, at *3 (D. Mass. Apr. 4, 2001) ("[Allegation that plaintiff was] motivated by a desire to stymie the defendants with expensive litigation and to 'gain an unfair competitive advantage' over the defendants in their commercial ventures . . . is sufficient to state a claim for abuse of process."). This type of abuse of process claim is so common that three of the cases Kotva chose to cite in its motion to dismiss illustrate that it is an abuse of process to file a criminal complaint or a civil suit to coerce someone to settle

6

another civil case. *See White v. Apsley Rubber Co.*, 181 Mass. 339, 341 (1902) (holding that plaintiff had a claim for abuse of process when "the defendant caused the making of the [criminal] complaint and the arrest, and made use of the arrest to compel the plaintiff against his will to abandon a claim to the right to occupy the house and to compel him actually to withdraw from its occupation"); *Am. Velodur Metal, Inc. v. Schinabeck*, 20 Mass. App. Ct. 460, 462, 470 (1985) (upholding abuse of process verdict in favor of counterclaim-plaintiff when husband caused corporation to sue wife to coerce her to settle a divorce action on favorable terms); *Carroll v. Gillespie*, 14 Mass. App. Ct. 12, 17 n.8, 25 (1982) (upholding abuse of process verdict when defendant "sought to use the criminal process to collect a civil debt").

The frivolous nature of Kotva's claims—a § 10(b) case that lacks an allegation that Kotva bought or sold securities of any kind let alone securities traded in the U.S. and a series of counts sounding in fraud that each lack an allegation of reliance—evidence the fact that Kotva has brought its claims in this case solely to exert pressure on Weiss and intimidate him into permitting the Forminster Group to continue their unlawful freeze-out unchallenged. However, the Court need not and should not consider evidence at this stage. The allegations of the Counterclaim are all that matter and they are sufficient to withstand a motion to dismiss.

## IV. THE COUNTERCLAIM-PLAINTIFFS ARE ASSERTING DIRECT CLAIMS AGAINST KOTVA—NOT DERIVATIVE CLAIMS

Kotva argues that Counts II through VIII of the Counterclaim should be dismissed because the counterclaim-plaintiffs have "failed" to comply with the requirements of Federal Rule of Civil Procedure 23.1. However, this so-called "failure" is meaningless. Rule 23.1 governs derivative actions only and none of the counterclaim-plaintiffs are asserting derivative claims.

### A.    Weiss and WAM are Asserting Direct Claims

Weiss and WAM are not Kotva shareholders.  Rather, they are asserting direct claims for damages they suffered as a result of the Forminster Group's abuse of process (Count I), conspiracy (Count II) and unfair and deceptive trade practices (Count VII).  Rule 23.1 is inapplicable to them.

### B.    K T and CVF are Asserting Direct Claims

It is axiomatic that K T's and CVF's claims against Kotva are direct and not derivative.  A derivative claim is a claim brought by shareholders *on behalf of* a corporation.  K T and CVF's claims against Kotva (Counts II, VI, VII and VIII) are claims brought by shareholders *against* the corporation.  In addition to their claims against Kotva, K T and CVF have also asserted claims for conversion (Count III), unjust enrichment (Count IV), and breach of fiduciary duty/abuse of control (Count V) against other members of the Forminster Group.  Kotva suggests that K T's and CVF's claims against the other members of the Forminster Group are derivative claims as well.  They are not.  Moreover, this argument is premature as the other members of the Forminster Group have yet to appear in this case, let alone join in Kotva's Motion to Dismiss.  Rather, these parties have not responded to requests to waive service and the counterclaim-plaintiffs are in the process of serving them in accordance with the Hague Convention.  Accordingly, K T and CVF do not now address those claims where Kotva is not a named defendant.

