UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ANDREW WEISS and WEISS ASSET ) | |
| MANAGEMENT, LLC, ) | |
| ) | |
| Defendants. ) | C.A. No. 05-10679-RCL |
| ) | |
| ANDREW WEISS, WEISS ASSET ) | |
| MANAGEMENT LLC, K T, INC. and CVF ) | |
| INVESTMENTS, LTD., ) | |
| ) | |
| Counterclaim-plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| KOTVA a.s., MARTIN BENDA, RICHARD ) | |
| HARAZIM, FORMINSTER ENTERPRISES, ) | |
| LTD., SPV CO and JOHN DOES 1–5, ) | |
| ) | |
| Counterclaim-defendants. ) | |
| ) | |

## PROOF OF SERVICE

Pursuant to Federal Rule of Civil Procedure 4(*l*), Andrew Weiss, Weiss Asset

Management LLC, K T, Inc., and CVF Investments, Ltd., by and through their attorneys, hereby

submit the attached proof of service.

Respectfully Submitted,

ANDREW WEISS, WEISS ASSET
MANAGEMENT LLC, K T INC. and CVF
INVESTMENTS LTD.

By their attorneys,


/s/ Benjamin A. Goldberger
Edward P. Leibensperger (BBO# 292620)
Benjamin A. Goldberger (BBO# 654357)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts  02109-1775
(617) 535-4000

Dated: October 17, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document, including the attachment, was served via first class mail on counsel for Forminster Enterprises, Ltd. this 17th day of October, 2005.

/s/ Benjamin A. Goldberger
Benjamin A. Goldberger

BST99 1477041-1.072198.0012

# CERTIFICATE
## *ATTESTATION*

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,

*L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention.*

1) **that the document has been served**\*

*1. que la demande a été exécutée*

— **the (date)** __9/9/05__
— *le (date)*
— **at (place, street, number)** __4, Diagorou str. Kermia Building, Office 601,__
— *à (localité, rue numéro)* __Nicosia - CYPRUS__

— **in one of the following methods authorised by article 5—**

—*dans une des formes suivantes prévues à l'article 5:*

☐ **(a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention**\*.

   *a) selon les formes légales (article 5, alinéa premier, lettre a)*

☐ **(b) in accordance with the following particular method**\*:

   *b) selon la forme particulière suivante : ___*

☐ **(c) by delivery to the addressee, who accepted it voluntarily.**\*

   *c) par remise simple*

**The documents referred to in the request have been delivered to:** __Mr Andreas Papasiaulis__

*Les documents mentionnés dans la demande ont été remis à:*
   — **(identity and description of person)** __Person in charge of the office of the__
   — *(identité et qualité de la personne)* __Company "FORMSTER Enterprises LTD"__
   — **relationship to the addressee (family, business or other):** __Business__
   — *liens de parenté, de subordination ou autres, avec le destinataire de l'acte:*

2) **that the document has not been served, by reason of the following facts**\*:

*2. que la demande n'a pas été exécutée, en raison des faits suivants:*

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement.\*

*Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint.*

**Annexes**
*Annexes*
**Documents returned:**
*Pièces renvoyées:*

**Done at** __Nicosia__, **the** __26/9/05__
*Fait à* , *le*

**Signature and/or stamp.**
*Signature et/ou cachet.*

**In appropriate cases, documents establishing the service:**
*Le cas échéant, les documents justificatifs de l'exécution:*
a) Certificate of service (19/9/05)
b) Affidavit of service (12/9/05)
c) Documents returned (2nd copy)

\***Delete if inappropriate.**
*Rayer les mentions inutiles.*

2

S.C. 12.9.06

## CERTIFICATE OF SERVICE OF FOREIGN PROCESS

I, Irene Christodoulou, Acting Assistant Chief Registrar of the Supreme Court of Cyprus, hereby certify that the documents annexed hereto are as follows:

1.    Copies of judicial documents received from U.S.A. dated 28/7/05.

the originals of which were served on         FORMINSTER ENTERPRISES LTD

4 Diagorou Str.

Kermia Building, office 601

NICOSIA

2.    An affidavit of the Bailiff showing that the service of the judicial documents received from the above authority was duly effected on Andreas Papasiantis, person in charge at the office of the above-named company.

And I certify that such service so proved and the proof thereof is such as is required by the Law and practice of the Supreme Court of Cyprus.

Date this the 12th day of September, 2005.

Irene Christodoulou

Acting Assist. Chief Registrar

SUPREME COURT OF CYPRUS

## AFFIDAVIT OF SERVICE

I, Marios Demosthenous Bailiff -Server in the Supreme Court of Cyprus, make

oath and say that the judicial document received from...... U.S.A ..............

.................................................................... have been served to

Forminster Enterprises Ltd ............ at her/his address

4, Diagorou Street, Kermia Building, office 601 ..........

Nicosia, Cyprus ......... on the 09/09/2005 upon Andreas .........

Papasiantis, person in charge of the office of the above-named company

(Sgd.) .. Demosthenous ............. ... ....

Marios Demosthenous

Bailiff

Sworn and signed before me

At the Supreme Court of Cyprus

on the ... 12\9\05 ..........

Registrar

# REQUEST
## FOR SERVICE ABROAD OF JUDICIAL OR EXTRA JUDICIAL DOCUMENTS

*DEMANDE*
*AUX FINS DE SIGNIFICATION OU DE NOTIFICATION A L'ETRANGER*
*D'UN ACTE JUDICIARE OU EXTRAJUDICIAIRE*

Convention on the service abroad of judicial and extrajudicial documents in civil or
commercial matters, signed at The Hague, November 15, 1965

*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile*
*ou commerciale. signée à La Hage. le 15 Novembrè 1965*

| Identity and address of the applicant | Address of receiving authority |
|---|---|
| *Indentité et adresse du requérant* | *Adrese de l'autorité destinataire* |
| L. Celeste Ingalls**<br>Crowe Foreign Services<br>1020 SW Taylor Street, Suite 240<br>Portland, Oregon 97205<br>USA<br><br>Fax Number:  1-503-222-3950 | Permanent Secretary<br>Ministry of Justice and Public Order<br>~~12 Ilioupoleos St.~~ 125, Athalassis Avenue<br>1461 Lefkosia (Nicosia)<br>22805964<br>Tel:+357 ~~22805961~~    Fax: +357 22518349<br>EMail: lazaros.savvides@cytanet.com.cy |

The undersigned applicant has the honour to transmit - in duplicate - the documents listed below and, in conformity with article 5 of the
above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.,
(identity and address)
*Le requérant soussigné a l'honneur de faire parvenir - en double exemplaire - a l'autorité destinataire les documents ci-dessous énumérés*
*en la priant conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au destinataire, savior:*
*(identité et adresse)*

Forminster Enterprises, Ltd.
4 Diagorou Street, Kermia Building, Off. 601
Nicosia, Cyprus

(a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention.*
*a)  selon les formes légales (article 5, alinéa premier, lettre a).*

(b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5)*:
*b)  selon la forme particulière suivante (article 5. alinéa premier, lettre b):*

To be delivered personally to a director, officer, or other individual authorized to accept service for Defendant
Forminster Enterprises, Ltd., or if this method is not possible, serve in accordance with method (a) above.

☐    ~~(c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of article 5)*.~~
~~c)  le cas échéant, par remise simple (article 5, alinéa 2).~~

The authority is requested to return or to have returned to the applicant a copy of the documents - and of the annexes* - with a certificate as
provided ~~on the reverse side~~ (attached).
*Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte - et de ses annexes - avec l'attestation figurant*
*au verso*

List of documents
*Enumération des pièces*

Executed "Request", in duplicate
Executed "Summary", in duplicate
Unexecuted "Certificate", in duplicate
*** Summons, in duplicate
*** First Amended Answer and
Counter-claim, with exhibits, in duplicate

Done at Portland, Oregon, USA, the __28th__ day of __July__, 2005
*Fait à Portland. Oregon. USA, le*
Signature and/or stamp.
*Signature et/ou cachet*

OFFICIAL SEAL
L. CELESTE INGALLS
NOTARY PUBLIC-OREGON
COMMISSION NO. 353683
MY COMMISSION EXPIRES FEB. 5, 2006

L. Celeste Ingalls

\*    Delete if inappropriate
*Rayer les mentions inutiles*

\*\*    Authorized applicant pursuant to Rule 4(c)(2) of the
Federal Rules of Civil Procedure, Public Law 97-462
And Pennsylvania Court Order
\*\*\*    With French translation attached

## SUMMARY OF THE DOCUMENT TO BE SERVED
*ELEMENTS ESSENTIELS DE L'ACTE*                                         ı

Convention on the service abroad of judicial and extrajudicial documents in civil or commercial
matters, signed at The Hague, November 15, 1965

*Convention relative à la signification et à la notification à l'étranger des actes judiciaires et extrajudiciares
en matière civile ou commerciale. signée à La Hage, le 15 Novembre 1965.*

(article 5, fourth paragraph)
*(article 5. alinèa 4)*

Name and address of the requesting authority:       **Celeste Ingalls**
*Nom et adresse de l'autorité requérante:*           **Crowe Foreign Services**
                                                     **1020 SW Taylor Street, Suite 240**
                                                     **Portland, Oregon 97205**

Particulars of the parties*:       Kotva a.s. ................................................................................................... **PLAINTIFF**
*Indentité des parties:*            Andrew Weiss, et al.................................................................................... **DEFENDANTS**
                                    Andrew Weiss, et al................................................................ **COUNTERCLAIM-PLAINTIFFS**
                                    Kotva a.s., et al. .............................................................. **COUNTERCLAIM-DEFENDANTS**

### JUDICIAL DOCUMENT**
*ACTE JUDICIAIRE*

Nature and purpose of the document:
*Nature et objet de l'acte:*                 **To give notice to the Defendant, Forminster Enterprises, Ltd., of the
institution against it of a claim for civil damages and to summon it to answer the claim.**

Nature and purpose of the proceedings, and, where appropriate, the amount in dispute:
*Nature et objet de l' instance. le cas échéant, le montant du litige:*                   _

**First amended civil counterclaim and answer to plaintiff's original claim. Counterclaim-plaintiff answers the
plaintiff's claim and makes counter-claim allegations including, but not limited to, abuse of process, Conspiracy,
Unjust Enrichment, Breach of Fiduciary Duty, Unfair Competition and Unfair and Deceptive Trade Practices and
related actions. Counter-claim plaintiff further alleges that counter-claim defendants' aforementioned actions
have caused counter-claim plaintiff to suffer damages and losses. Counter-claim plaintiff seeks judgment in an
amount to be determined including, but not limited to, declarations of ownership, costs of this suit, attorneys'
fees and costs, order to disgorge proceeds, and such other and further relief as the court deems just and proper.**

Date and place for entering appearance**:        **N/A**
*Date et lieu de la comparution:*

Court which has given judgment**:                **N/A**
*Juridiction qui a rendu la décision:*

Date of judgment**:                              **N/A**
*Date de la décision:*

Time limits stated in the document**:
*Indication des délias figurant dans l'acte:*       **Defendant is required to serve upon Counter-Claimaint's Attorneys an
ANSWER to the Counter-Claim within twenty (20) days after receipt of the Summons and other documents herein.
A copy of the ANSWER must be filed with the court within a reasonable time thereafter.**

### EXTRAJUDICIAL DOCUMENT*
*ACTE EXTRAJUDICIAIRE*

Nature and purpose of the document:             **N/A**
*Nature et objet de l'acte:*

Time limits stated in the document**:           **N/A**
*Indication des délias figurant dans l'acte:*

* If appropriate, identity and address of the person interested in the transmission of the document.
  *S'il y a lieu. identité et adresse de la personne intéressée à la transmission de l acte*

** Delete if inappropriate.
  *Rayer les mentions inutiles*

# ΠΕΡΙΦΕΡΕΙΑΚΟ ΔΙΚΑΣΤΗΡΙΟ ΤΩΝ ΗΝΩΜΕΝΩΝ ΠΟΛΙΤΕΙΩΝ

Περιφέρεια  Μασσαχουσέττης

KOTVA a.s.

**ΚΛΗΤΕΥΣΗ ΣΕ ΥΠΟΘΕΣΗ ΑΣΤΙΚΟΥ ΔΙΚΑΙΟΥ**

ΚΑΤΑ

ANDREW WEISS και
WEISS ASSET MANAGEMENT, LLC     **ΑΡΙΘ. ΥΠΟΘΕΣΗΣ: 05-10679 RCL**

ΠΡΟΣ:

Forminster Enterprises, Ltd.
Οδός Διαγόρου 4
Κτίριον Kermia
Γρ. 601
Λευκωσία
Κύπρος

**ΔΙΑ ΤΗΣ ΠΑΡΟΥΣΗΣ ΚΛΗΤΕΥΕΣΘΕ** και παρακαλείσθε όπως επιδώσετε εις
τους ΔΙΚΗΓΟΡΟΥΣ ΤΩΝ ΑΝΤΑΠΑΙΤΗΤΩΝ

Edward P. Leibensperger
Benjamin A. Goldberger
McDermott Will & Emery LLP
28 State St.
Boston, MA 02109
USA

Τηλ.: 1 + 617-535-4000

απάντηση επί της ανταπαίτησης, η οποία επιδίδεται προς υμάς ενταύθα, εντός *20 ημερών*
από την επίδοση της κλήτευσης προς υμάς, εξαιρουμένης της ημέρας επιδόσεως αυτής.
Εάν δεν πράξετε τα ανωτέρω, θα καταδικασθείτε ερήμην για την αποζημίωση, που
αναφέρεται εις την ανταπαίτηση. Πρέπει επίσης να εγγράψετε την απάντησή σας εις την
Γραμματεία του Δικαστηρίου, εντός λογικού χρονικού διαστήματος μετά την επίδοση.

SARAH H. THORNTON

Γραμματεύς     (Σφραγίδα του Δικαστηρίου)     17 Ιουνίου, 2005
                                                 Ημερομηνία

Matthew A. Paine
Αντιγραμματεύς

1

### ΔΗΛΩΣΗ ΕΠΙΔΟΤΗΡΙΟΥ

Επίδοση της Κλητεύσεως  και αγωγής έγινε από εμένα. ΗΜΕΡΟΜΗΝΙΑ:_____

ΟΝΟΜΑ ΤΟΥ ΕΠΙΔΟΤΟΥ (ΓΡΑΨΤΕ ΚΑΘΑΡΑ)  ΤΙΤΛΟΣ:

Τσεκάρατε με ένα x κάθε ένα από τα παρακάτω, για να δηλώσετε τον ακριβή τρόπο παροχής υπηρεσίας.
Επέδωσα προσωπικώς προς τρίτον εναγόμενον. Τόπος όπου επεδόθη: _____

΄Αφησα αντίτυπα τούτου στην κατοικία του εναγομένου ή στον συνήθη χώρου διαμονής
του, με άτομο κατάλληλης ηλικίας και διακρίσεως, που διέμενε εκεί.

Όνομα προσώπου εις το οποίο επεδόθη η κλήτευση και αγωγή:_____

Επεστράφη ανεκτέλεστο:_____
_____
_____

΄Αλλος (καθορίσατε):_____
_____
_____
_____

### ΔΗΛΩΣΗ ΕΞΟΔΩΝ ΕΠΙΔΟΣΕΩΣ

ΟΔΟΙΠΟΡΙΚΑ_____ΥΠΗΡΕΣΙΕΣ_____ΣΥΝΟΛΟ_____

### ΔΗΛΩΣΗ ΤΟΥ ΕΠΙΔΟΤΟΥ

Ο κάτωθι υπογεγραμμένος δηλώ υπευθύνως και εν γνώσει των συνεπειών του
νόμου περί ψευδορκίας των Ηνωμένων Πολιτειών Αμερικής, ότι οι προαναφερόμενες
πληροφορίες, που περιέχονται στην Δήλωση Επιδόσεως και Δήλωση Εξόδων Επιδόσεως
είναι αληθείς και ακριβείς.

Εξετελέσθη την_____    _____
                        Ημερομηνία                     Υπογραφή του Επιδότου

                                                       _____
                                                       Δ/νση του Επιδότου

2

ΠΕΡΙΦΕΡΕΙΑΚΟ ΔΙΚΑΣΤΗΡΙΟ ΤΩΝ ΗΝΩΜΕΝΩΝ ΠΟΛΙΤΕΙΩΝ
ΠΕΡΙΦΕΡΕΙΑ ΜΑΣΣΑΧΟΥΣΕΤΤΗΣ

| | |
|---|---|
| KOTVA as., ) | |
| ) | |
| Ενάγων, ) | |
| ) | |
| Κατά ) | |
| ) | |
| ANDREW WEISS and WEISS ASSET ) | |
| MANAGEMENT, LLC, ) | |
| ) | |
| Εναγομένων ) | C.A. No. 05-10679-RCL |
| ) | |
| ANDREW WEISS, WEISS ASEET ) | |
| MANAGEMENT LLC, K T, INC. and CVF ) | |
| INVESTMENTS, LTD., ) | |
| ) | |
| Ενάγοντες ανταπαίτησης ) | |
| ) | |
| ) | |
| Κατά ) | |
| ) | |
| KOTVA a.s., MARTIN BENDA, RICHARD ) | |
| HARAZIM, FORMINSTER ENTERPRISES ) | |
| LTD., SPV CO and JOHN DOES 1-5, ) | |
| ) | |
| Εναγομένων ανταπαίτησης ) | |

## ΠΡΩΤΗ ΤΡΟΠΟΠΟΙΗΜΕΝΗ ΑΠΑΝΤΗΣΗ ΚΑΙ ΑΝΤΑΠΑΙΤΗΣΗ

## ΠΕΡΙΛΗΨΗ

Ο εναγόμενος και ενάγων ανταπαίτησης (counterclaim-plaintiff) Andrew Weiss ("Weis") είναι καθηγητής οικονομικών του Πανεπιστημίου Βοστώνης (Boston University). Διετέλεσε σύμβουλος της Παγκόσμιας Τράπεζας σε θέματα καφαλαιαγοράς της Τσεχικής Δημοκρατίας και είναι αυθεντία σε θέματα αναπτυσσομένων αγορών και της ανάγκης για την δημιουργία οικονομικών κανονισμών. Έχει επίσης εταιρεία που διαχειρίζεται επενδύσεις στην Τσεχική Δημοκρατία. Μεταξύ αυτών των επενδύσεων

1

είναι ένα σημαντικό μειοψηφικό μερίδιο στην ενάγουσα εταιρεία Kotva a.s. ("Kotva") ή Κότβα. Τον Μάιο του 2004, αντιπρόσωποι της Forminster Enterprises Ltd. ("Forminster"), που είναι ο πλειοψηφών μέτοχος της Κότβα, απείλησαν να πάρουν για λογαριασμό τους το μόνο πολύτιμο κομμάτι της Κότβα και να μη δώσουν τίποτε στους μειοψηφούντες μετόχους. Ο Weiss απάντησε, με την εξουσιοδότηση δικηγόρων στην Τσεχική Δημοκρατία, να υποβάλουν μηνύσεις για να προστατεύσουν τα δικαιώματα των μειοψηφούντων μετόχων.

Η πρώτη απάντηση της Forminster ήταν να προσεγγίσει τον Weiss και να προσφέρει την εξαγορά του μεριδίου των μετόχων του στη Κότβα. Όμως, η Forminster δεν συμφωνούσε να πληρώσει ένα ποσό ίσο προς την αξία που αναλογούσε προς το μερίδιο τους στην Κότβα, το οποίο εδικαιούντο οι επενδυτές του Weiss. Όταν ο Weiss απέρριψε την ανεπαρκή προσφορά της Forminster, η Forminster υιοθέτησε μια δεύτερη, πιό σκοτεινή προσέγγιση. Η Forminster και οι συνδεόμενοι με αυτή εχρησιμοποίησαν την επιρροή τους επί της Τσεχικής αστυνομίας για να υποκινήσουν μια εγκληματική δίωξη του Weiss με ψεύτικες κατηγορίες για εκβιασμό. Αν και Weiss δεν έχει δεχθεί επίσημη ανακοίνωση επί των κατηγοριών, ο τύπος ανέφερε ότι έγιναν αυτές οι κατηγορίες. Επιδιώκοντας να ασκήσουν πρόσθετη πίεση, η Forminster και οι συνδεδεμένες με αυτή εταιρείες, εχρησιμοποίησαν τον έλεγχόν τους επί της Κότβα, για να κάνουν αυτή την μήνυση κατά του Weiss, στο όνομα της Κότβα.

Η Κότβα είναι σήμερα ένα κέλυφος εταιρείας και το «άλλο εγώ» (alter ego) για την Forminster και τους συνδεομένους με αυτή, ήτοι: τους εναγόμενους στην ανταπαίτηση (counterclaim defendants) Forminster, Martin Benda ή ("Benda"), Richard Harazim ή ("Harazim"), SPV CO και John Does 1-5 (συλλογικά αναφερόμενους ως «΄Ομιλος Φορμινστερ», «Forminster Group»). Ο Όμιλος Forminster έχει συνωμοτήσει κατά του Weiss και των μετόχων της Κότβα, για τον σφετερισμό των κεφαλαίων της Κότβα προς ίδιον όφελος. Η Forminster είναι μία ιδιωτική εταιρεία, με έδρα την Κύπρο, και οι συνωμότες τηρούν την ταυτότητα των ιδιοκτητών της ως μέγα μυστικό. Οι Harazim και Benda παίζουν τον ρόλο των «ανθρώπων βιτρίνα»(front men) της Forminster και αποκρύπτουν την ταυτότητα των πραγματικών κυρίων της εταιρείας.

Σύμφωνα να αναφορές στον Τσεχικό τύπο και εκθέσεις των Τσέχων κατηγόρων και ως λεπτομερώς αναφέρεται κατωτέρω, ο Ομιλος Forminster ελέγχει τα προϊόντα της

2

λεηλασίας, μιάς από τις πιό διαβόητες απάτες στην μετακομμουνιστική ιστορίας της Τσεχικής Δημοκρατίας, ένα έγκλημα γνωστό σαν το «Σκάνδαλο της Τρεντ» ("Trend Scandal") ή «Η Φυγάδευση Κεφαλαίων της Τρεντ» ("Trend Tunneling"). Ο τσέχικος τύπος υιοθέτησε τη λέξη "tunneling", δηλαδή «διάνοιξη τούνελ», γιά να περιγράψει τη διαδικασία με την οποία η διοίκηση μιάς εταιρείας καταχράται των κεφαλαίων της εταιρείας και τα διακινεί μέσω μιάς σειράς διαμεσολαβητών, έως ότου οι προορισμένοι αποδέκτες των κεφαλαίων είναι σε θέση να ρευστοποιήσουν τα κεφάλαια και να εξαφανιστούν με τη λεία. Πιο σημαντικό σ' αυτή την υπόθεση, τα παράνομα προϊόντα που έχει αποκτήσει ο Όμιλος Forminster περιλαμβάνουν τον έλεγχο της πλειοψηφίας των μετοχών της Κότβα.

Στις αρχές της δεκαετίας του 1990, η Κότβα ήταν μιά εταιρεία με ένα μεγάλο πολυκατάστημα (department store), με σπουδαία τοποθεσία στο κέντρο της Πράγας, στην Τσεχική Δημοκρατία. Ένα επενδυτικό κεφάλαιο γνωστό ως Trend Fund ή "Trend", ήταν ο μεγαλύτερος μέτοχος της Κότβα α.ε. Σύμφωνα με δημοσιεύματα του τύπου, τα αποτελέσματα κυβερνητικής ερεύνης έδειξαν, ότι τα κεφάλαια της Τρέντ, περιλαμβανομένων των μετοχών της Κότβα, ελεηλατήθηκαν διά μιάς σειράς απατών και οι μετοχές της Κότβα κατέληξαν στον έλεγχο του Ομίλου Forminster. Ως αποτέλεσμα της «φυγαδεύσεως» των κεφαλαίων της Τρεντ, ο Όμιλος Forminster ισχυρίζεται ότι είναι κύριος τουλάχιστον του 55% των μετοχών της Κότβα.

Ως αποτέλεσμα της εμπλοκής της Forminster στην φυγάδευση των κεφαλαίων της Τρεντ, το Ανώτερο Δικαστήριο (High Court) του Λίχτενστάιν επάγωσε τους λογαριασμούς της Forminster σε μιά τράπεζα στην Βαντούζ (Vaduz), στο Λίχτενστάιν. Ομοίως, ένας τσέχος εισαγγελέας επάγωσε τις μετοχές της Forminster στην Κότβα, λόγω υπονοιών, ότι ήταν προϊόντα εγκληματικής δραστηριότητας. Έτσι, σε αδυναμία να ρευστοποιήσει τις μετοχές του στην Κότβα, ο Όμιλος Forminster αποφάσισε να χρησιμοποιήσει τον έλεγχό του επί της Κότβα γιά να πωλήσει το πιό πολύτιμο κομμάτι του ενεργητικού της εταιρείας --το ακίνητό της-- και να κρατήσει όλα τα κέρδη γιά τον εαυτό του, εξαπατώντας τους μειοψηφούντες μετόχους της Κότβα και αποστερώντας τα θύματα της Τρεντ από τη νόμιμη μερίδα τους στα κέρδη.

3

## ΑΠΑΝΤΗΣΗ

Οι Εναγόμενοι Weiss και Weiss Asset Management LLC ή ("WAM") (συλλογικά, οι «Εναγόμενοι») απαντούν στο Κατηγορητήριο της Ενάγουσας Κότβα, α.ε., ως εξής:

## ΕΙΣΑΓΩΓΗ

Η Εισαγωγή δεν περιέχει ισχυρισμούς, εντός της εννοίας των Ομοσπονδιακών Κανόνων Πολιτικής Διαδικασίας 8 και 10 και δεν απαιτεί απάντηση. Όπου απαιτείται απάντηση, οι Εναγόμενοι αρνούνται τις συγκεκριμένες κατηγορίες στην Εισαγωγή.

## ΔΙΚΑΙΟΔΟΣΙΑ

1.    Η παράγραφος 1 δηλώνει νομικό συμπέρασμα στο οποίο δεν απαιτείται απάντηση.

2.    Η παράγραφος 2 δηλώνει νομικό συμπέρασμα στο οποίο δεν απαιτείται απάντηση

3.    Η παράγραφος 3 δηλώνει νομικό συμπέρασμα στο οποίο  δεν απαιτείται απάντηση

## ΜΕΡΗ (ΔΙΑΔΙΚΟΙ)

4.    Αποδεκτό

5.    Αποδεκτό

6.    Αποδεκτό

## ΓΕΓΟΝΟΤΑ

7.    Οι εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, όσον αφορά την αλήθεια της παραγράφου 7.

8.    Αποδεκτό

9.    Οι Εναγόμενοι παραδέχονται ότι  η Weiss Asset Management, LLC είναι μιά επενδυτική εταιρεία με έδρα την Βοστώνη της Μασσαχουσέττης. Προσέτι, οι Εναγόμενοι δέχονται ότι ο Weiss είναι κάτοχος της πλειοψηφίας της Weiss Asset Management και ελέγχει την Weiss Asset Management. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 9.

4

10.    Οι Εναγόμενοι δέχονται την πρώτη πρόταση της παραγράφου 10. Οι
       Εναγόμενοι αρνούνται την δεύτερη πρόταση της παραγράφου 10.

11.    Αρνήθηκε.

12.    Οι Εναγόμενοι δέχονται την πρώτη πρόταση της παραγράφου 12. Οι
       Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 12.

13.    Οι Εναγόμενοι δέχονται ότι ο Όμιλος Forminster εγκατέστησε νέα διοίκηση
       στην Κότβα και απεκάλεσε αυτό αλλαγή διοικήσεως. Κατά πληροφορίες και
       πεποίθηση, οι Εναγόμενοι αρνούνται ότι σκοπός εγκαταστάσεως της νέας
       διοικήσεως ήταν να συντελεσθεί  μιά θετική μεταστροφή στις δουλειές της
       Κότβα. Ως περαιτέρω απάντηση, οι Εναγόμενοι πιστεύουν ότι σκοπός της
       εγκαταστάσεως της νέας διοικήσεως ήταν να λεηλατήσει την Κότβα α.ε. από
       το ακίνητό της. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά
       να διαμορφώσουν γνώμη όσον αφορά το αληθές του υπολοίπου της
       παραγράφου 13.

14.    Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να
       διαμορφώσουν γνώμη, όσον αφορά την αλήθεια της παραγράφου 14.

15.    Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να
       διαμορφώσουν γνώμη, όσον αφορά την αλήθεια  της παραγράφου 15.

16.    Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να
       διαμορφώσουν γνώμη, όσον αφορά την αλήθεια της παραγράφου 16.

17.    Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να
       διαμορφώσουν γνώμη, όσον αφορά την αλήθεια της παραγράφου 17.

18.    Κατά πληροφορίες και πεποίθηση, οι Εναγόμενοι αρνούνται, ότι σκοπός της
       υποτιθέμενης μεταβίβασης ήταν «να πραγματοποιηθεί η πώληση» του
       Εμπορικού Κέντρου. Ως περαιτέρω απάντηση, οι Εναγόμενοι πιστεύουν ότι
       σκοπός της υποτιθέμενης μεταβίβασης ήταν να εκτρέψουν αλλού τις
       προσόδους από την πώληση του Εμπορικού Κέντρου. Οι Εναγόμενοι δεν
       έχουν γνώση η επαρκείς πληροφορίες  γιά να διαμορφώσουν γνώμη, όσον
       αφορά το υπόλοιπον της παραγράφου 18.

5

19. Οι Εναγόμενοι δέχονται ότι κατά την διάρκειαν του Μαΐου 2004, ο τύπος δημοσίευσε μιά εκκρεμούσα πώληση του Εμπορικού Κέντρου σε ιρλανδούς επενδυτές. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 19.

20. Οι Εναγόμενοι δέχονται, ότι στις 12 Μαΐου, 2004, οι Weiss και Hoffmann συναντήθηκαν με τους Harazim και Benda.. Οι Εναγόμενοι δέχονται ότι οι Harazim και Benda ήταν τότε, αντιστοίχως, Διευθύνων Σύμβουλος (CEO) και ο άλλος Πρόεδρος του Διοικητικού Συμβουλίου της Κότβα, αλλά αρνούνται ότι οι Benda και Harazim παρουσίασαν τους εαυτούς των ως αντιπροσώπους της Κότβα, κατά την διάρκειαν της συναντήσεως της 12ης Μαΐου, 2005. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 20.

21. Αρνήθηκε.

22. Οι Εναγόμενοι δέχονται ότι ο Gilroy υπέβαλε μήνυσε, ισχυριζόμενος ότι η SPV KN δεν είναι ο νόμιμος κάτοχος του Εμπορικού Κέντρου και ότι η Κότβα είναι ο νόμιμος κάτοχος του Εμπορικού Κέντρου. Ο Εναγόμενος Andrew Weiss δέχεται περαιτέρω, ότι επεκοινώνησε μετά των Hoffman και Ondrej Peterka από τη Βοστώνη και ότι ο Hoffman έστειλε λογαριασμούς στο Brookdale στη Βοστώνη. Ο Εναγόμενος Weiss Asset Management αρνείται, ότι επεκοινώνησε μετά των Hoffman και Peterka στη Βοστώνη. Οι εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 22.

23. Οι Εναγόμενοι δέχονται ότι ο Gilroy άνοιξε έναν λογαριασμό στο Χρηματιστήριο (Security Centre) στις 23 Ιουνίου, 2004. Οι Εναγόμενοι δέχονται περαιτέρω, ότι ο Gilroy αγόρασε μιά μετοχή της Κότβα έναντι 430 CZK (Κορωνών Τσεχίας) στις 24 Ιουνίου, 2004, και 134 μετοχές της Κότβα προς 430 CZK ανά μετοχή στις 29 Ιουνίου, 2004. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 23.

24. Οι Εναγόμενοι δέχονται ότι στις 30 Ιουνίου, 2004, ο Gilroy υπέβαλε μήνυση κατά της Κότβα, KN και SPV KN στην Πράγα, αμφισβητώντας τις μεταβιβάσεις του Εμπορικού Κέντρου της Κότβα από την Κότβα στην KN και ακολούθως μεταφορά από την KN στην SPV KN και απαιτώντας δήλωση ότι η Κότβα είναι ο κάτοχος του Εμπορικού Κέντρου. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, όσον

αφορά το αληθές περί του αν η ΚΝ και SPV ΚΝ ήταν υπό την πλήρη κυριότητα της Κότβα κατά την ημερομηνία των δύο μεταβιβάσεων. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 24.

25. Οι Εναγόμενοι δέχονται την πρώτη πρόταση της παραγράφου 25. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 25.

26. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, όσον αφορά το αληθές της παραγράφου 26.

27. Οι Εναγόμενοι δέχονται ότι, την 17ην Αυγούστου, 2004, ο Weiss έστειλε την επιστολή που είναι συνημμένη στην Αγωγή(Complaint), ως Έκθεση Α (Exhibit A) στον Martin Benda, ο οποίος παρουσίαζε τον εαυτόν του ως αντιπρόσωπον της Forminster. Το έγγραφο αυτό ομιλεί αφ' εαυτού. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 27.

28. Οι Εναγόμενοι δέχονται ότι ένα e-mail εστάλη στις 17 Αυγούστου, 2004 με τον Richard Harazim καταγραμμένο ως αποστολέα και ότι το e-mail μιλάει από μόνο του. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 28.

29. Οι Εναγόμενοι δέχονται ότι στις 23 Αυγούστου, 2004, ο Weiss απέστειλε επιστολή, συνημμένη στην Αγωγή(Claim), ως Έκθεση Β (Exhibit B), στον Martin Benda και Richard Harazim, που παρουσίαζαν τους εαυτούς τους ως αντιπροσώπους της Forminster. Το έγγραφο αυτό ομιλεί από μόνο του. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 29.

30. Οι Εναγόμενοι δέχονται ότι στις 23 Νοεμβρίου, 2004, ο Weiss απέστειλε την επιστολή, που είναι συνημμένη στην Αγωγή ως Έκθεση Γ (Exhibit C), προς τούς Martin Benda και Richard Harazim, οι οποίοι παρουσίαζαν τον εαυτό τους ως αντιπρόσωπο της Forminster. Το έγγραφο αυτό ομιλεί αφ' εαυτού. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 30.

31. Αρνήθηκε.

32. Έγινε αποδεκτό, με την εξαίρεση ότι οι Εναγόμενοι αρνούνται ότι ο Weiss είναι ο μοναδικός διευθυντής της Κ Τ Inc.

33. Οι Εναγόμενοι δέχονται, ότι στις 23 Δεκεμβρίου, 2004, ο Peterka απέστειλε μιά επιστολή στον Bryan David Paul Wilson, διαμένοντα στο Linklaters της Πράγας, και ότι η επιστολή περιείχε μίαν εντός εισαγωγικών αναφορά

7

τμήματος (block quote) της παραγράφου 33. Η επιστολή ομιλεί αφ' εαυτής. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 33.

34.   Οι Εναγόμενοι δέχονται την δεύτερη πρόταση της παραγράφου 34, με την εξαίρεση ότι οι Εναγόμενοι αρνούνται ότι το e-mail του Weiss ήταν σε απάντηση επικοινωνίας από την Κότβα. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 34.

35.   Αρνήθηκε.

36.   Αρνήθηκε.

37.   Οι Εναγόμενοι αρνούνται την πρώτη πρόταση της παραγράφου 37. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, όσον αφορά το αληθές του υπολοίπου της παραγράφου 37.

38.   Οι Εναγόμενοι αρνούνται τις πρώτες δύο προτάσεις της παραγράφου 38. Οι Εναγόμενοι ούτε δέχονται ούτε αρνούνται το υπόλοιπον της παραγράφου 38, αλλά αντιθέτως δηλώνουν ότι αναφέρονται σε υλικό το οποίο προστατεύεται από το «προνόμιο της σχέσεως δικηγόρου-πελάτου» (attorney-client privilege) και το οποίο ο ενάγων έχει αποκτήσει καταχρηστικώς.

39.   Αρνήθηκε.

40.   Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη γιά το αληθές της παραγράφου 40.

41.   Οι Εναγόμενοι δέχονται ότι ο Weiss έδωσε μία συνέντευξη τύπου μέσω βίντεο στην Βοστώνη στις 15 Μαρτίου, 2005. Οι Εναγόμενοι περαιτέρω δέχονται ότι η Έκθεση E (Exhibit E) περιέχει ένα αληθές και ακριβές αντίγραφο των γραπτών δηλώσεων του Weiss στην αγγλική. Το έγγραφο αυτό ομιλεί από μόνο του. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, ως προς το εάν το μέρος της Εκθέσεως E, που είναι γραμμένο στην τσεχική γλώσσα είναι μία πλήρως ακριβής μετάφραση των γραπτών δηλώσεων του Weiss. Οι εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 41.

42.   Αρνήθηκε.

43.   Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, ως προς το εάν εσωτερικά έγγραφα απεκαλύφθησαν

ως αποτέλεσμα οποιωνδήποτε κατηγοριών. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 43.

44.    Οι Εναγόμενοι ούτε δέχονται ούτε αρνούνται τις κατηγορίες της παραγράφου 44, αλλά αντιθέτως δηλώνουν ότι αναφέρονται σε υλικό προστατευόμενο από το προνόμιο της σχέσεως δικηγόρου-πελάτου και το οποίο ο Ενάγων απέκτησε καταχρηστικώς.

45.    Αρνήθηκε.

46.    Οι Εναγόμενοι δέχονται ότι στις 25 Οκτωβρίου, 2004, ο Hoffman έστειλε στον Weiss ένα e-mail το οποίο περιλαμβάνει το κείμενο που αναφέρεται στην παράγραφο 46 της Αγωγής. Αυτό το e-mail ομιλεί αφ' εαυτού. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 46.

47.    Οι Εναγόμενοι δέχονται ότι στις 25 Νοεμβρίου, 2004, ο Weiss έστειλε στον Hoffman το έγγραφο, που είναι συνημμένο στην Αγωγή ως Έκθεση G (Exhibit G). Το έγγραφο αυτό ομιλεί από μόνο του. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 47.

48.    Αρνήθηκε.

### Κατηγορία I

49.    Οι Εναγόμενοι ενσωματώνουν δι' αναφοράς τις απαντήσεις τους στις κατηγορίες των προηγουμένων παραγράφων.

50.    Αρνήθηκε.

51.    Αρνήθηκε.

52.    Οι Εναγόμενοι δέχονται ότι ο Weiss είναι κάτοικος Μασσαχουσέτης και ότι η εταιρεία Weiss Asset Management έχει ως κύριο χώρο λειτουργίας της την Μασσαχουσέττη. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 52.

53.    Αρνήθηκε.

54.    Αρνήθηκε.

9

## Κατηγορία ΙΙ

55.     Οι Εναγόμενοι ενσωματώνουν δι' αναφοράς τις απαντήσεις τους στις κατηγορίες των προηγουμένων παραγράφων.

56.     Η παράγραφος 56 διατυπώνει ένα νομικό συμπέρασμα, προς το οποίο δεν απαιτείται απάντηση.

57.     Αρνήθηκε.

58.     Αρνήθηκε.

59.     Αρνηθηκε.

60.     Αρνήθηκε.

61.     Αρνήθηκε.

62.     Αρνήθηκε.

63.     Αρνήθηκε.

64.     Αρνήθηκε

65.     Αρνήθηκε.

66.     Αρνήθηκε.

67.     Αρνήθηκε.

68.     Αρνήθηκε

## Κατηγορία ΙΙΙ

69.     Οι Εναγόμενοι ενσωματώνουν δι' αναφοράς τις απαντήσεις τους προς τις κατηγορίες που περιέχονται στις προηγούμενες παραγράφους.

70.     Αρνήθηκε.

10

## Κατηγορία IV

71. Οι Εναγόμενοι ενσωματώνουν δι' αναφοράς τις απαντήσεις τους στις κατηγορίες που περιέχονται στις προηγούμενες παραγράφους.

72. Η παράγραφος 72 διατυπώνει νομικό συμπέρασμα, προς το οποίο δεν απαιτείται απάντηση.

73. Αρνήθηκε.

74. Αρνήθηκε

75. Αρνήθηκε.

76. Αρνήθηκε.

## Κατηγορία V

77. Οι Εναγόμενοι ενσωματώνουν δι' αναφοράς τις απαντήσεις τους προς τις κατηγορίες που περιέχονται στις προηγούμενες παραγράφους.

78. Η παράγραφος 78 διατυπώνει ένα νομικό συμπέρασμα, προς το οποίο δεν απαιτείται απάντηση.

79. Αρνήθηκε.

80. Αρνήθηκε.

## Κατηγορία VI

81. Οι Εναγόμενοι ενσωματώνουν δι' αναφοράς τις απαντήσεις τους προς τις κατηγορίες που περιέχονται στις προηγούμενες παραγράφους

82. Αρνήθηκε.

83. Αρνήθηκε.

## Κατηγορία VII

84. Οι Εναγόμενοι ενσωματώνουν δι' αναφοράς τις απαντήσεις τους στις κατηγορίες που περιέχονται στις προηγούμενες παραγράφους.

85. Οι Εναγόμενοι δεν έχουν γνώσεις ή επακρείς πληροφορίες γιά να διαμορφώσουν γνώμη, ως προ το αληθές του υπολοίπου της παραγράφου 85.

86. Αρνήθηκε.

87. Αρνήθηκε.

11

## ΑΠΑΙΤΗΣΗ ΓΙΑ ΑΠΟΖΗΜΙΩΣΗ

Οι Απαιτήσεις του Ενάγοντος για Αποζημίωση (Requests for Relief) δεν εμπίπτουν εντός των πλαισίων της εννοίας των Ομοσπονδιακών Κανονισμών της Πολιτικής Διαδικασίας 8 και 10 και δεν χρήζουν απαντήσεως. Εφ' όσον απαιτείται απάντηση, οι Εναγόμενοι ζητούν όπως το Δικαστήριο αρνηθεί όλα τα αιτήματα του Ενάγοντος γιά Αποζημίωση.

## ΠΡΩΤΗ ΘΕΤΙΚΗ ΥΠΕΡΑΣΠΙΣΗ (FIRST AFFIRMATIVE DEFENSE)

Η Κότβα α.ε. δεν είναι ένας διάδικος πραγματικού ενδιαφέροντος.

## ΔΕΥΤΕΡΗ ΘΕΤΙΚΗ ΥΠΕΡΑΣΠΙΣΗ

Οι ισχυρισμοί του Ενάγοντος αποκλείονται από το δόγμα των «ακαθάρτων χειρών»

## ΤΡΙΤΗ ΘΕΤΙΚΗ ΥΠΕΡΑΣΠΙΣΗ

Ο Ενάγων απέτυχε να διατυπώσει μιά κατηγορία, βάσει της οποίας θα μπορούσε να δοθεί αποζημίωση.

## ΤΕΤΑΡΤΗ ΘΕΤΙΚΗ ΥΠΕΡΑΣΠΙΣΗ

Ο Ενάγων απέτυχε να υποστηρίξει περίπτωση ιδιάζουσας απάτης.

## ΠΕΜΠΤΗ ΘΕΤΙΚΗ ΥΠΕΡΑΣΠΙΣΗ

Οι διεκδικήσεις του Ενάγοντος αποκλείονται λόγω προτέρας καταστάσεως (estoppel)

## ΑΝΤΑΠΑΙΤΗΣΗ (COUNTERCLAIM)

Οι Ενάγοντες της Ανταπαίτησης (counterclaim-plaintiffs) Andrew Weiss ("Weiss"), Weiss Asset Management LLC ("WAM"), K T, Inc. ("K T") και CVF Investments Ltd. αναφορικά με την Ανταπαίτησή τους (Counterclaim) κατά των Εναγομένων της Ανταπαίτησης (Counterclaim-defendants) Kotva a.s., Martin Benda,

12

Richard Harazim, Forminster Enterprises, Ltd., SPV CO και John Does 1-5 δηλώνουν τα εξής:

## Δικαιοδοσία και Τόπος Εκδικάσεως

1. Το Δικαστήριο έχει δικαιοδοσία περιεχομένου (subject matter) επί της Ανταπαίτησης (Counterclaim), σύμφωνα με τις νομικές διατάξεις 28 U.S.C. & 1332 και 28 U.S.C. & 1367.

2. Το Δικαστήριο έχει προσωπική δικαιοδοσία επί των εναγομένων της ανταπαίτησης (counterclaim-defendants), επειδή διέπραξαν αδικοπραγίες στη Μασσαχουσέττη, περιλαμβανομένης και της καταθέσεως αυτής της μηνύσεως, περιλαμβανομένων των e-mails, και επειδή επεδίωξαν εμπορικές συναλλαγές με κατοίκους της Μασσαχουσέττης. Προσέτι προξένησαν ζημίαν στη Μασσαχουσέττη μέσω των πράξεών τους εκτός Μασσαχουσέττης και επωφελήθησαν της δικαιοδοσίας αυτού του Δικαστηρίου.

3. Η Περιοχή της Μασσαχουσέττης είναι ο πρέπων χώρος (venue) γιά την εκδίκαση της υποθέσεως, βάσει των διατάξεων 28 U.S.C. && 1391 (a) και 1391 (c) και επειδή η Kotva a.s.κατέθεσε την αρχική της μήνυση σ' αυτήν την Περιοχή.

## Διάδικοι (Parties)

4. Ο Εναγόμενος και ενάγων της ανταπαίτησης (counterclaim-plaintiff) Andrew Weiss είναι κάτοικος του Μπρουκλάιν (Brookline) της Μασσαχουσέττης.

5. Ο Εναγόμενος και ενάγων της ανταπαίτησης (counterclaim-plaintiff) Weiss Management LLC είναι μιά εταιρεία περιωρισμένης ευθύνης με έδρα το Ντέλαγουέρ (Delaware), με κύριο χώρο επιχειρηματικών δραστηριοτήτων τη Βοστώνη της Μασσαχουσέττης.

6. Ο ενάγων της ανταπαίτησης K T, Inc. είναι μιά εταιρεία με έδρα το Ντέλαγουέρ (Delaware), με κύριο χώρο επιχειρηματικών δραστηριοτήτων την Βοστώνη της Μασσαχουσέττης. Είναι κάτοχος 1.000 μετοχών της Κότβα α.ε. και 1.000 μετοχών της Τρεντ.

13

7.    Ο ενάγων της ανταπαίτησης CVF Investment Ltd. είναι μία κυπριακή εταιρεία με έδρα την Λευκωσία της Κύπρου. Είναι κάτοχος μετοχών της Κότβα α.ε. και μετοχών της Τρεντ. Η CVF Investments Ltd. είναι μια σχεδόν εξ ολοκλήρου ελεγχόμενη θυγατρική της Brookdale Global Opportunity Fund ή "BGO". Το έννομο συμφέρον της CVF Investments Ltd. στην Κότβα α.ε. και Τρεντ αναφέρεται γενικώς και αμοιβαίως ως «Μετοχές των CVF Investments" ή «Μετοχές της BGO's».

8.    Ο Ενάγων και εναγόμενος της ανταπαίτησης, η Κότβα α.ε., είναι μία εταιρεία οργανωμένη κάτω από τους νόμους της Τσεχικής δημοκρατίας με κύριο χώρο επιχειρηματικών δραστηριοτήτων την Πράγα, της Δημοκρατίας της Τσεχίας.

9.    Ο εναγόμενος της ανταπαίτησης Forminster Enterprises Ltd. ή Forminster είναι μια εταιρεία οργανωμένη κάτω από τους νόμους της Κύπρου. Κατά πληροφορίες και την γνώμη μας, ο χώρος επιχειρηματικών δραστηριοτήτων της Forminster ευρίσκεται εκτός των Ηνωμένων Πολιτειών. Η ταυτότητα των ιδιοκτητών της είναι ένα «καλοδιατηρημένο» μυστικό.

10.    Ο εναγόμενος της ανταπαίτησης SPV CO είναι μία εταιρεία οργανωμένη κάτω από τους νόμους της Κύπρου. Κατά πληροφορίες και την γνώμη μας, ο κύριος χώρος των επιχειρηματικών δραστηριοτήτων της SPV CO, είναι εκτός των Ηνωμένων Πολιτειών.

11.    Ο εναγόμενος της ανταπαίτησης Martin Benda ή ("Benda") είναι άτομο που διαμένει στην Τσεχική Δημοκρατία. Ο Benda ήταν μέλος του διοικητικού συμβουλίου της Κότβα α.ε. εν μέρει ή καθ' όλην την περίοδο από την 21η Μαΐου, 1999, έως την 8η Μαρτίου, 2004. Από τις 8 Μαρτίου, 2004, μέχρι σήμερα, ο Benda διατελεί Πρόεδρος του Εποπτικού Συμβουλίου (Supervisory Board) της Κότβα α.ε. Η Forminster υποστήριξε την υποψηφιότητα του Benda για την θέση του στο συμβούλιο της Κότβα και εχρησιμοποίησε τον έλεγχό της επί της πλειοψηφίας των μετοχών της Κότβα γιά να διασφαλίσει την εκλογή του. Ο Benda είναι ή ήταν επίσης

14

μέλος του διοικητικού συμβουλίου της Forminster και πράκτορας της
Forminster. Τέλος, ο Benda είναι διευθυντής της SPV CO.

12.     Ο εναγόμενος της ανταπαίτησης Richard Harazim ή ("Harazim") είναι
άτομο που διαμένει στην Τσεχική Δημοκρατία. Ο Harazim είναι ο
γενικός διευθυντής ή εκτελεστικός διευθυντής της Κότβα. Ο Harazim
ήταν μέλος του διοικητικού συμβουλίου της Κότβα α.ε. γιά μέρος ή το
σύνολο της περιόδου από 29 Μαΐου, 1997 έως 8 Μαρτίου, 2004. Από τις
8 Μαρτίου, 2004, μέχρι σήμερα ο Harazim διατελεί ως μέλος του
Εποπτικού Συμβουλίου (Supervisory Board) της Κότβα α.ε. Η Forminster
υπέδειξε ως υποψήφιο τον Harazim για το διοικητικό συμβούλιο της
Κότβα α.ε. και εχρησιμοποίησε τον έλεγχό της επί της πλειοψηφίας των
μετοχών της Κότβα γιά να διασφαλίσει την εκλογή του. Ο Harazim επίσης
είναι ή ήταν μέλος του διοικητικού συμβουλίου της Forminster και
πράκτορας της Forminster.

13.     Οι εναγόμενοι της ανταπαίτησης John Does 1-5 είναι άτομα που
διαμένουν στην Τσεχική Δημοκρατία και σε άλλες χώρες εκτός των
Ηνωμένων Πολιτειών, και είναι μέλη μίας συνωμοσίας μεταξύ της
Forminster, SPV CO, Benda, Harazim και άλλων (συλλογικά
αναφερομένων, ως «Όμιλος Forminster»).

14.     Ένας στόχος της συνωμοσίας του Ομίλου Forminster είναι να
απογυμνώσει την Κότβα α.ε. από την ακίνητη περιουσία της, να πουλήσει
τα ακίνητά της και να διανείμει τις προσόδους μεταξύ των μελών του
Ομίλου Forminster.

*Συγκεκριμένες Κατηγορίες (Factual Allegations)*

15.     Η Weiss Capital LLC είναι μιά εταιρεία περιορισμένης ευθύνης με έδρα
το Ντέλαγουερ (Delaware)

16.     Το 2002 η Weiss Capital ανέλαβε την διοίκηση του Brookdale Global
Opportunity Fund ή ("BGO"). Το BGO είναι ένα επενδυτικό κεφάλαιο.
Η θυγατρική του, η CVF Investments Ltd., έχει μετοχές στην Τρεντ, ένα
τσεχικό επενδυτικό κεφάλαιο, όπως και μετοχές στην Κότβα α.ε.

15

17.  Η CVF Investments Ltd. έχει υπό την κατοχήν της μετοχές της Τρεντ από
     το 1996 και μετοχές στην Κότβα α.ε. από το 1997.

18.  Το πιό πολύτιμο κομμάτι της Τρεντ είναι ένα σημαντικό μερίδιο στην
     Κότβα α.ε. Όμως, όπως περιγράφεται με περισσότερες λεπτομέρειες στις
     παραγράφους 42-60 κατωτέρω, αυτές οι μετοχές κατεχράσθησαν στα
     μέσα της δεκαετίας του 1990 και ήλθαν στην κατοχή της Forminster.

19.  Η Κ Τ, Inc. και η CVF Investments Ltd. έχουν αμφότερες άμεσο
     συμφέρον στην Κότβα α.ε. ως μέτοχοι και έμμεσο συμφέρον στην Κότβα
     ως μέτοχοι της Τρεντ, η οποία είναι ο νόμιμος κάτοχος του 32%
     τουλάχιστον των μετοχών  της Κότβα α.ε.

20.  Τον Σεπτέμβριο του 2003, η Weiss Capital κατέληξε σε συμφωνία με τον
     Βλαδίμηρο Χόφμαν (Vladimir Hoffman), σύμφωνα με την οποία ο
     Χόφμαν θα βοηθούσε την BGO στη ρευστοποίηση των μετοχών που είχε
     η CVF Investments σε μετοχές της Τρεντ και Κότβα α.ε. Η συμφωνία του
     Χόφμαν με την Weiss Capital έληξε τον Οκτώβριο του 2004.

21.  Τον Σεπτέμβριο του 2003, ο Harazim πλησίασε τον Χόφμαν και του
     ανέφερε ότι η Forminster ίσως να ενδιαφερόταν να αγοράσει τις μετοχές
     της BGO στην Κότβα. Μιά εταιρεία συνδεόμενη με τον Όμιλο Forminster
     έκανε τότε προσφορά να αγοράσει τις μετοχές που είχε η BGO στην
     Κότβα, έναντι του ποσού των 20,000,000 (20 εκατ.) τσεχικών κορωνών
     (CZK). Ο Weiss απέρριψε αυτή την προσφορά.

22.  Η J&T Securities έκανε τότε προσφορά 26,000,000 (26 εκατ.) περίπου
     τσεχικών κορωνών (CZK) για τις μετοχές που είχε η BGO στην Κότβα,
     τον Δεκέμβριο του 2003. Κατά πληροφορίες και την γνώμη μας, η J&T
     Securities  διατηρεί επίσης εμπορικές σχέσεις με τον Όμιλο Forminster. Ο
     Weiss απέρριψε και αυτή την προσφορά.

23.  Ενώ προσπαθούσε να αγοράσει τις μετοχές της BGO στην Κότβα, ο
     Όμιλος Forminster προσπαθούσε επίσης να πωλήσει το μοναδικό
     πολύτιμο περιουσιακό στοιχείο της Κότβα, δηδαδή το πολυκατάστημά της
     στο κέντρο της Πράγας (το «Πολυκατάστημα»).

16

24.     Στις 12 Μαΐου, 2004, οι Weiss, Hoffmann, Benda και Harazim
        συναντήθηκαν στην Πράγα. Κατά την συνάντηση ο Harazim είπε στον
        Weiss και Hoffmann, ότι οι μετοχές της CVF Investments στην Κότβα δεν
        είχαν *καμμία* αξία. Ο Harazim είπε, ότι επειδή η CVF Investments είναι
        ένας μειοψηφών μέτοχος της Κότβα α.ε. οι μετοχές της στην Κότβα δεν
        έχουν αξία. Ο Harazim είπε ακόμη, ότι η Κότβα ουδέποτε θα προβεί σε
        διανομή προς τους μετόχους της, και ως εκ τούτου, οι μέτοχοι της Κότβα
        δεν θα ελάμβαναν τίποτε από τις προσόδους της πωλήσεως του
        Πολυκαταστήματος. Ο Harazim εξέφρασε την άποψη, ότι δεν υπήρχε
        τίποτα που μπορούσε να πράξει ο Weiss επ' αυτού ή για την
        προγενέστερη κλοπή των κεφαλαίων της Τρεντ.

25.     Τον Ιούνιο του 2004, δύο από τους μετόχους της Κότβα, οι Balfindor και
        Gilroy, υπέβαλαν μηνύσεις στα τσεχικά δικαστήρια, αμφισβητώντας
        ενέργειες στις οποίες είχε προβεί ο Όμιλος Forminster. Ο Balfindor
        αμφισβήτησε ενέργειες που έγιναν σε μία γενική συνέλευση της Κότβα. Ο
        Gilroy αμφισβήτησε τις προσπάθειες του Ομίλου Forminster να
        μεταβιβάσει το Πολυκατάστημα από την Κότβα α.ε. σε άλλες εταιρείες.

26.     Τον Αύγουστο του 2004, οι Benda και Harazim επλησίασαν τον
        Hoffman και του πρότειναν να αγοράσουν τις μετοχές της BGO στην
        Κότβα για 75,000,000 (75 εκατ.) τσέχικες κορώνες (CZK). Ούτε ο Benda
        ούτε ο Harazim όρισαν επακριβώς, ποιά εταιρεία από τον Όμιλο
        Forminster θα αγόραζε αυτές τις μετοχές. Ο Weiss απέρριψε την
        προσφορά αυτή και έκανε αντιπροσφορά προτείνοντας να πωλήσει τις
        μετοχές της BGO στην Κότβα, έναντι του ποσού των 131,000,000 (131
        εκατ.) τσεχικών κορωνών (CZK).

27.     Στις 17 Αυγούστου 2004 ο Harazim απάντησε στην αντιπροσφορά,
        στέλνοντας ένα e-mail σε έναν υπάλληλο της Weiss Capital στη Βοστώνη
        της Μασσαχουσέτης, δηλώνοντας τα εξής:

                Δυστυχώς, η προσφορά σας δεν φαίνεται να ασχολείται με τις
                μηνύσεις που υπεβλήθησαν από τους Balfindor και Gilroy
                εναντίον της εταιρείας μας. Χωρίς την επίλυση αυτών και άλλων
                πιθανών μηνύσεων εναντίον της εταιρείας μας, που μπορούν να

γίνουν από την BGO ή από οντότητες ελεγχόμενες από την BGO, δεν θα είμαστε σε θέση να καταλήξουμε σε οποιαδήποτε συμφωνία.

Εάν αναθεωρήσετε την θέση σας, μπορούμε να επανέλθουμε στη συζήτηση για την τιμή της αγοράς των μετοχών της Κότβα, που είναι στην κυριότητα της BGO.

28.    Βάσει του e-mail του Harazim, ο Weiss τροποποίησε την προσφορά του να πωλήσει τις μετοχές της BGO έναντι 131,000,000 (131 εκατ.) τσεχικών κορωνών (CZK), περιλαμβάνοντας την υπόσχεση να μην εγείρει οποιεσδήποτε νομικές αμφισβητήσεις, σχετιζόμενες με την ιδιοκτησία του Πολυκαταστήματος (Department Store) και την υπόσχεση, ότι θα προσπαθήσει να πείσει τον Gilroy, να αποσύρει την μήνυσή του που αμφισβητούσε την μεταβίβαση του Πολυκαταστήματος.

29.    Στις 27 Αυγούστου, 2004, ο Harazim απάντησε με e-mail στον υπάλληλο της Weiss Capital στη Βοστώνη της Μασσαχουσέττης, με το οποίο απαιτούσε ότι οποιαδήποτε αγορά των μετοχών της Κότβα θα ίσχυε υπό την προϋπόθεση της αποσύρσεως των «μηνύσεων που υπεβλήθησαν από τον Gilroy ΚΑΙ τον Balfindor, όχι μόνον τον Gilroy." Περί την ίδια ημερομηνία, ο Benda είπε στον Hoffman, ότι οποιαδήποτε αγορά μετοχών της Κότβα θα ίσχυε μόνον υπό τον όρο της άρσεως πάσης απαιτήσεως που είχε η BGO έναντι του Ομίλου Forminster, περιλαμβανομένων και των ισχυρισμών ότι οι μετοχές της Κότβα που είχε η Forminster, ανήκαν στην ουσία στην Trend.

30.    Η άρση των απαιτήσεων ότι η Trend είναι ο νόμιμος κάτοχος των μετοχών που έχει η Forminster στην Κότβα, θα απεγύμνωνε στην ουσία από κάθε αξία τις μετοχές της BGO στην Trend. Μιά μετοχή στην Trend έχει πρωτίστως αξία, διότι η Trend είναι ο νόμιμος κάτοχος του 32% τουλάχιστον της Κότβα και η Κότβα είναι ο νόμιμος ιδιοκτήτης ενός πολυτίμου ακινήτου ή των προσόδων από την πώληση αυτού του ακινήτου. Επιπλέον, οι μέτοχοι της Trend έχουν αξιώσεις έναντι της Forminster επί των υπολοίπων κεφαλαίων, τα οποία εφυγαδεύτηκαν από

18

την Trend. Αυτή η φυγάδευση κεφαλαίων προσέφερε το κεφάλαιο στην Forminster, το οποίο εχρησιμοποίησε γιά την αγορά προσθέτων μετοχών της Κότβα. Ο Weiss δεν μπορούσε να συμφωνήσει στην παραίτηση από τέτοιες αξιώσεις άνευ ουδεμίας ανταμοιβής.

31.    Ως εκ τούτου, γιά να ανταπεξέλθει στις απαιτήσεις του Harazim και Benda, ο Weiss τροποποίησε την προσφορά του, ώστε (α) έκανε αναφορά στην μήνυση του Balfindor, (β) περιελάμβανε τις μετοχές της BGO στην Trend, πέραν των μετοχών της BGO στην Κότβα, και (γ) αύξησε την τιμή αγοράς, ώστε να αντικατοπτρίζει την αξία των μετοχών της BGO στην Trend. Ο Weiss  περιέλαβε στην νέα προσοφρά ένα λεπτομερή υπολογισμό, ο οποίος αποδείκνυε την αξία των περιουσιακών στοιχείων που ήταν στην κυριότητα της BGO, τόσον στην Κότβα όσον και στην Trend.

32.    Απρόθυμος να πληρώσει στη CVF Investments την πραγματική αξία των μετοχών της, όπως αυτή αντανακλάται στην αξία του Πολυκαταστήματος, ο Harazim απέρριψε την προσφορά. Ο Harazim επανειλημμένως αρνήθηκε  να απαντήσει σε ερωτήσεις να εξηγήσει, γιατί η προταθείσα από τον Weiss τιμή αγοράς ήταν πολύ υψηλή ή γιατί οι υπολογισμοί που παρουσίασε ο Weiss ήταν λανθασμένοι ή ανακριβείς.

33.    Αντιθέτως ο Όμιλος Forminster απάντησε χρησιμοποιώντας την επιρροή του επί της Τσεχικής αστυνομίας για να προκαλέσει ή να αποπειραθεί να προκαλέσει την υποβολή μίας τεχνητής ποινικής κατηγορίας εκβιασμού κατά του Weiss. Ο Harazim φέρεται ειπών στον τσέχικο τύπο, ότι «έχει υποβάλει μιά ποινικού περιεχομένου μήνυση». Αυτή η μήνυση, εάν έχει υποβληθεί, στερείται ουσίας. Κατά πληροφορίες και τη γνώμη μας, η ουσία των κατηγοριών του Ομίλου Forminster είναι, ότι ο Weiss απείλησε να υποβάλει μηνύσεις, προσβάλλοντας την κατάχρηση που έγινε στις μετοχές της Trend στην Κότβα και την μεταβίβαση του Πολυκαταστήματος, εάν οι επενδυτές του δεν ελάμβαναν το δίκαιο μερίδιό τους από τις προσόδους της πωλήσεως του Πολυκαταστήματος. Και εάν ακόμη αυτού του είδους η συμπεριφορά ήταν εγκληματική –που

δεν είναι— ό Harazim και ο Benda και όχι ο Weiss ήταν αυτοί που απαιτούσαν, όπως καθε αγορά μετοχών συνδεθεί με την απόσυρση των μηνύσεων.

34.   Το κίνητρο του Ομίλου Forminster να προκαλέσει την τσεχική αστυνομία να υποβάλει μια ποινικού περιεχομένου μήνυση ήταν να αποκτήσει ένα άδικο πλεονέκτημα κατά του Weiss, στην προσπάθειά του να εξαναγκάσει τον Weiss να εγκαταλείψει τις απαιτήσεις των επενδυτών του στα τσεχικά δικαστήρια, οι οποίες ήταν αντίθετες προς τα συμφέροντα του Ομίλου Forminster (η «τσεχική δικαστική διαμάχη» --the "Czech litigation").

35.   Από τον Αύγουστο του 2004 έως τον Ιανουάριο του 2005, ο Harazim έστειλε τουλάχιστον εννέα e-mails στον Weiss και τουλάχιστον ένα άτομο στη Μασσαχουσέττη, ως μέρος των προσπαθειών του Ομίλου Forminster, να ασκήσει πίεση στον Weiss να εγκαταλείψει τις απαιτήσεις των επενδυτών του στην τσεχική δικαστική διαμάχη. Πιό συγκεκριμένα, σ' αυτά τα e-mails με ημερομηνίες 17 Αυγούστου, 2004, 27 Αυγούστου, 2004, 1 Δεκεμβρίου, 2004, 3 Δεκεμβρίου, 2004, 7 Δεκεμβρίου, 2004, 8 Δεκεμβρίου 2004, 15 Δεκεμβρίου 2004, 4 Ιανουαρίου, 2005, και 7 Ιανουαρίου, 2005, ο Harazim συνεχώς ζητούσε να αγοράσει μετοχές της Κότβα α.ε., αλλά έθετε ως όρον οποιασδήποτε αγοράς τον τερματισμό της τσεχικής δικαστικής διαμάχης.

36.   Ο Harazim απέστειλε αυτά τα e-mail υπό τις οδηγίες του Benda, τον οποίον περιγράφει σε ένα e-mail της 27$^{ης}$ Αυγούστου, 2004, ως «υπεύθυνο γιά αυτή τη συναλλαγή».

37.   Κατά πληροφορίες και τη γνώμη μας, ο Harazim έστειλε επίσης αυτά τα e-mails κατόπιν οδηγιών των John Does 1-5.

38.   Ακολούθως, ο Όμιλος Forminster υπέβαλε αυτή την αστικού δικαίου υπόθεση κατά του Weiss. Κατά πληροφορίες και τη γνώμη μας, οι Benda και Harazim επενέβησαν προσωπικά στην υποβολή αυτής της μήνυσης κατά της Κότβα α.ε., μετά την προς τούτο λήψη οδηγιών από την Forminster και τους John Does 1-5.

20

39.     Κατα πληροφορίες και την γνώμη μας, οι Benda, Harazim και/ή John
        Does 1-5 έστειλαν πολλά e-mails, επιστολές και/ή πανομοιοτυπίες (faxes)
        και έκαναν πολλαπλά τηλεφωνήματα στους πράκτορές τους στην
        Μασσσαχουσέττη, γιά να υποβάλουν αυτή την μήνυση.

40.     Το κακής πίστεως κίνητρο του Ομίλου Forminster στην υποβολή αυτής
        της μήνυσης ήταν η απόκτηση ενός ανίσου πλεονεκτήματος επί του
        Weiss, στην προσπάθειά του να εξαναγκάσει τον Weiss να εγκαταλείψει
        τις αξιώσεις των επενδυτών του στην τσεχική δικαστική διαμάχη.

41.     Ο Weiss  και η WAM έχουν υποστεί και εξακολουθούν να υφίστανται
        ζημίες στην Μασσαχουσέττη όσον αφορά την υπόληψη, διακοπή
        εργασιών, απώλεια χρόνου, και δικηγορικών εξόδων, ως αποτέλεσμα των
        αποφάσεων του Ομίλου Forminster, να υποκινήσει την τσεχική αστυνομία
        να υποβάλει την ποινική αυτή κατηγορία και να υποκινήσει την Κότβα να
        καταθέσει στο δικαστήριο αυτή την υπόθεση.

                *Η Φυγάδευση των Χρημάτων του Κεφαλαίου της Trend*

42.     Το 1995 και 1996 η διοίκηση της Trend κατεχράσθη τα κεφάλαια της
        Trend, περιλαμβανομένων και των μετοχών της Trend στην Κότβα.Η
        κατάχρηση των κεφαλαίων της Trend έχει τεκμηριωθεί εκτεταμένα  σε
        διάφορες τσεχικές κυβερνητικές εκθέσεις και αναφέρεται κοινώς ως το
        «Σκάνδαλο της Τρεντ» ή «Η Φυγάδευση των Κεφαλαίων της Τρεντ». Τα
        μέσα μαζικής ενημερώσεως έχουν επίσης κάνει εκτενή ρεπορτάζ γιά το
        Σκάνδαλο της Τρεντ[1] ("Trend Scandal") καθώς επίσης και γιά διάφορα
        ασυνήθιστα γεγονότα, που σχετίζονται με την έρευνα γύρω από το
        Σκάνδαλο της Τρεντ. Κατά πληροφορίες και τη γνώμη μας, πολλά άτομα
        της αστυνομίας έχοντα σχέση με την έρευνα γύρω από το Σκάνδαλο της
        Τρεντ έχουν είτε παραιτηθεί ή διαπράξει αυτοκτονία, υπό ύποπτες
        συνθήκες.

---

[1] Συνημμένα ενταύθα  ευρίσκονται υπό την μορφή  της Έκθεσης 2 (Exhibit 2) μερικά άρθρα του τύπου
γύρω από το Σκάνδαλο της Τρεντ με αγγλικές μεταφράσεις.

43.    Ο Μιροσλάβ Χάλεκ. (Miroslav Halek), ο οποίος είχε διευθυντικό ρόλο επί της Τρεντ κατά την περίοδο της καταχρήσεως, διέθετε επίσης και ένα πληρεξούσιο γία να ενεργεί ως εκπρόσωπος της Forminster κατά την ίδια χρονική περίοδο.

44.    Οι δεσμοί του Χάλεκ με την Forminster και η προσωπική του ανάμειξη στην κατάχρηση των κεφαλαίων της Τρεντ έχουν τεκμηριωθεί λεπτομερώς σε διάφορες εκθέσεις, που υπεβλήθησαν από τσέχους εισαγγελείς. Παραδείγματος χάριν, ο Περιφερειακός Δημόσιος Αντισαγγελέας έγραψε τα εξής:

> Συναλλαγές και μεταβιβάσεις μετοχών της Κότβα, α.ε., ήταν το πιό σημαντικό αντικείμενο του ενδιαφέροντος των κατηγορουμένων [Μιροσλάβ Χάλεκ και Σία.]. Οι μετοχές της Κότβα ανήκαν σε διάφορες σημαντικές επενδύσεις του κεφαλαίου κατά την περίοδο πριν από τις 4 Αυγούστου, 1995. <u>Σκοπός της προηγουμένης διοικήσεως ήταν, και είναι ακόμη, η μεταβίβαση των μετοχών της Κότβα σε εταιρείες ελεγχόμενες από τον κ. Χάλεκ και σία, και η απόκτηση της πλειοψηφίας των μετοχών της Κότβα, μέσω άλλων αγορών, και προς τον σκοπόν αυτόν εχρησιμοποίησαν τους πόρους του επενδυτικού κεφαλαίου.</u> Οι μετοχές της Κότβα είναι ακόμη στο επίκεντρο του ενδιαφέροντος των περιβαλλουσών τον κ. Ινγ. Χάλεκ και σία εταιρειών. Ακόμη και κατά την περίοδο της αναγκαστικής διαχειρίσεως, επετεύχθησαν αρκετές μεταβιβάσεις μετοχών της Κότβα, συγκεκριμένα μεταξύ προσώπων και εταιρειών και του Jiri Mares, συμμαθητού του κ. Χάλεκ, μέσω του οποίου μετοχές της Κότβα μετεβιβάσθησαν σε εταιρείες ελεγχόμενες από τον Ινγ. Χάλεκ, ο οποίος κατά πάσαν πιθανότητα τυγχάνει σημαντική προσωπικότης. <u>Κατά την περίοδο  υιοθετήσεως μίάς μη αποτελεσματικής αποφάσεως από το Περιφερειακό Δικαστήριο του Hradec Kralove, να απαγορεύσει οποιαδήποτε διάθεση  των μετοχών της Κότβα από την Kralovehradecka brokerska(KHB), η μεταβίβαση των μετοχών της Κότβα στην εταιρεία **Forminster Enterprises, Ltd.**, με έδρα την Κύπρο, προς τους οικονομικούς λογαριασμούς  της οποίας ο Ινγ.Χάλεκ διατηρεί ιδιαίτερα δικαιώματα, συνετελέσθη μέσω μίας εντολής της ανωτέρω KHB.</u>
>
> Οι δραστηριότητες της ομάδος του κ. Χάλεκ δεν έχουν σταματήσει ούτε ακόμη και μετά την απόφαση γία την αναγκαστική διαχείριση [της Τρεντ], και ως προκύπτει από πρόσφατες αποκαλύψεις, οι προσπάθειές τους να πάρουν τον έλεγχο της Κότβα και των

κεφαλαίων της Τρεντ συνεχίζονται μέχρι αυτής της στιγμής και ούτε οι ποινικές διώξεις, ούτε η τήρησή των υπό κράτηση αποτελούν εμπόδιο προς τούτο. Πριν από την έναρξη ακόμη των ποινικών διώξεων, είχε συντελεσθεί η μεταβίβαση μέρους των μετοχών της Κότβα προς την **Forminster Enterprises Ltd.**, η οποία εδρεύει στην Κύπρο, και μετά από αυτό η εταιρεία Kralovehradecka (brokerska) (KHB) α.ε. επωλήθη στην εταιρεία Bonit kapital, α.ε. εδρεύουσα στην πόλη Brno. Η KHB, που άλλαξε το όνομά της σε Brnenska obchodni, α.ε. αντιμετωπίζει σήμερα αίτηση κηρύξεως χρεωκοπίας εναντίον της. Σύμφωνα με πρόσφατες αποκαλύψεις, ακόμη και κατά την περίοδο της κρατήσεώς του, ο Ινγ. Χάλεκ υπέγραψε σημαντικά έγγραφα, σχετιζόμενα με τους λογαριασμούς της εταιρείας Forminster Enterprises, Ltd. με την τράπεζα LGT, εδρεύουσα στην πόλη Βαντούζ (Vaduz) του Λίχτενστάιν.

Έκθεση της 30ής Σεπτεμβρίου, 1998, του Περιφερειακού Δημόσιου Αντεισαγγελέα της Hradec Kralove (πρόσθετη έμφαση).

45.    Μετά από μία πολύπλοκη σειρά μεταβιβάσεων, μέλη του Ομίλου Forminster απέκτησαν την κυριότητα των μετοχών της Κότβα που είχαν καταχρασθεί από την Trend και, μέσω αυτών των μετοχών, απέκτησαν τον έλεγχο της Κότβα. Ο Όμιλος Forminster επλήρωσε σημαντικώς λιγώτερο για την μετοχές της Κότβα που είχε η Trend από την πραγματική τους αξία.

46.    Ο Όμιλος Forminster εχρησιμοποίησε επίσης και άλλα κεφάλαια που είχε καταχρασθεί από την Trend, γιά να αγοράσει μετοχές της Κότβα. Οι μετοχές της Κότβα που απέκτησε η Forminster από την Trend και οι μετοχές της Κότβα που αγόρασε η Forminster με κεφάλαια της Trend ξεπερνούν το 55% των μετοχών της Κότβα.

47.    Ως μέρος της έρευνας για την «φυγάδευση των κεφαλαίων της Τρεντ» (Trend Tunneling) το 1997, ένας εισαγγελέας στην Δημοκρατία της Τσεχίας επάγωσε τις μετοχές της Κότβα που ευρίσκονταν στην κυριότητα το Ομίλου Forminster, εμποδίζοντας έτσι την Forminster να τις πωλήσει. Το 2004, το Συνταγματικό Δικαστήριο (Constitutional Court) της Τσεχίας επεβεβαίωσε τις πράξεις του εισαγγελέως, γράφοντας:

23

Κατά την γνώμη του τότε Επόπτου Εισαγγελέως της Περιφερειακής Εισαγγελίας του Hradec Kralove, οι εν λόγω μετοχές ήταν αντικείμενο εγκληματικής ερεύνης ή, ανάλογα με την εξέλιξη της υποθέσεως, προϊόντα εγκλήματος, και ήσαν πλήρως και ουσιαστικώς συνδεδεμένες με την διάπραξη ενός σοβαρού εγκλήματος κατά της περιουσίας. Η έκδοση της εντολής σκοπόν είχε να αποκλείσει την ολοκλήρωση της αλυσίδας των παρανόμων μεταβιβάσεων μετοχών.

Συνταγματικό Δικαστήριο της Τσεχίας, Απόφασις υπ' αριθ. II US 267/03 (15 Απριλίου, 2004). Ομοίως, «κατά την γνώμη του Ανωτέρου Εισαγγελέως (High Public Prosecutor), [οι μετοχές της Forminster στην Κότβα] είναι προϊόντα εγκλήματος διαπραχθέντα από τον Ing. M. H[alek] (Χάλεκ) και σία. Οι μετοχές αυτές μετατράπηκαν σε αποδεικτικούς τίτλους (αξιόγραφα) (documentary securities) και τοποθετήθηκαν στον λογαριασμό της F[orminster] E[nterprises] Limited στο Χρηματιστηριακό Κέντρο της Πράγας» (Prague Security Exchange Center) (αυτόθι).

48.    Ο Εισαγγελέας της Hradec Kralove περιέγραψε το πάγωμα των μετοχών της Κότβα, που ήταν στην κυριότητα της Forminster, ως ένα περιωρισμένης κλίμακος, «ορίζοντας επακριβώς τις μετοχές εκείνες που είχαν αποτελέσει αντικείμενο εγκλήματος ή αποτέλεσμα αυτού», και δεν είχε εφαρμογή σε μετοχές «οι οποίες ουδεμίαν σχέσιν είχαν με έγκλημα, ή όπου μιά τέτοια σχέσις, εάν υποτεθεί ότι υπήρχε τοιαύτη, δεν μπορούσε να τεκμηριωθεί αδιαμφισβητήτως, βάσει των υπαρχόντων αποδεικτικών στοιχείων». 13 Μαΐου, 1997. Δικαστική εντολή του Εισαγγελέως της Hradec Kralove, αριθ. KZv 323/97.

49.    Κατά την ίδια περίπου περίοδο, το Ανώτερο Δικαστήριο (High Court) του Λίχτενστάιν επάγωσε τους λογαριασμούς της Forminster στην τράπεζα LGT στην πόλη Βαντούζ του Λιχτενστάιν, λόγω υπονοίας ξεπλύματος χρήματος και συνομωσίας, μεταξύ άλλων εγκλημάτων.

50.    Παρά την δικαστική εντολή του τσέχου Εισαγγελέως γιά το πάγωμα των μετοχών της Κότβα, υπό την κυριότητα του Ομίλου Forminster, μέλη του Ομίλου Forminster ήταν ακόμη σε θέση να ψηφίσουν αυτές τις μετοχές. Ο Όμιλος Forminster ελέγχει τουλάχιστον το 55% των μετοχών της Κότβα.

24

Ως πλειοψηφούντες μέτοχοι, ο Όμιλος Forminster εκλέγει το διοικητικό συμβούλιο της Κότβα και ελέγχει την διοίκησή του.

51.    Παρ' όλα αυτά το πάγωμα των μετοχών εδημιούργησε δυσκολίες στον Όμιλο Forminster. Δεν μπορούσαν να μετατρέψουν τις μετοχές της Κότβα σε μετρητά. Γι' αυτό έπρεπε να εφεύρουν έναν τρόπο να χωρίσουν τα κεφάλαια της Κότβα α.ε. από τις παγωμένες μετοχές της Κότβα α.ε., να ρευστοποιήσουν αυτά τα κεφάλαια, και να οικειοποιηθούν το προϊόν της ρευστοποιήσεως προς ίδιον όφελος.

52.    Τουλάχιστον από το 1999,  μετά την εκλογή του διοικητικού συμβουλίου της Κότβα α.ε., ο Όμιλος Forminster, μέσω των «ανθρώπων βιτρίνα» (front men), Benda και Harazim, εξάσκησε πλήρη έλεγχο επί της Κότβα α.ε. και ενεργώς κατηύθυνε όλες τις δραστηριότητές της, περιλαμβανομένης και της υποβολής αυτής της μηνύσεως. Ο Όμιλος Forminster χρησιμοποιεί  τον πλήρη του έλεγχο επί της Κότβα α.ε. γιά να δράσει κατά ιδιοτελή τρόπο, αδιαφορώντας γιά τα συμφέροντα των μειοψηφούντων μετόχων της Κότβα α.ε. Χρησιμοποιεί την Κότβα α.ε. γιά να εξυπηρετήσει τα συμφέροντα του Ομίλου Forminster και να απατήσει τους μειοψηφούντες μετόχους.

53.    Ο Όμιλος Forminster έκανε την Κότβα α.ε. να μεταβιβάσει το ακίνητο του Πολυκαταστήματος (Department Store) μέσω μιάς σειράς «εταιρειών κελύφων». Αυτές οι μεταβιβάσεις δεν έχουν κανένα λογικό επιχειρηματικό σκοπό, παρά είναι σχεδιασμένες να επιτρέψουν  στον Όμιλο Forminster να  πάρει με μεγαλύτερη ευκολία της προσόδους από την πώληση του Πολυκαταστήματος. Τελικά, το Πολυκατάστημα επωλήθη σε μία ιρλανδική εταιρεία , ονομαζομένη Markland, έναντι του ποσού των $65 περίπου εκατομμυρίων δολλαρίων.

54.     Πιό συγκεκριμένα, η Κότβα α.ε. πρώτα μεταβίβασε το Πολυκατάστημα σε μιά εταιρεία που εδημιούργησε και ονόμασε Kotva Nemovitosti. Κατά πληροφορίες και την γνώμη μας, πρόεδρος του διοικητικού συμβουλίου της Kotva Nemovito κατά την περίοδο αυτή ήταν ο Benda. Ο Όμιλος Forminster ανάγκασε τότε την Κότβα α.ε. να μετατρέψει την Kotva

Nemovitosti από μιά πλήρως ελεγχόμενη θυγατρική εταιρεία σε μιά ετερόρρυθμη εταιρεία (limited partnership), στην οποία η Κότβα α.ε. είχε δικαίωμα σε λιγώτερο από το μισό των κερδών και του πλεονάσματος της ρευστοποίησης.

55.    Κατόπιν, ο Όμιλος Forminster απεμάκρυνε ακόμη περισσότερο το Πολυκατάστημα από τους μετόχους της Κότβα με την μεταβίβαση του Πολυκαταστήματος από την Kotva Nemovitosti σε μιά άλλη εταιρεία ονομαζόμενη SPV KN. Ο Όμιλος Forminster εχρησιμοποίησε μη καταγεγραμμένες και μη ανιχνεύσιμες προσωπικές ανώνυμες μετοχές (untraceable bearer shares), για να δημιουργήσει την ιδιοκτησία της SPV KN.

56.    Κατά πληροφορίες και τη γνώμη μας, όταν η SPV KN έλαβε για πρώτη φορά το Πολυκατάστημα από τη Kotva Nemovitosti, η Kotva Nemovitosti είχε υπό την κυριότητά της όλες τις προσωπικές επιταγές (bearer shares), που απεδείκνυαν την ιδιοκτησία της SPV KN. Όμως, σύμφωνα με την Ετήσια Έκθεση (Annual Report) του 2004 της Κότβα, ο Όμιλος Forminster απομάκρυνε ακόμη πιό πολύ από τους μετόχους της Κότβα α.ε. το Πολυκατάστημα, με το να αναγκάσει την Kotva Nemovitosti να μεταβιβάσει το 97% των μετοχών της SPV KN, σε μια κυπριακή εταιρεία ονομαζόμενη SPV CO.

57.    Η SPV CO είναι μέρος του Ομίλου Forminster. Η SPV CO έχει ως καταγεγραμμένη έδρα της την διεύθυνση: Αγίου Παύλου 15, Άγιος Ανδρέας, 1105 Λευκωσία, Κύπρος. Η διεύθυνση είναι επίσης καταγεγραμμένη και ως έδρα των δικηγορικών γραφείων της εταιρείας Χριστόδουλος Γ. Βασιλειάδης και Σία (Christodoulos G. Vassiliades & Co.), ο νομικός οίκος δηλαδή που ίδρυσε την Forminster το 1996.

58.    Σύμφωνα με την Ετήσια Έκθεση της Κότβα γιά το 2004, ο Όμιλος Forminster προέβη στην πώληση του Πολυκαταστήματος στην CRQ Czech, μιά τσεχική εταιρεία ελεγχόμενη από την Markland, με την μεταβίβαση των προσωπικών επιταγών (bearer shares) της SPV KN, από την SPV CO στην CRQ Czech.

59. Κατ' αυτόν τον τρόπον, τα έσοδα από την πώληση του Πολυκαταστήματος δεν θα δοθούν στην Κότβα ή ακόμη σε κάποια άλλη τσεχική εταιρεία. Αντιθέτως, φαίνεται ότι η τιμή αγοράς γιά τις μετοχές της SPV ΚΝ θα καταβληθεί ή έχει καταβληθεί στην SPV CO ή κάποια άλλη ελεγχόμενη από την Forminster οντότητα, η οποία θα διανείμη τα έσοδα από την πώληση μεταξύ των μετόχων του Ομίλου Forminster μάλλον, παρά μεταξύ των μετόχων της Κότβα.

60. Το σχέδιο του Ομίλου Forminster προξένησε ζημία στους ενάγοντες της ανταπαίτησης (counterclaim plaintiffs) Κ Τ και CVF Investments Ltd., εμποδίζοντάς τους να αποκομίσουν την δικαία απόδοση των επενδύσεών τους, την οποία οι πλειοψηφούντες μέτοχοι της Κότβα α.ε., ο Όμιλος Forminster, έχουν ήδη ή αναμένουν να αποκομίσουν.

### Κατηγορία Ι

#### (Κατάχρηση Διαδικασίας –

## Οι Ενάγοντες της Ανταπαίτησης (Counterclaim-Plaintiffs) Andrew Weiss και Weiss Asset Management LLC κατά όλων των Εναγομένων της Ανταπαίτησης

#### (Counterclaim Defendants)

61. Οι παράγραφοι 1-60 έχουν ενσωματωθεί δι' αναφοράς, ως εάν είχαν πλήρως εκτεθεί ενταύθα.

62. Ο Όμιλος Forminster, περιλαμβανομένων όλων των εναγομένων της ανταπαίτησης (counterclaim-defendants), εχρησιμοποίησε την τσεχική ποινική διαδικασία με την υποβολή ποινικής διώξεως και με την άσκηση της επιρροής του επί της τσεχικής αστυνομίας, για να προκαλέσει ή αποπειραθεί να προκαλέσει την έγερση ποινικών κατηγοριών κατά του Weiss.

63. Η πράξη αυτή είχε ένα απώτερο και παράνομο σκοπό, ως περιεγράφη ανωτέρω.

64. Ο ενάγων της ανταπαίτησης (countermalim-plaintiff) Weiss εζημιώθη από την κατάχρηση αυτή της διαδικασίας, ως περιεγράφη ανωτέρω.

27

65.    Ο Όμιλος Forminster, περιλαμβανομένων όλων των εναγομένων της ανταπαίτησης, εχρησιμοποίησε την αστική διαδικασία των Ηνωμένων Πολιτειών με την υποβολή της παρούσης μηνύσεως.

66.    Η πράξη αυτή είχε ένα απώτερο και παράνομο σκοπό, ως περιεγράφη ανωτέρω.

67.    Οι ενάγοντες της ανταπαίτησης Weiss και Weiss Asset Management εζημιώθηκαν από την κατάχρηση αυτή της διαδικασίας, ως περιεγράφη ανωτέρω.

## Κατηγορία ΙΙ

**(Συνωμοσία -- Οι Ενάγοντες της Ανταπαίτησης Andrew Weiss, Weiss Asset Management, Κ Τ, Inc. και CVF Investment Ltd. κατά Όλων των Εναγομένων της Ανταπαίτησης)**

68.    Οι παράγραφοι 1-67 ενσωματώνονται δι' αναφοράς, ως εάν είχαν πλήρως εκτεθεί ενταύθα.

69.    Τα μέλη του Ομίλου Forminster, περιλαμβανομένων όλων των εναγομένων της ανταπαίτησης (counterclaim-defendants), συμφώνησαν να συνεργασθούν από κοινού γιά να λεηλατήσουν τα κεφάλαια της Κότβα, να κάνουν κατάχρηση της τσεχικής ποινικής διαδικασίας, και της αστικής διαδικασίας των Ηνωμένων Πολιτειών.

70.    Τα μέλη του Ομίλου Forminster διαθέτουν μιά ιδιαίτερη δύναμη εξαναγκασμού κατά το ότι, ως όμιλος, έχουν πρόσβαση και επιρροή επί ενός τουλάχιστον μέλους της τσεχικής κυβερνήσεως, περιλαμβανομένης και της ικανότητας να αναγκάζουν την τσεχική αστυνομία να υποβάλει ποινικές διώξεις, πράγμα το οποίο προσφέρει σ' αυτά ισχυρό πλεονέκτημα στις εμπορικές τους διαμάχες.

71.    Οι εναγόμενοι της ανταπαίτησης Kotva, Benda, Harazim, Forminster, SPV CO και John Does 1-5 έχουν συνωμοτήσει γιά να ζημιώσουν τους ενάγοντες της ανταπαίτησης Weiss, Weiss Asset Management, ΚΤ, Inc. και CVF Investments Ltd., ως περιεγράφη ανωτέρω.

## Κατηγορία III

### (Σφετερισμός – Plaintiffs K T, Inc. και CVF Investments Ltd. κατά Benda, Harazim, Forminster, SPV CO και John Does 1-5)

72. Οι παράγραφοι 1-71 ενσωματώνονται δι' αναφοράς, ως εάν είχαν πλήρως εκτεθεί ενταύθα.

73. Η Κότβα α.ε. είτε αμέσως είτε μέσω μίας πλήρως ελεγχομένης θυγατρικής έχει ή είχε το δικαίωμα στις προσόδους από την πώληση του Πολυκαταστήματος.

74. Οι εναγόμενοι της ανταπαίτησης (counterclaim-defendants) Benda, Harazim, Forminster, SPV CO και John does 1-5, έλαβαν παρανόμως τον έλεγχο των συμφερόντων της Κότβα, σχετικά με τις προσόδους από την πώληση του Πολυκαταστήματος. Με την πράξη τους αυτή, οι εναγόμενοι της ανταπαίτησης αποστέρησαν την Κότβα και τους μετόχους της, περιλαμβανομένων των εναγόντων της ανταπαίτησης (counterclaim-plaintiffs) K T και CVF Investments από τα δικαιώματά τους να επωφεληθούν από την αξία του Πολυκαταστήματος.

## Κατηγορία IV

### (Παράνομος Πλουτισμός–

### Οι Ενάγοντες της Ανταπαίτησης K T, Inc. και CVF Investments Ltd. κατά Benda, Harazim, Forminster, SPV CO και John Does 1-5)

75. Οι παράγραφοι 1-74 ενσωματώνονται δι' αναφοράς, ως εάν είχαν πλήρως εκτεθεί ενταύθα.

76. Με την πώληση του Πολυκαταστήματος και την κράτηση των προσόδων για τον εαυτό τους οι εναγόμενοι της ανταπαίτησης Benda, Harazim, Forminster, SPV CO και John Does 1-5 επλούτησαν παρανόμως και εις βάρος των εναγόντων της ανταπαίτησης K T, Inc. και CVF Investments Ltd.

## Κατηγορία V

### (Παράβαση Διαπιστευμένου Καθήκοντος/Κατάχρηση Ελέγχου
### Οι Ενάγοντες της Ανταπαίτησης Κ Τ, Inc. και CVF Investments Ltd. κατά
### Benda, Harazim και Forminster)

77. Οι παράγραφοι 1-76 ενσωματώνονται δι' αναφοράς, ως εάν είχαν πλήρως εκτεθεί ενταύθα.

78. Ο Harazim είναι αξιωματούχος της Κότβα α.ε., μέλος του Εποπτικού της Συμβουλίου και πρώην μέλος του διοικητικού συμβουλίου της Κότβα α.ε.

79. Ο Benda είναι Πρόεδρος του Εποπτικού Συμβουλίου της Κότβα α.ε. και πρώην μέλος του διοικητικού συμβουλίου της Κότβα α.ε.

80. Από το 1997 η Forminster έχει υπό τον έλεγχόν της την πλειοψηφία των μετοχών της Κότβα α.ε. και τουλάχιστον από το 1999, έχει υπό τον έλεγχό της το διοικητικό συμβούλιο της Κότβα α.ε.

81. Ως αξιωματούχος, διευθυντής και εποπτεύον μέλος του διοικητικού συμβουλίου της Κότβα α.ε. ο Harazim οφείλει να έχει διαπιστευμένο καθήκον υψίστης αφοσίωσης και καλής πίστης προς την Κότβα και τους μετόχους της.

82. Ως διευθυντής και εποπτεύον μέλος του διοικητικού συμβουλίου της Κότβα α.ε., ο Benda οφείλει να έχει διαπιστευμένο καθήκον υψίστης αφοσίωσης και καλής πίστης προς την Κότβα και τους μετόχους της.

83. Ως εταιρεία η οποία ελέγχει την πλειοψηφία των μετοχών της Κότβα α.ε., η Forminster έχει το καθήκον προς τους μειοψηφούντες μετόχους της Κότβα, να μην κάνει κατάχρηση της πλειοψηφίας των ψήφων της.

84. Ως εποπτεύοντα μέλη του διοικητικού συμβουλίου της Κότβα, ο Benda και Harazim έχουν χρέος προς τους μετόχους της Κότβα να ελέγχουν το διοικητικό συμβούλιο.

85. Με το να κατευθύνουν και να συμμετέχουν στις επανειλημμένες μεταβιβάσεις του Πολυκαταστήματος προς όφελος του Ομίλου Forminster παρά προς τους μετόχους της Κότβα, οι Harazim, Benda και Forminster παρέβησαν τα αντίστοιχα καθήκοντά τους προς τους μετόχους

της Κότβα, περιλαμβανομένων και των εναγόντων της ανταπαίτησης Κ Τ
και CVF Investments Ltd.

86.    Χρησιμοποιώντας την επιρροή τους επί του διοικητικού συμβουλίου της
Κότβα, με αποτέλεσμα να κάνουν το εν λόγω διοικητικό συμβούλιο να
ενεργήσει εις βάρος της Κότβα και των μετόχων της, περιλαμβανομένων
των εναγόντων της ανταπαίτησης Κ Τ και CVF Investments Ltd., οι
Benda, Harazim και Forminster έκαναν κατάχρηση του ελέγχου τους επί
του διοικητικού συμβουλίου της Κότβα, κατά παράβαση του Τσεχικού
Εμπορικού Κώδικος &66c.

87.    Με το να επιτρέψουν και να ενθαρρύνουν το διοικητικό συμβούλιο να
αποστερήσει την Κότβα από το Πολυκατάστημα και με το να μην
βεβαιωθούν, ότι οι μέτοχοι της Κότβα θα λάβουν ως αντάλλαγμα μιά
δίκαιη αποζημίωση, οι Benda και Harazim παρέβησαν το καθήκον τους
να ελέγχουν το διοικητικό συμβούλιο της Κότβα και τούτο απέβη εις
βάρος των μετόχων της Κότβα, περιλαμβανομένων και των εναγόντων
της ανταπαίτησης Κ Τ και CVF Investments Ltd.

88.    Οι ενάγοντες της ανταπαίτησης Κ Τ και CVF Investments Ltd.
εζημιώθησαν από αυτές τις παραβάσεις διαπιστευμένου καθήκοντος και
κατάχρησης ελέγχου, ως περιγράφη ανωτέρω.

### Κατηγορία VI
### (Εποικοδομητικό Τραστ –Constructive Trust--
### Οι Ενάγοντες της Ανταπαίτησης KT, Inc. και CVF Investments Ltd.
### κατά πάντων των Εναγομένων της Ανταπαίτησης)

89.    Οι παράγραφοι 1-88 ενσωματώνονται δι' αναφοράς, ως εάν είχαν πλήρως
εκτεθεί εντάυθα.

90.    Το Πολυκατάστημα, οι προσωπικές ανώνυμες μετοχές (bearer shares)
στην SPV KN και/ή τα έσοδα από την πώληση αυτού του είδους των
μετοχών από την SPV KN υπόκεινται στην δημιουργία ενός
εποικοδομητικού τράστ (constructive trust) προς όφελος των μετόχων της

31

Κότβα, περιλαμβανομένων των εναγόντων της ανταπαίτησης Κ Τ και
CVF Investments Ltd.

### Κατηγορία VII

**(Αθέμιτος Συναγωνισμός και Αθέμιτες και Δόλιες Εμπορικές
Πρακτικές ---Andrew Weiss, Weiss Asset Management, Κ Τ, Inc. και CVF
Investments Ltd. κατά πάντων των Εναγομένων της Ανταπαίτησης)**

91. Οι παράγραφοι 1-90 ενσωματώνονται δι' αναφοράς, ως εάν είχαν πλήρως
   εκτεθεί ενταύθα.

92. Ο Όμιλος Forminster και τα μέλη του ασχολούνται με εμπορικές και
   συναφείς συναλλαγές, οι οποίες εμπίπτουν εντός των πλαισίων του νόμου
   M.G.L. ch. 93A.

93. Οι ενάγοντες της ανταπαίτησης Weiss, WAM, Κ Τ, Inc. και CVF
   Investments Ltd. ασχολούνται με εμπορικές και συναφείς συναλλαγές, οι
   οποίες εμπίπτουν εντός των πλαισίων του νόμου M.G.L. ch. 93A.

94. Ο σφετερισμός, απάτη, κατάχρηση διαδικασίας, συνωμοσία και δόλιες
   μεταβιβάσεις του Πολυκαταστήματος από τον Όμιλο Forminster
   συνιστούν αθέμιτες και δόλιες εμπορικές πρακτικές.

95. Ο Όμιλος Forminster εφαρμόζει αυτές τις αθέμιτες και δόλιες εμπορικές
   πρακτικές εν γνώσει του και  εκ προθέσεως.

96. Ως αποτέλεσμα των πράξεων αυτών, οι ενάγοντες της ανταπαίτησης
   υπέστησαν ζημίες, ως περιεγράφη ανωτέρω.

### Κατηγορία VIII

**(Δικαστική Απόφαση  ---Declaratory Judgment –
Οι Ενάγοντες της Ανταπαίτησης Κ Τ, Inc. και CVF Investments Ltd. κατά
πάντων των Εναγομένων της Ανταπαίτησης)**

97. Οι παράγραφοι 1-96 ενσωματώνονται δι' αναφοράς, ως εάν είχαν πλήρως
   εκτεθεί ενταύθα.

98. Υπάρχει μιά σοβαρή διαμάχη μεταξύ των εναγόντων της ανταπαίτησης
   Κ Τ, Inc.και CVF Investments Ltd. αφ' ενός, και των Benda, Harazim,

Forminster, SPV CO και John Does 1-5 αφ' ετέρου, ως προς το ποιός θα πρέπει να λάβει τις προσόδους από την πώληση του Πολυκαταστήματος.

99.     Οι Benda, Harazim, Forminster, SPV CO και John Does 1-5 έχουν υπό την κατοχή τους τις προσόδους από την εν λόγω πώληση με παράνομα μέσα. Κατά συνέπειαν δεν έχουν νόμιμο δικαίωμα επ' αυτών των προσόδων.

100.    Αντιθέτως, οι πρόσοδοι από την πώληση ανήκουν στην Κότβα α.ε. και τους μετόχους της.

101.    Υπάρχει σοβαρή διαμάχη μεταξύ των εναγόντων της ανταπαίτησης Κ Τ, Inc. αφ' ενός, και των Benda, Harazim, Forminster, SPV CO και John Does 1-5, αφ' ετέρου, ως προς το εάν η Forminster είναι ο νόμιμος κάτοχος του 55% των μετοχών της Κότβα.

102.    Με την παράνομη διατήρηση ελέγχου επ' αυτών των μετοχών, ο Όμιλος Forminster είναι εις θέσιν να διατηρεί τον έλεγχον επί της Κότβα και να προβαίνει εις πράξεις οι οποίες βλάπτουν την μειοψηφία των μετόχων, περιλαμβανομένων των εναγόντων της ανταπαίτησης Κ Τ, Inc.και CVF Investments Ltd.

103.    Ο Όμιλος Forminster δεν έχει νόμιμο δικαίωμα επί των μετοχών του στην Κότβα, διότι οι μετοχές αυτές είτε εκλάπησαν από την Trend είτε αντιπροσωπεύουν προσόδους από άλλα κεφάλαια κλεμμένα από την Trend.


**ΑΙΤΗΣΗ ΓΙΑ ΑΠΟΚΑΤΑΣΤΑΣΗ ΖΗΜΙΑΣ  (PRAYER FOR RELIEF)**

ΔΙΑ ΤΑΥΤΑ, οι ενάγοντες της ανταπαίτησης Andrew Weiss, Weiss Asset Management LLC, ΚΤ, Inc. και CVF Investments Ltd. ευσεβάστως παρακαλούν όπως το δικαστήριο αυτό:

(α)      Εκδώσει δικαστική απόφαση υπέρ των εναγόντων της ανταπαίτησης και καταδικάσει τους εναγόμενους της ανταπαίτησης επί όλων των κατηγοριών του ανταπαίτησης

(β)      Επιβάλει την δημιουργία ενός εποικοδομητικού τραστ (constructive trust) γιά τις προσόδους της πωλήσεως του Πολυκαταστήματος

33

(γ)    Κηρύξει ότι οι μέτοχοι της Κότβα α.ε. είναι οι κύριοι των προσόδων από την πώληση του Πολυκαταστήματος

(δ)    Κηρύξει ότι ο Όμιλος Forminster δεν είναι ο νόμιμος κάτοχος των μετοχών της Κότβα α.ε., επί των οποίων ισχυρίζεται ότι έχει κυριότητα

(ε)    Λάβει απόφαση, η οποία να απαιτεί όπως οι Benda, Harazim, Forminster και John Does 1-5, παραιτηθούν από τις προσόδους της πωλήσεως του Πολυκαταστήματος και μεταφέρουν αυτές στους μετόχους της Κότβα α.ε.

(στ)    Επιδικάσει αποζημιώσεις επί των κατηγοριών I, II, III, IV, V, και VII, περιλαμβανομένης τριπλής αποζημιώσεως επί της Κατηγορίας VII

(ζ)    Επιδικάσει προς τους ενάγοντες της ανταπαίτησης τα έξοδά των

(η)    Επιδικάσει προς τους ενάγοντες της ανταπαίτησης τα δικηγορικά τους έξοδα, και

(θ)    Προσφέρει οποιαδήποτε άλλη αποζημίωση την οποία το Δικαστήριο θα κρίνει δικαία και αρμόζουσα.

## ΑΙΤΗΣΗ ΔΙΚΗΣ ΜΕ ΕΝΟΡΚΟΥΣ

ΟΙ ΕΝΑΓΟΜΕΝΟΙ  ΚΑΙ ΕΝΑΓΟΝΤΕΣ ΤΗΣ ΑΝΤΑΠΑΙΤΗΣΗΣ ΑΠΑΙΤΟΥΝ ΔΙΚΗ ΜΕ ΕΝΟΡΚΟΥΣ ΕΠΙ ΟΛΩΝ ΤΩΝ ΔΙΚΑΣΙΜΩΝ ΘΕΜΑΤΩΝ.

Υποβληθέν ευσεβάστως, υπό των
ANDREW WEISS, WEISS ASSET
MANAGEMENT LLC, K T, INC., και  CVF
INVESTMENTS LTD.

Διά των δικηγόρων τους,


/s/Benjamin A. Goldberger
Edward P. Leibensperger (BBO#292620)
Michael Kendall (BBO# 544866)
Benjamin A. Goldberger (BBO# 654357)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts 02109-1775
(617) 535-4000

Ημερομηνία: 15 Ιουνίου, 2005

## ΠΙΣΤΟΠΟΙΗΤΙΚΟ ΥΠΗΡΕΣΙΑΣ

Ο κάτωθι υπογεγραμμένος Benjamin A.Goldberger, δηλώ υπευθύνως, ότι την 15$^{ην}$ Ιουνίου, 2005, το προηγούμενο έγγραφο διεβιβάσθη διά κατεπείγοντος ταχυδρομείου προς τον δικηγορικόν οίκον τον αναλαβόντα την υπόθεση της Κότβα α.ε.

/s/Benjamin A. Goldberger_____

Benjamin A. Goldberger

35

1

## ΕΚΘΕΣΗ 1 (EXHIBIT 1)
## ΠΕΡΙΛΗΨΗ ΤΩΝ ΑΝΤΑΠΑΙΤΗΣΕΩΝ

| Κατηγορία<br><br>Εναγό-μενος | I<br>Κατάχρηση Διαδικασίας Weiss και WAM | II<br>Συνωμοσία Weiss, WAM, ΚΤ και CVFI | III<br>Σφετερισμός ΚΤ και CVFI | IV<br>Παράνομος Πλουτισμός ΚΤ και CVFI | V<br>Παράβαση Καθήκοντος/ Κατάχρηση Ελέγχου ΚΤ και CVFI | VI<br>Επρικοδο-μητικό Τράστ ΚΤ και CVFI | VII<br>Αθέμιτες Εμπορικές Πρακτικές Weiss, WAM, ΚΤ και CVFI | VIII<br>Δικαστική Απόφαση ΚΤ και CVFI |
|---|---|---|---|---|---|---|---|---|
| Κότβα α.ε. | X | X | | | | X | X | X |
| Forminster | X | X | X | X | | X | X | X |
| SPV CO | X | X | X | X | | X | X | X |
| Benda | X | X | X | X | X | X | X | X |
| Harazin | X | X | X | X | X | X | X | X |
| John Does 1-5 | X | X | X | X | | X | X | X |

# CERTIFICATE
## ATTESTATION

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,

*L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,*

1) **that the document has been served\***

*1. que la demande a été exécutée*

— the (date)

— *le (date)* _____ 9/9/05 _____

— at (place, street, number)

— *à (localité, rue numéro)* ___ 4, Diagonou str., Kermia Building, Office 601, Nicosia – CYPRUS _____

— in one of the following methods authorised by article 5:—

— *dans une des formes suivantes prévues à l'article 5:*

☐ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention\*.

*a) selon les formes légales (article 5, alinéa premier, lettre a)*

☐ (b) in accordance with the following particular method\*:

*b) selon la forme particulière suivante :* _____

☐ (c) by delivery to the addressee, who accepted it voluntarily.\*

*c) par remise simple*

The documents referred to in the request have been delivered to: Mr Andreas Papasiantis

*Les documents mentionnés dans la demande ont été remis à:*

— (identity and description of person)

— *(identité et qualité de la personne)* ___ Person in charge at the office of the Company "FORMASTER Enterprises LTD"

— relationship to the addressee (family, business or other):

— *liens de parenté, de subordination ou autres, avec le destinataire de l'acte:* ___ Business

2) **that the document has not been served, by reason of the following facts\*:**

*2. que la demande n'a pas été exécutée, en raison des faits suivants:*

_____

_____

_____

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement.\*

*Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint.*

**Annexes**

*Annexes*

**Documents returned:**

*Pièces renvoyées:*

_____

_____

**In appropriate cases, documents establishing the service:**

*Le cas échéant, les documents justificatifs de l'exécution:*

a) Certificate of service (12/9/05)
b) Affidavit of service (12/9/05)
c) Documents returned (2nd copy)

\***Delete if inappropriate.**

*Rayer les mentions inutiles*

**Done at**

*Fait à* ___ Nicosia ___ , the 26/9/05

*le*

**Signature and/or stamp.**

*Signature et/ou cachet.*

2

S.C. 12.9.06

## CERTIFICATE OF SERVICE OF FOREIGN PROCESS

I, Irene Christodoulou, Acting Assistant Chief Registrar of the Supreme Court of Cyprus, hereby certify that the documents annexed hereto are as follows:

1.    Copies of judicial documents received from U.S.A. dated 28/7/05.

the originals of which were served on          FORMINSTER ENTERPRISES LTD

4 Diagorou Str.

Kermia Building, office 601

NICOSIA

2.    An affidavit of the Bailiff showing that the service of the judicial documents received from the above authority was duly effected on Andreas Papasiantis, person in charge at the office of the above-named company.

And I certify that such service so proved and the proof thereof is such as is required by the Law and practice of the Supreme Court of Cyprus.

Date this the 12th day of September, 2005.

Irene Christodoulou

Acting Assist. Chief Registrar

SUPREME COURT OF CYPRUS

## AFFIDAVIT OF SERVICE

I, Marios Demosthenous Bailiff -Server in the Supreme Court of Cyprus, make

oath   and say that the judicial document received from..... U.S.A ..............

.................................................................have been served to

Forminster Enterprises Ltd ........ ..... at her/his address

4, Diagorou Street, Kermia Building, office 601 ...........

Nicosia, Cyprus .......... on the 09/09/2005 upon Andreas ......

Papasiantis person in charge of the office of the above-named company

(Sgd.)... Demosthenous ....................

Marios Demosthenous

Bailiff

Sworn and signed before me

At the Supreme Court of Cyprus

on the    12\9\05 ....

Registrar

9/09/05

Andrea Possenti

# REQUEST
## FOR SERVICE ABROAD OF JUDICIAL OR EXTRA JUDICIAL DOCUMENTS

*DEMANDE*
*AUX FINS DE SIGNIFICATION OU DE NOTIFICATION A L'ETRANGER*
*D'UN ACTE JUDICIARE OU EXTRAJUDICIAIRE*

ΔΗΦΘΗΚΕ ΜΙΝΙΣΤRY

2 3 ΑΥΓ 2005

Convention on the service abroad of judicial and extrajudicial documents in civil or
commercial matters, signed at The Hague, November 15, 1965

ΚΥΠΡΙΑΚ... διδικίε
& ΔΗΜΟΣΙΑΣ ΤΑΞΕ...

*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile*
*ou commerciale. signée à La Hage. le 15 Novembre 1965.*

| Identity and address of the applicant | Address of receiving authority |
|---|---|
| *Indentité et adresse du requérant* | *Adrese de l'autorité destinataire* |
| L. Celeste Ingalls** <br> Crowe Foreign Services <br> 1020 SW Taylor Street, Suite 240 <br> Portland, Oregon 97205 <br> USA <br><br> Fax Number: 1-503-222-3950 | Permanent Secretary <br> Ministry of Justice and Public Order <br> ~~12 Ilioupoleos St.~~ 125, Athalassis Avenue <br> 1461 Lefkosia (Nicosia) <br> 22805964 <br> Tel:+357 ~~22805921~~    Fax: + 357 22518349 <br> EMail: lazaros.savvides@cytanet.com.cy |

The undersigned applicant has the honour to transmit - in duplicate - the documents listed below and, in conformity with article 5 of the
above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.,
   (identity and address)
   *Le requérant soussigné a l'honneur de faire parvenir - en double exemplaire - a l'autorité destinataire les documents ci-dessous énumérés*
   *en la priant conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au destinataire, savoir:*
      (identité et adresse)

Forminster Enterprises, Ltd.
4 Diagorou Street, Kermia Building, Off. 601
Nicosia, Cyprus

(a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention.*
   *a)  selon les formes légales (article 5. alinéa premier, lettre a).*

(b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5)*:
   *b)  selon la forme particulière suivante (article 5, alinéa premier, lettre b):*

To be delivered personally to a director, officer, or other individual authorized to accept service for Defendant
Forminster Enterprises, Ltd., or if this method is not possible, serve in accordance with method (a) above.

☐    ~~(c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of article 5)*.~~
   ~~c) le cas échéant, par remise simple (article 5, alinéa 2).~~

The authority is requested to return or to have returned to the applicant a copy of the documents - and of the annexes* - with a certificate as
provided ~~on the reverse side~~ (attached).
   *Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte - et de ses annexes - avec l'attestation figurant*
   *au verso.*

List of documents
*Enumération des pièces*

Done at Portland, Oregon, USA, the 28th day of July, 2005
*Fait à Portland. Oregon. USA. le ...*

Executed "Request", in duplicate
Executed "Summary", in duplicate
Unexecuted "Certificate", in duplicate
*** Summons, in duplicate
*** First Amended Answer and
      Counter-claim, with exhibits, in duplicate

Signature and/or stamp.
*Signature et/ou cachet*

OFFICIAL SEAL
L. CELESTE INGALLS
NOTARY PUBLIC-OREGON
COMMISSION NO. 353683
MY COMMISSION EXPIRES FEB. 5, 2006

L. Céleste Ingalls

*    Delete if inappropriate
      *Rayer les mentions inutiles*

**    Authorized applicant pursuant to Rule 4(c)(2) of the
      Federal Rules of Civil Procedure, Public Law 97-462
      And Pennsylvania Court Order
***    With French translation attached

## SUMMARY OF THE DOCUMENT TO BE SERVED
*ELEMENTS ESSENTIELS DE L'ACTE*

Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965

*Convention relative à la signification et à la notification à l'étranger des actes judiciaires et extrajudiciares en matière civile ou commerciale, signée à La Hage, le 15 Novembre 1965*

(article 5, fourth paragraph)
*(article 5, alinéa 4)*

| | |
|---|---|
| Name and address of the requesting authority: | **Celeste Ingalls** |
| *Nom et adresse de l'autorité requérante:* | **Crowe Foreign Services** |
| | **1020 SW Taylor Street, Suite 240** |
| | **Portland, Oregon 97205** |

Particulars of the parties*:    Kotva a.s. .......................................................................................................................... **PLAINTIFF**
*Indentité des parties:*    Andrew Weiss, et al........................................................................................... **DEFENDANTS**
    Andrew Weiss, et al............................................................... **COUNTERCLAIM-PLAINTIFFS**
    Kotva a.s., et al. .............................................................**COUNTERCLAIM-DEFENDANTS**

### JUDICIAL DOCUMENT**
*ACTE JUDICIAIRE*

Nature and purpose of the document:
*Nature et objet de l'acte:*    **To give notice to the Defendant, Forminster Enterprises, Ltd., of the institution against it of a claim for civil damages and to summon it to answer the claim.**

Nature and purpose of the proceedings, and, where appropriate, the amount in dispute:
*Nature et objet de l' instance. le cas échéant, le montant du litige:*

**First amended civil counterclaim and answer to plaintiff's original claim. Counterclaim-plaintiff answers the plaintiff's claim and makes counter-claim allegations including, but not limited to, abuse of process, Conspiracy, Unjust Enrichment, Breach of Fiduciary Duty, Unfair Competition and Unfair and Deceptive Trade Practices and related actions. Counter-claim plaintiff further alleges that counter-claim defendants' aforementioned actions have caused counter-claim plaintiff to suffer damages and losses. Counter-claim plaintiff seeks judgment in an amount to be determined including, but not limited to, declarations of ownership, costs of this suit, attorneys' fees and costs, order to disgorge proceeds, and such other and further relief as the court deems just and proper.**

| | |
|---|---|
| Date and place for entering appearance**: | **N/A** |
| *Date et lieu de la comparution:* | |
| Court which has given judgment**: | **N/A** |
| *Juridiction qui a rendu la décision:* | |
| Date of judgment**: | **N/A** |
| *Date de la décision.* | |

Time limits stated in the document**:
*Indication des délias figurant dans l'acte:*    **Defendant is required to serve upon Counter-Claimant's Attorneys an ANSWER to the Counter-Claim within twenty (20) days after receipt of the Summons and other documents herein. A copy of the ANSWER must be filed with the court within a reasonable time thereafter.**

### EXTRAJUDICIAL DOCUMENT*
*ACTE EXTRAJUDICIAIRE*

| | |
|---|---|
| Nature and purpose of the document: | **N/A** |
| *Nature et objet de l'acte:* | |
| Time limits stated in the document**: | **N/A** |
| *Indication des délias figurant dans l'acte:* | |

* If appropriate, identity and address of the person interested in the transmission of the document.
  *S'il y a lieu. identité et adresse de la personne intéressée à la transmission de l'acte*

** Delete if inappropriate.
  *Rayer les mentions inutiles*

# ΠΕΡΙΦΕΡΕΙΑΚΟ ΔΙΚΑΣΤΗΡΙΟ ΤΩΝ ΗΝΩΜΕΝΩΝ ΠΟΛΙΤΕΙΩΝ

Περιφέρεια  Μασσαχουσέττης

KOTVA a.s.

     KATA

ANDREW WEISS και
WEISS ASSET MANAGEMENT, LLC

**ΚΛΗΤΕΥΣΗ ΣΕ ΥΠΟΘΕΣΗ ΑΣΤΙΚΟΥ ΔΙΚΑΙΟΥ**

**ΑΡΙΘ. ΥΠΟΘΕΣΗΣ: 05-10679 RCL**

     ΠΡΟΣ:

Forminster Enterprises, Ltd.
Οδός Διαγόρου 4
Κτίριον Kermia
Γρ. 601
Λευκωσία
Κύπρος

     **ΔΙΑ ΤΗΣ ΠΑΡΟΥΣΗΣ ΚΛΗΤΕΥΕΣΘΕ** και παρακαλείσθε όπως επιδώσετε εις
τους ΔΙΚΗΓΟΡΟΥΣ ΤΩΝ ΑΝΤΑΠΑΙΤΗΤΩΝ

Edward P. Leibensperger
Benjamin A. Goldberger
McDermott Will & Emery LLP
28 State St.
Boston, MA 02109
USA

Τηλ.: 1 + 617-535-4000

απάντηση επί της ανταπαίτησης, η οποία επιδίδεται προς υμάς ενταύθα, εντός 20 ημερών
από την επίδοση της κλήτευσης προς υμάς, εξαιρουμένης της ημέρας επιδόσεως αυτής.
Εάν δεν πράξετε τα ανωτέρω, θα καταδικασθείτε ερήμην για την αποζημίωση, που
αναφέρεται εις την ανταπαίτηση. Πρέπει επίσης να εγγράψετε την απάντησή σας εις την
Γραμματεία του Δικαστηρίου, εντός λογικού χρονικού διαστήματος μετά την επίδοση.

     SARAH H. THORNTON

Γραμματεύς    (Σφραγίδα του Δικαστηρίου)

17 Ιουνίου, 2005
     Ημερομηνία

Matthew A. Paine
Αντιγραμματεύς

1

### ΔΗΛΩΣΗ ΕΠΙΔΟΤΗΡΙΟΥ

Επίδοση της Κλητεύσεως  και αγωγής έγινε από εμένα. ΗΜΕΡΟΜΗΝΙΑ:_____

_____
ΟΝΟΜΑ ΤΟΥ ΕΠΙΔΟΤΟΥ (ΓΡΑΨΤΕ ΚΑΘΑΡΑ)  ΤΙΤΛΟΣ:
Τσεκάρατε με ένα x κάθε ένα από τα παρακάτω, για να δηλώσετε τον ακριβή τρόπο παροχής υπηρεσίας.
Επέδωσα προσωπικώς προς τρίτον εναγόμενον. Τόπος όπου επεδόθη: _____

_____
΄Αφησα αντίτυπα τούτου στην κατοικία του εναγομένου ή στον συνήθη χώρου διαμονής
του, με άτομο κατάλληλης ηλικίας και διακρίσεως, που διέμενε εκεί.

Όνομα προσώπου εις το οποίο επεδόθη η κλήτευση και αγωγή:_____

Επεστράφη ανεκτέλεστο:_____
_____
_____

΄Αλλος (καθορίσατε):_____
_____
_____

#### ΔΗΛΩΣΗ ΕΞΟΔΩΝ ΕΠΙΔΟΣΕΩΣ

ΟΔΟΙΠΟΡΙΚΑ_____            ΥΠΗΡΕΣΙΕΣ            ΣΥΝΟΛΟ_____

#### ΔΗΛΩΣΗ ΤΟΥ ΕΠΙΔΟΤΟΥ

        Ο κάτωθι υπογεγραμμένος δηλώ υπευθύνως και εν γνώσει των συνεπειών του
νόμου περί ψευδορκίας των Ηνωμένων Πολιτειών Αμερικής, ότι οι προαναφερόμενες
πληροφορίες, που περιέχονται στην Δήλωση Επιδόσεως και Δήλωση Εξόδων Επιδόσεως
είναι αληθείς και ακριβείς.

Εξετελέσθη την_____        _____
                Ημερομηνία                 Υπογραφή του Επιδότου

                                           _____
                                           Δ/νση του Επιδότου

2

ΠΕΡΙΦΕΡΕΙΑΚΟ ΔΙΚΑΣΤΗΡΙΟ ΤΩΝ ΗΝΩΜΕΝΩΝ ΠΟΛΙΤΕΙΩΝ
ΠΕΡΙΦΕΡΕΙΑ ΜΑΣΣΑΧΟΥΣΕΤΤΗΣ

| | | |
|---|---|---|
| KOTVA as., | ) | |
| | ) | |
| Ενάγων, ) | ) | |
| | ) | |
| Κατά | ) | |
| | ) | |
| ANDREW WEISS and WEISS ASSET | ) | |
| MANAGEMENT, LLC, | ) | |
| | ) | |
| Εναγομένων | ) | C.A. No. 05-10679-RCL |
| | ) | |
| ANDREW WEISS, WEISS ASEET | ) | |
| MANAGEMENT LLC, K T, INC. and CVF | ) | |
| INVESTMENTS, LTD., | ) | |
| | ) | |
| Ενάγοντες ανταπαίτησης | ) | |
| | ) | |
| | ) | |
| Κατά | ) | |
| | ) | |
| | ) | |
| KOTVA a.s., MARTIN BENDA, RICHARD | ) | |
| HARAZIM, FORMINSTER ENTERPRISES | ) | |
| LTD., SPV CO and JOHN DOES 1-5, | ) | |
| | ) | |
| Εναγομένων ανταπαίτησης | ) | |

## ΠΡΩΤΗ ΤΡΟΠΟΠΟΙΗΜΕΝΗ ΑΠΑΝΤΗΣΗ ΚΑΙ ΑΝΤΑΠΑΙΤΗΣΗ
## ΠΕΡΙΛΗΨΗ

Ο εναγόμενος και ενάγων ανταπαίτησης (counterclaim-plaintiff) Andrew Weiss ("Weis") είναι καθηγητής οικονομικών του Πανεπιστημίου Βοστώνης (Boston University). Διετέλεσε σύμβουλος της Παγκόσμιας Τράπεζας σε θέματα καφαλαιαγοράς της Τσεχικής Δημοκρατίας και είναι αυθεντία σε θέματα αναπτυσσομένων αγορών και της ανάγκης για την δημιουργία οικονομικών κανονισμών. Έχει επίσης εταιρεία που διαχειρίζεται επενδύσεις στην Τσεχική Δημοκρατία. Μεταξύ αυτών των επενδύσεων

1

είναι ένα σημαντικό μειοψηφικό μερίδιο στην ενάγουσα εταιρεία Kotva a.s. ("Kotva") ή Κότβα. Τον Μάιο του 2004, αντιπρόσωποι της Forminster Enterprises Ltd. ("Forminster"), που είναι ο πλειοψηφών μέτοχος της Κότβα, απείλησαν να πάρουν γιά λογαριασμό τους το μόνο πολύτιμο κομμάτι της Κότβα και να μη δώσουν τίποτε στους μειοψηφούντες μετόχους. Ο Weiss απάντησε, με την εξουσιοδότηση δικηγόρων στην Τσεχική Δημοκρατία, να υποβάλουν μηνύσεις για να προστατεύσουν τα δικαιώματα των μειοψηφούντων μετόχων.

Η πρώτη απάντηση της Forminster ήταν να προσεγγίσει τον Weiss και να προσφέρει την εξαγορά του μεριδίου των μετόχων του στη Κότβα. Όμως, η Forminster δεν συμφωνούσε να πληρώσει ένα ποσό ίσο προς την αξία που αναλογούσε προς το μερίδιο τους στην Κότβα, το οποίο εδικαιούντο οι επενδυτές του Weiss. Όταν ο Weiss απέρριψε την ανεπαρκή προσφορά της Forminster, η Forminster υιοθέτησε μια δεύτερη, πιό σκοτεινή προσέγγιση. Η Forminster και οι συνδεόμενοι με αυτή εχρησιμοποίησαν την επιρροή τους επί της Τσεχικής αστυνομίας για να υποκινήσουν μια εγκληματική δίωξη του Weiss με ψεύτικες κατηγορίες για εκβιασμό. Αν και Weiss δεν έχει δεχθεί επίσημη ανακοίνωση επί των κατηγοριών, ο τύπος ανέφερε ότι έγιναν αυτές οι κατηγορίες. Επιδιώκοντας να ασκήσουν πρόσθετη πίεση, η Forminster και οι συνδεδεμένες με αυτή εταιρείες, εχρησιμοποίησαν τον έλεγχόν τους επί της Κότβα, γιά να κάνουν αυτή την μήνυση κατά του Weiss, στο όνομα της Κότβα.

Η Κότβα είναι σήμερα ένα κέλυφος εταιρείας και το «άλλο εγώ» (alter ego) γιά την Forminster και τους συνδεομένους με αυτή, ήτοι: τους εναγόμενους στην ανταπαίτηση (counterclaim defendants) Forminster, Martin Benda ή ("Benda"), Richard Harazim ή ("Harazim"), SPV CO και John Does 1-5 (συλλογικά αναφερόμενους ως «Όμιλος Φορμινστερ», «Forminster Group»). Ο Όμιλος Forminster έχει συνωμοτήσει κατά του Weiss και των μετόχων της Κότβα, γιά τον σφετερισμό των κεφαλαίων της Κότβα προς ίδιον όφελος. Η Forminster είναι μία ιδιωτική εταιρεία, με έδρα την Κύπρο, και οι συνωμότες τηρούν την ταυτότητα των ιδιοκτητών της ως μέγα μυστικό. Οι Harazim και Benda παίζουν τον ρόλο των «ανθρώπων βιτρίνα»(front men) της Forminster και αποκρύπτουν την ταυτότητα των πραγματικών κυρίων της εταιρείας.

Σύμφωνα να αναφορές στον Τσεχικό τύπο και εκθέσεις των Τσέχων κατηγόρων και ως λεπτομερώς αναφέρεται κατωτέρω, ο Ομιλος Forminster ελέγχει τα προϊόντα της

2

λεηλασίας, μιάς από τις πιό διαβόητες απάτες στην μετακομμουνιστική ιστορίας της Τσεχικής Δημοκρατίας, ένα έγκλημα γνωστό σαν το «Σκάνδαλο της Τρεντ» ("Trend Scandal") ή «Η Φυγάδευση Κεφαλαίων της Τρεντ» ("Trend Tunneling"). Ο τσέχικος τύπος υιοθέτησε τη λέξη "tunneling", δηλαδή «διάνοιξη τούνελ», γιά να περιγράψει τη διαδικασία με την οποία η διοίκηση μιάς εταιρείας καταχράται των κεφαλαίων της εταιρείας και τα διακινεί μέσω μιάς σειράς διαμεσολαβητών, έως ότου οι προορισμένοι αποδέκτες των κεφαλαίων είναι σε θέση να ρευστοποιήσουν τα κεφάλαια και να εξαφανιστούν με τη λεία. Πιο σημαντικό σ' αυτή την υπόθεση, τα παράνομα προϊόντα που έχει αποκτήσει ο Όμιλος Forminster περιλαμβάνουν τον έλεγχο της πλειοψηφίας των μετοχών της Κότβα.

Στις αρχές της δεκαετίας του 1990, η Κότβα ήταν μιά εταιρεία με ένα μεγάλο πολυκατάστημα (department store), με σπουδαία τοποθεσία στο κέντρο της Πράγας, στην Τσεχική Δημοκρατία. Ένα επενδυτικό κεφάλαιο γνωστό ως Trend Fund ή "Trend", ήταν ο μεγαλύτερος μέτοχος της Κότβα α.ε. Σύμφωνα με δημοσιεύματα του τύπου, τα αποτελέσματα κυβερνητικής ερεύνης έδειξαν, ότι τα κεφάλαια της Τρέντ, περιλαμβανομένων των μετοχών της Κότβα, ελεηλατήθηκαν διά μιάς σειράς απατών και οι μετοχές της Κότβα κατέληξαν στον έλεγχο του Ομίλου Forminster. Ως αποτέλεσμα της «φυγαδεύσεως» των κεφαλαίων της Τρεντ, ο Ομιλος Forminster ισχυρίζεται ότι είναι κύριος τουλάχιστον του 55% των μετοχών της Κότβα.

Ως αποτέλεσμα της εμπλοκής της Forminster στην φυγάδευση των κεφαλαίων της Τρεντ, το Ανώτερο Δικαστήριο (High Court) του Λιχτενστάιν επάγωσε τους λογαριασμούς της Forminster σε μιά τράπεζα της Βαντούζ (Vaduz), στο Λίχτενστάιν. Ομοίως, ένας τσέχος εισαγγελέας επάγωσε τις μετοχές της Forminster στην Κότβα, λόγω υπονοιών, ότι ήταν προϊόντα εγκληματικής δραστηριότητας. Έτσι, σε αδυναμία να ρευστοποιήσει τις μετοχές του στην Κότβα, ο Όμιλος Forminster αποφάσισε να χρησιμοποιήσει τον έλεγχό του επί της Κότβα γιά να πωλήσει το πιό πολύτιμο κομμάτι του ενεργητικού της εταιρείας --το ακίνητό της-- και να κρατήσει όλα τα κέρδη γιά τον εαυτό του, εξαπατώντας τους μειοψηφούντες μετόχους της Κότβα και αποστερώντας τα θύματα της Τρεντ από τη νόμιμη μερίδα τους στα κέρδη.

3

## ΑΠΑΝΤΗΣΗ

Οι Εναγόμενοι Weiss και Weiss Asset Management LLC ή ("WAM") (συλλογικά, οι «Εναγόμενοι») απαντούν στο Κατηγορητήριο της Ενάγουσας Κότβα, α.ε., ως εξής:

## ΕΙΣΑΓΩΓΗ

Η Εισαγωγή δεν περιέχει ισχυρισμούς, εντός της εννοίας των Ομοσπονδιακών Κανόνων Πολιτικής Διαδικασίας 8 και 10 και δεν απαιτεί απάντηση. Όπου απαιτείται απάντηση, οι Εναγόμενοι αρνούνται τις συγκεκριμένες κατηγορίες στην Εισαγωγή.

## ΔΙΚΑΙΟΔΟΣΙΑ

1.  Η παράγραφος 1 δηλώνει νομικό συμπέρασμα στο οποίο δεν απαιτείται απάντηση.

2.  Η παράγραφος 2 δηλώνει νομικό συμπέρασμα στο οποίο δεν απαιτείται απάντηση

3.  Η παράγραφος 3 δηλώνει νομικό συμπέρασμα στο οποίο  δεν απαιτείται απάντηση

### ΜΕΡΗ (ΔΙΑΔΙΚΟΙ)

4.  Αποδεκτό

5.  Αποδεκτό

6.  Αποδεκτό

## ΓΕΓΟΝΟΤΑ

7.  Οι εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, όσον αφορά την αλήθεια της παραγράφου 7.

8.  Αποδεκτό

9.  Οι Εναγόμενοι παραδέχονται ότι  η Weiss Asset Management, LLC είναι μιά επενδυτική εταιρεία με έδρα την Βοστώνη της Μασσαχουσέττης. Προσέτι, οι Εναγόμενοι δέχονται ότι ο Weiss είναι κάτοχος της πλειοψηφίας της Weiss Asset Management και ελέγχει την Weiss Asset Management. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 9.

4

10.    Οι Εναγόμενοι δέχονται την πρώτη πρόταση της παραγράφου 10. Οι
       Εναγόμενοι αρνούνται την δεύτερη πρόταση της παραγράφου 10.

11.    Αρνήθηκε.

12.    Οι Εναγόμενοι δέχονται την πρώτη πρόταση της παραγράφου 12. Οι
       Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 12.

13.    Οι Εναγόμενοι δέχονται ότι ο Όμιλος Forminster εγκατέστησε νέα διοίκηση
       στην Κότβα και απεκάλεσε αυτό αλλαγή διοικήσεως. Κατά πληροφορίες και
       πεποίθηση, οι Εναγόμενοι αρνούνται ότι σκοπός εγκαταστάσεως της νέας
       διοικήσεως ήταν να συντελεσθεί  μιά θετική μεταστροφή στις δουλειές της
       Κότβα. Ως περαιτέρω απάντηση, οι Εναγόμενοι πιστεύουν ότι σκοπός της
       εγκαταστάσεως της νέας διοικήσεως ήταν να λεηλατήσει την Κότβα α.ε. από
       το ακίνητό της. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά
       να διαμορφώσουν γνώμη όσον αφορά το αληθές του υπολοίπου της
       παραγράφου 13.

14.    Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να
       διαμορφώσουν γνώμη, όσον αφορά την αλήθεια της παραγράφου 14.

15.    Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να
       διαμορφώσουν γνώμη, όσον αφορά την αλήθεια  της παραγράφου 15.

16.    Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να
       διαμορφώσουν γνώμη, όσον αφορά την αλήθεια της παραγράφου 16.

17.    Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να
       διαμορφώσουν γνώμη, όσον αφορά την αλήθεια της παραγράφου 17.

18.    Κατά πληροφορίες και πεποίθηση, οι Εναγόμενοι αρνούνται, ότι σκοπός της
       υποτιθέμενης μεταβίβασης ήταν «να πραγματοποιηθεί η πώληση» του
       Εμπορικού Κέντρου. Ως περαιτέρω απάντηση, οι Εναγόμενοι πιστεύουν ότι
       σκοπός της υποτιθέμενης μεταβίβασης ήταν να εκτρέψουν αλλού τις
       προσόδους από την πώληση του Εμπορικού Κέντρου. Οι Εναγόμενοι δεν
       έχουν γνώση η επαρκείς πληροφορίες  γιά να διαμορφώσουν γνώμη, όσον
       αφορά το υπόλοιπον της παραγράφου 18.

5

19.  Οι Εναγόμενοι δέχονται ότι κατά την διάρκειαν του Μαΐου 2004, ο τύπος δημοσίευσε μιά εκκρεμούσα πώληση του Εμπορικού Κέντρου σε ιρλανδούς επενδυτές. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 19.

20.  Οι Εναγόμενοι δέχονται, ότι στις 12 Μαΐου, 2004, οι Weiss και Hoffmann συναντήθηκαν με τους Harazim και Benda.. Οι Εναγόμενοι δέχονται ότι οι Harazim και Benda ήταν τότε, αντιστοίχως, Διευθύνων Σύμβουλος (CEO) και ο άλλος Πρόεδρος του Διοικητικού Συμβουλίου της Κότβα, αλλά αρνούνται ότι οι Benda και Harazim παρουσίασαν τους εαυτούς των ως αντιπροσώπους της Κότβα, κατά την διάρκειαν της συναντήσεως της 12ης Μαΐου, 2005. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 20.

21.  Αρνήθηκε.

22.  Οι Εναγόμενοι δέχονται ότι ο Gilroy υπέβαλε μήνυσε, ισχυριζόμενος ότι η SPV KN δεν είναι ο νόμιμος κάτοχος του Εμπορικού Κέντρου και ότι η Κότβα είναι ο νόμιμος κάτοχος του Εμπορικού Κέντρου. Ο Εναγόμενος Andrew Weiss δέχεται περαιτέρω, ότι επεκοινώνησε μετά των Hoffman και Ondrej Peterka από τη Βοστώνη και ότι ο Hoffman έστειλε λογαριασμούς στο Brookdale στη Βοστώνη. Ο Εναγόμενος Weiss Asset Management αρνείται, ότι επεκοινώνησε μετά των Hoffman και Peterka στη Βοστώνη. Οι εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 22.

23.  Οι Εναγόμενοι δέχονται ότι ο Gilroy άνοιξε έναν λογαριασμό στο Χρηματιστήριο (Security Centre) στις 23 Ιουνίου, 2004. Οι Εναγόμενοι δέχονται περαιτέρω, ότι ο Gilroy αγόρασε μιά μετοχή της Κότβα έναντι 430 CZK (Κορωνών Τσεχίας) στις 24 Ιουνίου, 2004, και 134 μετοχές της Κότβα προς 430 CZK ανά μετοχή στις 29 Ιουνίου, 2004. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 23.

24.  Οι Εναγόμενοι δέχονται ότι στις 30 Ιουνίου, 2004, ο Gilroy υπέβαλε μήνυση κατά της Κότβα, KN και SPV KN στην Πράγα, αμφισβητώντας τις μεταβιβάσεις του Εμπορικού Κέντρου της Κότβα από την Κότβα στην KN και ακολούθως μεταφορά από την KN στην SPV KN και απαιτώντας δήλωση ότι η Κότβα είναι ο κάτοχος του Εμπορικού Κέντρου. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, όσον

αφορά το αληθές περί του αν η ΚΝ και SPV ΚΝ ήταν υπό την πλήρη κυριότητα της Κότβα κατά την ημερομηνία των δύο μεταβιβάσεων. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 24.

25. Οι Εναγόμενοι δέχονται την πρώτη πρόταση της παραγράφου 25. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 25.

26. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, όσον αφορά το αληθές της παραγράφου 26.

27. Οι Εναγόμενοι δέχονται ότι, την 17ην Αυγούστου, 2004, ο Weiss έστειλε την επιστολή που είναι συνημμένη στην Αγωγή(Complaint), ως Έκθεση Α (Exhibit A) στον Martin Benda, ο οποίος παρουσίαζε τον εαυτόν του ως αντιπρόσωπον της Forminster. Το έγγραφο αυτό ομιλεί αφ' εαυτού. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 27.

28. Οι Εναγόμενοι δέχονται ότι ένα e-mail εστάλη στις 17 Αυγούστου, 2004 με τον Richard Harazim καταγραμμένο ως αποστολέα και ότι το e-mail μιλάει από μόνο του. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 28.

29. Οι Εναγόμενοι δέχονται ότι στις 23 Αυγούστου, 2004, ο Weiss απέστειλε επιστολή, συνημμένη στην Αγωγή(Claim), ως Έκθεση Β (Exhibit B), στον Martin Benda και Richard Harazim, που παρουσίαζαν τους εαυτούς τους ως αντιπροσώπους της Forminster. Το έγγραφο αυτό ομιλεί από μόνο του. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 29.

30. Οι Εναγόμενοι δέχονται ότι στις 23 Νοεμβρίου, 2004, ο Weiss απέστειλε την επιστολή, που είναι συνημμένη στην Αγωγή ως Έκθεση Γ (Exhibit C), προς τούς Martin Benda και Richard Harazim, οι οποίοι παρουσίαζαν τον εαυτό τους ως αντιπρόσωπο της Forminster. Το έγγραφο αυτό ομιλεί αφ' εαυτού. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 30.

31. Αρνήθηκε.

32. Έγινε αποδεκτό, με την εξαίρεση ότι οι Εναγόμενοι αρνούνται ότι ο Weiss είναι ο μοναδικός διευθυντής της Κ. Τ Inc.

33. Οι Εναγόμενοι δέχονται, ότι στις 23 Δεκεμβρίου, 2004, ο Peterka απέστειλε μιά επιστολή στον Bryan David Paul Wilson, διαμένοντα στο Linklaters της Πράγας, και ότι η επιστολή περιείχε μίαν εντός εισαγωγικών αναφορά

τμήματος (block quote) της παραγράφου 33. Η επιστολή ομιλεί αφ' εαυτής. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 33.

34. Οι Εναγόμενοι δέχονται την δεύτερη πρόταση της παραγράφου 34, με την εξαίρεση ότι οι Εναγόμενοι αρνούνται ότι το e-mail του Weiss ήταν σε απάντηση επικοινωνίας από την Κότβα. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 34.

35. Αρνήθηκε.

36. Αρνήθηκε.

37. Οι Εναγόμενοι αρνούνται την πρώτη πρόταση της παραγράφου 37. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, όσον αφορά το αληθές του υπολοίπου της παραγράφου 37.

38. Οι Εναγόμενοι αρνούνται τις πρώτες δύο προτάσεις της παραγράφου 38. Οι Εναγόμενοι ούτε δέχονται ούτε αρνούνται το υπόλοιπον της παραγράφου 38, αλλά αντιθέτως δηλώνουν ότι αναφέρονται σε υλικό το οποίο προστατεύεται από το «προνόμιο της σχέσεως δικηγόρου-πελάτου» (attorney-client privilege) και το οποίο ο ενάγων έχει αποκτήσει καταχρηστικώς.

39. Αρνήθηκε.

40. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη γιά το αληθές της παραγράφου 40.

41. Οι Εναγόμενοι δέχονται ότι ο Weiss έδωσε μία συνέντευξη τύπου μέσω βίντεο στην Βοστώνη στις 15 Μαρτίου, 2005. Οι Εναγόμενοι περαιτέρω δέχονται ότι η Έκθεση Ε (Exhibit E) περιέχει ένα αληθές και ακριβές αντίγραφο των γραπτών δηλώσεων του Weiss στην αγγλική. Το έγγραφο αυτό ομιλεί από μόνο του. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, ως προς το εάν το μέρος της Εκθέσεως Ε, που είναι γραμμένο στην τσεχική γλώσσα είναι μία πλήρως ακριβής μετάφραση των γραπτών δηλώσεων του Weiss. Οι εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 41.

42. Αρνήθηκε.

43. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, ως προς το εάν εσωτερικά έγγραφα απεκαλύφθησαν

8

ως αποτέλεσμα οποιωνδήποτε κατηγοριών. Οι Εναγόμενοι αρνούνται το
υπόλοιπον της παραγράφου 43.

44.    Οι Εναγόμενοι ούτε δέχονται ούτε αρνούνται τις κατηγορίες της παραγράφου
44, αλλά αντιθέτως δηλώνουν ότι αναφέρονται  σε υλικό προστατευόμενο
από το προνόμιο της σχέσεως δικηγόρου-πελάτου και το οποίο ο Ενάγων
απέκτησε καταχρηστικώς.

45.    Αρνήθηκε.

46.    Οι Εναγόμενοι δέχονται ότι στις 25 Οκτωβρίου, 2004, ο Hoffman έστειλε
στον Weiss ένα e-mail το οποίο περιλαμβάνει το κείμενο που αναφέρεται
στην παράγραφο 46 της Αγωγής.  Αυτό το e-mail ομιλεί αφ' εαυτού. Οι
Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου  46.

47.    Οι Εναγόμενοι δέχονται ότι στις 25 Νοεμβρίου, 2004, ο Weiss έστειλε  στον
Hoffman το έγγραφο, που είναι  συνημμένο στην Αγωγή ως Έκθεση G
(Exhibit G). Το έγγραφο αυτό ομιλεί από μόνο του. Οι Εναγόμενοι αρνούνται
το υπόλοιπον της παραγράφου 47.

48.    Αρνήθηκε.

<u>Κατηγορία I</u>

49.    Οι Εναγόμενοι ενσωματώνουν δι' αναφοράς τις απαντήσεις τους στις
κατηγορίες των προηγουμένων παραγράφων.

50.    Αρνήθηκε.

51.    Αρνήθηκε.

52.    Οι Εναγόμενοι δέχονται ότι ο Weiss είναι κάτοικος Μασσαχουσέττης και ότι
η εταιρεία Weiss Asset Management έχει ως κύριο χώρο λειτουργίας της την
Μασσαχουσέττη. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου
52.

53.    Αρνήθηκε.

54.    Αρνήθηκε.

9

## Κατηγορία ΙΙ

55.  Οι Εναγόμενοι ενσωματώνουν δι' αναφοράς τις απαντήσεις τους στις κατηγορίες των προηγουμένων παραγράφων.

56.  Η παράγραφος 56 διατυπώνει ένα νομικό συμπέρασμα, προς το οποίο δεν απαιτείται απάντηση.

57.  Αρνήθηκε.

58.  Αρνήθηκε.

59.  Αρνηθηκε.

60.  Αρνήθηκε.

61.  Αρνήθηκε.

62.  Αρνήθηκε.

63.  Αρνήθηκε.

64.  Αρνήθηκε

65.  Αρνήθηκε.

66.  Αρνήθηκε.

67.  Αρνήθηκε.

68.  Αρνήθηκε

## Κατηγορία ΙΙΙ

69.  Οι Εναγόμενοι ενσωματώνουν δι' αναφοράς τις απαντήσεις τους προς τις κατηγορίες που περιέχονται στις προηγούμενες παραγράφους.

70.  Αρνήθηκε.

<u>**Κατηγορία IV**</u>

71. Οι Εναγόμενοι ενσωματώνουν δι' αναφοράς τις απαντήσεις τους στις κατηγορίες που περιέχονται στις προηγούμενες παραγράφους.

72. Η παράγραφος 72 διατυπώνει νομικό συμπέρασμα, προς το οποίο δεν απαιτείται απάντηση.

73. Αρνήθηκε.

74. Αρνήθηκε

75. Αρνήθηκε.

76. Αρνήθηκε.

<u>**Κατηγορία V**</u>

77. Οι Εναγόμενοι ενσωματώνουν δι' αναφοράς τις απαντήσεις τους προς τις κατηγορίες που περιέχονται στις προηγούμενες παραγράφους.

78. Η παράγραφος 78 διατυπώνει ένα νομικό συμπέρασμα, προς το οποίο δεν απαιτείται απάντηση.

79. Αρνήθηκε.

80. Αρνήθηκε.

<u>**Κατηγορία VI**</u>

81. Οι Εναγόμενοι ενσωματώνουν δι' αναφοράς τις απαντήσεις τους προς τις κατηγορίες που περιέχονται στις προηγούμενες παραγράφους

82. Αρνήθηκε.

83. Αρνήθηκε.

<u>**Κατηγορία VII**</u>

84. Οι Εναγόμενοι ενσωματώνουν δι' αναφοράς τις απαντήσεις τους στις κατηγορίες που περιέχονται στις προηγούμενες παραγράφους.

85. Οι Εναγόμενοι δεν έχουν γνώσεις ή επακρείς πληροφορίες γιά να διαμορφώσουν γνώμη, ως προ το αληθές του υπολοίπου της παραγράφου 85.

86. Αρνήθηκε.

87. Αρνήθηκε.

11

## ΑΠΑΙΤΗΣΗ ΓΙΑ ΑΠΟΖΗΜΙΩΣΗ

Οι Απαιτήσεις του Ενάγοντος για Αποζημίωση (Requests for Relief) δεν εμπίπτουν εντός των πλαισίων της εννοίας των Ομοσπονδιακών Κανονισμών της Πολιτικής Διαδικασίας 8 και 10 και δεν χρήζουν απαντήσεως. Εφ' όσον απαιτείται απάντηση, οι Εναγόμενοι ζητούν όπως το Δικαστήριο αρνηθεί όλα τα αιτήματα του Ενάγοντος γιά Αποζημίωση.

## ΠΡΩΤΗ ΘΕΤΙΚΗ ΥΠΕΡΑΣΠΙΣΗ (FIRST AFFIRMATIVE DEFENSE)

Η Κότβα α.ε. δεν είναι ένας διάδικος πραγματικού ενδιαφέροντος.

## ΔΕΥΤΕΡΗ ΘΕΤΙΚΗ ΥΠΕΡΑΣΠΙΣΗ

Οι ισχυρισμοί του Ενάγοντος αποκλείονται από το δόγμα των «ακαθάρτων χειρών»

## ΤΡΙΤΗ ΘΕΤΙΚΗ ΥΠΕΡΑΣΠΙΣΗ

Ο Ενάγων απέτυχε να διατυπώσει μιά κατηγορία, βάσει της οποίας θα μπορούσε να δοθεί αποζημίωση.

## ΤΕΤΑΡΤΗ ΘΕΤΙΚΗ ΥΠΕΡΑΣΠΙΣΗ

Ο Ενάγων απέτυχε να υποστηρίξει περίπτωση ιδιάζουσας απάτης.

## ΠΕΜΠΤΗ ΘΕΤΙΚΗ ΥΠΕΡΑΣΠΙΣΗ

Οι διεκδικήσεις του Ενάγοντος αποκλείονται λόγω προτέρας καταστάσεως (estoppel)

## ΑΝΤΑΠΑΙΤΗΣΗ (COUNTERCLAIM)

Οι Ενάγοντες της Ανταπαίτησης (counterclaim-plaintiffs) Andrew Weiss ("Weiss"),  Weiss Asset Management LLC ("WAM"), K T, Inc. ("K T") και CVF Investments Ltd. αναφορικά με την Ανταπαίτησή τους (Counterclaim) κατά των Εναγομένων της Ανταπαίτησης (Counterclaim-defendants) Kotva a.s., Martin Benda,

Richard Harazim, Forminster Enterprises, Ltd., SPV CO και John Does 1-5 δηλώνουν τα
εξής:

*Δικαιοδοσία και Τόπος Εκδικάσεως*

1.    Το Δικαστήριο έχει δικαιοδοσία περιεχομένου (subject matter) επί της
      Ανταπαίτησης (Counterclaim), σύμφωνα με τις νομικές διατάξεις 28
      U.S.C. & 1332 και 28 U.S.C. & 1367.

2.    Το Δικαστήριο έχει προσωπική δικαιοδοσία επί των εναγομένων της
      ανταπαίτησης (counterclaim-defendants), επειδή διέπραξαν αδικοπραγίες
      στη Μασσαχουσέττη, περιλαμβανομένης και της καταθέσεως αυτής της
      μηνύσεως, περιλαμβανομένων των e-mails, και επειδή επεδίωξαν
      εμπορικές συναλλαγές με κατοίκους της Μασσαχουσέττης. Προσέτι
      προξένησαν ζημίαν στη Μασσαχουσέττη μέσω των πράξεών τους εκτός
      Μασσαχουσέττης και επωφελήθησαν της δικαιοδοσίας αυτού του
      Δικαστηρίου.

3.    Η Περιοχή της Μασσαχουσέττης είναι ο πρέπων χώρος (venue) γιά την
      εκδίκαση της υποθέσεως, βάσει των διατάξεων 28 U.S.C. && 1391 (a)
      και 1391 (c) και επειδή η Kotva a.s.κατέθεσε την αρχική της μήνυση σ'
      αυτήν την Περιοχή.

*Διάδικοι (Parties)*

4.    Ο Εναγόμενος και ενάγων της ανταπαίτησης (counterclaim-plaintiff)
      Andrew Weiss είναι κάτοικος του Μπρουκλάιν (Brookline) της
      Μασσαχουσέττης.

5.    Ο Εναγόμενος και ενάγων της ανταπαίτησης (counterclaim-plaintiff)
      Weiss  Management LLC είναι μιά εταιρεία περιωρισμένης ευθύνης με
      έδρα το Ντέλαγουέρ (Delaware), με κύριο χώρο επιχειρηματικών
      δραστηριοτήτων τη Βοστώνη της Μασσαχουσέττης.

6.    Ο ενάγων της ανταπαίτησης K T, Inc. είναι μιά εταιρεία με έδρα το
      Ντέλαγουέρ (Delaware), με κύριο χώρο επιχειρηματικών δραστηριοτήτων
      την Βοστώνη της Μασσαχουσέττης. Είναι κάτοχος 1.000 μετοχών της
      Κότβα a.ε. και 1.000 μετοχών της Τρεντ.

13

7.  Ο ενάγων της ανταπαίτησης CVF Investment Ltd. είναι μία κυπριακή εταιρεία με έδρα την Λευκωσία της Κύπρου. Είναι κάτοχος μετοχών της Κότβα α.ε. και μετοχών της Τρεντ. Η CVF Investments Ltd. είναι μια σχεδόν εξ ολοκλήρου ελεγχόμενη θυγατρική της Brookdale Global Opportunity Fund ή "BGO". Το έννομο συμφέρον της CVF Investments Ltd. στην Κότβα α.ε. και Τρεντ αναφέρεται γενικώς και αμοιβαίως ως «Μετοχές των CVF Investments" ή «Μετοχές της BGO's».

8.  Ο Ενάγων και εναγόμενος της ανταπαίτησης, η Κότβα α.ε., είναι μία εταιρεία οργανωμένη κάτω από τους νόμους της Τσεχικής δημοκρατίας με κύριο χώρο επιχειρηματικών δραστηριοτήτων την Πράγα, της Δημοκρατίας της Τσεχίας.

9.  Ο εναγόμενος της ανταπαίτησης Forminster Enterprises Ltd. ή Forminster είναι μια εταιρεία οργανωμένη κάτω από τους νόμους της Κύπρου. Κατά πληροφορίες και την γνώμη μας, ο χώρος επιχειρηματικών δραστηριοτήτων της Forminster ευρίσκεται εκτός των Ηνωμένων Πολιτειών. Η ταυτότητα των ιδιοκτητών της είναι ένα «καλοδιατηρημένο» μυστικό.

10. Ο εναγόμενος της ανταπαίτησης SPV CO είναι μία εταιρεία οργανωμένη κάτω από τους νόμους της Κύπρου. Κατά πληροφορίες και την γνώμη μας, ο κύριος χώρος των επιχειρηματικών δραστηριοτήτων της SPV CO, είναι εκτός των Ηνωμένων Πολιτειών.

11. Ο εναγόμενος της ανταπαίτησης Martin Benda ή ("Benda") είναι άτομο που διαμένει στην Τσεχική Δημοκρατία. Ο Benda ήταν μέλος του διοικητικού συμβουλίου της Κότβα α.ε. εν μέρει ή καθ' όλην την περίοδο από την 21η Μαΐου, 1999, έως την 8η Μαρτίου, 2004. Από τις 8 Μαρτίου, 2004, μέχρι σήμερα, ο Benda διατελεί Πρόεδρος του Εποπτικού Συμβουλίου (Supervisory Board) της Κότβα α.ε. Η Forminster υποστήριξε την υποψηφιότητα του Benda για την θέση του στο συμβούλιο της Κότβα και εχρησιμοποίησε τον έλεγχό της επί της πλειοψηφίας των μετοχών της Κότβα για να διασφαλίσει την εκλογή του. Ο Benda είναι ή ήταν επίσης

μέλος του διοικητικού συμβουλίου της Forminster και πράκτορας της Forminster. Τέλος, ο Benda είναι διευθυντής της SPV CO.

12.     Ο εναγόμενος της ανταπαίτησης Richard Harazim ή ("Harazim") είναι άτομο που διαμένει στην Τσεχική Δημοκρατία. Ο Harazim είναι ο γενικός διευθυντής ή εκτελεστικός διευθυντής της Κότβα. Ο Harazim ήταν μέλος του διοικητικού συμβουλίου της Κότβα α.ε. γιά μέρος ή το σύνολο της περιόδου από 29 Μαΐου, 1997 έως 8 Μαρτίου, 2004. Από τις 8 Μαρτίου, 2004, μέχρι σήμερα ο Harazim διατελεί ως μέλος του Εποπτικού Συμβουλίου (Supervisory Board) της Κότβα α.ε. Η Forminster υπέδειξε ως υπόψήφιο τον Harazim για το διοικητικό συμβούλιο της Κότβα α.ε. και εχρησιμοποίησε τον έλεγχό της επί της πλειοψηφίας των μετοχών της Κότβα γιά να διασφαλίσει την εκλογή του. Ο Harazim επίσης είναι ή ήταν μέλος του διοικητικού συμβουλίου της Forminster και πράκτορας της Forminster.

13.     Οι εναγόμενοι της ανταπαίτησης John Does 1-5 είναι άτομα που διαμένουν στην Τσεχική Δημοκρατία και σε άλλες χώρες εκτός των Ηνωμένων Πολιτειών, και είναι μέλη μίας συνωμοσίας μεταξύ της Forminster, SPV CO, Benda, Harazim και άλλων (συλλογικά αναφερομένων, ως 'Ομιλος Forminster»).

14.     Ένας στόχος της συνωμοσίας του Ομίλου Forminster είναι να απογυμνώσει την Κότβα α.ε. από την ακίνητη περιουσία της, να πουλήσει τα ακίνητά της και να διανείμει τις προσόδους μεταξύ των μελών του Ομίλου Forminster.

*Συγκεκριμένες Κατηγορίες  (Factual Allegations)*

15.     Η Weiss Capital LLC είναι μιά εταιρεία περιορισμένης ευθύνης με έδρα το Ντέλαγουερ (Delaware)

16.     Το 2002 η Weiss Capital ανέλαβε την διοίκηση του Brookdale Global Opportunity Fund ή ("BGO"). Το BGO είναι ένα επενδυτικό κεφάλαιο. Η θυγατρική του, η CVF Investments Ltd., έχει μετοχές στην Τρεντ, ένα τσεχικό επενδυτικό κεφάλαιο, όπως και μετοχές στην Κότβα α.ε.

15

17. Η CVF Investments Ltd. έχει υπό την κατοχήν της μετοχές της Τρεντ από το 1996 και μετοχές στην Κότβα α.ε. από το 1997.

18. Το πιό πολύτιμο κομμάτι της Τρεντ είναι ένα σημαντικό μερίδιο στην Κότβα α.ε. Όμως, όπως περιγράφεται με περισσότερες λεπτομέρειες στις παραγράφους 42-60 κατωτέρω, αυτές οι μετοχές κατεχράσθησαν στα μέσα της δεκαετίας του 1990 και ήλθαν στην κατοχή της Forminster.

19. Η Κ Τ, Inc. και η CVF Investments Ltd. έχουν αμφότερες άμεσο συμφέρον στην Κότβα α.ε. ως μέτοχοι και έμμεσο συμφέρον στην Κότβα ως μέτοχοι της Τρεντ, η οποία είναι ο νόμιμος κάτοχος του 32% τουλάχιστον των μετοχών της Κότβα α.ε.

20. Τον Σεπτέμβριο του 2003, η Weiss Capital κατέληξε σε συμφωνία με τον Βλαδίμηρο Χόφμαν (Vladimir Hoffman), σύμφωνα με την οποία ο Χόφμαν θα βοηθούσε την BGO στη ρευστοποίηση των μετοχών που είχε η CVF Investments σε μετοχές της Τρεντ και Κότβα α.ε. Η συμφωνία του Χόφμαν με την Weiss Capital έληξε τον Οκτώβριο του 2004.

21. Τον Σεπτέμβριο του 2003, ο Harazim πλησίασε τον Χόφμαν και του ανέφερε ότι η Forminster ίσως να ενδιαφερόταν να αγοράσει τις μετοχές της BGO στην Κότβα. Μία εταιρεία συνδεόμενη με τον Όμιλο Forminster έκανε τότε προσφορά να αγοράσει τις μετοχές που είχε η BGO στην Κότβα, έναντι του ποσού των 20,000,000 (20 εκατ.) τσεχικών κορωνών (CZK). Ο Weiss απέρριψε αυτή την προσφορά.

22. Η J&T Securities έκανε τότε προσφορά 26,000,000 (26 εκατ.) περίπου τσεχικών κορωνών (CZK) για τις μετοχές που είχε η BGO στην Κότβα, τον Δεκέμβριο του 2003. Κατά πληροφορίες και την γνώμη μας, η J&T Securities διατηρεί επίσης εμπορικές σχέσεις με τον Όμιλο Forminster. Ο Weiss απέρριψε και αυτή την προσφορά.

23. Ενώ προσπαθούσε να αγοράσει τις μετοχές της BGO στην Κότβα, ο Όμιλος Forminster προσπαθούσε επίσης να πωλήσει το μοναδικό πολύτιμο περιουσιακό στοιχείο της Κότβα, δηδαδή το πολυκατάστημά της στο κέντρο της Πράγας (το «Πολυκατάστημα»).

16

24.    Στις 12 Μαΐου, 2004, οι Weiss, Hoffmann, Benda και Harazim
        συναντήθηκαν στην Πράγα. Κατά την συνάντηση ο Harazim είπε στον
        Weiss και Hoffmann, ότι οι μετοχές της CVF Investments στην Κότβα δεν
        είχαν *καμμία* αξία. Ο Harazim είπε, ότι επειδή η CVF Investments είναι
        ένας μειοψηφών μέτοχος της Κότβα α.ε. οι μετοχές της στην Κότβα δεν
        έχουν αξία. Ο Harazim είπε ακόμη, ότι η Κότβα ουδέποτε θα προβεί σε
        διανομή προς τους μετόχους της, και ως εκ τούτου, οι μέτοχοι της Κότβα
        δεν θα ελάμβαναν τίποτε από τις προσόδους της πωλήσεως του
        Πολυκαταστήματος. Ο Harazim εξέφρασε την άποψη, ότι δεν υπήρχε
        τίποτα που μπορούσε να πράξει ο Weiss επ' αυτού ή για την
        προγενέστερη κλοπή των κεφαλαίων της Τρεντ.

25.    Τον Ιούνιο του 2004, δύο από τους μετόχους της Κότβα, οι Balfindor και
        Gilroy, υπέβαλαν μηνύσεις στα τσεχικά δικαστήρια, αμφισβητώντας
        ενέργειες στις οποίες είχε προβεί ο Όμιλος Forminster. Ο Balfindor
        αμφισβήτησε ενέργειες που έγιναν σε μία γενική συνέλευση της Κότβα. Ο
        Gilroy αμφισβήτησε τις προσπάθειες του Ομίλου Forminster να
        μεταβιβάσει το Πολυκατάστημα από την Κότβα α.ε. σε άλλες εταιρείες.

26.    Τον Αύγουστο του 2004, οι Benda και Harazim επλησίασαν τον
        Hoffman και του πρότειναν να αγοράσουν τις μετοχές της BGO στην
        Κότβα για 75,000,000 (75 εκατ.) τσέχικες κορώνες (CZK). Ούτε ο Benda
        ούτε ο Harazim όρισαν επακριβώς, ποιά εταιρεία από τον Όμιλο
        Forminster θα αγόραζε αυτές τις μετοχές. Ο Weiss απέρριψε την
        προσφορά αυτή και έκανε αντιπροσφορά προτείνοντας να πωλήσει τις
        μετοχές της BGO στην Κότβα, έναντι του ποσού των 131,000,000 (131
        εκατ.) τσεχικών κορωνών (CZK).

27.    Στις 17 Αυγούστου 2004 ο Harazim απάντησε στην αντιπροσφορά,
        στέλνοντας ένα e-mail σε έναν υπάλληλο της Weiss Capital στη Βοστώνη
        της Μασσαχουσέττης, δηλώνοντας τα εξής:

                Δυστυχώς, η προσφορά σας δεν φαίνεται να ασχολείται με τις
                μηνύσεις που υπεβλήθησαν από τους Balfindor και Gilroy
                εναντίον της εταιρείας μας. Χωρίς την επίλυση αυτών και άλλων
                πιθανών μηνύσεων εναντίον της εταιρείας μας, που μπορούν να

                                                                        17

γίνουν από την BGO ή από οντότητες ελεγχόμενες από την BGO, δεν θα είμαστε σε θέση να καταλήξουμε σε οποιαδήποτε συμφωνία.

Εάν αναθεωρήσετε την θέση σας, μπορούμε να επανέλθουμε στη συζήτηση για την τιμή της αγοράς των μετοχών της Κότβα, που είναι στην κυριότητα της BGO.

28.    Βάσει του e-mail του Harazim, ο Weiss τροποποίησε την προσφορά του να πωλήσει τις μετοχές της BGO έναντι 131,000,000 (131 εκατ.) τσεχικών κορωνών (CZK), περιλαμβάνοντας την υπόσχεση να μην εγείρει οποιεσδήποτε νομικές αμφισβητήσεις, σχετιζόμενες με την ιδιοκτησία του Πολυκαταστήματος (Department Store) και την υπόσχεση, ότι θα προσπαθήσει να πείσει τον Gilroy, να αποσύρει την μήνυσή του που αμφισβητούσε την μεταβίβαση του Πολυκαταστήματος.

29.    Στις 27 Αυγούστου, 2004, ο Harazim απάντησε με e-mail στον υπάλληλο της Weiss Capital στη Βοστώνη της Μασσαχουσέττης, με το οποίο απαιτούσε ότι οποιαδήποτε αγορά των μετοχών της Κότβα θα ίσχυε υπό την προϋπόθεση της αποσύρσεως των «μηνύσεων που υπεβλήθησαν από τον Gilroy ΚΑΙ τον Balfindor, όχι μόνον τον Gilroy." Περί την ίδια ημερομηνία, ο Benda είπε στον Hoffman, ότι οποιαδήποτε αγορά μετοχών της Κότβα θα ίσχυε μόνον υπό τον όρο της άρσεως πάσης απαιτήσεως που είχε η BGO έναντι του Ομίλου Forminster, περιλαμβανομένων και των ισχυρισμών ότι οι μετοχές της Κότβα που είχε η Forminster, ανήκαν στην ουσία στην Trend.

30.    Η άρση των απαιτήσεων ότι η Trend είναι ο νόμιμος κάτοχος των μετοχών που έχει η Forminster στην Κότβα, θα απεγύμνωνε στην ουσία από κάθε αξία τις μετοχές της BGO στην Trend. Μιά μετοχή στην Trend έχει πρωτίστως αξία, διότι η Trend είναι ο νόμιμος κάτοχος του 32% τουλάχιστον της Κότβα και η Κότβα είναι ο νόμιμος ιδιοκτήτης ενός πολυτίμου ακινήτου ή των προσόδων από την πώληση αυτού του ακινήτου. Επιπλέον, οι μέτοχοι της Trend έχουν αξιώσεις έναντι της Forminster επί των υπολοίπων κεφαλαίων, τα οποία εφυγαδεύτηκαν από

18

την Trend. Αυτή η φυγάδευση κεφαλαίων προσέφερε το κεφάλαιο στην Forminster, το οποίο εχρησιμοποίησε γιά την αγορά προσθέτων μετοχών της Κότβα. Ο Weiss δεν μπορούσε να συμφωνήσει στην παραίτηση από τέτοιες αξιώσεις άνευ ουδεμίας ανταμοιβής.

31.    Ως εκ τούτου, γιά να ανταπεξέλθει στις απαιτήσεις του Harazim και Benda, ο Weiss τροποποίησε την προσφορά του, ώστε (α) έκανε αναφορά στην μήνυση του Balfindor, (β) περιελάμβανε τις μετοχές της BGO στην Trend, πέραν των μετοχών της BGO στην Κότβα, και (γ) αύξησε την τιμή αγοράς, ώστε να αντικατοπτρίζει την αξία των μετοχών της BGO στην Trend. Ο Weiss περιέλαβε στην νέα προσφορά ένα λεπτομερή υπολογισμό, ο οποίος αποδείκνυε την αξία των περιουσιακών στοιχείων που ήταν στην κυριότητα της BGO, τόσον στην Κότβα όσον και στην Trend.

32.    Απρόθυμος να πληρώσει στη CVF Investments την πραγματική αξία των μετοχών της, όπως αυτή αντανακλάται στην αξία του Πολυκαταστήματος, ο Harazim απέρριψε την προσφορά. Ο Harazim επανειλημμένως αρνήθηκε να απαντήσει σε ερωτήσεις να εξηγήσει, γιατί η προταθείσα από τον Weiss τιμή αγοράς ήταν πολύ υψηλή ή γιατί οι υπολογισμοί που παρουσίασε ο Weiss ήταν λανθασμένοι ή ανακριβείς.

33.    Αντιθέτως ο Όμιλος Forminster απάντησε χρησιμοποιώντας την επιρροή του επί της Τσεχικής αστυνομίας για να προκαλέσει ή να αποπειραθεί να προκαλέσει την υποβολή μιάς τεχνητής ποινικής κατηγορίας εκβιασμού κατά του Weiss. Ο Harazim φέρεται ειπών στον τσέχικο τύπο, ότι «έχει υποβάλει μιά ποινικού περιεχομένου μήνυση». Αυτή η μήνυση, εάν έχει υποβληθεί, στερείται ουσίας. Κατά πληροφορίες και τη γνώμη μας, η ουσία των κατηγοριών του Ομίλου Forminster είναι, ότι ο Weiss απείλησε να υποβάλει μηνύσεις, προσβάλλοντας την κατάχρηση που έγινε στις μετοχές της Trend στην Κότβα και την μεταβίβαση του Πολυκαταστήματος, εάν οι επενδυτές του δεν ελάμβαναν το δίκαιο μερίδιό τους από τις προσόδους της πωλήσεως του Πολυκαταστήματος. Και εάν ακόμη αυτού του είδους η συμπεριφορά ήταν εγκληματική –που

δεν είναι— ό Harazim και ο Benda και όχι ο Weiss ήταν αυτοί που απαιτούσαν, όπως καθε αγορά μετοχών συνδεθεί με την απόσυρση των μηνύσεων.

34. Το κίνητρο του Ομίλου Forminster να προκαλέσει την τσεχική αστυνομία να υποβάλει μια ποινικού περιεχομένου μήνυση ήταν να αποκτήσει ένα άδικο πλεονέκτημα κατά του Weiss, στην προσπάθειά του να εξαναγκάσει τον Weiss να εγκαταλείψει τις απαιτήσεις των επενδυτών του στα τσεχικά δικαστήρια, οι οποίες ήταν αντίθετες προς τα συμφέροντα του Ομίλου Forminster (η «τσεχική δικαστική διαμάχη» --the "Czech litigation").

35. Από τον Αύγουστο του 2004 έως τον Ιανουάριο του 2005,  ο Harazim έστειλε τουλάχιστον εννέα e-mails στον Weiss και τουλάχιστον ένα άτομο στη Μασσαχουσέττη, ως μέρος των προσπαθειών του Ομίλου Forminster. να ασκήσει πίεση στον Weiss να εγκαταλείψει τις απαιτήσεις των επενδυτών του στην τσεχική δικαστική διαμάχη. Πιό συγκεκριμένα, σ' αυτά τα e-mails με ημερομηνίες 17 Αυγούστου, 2004, 27 Αυγούστου, 2004, 1 Δεκεμβρίου, 2004, 3 Δεκεμβρίου, 2004, 7 Δεκεμβρίου, 2004, 8 Δεκεμβρίου 2004, 15 Δεκεμβρίου 2004, 4 Ιανουαρίου, 2005, και 7 Ιανουαρίου, 2005, ο Harazim συνεχώς ζητούσε να αγοράσει μετοχές της Κότβα α.ε., αλλά έθετε ως όρον οποιασδήποτε αγοράς τον τερματισμό της τσεχικής δικαστικής διαμάχης.

36. Ο Harazim απέστειλε αυτά τα e-mail υπό τις οδηγίες του Benda, τον οποίον περιγράφει σε ένα e-mail της 27ης Αυγούστου, 2004, ως «υπεύθυνο γιά  αυτή τη συναλλαγή».

37. Κατά πληροφορίες και τη γνώμη μας, ο Harazim έστειλε επίσης αυτά τα e-mails κατόπιν οδηγιών των John Does 1-5.

38. Ακολούθως, ο Όμιλος Forminster υπέβαλε αυτή την αστικού δικαίου υπόθεση κατά του Weiss. Κατά πληροφορίες και τη γνώμη μας, οι Benda και Harazim επενέβησαν προσωπικά  στην υποβολή αυτής της μήνυσης κατά της Κότβα α.ε., μετά την προς τούτο λήψη οδηγιών από την Forminster και τους John Does 1-5.

20

39.   Κατα πληροφορίες και την γνώμη μας, οι Benda, Harazim και/ή John
      Does 1-5 έστειλαν πολλά e-mails, επιστολές και/ή πανομοιοτυπίες (faxes)
      και έκαναν πολλαπλά τηλεφωνήματα στους πράκτορές τους στην
      Μασσσαχουσέτη, γιά να υποβάλουν αυτή την μήνυση.

40.   Το κακής πίστεως κίνητρο του Ομίλου Forminster στην υποβολή αυτής
      της μήνυσης ήταν η απόκτηση ενός άνισου πλεονεκτήματος επί του
      Weiss, στην προσπάθειά του να εξαναγκάσει τον Weiss να εγκαταλείψει
      τις αξιώσεις των επενδυτών του στην τσεχική δικαστική διαμάχη.

41.   Ο Weiss και η WAM έχουν υποστεί και εξακολουθούν να υφίστανται
      ζημίες στην Μασσαχουσέτη όσον αφορά την υπόληψη, διακοπή
      εργασιών, απώλεια χρόνου, και δικηγορικών εξόδων, ως αποτέλεσμα των
      αποφάσεων του Ομίλου Forminster, να υποκινήσει την τσεχική αστυνομία
      να υποβάλει την ποινική αυτή κατηγορία και να υποκινήσει την Κότβα να
      καταθέσει στο δικαστήριο αυτή την υπόθεση.

*Η Φυγάδευση των Χρημάτων του Κεφαλαίου της Trend*

42.   Το 1995 και 1996 η διοίκηση της Trend κατεχράσθη τα κεφάλαια της
      Trend, περιλαμβανομένων και των μετοχών της Trend στην Κότβα.Η
      κατάχρηση των κεφαλαίων της Trend έχει τεκμηριωθεί εκτεταμένα σε
      διάφορες τσεχικές κυβερνητικές εκθέσεις και αναφέρεται κοινώς ως το
      «Σκάνδαλο της Τρεντ» ή «Η Φυγάδευση των Κεφαλαίων της Τρεντ». Τα
      μέσα μαζικής ενημερώσεως έχουν επίσης κάνει εκτενή ρεπορτάζ γιά το
      Σκάνδαλο της Τρεντ[1] ("Trend Scandal") καθώς επίσης και γιά διάφορα
      ασυνήθιστα γεγονότα, που σχετίζονται με την έρευνα γύρω από το
      Σκάνδαλο της Τρεντ. Κατά πληροφορίες και τη γνώμη μας, πολλά άτομα
      της αστυνομίας έχοντα σχέση με την έρευνα γύρω από το Σκάνδαλο της
      Τρεντ έχουν είτε παραιτηθεί ή διαπράξει αυτοκτονία, υπό ύποπτες
      συνθήκες.

---

[1] Συνημμένα ενταύθα ευρίσκονται υπό την μορφή της Έκθεσης 2 (Exhibit 2) μερικά άρθρα του τύπου
γύρω από το Σκάνδαλο της Τρεντ με αγγλικές μεταφράσεις.

43.    Ο Μιροσλάβ Χάλεκ. (Miroslav Halek), ο οποίος είχε διευθυντικό ρόλο επί της Τρεντ κατά την περίοδο της καταχρήσεως, διέθετε επίσης και ένα πληρεξούσιο γιά να ενεργεί ως εκπρόσωπος της Forminster κατά την ίδια χρονική περίοδο.

44.    Οι δεσμοί του Χάλεκ με την Forminster και η προσωπική του ανάμειξη στην κατάχρηση των κεφαλαίων της Τρεντ έχουν τεκμηριωθεί λεπτομερώς σε διάφορες εκθέσεις, που υπεβλήθησαν από τσέχους εισαγγελείς. Παραδείγματος χάριν, ο Περιφερειακός Δημόσιος Αντισαγγελέας έγραψε τα εξής:

Συναλλαγές και μεταβιβάσεις μετοχών της Κότβα, α.ε., ήταν το πιό σημαντικό αντικείμενο του ενδιαφέροντος των κατηγορουμένων [Μιροσλάβ Χάλεκ και Σία.]. Οι μετοχές της Κότβα ανήκαν σε διάφορες σημαντικές επενδύσεις του κεφαλαίου κατά την περίοδο πριν από τις 4 Αυγούστου, 1995. <u>Σκοπός της προηγουμένης διοικήσεως ήταν, και είναι ακόμη, η μεταβίβαση των μετοχών της Κότβα σε εταιρείες ελεγχόμενες από τον κ. Χάλεκ και σία, και η απόκτηση της πλειοψηφίας των μετοχών της Κότβα, μέσω άλλων αγορών, και προς τον σκοπόν αυτόν εχρησιμοποίησαν τους πόρους του επενδυτικού κεφαλαίου.</u> Οι μετοχές της Κότβα είναι ακόμη στο επίκεντρο του ενδιαφέροντος των περιβαλλουσών τον κ. Ινγ. Χάλεκ και σία εταιρειών. Ακόμη και κατά την περίοδο της αναγκαστικής διαχειρίσεως, επετεύχθησαν αρκετές μεταβιβάσεις μετοχών της Κότβα, συγκεκριμένα μεταξύ προσώπων και εταιρειών και του Jiri Mares, συμμαθητού του κ. Χάλεκ, μέσω του οποίου μετοχές της Κότβα μετεβιβάσθησαν σε εταιρείες ελεγχόμενες από τον Ινγ. Χάλεκ, ο οποίος κατά πάσαν πιθανότητα τυγχάνει σημαντική προσωπικότης. <u>Κατά την περίοδο υιοθετήσεως μιάς μη αποτελεσματικής αποφάσεως από το Περιφερειακό Δικαστήριο του Hradec Kralove, να απαγορεύσει οποιαδήποτε διάθεση των μετοχών της Κότβα από την Kralovehradecka brokerska(ΚΗΒ), η μεταβίβαση των μετοχών της Κότβα στην εταιρεία **Forminster Enterprises, Ltd**., με έδρα την Κύπρο, προς τους οικονομικούς λογαριασμούς της οποίας ο Ινγ.Χάλεκ διατηρεί ιδιαίτερα δικαιώματα, συνετελέσθη μέσω μιάς εντολής της ανωτέρω ΚΗΒ.</u>

Οι δραστηριότητες της ομάδος του κ. Χάλεκ δεν έχουν σταματήσει ούτε ακόμη και μετά την απόφαση γιά την αναγκαστική διαχείριση [της Τρεντ], και ως προκύπτει από πρόσφατες αποκαλύψεις, οι προσπάθειές τους να πάρουν τον έλεγχο της Κότβα και των

κεφαλαίων της Τρεντ συνεχίζονται μέχρι αυτής της στιγμής και ούτε οι ποινικές διώξεις, ούτε η τήρησή των υπό κράτηση αποτελούν εμπόδιο προς τούτο. Πριν από την έναρξη ακόμη των ποινικών διώξεων, είχε συντελεσθεί η μεταβίβαση μέρους των μετοχών της Κότβα προς την **Forminster Enterprises Ltd.**, η οποία εδρεύει στην Κύπρο, και μετά από αυτό η εταιρεία Kralovehradecka (brokerska) (KHB) α.ε. επωλήθη στην εταιρεία Bonit kapital, α.ε. εδρεύουσα στην πόλη Brno. Η KHB, που άλλαξε το όνομά της σε Brnenska obchodni, α.ε. αντιμετωπίζει σήμερα αίτηση κηρύξεως χρεωκοπίας εναντίον της. Σύμφωνα με πρόσφατες αποκαλύψεις, ακόμη και κατά την περίοδο της κρατήσεώς του, ο Ivn. Χάλεκ υπέγραψε σημαντικά έγγραφα, σχετιζόμενα με τους λογαριασμούς της εταιρείας Forminster Enterprises, Ltd. με την τράπεζα LGT, εδρεύουσα στην πόλη Βαντούζ (Vaduz) του Λίχτενστάιν.

Έκθεση της 30ής Σεπτεμβρίου, 1998, του Περιφερειακού Δημόσιου Αντεισαγγελέα της Hradec Kralove (πρόσθετη έμφαση).

45.    Μετά από μία πολύπλοκη σειρά μεταβιβάσεων, μέλη του Ομίλου Forminster απέκτησαν την κυριότητα των μετοχών της Κότβα που είχαν καταχρασθεί από την Trend και, μέσω αυτών των μετοχών, απέκτησαν τον έλεγχο της Κότβα. Ο Όμιλος Forminster επλήρωσε σημαντικώς λιγώτερο για την μετοχές της Κότβα που είχε η Trend από την πραγματική τους αξία.

46.    Ο Όμιλος Forminster εχρησιμοποίησε επίσης και άλλα κεφάλαια που είχε καταχρασθεί από την Trend, γιά να αγοράσει μετοχές της Κότβα. Οι μετοχές της Κότβα που απέκτησε η Forminster από την Trend και οι μετοχές της Κότβα που αγόρασε η Forminster με κεφάλαια της Trend ξεπερνούν το 55% των μετοχών της Κότβα.

47.    Ως μέρος της έρευνας για την «φυγάδευση των κεφαλαίων της Τρεντ» (Trend Tunneling) το 1997, ένας εισαγγελέας στην Δημοκρατία της Τσεχίας επάγωσε τις μετοχές της Κότβα που ευρίσκονταν στην κυριότητα το Ομίλου Forminster, εμποδίζοντας έτσι την Forminster να τις πωλήσει. Το 2004, το Συνταγματικό Δικαστήριο (Constitutional Court) της Τσεχίας επεβεβαίωσε τις πράξεις του εισαγγελέως, γράφοντας:

Κατά την γνώμη του τότε Επόπτου Εισαγγελέως της Περιφερειακής Εισαγγελίας του Hradec Kralove, οι εν λόγω μετοχές ήταν αντικείμενο εγκληματικής ερεύνης ή, ανάλογα με την εξέλιξη της υποθέσεως, προϊόντα εγκλήματος, και ήσαν πλήρως και ουσιαστικώς συνδεδεμένες με την διάπραξη ενός σοβαρού εγκλήματος κατά της περιουσίας. Η έκδοση της εντολής σκοπόν είχε να αποκλείσει την ολοκλήρωση της αλυσίδας των παρανόμων μεταβιβάσεων μετοχών.

Συνταγματικό Δικαστήριο της Τσεχίας, Απόφασις υπ' αριθ. II US 267/03 (15 Απριλίου, 2004). Ομοίως, «κατά την γνώμη του Ανωτέρου Εισαγγελέως (High Public Prosecutor), [οι μετοχές της Forminster στην Κότβα] είναι προϊόντα εγκλήματος διαπραχθέντα από τον Ing. M. H[alek] (Χάλεκ) και σία. Οι μετοχές αυτές μετατράπηκαν σε αποδεικτικούς τίτλους (αξιόγραφα) (documentary securities) και τοποθετήθηκαν στον λογαριασμό της F[orminster] E[nterprises] Limited στο Χρηματιστηριακό Κέντρο της Πράγας» (Prague Security Exchange Center) (αυτόθι).

48.   Ο Εισαγγελέας της Hradec Kralove περιέγραψε το πάγωμα των μετοχών της Κότβα, που ήταν στην κυριότητα της Forminster, ως ένα περιωρισμένης κλίμακος, «ορίζοντας επακριβώς τις μετοχές εκείνες που είχαν αποτελέσει αντικείμενον εγκλήματος ή αποτέλεσμα αυτού», και δεν είχε εφορμογή σε μετοχές «οι οποίες ουδεμίαν σχέσιν είχαν με έγκλημα, ή όπου μιά τέτοια σχέσις, εάν υποτεθεί ότι υπήρχε τοιαύτη, δεν μπορούσε να τεκμηριωθεί αδιαμφισβήτως, βάσει των υπαρχόντων αποδεικτικών στοιχείων». 13 Μαΐου, 1997. Δικαστική εντολή του Εισαγγελέως της Hradec Kralove, αριθ. KZv 323/97.

49.   Κατά την ίδια περίπου περίοδο, το Ανώτερο Δικαστήριο (High Court) του Λίχτενστάιν επάγωσε τους λογαριασμούς της Forminster στην τράπεζα LGT στην πόλη Βαντούζ του Λιχτενστάιν, λόγω υπονοίας ξεπλύματος χρήματος και συνομωσίας, μεταξύ άλλων εγκλημάτων.

50.   Παρά την δικαστική εντολή του τσέχου Εισαγγελέως γιά το πάγωμα των μετοχών της Κότβα, υπό την κυριότητα του Ομίλου Forminster, μέλη του Ομίλου Forminster ήταν ακόμη σε θέση να ψηφίσουν αυτές τις μετοχές. Ο Όμιλος Forminster ελέγχει τουλάχιστον το 55% των μετοχών της Κότβα.

Ως πλειοψηφούντες μέτοχοι, ο Όμιλος Forminster εκλέγει το διοικητικό συμβούλιο της Κότβα και ελέγχει την διοίκησή του.

51.    Παρ' όλα αυτά το πάγωμα των μετοχών εδημιούργησε δυσκολίες στον Όμιλο Forminster.  Δεν μπορούσαν να μετατρέψουν τις μετοχές της Κότβα σε μετρητά. Γι' αυτό έπρεπε να εφεύρουν έναν τρόπο να χωρίσουν τα κεφάλαια της Κότβα α.ε. από τις παγωμένες μετοχές της Κότβα α.ε., να ρευστοποιήσουν αυτά τα κεφάλαια, και να οικειοποιηθούν το προϊόν της ρευστοποιήσεως προς ίδιον όφελος.

52.    Τουλάχιστον από το 1999,  μετά την εκλογή του διοικητικού συμβουλίου της Κότβα α.ε., ο Όμιλος Forminster, μέσω των «ανθρώπων βιτρίνα» (front men), Benda και Harazim, εξάσκησε πλήρη έλεγχο επί της Κότβα α.ε. και ενεργώς κατηύθυνε όλες τις δραστηριότητές της, περιλαμβανομένης και της υποβολής αυτής της μηνύσεως. Ο Όμιλος Forminster χρησιμοποιεί  τον πλήρη του έλεγχο επί της Κότβα α.ε. γιά να δράσει κατά ιδιοτελή τρόπο, αδιαφορώντας γιά τα συμφέροντα των μειοψηφούντων μετόχων της Κότβα α.ε. Χρησιμοποιεί την Κότβα α.ε. γιά να εξυπηρετήσει τα συμφέροντα του Ομίλου Forminster και να απατήσει τους μειοψηφούντες μετόχους.

53.    Ο Όμιλος Forminster έκανε την Κότβα α.ε. να μεταβιβάσει το ακίνητο του Πολυκαταστήματος (Department Store) μέσω μιάς σειράς «εταιρειών κελύφων». Αυτές οι μεταβιβάσεις δεν έχουν κανένα λογικό επιχειρηματικό σκοπό, παρά είναι σχεδιασμένες να επιτρέψουν  στον Όμιλο Forminster να  πάρει με μεγαλύτερη ευκολία της προσόδους από την πώληση του Πολυκαταστήματος. Τελικά, το Πολυκατάστημα επωλήθη σε μία ιρλανδική εταιρεία , ονομαζομένη Markland, έναντι του ποσού των $65 περίπου εκατομμυρίων δολλαρίων.

54.    Πιό συγκεκριμένα, η Κότβα α.ε. πρώτα μεταβίβασε το Πολυκατάστημα σε μιά εταιρεία που εδημιούργησε και ονόμασε Kotva Nemovitosti. Κατά πληροφορίες και την γνώμη μας, πρόεδρος του διοικητικού συμβουλίου της Kotva Nemovito κατά την περίοδο αυτή ήταν ο Benda. Ο Όμιλος Forminster ανάγκασε τότε την Κότβα α.ε. να μετατρέψει την Kotva

Nemovitosti από μιά πλήρως ελεγχόμενη θυγατρική εταιρεία σε μιά ετερόρρυθμη εταιρεία (limited partnership), στην οποία η Κότβα α.ε. είχε δικαίωμα σε λιγώτερο από το μισό των κερδών και του πλεονάσματος της ρευστοποίησης.

55.   Κατόπιν, ο Όμιλος Forminster απεμάκρυνε ακόμη περισσότερο το Πολυκατάστημα από τους μετόχους της Κότβα με την μεταβίβαση του Πολυκαταστήματος από την Kotva Nemovitosti σε μιά άλλη εταιρεία ονομαζόμενη SPV KN. Ο Όμιλος Forminster εχρησιμοποίησε μη καταγεγραμμένες και μη ανιχνεύσιμες προσωπικές ανώνυμες μετοχές (untraceable bearer shares), για να δημιουργήσει την ιδιοκτησία της SPV KN.

56.   Κατά πληροφορίες και τη γνώμη μας, όταν η SPV KN έλαβε για πρώτη φορά το Πολυκατάστημα από τη Kotva Nemovitosti, η Kotva Nemovitosti είχε υπό την κυριότητά της όλες τις προσωπικές επιταγές (bearer shares), που απεδείκνυαν την ιδιοκτησία της SPV KN. Όμως, σύμφωνα με την Ετήσια Έκθεση (Annual Report) του 2004 της Κότβα, ο Όμιλος Forminster απομάκρυνε ακόμη πιό πολύ από τους μετόχους της Κότβα α.ε. το Πολυκατάστημα, με το να αναγκάσει την Kotva Nemovitosti να μεταβιβάσει το 97% των μετοχών της SPV KN, σε μια κυπριακή εταιρεία ονομαζόμενη SPV CO.

57.   Η SPV CO είναι μέρος του Ομίλου Forminster. Η SPV CO έχει ως καταγεγραμμένη έδρα της την διεύθυνση: Αγίου Παύλου 15, Άγιος Ανδρέας, 1105 Λευκωσία, Κύπρος. Η διεύθυνση είναι επίσης καταγεγραμμένη και ως έδρα των δικηγορικών γραφείων της εταιρείας Χριστόδουλος Γ. Βασιλειάδης και Σία (Christodoulos G. Vassiliades & Co.), ο νομικός οίκος δηλαδή που ίδρυσε την Forminster το 1996.

58.   Σύμφωνα με την Ετήσια Έκθεση της Κότβα γιά το 2004, ο Όμιλος Forminster προέβη στην πώληση του Πολυκαταστήματος στην CRQ Czech, μιά τσεχική εταιρεία ελεγχόμενη από την Markland, με την μεταβίβαση των προσωπικών επιταγών (bearer shares) της SPV KN, από την SPV CO στην CRQ Czech.

59.     Κατ' αυτόν τον τρόπον, τα έσοδα από την πώληση του
        Πολυκαταστήματος δεν θα δοθούν στην Κότβα ή ακόμη σε κάποια άλλη
        τσεχική εταιρεία. Αντιθέτως, φαίνεται ότι η τιμή αγοράς γιά τις μετοχές
        της SPV KN θα καταβληθεί ή έχει καταβληθεί στην SPV CO ή κάποια
        άλλη ελεγχόμενη από την Forminster οντότητα, η οποία θα διανείμη τα
        έσοδα από την πώληση μεταξύ των μετόχων του Ομίλου Forminster
        μάλλον, παρά μεταξύ των μετόχων της Κότβα.

60.     Το σχέδιο του Ομίλου Forminster προξένησε ζημία στους ενάγοντες της
        ανταπαίτησης (counterclaim plaintiffs) K T και CVF Investments Ltd.,
        εμποδίζοντάς τους να αποκομίσουν την δικαία απόδοση των επενδύσεών
        τους, την οποία οι πλειοψηφούντες μέτοχοι της Κότβα α.ε., ο Όμιλος
        Forminster, έχουν ήδη ή αναμένουν να αποκομίσουν.


### Κατηγορία I
### (Κατάχρηση Διαδικασίας –
Οι Ενάγοντες της Ανταπαίτησης (Counterclaim-Plaintiffs) Andrew Weiss και Weiss
Asset Management LLC κατά όλων των Εναγομένων της Ανταπαίτησης
(Counterclaim Defendants)

61.     Οι παράγραφοι 1-60 έχουν ενσωματωθεί δι' αναφοράς, ως εάν είχαν
        πλήρως εκτεθεί ενταύθα.

62.     Ο Όμιλος Forminster, περιλαμβανομένων όλων των εναγομένων της
        ανταπαίτησης (counterclaim-defendants), εχρησιμοποίησε την τσεχική
        ποινική διαδικασία με την υποβολή ποινικής διώξεως και με την άσκηση
        της επιρροής του επί της τσεχικής αστυνομίας, για να προκαλέσει ή
        αποπειραθεί να προκαλέσει την έγερση ποινικών κατηγοριών κατά του
        Weiss.

63.     Η πράξη αυτή είχε ένα απώτερο και παράνομο σκοπό, ως περιγράφη
        ανωτέρω.

64.     Ο ενάγων της ανταπαίτησης (countermalim-plaintiff) Weiss εζημιώθη από
        την κατάχρηση αυτή της διαδικασίας, ως περιεγράφη ανωτέρω.

65. Ο Όμιλος Forminster, περιλαμβανομένων όλων των εναγομένων της ανταπαίτησης, εχρησιμοποίησε την αστική διαδικασία των Ηνωμένων Πολιτειών με την υποβολή της παρούσης μηνύσεως.

66. Η πράξη αυτή είχε ένα απώτερο και παράνομο σκοπό, ως περιεγράφη ανωτέρω.

67. Οι ενάγοντες της ανταπαίτησης Weiss και Weiss Asset Management εζημιώθηκαν από την κατάχρηση αυτή της διαδικασίας, ως περιεγράφη ανωτέρω.

## Κατηγορία II

### (Συνωμοσία – Οι Ενάγοντες της Ανταπαίτησης Andrew Weiss, Weiss Asset Management, K T, Inc. και CVF Investment Ltd. κατά Όλων των Εναγομένων της Ανταπαίτησης)

68. Οι παράγραφοι 1-67 ενσωματώνονται δι' αναφοράς, ως εάν είχαν πλήρως εκτεθεί ενταύθα.

69. Τα μέλη του Ομίλου Forminster, περιλαμβανομένων όλων των εναγομένων της ανταπαίτησης (counterclaim-defendants), συμφώνησαν να συνεργασθούν από κοινού γιά να λεηλατήσουν τα κεφάλαια της Κότβα, να κάνουν κατάχρηση της τσεχικής ποινικής διαδικασίας, και της αστικής διαδικασίας των Ηνωμένων Πολιτειών.

70. Τα μέλη του Ομίλου Forminster διαθέτουν μιά ιδιαίτερη δύναμη εξαναγκασμού κατά το ότι, ως όμιλος, έχουν πρόσβαση και επιρροή επί ενός τουλάχιστον μέλους της τσεχικής κυβερνήσεως, περιλαμβανομένης και της ικανότητας να αναγκάζουν την τσεχική αστυνομία να υποβάλει ποινικές διώξεις, πράγμα το οποίο προσφέρει σ' αυτά ισχυρό πλεονέκτημα στις εμπορικές τους διαμάχες.

71. Οι εναγόμενοι της ανταπαίτησης Kotva, Benda, Harazim, Forminster, SPV CO και John Does 1-5 έχουν συνωμοτήσει γιά να ζημιώσουν τους ενάγοντες της ανταπαίτησης Weiss, Weiss Asset Management, KT, Inc. και CVF Investments Ltd., ως περιεγράφη ανωτέρω.

28

## Κατηγορία III

### (Σφετερισμός – Plaintiffs K T, Inc. και CVF Investments Ltd. κατά Benda, Harazim, Forminster, SPV CO και John Does 1-5)

72.    Οι παράγραφοι 1-71 ενσωματώνονται δι' αναφοράς, ως εάν είχαν πλήρως εκτεθεί ενταύθα.

73.    Η Κότβα α.ε. είτε αμέσως είτε μέσω μίας πλήρως ελεγχομένης θυγατρικής έχει ή είχε το δικαίωμα στις προσόδους από την πώληση του Πολυκαταστήματος.

74.    Οι εναγόμενοι της ανταπαίτησης (counterclaim-defendants) Benda, Harazim, Forminster, SPV CO και John does 1-5, έλαβαν παρανόμως τον έλεγχο των συμφερόντων της Κότβα, σχετικά με τις προσόδους από την πώληση του Πολυκαταστήματος. Με την πράξη τους αυτή, οι εναγόμενοι της ανταπαίτησης αποστέρησαν την Κότβα και τους μετόχους της, περιλαμβανομένων των εναγόντων της ανταπαίτησης (counterclaim-plaintiffs) K T και CVF Investments από τα δικαιώματά τους να επωφεληθούν από την αξία του Πολυκαταστήματος.

## Κατηγορία IV

### (Παράνομος Πλουτισμός–

### Οι Ενάγοντες της Ανταπαίτησης K T, Inc. και CVF Investments Ltd. κατά Benda, Harazim, Forminster, SPV CO και John Does 1-5)

75.    Οι παράγραφοι 1-74 ενσωματώνονται δι' αναφοράς, ως εάν είχαν πλήρως εκτεθεί ενταύθα.

76.    Με την πώληση του Πολυκαταστήματος και την κράτηση των προσόδων για τον εαυτό τους οι εναγόμενοι της ανταπαίτησης Benda, Harazim, Forminster, SPV CO και John Does 1-5 επλούτησαν παρανόμως και εις βάρος των εναγόντων της ανταπαίτησης K T, Inc. και CVF Investments Ltd.

<u>Κατηγορία V</u>

**(Παράβαση Διαπιστευμένου Καθήκοντος/Κατάχρηση Ελέγχου**
**Οι Ενάγοντες της Ανταπαίτησης Κ Τ, Inc. και CVF Investments Ltd. κατά**
**Benda, Harazim και Forminster)**

77.    Οι παράγραφοι 1-76 ενσωματώνονται δι' αναφοράς, ως εάν είχαν πλήρως εκτεθεί ενταύθα.

78.    Ο Harazim είναι αξιωματούχος της Κότβα α.ε., μέλος του Εποπτικού της Συμβουλίου και πρώην μέλος του διοικητικού συμβουλίου της Κότβα α.ε.

79.    Ο Benda είναι Πρόεδρος του Εποπτικού Συμβουλίου της Κότβα α.ε. και πρώην μέλος του διοικητικού συμβουλίου της Κότβα α.ε.

80.    Από το 1997 η Forminster έχει υπό τον έλεγχόν της την πλειοψηφία των μετοχών της Κότβα α.ε. και τουλάχιστον από το 1999, έχει υπό τον έλεγχό της το διοικητικό συμβούλιο της Κότβα α.ε.

81.    Ως αξιωματούχος, διευθυντής και εποπτεύον μέλος του διοικητικού συμβουλίου της Κότβα α.ε. ο Harazim οφείλει να έχει διαπιστευμένο καθήκον υψίστης αφοσίωσης και καλής πίστης προς την Κότβα και τους μετόχους της.

82.    Ως διευθυντής και εποπτεύον μέλος του διοικητικού συμβουλίου της Κότβα α.ε., ο Benda οφείλει να έχει διαπιστευμένο καθήκον υψίστης αφοσίωσης και καλής πίστης προς την Κότβα και τους μετόχους της.

83.    Ως εταιρεία η οποία ελέγχει την πλειοψηφία των μετοχών της Κότβα α.ε., η Forminster έχει το καθήκον προς τους μειοψηφούντες μετόχους της Κότβα, να μην κάνει κατάχρηση της πλειοψηφίας των ψήφων της.

84.    Ως εποπτεύοντα μέλη του διοικητικού συμβουλίου της Κότβα, ο Benda και Harazim έχουν χρέος προς τους μετόχους της Κότβα να ελέγχουν το διοικητικό συμβούλιο.

85.    Με το να κατευθύνουν και να συμμετέχουν στις επανειλημμένες μεταβιβάσεις του Πολυκαταστήματος προς όφελος του Ομίλου Forminster  παρά προς τους μετόχους της Κότβα, οι Harazim, Benda και Forminster παρέβησαν τα αντίστοιχα καθήκοντά τους προς τους μετόχους

30

της Κότβα, περιλαμβανομένων και των εναγόντων της ανταπαίτησης K T
και CVF Investments Ltd.

86.    Χρησιμοποιώντας την επιρροή τους επί του διοικητικού συμβουλίου της
Κότβα, με αποτέλεσμα να κάνουν το εν λόγω διοικητικό συμβούλιο να
ενεργήσει εις βάρος της Κότβα και των μετόχων της, περιλαμβανομένων
των εναγόντων της ανταπαίτησης K T και CVF Investments Ltd., οι
Benda, Harazim και Forminster έκαναν κατάχρηση του ελέγχου τους επί
του διοικητικού συμβουλίου της Κότβα, κατά παράβαση του Τσεχικού
Εμπορικού Κώδικος &66c.

87.    Με το να επιτρέψουν και να ενθαρρύνουν το διοικητικό συμβούλιο να
αποστερήσει την Κότβα από το Πολυκατάστημα και με το να μην
βεβαιωθούν, ότι οι μέτοχοι της Κότβα θα λάβουν ως αντάλλαγμα μιά
δίκαιη αποζημίωση, οι Benda και Harazim παρέβησαν το καθήκον τους
να ελέγχουν το διοικητικό συμβούλιο της Κότβα και τούτο απέβη εις
βάρος των μετόχων της Κότβα, περιλαμβανομένων και των εναγόντων
της ανταπαίτησης K T και CVF Investments Ltd.

88.    Οι ενάγοντες της ανταπαίτησης K T και CVF Investments Ltd.
εζημιώθησαν από αυτές τις παραβάσεις διαπιστευμένου καθήκοντος και
κατάχρησης ελέγχου, ως περιγράφη ανωτέρω.

### Κατηγορία VI
(Εποικοδομητικό Τραστ –Constructive Trust--
Οι Ενάγοντες της Ανταπαίτησης KT, Inc. και CVF Investments Ltd.
κατά πάντων των Εναγομένων της Ανταπαίτησης)

89.    Οι παράγραφοι 1-88 ενσωματώνονται δι' αναφοράς, ως εάν είχαν πλήρως
εκτεθεί εντάυθα.

90.    Το Πολυκατάστημα, οι προσωπικές ανώνυμες μετοχές (bearer shares)
στην SPV KN και/ή τα έσοδα από την πώληση αυτού του είδους των
μετοχών από την SPV KN υπόκεινται στην δημιουργία ενός
εποικοδομητικού τράστ (constructive trust) προς όφελος των μετόχων της

31

Κότβα, περιλαμβανομένων των εναγόντων της ανταπαίτησης Κ Τ και CVF Investments Ltd.

## Κατηγορία VII

**(Αθέμιτος Συναγωνισμός και Αθέμιτες και Δόλιες Εμπορικές Πρακτικές ---Andrew Weiss, Weiss Asset Management, K T, Inc. και CVF Investments Ltd. κατά πάντων των Εναγομένων της Ανταπαίτησης)**

91.  Οι παράγραφοι 1-90 ενσωματώνονται δι' αναφοράς, ως εάν είχαν πλήρως εκτεθεί ενταύθα.

92.  Ο Όμιλος Forminster και τα μέλη του ασχολούνται με εμπορικές και συναφείς συναλλαγές, οι οποίες εμπίπτουν εντός των πλαισίων του νόμου M.G.L. ch. 93A.

93.  Οι ενάγοντες της ανταπαίτησης Weiss, WAM, K T, Inc. και CVF Investments Ltd. ασχολούνται με εμπορικές και συναφείς συναλλαγές, οι οποίες εμπίπτουν εντός των πλαισίων του νόμου M.G.L. ch. 93A.

94.  Ο σφετερισμός, απάτη, κατάχρηση διαδικασίας, συνωμοσία και δόλιες μεταβιβάσεις του Πολυκαταστήματος από τον Όμιλο Forminster συνιστούν αθέμιτες και δόλιες εμπορικές πρακτικές.

95.  Ο Όμιλος Forminster εφαρμόζει αυτές τις αθέμιτες και δόλιες εμπορικές πρακτικές εν γνώσει του και εκ προθέσεως.

96.  Ως αποτέλεσμα των πράξεων αυτών, οι ενάγοντες της ανταπαίτησης υπέστησαν ζημίες, ως περιεγράφη ανωτέρω.

## Κατηγορία VIII

**(Δικαστική Απόφαση ---Declaratory Judgment – Οι Ενάγοντες της Ανταπαίτησης K T, Inc. και CVF Investments Ltd. κατά πάντων των Εναγομένων της Ανταπαίτησης)**

97.  Οι παράγραφοι 1-96 ενσωματώνονται δι' αναφοράς, ως εάν είχαν πλήρως εκτεθεί ενταύθα.

98.  Υπάρχει μιά σοβαρή διαμάχη μεταξύ των εναγόντων της ανταπαίτησης K T, Inc.και CVF Investments Ltd. αφ' ενός, και των Benda, Harazim,

32

Forminster, SPV CO και John Does 1-5 αφ' ετέρου, ως προς το ποιός θα πρέπει να λάβει τις προσόδους από την πώληση του Πολυκαταστήματος.

99. Οι Benda, Harazim, Forminster, SPV CO και John Does 1-5 έχουν υπό την κατοχή τους τις προσόδους από την εν λόγω πώληση με παράνομα μέσα. Κατά συνέπειαν δεν έχουν νόμιμο δικαίωμα επ' αυτών των προσόδων.

100. Αντιθέτως, οι πρόσοδοι από την πώληση ανήκουν στην Κότβα α.ε. και τους μετόχους της.

101. Υπάρχει σοβαρή διαμάχη μεταξύ των εναγόντων της ανταπαίτησης Κ Τ, Inc. αφ' ενός, και των Benda, Harazim, Forminster, SPV CO και John Does 1-5, αφ' ετέρου, ως προς το εάν η Forminster είναι ο νόμιμος κάτοχος του 55% των μετοχών της Κότβα.

102. Με την παράνομη διατήρηση ελέγχου επ' αυτών των μετοχών, ο Όμιλος Forminster είναι εις θέσιν να διατηρεί τον έλεγχον επί της Κότβα και να προβαίνει εις πράξεις οι οποίες βλάπτουν την μειοψηφία των μετόχων, περιλαμβανομένων των εναγόντων της ανταπαίτησης Κ Τ, Inc. και CVF Investments Ltd.

103. Ο Όμιλος Forminster δεν έχει νόμιμο δικαίωμα επί των μετοχών του στην Κότβα, διότι οι μετοχές αυτές είτε εκλάπησαν από την Trend είτε αντιπροσωπεύουν προσόδους από άλλα κεφάλαια κλεμμένα από την Trend.

**ΑΙΤΗΣΗ ΓΙΑ ΑΠΟΚΑΤΑΣΤΑΣΗ ΖΗΜΙΑΣ  (PRAYER FOR RELIEF)**

ΔΙΑ ΤΑΥΤΑ, οι ενάγοντες της ανταπαίτησης Andrew Weiss, Weiss Asset Management LLC, KT, Inc. και CVF Investments Ltd. ευσεβάστως παρακαλούν όπως το δικαστήριο αυτό:

(α) Εκδώσει δικαστική απόφαση υπέρ των εναγόντων της ανταπαίτησης και καταδικάσει τους εναγόμενους της ανταπαίτησης επί όλων των κατηγοριών του ανταπαίτησης

(β) Επιβάλει την δημιουργία ενός εποικοδομητικού τραστ (constructive trust) γιά τις προσόδους της πωλήσεως του Πολυκαταστήματος

33

(γ)     Κηρύξει ότι οι μέτοχοι της Κότβα α.ε. είναι οι κύριοι των προσόδων από την πώληση του Πολυκαταστήματος

(δ)     Κηρύξει ότι ο Όμιλος Forminster δεν είναι ο νόμιμος κάτοχος των μετοχών της Κότβα α.ε., επί των οποίων ισχυρίζεται ότι έχει κυριότητα

(ε)     Λάβει απόφαση, η οποία να απαιτεί όπως οι Benda, Harazim, Forminster και John Does 1-5, παραιτηθούν από τις προσόδους της πωλήσεως του Πολυκαταστήματος και μεταφέρουν αυτές στους μετόχους της Κότβα α.ε.

(στ)    Επιδικάσει αποζημιώσεις επί των κατηγοριών I, II, III, IV, V, και VII, περιλαμβανομένης τριπλής αποζημιώσεως επί της Κατηγορίας VII

(ζ)     Επιδικάσει προς τους ενάγοντες της ανταπαίτησης τα έξοδά των

(η)     Επιδικάσει προς τους ενάγοντες της ανταπαίτησης τα δικηγορικά τους έξοδα, και

(θ)     Προσφέρει οποιαδήποτε άλλη αποζημίωση την οποία το Δικαστήριο θα κρίνει δικαία και αρμόζουσα.


## ΑΙΤΗΣΗ ΔΙΚΗΣ ΜΕ ΕΝΟΡΚΟΥΣ

ΟΙ ΕΝΑΓΟΜΕΝΟΙ  ΚΑΙ ΕΝΑΓΟΝΤΕΣ ΤΗΣ ΑΝΤΑΠΑΙΤΗΣΗΣ ΑΠΑΙΤΟΥΝ ΔΙΚΗ ΜΕ ΕΝΟΡΚΟΥΣ ΕΠΙ ΟΛΩΝ ΤΩΝ ΔΙΚΑΣΙΜΩΝ ΘΕΜΑΤΩΝ.

Υποβληθέν ευσεβάστως, υπό των
ANDREW WEISS, WEISS ASSET
MANAGEMENT LLC, K T, INC., και  CVF
INVESTMENTS LTD.


Διά των δικηγόρων τους,


/s/Benjamin A. Goldberger
Edward P. Leibensperger (BBO#292620)
Michael Kendall (BBO# 544866)
Benjamin A. Goldberger (BBO# 654357)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts 02109-1775
(617) 535-4000

Ημερομηνία: 15 Ιουνίου, 2005

## ΠΙΣΤΟΠΟΙΗΤΙΚΟ ΥΠΗΡΕΣΙΑΣ

Ο κάτωθι υπογεγραμμένος Benjamin A.Goldberger, δηλώ υπευθύνως, ότι την 15ην Ιουνίου, 2005, το προηγούμενο έγγραφο διεβιβάσθη διά κατεπείγοντος ταχυδρομείου προς τον δικηγορικόν οίκον τον αναλαβόντα την υπόθεση της Κότβα α.ε.

/s/Benjamin A. Goldberger_____

Benjamin A. Goldberger

35

1

ΕΚΘΕΣΗ 1 (EXHIBIT 1)
ΠΕΡΙΛΗΨΗ ΤΩΝ ΑΝΤΑΠΑΙΤΗΣΕΩΝ

| Κατηγορία<br><br>Εναγό-μενος | I<br>Κατάχρηση Διαδικασίας Weiss και WAM | II<br>Συνωμοσία Weiss, WAM, ΚΤ και CVFI | III<br>Σφετερισμός ΚΤ και CVFI | IV<br>Παράνομος Πλουτισμός ΚΤ και CVFI | V<br>Παράβαση Καθήκοντος/ Κατάχρηση Ελέγχου ΚΤ και CVFI | VI<br>Εποικοδο-μητικό Τράστ ΚΤ και CVFI | VII<br>Αθέμιτες Εμπορικές Πρακτικές Weiss, WAM, ΚΤ και CVFI | VIII<br>Δικαστική Απόφαση ΚΤ και CVFI |
|---|---|---|---|---|---|---|---|---|
| Κότβα α.ε. | X | X | | | | X | X | X |
| Formäister | X | X | X | X | | X | X | X |
| SPV CO | X | X | X | X | | X | X | X |
| Benda | X | X | X | X | X | X | X | X |
| Harazim | X | X | X | X | X | X | X | X |
| John Does 1-5 | X | X | X | X | | X | X | X |

2

ΜΑΡΤΥΡΙΕΣ ΑΠΟ ΤΟ ΛΙΧΤΕΝΣΤΑΪΝ ΓΙΑ ΤΟ ΤΡΟΠΟ ΔΙΑΦΥΓΗΣ ΚΕΦΑΛΑΙΩΝ ("TUNNELING") ΤΗΣ TREND

**Σύνθημα.: PIANO BLACK**
Περιγραφή ενός πρωτότυπου τρόπου, πως να υπεξαιρέσεις, με διαφυγή χρημάτων μέσω «τούνελ» (tunnel) ένα επενδυτικό κεφάλαιο: Το ΤΥΝΤΕΣ (TYDEN) έχει αποδεικτικά στοιχεία, που υποστηρίζουν τις υπόνοιες, ότι η φερόμενη ως «πώληση» στο εξωτερικό του Πολυκαταστήματος Κότβα (Department Store Kotva) δεν ήτανε τίποτε άλλο παρά ένα ψεύτικο κόλπο.

ΠΕΡΙΟΔΙΚΟ ΤΥΝΤΕΝ (TYDEN) 04/1998

Η περίπτωση του Πολυκαταστήματος Κότβα (με αγοραία αξία γύρω στα 2,885 δισεκατομμύρια Τσεχικές Κορώνες) αποτελεί μιά μάχη απρόβλεπτων διαστάσεων γιά την Τσεχική Δημοκρατία. Η ιστορία διανθίζεται με άτομα που πήγαν φυλακή, δεκάδες μηνύσεων στα δικαστήρια, εκστρατείες πολύ γνωστών γραφείων Δημοσίων Σχέσεων, καθώς και μια ασυνήθιστη συγκέντρωση των πιο διάσημων Τσέχων δικηγόρων. Πριν σας παρουσιάσουμε την αναπάρασταση της υποθέσεως, με βάση τα τελευταία ευρήματα της ΤΥΝΤΕΝ, ας συγκεντρωθούμε στα βασικά σημεία της υποθέσεως: η εταιρεία Kralovehradecka brokerska, γνωστή και ως (KHB), αποπειράθηκε, όπως αποδεικνύουν τα στοιχεία που ήρθαν στην κατοχή μας, να πάρει την πλειοψηφία των μετοχών της Κότβα από την Trend και να την μεταβιβάσει, μέσω μιάς ξένης εταιρείας, προς όφελος μη καθορισμένων εισέτι προσώπων ή εταιρειών. Η υπόθεση είναι μία από τις πιό πολύπλοκες στην σύγχρονη ιστορία του εμπορικού δικαίου της χώρας μας.

**Περιγραφή της υπόθεσης Trend και Kotva**

Το αμοιβαίο επενδυτικό κεφάλαιοΤρεντ (Trend) (ιδρυμένο από την τράπεζα Skala Bank και την εταιρεία Montovane stavby) εκμεταλλεύτηκε τις πολιτικές γνωριμίες του Michael Kocab (Μιχαήλ Κόκαμπ ), και σε συνδυασμό με τα επιχειρηματικά ταλέντα του Martin Kratochvil (Μάρτιν Κρατοτσβίλ) είχε μια σοβαρή επιτυχία στην διαδικασία της ιδιωτικοποίησης με επενδυτικά κουπόνια (voucher privatization). Οι πρώτες δραστηριότητες που θεωρήθηκαν σαν απειλή από τα «ιδρυτικά στελέχη» του κεφαλαίου, ήταν οι δραστηριότητες που είχαν σχέση με τις ομάδες μικρών μετόχων και τήν αγορά και συγκέντρωση των μετοχών. Η Τρεντ έκανε προσπάθεια να εμποδίσει τη δημιουργία ενός ισχυρού γκρουπ από την μειοψηφία των μετόχων, που θα είχε την δύναμη να αντικαταστήσει τα θεσμικά σώματα του κεφαλαίου, που το αποτελούσαν «τα ιδρυτικά στελέχη», με την προσφορά πολύ καλών μερισμάτων (πιστεύοντας ότι οι αρχικοί μέτοχοι, ικανοποιημένοι από τέτοια μερίσματα, δεν θα πωλούσαν τις μετοχές τους). Όμως η τακτική αυτή δεν απεδείχθη πολύ αποτελεσματική και σε λίγους μήνες οι κάτοχοι των κουπονίων επενδύσεως (δηλ. οι μέτοχοι) άρχισαν να πωλούν τις μετοχές τους στον επενδυτή, που άρχισε να τις συσσωρεύει και πάλι (η εταιρεία Czech Value Fund, η οποία πρόκειται να παίξει ένα σημαντικό ρόλο στην υπόθεση αυτή αργότερα).

Τον Φεβρουάριο του 1995, η νέα επενδυτική εταιρεία Trend a.s., ιδρύθηκε με ένα ιδρυτικό κεφάλαιο 1,000,000 CZK (Κορωνών Τσεχίας). Μεταξύ των μετόχων της ήταν

1

και ο Michael Kocab και Martin Kratochvil. Η εταιρεία αυτή ανέλαβε την διαχείρηση της ΤΡΕΝΤ. Η δημιουργία και ύπαρξή της, όμως, μοιάζουν να έχουν έναν ειδικό σκοπό, αφού οι μετοχές της διαχειρίστριας εταιρείας ΤΡΕΝΤ, επωλήθηκαν, στις 2 Αυγούστου, 1995, στην Kralovehradecka brokerska, έναντι της τιμής των 318,365,000 CZK (Κορωνών Τσεχίας), της οποίας κύριος μέτοχος ήταν ο Miroslav Halek (Μιροσλάβ Χάλεκ), (ο οποίος ευρίσκεται υπό κράτηση σήμερα). Το κέρδος του Kocab από αυτή την συναλλαγή ανήλθε στο ποσό των 36,142,000 CZK (Κορωνών Τσεχίας) . Το γεγονός ότι η μεταβίβαση αυτή ήταν το πρώτο και κύριο ατόπημα κατά των μετόχων της Trend, προκύπτει από την δημόσια ανακοίνωση του Kocab τον Νοέμβριο του 1997: «Σε περίπτωση που τα κεφάλαια της μειοψηφίας των μετόχων δεν επιστραφούν σε αυτούς, θα πάρω μεν αυτό το ποσό χρημάτων, αλλά θα το προσφέρω για κάποιο φιλανθρωπικό σκοπό, που θα έχει καλό έλεγχο».

**Διαφυγή κεφαλαίων μέσω «τούνελ» (Tunnel) από την αρχή**

Οι νέοι διαχειριστές της Trend από την Kralovehradecka brokerska (ΚΗΒ) έκαναν την πρώτη τους ύποπτη συναλλαγή με τις μετοχές, τρεις μόνον εβδομάδες μετά από την ανάληψη της διοίκησης της διαχειρίστριας εταιρείας. Με τρία συμβόλαια επώλησαν τις επικερδείς μετοχές της Trend (Telecom, Chemopetrol και Synthesia) στην εταιρεία Consult Invest (της οποίας το αφεντικό ευρίσκεται σήμερα υπό κράτηση) για 487 εκατομμύρια Τσέχικες Κορώνες. Ο αγοραστής πλήρωσε μόνον την πρώτη δόση (135 εκατομμύρια), χρωστώντας τα υπόλοιπα μέχρι σήμερα – με αποτέλεσμα η Trend να χάσει 352 εκατομμύρια. Επί πλέον, κράτησε τις μετοχές που αγόρασε μόνον για μιά-δυό μέρες και μετά τις ξαναπούλησε σε εταιρεία που είχε δεσμούς με την Kralovehradecka brokerska.

Η απλή σύγκριση των αριθμών οδηγεί λογικά και άμεσα στην υποψία, ότι αυτή η συναλλαγή είχε σκοπό να καλύψει την επένδυση της ΚΗΒ, για την αγορά της διαχειρίστριας επενδυτικής εταιρείας Trend, περιλαμβανομένης και μιάς προμήθειας 10%. Πρέπει να αναφέρουμε εδώ, ότι τότε ήταν ακόμη στο Διοικητικό Συμβούλιο της Trend, οι Michael Kocab και Martin Kratochvil, αλλά και οι δύο ισχυρίζονται, ότι ευρίσκονταν σε διακοπές στο εξωτερικό και δεν ευρίσκονταν σε επαφή, όταν το κεφάλαιο πωλούσε τις επικερδείς αυτές μετοχές.

**Τα Μάτια στην Kotva**

Μέχρι το τέλος του 1995, η Trend έλεγχε γύρω στο 20% των μετοχών της Κότβα. Ο Χάλεκ, που ήταν τότε όχι μόνον ο κάτοχος της διαχειρίστριας εταιρείας, αλλά είχε ήδη την θέση του Προέδρου του Διοικητικού Συμβουλίου της ίδιας της Trend, κατάφερε σταδιακά να συγκεντρώσει το 65% των μετοχών της Κότβα, μέσω πολλών ειδών διαφορετικές εταιρείες.

Το προαναφερθέν Czech Value Fund (CVF) είχε επιδείξει ενδιαφέρον για το Πολυκατάστημα και ήδη κατά την διάρκεια του 1996 αγόρασε το 37% των μετοχών της Trend στην κεφαλαιαγορά για 10 περίπου εκατομμύρια δολλάρια. Την 1η Νοεμβρίου, οι αντιπρόσωποι της CVF, John Moffit και Michael Blum, εξελέγησαν στο Διοικητικό

2

Συμβούλιο του Κεφαλαίου (Board of Directors of the Fund). Μιά εβδομάδα αργότερα, όταν ανακάλυψαν ότι τα κεφάλαια είχαν ήδη διαφύγει στο εξωτερικό, το Υπουργείο Οικονομικών κάτω από πίεση, επέβαλε αναγκαστική διαχείριση στη Trend. Ο διευθυντής στο Λονδίνο της εταιρείας που έλεγχε την CVF, ο κ. Kingsnorth, ανέφερε κάποτε, ότι δεν είναι μόνον το Διοικητικό Συμβούλιο υπό την αρχηγία του Halek, που θα πρέπει να θεωρηθεί υπεύθυνο για την κακή διαχείριση του κεφαλαίου, αλλά και το προηγούμενο Διοικητικό Συμβούλιο, δηλαδή ο Kocab και οι συνεταίροι του.

**Πάγωμα Λογαριασμού.**

Ο John Moffit, ο διευθυντής της CVF, αντεπιτίθεται με την βοήθεια του Michael Kocab και του δικηγορικού οίκου Vana, Pergl and Partner ή ΑΚ VPP το 1997. Οι λογαριασμοί της Trend παγώνουν, αλλά η διαταγή για το πάγωμα φθάνει πολύ αργά στο Prague Security Center (Κέντρο Χρηματιστηριακών Τίτλων της Πράγας), και δίνει αρκετό χρόνο στους Halek and Co., να επωφεληθούν του χρόνου και να πωλήσουν γύρω στο 14% των μετοχών της Κότβα από τον παγωμένο λογαριασμό, σε φιλικές τους εταιρείες, μέχρι το τέλος Ιανουαρίου, 1997. Εκτός τούτου, συνέχισαν να διακινούν άλλες μετοχές μέχρις ότου τελικά κατάφεραν, στις 30 Ιανουαρίου, 1997, να πωλήσουν το μεγαλύτερο μέρος του 56% των μετοχών της Κότβα (Kotva) στην Κυπριακή εταιρεία Forminster Enterprises Limited ή FEL, για 80 εκατομμύρια Κορώνες Τσεχίας. Στις αρχές Μαρτίου ετέθηκαν τελικά υπό κράτηση και οι κυβερνητικοί επίσημοι κατάφεραν να παγώσουν το 65% των μετοχών της Κότβα. Αυτό ήταν η απαρχή μιάς βίαιης και άνευ προηγουμένου δικαστικής διαμάχης μεταξύ της FEL (ΦΕΛ) και της Czech Value Fund.

**Η μάχη των δικηγόρων**

Οι δικηγόροι από την ΑΚ VPP, που προσελήφθησαν από την μειοψηφία των μετόχων, την Czech Value Fund, εισέρχονται στο θεσμικό σώμα της Trend. Καθίστανται θεσμικοί αντιπρόσωποι τον Απρίλιο, αλλά ταυτοχρόνως οι δικηγόροι Robert Pergl και Radek Blaha της ΑΚ VPP ενεργούν ως δικηγόροι της Trend στη γενική συνέλευση της Κότβα και καταφέρνουν να νικήσουν τους αντιπροσώπους της FEL (ΦΕΛ), σε μία κατά μέτωπον επίθεση. Όπως αναφέρει ο Pergl σε μια συνέντευξή του στήν Pravo (Πράβο, εφημερίδα) στις 27 Οκτωβρίου, 1997: «και τώρα μιλούσαμε έτσι, ώστε πνίγαμε ο ένας την φωνή του άλλου, εγώ και ο Πρόεδρός τους. Και τελικά εγκατέλειψε σε μία ώρα –δεν είχε το θάρρος να συνεχίσει». Ως αποτέλεσμα τούτου, αναδύθηκαν δύο Διοικητικά Συμβούλια γιά την διοίκηση της Κότβα. Ο Pergl συνέταξε ένα πληρεξούσιο γιά τον εαυτό του.

Τον Ιούνιο του 1997, ο νέος κάτοχος του 56% των μετοχών της Κότβα, η Κυπριακή FEL (ΦΕΛ), διορίζει ως δικηγόρο της τον δικηγορικό οίκο Petr Toman and Partners. Όμως, το Διοικητικό Συμβούλιο που είχε διορισθεί από την μειοψηφία των μετόχων, δηλ. το Czech Value Fund, είχε ήδη εγγραφεί στο Εμπορικό Ληξιαρχείο (Commercial Register) στις 4 Αυγούστου.

Τον Αύγουστο του 1997, ένα άλλο ύποπτο συμβόλαιο υπεγράφη: το νεώτερο μέλος του δικηγορικού οίκου Toman, ο πρώην διευθυντής της Security and Information Agency

3

(Γραφείο Ασφαλείας και Πληροφοριών) της Τσεχικής Δημοκρατίας  Stanislav Devaty, αγοράζει την Κότβα σαν ακίνητο, από το παλαιό Διοικητικό Συμβούλιο του Χάλεκ, για 2,885 δισεκατομμύρια Τσέχικες Κορώνες (αυτό επετεύχθη με την εγγραφή του στο Υποθηκοφυλακείο της Πράγας, και  μέρος της συναλλαγής ήταν η ανακοινωθείσα απόσυρσις του συμβολαίου μετά  την εκπλήρωση ωρισμένων όρων). Σκοπός  της πράξης αυτής ήταν η προσπάθεια της Κυπριακής εταιρείας, που αντιπροσωπευόταν από τον δικηγορικό οίκο Toman, να προλάβει οποιαδήποτε χειραγώγηση του ακινήτου της Κότβα. Τον Νοέμβριο του 1997, το συμβόλαιο αυτό ακυρώθηκε, αφού εξέλιπε θεωρητικά η ύπαρξη κινδύνου παράνομης διάθεσης του ακινήτου.

**Τραπεζιτικά Έγγραφα**

Αλλά ας επανέλθουμε στο κύριο ερώτημα της νομιμότητας των πιό σπουδαίων αποφάσεων που ελήφθησαν, καθώς επίσης και γιά το τι πραγματικά  ενδιεφερόταν η FEL (ΦΕΛ).

Τον Δεκέμβριο του 1997 ο ΄Αρειος Πάγος (Supreme Court) της Πράγας κατάργησε την εγγραφή του μειοψηφούντος Διοικητικού Συμβουλίου και το νέο Διοικητικό Συμβούλιο εξελέγη μέσα σε μιά εμπρηστική γενική συνέλευση, διευθυνόμενη από τον δικηγόρο Tomas Sokol (διορισμένο από τον πλειοψηφούντα μέτοχο της Trend, δηλ. την Κυπριακή εταιρεία FEL (ΦΕΛ). Το νέο Διοικητικό Συμβούλιο απαρτιζόταν εν μέρει από αντιπροσώπους της εταιρείας Czech Investment Holding ή CIH. Αυτό ήταν τελείως απροσδόκητο. Η CIH αντιπροσωπευόταν από έναν άλλο μεγάλο δικηγορικό οίκο, τον Kriz, Belina & Co. Αλλά πως μπήκε στο παιγνίδι η CIH; Η CIH αγόρασε δικαιώματα (options) γιά τις μετοχές της Κότβα από την Κυπριακή FEL (ΦΕΛ). (Εδώ θα πρέπει να αναφερθεί, ότι τέτοιοι γνωστοί δικηγόροι όπως ο Toman και ο Lzicar ήταν παρόντες σ' αυτή τη γενική συνέλευση –δημιουργώντας έτσι μιά συγκέντρωση των πιό διάσημων Τσέχων δικηγόρων ανά τετραγωνικό μέτρο, πράγμα πρωτοφανές στα χρονικά της σύγχρονης Τσεχικής ιστορίας).

Η CIH είναι ένας καθαρώς Τσέχικος επενδυτής, γιά τον οποίον η επένδυση στις μετοχές της Κότβα αντιπροσωπεύει  μια πράξη μέ υποφερτό ρίσκο. Οι αντιπρόσωποί της θα παραμείνουν στα θεσμικά σώματα της Κότβα τουλάχιστον, έως ότου ληφθεί η απόφαση γιά το ποιός είναι ο κάτοχος των παγωμένων μετοχών της Κότβα. Ο ρόλος της CIH στις συναλλαγές γύρω από την Κότβα μοιάζει να είναι σύμπτωση μάλλον παρά ο,τιδήποτε άλλο.

**"PIANO BLACK" (ΜΑΥΡΟ ΠΙΑΝΟ)**

Η γενική συνέλευση της Κότβα τον Δεκέμβριο δεν πήγε πολύ καλά για την Czech Value Fund. Λίγες μέρες αργότερα, μιά ανακοίνωση του δικηγόρου Jirkova του δικηγορικού οίκου Vana, Pergl and Partners εμφανίζεται στον τύπο (LN (ΛΝ), 12 Δεκεμβρίου, 1997), δηλώνοντας ότι έχουν στη κατοχή τους στοιχεία που αποδεικνύουν, ότι η Κυπριακή FEL (ΦΕΛ), δεν είναι τίποτε άλλο παρά το «χρηματοκιβώτιο» του Χάλεκ. Η TYNTEN (TYDEN) κατάφερε να αποκτήσει μερικά από τα έγγραφα που αποδεικνύουν κάτι τέτοιο.

4

Εάν αποδειχθεί η αυθεντικότητά τους, τότε οι δικηγόροι θα έχουν επιτύχει ένα εντυπωσιακό κατόρθωμα (ας μήν ξεχνάμε, ότι ο ίδιος δικηγορικός οίκος έφερε στο φως την υπόθεση της διαφυγής των χρημάτων της CS Funds, αποκαλύπτοντας και περιγράφοντας επακριβώς τον τρόπο διαφυγής των κεφαλαίων, που εχρησιμοποιήθη προς αυτό το σκοπό).

Στην περίπτωση της Trend, αυτό σημαίνει, ότι κατώρθωσαν να ξεπεράσουν το τραπεζιτικό απόρρητο της τράπεζας LGT Bank του Λίχτενστάιν, όπου η Κυπριακή FEL (ΦΕΛ) έχει τον λογαριασμό της. Σύμφωνα με τις κατηγορίες των, ο Χάλεκ υπετίθετο ότι θα «εμίσθωνε» την FEL (ΦΕΛ) για τις επιχειρήσεις του, πράγμα που φαινόταν από το πληρεξούσιο που έδωσε η FEL (ΦΕΛ) στον Χάλεκ γιά να διαχειρίζεται τον λογαρισμό της, περιλαμβανομένου και του συνθήματος "PIANO BLACK", για τηλεφωνικές τραπεζιτικές συναλλαγές. Είναι μάλλον απίθανο ένας Κύπριος πολίτης να διάλεγε σύνθημα συναλλαγών στην τσεχική γλώσσα.

Όπως φαίνεται αυτό το επίτευγμα θα οδηγήσει στη διαλεύκανση της όλης υποθέσεως. Ο Χάλεκ και σία, πιθανώτατα εχρησιμοποίησαν την FEL (ΦΕΛ) για να διακινήσουν κεφάλαια από την Trend, προς όφελος των διαφόρων εταιρειών που ελέγχουν. Ας ελπίσουμε, ότι οι Άγγλοι του Czech Value Fund, που έχουν πληρώσει 10 εκατομμύρια Τσέχικες Κορώνες για τις μετοχές τους στην Trend, καθώς και οι υπόλοιποι επενδυτές, έχουν τελικά αρχίσει να διαβλέπουν την πιθανότητα ανακτήσεως μέρους των επενδώσεων που έκαναν στις μετοχές του Κεφαλαίου αυτού. Αν και η ιστορία δεν έχει ακόμη τελειώσει και επί πλέον οι δικηγόροι που ασχολούνται με την υπόθεση πιστεύουν, ότι μπορεί να υποβληθούν 50 ακόμη μηνύσεις και να εκδικαστούν.

JAROMIR PISKOR
(ανεξάρτητος δημοσιογράφος)

**Η περίπτωση της ΤΡΕΝΤ –όλοι ξέρουν τι συνέβη, αλλά τα κεφάλαια πολύ δύσκολα θα αποκατασταθούν.**

Slovo, ημερήσια εφημερίδα. 18 Σεπτεμβρίου, 1997. –Πράγα

Η υπόθεση της Τρέντ φαίνεται να είναι ο ακρογωνιαίος λίθος, όσον αφορά την φυγάδευση επενδυτικών κεφαλαίων. Εκ πρώτης όψεως, η υπόθεση αυτή φαίνεται να ενισχύει την αισιοδοξία, αφού οι κυριότεροι παίκτες που συνδέονται με την απάτη της Kralovehradeccka Brokerska ευρίσκονται υπό κράτηση, η πλειονότητα των χρημάτων που κατεχράσθησαν είναι παγωμένη στους λογαριασμούς που τηρούνται στο Κέντρο Χρηματιστηριακών Τίτλων (Securities Centre) και η πλειονότητα των μετόχων της Τρεντ ανέλαβε τον έλεγχο του Πολυκαταστήματος της Κότβα, η οποία αντιπροσώπευε το κυριώτερο κεφάλαιο της Τρεντ. Είναι, όμως, όλα τόσο καθαρά και θα πάρουν οι προηγούμενοι μέτοχοι τα λεφτά τους πίσω;

Η Τρεντ, από την οποία οι διευθυντές της «απεστράγγισαν» 1.25 δισεκατομμύρια Τσέχικες Κορώνες (CZK), ήταν το πρώτο κεφάλαιο επενδύσεων που ετέθη υπό αναγκαστική διαχείριση. Όμως τα βήματα που έγιναν στα επενδυτικά κεφάλαια από την Kralovehradecka Brokerska κάθε άλλο παρά μεμονωμένα ήταν στην Τσεχική Δημοκρατία. *«Τέτοιες συναλλαγές ήταν πολύ κοινές τότε. Δεκάδες παρόμοιες περιπτώσεις – και δεν θα μού έκανε έκπληξη, αν ήταν εκατοντάδες-- εγίνονταν, χωρίς καν να τις αντιληφθεί κανείς»,* διαβεβαιώνει ο αναλυτής του Χρημαστιστηρίου, Michael Konecny από την Komero.

**Τρώγοντας έρχεται η όρεξη**

Η Τρεντ ήταν ένα από τα πλέον επιτυχημένα κεφάλαια επνδύσεων, στο χώρο των κουπονίων (δελτίων) ιδιωτικοποιήσεων. Στα δύο κύματα ιδιωτικοποιήσεων που έγιναν, πάνω από 100.000 DIKS (ΔΙΚΣ), (όνομα για τους κατόχους επενδυτικών κουπονίων, σχόλιο μεταφραστού) είχαν βάλει τις μετοχές τους σ' αυτό το επενδυτικό κεφάλαιο, το οποίο είχε ενεργητικό 1.3 δισεκατομμύρια Τσέχικες Κορώνες. Όμως πολύ γρήγορα μετά την αγορά της Τρεντ, που ανήκε στον Michael Kocab, από τον τον Miroslav Halek (Μιροσλάβ Χάλεκ) και την εταιρεία Kralovehradecka brokerska, το ενεργητικό του κεφαλαίου μειώθηκε στο ένα εικοστό. Οι διευθυντές του κεφαλαίου επενδύσεων πιθανώς κατάφεραν να το φέρουν σ' αυτό το σημείο χωρίς δυσκολίες. Όλο το γκρούπ γύρω από την Kralovehradecka brokerska μπορεί να ευγνωμονεί την πλεονεξία του, γιά το ότι εκράτησε το κεφάλαιο αυτό υπό την επίβλεψή του για περισσότερο από ένα εξάμηνο.

Όπως η όρεξη ανοίγει με το φαγητό, ο κ. Χάλεκ προσπάθησε να πουλήσει το άδειο κέλυφος του επενδυτικού κεφαλαίου σ' ένα ξένο επενδυτή –το British Czech Value Fund, που ανήκε στον όμιλο των British Regents Funds (Βρεττανικά Επενδυτικά Κεφάλαια Regents). Πρίν από αυτό, η εταιρεία επενδύσεων Prag Invest (Επενδύσεις Πράγας) είχε ήδη αρχίσει να αγοράζει μετοχές της Τρεντ από την μειοψηφία των μετόχων, γι' αυτόν τον επενδυτή. Η Prag Invest προειδοποίησε τους Βρεττανούς επενδυτές για την άσχημη κατάσταση της Τρεντ. Το κεφάλαιο όμως ήταν σε πολύ χειρότερη κατάσταση από ό,τι περίμεναν οι Βρεττανοί επενδυτές, και συνεπώς,

6

εμίσθωσαν δικηγόρους και άρχισαν αμέσως να βομβαρδίζουν τις αρμόδιες κρατικές υπηρεσίες.

**Για να κάνουν την Κυβέρνηση να κινηθεί**

*«Οι μέτοχοι δεν ήταν σε θέση να κάνουν απολύτως τίποτε. Το Υπουργείο ίσως να έβαζε το κεφάλαιο αυτό υπό αναγκαστική διαχείριση, αλλά τίποτε περισσότερο»* λέει ο Rober Pergl, του δικηγορικού οίκου Vana, Pergl and Partners, ο οποίος ανέλαβε την αντιπροσώπευση του Czech Value Fund και του «φυγαδευμένου» Τρεντ. *«Η υπόθεση του Τρεντ είναι απολύτως καθαρή. Ήταν αποτέλεσμα απόλυτης έλλειψης επαγγελματισμού και οι απατεώνες είναι σήμερα πολύ πιο προσεκτικοί»* υποστηρίζει.

*«Ήταν τρομερά δύσκολο να κάνεις το κράτος να ενεργήσει και να το αναγκάσεις, όπως και όλες τις άλλες υπηρεσίες, όπως, για παράδειγμα, την υπηρεσία εποπτείας της κεφαλαιαγοράς, να χειριστεί αυτή την υπόθεση»,* λέει. *«Αρχικά, οι κρατικές υπηρεσίες ήταν σε αμηχανία. Δεν ήξεραν απολύτως τι να κάνουν. Όμως γρήγορα η κατάσταση άλλαξε»,* προσθέτει. Αποτέλεσμα των προσπαθειών των μετόχων ήταν, ότι στις αρχές Μαΐου, το δικαστήριο έθεσε υπό κράτηση τους πρώτους πέντε εμπλεκόμενους στην απάτη και ένα μήνα αργότερα δύο άλλους συγκατηγορούμενους. Το όλο έργο αποκαλύψεως της απάτης ήταν, όμως, μερικές φορές ασύλληπτα περιπλεγμένο από το δικαστήριο, το οποίο, γιά παράδειγμα, αποφάσισε, στο τέλος Ιανουαρίου, να παγώσει τις μετοχές της Sokolovska uhelna και της Κότβα στους λογαριασμούς της εταιρείας IFM (ΙΦΜ), αλλά έδωσε την εντολή παγώματος μόνον στην εταιρεία ΙΦΜ και ξέχασε να δώσει την ίδια εντολή και στο Χρηματιστήριο (Securities Centre). Κατά συνέπειαν οι μετοχές μπορούσαν να είχαν εξαφανισθεί την ίδια ημέρα, από το λογαρισμό. Μέσα σε λίγες μέρες το δικαστήριο έκανε πάλι ένα σοβαρό λάθος για δεύτερη φορά, όταν διέταξε, κατά παράκληση της Αστυνομίας, το πάγωμα όλων των λογαριασμών της ΚΗΒ και των εταιρειών που είχαν δεσμούς μαζί της. Όμως εμπέρδεψε τον αριθμό ενός από τους λογαριασμούς, όπου ήταν κατατεθειμένα, κατά σύμπτωση, όλα τα υπό εξέτασιν ποσά – δηλαδή μερικές εκατοντάδες εκατομμυρίων Τσεχικές Κορώνες. Όμως το λάθος αυτό κατέστη δυνατό να διορθωθεί .

**Το τούνελ καταλήγει στην Κύπρο**

Το πιο πολύτιμο κομμάτι της Τρεντ το αντιπροσώπευε η πλειοψηφία του πακέτου μετοχών της ΚΟΤΒΑ. Οι μετοχές αυτές εξαφανίσθηκαν επίσης. Όμως το δικαστήριο τελικά κατάφερε να παγώσει αυτές τις μετοχές στο λογαριασμό της κυπριακής εταιρείας Forminster Enterprises Limited, (FEL) ή (ΦΕΛ).

Ο τρόπος αποκτήσεως από την ΦΕΛ των χρημάτων για την αγορά των μετοχών της Κότβα είναι ιδιαίτερα αξιοσημείωτος: Η ΦΕΛ εφρόντισε για την μεταφορά των μετοχών της Sokoloskva uhelna από την ΚΗΒ στην Atlanta Safe και απέκτησε από αυτή την μοναδική εμπορική πράξη το απίστευτο κέρδος των 135 εκατομμυρίων Τσεχικών Κορωνών (CZK) (βλέπε πίνακα). Μετά την αγορά του 55.73% των μετοχών της Κότβα γιά λιγώτερο από 83 εκατομμύρια CZK, πάνω από 50 εκατομμύρια CZK έμειναν στην ΦΕΛ. *«Είναι αλήθεια ότι ένα κέρδος 135 εκατομμυρίων CZK από μια συναλλαγή είναι*

7

*ασυνήθιστο, αλλά δεν απαγορεύεται από το νόμο. Όμως ο Νόμος για παράνομο ξέπλυμα χρήματος θα μπορούσε να έχει εφαρμογή σ' αυτή την συναλλαγή και το πρόσωπο που έκανε αυτή τη συναλλαγή, θα έπρεπε να είχε αναφέρει αμέσως αυτό στο Υπουργείο Οικονομικών»,* πιστεύει ο αναλυτής *Κοπεσνυ.*

Πιθανώς οι μετοχές της ΚΟΤΒΑ να επρόκειτο να μεταβιβαστούν περαιτέρω, όμως πριν γίνει αυτό, το δικαστήριο είχε τελικά παγώσει τον λογαριασμό της ΦΕΛ. Παρ' όλα αυτά, η ΦΕΛ, η οποία εν τω μεταξύ είχε αγορασθεί από την Γαλλική εταιρεία DUNA, με ολικό ενεργητικό 200,000 CZK, υποστηρίζει, ότι απέκτησε τις μετοχές μέσω νόμιμης αγοράς και ότι δεν έχει κανένα δεσμό με την ΚΗΒ, η οποία «φυγάδευσε» τα κεφάλαια της Τρεντ.

Όμως οι χρηματιστές έχουν διαφορετική γνώμη. *«Οι συναλλαγές αυτές αποδεικνύουν έναν εμφανή δεσμό μεταξύ ΚΗΒ και ΦΕΛ»,* υποστηρίζει ο κ. Pergl και τονίζει επίσης, ότι η πλειονότητα του πακέτου των μετοχών επωλήθη στή μισή τιμή, που επωλούντο τότε οι μετοχές στο Χρηματιστήριο. *«Όσο μεγαλύτερο είναι το πακέτο μετοχών, τόσο υψηλότερη είναι η μέση τιμή κάθε μετοχής. Ούτε ένα πολλαπλάσιο της τιμής της στο Χρηματιστήριο είναι κάτι το εξαιρετικό»,* συμφωνεί ο *Κοπεσνυ.*

**Λόμπυ ή πολιτικό καθήκον;**

Εν τω μεταξύ, οι κρατικές υπηρεσίες άρχισαν τελικά να εργάζονται πιο γρήγορα, το οποίο αποδεικνύεται, μεταξύ άλλων, από τους περισσότερο από μία ντουζίνα παγωμένους λογαριασμούς με μετοχές, οι οποίοι είχαν προέλευση την Τρεντ. Όμως, η πλειονότητα των μετόχων υποστηρίζουν ότι όλα αυτά οφείλονται στον Michael Kocab, ο οποίος εκμεταλλεύτηκε τις καλές του διασυνδέσεις. «Το δικαστήριο υπέκυψε, μετά από την συνεχή πίεση των μέσων μαζικής ενημέρωσης γιά πάνω από ένα χρόνο και την μονομερή περιγραφή της καταστάσεως, ότι δηλαδή οι ήρωες της Τρεντ σώζουν τους μειοψηφούντες μετόχους. Στην ουσία, επιδιώκουν την ανάληψη του ελέγχου της ΚΟΤΒΑ, η οποία αγοράσθηκε νόμιμα από τη ΦΕΛ», υποστηρίζει ο Petr Toman. «Τα δικαστήρια αναμφίβολα δεν έδρασαν υπέρ ημών και διέπραξαν πολλά λάθη», ανταπαντάει ο Pergl και αναφέρει τα δύο προαναφερθέντα λάθη του εμποροδικείου στη Hradec Kralove.

Ο Michael Kocab δεν αρνείται, ότι διαπραγματεύθηκε για την ΤΡΕΝΤ με τους υπουργούς Ruml και Parkanova και με τον Εισαγγελέα του Αρείου Πάγου κ. Hrboticky, όμως αμύνεται κατά των κατηγοριών, ότι έκανε κατάχρηση των διασυνδέσεών του. «Δεν είναι λόμπυ, αλλά πολιτικό καθήκον. Όταν κάποιος βλέπει έναν κλέφτη, έχει υποχρέωση να τον καταγγείλει. Δεν μου προξενεί ευχαρίστηση να είμαι μπλεγμένος με αυτή την υπόθεση, πρέπει να καταλάβουμε, όμως, ότι όπως στρώνουμε το κρεββάτι μας έτσι και θα κοιμηθούμε», λέει ο Kocab και προσθέτει ότι εάν δεν έκανε τίποτα, σίγουρα θα εκατηγορείτο για αδράνεια. «Παίξαμε πάντοτε τίμια και προσπαθήσαμε να δώσουμε την περιουσία πίσω σ' αυτούς που εληστεύτηκαν», συμπληρώνει.

**Μάχη για την ΚΟΤΒΑ**

Εν τω μεταξύ, η μάχη για την Τρεντ μεταμορφωνόταν σίγουρα σε μάχη για την ΚΟΤΒΑ.Την άνοιξη, εντός μικρού χρονικού διαστήματος, έγιναν δύο γενικές συνελεύσεις του πολυκαταστήματος, κατά τις οποίες δύο ομάδες μετόχων αρνούνταν να αναγνωρίσουν η μία την άλλη και εξέλεξαν τα δικά τους Διοικητικά Συμβούλια. Η μειονότητα των μετόχων κατηγορεί, ότι η ΦΕΛ δεν ανακοίνωσε, μετά την απόκτηση της πλειοψηφίας του πακέτου των μετοχών, ότι ενεργούσε σε συμφωνία με την ΚΗΒ και ταυτοχρόνως δεν προσέφερε προς το κοινό την αγορά των μετοχών, και γι' αυτό το λόγο η ΦΕΛ έχασε όλα τα δικαιώματα ψήφου γιά την περίοδο ενός έτους. Η ΦΕΛ, όμως, ανταπαντάει, ότι σε μιά τέτοια περίπτωση θα έχανε το δικαίωμα μόνον για τις μετοχές που ξεπερνούσαν το 50%. Πλήρης άρνηση της δυνατότητας ασκήσεως των δικαιωμάτων ενός μετόχου είναι μιά πολύ σκληρή κύρωση. «Αυτή η υπόθεση δημιουργεί προηγούμενο, μιά και κανένα δικαστήριο δεν έχει ποτέ εκδικάσει μια τέτοια υπόθεση», υποστηρίζει ο Θωμάς Πέλικαν (Tomas Pelikan), που ειδικεύεται στο εμπορικό δίκαιο. Σύμφωνα με αυτόν, οι σχετικοί νόμοι δεν είναι τελείως σαφείς σ' αυτή την περίπτωση. Παρ' όλα αυτά, το δικαστήριο δεν έχει ακόμη αποφασίσει γιά την κατάργηση της ασκήσεως των δικαιωμάτων των μετόχων της ΦΕΛ και αρνήθηκε το αίτημα της μειοψηφίας των μετόχων σχετικά με την επίδοση σχετικής εντολής, που θα αφαιρούσε από την ΦΕΛ την δυνατότητα να ψηφίσει κατά την χθεσινή γενική συνέλευση.

Και οι δύο πλευρές έχουν υποβάλει αρκετές μηνύσεις, η μία εναντίον της άλλης, οι οποίες θα πρέπει τώρα να εκδικασθούν από το δικαστήριο. Το εμπορικό μητρώο καταχώρησε, στις 4 Αυγούστου, το Διοικητικό Συμβούλιο που εξελέγη από τους μειοψηφούντες μετόχους της Czech Value Fund. Η καταχώρηση, όμως, αμφισβητήθηκε αμέσως από τους πλειοψηφούντες μετόχους. Οι δικηγόροι και των δύο πλευρών έκαναν επίσης καταγγελία προς τον Δικηγορικό Σύλλογο, κατηγορώντας τους συναδέλφους τους για ανήθικη συμπεριφορά.

**Υπάλληλος σε νομικό οίκο και τρία δισεκατομμύρια**

Η υπόθεση απόκτησε έντονη δημοσιότητα, πριν ένα περίπου μήνα. Η Κότβα αγοράστηκε από την ΦΕΛ, μέσω μιάς συμφωνίας αγοράς από τον πρώην διευθυντή της BIS και σημερινό νομικό υπάλληλο στον δικηγορικό οίκο του κ. Toman, τον κ. Stanislav Devaty, ο οποίος αμέσως παραδέχτηκε, ότι η συμφωνία ήταν ψεύτικη και ότι ο ίδιος δεν πήρε λεφτά. *Εάν κάποιος κάνει κάτι τέτοιο, δεν υπάρχει γι' αυτόν καμμιά ελπίδα. Οι δικηγόροι έχουν υποχρέωση να συμβουλεύουν τους πελάτες τους και όχι να αγοράζουν πολυκαταστήματα γι' αυτούς και πολύ περισσότερο να παραδέχονται, ότι η συναλλαγή ήταν ψεύτικη»* λέει ο Pergl.

*"Φοβόμαστε, ότι ετοιμαζόταν μιά μεταβίβαση του ακινήτου της Κότβα σε τρίτο πρόσωπο. Ο μόνος νόμιμος τρόπος να ματαιωθεί μιά τέτοια μεταβίβαση ήταν να γίνει σφράγισμα στο Υποθηκοφυλακείο. Ο λόγος γι' αυτό δεν είναι τίποτε άλλο από το σφράγισμα κάθε δυνατής μεταβίβασης, έως ότου εκδώσει το δικαστήριο μιά τελική και δεσμευτική απόφαση σχετικά με την ιδιοκτησία της Κότβα»,* εξηγεί ο κ. Toman.

9

Μεταγενεστέρως, ο Devaty και η Forminster έδωσαν από κοινού πληρεξούσιο στον Michael Kocab, εξουσιοδοτώντας τον αποκλειστικώς να αφαιρέσει την μολυβένια σφραγίδα από το Υποθηκοφυλακείο. Πριν όμως γίνει μιά τέτοια αφαίρεση της σφραγίδας, αυτός θα πρέπει να έχει ήδη λάβει μιά υπογεγραμμένη συμφωνία γιά την ακύρωση της συμφωνίας αγοράς, η οποία ευρίσκεται τώρα στο συμβολαιογραφείο. *Χρειαζόμαστε πάλι ένα αξιόπιστο πρόσωπο, και έτσι διαλέξαμε τον αντιπρόσωπο της άλλης πλευράς»*, λέει ο Toman.

Ο Kocab, όμως, αντιτίθεται κατηγορηματικά στην κατάχρηση του ονόματός του. *«Εάν είχα δεχτεί αυτό, θα είχα στην ουσία νομιμοποιήσει όλες τους τις πράξεις»*, λέει με αγανάκτηση. Ταυτοχρόνως αρνείται να δεχθεί την ερμηνεία του Toman, για όλες αυτές τις πράξεις. *«Κάνοντας αυτή την ακροβατική κίνηση δημοσίως, σκόπευαν να καταφέρουν να δημιουργήσουν την αντίληψη, ότι αυτό δεν έπρεπε να θεωρείται «φυγάδευση» κεφαλαίων. Εάν κάποιος διάσημος πορτοφολάς κλέβει τους διαβάτες στην πλατεία Wenceslas, κάνοντας μορφασμούς και φωνάζοντας « 'δεν κλέβω', θα ήταν αυτό αποδεκτό;»* λέει εκνευρισμένος ο Kocab. Ο Tomas Pelikan πιστεύει, ότι όλα αυτά είναι απλώς μιά άσκοπη φασαρία. *«Μιά νομική πράξη, που δεν έχει γίνει σωστά, και εάν ακόμη είναι γραπτή, είναι άκυρη σύμφωνα με το νόμο»*, ισχυρίζεται.

### Αβέβαιη η επιστροφή της περιουσίας

Αυτό, όμως, που κυρίως ενδιαφέρει τους μετόχους της Τρεντ, και όλων των άλλων «φυγαδευμένων» κεφαλαίων, δεν είναι η διαμάχη των δύο πλευρών των μετόχων γιά το πολυκατάστημα, αλλά το θέμα εάν το κράτος θα αρχίσει τελικά να διώκει τέτοιες περιπτώσεις δυναμικά, και κυρίως εάν θα επιστρέψει σε αυτούς την κλεμμένη περιουσία. Έχει γίνει μερική πρόοδος, αλλά δεν έχει γίνει μιά αποφασιστική εκστρατεία κατά της διαφθοράς στο Τσεχικό Χρηματιστήριο.

Οι αναλυτές του χρηματιστηρίου αμφιβάλλουν γιά την ολική επιστροφή της περιουσίας στους μετόχους της Τρεντ, αν και η μεγίστη πλειοψηφία των αρχικών μετόχων παραμένει παγωμένη στους λογαριασμούς του Κέντρου Χρηματιστηριακών Τίτλων (Securities Centre). *«Οι νέοι κάτοχοι πρέπει να κερδίσουν τις επερχόμενες δικαστικές μάχες. Οι μετοχές δεν είναι αριθμημένες και θα είναι δύσκολο να καθορισθεί, ποιός ήταν ο αρχικός τους κάτοχος»*, λέει ο Michael Konecny από την Komero. Σύμφωνα με αυτόν, ο αγοραστής θα μπορεί πάντα, εξαιρουμένων μόνον μερικών περιπτώσεων, να αποδείξει ότι ενήργησε «καλή τη πίστει». Αλλά ο Pergl πιστεύει το αντίθετο. *«Πληροφορήσαμε τους πάντες μέσω του τύπου. Όποιος παρακολουθεί το χρηματιστήριο πρέπει επίσης να γνωρίζει ότι η KHB, και οι εταιρείες οι συνδεδεμένες με αυτή, επώλησαν κλεμμένες μετοχές»*, λέει. *«Κανένας δεν θα αποδείξει σε κανένα, ότι εγνώριζε γι' αυτήν την εκστρατεία των μέσων μαζικής ενημέρωσης»*, αντιτίθεται ο Konecny. *«Είμαστε δικηγόροι της Τρεντ και κατά συνέπειαν πρέπει να ισχυριζόμαστε ότι εγνώριζαν, και προφανώς αυτοί θα ισχυρίζονται ότι δεν εγνώριζαν. Η απόφαση εξαρτάται από το δικαστήριο»*, συμπεραίνει ο Pergl.

10

**Πίνακας:**
**Πως η ΦΕΛ (FEL) απόκτησε τα λεφτά για την αγορά της ΚΟΤΒΑ**

TREND

Το Περιφερειακό Εμποροδικείο της Hradec
Kralove απεφάσισε, στις 24 Ιανουαρίου, να
παγώσει τις μετοχές στο λογαριασμό της IFM.
Ο δικαστής, όμως, παρέλειψε να επιδώσει την
απόφαση αυτή στο Τσεχικό Χρηματιστήριο και
κατά συνέπειαν ο Χάλεκ και Σία προειδοποιήθηκαν
εγκαίρως και κατάφεραν να μεταβιβάσουν τις
μετοχές.

Μετοχές

IFM

24.1.1997
357.000
μετοχές προς
320 CZK ανά         Το συμβόλαιο της 22.1.1997 για την
μετοχή              αγορά 357.000 μετοχών προς 700 CZK
                    ανά μετοχή

KHB                                              ATLANTA SAFE

24.1.1997                                        27.1.1997
357.000 μετοχές                                  357.000 μετοχές
προς 230 CZK.                                    προς 700 CZK
ανά μετοχή                                       ανά μετοχή

FORMINSTER

Το κέρδος από τη μοναδική αυτή οικονομική συναλλαγή ανέρχεται σε 135.6 εκατ.
CZK.

11

**Τίτλος:** Τρεντ: Η προσαγωγή στο δικαστήριο των φυδαγευτών είναι σήμα προς τους ξένους επενδυτές.
**Ημερομηνία Εκδόσεως:** 2 Οκτωβρίου, 1998
**Ώρα εκδόσεως:** 15:53
**Λέξεις Κλειδιά:** Δημοκρατία της Τσεχίας, επιχειρήσεις, Τρέντ, κατηγορίες
**ID (Ταυτότητα):** 19981002F02034
**Υπηρεσία:** ece
**Προτεραιότητα:** 4
**Κατηγορία:** obo; zak; fin
**Τρεντ:** Η προσαγωγή των φυγαδευτών είναι σήμα προς τους ξένους επενδύτες.

ΠΡΑΓΑ, 2 Οκτωβρίου (Τσεχικό Πρακτορείο Τύπου) –Η προσαγωγή στο δικαστήριο των φυγαδευτών των κεφαλαίων επενδύσεων της Τρεντ και Μέρσια (Mercia) είναι ένα από μακρού αναμενόμενο σήμα προς τους ξένους επενδυτές, εδήλωσε ο Jonh Moffitt, σημερινό μέλος του Διοικητικού Συμβουλίου της Τρεντ, προς το Τσεχικό Πρακτορείο Τύπου, σε σχόλιό του σχετικά με τις κατηγορίες κατά επτά ατόμων, που διώκονται για την περίπτωση της φυγαδεύσεως των επενδυτικών κεφαλαίων της Τρεντ και της Mercia. Πρόσθεσε ότι η υπόθεση αυτή αποτελεί μιά σημαντική καμπή για όλοκληρη την Τσεχική κεφαλαιαγορά.

Ο Moffitt ανέφερε επίσης ότι η φυγάδευση των κεφαλαίων της Τρεντ είναι η πρώτη τέτοια υπόθεση για την Δημοκρατία της Τσεχίας, όπου τα άτομα κατηγορούνται με την κατηγορία της εγκληματικής συνωμοσίας.

Το αποδεικτικό υλικό που συγκεντρώθηκε κατά την διάρκεια της ποινικής διαδικασίας αποδεικνύει ότι η εταιρεία Forminster Enterprises Limited (FEL), στην οποία μεταφέρθηκαν οι μετοχές της Κότβα από την Τρεντ, εξακολουθεί να ελέγχεται από τον κ.Halek, ο οποίος συνεχίζει την μάχη κατά της Τρεντ ακόμη και μέσα από την φυλακή, πρόσθεσε ο Moffitt.

Ο Περιφερειακός Δημόσιος Κατήγορος της Hradec Kralove, επέδωσε στο περιφερειακό δικαστήριο, την Πέμπτη, κατηγορία εναντίον επτά ατόμων, που διώκονται για την υπόθεση της φυγαδεύσεως των επενδυτικών κεφαλαίων της Τρεντ και Mercia. Την στιγμή αυτή, από όλα τα κατηγορούμενα άτομα, μόνον ο Miroslav Halek παραμένει υπό κράτηση. Έτσι μία από τις μεγαλύτερες υποθέσεις που προκάλεσαν ζημιά στά επενδυτικά κεφάλαια της Τσεχικής Δημοκρατίας, όπου οι ζημιές ανέρχονται σχεδόν στο ποσόν του 1.3 δισεκατομμυρίων Τσεχικών κορωνών (CZK), εισέρχεται στην τελική της φάση.

Ο Δημόσιος Κατήγορος κατηγόρησε τους κατηγορουμένους με τις ποινικές κατηγορίες συναλλαγών βασισμένες σε εσωτερική πληροφόρηση (insider dealing) και απάτη, διαπραχθείσες με εγκληματική συνωμοσία, ή γιά συμμετοχή σε τέτοια εγκληματική συνωμοσία. Εάν το δικαστήριο βρει τους κατηγορουμένους ενόχους, θα μπορούσαν να φυλακιστούν μέχρι και 15 χρόνια.

Marcela Proskova

12

# CERTIFICATE
## *ATTESTATION*

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,

*L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,*

**1) that the document has been served\***

*1. que la demande a été exécutée*

— the (date)

— *le (date)* _____ 9/9/05

— at (place, street, number)

— *à (localité, rue numéro)* ____ 4, Diagorou str. Kermia Building, Office 601, Nicosia – CYPRUS

— in one of the following methods authorised by article 5—

— *dans une des formes suivantes prévues à l'article 5:*

☐ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention\*.

    *a) selon les formes légales (article 5, alinéa premier, lettre a)*

☐ (b) in accordance with the following particular method\*:

    *b) selon la forme particulière suivante :* _____

☐ (c) by delivery to the addressee, who accepted it voluntarily.\*

    *c) par remise simple*

The documents referred to in the request have been delivered to: Mr Andreas Papasiantis

*Les documents mentionnés dans la demande ont été remis à:*

— (identity and description of person)

— *(identité et qualité de la personne)* ____ Person in charge at the office of the Company "FORMISTER Enterprises LTD"

— relationship to the addressee (family, business or other):

— *liens de parenté, de subordination ou autres, avec le destinataire de l'acte:* ____ Business

**2) that the document has not been served, by reason of the following facts\***

*2. que la demande n'a pas été exécutée, en raison des faits suivants:*

_____

_____

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement.\*

*Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint.*

Annexes

*Annexes*

Documents returned:

*Pièces renvoyées:*

_____

_____

In appropriate cases, documents establishing the service:

*Le cas échéant, les documents justificatifs de l'exécution:*

a) Certificate of service (12/9/05)

b) Affidavit of service (12/9/05)

c) Documents returned (2nd copy)

Done at / *Fait à* ____ Nicosia ____, the / *le* ____ 26/9/05

Signature and/or stamp.

*Signature et/ou cachet.*

2

\*Delete if inappropriate.

*Rayer les mentions inutiles.*

S.C. 12.9.06

## CERTIFICATE OF SERVICE OF FOREIGN PROCESS

I, Irene Christodoulou, Acting Assistant Chief Registrar of the Supreme Court of Cyprus, hereby certify that the documents annexed hereto are as follows:

1.    Copies of judicial documents received from U.S.A. dated 28/7/05.

the originals of which were served on        FORMINSTER ENTERPRISES LTD

4 Diagorou Str.

Kermia Building, office 601

NICOSIA

2.    An affidavit of the Bailiff showing that the service of the judicial documents received from the above authority was duly effected on Andreas Papasiantis, person in charge at the office of the above-named company.

And I certify that such service so proved and the proof thereof is such as is required by the Law and practice of the Supreme Court of Cyprus.

Date this the 12th day of September, 2005.

Irene Christodoulou

Acting Assist. Chief Registrar

SUPREME COURT OF CYPRUS

## AFFIDAVIT OF SERVICE

I, Marios Demosthenous Bailiff -Server in the Supreme Court of Cyprus, make

oath  and say that the judicial document received from.... U.S.A ...............

........................................................ have been served to

Forminster Enterprises Ltd ............... at her/his address

4, Diagorou street, Kermia Building, office 601 ...........

Nicosia, Cyprus ............ on the 09/09/2005 upon Andreas ........

Papasiantis person in charge of the office of the above-named company

(Sgd ) ...Demosthenous............

Marios Demosthenous

Bailiff

Sworn and signed before me

At the Supreme Court of Cyprus

on the .. 12\9\05 ...........

Registrar

*9/09/05*

*Andrea Peterson*

# REQUEST
## FOR SERVICE ABROAD OF JUDICIAL OR EXTRA JUDICIAL DOCUMENTS

*DEMANDE*
*AUX FINS DE SIGNIFICATION OU DE NOTIFICATION A L'ETRANGER*
*D'UN ACTE JUDICIARE OU EXTRAJUDICIAIRE*

ΑΗΦΘΗΚΕ/ ΛΕΙΝΜΙΣΠΣ

23 ΑΥΓ 2005

ΥΠΟΥΡΓΕΙ̃ΟΝ ΔΙΚΑΙΟΣΥΝΗΣ
& ΔΗΜΟΣΙΑΣ ΤΑΞΕΩΣ

Convention on the service abroad of judicial and extrajudicial documents in civil or
commercial matters, signed at The Hague, November 15, 1965

*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires*
*ou commerciale. signée à La Hage. le 15 Novembre 1965.*

| Identity and address of the applicant<br>*Indentité et adresse du requérant* | Address of receiving authority<br>*Adrese de l'autorité destinataire* |
|---|---|
| L. Celeste Ingalls**<br>Crowe Foreign Services<br>1020 SW Taylor Street, Suite 240<br>Portland, Oregon 97205<br>USA<br><br>Fax Number:  1-503-222-3950 | Permanent Secretary<br>Ministry of Justice and Public Order<br>~~12 Ilioupoleos St.~~  125, Athalassis Avenue<br>1461 Lefkosia (Nicosia)<br>22805964<br>Tel:+357 ~~22805921~~    Fax: +357 22518349<br>EMail: lazaros.savvides@cytanet.com.cy |

The undersigned applicant has the honour to transmit - in duplicate - the documents listed below and, in conformity with article 5 of the
above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.,
(identity and address)

*Le requérant soussigné a l'honneur de faire parvenir - en double exemplaire - a l'autorité destinataire les documents ci-dessous énumérés*
*en la priant conformément à l'article 5 de la Convention précitée. d'en faire remettre sans retard un exemplaire au destinataire, savior:*
*(identité et adresse)*

Forminster Enterprises, Ltd.
4 Diagorou Street, Kermia Building, Off. 601
Nicosia, Cyprus

(a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention.*
*a)  selon les formes légales (article 5. alinéa premier, lettre a)*

(b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5)*:
*b)  selon la forme particulière suivante (article 5, alinéa premier, lettre b):*

**To be delivered personally to a director, officer, or other individual authorized to accept service for Defendant
Forminster Enterprises, Ltd., or if this method is not possible, serve in accordance with method (a) above.**

☐    (c) ~~by delivery to the addressee, if he accepts it voluntarily (second paragraph of article 5)*.~~
*c)  ~~le cas échéant, par remise simple (article 5, alinéa 2).~~*

The authority is requested to return or to have returned to the applicant a copy of the documents - and of the annexes* - with a certificate as
provided ~~on the reverse side~~ (attached).

*Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte - et de ses annexes - avec l'attestation figurant*
*au verso*

List of documents
*Enumération des pièces*

<u>Executed "Request"</u>, in duplicate
<u>Executed "Summary"</u>, in duplicate
<u>Unexecuted "Certificate"</u>, in duplicate
*** <u>Summons, in duplicate</u>
*** <u>First Amended Answer and</u>
    <u>Counter-claim, with exhibits, in duplicate</u>

Done at Portland, Oregon, USA, the 28th day of July, 2005
*Fait à Portland. Oregon. USA. le....*
Signature and/or stamp.
*Signature et/ou cachet*

OFFICIAL SEAL
L. CELESTE INGALLS
NOTARY PUBLIC-OREGON
COMMISSION NO. 353683
MY COMMISSION EXPIRES FEB. 5, 2006

L. Celeste Ingalls

*    Delete if inappropriate
    *Rayer les mentions inutiles*

**    Authorized applicant pursuant to Rule 4(c)(2) of the
    Federal Rules of Civil Procedure, Public Law 97-462
    And Pennsylvania Court Order

***    With French translation attached

# SUMMARY OF THE DOCUMENT TO BE SERVED
*ELEMENTS ESSENTIELS DE L'ACTE*

Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965

*Convention relative à la signification et à la notification à l'étranger des actes judiciaries et extrajudiciares en matière civile ou commerciale. signée à La Hage, le 15 Novembre 1965.*

(article 5, fourth paragraph)
*(article 5, alinéa 4)*

Name and address of the requesting authority:
*Nom et adresse de l'autorité requérante:*

  Celeste Ingalls
  Crowe Foreign Services
  1020 SW Taylor Street, Suite 240
  Portland, Oregon 97205

Particulars of the parties*:
*Indentité des parties:*

Kotva a.s. ........................................................................................ PLAINTIFF
Andrew Weiss, et al.............................................................................. DEFENDANTS
Andrew Weiss, et al........................................................... COUNTERCLAIM-PLAINTIFFS
Kotva a.s., et al. ...............................................................COUNTERCLAIM-DEFENDANTS

## JUDICIAL DOCUMENT**
*ACTE JUDICIAIRE*

Nature and purpose of the document:
*Nature et objet de l'acte:*  To give notice to the Defendant, Forminster Enterprises, Ltd., of the institution against it of a claim for civil damages and to summon it to answer the claim.

Nature and purpose of the proceedings, and, where appropriate, the amount in dispute:
*Nature et objet de l'instance, le cas échéant, le montant du litige:*

First amended civil counterclaim and answer to plaintiff's original claim. Counterclaim-plaintiff answers the plaintiff's claim and makes counter-claim allegations including, but not limited to, abuse of process, Conspiracy, Unjust Enrichment, Breach of Fiduciary Duty, Unfair Competition and Unfair and Deceptive Trade Practices and related actions. Counter-claim plaintiff further alleges that counter-claim defendants' aforementioned actions have caused counter-claim plaintiff to suffer damages and losses. Counter-claim plaintiff seeks judgment in an amount to be determined including, but not limited to, declarations of ownership, costs of this suit, attorneys' fees and costs, order to disgorge proceeds, and such other and further relief as the court deems just and proper.

`Date and place for entering appearance**:  N/A
*Date et lieu de la comparution:*

Court which has given judgment**:  N/A
*Juridiction qui a rendu la décision:*

Date of judgment**:  N/A
*Date de la décision:*

Time limits stated in the document**:
*Indication des délias figurant dans l'acte:*  Defendant is required to serve upon Counter-Claimaint's Attorneys an ANSWER to the Counter-Claim within twenty (20) days after receipt of the Summons and other documents herein. A copy of the ANSWER must be filed with the court within a reasonable time thereafter.

## EXTRAJUDICIAL DOCUMENT*
*ACTE EXTRAJUDICIAIRE*

Nature and purpose of the document:  N/A
*Nature et objet de l'acte:*

Time limits stated in the document**:  N/A
*Indication des délias figurant dans l'acte:*

\* If appropriate, identity and address of the person interested in the transmission of the document.
 *S'il y a lieu. identité et adresse de la personne intéressée à la transmission de l'acte*

\*\* Delete if inappropriate.
 *Rayer les mentions inutiles*

# ΠΕΡΙΦΕΡΕΙΑΚΟ ΔΙΚΑΣΤΗΡΙΟ ΤΩΝ ΗΝΩΜΕΝΩΝ ΠΟΛΙΤΕΙΩΝ

Περιφέρεια  Μασσαχουσέττης

KOTVA a.s.

      **ΚΛΗΤΕΥΣΗ ΣΕ ΥΠΟΘΕΣΗ ΑΣΤΙΚΟΥ ΔΙΚΑΙΟΥ**

     KATA

ANDREW WEISS και
WEISS ASSET MANAGEMENT, LLC    **ΑΡΙΘ. ΥΠΟΘΕΣΗΣ: 05-10679 RCL**

    ΠΡΟΣ:

Forminster Enterprises, Ltd.
Οδός Διαγόρου 4
Κτίριον Kermia
Γρ. 601
Λευκωσία
Κύπρος

    ***ΔΙΑ ΤΗΣ ΠΑΡΟΥΣΗΣ ΚΛΗΤΕΥΕΣΘΕ*** και παρακαλείσθε όπως επιδώσετε εις
τους ΔΙΚΗΓΟΡΟΥΣ ΤΩΝ ΑΝΤΑΠΑΙΤΗΤΩΝ

Edward P. Leibensperger
Benjamin A. Goldberger
McDermott Will & Emery LLP
28 State St.
Boston, MA 02109
USA

Τηλ.: 1 + 617-535-4000

απάντηση επί της ανταπαίτησης, η οποία επιδίδεται προς υμάς ενταύθα, εντός 20 ημερών
από την επίδοση της κλήτευσης προς υμάς, εξαιρουμένης της ημέρας επιδόσεως αυτής.
Εάν δεν πράξετε τα ανωτέρω, θα καταδικασθείτε ερήμην για την αποζημίωση, που
αναφέρεται εις την ανταπαίτηση. Πρέπει επίσης να εγγράψετε την απάντησή σας εις την
Γραμματεία του Δικαστηρίου, εντός λογικού χρονικού διαστήματος μετά την επίδοση.

    SARAH H. THORNTON

Γραμματεύς   (Σφραγίδα του Δικαστηρίου)       17 Ιουνίου, 2005
                                              Ημερομηνία

Matthew A. Paine
Αντιγραμματεύς

1

### ΔΗΛΩΣΗ ΕΠΙΔΟΤΗΡΙΟΥ

Επίδοση της Κλητεύσεως και αγωγής έγινε από εμένα. ΗΜΕΡΟΜΗΝΙΑ:_____

ΟΝΟΜΑ ΤΟΥ ΕΠΙΔΟΤΟΥ (ΓΡΑΨΤΕ ΚΑΘΑΡΑ)  ΤΙΤΛΟΣ:

Τσεκάρατε με ένα x κάθε ένα από τα παρακάτω, για να δηλώσετε τον ακριβή τρόπο παροχής υπηρεσίας.

Επέδωσα προσωπικώς προς τρίτον εναγόμενον. Τόπος όπου επεδόθη: _____

΄Αφησα αντίτυπα τούτου στην κατοικία του εναγομένου ή στον συνήθη χώρου διαμονής του, με άτομο κατάλληλης ηλικίας και διακρίσεως, που διέμενε εκεί.

Όνομα προσώπου εις το οποίο επεδόθη η κλήτευση και αγωγή:_____

Επεστράφη ανεκτέλεστο:_____
_____
_____

΄Αλλος (*καθορίσατε*):_____
_____
_____

### ΔΗΛΩΣΗ ΕΞΟΔΩΝ ΕΠΙΔΟΣΕΩΣ

ΟΔΟΙΠΟΡΙΚΑ_____   ΥΠΗΡΕΣΙΕΣ_____   ΣΥΝΟΛΟ_____

### ΔΗΛΩΣΗ ΤΟΥ ΕΠΙΔΟΤΟΥ

Ο κάτωθι υπογεγραμμένος δηλώ υπευθύνως και εν γνώσει των συνεπειών του νόμου περί ψευδορκίας των Ηνωμένων Πολιτειών Αμερικής, ότι οι προαναφερόμενες πληροφορίες, που περιέχονται στην Δήλωση Επιδόσεως και Δήλωση Εξόδων Επιδόσεως είναι αληθείς και ακριβείς.

Εξετελέσθη την_____   _____
                 Ημερομηνία             Υπογραφή του Επιδότου

                                 _____
                                    Δ/νση του Επιδότου

2

ΠΕΡΙΦΕΡΕΙΑΚΟ ΔΙΚΑΣΤΗΡΙΟ ΤΩΝ ΗΝΩΜΕΝΩΝ ΠΟΛΙΤΕΙΩΝ
ΠΕΡΙΦΕΡΕΙΑ ΜΑΣΣΑΧΟΥΣΕΤΤΗΣ

| | |
|---|---|
| KOTVA as., <br><br>     Ενάγων, <br><br>     Κατά <br><br> ANDREW WEISS and WEISS ASSET <br> MANAGEMENT, LLC, <br><br>     Εναγομένων <br> ———————————————————— <br> ANDREW WEISS, WEISS ASEET <br> MANAGEMENT LLC, K T, INC. and CVF <br> INVESTMENTS, LTD., <br><br>     Ενάγοντες ανταπαίτησης <br><br>     Κατά <br><br> KOTVA a.s., MARTIN BENDA, RICHARD <br> HARAZIM, FORMINSTER ENTERPRISES <br> LTD., SPV CO and JOHN DOES 1-5, <br><br>     Εναγομένων  ανταπαίτησης <br> ———————————————————— | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    C.A. No. 05-10679-RCL <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## ΠΡΩΤΗ ΤΡΟΠΟΠΟΙΗΜΕΝΗ ΑΠΑΝΤΗΣΗ ΚΑΙ ΑΝΤΑΠΑΙΤΗΣΗ

## ΠΕΡΙΛΗΨΗ

    Ο εναγόμενος και ενάγων ανταπαίτησης (counterclaim-plaintiff) Andrew Weiss ("Weis") είναι καθηγητής οικονομικών του Πανεπιστημίου Βοστώνης (Boston University). Διετέλεσε σύμβουλος της Παγκόσμιας Τράπεζας σε θέματα καφαλαιαγοράς της Τσεχικής Δημοκρατίας και είναι αυθεντία σε θέματα αναπτυσσομένων αγορών και της ανάγκης για την δημιουργία οικονομικών κανονισμών. Έχει επίσης εταιρεία που διαχειρίζεται επενδύσεις στην Τσεχική Δημοκρατία. Μεταξύ αυτών των επενδύσεων

1

είναι ένα σημαντικό μειοψηφικό μερίδιο στην ενάγουσα εταιρεία Kotva a.s. ("Kotva") ή Κότβα. Τον Μάιο του 2004, αντιπρόσωποι της Forminster Enterprises Ltd. ("Forminster"), που είναι ο πλειοψηφών μέτοχος της Κότβα, απείλησαν να πάρουν γιά λογαριασμό τους το μόνο πολύτιμο κομμάτι της Κότβα και να μη δώσουν τίποτε στους μειοψηφούντες μετόχους. Ο Weiss απάντησε, με την εξουσιοδότηση δικηγόρων στην Τσεχική Δημοκρατία, να υποβάλουν μηνύσεις για να προστατεύσουν τα δικαιώματα των μειοψηφούντων μετόχων.

Η πρώτη απάντηση της Forminster ήταν να προσεγγίσει τον Weiss και να προσφέρει την εξαγορά του μεριδίου των μετόχων του στη Κότβα. Όμως, η Forminster δεν συμφωνούσε να πληρώσει ένα ποσό ίσο προς την αξία που αναλογούσε προς το μερίδιο τους στην Κότβα, το οποίο εδικαιούντο οι επενδυτές του Weiss. Όταν ο Weiss απέρριψε την ανεπαρκή προσφορά της Forminster, η Forminster υιοθέτησε μια δεύτερη, πιό σκοτεινή προσέγγιση. Η Forminster και οι συνδεόμενοι με αυτή εχρησιμοποίησαν την επιρροή τους επί της Τσεχικής αστυνομίας για να υποκινήσουν μια εγκληματική δίωξη του Weiss με ψεύτικες κατηγορίες για εκβιασμό. Αν και Weiss δεν έχει δεχθεί επίσημη ανακοίνωση επί των κατηγοριών, ο τύπος ανέφερε ότι έγιναν αυτές οι κατηγορίες. Επιδιώκοντας να ασκήσουν πρόσθετη πίεση, η Forminster και οι συνδεδεμένες με αυτή εταιρείες, εχρησιμοποίησαν τον έλεγχόν τους επί της Κότβα, γιά να κάνουν αυτή την μήνυση κατά του Weiss, στο όνομα της Κότβα.

Η Κότβα είναι σήμερα ένα κέλυφος εταιρείας και το «άλλο εγώ» (alter ego) γιά την Forminster και τους συνδεομένους με αυτή, ήτοι: τους εναγόμενους στην ανταπαίτηση (counterclaim defendants) Forminster, Martin Benda ή ("Benda"), Richard Harazim ή ("Harazim"), SPV CO και John Does 1-5 (συλλογικά αναφερόμενους ως «΄Ομιλος Φορμινστερ», «Forminster Group»). Ο Όμιλος Forminster έχει συνωμοτήσει κατά του Weiss και των μετόχων της Κότβα, γιά τον σφετερισμό των κεφαλαίων της Κότβα προς ίδιον όφελος. Η Forminster είναι μία ιδιωτική εταιρεία, με έδρα την Κύπρο, και οι συνωμότες τηρούν την ταυτότητα των ιδιοκτητών της ως μέγα μυστικό. Οι Harazim και Benda παίζουν τον ρόλο των «ανθρώπων βιτρίνα»(front men) της Forminster και αποκρύπτουν την ταυτότητα των πραγματικών κυρίων της εταιρείας.

Σύμφωνα να αναφορές στον Τσεχικό τύπο και εκθέσεις των Τσέχων κατηγόρων και ως λεπτομερώς αναφέρεται κατωτέρω, ο Ομιλος Forminster ελέγχει τα προϊόντα της

2

λεηλασίας, μιάς από τις πιό διαβόητες απάτες στην μετακομμουνιστική ιστορίας της Τσεχικής Δημοκρατίας, ένα έγκλημα γνωστό σαν το «Σκάνδαλο της Τρεντ» ("Trend Scandal") ή «Η Φυγάδευση Κεφαλαίων της Τρεντ» ("Trend Tunneling"). Ο τσέχικος τύπος υιοθέτησε τη λέξη "tunneling", δηλαδή «διάνοιξη τούνελ», γιά να περιγράψει τη διαδικασία με την οποία η διοίκηση μιάς εταιρείας καταχράται των κεφαλαίων της εταιρείας και τα διακινεί μέσω μιάς σειράς διαμεσολαβητών, έως ότου οι προορισμένοι αποδέκτες των κεφαλαίων είναι σε θέση να ρευστοποιήσουν τα κεφάλαια και να εξαφανιστούν με τη λεία. Πιο σημαντικό σ' αυτή την υπόθεση, τα παράνομα προϊόντα που έχει αποκτήσει ο Όμιλος Forminster περιλαμβάνουν τον έλεγχο της πλειοψηφίας των μετοχών της Κότβα.

Στις αρχές της δεκαετίας του 1990, η Κότβα ήταν μιά εταιρεία με ένα μεγάλο πολυκατάστημα (department store), με σπουδαία τοποθεσία στο κέντρο της Πράγας, στην Τσεχική Δημοκρατία. Ένα επενδυτικό κεφάλαιο γνωστό ως Trend Fund ή "Trend", ήταν ο μεγαλύτερος μέτοχος της Κότβα α.ε. Σύμφωνα με δημοσιεύματα του τύπου, τα αποτελέσματα κυβερνητικής ερεύνης έδειξαν, ότι τα κεφάλαια της Τρέντ, περιλαμβανομένων των μετοχών της Κότβα, ελεηλατήθηκαν διά μιάς σειράς απατών και οι μετοχές της Κότβα κατέληξαν στον έλεγχο του Ομίλου Forminster. Ως αποτέλεσμα της «φυγαδεύσεως» των κεφαλαίων της Τρεντ, ο Ομιλος Forminster ισχυρίζεται ότι είναι κύριος τουλάχιστον του 55% των μετοχών της Κότβα.

Ως αποτέλεσμα της εμπλοκής της Forminster στην φυγάδευση των κεφαλαίων της Τρεντ, το Ανώτερο Δικαστήριο (High Court) του Λιχτενστάιν επάγωσε τους λογαριασμούς της Forminster σε μιά τράπεζα της Βαντούζ (Vaduz), στο Λιχτενστάιν. Ομοίως, ένας τσέχος εισαγγελέας επάγωσε τις μετοχές της Forminster στην Κότβα, λόγω υπονοιών, ότι ήταν προϊόντα εγκληματικής δραστηριότητας. Ετσι, σε αδυναμία να ρευστοποιήσει τις μετοχές του στην Κότβα, ο Όμιλος Forminster αποφάσισε να χρησιμοποιήσει τον έλεγχό του επί της Κότβα γιά να πωλήσει το πιό πολύτιμο κομμάτι του ενεργητικού της εταιρείας --το ακίνητό της-- και να κρατήσει όλα τα κέρδη γιά τον εαυτό του, εξαπατώντας τους μειοψηφούντες μετόχους της Κότβα και αποστερώντας τα θύματα της Τρεντ από τη νόμιμη μερίδα τους στα κέρδη.

## ΑΠΑΝΤΗΣΗ

Οι Εναγόμενοι Weiss και Weiss Asset Management LLC ή ("WAM")
(συλλογικά, οι «Εναγόμενοι») απαντούν στο Κατηγορητήριο της Ενάγουσας Κότβα, α.ε.,
ως εξής:

## ΕΙΣΑΓΩΓΗ

Η Εισγωγή δεν περιέχει ισχυρισμούς, εντός της εννοίας των Ομοσπονδιακών
Κανόνων Πολιτικής Διαδικασίας 8 και 10 και δεν απαιτεί απάντηση. Όπου απαιτείται
απάντηση, οι Εναγόμενοι αρνούνται τις συγκεκριμένες κατηγορίες στην Εισαγωγή.

## ΔΙΚΑΙΟΔΟΣΙΑ

1.  Η παράγραφος 1 δηλώνει νομικό συμπέρασμα στο οποίο δεν απαιτείται
    απάντηση.
2.  Η παράγραφος 2 δηλώνει νομικό συμπέρασμα στο οποίο δεν απαιτείται
    απάντηση
3.  Η παράγραφος 3 δηλώνει νομικό συμπέρασμα στο οποίο  δεν απαιτείται
    απάντηση

## ΜΕΡΗ (ΔΙΑΔΙΚΟΙ)

4.  Αποδεκτό
5.  Αποδεκτό
6.  Αποδεκτό

## ΓΕΓΟΝΟΤΑ

7.  Οι εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να
    διαμορφώσουν γνώμη, όσον αφορά την αληθεια της παραγράφου 7.
8.  Αποδεκτό
9.  Οι Εναγόμενοι παραδέχονται ότι  η Weiss Asset Management, LLC είναι μιά
    επενδυτική εταιρεία με έδρα την Βοστώνη της Μασσαχουσέττης. Προσέτι, οι
    Εναγόμενοι δέχονται ότι ο Weiss είναι κάτοχος της πλειοψηφίας της Weiss
    Asset Management και ελέγχει την Weiss Asset Management. Οι Εναγόμενοι
    αρνούνται το υπόλοιπον της παραγράφου 9.

10. Οι Εναγόμενοι δέχονται την πρώτη πρόταση της παραγράφου 10. Οι Εναγόμενοι αρνούνται την δεύτερη πρόταση της παραγράφου 10.

11. Αρνήθηκε.

12. Οι Εναγόμενοι δέχονται την πρώτη πρόταση της παραγράφου 12. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 12.

13. Οι Εναγόμενοι δέχονται ότι ο Όμιλος Forminster εγκατέστησε νέα διοίκηση στην Κότβα και απεκάλεσε αυτό αλλαγή διοικήσεως. Κατά πληροφορίες και πεποίθηση, οι Εναγόμενοι αρνούνται ότι σκοπός εγκαταστάσεως της νέας διοικήσεως ήταν να συντελεσθεί μιά θετική μεταστροφή στις δουλειές της Κότβα. Ως περαιτέρω απάντηση, οι Εναγόμενοι πιστεύουν ότι σκοπός της εγκαταστάσεως της νέας διοικήσεως ήταν να λεηλατήσει την Κότβα α.ε. από το ακίνητό της. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη όσον αφορά το αληθές του υπολοίπου της παραγράφου 13.

14. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, όσον αφορά την αλήθεια της παραγράφου 14.

15. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, όσον αφορά την αλήθεια της παραγράφου 15.

16. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, όσον αφορά την αλήθεια της παραγράφου 16.

17. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, όσον αφορά την αλήθεια της παραγράφου 17.

18. Κατά πληροφορίες και πεποίθηση, οι Εναγόμενοι αρνούνται, ότι σκοπός της υποτιθέμενης μεταβίβασης ήταν «να πραγματοποιηθεί η πώληση» του Εμπορικού Κέντρου. Ως περαιτέρω απάντηση, οι Εναγόμενοι πιστεύουν ότι σκοπός της υποτιθέμενης μεταβίβασης ήταν να εκτρέψουν αλλού τις προσόδους από την πώληση του Εμπορικού Κέντρου. Οι Εναγόμενοι δεν έχουν γνώση η επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, όσον αφορά το υπόλοιπον της παραγράφου 18.

5

19. Οι Εναγόμενοι δέχονται ότι κατά την διάρκειαν του Μαΐου 2004, ο τύπος δημοσίευσε μιά εκκρεμούσα πώληση του Εμπορικού Κέντρου σε ιρλανδούς επενδυτές. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 19.

20. Οι Εναγόμενοι δέχονται, ότι στις 12 Μαΐου, 2004, οι Weiss και Hoffmann συναντήθηκαν με τους Harazim και Benda.. Οι Εναγόμενοι δέχονται ότι οι Harazim και Benda ήταν τότε, αντιστοίχως, Διευθύνων Σύμβουλος (CEO) και ο άλλος Πρόεδρος του Διοικητικού Συμβουλίου της Κότβα, αλλά αρνούνται ότι οι Benda και Harazim παρουσίασαν τους εαυτούς των ως αντιπροσώπους της Κότβα, κατά την διάρκειαν της συναντήσεως της 12ης Μαΐου, 2005. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 20.

21. Αρνήθηκε.

22. Οι Εναγόμενοι δέχονται ότι ο Gilroy υπέβαλε μήνυσε, ισχυριζόμενος ότι η SPV KN δεν είναι ο νόμιμος κάτοχος του Εμπορικού Κέντρου και ότι η Κότβα είναι ο νόμιμος κάτοχος του Εμπορικού Κέντρου. Ο Εναγόμενος Andrew Weiss δέχεται περαιτέρω, ότι επεκοινώνησε μετά των Hoffman και Ondrej Peterka από τη Βοστώνη και ότι ο Hoffman έστειλε λογαριασμούς στο Brookdale στη Βοστώνη. Ο Εναγόμενος Weiss Asset Management αρνείται, ότι επεκοινώνησε μετά των Hoffman και Peterka στη Βοστώνη. Οι εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 22.

23. Οι Εναγόμενοι δέχονται ότι ο Gilroy άνοιξε έναν λογαριασμό στο Χρηματιστήριο (Security Centre) στις 23 Ιουνίου, 2004. Οι Εναγόμενοι δέχονται περαιτέρω, ότι ο Gilroy αγόρασε μιά μετοχή της Κότβα έναντι 430 CZK (Κορωνών Τσεχίας) στις 24 Ιουνίου, 2004, και 134 μετοχές της Κότβα προς 430 CZK ανά μετοχή στις 29 Ιουνίου, 2004. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 23.

24. Οι Εναγόμενοι δέχονται ότι στις 30 Ιουνίου, 2004, ο Gilroy υπέβαλε μήνυση κατά της Κότβα, KN και SPV KN στην Πράγα, αμφισβητώντας τις μεταβιβάσεις του Εμπορικού Κέντρου της Κότβα από την Κότβα στην KN και ακολούθως μεταφορά από την KN στην SPV KN και απαιτώντας δήλωση ότι η Κότβα είναι ο κάτοχος του Εμπορικού Κέντρου. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, όσον

αφορά το αληθές περί του αν η ΚΝ και SPV ΚΝ ήταν υπό την πλήρη κυριότητα της Κότβα κατά την ημερομηνία των δύο μεταβιβάσεων. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 24.

25. Οι Εναγόμενοι δέχονται την πρώτη πρόταση της παραγράφου 25. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 25.

26. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, όσον αφορά το αληθές της παραγράφου 26.

27. Οι Εναγόμενοι δέχονται ότι, την 17ην Αυγούστου, 2004, ο Weiss έστειλε την επιστολή που είναι συνημμένη στην Αγωγή(Complaint), ως Έκθεση Α (Exhibit A) στον Martin Benda, ο οποίος παρουσίαζε τον εαυτόν του ως αντιπρόσωπον της Forminster. Το έγγραφο αυτό ομιλεί αφ' εαυτού. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 27.

28. Οι Εναγόμενοι δέχονται ότι ένα e-mail εστάλη στις 17 Αυγούστου, 2004 με τον Richard Harazim καταγραμμένο ως αποστολέα και ότι το e-mail μιλάει από μόνο του. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 28.

29. Οι Εναγόμενοι δέχονται ότι στις 23 Αυγούστου, 2004, ο Weiss απέστειλε επιστολή, συνημμένη στην Αγωγή(Claim), ως Έκθεση Β (Exhibit Β), στον Martin Benda και Richard Harazim, που παρουσίαζαν τους εαυτούς τους ως αντιπροσώπους της Forminster. Το έγγραφο αυτό ομιλεί από μόνο του. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 29.

30. Οι Εναγόμενοι δέχονται ότι στις 23 Νοεμβρίου, 2004, ο Weiss απέστειλε την επιστολή, που είναι συνημμένη στην Αγωγή ως Έκθεση Γ (Exhibit C), προς τούς Martin Benda και Richard Harazim, οι οποίοι παρουσίαζαν τον εαυτό τους ως αντιπρόσωπο της Forminster. Το έγγραφο αυτό ομιλεί αφ' εαυτού. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 30.

31. Αρνήθηκε.

32. Έγινε αποδεκτό, με την εξαίρεση ότι οι Εναγόμενοι αρνούνται ότι ο Weiss είναι ο μοναδικός διευθυντής της Κ.Τ Inc.

33. Οι Εναγόμενοι δέχονται, ότι στις 23 Δεκεμβρίου, 2004, ο Peterka απέστειλε μιά επιστολή στον Bryan David Paul Wilson, διαμένοντα στο Linklaters της Πράγας, και ότι η επιστολή περιείχε μίαν εντός εισαγωγικών αναφορά

7

τμήματος (block quote) της παραγράφου 33. Η επιστολή ομιλεί αφ' εαυτής. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 33.

34.    Οι Εναγόμενοι δέχονται την δεύτερη πρόταση της παραγράφου 34, με την εξαίρεση ότι οι Εναγόμενοι αρνούνται ότι το e-mail του Weiss ήταν σε απάντηση επικοινωνίας από την Κότβα. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 34.

35.    Αρνήθηκε.

36.    Αρνήθηκε.

37.    Οι Εναγόμενοι αρνούνται την πρώτη πρόταση της παραγράφου 37. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες για να διαμορφώσουν γνώμη, όσον αφορά το αληθές του υπολοίπου της παραγράφου 37.

38.    Οι Εναγόμενοι αρνούνται τις πρώτες δύο προτάσεις της παραγράφου 38. Οι Εναγόμενοι ούτε δέχονται ούτε αρνούνται το υπόλοιπον της παραγράφου 38, αλλά αντιθέτως δηλώνουν ότι αναφέρονται σε υλικό το οποίο προστατεύεται από το «προνόμιο της σχέσεως δικηγόρου-πελάτου» (attorney-client privilege) και το οποίο ο ενάγων έχει αποκτήσει καταχρηστικώς.

39.    Αρνήθηκε.

40.    Οι Εναγόμενοι δεν έχουν γνώση  ή επαρκείς πληροφορίες  για να διαμορφώσουν γνώμη για το αληθές της παραγράφου 40.

41.    Οι Εναγόμενοι δέχονται ότι ο Weiss έδωσε μία συνέντευξη τύπου μέσω βίντεο στην Βοστώνη στις 15 Μαρτίου, 2005. Οι Εναγόμενοι περαιτέρω δέχονται ότι η Έκθεση Ε (Exhibit E) περιέχει ένα αληθές και ακριβές αντίγραφο των γραπτών δηλώσεων του Weiss στην αγγλική. Το έγγραφο αυτό ομιλεί από μόνο του. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες για να διαμορφώσουν γνώμη, ως προς το εάν το μέρος της Εκθέσεως Ε, που είναι γραμμένο στην τσεχική γλώσσα είναι μία πλήρως ακριβής μετάφραση των γραπτών δηλώσεων του Weiss. Οι εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 41.

42.    Αρνήθηκε.

43.    Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες για να διαμορφώσουν γνώμη, ως προς το εάν εσωτερικά έγγραφα απεκαλύφθησαν

ως αποτέλεσμα οποιωνδήποτε κατηγοριών. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 43.

44. Οι Εναγόμενοι ούτε δέχονται ούτε αρνούνται τις κατηγορίες της παραγράφου 44, αλλά αντιθέτως δηλώνουν ότι αναφέρονται σε υλικό προστατευόμενο από το προνόμιο της σχέσεως δικηγόρου-πελάτου και το οποίο ο Ενάγων απέκτησε καταχρηστικώς.

45. Αρνήθηκε.

46. Οι Εναγόμενοι δέχονται ότι στις 25 Οκτωβρίου, 2004, ο Hoffman έστειλε στον Weiss ένα e-mail το οποίο περιλαμβάνει το κείμενο που αναφέρεται στην παράγραφο 46 της Αγωγής. Αυτό το e-mail ομιλεί αφ' εαυτού. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 46.

47. Οι Εναγόμενοι δέχονται ότι στις 25 Νοεμβρίου, 2004, ο Weiss έστειλε στον Hoffman το έγγραφο, που είναι συνημμένο στην Αγωγή ως Έκθεση G (Exhibit G). Το έγγραφο αυτό ομιλεί από μόνο του. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 47.

48. Αρνήθηκε.

### Κατηγορία Ι

49. Οι Εναγόμενοι ενσωματώνουν δι' αναφοράς τις απαντήσεις τους στις κατηγορίες των προηγουμένων παραγράφων.

50. Αρνήθηκε.

51. Αρνήθηκε.

52. Οι Εναγόμενοι δέχονται ότι ο Weiss είναι κάτοικος Μασσαχουσέττης και ότι η εταιρεία Weiss Asset Management έχει ως κύριο χώρο λειτουργίας της την Μασσαχουσέττη. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 52.

53. Αρνήθηκε.

54. Αρνήθηκε.

# CERTIFICATE
## *ATTESTATION*

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,

*L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,*

1) that the document has been served*

*1. que la demande a été exécutée*

—the (date)

—*le (date)* __9/9/05__

—at (place, street, number)

—*à (localité, rue numéro)* __4, Diagorou str. Kermia Building, Office 601, Nicosia – CYPRUS__

—in one of the following methods authorised by article 5—

—*dans une des formes suivantes prévues à l'article 5*—

☐ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention*.

   *a) selon les formes légales (article 5, alinéa premier, lettre a)*

☐ (b) in accordance with the following particular method*:

   *b) selon la forme particulière suivante :* _____

☐ (c) by delivery to the addressee, who accepted it voluntarily.*

   *c) par remise simple*

The documents referred to in the request have been delivered to: __Mr Andreas Papasiantis__

*Les documents mentionnés dans la demande ont été remis à:*

—(identity and description of person)

—*(identité et qualité de la personne)* __Person in charge at the office of the Company "FORMASTER Enterprises Ltd"__

—relationship to the addressee (family, business or other):

—*liens de parenté, de subordination ou autres, avec le destinataire de l'acte:* __Business__

2) that the document has not been served, by reason of the following facts*:

*2. que la demande n'a pas été exécutée, en raison des faits suivants:*

_____

_____

_____

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement.*

*Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint*

Annexes

*Annexes*

Documents returned:

*Pièces renvoyées:*

_____

_____

In appropriate cases, documents establishing the service:

*Le cas échéant, les documents justificatifs de l'exécution:*

a) __Certificate of service (12/9/05)__
b) __Affidavit of service (12/9/05)__
c) __Documents returned (2nd copy)__

*Delete if inappropriate.*

*Rayer les mentions inutiles.*

Done at __Nicosia__ , the __26/9/05__

*Fait à* , *le*

Signature and/or stamp.

*Signature et/ou cachet.*

2

S.C. 12.9.06

## CERTIFICATE OF SERVICE OF FOREIGN PROCESS

I, Irene Christodoulou, Acting Assistant Chief Registrar of the Supreme Court of Cyprus, hereby certify that the documents annexed hereto are as follows:

1. Copies of judicial documents received from U.S.A. dated 28/7/05.

the originals of which were served on     FORMINSTER ENTERPRISES LTD

                                           4 Diagorou Str.

                                           Kermia Building, office 601

                                           NICOSIA

2. An affidavit of the Bailiff showing that the service of the judicial documents received from the above authority was duly effected on Andreas Papasiantis, person in charge at the office of the above-named company.

And I certify that such service so proved and the proof thereof is such as is required by the Law and practice of the Supreme Court of Cyprus.

Date this the 12th day of September, 2005.

                                      Irene Christodoulou

                                  Acting Assist. Chief Registrar

SUPREME COURT OF CYPRUS

## AFFIDAVIT OF SERVICE

I, Marios Demosthenous Bailiff -Server in the Supreme Court of Cyprus, make

oath and say that the judicial document received from.... U.S.A ................

...................................................... have been served to

Forminster Enterprises Ltd ............. at her/his address

4, Diagorou Street, Kermia Building, office 601 ........

Nicosia, Cyprus ........ on the 09/09/2005 upon Andreas .......

Papasiantis person in charge of the office of the above-named company

(Sgd) ... Demosthenous ......................

Marios Demosthenous

Bailiff

Sworn and signed before me

At the Supreme Court of Cyprus

on the 12\9\05 ..............

Registrar

REQUEST
### FOR SERVICE ABROAD OF JUDICIAL OR EXTRA JUDICIAL DOCUMENTS

*DEMANDE*
*AUX FINS DE SIGNIFICATION OU DE NOTIFICATION A L'ETRANGER*
*D'UN ACTE JUDICIARE OU EXTRAJUDICIAIRE*

Convention on the service abroad of judicial and extrajudicial documents in civil or
commercial matters, signed at The Hague, November 15, 1965

*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile*
*ou commerciale, signée à La Hage, le 15 Novembre 1965.*

| Identity and address of the applicant<br>*Indentité et adresse du requérant* | Address of receiving authority<br>*Adrese de l'autorité destinataire* |
|---|---|
| L. Celeste Ingalls**<br>Crowe Foreign Services<br>1020 SW Taylor Street, Suite 240<br>Portland, Oregon 97205<br>USA<br><br>Fax Number:  1-503-222-3950 | Permanent Secretary<br>Ministry of Justice and Public Order<br>~~12 Ilioupoleos St.~~ 125, Athalassis Avenue<br>1461 Lefkosia (Nicosia)<br>22805964<br>Tel:+357 ~~22805921~~    Fax: +357 22518349<br>EMail: lazaros.savvides@cytanet.com.cy |

The undersigned applicant has the honour to transmit - in duplicate - the documents listed below and, in conformity with article 5 of the
above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.,
(identity and address)

*Le requérant soussigné a l'honneur de faire parvenir - en double exemplaire - a l'autorité destinataire les documents ci-dessous énumérés*
*en la priant conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au destinataire, savior:*
*(identité et adresse)*

**Forminster Enterprises, Ltd.**
**4 Diagorou Street, Kermia Building, Off. 601**
**Nicosia, Cyprus**

(a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention.*
  *a) selon les formes légales (article 5, alinéa premier, lettre a).*

(b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5)*:
  *b) selon la forme particulière suivante (article 5, alinéa premier. lettre b):*

**To be delivered personally to a director, officer, or other individual authorized to accept service for Defendant**
**Forminster Enterprises, Ltd., or if this method is not possible, serve in accordance with method (a) above.**

☐  ~~(c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of article 5)*.~~
  ~~c) le cas échéant, par remise simple (article 5, alinéa 2).~~

The authority is requested to return or to have returned to the applicant a copy of the documents - and of the annexes* - with a certificate as
provided ~~on the reverse side~~ (attached).

*Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte - et de ses annexes - avec l'attestation figurant*
*au verso.*

List of documents
*Enumération des pièces*

Underlined "Request", in duplicate
Executed "Summary", in duplicate
Unexecuted "Certificate", in duplicate
*** Summons, in duplicate
*** First Amended Answer and
    Counter-claim, with exhibits, in duplicate

Done at Portland, Oregon, USA, the ___28th___ day of ___July___, 2005
*Fait à Portland, Oregon, USA, le....*
**Signature and/or stamp.**
*Signature et/ou cachet*

L. Celeste Ingalls

OFFICIAL SEAL
L. CELESTE INGALLS
NOTARY PUBLIC-OREGON
COMMISSION NO. 353683
MY COMMISSION EXPIRES FEB. 5, 2006

\*    Delete if inappropriate
    *Rayer les mentions inutiles*

\*\*    Authorized applicant pursuant to Rule 4(c)(2) of the
    Federal Rules of Civil Procedure, Public Law 97-462
    And Pennsylvania Court Order
\*\*\*   With French translation attached

## SUMMARY OF THE DOCUMENT TO BE SERVED
*ELEMENTS ESSENTIELS DE L'ACTE*                                                                ı

Convention on the service abroad of judicial and extrajudicial documents in civil or commercial
matters, signed at The Hague, November 15, 1965

*Convention relative à la signification et à la notification à l'étranger des actes judiciaries et extrajudiciares
en matière civile ou commerciale. signée à La Hage. le 15 Novembre 1965.*

(article 5, fourth paragraph)
*(article 5, alinéa 4)*

| | |
|---|---|
| Name and address of the requesting authority: | **Celeste Ingalls** |
| *Nom et adresse de l'autorité requérante:* | **Crowe Foreign Services** |
| | **1020 SW Taylor Street, Suite 240** |
| | **Portland, Oregon 97205** |

Particulars of the parties*:    Kotva a.s. ................................................................................................ **PLAINTIFF**
*Indentité des parties:*            Andrew Weiss, et al................................................................................... **DEFENDANTS**
Andrew Weiss, et al........................................................ COUNTERCLAIM-PLAINTIFFS
Kotva a.s., et al. .................................................................COUNTERCLAIM-DEFENDANTS

### JUDICIAL DOCUMENT**
*ACTE JUDICIAIRE*

Nature and purpose of the document:
*Nature et objet de l'acte:*                        To give notice to the Defendant, Forminster Enterprises, Ltd., of the
institution against it of a claim for civil damages and to summon it to answer the claim.

Nature and purpose of the proceedings, and, where appropriate, the amount in dispute:
*Nature et objet de l'instance. le cas échéant, le montant du litige:*

First amended civil counterclaim and answer to plaintiff's original claim.  Counterclaim-plaintiff answers the
plaintiff's claim and makes counter-claim allegations including, but not limited to, abuse of process, Conspiracy,
Unjust Enrichment, Breach of Fiduciary Duty, Unfair Competition and Unfair and Deceptive Trade Practices and
related actions.  Counter-claim plaintiff further alleges that counter-claim defendants' aforementioned actions
have caused counter-claim plaintiff to suffer damages and losses.  Counter-claim plaintiff seeks judgment in an
amount to be determined including, but not limited to, declarations of ownership, costs of this suit, attorneys'
fees and costs, order to disgorge proceeds, and such other and further relief as the court deems just and proper.

Date and place for entering appearance**:                **N/A**
*Date et lieu de la comparution:*

Court which has given judgment**:                          **N/A**
*Juridiction qui a rendu la décision:*

Date of judgment**:                                              **N/A**
*Date de la décision.*

Time limits stated in the document**:
*Indication des délias figurant dans l'acte:*        Defendant is required to serve upon Counter-Claimaint's Attorneys an
ANSWER to the Counter-Claim within twenty (20) days after receipt of the Summons and other documents herein.
A copy of the ANSWER must be filed with the court within a reasonable time thereafter.

### EXTRAJUDICIAL DOCUMENT*
*ACTE EXTRAJUDICIAIRE*

Nature and purpose of the document:                    **N/A**
*Nature et objet de l'acte:*

Time limits stated in the document**:                    **N/A**
*Indication des délias figurant dans l'acte:*

* If appropriate, identity and address of the person interested in the transmission of the document.
  *S'il y a lieu. identité et adresse de la personne intéressée à la transmission de l'acte*

** Delete if inappropriate.
   *Rayer les mentions inutiles*

# ΠΕΡΙΦΕΡΕΙΑΚΟ ΔΙΚΑΣΤΗΡΙΟ ΤΩΝ ΗΝΩΜΕΝΩΝ ΠΟΛΙΤΕΙΩΝ

Περιφέρεια  <u>Μασσαχουσέττης</u>

KOTVA a.s.

**ΚΛΗΤΕΥΣΗ ΣΕ ΥΠΟΘΕΣΗ ΑΣΤΙΚΟΥ ΔΙΚΑΙΟΥ**

KATA

ANDREW WEISS και
WEISS ASSET MANAGEMENT, LLC

**ΑΡΙΘ. ΥΠΟΘΕΣΗΣ: 05-10679 RCL**

ΠΡΟΣ:

Forminster Enterprises, Ltd.
Οδός Διαγόρου 4
Κτίριον Kermia
Γρ. 601
Λευκωσία
Κύπρος

**ΔΙΑ ΤΗΣ ΠΑΡΟΥΣΗΣ ΚΛΗΤΕΥΕΣΘΕ** και παρακαλείσθε όπως επιδώσετε εις τους **ΔΙΚΗΓΟΡΟΥΣ ΤΩΝ ΑΝΤΑΠΑΙΤΗΤΩΝ**

Edward P. Leibensperger
Benjamin A. Goldberger
McDermott Will & Emery LLP
28 State St.
Boston, MA 02109
USA

Τηλ.: 1 + 617-535-4000

απάντηση επί της ανταπαίτησης, η οποία επιδίδεται προς υμάς ενταύθα, εντός 20 ημερών από την επίδοση της κλήτευσης προς υμάς, εξαιρουμένης της ημέρας επιδόσεως αυτής. Εάν δεν πράξετε τα ανωτέρω, θα καταδικασθείτε ερήμην για την αποζημίωση, που αναφέρεται εις την ανταπαίτηση. Πρέπει επίσης να εγγράψετε την απάντησή σας εις την Γραμματεία του Δικαστηρίου, εντός λογικού χρονικού διαστήματος μετά την επίδοση.

SARAH H. THORNTON

Γραμματεύς    (Σφραγίδα του Δικαστηρίου)

<u>17 Ιουνίου, 2005</u>
Ημερομηνία

<u>Matthew A. Paine</u>
Αντιγραμματεύς

1

### ΔΗΛΩΣΗ ΕΠΙΔΟΤΗΡΙΟΥ

Επίδοση της Κλητεύσεως και αγωγής έγινε από εμένα. ΗΜΕΡΟΜΗΝΙΑ:_____
_____

ΟΝΟΜΑ ΤΟΥ ΕΠΙΔΟΤΟΥ (ΓΡΑΨΤΕ ΚΑΘΑΡΑ) ΤΙΤΛΟΣ:
Τσεκάρατε με ένα x κάθε ένα από τα παρακάτω, για να δηλώσετε τον ακριβή τρόπο παροχής υπηρεσίας.
Επέδωσα προσωπικώς προς τρίτον εναγόμενον. Τόπος όπου επεδόθη: _____
_____

΄Αφησα αντίτυπα τούτου στην κατοικία του εναγομένου ή στον συνήθη χώρου διαμονής
του, με άτομο κατάλληλης ηλικίας και διακρίσεως, που διέμενε εκεί.

Όνομα προσώπου εις το οποίο επεδόθη η κλήτευση και αγωγή:_____

Επεστράφη ανεκτέλεστο:_____
_____
_____

΄Αλλος (καθορίσατε):_____
_____
_____
_____

### ΔΗΛΩΣΗ ΕΞΟΔΩΝ ΕΠΙΔΟΣΕΩΣ

ΟΔΟΙΠΟΡΙΚΑ_____ ΥΠΗΡΕΣΙΕΣ_____ ΣΥΝΟΛΟ_____

### ΔΗΛΩΣΗ ΤΟΥ ΕΠΙΔΟΤΟΥ

Ο κάτωθι υπογεγραμμένος δηλώ υπευθύνως και εν γνώσει των συνεπειών του
νόμου περί ψευδορκίας των Ηνωμένων Πολιτειών Αμερικής, ότι οι προαναφερόμενες
πληροφορίες, που περιέχονται στην Δήλωση Επιδόσεως και Δήλωση Εξόδων Επιδόσεως
είναι αληθείς και ακριβείς.

Εξετελέσθη την_____    _____
                Ημερομηνία                  Υπογραφή του Επιδότου

                                      _____
                                        Δ/νση του Επιδότου

2

ΠΕΡΙΦΕΡΕΙΑΚΟ ΔΙΚΑΣΤΗΡΙΟ ΤΩΝ ΗΝΩΜΕΝΩΝ ΠΟΛΙΤΕΙΩΝ
ΠΕΡΙΦΕΡΕΙΑ ΜΑΣΣΑΧΟΥΣΕΤΤΗΣ

| | |
|---|---|
| KOTVA as., )<br>      )<br>      Ενάγων,      )<br>      )<br>    Κατά       )<br>      )<br>ANDREW WEISS and WEISS ASSET )<br>MANAGEMENT, LLC,    )<br>      )<br>    Εναγομένων     )<br>_____ )<br>      )<br>ANDREW WEISS, WEISS ASEET )<br>MANAGEMENT LLC, K T, INC. and CVF )<br>INVESTMENTS, LTD.,    )<br>      )<br>  Ενάγοντες ανταπαίτησης  )<br>      )<br>      )<br>    Κατά       )<br>      )<br>KOTVA a.s., MARTIN BENDA, RICHARD )<br>HARAZIM, FORMINSTER ENTERPRISES )<br>LTD., SPV CO and JOHN DOES 1-5, )<br>      )<br>  Εναγομένων  ανταπαίτησης  )<br>_____ ) | C.A. No. 05-10679-RCL |

## ΠΡΩΤΗ ΤΡΟΠΟΠΟΙΗΜΕΝΗ ΑΠΑΝΤΗΣΗ ΚΑΙ ΑΝΤΑΠΑΙΤΗΣΗ

## ΠΕΡΙΛΗΨΗ

Ο εναγόμενος και ενάγων ανταπαίτησης (counterclaim-plaintiff) Andrew Weiss ("Weis") είναι καθηγητής οικονομικών του Πανεπιστημίου Βοστώνης (Boston University). Διετέλεσε σύμβουλος της Παγκόσμιας Τράπεζας σε θέματα καφαλαιαγοράς της Τσεχικής Δημοκρατίας και είναι αυθεντία σε θέματα αναπτυσσομένων αγορών και της ανάγκης για την δημιουργία οικονομικών κανονισμών. Έχει επίσης εταιρεία που διαχειρίζεται επενδύσεις στην Τσεχική Δημοκρατία. Μεταξύ αυτών των επενδύσεων

1

είναι ένα σημαντικό μειοψηφικό μερίδιο στην ενάγουσα εταιρεία Kotva a.s. ("Kotva") ή

Κότβα. Τον Μάιο του 2004, αντιπρόσωποι της Forminster Enterprises Ltd.

("Forminster"), που είναι ο πλειοψηφών μέτοχος της Κότβα, απείλησαν να πάρουν γιά

λογαριασμό τους το μόνο πολύτιμο κομμάτι της Κότβα και να μη δώσουν τίποτε στους

μειοψηφούντες μετόχους. Ο Weiss απάντησε, με την εξουσιοδότηση δικηγόρων στην

Τσεχική Δημοκρατία, να υποβάλουν μηνύσεις για να προστατεύσουν τα δικαιώματα των

μειοψηφούντων μετόχων.

Η πρώτη απάντηση της Forminster ήταν  να προσεγγίσει τον Weiss και να

προσφέρει την εξαγορά του μεριδίου των μετόχων του στη Κότβα.  Όμως, η Forminster

δεν συμφωνούσε να πληρώσει ένα ποσό ίσο προς την αξία που αναλογούσε προς το

μερίδιο τους στην Κότβα, το οποίο εδικαιούντο οι επενδυτές του Weiss. Όταν ο Weiss

απέρριψε την ανεπαρκή προσφορά της Forminster, η Forminster υιοθέτησε  μια δεύτερη,

πιό σκοτεινή προσέγγιση. Η Forminster και οι συνδεόμενοι με αυτή εχρησιμοποίησαν

την επιρροή τους επί της Τσεχικής αστυνομίας για να υποκινήσουν μια εγκληματική

δίωξη του Weiss με ψεύτικες κατηγορίες για εκβιασμό. Αν και Weiss δεν έχει δεχθεί

επίσημη ανακοίνωση επί των κατηγοριών, ο τύπος ανέφερε ότι έγιναν αυτές οι

κατηγορίες. Επιδιώκοντας να ασκήσουν πρόσθετη πίεση, η Forminster και οι

συνδεδεμένες με αυτή εταιρείες, εχρησιμοποίησαν τον έλεγχόν τους επί της Κότβα, γιά

να κάνουν αυτή την μήνυση  κατά του Weiss, στο όνομα της Κότβα.

Η Κότβα είναι σήμερα ένα κέλυφος εταιρείας και το «άλλο εγώ» (alter ego) γιά

την Forminster και τους συνδεομένους με αυτή, ήτοι: τους εναγόμενους στην

ανταπαίτηση (counterclaim defendants) Forminster, Martin Benda ή ("Benda"), Richard

Harazim ή ("Harazim"), SPV CO και John Does 1-5 (συλλογικά αναφερόμενους ως

«΄Ομιλος Φορμινστερ», «Forminster Group»). Ο Όμιλος Forminster έχει συνωμοτήσει

κατά του Weiss και των μετόχων της Κότβα, γιά τον σφετερισμό των κεφαλαίων της

Κότβα προς ίδιον όφελος.  Η Forminster είναι μία ιδιωτική εταιρεία, με έδρα την Κύπρο,

και οι συνωμότες τηρούν την ταυτότητα των ιδιοκτητών της ως μέγα μυστικό. Οι

Harazim και Benda παίζουν τον ρόλο των «ανθρώπων βιτρίνα»(front men) της

Forminster και αποκρύπτουν την ταυτότητα των πραγματικών κυρίων της εταιρείας.

Σύμφωνα να αναφορές στον Τσεχικό τύπο και εκθέσεις των Τσέχων κατηγόρων

και ως λεπτομερώς αναφέρεται  κατωτέρω, ο Ομιλος Forminster ελέγχει τα προϊόντα της

2

λεηλασίας, μιάς από τις πιό διαβόητες απάτες στην μετακομμουνιστική ιστορίας της Τσεχικής Δημοκρατίας, ένα έγκλημα γνωστό σαν το «Σκάνδαλο της Τρεντ» ("Trend Scandal") ή «Η Φυγάδευση Κεφαλαίων της Τρεντ» ("Trend Tunneling"). Ο τσέχικος τύπος υιοθέτησε τη λέξη "tunneling", δηλαδή «διάνοιξη τούνελ», γιά να περιγράψει τη διαδικασία με την οποία η διοίκηση μιάς εταιρείας καταχράται των κεφαλαίων της εταιρείας και τα διακινεί μέσω μιάς σειράς διαμεσολαβητών, έως ότου οι προορισμένοι αποδέκτες των κεφαλαίων είναι σε θέση να ρευστοποιήσουν τα κεφάλαια και να εξαφανιστούν με τη λεία. Πιο σημαντικό σ' αυτή την υπόθεση, τα παράνομα προϊόντα που έχει αποκτήσει ο Όμιλος Forminster περιλαμβάνουν τον έλεγχο της πλειοψηφίας των μετοχών της Κότβα.

Στις αρχές της δεκαετίας του 1990, η Κότβα ήταν μιά εταιρεία με ένα μεγάλο πολυκατάστημα (department store), με σπουδαία τοποθεσία στο κέντρο της Πράγας, στην Τσεχική Δημοκρατία. Ένα επενδυτικό κεφάλαιο γνωστό ως Trend Fund ή "Trend", ήταν ο μεγαλύτερος μέτοχος της Κότβα α.ε. Σύμφωνα με δημοσιεύματα του τύπου, τα αποτελέσματα κυβερνητικής ερεύνης έδειξαν, ότι τα κεφάλαια της Τρέντ, περιλαμβανομένων των μετοχών της Κότβα, ελεηλατήθηκαν διά μιάς σειράς απατών και οι μετοχές της Κότβα κατέληξαν στον έλεγχο του Ομίλου Forminster. Ως αποτέλεσμα της «φυγαδεύσεως» των κεφαλαίων της Τρεντ, ο Όμιλος Forminster ισχυρίζεται ότι είναι κύριος τουλάχιστον του 55% των μετοχών της Κότβα.

Ως αποτέλεσμα της εμπλοκής της Forminster στην φυγάδευση των κεφαλαίων της Τρεντ, το Ανώτερο Δικαστήριο (High Court) του Λιχτενστάιν επάγωσε τους λογαριασμούς της Forminster σε μιά τράπεζα της Βαντούζ (Vaduz), στο Λίχτενστάιν. Ομοίως, ένας τσέχος εισαγγελέας επάγωσε τις μετοχές της Forminster στην Κότβα, λόγω υπονοιών, ότι ήταν προϊόντα εγκληματικής δραστηριότητας. Έτσι, σε αδυναμία να ρευστοποιήσει τις μετοχές του στην Κότβα, ο Όμιλος Forminster αποφάσισε να χρησιμοποιήσει τον έλεγχό του επί της Κότβα γιά να πωλήσει το πιό πολύτιμο κομμάτι του ενεργητικού της εταιρείας --το ακίνητό της-- και να κρατήσει όλα τα κέρδη γιά τον εαυτό του, εξαπατώντας τους μειοψηφούντες μετόχους της Κότβα και αποστερώντας τα θύματα της Τρεντ από τη νόμιμη μερίδα τους στα κέρδη.

3

### ΑΠΑΝΤΗΣΗ

Οι Εναγόμενοι Weiss και Weiss Asset Management LLC ή ("WAM") (συλλογικά, οι «Εναγόμενοι») απαντούν στο Κατηγορητήριο της Ενάγουσας Κότβα, α.ε., ως εξής:

### ΕΙΣΑΓΩΓΗ

Η Εισαγωγή δεν περιέχει ισχυρισμούς, εντός της εννοίας των Ομοσπονδιακών Κανόνων Πολιτικής Διαδικασίας 8 και 10 και δεν απαιτεί απάντηση. Όπου απαιτείται απάντηση, οι Εναγόμενοι αρνούνται τις συγκεκριμένες κατηγορίες στην Εισαγωγή.

### ΔΙΚΑΙΟΔΟΣΙΑ

1.    Η παράγραφος 1 δηλώνει νομικό συμπέρασμα στο οποίο δεν απαιτείται απάντηση.

2.    Η παράγραφος 2 δηλώνει νομικό συμπέρασμα στο οποίο δεν απαιτείται απάντηση

3.    Η παράγραφος 3 δηλώνει νομικό συμπέρασμα στο οποίο  δεν απαιτείται απάντηση

### ΜΕΡΗ (ΔΙΑΔΙΚΟΙ)

4.    Αποδεκτό

5.    Αποδεκτό

6.    Αποδεκτό

### ΓΕΓΟΝΟΤΑ

7.    Οι εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, όσον αφορά την αλήθεια της παραγράφου 7.

8.    Αποδεκτό

9.    Οι Εναγόμενοι παραδέχονται ότι  η Weiss Asset Management, LLC είναι μιά επενδυτική εταιρεία με έδρα την Βοστώνη της Μασσαχουσέττης. Προσέτι, οι Εναγόμενοι δέχονται ότι ο Weiss είναι κάτοχος της πλειοψηφίας της Weiss Asset Management και ελέγχει την Weiss Asset Management. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 9.

4

10. Οι Εναγόμενοι δέχονται την πρώτη πρόταση της παραγράφου 10. Οι Εναγόμενοι αρνούνται την δεύτερη πρόταση της παραγράφου 10.

11. Αρνήθηκε.

12. Οι Εναγόμενοι δέχονται την πρώτη πρόταση της παραγράφου 12. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 12.

13. Οι Εναγόμενοι δέχονται ότι ο Όμιλος Forminster εγκατέστησε νέα διοίκηση στην Κότβα και απεκάλεσε αυτό αλλαγή διοικήσεως. Κατά πληροφορίες και πεποίθηση, οι Εναγόμενοι αρνούνται ότι σκοπός εγκαταστάσεως της νέας διοικήσεως ήταν να συντελεσθεί μιά θετική μεταστροφή στις δουλειές της Κότβα. Ως περαιτέρω απάντηση, οι Εναγόμενοι πιστεύουν ότι σκοπός της εγκαταστάσεως της νέας διοικήσεως ήταν να λεηλατήσει την Κότβα α.ε. από το ακίνητό της. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη όσον αφορά το αληθές του υπολοίπου της παραγράφου 13.

14. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, όσον αφορά την αλήθεια της παραγράφου 14.

15. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, όσον αφορά την αλήθεια της παραγράφου 15.

16. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, όσον αφορά την αλήθεια της παραγράφου 16.

17. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, όσον αφορά την αλήθεια της παραγράφου 17.

18. Κατά πληροφορίες και πεποίθηση, οι Εναγόμενοι αρνούνται, ότι σκοπός της υποτιθέμενης μεταβίβασης ήταν «να πραγματοποιηθεί η πώληση» του Εμπορικού Κέντρου. Ως περαιτέρω απάντηση, οι Εναγόμενοι πιστεύουν ότι σκοπός της υποτιθέμενης μεταβίβασης ήταν να εκτρέψουν αλλού τις προσόδους από την πώληση του Εμπορικού Κέντρου. Οι Εναγόμενοι δεν έχουν γνώση η επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, όσον αφορά το υπόλοιπον της παραγράφου 18.

5

19. Οι Εναγόμενοι δέχονται ότι κατά την διάρκειαν του Μαΐου 2004, ο τύπος δημοσίευσε μιά εκκρεμούσα πώληση του Εμπορικού Κέντρου σε ιρλανδούς επενδυτές. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 19.

20. Οι Εναγόμενοι δέχονται, ότι στις 12 Μαΐου, 2004, οι Weiss και Hoffmann συναντήθηκαν με τους Harazim και Benda.. Οι Εναγόμενοι δέχονται ότι οι Harazim και Benda ήταν τότε, αντιστοίχως, Διευθύνων Σύμβουλος (CEO) και ο άλλος Πρόεδρος του Διοικητικού Συμβουλίου της Κότβα, αλλά αρνούνται ότι οι Benda και Harazim παρουσίασαν τους εαυτούς των ως αντιπροσώπους της Κότβα, κατά την διάρκειαν της συναντήσεως της 12$^{ης}$ Μαΐου, 2005. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 20.

21. Αρνήθηκε.

22. Οι Εναγόμενοι δέχονται ότι ο Gilroy υπέβαλε μήνυσε, ισχυριζόμενος ότι η SPV KN δεν είναι ο νόμιμος κάτοχος του Εμπορικού Κέντρου και ότι η Κότβα είναι ο νόμιμος κάτοχος του Εμπορικού Κέντρου. Ο Εναγόμενος Andrew Weiss δέχεται περαιτέρω, ότι επεκοινώνησε μετά των Hoffman και Ondrej Peterka από τη Βοστώνη και ότι ο Hoffman έστειλε λογαριασμούς στο Brookdale στη Βοστώνη. Ο Εναγόμενος Weiss Asset Management αρνείται, ότι επεκοινώνησε μετά των Hoffman και Peterka στη Βοστώνη. Οι εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 22.

23. Οι Εναγόμενοι δέχονται ότι ο Gilroy άνοιξε έναν λογαριασμό στο Χρηματιστήριο (Security Centre) στις 23 Ιουνίου, 2004. Οι Εναγόμενοι δέχονται περαιτέρω, ότι ο Gilroy αγόρασε μιά μετοχή της Κότβα έναντι 430 CZK (Κορωνών Τσεχίας) στις 24 Ιουνίου, 2004, και 134 μετοχές της Κότβα προς 430 CZK ανά μετοχή στις 29 Ιουνίου, 2004. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 23.

24. Οι Εναγόμενοι δέχονται ότι στις 30 Ιουνίου, 2004, ο Gilroy υπέβαλε μήνυση κατά της Κότβα, KN και SPV KN στην Πράγα, αμφισβητώντας τις μεταβιβάσεις του Εμπορικού Κέντρου της Κότβα από την Κότβα στην KN και ακολούθως μεταφορά από την KN στην SPV KN και απαιτώντας δήλωση ότι η Κότβα είναι ο κάτοχος του Εμπορικού Κέντρου. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, όσον

6

αφορά το αληθές περί του αν η KN και SPV KN ήταν υπό την πλήρη κυριότητα της Κότβα κατά την ημερομηνία των δύο μεταβιβάσεων. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 24.

25. Οι Εναγόμενοι δέχονται την πρώτη πρόταση της παραγράφου 25. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 25.

26. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, όσον αφορά το αληθές της παραγράφου 26.

27. Οι Εναγόμενοι δέχονται ότι, την 17ην Αυγούστου, 2004, ο Weiss έστειλε την επιστολή που είναι συνημμένη στην Αγωγή(Complaint), ως Έκθεση Α (Exhibit A) στον Martin Benda, ο οποίος παρουσίαζε τον εαυτόν του ως αντιπρόσωπον της Forminster. Το έγγραφο αυτό ομιλεί αφ' εαυτού. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 27.

28. Οι Εναγόμενοι δέχονται ότι ένα e-mail εστάλη στις 17 Αυγούστου, 2004 με τον Richard Harazim καταγραμμένο ως αποστολέα και ότι το e-mail μιλάει από μόνο του. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 28.

29. Οι Εναγόμενοι δέχονται ότι στις 23 Αυγούστου, 2004, ο Weiss απέστειλε επιστολή, συνημμένη στην Αγωγή(Claim), ως Έκθεση Β (Exhibit B), στον Martin Benda και Richard Harazim, που παρουσίαζαν τους εαυτούς τους ως αντιπροσώπους της Forminster. Το έγγραφο αυτό ομιλεί από μόνο του. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 29.

30. Οι Εναγόμενοι δέχονται ότι στις 23 Νοεμβρίου, 2004, ο Weiss απέστειλε την επιστολή, που είναι συνημμένη στην Αγωγή ως Έκθεση Γ (Exhibit C), προς τούς Martin Benda και Richard Harazim, οι οποίοι παρουσίαζαν τον εαυτό τους ως αντιπρόσωπο της Forminster. Το έγγραφο αυτό ομιλεί αφ' εαυτού. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 30.

31. Αρνήθηκε.

32. Έγινε αποδεκτό, με την εξαίρεση ότι οι Εναγόμενοι αρνούνται ότι ο Weiss είναι ο μοναδικός διευθυντής της K T Inc.

33. Οι Εναγόμενοι δέχονται, ότι στις 23 Δεκεμβρίου, 2004, ο Peterka απέστειλε μιά επιστολή στον Bryan David Paul Wilson, διαμένοντα στο Linklaters της Πράγας, και ότι η επιστολή περιείχε μίαν εντός εισαγωγικών αναφορά

7

τμήματος (block quote) της παραγράφου 33. Η επιστολή ομιλεί αφ' εαυτής. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 33.

34.    Οι Εναγόμενοι δέχονται την δεύτερη πρόταση της παραγράφου 34, με την εξαίρεση ότι οι Εναγόμενοι αρνούνται ότι το e-mail του Weiss ήταν σε απάντηση επικοινωνίας από την Κότβα. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 34.

35.    Αρνήθηκε.

36.    Αρνήθηκε.

37.    Οι Εναγόμενοι αρνούνται την πρώτη πρόταση της παραγράφου 37. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, όσον αφορά το αληθές του υπολοίπου της παραγράφου 37.

38.    Οι Εναγόμενοι αρνούνται τις πρώτες δύο προτάσεις της παραγράφου 38. Οι Εναγόμενοι ούτε δέχονται ούτε αρνούνται το υπόλοιπον της παραγράφου 38, αλλά αντιθέτως δηλώνουν ότι αναφέρονται σε υλικό το οποίο προστατεύεται από το «προνόμιο της σχέσεως δικηγόρου-πελάτου» (attorney-client privilege) και το οποίο ο ενάγων έχει αποκτήσει καταχρηστικώς.

39.    Αρνήθηκε.

40.    Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη γιά το αληθές της παραγράφου 40.

41.    Οι Εναγόμενοι δέχονται ότι ο Weiss έδωσε μία συνέντευξη τύπου μέσω βίντεο στην Βοστώνη στις 15 Μαρτίου, 2005. Οι Εναγόμενοι περαιτέρω δέχονται ότι η Έκθεση E (Exhibit E) περιέχει ένα αληθές και ακριβές αντίγραφο των γραπτών δηλώσεων του Weiss στην αγγλική. Το έγγραφο αυτό ομιλεί από μόνο του. Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, ως προς το εάν το μέρος της Εκθέσεως E, που είναι γραμμένο στην τσεχική γλώσσα είναι μία πλήρως ακριβής μετάφραση των γραπτών δηλώσεων του Weiss. Οι εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 41.

42.    Αρνήθηκε.

43.    Οι Εναγόμενοι δεν έχουν γνώση ή επαρκείς πληροφορίες γιά να διαμορφώσουν γνώμη, ως προς το εάν εσωτερικά έγγραφα απεκαλύφθησαν

ως αποτέλεσμα οποιωνδήποτε κατηγοριών. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 43.

44. Οι Εναγόμενοι ούτε δέχονται ούτε αρνούνται τις κατηγορίες της παραγράφου 44, αλλά αντιθέτως δηλώνουν ότι αναφέρονται σε υλικό προστατευόμενο από το προνόμιο της σχέσεως δικηγόρου-πελάτου και το οποίο ο Ενάγων απέκτησε καταχρηστικώς.

45. Αρνήθηκε.

46. Οι Εναγόμενοι δέχονται ότι στις 25 Οκτωβρίου, 2004, ο Hoffman έστειλε στον Weiss ένα e-mail το οποίο περιλαμβάνει το κείμενο που αναφέρεται στην παράγραφο 46 της Αγωγής. Αυτό το e-mail ομιλεί αφ' εαυτού. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 46.

47. Οι Εναγόμενοι δέχονται ότι στις 25 Νοεμβρίου, 2004, ο Weiss έστειλε στον Hoffman το έγγραφο, που είναι συνημμένο στην Αγωγή ως Έκθεση G (Exhibit G). Το έγγραφο αυτό ομιλεί από μόνο του. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 47.

48. Αρνήθηκε.

<u>Κατηγορία I</u>

49. Οι Εναγόμενοι ενσωματώνουν δι' αναφοράς τις απαντήσεις τους στις κατηγορίες των προηγουμένων παραγράφων.

50. Αρνήθηκε.

51. Αρνήθηκε.

52. Οι Εναγόμενοι δέχονται ότι ο Weiss είναι κάτοικος Μασσαχουσέτης και ότι η εταιρεία Weiss Asset Management έχει ως κύριο χώρο λειτουργίας της την Μασσαχουσέττη. Οι Εναγόμενοι αρνούνται το υπόλοιπον της παραγράφου 52.

53. Αρνήθηκε.

54. Αρνήθηκε.

## Κατηγορία ΙΙ

55. Οι Εναγόμενοι ενσωματώνουν δι' αναφοράς τις απαντήσεις τους στις κατηγορίες των προηγουμένων παραγράφων.

56. Η παράγραφος 56 διατυπώνει ένα νομικό συμπέρασμα, προς το οποίο δεν απαιτείται απάντηση.

57. Αρνήθηκε.

58. Αρνήθηκε.

59. Αρνήθηκε.

60. Αρνήθηκε.

61. Αρνήθηκε.

62. Αρνήθηκε.

63. Αρνήθηκε.

64. Αρνήθηκε

65. Αρνήθηκε.

66. Αρνήθηκε.

67. Αρνήθηκε.

68. Αρνήθηκε

## Κατηγορία ΙΙΙ

69. Οι Εναγόμενοι ενσωματώνουν δι' αναφοράς τις απαντήσεις τους προς τις κατηγορίες που περιέχονται στις προηγούμενες παραγράφους.

70. Αρνήθηκε.

<u>**Κατηγορία IV**</u>

71.    Οι Εναγόμενοι ενσωματώνουν δι' αναφοράς τις απαντήσεις τους στις κατηγορίες που περιέχονται στις προηγούμενες παραγράφους.

72.    Η παράγραφος 72 διατυπώνει νομικό συμπέρασμα, προς το οποίο δεν απαιτείται απάντηση.

73.    Αρνήθηκε.

74.    Αρνήθηκε

75.    Αρνήθηκε.

76.    Αρνήθηκε.

<u>**Κατηγορία V**</u>

77.    Οι Εναγόμενοι ενσωματώνουν δι' αναφοράς τις απαντήσεις τους προς τις κατηγορίες που περιέχονται στις προηγούμενες παραγράφους.

78.    Η παράγραφος 78 διατυπώνει ένα νομικό συμπέρασμα, προς το οποίο δεν απαιτείται απάντηση.

79.    Αρνήθηκε.

80.    Αρνήθηκε.

<u>**Κατηγορία VI**</u>

81.    Οι Εναγόμενοι ενσωματώνουν δι' αναφοράς τις απαντήσεις τους προς τις κατηγορίες που περιέχονται στις προηγούμενες παραγράφους

82.    Αρνήθηκε.

83.    Αρνήθηκε.

<u>**Κατηγορία VII**</u>

84.    Οι Εναγόμενοι ενσωματώνουν δι' αναφοράς τις απαντήσεις τους στις κατηγορίες που περιέχονται στις προηγούμενες παραγράφους.

85.    Οι Εναγόμενοι δεν έχουν γνώσεις ή επακρείς πληροφορίες γιά να διαμορφώσουν γνώμη, ως προ το αληθές του υπολοίπου της παραγράφου 85.

86.    Αρνήθηκε.

87.    Αρνήθηκε.

11

<u>ΑΠΑΙΤΗΣΗ ΓΙΑ ΑΠΟΖΗΜΙΩΣΗ</u>

Οι Απαιτήσεις του Ενάγοντος για Αποζημίωση (Requests for Relief) δεν εμπίπτουν εντός των πλαισίων της εννοίας των Ομοσπονδιακών Κανονισμών της Πολιτικής Διαδικασίας 8 και 10 και δεν χρήζουν απαντήσεως. Εφ' όσον απαιτείται απάντηση, οι Εναγόμενοι ζητούν όπως το Δικαστήριο αρνηθεί όλα τα αιτήματα του Ενάγοντος γιά Αποζημίωση.

<u>ΠΡΩΤΗ ΘΕΤΙΚΗ ΥΠΕΡΑΣΠΙΣΗ (FIRST AFFIRMATIVE DEFENSE)</u>

Η Κότβα α.ε. δεν είναι ένας διάδικος πραγματικού ενδιαφέροντος.

<u>ΔΕΥΤΕΡΗ ΘΕΤΙΚΗ ΥΠΕΡΑΣΠΙΣΗ</u>

Οι ισχυρισμοί του Ενάγοντος αποκλείονται από το δόγμα των «ακαθάρτων χειρών»

<u>ΤΡΙΤΗ ΘΕΤΙΚΗ ΥΠΕΡΑΣΠΙΣΗ</u>

Ο Ενάγων απέτυχε να διατυπώσει μιά κατηγορία, βάσει της οποίας θα μπορούσε να δοθεί αποζημίωση.

<u>ΤΕΤΑΡΤΗ ΘΕΤΙΚΗ ΥΠΕΡΑΣΠΙΣΗ</u>

Ο Ενάγων απέτυχε να υποστηρίξει περίπτωση ιδιάζουσας απάτης.

<u>ΠΕΜΠΤΗ ΘΕΤΙΚΗ ΥΠΕΡΑΣΠΙΣΗ</u>

Οι διεκδικήσεις του Ενάγοντος αποκλείονται λόγω προτέρας καταστάσεως (estoppel)

<u>ΑΝΤΑΠΑΙΤΗΣΗ (COUNTERCLAIM)</u>

Οι Ενάγοντες της Ανταπαίτησης (counterclaim-plaintiffs) Andrew Weiss ("Weiss"), Weiss Asset Management LLC ("WAM"), K T, Inc. ("K T") και CVF Investments Ltd. αναφορικά με την Ανταπαίτησή τους (Counterclaim) κατά των Εναγομένων της Ανταπαίτησης (Counterclaim-defendants) Kotva a.s., Martin Benda,

12

Richard Harazim, Forminster Enterprises, Ltd., SPV CO και John Does 1-5 δηλώνουν τα εξής:

<em>Δικαιοδοσία και Τόπος Εκδικάσεως</em>

1.  Το Δικαστήριο έχει δικαιοδοσία περιεχομένου (subject matter) επί της Ανταπαίτησης (Counterclaim), σύμφωνα με τις νομικές διατάξεις 28 U.S.C. & 1332 και 28 U.S.C. & 1367.

2.  Το Δικαστήριο έχει προσωπική δικαιοδοσία επί των εναγομένων της ανταπαίτησης (counterclaim-defendants), επειδή διέπραξαν αδικοπραγίες στη Μασσαχουσέττη, περιλαμβανομένης και της καταθέσεως αυτής της μηνύσεως, περιλαμβανομένων των e-mails, και επειδή επεδίωξαν εμπορικές συναλλαγές με κατοίκους της Μασσαχουσέττης. Προσέτι προξένησαν ζημίαν στη Μασσαχουσέττη μέσω των πράξεών τους εκτός Μασσαχουσέττης και επωφελήθησαν της δικαιοδοσίας αυτού του Δικαστηρίου.

3.  Η Περιοχή της Μασσαχουσέττης είναι ο πρέπων χώρος (venue) γιά την εκδίκαση της υποθέσεως, βάσει των διατάξεων 28 U.S.C. && 1391 (a) και 1391 (c) και επειδή η Kotva a.s.κατέθεσε την αρχική της μήνυση σ' αυτήν την Περιοχή.

<em>Διάδικοι (Parties)</em>

4.  Ο Εναγόμενος και ενάγων της ανταπαίτησης (counterclaim-plaintiff) Andrew Weiss είναι κάτοικος του Μπρουκλάιν (Brookline) της Μασσαχουσέττης.

5.  Ο Εναγόμενος και ενάγων της ανταπαίτησης (counterclaim-plaintiff) Weiss Management LLC είναι μιά εταιρεία περιωρισμένης ευθύνης με έδρα το Ντέλαγουέρ (Delaware), με κύριο χώρο επιχειρηματικών δραστηριοτήτων τη Βοστώνη της Μασσαχουσέττης.

6.  Ο ενάγων της ανταπαίτησης Κ Τ, Inc. είναι μιά εταιρεία με έδρα το Ντέλαγουέρ (Delaware), με κύριο χώρο επιχειρηματικών δραστηριοτήτων την Βοστώνη της Μασσαχουσέττης. Είναι κάτοχος 1.000 μετοχών της Κότβα α.ε. και 1.000 μετοχών της Τρεντ.

13

7.   Ο ενάγων της ανταπαίτησης CVF Investment Ltd. είναι μία κυπριακή εταιρεία με έδρα την Λευκωσία της Κύπρου. Είναι κάτοχος μετοχών της Κότβα α.ε. και μετοχών της Τρεντ. Η CVF Investments Ltd. είναι μια σχεδόν εξ ολοκλήρου ελεγχόμενη θυγατρική της Brookdale Global Opportunity Fund ή "BGO". Το έννομο συμφέρον της CVF Investments Ltd. στην Κότβα α.ε. και Τρεντ αναφέρεται γενικώς και αμοιβαίως ως «Μετοχές των CVF Investments" ή «Μετοχές της BGO's».

8.   Ο Ενάγων και εναγόμενος της ανταπαίτησης, η Κότβα α.ε., είναι μία εταιρεία οργανωμένη κάτω από τους νόμους της Τσεχικής δημοκρατίας με κύριο χώρο επιχειρηματικών δραστηριοτήτων την Πράγα, της Δημοκρατίας της Τσεχίας.

9.   Ο εναγόμενος της ανταπαίτησης Forminster Enterprises Ltd. ή Forminster είναι μια εταιρεία οργανωμένη κάτω από τους νόμους της Κύπρου. Κατά πληροφορίες και την γνώμη μας, ο χώρος επιχειρηματικών δραστηριοτήτων της Forminster ευρίσκεται εκτός των Ηνωμένων Πολιτειών. Η ταυτότητα των ιδιοκτητών της είναι ένα «καλοδιατηρημένο» μυστικό.

10.  Ο εναγόμενος της ανταπαίτησης SPV CO είναι μία εταιρεία οργανωμένη κάτω από τους νόμους της Κύπρου. Κατά πληροφορίες και την γνώμη μας, ο κύριος χώρος των επιχειρηματικών δραστηριοτήτων της SPV CO, είναι εκτός των Ηνωμένων Πολιτειών.

11.  Ο εναγόμενος της ανταπαίτησης Martin Benda ή ("Benda") είναι άτομο που διαμένει στην Τσεχική Δημοκρατία. Ο Benda ήταν μέλος του διοικητικού συμβουλίου της Κότβα α.ε. εν μέρει ή καθ' όλην την περίοδο από την 21η Μαΐου, 1999, έως την 8η Μαρτίου, 2004. Από τις 8 Μαρτίου, 2004, μέχρι σήμερα, ο Benda διατελεί Πρόεδρος του Εποπτικού Συμβουλίου (Supervisory Board) της Κότβα α.ε. Η Forminster υποστήριξε την υποψηφιότητα του Benda για την θέση του στο συμβούλιο της Κότβα και εχρησιμοποίησε τον έλεγχό της επί της πλειοψηφίας των μετοχών της Κότβα για να διασφαλίσει την εκλογή του. Ο Benda είναι ή ήταν επίσης

14

μέλος του διοικητικού συμβουλίου της Forminster και πράκτορας της Forminster. Τέλος, ο Benda είναι διευθυντής της SPV CO.

12. Ο εναγόμενος της ανταπαίτησης Richard Harazim ή ("Harazim") είναι άτομο που διαμένει στην Τσεχική Δημοκρατία. Ο Harazim είναι ο γενικός διευθυντής ή εκτελεστικός διευθυντής της Κότβα. Ο Harazim ήταν μέλος του διοικητικού συμβουλίου της Κότβα α.ε. γιά μέρος ή το σύνολο της περιόδου από 29 Μαΐου, 1997 έως 8 Μαρτίου, 2004. Από τις 8 Μαρτίου, 2004, μέχρι σήμερα ο Harazim διατελεί ως μέλος του Εποπτικού Συμβουλίου (Supervisory Board) της Κότβα α.ε. Η Forminster υπέδειξε ως υποψήφιο τον Harazim για το διοικητικό συμβούλιο της Κότβα α.ε. και εχρησιμοποίησε τον έλεγχό της επί της πλειοψηφίας των μετοχών της Κότβα γιά να διασφαλίσει την εκλογή του. Ο Harazim επίσης είναι ή ήταν μέλος του διοικητικού συμβουλίου της Forminster και πράκτορας της Forminster.

13. Οι εναγόμενοι της ανταπαίτησης John Does 1-5 είναι άτομα που διαμένουν στην Τσεχική Δημοκρατία και σε άλλες χώρες εκτός των Ηνωμένων Πολιτειών, και είναι μέλη μίας συνωμοσίας μεταξύ της Forminster, SPV CO, Benda, Harazim και άλλων (συλλογικά αναφερομένων, ως «Όμιλος Forminster»).

14. Ένας στόχος της συνωμοσίας του Ομίλου Forminster είναι να απογυμνώσει την Κότβα α.ε. από την ακίνητη περιουσία της, να πουλήσει τα ακίνητά της και να διανείμει τις προσόδους μεταξύ των μελών του Ομίλου Forminster.

*Συγκεκριμένες Κατηγορίες   (Factual Allegations)*

15. Η Weiss Capital LLC είναι μιά εταιρεία περιορισμένης ευθύνης με έδρα το Ντέλαγουερ (Delaware)

16. Το 2002 η Weiss Capital ανέλαβε την διοίκηση του Brookdale Global Opportunity Fund ή ("BGO"). Το BGO είναι ένα επενδυτικό κεφάλαιο. Η θυγατρική του, η CVF Investments Ltd., έχει μετοχές στην Τρεντ, ένα τσεχικό επενδυτικό κεφάλαιο, όπως και μετοχές στην Κότβα α.ε.

15

17.    Η CVF Investments Ltd. έχει υπό την κατοχήν της μετοχές της Τρεντ από
       το 1996 και μετοχές στην Κότβα α.ε. από το 1997.

18.    Το πιό πολύτιμο κομμάτι της Τρεντ είναι ένα σημαντικό μερίδιο στην
       Κότβα α.ε. Όμως, όπως περιγράφεται με περισσότερες λεπτομέρειες στις
       παραγράφους 42-60 κατωτέρω, αυτές οι μετοχές κατεχράσθησαν στα
       μέσα της δεκαετίας του 1990 και ήλθαν στην κατοχή της Forminster.

19.    Η Κ Τ, Inc. και η CVF Investments Ltd. έχουν αμφότερες άμεσο
       συμφέρον στην Κότβα α.ε. ως μέτοχοι και έμμεσο συμφέρον στην Κότβα
       ως μέτοχοι της Τρεντ, η οποία είναι ο νόμιμος κάτοχος του 32%
       τουλάχιστον των μετοχών  της Κότβα α.ε.

20.    Τον Σεπτέμβριο του 2003, η Weiss Capital κατέληξε σε συμφωνία με τον
       Βλαδίμηρο Χόφμαν (Vladimir Hoffman), σύμφωνα με την οποία ο
       Χόφμαν θα βοηθούσε την BGO στη ρευστοποίηση των μετοχών που είχε
       η CVF Investments σε μετοχές της Τρεντ και Κότβα α.ε. Η συμφωνία του
       Χόφμαν με την Weiss Capital έληξε τον Οκτώβριο του 2004.

21.    Τον Σεπτέμβριο του 2003, ο Harazim πλησίασε τον Χόφμαν και του
       ανέφερε ότι η Forminster ίσως να ενδιαφερόταν να αγοράσει τις μετοχές
       της BGO στην Κότβα. Μιά εταιρεία συνδεόμενη με τον Όμιλο Forminster
       έκανε τότε προσφορά να αγοράσει τις μετοχές που είχε η BGO στην
       Κότβα, έναντι του ποσού των 20,000,000 (20 εκατ.) τσεχικών κορωνών
       (CZK). Ο Weiss απέρριψε αυτή την προσφορά.

22.    Η J&T Securities έκανε τότε προσφορά 26,000,000 (26 εκατ.) περίπου
       τσεχικών κορωνών (CZK) για τις μετοχές που είχε η BGO στην Κότβα,
       τον Δεκέμβριο του 2003. Κατά πληροφορίες και την γνώμη μας, η J&T
       Securities  διατηρεί επίσης εμπορικές σχέσεις με τον Όμιλο Forminster. Ο
       Weiss απέρριψε και αυτή την προσφορά.

23.    Ενώ προσπαθούσε να αγοράσει τις μετοχές της BGO στην Κότβα, ο
       Όμιλος Forminster προσπαθούσε επίσης να πωλήσει το μοναδικό
       πολύτιμο περιουσιακό στοιχείο της Κότβα, δηλαδή το πολυκατάστημά της
       στο κέντρο της Πράγας (το «Πολυκατάστημα»).

16

24.    Στις 12 Μαΐου, 2004, οι Weiss, Hoffmann, Benda και Harazim συναντήθηκαν στην Πράγα. Κατά την συνάντηση ο Harazim είπε στον Weiss και Hoffmann, ότι οι μετοχές της CVF Investments στην Κότβα δεν είχαν *καμμία* αξία. Ο Harazim είπε, ότι επειδή η CVF Investments είναι ένας μειοψηφών μέτοχος της Κότβα α.ε. οι μετοχές της στην Κότβα δεν έχουν αξία. Ο Harazim είπε ακόμη, ότι η Κότβα ουδέποτε θα προβεί σε διανομή προς τους μετόχους της, και ως εκ τούτου, οι μέτοχοι της Κότβα δεν θα ελάμβαναν τίποτε από τις προσόδους της πωλήσεως του Πολυκαταστήματος. Ο Harazim εξέφρασε την άποψη, ότι δεν υπήρχε τίποτα που μπορούσε να πράξει ο Weiss επ' αυτού ή για την προγενέστερη κλοπή των κεφαλαίων της Τρεντ.

25.    Τον Ιούνιο του 2004, δύο από τους μετόχους της Κότβα, οι Balfindor και Gilroy, υπέβαλαν μηνύσεις στα τσεχικά δικαστήρια, αμφισβητώντας ενέργειες στις οποίες είχε προβεί ο Όμιλος Forminster. Ο Balfindor αμφισβήτησε ενέργειες που έγιναν σε μία γενική συνέλευση της Κότβα. Ο Gilroy αμφισβήτησε τις προσπάθειες του Ομίλου Forminster να μεταβιβάσει το Πολυκατάστημα από την Κότβα α.ε. σε άλλες εταιρείες.

26.    Τον Αύγουστο του 2004, οι Benda και Harazim επλησίασαν τον Hoffman και του πρότειναν να αγοράσουν τις μετοχές της BGO στην Κότβα για 75,000,000 (75 εκατ.) τσέχικες κορώνες (CZK). Ούτε ο Benda ούτε ο Harazim όρισαν επακριβώς, ποιά εταιρεία από τον Όμιλο Forminster θα αγόραζε αυτές τις μετοχές. Ο Weiss απέρριψε την προσφορά αυτή και έκανε αντιπροσφορά προτείνοντας να πωλήσει τις μετοχές της BGO στην Κότβα, έναντι του ποσού των 131,000,000 (131 εκατ.) τσεχικών κορωνών (CZK).

27.    Στις 17 Αυγούστου 2004 ο Harazim απάντησε στην αντιπροσφορά, στέλνοντας ένα e-mail σε έναν υπάλληλο της Weiss Capital στη Βοστώνη της Μασσαχουσέττης, δηλώνοντας τα εξής:

> Δυστυχώς, η προσφορά σας δεν φαίνεται να ασχολείται με τις μηνύσεις που υπεβλήθησαν από τους Balfindor και Gilroy εναντίον της εταιρείας μας. Χωρίς την επίλυση αυτών και άλλων πιθανών μηνύσεων εναντίον της εταιρείας μας, που μπορούν να

17

γίνουν από την BGO ή από οντότητες ελεγχόμενες από την BGO, δεν θα είμαστε σε θέση να καταλήξουμε σε οποιαδήποτε συμφωνία.

Εάν αναθεωρήσετε την θέση σας, μπορούμε να επανέλθουμε στη συζήτηση για την τιμή της αγοράς των μετοχών της Κότβα, που είναι στην κυριότητα της BGO.

28. Βάσει του e-mail του Harazim, ο Weiss τροποποίησε την προσφορά του να πωλήσει τις μετοχές της BGO έναντι 131,000,000 (131 εκατ.) τσεχικών κορωνών (CZK), περιλαμβάνοντας την υπόσχεση να μην εγείρει οποιεσδήποτε νομικές αμφισβητήσεις, σχετιζόμενες με την ιδιοκτησία του Πολυκαταστήματος (Department Store) και την υπόσχεση, ότι θα προσπαθήσει να πείσει τον Gilroy, να αποσύρει την μήνυσή του που αμφισβητούσε την μεταβίβαση του Πολυκαταστήματος.

29. Στις 27 Αυγούστου, 2004, ο Harazim απάντησε με e-mail στον υπάλληλο της Weiss Capital στη Βοστώνη της Μασσαχουσέττης, με το οποίο απαιτούσε ότι οποιαδήποτε αγορά των μετοχών της Κότβα θα ίσχυε υπό την προϋπόθεση της αποσύρσεως των «μηνύσεων που υπεβλήθησαν από τον Gilroy ΚΑΙ τον Balfindor, όχι μόνον τον Gilroy." Περί την ίδια ημερομηνία, ο Benda είπε στον Hoffman, ότι οποιαδήποτε αγορά μετοχών της Κότβα θα ίσχυε μόνον υπό τον όρο της άρσεως πάσης απαιτήσεως που είχε η BGO έναντι του Ομίλου Forminster, περιλαμβανομένων και των ισχυρισμών ότι οι μετοχές της Κότβα που είχε η Forminster, ανήκαν στην ουσία στην Trend.

30. Η άρση των απαιτήσεων ότι η Trend είναι ο νόμιμος κάτοχος των μετοχών που έχει η Forminster στην Κότβα, θα απεγύμνωνε στην ουσία από κάθε αξία τις μετοχές της BGO στην Trend. Μιά μετοχή στην Trend έχει πρωτίστως αξία, διότι η Trend είναι ο νόμιμος κάτοχος του 32% τουλάχιστον της Κότβα και η Κότβα είναι ο νόμιμος ιδιοκτήτης ενός πολυτίμου ακινήτου ή των προσόδων από την πώληση αυτού του ακινήτου. Επιπλέον, οι μέτοχοι της Trend έχουν αξιώσεις έναντι της Forminster επί των υπολοίπων κεφαλαίων, τα οποία εφυγαδεύτηκαν από

18

την Trend. Αυτή η φυγάδευση κεφαλαίων προσέφερε το κεφάλαιο στην Forminster, το οποίο εχρησιμοποίησε γιά την αγορά προσθέτων μετοχών της Κότβα. Ο Weiss δεν μπορούσε να συμφωνήσει στην παραίτηση από τέτοιες αξιώσεις άνευ ουδεμίας ανταμοιβής.

31.  Ως εκ τούτου, γιά να ανταπεξέλθει στις απαιτήσεις του Harazim και Benda, ο Weiss τροποποίησε την προσφορά του, ώστε (α) έκανε αναφορά στην μήνυση του Balfindor, (β) περιελάμβανε τις μετοχές της BGO στην Trend, πέραν των μετοχών της BGO στην Κότβα, και (γ) αύξησε την τιμή αγοράς, ώστε να αντικατοπτρίζει την αξία των μετοχών της BGO στην Trend. Ο Weiss  περιέλαβε στην νέα προσφορά ένα λεπτομερή υπολογισμό, ο οποίος αποδείκνυε την αξία των περιουσιακών στοιχείων που ήταν στην κυριότητα της BGO, τόσον στην Κότβα όσον και στην Trend.

32.  Απρόθυμος να πληρώσει στη CVF Investments την πραγματική αξία των μετοχών της, όπως αυτή ανανακλάται στην αξία του Πολυκαταστήματος, ο Harazim απέρριψε την προσφορά. Ο Harazim επανειλημμένως αρνήθηκε  να απαντήσει σε ερωτήσεις να εξηγήσει, γιατί η προταθείσα από τον Weiss τιμή αγοράς ήταν πολύ υψηλή ή γιατί οι υπολογισμοί που παρουσίασε ο Weiss ήταν λανθασμένοι ή ανακριβείς.

33.  Αντιθέτως ο Όμιλος Forminster απάντησε χρησιμοποιώντας την επιρροή του επί της Τσεχικής αστυνομίας για να προκαλέσει ή να αποπειραθεί να προκαλέσει την υποβολή μιάς τεχνητής ποινικής κατηγορίας εκβιασμού κατά του Weiss. Ο Harazim φέρεται ειπών στον τσέχικο τύπο, ότι «έχει υποβάλει μιά ποινικού περιεχομένου μήνυση». Αυτή η μήνυση, εάν έχει υποβληθεί, στερείται ουσίας. Κατά πληροφορίες και τη γνώμη μας, η ουσία των κατηγοριών του Ομίλου Forminster είναι, ότι ο Weiss απείλησε να υποβάλει μηνύσεις, προσβάλλοντας την κατάχρηση που έγινε στις μετοχές της Trend στην Κότβα και την μεταβίβαση του Πολυκαταστήματος, εάν οι επενδυτές του δεν ελάμβαναν το δίκαιο μερίδιό τους από τις προσόδους της πωλήσεως του Πολυκαταστήματος. Και εάν ακόμη αυτού του είδους η συμπεριφορά ήταν εγκληματική –που

19

δεν είναι— ό Harazim και ο Benda και όχι ο Weiss ήταν αυτοί που απαιτούσαν, όπως καθε αγορά μετοχών συνδεθεί με την απόσυρση των μηνύσεων.

34.    Το κίνητρο του Ομίλου Forminster να προκαλέσει την τσεχική αστυνομία να υποβάλει μια ποινικού περιεχομένου μήνυση ήταν να αποκτήσει ένα άδικο πλεονέκτημα κατά του Weiss, στην προσπάθειά του να εξαναγκάσει τον Weiss να εγκαταλείψει τις απαιτήσεις των επενδυτών του στα τσεχικά δικαστήρια, οι οποίες ήταν αντίθετες προς τα συμφέροντα του Ομίλου Forminster (η «τσεχική δικαστική διαμάχη» --the "Czech litigation").

35.    Από τον Αύγουστο του 2004 έως τον Ιανουάριο του 2005,  ο Harazim έστειλε τουλάχιστον εννέα e-mails στον Weiss και τουλάχιστον ένα άτομο στη Μασσαχουσέττη, ως μέρος των προσπαθειών του Ομίλου Forminster. να ασκήσει πίεση στον Weiss να εγκαταλείψει τις απαιτήσεις των επενδυτών του στην τσεχική δικαστική διαμάχη. Πιό συγκεκριμένα, σ' αυτά τα e-mails με ημερομηνίες 17 Αυγούστου, 2004, 27 Αυγούστου, 2004, 1 Δεκεμβρίου, 2004, 3 Δεκεμβρίου, 2004, 7 Δεκεμβρίου, 2004, 8 Δεκεμβρίου 2004, 15 Δεκεμβρίου 2004, 4 Ιανουαρίου, 2005, και 7 Ιανουαρίου, 2005, ο Harazim συνεχώς ζητούσε να αγοράσει μετοχές της Κότβα α.ε., αλλά έθετε ως όρον οποιασδήποτε αγοράς τον τερματισμό της τσεχικής δικαστικής διαμάχης.

36.    Ο Harazim απέστειλε αυτά τα e-mail υπό τις οδηγίες του Benda, τον οποίον περιγράφει σε ένα e-mail της 27ης Αυγούστου, 2004, ως «υπεύθυνο γιά  αυτή τη συναλλαγή».

37.    Κατά πληροφορίες και τη γνώμη μας, ο Harazim έστειλε επίσης αυτά τα e-mails κατόπιν οδηγιών των John Does 1-5.

38.    Ακολούθως, ο Όμιλος Forminster υπέβαλε αυτή την αστικού δικαίου υπόθεση κατά του Weiss. Κατά πληροφορίες και τη γνώμη μας, οι Benda και Harazim επενέβησαν προσωπικά  στην υποβολή αυτής της μήνυσης κατά της Κότβα α.ε., μετά την προς τούτο λήψη οδηγιών από την Forminster και τους John Does 1-5.

39. Κατα πληροφορίες και την γνώμη μας, οι Benda, Harazim και/ή John Does 1-5 έστειλαν πολλά e-mails, επιστολές και/ή πανομοιοτυπίες (faxes) και έκαναν πολλαπλά τηλεφωνήματα στους πράκτορές τους στην Μασσσαχουσέττη, γιά να υποβάλουν αυτή την μήνυση.

40. Το κακής πίστεως κίνητρο του Ομίλου Forminster στην υποβολή αυτής της μήνυσης ήταν η απόκτηση ενός ανίσου πλεονεκτήματος επί του Weiss, στην προσπάθειά του να εξαναγκάσει τον Weiss να εγκαταλείψει τις αξιώσεις των επενδυτών του στην τσεχική δικαστική διαμάχη.

41. Ο Weiss και η WAM έχουν υποστεί και εξακολουθούν να υφίστανται ζημίες στην Μασσαχουσέττη όσον αφορά την υπόληψη, διακοπή εργασιών, απώλεια χρόνου, και δικηγορικών εξόδων, ως αποτέλεσμα των αποφάσεων του Ομίλου Forminster, να υποκινήσει την τσεχική αστυνομία να υποβάλει την ποινική αυτή κατηγορία και να υποκινήσει την Κότβα να καταθέσει στο δικαστήριο αυτή την υπόθεση.

*Η Φυγάδευση των Χρημάτων του Κεφαλαίου της Trend*

42. Το 1995 και 1996 η διοίκηση της Trend κατεχράσθη τα κεφάλαια της Trend, περιλαμβανομένων και των μετοχών της Trend στην Κότβα.Η κατάχρηση των κεφαλαίων της Trend έχει τεκμηριωθεί εκτεταμένα σε διάφορες τσεχικές κυβερνητικές εκθέσεις και αναφέρεται κοινώς ως το «Σκάνδαλο της Τρεντ» ή «Η Φυγάδευση των Κεφαλαίων της Τρεντ». Τα μέσα μαζικής ενημερώσεως έχουν επίσης κάνει εκτενή ρεπορτάζ γιά το Σκάνδαλο της Τρεντ[1] ("Trend Scandal") καθώς επίσης και γιά διάφορα ασυνήθιστα γεγονότα, που σχετίζονται με την έρευνα γύρω από το Σκάνδαλο της Τρεντ. Κατά πληροφορίες και τη γνώμη μας, πολλά άτομα της αστυνομίας έχοντα σχέση με την έρευνα γύρω από το Σκάνδαλο της Τρεντ έχουν είτε παραιτηθεί ή διαπράξει αυτοκτονία, υπό ύποπτες συνθήκες.

---

[1] Συνημμένα ενταύθα ευρίσκονται υπό την μορφή της Έκθεσης 2 (Exhibit 2) μερικά άρθρα του τύπου γύρω από το Σκάνδαλο της Τρεντ με αγγλικές μεταφράσεις.

21

43.    Ο Μιροσλάβ Χάλεκ. (Miroslav Halek), ο οποίος είχε διευθυντικό ρόλο επί της Τρεντ κατά την περίοδο της καταχρήσεως, διέθετε επίσης και ένα πληρεξούσιο γιά να ενεργεί ως εκπρόσωπος της Forminster κατά την ίδια χρονική περίοδο.

44.    Οι δεσμοί του Χάλεκ με την Forminster και η προσωπική του ανάμειξη στην κατάχρηση των κεφαλαίων της Τρεντ έχουν τεκμηριωθεί λεπτομερώς σε διάφορες εκθέσεις, που υπεβλήθησαν από τσέχους εισαγγελείς. Παραδείγματος χάριν, ο Περιφερειακός Δημόσιος Αντισαγγελέας έγραψε τα εξής:

> Συναλλαγές και μεταβιβάσεις μετοχών της Κότβα, α.ε., ήταν το πιό σημαντικό αντικείμενο του ενδιαφέροντος των κατηγορουμένων [Μιροσλάβ Χάλεκ και Σία.]. Οι μετοχές της Κότβα ανήκαν σε διάφορες σημαντικές επενδύσεις του κεφαλαίου κατά την περίοδο πριν από τις 4 Αυγούστου, 1995. <u>Σκοπός της προηγουμένης διοικήσεως ήταν, και είναι ακόμη, η μεταβίβαση των μετοχών της Κότβα σε εταιρείες ελεγχόμενες από τον κ. Χάλεκ και σία, και η απόκτηση της πλειοψηφίας των μετοχών της Κότβα, μέσω άλλων αγορών, και προς τον σκοπόν αυτόν εχρησιμοποίησαν τους πόρους του επενδυτικού κεφαλαίου.</u> Οι μετοχές της Κότβα είναι ακόμη στο επίκεντρο του ενδιαφέροντος των περιβαλλουσών τον κ. Ινγ. Χάλεκ και σία εταιρειών. Ακόμη και κατά την περίοδο της αναγκαστικής διαχειρίσεως, επετεύχθησαν αρκετές μεταβιβάσεις μετοχών της Κότβα, συγκεκριμένα μεταξύ προσώπων και εταιρειών και του Jiri Mares, συμμαθητού του κ. Χάλεκ, μέσω του οποίου μετοχές της Κότβα μετεβιβάσθησαν σε εταιρείες ελεγχόμενες από τον Ινγ. Χάλεκ, ο οποίος κατά πάσαν πιθανότητα τυγχάνει σημαντική προσωπικότης. <u>Κατά την περίοδο υιοθετήσεως μιάς μη αποτελεσματικής αποφάσεως από το Περιφερειακό Δικαστήριο του Hradec Kralove, να απαγορεύσει οποιαδήποτε διάθεση των μετοχών της Κότβα από την Kralovehradecka brokerska(KHB), η μεταβίβαση των μετοχών της Κότβα στην εταιρεία **Forminster Enterprises, Ltd.**, με έδρα την Κύπρο, προς τους οικονομικούς λογαριασμούς της οποίας ο Ινγ.Χάλεκ διατηρεί ιδιαίτερα δικαιώματα, συνετελέσθη μέσω μιάς εντολής της ανωτέρω KHB.</u>

> Οι δραστηριότητες της ομάδος του κ. Χάλεκ δεν έχουν σταματήσει ούτε ακόμη και μετά την απόφαση γιά την αναγκαστική διαχείριση [της Τρεντ], και ως προκύπτει από πρόσφατες αποκαλύψεις, οι προσπάθειές τους να πάρουν τον έλεγχο της Κότβα και των

κεφαλαίων της Τρεντ συνεχίζονται μέχρι αυτής της στιγμής και ούτε οι ποινικές διώξεις, ούτε η τήρησή των υπό κράτηση αποτελούν εμπόδιο προς τούτο. Πριν από την έναρξη ακόμη των ποινικών διώξεων, είχε συντελεσθεί η μεταβίβαση μέρους των μετοχών της Κότβα προς την **Forminster Enterprises Ltd.**, η οποία εδρεύει στην Κύπρο, και μετά από αυτό η εταιρεία Kralovehradecka (brokerska) (KHB) α.ε. επωλήθη στην εταιρεία Bonit kapital, α.ε. εδρεύουσα στην πόλη Brno. Η KHB, που άλλαξε το όνομά της σε Brnenska obchodni, α.ε. αντιμετωπίζει σήμερα αίτηση κηρύξεως χρεωκοπίας εναντίον της. Σύμφωνα με πρόσφατες αποκαλύψεις, ακόμη και κατά την περίοδο της κρατήσεώς του, ο Ινγ. Χάλεκ υπέγραψε σημαντικά έγγραφα, σχετιζόμενα με τους λογαριασμούς της εταιρείας Forminster Enterprises, Ltd. με την τράπεζα LGT, εδρεύουσα στην πόλη Βαντούζ (Vaduz) του Λίχτενστάιν.

Έκθεση της 30ης Σεπτεμβρίου, 1998, του Περιφερειακού Δημόσιου Αντεισαγγελέα της Hradec Kralove (πρόσθετη έμφαση).

45.    Μετά από μία πολύπλοκη σειρά μεταβιβάσεων, μέλη του Ομίλου Forminster απέκτησαν την κυριότητα των μετοχών της Κότβα που είχαν καταχρασθεί από την Trend και, μέσω αυτών των μετοχών, απέκτησαν τον έλεγχο της Κότβα. Ο Όμιλος Forminster επλήρωσε σημαντικώς λιγώτερο για την μετοχές της Κότβα που είχε η Trend από την πραγματική τους αξία.

46.    Ο Όμιλος Forminster εχρησιμοποίησε επίσης και άλλα κεφάλαια που είχε καταχρασθεί από την Trend, γιά να αγοράσει μετοχές της Κότβα. Οι μετοχές της Κότβα που απέκτησε η Forminster από την Trend και οι μετοχές της Κότβα που αγόρασε η Forminster με κεφάλαια της Trend ξεπερνούν το 55% των μετοχών της Κότβα.

47.    Ως μέρος της έρευνας για την «φυγάδευση των κεφαλαίων της Τρεντ» (Trend Tunneling) το 1997, ένας εισαγγελέας στην Δημοκρατία της Τσεχίας επάγωσε τις μετοχές της Κότβα που ευρίσκονταν στην κυριότητα το Ομίλου Forminster, εμποδίζοντας έτσι την Forminster να τις πωλήσει. Το 2004, το Συνταγματικό Δικαστήριο (Constitutional Court) της Τσεχίας επεβεβαίωσε τις πράξεις του εισαγγελέως, γράφοντας:

23

Κατά την γνώμη του τότε Επόπτου Εισαγγελέως της Περιφερειακής Εισαγγελίας του Hradec Kralove, οι εν λόγω μετοχές ήταν αντικείμενο εγκληματικής ερευνης ή, ανάλογα με την εξέλιξη της υποθέσεως, προϊόντα εγκλήματος, και ήσαν πλήρως και ουσιαστικώς συνδεδεμένες με την διάπραξη ενός σοβαρού εγκλήματος κατά της περιουσίας. <u>Η έκδοση της εντολής σκοπόν είχε να αποκλείσει την ολοκλήρωση της αλυσίδας των παρανόμων μεταβιβάσεων μετοχών.</u>

Συνταγματικό Δικαστήριο της Τσεχίας, Απόφασις υπ' αριθ. II US 267/03 (15 Απριλίου, 2004). Ομοίως, «κατά την γνώμη του Ανωτέρου Εισαγγελέως (High Public Prosecutor), [οι μετοχές της Forminster στην Κότβα] είναι προϊόντα εγκλήματος διαπραχθέντα από τον Ing. M. H[alek] (Χάλεκ) και σία. Οι μετοχές αυτές μετατράπηκαν σε αποδεικτικούς τίτλους (αξιόγραφα) (documentary securities) και τοποθετήθηκαν στον λογαριασμό της F[orminster] E[nterprises] Limited στο Χρηματιστηριακό Κέντρο της Πράγας» (Prague Security Exchange Center) (αυτόθι).

48.    Ο Εισαγγελέας της Hradec Kralove περιέγραψε το πάγωμα των μετοχών της Κότβα, που ήταν στην κυριότητα της Forminster, ως ένα περιωρισμένης κλίμακος, «ορίζοντας επακριβώς τις μετοχές εκείνες που είχαν αποτελέσει αντικείμενο εγκλήματος ή αποτέλεσμα αυτού», και δεν είχε εφαρμογή σε μετοχές «οι οποίες ουδεμίαν σχέσιν είχαν με έγκλημα, ή όπου μιά τέτοια σχέσις, εάν υποτεθεί ότι υπήρχε τοιαύτη, δεν μπορούσε να τεκμηριωθεί αδιαμφισβήτητως, βάσει των υπαρχόντων αποδεικτικών στοιχείων». 13 Μαΐου, 1997. Δικαστική εντολή του Εισαγγελέως της Hradec Kralove, αριθ. KZv 323/97.

49.    Κατά την ίδια περίπου περίοδο, το Ανώτερο Δικαστήριο (High Court) του Λίχτενστάιν επάγωσε τους λογαριασμούς της Forminster στην τράπεζα  LGT στην πόλη Βαντούζ του Λιχτενστάιν, λόγω υπονοίας ξεπλύματος χρήματος και συνομωσίας, μεταξύ άλλων εγκλημάτων.

50.    Παρά την δικαστική εντολή του τσέχου Εισαγγελέως γιά το πάγωμα των μετοχών της Κότβα, υπό την κυριότητα του Ομίλου Forminster, μέλη του Ομίλου Forminster ήταν ακόμη σε θέση να ψηφίσουν αυτές τις μετοχές. Ο Όμιλος Forminster ελέγχει τουλάχιστον το 55% των μετοχών της Κότβα.

Ως πλειοψηφούντες μέτοχοι, ο Όμιλος Forminster εκλέγει το διοικητικό συμβούλιο της Κότβα και ελέγχει την διοίκησή του.

51.     Παρ' όλα αυτά το πάγωμα των μετοχών εδημιούργησε δυσκολίες στον Όμιλο Forminster. Δεν μπορούσαν να μετατρέψουν τις μετοχές της Κότβα σε μετρητά. Γι' αυτό έπρεπε να εφεύρουν έναν τρόπο να χωρίσουν τα κεφάλαια της Κότβα α.ε. από τις παγωμένες μετοχές της Κότβα α.ε., να ρευστοποιήσουν αυτά τα κεφάλαια, και να οικειοποιηθούν το προϊόν της ρευστοποιήσεως προς ίδιον όφελος.

52.     Τουλάχιστον από το 1999, μετά την εκλογή του διοικητικού συμβουλίου της Κότβα α.ε., ο Όμιλος Forminster, μέσω των «ανθρώπων βιτρίνα» (front men), Benda και Harazim, εξάσκησε πλήρη έλεγχο επί της Κότβα α.ε. και ενεργώς κατηύθυνε όλες τις δραστηριότητές της, περιλαμβανομένης και της υποβολής αυτής της μηνύσεως. Ο Όμιλος Forminster χρησιμοποιεί τον πλήρη του έλεγχο επί της Κότβα α.ε. γιά να δράσει κατά ιδιοτελή τρόπο, αδιαφορώντας γιά τα συμφέροντα των μειοψηφούντων μετόχων της Κότβα α.ε. Χρησιμοποιεί την Κότβα α.ε. γιά να εξυπηρετήσει τα συμφέροντα του Ομίλου Forminster και να απατήσει τους μειοψηφούντες μετόχους.

53.     Ο Όμιλος Forminster έκανε την Κότβα α.ε. να μεταβιβάσει το ακίνητο του Πολυκαταστήματος (Department Store) μέσω μιάς σειράς «εταιρειών κελύφων». Αυτές οι μεταβιβάσεις δεν έχουν κανένα λογικό επιχειρηματικό σκοπό, παρά είναι σχεδιασμένες να επιτρέψουν στον Όμιλο Forminster να πάρει με μεγαλύτερη ευκολία της προσόδους από την πώληση του Πολυκαταστήματος. Τελικά, το Πολυκατάστημα επωλήθη σε μία ιρλανδική εταιρεία , ονομαζομένη Markland, έναντι του ποσού των $65 περίπου εκατομμυρίων δολλαρίων.

54.     Πιό συγκεκριμένα, η Κότβα α.ε. πρώτα μεταβίβασε το Πολυκατάστημα σε μιά εταιρεία που εδημιούργησε και ονόμασε Kotva Nemovitosti. Κατά πληροφορίες και την γνώμη μας, πρόεδρος του διοικητικού συμβουλίου της Kotva Nemovito κατά την περίοδο αυτή ήταν ο Benda. Ο Όμιλος Forminster ανάγκασε τότε την Κότβα α.ε. να μετατρέψει την Kotva

Nemovitosti από μιά πλήρως ελεγχόμενη θυγατρική εταιρεία σε μιά ετερόρρυθμη εταιρεία (limited partnership), στην οποία η Κότβα α.ε. είχε δικαίωμα σε λιγώτερο από το μισό των κερδών και του πλεονάσματος της ρευστοποίησης.

55. Κατόπιν, ο Όμιλος Forminster απεμάκρυνε ακόμη περισσότερο το Πολυκατάστημα από τους μετόχους της Κότβα με την μεταβίβαση του Πολυκαταστήματος από την Kotva Nemovitosti σε μιά άλλη εταιρεία ονομαζόμενη SPV KN. Ο Όμιλος Forminster εχρησιμοποίησε μη καταγεγραμμένες και μη ανιχνεύσιμες προσωπικές ανώνυμες μετοχές (untraceable bearer shares), για να δημιουργήσει την ιδιοκτησία της SPV KN.

56. Κατά πληροφορίες και τη γνώμη μας, όταν η SPV KN έλαβε για πρώτη φορά το Πολυκατάστημα από τη Kotva Nemovitosti, η Kotva Nemovitosti είχε υπό την κυριότητά της όλες τις προσωπικές επιταγές (bearer shares), που απεδείκνυαν την ιδιοκτησία της SPV KN. Όμως, σύμφωνα με την Ετήσια Έκθεση (Annual Report) του 2004 της Κότβα, ο Όμιλος Forminster απομάκρυνε ακόμη πιό πολύ από τους μετόχους της Κότβα α.ε. το Πολυκατάστημα, με το να αναγκάσει την Kotva Nemovitosti να μεταβιβάσει το 97% των μετοχών της SPV KN, σε μια κυπριακή εταιρεία ονομαζόμενη SPV CO.

57. Η SPV CO είναι μέρος του Ομίλου Forminster. Η SPV CO έχει ως καταγεγραμμένη έδρα της την διεύθυνση: Αγίου Παύλου 15, Άγιος Ανδρέας, 1105 Λευκωσία, Κύπρος. Η διεύθυνση είναι επίσης καταγεγραμμένη και ως έδρα των δικηγορικών γραφείων της εταιρείας Χριστόδουλος Γ. Βασιλειάδης και Σία (Christodoulos G. Vassiliades & Co.), ο νομικός οίκος δηλαδή που ίδρυσε την Forminster το 1996.

58. Σύμφωνα με την Ετήσια Έκθεση της Κότβα γιά το 2004, ο Όμιλος Forminster προέβη στην πώληση του Πολυκαταστήματος στην CRQ Czech, μιά τσεχική εταιρεία ελεγχόμενη από την Markland, με την μεταβίβαση των προσωπικών επιταγών (bearer shares) της SPV KN, από την SPV CO στην CRQ Czech.

26

59.    Κατ' αυτόν τον τρόπον, τα έσοδα από την πώληση του
Πολυκαταστήματος δεν θα δοθούν στην  Κότβα ή ακόμη σε κάποια άλλη
τσεχική εταιρεία.  Αντιθέτως, φαίνεται ότι η τιμή  αγοράς  γιά τις μετοχές
της SPV KN θα καταβληθεί  ή έχει καταβληθεί στην SPV CO ή κάποια
άλλη ελεγχόμενη από την Forminster οντότητα, η οποία θα διανείμη τα
έσοδα από την πώληση μεταξύ των μετόχων του Ομίλου Forminster
μάλλον, παρά μεταξύ των μετόχων της Κότβα.

60.    Το σχέδιο του Ομίλου Forminster προξένησε ζημία στους ενάγοντες της
ανταπαίτησης (counterclaim plaintiffs) K T και CVF Investments Ltd.,
εμποδίζοντάς τους  να αποκομίσουν την δικαία απόδοση των επενδύσεών
τους, την οποία οι πλειοψηφούντες μέτοχοι της Κότβα α.ε., ο Όμιλος
Forminster, έχουν ήδη ή αναμένουν να αποκομίσουν.

<u>Κατηγορία I</u>

(Κατάχρηση Διαδικασίας –

**Οι Ενάγοντες της Ανταπαίτησης (Counterclaim-Plaintiffs) Andrew Weiss και Weiss
Asset Management LLC κατά όλων των Εναγομένων της Ανταπαίτησης
(Counterclaim Defendants)**

61.    Οι παράγραφοι 1-60 έχουν ενσωματωθεί δι' αναφοράς, ως εάν είχαν
πλήρως εκτεθεί ενταύθα.

62.    Ο Όμιλος Forminster, περιλαμβανομένων όλων των εναγομένων της
ανταπαίτησης (counterclaim-defendants), εχρησιμοποίησε την τσεχική
ποινική διαδικασία με την υποβολή ποινικής διώξεως και με την άσκηση
της επιρροής του επί της τσεχικής αστυνομίας, για να προκαλέσει ή
αποπειραθεί να προκαλέσει την έγερση ποινικών κατηγοριών κατά του
Weiss.

63.    Η πράξη αυτή είχε ένα απώτερο και παράνομο σκοπό, ως περιεγράφη
ανωτέρω.

64.    Ο ενάγων της ανταπαίτησης (countermalim-plaintiff) Weiss εζημιώθη από
την κατάχρηση αυτή της διαδικασίας, ως περιεγράφη ανωτέρω.

65. Ο Όμιλος Forminster, περιλαμβανομένων όλων των εναγομένων της ανταπαίτησης, εχρησιμοποίησε την αστική διαδικασία των Ηνωμένων Πολιτειών με την υποβολή της παρούσης μηνύσεως.

66. Η πράξη αυτή είχε ένα απώτερο και παράνομο σκοπό, ως περιεγράφη ανωτέρω.

67. Οι ενάγοντες της ανταπαίτησης Weiss και Weiss Asset Management εζημιώθηκαν από την κατάχρηση αυτή της διαδικασίας, ως περιεγράφη ανωτέρω.

## Κατηγορία ΙΙ

### (Συνωμοσία – Οι Ενάγοντες της Ανταπαίτησης Andrew Weiss, Weiss Asset Management, Κ Τ, Inc. και CVF Investment Ltd. κατά Όλων των Εναγομένων της Ανταπαίτησης)

68. Οι παράγραφοι 1-67 ενσωματώνονται δι' αναφοράς, ως εάν είχαν πλήρως εκτεθεί ενταύθα.

69. Τα μέλη του Ομίλου Forminster, περιλαμβανομένων όλων των εναγομένων της ανταπαίτησης (counterclaim-defendants), συμφώνησαν να συνεργασθούν από κοινού γιά να λεηλατήσουν τα κεφάλαια της Κότβα, να κάνουν κατάχρηση της τσεχικής ποινικής διαδικασίας, και της αστικής διαδικασίας των Ηνωμένων Πολιτειών.

70. Τα μέλη του Ομίλου Forminster διαθέτουν μιά ιδιαίτερη δύναμη εξαναγκασμού κατά το ότι, ως όμιλος, έχουν πρόσβαση και επιρροή επί ενός τουλάχιστον μέλους της τσεχικής κυβερνήσεως, περιλαμβανομένης και της ικανότητας να αναγκάζουν την τσεχική αστυνομία να υποβάλει ποινικές διώξεις, πράγμα το οποίο προσφέρει σ' αυτά ισχυρό πλεονέκτημα στις εμπορικές τους διαμάχες.

71. Οι εναγόμενοι της ανταπαίτησης Kotva, Benda, Harazim, Forminster, SPV CO και John Does 1-5 έχουν συνωμοτήσει γιά να ζημιώσουν τους ενάγοντες της ανταπαίτησης Weiss, Weiss Asset Management, KT, Inc. και CVF Investments Ltd., ως περιεγράφη ανωτέρω.

28

## Κατηγορία III

### (Σφετερισμός – Plaintiffs K T, Inc. και CVF Investments Ltd. κατά Benda, Harazim, Forminster, SPV CO και John Does 1-5)

72. Οι παράγραφοι 1-71 ενσωματώνονται δι' αναφοράς, ως εάν είχαν πλήρως εκτεθεί ενταύθα.

73. Η Κότβα α.ε. είτε αμέσως είτε μέσω μίας πλήρως ελεγχομένης θυγατρικής έχει ή είχε το δικαίωμα στις προσόδους από την πώληση του Πολυκαταστήματος.

74. Οι εναγόμενοι της ανταπαίτησης (counterclaim-defendants) Benda, Harazim, Forminster, SPV CO και John does 1-5, έλαβαν παρανόμως τον έλεγχο των συμφερόντων της Κότβα, σχετικά με τις προσόδους από την πώληση του Πολυκαταστήματος. Με την πράξη τους αυτή, οι εναγόμενοι της ανταπαίτησης αποστέρησαν την Κότβα και τους μετόχους της, περιλαμβανομένων των εναγόντων της ανταπαίτησης (counterclaim-plaintiffs) K T και CVF Investments από τα δικαιώματά τους να επωφεληθούν από την αξία του Πολυκαταστήματος.

## Κατηγορία IV

### (Παράνομος Πλουτισμός– Οι Ενάγοντες της Ανταπαίτησης K T, Inc. και CVF Investments Ltd. κατά Benda, Harazim, Forminster, SPV CO και John Does 1-5)

75. Οι παράγραφοι 1-74 ενσωματώνονται δι' αναφοράς, ως εάν είχαν πλήρως εκτεθεί ενταύθα.

76. Με την πώληση του Πολυκαταστήματος και την κράτηση των προσόδων για τον εαυτό τους οι εναγόμενοι της ανταπαίτησης Benda, Harazim, Forminster, SPV CO και John Does 1-5 επλούτησαν παρανόμως και εις βάρος των εναγόντων της ανταπαίτησης K T, Inc. και CVF Investments Ltd.

## Κατηγορία V

**(Παράβαση Διαπιστευμένου Καθήκοντος/Κατάχρηση Ελέγχου**
**Οι Ενάγοντες της Ανταπαίτησης Κ Τ, Inc. και CVF Investments Ltd. κατά**
**Benda, Harazim και Forminster)**

77. Οι παράγραφοι 1-76 ενσωματώνονται δι' αναφοράς, ως εάν είχαν πλήρως εκτεθεί ενταύθα.

78. Ο Harazim είναι αξιωματούχος της Κότβα α.ε., μέλος του Εποπτικού της Συμβουλίου και πρώην μέλος του διοικητικού συμβουλίου της Κότβα α.ε.

79. Ο Benda είναι Πρόεδρος του Εποπτικού Συμβουλίου της Κότβα α.ε. και πρώην μέλος του διοικητικού συμβουλίου της Κότβα α.ε.

80. Από το 1997 η Forminster έχει υπό τον έλεγχόν της την πλειοψηφία των μετοχών της Κότβα α.ε. και τουλάχιστον από το 1999, έχει υπό τον έλεγχό της το διοικητικό συμβούλιο της Κότβα α.ε.

81. Ως αξιωματούχος, διευθυντής και εποπτεύον μέλος του διοικητικού συμβουλίου της Κότβα α.ε. ο Harazim οφείλει να έχει διαπιστευμένο καθήκον υψίστης αφοσίωσης και καλής πίστης προς την Κότβα και τους μετόχους της.

82. Ως διευθυντής και εποπτεύον μέλος του διοικητικού συμβουλίου της Κότβα α.ε., ο Benda οφείλει να έχει διαπιστευμένο καθήκον υψίστης αφοσίωσης και καλής πίστης προς την Κότβα και τους μετόχους της.

83. Ως εταιρεία η οποία ελέγχει την πλειοψηφία των μετοχών της Κότβα α.ε., η Forminster έχει το καθήκον προς τους μειοψηφούντες μετόχους της Κότβα, να μην κάνει κατάχρηση της πλειοψηφίας των ψήφων της.

84. Ως εποπτεύοντα μέλη του διοικητικού συμβουλίου της Κότβα, ο Benda και Harazim έχουν χρέος προς τους μετόχους της Κότβα να ελέγχουν το διοικητικό συμβούλιο.

85. Με το να κατευθύνουν και να συμμετέχουν στις επανειλημμένες μεταβιβάσεις του Πολυκαταστήματος προς όφελος του Ομίλου Forminster  παρά προς τους μετόχους της Κότβα, οι Harazim, Benda και Forminster παρέβησαν τα αντίστοιχα καθήκοντά τους προς τους μετόχους

της Κότβα, περιλαμβανομένων και των εναγόντων της ανταπαίτησης Κ Τ και CVF Investments Ltd.

86. Χρησιμοποιώντας την επιρροή τους επί του διοικητικού συμβουλίου της Κότβα, με αποτέλεσμα να κάνουν το εν λόγω διοικητικό συμβούλιο να ενεργήσει εις βάρος της Κότβα και των μετόχων της, περιλαμβανομένων των εναγόντων της ανταπαίτησης Κ Τ και CVF Investments Ltd., οι Benda, Harazim και Forminster έκαναν κατάχρηση του ελέγχου τους επί του διοικητικού συμβουλίου της Κότβα, κατά παράβαση του Τσεχικού Εμπορικού Κώδικος &66c.

87. Με το να επιτρέψουν και να ενθαρρύνουν το διοικητικό συμβούλιο να αποστερήσει την Κότβα από το Πολυκατάστημα και με το να μην βεβαιωθούν, ότι οι μέτοχοι της Κότβα θα λάβουν ως αντάλλαγμα μιά δίκαιη αποζημίωση, οι Benda και Harazim παρέβησαν το καθήκον τους να ελέγχουν το διοικητικό συμβούλιο της Κότβα και τούτο απέβη εις βάρος των μετόχων της Κότβα, περιλαμβανομένων και των εναγόντων της ανταπαίτησης Κ Τ και CVF Investments Ltd.

88. Οι ενάγοντες της ανταπαίτησης Κ Τ και CVF Investments Ltd. εζημιώθησαν από αυτές τις παραβάσεις διαπιστευμένου καθήκοντος και κατάχρησης ελέγχου, ως περιγράφη ανωτέρω.

### Κατηγορία VI
**(Εποικοδομητικό Τραστ –Constructive Trust–**
**Οι Ενάγοντες της Ανταπαίτησης ΚΤ, Inc. και CVF Investments Ltd.**
**κατά πάντων των Εναγομένων της Ανταπαίτησης)**

89. Οι παράγραφοι 1-88 ενσωματώνονται δι' αναφοράς, ως εάν είχαν πλήρως εκτεθεί ενταύθα.

90. Το Πολυκατάστημα, οι προσωπικές ανώνυμες μετοχές (bearer shares) στην SPV KN και/ή τα έσοδα από την πώληση αυτού του είδους των μετοχών από την SPV KN υπόκεινται στην δημιουργία ενός εποικοδομητικού τράστ (constructive trust) προς όφελος των μετόχων της

Κότβα, περιλαμβανομένων των εναγόντων της ανταπαίτησης Κ Τ και
CVF Investments Ltd.

### Κατηγορία VII

**(Αθέμιτος Συναγωνισμός και Αθέμιτες και Δόλιες Εμπορικές
Πρακτικές ---Andrew Weiss, Weiss Asset Management, Κ Τ, Inc. και CVF
Investments Ltd. κατά πάντων των Εναγομένων της Ανταπαίτησης)**

91.     Οι παράγραφοι 1-90 ενσωματώνονται δι' αναφοράς, ως εάν είχαν πλήρως
        εκτεθεί ενταύθα.

92.     Ο Όμιλος Forminster και τα μέλη του ασχολούνται με εμπορικές και
        συναφείς συναλλαγές, οι οποίες εμπίπτουν εντός των πλαισίων του νόμου
        M.G.L. ch. 93A.

93.     Οι ενάγοντες της ανταπαίτησης Weiss, WAM, Κ Τ, Inc. και CVF
        Investments Ltd. ασχολούνται με εμπορικές και συναφείς συναλλαγές, οι
        οποίες εμπίπτουν εντός των πλαισίων του νόμου M.G.L. ch. 93A.

94.     Ο σφετερισμός, απάτη, κατάχρηση διαδικασίας, συνωμοσία και δόλιες
        μεταβιβάσεις του Πολυκαταστήματος από τον Όμιλο Forminster
        συνιστούν αθέμιτες και δόλιες εμπορικές πρακτικές.

95.     Ο Όμιλος Forminster εφαρμόζει αυτές τις αθέμιτες και δόλιες εμπορικές
        πρακτικές εν γνώσει του και εκ προθέσεως.

96.     Ως αποτέλεσμα των πράξεων αυτών, οι ενάγοντες της ανταπαίτησης
        υπέστησαν ζημίες, ως περιεγράφη ανωτέρω.

### Κατηγορία VIII

**(Δικαστική Απόφαση ---Declaratory Judgment –
Οι Ενάγοντες της Ανταπαίτησης Κ Τ, Inc. και CVF Investments Ltd. κατά
πάντων των Εναγομένων της Ανταπαίτησης)**

97.     Οι παράγραφοι 1-96 ενσωματώνονται δι' αναφοράς, ως εάν είχαν πλήρως
        εκτεθεί ενταύθα.

98.     Υπάρχει μιά σοβαρή διαμάχη μεταξύ των εναγόντων της ανταπαίτησης
        Κ Τ, Inc.και CVF Investments Ltd. αφ' ενός, και των Benda, Harazim,

Forminster, SPV CO και John Does 1-5 αφ' ετέρου, ως προς το ποιός θα πρέπει να λάβει τις προσόδους από την πώληση του Πολυκαταστήματος.

99.    Οι Benda, Harazim, Forminster, SPV CO και John Does 1-5 έχουν υπό την κατοχή τους τις προσόδους από την εν λόγω πώληση με παράνομα μέσα. Κατά συνέπειαν δεν έχουν νόμιμο δικαίωμα επ' αυτών των προσόδων.

100.    Αντιθέτως, οι πρόσοδοι από την πώληση ανήκουν στην Κότβα α.ε. και τους μετόχους της.

101.    Υπάρχει σοβαρή διαμάχη μεταξύ των εναγόντων της ανταπαίτησης Κ Τ, Inc. αφ' ενός, και των Benda, Harazim, Forminster, SPV CO και John Does 1-5, αφ' ετέρου, ως προς το εάν η Forminster είναι ο νόμιμος κάτοχος του 55% των μετοχών της Κότβα.

102.    Με την παράνομη διατήρηση ελέγχου επ' αυτών των μετοχών, ο Όμιλος Forminster είναι εις θέσιν να διατηρεί τον έλεγχον επί της Κότβα και να προβαίνει εις πράξεις οι οποίες βλάπτουν την μειοψηφία των μετόχων, περιλαμβανομένων των εναγόντων της ανταπαίτησης Κ Τ, Inc.και CVF Investments Ltd.

103.    Ο Όμιλος Forminster δεν έχει νόμιμο δικαίωμα επί των μετοχών του στην Κότβα, διότι οι μετοχές αυτές είτε εκλάπησαν από την Trend είτε αντιπροσωπεύουν προσόδους από άλλα κεφάλαια κλεμμένα από την Trend.


ΑΙΤΗΣΗ ΓΙΑ ΑΠΟΚΑΤΑΣΤΑΣΗ ΖΗΜΙΑΣ  (PRAYER FOR RELIEF)

ΔΙΑ ΤΑΥΤΑ, οι ενάγοντες της ανταπαίτησης Andrew Weiss, Weiss Asset Management LLC, KT, Inc. και CVF Investments Ltd. ευσεβάστως παρακαλούν όπως το δικαστήριο αυτό:

(α)    Εκδώσει δικαστική απόφαση υπέρ των εναγόντων της ανταπαίτησης και καταδικάσει τους εναγόμενους της ανταπαίτησης επί όλων των κατηγοριών του ανταπαίτησης

(β)    Επιβάλει την δημιουργία ενός εποικοδομητικού τραστ (constructive trust) γιά τις προσόδους της πωλήσεως του Πολυκαταστήματος

33

(γ)    Κηρύξει ότι οι μέτοχοι της Κότβα α.ε. είναι οι κύριοι των προσόδων από την πώληση του Πολυκαταστήματος

(δ)    Κηρύξει ότι ο Όμιλος Forminster δεν είναι ο νόμιμος κάτοχος των μετοχών της Κότβα α.ε., επί των οποίων ισχυρίζεται ότι έχει κυριότητα

(ε)    Λάβει απόφαση, η οποία να απαιτεί όπως οι Benda, Harazim, Forminster και John Does 1-5, παραιτηθούν από τις προσόδους της πωλήσεως του Πολυκαταστήματος και μεταφέρουν αυτές στους μετόχους της Κότβα α.ε.

(στ)   Επιδικάσει αποζημιώσεις επί των κατηγοριών I, II, III, IV, V, και VII, περιλαμβανομένης τριπλής αποζημιώσεως επί της Κατηγορίας VII

(ζ)    Επιδικάσει προς τους ενάγοντες της ανταπαίτησης τα έξοδά των

(η)    Επιδικάσει προς τους ενάγοντες της ανταπαίτησης τα δικηγορικά τους έξοδα, και

(θ)    Προσφέρει οποιαδήποτε άλλη αποζημίωση την οποία το Δικαστήριο θα κρίνει δικαία και αρμόζουσα.

## ΑΙΤΗΣΗ ΔΙΚΗΣ ΜΕ ΕΝΟΡΚΟΥΣ

ΟΙ ΕΝΑΓΟΜΕΝΟΙ ΚΑΙ ΕΝΑΓΟΝΤΕΣ ΤΗΣ ΑΝΤΑΠΑΙΤΗΣΗΣ ΑΠΑΙΤΟΥΝ ΔΙΚΗ ΜΕ ΕΝΟΡΚΟΥΣ ΕΠΙ ΟΛΩΝ ΤΩΝ ΔΙΚΑΣΙΜΩΝ ΘΕΜΑΤΩΝ.

Υποβληθέν ευσεβάστως, υπό των
ANDREW WEISS, WEISS ASSET
MANAGEMENT LLC, Κ Τ, INC., και  CVF
INVESTMENTS LTD.

Διά των δικηγόρων τους,

/s/Benjamin A. Goldberger
Edward P. Leibensperger (BBO#292620)
Michael Kendall (BBO# 544866)
Benjamin A. Goldberger (BBO# 654357)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts 02109-1775
(617) 535-4000

Ημερομηνία: 15 Ιουνίου, 2005

34

## ΠΙΣΤΟΠΟΙΗΤΙΚΟ ΥΠΗΡΕΣΙΑΣ

Ο κάτωθι υπογεγραμμένος Benjamin A.Goldberger, δηλώ υπευθύνως, ότι την 15$^{ην}$ Ιουνίου, 2005, το προηγούμενο έγγραφο διεβιβάσθη διά κατεπείγοντος ταχυδρομείου προς τον δικηγορικόν οίκον τον αναλαβόντα την υπόθεση της Κότβα α.ε.

/s/Benjamin A. Goldberger_____
Benjamin A. Goldberger

35

1

ΕΚΘΕΣΗ 1 (EXHIBIT 1)
ΠΕΡΙΛΗΨΗ ΤΩΝ ΑΝΤΑΠΑΙΤΗΣΕΩΝ

| Κατηγορία<br><br>Εναγό-<br>μενος | I<br>Κατάχρηση<br>Διαδικασίας<br>Weiss και<br>WAM | II<br>Συνωμοσία<br>Weiss,<br>WAM, K T<br>και CVFI | III<br>Σφετερισμός<br>K T και<br>CVFI | IV<br>Παράνομος<br>Πλουτισμός<br>K T και<br>CVFI<br>K T και<br>CVFI | V<br>Παράβαση<br>Καθήκοντος/<br>Κατάχρηση<br>Ελέγχου K T<br>και CVFI | VI<br>Εποικοδο-<br>μητικό<br>Τράστ<br><br>K T και<br>CVFI | VII<br>Αθέμιτες<br>Εμπορικές<br>Πρακτικές<br>Weiss,<br>WAM, K T<br>και CVFI | VIII<br>Δικαστική<br>Απόφαση<br>K T και<br>CVFI |
|---|---|---|---|---|---|---|---|---|
| Κόϊβα α.ε. | X | X | | | | X | X | X |
| Forminster | X | X | X | X | X | X | X | X |
| SPV CO | X | X | X | X | | X | X | X |
| Benda | X | X | X | X | X | X | X | X |
| Harazim | X | X | X | X | X | X | X | X |
| John Does 1-5 | X | X | X | X | | X | X | X |

2

ΜΑΡΤΥΡΙΕΣ ΑΠΟ ΤΟ ΛΙΧΤΕΝΣΤΑΪΝ ΓΙΑ ΤΟ ΤΡΟΠΟ ΔΙΑΦΥΓΗΣ ΚΕΦΑΛΑΙΩΝ
("TUNNELING") ΤΗΣ TREND

**Σύνθημα.: PIANO BLACK**
Περιγραφή ενός πρωτότυπου τρόπου, πως να υπεξαιρέσεις, με διαφυγή χρημάτων μέσω
«τούνελ» (tunnel) ένα επενδυτικό κεφάλαιο: Το ΤΥΝΤΕΣ (TYDEN) έχει αποδεικτικά
στοιχεία, που υποστηρίζουν τις υπόνοιες, ότι η φερόμενη ως «πώληση»  στο εξωτερικό
του Πολυκαταστήματος Κότβα  (Department Store Kotva) δεν ήτανε τίποτε άλλο παρά
ένα ψεύτικο κόλπο.

ΠΕΡΙΟΔΙΚΟ ΤΥΝΤΕΝ (TYDEN) 04/1998

Η περίπτωση του Πολυκαταστήματος Κότβα (με αγοραία αξία γύρω στα 2,885
δισεκατομμύρια Τσεχικές Κορώνες) αποτελεί μιά μάχη απροβλέπτων διαστάσεων γιά
την Τσεχική Δημοκρατία. Η ιστορία διανθίζεται με άτομα που πήγαν φυλακή, δεκάδες
μηνύσεων στα δικαστήρια, εκστρατείες πολύ γνωστών γραφείων Δημοσίων Σχέσεων,
καθώς και μια ασυνήθιστη συγκέντρωση  των πιο διάσημων Τσέχων δικηγόρων. Πριν
σας παρουσιάσουμε την αναπάρασταση της υποθέσεως, με βάση τα τελευταία ευρήματα
της ΤΥΝΤΕΝ, ας συγκεντρωθούμε στα βασικά σημεία της υποθέσεως:  η εταιρεία
Kralovehradecka brokerska, γνωστή και ως (ΚΗΒ), αποπειράθηκε, όπως αποδεικνύουν
τα στοιχεία που ήρθαν στην κατοχή μας, να πάρει την πλειοψηφία των μετοχών της
Κότβα από την Trend και να την μεταβιβάσει, μέσω μιάς ξένης εταιρείας, προς όφελος
μη καθορισμένων εισέτι  προσώπων ή εταιρειών. Η υπόθεση είναι μία από τις πιό
πολύπλοκες στήν σύγχρονη ιστορία του εμπορικού δικαίου της χώρας μας.

**Περιγραφή της υπόθεσης Trend και Kotva**

Το αμοιβαίο επενδυτικό κεφάλαιοΤρεντ (Trend) (ιδρυμένο από την τράπεζα Skala Bank
και την εταιρεία Montovane stavby) εκμεταλλεύτηκε τις πολιτικές γνωριμίες του Michael
Kocab (Μιχαήλ Κόκαμπ ), και σε συνδυασμό με τα επιχειρηματικά ταλέντα του Martin
Kratochvil (Μάρτιν Κρατοτσβίλ) είχε μια σοβαρή επιτυχία στην διαδικασία της
ιδιωτικοποίησης με επενδυτικά κουπόνια (voucher privatization). Οι πρώτες
δραστηριότητες που θεωρήθηκαν σαν απειλή από τα «ιδρυτικά στελέχη» του κεφαλαίου,
ήταν οι δραστηριότητες που είχαν σχέση με τις ομάδες μικρών μετόχων και τήν αγορά
και συγκέντρωση των μετόχων. Η Τρεντ έκανε προσπάθεια να εμποδίσει τη δημιουργία
ενός ισχυρού γκρουπ από την μειοψηφία των μετόχων, που θα είχε την δύναμη να
αντικαταστήσει τα θεσμικά σώματα του κεφαλαίου, που το αποτελούσαν «τα ιδρυτικά
στελέχη», με την προσφορά πολύ καλών μερισμάτων (πιστεύοντας ότι οι αρχικοί
μέτοχοι, ικανοποιημένοι από τέτοια  μερίσματα, δεν θα πωλούσαν τις μετοχές τους).
Όμως η τακτική αυτή δεν απεδείχθη πολύ αποτελεσματική και σε λίγους μήνες οι
κάτοχοι των κουπονίων επενδύσεως (δηλ. οι μέτοχοι) άρχισαν να πωλούν τις μετοχές
τους στον επενδυτή, που άρχισε να τις συσσωρεύει και πάλι (η εταιρεία Czech Value
Fund, η οποία πρόκειται να παίξει ένα σημαντικό ρόλο στην υπόθεση αυτή αργότερα).

Τον Φεβρουάριο του 1995, η νέα επενδυτική εταιρεία Trend a.s., ιδρύθηκε με ένα
ιδρυτικό κεφάλαιο 1,000,000 CZK (Κορωνών Τσεχίας). Μεταξύ των μετόχων της ήταν

1

και ο Michael Kocab και Martin Kratochvil. Η εταιρεία αυτή ανέλαβε την διαχείρηση της ΤΡΕΝΤ. Η δημιουργία και ύπαρξή της, όμως, μοιάζουν να έχουν έναν ειδικό σκοπό, αφού οι μετοχές  της διαχειρίστριας εταιρείας ΤΡΕΝΤ, επωλήθηκαν, στις 2 Αυγούστου, 1995, στην Kralovehradecka brokerska, έναντι της τιμής των 318,365,000 CZK (Κορωνών Τσεχίας), της οποίας κύριος μέτοχος ήταν ο Miroslav Halek (Μιροσλάβ Χάλεκ), (ο οποίος ευρίσκεται υπό κράτηση σήμερα). Το κέρδος του Kocab από αυτή την συναλλαγή ανήλθε στο ποσό των 36,142,000 CZK (Κορωνών Τσεχίας) . Το γεγονός ότι η μεταβίβαση αυτή ήταν το πρώτο και κύριο απόπημα κατά των μετοχών της Trend, προκύπτει από την δημόσια ανακοίνωση του Kocab τον Νοέμβριο του 1997: «Σε περίπτωση που τα κεφάλαια της μειοψηφίας των μετόχων δεν επιστραφούν σε αυτούς, θα πάρω μεν αυτό το ποσό χρημάτων, αλλά θα το προσφέρω για κάποιο φιλανθρωπικό σκοπό, που θα έχει καλό έλεγχο».

**Διαφυγή κεφαλαίων μέσω «τούνελ» (Tunnel) από την αρχή**

Οι νέοι διαχειριστές της Trend από την  Kralovehradecka brokerska (KHB) έκαναν την πρώτη τους ύποπτη συναλλαγή με τις μετοχές, τρεις μόνον εβδομάδες μετά από την ανάληψη της διοίκησης της διαχειρίστριας εταιρείας. Με τρία συμβόλαια επώλησαν τις επικερδείς μετοχές της Trend (Telecom, Chemopetrol και Synthesia) στην εταιρεία Consult Invest (της οποίας το αφεντικό ευρίσκεται σήμερα υπό κράτηση) για 487 εκατομμύρια Τσέχικες Κορώνες.  Ο αγοραστής πλήρωσε μόνον την πρώτη δόση (135 εκατομμύρια), χρωστώντας τα υπόλοιπα μέχρι σήμερα – με αποτέλεσμα η Trend να χάσει 352 εκατομμύρια. Επί πλέον, κράτησε τις μετοχές που αγόρασε μόνον για μιά-δυό μέρες και μετά τις ξαναπούλησε σε εταιρεία που είχε δεσμούς με την Kralovehradecka brokerska.

Η απλή σύγκριση των αριθμών οδηγεί λογικά και άμεσα στην υποψία, ότι αυτή η συναλλαγή είχε σκοπό να καλύψει την επένδυση της KHB, για την αγορά της διαχειρίστριας επενδυτικής εταιρείας Trend, περιλαμβανομένης και μιάς προμήθειας 10%. Πρέπει να αναφέρουμε εδώ, ότι τότε ήταν ακόμη στο Διοικητικό Συμβούλιο της Trend, οι Michael Kocab και Martin Kratochvil, αλλά και οι δύο ισχυρίζονται, ότι ευρίσκονταν σε διακοπές στο εξωτερικό  και δεν ευρίσκονταν σε επαφή, όταν το κεφάλαιο πωλούσε τις επικερδείς αυτές μετοχές.

**Τα Μάτια στην Kotva**

Μέχρι το τέλος του 1995, η Trend έλεγχε γύρω στο 20% των μετοχών της Κότβα. Ο Χάλεκ, που ήταν τότε όχι μόνον ο κάτοχος της διαχειρίστριας εταιρείας, αλλά  είχε ήδη την θέση του Προέδρου του Διοικητικού Συμβουλίου της ίδιας της Trend, κατάφερε σταδιακά να συγκεντρώσει το 65% των μετοχών της Κότβα,  μέσω πολλών ειδών διαφορετικές εταιρείες.

Το προαναφερθέν Czech Value Fund (CVF) είχε επιδείξει ενδιαφέρον για το Πολυκατάστημα και ήδη κατά την διάρκεια του 1996 αγόρασε το 37% των μετοχών της Trend στην κεφαλαιαγορά για 10 περίπου εκατομμύρια δολλάρια. Την 1η Νοεμβρίου, οι αντιπρόσωποι της CVF, John Moffit και Michael Blum, εξελέγησαν στο Διοικητικό

2

Συμβούλιο του Κεφαλαίου (Board of Directors of the Fund). Μιά εβδομάδα αργότερα, όταν ανακάλυψαν ότι τα κεφάλαια είχαν ήδη διαφύγει στο εξωτερικό, το Υπουργείο Οικονομικών κάτω από πίεση, επέβαλε αναγκαστική διαχείριση στη Trend. Ο διευθυντής στο Λονδίνο της εταιρείας που έλεγχε την CVF, ο κ. Kingsnorth, ανέφερε κάποτε, ότι δεν είναι μόνον το Διοικητικό Συμβούλιο υπό την αρχηγία του Halek, που θα πρέπει να θεωρηθεί υπεύθυνο για την κακή διαχείριση του κεφαλαίου, αλλά και το προηγούμενο Διοικητικό Συμβούλιο, δηλαδή ο Kocab και οι συνεταίροι του.

**Πάγωμα Λογαριασμού.**

Ο John Moffit, ο διευθυντής της CVF, αντεπιτίθεται με την βοήθεια του Michael Kocab και του δικηγορικού οίκου Vana, Pergl and Partner ή ΑΚ VPP το 1997. Οι λογαριασμοί της Trend παγώνουν, αλλά η διαταγή για το πάγωμα φθάνει πολύ αργά στο Prague Security Center (Κέντρο Χρηματιστηριακών Τίτλων της Πράγας), και δίνει αρκετό χρόνο στους Halek and Co., να επωφεληθούν του χρόνου και να πωλήσουν γύρω στο 14% των μετοχών της Κότβα από τον παγωμένο λογαριασμό, σε φιλικές τους εταιρείες, μέχρι το τέλος Ιανουαρίου, 1997. Εκτός τούτου, συνέχισαν να διακινούν άλλες μετοχές μέχρις ότου τελικά κατάφεραν, στις 30 Ιανουαρίου, 1997, να πωλήσουν το μεγαλύτερο μέρος του 56% των μετοχών της Κότβα (Kotva) στην Κυπριακή εταιρεία Forminster Enterprises Limited ή FEL, για 80 εκατομμύρια Κορώνες Τσεχίας. Στις αρχές Μαρτίου ετέθηκαν τελικά υπό κράτηση και οι κυβερνητικοί επίσημοι κατάφεραν να παγώσουν το 65% των μετοχών της Κότβα. Αυτό ήταν η απαρχή μιάς βίαιης και άνευ προηγουμένου δικαστικής διαμάχης μεταξύ της FEL (ΦΕΛ) και της Czech Value Fund.

**Η μάχη των δικηγόρων**

Οι δικηγόροι από την ΑΚ VPP, που προσελήφθησαν από την μειοψηφία των μετόχων, την Czech Value Fund, εισέρχονται στο θεσμικό σώμα της Trend. Καθίστανται θεσμικοί αντιπρόσωποι τον Απρίλιο, αλλά ταυτοχρόνως οι δικηγόροι Robert Pergl και Radek Blaha της ΑΚ VPP ενεργούν ως δικηγόροι της Trend στη γενική συνέλευση της Κότβα και καταφέρνουν να νικήσουν τους αντιπροσώπους της FEL (ΦΕΛ), σε μία κατά μέτωπον επίθεση. Όπως αναφέρει ο Pergl σε μια συνέντευξή του στήν Pravo (Πράβο, εφημερίδα) στις 27 Οκτωβρίου, 1997: «και τώρα μιλούσαμε έτσι, ώστε πνίγαμε ο ένας την φωνή του άλλου, εγώ και ο Πρόεδρός τους. Και τελικά εγκατέλειψε σε μία ώρα –δεν είχε το θάρρος να συνεχίσει». Ως αποτέλεσμα τούτου, αναδύθηκαν δύο Διοικητικά Συμβούλια γιά την διοίκηση της Κότβα. Ο Pergl συνέταξε ένα πληρεξούσιο γιά τον εαυτό του.

Τον Ιούνιο του 1997, ο νέος κάτοχος του 56% των μετοχών της Κότβα, η Κυπριακή FEL (ΦΕΛ), διορίζει ως δικηγόρο της τον δικηγορικό οίκο Petr Toman and Partners. Όμως, το Διοικητικό Συμβούλιο που είχε διορισθεί από την μειοψηφία των μετόχων, δηλ. το Czech Value Fund, είχε ήδη εγγραφεί στο Εμπορικό Ληξιαρχείο (Commercial Register) στις 4 Αυγούστου.

Τον Αύγουστο του 1997, ένα άλλο ύποπτο συμβόλαιο υπεγράφη: το νεώτερο μέλος του δικηγορικού οίκου Toman, ο πρώην διευθυντής της Security and Information Agency

3

(Γραφείο Ασφαλείας και Πληροφοριών) της Τσεχικής Δημοκρατίας  Stanislav Devaty, αγοράζει την Κότβα σαν ακίνητο, από το παλαιό Διοικητικό Συμβούλιο του Χάλεκ, για 2,885 δισεκατομμύρια Τσέχικες Κορώνες (αυτό επετεύχθη με την εγγραφή του στο Υποθηκοφυλακείο της Πράγας, και  μέρος της συναλλαγής ήταν η ανακοινωθείσα απόσυρσις του συμβολαίου μετά  την εκπλήρωση ωρισμένων όρων). Σκοπός  της πράξης αυτής ήταν η προσπάθεια της Κυπριακής εταιρείας, που αντιπροσωπευόταν από τον δικηγορικό οίκο Toman, να προλάβει οποιαδήποτε χειραγώγηση του ακινήτου της Κότβα. Τον Νοέμβριο του 1997, το συμβόλαιο αυτό ακυρώθηκε, αφού εξέλιπε θεωρητικά η ύπαρξη κινδύνου παράνομης διάθεσης του ακινήτου.

## Τραπεζιτικά  Έγγραφα

Αλλά ας επανέλθουμε στο κύριο ερώτημα της νομιμότητας των πιό σπουδαίων αποφάσεων που ελήφθησαν, καθώς επίσης και γιά το τι πραγματικά  ενδιεφερόταν η FEL (ΦΕΛ).

Τον Δεκέμβριο του 1997 ο  Άρειος Πάγος (Supreme Court) της Πράγας κατάργησε την εγγραφή του μειοψηφούντος Διοικητικού Συμβουλίου και το νέο Διοικητικό Συμβούλιο εξελέγη μέσα σε μιά εμπρηστική γενική συνέλευση, διευθυνόμενη από τον δικηγόρο Tomas Sokol (διορισμένο από τον πλειοψηφούντα μέτοχο της Trend, δηλ. την Κυπριακή εταιρεία FEL (ΦΕΛ). Το νέο Διοικητικό Συμβούλιο απαρτιζόταν εν μέρει από αντιπροσώπους της εταιρείας Czech Investment Holding ή CIH. Αυτό ήταν τελείως απροσδόκητο. Η CIH αντιπροσωπευόταν από έναν άλλο μεγάλο δικηγορικό οίκο, τον Kriz, Belina & Co. Αλλά πως μπήκε στο παιχνίδι η CIH; Η CIH αγόρασε δικαιώματα (options) γιά τις μετοχές της Κότβα από την Κυπριακή FEL (ΦΕΛ). (Εδώ θα πρέπει να αναφερθεί, ότι τέτοιοι γνωστοί δικηγόροι όπως ο Toman και ο Lzicar ήταν παρόντες σ' αυτή τη γενική συνέλευση –δημιουργώντας έτσι μιά συγκέντρωση των πιό διάσημων Τσέχων δικηγόρων ανά τετραγωνικό μέτρο, πράγμα πρωτοφανές στα χρονικά της σύγχρονης Τσεχικής ιστορίας).

Η CIH είναι ένας καθαρώς Τσέχικος επενδυτής, γιά τον οποίον η επένδυση στις μετοχές της Κότβα αντιπροσωπεύει  μια πράξη μέ υποφερτό ρίσκο. Οι αντιπρόσωποί της θα παραμείνουν στα θεσμικά σώματα της Κότβα τουλάχιστον, έως ότου ληφθεί η απόφαση γιά το ποιός είναι ο κάτοχος των παγωμένων μετοχών της Κότβα. Ο ρόλος της CIH στις συναλλαγές γύρω από την Κότβα μοιάζει να είναι σύμπτωση μάλλον παρά ο,τιδήποτε άλλο.

## "PIANO BLACK" (ΜΑΥΡΟ ΠΙΑΝΟ)

Η γενική συνέλευση της Κότβα τον Δεκέμβριο δεν πήγε πολύ καλά γιά την Czech Value Fund. Λίγες μέρες αργότερα, μιά ανακοίνωση του δικηγόρου Jirkova του δικηγορικού οίκου Vana, Pergl and Partners εμφανίζεται στον τύπο (LN (ΛΝ), 12 Δεκεμβρίου, 1997), δηλώνοντας ότι έχουν στη κατοχή τους στοιχεία που αποδεικνύουν, ότι η Κυπριακή FEL (ΦΕΛ), δεν είναι τίποτε άλλο παρά το «χρηματοκιβώτιο» του Χάλεκ. Η ΤΥΝΤΕΝ (TYDEN) κατάφερε να αποκτήσει μερικά από τα έγγραφα που αποδεικνύουν κάτι τέτοιο.

Εάν αποδειχθεί η αυθεντικότητά τους, τότε οι δικηγόροι θα έχουν επιτύχει ένα εντυπωσιακό κατόρθωμα (ας μήν ξεχνάμε, ότι ο ίδιος δικηγορικός οίκος έφερε στο φως την υπόθεση της διαφυγής των χρημάτων της CS Funds, αποκαλύπτοντας και περιγράφοντας επακριβώς τον τρόπο διαφυγής των κεφαλαίων, που εχρησιμοποιήθη προς αυτό το σκοπό).

Στην περίπτωση της Trend, αυτό σημαίνει, ότι κατώρθωσαν να ξεπεράσουν το τραπεζιτικό απόρρητο της τράπεζας LGT Bank του Λίχτενστάιν, όπου η Κυπρική FEL (ΦΕΛ) έχει τον λογαριασμό της. Σύμφωνα με τις κατηγορίες των, ο Χάλεκ υπετίθετο ότι θα «εμίσθωνε» την FEL (ΦΕΛ) για τις επιχειρήσεις του, πράγμα που φαινόταν από το πληρεξούσιο που έδωσε η FEL (ΦΕΛ) στον Χάλεκ γιά να διαχειρίζεται τον λογαριασμό της, περιλαμβανομένου και του συνθήματος "PIANO BLACK", για τηλεφωνικές τραπεζιτικές συναλλαγές. Είναι μάλλον απίθανο ένας Κύπριος πολίτης να διάλεγε σύνθημα συναλλαγών στην τσεχική γλώσσα.

Όπως φαίνεται αυτό το επίτευγμα θα οδηγήσει στη διαλεύκανση της όλης υποθέσεως. Ο Χάλεκ και σία, πιθανώτατα εχρησιμοποίησαν την FEL (ΦΕΛ) για να διακινήσουν κεφάλαια από την Trend, προς όφελος των διαφόρων εταιρειών που ελέγχουν. Ας ελπίσουμε, ότι οι Άγγλοι του Czech Value Fund, που έχουν πληρώσει 10 εκατομμύρια Τσέχικες Κορώνες για τις μετοχές τους στην Trend, καθώς και οι υπόλοιποι επενδυτές, έχουν τελικά αρχίσει να διαβλέπουν την πιθανότητα ανακτήσεως μέρους των επενδύσεων που έκαναν στις μετοχές του Κεφαλαίου αυτού. Αν και η ιστορία δεν έχει ακόμη τελειώσει και επί πλέον οι δικηγόροι που ασχολούνται με την υπόθεση πιστεύουν, ότι μπορεί να υποβληθούν 50 ακόμη μηνύσεις και να εκδικαστούν.

JAROMIR PISKOR
(ανεξάρτητος δημοσιογράφος)

5

**Η περίπτωση της ΤΡΕΝΤ –όλοι ξέρουν τι συνέβη, αλλά  τα κεφάλαια πολύ δύσκολα θα αποκατασταθούν.**

Slovo, ημερήσια εφημερίδα. 18 Σεπτεμβρίου, 1997. –Πράγα

Η υπόθεση της Τρέντ φαίνεται να είναι ο ακρογωνιαίος λίθος, όσον αφορά την φυγάδευση επενδυτικών κεφαλαίων. Εκ πρώτης όψεως, η υπόθεση αυτή φαίνεται να ενισχύει την αισιοδοξία, αφού οι κυριώτεροι παίκτες  που συνδέονται με την απάτη της Kralovehradeccka Brokerska ευρίσκονται υπό κράτηση, η πλειονότητα των χρημάτων που κατεχράσθησαν είναι παγωμένη στους λογαριασμούς που τηρούνται στο Κέντρο Χρηματιστηριακών Τίτλων (Securities Centre) και η πλειονότητα των μετόχων της Τρεντ ανέλαβε τον έλεγχο του Πολυκαταστήματος της Κότβα, η οποία αντιπροσώπευε  το κυριώτερο κεφάλαιο της Τρεντ. Είναι, όμως, όλα τόσο καθαρά και θα πάρουν οι προηγούμενοι μέτοχοι τα λεφτά τους πίσω;

Η Τρεντ, από την οποία οι διευθυντές της «απεστράγγισαν» 1.25 δισεκατομμύρια Τσέχικες Κορώνες (CZK), ήταν το πρώτο κεφάλαιο επενδύσεων που ετέθη υπό αναγκαστική διαχείριση. Όμως τα βήματα που έγιναν στα επενδυτικά κεφάλαια από την Kralovehradecka  Brokerska κάθε άλλο παρά μεμονωμένα ήταν στην Τσεχική Δημοκρατία. *«Τέτοιες συναλλαγές ήταν πολύ κοινές τότε. Δεκάδες παρόμοιες περιπτώσεις – και δεν θα μού έκανε έκπληξη, αν ήταν εκατοντάδες-- εγίνονταν, χωρίς καν να τις αντιληφθεί κανείς»,* διαβεβαιώνει ο αναλυτής του Χρημαστιστηρίου, Michael Konecny από την Komero.

**Τρώγοντας έρχεται η όρεξη**

Η Τρεντ ήταν ένα από τα πλέον επιτυχημένα κεφάλαια επνδύσεων, στο χώρο των κουπονίων (δελτίων) ιδιωτικοποιήσεων. Στα δύο κύματα ιδιωτικοποιήσεων που έγιναν, πάνω από 100.000 DIKS (ΔΙΚΣ), (όνομα  για τους κατόχους επενδυτικών κουπονίων, σχόλιο μεταφραστού) είχαν βάλει τις μετοχές τους σ' αυτό το επενδυτικό κεφάλαιο, το οποίο είχε ενεργητικό 1.3 δισεκατομμύρια Τσέχικες Κορώνες. Όμως πολύ γρήγορα μετά την αγορά της Τρεντ, που ανήκε στον Michael Kocab, από τον τον Miroslav Halek (Μιροσλάβ Χάλεκ)  και την εταιρεία Kralovehradecka brokerska, το ενεργητικό του κεφαλαίου μειώθηκε στο ένα εικοστό. Οι διευθυντές του κεφαλαίου επενδύσεων πιθανώς κατάφεραν να το φέρουν σ' αυτό το σημείο χωρίς δυσκολίες. Όλο το γκρούπ γύρω από την Kralovehradecka brokerska μπορεί να ευγνωμονεί την πλεονεξία του, γιά το ότι εκράτησε το κεφάλαιο αυτό υπό την επίβλεψή του για περισσότερο από ένα εξάμηνο.

Όπως η όρεξη ανοίγει με το φαγητό, ο κ. Χάλεκ προσπάθησε να πουλήσει το άδειο κέλυφος του επενδυτικού κεφαλαίου σ' ένα ξένο επενδυτή –το British Czech Value Fund, που ανήκε στον όμιλο των British Regents Funds (Βρεττανικά Επενδυτικά Κεφάλαια Regents). Πρίν από αυτό, η εταιρεία επενδύσεων Prag Invest (Επενδύσεις Πράγας) είχε ήδη αρχίσει να αγοράζει μετοχές της Τρεντ από την μειοψηφία των μετόχων, γι' αυτόν τον επενδυτή. Η Prag Invest προειδοποίησε τους Βρεττανούς επενδυτές για την άσχημη κατάσταση της Τρεντ. Το κεφάλαιο όμως ήταν σε πολύ χειρότερη κατάσταση από ό,τι περίμεναν οι Βρεττανοί επενδυτές, και συνεπώς,

6

εμίσθωσαν δικηγόρους και άρχισαν αμέσως να βομβαρδίζουν τις αρμόδιες κρατικές υπηρεσίες.

### Για να κάνουν την Κυβέρνηση να κινηθεί

*«Οι μέτοχοι δεν ήταν σε θέση να κάνουν απολύτως τίποτε. Το Υπουργείο ίσως να έβαζε το κεφάλαιο αυτό υπό αναγκαστική διαχείριση, αλλά τίποτε περισσότερο»* λέει ο Rober Pergl, του δικηγορικού οίκου Vana, Pergl and Partners, ο οποίος ανέλαβε την αντιπροσώπευση του Czech Value Fund και του «φυγαδευμένου» Τρεντ. *«Η υπόθεση του Τρεντ είναι απολύτως καθαρή. Ήταν αποτέλεσμα απόλυτης έλλειψης επαγγελματισμού και οι απατεώνες είναι σήμερα πολύ πιο προσεκτικοί»* υποστηρίζει.

*«Ήταν τρομερά δύσκολο να κάνεις το κράτος να ενεργήσει και να το αναγκάσεις, όπως και όλες τις άλλες υπηρεσίες, όπως, για παράδειγμα, την υπηρεσία εποπτείας της κεφαλαιαγοράς, να χειρισθεί αυτή την υπόθεση», λέει. «Αρχικά, οι κρατικές υπηρεσίες ήταν σε αμηχανία. Δεν ήξεραν απολύτως τι να κάνουν. Όμως γρήγορα η κατάσταση άλλαξε»*, προσθέτει. Αποτέλεσμα των προσπαθειών των μετόχων ήταν, ότι στις αρχές Μαΐου, το δικαστήριο έθεσε υπό κράτηση τους πρώτους πέντε εμπλεκόμενους στην απάτη και ένα μήνα αργότερα δύο άλλους συγκατηγορούμενους. Το όλο έργο αποκαλύψεως της απάτης ήταν, όμως, μερικές φορές ασύλληπτα περιπεπλεγμένο από το δικαστήριο, το οποίο, γιά παράδειγμα, αποφάσισε, στο τέλος Ιανουαρίου, να παγώσει τις μετοχές της Sokolovska uhelna και της Κότβα στους λογαριασμούς της εταιρείας IFM (ΙΦΜ), αλλά έδωσε την εντολή παγώματος μόνον στην εταιρεία ΙΦΜ και ξέχασε να δώσει την ίδια εντολή και στο Χρηματιστήριο (Securities Centre). Κατά συνέπειαν οι μετοχές μπορούσαν να είχαν εξαφανισθεί την ίδια ημέρα, από το λογαριασμό. Μέσα σε λίγες μέρες το δικαστήριο έκανε πάλι ένα σοβαρό λάθος για δεύτερη φορά, όταν διέταξε, κατά παράκληση της Αστυνομίας, το πάγωμα όλων των λογαριασμών της ΚΗΒ και των εταιρειών που είχαν δεσμούς μαζί της. Όμως εμπέρδεψε τον αριθμό ενός από τους λογαριασμούς, όπου ήταν κατατεθειμένα, κατά σύμπτωση, όλα τα υπό εξέτασιν ποσά – δηλαδή μερικές εκατοντάδες εκατομμυρίων Τσεχικές Κορώνες. Όμως το λάθος αυτό κατέστη δυνατό να διορθωθεί .

### Το τούνελ καταλήγει στην Κύπρο

Το πιο πολύτιμο κομμάτι της Τρεντ το αντιπροσώπευε η πλειοψηφία του πακέτου μετοχών της ΚΟΤΒΑ. Οι μετοχές αυτές εξαφανίσθηκαν επίσης. Όμως το δικαστήριο τελικά κατάφερε να παγώσει αυτές τις μετοχές στο λογαριασμό της κυπριακής εταιρείας Forminster Enterprises Limited, (FEL) ή (ΦΕΛ).

Ο τρόπος αποκτήσεως από την ΦΕΛ των χρημάτων για την αγορά των μετοχών της Κότβα είναι ιδιαίτερα αξιοσημείωτος: Η ΦΕΛ εφρόντισε για την μεταφορά των μετοχών της Sokoloskva uhelna από την ΚΗΒ στην Atlanta Safe και απέκτησε από αυτή την μοναδική εμπορική πράξη το απίστευτο κέρδος των 135 εκατομμυρίων Τσεχικών Κορωνών (CZK) (βλέπε πίνακα). Μετά την αγορά του 55.73% των μετοχών της Κότβα γιά λιγώτερο από 83 εκατομμύρια CZK, πάνω από 50 εκατομμύρια CZK έμειναν στην ΦΕΛ. *«Είναι αλήθεια ότι ένα κέρδος 135 εκατομμυρίων CZK από μια συναλλαγή είναι*

*ασυνήθιστο, αλλά δεν απαγορεύεται από το νόμο. Όμως ο Νόμος για παράνομο ξέπλυμα χρήματος θα μπορούσε να έχει εφαρμογή σ' αυτή την συναλλαγή και το πρόσωπο που έκανε αυτή τη συναλλαγή, θα έπρεπε να είχε αναφέρει αμέσως αυτό στο Υπουργείο Οικονομικών», πιστεύει ο αναλυτής Κοπεςνψ.*

Πιθανώς οι μετοχές της ΚΟΤΒΑ να επρόκειτο να μεταβιβαστούν περαιτέρω, όμως πριν γίνει αυτό, το δικαστήριο είχε τελικά παγώσει τον λογαριασμό της ΦΕΛ. Παρ' όλα αυτά, η ΦΕΛ, η οποία εν τω μεταξύ είχε αγορασθεί από την Γαλλική εταιρεία DUNA, με ολικό ενεργητικό 200,000 CZK, υποστηρίζει, ότι απέκτησε τις μετοχές μέσω νόμιμης αγοράς και ότι δεν έχει κανένα δεσμό με την ΚΗΒ, η οποία «φυγάδευσε» τα κεφάλαια της Τρεντ.

Όμως οι χρηματιστές έχουν διαφορετική γνώμη. *«Οι συναλλαγές αυτές αποδεικνύουν έναν εμφανή δεσμό μεταξύ ΚΗΒ και ΦΕΛ»*, υποστηρίζει ο κ. Pergl και τονίζει επίσης, ότι η πλειονότητα του πακέτου των μετοχών επωλήθη στη μισή τιμή, που επωλούντο τότε οι μετοχές στο Χρηματιστήριο. *«Όσο μεγαλύτερο είναι το πακέτο μετοχών, τόσο υψηλότερη είναι η μέση τιμή κάθε μετοχής. Ούτε ένα πολλαπλάσιο της τιμής της στο Χρηματιστήριο είναι κάτι το εξαιρετικό», συμφωνεί ο Κοπεςνψ.*

**Λόμπυ ή πολιτικό καθήκον;**

Εν τω μεταξύ, οι κρατικές υπηρεσίες άρχισαν τελικά να εργάζονται πιο γρήγορα, το οποίο αποδεικνύεται, μεταξύ άλλων, από τους περισσότερο από μία ντουζίνα παγωμένους λογαριασμούς με μετοχές, οι οποίοι είχαν προέλευση την Τρεντ. Όμως, η πλειονότητα των μετόχων υποστηρίζουν ότι όλα αυτά οφείλονται στον Michael Kocab, ο οποίος εκμεταλλεύτηκε τις καλές του διασυνδέσεις. «Το δικαστήριο υπέκυψε, μετά από την συνεχή πίεση των μέσων μαζικής ενημέρωσης γιά πάνω από ένα χρόνο και την μονομερή περιγραφή της καταστάσεως, ότι δηλαδή οι ήρωες της Τρεντ σώζουν τους μειοψηφούντες μετόχους. Στην ουσία, επιδιώκουν την ανάληψη του ελέγχου της ΚΟΤΒΑ, η οποία αγοράσθηκε νόμιμα από τη ΦΕΛ», υποστηρίζει ο Petr Toman. «Τα δικαστήρια αναμφίβολα δεν έδρασαν υπέρ ημών και διέπραξαν πολλά λάθη», ανταπαντάει ο Pergl και αναφέρει τα δύο προαναφερθέντα λάθη του εμποροδικείου στη Hradec Kralove.

Ο Michael Kocab δεν αρνείται, ότι διαπραγματεύθηκε για την ΤΡΕΝΤ με τους υπουργούς Ruml και Parkanova και με τον Εισαγγελέα του Αρείου Πάγου κ. Hrboticky, όμως αμύνεται κατά των κατηγοριών, ότι έκανε κατάχρηση των διασυνδέσεών του. «Δεν είναι λόμπυ, αλλά πολιτικό καθήκον. Όταν κάποιος βλέπει έναν κλέφτη, έχει υποχρέωση να τον καταγγείλει. Δεν μου προξενεί ευχαρίστηση να είμαι μπλεγμένος με αυτή την υπόθεση, πρέπει να καταλάβουμε, όμως, ότι όπως στρώνουμε το κρεββάτι μας έτσι και θα κοιμηθούμε», λέει ο Kocab και προσθέτει ότι εάν δεν έκανε τίποτα, σίγουρα θα εκατηγορείτο για αδράνεια. «Παίξαμε πάντοτε τίμια και προσπαθήσαμε να δώσουμε την περιουσία πίσω σ' αυτούς που εληστεύτηκαν», συμπληρώνει.

Μάχη για την ΚΟΤΒΑ

Εν τω μεταξύ, η μάχη για την Τρεντ μεταμορφωνόταν σίγουρα σε μάχη για την ΚΟΤΒΑ.Την άνοιξη, εντός μικρού χρονικού διαστήματος, έγιναν δύο γενικές συνελεύσεις του πολυκαταστήματος, κατά τις οποίες δύο ομάδες μετόχων αρνούνταν να αναγνωρίσουν η μία την άλλη και εξέλεξαν τα δικά τους Διοικητικά Συμβούλια. Η μειονότητα των μετόχων κατηγορεί, ότι η ΦΕΛ δεν ανακοίνωσε, μετά την απόκτηση της πλειοψηφίας του πακέτου των μετοχών, ότι ενεργούσε σε συμφωνία με την ΚΗΒ και ταυτοχρόνως δεν προσέφερε προς το κοινό την αγορά των μετοχών, και γι' αυτό το λόγο η ΦΕΛ έχασε όλα τα δικαιώματα ψήφου γιά την περίοδο ενός έτους. Η ΦΕΛ, όμως, ανταπαντάει, ότι σε μιά τέτοια περίπτωση θα έχανε το δικαίωμα γιά τις μετοχές που ξεπερνούσαν το 50%. Πλήρης άρνηση της δυνατότητας ασκήσεως των δικαιωμάτων ενός μετόχου είναι μιά πολύ σκληρή κύρωση. «Αυτή η υπόθεση δημιουργεί προηγούμενο, μιά και κανένα δικαστήριο δεν έχει ποτέ εκδικάσει μια τέτοια υπόθεση», υποστηρίζει ο Θωμάς Πέλικαν (Tomas Pelikan), που ειδικεύεται στο εμπορικό δίκαιο. Σύμφωνα με αυτόν, οι σχετικοί νόμοι δεν είναι τελείως σαφείς σ' αυτή την περίπτωση. Παρ' όλα αυτά, το δικαστήριο δεν έχει ακόμη αποφασίσει γιά την κατάργηση της ασκήσεως των δικαιωμάτων των μετόχων της ΦΕΛ και αρνήθηκε το αίτημα της μειοψηφίας των μετόχων σχετικά με την επίδοση σχετικής εντολής, που θα αφαιρούσε από την ΦΕΛ την δυνατότητα να ψηφίσει κατά την χθεσινή γενική συνέλευση.

Και οι δύο πλευρές έχουν υποβάλει αρκετές μηνύσεις, η μία εναντίον της άλλης, οι οποίες θα πρέπει τώρα να εκδικασθούν από το δικαστήριο. Το εμπορικό μητρώο καταχώρησε, στις 4 Αυγούστου, το Διοικητικό Συμβούλιο που εξελέγη από τους μειοψηφούντες μετόχους της Czech Value Fund. Η καταχώρηση, όμως, αμφισβητήθηκε αμέσως από τους πλειοψηφούντες μετόχους. Οι δικηγόροι και των δύο πλευρών έκαναν επίσης καταγγελία προς τον Δικηγορικό Σύλλογο, κατηγορώντας τους συναδέλφους τους για ανήθικη συμπεριφορά.

Υπάλληλος σε νομικό οίκο και τρία δισεκατομμύρια

Η υπόθεση απόκτησε έντονη δημοσιότητα, πριν ένα περίπου μήνα. Η Κότβα αγοράστηκε από την ΦΕΛ, μέσω μιάς συμφωνίας αγοράς από τον πρώην διευθυντή της BIS και σημερινό νομικό υπάλληλο στον δικηγορικό οίκο του κ. Toman, τον κ. Stanislav Devaty, ο οποίος αμέσως παραδέχτηκε, ότι η συμφωνία ήταν ψεύτικη και ότι ο ίδιος δεν πήρε λεφτά. «Εάν κάποιος κάνει κάτι τέτοιο, δεν υπάρχει γι' αυτόν καμμιά ελπίδα. Οι δικηγόροι έχουν υποχρέωση να συμβουλεύουν τους πελάτες τους και όχι να αγοράζουν πολυκαταστήματα γι' αυτούς και πολύ περισσότερο να παραδέχονται, ότι η συναλλαγή ήταν ψεύτικη» λέει ο Pergl.

"Φοβόμαστε, ότι ετοιμαζόταν μιά μεταβίβαση του ακινήτου της Κότβα σε τρίτο πρόσωπο. Ο μόνος νόμιμος τρόπος να ματαιωθεί μιά τέτοια μεταβίβαση ήταν να γίνει σφράγισμα στο Υποθηκοφυλακείο. Ο λόγος γι' αυτό δεν είναι τίποτε άλλο από το σφράγισμα κάθε δυνατής μεταβίβασης, έως ότου εκδώσει το δικαστήριο μιά τελική και δεσμευτική απόφαση σχετικά με την ιδιοκτησία της Κότβα», εξηγεί ο κ. Toman.

9

Μεταγενεστέρως, ο Devaty και η Forminster έδωσαν από κοινού πληρεξούσιο στον Michael Kocab, εξουσιοδοτώντας τον αποκλειστικώς να αφαιρέσει την μολυβένια σφραγίδα από το Υποθηκοφυλακείο. Πριν όμως γίνει μιά τέτοια αφαίρεση της σφραγίδας, αυτός θα πρέπει να έχει ήδη λάβει μιά υπογεγραμμένη συμφωνία γιά την ακύρωση της συμφωνίας αγοράς, η οποία ευρίσκεται τώρα στο συμβολαιογραφείο. *Χρειαζόμαστε πάλι ένα αξιόπιστο πρόσωπο, και έτσι διαλέξαμε τον αντιπρόσωπο της άλλης πλευράς»,* λέει ο Toman.

Ο Kocab, όμως, αντιτίθεται κατηγορηματικά στην κατάχρηση του ονόματός του. *«Εάν είχα δεχτεί αυτό, θα είχα στην ουσία νομιμοποιήσει όλες τους τις πράξεις», λέει με αγανάκτηση.* Ταυτοχρόνως αρνείται να δεχθεί την ερμηνεία του Toman, για όλες αυτές τις πράξεις. *«Κάνοντας αυτή την ακροβατική κίνηση δημοσίως, σκόπευαν να καταφέρουν να δημιουργήσουν την αντίληψη, ότι αυτό δεν έπρεπε να θεωρείται «φυγάδευση» κεφαλαίων. Εάν κάποιος διάσημος πορτοφολάς κλέβει τους διαβάτες στην πλατεία Wenceslas, κάνοντας μορφασμούς και φωνάζοντας « 'δεν κλέβω', θα ήταν αυτό αποδεκτό;»* λέει εκνευρισμένος ο Kocab. Ο Tomas Pelikan πιστεύει, ότι όλα αυτά είναι απλώς μιά άσκοπη φασαρία. *«Μιά νομική πράξη, που δεν έχει γίνει σωστά, και εάν ακόμη είναι γραπτή, είναι άκυρη σύμφωνα με το νόμο», ισχυρίζεται.*

### Αβέβαιη η επιστροφή της περιουσίας

Αυτό, όμως, που κυρίως ενδιαφέρει τους μετόχους της Τρεντ, και όλων των άλλων «φυγαδευμένων» κεφαλαίων, δεν είναι η διαμάχη των δύο πλευρών των μετόχων γιά το πολυκατάστημα, αλλά το θέμα εάν το κράτος θα αρχίσει τελικά να διώκει τέτοιες περιπτώσεις δυναμικά, και κυρίως εάν θα επιστρέψει σε αυτούς την κλεμμένη περιουσία. Έχει γίνει μερική πρόοδος, αλλά δεν έχει γίνει μιά αποφασιστική εκστρατεία κατά της διαφθοράς στο Τσεχικό Χρηματιστήριο.

Οι αναλυτές του χρηματιστηρίου αμφιβάλλουν γιά την ολική επιστροφή της περιουσίας στους μετόχους της Τρεντ, αν και η μεγίστη πλειοψηφία των αρχικών μετόχων παραμένει παγωμένη στους λογαριασμούς του Κέντρου Χρηματιστηριακών Τίτλων (Securities Centre). *«Οι νέοι κάτοχοι πρέπει να κερδίσουν τις επερχόμενες δικαστικές μάχες. Οι μετοχές δεν είναι αριθμημένες και θα είναι δύσκολο να καθορισθεί, ποιός ήταν ο αρχικός τους κάτοχος»,* λέει ο Michael Konecny από την Komero. Σύμφωνα με αυτόν, ο αγοραστής θα μπορεί πάντα, εξαιρουμένων μόνον μερικών περιπτώσεων, να αποδείξει ότι ενήργησε «καλή τη πίστει». Αλλά ο Pergl πιστεύει το αντίθετο. *«Πληροφορήσαμε τους πάντες μέσω του τύπου. Όποιος παρακολουθεί το χρηματιστήριο πρέπει επίσης να γνωρίζει ότι η ΚΗΒ, και οι εταιρείες οι συνδεδεμένες με αυτή, επώλησαν κλεμμένες μετοχές»,* λέει. *«Κανένας δεν θα αποδείξει σε κανέναν, ότι εγνώριζε γι' αυτήν την εκστρατεία των μέσων μαζικής ενημέρωσης»,* αντιτίθεται ο Konecny. *«Είμαστε δικηγόροι της Τρεντ και κατά συνέπειαν πρέπει να ισχυριζόμαστε ότι εγνώριζαν, και προφανώς αυτοί θα ισχυρίζονται ότι δεν εγνώριζαν. Η απόφαση εξαρτάται από το δικαστήριο»,* συμπεραίνει ο Pergl.

10

Πίνακας:
**Πως η ΦΕΛ (FEL) απόκτησε τα λεφτά για την αγορά της ΚΟΤΒΑ**

TREND

Μετοχές

Το Περιφερειακό Εμποροδικείο της Hradec Kralove αποφάσισε, στις 24 Ιανουαρίου, να παγώσει τις μετοχές στο λογαριασμό της IFM. Ο δικαστής, όμως, παρέλειψε να επιδώσει την απόφαση αυτή στο Τσεχικό Χρηματιστήριο και κατά συνέπειαν ο Χάλεκ και Σία προειδοποιήθηκαν εγκαίρως και κατάφεραν να μεταβιβάσουν τις μετοχές.

IFM

24.1.1997
357.000
μετοχές προς
320 CZK ανά
μετοχή

Το συμβόλαιο της 22.1.1997 για την αγορά 357.000 μετοχών προς 700 CZK ανά μετοχή

KHB

ATLANTA SAFE

24.1 1997
357.000 μετοχές
προς 230 CZK
ανά μετοχή

27.1.1997
357.000 μετοχές
προς 700 CZK
ανά μετοχή

FORMINSTER

**Το κέρδος από τη μοναδική αυτή οικονομική συναλλαγή ανέρχεται σε 135.6 εκατ. CZK.**

11

**Τίτλος:** Τρεντ: Η προσαγωγή στο δικαστήριο των φυδαγευτών είναι σήμα προς τους ξένους επενδυτές.
**Ημερομηνία Εκδόσεως:** 2 Οκτωβρίου, 1998
**Ώρα εκδόσεως:** 15:53
**Λέξεις Κλειδιά:** Δημοκρατία της Τσεχίας, επιχειρήσεις, Τρέντ, κατηγορίες
**ID** (Ταυτότητα): 19981002F02034
**Υπηρεσία:** ece
**Προτεραιότητα:** 4
**Κατηγορία:** obo; zak; fin
**Τρεντ:** Η προσαγωγή των φυγαδευτών είναι σήμα προς τους ξένους επενδύτες.

ΠΡΑΓΑ, 2 Οκτωβρίου (Τσεχικό Πρακτορείο Τύπου) –Η προσαγωγή στο δικαστήριο των φυγαδευτών των κεφαλαίων επενδύσεων  της Τρεντ και Μέρσια (Mercia) είναι ένα από μακρού αναμενόμενο σήμα προς τους ξένους επενδυτές, εδήλωσε ο Jonh Moffitt, σημερινό μέλος του Διοικητικού Συμβουλίου της Τρεντ, προς το Τσεχικό Πρακτορείο Τύπου, σε σχόλιό του σχετικά με τις κατηγορίες κατά επτά ατόμων, που διώκονται  γιά την περίπτωση της φυγαδεύσεως των επενδυτικών κεφαλαίων της Τρεντ και της  Mercia. Πρόσθεσε ότι η υπόθεση αυτή αποτελεί  μιά σημαντική καμπή για όλοκληρη την Τσεχική κεφαλαιαγορά.

Ο Moffitt ανέφερε επίσης ότι η φυγάδευση των κεφαλαίων της Τρεντ είναι η πρώτη τέτοια υπόθεση για την Δημοκρατία της Τσεχίας, όπου τα άτομα κατηγορούνται  με την κατηγορία της εγκληματικής συνωμοσίας.

Το αποδεικτικό υλικό που συγκεντρώθηκε  κατά την διάρκεια της ποινικής διαδικασίας αποδεικνύει ότι η εταιρεία Forminster Enterprises Limited (FEL), στην οποία μεταφέρθηκαν οι μετοχές της Κότβα από την Τρεντ, εξακολουθεί να ελέγχεται από τον κ.Halek, ο οποίος συνεχίζει την μάχη κατά της Τρεντ ακόμη και μέσα από την φυλακή, πρόσθεσε ο Moffitt.

Ο Περιφερειακός Δημόσιος Κατήγορος της Hradec Kralove, επέδωσε στο περιφερειακό δικαστήριο, την Πέμπτη, κατηγορία εναντίον επτά ατόμων, που διώκονται γιά την υπόθεση της φυγαδεύσεως των επενδυτικών κεφαλαίων της Τρεντ και Mercia. Την στιγμή αυτή, από όλα τα κατηγορούμενα άτομα, μόνον ο Miroslav Halek παραμένει υπό κράτηση. Έτσι μία από τις μεγαλύτερες υποθέσεις που προκάλεσαν ζημιά στά επενδυτικά κεφάλαια της Τσεχικής Δημοκρατίας, όπου οι ζημιές ανέρχονται σχεδόν στο ποσόν του 1.3 δισεκατομμυρίων Τσεχικών κορωνών (CZK), εισέρχεται στην τελική της φάση.

Ο Δημόσιος Κατήγορος κατηγόρησε τους κατηγορουμένους με τις ποινικές κατηγορίες συναλλαγών βασισμένες σε εσωτερική πληροφόρηση (insider dealing) και απάτη, διαπραχθείσες με εγκληματική συνωμοσία, ή γιά συμμετοχή σε τέτοια εγκληματική συνωμοσία. Εάν το δικαστήριο βρει τους κατηγορουμένους ενόχους, θα μπορούσαν να φυλακιστούν μέχρι και 15 χρόνια.

Marcela Proskova

12

# United States District Court

_____ **District of** Massachusetts _____

KOTVA a s.

**SUMMONS IN A CIVIL CASE**

V.

ANDREW WEISS and
WEISS ASSET MANAGEMENT, LLC

CASE NUMBER: **05-10679 RCL**

TO:

Forminster Enterprises, Ltd
4 Diagorou Street
Kermia Building
Off. 601
Nicosia
Cyprus

**YOU ARE HEREBY SUMMONED** and required to serve upon COUNTER-CLAIMANT'S ATTORNEYS

Edward P. Leibensperger
Benjamin A. Goldberger
McDermott Will & Emery LLP
28 State St.
Boston, MA 02109
USA

1 + 617-535-4000

an answer to the counter-claim which is herewith served upon you, within <u>20</u> days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the counter-claim. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

SARAH A. THORNTON

JUN 17 2005

CLERK

DATE

(BY) DEPUTY CLERK

AO 440 (Rev. 10/93) Summons in a Civil Action

# RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the third-party defendant. Place where served: _____

_____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

_____

_____

☐ Other *(specify)*: _____

_____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____          _____
                 Date          *Signature of Server*

                               _____
                               *Address of Server*

[1] As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s.,<br><br>       Plaintiff,<br><br>    v.<br><br>ANDREW WEISS and WEISS ASSET<br>MANAGEMENT, LLC,<br><br>       Defendants.<br><br>ANDREW WEISS, WEISS ASSET<br>MANAGEMENT LLC, K T, INC. and CVF<br>INVESTMENTS, LTD.,<br><br>       Counterclaim-plaintiffs,<br><br>    v.<br><br>KOTVA a.s., MARTIN BENDA, RICHARD<br>HARAZIM, FORMINSTER ENTERPRISES,<br>LTD., SPV CO and JOHN DOES 1–5,<br><br>       Counterclaim-defendants. | C.A. No. 05-10679-RCL |

## FIRST AMENDED ANSWER AND COUNTERCLAIM

### SUMMARY

Defendant and counterclaim-plaintiff Andrew Weiss ("Weiss") is a professor of economics at Boston University. He has advised the World Bank on the Czech Republic's capital markets and is an authority on developing markets and their need for financial regulation. He also operates a company that manages investments in the Czech Republic. Among those investments is a significant minority interest in the plaintiff, Kotva a.s ("Kotva"). In May of 2004, representatives of Forminster Enterprises Ltd. ("Forminster"), the majority shareholder of Kotva, threatened to take Kotva's only valuable asset for itself and give the minority

shareholders nothing. Weiss responded by authorizing lawyers in the Czech Republic to file lawsuits to protect the rights of the minority shareholders.

Forminster's first response was to approach Weiss and offer to purchase his investors' interest in Kotva. However, Forminster would not agree to pay an amount equal to the proportional share of Kotva's value to which Weiss's investors were entitled. When Weiss rejected Forminster's inadequate offers, Forminster adopted a second, more sinister approach. Forminster and its affiliates used their influence over Czech law enforcement to instigate a criminal prosecution of Weiss on sham charges of blackmail. Although Weiss has not received formal notice of any charges, the press has reported that charges were brought. Seeking to apply additional pressure, Forminster and its affiliates then used their control over Kotva to file this lawsuit against Weiss in Kotva's name.

Kotva is presently a corporate shell and alter ego to Forminster and its affiliates: counterclaim-defendants Forminster, Martin Benda ("Benda"), Richard Harazim ("Harazim"), SPV CO and John Does 1–5 (collectively the "Forminster Group"). The Forminster Group has conspired against Weiss and the shareholders of Kotva to convert the assets of Kotva for their own benefit. Forminster is a private company, incorporated in Cyprus, and the conspirators keep the identity of its owners a closely-kept secret. Harazim and Benda serve as the front men for Forminster, and hide the identities of the company's true beneficial owners.

According to reports in the Czech press and reports of Czech prosecutors and as detailed below, the Forminster Group controls proceeds looted in one of the most notorious frauds in the post-Communist history of the Czech Republic, a crime known as the "Trend Scandal" or "Trend Tunneling." The Czech press adopted the word "tunneling" to describe the process by which a company's management embezzles the company's assets and moves them through a series of

intermediaries until the intended recipients of the assets are able to liquidate the assets and abscond with the loot. Most importantly for this case, the illegal proceeds obtained by the Forminster Group include its control over a majority of the shares of Kotva.

In the early 1990s, Kotva a.s. was a department store company with a large, valuable store location ("Department Store") in downtown Prague in the Czech Republic. A Czech investment fund known as the Trend Fund ("Trend") was the largest shareholder of Kotva a.s. According to press reports of the results of a government investigation, Trend's assets, including its shares in Kotva, were looted through a series of frauds, and the Kotva shares ended up in the control of the Forminster Group. As a result of the Trend Tunneling, the Forminster Group claims to own at least 55% of Kotva's shares.

As a result of Forminster's involvement in the Trend Tunneling, the High Court of Liechtenstein froze Forminster's accounts at a bank in Vaduz, Liechtenstein. Similarly, a Czech prosecutor froze Forminster's shares in Kotva a.s. because of suspicion that they were the proceeds of criminal activity. Thus, unable to liquidate their shares in Kotva, the Forminster Group decided to use their control over Kotva to sell the company's only valuable asset—its real estate—and keep all of the proceeds for itself, defrauding Kotva's minority shareholders and depriving the Trend victims of their rightful share of the proceeds.

## ANSWER

Defendants Weiss and Weiss Asset Management LLC ("WAM") (collectively, the "Defendants") answer the Complaint of Plaintiff Kotva a.s.:

## INTRODUCTION

The Introduction contains no averments within the meaning of Federal Rules of Civil Procedure 8 and 10 and requires no response. To the extent a response is required, the Defendants deny the factual allegations in the Introduction.

3

## JURISDICTION

1.    Paragraph 1 states a conclusion of law to which no response is required.

2.    Paragraph 2 states a conclusion of law to which no response is required.

3.    Paragraph 3 states a conclusion of law to which no response is required.

## PARTIES

4.    Admitted.

5.    Admitted.

6.    Admitted.

## FACTS

7.    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 7.

8.    Admitted.

9.    Defendants admit that Weiss Asset Management, LLC is an investment firm headquartered in Boston, Massachusetts. Defendants further admit that Weiss owns a majority of Weiss Asset Management and controls Weiss Asset Management. Defendants deny the remainder of paragraph 9.

10.    Defendants admit the first sentence of paragraph 10. Defendants deny the second sentence of paragraph 10.

11.    Denied.

12.    Defendants admit the first sentence of paragraph 12. Defendants deny the remainder of paragraph 12.

13.    Defendants admit that the Forminster Group installed new management at Kotva and called this a management change. On information and belief, Defendants deny that the

purpose of installing new management was to effectuate a turnaround of Kotva's business. By way of further answering, Defendants believe that the purpose of installing new management was to loot Kotva a.s. of its real estate. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of paragraph 13.

14.    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 14.

15.    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 15.

16.    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 16.

17.    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 17.

18.    On information and belief, Defendants deny that the purpose of this alleged transfer was "to effectuate the sale" of the Shopping Centre. By way of further answering, Defendants believe that the purpose of the alleged transfer was to divert the proceeds from the sale of the Shopping Centre. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of paragraph 18.

19.    Defendants admit that during May 2004, the press reported a pending sale of the Shopping Centre to Irish investors. Defendants deny the remainder of paragraph 19.

20.    Defendants admit that, on May 12, 2004, Weiss and Hoffmann met with Harazim and Benda. Defendants admit that Harazim and Benda were, respectively, the CEO and chairman of the board of Kotva at that time but deny that Benda and Harazim held themselves

out as representatives of Kotva during the May 12, 2005 meeting. Defendants deny the remainder of paragraph 20.

    21.     Denied.

    22.     Defendants admit that Gilroy commenced a lawsuit claiming that SPV KN is not the legal owner of the Shopping Centre and that Kotva is the legal owner of the Shopping Centre. Defendant Andrew Weiss further admits that he communicated with Hoffman and Ondrej Peterka from Boston and that Hoffman sent bills to Brookdale in Boston. Defendant Weiss Asset Management denies that it communicated with Hoffman and Peterka from Boston. Defendants deny the remainder of paragraph 22.

    23.     Defendants admit that Gilroy opened an account at the Securities Centre on June 23, 2004. Defendants further admit that Gilroy purchased one share of Kotva for 430 CZK on June 24, 2004 and 134 shares of Kotva for 430 CZK per share on June 29, 2004. Defendants deny the remainder of paragraph 23.

    24.     Defendants admit that, on June 30, 2004, Gilroy filed a civil lawsuit against Kotva, KN and SPV KN in Prague challenging the transfers of the Kotva Shopping Centre from Kotva to KN and the subsequent transfer from KN to SPV KN and seeking a declaration that Kotva owns the Shopping Centre. Defendants are without knowledge or information sufficient to form a belief as to the truth of whether KN and SPV KN were wholly owned by Kotva at the time of both transfers. Defendants deny the remainder of paragraph 24.

    25.     Defendants admit the first sentence of paragraph 25. Defendants deny the remainder of paragraph 25.

    26.     Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 26.

27.    Defendants admit that, on August 17, 2004, Weiss sent the letter attached to the Complaint as Exhibit A to Martin Benda, who held himself out as a representative of Forminster. That document speaks for itself. Defendants deny the remainder of paragraph 27.

28.    Defendants admit that an e-mail was sent on August 17, 2004 with Richard Harazim listed as the sender and that e-mail speaks for itself. Defendants deny the remainder of paragraph 28.

29.    Defendants admit that, on August 23, 2004, Weiss sent the letter attached to the Complaint as Exhibit B to Martin Benda and Richard Harazim, who held themselves out as representatives of Forminster. That document speaks for itself. Defendants deny the remainder of paragraph 29.

30.    Defendants admit that, on November 23, 2004, Weiss sent the letter attached to the Complaint as Exhibit C to Martin Benda and Richard Harazim, who held themselves out as representatives of Forminster. That document speaks for itself. Defendants deny the remainder of paragraph 30.

31.    Denied.

32.    Admitted, except that Defendants deny that Weiss is the sole director of K T Inc.

33.    Defendants admit that, on December 23, 2004, Peterka sent a letter to Bryan David Paul Wilson, of Linklaters Prague, and that the letter contained the block quote in paragraph 33. That letter speaks for itself. Defendants deny the remainder of paragraph 33.

34.    Defendants admit the second sentence of paragraph 34, except that Defendants deny that Weiss's e-mail was in response to a communication from Kotva. Defendants deny the remainder of paragraph 34.

35.    Denied.

7

36.    Denied.

37.    Defendants deny the first sentence of paragraph 37. Defendants are without knowledge or information sufficient to form a belief as to truth of the remainder of paragraph 37.

38.    Defendants deny the first two sentences of paragraph 38. Defendants neither admit nor deny the remainder of paragraph 38, but instead state that they reference material protected by the attorney-client privilege and which the plaintiff has obtained improperly.

39.    Denied.

40.    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 40.

41.    Defendants admit that Weiss held a video press conference in Boston on March 15, 2005. Defendants further admit that Exhibit E contains a true and accurate copy of Weiss's written statement in English. That document speaks for itself. Defendants are without knowledge or information sufficient to form a belief as to whether the portion of Exhibit E written in Czech is a completely accurate translation of Weiss's written statement. Defendants deny the remainder of paragraph 41.

42.    Denied.

43.    Defendants are without knowledge or information sufficient to form a belief as to whether internal documents were disclosed as a result of any charges. Defendants deny the remainder of paragraph 43.

44.    Defendants neither admit nor deny the allegations in paragraph 44, but instead state that they reference material protected by the attorney-client privilege and which the plaintiff has obtained improperly.

45.    Denied.

8

46.     Defendants admit that, on October 25, 2004, Hoffman sent Weiss an email that includes the text quoted in paragraph 46 of the Complaint. That e-mail speaks for itself. Defendants deny the remainder of paragraph 46.

47.     Defendants admit that, on November 25, 2004, Weiss sent Hoffman the document attached to the Complaint as Exhibit G. That document speaks for itself. Defendants deny the remainder of paragraph 47.

48.     Denied.

## Count I

49.     Defendants incorporate by reference their responses to the allegations in the preceding paragraphs.

50.     Denied.

51.     Denied.

52.     Defendants admit that Weiss is a resident of Massachusetts and that Weiss Asset Management has its principal place of business in Massachusetts. Defendants deny the remainder of paragraph 52.

53.     Denied.

54.     Denied.

## Count II

55.     Defendants incorporate by reference their responses to the allegations in the preceding paragraphs.

56.     Paragraph 56 states a conclusion of law as to which no response is required.

57.     Denied.

58.     Denied.

59.    Denied.

60.    Denied.

61.    Denied.

62.    Denied.

63.    Denied.

64.    Denied.

65.    Denied.

66.    Denied.

67.    Denied.

68.    Denied.

## Count III

69.    Defendants incorporate by reference their responses to the allegations contained in the preceding paragraphs.

70.    Denied.

## Count IV

71.    Defendants incorporate by reference their responses to the allegations contained in the preceding paragraphs.

72.    Paragraph 72 states a conclusion of law as to which no response is required.

73.    Denied.

74.    Denied.

75.    Denied.

76.    Denied.

## Count V

77.    Defendants incorporate by reference their responses to the allegations contained in the preceding paragraphs.

78.    Paragraph 78 states a conclusion of law as to which no response is required.

79.    Denied.

80.    Denied.

## Count VI

81.    Defendants incorporate by reference their responses to the allegations contained in the preceding paragraphs.

82.    Denied.

83.    Denied.

## Count VII

84.    Defendants incorporate by reference their responses to the allegations contained in the preceding paragraphs.

85.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of paragraph 85.

86.    Denied.

87.    Denied.

## REQUESTS FOR RELIEF

The Plaintiff's Requests for Relief are not averments within the meaning of Federal Rules of Civil Procedure 8 and 10 and require no response. To the extent a response is required, Defendants request that the Court deny all of the Plaintiff's Requests for Relief.

## FIRST AFFIRMATIVE DEFENSE

Kotva a.s. is not a real party in interest.

11

## SECOND AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred by the doctrine of unclean hands.

## THIRD AFFIRMATIVE DEFENSE

The Plaintiff has failed to state a claim on which relief can be granted.

## FOURTH AFFIRMATIVE DEFENSE

The Plaintiff has failed to plead fraud with particularity.

## FIFTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred by estoppel.

## COUNTERCLAIM

Counterclaim-plaintiffs Andrew Weiss ("Weiss"), Weiss Asset Management LLC

("WAM"), K T, Inc. ("K T") and CVF Investments Ltd. for their Counterclaim against

counterclaim-defendants Kotva a.s., Martin Benda, Richard Harazim, Forminster Enterprises,

Ltd., SPV CO and John Does 1–5 state:

*Jurisdiction and Venue*

1.      The Court has subject matter jurisdiction over the Counterclaim under 28 U.S.C.

§ 1332 and 28 U.S.C. § 1367.

2.      The Court has personal jurisdiction over the counterclaim-defendants because

they have committed tortious acts in Massachusetts, including filing this lawsuit; transacted

business in Massachusetts by sending correspondence into Massachusetts, including e-mails,

soliciting business from Massachusetts residents; caused injury in Massachusetts by their actions

outside of Massachusetts; and availed themselves of the jurisdiction of this Court.

3.      Venue is proper in the District of Massachusetts under 28 U.S.C. §§ 1391(a) and

1391(c) and because Kotva a.s. filed the original complaint in this District.

12

*Parties*

4.    Defendant and counterclaim-plaintiff Andrew Weiss is an individual residing in Brookline, Massachusetts.

5.    Defendant and counterclaim-plaintiff Weiss Asset Management LLC is a Delaware limited liability company with its principal place of business in Boston, Massachusetts.

6.    Counterclaim-plaintiff K T, Inc. is a Delaware corporation with its principal place of business in Boston, Massachusetts. It owns 1,000 shares of Kotva a.s. and 1,000 shares of Trend.

7.    Counterclaim-plaintiff CVF Investments Ltd. is a Cyprus corporation with its principal place of business in Nicosia, Cyprus. It owns shares of Kotva a.s. and shares of Trend. CVF Investments Ltd. is a nearly wholly owned subsidiary of Brookdale Global Opportunity Fund ("BGO"). The interests of CVF Investments Ltd. in Kotva a.s. and Trend is referred to generally and interchangeably as "CVF Investments' shares" or "BGO's shares."

8.    Plaintiff and counterclaim-defendant Kotva a.s. is a company organized under the laws of the Czech Republic with its principal place of business in Prague, Czech Republic.

9.    Counterclaim-defendant Forminster Enterprises Ltd. ("Forminster") is a company organized under the laws of Cyprus. On information and belief, Forminster's principal place of business is outside the United States. The identity of its owners is a closely-kept secret.

10.    Counterclaim-defendant SPV CO is a company organized under the laws of Cyprus. On information and belief, SPV CO's principal place of business is outside the United States.

11.    Counterclaim-defendant Martin Benda ("Benda") is an individual residing in the Czech Republic. Benda was a member of the board of Kotva a.s. for part or all of the period

13

from May 21, 1999 to March 8, 2004. From March 8, 2004 to the present, Benda has been the

Chairman of the Supervisory Board of Kotva a.s. Forminster nominated Benda to Kotva's board

and used its control over a majority of Kotva's shares to secure his election. Benda also is or

was a member of the board of Forminster and an agent of Forminster. Finally, Benda is a

director of SPV CO.

12.     Counterclaim-defendant Richard Harazim ("Harazim") is an individual residing in

the Czech Republic. Harazim is Kotva's general manager or chief executive officer. Harazim

was a member of the board of Kotva a.s. for part or all of the period from May 29, 1997 to

March 8, 2004. From March 8, 2004 to the present, Harazim has been a member of the

Supervisory Board of Kotva a.s. Forminster nominated Harazim to Kotva's board and used its

control over a majority of Kotva's shares to secure his election. Harazim also is or was a

member of the board of Forminster and an agent of Forminster.

13.     Counterclaim-defendants John Does 1–5 are individuals residing in the Czech

Republic and elsewhere outside the United States who are members of a conspiracy among

Forminster, SPV CO, Benda, Harazim and others (collectively, the "Forminster Group").

14.     One object of the Forminster Group's conspiracy is to strip Kotva a.s. of its real

estate, sell the real estate and distribute the proceeds among the members of the Forminster

Group.

### Factual Allegations

15.     Weiss Capital LLC is a Delaware limited liability company.

16.     In 2002, Weiss Capital took over the management of Brookdale Global

Opportunity Fund ("BGO"). BGO is an investment fund. Its subsidiary, CVF Investments Ltd.,

owns shares in Trend, a Czech investment fund, and shares in Kotva a.s.

17.    CVF Investments Ltd. has owned shares in Trend since 1996 and shares in Kotva a.s. since 1997.

18.    Trend's most valuable asset is a significant stake in Kotva a.s. However, as described in more detail in paragraphs 42–60 below, these shares were embezzled in the mid-1990s and came into the possession of Forminster.

19.    K T, Inc. and CVF Investments Ltd. have both a direct interest in Kotva a.s. as shareholders and an indirect interest in Kotva as shareholders in Trend, which is the rightful owner of at least 32% of the shares of Kotva a.s.

20.    In September 2003, Weiss Capital entered into an agreement with Vladimir Hoffmann under which Hoffmann would assist BGO in liquidating CVF Investments' shares in Trend and Kotva a.s. Hoffmann's agreement with Weiss Capital ended in October 2004.

21.    In September 2003, Harazim approached Hoffmann and suggested that Forminster might be interested in purchasing BGO's shares in Kotva. A Forminster Group affiliate then offered to purchase BGO's Kotva shares for 20,000,000 CZK. Weiss rejected this offer.

22.    J&T Securities then offered approximately 26,000,000 CZK for BGO's Kotva shares in December 2003. On information and belief, J&T Securities also has commercial relationships with the Forminster Group. Weiss rejected this offer as well.

23.    While attempting to purchase BGO's shares in Kotva, the Forminster Group was also attempting to sell Kotva's only valuable asset, a department store in downtown Prague (the "Department Store").

24.    On May 12, 2004, Weiss, Hoffmann, Benda and Harazim met in Prague. At the meeting, Harazim told Weiss and Hoffmann that CVF Investments' shares in Kotva were worth

*nothing*. Harazim said that because CVF Investments is a minority shareholder of Kotva a.s. its shares in Kotva have no value. Harazim further said that Kotva will never make any distributions to its shareholders and, therefore, Kotva's shareholders would not receive any of the proceeds of the sale of the Department Store. Harazim offered his opinion that there was nothing that Weiss could do about this, or the previous theft of Trend's assets.

25.    In June 2004, two of Kotva's shareholders, Balfindor and Gilroy, filed lawsuits in the Czech courts challenging actions taken by the Forminster Group. Balfindor challenged actions taken at a Kotva general meeting. Gilroy challenged the Forminster Group's efforts to move the Department Store from Kotva a.s. to other companies.

26.    In August 2004, Benda and Harazim approached Hoffmann and offered to purchase BGO's Kotva shares for 75,000,000 CZK. Neither Benda nor Harazim specified what company within the Forminster Group would purchase those shares. Weiss rejected this offer and made a counter-offer to sell BGO's Kotva shares for 131,000,000 CZK.

27.    On August 17, 2004, Harazim responded to the counter-offer by sending an email to a Weiss Capital employee in Boston, Massachusetts, stating:

> Unfortunately, your offer doesn't seem to deal with the lawsuits brought about by Balfindor and Gilroy against our company. Without resolving these and any other potential lawsuits against our company raised by BGO or by BGO controlled entities we won't be able to conclude any deal at all.
>
> Should you reconsider your position we can return to the discussion about the purchase price for Kotva shares held by BGO.

28.    Based on Harazim's email, Weiss amended his offer to sell BGO's shares for 131,000,000 CZK by including a promise not to initiate any legal challenges relating to the ownership of the Department Store and a promise to attempt to persuade Gilroy to withdraw its lawsuit challenging the transfer of the Department Store.

16

29.    On August 27, 2004, Harazim responded by email to a Weiss Capital employee in Boston, Massachusetts and demanded that any purchase of Kotva shares was conditioned on the withdrawal of "lawsuits filed by Gilroy AND Balfindor, not only Gilroy." Around the same date, Benda told Hoffmann that any purchase of Kotva shares was conditioned on the release of all claims that BGO had against the Forminster Group, including claims that Forminster's shares in Kotva really belong to Trend.

30.    The release of claims that Trend is the rightful owner of Forminster's shares in Kotva would effectively strip BGO's Trend shares of their value. A share in Trend is valuable primarily because Trend is the rightful owner of at least 32% of Kotva and Kotva is the rightful owner of a valuable piece of real estate or the proceeds from the sale of that real estate. Moreover, the shareholders of Trend have a claim against Forminster for the other assets that were tunneled from Trend. This tunneling provided the capital that Forminster used to buy additional shares in Kotva. Weiss could not agree to surrender these claims for nothing in return.

31.    Thus, in order to meet Harazim's and Benda's demands, Weiss amended his offer so that it (a) referenced Balfindor's lawsuit; (b) included BGO's shares in Trend in addition to BGO's shares in Kotva; and (c) increased the purchase price to reflect the value of BGO's Trend shares. Weiss enclosed with the new offer a detailed calculation supporting the valuation of BGO's holdings in both Kotva and Trend.

32.    Unwilling to pay CVF Investments the fair value of its shares, as reflected by the value of the Department Store, Harazim rejected this offer. Harazim repeatedly refused to respond to requests to explain why the purchase price Weiss suggested was too high or why the calculations Weiss presented were incorrect or inaccurate.

33.    Instead the Forminster Group responded by using its influence over Czech law enforcement to cause or attempt to cause a contrived criminal charge of blackmail to be brought against Weiss. Harazim is quoted in the Czech press as having "filed a criminal complaint." This charge, if it has been brought, has no merit. On information and belief, the essence of the Forminster Group's allegation is that Weiss threatened to bring lawsuits challenging the embezzlement of Trend's shares in Kotva and the transfers of the Department Store unless his investors received their fair share of the proceeds of the sale of the Department Store. Even if this sort of conduct were criminal—it is not—it was Harazim and Benda rather than Weiss who demanded that any purchase of stock be linked to the withdrawal of lawsuits.

34.    The Forminster Group's motive in causing Czech law enforcement to bring the criminal charge was to obtain an unfair advantage over Weiss in its efforts to coerce Weiss to abandon his investors' claims in the Czech courts that were contrary to the Forminster Group's interests (the "Czech litigation").

35.    From August 2004 until January 2005, Harazim sent at least nine emails to Weiss and at least one other person in Massachusetts as part of the Forminster Group's efforts to pressure Weiss to abandon his investors' claims in the Czech litigation. More specifically, in these emails dated August 17, 2004, August 27, 2004, December 1, 2004, December 3, 2004, December 7, 2004, December 8, 2004, December 15, 2004, January 4, 2005, and January 7, 2005, Harazim consistently sought to purchase shares in Kotva a.s. but conditioned any purchase on the termination of the Czech litigation. Harazim purposefully directed each of these emails to recipients he knew to be residents of Massachusetts who worked in Massachusetts.

36.    Harazim sent these emails at the direction of Benda, who he described in an August 27, 2004 email as "in charge of this deal."

18

37.    On information and belief, Harazim also sent these emails at the direction of John Does 1–5.

38.    The Forminster Group then filed this civil case against Weiss. On information and belief, Benda and Harazim personally caused Kotva a.s. to bring this lawsuit, after receiving instructions to do so from Forminster and John Does 1–5.

39.    On information and belief, Benda, Harazim and/or John Does 1–5 sent multiple e-mails, letters and/or facsimile transmissions and made multiple telephone calls to their agents in Massachusetts in order to bring this lawsuit.

40.    The Forminster Group's bad faith motive in filing this case was to obtain an additional unfair advantage over Weiss in its efforts to coerce Weiss to abandon his investors' claims in the Czech litigation.

41.    Weiss and WAM have incurred and continue to incur damages in Massachusetts, including damage to reputation, disruption of their business, lost time and attorneys' fees, as a result of the Forminster Group's decisions to cause Czech law enforcement to bring the criminal charge and to cause Kotva to file this case.

*The Tunneling of the Assets of the Trend Fund*

42.    In 1995 and 1996, Trend's management embezzled Trend's assets, including Trend's shares in Kotva. The embezzlement of Trend's assets has been documented extensively in several Czech government reports and is commonly referred to as the "Trend Scandal" or "Trend Tunneling." The media has also reported extensively on the Trend Scandal[1] as well as several unusual events surrounding the investigation of the Trend Scandal. On information and

---

[1] Attached hereto as Exhibit 2 are some press articles about the Trend Scandal, with English translations.

belief, multiple law enforcement personnel involved in the investigation of the Trend Scandal

have either resigned or committed suicide under suspicious circumstances.

43.    Miroslav Hálek, who exerted managerial control over Trend at the time of the

embezzlement, also possessed a general power of attorney to act on behalf of Forminster during

the same time period.

44.    Hálek's connections to Forminster and personal involvement in the embezzling of

Trend's assets are documented in detail in several reports authored by Czech prosecutors.  For

example, the Deputy Regional Public Prosecutor wrote:

> Dealings and transfers of shares of Kotva, a.s., represented the most significant
> object of interest for the defendants [Miroslav Hálek & Co.]. Kotva shares
> belonged among essential investments of the fund within the period before
> August 4, 1995. The aim of the previous management was, and still is, to transfer
> the shares of Kotva to companies controlled by Mr. Hálek and Co., and to gain
> majority shareholding in Kotva through other purchases, whereto they also used
> the resources of the fund. The Kotva shares are still in the focus of interest of Ing.
> Hálek's and Co. surrounding companies. Even within the period of the forced
> administration, several transfers of Kotva shares were accomplished, namely
> between persons and companies and Jiří Mareš, classmate of Mr. Hálek, through
> whom Kotva shares were transferred back to the companies controlled by Ing.
> Hálek, and who is, with a high probability, a significant person. At the time of
> adoption of a non-effective resolution by the Regional Court in Hradec Králové to
> prohibit any disposal with the shares of Kotva by Královehradecká brokerská, the
> transfer of Kotva shares to the company **Forminster Enterprises, Ltd.**, with the
> registered office at Cyprus, to whose financial accounts Ing. Hálek holds
> particular rights, was effectuated by an order of KHB.
>
> The activities of Mr. Hálek's group have not been stopped even by the decision
> about the forced administration [of Trend], and as it results from recent findings,
> their effort to take the control of Kotva and the assets of Trend continues up to the
> present and neither the criminal proceedings nor their placement in detention
> constitute any obstacle to it. Even before the commencement of criminal
> proceedings, the transfer of part of shares of Kotva to **Forminster Enterprises,
> Ltd.**, with its registered office at Cyprus, was effectuated and after that the
> company Královehradecká (brokerská) a.s. was sold to the company Bonit
> kapital, a.s., Brno.  KHB, renamed to Brněnská obchodní, a.s., is now facing a
> petition for declaration of bankruptcy against it. According to recent findings,
> even within the period of his detention, Ing. Hálek signed important documents
> concerning the accounts of the **Forminster Enterprises, Ltd.** Company with
> LGT Bank in Vaduz in Liechtenstein.

September 30, 1998 Report of the Hradec Králové Deputy Regional Public Prosecutor (emphasis added).

45.    After a complicated series of transactions, members of the Forminster Group gained possession of the Kotva shares embezzled from Trend and, with those shares, control over Kotva. The Forminster Group paid significantly less for Trend's Kotva shares than the shares were worth.

46.    The Forminster Group also used other assets embezzled from Trend to purchase shares in Kotva. The Kotva shares Forminster obtained from Trend and the Kotva shares Forminster purchased with Trend's assets total more than 55% of Kotva's shares.

47.    As part of an investigation of the Trend Tunneling, in 1997 a public prosecutor in the Czech Republic froze the Kotva shares held by the Forminster Group, preventing Forminster from selling them. In 2004, the Czech Constitutional Court affirmed the actions of the prosecutor, writing:

> In the opinion of the then Supervising Public Prosecutor of the Regional Public Prosecutor's Office in Hradec Kralove, the said securities were the subject of a crime or as the case may be, the proceeds of crime, and were totally and materially related to the commitment of a grievous crime against property. The issuance of the injunction was meant to preclude the completion of the chain of illegal securities' transfers.

Czech Constitutional Court, Decision No. II US 267/03 (April 15, 2004). Similarly, "[i]n the opinion of the High Public Prosecutor, [Forminster's shares in Kotva] are the proceeds of a crime committed by Ing. M. H[alek] and Co., which had been transformed into documentary securities and placed in the account of F[orminster] E[nterprises] Limited in the Prague Security Exchange Center." Id.

48.    The Hradec Králové Public Prosecutor described the freeze of Forminster's Kotva shares as a narrow one, "specify[ing] exactly those securities that have been the subject matter of

crime, or the effects thereof," and not applying to securities "hav[ing] no connection to crime whatsoever, or where such a connection, if assumed, cannot be deduced conclusively on the basis of the evidence produced." May 13, 1997 Injunction of the Hradec Králové Public Prosecutor, No. KZv 323/97.

49.     Around the same time, the High Court in Liechtenstein froze Forminster's accounts at the LGT Bank in Vaduz, Liechtenstein on suspicion of money laundering and conspiracy, among other crimes.

50.     Despite the Czech prosecutor's order freezing the Kotva shares held by the Forminster Group, members of the Forminster Group were still able to vote those shares. The Forminster Group controls at least 55% of the shares of Kotva. As majority shareholders, the Forminster Group elects the board of Kotva and controls its management.

51.     Nevertheless, the freeze inconvenienced the Forminster Group. They could not convert their Kotva shares into cash. Thus, they had to devise a scheme to separate the assets of Kotva a.s. from the frozen shares of Kotva a.s., liquidate those assets, and appropriate the cash proceeds for their own benefit.

52.     Since at least 1999, after electing board members of Kotva a.s., the Forminster Group has, through its front-men, Benda and Harazim, exerted full control over Kotva a.s. and actively directed all of its activities, including the bringing of this lawsuit. The Forminster Group uses its pervasive control over Kotva a.s. to act in a selfish way, disregarding the interests of Kotva a.s.'s minority shareholders. They use Kotva a.s. to serve the Forminster Group's interests and defraud the minority shareholders.

53.     The Forminster Group caused Kotva a.s. to transfer the Department Store through a series of shell companies. These transfers have no legitimate business purpose but are instead

22

designed to allow the Forminster Group to take more easily the proceeds of the sale of the

Department Store. Ultimately, the Department Store was sold to an Irish company called

Markland for approximately $65 million.

54.    More specifically, Kotva a.s. first transferred the Department Store to a company

it created called Kotva Nemovitosti. On information and belief, Benda was the chairman of the

board of Kotva Nemovitosti at the time. The Forminster Group then caused Kotva a.s. to convert

Kotva Nemovitosti from a wholly owned child corporation into a limited partnership in which

Kotva a.s. had a right to less than half of the profits and liquidation surplus.

55.    The Forminster Group then further removed the Department Store from Kotva's

shareholders by transferring the Department Store from Kotva Nemovitosti to another company

called SPV KN. The Forminster Group used unregistered and untraceable bearer shares to

establish ownership of SPV KN.

56.    On information and belief, when SPV KN first received the Department Store

from Kotva Nemovitosti, Kotva Nemovitosti held all of the bearer shares evidencing the

ownership of SPV KN. However, according to the Kotva's 2004 annual report, the Forminster

Group moved the Department Store even further away from Kotva's shareholders by causing

Kotva Nemovitosti to transfer 97% of the shares of SPV KN to a Cyprus company called SPV

CO.

57.    SPV CO is part of the Forminster Group. SPV CO has as its registered seat the

address: Ledra House, Agiou Pavlou 15, Agio Andreas, 1105 Nicosia, Cyprus. This address is

also the registered seat of the law offices of Chistodoulos G. Vassiliades & Co., the law firm that

established Forminster in 1996.

58.    According to Kotva's 2004 annual report, the Forminster Group effected the sale of the Department Store to CRQ Czech, a Czech company controlled by Markland, by transferring the bearer shares of SPV KN from SPV CO to CRQ Czech.

59.    Thus, the proceeds from the sale of the Department Store will not be paid to Kotva or even another Czech company. Instead, it appears that the purchase price for the SPV KN shares will be or has been paid to SPV CO or another Forminster-controlled entity that will distribute the proceeds of the sale among the Forminster Group rather than among Kotva's shareholders.

60.    The Forminster Group's scheme has damaged counterclaim-plaintiffs K T and CVF Investments Ltd. by preventing them from realizing the rightful return on their investments that the majority shareholders in Kotva a.s., the Forminster Group, have or expect to realize.

## Count I
### (Abuse of Process —
### Counterclaim-Plaintiffs Andrew Weiss and Weiss Asset Management LLC v. All Counterclaim-Defendants)

61.    Paragraphs 1–60 are incorporated by reference as if set forth fully herein.

62.    The Forminster Group, including all counterclaim-defendants, used Czech criminal process by filing a criminal complaint and by exerting its influence over Czech law enforcement to cause or attempt to cause criminal charges to be brought against Weiss.

63.    This action had an ulterior and illegitimate purpose as described above.

64.    Counterclaim-plaintiff Weiss was damaged by this abuse of process as described above.

65.    The Forminster Group, including all counterclaim-defendants, used United States civil process by filing this lawsuit.

66.    This action had an ulterior and illegitimate purpose as described above.

67.    Counterclaim-plaintiffs Weiss and Weiss Asset Management were damaged by this abuse of process as described above.

## Count II
### (Conspiracy — Counterclaim-Plaintiffs Andrew Weiss, Weiss Asset Management, K T, Inc. and CVF Investment Ltd. v. All Counterclaim-Defendants)

68.    Paragraphs 1–67 are incorporated by reference as if set forth fully herein.

69.    The members of the Forminster Group, including all counterclaim-defendants, agreed to work together to loot Kotva's assets, abuse the Czech criminal process and abuse the United States civil process.

70.    The members of the Forminster Group have a peculiar power of coercion in that, as a group, they have access to and influence over at least one member of the Czech government, including the ability to cause Czech law enforcement to bring criminal charges to provide them with leverage in their commercial disputes.

71.    Counterclaim-defendants Kotva, Benda, Harazim, Forminster, SPV CO and John Does 1–5 have conspired to damage counterclaim-plaintiffs Weiss, Weiss Asset Management, K T, Inc. and CVF Investments Ltd. as described above.

## Count III
### (Conversion — Counterclaim-Plaintiffs K T, Inc. and CVF Investments Ltd. v. Benda, Harazim, Forminster, SPV CO and John Does 1–5)

72.    Paragraphs 1–71 are incorporated by reference as if set forth fully herein.

73.    Kotva a.s., either directly or through a wholly owned subsidiary, has or had the right to the proceeds from the sale of the Department Store.

74.    Counterclaim-defendants Benda, Harazim, Forminster, SPV CO and John Does 1–5 unlawfully seized control of Kotva's interest in the proceeds from the sale of the Department Store. In so doing, the counterclaim-defendants deprived Kotva and its shareholders, including

counterclaim-plaintiffs K T and CVF Investments Ltd., of their rights to benefit from the value of the Department Store.

## Count IV
### (Unjust Enrichment —
### Counterclaim-Plaintiffs K T, Inc. and CVF Investments Ltd. v. Benda, Harazim, Forminster, SPV CO and John Does 1–5)

75.    Paragraphs 1–74 are incorporated by reference as if set forth fully herein.

76.    By selling the Department Store and keeping the proceeds for themselves, counterclaim-defendants Benda, Harazim, Forminster, SPV CO and John Does 1–5 have unjustly enriched themselves at the expense of counterclaim-plaintiffs K T, Inc. and CVF Investments Ltd.

## Count V
### (Breach of Fiduciary Duty / Abuse of Control —
### Counterclaim-Plaintiffs K T, Inc and CVF Investments Ltd. v. Benda, Harazim and Forminster)

77.    Paragraphs 1–76 are incorporated by reference as if set forth fully herein.

78.    Harazim is an officer of Kotva a.s., a member of its Supervisory Board and a former member of the board of directors of Kotva a.s.

79.    Benda is the Chairman of the Supervisory Board of Kotva a.s. and a former member of the board of directors of Kotva a.s.

80.    Since 1997, Forminster has controlled a majority of the shares of Kotva a.s. and, since at least 1999, has controlled Kotva a.s.'s board of directors.

81.    As an officer, director and supervisory board member of Kotva a.s., Harazim owes a fiduciary duty of utmost loyalty and good faith to Kotva and its shareholders.

82.    As a director and supervisory board member of Kotva a.s., Benda owes a fiduciary duty of utmost loyalty and good faith to Kotva and its shareholders.

83.     As the entity controlling a majority of the shares of Kotva a.s., Forminster owes Kotva's minority shareholders a duty not to misuse its majority vote.

84.     As supervisory board members of Kotva, Benda and Harazim owe a duty to Kotva's shareholders to monitor the board of directors.

85.     By directing and participating in the repeated transfers of the Department Store for the benefit of the Forminster Group rather than Kotva's shareholders, Harazim, Benda and Forminster breached their respective duties to Kotva's shareholders, including counterclaim-plaintiffs K T and CVF Investments Ltd.

86.     By using their influence over Kotva's board of directors to cause the board of directors to act to the detriment of Kotva and its shareholders, including counterclaim-plaintiffs K T and CVF Investments Ltd., Benda, Harazim and Forminster abused their control over Kotva's board of directors in violation of Czech Commercial Code § 66c.

87.     By allowing and encouraging the board of directors to strip Kotva of the Department Store and not ensuring that Kotva's shareholders would receive fair compensation in exchange, Benda and Harazim breached their duty to monitor Kotva's board of directors to the detriment of Kotva's shareholders, including counterclaim-plaintiffs K T and CVF Investments Ltd.

88.     Counterclaim-plaintiffs K T and CVF Investments Ltd. were damaged by these breaches of fiduciary duty and abuse of control as described above.

### Count VI
#### (Constructive Trust —
#### Counterclaim-Plaintiffs K T, Inc. and CVF Investments Ltd. v. All Counterclaim-Defendants)

89.     Paragraphs 1–88 are incorporated by reference as if set forth fully herein.

90.    The Department Store, the bearer shares in SPV KN and/or the proceeds of the

sale of the SPV KN bearer shares are subject to a constructive trust for the benefit of Kotva's

shareholders, including counterclaim-plaintiffs K T and CVF Investments Ltd.

## Count VII
### (Unfair Competition and Unfair and Deceptive Trade Practices — Andrew Weiss, Weiss Asset Management, K T, Inc. and CVF Investments Ltd. v. All Counterclaim-Defendants)

91.    Paragraphs 1–90 are incorporated by reference as if set forth fully herein.

92.    The Forminster Group and its members are engaged in trade and commerce

within the meaning of M.G.L. ch. 93A.

93.    Counterclaim-plaintiffs Weiss, WAM, K T, Inc. and CVF Investments Ltd. are

engaged in trade and commerce within the meaning of M.G.L. ch. 93A.

94.    The Forminster Group's conversion, fraud, abuse of process, conspiracy and

fraudulent transfers of the Department Store are unfair and deceptive trade practices.

95.    The Forminster Group engaged in these unfair and deceptive trade practices

knowingly and willfully.

96.    As a result of these actions, the counterclaim-plaintiffs have suffered damages as

described above.

## Count VIII
### (Declaratory Judgment — Counterclaim-Plaintiffs K T, Inc. and CVF Investments Ltd. v. All Counterclaim-Defendants)

97.    Paragraphs 1–96 are incorporated by reference as if set forth fully herein.

98.    There is a genuine controversy between counterclaim-plaintiffs K T, Inc and CVF

Investments Ltd. on the one hand and Benda, Harazim, Forminster, SPV CO and John Does 1–5

on the other hand as to who should receive the proceeds of the sale of the Department Store.

99.    Benda, Harazim, Forminster, SPV CO and John Does 1–5 have obtained possession of the sale proceeds through unlawful means. Accordingly, they have no right to those proceeds.

100.    The sale proceeds belong instead to Kotva a.s. and its shareholders.

101.    There is a genuine controversy between counterclaim-plaintiffs K T, Inc. on the one hand and Benda, Harazim, Forminster, SPV CO and John Does 1–5 on the other hand as to whether Forminster is the rightful owner of over 55% of the shares of Kotva.

102.    By unlawfully maintaining control of these shares, the Forminster Group is able to maintain control over Kotva and take actions to the detriment of minority shareholders including counterclaim-plaintiffs K T, Inc. and CVF Investments Ltd.

103.    The Forminster Group has no legal right to its Kotva shares because those shares were either stolen from Trend or represent the proceeds of other assets stolen from Trend.

### PRAYER FOR RELIEF

WHEREFORE, counterclaim-plaintiffs Andrew Weiss, Weiss Asset Management LLC, K T, Inc. and CVF Investments Ltd. respectfully request that this Court:

(a)    Enter judgment for the counterclaim-plaintiffs and against the counterclaim-defendants on all counts of the Counterclaim;

(b)    Impose a constructive trust on the proceeds of the sale of the Department Store;

(c)    Declare that the shareholders of Kotva a.s. are the owners of the proceeds of the sale of the Department Store;

(d)    Declare that the Forminster Group is not the rightful owner of the shares of Kotva a.s. to which it claims ownership;

(e)    Enter an Order requiring Benda, Harazim, Forminster and John Does 1–5 to
        disgorge the proceeds of the sale of the Department Store and transfer them to
        the shareholders of Kotva, a.s.;

(f)    Award damages on Counts 1, II, III, IV, V  and VII, including treble damages
        on Count VII;

(g)    Award the counterclaim-plaintiffs their costs;

(h)    Award the counterclaim-plaintiffs their attorneys' fees; and

(i)    Grant such other relief as the Court deems just and proper.

## JURY DEMAND

DEFENDANTS AND COUNTERCLAIM-PLAINTIFFS DEMAND TRIAL BY JURY ON
ALL ISSUES SO TRIABLE.

Respectfully Submitted,
ANDREW WEISS, WEISS ASSET
MANAGEMENT LLC, K T, INC. and CVF
INVESTMENTS LTD.

By their attorneys,

Edward P. Leibensperger (BBO# 292620)
Michael Kendall (BBO# 544866)
Benjamin A. Goldberger (BBO# 654357)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts  02109-1775
(617) 535-4000

Dated: June 15, 2005

## CERTIFICATE OF SERVICE

I, Benjamin A. Goldberger, hereby certify that on the 15th day of June, 2005, a true and correct copy of the foregoing document was served by overnight delivery on counsel of record for Kotva a.s.

Benjamin A. Goldberger

1

EXHIBIT 1
SUMMARY OF COUNTERCLAIMS

| Count / Defendant | I Abuse of Process Weiss and WAM | II Conspiracy Weiss, WAM, KT and CVFI | III Conversion KT and CVFI | IV Unjust Enrichment KT and CVFI | V Breach of Fiduciary Duty / Abuse of Control KT and CVFI | VI Constructive Trust KT and CVFI | VII Unfair Trade Practices Weiss, WAM, KT and CVFI | VIII Declaratory Judgment KT and CVFI |
|---|---|---|---|---|---|---|---|---|
| Kotva a.s. | X | X | | | | X | X | |
| Forminster | X | X | X | X | X | X | X | X |
| SPV CO | X | X | X | X | | X | X | X |
| Benda | X | X | X | X | X | X | X | X |
| Harazim | X | X | X | X | X | X | X | X |
| John Does 1–5 | X | X | X | X | | X | X | X |

2

Case 1:05-cv-10679-WGY    Document 29-2    Filed 10/17/2005    Page 213 of 226

**ČESKÁ REPUBLIKA**

Lichtenštejnské důkazy o vytunelování Trendu

# Heslo: PIANO ČERNÝ

*Rekonstruujeme modelový příklad, jak vytunelovat investiční fond. TÝDEN získal dokumenty, které nasvědčují tomu, že tzv. prodej obchodního domu Kotva do zahraničí byl jen trikem*

Kauza OD Kotva (tržní hodnota činí asi 2,885 miliardy korun) je bitvou v Čechách nevídaného rozměru. Je opřepřena několika vězněných osobami, desítkami žalob, kampaněmi známých mediálních agentur i nebývalou koncentrací nejprestižnějších českých advokátů. Dříve než zrekonstruujeme případ na základě nejnovějších poznatků TÝDNE, shrňme jeho podstatu: firma Královéhradecká brokerská, a s (KHB), se podle dokumentů, které máme k dispozici, pokusila majoritní podíl Kotvy převést z investičního fondu Trend prostřednictvím zahraniční společnosti ve prospěch dosud nespecifikovaných subjektů či osob Případ je jedním z nejkomplikovanějších v moderní historii komerčního práva u nás

### Rekonstrukce kauzy Trend & Kotva

Fond Trend (založený Bankou Skala a Montovanými stavbami) využil politického zázemí Michaela Kocába a podnikatelských schopností Martina Kratochvíla k důvěryhodnému úspěchu v kupónové privatizaci Prvním nebezpečím pro "otce zakladatele" fondu Trend byla aktivita spojená se sdružováním menších akcionářů a skupováním akcií Trend se pokusil zabránit vzniku silné minoritní skupiny akcionářů, která by mohla vynutit statutární orgány složené z otců zakladatelů" Rozhodli se pro výplatu velmi slušných dividend (s předpokladem, že původní akcionáři fondu namísají dividendou, akcie neprodají) To však zjevně nestačilo a po několika měsících dikové opět prodával akcie fondu investorovi, který je shromažďoval (šlo o firmu

Czech Value Fund, která v případu hrála podstatnou roli)

V únoru 1995 byla založena nová investiční společnost Trend, a. s., se základním jměním 1 000 000 Kč, mezi jejímiž akcionáři byli i Michael Kocáb a Martin Kratochvíl Tato společnost pak fond Trend spravovala Její založení a existence se však zdají silně účelové Akcie správcovské společnosti Trend, a. s., byly totiž 2. srpna 1995 prodány firmě Královéhradecká brokerská, n. s. za 318,365 milionu korun Jejím hlavním akcionářem byl Miroslav Hálek (nyní ve vazbě) Z tohoto obchodu měl Kocáb zisk 36,142 milionu Kč že se jednalo o první a zásadní faul v akcionáře fondu Trend, je zřejmé z Kocábova prohlášení

v listopadu 1997: "V případě že minoritními akcionáři fondu Trend nebudu mít taková oprávnění, tuto sumu nebudu chtít a použiji ji na nějaký dobročinný ale kontrolovatelný účel"

### Tunel hned na počátku

Noví správci z Královéhradecké brokerské uskutečnili první podílový obchod s akciemi již tři týdny poté, co správcovskou firmu koupili Ve třech smlouvách prodali lukrativní akcie z Trendu (Telecom Chemopetrol a Synthesia) společnosti Consult Invest (jejíž šéf je nyní ve vazbě) za 487 milionů korun Kupec zaplatil jen první splátku (135 milionů), zbytek zůstal dlužen dodnes, čímž Trend ztratil 352 milionů korun Akcie držel pár dnů a obrátem je prodal firmě spřízněné s Královéhradeckou brokerskou

Porovnání čísel vede logicky k podezření, že šlo o pokrytí investic KHB za koupi

správcovské imo stříní společnosti Trend, a s., větší masu spotřebitelní provize co tři ba uvést že v téže době již šlo zůstávali v představenstvu fondu Trend Michael Kocáb a Martin Kratochvíl, avšak oba tvrdí že v obchodu, kdy fond prodával lukrativní akcie byli na dovolené v zahraničí

### Na řadu přišla Kotva

Koncem roku 1995 vlastnil Trend přibližně 20 procent akcií Kotvy Hálkovi, který byl te hdy už ve je n majitelem správcovské firmy ale i představení představenstva samotného fondu Trend se postupně podařilo shromáždit v rozličných firmách různými způsobem celkem 65 % akcií Kotvy

O tento obchodní dům měla zájem právě již zmíněná společnost Czech Value Fund (CVF) Během roku 1996 proto koupila na kapitálovém trhu 37 procent akcií fondu Trend za zhruba 10 milionů dolarů a 1 listopadu byli zvoleni její zástupci - John Moffit a Michael Blum - do představenstva fondu O týden později, když oba zjistili, že fond již byl vytunelován, byla na jejich nátlak ministerstvem



Ve vazbě. Miroslav Hálek (v popředí), bývalý předseda představenstva IF Trend obviněný vyšetřovatelem z trestného činu podvodu. (6. března 1997 na chodbě Krajského úřadu vyšetřování v Hradci Králové.)

finanční systém na fond Trend
měl mít správa Londýnský
a dále I spol. čnosti vlastníl č
i VI pan Klapsmoth svého
času prohlásil, že odpovéd-
ost za špatné hospodaření ni
sobě Trend nese spolu s Hál-
em a jeho pře dstavenstvem
a jeho dstavenstvo předchází jí-
ž i tedy Michael Kocáb a jeho
podřízení

## Zablokování účtu

John Moffit, šéf CVF, však
začátkem roku 1997 přechází
za pomocí Michaela Kocába
i advokátní kanceláře Váňa,
Pergl a partneři (AK VPP) do
tvrdého útoku. Účty Trendu
byly rozhodnutím soudu
zablokovány, ale rozhodnutí
oudu se dostalo do Středska
č nných papírů pozdě. Hálek
i spol. proto stihli prodat
vým spřízněným firmám kon-
cem ledna 1997 z již zabloko-
vaných účtů Trendu asi
14 procent akcií Kotvy. Kro-
mě toho stahovali další akcie
i nakonec 30. ledna 1997
Hálek a spol. balík o velikosti
56 % akcií Kotvy prodali za
80 milionů Kč kyperské firmě
Forminster Enterprises Limi-
ted (FEL). Začátkem března
s ocitli v vazbě a 65 % akcií
Kotvy státní úředníci zabloko-
vali. Tak propukl naplno nev-
šední právní spor mezi FEL
i Czech Value Fund

## Bitva advokátů

V kontátl z advokátní kancelá-
Váňa, Pergl a partneři ve
zbách minoritního akcioná-
e Czech Value Fund vstupují
i gáni fondu Trend
ídnu již jako statutární
upci, ale zároveň Mgr.
ert Pergl a Mgr. Radek
(0 íha z AK VPP na valných
tro mádách Trendu vystupují za
Trend v roli právníků a podaří
se jim v přímém souboji zvlá-
dl nosl zástupci FEL. Advokát
F ul prohlašuje v Právu
z 10 1997): a ted jsme
odn t h o t s sebe. jejich před-
t í Ou to po hodině
tel S udržel to nervově.
Tok z upí dvě předsta-
t tl t rv Pergl vystavu-
je s ne plnou moc
V r u t 1997 pověřuje
nový íc ak 56 procent Kotv-
vy. kle v t Lyperský FEL,
zastup c m advokátní kan-
celář H n L r Toman

a partneři. Do obchodního rej-
stříku však bylo 4 srpna
zapsáno představenstvo mino-
ritního vlastníka - tedy Czech
Value Fund.

V srpnu 1997 je podepsána
další zvláštní smlouva: koncí-
pient JUDr Tomana bývalý
ředitel Bezpečnostní infor-
mační služby Stanislav Devátý
od starého hálkovského
představenstva koupil za
2,886 miliardy korun Kotvu
jako nemovitost (Stalo se tak
zaregistrováním na katastrál-
ním úřadě v Praze, součástí
operace bylo deklarované
zpětvzetí ) Smyslem této ope-
race byla snaha kyperské fir-
my FEL, kterou Tomanova
kancelář zastupovala, zabránil
jakémukoliv nakládání
s majetkem Kotvy V listopadu
1997 pak došlo ke zrušení
této smlouvy, protože údajně
nebezpečí neoprávněného
nakládání s nemovitostmi
pominulo

## Bankovní dokumenty

Vraťme se však k zásadní otáz-
ce, otázce právoplatnosti důle-
žitých rozhodnutí a k otázce,
oč usiłovala firma FEL.

V prosinci 1997 zrušil Vrch-
ní soud v Praze zápis minorit-
ního představenstva a na
bojovné prosincové valné hro-
madě Kotvy, kterou vedl
JUDr Tomáš Sokal (pověřen
většinovým vlastníkem Tren-
du, tedy kyperskou společnos-
tí FEL), došlo ke zvolení nové-
ho představenstva. V něm se
z ničeho nic objevil zástupci
Českého investičního holdingu
(ČIH). Ten zastupovala další
přední advokátní kancelář
KHŽ. Bělina & spol Jak se
však mohl český investiční
holding objevit v této hře?
Holding ČIH koupil od kyper-
ského FEL opci na akcie Kot-
vy. (Této valné hromadě byl
přítomen mimo JUDr. Toman
a i JUDr. Josef Lžičař - taková



„PIANO ČERNÝ". Tak zní heslo umožňující operovat s kontem společ-
nosti kyperské firmy Forminster Enterprises Limited v LGT Bank in
Liechtenstein. Z dalšího dokumentu jsou patrné podpisové vzory
na Forminster Enterprises Limited v LGT Bank in Liechtenstein. Jde
o důkaz o tom, že Hálek a spol. mohli s kontem volně disponovat.

koncentrace nejrenomovaněj-
ších č ských právníků nastala
v naších novodobých dějinách
popravé )

ČIH je ryze český investor,
pro nehož je investice do akcií
Kotvy obchodem s únosnou
mírou rizika. Jeho zástupce
budou v ořgánech Kotvy při-
nejmenším do té doby, než
soud rozhodne, komu zabloko-
vané akcie vlastně patří Role
ČIH se zdá v případě operací
týkajících se Kotvy spíše
náhodná

## „PIANO ČERNÝ"

Prosincová valná hromada
Kotvy tedy nedopadla pro
Czech Value Fund dobře a jen
několik dnů poté se objevuje
prohlášení advokátky
JUDr Jirkové z advokátní kan-
celáře Váňa, Pergl a partneři
v LN (12 12 1997), že mají
důkazy o tom, že kyperská fir-
ma FEL je pouze Hálkovou
schránkou TÝDNU se podařilo
část těchto dokumentů získat
Pokud by se potvrdila jejich
pravost, podařil by se advoká-
tům husarský kousek (vzpo-
meňme si, že stejní právníci
vnesli jasno i do kauzy tunelo-
vání CS Fondů, když popsali
přesné toky peněz)

V případě Trendu by totiž
prolomili bankovní tajemství
lichtenštejnské banky LGT
Bank in Liechtenstein, kde
kyperská firma FEL měla svůj
účet Hálek si totiž měl „prona-
jmout" firmu FEL ke svým
obchodům, což má dokazovat
plná moc od kyperského FEL
pro nakládání s jeho kontem
ve prospěch Hálka a heslo pro
telefonické příkazy: „PIANO
ČERNÝ" Je nepravděpodob-
né, že by kyperský občan zvolil
heslo v češtině

Tento průlom však určitě
povede k objasnění celého pří-
padu. Hálek a spol s největší
pravděpodobností využil spol-
ečnosti FEL k převodu majet-
ku z fondu Trend ve prospěch
vlastních firem. Angličanům
z Czech Value Fund, který za
akcie Trendu zaplatil zhruba
10 milionů dolarů, a dalším
investorům se pak snad vrátí
peníze vložené do akcií fondu
Trend neskončil. podle zasvě-
cených právníků může být
ještě vzneseno až padesát
žalob

JAROSLAV PISKOR ◼
*(Autor je volný reporter)*

LIECHTENSTEIN EVIDENCE ON THE TUNNELING OF TREND

# Password: PIANO BLACK

Reconstruction of a model case of how to tunnel an investment fund: TYDEN
has evidence supporting the suspicion that the so-called "sale" of Kotva
Department Store to abroad was a mere fraudulent trick.

TÝDEN MAGAZINE 04/1998

The case of Kotva DS (with the market value of about 2,885 billion Czech Crowns) is a battle
of unseen dimensions in the Czech Republic. It is spiced up with people turned in jail, dozens
of court claims, campaigns of well-known PR agencies as well as an unusual concentration of
the most prestigious Czech lawyers. Before we present to you our reconstruction of the case
on the basis of the newest findings by TYDEN, let's focus on its fundamental aspects: the
company Kralovehradecka brokerska, a.s., (KHB), has attempted, as the documents we have
acquired show, to take the majority share in Kotva out of Trend and transfer it via a foreign
company to the benefit of not yet specifiable persons or entities. The case is one of the most
complicated ones in the modern history of commercial law in our country.

### Reconstruction of the case of Trend & Kotva

The mutual investment fund Trend (founded by Skala Bank and the company Montovane
stavby) took the advantage of the political background of Michael Kocab in combination with
the business talents of Martin Kratochvil and won a credible success in the voucher
privatization. The first activities perceived as a threat by the "founding fathers" of the fund
were the activities concerning the grouping of small shareholders and the purchase and
concentration of shares. Trend made an attempt to prevent a strong minority shareholders'
group that would have the power of replacing the statutory bodies of the fund composed of
the "founding fathers" from coming into existence by having made an offer of very good
dividends (assuming that the original shareholders, satiated by such dividends, shall not get
rid of their shares). However, this tactic did not prove effective enough and in a few short
months, the investment vouchers holders (shareholders) started selling off their shares to the
investor accumulating them again (the company Czech Value Fund, which shall turn out to
play a significant role in the case later).

In February 1995, the new investment company Trend, a s, was founded having the
registered capital of CZK 1,000,000, amongst whose shareholders were also Michael Kocab
and Martin Kratochvil. This company undertook the administration of Trend. Its foundation
and existence alone, however, seem to be very purpose-sown, since the shares of the
administrating company Trend, a.s., were, on 2 August 1995, sold to Kralovehradecka
brokerska, a.s, for the price of CZK 318,365,000, whose major shareholder was Miroslav
Halek (held in custody now). Kocab's profit from this deal came to be CZK 36,142,000. The
fact that this transfer was the first and principal foul against Trend's shareholders is borne out
in Kocab's public announcement of November 1997: "In the case that the assets of the
minority shareholders are not returned to them, I will not accept this sum of money but give it
up to some charitable purpose under good control."

**Tunnel from the beginning**

The new administrators of Trend from Kralovehradecka brokerska realized their first fishy deal with the shares already three weeks after their takeover of the administrating company. Under three contracts they sold the lucrative shares of Trend (Telecom, Chemopetrol and Synthesia) to the company Consult Invest (whose boss is in custody now) for 487 million Czech Crowns. The purchaser only paid up the first installment (135 million) owing the rest until today – and having Trend lose 352 million in result. Moreover, it only held the shares purchased for a couple of days and then resold it to a company tied to Kralovehradecka brokerska

The simple comparison of the figures logically and immediately leads to a suspicion that this transaction served to cover the investment of KHB for the purchase of the administrating investment company Trend, a.s., including a 10% provision. We need to add at that time, Michael Kocab and Martin Kratochvil were still sitting on Trend's Board of Directors but both of them assert they were on holiday abroad and out of touch when the fund was selling the lucrative shares.

**Eyes on Kotva**

By the end of 1995, Trend owned about 20% of shares in Kotva. Halek, who was then not only the owner of the administrating company but already sat in the chair of the Chairman of the Board of Trend itself, gradually succeeded in gathering up 65% of shares in Kotva within all sorts of various companies.

The already mentioned Czech Value Fund (CVF) was interested in the Department Store and during 1996, it bought 37% of the shares in Trend on the capital market for about $ 10 million: on 1 November, the representatives of CVF, John Moffit and Michael Blum, were elected in the Board of Directors of the Fund. A week later, when they found out that the fund had already been tunneled out, the Ministry of Finance under their pressure imposed forced administration on Trend. The London executive of the company controlling CVF, Mr. Kingsnorth, once commented that it is not only the Board of Directors headed by Halek, who should be held responsible for the poor management of the fund, but also the previous Board of Directors, i.e. Kocab and his associates.

**Account Freezing**

John Moffit, the head of CVF, turns to fight back hard with the help of Michael Kocab and the law firm Vana, Pergl and Partners (AK VPP) in 1997. The accounts of Trend are frozen but the freezing order arrives at the Prague Security Center too late, which gives enough room to Halek and Co. to use their time and resell about 14% of the shares in Kotva from the frozen account to their crony companies by the end of January 1997. Besides that, they kept on removing other shares until they finally managed, on January 30, 1997, to sell the bulk of 56% shares in Kotva to the Cyprus company Forminster Enterprises Limited (FEL) for CZK 80 million. At the beginning of March, they were eventually put in custody and the governmental officials managed to freeze 65% of the shares in Kotva. This kicked off an unprecedented legal dispute between FEL and Czech Value Fund with violence.

**The battle of lawyers**

The lawyers from AK VPP hired by the minority shareholder, Czech Value Fund, enter the statutory bodies of Trend. They become the statutory representatives in April but at the same time Mgr. Robert Pergl and Mgr. Radek Blaha of AK VPP act in the role of Trend's attorneys at the general meetings of Kotva and they succeed in beating the reps of FEL in a head-on combat. As the attorney Pergl says in an interview for Pravo (newspaper) on October 27, 1997:"...and now we spoke over each others voices, me and their Chairman. And he gave it up in an hour – didn't have the nerves for it." In result, two Boards of Directors of Kotva emerge. Pergl draws up a power of attorney for himself.

In June 1997, the new owner of the 56% shares in Kotva, FEL from Cyprus, appoints as its attorney the law firm JUDr. Petr Toman and Partners. However, the Board of Directors nominated by the minority shareholder, i.e. Czech Value Fund, was already registered in the Commercial Register on August 4

In August 1997, another fishy contract is signed: the junior lawyer of JUDr. Toman, the ex-head of the Security and Information Agency of the Czech Republic Stanislav Devaty buys Kotva as a real estate from the old Halek's Board of Directors for 2,885 billion Czech Cronws (it was achieved by the registration at the Land Registry of Prague, and the part of the transaction was the declared retraction of the contract after the fulfillment of certain conditions). The purpose of this transaction was the effort of the Cyprus company, being represented by Toman's law firm, to prevent any possible manipulation with the property of Kotva. In November 1997, this contract was cancelled since the danger of illegal disposition allegedly ceased to exist

**Bank Documents**

But lets get back to the principal question of legality of the crucial decisions that were made and also to the one of what was FEL really after?

In December 1997, the Supreme Court in Prague abolished the registration of the minority Board of Directors and the new Board of Directors was elected at the inflammatory general meeting headed by JUDr. Tomas Sokol (appointed by the majority owner of Trend, the Cyprus company FEL). The new Board of Directors was partly made up of the reps of Czech Investment Holding (CIH). Out of the blue. CIH was represented by another leading law firm, Kriz, Belina & Co. But how did CIH get in the game? CIH bought an option for the shares in Kotva from Cyprus FEL. (By the way, personas like JUDr. Toman and JUDr. Lzicar were to be found at this general meeting – creating a concentration of the most renowned Czech lawyers per meter square unseen in our modern Czech history )

CIH is a purely Czech investor for whom the investment in the shares in Kotva represents a transaction with a bearable risk. Its representatives shall remain in the statutory bodies of Kotva at least until the decision is finally made as to who is the owner of the frozen shares in Kotva. The role of CIH in the transactions around Kotva seems to be rather a coincidence than anything else.

## "PIANO BLACK"

The December general meeting of Kotva didn't work out too well then for Czech Value Fund; a few days later, a statement by JUDr. Jirkova of the law firm Vana, Pergl and Partners appears in the press (LN, December 12, 1997) saying that they possess evidence that Cyprus FEL was nothing but Halek's money chest. TYDEN managed to get a hold of a part of these documents of evidence. If their authenticity is proved, the lawyers would have managed a quire an impressive feat (let us remember that it was the same law firm that brought the light into the case of the tunneled out CS Funds, having disclosed and described the exact money flows used).

In the case of Trend it would mean that they were able to break through the bank secret of LGT Bank in Liechtenstein where the Cyprian FEL held its account. By their allegations, Halek was supposed to "hire" FEL for his own business, a fact that should be evidenced by FEL's power of attorney for Halek to handle its account, including the phone-banking password 'PIANO BLACK'. It is rather unlikely that a Cyprus citizen would have selected a password in the Czech language.

However, it seems certain that this breakthrough will lead to the clarification of the whole case. Halek and Co. have most likely used FEL to transfer the assets from Trend to the benefit of the various companies owed by them. Hopefully, the Britons of Czech Value Fund, having paid about 10 million Czech Crowns for the shares in Trend, as well as the other investors have finally began to see the chance of recovering their investments put into the shares of the fund. Although the story is not over with yet and the lawyers initiated in the case claim that about 50 more court claims may still be brought and tried.

JAROMIR PISKOR
*(an independent journalist)*

# Případ Trend: Co se dělo, všichni vědí, ale majetek se vrátí jen stěží

### S jídlem roste chuť

### Rozhýbat stát

### Tunel končí na Kypru

### Boj o Kotvu

### Koncipient a tři miliardy



### Návrat majetku nejistý

## Jak získal Forminster peníze na nákup Kotvy

## Vývoj sitnace okolo Trendu

Sběhy připravil Alexek POKORNÝ

## Kocáb: Za to, jak fond skončil, cítím odpovědnost



### Tunel stíhá tunel

### Tři rovnocenné nabídky

### Lobbing nebo občanská povinnost?

### Jeden ze způsobů, jak Trend přišel o majetek

**TREND case – everybody knows what happened but the assets will hardly be restored**

Slovo daily - September 18, 1997 - Prague

The TREND case seems to be the touchstone with regards to tunnelled investment funds. At first appearance, this case seems to arouse optimism, as the main participants in the fraud connected to Královéhradecká Brokerská are in custody, the majority of the embezzled assets is frozen in the accounts kept with the Securities Centre and the majority shareholders of TREND assumed control over Kotva department store, which represented Trend's main asset. However, is everything as clear as this and will the former owners get their property back?

TREND, from which its managers "drained" CZK 1.25 billion, was the first investment fund to be placed under forced administration. However, the steps undertaken in the investment funds by Královéhradecká brokerská were far from isolated in the Czech Republic. *"Such deals were by then commonly undertaken. Dozens of other similar deals – and I would not be surprised if there were hundreds – were undertaken even without being noticed"*, confirms the Stock Exchange analyst Michal Konečný from Komero.

**The taste grows with food**

TREND was one of the most successful investment funds in coupon privatisation. Within both waves of the privatisation, more than 100.000 "DIKS" (designation of the holders of the investment coupons – remark of translator) put their points to this fund and its assets amounted to CZK 1.3 billion. However, very soon after the purchase of TREND from Michael Kocáb by Miroslav Hálek and his company Královéhradecká brokerská, the assets of the fund decreased to one twentieth. The managers of the fund could probably have effectuated even this step without difficulties. The whole group around Královéhradecká brokerská may thank its greed for more than half a year of custody.

As taste grows with food, Mr. Hálek tried to sell the empty shell of the investment fund to a foreign investor – the British Czech Value Fund belonging to a group of British Regents Funds. Before this the investment company Prag Invest had already started to buy up shares in TREND from the minority shareholders for this investor. Prag Invest warned the British investors about the bad state of TREND. The fund was, however, in far worse condition than the British investors anticipated, and consequently, they hired lawyers and started immediately to bombard the state authorities.

**To make the state move**

*"The shareholders would not be able to do anything whatsoever. The Ministry would maybe put the fund under forced administration, but nothing more"* says Robert Pergl from the law office Váňa, Pergl and Partners, which took on the representation of Czech Value Fund and of the tunnelled TREND. *"The TREND case is completely clear. It was an absolute lack of professionalism and crooks are presently much more careful"* he alleges.

*"It was most difficult to make the state act and to compel it as well as all the other institutions, as for example the supervision over the capital market, to handle the case"*, he says. *"Initially, the state authorities were perplexed, they did not know what to do whatsoever. However, the situation soon made a turn"* he adds. The result of the efforts of the

shareholders was that, at the beginning of the May, the court took into the custody the first five participants in the fraud and one moth later, two other participants. The whole work of detecting the embezzled property was, however, several times incomprehensibly complicated by the court, which for example decided, at the end of the January, on the freezing of shares in Sokolovská uhelná and in Kotva in the accounts of the company IFM, but it delivered the freezing order only to the company IFM and failed to deliver it also to the Securities Centre. Consequently, the shares could have disappeared, on the same day, from the account. Within a further few days the court made a grave mistake for the second time, when it ordered, at the request of the Police, the freezing of all the accounts of KHB and of the companies linked to it, however, it confused the number of one of the accounts, in which there was deposited, by coincidence, all the money concerned – i e. several hundred million Czech crowns. However, this failure contrived to be rectified.

## The tunnel ends in Cyprus

The most valuable asset of TREND was represented by the majority block of the shares in KOTVA. These share also disappeared. However, the court finally succeeded in freezing these shares in the account of the Cyprus company Forminster Enterprises Limited.

The mode of acquisition by FEL of the money for the purchase of the shares in Kotva is particularly remarkable: FEL arranged the transfer of the shares in Sokolovská uhelná from KHB to Atlanta Safe and acquired by this sole business deal the unbelievable profit of CZK 135 million (see table). After the purchase of 55.73% of shares in Kotva for less than CZK 83 million, more than CZK 50 million remained with FEL. *"It is true that a profit of CZK 135 million from one business deal is unusual, but it is not prohibited by law The Act on money laundering could however apply to this business deal and the person who undertook this deal should have reported it immediately to Ministry of Finance"*, estimates the analyst Konečný.

The shares in KOTVA were probably intended to be further transferred, however, before this could be effectuated, the court had finally frozen the account of FEL. Nevertheless, FEL, which was meanwhile bought by the French company DUNA with total assets amounting to CZK 200,000, alleges that it acquired the shares via a legitimate purchase and that it has no connection with KHB, which tunnelled TREND.

However, the brokers have a different opinion. *"These business deals prove an evident connection between KHB and FEL"*, alleges Mr. Pergl and he also points out that the majority block of shares was sold for half of the price for which the shares were sold at the time on the Stock Exchange. *"The bigger the block of shares is, the higher is the average price of one share Not even a multiple of the price on the Stock exchange is exceptional"*, agrees Konečný.

## Lobbing or civil duty?

Meanwhile, the state authorities finally started to work faster, which is showed, inter alia, by more than a dozen of the frozen accounts with shares, which originated from TREND. However, the majority shareholders allege that this is all due to Michael Kocáb who exploited his good connections *"The court succumbed after more than one year to consistent media pressure and to the one-sided description of the situation that the heroes from Trend are saving the minority shareholders In fact, they seek to assume control over KOTVA, which was legally purchased by FEL"*, alleges Mr. Petr Toman. *"The courts undoubtedly did not act*

*in our favour and were committing a lot of mistakes.*" counters Mr. Pergl and refers to the two above-mentioned mistakes of the commercial court in Hradec Králové.

Michael Kocáb does not deny that he negotiated about TREND with Ministers Ruml and Parkanová and with the Supreme Public Prosecutor Mr. Hrbotický, however, he defends himself against the charge of misuse of his contacts. "*It was not lobbying but a civil duty. When someone sees a thief, he should come forward. It is not a pleasure for me to be engaged in this case, but we have to understand that when you make your bed you must lie in it*", says Kocáb and adding that if he did not do anything he would certainly be charged with idleness. "*We have always played fairly, we tried to give the property back to the robbed,*" he adds.

## Battle for KOTVA

Meanwhile, the battle for TREND was definitively transformed into the battle for KOTVA. In spring, two general meetings of the department store took place within a short time period, at which two groups of shareholders refused to acknowledge one another and elected their own Boards of Directors. The minority shareholders allege that FEL did not announce, after the acquisition of the majority block of shares, that it was acting in concert with KHB and simultaneously failed to offer publicly the purchase of shares, which is why FEL lost all voting rights for a one-year period. However, FEL counters that in such a case it would lose only shares exceeding 50%. Total prevention from the possibility of exercising the rights of a shareholder is too hard a sanction. "*This case is a precedent, no other court has ever decided on such a case,*" alleges Mr. Tomáš Pelikán, who specialises in commercial law. According to him, the legal provisions are not completely clear in this case. Nevertheless, the court has not decided yet on the cancellation of the exercise of the rights of the shareholders of FEL and it refused requests from the minority shareholders regarding the delivery of the interlocutory injunction preventing FEL from the possibility of voting at yesterday's general meeting.

Both parties have filed several petitions against one another, which must be now treated by the court. The commercial register registered, on August 4, the Board of Directors elected by the minority shareholders around the Czech Value Fund. This registration was, however, immediately questioned by the majority shareholders. The attorneys of both the parties filed also a complaint with the Bar Association against their colleagues and charged them thereby with unethical behaviour.

## Law clerk and three billion

The case has gathered steam approximately a month ago. Kotva was bought from FEL through a purchase agreement by the former chief of BIS and current law clerk of Mr. Toman's law office, Stanislav Devátý, who has immediately admitted that the agreement was fake and that he hasn't got any money. "*If someone does something like that, he is absolutely hopeless. Attorneys at law should advise their clients and not purchase department stores for them and even admit to this as being a fake,*" says Pergl.

"*We were afraid that transfer of the real estate of Kotva to third persons was being prepared. The only lawful way how to foil this transfer was to make a seal at the Land Registry. The purpose is nothing else but sealing possible transfers until the court issues a final and binding decision on the ownership of Kotva,*" explains Mr. Toman.

Subsequently, Devátý and Forminster granted together a power of attorney to Michael Kocáb, authorising him exclusively to remove the lead seal from the Land Registry. Before this removal could have been effectuated he must have already received a signed agreement on the cancellation of the purchase agreement, which now lies with the notary. *"We needed again a trustworthy person, and so we chose the representative of the other party,"* says Toman.

Kocáb, however, strictly objects to the abuse of his name. *"If I had accepted that, I would have in fact legalized all their steps,"* he says indignantly. At the same time he refuses to accept Toman's interpretation of all these steps. *"By doing this acrobatic step in public, they intended to achieve that the view that it would not be considered as tunnelling. If some famous person pick pockets pedestrians on the Wenceslas square, grimacing and screaming. I am not stealing, would that also be in order?"* chafes Kocáb. Mr. Tomáš Pelikán thinks that all this is just a useless racket. *"The legal act, which has not been made seriously, even if made in writing, is invalid according to law,"* he asserts.

### The return of the property is uncertain

The thing that the shareholders of Trend, and of the other tunnelled funds, are principally interested in is, however, not the dispute of the two shareholders over the department store, but the question whether the state will finally begin to chase these cases fiercely and, principally, whether it will return the stolen property to them. Certain advances have been made, but there is no decisive campaign against the depravity on the Czech Capital market.

The stock market's analysts doubt that the entire property will return to the shareholders of Trend, although the vast majority of its original shares are frozen in the accounts of the Securities Centre. *"New owners must win the eventual court disputes. The shares are not numbered and it will be difficult to determine who was their original owner,"* says Michal Konečný from Komero. According to him, the purchaser will always, bar some exceptions, prove that he acted in good faith. But Pergl thinks the opposite. *"We have informed all of them in press. Whoever monitors the capital market must also know that KHB and the companies connected with it sold the stolen shares,"* he says. *"No one will prove to anyone that he knew about this media campaign,"* opposes Konečný. *"We are Trend's attorneys at law, and therefore we must assert that they knew, and they will evidently assert that they did not. It is up to the court to decide,"* concludes Pergl.

**Table:**
**How FEL acquired the money for the purchase of KOTVA**



TREND

shares

IFM

The Regional Commercial Court in Hradec Králové decided, on January 24, on the freezing of the shares in the account of IFM. The judge, however, failed to deliver this decision to the Czech Securities Centre and consequently, Mr. Hálek and Co. were warned in time and managed to transfer the shares.

24.1 1997
357,000
shares for
CZK 320
per share

The contract of 22.1 1997 on the purchase of 357,000 shares for CZK 700 per share

KHB

ATLANTA SAFE

24.1 1997
357,000 shares
for
CZK 320 per
share

27.1.1997
357,000 shares
for
CZK 700 per
share

FORMINSTER

The profit of this sole financial operation amounts to CZK 135.6 million.

```
Titulek:        Trend:Předání  tuneláŕů  soudu  je  signálem  pro  zahraniční
investory
Datum vydání:   2.10.1998
Čas vydání:     15:53
Klíčová slova:  ČR; obchod; Trend; obžaloba
ID:             19981002F02034
Servis:         ece
Priorita:       4
Kategorie:      obo; zak; fin
```

Trend:Předání tuneláŕů soudu je signálem pro zahraniční investory

PRAHA 2.řijna (ČTK) - Předáni tuneláŕů investičnich fondů Trend a Mercia
soudu je očekávaným signálem pro zahraniční investory. ČTK to v reakci na
obžalobu sedmi osob stíhaných v případu vytunelování investičnich fondů Trend
a Mercia řekl současný člen představenstva Trendu John Moffitt. Jak dodal,
případ je zlomovým pro celý český kapitálový trh.

Moffitt také připomněl, že tunelování Trendu je prvním případem v ČR, kde by
měly být stihané osoby obžalovány z trestného činu zločinného spolčení.
Důkazy shromážděné v trestním řízeni dokládají, že společnost Forminster
Enterprises Limited, na niž byly převedeny z Trendu akcie Kotvy, stále ovládá
Miroslav Hálek, který řídí boj proti Trendu dokonce i z vězení, dodal Moffitt

Na sedm osob stihaných v připadu vytunelování investičnich fondů Trend a
Mercia podal ve čtvrtek královéhradecký krajský státní zástupce obžalobu k
tamnímu krajskému soudu. V současnosti je ve vazbě z obviněných pouze
Miroslav Hálek. Jeden z největších případů poškození investičnich fondů v ČR,
kde škoda činí více než 1,3 miliardy korun, se tak dostává tímto
krokem do závěrečné fáze.

Státní zástupce obžalované viní ze spáchání trestných činů zneužití informaci
v obchodním styku a zpronevěry spáchaných ve zločinném spolčeni či pro účast
na tomto spolčeni. Pokud budou soudem uznáni vinnými, hrozí jim až 15 let
vězeni.

Marcela Prošková jw

---

**Title:** Trend: Handing over of tunnellers is signal for foreign investors
**Date of issue:** October 2, 1998
**Time of issue:** 15:53
**Key words:** Czech Republic; business; Trend; charges
**ID:** 19981002F02034
**Service:** ece
**Priority:** 4
**Category:** obo; zak; fin

Trend: Handing over of tunnellers is signal for foreign investors

PRAGUE, October 2, (Czech Press Agency) -- The handing over of the tunnellers of the Trend and Mercia investment funds to the court is a long awaited signal for foreign investors, stated John Moffitt, a current member of the Board of Directors of Trend, to the Czech Press Agency, in reaction to the charges of seven people prosecuted in the case of the tunnelling of the Trend and Mercia investment funds. He added that this case represents a turning point for the whole Czech capital market.

Moffitt also mentioned that the tunnelling of the Trend fund is the first case in the Czech Republic where the persons are charged with the offence of criminal conspiracy.

The evidence collected in the criminal proceedings proves that the company Forminster Enterprises Limited, to which the shares in Kotva were transferred from Trend, is still controlled by Mr. Hálek, who is leading a battle against Trend even from prison, added Moffitt.

The Regional Public Prosecutor in Hradec Králové delivered to regional court, on Thursday, an indictment of seven people prosecuted in the case of the tunnelling of the Trend and Mercia investment funds. At the moment, from all the indicted persons, only Miroslav Hálek remains in custody. One of the greatest cases of causing damage to investment funds in the Czech Republic, where the damage amounts to almost CZK 1.3 billion, enters hereby into the final phase.

The Public Prosecutor indicted the accused persons with the criminal offences of insider dealing and embezzlement committed in a criminal conspiracy, or for participation in such a criminal conspiracy. Should the court find the accused guilty, they could be imprisoned for up to 15 years.

Marcela Prošková jw