UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KOTVA a.s.,

        Plaintiff,

v.

ANDREW WEISS and
WEISS ASSET MANAGEMENT, LLC,

        Defendants.

ANDREW WEISS;
WEISS ASSET MANAGEMENT, LLC;
K T, INC.; and CVF INVESTMENTS, LTD.,

        Counterclaim-Plaintiffs,

v.

KOTVA a.s.; MARTIN BENDA;
RICHARD HARAZIM;
FORMINSTER ENTERPRISES, LTD.;
SPV CO and JOHN DOES 1-5,

        Counterclaim-Defendants.

Civil Action No. 05-10679-RCL

**FORMINSTER ENTERPRISES, LTD.'S MEMORANDUM IN OPPOSITION TO
COUNTERCLAIM-PLAINTIFFS' MOTION TO TAKE JURISDICTIONAL
DISCOVERY AND THEIR MOTION TO EXTEND TIME FOR ACTIVITY RELATING
TO THE MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

        Forminster Enterprises, Ltd. ("FEL") opposes the counterclaim-plaintiffs' motion to take

jurisdictional discovery and their motion to extend time for activity relating to the motions to

dismiss for lack of personal jurisdiction because both motions evade the Court's December 15

order regarding the pending motions to dismiss for lack of jurisdiction and because the

counterclaim-plaintiffs do not begin to meet the standard required to impose discovery burdens

on a party, such as FEL, which has had no contacts with Massachusetts or anywhere else in the

United States. To be permitted to obtain jurisdictional discovery, a party must show it has a

colorable claim for personal jurisdiction and that it has acted diligently in its pursuit to obtain

such jurisdictional discovery. The counterclaim-plaintiffs – Andrew Weiss; Weiss Asset

Management; LLC, K T, Inc.; and CVF Investments, Ltd. (collectively the "Weiss Parties") –

have failed on both scores. The Weiss Parties make no showing of jurisdiction over FEL and

offer no excuse for delaying their discovery request until now. The Weiss Parties' motions are

exactly the kind of motions for jurisdictional discovery that are routinely denied. *See, e.g.,*

*Crocker v. Hilton International Barbados, Ltd.*, 976 F.2d 797, 801 (1st Cir. 1992) (jurisdictional

discovery properly disallowed where information sought would not have affected court's

determination regarding jurisdiction); *Kelly v. Syria Shell Petroleum Development B.V.*, 213 F.3d

841, 855 (5th Cir. 2000) ("When the lack of personal jurisdiction is clear, discovery would serve

no purpose and should not be permitted"); *Central States, Southeast and Southwest Areas*

*Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) (plaintiff who

had not made a "colorable" showing of personal jurisdiction not entitled to discovery); *Donatelli*

*v. UnumProvident Corp.*, 324 F. Supp. 2d 153, 164 (D. Me. 2004) (plaintiff failed to act

diligently and to show need for discovery); *LTX Corp. v. Daewoo Corp.*, 979 F. Supp. 51, 59 (D.

Mass. 1997) (where "factual predicate for jurisdiction that is proffered by the plaintiff falls so far

short of the minimum contacts necessary under the Due Process Clause" jurisdictional discovery

was inappropriate); *Noonan v. Winston Co.*, 902 F. Supp. 298, 306-09 (D. Mass. 1995)

(plaintiff's motion denied because it fails "to identify the specific facts" sought).

The Weiss Parties' allegations fail to make a minimally sufficient showing that FEL is

subject to personal jurisdiction in Massachusetts. They fail to show that FEL has had any

contacts with the Weiss Parties or with anyone else either in Massachusetts or in the United

States. They similarly fail to show that FEL purposefully availed itself of this forum or that the

exercise of personal jurisdiction over FEL would be fair and reasonable. Instead, the Weiss

Parties fall back on a discredited "conspiracy theory" of jurisdiction that has been declared

"frivolous" by at least one court, and which has no basis in fact or law. Now, rather than oppose

FEL's motion to dismiss the Counterclaim for lack of personal jurisdiction, the Weiss Parties

belatedly request discovery seeking a host of information that clearly has no bearing on issues of

personal jurisdiction. The Weiss Parties' maneuvers directly contravene the Court's order on

December 15, 2005, that no further delays of the Weiss Parties' response to the counterclaim-

defendants' motions to dismiss would be permitted.

The Weiss Parties' efforts to evade the Court's order and to pursue this unwarranted and

unnecessary discovery should not be allowed to succeed. The Weiss Parties' motion to take

jurisdictional discovery should be denied and the Court should adhere to the current schedule

requiring the Weiss parties to file their opposition to FEL's motion to dismiss no later than

January 9, 2006, and to hear arguments on that motion on January 23.

## I.    BACKGROUND

### A.    The Weiss Parties' Failure to Allege or to Show Any Basis For Personal Jurisdiction Over FEL

FEL is a company located in Nicosia, Cyprus and is incorporated under Cypriot

Companies Law as a limited liability company.[1] Neither FEL nor any of its four directors have

had any business contacts with Massachusetts or the United States. FEL has no address,

---

[1] This background statement is supported by FEL's *Memorandum in Support of Motion to Dismiss Counterclaim for Lack of Personal Jurisdiction* and the attached Affidavit of Rena David. To assist the Discovery Master, a copy of FEL's memorandum is attached as Exhibit 1 and a copy of the Affidavit of Rena David is attached as Exhibit 2.

telephone number, offices, or agents anywhere in the United States. It does not own, rent, or use any property anywhere in the United States, and it has never solicited any business anywhere in the United States. Similarly, all four of FEL's directors are Cypriot nationals who have no business reasons to travel to Massachusetts or to the United States.

FEL holds 55% of the shares of Kotva, a Czech corporation. Kotva is a public company whose shares are traded on the Czech stock exchange. Kotva and FEL have separate boards of directors, and no one who sits on FEL's board also sits on Kovta's board. The two companies also do not have any common officers or employees and they maintain separate bookkeeping and make separate tax filings.

The Weiss Parties have filed claims against FEL not based on any act by FEL or its directors, but by alleging that FEL is part of a "conspiracy" with the other counterclaim-defendants: Kotva, Martin Benda, Richard Harazim, SPV Co., and "John Does 1-5." The Weiss Parties' counterclaim tries to lend this conspiracy substance by dubbing the counterclaim-defendants the "Forminster Group", and it claims that the "Forminster Group" improperly manipulated the sale of a department store in Prague by Kotva to an Irish company. The creation of self-serving labels by the Weiss Parties does not create jurisdiction over FEL.

Even if their allegations about FEL were true, the Weiss Parties have no basis for bringing their claims against FEL in the Massachusetts Federal District Court. In the course of their Counterclaim's 103 paragraphs, the Weiss Parties only allege four specific acts by FEL:

1.    In the 1990s, Forminster acquired a majority of Kotva shares from various individuals and/or entities. *Counterclaim* ¶¶ 18, 44.

2.    "Forminster nominated Benda to Kotva's board and used its control over a majority of Kotva's shares to secure his election." *Counterclaim* ¶ 11.

3.      "Forminster nominated Harazim to Kotva's board and used its control over a majority of Kotva's shares to secure his election." *Counterclaim* ¶ 12.

4.      "On information and belief, Benda and Harazim personally caused Kotva a.s. to bring this lawsuit, after receiving instructions to do so from Forminster and John Does 1-5." *Counterclaim* ¶ 38.

