UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW WEISS and WEISS ASSET MANAGEMENT, LLC, <br><br> Defendants. <br><br> ANDREW WEISS, WEISS ASSET MANAGEMENT LLC, K T, INC. and CVF INVESTMENTS, LTD., <br><br> Counterclaim-plaintiffs, <br><br> v. <br><br> KOTVA a.s., MARTIN BENDA, RICHARD HARAZIM, FORMINSTER ENTERPRISES, LTD., SPV CO and JOHN DOES 1–5, <br><br> Counterclaim-defendants. | C.A. No. 05-10679-RCL |

## COUNTERCLAIM PLAINTIFFS' OPPOSITION TO RICHARD HARAZIM'S AND MARTIN BENDA'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Counterclaim-plaintiffs Andrew Weiss ("Weiss"), Weiss Asset Management LLC ("WAM"), K T, Inc. ("K T") and CVF Investments Ltd. ("CVF") hereby submit their Opposition to counterclaim-defendants Richard Harazim's and Martin Benda's Motion to Dismiss.  As described below, Harazim and Benda have submitted themselves to this Court's jurisdiction by planning, initiating and directing the commencement and prosecution of this lawsuit.  The act of filing this lawsuit in Boston, Massachusetts constitutes a tortious abuse of process.  This abuse of

process was part and parcel of a larger scheme by which Harazim, Benda, and Forminster Enterprises Ltd. have utilized their control over the Kotva corporate shell to divert assets to themselves and others in their group.

## I.    SUMMARY OF THE FACTS

This lawsuit is part of the ongoing efforts of Richard Harazim, Martin Benda and others to use the proceeds of illegal activity to convert the assets of Kotva a.s. for their own benefit and to the detriment of Kotva's minority shareholders.  Harazim and Benda are the representatives of Forminster Enterprises, Ltd. ("Forminster").  Harazim and Benda are also, respectively, the Chief Executive Officer and Chairman of the Supervisory Board of Kotva, and direct its affairs. Forminster controls Kotva through its representatives, Benda and Harazim, and its control over a majority of Kotva's shares.  However, Forminster secured its control of these shares—and Kotva—as a result of the massive embezzlement of a Czech investment fund called Trend.

As described in more detail in the counterclaim, Trend's management embezzled Trend's assets, including Trend's shares in Kotva.  The embezzlement of Trend's assets has been documented extensively in several Czech government reports and is commonly referred to as the "Trend Scandal" or "Trend Tunneling."

The Czech press adopted the word "tunneling" to describe the process by which a company's management embezzles the company's assets and moves them through a series of intermediaries until the intended recipients of the assets are able to liquidate the assets and abscond with the loot.  The media has reported extensively on the Trend Tunneling.[1]  Miroslav Hálek, who exerted managerial control over Trend at the time of the embezzlement, also possessed a general power of attorney to act on behalf of Forminster during the same time

---

[1] Attached to the Counterclaim as Exhibit 2 are some press articles about the Trend Scandal, with English translations.

period.  Hálek's connections to Forminster and personal involvement in the embezzling of Trend's assets are documented in detail in several reports authored by the Czech authorities.[2]

In addition to gaining possession of Trend's shares in Kotva, Forminster also used other assets embezzled from Trend to purchase shares in Kotva.  As part of an investigation of the Trend Tunneling, in 1997, a public prosecutor in the Czech Republic froze the Kotva shares held by Forminster, preventing Forminster from selling them.   In 2004, the Czech Constitutional Court affirmed the actions of the prosecutor, writing:

> In the opinion of the then Supervising Public Prosecutor of the Regional Public Prosecutor's Office in Hradec Kralove, the said securities were the subject of a crime or as the case may be, the proceeds of crime, and were totally and materially related to the commitment of a grievous crime against property.  The issuance of the injunction was meant to preclude the completion of the chain of illegal securities' transfers.

Czech Constitutional Court, Decision No. II US 267/03 (April 15, 2004).  Similarly, "[i]n the opinion of the High Public Prosecutor, [Forminster's shares in Kotva] are the proceeds of a crime committed by Ing. M. H[alek] and Co., which had been transformed into documentary securities and placed in the account of F[orminster] E[nterprises] Limited in the Prague Security Exchange Center."  *Id.*

Despite the order freezing Forminster's Kotva shares, Forminster was still able to vote those shares.  Forminster used its votes to install two of its directors, Harazim and Benda, as directors and officers of Kotva.[3]

Having solidified their control over Kotva, Forminster, Benda and Harazim then moved to strip Kotva of its only valuable asset—a department store in downtown Prague (the

---

[2] Paragraph 44 of the Counterclaim contains an excerpt from one such report.
[3] In 2002, Benda and Harazim were replaced as directors of Forminster by other individuals. However, Benda and Harazim continued to represent Forminster in the Czech Republic.

"Department Store")—and keep the proceeds for themselves and for other unknown individuals (collectively, the "Forminster Group").

As part of the Forminster Group's efforts to tunnel away Kotva's assets, the Forminster Group needed to eliminate any resistance by Kotva's minority shareholders. In 2002, Professor Andrew Weiss, through his company Weiss Capital LLC, became responsible for managing investments that included a minority stake in Trend and a minority stake in Kotva.

