UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ANDREW WEISS and WEISS ASSET ) | |
| MANAGEMENT, LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | C.A. No. 05-10679-RCL |
| ) | |
| ANDREW WEISS, WEISS ASSET ) | |
| MANAGEMENT LLC, K T, INC. and CVF ) | |
| INVESTMENTS, LTD., ) | |
| ) | |
| Counterclaim-plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| KOTVA a.s., MARTIN BENDA, RICHARD ) | |
| HARAZIM, FORMINSTER ENTERPRISES, ) | |
| LTD., SPV CO and JOHN DOES 1–5, ) | |
| ) | |
| Counterclaim-defendants. ) | |
| ) | |

**COUNTERCLAIM-PLAINTIFFS' OPPOSITION TO
FORMINSTER ENTERPRISES LTD.'S MOTION TO DISMISS COUNTERCLAIM
FOR LACK OF PERSONAL JURISDICTION**

Counterclaim-plaintiffs Andrew Weiss ("Weiss"), Weiss Asset Management LLC

("WAM"), K T, Inc. ("K T") and CVF Investments Ltd. ("CVF") (collectively, the "Weiss

Parties") hereby submit their Opposition to the Motion to Dismiss of Forminster Enterprises Ltd.

("Forminster"). As described below, Forminster has submitted itself to this Court's jurisdiction

by planning, initiating and directing the commencement and prosecution of this lawsuit through

the plaintiff Kotva, and its CEO and Chairman of the Supervisory Board, Richard Harazim and

Martin Benda.  The act of filing this lawsuit in Boston, Massachusetts constitutes a tortious abuse of process.  This abuse of process was part and parcel of a larger scheme by which Forminster, Harazim and Benda have utilized their control over the Kotva corporate shell to divert assets to themselves and others in their group.

## I.    FRAMEWORK FOR DECIDING JURISDICTIONAL MOTIONS

The Weiss Parties suggest that the Court first decide Harazim's and Benda's Motion to Dismiss before turning to Forminster's Motion to Dismiss.  In their Opposition to Harazim's and Benda's Motion to Dismiss, the Weiss Parties explain why the filing of this lawsuit in Boston, and the pre-suit contacts and e-mails to Boston, are sufficient contacts with Massachusetts for the Court to exercise jurisdiction over Richard Harazim and Martin Benda, who Harazim described as "in charge of this particular deal."  As described more fully below, the Court should attribute the lawsuit-related contacts with Massachusetts of Kotva, Harazim and Benda to Forminster and exercise jurisdiction over Forminster on the basis of those contacts.

## II.    FACTUAL BACKGROUND RELATING TO FORMINSTER

This lawsuit is part of the ongoing efforts of Richard Harazim, Martin Benda and others to use the proceeds of illegal activity to convert the assets of Kotva a.s. for their own benefit and to the detriment of Kotva's minority shareholders.  As described in more detail below, Harazim and Benda are the representatives of Forminster Enterprises, Ltd. ("Forminster").  Harazim and Benda are also, respectively, the Chief Executive Officer and Chairman of the Supervisory Board of Kotva, and direct its affairs.  Forminster controls Kotva through its representatives, Benda and Harazim, and its control over a majority of Kotva's shares.  However, Forminster secured its control of these shares—and Kotva—as a result of the massive embezzlement of a Czech investment fund called Trend.

### A.     Forminster Seizes Control of Kotva as a Result of Criminal Activity

As described in more detail in the counterclaim and attached press articles, the Czech government has frozen Forminster's shares in Kotva on the grounds that they are the proceeds of a crime—the "tunneling" of assets from Trend.   *See* Counterclaim ¶ 47 (quoting Czech Constitutional Court, Decision No. II US 267/03 (April 15, 2004)).   As one of the press articles attached to the counterclaim explains:

**The tunnel ends in Cyprus**

The most valuable asset of TREND was represented by the majority block of the shares in KOTVA.   These shares also disappeared.   However, the court finally succeeded in freezing these shares in the account of the Cyprus company Forminster Enterprises Limited.

"Trend Case — everybody knows what happened but the assets will hardly be restored," SLOVO DAILY, Counterclaim Ex. 2 at 7 (translation at 9).

Miroslav Hálek, who exerted managerial control over Trend at the time of the embezzlement, also possessed a general power of attorney to act on behalf of Forminster during the same time period.   Hálek's connections to Forminster and personal involvement in the embezzling of Trend's assets are documented in detail in several reports authored by the Czech authorities.[1]

Even Richard Harazim acknowledged in an interview "that the transactions leading from Trend to Forminster 'might not be entirely legal when examined all together.'"   Nick Carey, "Prague's Free Market Pain," WALL ST. J., July 18, 2005, at A10 (attached hereto as Ex. A).   Mr. Harazim followed this admission with an explanation of his might-makes-right theory of Czech law, adding "Under Czech law, ownership is defined by possession. Forminster possesses the shares."   *Id.*

---

[1] Paragraph 44 of the Counterclaim contains an excerpt from one such report.

**B.**     **Benda and Harazim Represent Forminster's Interests in the Czech Republic**

From November 30, 1999 to October 30, 2002, Richard Harazim and Martin Benda were directors of Forminster. *See* Certificates of Cypriot Ministry of Commerce, Industry & Tourism (attached hereto as Ex. B). It was during this time that Forminster installed Harazim and Benda as directors and officers of Kotva.

Perhaps realizing that their dual roles created too much evidence of a link between Forminster and the company it was in the process of looting, Benda, Harazim and the two other directors resigned.[2] What little is known about their replacements is telling.

When Benda and Harazim first became directors of Forminster, Forminster's Secretary was Indilaw Secretarial Limited, which lists its address as 4 Diagorou Street, Kermia House, 6th Floor, Flat 601,[3] 1097 Nicosia, Cyprus. Indilaw Secretarial Limited has remained Forminster's Secretary at least through July 2005, and remains at the same address.

All four of Forminster's replacement directors—Doxa Pericleous, Rena David, Anthony Indianos and Andreas Papasiantis—also list their "residential addresses" as 4 Diagorou Street, Kermia House, 6th Floor, Flat 601, 1097 Nicosia, Cyprus. Anthony Indianos is a Cypriot lawyer, who heads the law firm Costas Indianos & Co. *See* Costas Indianos & Co. Website at 2 (attached hereto as Ex. C). The address of the Costas Indianos firm is also 4 Diagorou Street, Kermia House, 6th Floor, Flat 601, 1097 Nicosia, Cyprus. *Id.* at 1.

This firm appears to be in the business of providing nominee directors and a Cypriot mailing address to those who wish to control a company anonymously. Using Google to search for the Costas Indianos firm's address, one can find multiple companies claiming to be located at

---

[2] One of these directors, Michael Vlach, is currently affiliated with Kotva. *Compare* Ex. B at 2 *with* Kotva's Interrogatory Response, *infra* at note 7.
[3] Sometimes, this portion of the address is listed as "Office 601."

this address.  Notably, the company listed in Kotva's 2002 annual report as the next largest Kotva shareholder behind Forminster can also be found at the Costas Indianos law firm.  *See* 2002 Annual Report at 4 (attached hereto as Ex. D).

Forminster's shareholders have, as early as September 1998, also been nominees selected to conceal the identity of who truly owns and operates Forminster.  *See* Certificates of Cypriot Ministry of Commerce, Industry & Tourism at 1 (attached hereto as Ex. E) (listing Ledra Nominees Ltd. and Ledra Trustees Ltd. as shareholders).  From November 30, 1999—the date Harazim and Benda became directors of Forminster—to May 24, 2005, Forminster's two shareholders were both nominees claiming the Costas Indianos law firm as their address.  *Id.* at 2.  On May 25, 2005, all of Forminster's shares were consolidated under a single nominee at the Costas Indianos firm, Indvecta (Nominees) Ltd., 4 Diagorou Street, Kermia House, 6th Floor, Office 601, 1097 Nicosia, Cyprus.  *Id.* at 3.  The beneficial owners of Forminster appear to be further concealed behind a web of companies affiliated with the Bonalbo Group.[4]

Thus, the current "directors" of Forminster appear to be directors in name only.  The logical inference is that Benda and Harazim continue to represent Forminster's interests and act on its behalf as de facto directors and officers.  Those familiar with Kotva, Forminster and Trend acknowledge this reality of how Forminster is run.  The Wall Street Journal has identified Richard Harazim as "the Forminster-appointed chief executive of Kotva" and accurately

---

[4] Bonalbo Fiduciaries is reportedly listed with the Cypriot authorities as the "beneficial" owner of Forminster.  Bonalbo Fiduciaries is owned by the Bonalbo Group UK, which is owned by the Bonalbo Group Ltd.  Other affiliated companies include the Bonalbo Group Cyprus and Bonalbo Management.  Like the Costas Indianos firm, the Bonalbo Group is in the business of providing cover for those who wish to run a company anonymously.  *See* Ex. F (According to the Bonalbo Group website, Bonalbo is "an international network of professionals specialising in the formation and administration of companies and trusts" providing services including "professional directors, nominee shareholders and company secretaries.").

characterizes this current dispute as one between Forminster and the Weiss Parties. WALL ST. J., Ex. A at 4. Communications created contemporaneously during the negotiations among Weiss, Harazim and Benda over the value of the Weiss Parties' stake in Kotva confirm that Weiss—as well as Vladimir Hoffmann, the Czech resident with whom Weiss was working—also understood Benda and Harazim to be representatives of Forminster.[5]

These facts raise serious questions about the "affidavit" submitted by Rena David.[6] The Court should not consider this document to the extent that it controverts the Weiss Parties' proffer under the "prima facie" test for personal jurisdiction. However, the Court should note the following: (1) Ms. David states that her residential address is the same as that of Forminster, Indilaw Secretarial Limited and Costas Indianos & Co. (¶ 1); and (2) Ms. David states that Forminster has no other offices or places of business aside from the Costas Indianos law firm (¶ 5).

Nominating lawyers to stand in as directors of a company cannot serve to insulate the company from the activities of the individuals who continue to run the company's affairs. In view of the suspicious nature of David's installation as a director of Forminster, the document Forminster submitted does not set forth sufficient facts to indicate that David has personal knowledge of the company's affairs and is competent to testify as to the extent of Forminster's involvement in the affairs of Kotva, including the filing of this lawsuit.

---

[5] *See* Ex. G (referring to "the latest offer from Forminster") and Ex. H (predicting that "Forminster will withdraw its offer").

[6] This document does not appear to have been sworn before an officer authorized to take oaths and, assuming that its was executed in Cyprus, is not in proper form under 28 U.S.C. § 1746(1). This statute requires unsworn declarations that are executed outside of the United States submitted in lieu of affidavits include language in which the declarant submits to the jurisdiction of the United States courts for purposes of prosecution for making a false statement. *Compare id. with* 18 U.S.C. § 1623.

The conclusion that the nominee directors are isolated from the realities of Forminster's business is further supported by Kotva's interrogatory responses. The sale of the Department Store transformed Kotva from a department store company to a company with a new name (K-T-V Invest, a.s.) and unknown business. Common sense dictates that Forminster, the majority shareholder of Kotva, would be intimately involved in this sea change in the business of Kotva. Yet, when asked to identify "all persons, including Kotva, [and] its . . . owners . . . who have knowledge regarding the purported sale of the Department Store to the Irish Investors, including the negotiations leading up to that sale and the disposition of the proceeds of that sale," Kotva identified Richard Harazim, Martin Benda and others affiliated with Kotva, but not one person formally affiliated with Forminster.[7] This response indicates that either *no one* from Forminster had a great deal of knowledge about the sale of the Department Store—which is

---

[7] The full response to the interrogatory is as follows:

INTERROGATORY NO. 2:

Please identify all persons, including Kotva, its employees, officers, directors, agents, owners, attorneys and affiliates and the Irish Investors, their employees officers, directors, agents, owners, attorneys and affiliates, who have knowledge regarding the purported sale of the Department Store to the Irish Investors, including the negotiations leading up to that sale and the disposition of the proceeds of that sale.

Response:

Kotva objects to this interrogatory to the extent it is overly broad, unduly burdensome, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections, Kotva responds that the following persons have had the most knowledge concerning the sale of the Department Store: Richard Harazim, Kotva; Martin Benda, Kotva; Michael Vlach, Kotva; Jiři Brada, Kotva; Pavel Richtr, Kotva; Jaromir David, Kotva; Henry Prestage, Irish Investors; Frank Walker, Irish Investors; Aidan Scully, Irish Investors.

difficult to believe—or that *no one else* from Forminster needed much knowledge because Benda and Harazim—Forminster's de facto directors—were intimately involved in the deal.

### C.    "Kotva" Files this Lawsuit in Massachusetts

The plaintiff in this case is Kotva. However, Kotva is a corporation. It cannot act but through its directors, officers and employees. As explained in more detail on page 8 of the Weiss Parties' Opposition to Harazim's and Benda's Motion to Dismiss, Kotva's CEO, Richard Harazim, is prosecuting this lawsuit in Kotva's name.

In response to Kotva's complaint, the Weiss Parties asserted counterclaims against Forminster and other counterclaim-defendants. Pages 5–6 of the Weiss Parties' Opposition to Harazim's and Benda's Motion to Dismiss contains a brief summary of the counterclaims. Forminster claims, inaccurately, that "the Counterclaim contains only four allegations of specific acts by FEL." Forminster's Mot. to Dismiss at 7. However, in paragraphs 13 and 14, the counterclaim lists Forminster as a member of a conspiracy referred to throughout the counterclaim as the "Forminster Group." The counterclaim goes on to allege, among other acts by the Forminster Group, that Harazim sent emails to Massachusetts "as part of the Forminster Group's efforts to pressure Weiss to abandon his investors' claims in the Czech litigation" and that "[t]he Forminster Group [] filed this civil case against Weiss" with a bad faith motive, making the filing of this case a tortious abuse of process. Counterclaim ¶¶ 35, 38–45.

Forminster refused to accept service of process when notified of the counterclaims in May 2005. Consequently, the Weiss Parties were forced to resort to the costly and time-consuming method of service under the Hague Convention. After being formally served on September 9, 2005, Forminster filed a motion to dismiss on November 14, 2005, arguing that this Court lacks personal jurisdiction over it.

### III.    ARGUMENT

### A.    The Legal Standards

"When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing . . . the 'prima facie' standard governs its determination." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618–19 (1st Cir. 2001). "[I]n evaluating whether the prima facie standard has been satisfied, 'the district court is not acting as a factfinder; rather, it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law.'" *Id.* at 619 (citations omitted).

Although Forminster spends some space in its memorandum discussing the Massachusetts long-arm statute, the Court "may sidestep the statutory inquiry and proceed directly to the constitutional analysis, however, because the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute 'as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.'" *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002) (quoting *"Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp.*, 361 Mass. 441, 280 N.E.2d 423, 424 (1972)).

Thus, the Court must filter the counterclaim-plaintiffs' jurisdictional allegations through the three-prong test for establishing specific jurisdiction.[8]  The three-prong test for specific jurisdiction requires that the counterclaim-plaintiffs show that: (1) Forminster's actions in the forum relate to the asserted cause of action; and (2) that Forminster purposefully availed itself of the forum. *Ticketmaster-New York v. Alioto*, 26 F.3d 201, 206 (1st Cir. 1994) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) and *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  If the counterclaim-plaintiffs have met their burden under

---

[8] The Weiss Parties do not suggest that Forminster is subject to general jurisdiction in Massachusetts.

the first two prongs, then "[t]he defendant may nonetheless avoid having to defend in a strange place if it can establish that allowing the suit to go forward would be inconsistent with 'fair play and substantial justice.'" *Ticketmaster-New York*, 26 F.3d at 206.

Under this third and final prong, Forminster has the opportunity to show the Court that, despite its contacts with and purposeful availment of the forum, it would be unreasonable to subject it to personal jurisdiction. In order to prevail, however, Forminster "must present *a compelling case* that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985) (emphasis added). Forminster must address the so-called "gestalt factors": "These gestalt factors include: the defendant's burden of appearing; the forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and the shared interest of the several States in furthering fundamental substantive social policies." *N. Laminate Sales, Inc. v. Davis*, 403 F.3d 14, 26 (1st Cir. 2005) (citing *Burger King Corp.*, 471 U.S. at 477).

If the Weiss Parties make a prima facie showing of any one of the following, the Court should attribute the filing of this lawsuit to Forminster and, therefore, exercise jurisdiction over it: (a) Harazim was an agent of Forminster; (b) Forminster was part of a conspiracy with either Kotva or Harazim and the filing of this lawsuit was an act in furtherance of that conspiracy; or (c) Kotva is an alter ego of Forminster.

As explained in more detail in their Opposition to Harazim's and Benda's Motion to Dismiss, the filing of this lawsuit in Massachusetts is sufficient to confer jurisdiction over the individuals and corporations responsible for planning, initiation and directing the filing and prosecution of this lawsuit. *See* Opp. to Harzim's and Benda's Mot. to Dismiss § III.B, at 8–11;

*Mobil Oil Corp. v. Advanced Environmental Recycling Technologies, Inc.*, 833 F. Supp. 437 (D. Del. 1993). In these circumstances, if the filing of this lawsuit is a contact attributable to Forminster, then the Weiss Parties have met their burden under the first two prongs of the test for specific jurisdiction and Forminster cannot meet its burden under the third prong.

