UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s. ) | |
| ) | |
| Plaintiff, ) | Case No. 05-10679-RCL |
| ) | |
| v. ) | |
| ) | |
| ANDREW WEISS and WEISS ASSET ) | |
| MANAGEMENT, LLC ) | |
| ) | |
| Defendants. ) | |

**REPLY BRIEF TO COUNTERCLAIM PLAINTIFFS'
OPPOSITION TO KOTVA'S MOTION TO DISMISS**

In view of the Court's February 13, 2006 Order, Kotva respectfully submits this

short reply brief in further support of its Motion to Dismiss ("Kotva Motion").[1]

I.      **Most Of The Defendants' Claims Are Time Barred**

In the Opposition,[2] Counterclaim Plaintiffs contend that "Czech law governs the

statute of limitations for [the] request for declaratory relief." (Opposition at 13).  On the

contrary, the Restatement (Second) of Conflicts of Law provides:

(1) An action *will not be maintained* if it is barred by the statute of limitations *of
    the forum* . . .

(2) An action will be maintained if it is not barred by the statute of limitations of
    the forum, even though it would be barred by the statute of limitations of
    another state, except as stated in § 143

Restatement (Second) of Conflict of Laws § 142 (1988) (emphasis added); see also

Comment on Subsection (1) ("Hence no action can be maintained that is barred by the

---

[1] Counsel for defendants have assented to the filing of this Reply.

[2] "Opposition" refers to the Counterclaim Plaintiffs' Opposition To Kotva's Motion To Dismiss, dated July
25, 2005.

statue of limitations of the forum"). Massachusetts has adopted Restatement (Second) of Conflict of Laws § 142. New England Telephone & Telegraph Co. v. Gourdeau Construct. Co., 419 Mass. 658 (1995); Nierman v. Hyatt Corp., 441 Mass. 693, 695-96 (2004).

In short, while the Restatement approach does permit the Court to engage in the conflict of laws analysis where an action is within the statute of limitations of the forum state, it steadfastly prevents the maintenance of an action that would be barred by the forum state's statute of limitations. See Restatement (Second) of Conflicts, § 142; see also Hemric v. Reed and Prince Mftg Co., 739 F.2d 1, 2-3 (1st Cir. 1984) (granting summary judgment because plaintiff's action barred by the Massachusetts statute of limitations even though it would have been allowed under the North Carolina statute of limitations).

Here, all the counterclaim plaintiffs' claims (except for abuse of process and Chapter 93A claims addressed below) are barred by the three year Massachusetts statute of limitations for torts, M.G.L. c. 260, §2A. The most obvious, of course, is the so-called "Trend Tunneling" claim that "[t]he Forminster Group has no legal right to its Kotva shares because those shares were either stolen from Trend or represent the proceeds of other assets stolen from Trend." Counterclaim[3] ¶ 103. There is no dispute that the counterclaim plaintiffs had knowledge of the "Trend Tunneling" issues way back in the 1990's (See, Kotva Memorandum at 9-12). Ironically, one of the articles the counterclaim-defendants attach to their pleading is called "TREND case –everybody

---

[3] "Counterclaim" refers to the First Amended Answer and Counterclaim, dated June 15, 2005.

knows what happened but the assets will hardly be restored" — written on September 18, 1997. Counterclaim Exh. 3. In short, the Trend tunneling claim is time barred.[4]

The remainder of the counterclaim-defendants' claims (except for abuse of process), relate to "a scheme" by the so-called Forminster Group "to separate the assets of Kotva a.s. from the frozen shares of Kotva a.s., liquidate those assets, and appropriate the cash proceeds for their own benefit." Amended Answer and Counterclaim ¶ 51. The counterclaim plaintiffs further contend that: "*Since at least 1999* . . . [t]he Forminster Group [has] use[d] its pervasive control over Kotva a.s. to act in a selfish way, disregarding the interests of Kotva a.s.'s minority shareholders." Id. At 52 (emphasis added).

As Kotva detailed in its complaint, "the separation" of the assets from Kotva *occurred in November 2000*:

> In late 2000, following Ernst & Young's recommendation, Kotva established two separate wholly owned subsidiaries: Kotva Nemovitosti ("KN") (which in Czech means Kotva real estate) and Kotva Obchodni (which in Czech means Kotva retail). The Shopping Centre was transferred from Kotva to KN in November 2000. The 2001 general meeting of Kotva approved the transfer of the Shopping Centre to KN, with only two Kotva shareholders voting against this measure, (i.e. Brookdale with 82,782 shares and another shareholder with 12 shares). In 2001, a bank refinanced Kotva's existing loans at a much lower interest rate.

---

[4] The "Trend Tunneling" claim also fails under F.R.C.P. 19(b) because Trend is an indispensable party that cannot be joined. Trend has been in bankruptcy since 2000, as Weiss himself admits. Complaint Exh. E ("Trend was not able to survive the tunneling of its Kotva shares and went bankrupt in 2000"). Here, complete relief could not be afforded without Trend, who the Wiess Defendants claim is the "owner" of 55% of Kotva's shares, not the "Forminster Group." Counterclaim ¶¶ 101-103. See also Weizmann Institute of Science v. Neschis, 229 F.Supp.2d 243, 250-51 (S.D.N.Y 2002)(when joinder not feasible, the "Plaintiffs must show why the declaratory judgment claims should not be dismissed.") (emphasis added); National Union Fire Ins. Co. v. Massachusetts Municipal Wholesale Electric Co., 117 F.R.D. 321 (D. Mass. 1987) (refusing to drop a defendant from an action because in their absence any decision rendered by the court on the declaratory action judgment would be "hollow or ineffectual").

Complaint ¶ 15. Not only did the Weiss Defendants and CVF have knowledge of the transfer – they were one of only two Kotva shareholders who voted against the transfer – *in 2001*.[5] Id.

The statute of limitations begins to run on an alleged "conspiracy" with the first overt act of the conspiracy, not the completion of the conspiracy. Hernandez Jimenez v. Calero Toledo, 576 F.2d 402, 404 fn 1 (1st Cir. 1978) (holding that statute of limitations for a conspiracy claim begins to run upon the first overt act of the conspiracy).

In short, all of the counterclaim-plaintiffs' tort-based claims (Counts II through V), are barred by M.G.L. c. 260 §2A.

## II.    The 93A Claim Is Fatally Defective

As demonstrated in Kotva's opening brief, the counterclaim-plaintiffs' 93A claim must be dismissed because: (1) the complained of conduct occurred entirely in the Czech Republic, not Massachusetts; and (2) the counterclaim plaintiffs suffered absolutely no recompensable loss. Kotva's Motion at 12-13. In the Opposition, the counterclaim defendants claim with respect to the primarily and substantially prong of 93A: "this court needs to flesh out the skeleton of the pleadings with evidence at trial." Opposition at 16.

On the contrary, there is no conduct by the so-called "Forminster Group," that is even remotely related to the United States, let alone Massachusetts, concerning the "separation" of assets from Kotva. To the contrary, all of the counterclaim plaintiffs' factual allegations relating to the Forminster Group's alleged activities occurred in the Czech Republic, or overseas. See Counterclaim ¶¶ 42 to 60. Indeed, the counterclaim

---

[5] In their pleadings, the counterclaim plaintiffs also refer to the transfer of the Department Store from Kotva to KN. See Amended Answer and Counterclaim ¶ 54 ("More specifically, Kotva a.s. first transferred the Department Store to a company it created called Kotva Nemovitosti."). Remarkably, however, in answering the Complaint, the counterclaim defendants claimed they "lacked knowledge" as to whether they voted against the transfer at the Kotva 2001 General Meeting.

plaintiffs admit as much when they claim – under a conflicts of law analysis – that this Court should apply Czech law. See Opposition at 14 ("In view of these [conflict of laws] factors, the Court should apply the Czech statute of limitations to this aspect of the declaratory judgment count.").