As an initial matter, Czech law rather than U.S. law governs K T's and CVF's claims relating to the corporate governance of Kotva.  *See Harrison v. NetCentric Corp.*, 433 Mass. 465, 471 (2001) ("[T]he State of incorporation dictates the choice of law regarding the internal affairs of a corporation.").  Federal Rule of Civil Procedure 44.1 allows "[t]he court, in

8

determining foreign law, [to] consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."

Kotva attempts to establish Czech law by attaching translations of selected Czech statutes to its motion to dismiss. However, the bare submission of statutes is insufficient for Kotva to meet its burden of establishing "beyond a doubt that the [counterclaim-]plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957).[3] In any event, neither of the statutes Kotva cites even attempt to explain what kinds of claims are direct and what kinds of claims are derivative. Rather, section 181 sets forth the procedures for calling an extraordinary general meeting. Section 182 sets forth procedures that certain shareholders may follow to gain consideration of claims belonging to the corporation against particular defendants: members of the board of directors and other shareholders who have not paid the issue price. Kotva cites no Czech cases that purport to explain either statute or the differences between direct claims and derivative claims under Czech law.[4] Nor do the statutes themselves suggest that they provide the exclusive remedy for a shareholder who is injured.

Contrary to Kotva's wholly unsubstantiated argument, Czech law recognizes that shareholders have a direct cause of action for the sort of damages that K T and CVF have

---

[3] Although Rule 44.1 provides that "[t]he court's determination [of foreign law] shall be treated as a ruling on a question of law," it is a question of law that is perhaps uniquely inappropriate to resolve on a motion to dismiss. Determining foreign law is a difficult task that may be significantly easier were the Court to perform it in the context of a fully-developed summary judgment record that would include, among other things, affidavits of experts in the field of Czech law. *Cf. Lalonde v. Textron*, 369 F.3d 1, 6 (1st Cir. 2004) ("Under the circumstances, further record development—and particularly input from those with expertise in the arcane area of the law where ERISA's ESOP provisions intersect with its fiduciary duty requirements—seems to us essential to a reasoned elaboration of that which constitutes a breach of fiduciary duty in this context.").

[4] The U.S. cases Kotva cites do not offer a complete picture of U.S. law. Rather, "there is some authority that a minority shareholder may maintain an individual action for breach of a fiduciary duty owing by the majority or controlling shareholders to the minority, even though the minority only suffers an injury in common with the other minority shareholders." 12B FLETCHER CYC CORP § 5924, at 503 (Perm Ed.).

suffered. As a general matter, Czech law recognizes that any party who is injured by a violation of law may seek redress. In the context of a joint stock company like Kotva, this general rule is explicitly supplemented to expand liability to those persons who influence Kotva's officers, directors or supervisory board members to act to the detriment of Kotva's shareholders. Section 66c of the Czech Commercial Code provides that: "Anybody who by means of his influence in a company makes a person who is such company's statutory organ or a member of such, or a member of the company's supervisory organ, its procurator or another authorized person to act to the detriment of the company or to the detriment of the company's members (shareholders) shall be liable to compensate the damage which was caused by such conduct."

As discussed above, K T's and CVF's claims in which Kotva is a named defendant fall into two categories. The first group of claims are claims for conspiracy (Count II), constructive trust (Count VI), unfair and deceptive trade practices (Count VII) and declaratory judgment (VIII) relating to the Forminster Group's conversion of the proceeds of the sale of the Department Store for their own benefit. The other claim is K T's and CVF's request for declaratory relief relating to the Forminster Group's continued wrongful exercise of control over the majority of Kotva shares (Count VIII).

    1.    <u>Claims Relating to the Freeze-Out of Kotva's Minority Shareholders</u>

With respect to this first group of claims, K T and CVF have suffered direct harm as shareholders in Kotva and are entitled to relief. The Forminster Group, through its control over a majority of Kotva's shares and by direct contact with Weiss, is engaging in a freeze-out of the minority shareholders including K T and CVF. The Forminster Group approached Weiss in an attempt to purchase CVF's Kotva shares. When CVF—through Weiss—refused to be bought out on the cheap, the Forminster Group escalated its efforts to freeze out the minority shareholders. Rather than play within the rules, the Forminster Group instead abused civil and

criminal process in an attempt to intimidate Weiss and abused their control over Kotva so as to take the value of the Department Store for their own benefit. This freeze-out harms K T and CVF directly.