Only the fourth of these alleged acts has any relationship whatsoever to the United States or to Massachusetts. However, not only is this allegation baseless, but even if it were true that FEL urged Kotva to sue Andrew Weiss and Weiss Asset Management, that is not an act through which FEL purposefully availed itself of this forum. Kotva's suit against Andrew Weiss and Weiss Asset Management seeks to vindicate rights of Kotva, not FEL. The suit is an act that Kotva carried out on its own behalf, not as an "agent" of FEL. The Counterclaim offers no facts which would allow this Court to exercise personal jurisdiction over FEL.

**B.**     <u>**The Weiss Parties' Tactics of Delay**</u>

Rather than offer any opposition to FEL's motion to dismiss for lack of personal jurisdiction, the Weiss Parties have sought to evade and to delay the issue. The Weiss Parties never served or requested any jurisdictional discovery until after the Court's December 15 order that no further extensions of time to respond to jurisdictional issues would be allowed.

FEL filed its motion to dismiss for lack of personal jurisdiction on November 14, 2005. On November 23, the Weiss Parties moved for an extension to file their opposition to FEL's motion until January 9, 2006. This motion made no reference to the need for jurisdictional discovery from FEL and cited only "the upcoming holidays and other scheduling issues" as a basis for the extension. FEL assented to this motion, and the Court allowed the extension on November 23, 2005.

On November 30, 2005, counterclaim-defendants Richard Harazim and Martin Benda, filed a motion to dismiss for lack of personal jurisdiction. In response to this motion, on

December 14, the Weiss Parties filed an assented to motion to extend the deadline to respond to

Harazim and Benda's motion until January 6, 2006.  In this motion, the Weiss Parties stated that:

> The Weiss parties believe that they are entitled to take discovery from Benda,
> Harazim, and Forminster Ltd. relating to personal jurisdiction.  Counsel for each
> of these parties have stated that the counterclaim-defendants will object to any
> jurisdictional discovery.  The Weiss parties are preparing a motion seeking
> jurisdictional discovery, which they expect will be opposed. …
>
> Accordingly, the Weiss parties will file a motion seeking an additional extension
> of time to respond to the motions to dismiss on personal jurisdiction on grounds
> pending the resolution of these discovery disputes.  To date, the Weiss Parties
> have been unable to secure the counterclaim-defendants' assent to this motion.

*Assented-To Motion of Counterclaim-Plaintiffs to Extend Time to Respond to Motion to Dismiss*

*of Martin Benda and Richard Harazim*, at ¶¶ 4-5.  In response, the Court made clear that the

Weiss Parties should not pursue the course they outlined and which they now have pursued

anyway.  On December 15, the Court issued an order which stated that the motion for extension

of time to January 6, 2006 was granted, but: "NO FURTHER EXTENSIONS WILL BE

ALLOWED BY THE COURT."

On December 20, five days after the Court's order, many months after serving their

Counterclaim, and more than a month after FEL had filed its motion to dismiss, the Weiss Parties

filed their motion to take jurisdictional discovery.  This discovery motion asks that the

counterclaim-plaintiffs be ordered to respond to the attached discovery requests within fourteen

days instead of the usual time permitted to respond to interrogatories.  *Counterclaim-Plaintiffs'*

*Motion to Take Personal Jurisdiction Discovery* at 2.  In addition to this discovery motion, the

Weiss Parties filed a separate motion which seeks "to postpone the hearing and extend time for

activity relating to the motions to dismiss filed by Martin Benda, Richard Harazim and

Forminster Enterprises Ltd. (the 'Jurisdiction Motions'), including suspending the January 6 and

January 9 deadlines to oppose the Jurisdiction Motions and postponing the January 23, 2005

hearing on the Jurisdiction motions, pending the resolution of the parties' discovery disputes." *Counterclaim-Plaintiffs' Motion to Postpone Hearing and Extend Time for Activity Relating to the Motions to Dismiss* at 1-2.

The Weiss Parties' decision to wait to until December 20 to make their discovery request is a clear attempt to create unnecessary delay and to harass the counterclaim-defendants. As part of that motion, to alleviate a timing problem completely of their own making, the Weiss Parties ask the Court to order FEL, to respond to these requests on an expedited basis, and to provide interrogatory and document responses in fourteen days. This is a particularly burdensome task for FEL, a Cypriot company with no contacts in the United States. If the Weiss Parties truly believed that they needed this discovery to adequately counter FEL's motion to dismiss, they would have diligently served these discovery requests on FEL long ago.

## II.    DICUSSION

### A.    The Weiss' Parties Mischaracterize the Standard a Party Must Meet to Obtain Jurisdictional Discovery

The Weiss Parties do not have an automatic right to pursue jurisdictional discovery. Instead, "a modicum" of jurisdictional discovery <u>may</u> be permitted only to a "diligent" plaintiff if the complaint sets forth a sufficiently "colorable" claim for personal jurisdiction. *See Sunview Condominium Association v. Flextel International, Ltd.*, 116 F.3d 962 (1st Cir. 1997). A motion for jurisdictional discovery also will not be granted unless the movant can establish that the discovery requests will yield information which will be relevant and useful to the Court in resolving the personal jurisdiction issues that have been raised. *See e.g.*, *Kelly v. Syria Shell Petroleum Development B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (where lack of personal jurisdiction was clear from a review of the compliant, "discovery would serve no purpose and

should not be permitted"); *Donatelli v. UnumProvident Corp.*, 324 F.Supp.2d 153, 163-64 (D. Me. 2004) (denying plaintiff's request for discovery because the requested information was not "not reasonably calculated to resolve any of the analytical problems" presented by the motion to dismiss for lack of personal jurisdiction); *Noonan v. Winston Co.*, 902 F. Supp. 298, 306-09 (D. Mass. 1995) (denying plaintiff's request for jurisdictional discovery because information sought would not aid in resolving jurisdictional issues).

Courts routinely deny requests for jurisdictional discovery when a plaintiff's showing is inadequate. *See, e.g., Crocker v. Hilton International Barbados, Ltd.*, 976 F.2d 797, 801 (1st Cir. 1992) (affirming district court's denial of jurisdictional discovery where information sought would not have affected court's determination regarding jurisdiction); *Kelly v. Syria Shell Petroleum Development B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) ("When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted"); *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) (upholding district court's denial of jurisdictional discovery where plaintiff had not made a "colorable" showing of personal jurisdiction); *Donatelli v. UnumProvident Corp.*, 324 F. Supp. 2d 153, 164 (D. Me. 2004) (plaintiff's motion for jurisdictional discovery denied because plaintiff failed to act diligently and to show need for discovery); *LTX Corp. v. Daewoo Corp.*, 979 F. Supp. 51, 59 (D. Mass. 1997) (denying motion for jurisdictional discovery "because the factual predicate for jurisdiction that is proffered by the plaintiff falls so far short of the minimum contacts necessary under the Due Process Clause to sustain general jurisdiction" that discovery was inappropriate); *Noonan v. Winston Co.*, 902 F. Supp. 298, 306-09 (D. Mass. 1995) (denying request for jurisdictional discovery because such

discovery is appropriate "only where a plaintiff is able to identify the specific facts which he

seeks to round out his prima facie case").