The Forminster Group, through Harazim and Benda, first attempted to purchase Weiss's investors' interest in Kotva. However, Harazim and Benda would not agree to pay an amount equal to the proportional share of Kotva's value to which Weiss's investors were entitled. Harazim brazenly told Weiss that his investors' shares in Kotva were worth nothing because Kotva's minority shareholders would receive no value from the sale of the Department Store. Weiss responded by authorizing lawyers in the Czech Republic to file lawsuits to protect the rights of the minority shareholders (the "Czech litigation").

Weiss continued to negotiate with Harazim and Benda, but they would not agree to pay a fair price for Weiss's investors' shares. After Weiss rejected Harazim's and Benda's inadequate offers, Harazim and Benda adopted a second, more sinister approach: they used their influence over Czech law enforcement to instigate a criminal prosecution of Weiss on sham charges of blackmail.

Seeking to apply additional pressure, Benda and Harazim then used their control over Kotva to file this lawsuit against Weiss in Kotva's name. This lawsuit is nothing more than the next step in Harazim's and Benda's efforts to eliminate Weiss as an obstacle to their unlawful activities. The first two counts of Kotva's complaint feature sham charges of securities fraud— Kotva admits it neither bought nor sold securities: therefore it lacks standing—and libelous

charges of RICO violations.  Kotva's complaint is designed to harass and embarrass Weiss and hopefully dissuade him from continuing to oppose the Forminster Group's efforts to tunnel Kotva's assets.  Kotva's complaint is an abuse of process under Massachusetts law in that it was filed with the ulterior purpose of forcing Weiss to withdraw the Czech litigation and capitulate to the Forminster Group's scheme to divert assets for their own benefit.

Weiss and the other named defendant, Weiss Asset Management LLC ("WAM") asserted counterclaims against Harazim and Benda.  Weiss and WAM also joining as counterclaim-plaintiffs two minority shareholders of Trend and Kotva, K T, Inc. and CVF Investments Ltd. Harazim and Benda filed a motion to dismiss, arguing that this Court lacks personal jurisdiction over them.

## II.    <u>SUMMARY OF THE CLAIMS</u>

The counterclaim consists of three groups of claims against Harazim and Benda.[4]

First, Weiss and WAM have asserted claims arising out of Harazim's and Benda's efforts to use the Czech and United States legal systems to intimidate Weiss and coerce him into abandoning the Czech litigation and capitulating to the Forminster Group's freeze-out of Kotva's minority shareholders.  These efforts constitute an abuse of process (Count I), civil conspiracy (Count II) and unfair and deceptive trade practices (Count VII).

Second, K T and CVF have asserted claims arising out of the same series of events— Harazim's and Benda's efforts to purchase K T's and CVF's shares in Kotva and freeze out the minority shareholders by converting the Department Store for the benefit of the Forminster Group.  This freeze-out has directly injured K T and CVF, entitling K T and CVF to damages for

---

[4] Exhibit 1 to the Counterclaim is a chart illustrating, for each count of the counterclaim, which counterclaim-plaintiffs are asserting the claim and which counterclaim-defendants are named for that particular count.

civil conspiracy (Count II), conversion of the proceeds of the sale of the Department Store (Count III), unjust enrichment (Count IV), abuse of control of Kotva and breach of fiduciary duty to Kotva's shareholders (Count V) and unfair and deceptive trade practices (Count VII). K T and CVF also seek a constructive trust (Count VI) and declaratory relief (Count VIII) to protect their rights.

Third, K T and CVF seek declaratory relief arising out of the Trend Tunneling (Count VIII). More specifically, K T and CVF contend that Forminster is not the rightful owner of the Kotva shares that it currently controls because, as explained in the Counterclaim, those shares are stolen property to which Forminster has no good legal title.

## III.  ARGUMENT

### A.    The Legal Standard

"When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing . . . the 'prima facie' standard governs its determination." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618–19 (1st Cir. 2001).

Under the prima facie standard, the Court should not consider the documents purporting to be affidavits submitted by Harazim and Benda. "[I]n evaluating whether the prima facie standard has been satisfied, 'the district court is not acting as a factfinder; rather, it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law.'" *Swiss Am. Bank*, 274 F.3d at 619. (citations omitted). Furthermore, the documents Harazim and Benda submitted do not appear to have been sworn before an officer authorized to take oaths and, assuming that they were executed outside the United States, are not in proper form under 28 U.S.C. § 1746(1). This statute requires unsworn declarations that are executed outside of the United States submitted in lieu of affidavits include language in which the

declarant submits to the jurisdiction of the United States courts for purposes of prosecution for making a false statement. *Compare id. with* 18 U.S.C. § 1623.

The Court must filter the counterclaim-plaintiffs' jurisdictional allegations through the three-prong test for establishing specific jurisdiction.[5]   The three-prong test for specific jurisdiction requires that the counterclaim-plaintiffs show that: (1) the counterclaim-defendants' actions in the forum relate to the asserted cause of action; and (2) that the counterclaim-defendants purposefully availed themselves of the forum. *Ticketmaster-New York v. Alioto*, 26 F.3d 201, 206 (1st Cir. 1994) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) and *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  If the counterclaim-plaintiffs have met their burden under the first two prongs, then "[t]he defendant may nonetheless avoid having to defend in a strange place if it can establish that allowing the suit to go forward would be inconsistent with 'fair play and substantial justice.'" *Ticketmaster-New York*, 26 F.3d at 206.