    **B.**    **The Court Should Attribute the Filing of this Lawsuit to Forminster as a Contact with Massachusetts Because Richard Harazim is Forminster's Agent**

"[I]t is clearly established that under basic principles of agency law, forum-related contacts made by an agent acting within the scope of an agency relationship are attributable to the principal." *In re Lernout & Hauspie Sec. Litig.*, 337 F. Supp. 2d 298, 314 (D. Mass. 2004) (citations omitted).

As detailed above, the evidence the Weiss Parties have been able to marshal at this point indicates that Richard Harazim continues to act as Forminster's agent. Harazim caused this lawsuit to be filed to benefit Forminster, among others, as part of the Forminster Group's efforts to freeze out Kotva's minority shareholders. Since the filing of this lawsuit is a forum-related contact of one of Forminster's agents, arising within the scope of the agency relationship, the Court should attribute the filing of this lawsuit to Forminster for purposes of establishing personal jurisdiction. As explained in more detail in their Opposition to Harazim's and Benda's Motion to Dismiss, the filing of this lawsuit is, alone, a sufficient forum-related contact to justify this Court's exercise of personal jurisdiction.

    **C.**    **In the Alternative, the Court Should Attribute Harazim's and Kotva's Filing of this Lawsuit to Forminster Because They Are Co-Conspirators and Pursuing This Lawsuit is an Act in Furtherance of the Conspiracy**

Forminster appears to concede that forum-related contacts of other individuals may be attributed to it under an agency theory or alter ego theory if an appropriate showing is made. However, in its Opposition to the Weiss Parties' Motion for Jurisdictional Discovery, Forminster

argues that there can never, under any circumstances, be personal jurisdiction over out-of-state defendants based solely on their conspiring with defendants who have contacts with the forum in furtherance of the conspiracy. Forminster's Opp. to Mot. for Jurisdictional Discovery at 13–14 (quoting *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 307 F. Supp. 2d 145, 157–58 (D. Me. 2004)). Forminster is wrong.

At its core, the co-conspirator theory of personal jurisdiction is a logical outgrowth of the well established—and uncontested—rule that an agent's contacts with a forum are attributable to the principal. Co-conspirators are effectively each others' principals and agents. While it is true that there is no First Circuit case in which the co-conspirator theory of jurisdiction was adopted, the First Circuit has also never rejected this theory. Nor would it. Several other courts have recognized this theory. *E.g.*, *Crompton Corp. v. Clariant Corp.*, 221 F. Supp. 2d 683 (M.D. La. 2002); *Dooley v. United Techs. Corp.*, 786 F. Supp. 65 (D.D.C. 1992); *Gemini Enterprises, Inc. v. WFMY Television Corp.*, 470 F. Supp. 559 (M.D.N.C. 1979); *Socialist Workers Party v. Att'y Gen. of the United States*, 375 F. Supp. 318 (S.D.N.Y. 1974).

Exercising jurisdiction over co-conspirators based on their membership in the conspiracy does not violate Due Process. Courts routinely impose consequences far more serious than personal jurisdiction in a civil case based on membership in a conspiracy. For example, in criminal cases, courts routinely admit statements that would otherwise be hearsay, increase sentences or even impose criminal liability when there otherwise would be none based on the defendant's membership in a conspiracy. *See United States v. Petrozziello*, 548 F.2d 20 (1st Cir. 1977) (hearsay); U.S.S.G. § 1B1.3(a)(1)(B) (sentencing); *Pinkerton v. United States*, 328 U.S. 640 (1946) (criminal liability). There can be no serious suggestion that in so doing the courts have routinely denied criminal defendants Due Process. Moreover, rejecting a theory of personal

jurisdiction over co-conspirators in civil cases on Due Process grounds would be inconsistent with the exercise of jurisdiction over out-of-state co-conspirators in criminal cases under the as strict or stricter constraints of the Sixth Amendment's venue provisions. *Cf. United States v. Uribe*, 890 F.2d 554 (1st Cir. 1989) (holding that venue for all co-conspirators is proper in a district in which any co-conspirator committed an overt act in furtherance of the charged conspiracy, even if a particular co-conspirator was not physically present in that district).

Accordingly, even if the Court were to find that Harazim is no longer an agent of Forminster, so long as Harazim's and Kotva's forum-related contacts were in furtherance of the Forminster Group's efforts to freeze out Kotva's minority shareholders, this Court has personal jurisdiction over all members of the conspiracy, including Forminster.

### D.    In the Alternative, Kotva's Filing of This Lawsuit is Attributable to Forminster Because Kotva is Forminster's Alter Ego

As this Court noted in *Giuliano v. Nations Title, Inc.*, 938 F. Supp. 78, 81 (D. Mass. 1996), the leading Massachusetts case for determining whether to pierce the corporate veil and exercise jurisdiction over a parent corporation for the acts of its subsidiary is *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614 (1968). Forminster appears to agree that this is the appropriate standard, citing *Giuliano* and quoting extensively from *My Bread*. *See* Forminster's Mot. to Dismiss at 13. *My Bread* established two alternate methods for piercing the corporate veil:

> (a) when there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious consequence of the intercorporate relationship, **or** (b) when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, **or** serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting.

*My Bread*, 353 Mass. at 619 (emphasis added).

13

Forminster's relationship with Kotva meets either test. First, there is clearly active and direct participation by Forminster's representatives, Benda and Harazim, in the direction of Kotva's affairs. Harazim and Benda exercise "pervasive control" over Kotva through their positions as CEO and Chairman of the Supervisory Board, respectively. Kotva's minority shareholders have suffered injurious consequences as a result of this control, as Benda and Harazim are in the process of freezing out the minority shareholders to benefit Forminster. Weiss and WAM have suffered the further injurious consequences of being the subject of Kotva's abuse of process in this action. Second, the contemporaneous communications demonstrating that Weiss thought he was dealing with Benda and Harazim as representatives of Forminster and the Forminster Group's present insistence that Benda and Harazim no longer represent Forminster establish "a confused intermingling of activity of two or more corporations engaged in a common enterprise with . . . serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting." *Id.*

The belated replacement of Harazim and Benda as directors of Forminster with Cypriot lawyers is too little, too late to cure the fact that the two companies had—and as a practical matter continue to have—overlapping board members. This overlap, combined with Harazim's and Benda's complete control over Kotva—particularly with respect to this litigation—is sufficient for the Court to exercise personal jurisdiction over Forminster under an alter ego theory. *Cf. Sorenson v. H&R Block, Inc.*, No. 99-10268-DPW, 2002 U.S. Dist. LEXIS 18689, at *16–*19 (D. Mass. Aug. 27, 2002) (exercising personal jurisdiction under alter ego theory based on "pervasive control" over subsidiary, even under more stringent summary judgment standard).

Each of the cases Forminster cites in its papers is distinguishable from the case at hand. In *Giuliano*, this Court found that (1) the participation of the parent in the affairs of the

subsidiary did not enable or further any "fraudulent or injurious consequence;" and (2) the two corporations were not engaged in a "common enterprise." *Giuliano*, 938 F. Supp at 81–82. In *Andresen v. Diorio*, 349 F.3d 8 (1st Cir. 2003), the sole fact to distinguish the parent/subsidiary relationship from the typical parent/subsidiary relationship was that the subsidiary "had employed an interim president who formerly worked for" the parent: there were no overlapping board members. *Id.* at 12. In *Alvarado-Morales v. Digital Equipment Corp.*, 843 F.2d 613 (1st Cir. 1988), the First Circuit found that if the corporate veil were pierced, there would be jurisdiction, but no liability, thus making the plaintiff's argument "self-defeating." *Id.* at 616. Neither *United Electrical, Radio & Machine Workers of Am. v. 163 Pleasant Street Corp.*, 960 F.2d 1080 (1st Cir. 1992) nor *Northern Laminate Sales, Inc. v. Matthews*, 249 F. Supp. 2d 130 (D.N.H. 2003) applied the two alternative test established under Massachusetts state law. *See United Elec.*, 960 F.2d at 1091 (applying a three-part federal common law test in ERISA case); *N. Laminate*, 249 F. Supp. 2d at 140–43 (reviewing New York, Delaware and New Hampshire law). Finally, it is true that in *McKesson HBOC, Inc. v. Green*, 339 F.3d 1087, 1094–95 (9th Cir. 2003), the Ninth Circuit indicated that piercing the veil of a publicly traded American company may be unprecedented. However, the Ninth Circuit followed this pronouncement by writing:

> The shareholders of a public corporation can hardly be said, as a practical matter, to exercise control over the corporation. As a leading commentator noted, requiring control screens out piercing against the shareholders of a publicly traded corporation . . . . This provides a doctrinal underpinning to explain the fact that there never has been a case in which the court pierced to hold shareholders in a public corporation liable for the company's debts.

*Id.* (alteration in original; internal quotation marks and citations omitted). This "doctrinal underpinning" is entirely inapplicable to Forminster's relationship to Kotva. Forminster controls Kotva because it controls 55% of Kotva's shares and another company that appears to share the same address with Forminster controls another 14% of Kotva's shares.

This case is more analogous to *Kleinerman v. Morse*, 26 Mass. App. Ct. 819 (1989), in which the Appeals Court found that there was personal jurisdiction over the out-of-state corporate parent under an alter ego theory.  In *Kleinerman*, he parent corporation owned most, but not all, of the subsidiary's capital stock, just as Forminster owns most, but not all of Kotva's stock.  *Id.* at 821–22.  In *Kleinerman*, the president of the parent corporation became the president of the subsidiary, just as Forminster's directors became Kotva's CEO and Chairman of the Supervisory Board.  *Id.* at 822.  The parent in *Kleinerman*, like Forminster, also used its control over the subsidiary to wind up the subsidiary's operations.  *Id.* at 822.  In view of the "[s]ignificant exercise of control" by the parent over the subsidiary and "significant intermingling of officers and directors between parent and subsidiary," the *Kleinerman* court found that there was personal jurisdiction.  *Id.* at 823.  This Court should make a similar finding under the similar facts of this case.

E.      **Kotva's Failure to Comply with Its Discovery Obligations Has Prevented the Weiss Parties from Presenting Additional Evidence**

The Weiss Parties submit that the facts presented in connection with this Opposition are sufficient to meet the prima facie standard for personal jurisdiction.  However, the Weiss Parties would have had additional evidence had Kotva complied with its discovery obligations in a timely fashion.

In view of the Discovery Master's January 6, 2006 Order allowing the Weiss Parties' Motion to Compel, the Weiss Parties hope to receive additional discovery responses from Kotva on January 17, 2006.  The Weiss Parties and will promptly review any information they receive and, if appropriate, supplement this submission.  The Weiss Parties' anticipated access to this information was one of the grounds on which the Discovery Master relied in denying the Weiss Parties' Motion for Jurisdictional Discovery.

Additionally, on November 10, 2005—before Forminster filed its Motion to Dismiss—the Weiss Parties noticed a 30(b)(6) deposition of Kotva for December 16, 2005. Despite having over thirty days' notice of this deposition, counsel for Kotva stated that its designee—most likely Richard Harazim—would not attend due to counsel's schedule. The counterclaim-plaintiffs agreed to postpone the deposition, provided that it was rescheduled for no later than the first half of January. Counsel for the counterclaim-plaintiffs repeatedly asked for an alternate date. Weeks passed. Finally, on January 4, 2006—over *fifty days* after the deposition was noticed—counsel for Kotva suggested a single alternate date of February 6, 2006.[9] This strategy of delay is a transparent—and, to date, successful—effort to prevent the counterclaim-plaintiffs from accessing information about, among other things, "Kotva's decision to file [] this lawsuit," and "Kotva's relationship with Forminster"—facts directly relevant to Forminster's Motion to Dismiss. *See* Deposition Notice (attached hereto as Ex. I).

Finally, before the Discovery Master ruled on the Weiss Parties' Motion for Jurisdictional Discovery, counsel for Forminster suggested that the Discovery Master should consider "punt[ing]" the decision until the Court had an opportunity to determine: (1) if the Weiss Parties had made a "colorable case" for jurisdiction; and (2) what additional information, if any, would assist the Court in deciding Forminster's Motion to Dismiss. If the Court finds that the Weiss Parties have made a "colorable case," but not a "prima facie showing," the Weiss

---

[9] Counsel for the Weiss Parties is unavailable on that date and continues to press for a deposition in the first half of January, the condition for their agreement to postponing the December 16, 2005 deposition.

Parties ask that the Court order Forminster to respond to the discovery requests proposed by the Weiss Parties in their Motion for Jurisdictional Discovery.[10]

IV.    <u>**CONCLUSION**</u>

For the foregoing reasons, the Court should deny Forminster's Motion to Dismiss. Should the Court have any doubts as to whether the counterclaim-plaintiffs have established personal jurisdiction, the counterclaim-plaintiffs again reiterate their request for jurisdictional discovery or, at a minimum, that the Court allow the counterclaim-plaintiffs an opportunity to further supplement the record after they have taken the 30(b)(6) deposition of Kotva originally noticed for December 16, 2005.

---

[10] In view of the Discovery Master's finding that "[t]he motion seeks discovery which is not narrowly tailored to jurisdictional issues," the Weiss Parties propose limiting their jurisdictional discovery from Forminster to the following: Document Requests Nos. 5, 8 and 9; and Interrogatories 4–5 and 10–12.

## REQUEST FOR ORAL ARGUMENT

The counterclaim-plaintiffs believe that oral argument may assist the Court and wish to be heard.  Accordingly, pursuant to Local Rule 7.1(d), the counterclaim-plaintiffs hereby request oral argument.

.                                                          Respectfully Submitted,

ANDREW WEISS, WEISS ASSET
MANAGEMENT LLC, K T, INC. and CVF
INVESTMENTS LTD.

By their attorneys,


/s/ Edward P. Leibensperger
Edward P. Leibensperger (BBO# 292620)
Benjamin A. Goldberger (BBO# 654357)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts  02109-1775
(617) 535-4000

Dated: January 9, 2006

BST99 1486883-2.072198.0012



FORMAT FOR PRINTING
sponsored by




Don't copy. Lead.®

**July 18, 2005**

EUROPEAN BUSINESS NEWS

# Prague's Free-Market Pain

**U.S. Investor's Soured Deal Reflects Post-Privatization Hazards**

**By NICK CAREY**
**DOW JONES NEWSWIRES**
*July 18, 2005; Page A10*

PRAGUE -- The Kotva department store looms dark and decrepit in this city's downtown, a monument to mid-1970s Communist architecture and now to legal disputes stemming from the Czech Republic's tumultuous rush into capitalism.

Disputes over ownership go back to its privatization almost a decade ago and have culminated in a legal tangle that is getting attention from the U.S. Embassy here over whether shareholders' rights are being protected in this new member country of the European Union.

**DOW JONES REPRINTS**

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers, use the Order Reprints tool at the bottom of any article or visit: www.djreprints.com.

• See a sample reprint in PDF format.
• Order a reprint of this article now.

The dispute involves a majority stake in Kotva AS, the holding company of the seven-story store. It pits U.S. investor Andrew Weiss, whose Weiss Asset Management manages $350 million, primarily for American private investors, against Forminster Enterprises Ltd., a Cypriot-registered company whose ownership couldn't be determined.

The dispute escalated after Forminster sold its stake in March to Irish property company Markland Holdings Ltd. for €56 million ($67.4 million), despite a Czech court order freezing Forminster's stake in Kotva and blocking any sale of company property until the dispute is resolved. Forminster representatives say the company legally sidestepped the court



**Hot Properties**

A dispute over Prague's Kotva department store, above, highlights lingering pitfalls for foreigners even as the Czech Republic attracts sizable new investments. Below, foreign direct investment, in billions:

Source: OECD                                                                    *Forecast

order by transferring the department store to a subsidiary for sale. State Prosecutor Frantisek Fila says Czech police are investigating the property transfer.

The battle over Kotva highlights the Czech Republic's mixed track record with foreign investors. The country has drawn the most investment per capita in Central and Eastern Europe, thanks to its central location and low-cost, highly skilled work force. Investors starting from scratch here say that apart from a slow judicial system, hefty bureaucracy and corruption -- common complaints throughout the region -- they are satisfied.

Still, some investors buying into companies or forming partnerships with local businessmen have run into problems. In 2003, the Czech government paid $354 million in damages to U.S. businessman Ronald Lauder, after a Czech arbitration court ruled Mr. Lauder was unfairly squeezed out of television station TV Nova by his Czech partner and that the government had failed to protect him.

In the 1990s, the poorly regulated sale of state-owned companies following communism's demise here often resulted in asset stripping, as majority owners siphoned off assets from newly privatized companies. The practice was so common that "tunneling," the Czechs' term for it, has become synonymous for many people with all that went wrong during the transition to a free-market economy from a centrally planned system.

The dispute over Kotva, which dates to transactions that began in the mid-1990s, also highlights complaints about the Czech judiciary and law enforcement. After eight years, no lawsuits nor criminal charges filed in the matter have come to trial. In a report issued last month, the World Bank said countries in the region, from the Czech Republic to Russia, must do "much more" to tackle problems of judicial inefficiency.