In short, based on their own pleadings, the counterclaim plaintiffs cannot satisfy the "primarily and substantially" requirement of c. 93A and, therefore, Count VII must be dismissed.

### III.    The Remaining Abuse of Process Claims Must Be Dismissed

Once the Trend and "separation of assets from Kotva" claims are eliminated, all that remains is Weiss and WAM's claim for abuse of process (Count I), and three words in the 93A claim (Count VII)("The Forminster Group's . . . abuse of process . . . are unfair and deceptive trade practices.").

In the opening brief, Kotva demonstrated that it did not file its Complaint for an ulterior purpose. Kotva Motion at 14-15. In response, the counterclaim defendants claim that: "[f]iling a criminal charge and a civil suit to gain leverage over another person in a commercial dispute or civil case are textbook examples of the sort of improper motive that will support an abuse of process claim," Opposition at 6. The Opposition further states:

> **Kotva's** motive was to increase the Forminster Group's leverage over Weiss and cause him to abandon his efforts in the Czech courts and accept a lower price for his investors' shares in Kotva and Trend. See Counterclaim ¶ 34 ("[Kotva's] motive in causing Czech law enforcement . . . . ); Id. ¶40 ("[**Kotva's**] bad faith motive in filing this [civil] case . . . .").

Id. (emphasis added). In crafting the Opposition, however, the counterclaim plaintiffs have literally misrepresented the allegations of their own counterclaim by substituting in

"Kotva" where the Counterclaim actually reads "Forminster Group." Specifically, Counterclaim paragraphs 34 and 40 (cited above) actually state it was the **"Forminster Group's** motive" not Kotva's. Indeed, Kotva is not a member of the "Forminster Group" at all. Instead, the Forminster Group is a "conspiracy" is among "Forminster, SPV Co., Benda, Harazim and others." Counterclaim ¶ 13. According to defendants, the Forminster Group "use[s] Kotva a.s. to serve the Forminster Group's interests and defraud the minority shareholders." Id. ¶ 52. In short, Kotva itself is the victim, and is not ascribed with any ulterior motives. See also Counterclaim ¶ 100 ("The sale proceeds belong instead to Kotva a.s. and its shareholders."). As such, there are no allegations at all that <u>Kotva</u> has engaged in an abuse of process and, therefore, in addition to the reasons set forth in the Kotva Motion, Count I (abuse of process) and the remainder of Count VII (93A) must be dismissed.

## IV.    KT and CVF Are Not Properly Before This Court

KT Corporation ("KT") and CVF Investments Limited ("CVF") attempt to unilaterally assert themselves into this action as purported "counterclaim plaintiffs." KT and CVF, however, cannot simply add themselves as parties into the case. Rather, the <u>required</u> procedure is to file a timely motion to intervene pursuant to Fed. R. Civ. P. 24. 4 Moore's Federal Practice §20.02[2][c](3d ed. 2005); <u>Thompson v. Boggs</u>, 33 F.3d 847, 858 n. 10 (7th Cir. 1994).

Here, CVF and KT, cannot satisfy the requirements of Rule 24. The First Circuit has held:

> A party that desires to intervene in a civil action under Rule 24(a)(2) must satisfy four conjunctive prerequisites: (1) a timely application for intervention; (2) a demonstrated interest relating to the property or transaction that forms the basis of the ongoing action; (3) <u>a satisfactory showing that the disposition of the action</u>

> threatens to create a practical impairment or impediment to its ability to protect
> that interest; and (4) a satisfactory showing that existing parties inadequately will
> represent its interests. An applicant for intervention as of right must run the table
> and fulfill all of four of these preconditions, the failure to satisfy any one of them
> dooms intervention.

Public Service Company of New Hampshire v. Patch, 136 F.3d 197, 204 (1st Cir. 1998)

(emphasis added). Moreover, intervention is not appropriate where the applicant can

recover on its claim through some other means, including prosecuting a separate lawsuit.

Deus v. Allstate Insurance Company, 15 F.3d, 506, 526 (11th Cir. 1994).

KT admits that it filed a lawsuit in the Czech Republic challenging the transfers of

the Department Store and seeking to restore the ownership of the Department Store to

Kotva.[6] "(Answer to Complaint ¶¶ 24, 32). Indeed, KT's lawsuit in the Czech Republic

involves precisely the same scandalous Trend tunneling allegations as raised in this

lawsuit. (An English translated copy of KT's complaint is attached hereto as Exhibit 1).

KT and CVF, therefore, cannot satisfy the requirements of Rule 24 as their rights will not

be impaired because they are prosecuting separate actions in the Czech Republic (and,

according to them, their claims are governed by Czech law). As such, the claims raised

by KT and CVF in this action should be struck.

KT and CVF also seek a declaration in the Czech lawsuit that the transfers of the

Department Store be declared null and void. (Czech Complaint, p. K0143). In this case,

however, KT and CVF seek completely contradictory relief that the "shareholders of

Kotva a.s. are the owners of the proceeds of the sale of the Department Store."

(Counterclaim, p. 29). CVF and KT cannot have it both ways. Thus, dismissal of KT

and CVF from this case is necessary to avoid any such conflicting results.

---

[6] In July 2005, CVF sought to intervene as a party to the KT Czech litigation, which was recently allowed.

Respectfully submitted,

Kotva, a.s.

By its attorneys,


      /s/ William C. Nystrom
Joel G. Beckman BBO#553086
William C. Nystrom BBO#559656
Dana A. Zakarian BBO# 641058
Daniel J. Pasquarello (BB0# 647379)
Nystrom Beckman & Paris LLP
10 St. James Ave., 16th Floor
Boston, Massachusetts 02116
(617) 778-9100
(617) 778-9110 (fax)

Dated: January 20, 2006

## LOCAL RULE 7.1(A)(2) CERTIFICATION

In accordance with Local Rule 7.1(A)(2), I hereby certify that on January 20, 2006 at approximately 2:00 p.m., I conferred by telephone with Edward Liebensperger, Esq., counsel for Defendants.  Opposing counsel assented to the filing of this reply brief.

      /s/ Dana A. Zakarian
Dana A. Zakarian (BBO# 641058)

**EXHIBIT 1**

Companies Register: Municipal Court in Prague
Section A, File 42561
Identification Number: 26 16 97 20
Prague – Bratislava
*Duty Stamp of 3,000 CZK*

PETERKA & PARTNERS
Law Offices

District Court for Prague 1
Ovocný trh 14
110 00 Prague 1

Prague, December 23rd, 2004

[Impression of a stamp:]    District Court for Prague 1
Prague 1, Ovocný trh 14
Received: December 23rd, 2004, *2:35 p.m.*
*4* copies,  enclosures
*taken personally*

Plaintiff:    K T, Inc.
Registered seat: 2711 Centerville Road, Suite 400, City of Wilmington, County of Newcastle, Delaware, USA;
Represented by: Mgr. Ondřej Peterka, Attorney-at-Law registered by the Czech Bar Chamber, Registration No. 4245, practising law as an associate of PETERKA & PARTNERS v.o.s., with its registered seat at Na Příkopě 15, 110 00 Prague 1 (hereinafter referred to as the "Plaintiff"),

Defendant 1:
KOTVA a.s.
Registered seat: Prague 1, Náměstí Republiky 8
Company registration number: 60 19 38 08
Registered in the Companies Register kept by the Municipal Court in Prague, Section B, File 2370,
(hereinafter referred to as "Defendant 1")

Defendant 2:
KOTVA NEMOVITOSTI, k.s.
Registered seat: 602 00 Brno, Příkop 4
Company registration number: 26 22 90 48
Registered in the Companies Register kept by the Regional Court in Brno, Section A, File 16586,
(hereinafter referred to as  "Defendant 2"),

Defendant 3:
SPV KN, a.s.
Registered seat: 602 00 Brno, Příkop 4
Company registration number: 26 91 07 05
Registered in the Companies Register kept by the Regional Court in Brno, Section A, File 4043,

**K 0126**

(hereinafter referred to as "Defendant 3")

**Petition to determine title to real property**
Four copies.
Court fee of 3,000 CZK paid in the form of duty stamps.
Delivered in person to the court registry.
Attachments:
Power of attorney for the Plaintiff's legal representative.
For further attachments see the list on the final page of the petition.