That a shareholder is entitled under Czech law to seek relief directly rather than through the corporation is further evidenced by K T's pending litigation in the Czech Republic in which it seeks a declaration that Kotva, rather than one of Forminster Group's shell companies, has legal title to the Department Store. The Czech court has not dismissed or discontinued that case or otherwise rejected K T's claims, and for good reason. K T's standing to bring that petition is well-settled under decisions of the Czech Supreme Court holding that a shareholder has the right to file a petition for declaratory judgment with respect to significant transactions made by the corporation.

          2.      <u>Claim for Declaratory Judgment Relating to the Trend Tunneling</u>

With respect to K T's and CVF's request that the Court declare that the Forminster Group does not own the shares of Kotva over which it exercises control, this claim directly implicates K T's and CVF's rights as shareholders in Kotva. The Forminster Group is voting its Kotva shares despite the fact that it lacks good legal title to those shares. Every time that the Forminster Group casts a vote, it overwhelms the voting power of the other Kotva shareholders who purchased their shares legally. Shareholders have a right to cast their votes in such a way that those votes matter and the Forminster Group's use of their unlawful control over a majority of Kotva shares has effectively stripped K T and CVF of this fundamental shareholder right. Accordingly, this is a classic case of a shareholder suffering a direct injury to its rights as a shareholder.

As with the dispute over the title to the Department Store, K T is involved in a parallel case in the Czech Republic disputing the Forminster Group's title to the Kotva shares it controls

11

and seeking a declaration that Trend is the true owner of those shares. The Czech court has not dismissed or discontinued that case or otherwise rejected K T's claim on the grounds that it cannot assert its claim directly.[5]

## V. THE COUNTERCLAIM-PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

### A. The Majority of the Counterclaim-Plaintiffs' Claims Are Not Based on the Trend Tunneling

Almost all of the counterclaim-plaintiffs' claims for relief relate to the freeze-out of Kotva's minority shareholders and the Forminster Group's abuse of process. These claims are based on events that occurred and damages that were suffered well within the statute of limitations. Kotva argues that these claims are "premised on the alleged embezzlement by Forminster of Trend's shares in Kotva, which occurred in the mid-1990s." Kotva's Mot. to Dismiss at 9 (internal punctuation omitted). This is incorrect. The counterclaim-plaintiffs are entitled to relief for the Forminster Group's freeze-out and abuse of process that continues to this day regardless of how the Forminster Group gained control over Kotva. Had the Trend Tunneling never happened and the Forminster Group was instead the rightful owner of the Kotva shares it controls, its recent abuse of that control in the sale of the Department Store would still give rise to liability to K T and CVF. Likewise, the claims of Weiss and WAM are not based on the Trend Tunneling.

The Counterclaim includes allegations relating to the Trend Tunneling because the facts underlying the Trend Tunneling form the basis for part of the declaratory relief that the

---

[5] U.S. law also recognizes that this sort of claim is direct and not derivative. 12B FLETCHER CYC CORP § 5915, at 472–75 ( ("Actions or suits which may be brought by a shareholder as an individual include among others the following . . . . [a]ctions relating to the right to vote at shareholders' meetings . . . . [and actions arising from] [a]cts depriving a shareholder . . . of rights as such, including acts depriving one of the advantage of a majority control, or depriving minority shareholders of their right to vote or to participate in the affairs of the corporation.").

counterclaim-plaintiffs seek. The counterclaim-plaintiffs seek two declarations: (1) a declaration that the shareholders of Kotva are the owners of the proceeds of the sale of the Department Store; and (2) a declaration that "the Forminster Group is not the rightful owner of the shares of Kotva a.s. to which it claims ownership." The first declaration is not based on the Trend Tunneling: the counterclaim-plaintiffs would be entitled to that declaration even if they could not establish that the Trend Tunneling took place. In contrast, the second declaration—that Forminster does not own the shares it presently controls—is based on the Trend Tunneling. However, it is not barred by the applicable statute of limitations.