        The Weiss Parties' memorandum tellingly omits a genuine discussion of the appropriate

standard by which to test their request for jurisdictional discovery.  At the outset of their

argument, the Weiss Parties simply quote *United States v. Swiss American Bank, Ltd.*, 274 F.3d

610, 625 (1st Cir. 2001) for the proposition that: "a diligent plaintiff who sues an out-of-state

corporation and who makes out a colorable case for the existence of *in personam* jurisdiction" is

entitled to jurisdictional discovery.  However, the Weiss Parties have omitted much from the

First Circuit's standard for when it is appropriate to allow jurisdictional discovery; here is the

same quotation in full:

> We have long held that "a diligent plaintiff who sues an out-of-state corporation
> and who makes out a colorable case for the existence of *in personam* jurisdiction
> *may* well be entitled to a modicum of jurisdictional discovery if the corporation
> interposes a jurisdictional defense."  *Sunview Condominium Ass'n v. Flexel Int'l,
> Ltd.,* 116 F.3d 962, 964 (1st Cir. 1997) (emphasis added); *accord Surpitski v.
> Hughes-Keenan Corp.,* 362 F.2d 254, 255-56 (1st Cir. 1966).  However, "that
> entitlement is not absolute." *Sunview,* 116 F.3d at 964.  A plaintiff must be
> diligent in preserving his or her rights. *Id.*  Moreover, even when the plaintiff has
> been diligent and has made a colorable claim for personal jurisdiction, the district
> court still has "broad discretion to decide whether discovery is required." *Crocker
> v. Hilton Int'l Barb., Ltd.,* 976 F.2d 797, 801 (1st Cir.1992).

*Id.* at 625-26 (emphasis in original).  The First Circuit then went on to hold that in this case, the

district court had properly denied the United States an opportunity to obtain jurisdictional

discovery because the United States had failed to present a colorable claim for personal

jurisdiction and because it had not been diligent in its efforts to establish a need for the requested

discovery.  *Id.* at 625-27.  Specifically, the government's argument that the defendant's actions

"related to" or "arose out of" actions in the forum were insufficiently supported by factual

allegations in the complaint, and the government had failed to "present facts to the court which

show how jurisdiction would be found if discovery were permitted." *Id.* at 625-26. The First Circuit explained: "Failure to allege specific contacts, relevant to establishing personal jurisdiction, in a jurisdictional discovery request can be fatal to that request." *Id.* at 626-27. These holdings apply directly to the matter at hand. Like the plaintiffs in *Swiss American Bank*, the Weiss Parties' motion for jurisdictional discovery is unsupported by a sufficient initial showing of personal jurisdiction and should be denied.

**B.      The Weiss Parties Have Not Presented Any Facts Which Would
          Support a Finding of Personal Jurisdiction over FEL_____**

The Weiss Parties' Counterclaim does not assert the required colorable claim for personal jurisdiction because it does not present facts which would support any a finding of personal jurisdiction over FEL. In order to present such a "colorable" claim, the complaint must set forth facts which could support each of the three requisites for personal jurisdiction: (1) the claims asserted against the defendant arise out of or relate to the defendant's actions in Massachusetts; (2) the defendant purposefully availed itself of the privilege of conducting activities in Massachusetts; and (3) the exercise of personal jurisdiction is reasonable. *United States v. Swiss American Bank, Ltd.*, 274 F.3d 610, 620-21, 625-26 (1st Cir. 2001). As outlined above, the Counterclaim merely asserts that: (1) in the 1990s FEL acquired a majority of Kotva's shares; (2) Forminster used its position as majority shareholder to secure Benda's election to Kotva's board; (3) Forminster used its position as majority shareholder to secure Harazim's election to Kotva's board; and (4) "on information and belief" Forminster and John Does 1-5 instructed Benda and Harazim to cause Kotva to bring suit against the Weiss Parties. These allegations, even if they were true, would not support a finding of personal jurisdiction over FEL.

The Counterclaim falls far short of all three requirements of personal jurisdiction. First, it does not support a finding that the Weiss Parties' claims arise out of actions by FEL in

Massachusetts.  To the contrary, the Counterclaim does not contain a single allegation of an act by FEL in Massachusetts or anywhere in the United States.  Second, the Counterclaim does not support a finding that FEL purposefully availed itself of this forum.  Only the vague assertion "on information and belief" that Forminster and John Does 1-5 counseled Benda and Harazim, who in turn "caused" Kotva to file suit in the District of Massachusetts offers any tie to this forum.  However, this claim is not enough.  Kotva's lawsuit seeks to vindicate Kotva's own claims against the Weiss Parties, and is not an act that Kotva carried out as an "agent" of FEL.  Finally, the "reasonableness" prong of the jurisdiction test also favors FEL.  Given the weakness of the Weiss Parties' assertions against FEL, it is wholly unreasonable and unjust to force a Cypriot company to litigate in such a distant forum.  Neither FEL nor any of its directors have any connections to the United States, and litigating from such a distance and across a significant language barrier is difficult and costly and puts FEL at a tremendous disadvantage.  Therefore, even if all of the Weiss Parties' allegations are accepted as true, they do not present a colorable claim for personal jurisdiction over FEL.

The Weiss Parties attempt to rescue their claims against FEL by arguing that Kotva is a mere shell company and acts as the "alter ego" of FEL.  The Weiss Parties' allegations against FEL do not make any showing that FEL's relationship with Kotva is one of those "rare" situations which would allow the Court to find that Kotva operates as FEL's alter ego.  *Giuliano v. Nations Title, Inc.*, 938 F. Supp. 78, 81 (D. Mass. 1996).  "Ordinarily, courts respect the legal independence of a corporation" and so long as "the corporate veil remains in tact," the acts of a corporation such as Kotva cannot be the basis for personal jurisdiction over a majority shareholder such as FEL.  *Id.* at 79, *quoting United Electrical, Radio and Machine Workers of America v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1091 (1st Cir. 1992).  *See also Andresen v.*

*Diorio*, 349 F.3d 8, 12 (1st Cir. 2003) (plaintiff failed to show requisite "pervasive" control by

parent company over subsidiary to be able to impute subsidiary's acts to parent).  Under

Massachusetts law, it has long been established that a court may only pierce the veil of a

corporation in two circumstances:

> (a) when there is active and direct participation by the representatives of one
> corporation, apparently exercising some form of pervasive control, in the
> activities and there is some fraudulent or injurious consequence of the
> intercorporate relationship, or (b) when there is a confused intermingling of
> activity of two or more corporations engaged in a common enterprise with
> substantial disregard of the separate nature of the corporate entities, or serious
> ambiguity about the manner and capacity in which the various corporations and
> their respective representatives  are acting.

*My Bread Baking Co. v. Cumberland Farms, Inc.*, 233 N.E.2d 748, 752 (Mass. 1968).  *See also*

*Alvarado-Morales v. Digital Equipment Corp.*, 843 F.2d 613 (1st Cir. 1988) (plaintiff failed to

overcome "presumption of separateness" between parent and subsidiary because it failed to offer

"strong and robust evidence" that the parent exercised overwhelming control over subsidiary's

acts).  The Weiss Parties have made no allegations which would support a finding that either of

these circumstances exists, and they cannot dispute that FEL and Kotva are separate companies,

with separate directors and separate assets.  *See also* Exhibit 2 (Affidavit of Rena David).

Moreover, Kotva is a publicly traded company on the Czech stock exchange, thereby making the

alter ego theory particularly inappropriate here.  *See McKesson HBOC, Inc. v. New York State*

*Common Retirement Fund, Inc.*, 339 F.3d 1087, 1094-95 (9th Cir. 2003) (finding that it would be

"unprecedented" and inappropriate to pierce the veil of a publicly traded company).  Therefore,

the alter ego theory does not offer a route through which the Court can assert personal

jurisdiction over FEL.