Under this third and final prong, the counterclaim-defendants have the opportunity to show the Court that, despite their contacts with and purposeful availment of the forum, it would be unreasonable to subject them to personal jurisdiction.  In order to prevail, however, the counterclaim-defendant "must present *a compelling case* that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985) (emphasis added).  The counterclaim-defendants must address the so-called "gestalt factors": "These gestalt factors include: the defendant's burden of appearing; the forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and

---

[5] The counterclaim-plaintiffs do not suggest that Harazim or Benda are subject to general jurisdiction in Massachusetts.

effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and the shared interest of the several States in furthering fundamental substantive social policies." *N. Laminate Sales, Inc. v. Davis*, 403 F.3d 14, 26 (1st Cir. 2005) (citing *Burger King Corp.*, 471 U.S. at 477).

**B.    Harazim's Initiation and Prosecution of this Lawsuit are Sufficient Contacts with Massachusetts for this Court to Exercise Personal Jurisdiction Over Him**

The Court's own files reveal that Richard Harazim is actively and personally involved in the prosecution of this litigation.  Harazim signed a certificate stating that he conferred with counsel for Kotva with a view to establishing a budget for the costs of conducting the full course—and various alternate courses—of the litigation, and to consider the resolution of the litigation through the use of ADR.  *See* Kotva's Certification Pursuant to Local Rule 16.1. Harazim also signed Kotva's interrogatory responses.[6]  Moreover, Harazim is a percipient witness to events alleged to have taken place in both Kotva's complaint and the counterclaim. Counsel for Kotva has also stated that Kotva will likely designate Harazim as its 30(b)(6) witness.  Thus, regardless of whether other individuals at the lifeless corporation, Kotva, approved the initiation of this lawsuit, the fact remains that Richard Harazim is the living, breathing person who has caused the lawsuit to be initiated and continued in Massachusetts.

Applying the three-prong specific jurisdiction analysis to Harazim's initiation and prosecution of this lawsuit, it is clear that the Court has personal jurisdiction over Harazim.  With respect to the first prong, the counterclaims arise directly out of the filing of this lawsuit in Massachusetts.[7]  With respect to the second prong, Harazim's filing and pursuit of a lawsuit in

---

[6] A copy of Kotva's interrogatory responses are attached as Exhibit 3 to Docket No. 21.
[7] This is clearest with respect to the claims for abuse of process (Count I), civil conspiracy (Count II) and unfair and deceptive trade practices (Count VII).  The other claims relate to the

8

this Court, invoking Massachusetts common law and statutory law, are contacts that—perhaps more than any other potential type of contacts—represent a purposeful availment of the privilege of conducting activities in Massachusetts and invocation of the benefits and protections of Massachusetts law.

With respect to the third prong, Harazim cannot present a compelling case that the exercise of jurisdiction is unreasonable. Each of the gestalt factors favors the exercise of jurisdiction. First, even were he not a counterclaim-defendant, Harazim would still need to litigate here and travel to Boston in order to continue pursuing this lawsuit on behalf of Kotva. The marginal burden on him is de minimis. Second, Massachusetts has a strong interest in preventing foreigners from using the Massachusetts courts to abuse Massachusetts citizens. Third and fourth, the counterclaim-plaintiffs and the Court have a strong interest in resolving all disputes in a single, convenient, effective proceeding before an impartial tribunal. Finally, Massachusetts and the Czech Republic have a common interest in promoting the resolution of cross-border investment disputes.

*Mobil Oil Corp. v. Advanced Environmental Recycling Technologies, Inc.,* 833 F. Supp. 437 (D. Del. 1993) is directly on point. In *Mobil Oil*, the defendant filed counterclaims against the plaintiff, Mobil Oil, and three individual counterclaim-defendants. The counterclaim alleged that the underlying lawsuit was sham litigation brought as part of an on-going anti-competitive scheme, and that two of the counterclaim-defendants had authorized the lawsuit. The individual counterclaim-defendants moved to dismiss for lack of personal jurisdiction. The court denied their motions to dismiss of the two defendants who directed the filing of Mobil's lawsuit, writing

---

filing of this lawsuit because this lawsuit is part of a unified effort by Benda, Harazim and Forminster to abuse their control over Kotva to tunnel its assets. The other claims address other aspects of this effort.

with respect to one of them that "Mr. Ferguson's authorization of the filing of this declaratory judgment action on behalf of Mobil and his presence in Delaware as a deposition witness in connection with the lawsuit together create sufficient contacts with Delaware to support personal jurisdiction." *Id.* at 444. Mr. Harazim's direction to file the Complaint in this case on behalf of Kotva is no different than Mr. Ferguson's authorization on behalf of Mobil and the Court has jurisdiction over Harazim.