Mr. Weiss, who also is a professor of economics at Boston University, says

in a suit he has filed in Prague that Forminster obtained its 56% share in Kotva fraudulently from a now-bankrupt investment fund called Trend. Mr. Weiss's company owns 40% of Trend and 12% of Kotva, and he says he is defending his shareholder rights in each. Forminster says Mr. Weiss tried to blackmail the company into buying him out and has sued him in U.S. district court in Massachusetts and in Prague.

Share-transfer records from the Prague Stock Exchange, plus government and police investigation records, show a web of transactions, starting in the mid-1990s, moving Kotva shares through shell companies from Trend to Forminster. All these companies were linked to Miroslav Halek, Trend's majority owner at the time. Meanwhile, throughout 1996, Mr. Weiss's fund was building a 40% stake in Trend. Mr. Weiss says he was unaware at the time of any suspect share deals.

On May 28, 1996, Trend sold 150,000 Kotva shares to a second company at $16 a share, according to transaction records. Forty-eight minutes later Trend bought back 140,000 shares at $39 each. Two minutes after that, Trend sold 140,000 shares to a third company for $16. The quoted price for Kotva stock on the Prague Stock Exchange that day was more than $20.

A Czech Finance Ministry report in January 1998 estimated Trend had a loss of $3 million through these three transactions. A 1999 Deloitte & Touche study commissioned by a company linked to Forminster said the transactions had no "apparent commercial reason."

Eleven people, including Mr. Halek, have been charged twice by the state prosecutor's office with fraud in connection with the dealings in Trend. Both times the charges were dismissed, as the court ruled the defense received insufficient time to prepare for the case. Mr. Fila, the prosecutor, says fresh charges relating to suspect transactions with Kotva shares were filed against the same 11 people July 13 in Czech district court.

Mr. Fila also filed charges of money laundering against Mr. Halek relating to an account in Liechtenstein that Mr. Halek opened in the mid-1990s in Forminster's name after he obtained power of attorney from Forminster. The high court in Liechtenstein in 1997 froze that account until all property disputes over Trend are resolved.

Forminster attorney Jan Nekola says Mr. Halek had a power of attorney from Forminster throughout the process of transferring Kotva shares and opened the Liechtenstein account for the company, but he says Mr. Halek no longer is involved with the company and that he can't divulge who owns it. Neither Mr. Halek nor his legal representatives could be reached for comment, and his whereabouts couldn't be ascertained.

Mr. Nekola says Forminster settled with Trend representatives in 2000. In 2002, a London arbitration court ruled the settlement was void because it harmed shareholders. Richard Harazim, the Forminster-appointed chief executive of Kotva, says the arbitration ruling "has no impact under Czech law." In an interview, Mr. Harazim acknowledged that the transactions leading from Trend to Forminster "might not be entirely legal when examined all together." He added, "Under Czech law, ownership is defined by possession. Forminster possesses the shares."

Mr. Harazim defends the sale of Kotva to Markland despite the court order freezing Forminster's shares. The frozen "shares were not sold," he says, "merely the assets." A Markland spokesman declined to comment on sale details, but said lawyers advised it was a "clean property deal."

**Write to** Nick Carey at nick.carey@dowjones.com[1]

**URL for this article:**
http://online.wsj.com/article/0,,SB112163587682687750,00.html

**Hyperlinks in this Article:**
**(1)** mailto:nick.carey@dowjones.com

Copyright 2005 Dow Jones & Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit www.djreprints.com.



ΚΥΠΡΙΑΚΗ REPUBLIC    ΔΗΜΟΚΡΑΤΙΑ OF CYPRUS

C.C.2

No.: 78962

MINISTRY OF COMMERCE, INDUSTRY & TOURISM
DEPARTMENT OF REGISTRAR OF COMPANIES
AND OFFICIAL RECEIVER
NICOSIA

30 June 2005

## CERTIFICATE

### FORMINSTER ENTERPRISES LIMITED

It is hereby certified that in accordance with the records kept by this Department the following were the Directors and Secretary of the above company as at 30.11.1999:

| Directors | Nationality | Residential Address |
|---|---|---|
| RICHARD HARAZIM | Czech Republic | 174 Skorkovskeho<br>636 00 Brno<br>Czech Republic |
| MARTIN BENDA | Czech Republic | 46 Borac C.<br>Czech Republic |
| JOHN MOFFITT | American | 14 Bilkova<br>Prague 1<br>Czech Republic |
| MICHAEL BLUHM | American | 4 U. Nikolajky<br>Prague 5<br>Czech Republic |

| Secretary | Residential Address |
|---|---|
| INDILAW SECRETARIAL LIMITED | 4 Diagorou Street<br>Kermia House, Office 601<br>Nicosia |

M. MARKIDOU
For Actg Registrar of Companies.

/LH



ΚΥΠΡΙΑΚΗ
REPUBLIC

ΔΗΜΟΚΡΑΤΙΑ
OF CYPRUS

C.C.2

No.: 78962

# MINISTRY OF COMMERCE, INDUSTRY & TOURISM
## DEPARTMENT OF REGISTRAR OF COMPANIES
## AND OFFICIAL RECEIVER
## NICOSIA

**30 June 2005**

## CERTIFICATE

### FORMINSTER ENTERPRISES LIMITED

It is hereby certified that in accordance with the records kept by this Department the following were the Directors and Secretary of the above company as at 6.5.2002:

| **Directors** | **Nationality** | **Residential Address** |
|---|---|---|
| RICHARD HARAZIM | Czech Republic | 174 Skorkovskeho<br>636 00 Brno<br>Czech Republic |
| MARTIN BENDA | Czech Republic | 46 Borac C.<br>Czech Republic |
| JOHN MOFFITT | American | 14 Bilkova<br>Prague 1<br>Czech Republic |
| MICHAEL VLACH | Czech Republic | 10 Galandauerova<br>Brno<br>Czech Republic |

| **Secretary** | **Residential Address** |
|---|---|
| INDILAW SECRETARIAL LIMITED | 4 Diagorou Street<br>Kermia House, Office 601<br>Nicosia |

M. MARKIDOU
For Actg Registrar of Companies.

ΛΗ



ΚΥΠΡΙΑΚΗ    ΔΗΜΟΚΡΑΤΙΑ
REPUBLIC     OF CYPRUS

C.C.2

No.: 78962

## MINISTRY OF COMMERCE, INDUSTRY & TOURISM
## DEPARTMENT OF REGISTRAR OF COMPANIES
## AND OFFICIAL RECEIVER
## NICOSIA

30 June 2005

### CERTIFICATE

### FORMINSTER ENTERPRISES LIMITED

It is hereby certified that in accordance with the records kept by this Department the following were the Directors and Secretary of the above company as at 31.10.2002:

| Directors | Nationality | Residential Address |
|---|---|---|
| DOXA PERICLEOUS | Cypriot | 4 Diagorou Street<br>Kermia House<br>6th Floor, Flat 601<br>1097 Nicosia |
| RENA DAVID | Cypriot | 4 Diagorou Street<br>Kermia House<br>6th Floor, Flat 601<br>1097 Nicosia |
| ANTHONY INDIANOS | Cypriot | 4 Diagorou Street<br>Kermia House<br>6th Floor, Flat 601<br>1097 Nicosia |
| ANDREAS PAPASIANTIS | Cypriot | 4 Diagorou Street<br>Kermia House<br>6th Floor, Flat 601<br>1097 Nicosia |

| Secretary | Residential Address |
|---|---|
| INDILAW SECRETARIAL LIMITED | 4 Diagorou Street<br>Kermia House, 6th Floor, Flat 601<br>1097 Nicosia |

M. MARKIDOU

For Actg Registrar of Companies.

/LH



### COSTAS INDIANOS & CO

### ADVOCATES & LEGAL CONSULTANTS

### ESTABLISHED 1924

# Specialized in Corporate & Business Law and Shipping Law


### ENTER

## CONTACT
## Costas Indianos & Co - Advocates & Legal Consultants

4, Diagoras street, Kermia House, 6th floor, flat 601
P.O.Box 21574, CY 1510 Nicosia, CYPRUS
Telephone: +357-22 67 52 31 / Fax: +357-22 66 96 78
e-mail: indianos@indianos.com.cy



**COSTAS INDIANOS & CO - Advocates & Legal Consultants**

THE FIRM:  COSTAS INDIANOS & CO - ADVOCATES & LEGAL CONSULTANTS

     

Antonis.C. Indianos (1899-1968)      Costas. A. Indianos (1942-2001)

The Law Firm, one of the oldest in Cyprus, was founded by the late **Antonis C. Indianos**, M.A. (Oxon), Barrister-at-Law, in 1924, in the town of Limassol and was known then as A. C. Indianos - Advocate.The late A.C. Indianos was the Criminal Lawyer par excellence in the island and in later years when he moved his office to Nicosia (1942), the firm's business expanded to encompass commercial, insurance and corporate activities.

**Costas A. Indianos** joined the firm in 1965 after studying in Oxford M.A. (Oxon).After the passing away in 1968 of the late A.C. Indianos the firm's name was changed to **Costas Indianos & Co, Advocates & Legal Consultants.** Between 1977-1983 he served as a member of the International Secretariat of the Council of Europe in Strasbourg, France, in the Department of Economic and Social Activities. Costas Indianos was a practising lawyer with wide experience and specialization in shipping & martime, commercial, business and corporate law. His brother Antonis Emiliou Indianos (University of Athens) joined the firm in 1975. He served on the bench as a Judge of most of the District Courts of Cyprus until 2001. He is now a practising lawyer in Larnaca and an expert in criminal law.

Anthony Indianos (University of Aix-Marseilles / Maastricht), lawyer and son of Costas Indianos joined the firm in 1999. He is currently heading the Law Firm and is fluent in English, French and Greek. The main office is situated in Nicosia with an office in Larnaca. It includes five lawyers, shipping and corporate consultants and one internal accountant. It has a solid local and international client base and possesses an extensive

international network of business contacts.



**AREAS OF PRACTICE** **CLIENT BASE** **CYPRUS** **OFFICES**
**BACK**

# Výroční zpráva
# KOTVA a.s.
# za rok 2002

**I.  TEXTOVÁ ČÁST**                                                    **str.**

1. Základní údaje ............................................................. 2
2. Struktura koncernu, údaje o základním kapitálu a cenných papírech   3
3. Údaje o činnosti a finanční situaci ..................................... 7
4. Údaje o statutárních a dozorčích orgánech, vedení
   společnosti a soudních sporech ......................................... 13
5. Očekávaná hospodářská a finanční situace a vývoj činnosti
   v roce 2003 .............................................................. 18

**II.  ZPRÁVA PŘEDSTAVENSTVA O PODNIKATELSKÉ ČINNOSTI
A STAVU MAJETKU SPOLEČNOSTI** ............................................. 19

**III. ÚČETNÍ ZÁVĚRKA V NEZKRÁCENÉM ROZSAHU** .............................. 22
**PŘÍLOHA K ÚČETNÍ ZÁVĚRCE** .............................................. 29

**IV. KONSOLIDOVANÁ ÚČETNÍ ZÁVĚRKA** ..................................... 54
**PŘÍLOHA KE KONSOLIDOVANÉ ÚČETNÍ ZÁVĚRCE** .............................. 56
**ZPRÁVA AUDITORA KE KONSOLIDOVANÉ ÚČETNÍ ZÁVĚRCE** ..................... 65

**V.  ZPRÁVA O VZTAZÍCH MEZI OVLÁDAJÍCÍ A OVLÁDANOU OSOBOU
A O VZTAZÍCH MEZI OVLÁDANOU OSOBOU A OSTATNÍMI OSOBAMI
OVLÁDANÝMI STEJNOU OVLÁDAJÍCÍ OSOBOU** ................................. 66

**VI. VÝROK AUDITORA** ................................................... 69

**VII. OSOBY ODPOVĚDNÉ ZA VÝROČNÍ ZPRÁVU A OVĚŘENÍ ÚČETNÍ
ZÁVĚRKY** ............................................................... 71

# I. Textová část

# 1. Základní údaje

| | |
|---|---|
| **Obchodní firma (Název):** | **KOTVA a.s.** |
| **Sídlo:** | **nám. Republiky 8, Praha 1** |
| **PSČ:** | **113 88** |
| **IČ:** | **60193808** |
| **DIČ:** | **001-60193808** |
| **Datum založení:** | **22.12.1993** |
| **Právní forma:** | **akciová společnost** |
| **Období:** | **doba neurčitá** |

**Rejstříkový soud oprávněný**

**k vedení obchodního rejstříku:**   **Městský soud v Praze**

**Číslo pod kterým je**

**společnost zapsána:**   **odd. B, vložka 2370**

**Předmět podnikání:**   **dle čl. IV stanov:**

koupě zboží za účelem dalšího prodeje a prodej, hostinská činnost, výroba a prodej nenahraných nosičů zvukových nebo zvukově obrazových záznamů a prodej a půjčování nahraných zvukových a zvukově obrazových záznamů, pronájem motorových vozidel, silniční motorová doprava, provozování nestátního zdravotnického zařízení s druhem a rozsahem poskytované péče všeobecného lékařství, provozování parkovišť, garáží a odstavných ploch, praktický výcvik učňů, rozvod elektřiny

KOTVA a.s. byla založena dle právního řádu České republiky jako akciová společnost podle § 172 zákona č. 513/91 Sb. a byla zapsána do Obchodního rejstříku k 1. 1. 1994. Jediným zakladatelem společnosti je Fond národního majetku ČR, se sídlem v Praze 2, Rašínovo nábřeží 42, na který přešla část majetku státního podniku PRIOR-KOTVA, obchodní dům se sídlem Praha 1, náměstí Republiky 8, zapsaného v obchodním rejstříku vedeném u Obvodního soudu pro Prahu 1, oddíl Ps, vložka 140, podle § 11 odst. 2 zákona č. 92/91 Sb. o podmínkách převodu majetku státu na jiné osoby, ve znění zákona č. 210/93 Sb.

2

## 2. Struktura koncernu, údaje o základním kapitálu a cenných papírech

- **Popis struktury koncernu**

    Společnost ve smyslu ust. § 66a obchodního zákoníku je společností s většinovým společníkem (akcionářem) a je osobou ovládanou. Ovládající osobou je potom osoba (firma: FORMINSTER ENTERPRISES LIMITED, sídlo: 20 Queen Frederica Street, El Greco House, Nicosia, Kypr). Společnost s touto ovládající osobou tvoří koncern.

    <u>Údaje o koncernu:</u>

    **A/ Společnost ovládající:**
    Obchodní firma (název): FORMINSTER ENTERPRISES LIMITED
    Sídlo: 20 Queen Frederica Street, El Greco House, Nicosia, Kypr
    Další údaje o ovládající společnosti nejsou společnosti známy.
    Výše podílu, který opravňuje k hlasování na valné hromadě emitenta:    55,74%

    **B/ Společnost ovládaná:**
    Obchodní firma : KOTVA a.s.
    Sídlo:            Praha 1, nám. Republiky 8
    IČ:               60193808

    Mezi společností ovládající a ovládanou není uzavřena tzv. ovládací smlouva

    **Definice dalších ovládaných osob:**
    1. KOTVA a.s. byla v roce 2002 vlastník 100% akcií KOTVA NEMOVITOSTI, a.s., IČ: 26229048, se sídlem Brno, Příkop 4, zapsané v obchodním rejstříku Krajského soudu v Brně, oddíl B, vložka 3426
    2. KOTVA a.s. byla v roce 2002 vlastník 100% akcií KOTVA OBCHODNÍ, a.s., IČ: 26231735, se sídlem Brno, Příkop 4, zapsané v obchodním rejstříku Krajského soudu v Brně, oddíl B, vložka 3484
    3. KOTVA a.s. byla v roce 2002 jediný společník obchodní společnosti Značková konfekcia s.r.o., IČ: 35689641, se sídlem Mickiewiczova 6, Bratislava, zapsané v obchodním registru Okresného súdu v Bratislave 1, oddíl Sro, vložka: 10928/B
    4. KOTVA a.s. byla v roce 2002 jediným společníkem KOTVA-středisko praktického vyučování, s.r.o., IČ: 26123193, se sídlem Praha 1, nám. Republiky 8, zapsané v obchodním rejstříku Městského soudu v Praze, oddíl C, vložka 72148
    5. KOTVA NEMOVITOSTI, a.s. vlastní od roku 2002  99% akcií společnosti KOTVA INTERNATIONAL LIMITED, č. 522767 se sídlem Geneva Place, Waterfront Drive, P.O. Box 3469, Road Town, Tortola, British Virgin Islands
    6. KOTVA a.s. byla v roce 2002 jediným společníkem společnosti SANDERSON s.r.o., IČ: 25666797 se sídlem Praha 3, Táboritská 1000/23, zapsané v obchodním rejstříku MěS v Praze, oddíl C, vložka 59498

- Společnost, tj emitent ani osoba, na které má emitent přímý či nepřímý podíl přesahující 50% základního kapitálu nebo hlasovacích práv nedrží vlastní účastnické cenné papíry s výjimkou 3 471 ks akcií, které byly vráceny zaměstnanci v souladu se stanovami společnosti a které byly valnou hromadou společnosti, konanou 6 8 2001 změněny ze zaměstnaneckých na kmenové, takto zapsány soudem na základě usnesení Městského soudu v Praze čj F 86816/2001 ze dne 15 11 2001 a které budou po zákonném postupu společností zcizeny

- Jmenovitá hodnota povoleného nebo podmíněného zvýšení základního kapitálu a případná lhůta pro jeho zvýšení, okruh osob s právem na výměnu cenných papírů, přednostní upisování akcií a podmínky a postup při vydávání nových akcií se řídí platnými stanovami a obchodním zákoníkem.