*(Duty stamps of 3,000 CZK affixed)*

PETERKA & PARTNERS v.o.s.
Na Příkopě 15/583
CZ – 110 00, Prague 1
Tel.: +420 246 085 300
Fax: +420 246 085 370
www.cabinet.cz
Companies Register: Municipal Court in Prague
Section A, File 42561
Identification Number: 26 16 97 20
Prague – Bratislava

1. SPECIFICATION OF THE PARTIES, SUBJECT OF THE PROCEEDINGS, JURISDICTION OF THE COURT

1.1. Specification of the parties

The Plaintiff is a shareholder of Defendant 1.

Defendant 1 is a trading company registered until 2000 in the Land Registry as the sole owner of the real property specified below in paragraph 1.2. As described below, Defendant 1 is still the sole owner.

Defendant 2 is a trading company registered in the property register as the sole owner of the real property specified below in paragraph 1.2, such based on a statement[1] on an immovable investment made by Defendant 1 in 2000. It was established by transformation of KOTVA NEMOVITOSTI, a.s.[2]

Defendant 3 is a trading company, whose sole associate is Defendant 2. At present Defendant 3 is entered in the Land Registry as the owner of the real property specified below in paragraph 1.2.

1.2. Subject of proceedings

Under this petition, the Plaintiff seeks a court decision, pursuant to Section 80, Letter c) of Act No. 99/1963 Coll. of the Civil Procedure Code (hereinafter referred to as the "CPC"), determining that Defendant 1 is the owner of the following real property:

- Building with Land Registry reference number 656 (civic amenities), belonging to the Staré Město municipality, located on building plot number 680;
- Building with no Land Registry reference number or street number (civic amenities), belonging to the Stare Mesto municipality, located on building plot number 1018/2;
- Land Parcel No. 680 (built-up area and courtyard) with an area of 4,385 m²;
- Land Parcel No. 683/1 (other land) with an area of 851 m²;
- Land Parcel No. 683/2 (other land) with an area of 2,963 m²;
- Land Parcel No. 683/3 (other land) with an area of 2 m²;
- Land Parcel No. 690/2 (other land) with an area of 25 m²;
- Land Parcel No. 690/3 (other land) with an area of 49 m²;
- Land Parcel No. 690/4 (other land) with an area of 9 m²;
- Land Parcel No. 1018/2 (built-up area and courtyard) with an area of 1 m²;

All the above-mentioned real property is registered by the Land Registry for the City of Prague on Title No. 265, maintained for the municipality of Praha, Cadastral District: Staré Město (these properties shall be hereinafter referred to jointly as the "KOTVA Department Store").

---

[1] Based on the stipulation of Section 60, Paragraph 1 of Act No. 513/1991 Coll. of the Commercial Code.
[2] KOTVA NEMOVITOSTI, a.s. changed its legal form from a joint-stock company to a limited partnership. This change in legal form was made in accordance with a decision of the General Meeting held on May 20th, 2003; the decision of the registration court to register the change came into legal force on August 15th, 2003.

K 0128

## 1.3. Jurisdiction

The material jurisdiction of the district court is determined by Section 9, Paragraph 1 of the CPC, because there is no indication in provisions of Section 9, Paragraphs 2 and 3 of the CPC or in any other provisions that jurisdiction pertains to a regional court in the first instance.

With regard to local jurisdiction, the Plaintiff refers to Section 88, Paragraph g) of the CPC, under which the competent court is the court in whose circuit the given property is located, provided that the legal proceedings relate to this property. KOTVA Department Store, as a set of property units, is located in the circuit of the District Court for Prague 1.

Evidence:
- Statement from the Center for Securities;
- Statement from the Companies Register regarding the Defendants,
- Proof of the existence of the Plaintiff;
- Statement from the Property Register (Title No. 265 for the Staré Město Cadastral District);
- Annual reports of Defendant 1 for 2000, 2001, and 2003;
- With the reservation of further evidence.

## 2. EXISTENCE OF THE PLAINTIFF'S URGENT LEGAL INTEREST IN DETERMINING OWNERSHIP AS SOUGHT IN THESE PROCEEDINGS

The Supreme Court of the Czech Republic, in Decision No. 3 Cdo 1338/96[3] from March 27th, 1997, took the legal view that there is room for a declaratory petition under Section 80, Paragraph c) of the CPC if:
- this action can help eliminate a threat to a right or uncertainty in a legal relationship and the corresponding remedy cannot be achieved by other means, and
- it is more effective than other legal means in detailing the content and nature of the relevant legal relationship, and it can be used to achieve an adjustment forming a certain legal framework, which functions as a guarantee that there will be no future disputes between the parties.

In accordance with this judicial decision, it is acceptable to file a declaratory petition aimed at ensuring that information about the ownership of the property contained in the Property Register complies with the actual legal situation[4]. Such a petition is usually filed by an entity who considers itself to be the owner of the property in question. However, current decision-making practices at the Supreme Court indicate that a declaratory petition may also be filed by a person who is an associate/shareholder of such an entity.

In this respect, in the proceedings maintained under File No. 29, Odo 767/2002, the Supreme Court inferred that the shareholder has an exigent legal interest in filing a declaratory petition whereby the shareholder seeks the nullity of a contract under which a public limited company

---

[3] Published in the periodical Soudní judikatura (civil) No. 3/1997 on page 58, and subsequently under number Jc 21/1997.
[4] Based on a decision on a declaratory action, the relevant entry can be inserted into the Property Register in accordance with Section 7, Paragraph 1 of Act No. 265/1992 Coll. on records of proprietary and other material rights attached to real property.

transfers its enterprise, or part thereof, to another entity in accordance with Section 476 of the Commercial Code. The Supreme Court stipulated inter alia that "...*the conclusion of a contract on the sale of part of an enterprise could have a significant influence on the legal relations of the company of which he is a shareholder, and therefore indirectly on his legal relations, e.g. on the share in the liquidation balance (in relation to the content of the contract)."*

Analogically, it is necessary to deduce the authorization of a shareholder to file a petition to determine ownership of a set of real property representing the main asset item in the business activities of a company (here the KOTVA Department Store[5] with a value of at least CZK 1.39 billion).

The significance of the ownership of such a principal asset item and its impact on the legal relations of the shareholder can be best expressed by comparing the position of a shareholder in a situation where the company owns such an asset item with a situation where it does not own such an asset.

In a situation where the company owns such an asset item:

- the sale of the asset in a given accounting period can generate a substantial profit, whereby the practical exercise of the shareholder's right specified in the regulation of Section 155, Paragraph 1 of the Commercial Code is achieved, i.e. the shareholder shares in the company profit;
- if the company is liquidated, the acquired sale price of such an asset item would undoubtedly be reflected positively in the shareholder's share in the liquidation balance (again with reference to the provision of Section 155, Paragraph 1 of the Commercial Code);
- the shareholder has the opportunity to make decisions about the business activities of Defendant 1 at the General Meeting; this opportunity is determined by the ownership and use of the asset item, setting the practical content of the shareholder's authorization to share in the management of the company (again with reference to the provision of Section 155, Paragraph 1 of the Commercial Code).

If the company were not the owner of the principal asset item, the above-mentioned entitlements of the shareholder would be completely different, because in connection with ownership (and any future transfer) of this asset item the company would be unable to realize any income from which we could derive the shareholder's right to a share in the profit or a share in the liquidation balance.

For the sake of completeness, the Plaintiff considers it necessary to add that the Supreme Court expressed exactly the same legal opinion in the Verdict under File No. 29 Odo 767/2002 in a previous verdict from November 5th, 2002, under File No. 29 Odo 535/2001. From the aspect of the way this legal issue is handled, we can consider court decisions to be constant.