### B. The Declaratory Judgment Claim Based on the Trend Tunneling is Not Barred by the Statute of Limitations

Under Czech law, a declaratory judgment seeking a declaration as to the ownership of property is not subject to a statute of limitations defense. *See* Czech Civil Code § 100(2) ("All property rights **except for ownership** can become statute-limited.") (emphasis added). Czech law governs the statute of limitations for this request for declaratory relief. As the First Circuit has explained:

> To determine which state's laws apply to a particular case, we employ the choice of law analysis of the forum state. Massachusetts state courts apply "a functional choice of law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole." *Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622, 473 N.E.2d 662, 668 (Mass. 1985); *see also Cosme v. Whitin Mach. Works, Inc.*, 417 Mass. 643, 632 N.E.2d 832, 834 (1994); *Millipore*, 115 F.3d at 30. In doing so, Massachusetts courts consider a variety of factors in choosing the applicable state law, including:
>
> > (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability, and uniformity of result, and (g) ease in the determination and application of the law to be applied.

> *Bushkin Assocs.*, 473 N.E.2d at 669 (quoting RESTATEMENT (SECOND) CONFLICT OF LAWS § 6(1971)). Courts also may take into account five parallel considerations:
>
>> (A) Predictability of results; (B) Maintenance of interstate and international order; (C) Simplification of the judicial task; (D) Advancement of the forum's governmental interests; [and] (E) Application of the better rule of law.
>
> *Id.* (quoting R.A. Leflar, American Conflicts Law § 109 (3d ed. 1977)). Moreover, the Massachusetts Supreme Judicial Court has stated that it "feels free . . . to borrow from any of the various lists to help focus . . . attention on the considerations particularly relevant to the case." *Millipore*, 115 F.3d at 30 (quoting *Bushkin Assocs.*, 473 N.E.2d at 670). *See generally Seney v. Prudential Prop. & Cas. Ins. Co.*, 8 Mass. L. Rep. 179, No. Civ. A. 94-02864A, 1997 WL 83502, at *3–*5 (Mass. Super. Ct. Dec. 23, 1997) (applying Massachusetts functional approach to choice of law issue in the context of statute of limitations).

*Reicher v. Berkshire Life Ins. Co. of Am.*, 360 F.3d 1, 5 (1st Cir. 2004); *see also New England Utils. v. Hydro-Quebec*, 10 F. Supp. 2d 53, 60 (D. Mass. 1998) ("The functional approach applies with equal force to choices of statutes of limitations.").

In view of these factors, this Court should apply the Czech statute of limitations to this aspect of the declaratory judgment count.

Under Czech law, an entity like the Forminster Group that does not acquire good legal title to property cannot gain good legal title by the passage of time unless it acts in good faith. The issue of good faith is not amenable to decision on a motion to dismiss. Accordingly, the Court should deny the motion to dismiss this aspect of the declaratory judgment claim.[6]

---

[6] Kotva also suggests that this claim is somehow barred by a settlement agreement between Trend and Forminster. Even if the Court could properly consider this agreement in deciding a motion to dismiss, Kotva fails to apprise the court of several facts that make the agreement unenforceable. Foremost among them are: (1) neither Kotva nor the counterclaim-plaintiffs were parties to the agreement; and (2) the agreement's attempt to "settle" ownership rights does not comply with Czech law.