    In their most recent motion, the Weiss Parties make yet another failed attempt to rescue

their claims against FEL by arguing that the Court has personal jurisdiction over FEL if "Kotva

and the counterclaim-defendant were members of a conspiracy and the filing of the lawsuit was

an act in furtherance of the conspiracy."  In support of this argument, the Weiss Parties cite

*Glaros v. Perse*, 628 F.2d 679, 682 (1st Cir. 1980), and state that *Glaros* recognized "that

jurisdiction over co-conspirators can be obtained when substantial acts are performed within the

forum state in furtherance of a conspiracy."  *Counterclaim-Plaintiff's Memorandum in Support*

*of Their Motion to Take Jurisdictional Discovery* at 5-6, n. 4.  This is an inaccurate portrayal of

the First Circuit's holding.  In *Glaros*, the First Circuit stated that "some courts have recognized

a 'conspiracy theory of personal jurisdiction,' whereby jurisdiction can be obtained over out-of-

state defendants who have conspired with in-state defendants," but it found that the requirements

for this theory were not met by the plaintiff in *Glaros*.  *Glaros*, 628 F.2d at 682.  The First

Circuit then went on to stress that by discussing cases that had accepted such a "conspiracy

theory of personal jurisdiction" it did not "mean to imply that we would adopt [this] rather liberal

approach to conspiracy pleading, or to decide that we would recognize a conspiracy theory of

personal jurisdiction at all."  *Id.* at 682, n. 4.  In fact, in a recent decision, District Court Judge

Hornby reached the following conclusion about the Weiss Parties' "conspiracy theory" of

personal jurisdiction:

> [T]he First Circuit has never recognized the conspiracy doctrine. *Glaros v. Perse,*
> 628 F.2d 679, 682 n. 4 (1980) ("[W]e do not mean to imply that we would adopt
> [a] rather liberal approach to conspiracy pleading, or to decide that we would
> recognize a conspiracy theory of personal jurisdiction at all."). The Supreme Court has
> labeled the conspiracy doctrine in the venue context as having "all the earmarks
> of a frivolous albeit ingenious attempt to expand the statute." *Bankers Life & Cas.*
> *Co. v. Holland,* 346 U.S. 379, 384 (1953). As one court has said, using conspiracy
> as a basis for personal jurisdiction is "[t]hat much more frivolous." . . .
> Additionally, scholars have been skeptical of the doctrine's conformance to
> notions of constitutional due process. *See, e.g.,* Ann Althouse, *The Use of*
> *Conspiracy Theory to Establish in Personam Jurisdiction: A Due Process*
> *Analysis,* 52 Fordham L.Rev. 234 (1983). *See also* Stuart M. Riback, Note, *The*
> *Long Arm and Multiple Defendants: The Conspiracy Theory of In Personam*
> *Jurisdiction,* 84 Colum. L.Rev. 506, 533 (1984) (noting that courts have rejected

the conspiracy theory of venue virtually unanimously). For these reasons, I do not believe that the First Circuit would recognize a conspiracy theory of personal jurisdiction, whereby jurisdiction can be obtained over nonresident defendants based upon the jurisdictional contacts of co-conspirators.

*In re New Motor Vehicles Canadian Export*, 307 F. Supp. 2d 145, 157-58 (D. Me. 2004). The Weiss Parties' resort to such a discredited argument further demonstrates the utter insufficiency of their personal jurisdiction claims.

### C.    The Discovery Requests Are Irrelevant and Unnecessary for a Proper Resolution of FEL's Motion to Dismiss

The discovery that the Weiss Parties seek will not assist in the resolution of the personal jurisdiction issues. In their memorandum in support of their motion for jurisdictional discovery, the Weiss Parties explain that they need this discovery to "obtain information relating to the relationship among Kotva, Forminster, Benda, and Harazim and their decision to initiate this lawsuit through Kotva." *Memorandum in Support of Motion to Take Jurisdictional Discovery* at 7. The Weiss Parties offer no basis for this assertion and it is contradicted by the evidence. *See* Exhibit 2 at ¶¶ 22-25. Moreover, even if FEL had a role in Kotva's decision to file suit, this act would not render FEL subject to jurisdiction in Massachusetts. Therefore discovery into this issue is irrelevant and unnecessary.

The substance of the Weiss Parties' discovery request also are not aimed at the jurisdictional issue they seek to manufacture. For example, among the categories of documents that the Weiss Parties are seeking from FEL are:

- Such documents are sufficient to identify all directors, offices, employees, and agents of Forminster Enterprises, Ltd. from January 1, 2003 to present.

- Organizational charts from Forminster Enterprises, Ltd. from January 1, 2003 to present.

- All documents concerning board meetings of Forminster Enterprises, Ltd., including minutes and agendas, for the period from January 1, 2003 to present.

The interrogatories include such irrelevant questions as:

> - For each officer and director of Forminster Enterprises Ltd., please identify all other companies of which that individual is a director or officer.

> - Please list all companies that share the mailing address Diagorou 4, Kermia Building, 6th floor, Office 601, Nicosia, P.C. 1097, Cyprus.

These broad requests have no bearing on whether FEL had a role in causing Kotva to initiate a lawsuit in Massachusetts or whether FEL is subject to jurisdiction here. Instead, they are nothing more than a thinly veiled effort to pry into the business affairs of a privately held company.

The discovery requests also seek to impose an enormous burden and cost on FEL to track down information which the Weiss Parties have offered no basis to believe even exists. For example, document request no. 7 seeks: "All documents concerting communications between Forminster Enterprises Ltd. and a person or persons in Massachusetts, including but not limited to phone logs and phone bills." The Weiss Parties have never alleged that anyone from FEL visited, called, emailed, or otherwise communicated with some one in Massachusetts, yet they seek to require FEL to go through all of its communications to see if there was ever any contact between FEL and Massachusetts.

The Weiss Parties have not been "diligent" in their efforts to seek jurisdictional discovery. As discussed at length above, the Weiss Parties waited until just before the already extended deadline for their opposition to FEL's motion to dismiss to spring these discovery request on FEL. They chose to do so even after the Court made clear that no further extensions of the jurisdictional issues would be permitted. The Weiss Parties also have not explained why they need any of the information they are seeking, and they certainly have not offered sufficient justification for their sweeping discovery requests. They have failed their obligation "to present facts to the court which show why jurisdiction would be found if discovery were permitted" and

they are therefore not entitled to any jurisdictional discovery.  *See United States v. Swiss American Bank, Ltd.*, 274 F.3d 610, 626 (1st Cir. 2001).


### III.  CONCLUSION

The Weiss Parties' request for jurisdictional discovery fails on many grounds.  First, it comes far too late, and flies in the face of the Court's December 15 order.  Second,  the Weiss Parties have not made the required initial showing that FEL could be subject to personal jurisdiction so as to warrant jurisdictional discovery.  Even assuming all of their allegations to be true, they do not set forth minimally sufficient facts for any of the three prongs of the personal jurisdiction test.  Third, the Weiss Parties have not been diligent either in seeking this discovery or in explaining how the information they seek bears on the issues raised by FEL's motion to dismiss.  Finally, both the lateness and the substance of the discovery request betray a true intention to create unnecessary cost for FEL, and to delay the dismissal of the Counterclaim for lack of personal jurisdiction.  The Weiss Parties' motions are little more than a last-minute effort to seek an opportunity to go through FEL's private records in hopes of finding something they can use as a weapon against FEL, Kotva, Benda, or Harazim.  This fishing expedition should not be allowed to go forward, and the current briefing and argument schedule for FEL's motion to dismiss should remain unaltered, as was the Court's intent.