The cases cited by Harazim and Benda for the proposition that "jurisdiction over the individual officers of a corporation may not be based merely on jurisdiction over the corporation" are simply not applicable to the allegations of this case. The Court's jurisdiction over Harazim is based not "merely" on the fact that he is an officer of Kotva. It is based on the fact that he personally directed and participated in the commission of a tort in Massachusetts by initiating and prosecuting this lawsuit.[8]

The fact that Harazim is pursuing this lawsuit in his capacity as Chief Executive Officer of Kotva provides no shield against personal jurisdiction. This Court rejected an identical argument made by the president of an out-of-state corporation in *Trans National Travel, Inc. v. Sun Pacific International, Inc.*, 10 F. Supp. 2d 79, 83 (D. Mass. 1998). The corporation's president, Fleming, argued "that because each of these contacts was made in his capacity as a corporate representative, the Court should not consider them in its personal jurisdiction analysis. Fleming argue[d] that since all of the contacts were made for the benefit of the corporate

---

[8] Likewise, Harazim's and Benda's suggestion that *Andresen v. Diorio*, 349 F.3d 8, 12 (1st Cir. 2003) is somehow "controlling precedent" on this question is wrong. *See* Mem. in Supp. of Mot. to Dismiss at 13 n.14. *Andresen* related to personal jurisdiction over a parent corporation rather than personal jurisdiction over an officer or director based on that officer's or director's own activities.

defendant, the 'fiduciary shield' doctrine should protect him." *Id.* The Court rejected this argument, writing:

> Fleming's reliance on the "fiduciary shield" doctrine is misplaced. Although other states have recognized the "fiduciary shield" doctrine, *see Ten Mile Indus. Park v. Western Plains Serv.*, 810 F.2d 1518, 1527 (10th Cir. 1987), Massachusetts courts have never recognized the "fiduciary shield" doctrine. *Yankee Group, et al. v. Yamashita*, 678 F. Supp. 20, 22 (D.Mass. 1988); *Johnson*, 573 F. Supp. at 1111. Moreover, it is unlikely that Massachusetts would adopt the doctrine since the state long arm statute is intended to reach the limits of the United States Constitution. *Ross v. Ross*, 371 Mass. 439, 441, 358 N.E.2d 437 (1976). Since there is no Massachusetts precedent recognizing the "fiduciary shield" doctrine, the Court rules that it is inapplicable in the instant circumstances. *See Yankee*, 678 F. Supp. at 22.

*Id.*

### C.  Harazim's Other Contacts With Massachusetts Provide an Additional Basis for Personal Jurisdiction

Numerous emails from Harazim to Weiss provide further an additional basis for specific jurisdiction over the counterclaim-defendants.[9] For example, in *Workgroup Technology Corp. v. MGM Grand Hotel, LLC*, 246 F. Supp. 2d. 102, 112 (D. Mass. 2003) the court held that it could exercise personal jurisdiction over the defendant as a result of contacts that included email because "but for" the contacts, the dispute in the case would not exist. *Accord RF Techs. Corp. v. Applied Microwave Techs., Inc.,* 369 F. Supp. 2d 24, 32–33 (D. Me. 2005) (holding that personal jurisdiction is appropriate based in part on emails where those emails reflected an on-going relationship between the defendant and individuals in the forum). The counterclaim-plaintiffs' cause of action arises directly from these emails. By sending these emails into Massachusetts, Harazim was furthering the Forminster Group's efforts to freeze out Kotva's minority shareholders. Thus, Harazim's email contacts clearly meet the relatedness prong of the

---

[9] Copies of the emails from Harazim to individuals in Massachusetts referenced in the Counterclaim are attached hereto as Exhibit A.

specific jurisdiction test. Harazim knowingly and purposefully directed those emails into Massachusetts, satisfying the purposeful availment prong of the specific jurisdiction test. As discussed above, Harazim cannot show a compelling reason why this Court should not exercise personal jurisdiction over him. Accordingly, the emails provide an additional basis for personal jurisdiction.

The counterclaim-defendants incorrectly argue that the counterclaim-plaintiffs must show both actual ("but-for") and legal (proximate) causation in order to assert that the Court has specific jurisdiction over a tort claim. In *Tatro v. Manor Care, Inc*., 416 Mass. 763, 770-71 (1994), the Supreme Judicial Court of Massachusetts expressly rejected the First Circuit's interpretation of the Massachusetts long-arm statute as requiring the forum related actions to be the proximate cause of the injury underlying the lawsuit. Since *Tatro* the First Circuit has not adopted a strict proximate cause standard as part of its constitutional analysis. At most it has announced a hybrid test where proximate cause is one consideration, but not a stringent requirement. *See Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 715 (holding that the First Circuit is "persuaded that strict adherence to a proximate cause standard in all circumstances is unnecessarily restrictive"). While this Court wrote in footnote two of *Champion Exposition Services, Inc. v. Hi-Tech Electric, LLC*, 273 F. Supp. 2d 172, 177 (D. Mass. 2003) that both proximate and but-for cause are required, the sole citation for this proposition is to *Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir. 1999). However, *Phillips Exeter* states only that when the basis for the cause of action is a tort claim, there must be some causal nexus between the forum related activity and the cause of action. *Id.* at 289. *Phillips Exeter* does not address which type of causal nexus is required. Undersigned counsel has found no First Circuit support for the proposition that the counterclaim-plaintiffs must show

that the emails are both the proximate and but-for cause of their injuries. In fact, there is recent persuasive authority to the contrary, adopting a pure but-for causation analysis. *See Lawson v. Affirmative Equities Co.*, 341 F. Supp. 2d 51, 61 n.15 (D. Mass. 2004) (holding that but-for causation is sufficient for jurisdiction in cases arising from tort claims).