- Společnost nevlastní akcie, které nezakládají podíl na základním kapitálu

- Podmínky pro změny výše základního kapitálu a práv vyplývajících z jednotlivých druhů akcií ve stanovách společnosti nejsou přísnější než podmínky stanovené zákonem

- ## Osoby s podílem 5 % na hlasovacích právech emitenta:

  Uvádíme osoby dle údajů z výpisů z registru emitenta ze SCP v průběhu roku 2002, které má emitent k dispozici; nejedná se o data, ke kterým došlo ke změně vlastnictví akcií:

  | Specifikace osoby | Počet akcií | Podíl na hlasovacích právech |
  |---|---|---|
  | FORMINSTER ENTERPRISES LIMITED, 20 Queen Frederica Street El Greco House | 385 038 | 55,74% |
  | ARBEGE HOLDING LIMITED, Diagorou St.F1.601, CY-1010 Nicosia | 97 854 | 14,10% |
  | Bank of Bermuda /Guernsey/ Limited, St.Julians Avenue,St.Peter Port. Guernsey | 82 023 | 11.68% |
  | Melodia, spol s r o . Na hrázce 241, Hradec Králové | 56 000 | 8,10 % |

- ## Základní kapitál

  Výše upsaného základního kapitálu činí 694 209 000,- Kč a je zcela splacen. Základní kapitál je rozložen na 694 209 ks akcií o jmenovité hodnotě po 1 000,- Kč Všechny akcie znějí na majitele, jsou vydány v zaknihované podobě a jsou registrované.

  Společnost nevydala žádné cenné papíry, které opravňují k uplatnění práva na výměnu za jiné účastnické cenné papíry nebo na přednostní úpis jiných účastnických cenných papírů.

  V letech 1993-2002 nedošlo k žádným změnám ve výši základního kapitálu. Základní kapitál společnosti je 100% splacen.

4

**Pohyby vlastního jmění**

| (tis. Kč) | 2000 | 2001 | 2002 |
|---|---|---|---|
| **Vlastní jmění k 1. 1.** | **518.347** | **454.992** | **465.707** |
| Výplata zaměstnaneckých akcií | -30 | -59 | |
| Platby na vrub sociálního fondu | -313 | | |
| Ztráta (zisk) běžného roku | -63.012 | 10.774 | 19.809 |
| Oceňovací rozdíly z přecenění majetku a závazků | | | -41 |
| Nerozdělený zisk mlnulých let | | | -36 |
| **Vlastní jmění k 31. 12.** | **454.992** | **465.707** | **485.439** |

- ## Cenné papíry

    Druh                        kmenové
    Forma                       na majitele
    Podoba                      zaknihovaná
    Počet kusů                  694 209 ks
    Připojené kupóny            ne
    ISIN                        CZ 0009048955
    Celkový objem emise         694 209 000,- Kč
    Jmenovitá hodnota akcie     1 000,-Kč

    Valná hromada konaná dne 6.8. 2001 rozhodla o změně zaměstnaneckých akcií na kmenové akcie na majitele. Společnost vykupuje zaměstnanecké akcie od odcházejících pracovníků. Usnesením Městského soudu v Praze ze dne 15. 11. 2001 byly vymazány akcie na majitele v počtu 3 471 ks a přeměněny na kmenové akcie na majitele. Prodej nebyl dosud realizován, neboť společnosti nebyl přidělen ISIN.


- **Způsob převodu cenných papírů:**

    K převodu kmenových akcií dochází registrací převodu v zákonem stanovené evidenci na základě příkazu k registraci převodu (§ 21 z. č. 591/1992 Sb., o cenných papírech v platném znění). Převoditelnost akcií není omezena.

- Výnos z akcie je zdaňován podle zákona ČNR č. 586/1992 Sb., o daních z příjmu ve znění pozdějších předpisů. Daň se vybírá srážkou při výplatě dividendy.

- Emise cenných papírů byla přijata k obchodování na veřejných trzích:
    a) Burza cenných papírů Praha, a. s.
    b) RM - SYSTÉM, a. s.

- Akcie jsou evidovány ve Středisku cenných papírů.

- Společnost nemá uzavřenu smlouvu s bankou nebo jinou k tomu oprávněnou osobu, jejímž prostřednictvím mohou majitelé akcií zdarma uplatňovat svá majetková práva spojená s těmito cennými papíry (výplata dividend)

- **Popis práv vyplývajících z akcií:**

  a) akcionář je oprávněn účastnit se valné hromady, hlasovat na ní, má právo požadovat a dostat na ní vysvětlení záležitostí týkajících se společnosti, je-li takové vysvětlení potřebné pro posouzení předmětu jednání valné hromady a uplatňovat návrhy a protinávrhy. S každou akcií o jmenovité hodnotě 1 000,- Kč je spojen jeden hlas. Dle stanov společnosti se nejprve hlasuje o návrhu svolavatele valné hromady. Společnost nevydala prioritní akcie s prioritními právy.

  b) akcionář má právo na podíl na zisku společnosti (dividendu), který valná hromada podle hospodářského výsledku schválila k rozdělení. Tento podíl se určuje poměrem jmenovité hodnoty jeho akcií k jmenovité hodnotě akcií všech akcionářů,

  c) akcionář má právo na podíl na likvidačním zůstatku. Likvidační zůstatek se dělí mezi akcionáře v poměru jmenovitých hodnot jejich akcií,

  d) dividenda je splatná do tří (3) měsíců ode dne, kdy valná hromada přijala usnesení o rozdělení zisku. Dividendy, jež nebylo možno vyplatit či doručit jejich adresátovi, budou uloženy na zvláštním bankovním účtu společnosti, přičemž oprávněné osoby si je po dobu čtyř (4) let ode dne splatnosti mohou vyzvednout v sídle společnosti po předložení příslušných dokladů. Právo na dividendu v případě neuplatnění akcionářem přechází na zákonného právního nástupce ve smyslu ustanovení občanského a obchodního zákoníku. V případě promlčení se uplatňuje obecná čtyřletá promlčecí lhůta podle § 397 obchodního zákoníku.

  Další akcionářská práva vyplývají z obchodního zákoníku a stanov společnosti. Skutečnosti důležité pro uplatňování akcionářských práv společnost dle svých stanov uveřejňuje v celostátně distribuovaném deníku Lidové Noviny nebo týdeníku Obchodní Věstník.

- Právo na přednostní úpis dosavadních akcionářů a omezení nebo vyloučení tohoto práva je v souladu s platným zákonem, dle současných platných stanov není upraveno

- Mezi veřejnost je umístěno 29 340 ks akcií, na které připadá 29 340 000,- Kč základního kapitálu, tj 4,25 % z celkového základního kapitálu společnosti.

- V roce 2002 ani v účetním roce předcházejícím nebyla učiněna veřejná nabídka převzetí akcií emitenta, činěná třetími osobami, ani veřejná nabídka převzetí akcií jiných společností činěná emitentem.

6

# 3. Údaje o činnosti a finanční situaci

Textová část viz odd. II Zpráva představenstva o podnikatelské činnosti a stavu majetku společnosti.

| ROK | 2000 | 2001 | 2002 |
|---|---|---|---|
| Hospodářský výsledek za účetní období k 31.12. v t. Kč | -63 012 | 10 774 | 19 809 |
| Hospodářský výsledek/1 ks akcie v Kč | -90,77 | 15,52 | 28,54 |
| Dividendy | 0 | 0 | |
| Konsolidovaný hospodářský výsledek za účetní období k 31.12. v t. Kč | 247 702 | 238 473 | 60 410 |
| Konsolidovaný hospodářský výsledek/1 ks akcie v Kč | 356,82 | 343,52 | 87,02 |

## Údaje o tržbách:

a) Vývoj tržeb za prodané vlastní výrobky, služby a zboží v t. Kč

| ROK | 2000 | 2001 | 2002 |
|---|---|---|---|
| Tržby za vlastní výrobky | 2 430 | 0 | 0 |
| Tržby za služby | 123 157 | 99 093 | 56 972 |
| Tržby za zboží | 511 641 | 0 | 0 |

b) Rozlišení tržeb dle druhů činnosti v %:

| % tržeb | 2000 | 2001 | 2002 |
|---|---|---|---|
| Vlastní výrobky | 0,38 | 0 | 0 |
| Služby – nájemné,pronájmy zařízení | 10,77 | 0,15 | 2,50 |
| - ostatní služby | 8,55 | 99,85 | 97,50 |
| Tržby za zboží | 80,30 | 0 | 0 |

## Hlavní činnost dle druhu v t. Kč:

| Pronájmy zařízení, nájemné | 1.421 |
|---|---|
| Lékařské výkony od zdravotních pojišťoven | 786 |
| Služby právní,účetní, bezpečnostní | 25.232 |
| Ochranná známka-licence | 29.533 |
| CELKEM | 56.972 |

## Průměrný přepočtený počet zaměstnanců, řídících pracovníků a osobní náklady:

| | 2000 | | 2001 | | 2002 | |
|---|---|---|---|---|---|---|
| | počet pracovníků | osobní náklady (t.Kč) | počet pracovníků | osobní náklady (t.Kč) | počet pracovníků | osobní náklady (t.Kč) |
| řídící pracovníci | 4,91 | 7 769 | 3,5 | 3 717 | 0,75 | 817 |
| ostatní pracovníci | 455 | 134 188 | 97,5 | 30 935 | 10,25 | 4 687 |
| celkem | 460 | 141 957 | 101,0 | 34 652 | 11 | 5 504 |

- **Investiční činnost:**
- investice uskutečněné v tuzemsku v letech 1999 až 2002:

| Období | Název investice | Pořizovací cena v tis. Kč | Způsob financování |
|--------|-----------------|---------------------------|--------------------|
| 1999 | Eskalátory *) | 46.700 | leasing |
|  | Telefon.ústředna | 2.100 | vlastní zdroje |
|  | Informační systémy | 1.500 | vlastní zdroje |
|  | Modernizace prodejních odd. | 2.000 | vlastní zdroje |
| 2000 | Výtahy *) | 4.500 | leasing |
|  | Rekonstrukce rozvodů vody -VZT | 2.650 | vlastní zdroje |
|  | Rekonstrukce patrových rozvaděčů | 1.200 | vlastní zdroje |
| 2001 | Osobní automobil Mercedes | 102 | leasing. vlastní zdroje |
| 2002 | 0 | 0 | |

*) U leasingových smluv na eskalátory a výtahy byl v roce 2001 uskutečněn převod na nového nájemce KOTVA NEMOVITOSTI, a s

- finanční investice

| 2000 | 2001 | 2002 |
|------|------|------|
| 535 995 | 539 149 | 577 237 |

Počet a nominální hodnota podílových a ostatních cenných papírů a vkladů v tuzemsku a v zahraničí k 31.12. 2002:

| Název společnosti | Podíl | Nominál. hodnota (Kč) | Cena pořízení (tis. Kč) | Opravná položka (tis. Kč) | Forma |
|-------------------|-------|-----------------------|-------------------------|---------------------------|-------|
| Artia, a. s. v likvidaci | 30 ks | 10.000 | 300 | 300 | listinná |
| Motokov, a. s. | 500 ks | 1.000 | 500 | 500 | zápis v SCP |
| Značková konfekcia s. r. o. | 100 % | | 150 | 150 | |
| KOTVA SPV s. r. o. | 100 % | | 100 | 0 | |
| KOTVA NEMOVITOSTI, a.s. | 100 % | 10 mil. | 536.383 | 0 | listinná |
| KOTVA OBCHODNÍ, a. s. | 100 % | 100.000 | 39.000 | 16.000 | listinná |
| SANDERSON, s.r.o. | 100 % | | 100 | 0 | |
| Kotva International Limited | 1% | 1 USD | 30 | 0 | |
| **Celkem** | | | **576.563** | **16.950** | |

- **Majetkové účasti:**

**KOTVA a.s. byla v roce 2002 jediný akcionář vlastník 100% akcií:**

**1) Obchodní firma:**          **KOTVA NEMOVITOSTI, a.s.**
    Právní forma:                akciová společnost
    Sídlo:                       Brno, Příkop 4
    IČO:                         26229048
    Datum založení:             16 11 2000
    Hlavní předmět podnikání:    pronájem nemovitostí, bytů a nebytových prostor spočívající v poskytování základních služeb zajišťujících jejich řádný provoz, koupě zboží za účelem jeho dalšího prodeje a prodej, správa majetkových účastí, vyjma činností uvedených v § 3 zák č 455/1991 Sb
    Výše upsaného zákl. kapitálu:  2 200.000 tis Kč
    Výše a druhy rezerv:       53 268 tis Kč – zákonná rezerva
                           14 775 tis Kč - odložený daňový závazek (pohledávka)
    Výše zisku nebo ztráty:     - 99 962 tis Kč

**2) Obchodní firma:**          **KOTVA OBCHODNÍ, a.s.**
    Právní forma:                akciová společnost
    Sídlo:                       Brno, Příkop 4
    IČO:                         26231735
    Datum založení:             7 12 2000
    Hlavní předmět podnikání:    koupě zboží za účelem jeho dalšího prodeje a prodej
    Výše upsaného zákl. kapitálu:  39 000.000,-Kč
    Výše a druhy rezerv:       93 t Kč – odložený daňový závazek (pohledávka)
    Výše zisku nebo ztráty:     -21.493 t Kč

**KOTVA a.s. byla v roce 2002 jediný společník:**

**1) Obchodní firma:**          **Značková konfekcia s.r.o.**
    Právní forma:                společnost s ručením omezeným
    Sídlo:                       Bratislava, Mickiewiczova 6, Slovenská republika
    IČO:                         35689641
    Datum založení:             26 4 1996
    Hlavní předmět podnikání:    koupě zboží za účelem jeho dalšího prodeje a prodej
    Výše upsaného zákl. kapitálu:  200 000,-Sk
    Výše a druhy rezerv:       3 664 t Sk – rezerva na kursové ztráty
    Hospodářský výsledek za úč období: 287 t Sk

**2) Obchodní firma:**                      **KOTVA-středisko praktického vyučování, s r.o.**

Právní forma:                               společnost s ručením omezeným
Sídlo:                                      Praha 1, nám.Republiky 8
IČO:                                        26123193
Datum založení:                             25.10.1999
Hlavní předmět podnikání:                   poskytování praktické výuky studijních oborů koupě zboží za účelem jeho dalšího prodeje a prodej
Výše upsaného zákl. kapitálu:               100 000,-Kč
Výše a druhy rezerv:                        1 tis. Kč – zákonný rezervní fond
Výše zisku nebo ztráty po zdanění:          0,--Kč


**3) Obchodní firma:**                      **SANDERSON s.r.o.**
Právní forma:                               společnost s ručením omezeným
Sídlo:                                      Praha 3, Táboritská 1000/23
IČO:                                        25666797
Datum založení:                             13.5.1998
Hlavní předmět podnikání:                   koupě zboží za účelem jeho dalšího prodeje a prodej
Výše upsaného zákl. kapitálu:               100.000,-Kč


**Další majetkové účasti:**

**1) Obchodní firma:**                      **KOTVA INTERNATIONAL LIMITED**
Sídlo:                                      RN 522767, Geneva Place, Waterfront Drive, P.O.Box 3469, Road Town, Tortola, British Virgin Islands
Majetkový podíl:                            1% (1 000 ks akcií, nominální hodnota 1,-USD)
Výše upsaného zákl. kapitálu:               1 001 000,--USD
Výše zisku nebo ztráty po zdanění:          0,--USD


**2) Obchodní firma:**                      **MOTOKOV, a.s.**
Majetkový podíl:                            500 ks akcií v nominální hodnotě 1 000,-Kč


**3) Obchodní firma:**                      **Artia, a.s. (v likvidaci)**
Majetkový podíl:                            30 ks akcií v nominální hodnotě 10 000,-Kč


- KOTVA a.s. je majitelem ochranné známky kombinované „KOTVA" pod reg.č. 167 478 a na základě Licenční smlouvy o ochranné známce ze dne 28.2.2001 je KOTVA NEMOVITOSTI, a.s IČO: 26229048 oprávněna k výkonu práv z průmyslového vlastnictví, užívat ochrannou známku. Dále je majitelem ochranné známky slovní KOTVA pod reg.č. 173 919