---

[5] In the case of KOTVA department store, we can also consider whether such a dominant and relatively independent part of an enterprise meets the description of 'part of an enterprise' (i.e. a separate organizational component), bearing in mind that it can only be disposed of in accordance with the pertinent peremptory provisions of the Commercial Code (i.e. the sale or lease of part of the enterprise). It will certainly be possible to find enough factual information for such a conclusion in the documents used by Defendant 1 in its formal justification for the transfer of KOTVA department store to another entity.

Evidence:
- Statement from the Center for Securities;
- Expert opinion evaluating the KOTVA Department Store;
- With the reservation of further evidence.

## 3. REASONS WHY DEFENDANT 1 NEVER LOST OWNERSHIP OF THE KOTVA DEPARTMENT STORE AND THEREFORE IS STILL THE OWNER OF THIS PROPERTY

3.1. Competence of persons connected with Miroslav Halek in TREND VIF and IF MERCIA

The beginning of the current problematic relations, in respect of which the verdict issued in these proceedings should help to resolve (and in particular avert other future disputes in accordance with the above-mentioned Supreme Court Decision 3 Cdo 1338/96), relates to TREND VIF[6] and to the investment fund MERCIA, a.s.[7] from 1995 to 1997.

In the scope of voucher privatization, TREND VIF was very successful, especially due to the fact that the celebrities Michael Kocáb and Martin Kratochvil were among the fund management and its portfolio contained the shares of top Czech enterprises, the value of which was well above a billion crowns, including the shares of Defendant 1.

In 1995, a group of persons connected with Královehradecká Brokerská, a.s.[8], represented in particular by Miroslav Hálek, took over managerial control of TREND VIF.

At the time of this takeover, TREND VIF had equity of approximately 1.45 billion CZK.

This takeover was followed by a number of transactions, the purpose of which was to transfer these assets, including the shares of Defendant 1, to entities from the group of Miroslav Halek unlawfully and to the detriment of TREND VIF. The method used to strip the assets of TREND VIF was legal transactions which are described in detail, for example, in the Report of the Compulsory Administrator of TREND VIF of February 22nd, 1997, in Report No. 102/9017697 of the Ministry of Finance of January 21st, 1998, concerning an investigation into trading in securities from the TREND VIF portfolio, in the indictment of the deputy regional public prosecutor JUDr. Vladislav Kusal brought against Mr. Hálek et al. on September 30th, 1998, and in the indictment of the High Prosecuting Attorney JUDr. František Fíla brought against Mr. Hálek et al. on August 8th, 2003. A very detailed description of the personnel relations of all entities contributing to these transactions can be found in the indictment from September 30th, 1998 (page 25 et seq.).

As a result of these transactions, the equity of TREND VIF fell to CZK 116 million as of December 31st, 1996, i.e. by more than 90 percent.

---

[6] TREND, a.s. – general investment fund ., registered seat: 500 02 Hradec Králové, Škroupova 441, Company Registration Number: 45 24 51 77 (hereinafter referred to as the 'TREND VIF').
[7] Investicni fond MERCIA, a.s., registered seat: Prague 2, Londýnská 53, Company Registration Number: 15 05 41 01.
[8] KRÁLOVEHRADECKÁ BROKERSKÁ, a.s. (now Brněnská obchodní, a.s., in liquidation), Company Registration Number: 60 91 41 22, former registered seat: Hradec Králové, Škroupova 9, current registered seat: Brno, Lipová 27.

The participation of Královehradecká Brokerská, a.s. in the financial management of the Mercia Investment Fund, a.s. followed exactly the same course.

## 3.2. Demonstrative list of significant unlawful activities of entities connected with Miroslav Hálek and directly or indirectly concerning shares of Defendant 1.

Individual actions aimed at the unlawful enrichment of acting persons are described in both of the above-mentioned reports and in the indictments. Given the extensiveness of this conduct, the Plaintiff refers to these documents and makes their content, in the parts directly or indirectly[9] concerning the shares of Defendant 1, part of the claims in this petition. Therefore, in this petition the Plaintiff only mentions several cases of the most serious conduct that damaged TREND VIF and that, according to the indictment, can be qualified as a crime[10].

The Plaintiff specifies the two groups of principal unlawful transactions perpetrated by entities connected with Mr Halek. In terms of their type, these transactions are characterized on page 24 of the indictment from September 30th, 1998.

The first group (see Paragraph 3.2.1 of this petition) is comprised of actions whereby the shares of Defendant 1 were unlawfully transferred from the assets of TREND VIF.

The second group (see Paragraph 3.2.2) is comprised of actions whereby finances were transferred from TREND VIF (and also from IF Mercia) and were used by entities connected with Mr. Hálek to pay the purchase price of the shares of Defendant 1 which were bought from third parties.

Since, according to the indictment, all the transactions described below can be qualified as crimes and were therefore an infringement of the law, they have civil law implications, most commonly resting on the fact that such actions are null and void from the outset[11].

Regarding the evaluation of the conduct described in the two reports as crimes, the Plaintiff refers to the indictment against the Accused Mr. Miroslav Hálek et al. from September 30th, 1998, as well as from August 8th, 2003.

## 3.2.1. Transfer of the shares of Defendant 1 from the assets of TREND VIF

### 3.2.1.1. Disadvantageous trading with the shares of Defendant 1

The compulsory administrator's report states on page 21 that: *"On May 28th, 1996, the investment fund sold 152,935 shares of KOTVA, a.s. to KHB via the SCP for a price of 400.00*

---

[9] E.g., the transfer of financial resources from TREND VIF so that other parties involved could use these funds to purchase the shares of Defendant 1 (see paragraph 3.2.2).
[10] Regarding the qualification of crimes committed, according to the indictment, by entities connected with Mr. Halek (often as members of a criminal conspiracy), the Plaintiff refers to the relevant passages of the indictment, in particular to pages 7, 8, 11, 12, 13, 14, 16, 19, and 20.
[11] For the sake of completeness, the Plaintiff also states that in most transactions with the shares of Defendant 1 Section 17, Paragrapgh 3of Act No. 248/1992 Coll. on investment companies and investment funds, in the wording in force until June 30th, 1996, stipulating that an investment fund is obliged to sell a security only at the highest price for which it is possible to sell the security while taking due professional care, was breached (or, in relation to the preceding manipulation of the share price, was circumvented).

*CZK. On the same day, the investment fund repurchased 152,935 shares of KOTVA, a.s. from KHB, but for a price of 952.00 CZK per share, and subsequently the investment fund sold these shares to IFM, a.s., again for 400.00 CZK. See the documents attached to Article 14.11 of this report. This transaction resulted in a loss of 168,840,240.00 CZK on the part of the investment fund."*

### 3.2.1.2. Backdating of contracts intended to ensure that, in connection with provisions on contractual penalties, the shares of Defendant 1 were transferred from the assets of TREND VIF without any consideration.