VI. **KOTVA'S ARGUMENT THAT THE "CENTER OF GRAVITY" OF THE 93A CLAIMS (COUNT VII) IS OUTSIDE MASSACHUSETTS IS PREMATURE AND THE COURT MAY NOT CONSIDER IT WHEN DECIDING A MOTION TO DISMISS**

Kotva's plea that the Court skip discovery, a trial and findings of fact and instead decide based on the pleadings that the center of gravity of the Chapter 93A claim is outside Massachusetts is contradicted by the very Supreme Judicial Court decision Kotva cites. In *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 438 Mass. 459 (2003), the Supreme Judicial Court gave explicit instructions on how and when a court should decide this issue: "[A] judge should, **after making findings of fact, and after considering those findings in the context of the entire § 11 claim**, determine whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth." *Id.* at 473 (emphasis added). Thus, as Judge van Gestel explains, the plain language of *Kuwaiti* appears to mandate "that this particular ground for challenging a c. 93A claim—absent some extraordinary pleading concession by a claimant—cannot be resolved on a Rule 12 motion." *Young v. Deloitte & Touche, LLP*, No. 04-0807-BLS (Mass. Super. Sept. 20, 2004).[7] No such pleading concession exists in this case. Rather, the counterclaim is replete with allegations tying the counterclaim-defendants' conduct to Massachusetts and Kotva has itself asserted a Chapter 93A claim against Weiss and WAM in its Complaint. *See* Counterclaim ¶¶ 2, 4–6, 27–32, 35–41, 60 (alleging abuse of process in Massachusetts, statements received in Massachusetts and damages suffered in Massachusetts); Complaint ¶¶ 71–76.

---

[7] The counterclaim-plaintiffs acknowledge that Judge Murphy dismissed a Chapter 93A claim on "center of gravity" grounds in *Fillmore v. Leasecomm*, Nos. 2004-0487-H, 86778, 18 Mass. L. Rptr. 560, 2004 WL 3091642 (Mass. Super. Nov. 15, 2004). This case appears to be the only one of its kind and counterclaim-plaintiffs submit that it was wrongly decided in view of the plain language of *Kuwaiti*.

In order to engage in the consideration of the entire claim that the SJC requires, this Court needs to flesh out the skeleton of the pleadings with the evidence of a trial. *See Kuwaiti*, 438 Mass. at 472–73 ("Any determination necessarily will be fact intensive and unique to each case."). The evidence will show that the Chapter 93A claim involves not only the counterclaim-defendants' abuse of process in Massachusetts, but also communications received in Massachusetts and damages suffered in Massachusetts. *See Bushkin Assocs. v. Raytheon Co.*, 393 Mass. 622, 637–39 (1985) (deciding whether actions underlying Chapter 93A claim occurred primarily and substantially in Massachusetts based in part on where statements were received and where loss occurred). Once the Court has received the evidence and made findings of fact, it can consider the entire context of each of the counterclaim-plaintiffs' Chapter 93A claims.

Kotva also challenges the counterclaim-plaintiffs Chapter 93A claims for failure to allege a "loss of money or property." This argument is without merit. Weiss and WAM have lost money or property by incurring expenses as a result of Kotva's abuse of process. As explained above, K T and CVF are asserting direct claims rather than derivative claims and, therefore, meet the "loss of money or property" requirement as well.

## REQUEST FOR ORAL ARGUMENT

The counterclaim-plaintiffs believe that oral argument may assist the court and wish to be heard. Accordingly, pursuant to Local Rule 7.1(d), the counterclaim-plaintiffs hereby request oral argument.

.

        Respectfully Submitted,
ANDREW WEISS, WEISS ASSET
MANAGEMENT LLC, K T, INC. and CVF
INVESTMENTS LTD.

By their attorneys,


 /s/ Benjamin A. Goldberger
Edward P. Leibensperger (BBO# 292620)
Benjamin A. Goldberger (BBO# 654357)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts  02109-1775
(617) 535-4000

Dated: July 25, 2005

BST99 1464639-3.072198.0012

17