Respectfully submitted,

FORMINSTER ENTERPRISES, LTD.

by its attorneys,

/s/ Ingrid S. Martin
Jeffrey D. Clements, BBO #632544
Ingrid S. Martin, BBO #653632
Clements & Clements, LLP
50 Federal Street
Boston, MA 02110
617- 451-1800

DATED:        January 3, 2006

**CERTIFICATE OF SERVICE**

I, Ingrid S. Martin, hereby certify that a copy of the foregoing document was served by electronic filing to counsel of record for the Counterclaim-Plaintiffs on January 3, 2006.

/s/  Ingrid S. Martin
_____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KOTVA a.s.,

          Plaintiff,

v.

ANDREW WEISS and
WEISS ASSET MANAGEMENT, LLC,

          Defendants.

ANDREW WEISS;
WEISS ASSET MANAGEMENT, LLC;
K T, INC.; and
CVF INVESTMENTS, LTD.,

          Counterclaim-Plaintiffs,

v.

KOTVA a.s.; MARTIN BENDA;
RICHARD HARAZIM;
FORMINSTER ENTERPRISES, LTD.;
SPV CO and JOHN DOES 1-5,

          Counterclaim-Defendants.

Civil Action No. 05-10679-RCL

**FORMINSTER ENTERPRISES, LTD.'S MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS COUNTERCLAIM FOR LACK OF PERSONAL JURISDICTION**

## I.      INTRODUCTION

Forminster Enterprises, Ltd. ("FEL") is a company organized under Cyprus law, with a

principal place of business in Cyprus, and has no contacts whatsoever in or with the

Commonwealth or District of Massachusetts.  Accordingly, FEL moves pursuant to Federal Rule

of Civil Procedure 12(b)(2) to dismiss the counterclaim of Andrew Weiss, Weiss Asset

Management, LLC, K T, Inc., and CVF Investments, Ltd. (collectively, the "Counterclaim-Plaintiffs") for lack of personal jurisdiction.  The exercise of personal jurisdiction over FEL would violate both the Massachusetts long-arm statute and the Due Process Clauses of the Fifth and Fourteenth Amendments of the Constitution.

The Counterclaim Plaintiffs bear the burden of demonstrating that the Massachusetts long-arm statute and the Due Process Clause of the United States Constitution permit the Counterclaim Plaintiffs to bring their claims against FEL in a Massachusetts court.  *See Dodora Unified Communications, Inc. v. Direct Information Pvt. Ltd.*, 379 F.Supp.2d 10, 12-13 (D. Mass. 2005).  They cannot meet this burden because FEL has never done or solicited any business in United States, has no material contacts with the United States, and has committed no alleged, let alone actual, act in the United States that has any connection whatsoever with this litigation.  Even from the face of the Counterclaim it is apparent that the causes of action alleged in the Counterclaim do not arise out of any business or other activity by FEL in or directed toward the Commonwealth of Massachusetts.  To the contrary, the Counterclaim outlines events that allegedly occurred in the Czech Republic, that do not constitute acts of FEL, and that have no connection to Massachusetts in any manner that would satisfy the requirements of personal jurisdiction.

Perhaps in implicit recognition of the complete absence of meaningful jurisdictional contacts, the Counterclaim Plaintiffs seek to drag FEL, a 55% shareholder of Plaintiff Kotva, a.s. ("Kotva"), into this dispute by a sleight of hand: Counterclaim Plaintiffs attach a fanciful label of their own making -- "the Forminster Group" -- to an assortment of alleged actions in the Czech Republic of Kotva, its officers and the mysterious "John Does 1-5," and, based on this

misleading characterization, asserts an array of common law claims and a claim under
Massachusetts General Laws Chapter 93A.

In effect, the Counterclaim-Plaintiffs rest jurisdiction over FEL solely on the fact that
FEL is a majority shareholder in Kotva, a basis which has never been sufficient for asserting
jurisdiction. *See Kleinerman v. Morse*, 533 N.E.2d 221, 224 (Mass. App. Ct. 1989) ("ownership
alone of the controlling stock of a subsidiary does not confer jurisdiction" in Massachusetts over
the controlling stock owner). As demonstrated by the accompanying affidavit, FEL and Kotva
are wholly separate and independent entities, each having its own business, governance structure,
decision making authority, directors, employees, assets and other components of corporate
business organization. The actions and decisions of Kotva, therefore, cannot be imputed to FEL.
Accordingly, FEL respectfully requests that it be dismissed from this action for lack of personal
jurisdiction.

## II.    <u>BACKGROUND</u>

The utter absence of meaningful contacts between FEL and Massachusetts and the United
States, or of evidence or even serious allegation that FEL and Kotva are *alter egos* of each other
for purposes of jurisdiction, requires that the Counterclaim against FEL be dismissed.

### A.    **Forminster Enterprises, Ltd. has no contacts with Massachusetts or the United States of America.**

FEL is a company located in Nicosia, Cyprus and is incorporated under Cypriot
Companies Law as a limited liability company. *See Exhibit 1* (David Aff.) ¶¶ 3, 5. FEL is
primarily an investment company, and it is overseen by four directors. *Id.* ¶ 4, 6. All four
directors are Cypriot nationals who have no business reasons to travel to the Massachusetts or to
the United States. *Id.* ¶ 6-11. FEL has no address, telephone number, offices, or agents
anywhere in the United States. *Id.* ¶ 7, 10. It does not own, rent, or use any property anywhere

in the United States.  *Id.*  It is not registered with any agency of the Commonwealth of Massachusetts or with any agency of the United States to conduct any business anywhere in the Commonwealth or elsewhere in the United States.  *Id.*  FEL has never solicited any business anywhere in the United States, nor has it been a party to any lawsuit in the United States.  *Id.* ¶¶ 8, 9, 11, 12.  In sum, FEL's activities have never purposefully reached the United States or the Commonwealth of Massachusetts in any way.

**B.      FEL and Kotva Are Separate Companies**

Even reading the Counterclaim generously in a light most favorable to the conspiracy-theory of the Counterclaim-Plaintiffs, the suggestion "on information and belief" that some unspecified assortment of John Does and Kotva employees had some form of unspecified communication by which FEL caused Kotva to bring this action in Massachusetts, cannot create personal jurisdiction over FEL.  See Counterclaim ¶¶ 38, 39.  As set forth in the accompanying affidavit and summarized below, FEL may be a shareholder of Kotva but it did not cause or instruct that Czech company to bring this action, nor is Kotva in any way an *alter ego* of FEL.

As part of its investment portfolio, FEL holds 55% of the shares of Kotva, a Czech corporation.  *See Exhibit 1* (David Aff.) ¶ 13.  Kotva is a public company whose shares are traded on the Czech stock exchange.  *Id.* ¶ 14.  Kotva's decision-making processes are separate and independent of FEL.  *Id.* ¶¶ 18-19, 23-25.  Kotva and FEL have separate boards of directors, and no one who sits on FEL's board also sits on Kotva's board.[1]  *Id.* ¶ 15.   Similarly, FEL and Kotva do not have any common officers or employees.  *Id.* ¶ 19.  Kotva and FEL have separate bookkeeping and make separate tax filings.  *Id.* ¶¶ 17, 18.

---

[1]  Richard Harazim and Martin Benda were previously members of the four person FEL board from November 1999 to October 2002.  *Id.* at ¶¶ 20-21.  This fact is of no import for purposes of the question of jurisdiction.