In any event, the emails satisfy either causal nexus test. They are a key link in the chain of evidence demonstrating that the counterclaim-defendants' motives for initiating and prosecuting this lawsuit are improper ones, an essential element of the counterclaim-plaintiffs' abuse of process claim. They are also evidence of the Forminster Group's abuse of control over Kotva to freeze out minority shareholders, elements of the counterclaim-plaintiffs' other claims.

**D.    The Court Should Impute Harazim's Contacts With Massachusetts to Benda**

While negotiating with Weiss over the potential purchase of Weiss's investors' shares in Kotva and Trend, Harazim described Martin Benda as "in charge of this particular deal." Email from Richard Harazim to Georgiy Nikitin (Aug. 27, 2004; 7:51 a.m.) (attached hereto as Exhibit A, at 2). Harazim's characterization is confirmed by the facts that: (1) Benda conducted negotiations in person with Weiss's then-representative in the Czech Republic, Vladimir Hoffmann; and (2) Benda met with Harazim, Weiss and Hoffmann regarding Weiss's investors' interest in Kotva. Indeed, it makes sense that Benda, the Chairman of Kotva's Supervisory Board, was in charge while Harazim, Kotva's CEO, followed his instructions. Like Harazim, Benda is also a percipient witness to events described in both the complaint and the counterclaim.

As described in more detail above, this lawsuit is part and parcel of Harazim's and Benda's efforts to coerce Weiss into accepting an inadequate price for his investors' shares in Kotva and Trend. Thus, although Harazim may be the individual overseeing the day-to-day aspects of this lawsuit, Benda remains "in charge of this particular deal."

Thus, even if Harazim made all the phone calls to Massachusetts, contacted the lawyers himself, and signed the checks, Benda cannot hide in the shadows and escape responsibility and personal jurisdiction by directing Harazim to take these actions rather than taking them himself. "[I]t is clearly established that under basic principles of agency law, forum-related contacts made by an agent acting within the scope of an agency relationship are attributable to the principal." *In re Lernout & Hauspie Sec. Litig.*, 337 F. Supp. 2d 298, 314 (D. Mass. 2004) (citations omitted). Analogously, when Benda, in his capacity as Chairman of Kotva's Supervisory Board or otherwise, instructs Harazim to contact Massachusetts, the Court must attribute Harazim's contacts to Benda when considering Benda's motion to dismiss.

Accordingly, since the Court can exercise personal jurisdiction over Harazim, it can also exercise personal jurisdiction over Benda. The counterclaim-plaintiffs acknowledge that, at this stage in the case, they have more evidence of Harazim's role in this litigation and the associated negotiations than of Benda's role. Benda's role in initiating this lawsuit is one subject of the counterclaim-plaintiffs' discovery requests served on Kotva over five months ago, which are described in more detail below.

**E.    Kotva's Failure to Comply with Its Discovery Obligations Have Prevented the Counterclaim-Plaintiffs from Presenting Additional Evidence**

The counterclaim-plaintiffs submit that the facts presented in connection with this Opposition are sufficient to meet the prima facie standard for personal jurisdiction. However, the counterclaim-plaintiffs would have had additional evidence had Kotva complied with its discovery obligations in a timely fashion.

The counterclaim-plaintiffs submitted document requests and interrogatories to Kotva on August 1, 2005. Kotva has since produced a scant 265 pages of documents, most of which consisted of published reports or emails already in the possession of the counterclaim-plaintiffs.

Kotva contends that every other non-privileged responsive document is "confidential . . . commercial information" and refuses to produce all other documents without previously seeking a protective order, unless the counterclaim-plaintiffs agree to an overly burdensome protective order under which Kotva would no longer have the burden of proving that documents are subject to special treatment as "confidential . . . commercial information."

Moreover, Kotva has refused to produce documents relating to the decision to initiate this lawsuit, contending that they are privileged. However, over *five months* have passed since Kotva received the counterclaim-plaintiffs' document requests, and Kotva has failed to provide the counterclaim-plaintiffs with a privilege log or any other information to support its claim of privilege. Even a privilege log would provide additional evidence concerning Harazim's and Benda's personal involvement in the initiation and prosecution of this lawsuit because the fact and number of communications with each other or with Massachusetts lawyers about this lawsuit are not privileged.

Additionally, on November 10, 2005, the counterclaim-plaintiffs noticed a 30(b)(6) deposition of Kotva for December 16, 2005. Despite having over thirty days' notice of this deposition, counsel for Kotva stated that its designee—most likely Richard Harazim—would not attend due to counsel's schedule. The counterclaim-plaintiffs agreed to postpone the deposition, provided that it was rescheduled for no later than the first half of January. Counsel for the counterclaim-plaintiffs repeatedly asked for an alternate date. Weeks passed. Finally, on January 4, 2006—over *fifty days* after the deposition was noticed—counsel for Kotva suggested a single alternate date of February 6, 2006. This strategy of delay is a transparent—and, to date, successful—effort to prevent the counterclaim-plaintiffs from accessing information about, among other things, "Kotva's decision to file [] this lawsuit," and "Kotva's management

structure"—facts directly relevant to Harazim's and Benda's motion to dismiss.  *See* Deposition Notice (attached hereto as Exhibit B).