**Výkaz zisků a ztrát v zkráceném rozsahu 2000-2002**

| | | 2000 | 2001 | 2002 |
|---|---|---|---|---|
| 1. | PROVOZNÍ VÝNOSY | 850 434 | 140 663 | 199 015 |
| | Tržby za prodej zboží | 511 641 | | |
| | Výkony | 128 106 | 99 093 | 56 972 |
| | Tržby z prodeje majetku | 1 988 | 19 972 | 323 |
| | Ostatní provozní výnosy | 208 699 | 21 598 | 141 720 |
| 2. | PROVOZNÍ NÁKLADY | 894 119 | 103 983 | 154 103 |
| | Náklady na prodané zboží | 383 625 | | |
| | Spotřeba materiálu a energie | 31 860 | 3 472 | 795 |
| | Služby | 66 679 | 20 157 | 7 174 |
| | Osobní náklady | 141 957 | 36 632 | 6 404 |
| | Daně a poplatky | 363 | 139 | 77 |
| | Odpisy investičního majetku včetně zůstatkové ceny prodaného investičního majetku | 59 423 | 19 718 | 157 |
| | Ostatní provozní náklady | 210 212 | 23 865 | 139 496 |
| A. | PROVOZNÍ HOSPODÁŘSKÝ VÝSLEDEK | -43 685 | 36 680 | 44 912 |
| 3. | FINANČNÍ VÝNOSY | 245 | 2 088 | 675 |
| 4. | FINANČNÍ NÁKLADY | 31 473 | 24 957 | 26 091 |
| B. | HOSP. VÝSLEDEK Z FINANČNÍCH OPERACÍ | -31 228 | -22 869 | -25 416 |
| 5. | MIMOŘÁDNÉ VÝNOSY | 3 725 | 1 513 | 584 |
| 6. | MIMOŘÁDNÉ NÁKLADY | -9 029 | 4 550 | 429 |
| C. | MIMOŘÁDNÝ HOSPODÁŘSKÝ VÝSLEDEK | 12 754 | -3 037 | 155 |
| D. | HOSPODÁŘSKÝ VÝSLEDEK PŘED ZDANĚNÍM | -62 159 | 10 774 | 19 651 |
| | DAŇ Z PŘÍJMU ZA BĚŽNOU ČINNOST SPLATNÁ | 853 | | |
| E. | HOSPODÁŘSKÝ VÝSLEDEK ZA ÚČETNÍ OBDOBÍ | -63 012 | 10 774 | 19 809 |

11

**Rozvaha v zkráceném rozsahu 2000-2002**

| | k 31.12.2000 | k 31.12.2001 | k 31.12.2002 |
|---|---|---|---|
| AKTIVA CELKEM | 783 386 | 778 498 | 589 458 |
| 1. Stálá aktiva | 573 981 | 560 744 | 582 689 |
| ☐ dlouhodobý nehmotný majetek | 2 702 | 70 | 3 |
| ☐ dlouhodobý hmotný majetek | 36 950 | 23 191 | 23 073 |
| pozemky | 23 000 | 23 000 | 23 000 |
| budovy, haly, stavby | | | 10 |
| samostatné movité věci | 9 637 | 55 | 63 |
| jiný hmotný investiční majetek | 1 884 | 136 | |
| nedokončené hmotné investice | 2 429 | | |
| ☐ finanční dlouhodobý majetek | 534 329 | 537 483 | 559 613 |
| 2. Oběžná aktiva | 200 589 | 215 672 | 6 755 |
| ☐ zásoby | 2 826 | | 0 |
| materiál | 2 826 | | |
| zboží | | | |
| ☐ dlouhodobé pohledávky | | | |
| ☐ krátkodobé pohledávky | 153 390 | 214 553 | 6 317 |
| pohledávky z obchodního styku | 151 835 | 178 973 | 931 |
| stát-daňové pohledávky | | 15 | 1 |
| pohledávky v podnicích s rozh.vlivem | 1 300 | 35 510 | 5 371 |
| jiné pohledávky | 255 | 55 | 14 |
| ☐ finanční majetek | 44 373 | 1 119 | 438 |
| 3. Ostatní aktiva | 8 816 | 2 082 | 14 |
| ☐ časové rozlišení | 8 726 | 2 069 | 1 |
| ☐ dohadné účty aktivní | 90 | 13 | 13 |
| PASIVA CELKEM | 783 386 | 778 498 | 589 458 |
| 1. Vlastní jmění | 454 992 | 465 707 | 485 439 |
| ☐ základní jmění celkem | 690 803 | 690 744 | 690 744 |
| základní jmění | 694 209 | 694 209 | 694 209 |
| vlastní akcie | -3 406 | -3 465 | -3 465 |
| ☐ kapitálové fondy | 34 | 34 | -7 |
| ☐ fondy ze zisku | 71 560 | 71 560 | 72 099 |
| zákonný rezervní fond | 71 560 | 71 560 | 72 099 |
| statutární a ostatní fondy | | | |
| ☐ hospodářský výsledek minulých let | -244 393 | -307 405 | -297 206 |
| ☐ hospodářský výsledek běžného období | -63 012 | 10 774 | 19 809 |
| 2. Cizí zdroje | 326 822 | 312 670 | 103 951 |
| ☐ rezervy | 10 000 | 10 000 | -122 |
| ☐ dlouhodobé závazky | 109 436 | 108 348 | 64 978 |
| ☐ krátkodobé závazky | 169 786 | 180 122 | 29 479 |
| z obchodního styku | 134 151 | 129 635 | 947 |
| k zaměstnancům | 6 970 | 1 670 | 278 |
| ze sociálního zabezpečení | 3 676 | 993 | 123 |
| vůči státu | 6 937 | 1 911 | 243 |
| závazky k podnikům s rozhodujícím vlivem | | 45 067 | 27 883 |
| jiné | 18 052 | 846 | 5 |
| ☐ bankovní úvěry | 37 600 | 14 200 | 9 616 |
| dlouhodobé | | 11 800 | 4216 |
| běžné | 16 600 | 2 400 | 5 400 |
| krátkodobé finanční výpomoci | 21 000 | | |
| 3. Ostatní | 1 572 | 121 | 68 |
| ☐ časové rozlišení | 1 531 | | 36 |
| ☐ dohadné účty pasivní | 41 | 121 | 32 |

# 4. Údaje o statutárních a dozorčích orgánech, vedení společnosti a soudních sporech

1.  **Statutární a dozorčí orgány, vedení společnosti:**

    **Představenstvo:**
    - Martin Benda, r č 710908/3795, bytem Borač 46, okr Žďár nad Sázavou – předseda představenstva
    - John Moffitt, nar 16 července 1964, bytem Praha 1, Bílkova 14 – místopředseda, zánik funkce:12 11 2002
    - Ing Richard Harazim, r č 650310/1363, bytem Brno, Skorkovského 174, člen
    - Ing Irena Šmejcová, r č 735406/0285, bytem Praha 4, U Nových domů II 532/11, člen, zánik funkce 11 11 2002
    - Ing Michal Vlach, r č 660411/0183, bytem Brno, Galandauerova 10, člen, den vzniku funkce: 11 11 2002
    - Ing Jaromír David, r č 420511/429, bytem Brno, V Lužích 1, člen, den vzniku funkce: 12 11 2002

    **Dozorčí rada:**
    - JUDr Luděk Krajhanzl, r č 540512/3405, bytem Praha 6, V údolí 493, člen, zánik funkce 17 1 2003
    - Radim Polame, r č 520617/044, bytem Praha 4, Mnichovická 719/4, člen dozorčí rady zvolený zaměstnanci společnosti KOTVA a.s
    - Mgr Martin Razím, r č 570514/0914, bytem Hradec Králové, P Hanuše 252, člen, zánik funkce: 14 2 2003
    - Ing Pavel Richter, r č 480524/409, bytem Brno, Rolnická č 7, člen, den vzniku funkce:14 2 2003

    **Vedoucí zaměstnanci společnosti:**
    - generální ředitel – Ing Richard Harazim
    - ekonomický manažer – Ing Jaromír David, CSc

    Zaměstnanci nemají možnost účastnit se na základním kapitálu emitenta a řízení společnosti

    Členové představenstva a dozorčí rady nevlastní akcie společnosti

    Členům představenstva ani dozorčí rady neposkytla společnost žádné úvěry nebo půjčky, nepřevzala žádné záruky ani jištění za úvěry

- Plnění poskytnuté statutárním orgánům nebo jejich členům a členům dozorčích orgánů emitenta (v tis Kč) :

| v Kč | Peněžité příjmy | Z toho tantiémy | Naturální příjmy |
|---|---|---|---|
| Představenstvo | 720 | 0 | 0 |
| Dozorčí rada | 180 | 0 | 0 |
| Vedení společnosti | 649 | 0 | 0 |

- Plnění statutárním orgánům nebo jejich členům a členům dozorčí rady poskytnuté osobami v celém koncernu v rámci České republiky (včetně plnění od emitenta):

| v Kč | Peněžité příjmy | Tantiémy | Věcná plnění |
|---|---|---|---|
| Představenstvo | 2 160 | 0 | 0 |
| Dozorčí rada | 900 | 0 | 0 |

2. **Údaje o soudních, správních nebo rozhodčích řízeních společnosti vedených v běžném účetním obdobím a dvou předcházejících účetních obdobích:**

Na základě rozhodnutí Komise pro cenné papíry čj : 31/837/2000 ze dne 2 6 2000 bylo zrušeno předběžné opatření o pozastavení obchodování s veřejně obchodovatelnými akciemi vydanými společností KOTVA a s. v zaknihované podobě v celkovém objemu 690 738 000,-Kč a zároveň bylo zastaveno správní řízení v této věci.

Na základě pravomocného usnesení Krajského obchodního soudu v Praze č j.: 47 Cm 261/97-443 ze dne  22 5 2000, podle kterého se zastavuje řízení ve věci nároku, došlo k zániku předběžného opatření podle usnesení Krajského obchodního soudu v Praze čj : 261/97 (47 Cm 261/97-219), kterým bylo omezeno nakládání nemovitostmi ve vlastnictví společnosti

**Ostatní údaje o soudních, správních nebo rozhodčích řízeních:**

**I. Pohledávky v konkursním řízení:**
- A-B-Comp  a s  – Kč 21 251,50 – dosud neukončeno
- AD reklamní agentura – Kč 400 000.- . 12 2 1999  konkurs zrušen – majetek úpadce nepostačuje k úhradě nákladů konkursu
- AGU International, s r o.- Kč 3 910,- - skončeno – 30.60 Kč
- ALSIA TRADING, s.r.o. – Kč 5 787.60 – zrušen pro nedostatek majetku 1 8 2000
- BLONDIE s r o  – Kč 1 500,- - zrušeno 14 11 2000 pro nedostatek majetku
- B-BREMEX s r o  – Kč 58 876.- konkursní řízení neukončeno
- Císařská huť, a  s  – Kč 3 917.- ukončeno bude poukázáno Kč 4,50
- CALEX Zlaté Moravce, a s – Sk 74 877.- dosud neukončeno
- Caster-o Kč 5 500,-Kč, konk říz. skončeno-podíl 0.003289%
- Centrotex, a s  - 39 988,- dosud neukončeno
- Classic restaurant – Kč 17 500,- - konkurs zrušen  majetek nepostačuje k úhradě nákladů
- Exico, a s  – Kč 64 084,30 – dosud neukončeno
- East West Travel – Kč 60 895.-  21 2 2001 zrušen pro nedostatek majetku
- FIREX, a s. – Kč 458 620.- dosud neukončeno
- Gen řed  AGRAS – Kč 55 267.- - dosud neukončeno
- IBEX. s r o – Kč 7 826.30 – dosud neukončeno

14

- J R Vilímek, s r o. – Kč 848 903,- - dosud neukončeno
- Itec Motro a.s  – 49 500.-Kč a 16.500,-Kč – přihláška do k ř
- IMPEX. a s Bratislava – Sk 1 155 126.24 – dosud neukončeno
- JEVIsport. s r o – Kč 16 470.- dosud neukončeno
- Kastner. s r o – Kč 7 500,- - zrušen 25 9 2000 pro nedostatek majetku
- NADA. s r o – Kč 59 107,90 – dosud neukončeno
- Melodia, s r.o – Kč 16 195.50 – dosud neukončeno
- Neapol Moda . s r.o – Kč 2 968 996.20 – 16 2 2001 zrušen pro nedostatek majetku. likvidace. výmaz 3 12 2002
- Meopta  20 035.-Kč přihláška do k ř.
- Pronto Plus. a s  – Kč 35 783.- dosud neukončeno
- SAS + KIA, s r o – Kč 507 400.- - popřeno Kč 73 2000 správcem konk podstaty. dosud neukončeno
- Slušovice JZD- 2x 490 200,-Kč , přihláška, dosud neskončeno
- SPRINT. a s  Brno – Kč 50 380,50 – dosud neukončeno
- SPRINT a s . IČ: 63079755, přihláška pohledávky 240 250 -Kč
- TIP TOP, s r o. – Kč 145 640,- - dosud neukončeno
- TOSTA A87 355,- dosud neukončeno
- Tvrský Mirko – Kč 30 0000,- - 20.12 2000 zrušen pro úmrtí úpadce
- Universum . s r o – Kč 424 764.80 – ukončeno – přiznáno 2.138%
- Veselý Radovan – Kč 6 100,- - dosud neukončeno
- Velkoobchod Kilian – Kč 30 460,90 – dosud neukončeno
- Zádruha. dr  – Kč 7 120.-  28 2 2001 zrušen pro nedostatek majetku

## II. Pohledávky v soudním řízení

- AG Kult. fa Kčs 2491,50. 5517 - žaloba, pravomocný rozsudek. žádost o pomoc soudu dle § 26O o s ř
- Alsia Trading s r o. o Kčs 5 287.60. přihláška pohledávky do konkurzního řízení, konkurz zrušen. přiznáno v rozsudku MS v Praze
- Agrostroj Prostějov o Kčs 2 950.- žaloba. pravomocný rozsudek. výkon rozhodnutí-exekuce
- Alpha s r o  o Kč 21 060,- žaloba. pravomocný rozsudek. žádost o pomoc soudu při exekuci. neúspěšné
- A-B-Comp a s  o Kč 6 150.--žaloba, pravomocný platební rozkaz. žádost o pomoc soudu dle § 26O o s ř  – zrušen konkurs
- A-B-Comp a s. o l5 l0l,50 Kč, žaloba. platební rozkaz. zrušen konkurs
- Assenov - škoda Kč 2 150.- - trestní příkaz 17 2.1996
- AD rekl agentura s r o. o 400 000.--Kč. žaloba. konkursní řízení zrušeno, rozsudek
- Balog A  o Kčs 27 950.-, žaloba. pravomocný rozsudek, výkon rozhodnutí -exekuce
- Balog E  o Kčs 4 631,-, žaloba . pravomocný rozsudek. výkon rozhodnutí- exekuce
- Balog J  o Kčs 9 855,-. žaloba. rozsudek. exekuce
- Balog R. o Kčs 3 455,-, žaloba. 2 x výkon rozhodnutí-exekuce, zastaveno
- Brabec R  o Kčs 1 540.- pravomocný rozsudek, výkon rozhodnutí- exekuce
- Bimbo - rekl 152. 153, 173, o 9 300,--Kč žaloby. pravomocný rozsudek
- Banda Ernest o 112 22O,--Kč, žaloba. pravomocný rozsudek. soudní výkon rozhodnutí -exekuce
- Bona r  114/K/075/93 Kč 11 915.- žaloba. pravomocný rozsudek
- K Březinová. Motorest Kristínka o 8 769.--Kč. žaloba. pravomocný rozsudek. výkon rozhodnutí bezúspěšně proveden
- Bílek – o Kč 45 410,- dosud neobdržen rozsudek MS v Praze
- Brožík -Eastern Prof models o 7 500,--Kč . žaloba. neprovedená exekuce
- Blondie s r o  o l 500.--Kč. žaloba. platební rozkaz, přihláška do konkursu
- Bytoservis s r o. o 66 822,--Kč, platební rozkaz, § 260 o s ř
- Centrotex, rekl č  9a/084/91 o Kčs 49 500.-žaloba, rozsudek, odvolání KOTVA a s  probíhá soudní řízení. konkurs
- ČSAD o Kčs 23 430.- žaloba. platební rozkaz doposud pravomocně nerozhodnuto
- Compact Techn  o Kčs 9 343.- žaloba Červenka. pravomocný rozsudek, soudní výkon rozhodnutí-exekuce neprovedena
- Cest kanc  GEO o Kčs 14 000.-Kč. žaloba. pravomocný rozsudek, návrh na soudní výkon rozhodnutí-exekuce, soupis proveden
- Class Praha dobropisy Kč 63 182.50 . žaloba. rozsudek. § 260 o s ř
- Calex - dobropis o 74 877,-žaloba, pravomocný rozsudek. soudní výkon rozhodnutí-exekuce, konkurs
- Classic restaurant o 20 000,--Kč. žaloba. konkurs zrušen malý majetek
- Colorlak s.p. fa Kč 15 178,20 –rozsudek. žádost 260 o s ř
- Dómová, žaloba o Kčs 26 922.- žaloba. pravomocný rozsudek. soudní výkon rozhodnutí-exekuce. nemá žádný majetek. neprovedeno
- Družstvo Uno Břeclav o Kč 19 925.-  rozsudek. v likvidaci. konkurs zrušen
- Drevoindustria Žilina o Kč 82 400,-žaloba. platební rozkaz. žádost o exekuci. nemají finance na účtu
- Duffi s r o .238 937,--Kč,ručitelský závazek. odvolání
- Euro-komex - náhrada škody Kč 15 880.žaloba. rozsudek. odvolání, vráceno MS v Praze
- Etic s r o o Kč 66 240.- žaloba. rozsudek. §260 o s ř – společníci cizinci
- Festi. s r o  o Kčs 30 100 -. žaloba . pravomocný rozsudek - výkon rozhodnutí-exekuce. § 260 o s ř