The indictment states the following on page 24: *"The conclusion of the backdated contracts was essentially merely an instrument to carry out other transactions, as mentioned above. Contracts were probably concluded in this way that were secured, to the detriment of the fund, with high contractual penalties. However, it has only been possible to prove the backdating of the contract from January 10th, 1996, with IFM, a.s. This procedure had resulted in damage to the fund at a time when the Ministry of Finance of the Czech Republic had suspended trading of the securities from the fund's portfolio."*

The essence of the backdated contract labelled with the date of January 10th, 1996 is described in the compulsory administrator's report on page 12 et seq., by the indictment (e.g. on page 27), and in brief on page 2 of the report of the Ministry of Finance as follows: *"On January 10th, 1996 – IFM, a.s. signed a contract for the transfer of 200,000 shares of Kotva from the fund's portfolio for the total price of 360,000,000.00 CZK. Based on this contract, IFM, a.s. acquired 60,000 shares of Kotva in the form of a contractual penalty, without any consideration."*

### 3.2.1.3. Non-observance of the preliminary measure concerning the shares of Defendant 1

The indictment states on page 31 that *"On January 24th, 1997, Mr. Miroslav Hálek, as the Chairman of the Board of Directors and Chief Executive Officer of IFM a.s., decided to transfer 361,375 shares of Sokolovská Uhelná a.s. and 30,000 shares of Kotva a.s. from IFM account number 100200879133 at the Prague Center for Securities to the account of Královehradecká Brokerská a.s. (KHB) even though an order had been placed on IMF a.s. to refrain from handling the above-mentioned shares under Resolution of the Hradec Králové Regional Court No. Nc 542/96 from January 21st, 1997, delivered to IFM, a.s. on January 23rd, 1997. This resolution was delivered to IFM, a.s. on January 23rd, 1997 and on the same day Mr. Hálek was acquainted with it through Karel Kavalír, on whom he had conferred power of attorney to study the document. Although he knew of the court's preliminary measure, he decided to transfer the above-mentioned shares to KHB a.s., which then transferred the shares to the account of the foreign company Forminster Enterprises Ltd..."*

## 3.2.2. Use of the financial resources of TREND VIF and IF MERCIA so that companies around KHB, a.s. could purchase the shares of Defendant 1 for their own account.

### 3.2.2.1. Misuse of financial resources of investment funds for the benefit of persons connected with KHB, a.s.

K 0133

The compulsory administrator's report states the following in its Article 8.9: "*It is proven by the investment fund's bank account statement for account number 103745574, held at IPB, a.s., dated September 7th, 1995, and in particular by a payment order of the same day, that the management of the investment fund transferred 112,000,000.00 CZK to the bank account of KHB, which used this sum to purchase 70,077 shares of KOTVA, a.s. for a price of 1,800.00 CZK per share from Brno Broker Group, a.s., as evidenced by the confirmation of the conclusion of a contract from September 4th, 1995. Confirmation on the conclusion of the business transaction from September 4th, 1995 is attached to this report under Article 14.15. These shares were purchased by KHB in its own name and to its own account and were ultimately transferred, according to information obtained from the compulsory administration, to one of the companies controlled by the management of the investment fund.*"

Page 3 of the Finance Ministry report adds that on September 25th, 1995 KHB purchased an additional 28,033 shares of Defendant 1 for 49,057,750.00 CZK in its own name and to its own account, and in relation to the description of the transaction with Brno Broker Group, a.s., the following conclusion is drawn: "*KHB purchased securities to its own account with the funds of another party (175,196,350.00 CZK).*"

### 3.2.2.2. Acquisition of the financial resources of investment funds via provisions on contractual penalties

On page 10, the report of the Ministry of Finance states[12] that: "*The method for contractual penalties was based on the conclusion of contracts which formed contractual obligations for the investment fund that the investment fund subsequently failed to fulfill; the contract penalized this with unusually high contractual penalties. Given the form of the contracts, a legal analysis thereof, and the unusual amount of the contractual penalties, there is a strong suspicion, backed up also by the evidence that has been collected, that the actual subjects of these contracts was not the transfer of shares, but the artificial creation of a liability of the investment fund and the transfer of the assets of the investment fund.*

*As a result of this method, the following assets disappeared from the investment fund:*

*a) The sum of 126,000,000.00 CZK was acquired by IFM, a.s. based on the contract from January 10th, 1996. This contractual penalty was paid in the form of the transfer of 60,000 shares of KOTVA with a value of 108,000,000.00 CZK.*
*b) The sum of 45,617,000.00 CZK was acquired by Moravská Zemská, a.s. based on the contract from July 10th, 1996.*
*c) The sum of 44,896,666.00 CZK was acquired by Lidová Obchodní Společnost, s.r.o. based on the contract from July 17th, 1996.*
*d) The sum of 73,718,000.00 CZK was acquired by Moravská Zemská, a.s. based on the contract from July 22nd, 1996. See the document attached to the Article 14.8 of this report.*
*e) The sum of 70,526,475.00 CZK was acquired by Sokolovský Investicni Fond, a.s. based on the contract from July 24th, 1996.*"

### 3.2.2.3. Non-payment of purchase prices for shares and the thirty-year maturity period for payment of the purchase price

---

[12] The compulsory administrator's report agrees with this on page 12 et seq.; this method of transferring assets is also described on many pages of the indictment.

These two methods are described by the compulsory administrator's report on pages 13-15 as follows. As regards the method of defaulting on the payment of the purchase prices of shares, the report states that "*This very simple method was based on the conclusion of contracts with companies which subsequently failed to pay the purchase price for the purchase of shares from the investment fund portfolio. These transferred assets were then transferred to companies controlled by the management of the investment fund.*" This is followed by a list of contracts concluded in this manner; the loss incurred by TREND VIF from these transactions exceeds 350 million CZK.

The method of a thirty-year maturity period is described by the compulsory administrator as follows: "*The method described in this paragraph is based on the conclusion of contracts under which the investment fund sold shares from the investment fund portfolio to companies controlled by the management of the investment fund for a price, the payment of which was set in monthly instalments and distributed over a period of thirty years.*" Contracts worth CZK 336,841,700 were concluded in this way.

### 3.3. Transfer of assets from TREND VIF and IF MERCIA to Forminster[13], a company connected with Mr. Hálek

The parties involved managed, especially by means of the above-mentioned methods, to realize practically all the assets transferred from TREND VIF in the form of securities and to gain enrichment from the subsequent sale of these assets. They also intended to follow this procedure with the shares of Defendant 1. After compulsory administration was introduced, they implemented a series of transfers, described by the compulsory administrator on pages 21 and 22 of his report; the only aim of these transfers was to avoid the effects of the legal measures taken by the compulsory administrator aimed at returning the shares of Defendant 1 to the assets of TREND VIF.

In this respect, the shares of Defendant 1 were eventually transferred to Forminster. As regards the personnel connection between Forminster and Mr. Hálek, and the purpose of the transfer of shares of Defendant 1 to Forminster, the Plaintiff refers to the following passages of the indictment (page 25):

"*The trading in and transfers of shares of Kotva, a.s. were the most significant interest of the Accused. In the period before August 4th, 1995, shares of Kotva were among the fund's key investments. The aim of the investment fund's then management was and still is to transfer shares of Kotva to companies controlled by Mr. Hálek et al., and to gain a majority stake in Kotva by means of further purchases, in respect of which they have used the fund's resources.*

*The shares of Kotva are currently at the center of interest of companies connected with Mr. Hálek et al. Even in the course of compulsory administration, several transfers of shares in Kotva have taken place between entities and companies; Jiří Mareš, a schoolmate of Mr. Hálek, is evidently a significant person – it was through him that shares in Kotva were transferred back to companies controlled by Mr. Hálek. At a time when the Regional Court in Hradec Králové had reached a decision (which had not yet come into force) to prohibit the handling of shares of Kotva by Královehradecká Brokerská, at the instruction of KHB shares*

---

[13] Forminster Enterprises Limited, registered seat: 20 Queen Frederica Street, El Greco House, Nicosia, Cyprus (hereinafter referred to as the "Forminster").

*of Kotva were transferred to Forminster Enterprises Ltd., based in Cyprus, in respect of whose financial accounts Mr. Hálek has specific entitlements…"*

*The activities of Mr. Hálek's group were not even stopped by a decision on compulsory administration; latest findings indicate that their attempts to take control of Kotva and the assets of Trend remain today, and that neither criminal proceedings nor custody are an obstacle. Before criminal proceedings began, some of the shares of Kotva were transferred to Forminster Enterprises Ltd, domiciled in Cyprus, and then this company was sold to Královehradecká Společnost a.s. and Bonit Kapital, a.s., Brno; KHB, renamed to Brněnská Obchodní, a.s. is currently in a situation where a bankruptcy petition has been filed against it. According to latest information, even when Mr. Hálek was in remand prison he would continue signing important documents connected with the accounts of Forminster Enterprises Ltd held at LGT Bank in Vaduz, Liechtenstein."*

From the indictment submitted by the General Prosecutor's Office in Prague against Mr. Hálek et. al from August 8th, 2003 (see pages 84, 483, and 484 of the stated indictment), it is obvious that Mr. Hálek in his testimony within the frame of the criminal proceedings led against him admits that the power of attorney to act in the name of Forminster was delegated to him. This power of attorney had a general character and authorized Mr. Hálek almost to all acts in the name of Forminster, especially to trading with securities. Mr. Hálek's explanation that there was another person behind Forminster, whom he cannot identify because of usual business practices, seems to be false and for a certain purpose.