FEL did not instruct Kotva to file its suit against Weiss, nor did FEL instruct Kotva to file a civil or criminal complaint against Weiss. *Exhibit 1* (David Aff.) ¶ 22. FEL was not involved in or even aware of the negotiations that the Counterclaim-Plaintiffs allege took place between Mr. Harazim, Mr. Benda, and Weiss for the transfer of Kotva's shares. *Id.* at ¶¶ 22-24. Kotva's decisions in connection with this lawsuit have been independently made and are not attributable to FEL.

### C.    None of the Allegations in The Counterclaim Involve FEL's Conduct in or Contacts With Massachusetts.

The Counterclaim's allegations of any specific activity by FEL, as opposed to counterclaim plaintiff's fanciful creation, "the Forminster Group," are sparse. The assertions in the counterclaim outline two sets of events: 1) the sale of a department store located in Prague by Kotva to an Irish company; and 2) the transfer of Kotva's shares to various entities in the mid-1990s. As for FEL in particular, the Counterclaim alleges few specifics: FEL allegedly acquired a majority of Kotva shares in 1995 and 1996, *Counterclaim* ¶¶ 18, 44; FEL allegedly nominated Martin Benda and Richard Harazim to Kotva's board, *Counterclaim* ¶¶ 11, 12; and "on information and belief," FEL allegedly instructed Mr. Benda and Mr. Harazim to cause Kotva to file suit against Andrew Weiss and Weiss Asset Management, *Counterclaim* ¶ 38. Even if true, these allegations about a majority shareholder would not support jurisdiction. Moreover, these allegations are made without any factual support, and the attached affidavit demonstrates that FEL did not instruct Kotva to file a lawsuit against Weiss in Massachusetts. *Exhibit 1* (David Aff.) ¶ 25.

Following the Counterclaim Plaintiffs' half-hearted effort to tie FEL to the filing of this action in Massachusetts, they lurch to allegations that are described as occurring almost a decade ago concerning how FEL allegedly acquired shares in Kotva. *Counterclaim* ¶¶ 42-49. The

counterclaim sketches out alleged actions taken by management of a Czech investment fund

called "Trend" in which Counterclaim-Plaintiff CVF Investments, Ltd. owned shares.

*Counterclaim* ¶ 16.  Apparently relying on a translation of 1997 and 1998 articles from Czech

tabloids, the Counterclaim sets forth a series of allegations ominously entitled "the Tunneling of

the Assets of the Trend Fund." *Counterclaim* ¶¶ 42-48.  The general assertion of this section in

the Counterclaim appears to be that FEL's acquisition of a majority of Kotva's shares did not

comply with Czech law.  *Counterclaim* ¶¶ 42, 45.  Again, these allegations are false, but for

purposes of jurisdiction over FEL in Massachusetts, they are irrelevant.

## III.    ARGUMENT

**A.    The Counterclaim-Plaintiffs Fail to Make a Prima Facie Showing of Personal Jurisdiction Over FEL.**

### 1.    The Counterclaim-Plaintiffs' Allegations Do Not Establish Any Connection Between FEL and Massachusetts

This Court has personal jurisdiction over FEL only if the counterclaim-plaintiffs can

show that FEL is within the reach of the Massachusetts long-arm statute, Mass. Gen. Laws. ch.

223A, § 3, and if the exercise of personal jurisdiction complies with the due process

requirements of the Fifth and Fourteenth Amendments.  *See Ticketmaster-New York, Inc. v.

Alioto*, 26 F.3d 201, 204 (1st Cir. 1994).  The Counterclaim-Plaintiffs bear the burden to

demonstrate jurisdictional prerequisites with <u>evidence</u>, not mere allegations.  *See Boit v. Gar-Tec

Products, Inc.*, 967 F.2d 671, 674-75 (1st Cir. 1992); *Moldflow Corp. v. Simcon, Inc.*, 296

F.Supp.2d 34, 38 (D.Mass. 2003).  "It has long been the rule of [the First Circuit] that plaintiffs

may not rely on unsupported allegations in their pleadings to make a *prima facie* showing of

personal jurisdiction."  *Boit*, 967 F.2d at 675.  Here, the counterclaim-plaintiffs' allegations fail

to assert a sufficient connection between Massachusetts and FEL to satisfy either the long-arm

statute or the Due Process Clause.  Moreover, the few allegations about FEL are incorrect and unsupported.

      a.    *FEL's Alleged Acts Are Not Within the Massachusetts Long-Arm Statute's Reach*

The provisions of the Massachusetts long-arm statute relevant here permit jurisdiction over a defendant if the cause of action arises from the defendant or its agent: "(a) transacting any business" in Massachusetts, or "(c) causing tortious injury by an act or omission" in Massachusetts.  Mass. Gen. Laws ch. 223A, § 3.  In order for a party to "transact[] any business" in Massachusetts, it must "purposefully" avail itself of the privilege of doing business in Massachusetts.  *See "Automatic" Sprinkler Corp. of America v. Seneca Foods Corp.*, 280 N.E.2d 423, 426 (Mass. 1972).  If the cause of action asserted against the defendant arises out of acts which the defendant or its agent committed wholly outside of Massachusetts, the long-arm statute grants jurisdiction over the defendant only if the defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth."  *Id.* § 3(d).

FEL has neither transacted any business in Massachusetts, nor has it caused tortious injury by an act or omission in Massachusetts.  As noted, the Counterclaim contains only four allegations of specific acts by FEL:

    1.    In the 1990s, Forminster acquired a majority of Kotva shares from various individuals and/or entities.  *Counterclaim* ¶¶ 18, 44.

    2.    "Forminster nominated Benda to Kotva's board and used its control over a majority of Kotva's shares to secure his election."  *Counterclaim* ¶ 11.

    3.    "Forminster nominated Harazim to Kotva's board and used its control over a majority of Kotva's shares to secure his election."  *Counterclaim* ¶ 12.

4.    "On information and belief, Benda and Harazim personally caused Kotva a.s. to bring this lawsuit, after receiving instructions to do so from Forminster and John Does 1-5." *Counterclaim* ¶ 38.

Only the fourth of these alleged acts has any relationship whatsoever to Massachusetts. However, not only is this allegation baseless – and the accompanying affidavit shows it to be untrue – but even if it were true that FEL urged Kotva to sue Weiss and Weiss Asset Management, that is not an act through which FEL purposefully availed itself of this forum. Kotva's suit against Weiss and Weiss Asset Management seeks to vindicate rights of Kotva, not FEL. The suit is an act that Kotva carried out on its own behalf, not as an "agent" of FEL.

FEL, therefore, does not "transact business" nor has it tortiously caused injury in Massachusetts as required by subsections 3(a) and 3(c) of the Massachusetts long-arm statute. FEL has not availed itself of this forum, does not do business in Massachusetts, and does not derive profit from Massachusetts. Under no provisions of the long-arm statute can FEL demonstrate a basis for jurisdiction over FEL.

b.    *The Due Process Clause of the Constitution Also Prohibits the Exercise of Personal Jurisdiction Over FEL*

Even if the allegations contained in the Counterclaim somehow fall within an expansive reading of the Massachusetts long-arm statute, the Due Process Clause of the Constitution bars a finding of personal jurisdiction on the facts here. Under the Constitution, the Massachusetts District Court may exercise personal jurisdiction over a party only if: (1) the claims asserted against it arise out of or relate to the party's activities in Massachusetts; (2) the party purposefully availed itself of the privilege of conducting activities in Massachusetts; and (3) the exercise of jurisdiction is consonant with "fair play" and "substantial justice" in light of five "gestalt factors." *See Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir. 1994). The five gestalt factors are: "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the

dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." *Id.* at 63-64.