Kotva's failure to adequately respond to discovery requests is chargeable to Richard Harazim, Kotva's Chief Executive Officer and Martin Benda, the Chairman of Kotva's Supervisory Board. *Cf. Wilson v. United States*, 221 U.S. 361, 376 (1911) ("A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs.  If they . . . fail to take appropriate action . . . [they] are guilty of disobedience and may be punished for contempt.").  The Court should not allow them to benefit from this misbehavior by granting their motion to dismiss.

IV.    **CONCLUSION**

For the foregoing reasons, the Court should deny Harazim's and Benda's Motion to Dismiss.  Should the Court have any doubts as to whether the counterclaim-plaintiffs have established personal jurisdiction, the counterclaim-plaintiffs again reiterate their request for jurisdictional discovery or, at a minimum, that the Court allow the counterclaim-plaintiffs an opportunity to further supplement the record after Kotva provides complete responses to the counterclaim-plaintiffs' discovery requests.

**REQUEST FOR ORAL ARGUMENT**

The counterclaim-plaintiffs believe that oral argument may assist the Court and wish to be heard.  Accordingly, pursuant to Local Rule 7.1(d), the counterclaim-plaintiffs hereby request oral argument.

.                                              Respectfully Submitted,

ANDREW WEISS, WEISS ASSET
MANAGEMENT LLC, K T, INC. and CVF
INVESTMENTS LTD.

By their attorneys,


/s/ Benjamin A. Goldberger
Edward P. Leibensperger (BBO# 292620)
Benjamin A. Goldberger (BBO# 654357)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts  02109-1775
(617) 535-4000

Dated: January 6, 2006

BST99 1486599-3.072198.0012

**Georgiy Nikitin**

| | |
|---|---|
| **From:** | Richard Harazim [richard.harazim@od-kotva.cz] |
| **Sent:** | Tuesday, August 17, 2004 11:51 AM |
| **To:** | Georgiy Nikitin; Vladimir Hoffmann |
| **Cc:** | Andrew Weiss |
| **Subject:** | RE: Kotva |

Dear Mr. Nikitin

Thank you for your offer.

Unfortunatelly, your offer doesn't seem to deal with the lawsuits brought about by Balfindor and Gilroy against our company. Without resolving these and any other potential lawsuits against our company raised by BGO or by BGO controlled entities we won't be able to conclude any deal at all.

Should you reconsider your position we can return to the discussion about the purchase price for Kotva shares held by BGO.


Best regards


Richard Harazim

.

**Georgiy Nikltln**

| | |
|---|---|
| From: | Richard Harazlm [richard.harazim@od-kotva.cz] |
| Sent: | Friday, August 27, 2004 7:51 AM |
| To: | Georgiy Nikitin |
| Subject: | Kotva shares |

Dear Mr. Nikitin

Thank you for your offer from 23.8.04. While we appreciate your offer and we are basically interested in buying the shares of Kotva from BGO we feel the following areas are problematic for us:

1. The purchase contract must be tied to lawsuits filed by Gilroy AND Balfindor, not only to Gilroy.

2. The purchase price is too high from several points of view. First of all, it is too high in general. It is much higher than the price on Stock exchange. Secondly, even if we disregarded this, we certainly wouldn't be able to sell the shares to another investor at the same price, which means we would have to decrease the share capital of Kotva. If it showed in the process of capital decrease that NAV is lower than the purchase price (the deal created a loss) - which is a certainty at the level suggested by you - we as a board would face risks that are not acceptable.

3. The process of acquiring more than 10 % of our own shares poses accounting and legal complications that must be consulted with our auditors and lawyers.

4. Due to the above we can't react as quickly as requested from us.

5. Mr. Benda who is in charge of this particular deal is leaving for a holiday and will not be back before Monday 13, September.

Therefore we suggest to prolong the negotiating period till the end of September.

Best regards

Richard Harazim

1

**Georgly Nikitin**

| | |
|---|---|
| **From:** | Richard Harazim [richard.harazim@od-kotva.cz] |
| **Sent:** | Wednesday, December 01, 2004 10:32 AM |
| **To:** | Andrew Weiss |
| **Subject:** | RE: Kotva |

Dear Mr Weiss

Thank you for your email from 23.11.04.

We have studied your offer carefully. Unfortunately, we feel there are many factors that come into our decision making process and we need to discuss them with someone authorized to make decision on you part. The lack of such a person makes it impossible for us to assign a value to various scenarios and therefore we can't provide a clear answer to you offer.

We plan a week of very important negotiations with our Irish partners. These negotiations should establish the final frameworks of our relations. The exact dates are just under discussions. Would it be feasible for someone from your side to take part in these negotiations? The person we would have on mind, though, would need to be someone more than a messenger. In ideal case it would be yourself as we will need to consider various alternatives and we are sure there will be a necessity to make qualified decisions on the spot. This is a unique chance to put all relevant parties at one table and suggest a final scheme which would satisfy everybody.