- Frič s.r.o Žilina. o Kč 15 619.- a 3 675.-žaloba. platební rozkaz. žádost o vyznačení právní moci. uhrazeno v exekuci částečně
- Ficena o 5 618,--Kč, žaloba. návrh na výkon rozhodnutí-exekuce. jsme v pořadí. propuštěn z VTOS
- Flieger o Kč 43 000.- pátrání po osobě v exekučním řízení
- Gen fed Agras v likvidaci o 55 267.--Kč. žaloba. pravomocný rozsudek. přihláška pohledávky - likvidační řízení
- Humanity Society o l02 713.5O Kčs. trestná činnost, rozsudek, nutno právní moc a exekuci
- Hangurbadžo o 20 730.--Kč, žaloba, pravomocný rozsudek. výkon rozhodnutí-exekuce zastavena. neznáme jiné místo, kde jsou věci povinného
- Hrdý o 680.--Kčs, žaloba, rozsudek, exekuce únor 2003
- Hrubý /servisní služba / o 64 584,--Kč. žaloba. platební rozkaz. exekuce neprovedena. na adrese nebydlí
- Heřmánek Ing o 21 5OO.--Kč, žaloba, pravomocný rozsudek. 2 x výkon rozhodnutí -exekuce
- Hadžala o 366,--Kč . 451,4O Kč – rozsudek.
- Hradecký. parking o l3 83O,--Kč.žaloba. exekuce. má jen vrtačku.
- Holíková o 9 366.--Kč. platební rozkaz.
- Hajný - šeky – trestní příkaz.
- Hejbalík Daniel, škoda Kč 1 845,-. trestní příkaz vést exekuci
- ing. HEIP Tran Van. fa Kč 34870.-. 22 722.- zavražděn
- Hejč Vladislav - škoda Kč 314.-. rozsudek.
- Charvát - Topinka - neuhrazené faktury 21 520.--Kč. Kč 53 800.- - rozsudky. exekuce
- Impex. s r o. 5003/88 o l2 649,60 Kčs. žaloba. pravomocný rozsudek. přihláška pohledávky do konkurzního řízení
- Impex. r 4O32/90 o l21654.--Kčs. žaloba.pravomocný rozsudek. přihláška pohledávky do konkurzního řízení
- Impex o l54 922,76 Kčs. žaloba, pravomocný rozsudek. přihláška pohledávky do konkurzního řízení
- Interier o 73 34O.--Kčs. neuhr dobropisy, žaloba. pravomocný rozsudek. žádost soudu o pomoc -při exekuci. konkurs
- Impex. neuhr dobropisy Kč 822 685.13 Kč žaloba, soudní smír. přihláška pohledávky do konkurzního řízení
- IBC s.r.o Jinočany Kč 42 797.- - rozsudek.
- Jaroš V .náhrada škody 2 100.--Kč.rozsudek. návrh na soudní výkon rozhodnutí-exekuce
- JZD Velke Výklepy o 9 500.--Kčs. žaloba. pravomocný rozsudek. z r 1995. likvidace družstva
- Jícha - škoda l 650.--Kč.výkon rozhodnutí-exekuce. na adrese neznámý
- Jet-Set, dobropis 3/94 o 48 070,--Kč. žaloba. rozsudek. jednatel zemřel
- Kopečný, fa Kčs 3 089.- a 4 752.- trestná činnost. pravomocný rozsudek. žádost na vězeňskou službu ČR, kde se vykonává výkon trestu,exekuce zastavena. žádný majetek
- Král fa č 970713 Kčs 5 215,. žaloba. pravomocný rozsudek. dva návrhy na výkon rozhodnutí-exekuce. jsme v pořadí
- Kúblech fa Kčs 30 700.- žaloba. pravomocný rozsudek. návrh na soudní výkon rozhodnutí-exekuce
- Krákora fa Kčs 1 231,20, žaloba, rozsudek, výkon rozhodnutí
- Krákora Jindřich - nájemné 72 000.-Kč. žaloba. pravomocný rozsudek. návrh na soudní výkon rozhodnutí
- Kotlár Pavel o Kč 9 650.-, rozsudek. exekuce. zastavení žádný majetek. část inv důchod
- Koldová neuhrazená fa Kč 32 840.- žaloba. pravomocní platební rozkaz. exekuce
- Knotek o 31 160,--Kč.žaloba.pravomocný rozsudek. návrh na soudní výkon rozhodnutí-exekuce. marná exekuce
- Kůrčka Petr – Kč 15 000,-. rozsudek. exekuce
- Kastner s r o o 2 500.--Kč, žaloba. konkurs zrušen. pokračovat v exekuci
- KORAL. s r.o – Kč 14 157.94. rozsudek.
- Kučera - náhrada škody Kč 57 175.-, rozsudek, exekuce
- Lebanoramma. r 29/084/91 Kčs 21 600.--žaloba, nepravomocný rozsudek. nemožnost doručení účastníku. nový pokus o doložku pr moci
- Ing Lapikáš Lučenec - dbp Kč 46 985.-žaloba. rozsudek, žádost o doložku právní moci, exekuce zastavena pro nepatrný majetek
- Lacko-trest činnost o 9 994.--Kč.pravomocný rozsudek. návrh-dožádání vězeňské služby ČR.evidence vězňů. neznámý pobyt
- Lněnička Tomáš náhrada škody Kč 3 616 - splácí
- Mirga. fa Kčs 13 970,- žaloba. pravomocný rozsudek. návrh na výkon rozhodnutí-exekuce
- My a svět. fa Kčs 14 650.- žaloba, rozsudek. družstvo v likvidaci
- Magnet Pardubice. neopr maj prospěch 662 400.-žaloba., rozsudek, exekuce
- Meopta fa Kčs 20 035.- žaloba.přihláška pohledávky do konkurzního řízení
- Mink fa Kč 4 020,- žaloba, rozsudek
- Merlin s.r.o o 5 057,--Kč, žaloba. rozsudek. odvolání Merlinu. potvrzený rozsudek
- Macek Tomáš o l9 500,--Kč. rozsudek
- März Radek o 6 800,--Kč. trest příkaz
- Maxa Fr o 6 300.--Kč. žaloba. TČ. pravomocný rozsudek, exekuce
- May Day Grup s r o o l8 983.--Kč, platební rozkaz
- Nogol neuhrazené faktury Kč 6 830,- a 9 854.-rozsudek, exekuce
- Nivela Trading s r o o 3 200,--Kč, dobropis. rozsudek. neúčinná exekuce
- Neradová Miroslava škoda Kč 1 390.-, rozsudek. podat exekuci
- Ocela Jan, 199 470.-Kč. podvod, rozsudek
- OTF dobropisy Kč 220 526,-, 12 980.- žaloba, platební rozkaz. žádost o doložku právní moci, exekuce
- Opticentrum - škoda Kč 1550 099.- žaloba,pravomocný platební rozkaz. žádost o pomoc soudu § 260 o s ř
- Q-Ton -nezaplacené faktury. pl rozkaz, žádost dle § 260 neúčinná. nelze nalézt sídlo
- Ocílka J o Kč 68 113.75. žaloba, rozsudek. exekuce neúčinná žádný majetek

- Průša / Lakona / o 6 82O.--Kč. žaloba. rozsudek. výkon rozhodnutí neúčinný. neznámý pobyt. bez data narození nelze zjistit
- Pospíšil náhrada škody Kčs 6 501.- žaloba. rozsudek. návrh na výkon rozhodnutí-exekuce. nebyly nalezeny postižitelné věci
- Poskočil VI Kč 7 620.-. rozsudek. exekuce neúčinná. na nám známé adrese nebydlí. data narození neznámá
- Pavlík fa Kčs 4 838.-rozsudek. exekuce neúčinná
- Pragorest neuhrazené fa Kčs 14 415,- žaloby. platební rozkaz. rozsudek
- Průcha - škoda Kč 750,- výkon rozhodnutí-exekuce
- Pratex s.p Čadca o 2448.--Sk a 622.43 Sk.dobropisy.žaloba. pravomocný platební rozkaz
- Pozdíšek /KB ,ozn. IČ/ . uznání závazku o 333 900,--Kč. žaloba. přiznáno, jeho odvolání
- Polínec o Kč 76 805,-. uznání dluhu z r.1997. splácí
- Rekonstrukce Praha fa Kčs 1 542.50 žaloba. pravomocný platební rozkaz. delimitace. neznámý subjekt
- Rus s.r o o 3897.97 Kč,žaloba, rozsudek, podat exekuci
- Roubíčková FKSP 7 000.- (Veselá ručitel). srážky z platu KOTVA
- Stix 1 trestná činnost Kč 9.300,-, rozsudek. výkon - rozhodnutí srážkami ze mzdy /exekuce/ - jsme v pořadí
- Š a Š fa Kčs 16 730,- a 6 835,- /Šoulová/ rozsudek 96.
- Sadup - Škorpík fa Kčs 5 285.-. rozsudek. exekuce
- Slušovice - o 2 X 49O 200, žaloba. pravomocný rozsudek. návrh na soudní výkon rozhodnutí-exekuce.(přerušeno konkursem)
- Schytil - fa Kč 4 760,- žaloba. pravomocný rozsudek. dva návrhy na soudní výkon rozhodnutí-exekuce.
- Sainer - škoda Kč 2200,--Kč, rozsudek, exekuce, nezjištěná osoba
- Spektrum - dbp Kč 9 728,- . žaloba, dotaz dle 260 o.s ř
- Šumavan Uníbras dobropisy 35 O37.--Kč. žaloba. platební rozkaz. konkurs v roce 1997 vyhlášen. dozvěděli jsme se až v roce 1999.
- Šmíd Martin o 1.985,5O Kč. žaloba. pravomocný rozsudek. návrh na soudní výkon rozhodnutí-exekuce.
- Svit Zlín 214 952.7O Kč /dobropisy /. žaloba. pravomocný rozsudek. žádost - pomoc soudu pro exekuci.konkurs. přihláška. zrušení konkursu Vrchním soudem. na KS v Brně
- Slánsky o  80 000,--Kč. omylem 2 x poukázána platba. žaloba. splácí
- Štumper o 4363.--Kč. žaloba, pravomocný rozsudek
- Sdružení přátel div.umění o 7O OOO.--Kč. rozsudek. není k nalezení. exekuce
- Šmídová E  Kč 1 902.-. rozsudek. exekuce
- Shilland and Co  O Kč 6405,-. platební rozkaz.
- TEWA Comeritz neuhrazené faktury Kč 22 755.- žaloba - pravomocný rozsudek. /v likvidaci/
- Tenkl - fa č. 1091 Kčs 54000.-. žaloba. rozsudek. návrh na soudní výkon rozhodnutí
- TJ Rozvoj  o Kč 13 400,- rozsudek.
- I vrdský - dobropis Kč 30 000,-žaloba. pravomocný rozsudek - návrh na soudní výkon rozhodnutí-exekuce. konkurs. zemřel
- Trendex - reklamace 33 l30,--Kč, žaloba. rozsudek
- Tenders Group, o 5 040,-, rozsudek
- Wavrisch o l8 000.--Kč, FKSP. žaloba, návrh na soudní výkon rozhodnutí-exekuce
- Valenta, Sedláček 31 l59.--Kč, splácí dluh
- Volák. Fliegr. Švagerko o 52 79O.--Kč,trestná činnost, rozsudek. exekuce. návrh Voláka uhradit ve 3 splátkách
- Žalouúde o Kč 8 780.-. pokračovat v exekuci. částečně uhrazeno
- Železná H  Kč 9 087,- rozsudek
- Yond Dynamic Promotion o 3500,--Kč, rozsudek

17

# 5. Očekávaná hospodářská a finanční situace a vývoj činnosti v roce 2003

Počátkem roku 2003 vedení společnosti vyhodnotilo dosavadní postup realizace záměru na zvýšení základního kapitálu ve společnosti KOTVA OBCHODNÍ, a.s. a k zásadnímu kapitálovému posílení této společnosti rozhodlo ve smyslu §59 odst. 2 Obchodního zákoníku zastavit přechod majetkového práva k předmětu nepeněžitého vkladu. V tomto smyslu byl podán dne 20.1.2003 návrh na zpětvzetí návrhu na zahájení řízení ze dne 3.9.2002. Rozhodnutím Katastrálního úřadu Praha-město bylo předmětné řízení zastaveno a nabylo právní moci dne 25.2.2003.

S vědomím povinnosti zaplatit hodnotu nepeněžitého vkladu v penězích ve smyslu § 59 odst. 2 Obchodního zákoníku byl stanoven postup zajištění potřebných finančních prostředků odprodejem části aktiv společnosti KOTVA a.s. uvnitř společenství podniků KOTVA a získané finanční prostředky použít jako peněžitý vklad do základního kapitálu společnosti KOTVA OBCHODNÍ, a.s. ve výši 23 000 000,-Kč.

Za tímto účelem byly předmětné pozemky v k.ú. Ruzyně odprodány. V současné době je podán Návrh na vklad práva vlastnického na Katastrální úřad Praha-město.

Na mateřské společnosti zůstávají zachovány činnosti vedení holdingu, finanční, správní a administrativní činnosti včetně správy majetkových podílů, mzdová účtárna a personální záležitosti a výkon zdravotního střediska.

Hlavním předmětem podnikatelské činnosti je i nadále poskytování ekonomických služeb pro dceřiné společnosti v omezeném rozsahu a realizace příjmů z pronájmu licenčních práv.

Očekávaná hospodářská a finanční situace v roce 2003 v t.Kč:

| | |
|---|---:|
| Tržby za prodej vl. výrobků a služeb | 43.720 |
| Přidaná hodnota | 40.535 |
| Provozní hospodářský výsledek | 34.875 |
| Hospodářský výsledek z finančních operací | -4.975 |
| Hospodářský výsledek za účetní období | 20.631 |

# II.Zpráva představenstva o podnikatelské činnosti a stavu majetku společnosti

V návaznosti na realizované změny vyplývající z majetkové restrukturalizace aktiv společnosti v letech 2000-2001 a následné organizační změny převodu rozhodujících aktivit souvisejících s řízením provozu obchodního domu KOTVA, spočívající v zajištění technického provozu objektu a řízení agendy pronájmu nebytových prostor na společnost KOTVA NEMOVITOSTI, a.s., plnila společnost KOTVA a s. pouze správní funkce především v rámci vnitrokoncernových služeb zajišťující podnikové účetnictví včetně mzdového, plánovací funkce, finanční servis včetně bankovních operací, personální agenda, vedení podnikových archivů a lékařská péče

V koncernovém majetkovém uspořádání bylo v roce 2002 hlavním předmětem činnosti kromě poskytování uvedených služeb především správa akciových účastí v dceřiných společnostech.

Hlavními zdroji příjmů byly příjmy za poskytované služby a příjmy z pronájmu licenčních práv. Celková finanční bilance společnosti v průběhu roku 2002 byla vyrovnaná a společnost dosáhla pozitivního hospodářského výsledku - zisku ve výši 19.809 tis. Kč, což představuje nárůst oproti předchozímu roku téměř dvojnásobný

V oblasti výsledkových účtů kromě výnosů z běžné činnosti a k tomu zúčtovaných přiměřených nákladů byla realizována transakce související s pohledávkou společností vůči společností SPRINT, a.s. Na základě Smlouvy o postoupení pohledávky uzavřené mezi společnostmi KOTVA a.s. a EUREX CONSULTANTS LIMITED byla na tuto společnost postoupena část pohledávky KOTVA a.s vůči SPRINT, a.s ve výši 122 mil. Kč. Na základě dohody obou stran pak následně se úplata za postoupenou pohledávku započetla proti pohledávce ve stejné výši, kterou měla společnost EUREX CONSULTANTS LIMITED vůči KOTVA a.s. Tímto započtením dohodou tyto vzájemné pohledávky zanikly.