The indictment from August 8th, 2003 adds to the above on page 483 the following: *"The directors of FEL Vassilidies and Massonidou companies granted Mr. Hálek power of attorney on October 23rd, 1996, to act on behalf of FEL. Based on this power of attorney, the defendant Mr. Hálek was able to especially trade securities on behalf of FEL. On November 27[th], 1996, a consignment contract between KHB, a.s. and FEL was signed. The subject of the contract was a provision, based on which KHB, a.s. was supposed to arrange purchase and sale of securities for the consignor, the FEL company. The consignor firm company FEL agreed for the consignee, KHB, a.s., to open in its name an account in the Center for Securities and the Stock Exchange in Prague. FEL issued powers of attorney for the benefit of KHB, a.s. for the purpose of purchasing and transferring securities. On November 29[th], 1996, the defendant Mr. Hálek, witness Stanislav Křemenák, and witness Jiří Šámal applied to open bank accounts at LTG Bank in Liechtenstein. Based on these applications, two bank accounts were opened at the LTG Bank in Vaduz, bank account No. 012341AA and bank account No. 012341AC. The owners of these accounts were FEL and the Presley company."*

The indictment from August 8th, 2003 states on page 484 the following: *"Both companies, FEL as well as Presley, were contractually and personally connected with KHB, a.s. The defendant Mr. Hálek based on the general powers of attorney acted on behalf of FEL as well as Presley. The general powers of attorney included ownership and management powers and were lacking responsibilities. Exceptionally important was the ability of the defendant Mr. Hálek to freely deal with the assets while acting on behalf of FEL and Presley. The signing right for the accounts of Presley and FEL at the LGT Bank in Vaduz had, besides the defendant Mr. Hálek, also other persons from KHB, a.s. It is obvious from the above that KHB, a.s. was trading with FEL and Presley and that these trades took place inside of the IFM holding. The trades were presented as independent international trades among different legal entities, however, in reality, the trades were taking place inside of the holding. KHB, a.s. held all possibilities to influence the business success of FEL as well as Presley. FEL had*

*no possibility whatsoever to influence trades with KHB, a.s. The contracts between FEL and KHB, a.s., respectively Presley and KHB, a.s. do not contain any provision common for international contracts. FEL as well as Presley were completely subordinated to the economic interests of KHB, a.s. In the process of trading between FEL, Presley, and IFM holding, tax evasion took place related to the prices of transferring prices; the investment funds Trend and Mercia incurred damages during this process. The sale of shares to FEL in case of the KOTVA Department Store and Sokolovská Uhelná was executed for uniquely low prices.*

A connection between Forminster, Mr. Hálek, and other entities is also evident from the fact that, in a similar manner to the trading in the shares of Defendant 1, trading in the shares of Sokolovská Uhelná, a.s. also took place (for a description, see page 7 of the Finance Ministry report, which indicates that after the shares of Sokolovská Uhelná, a.s. had been transferred from KHB to Forminster, these shares were immediately sold by Forminster with a profit of 135 million CZK). In this respect, the Plaintiff also refers to page 9 of this report, in which the personnel connection of Mr. Miroslav Hálek with Forminster is described.

In addition, the indictment served against Mr. Hálek et al. on August 8th, 2003 by the General Prosecutor's Office in Prague notes (see page 485 and the following, and page 488 and the following) that the trades executed between TREND VIF and the companies connected with Mr. Hálek et al. had no economic backing, were executed between connected persons, would not be executed between independent companies acting under conditions of common business relations, and their only purpose was the enrichment of Mr. Hálek and the persons connected with him to the detriment of TREND VIF.

From the indictment from August 8th, 2003 the following can be stated (page 484 and the following): *"The trades between KHB, a.s. and FEL and Presley companies had the character of internal holding trades. The expert opinion about these trades sees these trades as transfers of illegal profit of KHB, a.s. and at the same time as forming loss for the Trend and Mercia Investment funds. KHB, a.s. misused the Trend and Mercia investment funds through contracts of mandate and brokerage and also through personal connection. KHB, a.s. had a full asset control over Trend, a.s. The management of KHB, a.s., respectively the IFM holding executed transactions that are contradictory to the ethics and valid laws (the obligations resulting, pursuant to the Commercial Code, from the contracts of mandate and brokerage). The transfers between KHB, a.s. and the Presley and FEL companies belong in the category of so-called transfer prices (transfer prices served to transfer illegal profit and to reduce the tax obligations)."*

**All the above-mentioned circumstances are of fundamental importance in assessing the activities related to the KOTVA Department Store, because these actions were taken by members of the statutory body who had been elected by Forminster, in respect of which the indictment refers to the connection with Mr. Hálek. <u>All the annual reports of Defendant 1 since 2000 state that Forminster is an entity controlling Defendant 1</u>[14].**

**3.4. Measures taken by the Public Prosecutor – blocking the shares of Defendant 1**

---

[14] The annual reports for 2001 and 2003 state this on page 3; the annual report for 2000 states this on page 2.

Under a measure of the Public Prosecutor, however, the shares of Defendant 1 were blocked in the asset account of Forminster at the SCP in 1997. Therefore, it is evident that no income from criminal activity can be gained from these shares, at least in the foreseeable future.

Nevertheless, the shares represent a majority stake in a company owning a building and land worth approximately one and a half billion crowns. Since Forminster has not yet been prevented by any measure imposed by a court or public authority from exercising voting rights, it has the opportunity to profit from criminal activity or legalize proceeds from criminal activities.

The Plaintiff describes below that steps are currently taking place to circumvent the measure of the Public Prosecutor blocking the handling of Defendant 1's shares.

### 3.4.1. Specification of the above-mentioned unlawful conduct as the legalization of income from criminal activities in the decisions of the competent authorities

In this respect, the Plaintiff believes it would be expedient to recall the definition given in Section 1a, Paragraph 1, of Act No. 61/1996 Coll. on certain measures against the legalization of proceeds from criminal activities and on an amendment of related laws:

*"For the purposes of this Act, the legalization of proceeds from criminal activities (hereinafter referred to as 'legalization of proceeds') shall mean conduct aimed at concealing the illegal origin of proceeds from such activities with the intention of giving the impression that these proceeds are income acquired in accordance with the law. It is irrelevant whether such conduct occurs fully or partly in the Czech Republic. This conduct includes, but is not limited to*
*a) the transformation or transfer of assets in the knowledge that they come from criminal activities in order to conceal them or disguise their origin, or in order to assist a person who takes part in the perpetration of such activity to evade the legal consequences of such conduct;*
*b) the concealment or disguise of the real nature, source, location, or movement of assets and the handling thereof, or changes in the rights related to assets in the knowledge that such assets come from criminal activities;*
*c) the acquisition, possession, or use of assets or the handling thereof in the knowledge that such assets come from criminal activities;*
*d) the criminal conspiracy of persons or another form of cooperation for the purposes of the conduct stipulated under the letters (a), (b), or (c)."*

With regard to the assessment of the above-mentioned conduct as activity aimed at legalizing proceeds from criminal activities, the Plaintiff refers to page 30 of the indictment:

*"Part of the proceeds from the above-mentioned criminal activity was subsequently transferred, in the amount of 151,237,425.00 CZK on January 31st, 1997 from the account of KHB, a.s. held at IPB, account number 100200878/5100, on the instruction of Libor Páv to the account of Forminster Enterprises Limited (FEL), account number 0123414AA, held at LGT Bank in Liechtenstein, which Mr Hálek, in accordance with a general power of attorney from FEL, opened on November 26th, 1996. A sum of 5,422,251.00 USD corresponding to the aforementioned amount in CZK when translated, was deposited in the account at LGT Bank in Liechtenstein on February 5th, 1997. Of this amount, on February 14th, 1997, 2 million*

K 0138

*USD was cleared to the account of Presley Industries at the same bank, account number 0123415AA, which Mr. Hálek also opened on November 26th, 1996 pursuant to a general power of attorney from the said company. On the same day, i.e. on February 14th, 1997, an amount of 2,964,287.21 USD, corresponding to the sum of 82,768,765.00 CZK was cleared back to the account of KHB, a.s. In return, on January 30th, 1997 KHB transferred 384,971 shares of Kotva, acquired by criminal means from the portfolio of the investment funds Trend and Mercia, to the FEL account opened at the SCP at the request of Mr. Vlastník and Mr. Páv."*

In a preliminary measure issued by the Provincial Court of the Liechtenstein Principality on November 4th, 1997, blocking the funds in the bank account of Forminster, after the description of the above-mentioned transfers of finances to and from the Forminster bank account, it is stated that: *"The above-mentioned investigations give rise to the suspicion of money laundering under Section 165 of the Criminal Code. It is necessary to work on the basis that unknown perpetrators have tried, by means of transferring fraudulently obtained money to accounts in Liechtenstein, with a subsequent transfer, to conceal from Trend VIF a.s. the place where the profits from the sale of securities, and other transactions, have been deposited, and in particular to prevent the flow of money from being monitored."*

In a notification of the General Public Prosecutor's Office in Prague, addressed August 29th, 2002 in the matter of the Accused Miroslav Hálek, whereby the Provincial Court of the Liechtenstein Principality was requested to release the money for the return thereof to the accounts of TREND VIF and MERCIA, it is stated that: *"With reference to Article 1, Paragraph 1 of the European Convention on Mutual Assistance in Criminal Matters from April 20th, 1959, and with reference to the Convention on Laundering, Search, Seizure, and Confiscation of the Proceeds from Crime from December 18th, 1995... On November 27th, 2001 the Supreme General Public Prosecutor's Office of the Czech Republic, under File No. 2 NZt 749/2001, took over the criminal proceedings conducted in the Liechtenstein Principality against Miroslav Hálek, such being at the request of the Attorney General of the Principality of Liechtenstein. In Liechtenstein, criminal proceedings were conducted against Miroslav Hálek for the crimes of money laundering, criminal conspiracy, and other crimes pursuant to the relevant criminal-law provisions of the Liechtenstein Criminal Code."*

Finally, the Plaintiff refers to the fact that the Report of the Ministry of Finance of the Czech Republic also contains, on page 4, a passage titled 'Suspicion of the possible legalization of proceeds from crime'. The report also discusses this suspicion on pages 6 and 7 (with regard to shares of Sokolovská Uhelná, a.s.). At the end (page 9), the report states: *"In the case of persons incorporated into this group, there is reason to suspect that their activities are financed by means of assets from the portfolios of funds. Another group of persons cooperates with these entities to legalize the proceeds from the criminal activities of the first group, such being by means of traditional activities in money laundering, i.e. the organization of seeming intercompany transactions, the implementation of banking transactions in third states, artificial increases of profits of otherwise legally operating companies.*

*The following companies should be included in this group:*
- *Forminster Enterprises Limited*
- *Burzovní Společnost Egretta, a.s.*
- *Atlanta Safe, a.s.*
- *Severní Brokerská, a.s.*
- *DYNAMIC PARTNERS, a.s.*

**K 0139**

- *Sokolovský IF, a.s.*
- *Natural persons Anatolij Salamatin, Jiří Mareš"*

### 3.4.2. Circumventing the purpose of the measure imposed by the Public Prosecutor

From what is mentioned above, it is clear that the Public Prosecutor's measure to block the shares of Defendant 1, which are currently in the account of Forminster, had a **very obvious purpose, i.e. to prevent – at least until the end of the police investigation – proceeds from criminal activities, which according to the above-mentioned relevant decisions and according to the indictment comprise the shares of Defendant 1 (numbering 384,971 shares), from being handled in any manner and to prevent Forminster and any entities related to it from achieving any undue enrichment in connection with ownership of the shares of Defendant 1**.

Undoubtedly, the purpose of the Public Prosecutor's measure is to prevent the assets of Defendant 1, which are controlled by Forminster as the majority shareholder as a result of conduct labelled a crime by the indictment, from being transferred.

It ensues from the Public Prosecutor's measure in particular (even considering the above-mentioned ban on legalizing proceeds from crime) that no actions may be taken which are aimed at diminishing the assets of Defendant 1 and that the assets must not be transformed in a manner that would give rise (even only theoretically) to a risk that Defendant 1 will not have direct control over such transformed assets. Because of the above-mentioned actions of the competent authorities of several states, based on the suspicion of money laundering, it is quite evident that none of the actions of Forminster in the exercise of shareholder rights and none of the actions of members of statutory bodies de facto appointed by Forminster as the controlling entity are allowed to give rise to any doubt.

However, in the case at hand, not only has the main asset value, i.e. KOTVA Department Store, been transferred from the assets of Defendant 1, but other activities have also been carried out leading to Defendant 1's complete loss of control over this asset.

So far, the following activities have been carried out:

1. Defendant 1 invested KOTVA Department Store into its subsidiary, which at the time in question was Defendant 2. At the time of the investment of Kotva Department Store, Defendant 1 was the sole shareholder of Defendant 2;

2. Defendant 1 decided, as the sole shareholder of Defendant 2, to transform Defendant 2 into a limited partnership, which had the following consequences:

a) There was a fundamental reduction in the share of Defendant 1 in the profits of Defendant 2 and its liquidation balance (at present, Defendant 1 has a share in the profits of just under 50 percent, and a share in the liquidation balance of 40 percent, even though its contribution represents 98.6 percent of all contributions into the company of Defendant 2),

b) Because Defendant 1 became the limited partner of Defendant 2, it does not contribute to the business management of the defendant, i.e. by making the transformation, Defendant 1 de facto surrendered the opportunity to influence the financial management of Defendant 2.

**K 0140**

3. Defendant 2, acting in the capacity of the General Meeting of Defendant 3 (as the sole shareholder of Defendant 3), decided to increase the registered capital by 1,390,000,000.00 CZK, i.e. from the current 2,000,000.00 CZK to a new amount of registered capital standing at 1,392,000,000.00 CZK. The increase in registered capital was made by means of a new share subscription; all shares were offered to the sole shareholder – Defendant 2 – for subscription. The new shares were paid by means of a non-monetary contribution – the KOTVA Department Store. Therefore, Defendant 3 became the owner of the KOTVA Department Store.

As mentioned above, the Public Prosecutor's measure to block the shares of Defendant 1 naturally relates to the assets of Defendant 1, which is represented by the blocked shares in the broader sense of the word.

By means of the steps that have been already taken, Forminster and the statutory bodies of Defendant 1, who were appointed by Forminster as the main shareholder, have managed to separate the ownership of the shares of Defendant 1 from the main asset value which was held by Defendant 1 at the time the Public Prosecutor's measure was imposed, i.e. from the KOTVA Department Store, and transfer this asset value to an entity in whose registered capital Defendant 1 does not share at all.

Therefore, the practical result of these steps is that there is now practically no sense in the Public Prosecutor's measure.