The counterclaim fails to satisfy the due process clause's requirements of in-state activity and purposeful availment. As discussed above, the counterclaim does not assert, nor could it, that FEL has engaged in any activity inside Massachusetts. Similarly, the counterclaim advances no claim that FEL has purposefully availed itself of the privilege of conducting business in Massachusetts. The standards for showing activity or purposeful availment of conducting business in Massachusetts largely track those demanded as part of the Massachusetts long-arm statute analysis, and for the reasons discussed above, the Counterclaim-Plaintiffs fail to satisfy these standards. *See Good Hope Industries, Inc. v. Ryder Scott Co.*, 389 N.E.2d 76, 79-80 (Mass. 1979) (explaining that the analysis under the long-arm statute and that under the due process clause "tend to converge").

The gestalt factors further confirm that the exercise of personal jurisdiction over FEL would fall short of the Constitutional requirements of due process. The First Circuit has held that the gestalt factors function to ensure that, "A distant court cannot constitutionally exercise *in personam* jurisdiction over a non-resident defendant at the behest of a plaintiff who can muster only the most tenuous showings of relatedness and purposefulness if … forcing the defendant to defend in the forum would be plainly unreasonable." *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 212 (1st Cir. 1994). This holding is directly applicable here. FEL is a small, privately held entity based in Cyprus. None of FEL's employees or principals have a residence in Massachusetts nor do they have any business reason to travel here. The Counterclaim-Plaintiffs show no reason why courts in the Czech Republic or Cyprus would not be available to adjudicate

issues arising from alleged activities in the Czech Republic. While there is some indication that Weiss may be reluctant to travel to the Czech Republic because of a pending criminal matter against him there, that reluctance would not be fair grounds to compel FEL to defend against Weiss's tenuous conspiracy theories in this forum.

        c.      *The Counterclaim Plaintiffs' Effort to Compensate for the Absence of Relevant Allegations About FEL By Blurring the Alleged Actions of Other Counterclaim Defendants Into A Fictional "Forminster Group" Fails to Show Jurisdiction Over FEL.*

The Counterclaim employs an acknowledged fiction to try to impute the actions of the other Counterclaim-Defendants, particularly those of Kotva executives Martin Benda and Richard Harazim, to FEL. The Counterclaim makes the completely unsupported assertion that the Counterclaim-Defendants Martin Benda, Richard Harazim, FEL, SPV Co., and John Does 1-5 were engaged in a "conspiracy." *Counterclaim* ¶¶ 13-14. The Counterclaim offers no evidence or allegations about when, where, or how this conspiracy sprung into existence. Instead, it seeks to create the illusion that these individuals and entities all acted in concert by referring to the counterclaim defendants as the "Forminster Group" although no such group or entity actually exists. The counterclaim then uses this fictional "Forminster Group" to make it appear as though the actions of any one of the counterclaim defendants can be attributed to all of them. For example, the counterclaim asserts that "the Forminster Group [used] its influence over Czech law enforcement to cause a contrived criminal charge of blackmail to be brought against Weiss." *Counterclaim* at ¶ 33. In support of this claim that the so-called "Forminster Group" had engaged in this conduct, the Counterclaim states that "Harazim is quoted in the Czech press as having 'filed a criminal complaint.'" *Counterclaim* at ¶ 18. Even if Mr. Harazim filed such a complaint, there is no evidence or allegation to support the conclusion that FEL (or even any of the other Counterclaim-Defendants) was involved in any way in his decision to do so. To the

contrary, in the affidavit by FEL director Rena David, she states that FEL played no role in any decisions Mr. Harazim may have made about filing a criminal complaint. *See Exhibit 1* (David Aff.) ¶¶ 22, 25. This deceptive strategy of including all of the Counterclaim-Defendants in the acts of one by attributing the acts to the "Forminster Group" is used repeatedly throughout the counterclaim. *See e.g., Counterclaim* ¶¶ 23, 26, 35, 38, 40, 45, 50, 52, 53-58.

Since the Counterclaim-Plaintiffs cannot offer any evidence to support their claim that the Counterclaim-Defendants were engaged in a deliberate, unitary effort, none of their allegations relating to the acts of Mr. Harazim, Mr. Benda, or John Does 1-5 can be attributed to FEL. The counterclaim advances no allegations to support its underlying assumption that Mr. Benda, Mr. Harazim, FEL, SPV Co., and John Does 1-5 came together, decided on a common purpose, or otherwise acted in a manner which would allow the actions of one to be imputed to the others. Indeed, only two allegations relate FEL to the other counterclaim defendants in any way:

> 11.    Forminster nominated Benda to Kotva's board and used its control over a majority of Kotva's shares to secure his election. Benda also is or was a member of the board of Forminster and an agent of Forminster.

> 12.    Forminster nominated Harazim to Kotva's board and used its control over a majority of Kotva's shares to secure his election. Harazim also is or was a member of the board of Forminster and an agent of Forminster.

*Counterclaim* ¶¶ 11-12. Even assuming that these allegations were true, the fact that a majority shareholder would use its majority position to vote for board members it preferred, by itself, merely is evidence of normal and acceptable business practice, not of any conspiracy. The counterclaim does not explain why it asserts that Mr. Benda and Mr. Harazim were "agents" of FEL, it does not offer any evidence or allegations establishing when and how they acted as agents of FEL, nor does it explain what it means by that broad assertion. In sum, actions taken

by Mr. Harazim, Mr. Benda, or John Does 1-5 cannot serve as a basis for personal jurisdiction over FEL.

**B.    FEL's Status as a Majority Shareholder in Kotva Is an Insufficient
Basis for Personal Jurisdiction.**

The counterclaim-plaintiffs' effort to cure the insufficiency of FEL's contact with Massachusetts by suggesting that Kotva is a "shell" corporation and a mere *alter ego* of FEL is both inadequately pled and false.  While FEL is Kotva's largest shareholder, FEL's status as majority shareholder is insufficient to assert personal jurisdiction over FEL simply because the company in which it holds a 55% share has submitted to jurisdiction in Massachusetts.  *See Kleinerman v. Morse*, 533 N.E.2d 221, 224 (Mass. App. Ct. 1989).  A majority shareholder, or even an outright parent company, is not subject to the jurisdiction of a court merely because the company in which it holds a controlling share is subject to jurisdiction in the forum.  *See Alvarado-Morales v. Digital Equipment Corp.*, 843 F.2d 613, 616 (1st Cir. 1988).  Even if a plaintiff can show that a defendant company has "overall financial and policy control" over a subsidiary, this does not render the defendant company subject to personal jurisdiction wherever its subsidiary is subject to jurisdiction.  *See Andersen v. Diorio*, 349 F.3d 8, 12 (1st Cir. 2003).  Instead, the fact of the parent company's influence over the subsidiary "is inherent in the relationship" and, by itself, is an insufficient basis for extending personal jurisdiction from the subsidiary to the parent.  *Id.*

FEL's relationship with Kotva does not fall into that rare and narrow set of circumstances which would allow the Counterclaim-Plaintiffs to assert that Kotva is a "sham" or functions as an *alter ego* of FEL.  *Andersen*, 349 F.3d at 12 (such circumstances require an improper control so pervasive as to destroy the subsidiary's status as a separate entity).   If the Counterclaim-Plaintiffs seek to make such a showing, they would need to meet the high standard associated

with "piercing the corporate veil" to reach a parent or controlling shareholder. *See e.g.,*

*Alvarado-Morales*, 843 F.3d at 616-17; *Northern Laminate Sales, Inc. v. Matthews*, 249

F.Supp.2d 130, 139 (D.N.H. 2003); *Giuliano v. Nations Title, Inc.*, 938 F.Supp. 78, 81 (D. Mass.