Tentatively, we speak about next week as the week when we should meet. If you were interested and this proved to be of a too short notice for you to arrange your travel plans we can postpone the meeting by one week and meet during the week starting 13th of December as neither us nor the Irish have time preference when considering these two weeks. All we know is that we have to meet in order to make some important decisions and both our parties wish to make those decisions before the end of the year.

Please let me know as soon as possible whether you'd be interested in coming and if so what dates would be most convenient to you. It is our believe that it would help move things ahead if you decided to come.

Best regards

Richard Harazim

Message

## Georgly Nikitin

**From:** Richard Harazim [richard.harazim@od-kotva.cz]
**Sent:** Friday, December 03, 2004 8:04 AM
**To:** Andrew Weiss
**Subject:** RE: Kotva/Trend

Dear Mr Weiss

It is a pity you will not be able to come  We don't think that we face mere mathematical computations. The whole situation comprises of many other factors than just purely technical and we hoped we would have a chance to discuss them. As it stands, we understand that we will not utilise the unique opportunity of having all relevant parties at one table.

Under these circumstances and without clear answers to some of the questions we have and we wanted to discuss in person we won't be in a position to accept your offer by the 10th of December. As to further development we will wait for the meeting with Markland and its outcome  Only then we will be able to define our further steps

Best regards


Richard Harazim

Message

## Georgiy Nikitin

| | |
|---|---|
| **From:** | Richard Harazim [richard.harazim@od-kotva.cz] |
| **Sent:** | Wednesday, December 08, 2004 1:57 AM |
| **To:** | Georgiy Nikitin |
| **Subject:** | RE: Kotva/Trend |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Dear Mr. Nikitin

Of course we couldn't and that is the reason we can't resolve this over the email. We can't provide you with specific data because

1 This information is under confidentiality agreement
2 You as a sharehoder would obtain an insider information which might bear its consequences for both our parties

regards


Richard Harazim

Message

## Georgiy Nikitin

**From:** Richard Harazim [richard.harazim@od-kotva.cz]
**Sent:** Wednesday, December 15, 2004 8:31 AM
**To:** Georgiy Nikitin
**Subject:** RE: Kotva/Trend

Dear Mr Nikitin

I am afraid I can't be more specific about the value of the building and about your assumptions used in the valuation in general. I expressed our concerns already and we still view them as serious. Also, as I stated before, we are not interested in the Trend stake you hold and therefore any discussions about your valuations of this stake are not beneficial.

Having all these constraint on mind we repeatedly suggest that the only way forward is to meet in person and discuss these and other aspects so that layout to a final solution can be found during the meeting. Please let us know whether this is possible. We do not insist, of course, but it is true that we do not see how else we can find a solution. In other words, unless we manage to find some solution during the talks we will not be able to accept your offer.

We would appreciate your final position ASAP becasue we need to organize the dates for more parties and that can be sometimes difficult.


Best regards


Richard

Message

## Georgiy Nikitin

**From:** Andrew Weiss
**Sent:** Thursday, January 06, 2005 11:12 AM
**To:** 'Richard Harazim'
**Subject:** RE: KT

Dear Mr. Harazim,

KT is not controlled by Weiss Asset Management; however, if a satisfactory resolution of all other matters can be achieved, I would try to persuade KT to settle its lawsuits and I am highly confident that I would be successful in that endeavor. Thus, I do not expect that the KT lawsuit will impair the ability of the parties to achieve a successful agreement.

Andrew Weiss

**From:** Richard Harazim [mailto:richard.harazim@od-kotva.cz]
**Sent:** Tuesday, January 04, 2005 8:08 AM
**To:** Andrew Weiss
**Cc:** Georgiy Nikitin
**Subject:** KT

Dear Mr Weiss

I was informed by Linklaters Prague today that they received a letter from Mr Peterka putting them on notice that a new lawsuit was filed As it uses exactly the same format, phrases and logic in general as the previous lawsuit filed on behalf of Gilroy we assume that KT belongs to your group, as well

Please confirm whether or not KT's lawsuit is part of the deal offered by you on November 23, 04. As this is a completely new issue we would like to know what exactly each of the various factors represent.

Best regards

Richard Harazim

2/7/2005

Message

**Georgiy Nikitin**                              .

| | |
|---|---|
| **From:** | Andrew Weiss |
| **Sent:** | Friday, January 07, 2005 2:05 PM |
| **To:** | 'Richard Harazim' |
| **Subject:** | RE: KT |

Dear Mr. Harazim,

Yes your understanding of the conditions is correct. We are looking forward to reviewing your offer.

Sincerely.
Andrew Weiss

---

**From:** Richard Harazim [mailto:richard.harazim@od-kotva.cz]
**Sent:** Friday, January 07, 2005 4:28 AM
**To:** Andrew Weiss
**Subject:** RE: KT

Dear Mr. Weiss

Thank you for the information.