Uvedené operace se promítly v položkách ostatních provozních výnosů a nákladů v následujícím rozsahu:

| | | |
|---|---|---|
| výnosy: | 122 000 tis. Kč | postoupení pohledávky ke SPRINT, a.s na EUREX |
| | 10 000 tis. Kč | rozpuštění rezervy za SPRINT, a.s |
| | 660 tis. Kč | postoupení pohledávky na KOTVA NEMOVITOSTI, a.s |
| | 497 tis. Kč | odpis nákladů KOTVA PARKING, s.r.o |
| náklady: | 135 000 tis. Kč | zúčtování postoupení pohledávky na EUREX za SPRINT, a.s opravné položky |
| | 660 tis Kč | zúčtování postoupené pohledávky na KOTVA NEMOVITOSTI, a.s |
| | 497 tis. Kč | odpis nákladů KOTVA PARKING, s.r.o |
| | 733 tis. Kč | odpis nedobytných pohledávek z provozu garáží |

V uplynulém období se realizoval prodej cenných papírů ve výši 200 tis. Kč. V souladu s podnikatelským záměrem stavebního rozšíření parkovacích stání v podzemních garážích KOTVA a dosažení vyššího využití parkovacích míst, založila společnost KOTVA a.s. obchodní společnost KOTVA PARKING, s.r.o., k datu 13.3 2002 se základním kapitálem 200 tis. Kč, která měla provozovat podzemní garáže S ohledem na přetrvávající právní spory s předchozím nájemcem parkingu, byl obchodní podíl v této společnosti odprodán za účetní hodnotu

V oblasti majetkových účtů je společnost KOTVA a.s. držitelem podílu akcií a obchodních podílů v celkové účetní hodnotě k 31.12.2002 – 577 237 tis. Kč – dlouhodobý finanční majetek, v následujících společnostech:

| | |
|---|---|
| 536 383 000,-Kč | KOTVA NEMOVITOSTI, a.s. |
| 39 000 000,-Kč | KOTVA OBCHODNÍ, a.s. |
| 150 000,-Kč | Značková konfekcia s.r.o. |
| 100 000,-Kč | KOTVA-Středisko praktického vyučování, s.r.o. |
| 300 000,-Kč | Artia a.s. |
| 500 000,-Kč | MOTOKOV, a.s. |
| 100 000,-Kč | Sanderson, s.r.o. |
| 30 000,-Kč | KOTVA INTERNATIONAL Ltd |
| 674 000,-Kč | Značková konfekcia s.r.o. – půjčka |

Rozhodnutím jediného akcionáře KOTVA a.s. ze dne 9.3.2001 a rozhodnutím Krajského soudu v Brně ze dne 18.10.2001 a ze dne 19.6.2002 o zápis změn do obchodního rejstříku byly vytvořeny základní předpoklady k provedení zvýšení základního kapitálu KOTVA OBCHODNÍ, a.s. upisováním akcií o částku 38.000.000,-Kč v počtu 380 kusů, jmenovitá hodnota 100 000,-Kč, druh kmenové, forma na jméno, podoba listinná. Splacení emisního kursu bylo provedeno peněžitým vkladem ve výši 15.000.000,-Kč započtením peněžité pohledávky vůči společnosti KOTVA OBCHODNÍ, a.s., kterou měla společnost KOTVA a.s. na základě Smlouvy o půjčce ze dne 18.1.2001 a upisováním akcií nepeněžitým vkladem, jehož předmětem jsou pozemky zapsané na listu vlastnictví 1130 pro katastrální území Ruzyně ve výši 23 000 000,-Kč

Z uvedeného důvodu podala společnost KOTVA a.s. návrh na zahájení řízení o povolení vkladu do katastru nemovitostí ze dne 3.9.2002 vedeným pod č.j. V-32304/02

Nahlédnutím do evidence nemovitostí u Katastrálního úřadu Praha-město společnost KOTVA a.s. zjistila, že v době po splacení základního kapitálu formou Prohlášení vkladatele o vložení nemovitosti do základního kapitálu obchodní společnosti ze dne 26.3.2002 bylo u předmětné nemovitosti části dokumentovaných pozemků provedeno oddělení – bez vědomí vlastníka – některých pozemků.

S ohledem na výše uvedené a z opatrnosti pro případ odlišného posuzování Prohlášení vkladatele o vložení nemovitostí do základního kapitálu do obchodní společnosti ze dne 26.3.2002, učinila společnost KOTVA a.s. dne 4.11.2002 Prohlášení vkladatele o vložení nemovitosti do základního kapitálu obchodní společnosti ve formě dodatku. V návaznosti na to byl podán Doplňující návrh na zahájení řízení o povolení vkladu do katastru č.j. V-32304/02. Na výzvu Katastrálního úřadu byly dne 13.11.2002 uhrazeny poplatky za správní řízení.

Na základě posouzení hospodářské a finanční situace společnosti KOTVA OBCHODNÍ, a.s., která je součástí společenství podniků koncernu KOTVA ve 100% vlastnictví KOTVA a.s., bylo vzájemnou dohodou rozhodnuto o kapitálovém posílení této společnosti a navýšení základního kapitálu ze strany KOTVA NEMOVITOSTI, a.s. peněžitým vkladem ve výši 61.000 tis. Kč. Tímto postupem se 100% podíl držení akcií ze strany KOTVA a.s. sníží na 39% a 61% je v držení KOTVA NEMOVITOSTI, a.s. Tímto postupem však nebyla narušena holdingová vlastnická struktura, neboť 100% vlastníkem akcií KOTVA NEMOVITOSTI, a.s. je nadále společnost KOTVA a.s.

V oblasti závazků došlo oproti předchozímu období k významnému poklesu. Objem dlouhodobých a krátkodobých závazků činí 92 861 tis. Kč, z toho nejvýznamnější představují

| | |
|---|---|
| 15 400 tis. Kč | zůstatek z půjčky 20 000 tis. Kč poskytnuté společností KOTVA OBCHODNÍ, a.s. |
| 52 978 tis. Kč | zůstatek ze závazku vůči firmě SPRINT, a.s. v původní výši 135 000 tis. Kč převzatého společností KOTVA NEMOVITOSTI, a.s. |

V položce bankovních úvěrů zůstává ke splacení běžný bankovní úvěr GE-Capital bank ve výši 9 616 tis. Kč.

Společnost řádně splácí veškeré splatné závazky.

Na základě iniciativy společností KOTVA a.s. a KOTVA NEMOVITOSTI, a.s. byl podán návrh na zahájení Rozhodčího řízení ve věci pohledávek ke společnosti SPRINT, a.s. Podle rozhodčího nálezu vydaného dne 16.10.2002 bylo rozhodnuto o povinnosti společnosti SPRINT, a.s. zaplatit ve prospěch KOTVA a.s. částku 135 000 tis. Kč a příslušné úroky k datu splacení dlužných částek.

Na základě prohlášení konkurzu na společnost SPRINT, a.s. ze dne 6.11.2002 uplatnila společnost svoje pohledávky vůči této společnosti ve výši potvrzené rozhodčím nálezem. Uvedená pohledávka byla postoupena na společnost EUREX CONSULTANTS LIMITED.

Dne 14.1.2002 odkoupila KOTVA a.s. od společnosti SPRINT, a.s. 100% podíl ve společnosti SANDERSON s.r.o. ve výši 100 tis. Kč.

V listopadu r. 2002 byla provedena realizace dalších postupových kroků s cílem nalézt strategického partnera pro společnost. Jednotlivé transakce jsou realizovány ve smyslu doporučení podle projektu „Strukturální transakce KOTVA a.s." zpracovaného renomovanou poradenskou firmou ERNST and YOUNG, s.r.o. v listopadu r. 2000. Podle analýzy doposud provedených opatření byla provedena restrukturalizace aktiv společnosti založením dceřiných společností KOTVA NEMOVITOSTI, a.s. a KOTVA OBCHODNÍ, a.s. Dalším postupným krokem strukturální transakce bylo založení nové dceřiné společnosti v zahraničním teritoriu KOTVA INTERNATIONAL, Ltd. Základní kapitál 1 000 USD s nominální hodnotou 1USD/1 akcie.

Na základě posouzení stavu výběrového řízení zaměřeného na vyhledání strategického/finančního partnera, bylo vyhověno požadavku zájemců, aby v tranzitní společnosti (zahraniční společnost ve vlastnictví KOTVA a.s.) měla přiměřenou kapitálovou účast společnost vlastníka nemovitého majetku OD KOTVA, tj. KOTVA NEMOVITOSTI, a.s. V této souvislosti byl vysloven souhlas s navýšením základního kapitálu společnosti KOTVA INTERNATIONAL, Ltd. o 1 mil. USD. Tímto postupem není narušen majetkový vztah v koncernu KOTVA, kdy KOTVA a.s. vlastní 100% kapitálu ve společnosti KOTVA NEMOVITOSTI, a.s.

V roce 2002 společnost neuvedla na trh žádné nové významné výrobky, ani nerozvíjela nové významné činnosti.

# V. Zpráva představenstva KOTVA a.s. o vztazích mezi ovládající a ovládanou osobou a mezi ovládanou osobou a ostatními osobami ovládanými stejnou ovládající osobou za účetní období roku 2002

Společnost ve smyslu ust. § 66a obch. zák. je společností s většinovým společníkem (akcionářem) a je osobou ovládanou. Ovládající osobou je potom osoba (firma: FORMINSTER ENTERPRISES LIMITED, sídlo: 20 Queen Frederica Street, El Greco House, Nicosia, Kypr).

Společnost s touto ovládající osobou tvoří koncern.

Mezi KOTVA a.s. a ovládající společností nebyla uzavřena žádná smlouva, ovládanou osobou nebylo poskytnuto ovládající osobě žádné plnění ani od ní přijato, a ovládaná osoba nepřijala a neuskutečnila žádné opatření v zájmu nebo na popud ovládající osoby.

Mezi výše uvedenou ovládající společností a ovládanou společností KOTVA NEMOVITOSTI, a.s. byla uzavřena dne 25.6.2001 Dohoda podle § 269 odst.2 zákona č.513/1991 Sb., kterou se upravují práva smluvních stran v souvislosti s uzavřením Smlouvy o zřízení zástavního práva k nemovitostem se svolením k vykonatelnosti notářského zápisu, uzavřené mezi TREND-všeobecný investiční fond a.s. a KOTVA NEMOVITOSTI, a.s. dne 25.6.2001 ve formě notářského zápisu čj. NZ 377/2001, N 406/2001.Touto smlouvou je ze strany KOTVA NEMOVITOSTI, a.s. zajištěna zřízením zástavního práva k nemovitostem KOTVA NEMOVITOSTI, a.s., zapsaným na listu vlastnictví č.265 pro kat. území Staré Město, obec Praha pohledávka společnosti TREND-všeobecný investiční fond a.s. vůči společnosti FORMINSTER ENTERPRISES LIMITED, sídlo: 20 Queen Frederica Street, El Greco House, Nicosia, Kypr) na zaplacení částky 350 000 000,-Kč (z titulu Dohody o narovnání uzavřené mezi FEL a TREND VIF z 21.12.1999)

Mezi ovládanou a ovládající společností nebyla uzavřena žádná jiná smlouva, ovládanou osobou nebylo poskytnuto ovládající osobě žádné plnění ani od ní přijato, a ovládaná osoba nepřijala a neuskutečnila žádné opatření v zájmu nebo na popud ovládající osoby.

## I. DEFINICE DALŠÍCH OVLÁDANÝCH OSOB

1   **KOTVA a.s.** byla v roce 2002 vlastník 100% akcií **KOTVA NEMOVITOSTI, a.s.,** IČ: 26229048, se sídlem Brno, Příkop 4, zapsané v obchodním rejstříku Krajského soudu v Brně, oddíl B, vložka 3426

2   **KOTVA a.s.** byla v roce 2002 vlastník 100% akcií **KOTVA OBCHODNÍ, a.s.,** IČ: 26231735, se sídlem Brno, Příkop 4, zapsané v obchodním rejstříku Krajského soudu v Brně, oddíl B, vložka 3484

3   **KOTVA a.s.** byla v roce 2002 jediný společník obchodní společnosti **Značková konfekcia s.r.o.,** IČ: 35689641, se sídlem Mickiewiczova 6, Bratislava, zapsané v obchodním registru Okresného súdu v Bratislave 1, oddíl Sro, vložka: 10928/B

4.   **KOTVA a.s.** byla v roce 2002 jediným společníkem **KOTVA-středisko praktického vyučování, s.r.o.,** IČ: 26123193, se sídlem Praha 1, nám. Republiky 8, zapsané v obchodním rejstříku Městského soudu v Praze, oddíl C, vložka 72148

5. **KOTVA NEMOVITOSTI, a.s.** vlastní od roku 2002 99% akcií společnosti **KOTVA INTERNATIONAL LIMITED**, č. 522767 se sídlem, Geneva Place, Waterfront Drive, P O Box 3469, Road Town, Tortola, British Virgin Islands

6. **KOTVA a.s.** je jediným společníkem společnosti **SANDERSON s.r.o.**, IČ: 25666797 se sídlem Praha 3, Táborítská 1000/23, zapsané v obchodním rejstříku MěS v Praze, oddíl C, vložka 59498

## II. SMLOUVY UZAVŘENÉ MEZI OVLÁDAJÍCÍ A OVLÁDANOU OSOBOU KOTVA a.s. NEBO MEZI OVLÁDANOU OSOBOU KOTVA A.S. A OSTATNÍMI OSOBAMI OVLÁDANÝMI STEJNOU OVLÁDAJÍCÍ OSOBOU V ROCE 2002:

1. KOTVA a s. uzavřela jako pronajímatel dne 31.12.2001 s KOTVA NEMOVITOSTI, a s. jako nájemcem Smlouvu o pronájmu osobního automobilu s platností od 1.1.2002, podle které pronajímatel pronajímá nájemci osobní automobil MERCEDES-BENZ, typ C 32 AMG, za cenu nájemného 85.750,-Kč+DPH měsíčně

2. KOTVA a s. uzavřela jako pronajímatel dne 31.12.2001 s KOTVA NEMOVITOSTI,a s. jako nájemcem Smlouvu o pronájmu osobního automobilu s platností od 1.1.2002, podle které pronajímatel pronajímá nájemci osobní automobil TOYOTA, typ Carina 1,6 BEMDKW, za cenu nájemného 10.930,-Kč+DPH měsíčně

3. KOTVA a.s uzavřela jako prodávající dne 31.12.2001 s KOTVA NEMOVITOSTI, a s. jako kupujícím Kupní smlouvu na prodej vybraného hmotného majetku popsaného a oceněného v Posudku č.11-151-2001 znalcem KOPPREA-ZNALECKÝ ÚSTAV, spol s r o. Praha za cenu 4 246 808,-Kč+DPH.

4. KOTVA a s. jako nájemce uzavřela dne 8.2.2002 s KOTVA NEMOVITOSTI, a s jako pronajímatelem Smlouvu o nájmu nebytových prostor, podle které nájemce najímá od pronajímatele 11.303 m2 nebytových prostor v 1.-9. podzemním podlaží OD Kotva za sjednané nájemné ve výši 800 000,-Kč+DPH měsíčně a touto smlouvou se zároveň sjednává rozsah služeb poskytovaných pronajímatelem nájemci v souvislosti s nájmem nebytových prostor za sjednanou cenu ve výši 400 000,-Kč+DPH měsíčně.

5. KOTVA a s. jako objednatel uzavřela dne 25.2.2002 s KOTVA NEMOVITOSTI, a s. jako zhotovitelem Smlouvu o poskytnutí služeb, podle které zhotovitel poskytuje objednateli služby nutné k zabezpečení provozu parkingu za sjednanou cenu 125 000,-Kč měsíčně

6. KOTVA a s. uzavřela jako pronajímatel (nájemce) dne 31.12.2001 s KOTVA NEMOVITOSTI, a s. jako podnájemcem Smlouvu o podnájmu osobního automobilu s platností od 1.1.2002, podle které pronajímá této společnosti osobní automobil MERCEDES-BENZ, typ C 32 AMG, za cenu nájemného 85.750,-Kč+DPH měsíčně. Tato smlouva nahrazuje smlouvu uvedenou pod č. 1 této zprávy

7. KOTVA a.s. uzavřela jako prodávající dne 11.6.2002 s KOTVA NEMOVITOSTI, a s. jako kupujícím Kupní smlouvu, podle které prodávající prodává kupujícímu osobní automobil TOYOTA, typ Carina 1,6 BEMDKW za sjednanou kupní cenu 150 000,-Kč

8. KOTVA a s. uzavřela jako prodávající dne 18.6.2002 s KOTVA NEMOVITOSTI, a s jako s kupujícím Kupní smlouvu na prodej vybraného hmotného majetku popsaného v soupisu k této smlouvě za sjednanou cenu 18 040,-Kč+DPH

9. KOTVA a s. jako postupitel uzavřela dne 2.10.2002 s KOTVA NEMOVITOSTI, a s. jako postupníkem Smlouvu o postoupení pohledávky, podle které postupitel postupuje postupníku pohledávky uvedené v této smlouvě postupníku za sjednanou celkovou cenu ve výši 659 500,02 Kč

10. KOTVA a.s. uzavřela jako prodávající dne 14.10.2002 s KOTVA NEMOVITOSTI,a.s. jako kupujícím Kupní smlouvu, podle které prodávající prodává kupujícímu osobní automobil ŠKODA FELICIA EFF 41za sjednanou kupní cenu 44.500,-Kč.

11. KOTVA a.s. jako postupitel uzavřela dne 27.11.2002 s KOTVA NEMOVITOSTI, a.s. jako postupníkem Smlouvu o postoupení pohledávky, podle které postupitel postupuje postupníku pohledávku za společností KOTVA PARKING s.r.o. ve výši 497 222,50 Kč za sjednanou celkovou cenu ve výši 497.222,50 Kč.

12. KOTVA a.s. jako nájemce uzavřela dne 12.8.2002 s KOTVA NEMOVITOSTI, a.s. jako pronajímatelem Dodatek č. 3 ke Smlouvě o pronájmu nebytových prostor z 22.12.2000, podle kterého se cena nájemného mění a nově sjednává na částku 55,-Kč+DPH měsíčně s platností od 1.9.2002.