In this respect, it is also significant that Defendant 3 issued bearer shares. This means that if these shares are transferred, no one (including the police) will discover that such a transfer has occurred. It will not be possible to examine the terms and conditions of the transfer (in particular the person of the buyer, the purchase price, whether security was provided, whether the purchase price has been paid). Therefore, there is a risk of repeating the scenario executed in the case of TREND VIF and the Mercia investment fund, wherein the shares of Defendant 3 will be transferred outside the group of the KOTVA group of companies without payment of the purchase price and that the buyer will transfer the shares to other entities, and as such the income from the sale of the shares, respectively the KOTVA Department Store, will be realized completely outside the KOTVA group of companies. Considering the above-mentioned description of transactions executed by the group connected with Mr. Hálek related to the assets of TREND VIF, and because the current board of directors of Defendant 1 was elected by Forminster, to which the income from trades with the assets of TREND VIF was transferred, it is quite understandable that the Plaintiff is concerned in this respect.

### 3.4.3. Consequences of circumventing the Public Prosecutor's measure

Naturally, as a shareholder of Defendant 1, the Plaintiff is not interested in a risk existing in this manner and to the Plaintiff's detriment whereby the process that various authorities (see the quotations above) have labelled as the legalization of proceeds from crime will be completed, and therefore the Plaintiff files this petition.

There can be no doubt that the circumstances mentioned above, although primarily a criminal law matter, are, in their consequences, also a civil-law issue. Undoubtedly, it is a general truth that all legal activities aimed at legalizing proceeds from crime are unlawful as set forth in Section 39 of the Civil Code (a conflict with the law). Since all the above-mentioned legal

transactions about the handling of the KOTVA Department Store are therefore null and void, Defendant 1 remains the owner of the KOTVA Department Store[15].

---

[15] The Plaintiff does not consider necessary to discuss at this point the invalidity of legal transactions concerning the shares of Defendant 1, because its legal status is affected by the transactions related to the KOTVA Department Store. In this respect, the Plaintiff also states that he is aware that, between the persons who represented TREND VIF and Forminster, an agreement was concluded in 1999 whereby, in the future, TREND VIF was to refrain from casting doubt on Forminster's ownership of the shares of Defendant 1. Nevertheless, since the legal actions, which are not only null and void because they are an infringement of the law, but which were also executed to perpetrate crime, cannot be subsequently legitimized by the conclusion of a settlement agreement, the Plaintiff does not believe it is necessary to discuss this agreement in greater detail here.

To conclude, the Plaintiff refers to the fact that in the above-mentioned context preventative nature of this action comes to the fore, because the decision on this action is capable of preventing the emergence of judicial disputes, probably also with an international element (see the above-mentioned Decision of the Supreme Court of the Czech Republic, File No. 3 Cdo 1338/96, on the existence of an exigent legal interest in determining the existence of a legal relationship).

Evidence:

- Report of the compulsory administrator of TREND-VIF from February 22nd, 1997 including the documents specified in its appendix;
- Report of the Ministry of Finance from January 21st, 1998, Ref. No. 102/90 17697;
- Indictment against the Accused Miroslav Hálek et al., submitted by the Regional Public Prosecutor's Office in Hradec Králové on September 30th, 1998, File No. KZv 323/97;
- Indictment against the Accused Miroslav Hálek et al., submitted by the General Prosecutor's Office in Prague on September 30th, 2003, File No. VI VZv 3/2000-2419;
- Expert opinion from August 8th, 2003, which the Plaintiff refers to (may be requested by the court);
- Complete statement from the Companies Register regarding TREND VIF;
- Report of the Center for Securities on the transfer of shares of Defendant 1 from TREND VIF to Forminster (may be requested by the court);
- Contributor's statement from October 10th, 2000, on the transfer of the KOTVA Department Store from Defendant 1 to Defendant 2;
- Complete statement from the Companies Register regarding Defendant 2;
- Notarial Deed of JUDr. Václav Halbich from May 20th, 2003, No. NZ 235/203, N 317/2003 (contains a decision on a change in the legal form of Defendant 2, including the new wording of the Articles of Association, shows the reduction in the share in profits, the settlement share, and the share in the liquidation balance);
- Statement from the Property Register (Title No. 265 for the Staré Město cadastral district);
- Annual reports of Defendant 1 for 2000, 2001, and 2003;
- Decision of the Liechtenstein Provincial Court in Vaduz, Liechtenstein Principality, to freeze the assets in the accounts of Forminster and Presley Industries;

K 0142

- Application of the General Prosecutor's Office on August 29th, 2002, File No. VI VZv 3/2002 – 1597, for legal assistance – request of the Provincial Court in Vaduz, Liechtenstein Principality, from August 29th, 2002;
- Public Prosecutor's Measure to block transfers of shares issued by Defendant 1;
- Expert opinion evaluating the KOTVA Department Store;
- With the reservation of further evidence.

## 4. CONCLUSION, PLAINTIFF'S DEMAND

The Plaintiff has described the reasons why the transfers of the KOTVA Department Store from Defendant 1 to Defendant 2 and from Defendant 2 to Defendant 3 are null and void and why Defendant 1 remains the owner of the property. The Plaintiff has also shown its exigent legal interest in having the ownership of the KOTVA Department Store determined by a court.

For the above-mentioned reasons, the Plaintiff proposes that, after discussing the matter, the court issues the following:

### VERDICT

1. It has been determined that Defendant 1 is the sole owner of the following real property:

- Building with Land Registry reference number 656 (civic amenities), belonging to the Staré Město municipality, located on building plot number 680;
- Building with no Land Registry reference number or street number (civic amenities), belonging to the Staré Město municipality, located on building plot number 1018/2;
- Land Parcel No. 680 (built-up area and courtyard) with an area of 4,385 m2;
- Land Parcel No. 683/1 (other land) with an area of 851 m$^2$;
- Land Parcel No. 683/2 (other land) with an area of 2,963 m$^2$;
- Land Parcel No. 683/3 (other land) with an area of 2 m$^2$;
- Land Parcel No. 690/2 (other land) with an area of 25 m$^2$;
- Land Parcel No. 690/3 (other land) with an area of 49 m$^2$;
- Land Parcel No. 690/4 (other land) with an area of 9 m$^2$;
- Land Parcel No. 1018/2 (built-up area and courtyard) with an area of 1 m$^2$;

all located in the Staré Město cadastral district and municipality of Prague.

II. The Defendants are obliged to reimburse the costs of proceedings jointly and severally to the Plaintiff within three days from the date that this verdict comes into force.

*(signature illegible)*
K T, Inc.
Mgr. Ondřej Peterka
Attorney-at-Law, pursuant to power of attorney

Appendices:
- Statements from the Companies Register regarding the Defendants;

K 0143

- Proof of the existence of the Plaintiff;
- Statement from the Property Register (Title No. 265 for the Staré Město cadastral district);
- Annual reports of Defendant 1 for 2000, 2001, and 2003;
- Expert Opinion evaluating the KOTVA Department Store;
- Report of the compulsory administrator of TREND-VIF from February 22nd, 1997 including the documents specified in its appendix;
- Report of the Ministry of Finance from January 21st, 1998, Ref. No. 102/90 17697;
- Indictment against the Accused Miroslav Hálek et al., submitted by the Regional Public Prosecutor's Office in Hradec Králové on September 30th, 1998, File No. KZv 323/97;
- Indictment against the Accused Miroslav Hálek et al., submitted by the General Prosecutor's Office in Prague on September 30th, 2003, File No. VI VZv 3/2000-2419;
- Complete statement from the Companies Register regarding TREND VIF;
- Contributor's Statement from October 10th, 2000, on the transfer of the KOTVA Department Store from Defendant 1 to Defendant 2;
- Notarial Deed of Václav Halbich from May 20th, 2003, No. NZ 235/203, N 317/2003;
- Decision of the Liechtenstein Provincial Court in Vaduz, Liechtenstein Principality, to freeze the assets in the accounts of Forminster and Presley Industries;
- Public Prosecutor's Measure to block transfers of shares issued by Defendant 1;
- Application of the General Prosecutor's Office from August 29th, 2002, File No. VI VZv 3/2002 – 1597, for legal assistance – request of the Provincial Court in Vaduz, Liechtenstein Principality, from August 29th, 2002.

K 0144