1996). However, "Massachusetts permits disregard of the corporate form only in rare

situations." *Giuliano*, 938 F.Supp. 78 (D. Mass. 1996). *See also United Electric Radio and*

*Machine Workers of America v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1091-92 (1st Cir.

1992) (finding plaintiffs' evidence insufficient to pierce veil to assert personal jurisdiction).

The Supreme Judicial Court has allowed courts to disregard the corporate form and

separateness of a subsidiary in only two circumstances:

> (a) when there is active and direct participation by the representatives of one
> corporation, apparently exercising some form of pervasive control, in the
> activities and there is some fraudulent or injurious consequence of the
> intercorporate relationship, or (b) when there is a confused intermingling of
> activity of two or more corporations engaged in a common enterprise with
> substantial disregard of the separate nature of the corporate entities, or serious
> ambiguity about the manner and capacity in which the various corporations and
> their respective representatives are acting.

*My Bread Baking Co. v. Cumberland Farms, Inc.*, 233 N.E.2d 748, 752 (Mass. 1968). Since

neither the counterclaim's allegations nor evidence begin to support a finding that FEL's

relationship to Kotva is marked by either pervasive and fraudulent control or by a "confused

intermingling of activity", the Counterclaim-Plaintiffs cannot base jurisdiction over FEL on

Kotva's decision to file this lawsuit in Massachusetts. Indeed, the evidence is to the contrary.

In the affidavit submitted with this memorandum, FEL offers numerous facts

demonstrating that Kotva is an independent entity, including: 1) Kotva's shares are publicly

traded on the Czech stock exchange, 2) Kotva and FEL have separate boards of directors, 3) no

one who sits on FEL's board of directors also sits on Kotva's board, 4) Kotva and FEL do not

share bookkeeping, 5) Kotva and FEL make separate tax filings, 6) Kotva and FEL have separate

decision-making authority, an 6) Kotva currently does not have officers or employees who are also employed with FEL.  *Exhibit 1* (David Aff.) ¶¶ 14-19.

## CONCLUSION

FEL's contacts with Massachusetts are insufficient to support a finding of personal jurisdiction.  The fact that FEL is the majority shareholder in Kotva does not cure this lack of connection between FEL and this forum.  Accordingly, the counterclaims against FEL should be dismissed.

Respectfully submitted,

FORMINSTER ENTERPRISES, LTD.

by its attorneys,

/s/ Jeffrey D. Clements
_____
Jeffrey D. Clements, BBO #632544
Ingrid S. Martin, BBO #653632
Clements & Clements, LLP
50 Federal Street
Boston, MA 02110
617- 451-1800

DATED:  November 14, 2005

### CERTIFICATE OF SERVICE

I, Jeffrey D. Clements, hereby certify that a copy of the foregoing document was served by electronic filing to counsel of record for the Counterclaim-Plaintiffs on November 14, 2004

/s/ Jeffrey D. Clements
_____

14

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KOTVA a.s.,

          Plaintiff,

v.

ANDREW WEISS and
WEISS ASSET MANAGEMENT, LLC,

          Defendants.

                                      Civil Action No. 05-10679-RCL

ANDREW WEISS;
WEISS ASSET MANAGEMENT, LLC;
K T, INC.; and
CV INVESTEMENTS, LTD.,

          Counterclaim-plaintiffs,

v.

KOTVA a.s.; MARTIN BENDA;
RICHARD HARAZIM;
FORMINSTER ENTERPRISES, LTD.;
SPV CO and JOHN DOES 1-5,

          Counterclaim-defendants.

## **AFFIDAVIT OF RENA DAVID**

I, Rena David, being duly sworn, state as follows:

1.      I am a national of Cyprus currently residing at Diagorou 4, Kermia Building, 6th

floor, Office 601, Nicosia, P.C. 1097, Cyprus.

2.    I am a Director of Forminster Enterprises, Limited ("FEL").   I have been Director since October 30th 2002.

3.    FEL is incorporated under Cyprus Companies Law, Chapter 113, as a limited liability company.

4.    FEL is primarily an investment company.

5.    FEL's offices are located at 4 Biagorou Street, Kermia Building, Office 601, Nicosia, Cyprus.  FEL has no other offices or places of business.

6.    In addition to myself, FEL's current directors are Doxa Pericleous, Anthony Indianos, and Andreas Papsiantis, all of whom are Cypriots.

7.    FEL has no business in Massachusetts.  It has no clients, partners, or shareholders in Massachusetts.  It does not have an office or agent in Massachusetts, it does not have a telephone number or mailing address in Massachusetts, and it does not own, rent, or use any property in Massachusetts.  FEL also is not registered with any Massachusetts agency to conduct any business in the Commonwealth.

8.    FEL has never solicited any business in the Commonwealth of Massachusetts.

9.    FEL has never initiated a lawsuit in any Massachusetts court nor been a party to any lawsuit in Massachusetts, except as named above as a Counterclaim defendant in this case.

10.    FEL has no business in the United States of America.  It has no clients, partners, or shareholders in the United States.  It does not have an office or agent in the United States, it does not have a telephone number or mailing address in the United States, and it does not own, rent, or use any property in the United States.  FEL also is not registered with any agency of the United States to conduct any business in the United States.

2

11.     FEL has never solicited any business in the United States of America. It has not had any communications or transactions with any person or entity residing in the United States.

12.     FEL has never initiated a lawsuit in any Court of the United States of America, nor been a party to any lawsuit in the United States of America, except as named above as a Counterclaim defendant in this case.

13.     FEL holds shares in Kotva a.s. ("Kotva"). Currently, FEL holds 55.74% of Kotva's shares.

14.     Kotva's shares are publicly traded on the Czech stock exchange.

15.     Kotva and FEL have separate boards of directors, and no one who sits on FEL's board of directors also sits on Kotva's board.

16.     Kotva and FEL do not share bookkeeping.

17.     Kotva and FEL make separate tax filings.

18.     Kotva and FEL have separate decision-making authority.

19.     Kotva does not have officers or employees who are also employed with FEL.

20.     Richard Harazim was one of FEL's directors from 30/11/1999 to 30/10/2002.

21.     Martin Benda was one of FEL's directors from 30/11/1999 to 30/10/2002.

22.     FEL has never given instructions to Richard Harazim or Martin Benda regarding their dealings with Andrew Weiss or Weiss Asset Management.

23.     FEL has no knowledge of or any involvement in any negotiations that Richard Harazim or Martin Benda may have had with Andrew Weiss or Weiss Asset Management regarding the purchase of shares of Kotva.

24.     FEL has never been contacted by Weiss Asset Management, LLC, or Andrew Weiss regarding an offer to buy Weiss Asset Management's Kotva shares.

25.    FEL did not instruct Kotva, Richard Harazim, or Martin Benda to file a lawsuit or criminal complaints against Weiss Asset Management, LLC, or against Andrew Weiss.

Signed under the pains and penalties of perjury.

Dated: 26/10/2005

Rena David