Nevertheless, as withdrawals of all the lawsuits are important for us and we would not normally consider buying any shares from you without knowing that we were getting rid of the lawsuits at the same time I'd like to be perfectly clear on what exactly the conditions are. Please confirm my understanding that conditions of your last offer from 23. November 04 prevail, i.e. if we buy the assets there specified for consideration there shown you will use your best endeavours to persuade Gilroy, Balfindor and now also KT to withdraw their respective lawsuits. Any potential purchase contract for the shares from BGO is to be conditional upon withdrawals of these lawsuits

Once we have the terms confirmed from your side we will be able to tell you our final position re your offer

Best regards

Richard Harazim

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s., )<br><br>Plaintiff, )<br><br>v. )<br><br>ANDREW WEISS and WEISS ASSET )<br>MANAGEMENT, LLC, )<br><br>Defendants. )<br>_____)<br>)<br>ANDREW WEISS, WEISS ASSET )<br>MANAGEMENT LLC, K T, INC. and CVF )<br>INVESTMENTS, LTD., )<br><br>Counterclaim-plaintiffs, )<br><br>v. )<br><br>KOTVA a.s., MARTIN BENDA, RICHARD )<br>HARAZIM, FORMINSTER ENTERPRISES, )<br>LTD., SPV CO and JOHN DOES 1–5, )<br><br>Counterclaim-defendants. )<br>_____) | C.A. No. 05-10679-RCL |

## <u>NOTICE OF DEPOSITION OF KOTVA A.S.</u>

TO:   Joel G. Beckman
       William C. Nystrom
       Dana A. Zakarian
       Nystrom Beckman & Paris LLP
       10 St. James Ave., 16th Floor
       Boston, Massachusetts 02116

Please take notice that, pursuant to Federal Rule of Civil Procedure 30(b)(6), Andrew

Weiss, Weiss Asset Management LLC, K T, Inc. and CVF Investments, Ltd., by their attorneys,

will take the deposition upon oral examination of the person designated most knowledgeable by

Kotva a.s. with respect to each matter identified on Schedule A (attached hereto). Kotva a.s. shall designate one or more of its officers, directors, managing agents, or other persons who consent to testify on its behalf, and may set forth for each person designated, the matters on which the person will testify.

The deposition will commence on **December 16, 2005 at 9:30 a.m.** at the offices of McDermott Will & Emery LLP, 28 State Street, Boston, Massachusetts 02109, before a notary public or other officer authorized by law to administer oaths. The examination will continue from day to day until concluded. You are invited to attend and cross-examine. The deposition shall be recorded by videographic (sound-and-visual) and stenographic means.

ANDREW WEISS, WEISS ASSET
MANAGEMENT LLC, K T, INC. and CVF
INVESTMENTS LTD.

By their attorneys,

Edward P. Leibensperger (BBO# 292620)
Benjamin A. Goldberger (BBO# 654257)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts 02109-1775
(617) 535-4000

Dated: November 10, 2005

### CERTIFICATE OF SERVICE

I, Benjamin A. Goldberger, hereby certify that on the 10th day of November, 2005, a true and correct copy of the foregoing document was served by first class mail on counsel for each other party.

Benjamin A. Goldberger

## SCHEDULE A

*Definitions*

A.      Any entity referred to in this Schedule, including Kotva and Markland, shall mean

that entity and all its agents, servants, employees, successors, predecessors, affiliates, trustees,

parent companies, subsidiaries, divisions and other representatives or persons acting on its behalf

or under its control.

B.      "Discovering Parties" shall mean Andrew Weiss, Weiss Asset Management LLC,

K T, Inc., and CVF Investments Ltd.

C.      "Department Store" shall mean the property Kotva refers to as the "Shopping

Centre" in its Complaint.

*Instructions*

Kotva a.s. is instructed to designate one or more of its officers, directors, managing

agents, or other persons who consent to testify on its behalf with respect to the following matters:

1.      The meeting among Richard Harazim, Martin Benda, Andrew Weiss and

Vladimir Hoffmann that took place in Prague on or about May 12, 2004 and referred to in

paragraph 20 of Kotva's complaint.

2.      Kotva's sale of the Department Store to Markland, including negotiations leading

up to the sale, disposition of the proceeds of the sale and any escrow agreements relating to the

proceeds of the sale.

3.      Kotva's transfer of the Department Store to its subsidiaries.

4.      The value of the Department Store and past valuations of the Department Store.

5.      The communications described in paragraphs 27–34 of Kotva's Complaint.

6.      Kotva's decision to file of this lawsuit.

7.     Kotva's communications with Czech law enforcement.

8.     Richard Harazim's conversations with members of the media, including writers for the Wall Street Journal and Prague Post.

9.     The steps Kotva has taken to respond to the Discovering Parties' First Set of Document Requests.

10.    Kotva's relationship with Forminster Enterprises, Ltd.

11.    Kotva's management structure.

12.    Organization and relationships among Kotva's subsidiaries.

13.    The settlement agreement referenced in paragraph 12 of the complaint and the claims that were settled.

14.    The methods Kotva used to gain access to the documents referred to as "multiple internal documents" in paragraph 43 of the Complaint.

15.    Claims asserted against Kotva by James Woolf and any settlement of those claims.

BST99 1480040-1 072198 0012