13. KOTVA a.s. uzavřela dne 28.6.2002 s KOTVA NEMOVITOSTI, a.s. Dohodu o vzájemných zápočtech, podle které se smluvní strany dohodly, že budou vzájemně započítávat nesplatné pohledávky.

14. KOTVA a.s. uzavřela dne 21.12.2002 s KOTVA NEMOVITOSTI,a.s. a s KOTVA OBCHODNÍ,a.s. Dodatek č. 2 k Dohodě o poskytování služeb, podle kterého se pro období roku 2003 sjednává poskytování ekonomických služeb společností KOTVA a.s. pro KOTVA NEMOVITOSTI,a.s. za roční paušální cenu 11 020 000,-Kč a pro KOTVA OBCHODNÍ,a.s. za roční paušální cenu 720.000,-Kč.

15. KOTVA a.s. jako prodávající uzavřela dne 27.2.2002 s KOTVA OBCHODNÍ,a.s. jako kupujícím Kupní smlouvu, podle které prodávající prodává kupujícímu zařízení pro výpočetní středisko za sjednanou cenu 41.200,-Kč.

16. KOTVA a.s. jako prodávající uzavřela dne 25.7.2002 s KOTVA OBCHODNÍ, a.s. jako kupujícím Kupní smlouvu, podle které prodávající prodává kupujícímu server Dell 6300 za sjednanou cenu 70 000,-Kč+DPH.

17. KOTVA a.s. uzavřela jako prodávající dne 31.12.2001 s KOTVA OBCHODNÍ, a.s. jako kupujícím Kupní smlouvu na prodej vybraného movitého a nehmotného majetku popsaného a oceněného v Posudku č.11-150-2001 znalcem KOPPREA-ZNALECKÝ ÚSTAV, spol. s r.o. Praha za cenu 1 243 848,-Kč+DPH.

18. KOTVA a.s. uzavřela dne 21.3.2002 s KOTVA OBCHODNÍ,a.s. Smlouvu o upsání akcií, podle které KOTVA a.s. upisuje jako jediný akcionář akcie společnosti KOTVA OBCHODNÍ, a.s. v nominální hodnotě 38 000 000,-Kč.

19. KOTVA a.s. na základě Prohlášení vkladatele o vložení nemovitosti do základního kapitálu ze dne 26.3.2002 splatila jako jediný akcionář emisní kurs upsaných akcií KOTVA OBCHODNÍ, a.s. nepeněžitým vkladem ve výši 23 000 000,-Kč vložením nemovitostí.

20. KOTVA a.s. uzavřela dne 26.3.2002 s KOTVA OBCHODNÍ,a.s. Dohodu o započtení pohledávek, podle které splatila jako jediný akcionář KOTVA OBCHODNÍ,a.s. započtením své peněžité pohledávky ve výši 15 000 000,-Kč vůči KOTVA OBCHODNÍ, a.s. svůj peněžitý vklad ve výši 15 000 000,-Kč.

**III. ŽÁDNÉ JINÉ SMLOUVY MEZI KOTVA a.s. a PROPOJENÝMI OSOBAMI, PRÁVNÍ ÚKONY, UČINĚNÉ V ZÁJMU PROPOJENÝCH OSOB A OSTATNÍ OPATŘENÍ V ZÁJMU NEBO NA POPUD TĚCHTO OSOB PŘIJATÁ NEBO USKUTEČNĚNÁ OVLÁDANOU OSOBOU V ROCE 2002 NEBYLY USKUTEČNĚNY.**

24

# VII. Údaje o osobách odpovědných za výroční zprávu a ověření účetní závěrky

**Audit společnosti:**

**2000:**   **Ernst and Young Audit, spol. s r.o.**
Praha 2, Mánesova 28
Auditorská licence KA ČR č 137
Ing Eva Dekastellová, dekret č 759

**2001:**   **BDO CS, spol. s r.o.**
Olbrachtova 5, Praha 4
Auditorská licence KA ČR č 18
Ing. Radomír Kosina, CSc , dekret č 119
Ing Růžena Trnková, dekret č 373

**2002:**   **BDO CS, spol. s r.o.**
Olbrachtova 5, Praha 4
Auditorská licence KA ČR č 18
Ing Radomír Kosina, CSc., dekret č 119
Ing Růžena Trnková, dekret č 373

Prohlašuji, že údaje uvedené ve Výroční zprávě odpovídají skutečnosti a žádné podstatné okolnosti, které by mohly ovlivnit přesné a správné posouzení emitenta cenných papírů, nebyly vynechány

Veškeré dokumenty a materiály uváděné ve Výroční zprávě jsou k nahlédnutí v sídle společnosti

V Praze dne 28  4  2003

Ing Richard Harazim, generální ředitel KOTVA a s



ΚΥΠΡΙΑΚΗ     ΔΗΜΟΚΡΑΤΙΑ
REPUBLIC        OF CYPRUS

C.C. 1

No. 78962

### MINISTRY OF COMMERCE, INDUSTRY AND TOURISM
### DEPARTMENT OF REGISTRAR OF COMPANIES
### AND OFFICIAL RECEIVER
### NICOSIA

**30 June 2005**

## CERTIFICATE

### FORMINSTER ENTERPRISES LIMITED

It is hereby certified that in accordance with the records kept by this Department the following were the Shareholders of the above company as at 3.9.1998:

| Name and Address | Class (Value) | No. of Shares |
|---|---|---|
| LEDRA NOMINEES LTD<br>20 Vas. Frederick Street<br>El Greco House, Office 104<br>Nicosia | ORDINARY (CYP 1,00) | 500 |
| LEDRA TRUSTEES LTD<br>20 Vas. Frederick Street<br>El Greco House, Office 104<br>Nicosia | " | 500 |

For Actg Registrar of Companies.

Sgd . J. PAPADOPOULOU

/LH



ΚΥΠΡΙΑΚΗ      ΔΗΜΟΚΡΑΤΙΑ
REPUBLIC      OF CYPRUS

C.C. 1

No. 78962

## MINISTRY OF COMMERCE, INDUSTRY AND TOURISM
### DEPARTMENT OF REGISTRAR OF COMPANIES
### AND OFFICIAL RECEIVER
### NICOSIA

**30 June 2005**

## <u>CERTIFICATE</u>

### FORMINSTER ENTERPRISES LIMITED

It is hereby certified that in accordance with the records kept by this Department the following were the Shareholders of the above company as at 30.11.1999:

| Name and Address | Class (Value) | No. of Shares |
|---|---|---|
| INDVECTA (NOMINEES) LTD<br>4 Diagorou Street<br>Kermia House, Office 601<br>Nicosia | ORDINARY (CYP 1,00) | 500 |
| CYRENA (NOMINEES) LTD<br>4 Diagorou Street<br>Kermia House, Office 601<br>Nicosia | " | 500 |

For Act. Registrar of Companies.

L. PAPADOULOU

/LH



ΚΥΠΡΙΑΚΗ    ΔΗΜΟΚΡΑΤΙΑ
REPUBLIC     OF CYPRUS

C.C. 1

No. 78962

## MINISTRY OF COMMERCE, INDUSTRY AND TOURISM
### DEPARTMENT OF REGISTRAR OF COMPANIES
### AND OFFICIAL RECEIVER
### NICOSIA

**30 June 2005**

## CERTIFICATE

### FORMINSTER ENTERPRISES LIMITED

It is hereby certified that in accordance with the records kept by this Department the following were the Shareholders of the above company as at 25.5.2005:

| Name and Address | Class (Value) | No. of Shares |
|---|---|---|
| INDVECTA (NOMINEES) LTD<br>4 Diagorou Street<br>Kermia House, 6th Floor, Office 601<br>1097 Nicosia | ORDINARY (CYP 1,00) | 1.000 |

For Actg Registrar of Companies.

Sgd.) R. PAPADOPOULOU

/LH

 **THE BONALBO GROUP**



ABOUT US

Home pa
News
Products
Resourc
About us
Contact
Join us
Links

# The Bonalbo Group

The Bonalbo Group, established in 1994, is an international network of professionals specialising in the formation and administration of companies and trusts.



The Bon
Office lo

We offer a full range of services, which include the following:

- international tax planning and group structuring
- company formation, management and administration in all major jurisdictions
- professional directors, nominee shareholders and company secretaries
- provision of registered and representative offices
- establishment and management of trusts
- accounting and audit
- advising on matters of real estate investment

We serve a well diversified client base, consisting of both individuals and corporations, spread throughout the world.  We strive to maintain close contact with our clients, so that we are better able to understand their continuously changing needs and offer appropriate solutions.  Each client enjoys a personal service through the allocation of a specific consultant responsible for the client's affairs.  This ensures efficiency and continuity in our relationships.

Our staff consists of a select group of multilingual individuals with professional qualifications and international employment experience, who are committed to providing a dedicated and competent service at all times. The highest standards of professional conduct are upheld, which are at least in accordance with the requirements of the various professional bodies of which our staff are members.

We adopt a flexible approach to our work, with the client's best interests in mind at all times and aim to provide comprehensive solutions using our extensive knowledge, expertise and contacts.

We have invested heavily in technology and telecommunication systems, which allow us to offer the efficiency and responsiveness which our clients expect, while also providing a secure mode of communication through encrypted e-mail facilities.

**Odesláno:** 10  listopadu 2004 16:35
**Připojit:** E-mail Andy Nov 10 2004.doc
**Předmět:** RE: Offer by Forminster

Please see info in the attached document
Best regards
Vlado

-----Original Message-----
**From:** Andrew Weiss [mailto:AWeiss@WeissAsset com]
**Sent:** Tuesday, November 09, 2004 8:19 PM
**To:** Vladimir Hoffmann; vlado1@volny cz
**Cc:** Georgiy Nikitin; peterka@cabinet cz
**Subject:** Offer by Forminster

I am rejecting the latest offer from Forminster  andrew weiss


Andrew Weiss, Ph D

President and CIO

Weiss Asset Management

Office 617 778 7780

Mobile 617 548 0580

This email is confidential and is intended solely for the addressee(s). If you are not an addressee  you must not disclose. copy circulate or in any other way use or rely on the Information contained in this email  If received in error  please notify the sender immediately and then delete this email  Any disclosure  copying  distribution or use of this communication is prohibited and may be unlawful

Any views or opinions expressed do not necessarily represent those of Weiss Asset Management or any affiliated companies Please note that the content of this e-mail may be intercepted  monitored or recorded for compliance purposes  Sensitive personal data should not normally be transmitted by e mail

Weiss Asset Management or any affiliated companies shall not be liable to the recipient or any third party for any loss or damage howsoever arising from this e-mail and/or its content  including loss or damage caused by virus  It is the responsibility of the recipient to ensure that the opening or use of this message and any attachments shall not adversely affect systems or data

Weiss Asset Management
29 Commonwealth Avenue
Boston  MA 02116
TEL: (617) 778-7780
FAX: (617) 778-7781
www.weissasset com


E-mail Andy, November 10, 2004

Dear Andy,                                                                K 0048

I have informed Martin Benda this morning about your decision to decline their offer. He told me, that when we met last time he in fact was insisting only on withdrawal of lawsuits against Kotva and its daughter companies concerning Kotva's property, not shares ! I called Mr. Peterka who was present at the meeting with Benda and he confirmed to me that Benda in fact insisted on withdrawal of all lawsuits. Although Benda promised to call me later today to clarify what exactly he meant I was unable to contact him this afternoon.

to the board of BGO, Oct. 25, 2004.

Dear Andy and Yossi,

I have not yet heard from either of you or the board concerning my detailed memo of Oct 21. I am very concerned that unless we respond in next few days Forminster will withdraw its offer to pay CZK 131m (currently worth about USD 5.25m) for BGO's Kotva shares. We have a national holiday (like the 4th of July in the US) on this Thursday and we received the offer last Monday and were supposed to respond by last Friday.

I want to emphasize that I believe that this is the best settlement offer we can expect and this is the best time to settle. If we let this opportunity go by, we will have no options except to pursue the lawsuits with very uncertain results to occur a very long time in the future at a large expense to BGO. I am referring to my Memos of Oct 21 and 25 for the full argumentation.

I believe that the calculations in my memos are reasonably accurate and self-explanatory. I have dealt just very briefly with the fact that our court system is not without problems and it would be quite rational for them to invest few tens of millions of Crowns in "consultants" to assist them in legal issues if BGO refuses to accept this offer.

I need BGO's agreement to the settlement or if the board refuses to accept my recommendation, a rational explanation as to why the offer is not acceptable. I am afraid that my ability to continue to negotiate with them will be compromised if we refuse since they will not see me or BGO as reasonable counterparties and frankly I would be afraid for my physical safety as well.

Please let me know BGO's response by Tuesday evening Oct 26th our time so I can give a response to the other side before our long holiday weekend.

Vlado

K 0081

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KOTVA a.s., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW WEISS and WEISS ASSET | ) | C.A. No. 05-10679-RCL |
| MANAGEMENT, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| ANDREW WEISS, WEISS ASSET | ) | |
| MANAGEMENT LLC, K T, INC. and CVF | ) | |
| INVESTMENTS, LTD., | ) | |
| | ) | |
| Counterclaim-plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KOTVA a.s., MARTIN BENDA, RICHARD | ) | |
| HARAZIM, FORMINSTER ENTERPRISES, | ) | |
| LTD., SPV CO and JOHN DOES 1–5, | ) | |
| | ) | |
| Counterclaim-defendants. | ) | |

## NOTICE OF DEPOSITION OF KOTVA A.S.

TO:    Joel G. Beckman
       William C. Nystrom
       Dana A. Zakarian
       Nystrom Beckman & Paris LLP
       10 St. James Ave., 16th Floor
       Boston, Massachusetts 02116

Please take notice that, pursuant to Federal Rule of Civil Procedure 30(b)(6), Andrew

Weiss, Weiss Asset Management LLC, K T, Inc. and CVF Investments, Ltd., by their attorneys,

will take the deposition upon oral examination of the person designated most knowledgeable by

Kotva a.s. with respect to each matter identified on Schedule A (attached hereto). Kotva a.s. shall designate one or more of its officers, directors, managing agents, or other persons who consent to testify on its behalf, and may set forth for each person designated, the matters on which the person will testify.

The deposition will commence on **December 16, 2005 at 9:30 a.m.** at the offices of McDermott Will & Emery LLP, 28 State Street, Boston, Massachusetts 02109, before a notary public or other officer authorized by law to administer oaths. The examination will continue from day to day until concluded. You are invited to attend and cross-examine. The deposition shall be recorded by videographic (sound-and-visual) and stenographic means.

ANDREW WEISS, WEISS ASSET
MANAGEMENT LLC, K T, INC. and CVF
INVESTMENTS LTD.

By their attorneys,

Edward P. Leibensperger (BBO# 292620)
Benjamin A. Goldberger (BBO# 654257)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts  02109-1775
(617) 535-4000

Dated: November 10, 2005

### CERTIFICATE OF SERVICE

I, Benjamin A. Goldberger, hereby certify that on the 10th day of November, 2005, a true and correct copy of the foregoing document was served by first class mail on counsel for each other party.

Benjamin A. Goldberger

## SCHEDULE A

*Definitions*

A.    Any entity referred to in this Schedule, including Kotva and Markland, shall mean that entity and all its agents, servants, employees, successors, predecessors, affiliates, trustees, parent companies, subsidiaries, divisions and other representatives or persons acting on its behalf or under its control.

B.    "Discovering Parties" shall mean Andrew Weiss, Weiss Asset Management LLC, K T, Inc., and CVF Investments Ltd.

C.    "Department Store" shall mean the property Kotva refers to as the "Shopping Centre" in its Complaint.

*Instructions*

Kotva a.s. is instructed to designate one or more of its officers, directors, managing agents, or other persons who consent to testify on its behalf with respect to the following matters:

1.    The meeting among Richard Harazim, Martin Benda, Andrew Weiss and Vladimir Hoffmann that took place in Prague on or about May 12, 2004 and referred to in paragraph 20 of Kotva's complaint.

2.    Kotva's sale of the Department Store to Markland, including negotiations leading up to the sale, disposition of the proceeds of the sale and any escrow agreements relating to the proceeds of the sale.

3.    Kotva's transfer of the Department Store to its subsidiaries.

4.    The value of the Department Store and past valuations of the Department Store.

5.    The communications described in paragraphs 27–34 of Kotva's Complaint.

6.    Kotva's decision to file of this lawsuit.

7.    Kotva's communications with Czech law enforcement.

8.    Richard Harazim's conversations with members of the media, including writers for the Wall Street Journal and Prague Post.

9.    The steps Kotva has taken to respond to the Discovering Parties' First Set of Document Requests.

10.    Kotva's relationship with Forminster Enterprises, Ltd.

11.    Kotva's management structure.

12.    Organization and relationships among Kotva's subsidiaries.

13.    The settlement agreement referenced in paragraph 12 of the complaint and the claims that were settled.

14.    The methods Kotva used to gain access to the documents referred to as "multiple internal documents" in paragraph 43 of the Complaint.

15.    Claims asserted against Kotva by James Woolf and any settlement of those claims.

BST99 1480040-1 072198 0012

4