UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s.,<br><br>        Plaintiff,<br><br>   v.<br><br>ANDREW WEISS and WEISS ASSET MANAGEMENT, LLC,<br><br>        Defendants.<br><br>ANDREW WEISS, WEISS ASSET MANAGEMENT LLC, K T, INC. and CVF INVESTMENTS, LTD.,<br><br>        Counterclaim-plaintiffs,<br><br>   v.<br><br>KOTVA a.s., MARTIN BENDA, RICHARD HARAZIM, FORMINSTER ENTERPRISES, LTD., SPV CO and JOHN DOES 1–5,<br><br>        Counterclaim-defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   C.A. No. 05-10679-RCL<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **PROOF OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 4(*l*), Andrew Weiss, Weiss Asset Management LLC, K T, Inc., and CVF Investments, Ltd., by and through their attorneys, hereby submit the attached proof of service.

Respectfully Submitted,

ANDREW WEISS, WEISS ASSET
MANAGEMENT LLC, K T INC. and CVF
INVESTMENTS LTD.

By their attorneys,


/s/ Benjamin A. Goldberger
Edward P. Leibensperger (BBO# 292620)
Benjamin A. Goldberger (BBO# 654357)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts  02109-1775
(617) 535-4000

Dated: January 25, 2005


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 25, 2006.

/s/ Benjamin A. Goldberger
Benjamin A. Goldberger


BST99 1488720-1.072198.0012

**CERTIFICATE**

*ATTESTATION*

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,

*L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,*

1) that the document has been served*

*1. que la demande a été exécutée*

— the (date) _20 ŘÍJNA 2005_

*— le (date)*

— at (place, street, number)

*— à (localité, rue numéro)* _OKRESNÍ SOUD PRAHA – VÝCHOD , PRAHA 1, NA POŘÍČÍ 20/1044_

— in one of the following methods authorised by article 5—

*— dans une des formes suivantes prévues à l'article 5:*

☐ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention*.

*a) selon les formes légales (article 5, alinéa premier, lettre a)*

☐ (b) in accordance with the following particular method*:

*b) selon la forme particulière suivante : _____*

☒ (c) by delivery to the addressee, who accepted it voluntarily.*

*c) par remise simple*

The documents referred to in the request have been delivered to:

*Les documents mentionnés dans la demande ont été remis à:*

— (identity and description of person)

*— (identité et qualité de la personne)* _Ing. RICHARD HARAZIM , nar. 10.3.1965 , bytem_
_U PŘEZLETICE , V BAŽANTNICE 305_

— relationship to the addressee (family, business or other):

*— liens de parenté, de subordination ou autres, avec le destinataire de l'acte:* _____

2) that the document has not been served, by reason of the following facts*:

*2. que la demande n'a pas été exécutée, en raison des faits suivants:*

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement.*

*Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint.*

Annexes

*Annexes*

Documents returned:

*Pièces renvoyées:*

Done at _20. 10. 2005_ , the _PRAHA_

*Fait à _____ , le*

Signature and/or stamp.

*Signature et/ou cachet.*

In appropriate cases, documents establishing the service:

*Le cas échéant, les documents justificatifs de l'exécution:*

*Delete if inappropriate.

*Rayer les mentions inutiles*

2

DOPORUČENĚ
RECOMMANDÉ

ČESKÁ
POŠTA

110 06 Praha 06
RB 30831178 9 CZ

RB 30831178 9 CZ

DODEJKA
AVIS DE RÉCEPTION

110 06 PRAHA 06

RL30831178

06.01.06 251 857 0.472kg

ČESKÁ REPUBLIKA

0.00

RECEIVED JAN 18 2006

Okresní soud Praha - východ
P.O. Box 1105
112 97 Praha 1

0 Cd 212/2005- listiny

L.Celeste Inglalls
Crowe Foreign Services
1020 SW Taylor Street,Suite
240
97205 Portlans, Oregon
USA







## REQUEST
## FOR SERVICE ABROAD OF JUDICIAL OR EXTRA JUDICIAL DOCUMENTS

*DEMANDE*
*AUX FINS DE SIGNIFICATION OU DE NOTIFICATION A L'ETRANGER*
*D'UN ACTE JUDICIAIRE OU EXTRAJUDICIAIRE*

**Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965**

*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matierè civile ou commerciale. signée à la Hage. le 15 Novembre 1965*

| Identity and address of the applicant *Indentité et adresse du requérant* | Address of receiving authority *Adrese de l'autorité destinataire* |
|---|---|
| **L. Celeste Ingalls**\*\* **Crowe Foreign Services** **1020 SW Taylor Street, Suite 240** **Portland, Oregon 97205** **USA** **Fax Number:  1-503-222-3950** | **Ministry of Justice of the Czech Republic** **128 10 Praha 2, Vysehradská 16** **CZECH REPUBLIC** **Tel.: +42 (2) 2199 7157   Fax: +42 (2) 2491 1365** |

The undersigned applicant has the honour to transmit – in duplicate – the documents listed below and, in conformity with article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.,
(identity and address)

*Le requérant soussigné a l'honneur de faire parvenir - en double exemplaire - a l'autorité destinataire les documents ci-dessous énumérés en la priant conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au destinataire. savior.*
*(identité et adresse)*

**Richard Harazim**
**U Baňantnice 305**
**Prezletice ZIP 250 73, Czech Republic**

(a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention.\*
   *a)   selon les formes légales (article 5, alinéa premier, lettre a)*

(b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5)\*:
   *b)   selon la forme particulière suivante (article 5, alinéa premier, lettre b)*

   **To be delivered personally to Defendant Richard Harazim, or if this method is not possible, serve in accordance with method (a) above.**

☐   (c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of article 5)\*.
   *c) le cas échéant, par remise simple (article 5, alinéa 2).*

The authority is requested to return or to have returned to the applicant a copy of the documents – and of the annexes\* – with a certificate as provided on the reverse side (attached).

*Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte - et de ses annexes - avec l'attestation figurant au verso.*

List of documents
*Énumération des pièces*

Executed "Request", in duplicate
Executed "Summary", in duplicate
Unexecuted "Certificate", in duplicate
\*\*\* Summons, in duplicate
\*\*\* First Amended Answer and Counterclaim
   With Exhibits, in duplicate

Done at Portland, Oregon, USA, the 10 day of Aug , 2005
*Fait à Portland, Oregon. USA. le*
**Signature and/or stamp.**
*Signature et/ou cachet*

OFFICIAL SEAL
**L. CELESTE INGALLS**
NOTARY PUBLIC-OREGON
COMMISSION NO. 353683
MY COMMISSION EXPIRES FEB. 5, 2006

L. Celeste Ingalls

\*   **Delete if inappropriate**
   *Rayer les mentions inutiles*

\*\*   **Authorized applicant pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, Public Law 97-462**

\*\*\*   **With Czech translation attached**

## SUMMARY OF THE DOCUMENT TO BE SERVED
*ELEMENTS ESSENTIELS DE L'ACTE*

**Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965**

*Convention relative à la signification et à la notification à l'étranger des actes judiciaries et extrajudiciares en matière civile ou commerciale, signée à La Hage, le 15 Novembre 1965.*

(article 5, fourth paragraph)
*(article 5. alinéa 4)*

| | |
|---|---|
| **Name and address of the requesting authority:** | **Celeste Ingalls** |
| *Nom et adresse de l'autorité requérante:* | **Crowe Foreign Services** |
| | **1020 SW Taylor Street, Suite 240** |
| | **Portland, Oregon 97205** |

**Particulars of the parties\*:**
*Indentité des parties*:

Kotva a.s. .................................................................................................................. **PLAINTIFF**
Andrew Weiss, et al.................................................................................................. **DEFENDANTS**
Andrew Weiss, et al........................................................... **COUNTERCLAIM-PLAINTIFFS**
Kotva a.s., et al. .................................................................**COUNTERCLAIM-DEFENDANTS**

## JUDICIAL DOCUMENT\*\*
*ACTE JUDICIAIRE*

**Nature and purpose of the document:**
*Nature et objet de l'acte:*     **To give notice to the Defendant, Richard Harazim, of the institution against him of a claim for civil damages and to summon him to answer the claim.**

**Nature and purpose of the proceedings, and, where appropriate, the amount in dispute:**
*Nature et objet de l'instance. le cas échéant. le montant du litige:*

**First amended civil counterclaim and answer to plaintiff's original claim. Counterclaim-plaintiff answers the plaintiff's claim and makes counter-claim allegations including, but not limited to, abuse of process, Conspiracy, Unjust Enrichment, Breach of Fiduciary Duty, Unfair Competition and Unfair and Deceptive Trade Practices and related actions. Counter-claim plaintiff further alleges that counter-claim defendants' aforementioned actions have caused counter-claim plaintiff to suffer damages and losses. Counter-claim plaintiff seeks judgment in an amount to be determined including, but not limited to, declarations of ownership, costs of this suit, attorneys' fees and costs, order to disgorge proceeds, and such other and further relief as the court deems just and proper.**

| | |
|---|---|
| **`Date and place for entering appearance\*\*:** | **N/A** |
| *Date et lieu de la comparution:* | |
| **Court which has given judgment\*\*:** | **N/A** |
| *Juridiction qui a rendu la décision:* | |
| **Date of judgment\*\*:** | **N/A** |
| *Date de la décision:* | |

**Time limits stated in the document\*\*:**
*Indication des délias figurant dans l'acte:*     **Defendant is required to serve upon Counter-Claimant's Attorneys an ANSWER to the Counter-Claim within twenty (20) days after receipt of the Summons and other documents herein. A copy of the ANSWER must be filed with the court within a reasonable time thereafter.**

## EXTRAJUDICIAL DOCUMENT\*
*ACTE EXTRAJUDICIAIRE*

| | |
|---|---|
| **Nature and purpose of the document:** | **N/A** |
| *Nature et objet de l'acte:* | |
| **Time limits stated in the document\*\*:** | **N/A** |
| *Indication des délias figurant dans l'acte:* | |

\* If appropriate, identity and address of the person interested in the transmission of the document.
*S'il y a lieu. identité et adresse de la personne intéressée à la transmission de l'acte*

\*\* Delete if inappropriate.
*Rayer les mentions inutiles*

AO 440 (Rev. 10/93) Předvolání v občanskoprávním řízení

# Okresní Soud Spojených Států

Soudní okres Massachusetts

KOTVA a.s.

Předvolání v občanskoprávním řízení

proti

ANDREW WEISS a

WEISS ASSET MANAGEMENT, LLC                     Č. j. : 05-10679 RCL

Pro:

Richard Harazim

U Bažantnice 305

250 73 Prezletice

Česká republika

Tímto jste předvolán a jste povinen poskytnout součinnost právním zástupcům proti-žalobce:

Edward P. Leibensperger

Benjamin A. Goldberger

McDermott Will & Emery LLP

28 State St.

Boston, MA 02109

USA

1 + 617-535-4000

a řádně odpovědět na protižalobu, která je Vám tímto doručena, a to během 20 dní po jejím doručení, den doručení nepočítaje. Pokud tak neučiníte, bude vůči Vám vynesen kontumační rozsudek, který přizná protistraně nároky vznesené v protižalobě. Zároveň jste povinen uložit Vaši odpověď u Tajemníka tohoto Soudu, a to v přiměřené lhůtě po jejím doručení.

SARAH THORNTON

(razítko soudu)                                    17.6.2005

_____              _____
Tajemník                                           Datum

(podpis)

_____
Zástupce tajemníka

| Vyjádření k předvolání | | |
|---|---|---|
| Předvolání a žalobu jsem já převzal (1) | DATUM | 20 10 2005 |
| JMÉNO PŘEBÍRAJÍCÍ OSOBY *(HŮLKOVĚ NEBO STROJEM)* | TITUL | ING. RICHARD HARAZIM |
| *Zaškrtněte jednu z níže uvedených možností a označte tak odpovídající způsob převzetí:* | | |
| ☒ Osobně převzala žalovaná třetí strana. Místo převzetí: PRAHA - OKRESNÍ SOUD PRAHA - VÝCHOD | | |
| ☐ Kopie předvolání byla zanechána v místě, kde žalovaný přebývá, nebo na jiném obvyklém místě u člověka odpovídajícího věku a způsobilosti. Jméno osoby, u které bylo předvolání s žalobou zanecháno:............................ | | |
| ☐ Vráceno nezpracované............................................................ | | |
| ☐ Jiné (specifikujte)................................................................. | | |
| **VYČÍSLENÍ NÁKLADŮ SOUVISEJÍCÍCH S PŘEDVOLÁNÍM** | | |
| Cestovné | Služby | Celkem |

## PROHLÁŠENÍ PŘEBÍRAJÍCÍ OSOBY

Místopřísežně prohlašuji, že veškeré informace obsažené v tomto vyjádření k předvolání, stejně jako vyčíslení nákladů souvisejících s předvoláním, jsou správné a jsem si vědom toho, že jakýkoliv rozpor bude považován za křivou výpověď pod přísahou.

Sepsáno dne..... *20. 10. 2005* .................

..................................................

Podpis přebírající osoby

*PŘEZLETICE, U BAŽANTNICE 305*

Adresa přebírající osoby

(1) Kdo může přebírat předvolání – viz Pravidlo 4 Federálních pravidel pro občanskoprávní řízení

# OKRESNÍ SOUD SPOJENÝCH STÁTŮ
# PRO SOUDNÍ OKRES MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s. | ) |
| | ) |
| Žalobce, | ) |
| | ) |
| Proti | ) |
| | ) |
| ANDREW WEISS a WEISS ASSET MANAGEMENT, LLC | ) |
| | ) |
| Obžalovaní | ) |
| | ) C.A. No. 05-10679-RCL |
| | ) |
| ANDREW WEISS, WEISS ASSET | ) |
| MANAGEMENT LLC, K T, INC. a CVF | ) |
| INVESTMENTS, LTD., | ) |
| | ) |
| Žalobci v protižalobě, | ) |
| | ) |
| Proti | ) |
| | ) |
| KOTVA a.s., MARTIN BENDA, RICHARD | ) |
| HARAZIM, FORMINSTER ENTERPRISES, LTD., | ) |
| SPV CO a JOHN DOES 1-5 | ) |
| | ) |
| Obžalovaní v protižalobě | ) |
| | ) |
| | ) |

# SHRNUTÍ PRVNÍ DOPLNĚNÉ ŽALOBNÍ ODPOVĚDI A
# PROTIŽALOBY

Obžalovaný a žalobce v protižalobě Andrew Weiss (dále jen „ Weiss") je profesorem ekonomie na Bostonské univerzitě. Působil jako poradce Světové banky pro oblast kapitálových trhů v České republice a je uznávaným odborníkem na rozvojové trhy a jejich potřeby finanční regulace. Také řídí společnost která spravuje investice v České republice. Mezi tyto investice spadá významný menšinový podíl v žalobci, akciové společnosti Kotva (dále jen „Kotva") V květnu 2004, zástupci společnosti Forminster Enterprises Ltd. („Forminster") – většinového akcionáře Kotvy, vyhrožovali, že si jediný hodnotný majetek Kotvy nechají pro sebe a menšinovým akcionářům nedají nic. Weiss na to reagoval tím, že zplnomocnil v České republice právníky k tomu, aby chránili zájmy menšinových akcionářů.

První reakce Forminsteru bylo, že kontaktovali Weisse a nabídli mu, že od něj odkoupí jeho investorský podíl v Kotvě. Jenomže Forminster nebyl ochoten zaplatit částku , která by odpovídala poměrnému podílu hodnoty Kotvy, na něž měli Weissovy investoři právo. Jakmile Weiss tuto neadekvátní nabídku Forminsteru odmítl, Forminster zvolil jiný, nepoctivý, postup. Forminster a jeho spojenci využili svého vlivu na orgány činné v prosazování zákona v České republice a zinscenovali trestní stíhání Weisse pro vymyšlené vydírání. Ačkoliv Weiss oficiální oznámení o zahájení stíhání neobdržel,tisk informoval o tom, že stíhání bylo zahájeno. Snažíce se o vyvinutí dalšího nátlaku, Forminster a jeho spojenci následně využili svého řídícího vlivu v Kotvě a zahájili toto právní řízení proti Weissovi jménem Kotvy.

Kotva je nyní korporátní schránkou a druhým já Forminsteru a jeho spojenců: obžalovaných v protižalobě Forminsteru, Martina Bendy (dále jen „Benda"), Richarda Harazima (dále jen „Harazim"), SPV CO and Johna Doese 1-5 (dohromady „skupina Forminster). Skupina Forminster se spikla proti Weissovi a akcionářům Kotvy a rozhodla se dostat majetek Kotvy do svého vlivu a využít ve svůj prospěch. Forminster je soukromá společnost založena na Kypru a konspirátoři uchovávají identitu jejích vlastníků v hluboké tajnosti. Harazim a Benda působí jako nastrčené figury a kryjí identitu skutečných vlastníků.

Podle zpráv v českém tisku a podle zpráv českých vyšetřovatelů a také jak je podrobně uvedeno níže, skupina Forminster ovládá výnosy ukořistěné v jednom z nejnechvalněji proslulých podvodů v postkomunistické historii České republiky, ve zločinu známém jako „Skandál Trend" nebo „Vytunelování Trendu". Český tisk si osvojil výraz „tunelování" jako výraz popisující postup, v němž management společnosti zpronevěří majetek společnosti a

prostřednictvím řady prostředníků jej přemísťuje tak, až jsou nakonec určení příjemci tohoto majetku schopni jej anulovat a se získanou kořistí uniknout. V tomto případě představuje většinový podíl v Kotvě stěžejní část nelegálně získaného výnosu skupiny Forminsteru.

Na začátku 90. let byla Kotva obchodním domem (dále jen „obchodní dům") umístěna na dobrém hodnotném místě v centru Prahy v České republice. Český investiční fond známý jako Fond Trend (dále jen „Trend") byl největším akcionářem v akciové společnosti Kotva. Podle zpráv tisku informujících o výsledcích vládního vyšetřování, majetek Trendu, včetně jeho podílu v Kotvě, byl vytunelován sérií zpronevěr, a akcie Kotvy tak skončili pod vlivem skupiny Forminster. V důsledku vytunelování Trendu tvrdí skupina Forminster, že vlastní minimálně 55% akcií Kotvy.

V důsledku zapojení Forminsteru do tunelování Trendu nechal Nejvyšší soud v Lichnštejnsku zmrazit účty Forminsteru v bance ve Vaduzu v Lichnštejnsku. Podobně český vyšetřovatel zakázal nakládání akciemi Forminsteru v Kotvě z důvodu podezření, že představují výnos z trestné činnosti. Proto, když nemohli zpeněžit své akcie v Kotvě, skupina Forminster se rozhodla využít svého vlivu v Kotvě a prodala jedinou věc z majetku Kotvy mající skutečnou hodnotu – její budovu – a nechali si veškerý výnos pro sebe, poškozujíce tak menšinové akcionáře Kotvy a připravujíce oběti Trendu o podíl na výnosu, na který by měli nárok.

# ŽALOBNÍ ODPOVĚĎ

Obžalovaní Weiss a Weiss Asset Management LLC („WAM") (dohromady „obžalovaní") reagují na žalobu Žalobce Kotva a.s.:

# ÚVOD

Úvod neobsahuje žádná tvrzení ve smyslu ustanovení 8 a 10 Federálního občanskoprávního soudního řádu a nevyžaduje tak žádnou odpověď. Do míry do níž je odpověď požadována Obžalovaní odmítají faktická obvinění v Úvodu.

# SOUDNÍ PRAVOMOC

1. Odstavec 1 stanoví závěr soudu, na něž není vyžadována žádná odpověď.
2. Odstavec 2 stanoví závěr soudu, na něž není vyžadována žádná odpověď.

3. Odstavec 3 stanoví závěr soudu, na něž není vyžadována žádná odpověď.

# STRANY

4. Připuštěny.

5. Připuštěny.

6. Připuštěny.

SKUTEČNOSTI

7. Obžalovaní si nejsou vědomi skutečností, které by nasvědčovaly tomu, že tvrzení v odstavci 7 jsou pravdivá.

8. Připouštějí se.

9. Obžalovaní připouštějí, že Weiss Asset Management, LLC je investiční firma s ústředím v Bostonu v Massachusetts. Obžalovaní dále připouštějí, že Weiss vlastní většinový podíl ve Weiss Asset Management and Weiss Asset Management ovládá. Obžalovaní popírají zbytek obsahu odstavce 9.

10. Obžalovaní připouštějí první větu odstavce 10. Obžalovaní popírají druhou větu odstavce 10.

11. Popírá se.

12. Obžalovaní připouštějí první větu odstavce 12. Obžalovaní popírají zbytek odstavce 12.

13. Obžalovaní připouštějí, že skupina Forminster dosadila do Kotvy nový management a nazvala tento akt manažerskou změnou. Na základě informací a svého přesvědčení Obžalovaní popírají, že by účelem manažerské změny bylo zefektivnění činnosti Kotvy. Další odpovědí Obžalovaní vyjadřují své přesvědčení, že účelem manažerské změny bylo připravit Kotvu o její nemovitý majetek. Obžalovaní nemají takové informace ani povědomí, aby mohli věřit, že zbytek odstavce 13 je pravda.

14. Obžalovaní nemají takové informace ani povědomí, aby mohli věřit, že obsah odstavce 14 je pravda.

15. Obžalovaní nemají takové informace ani povědomí, aby mohli věřit, že obsah odstavce 15 je pravda.

16. Obžalovaní nemají takové informace ani povědomí, aby mohli věřit, že obsah odstavce 16 je pravda.

17. Obžalovaní nemají takové informace ani povědomí, aby mohli věřit, že obsah odstavce 17 je pravda.

18. Na základě informací a svého přesvědčení Obžalovaní popírají, že účelem tohoto uvedeného převodu bylo „zefektivnit prodej" obchodního domu. Další odpovědí Obžalovaní vyjadřují své přesvědčení, že účelem tohoto převodu bylo vyvést výnos z prodeje obchodního domu. Obžalovaní nemají informace ani povědomí nezbytné k tomu, aby mohli věřit, že zbytek odstavce 18 je pravda.

19. Obžalovaní připouštějí, že během května 2004 tisk informoval o hrozícím prodeji obchodního domu irským investorům. Obžalovaní popírají zbytek odstavce 19.

20. Obžalovaní připouštějí, že 12. Května 2004 se Weiss a Hoffmann sešli s Harazimem a Bendou. Obžalovaní připouštějí, že Harazim a Benda byli v té době generálním ředitelem a předsedou představenstva Kotvy, ale popírají, že by Harazim a Benda během jednání 12. 5. 2005 vystupovali jako zástupci Kotvy. Obžalovaní popírají zbytek odstavce 20.

21. Popírá se.

22. Obžalovaní připouštějí, že Gilroy inicioval právní spor tvrdíce, že SPV KN není právoplatným vlastníkem obchodního domu a že jím je Kotva. Obžalovaný Andrew Weiss připouští, že komunikoval s Hoffmanem a Ondřejem Peterkou z Bostonu a že Hoffman posílal účty do Brookdale v Bostonu. Obžalovaný Weiss Asset Management popírají, že by komunikovali s Hoffmanem a Peterkou z Bostonu. Obžalovaní popírají zbytek odstavce 22.

23. Obžalovaní připouštějí, že Gilroy otevřel účet ve Středisku cenných papírů 23. 6. 2004. Obžalovaní dále připouštějí, že Gilroy koupil jednu akcii Kotvy za 430 Kč dne 24.6.2004 a 134 akcií Kotvy za 430 Kč za akcii dne 29.6.2004. Obžalovaní popírají zbytek odstavce 23.

24. Obžalovaní připouštějí, že 30.6. 2004 Gilroy zahájil občanskoprávní řízení proti Kotvě, KN a SPV KN v Praze, napadající převody obchodního domu Kotva do KN a následně z KN do SPV KN a požadující určení, že Kotva vlastní obchodní dům. Obžalovaní nemají informace, které by dostačovaly k tomu, aby uvěřili, že KN a SPV KN byly v době obou převodů zcela vlastněny Kotvou. Obžalovaní popírají zbytek odstavce 24.

25. Obžalovaní připouštějí první větu odstavce 25. Obžalovaní popírají zbytek odstavce 25.

26. Obžalovaní nemají povědomí ani takové informace, aby mohli věřit, že obsah odstavce 26 je pravda.

27. Obžalovaní připouštějí, že 17. Srpna 2004 Weiss odeslal Martinu Bendovi, jenž vystupoval jako zástupce Forminsteru, dopis, který je připojen k žalobě jako příloha A. Dopis hovoří sám za sebe. Obžalovaní popírají zbytek odstavce 27.

28. Obžalovaní připouštějí, že 17.8. 2004 byl odeslán e-mail, kde jako odesílatel byl uveden Richard Harazim, a tento e-mail hovoří sám za sebe. Obžalovaní popírají zbytek odstavce 28.

29. Obžalovaní připouštějí, že 23.8.2004 Weiss odeslal Martinu Bendovi a Richardu Harazimovi, kteří vystupovali jako zástupci Forminsteru, dopis, jenž je připojen k žalobě jako příloha B. Dokument hovoří sám za sebe. Obžalovaní popírají zbytek odstavce 29.

30. Obžalovaní připouštějí, že 23. 11. 2004 Weiss odeslal Martinu Bendovi a Richardu Harazimovi, kteří vystupovali jako zástupci Forminsteru, dopis, jenž je připojen k žalobě jako příloha C. Dokument hovoří sám za sebe. Obžalovaní popírají zbytek odstavce 30.

31. Popírá se.

32. Připouští se, kromě toho, že Obžalovaní popírají, že je Weiss jediným ředitelem K T Inc.

33. Obžalovaní připouštějí, že 23.12.2004 Peterka odeslal dopis Bryanu Davidu Paulu Wilsonovi z Linklaters Praha, a tento dopis obsahoval blokovou citaci v odstavci 33. Dopis hovoří sám za sebe. Obžalovaní popírají zbytek odstavce 33.

34. Obžalovaní připouštějí druhou větu odstavce 34, kromě toho, že Obžalovaní popírají to, že by Weissův e-mail byl reakcí na komunikaci z Kotvy. Obžalovaní popírají zbytek odstavce 34.

35. Popírá se.

36. Popírá se.

37. Obžalovaní popírají první větu odstavce 37. Obžalovaní nemají ani povědomí ani informace, aby mohli věřit, že zbytek odstavce 37 je pravda.

38. Obžalovaní popírají první dvě věty odstavce 38. Obžalovaní ani nepřipouštějí, ani nepopírají zbytek odstavce 38, ale namísto toho uvádějí, že tento odkazuje na materiál, který je součástí právního tajemství mezi klientem a jeho právním zástupcem a který žalobce získal neoprávněně.

39. Popírá se.

40. Obžalovaní nemají povědomí ani informace o tom, aby mohli věřit, že obsah odstavce 40 je pravda.

41. Obžalovaní připouštějí, že Weiss organizoval v Bostonu dne 15.3. 2005 video tiskovou konferenci. Obžalovaní dále připouštějí, že Příloha E obsahuje pravdivou a přesnou verzi Weissova písemného stanoviska v angličtině. Dokument mluví sám za sebe. Obžalovaní nemají ani informace ani povědomí k tomu, aby mohli věřit, že část přílohy E, která je napsána česky, je zcela přesným překladem Weissova písemného stanoviska. Obžalovaní popírají zbytek odstavce 41.

42. Popírá se.

43. Obžalovaní nemají povědomí ani informace nasvědčující tomu, že interní dokumenty byly zveřejněny v důsledku nějaké žaloby. Obžalovaní popírají zbytek odstavce 43.

44. Obžalovaní ani nepřipouštějí ani nepopírají obvinění v odstavci 44, ale namísto toho uvádějí, že odkazují na materiál, který je součástí právního tajemství mezi klientem a jeho právním zástupcem a který žalobce získal neoprávněně.

45. Popírá se.

46. Obžalovaní připouštějí, že 25.10.2004 Hoffman poslal Weissovi e-mail, který obsahoval text citovaný v odstavci 46 žaloby. Tento e-mail hovoří sám za sebe. Obžalovaní popírají zbytek odstavce 46.

47. Obžalovaní připouštějí, že 25.11.2004 poslal Weiss Hoffmanovi dokument přiložený k žalobě jako příloha G. Tento dokument hovoří sám za sebe. Obžalovaní popírají zbytek odstavce 47.

48. Popírá se.

## Bod I

49. Obžalovaní připojují své odpovědi odkazem na obvinění v předchozích odstavcích.

50. Popírá se.

51. Popírá se.

52. Obžalovaní připouštějí, že Weiss má trvalé bydliště v Massachusetts a Weiss Asset Management má své hlavní místo podnikání v Massachusetts. Obžalovaní popírají zbytek odstavce 52.

53. Popírá se.

54. Popírá se.

## Bod II

55. Obžalovaní připojují své odpovědi odkazem na obvinění v předchozích odstavcích.

56. Odstavec 56 obsahuje závěr soudu, který nevyžaduje žádnou žalobní odpověď.

57. Popírá se.

58. Popírá se.

59. Popírá se.

60. Popírá se.

61. Popírá se.

62. Popírá se.

63. Popírá se.

64. Popírá se.

65. Popírá se.

66. Popírá se.

67. Popírá se.

68. Popírá se.

## **Bod III**

69. Obžalovaní připojují své odpovědi odkazem na obvinění v předchozích odstavcích.

70. Popírá se.

## **Bod IV**

71. Obžalovaní připojují své odpovědi odkazem na obvinění v předchozích odstavcích.

72. Odstavec 72 obsahuje závěr soudu, který nevyžaduje žádnou žalobní odpověď.

73. Popírá se.

74. Popírá se.

75. Popírá se.

76. Popírá se.

## **Bod V**

77. Obžalovaní připojují své odpovědi odkazem na obvinění v předchozích odstavcích.

78. Odstavec 72 obsahuje závěr soudu, který nevyžaduje žádnou žalobní odpověď.

79. Popírá se.

80. Popírá se.

## **Bod VI**

81. Obžalovaní připojují své odpovědi odkazem na obvinění v předchozích odstavcích.

82. Popírá se.

83. Popírá se.

## Bod VII

84. Obžalovaní připojují své odpovědi odkazem na obvinění v předchozích odstavcích.

85. Obžalovaní nemají povědomí ani informace, které by nasvědčovaly, že zbytek odstavce 85 je pravda.

86. Popírá se.

87. Popírá se.

# ŽÁDOST O PŘIZNÁNÍ ŽALOBNÍHO NÁROKU

Žalobcova žádost o přiznání žalobního nároku není tvrzením ve smyslu ustanovení 8 a 10 Federálního občanskoprávního soudního řádu, a nevyžaduje tak žádnou odpověď. Do míry do niž je odpověď požadována žádají Obžalovaní Soud, aby zamítl veškeré žalobcovy žalobní nároky.

# PRVNÍ AFIRMATIVNÍ NÁMITKA

Kotva není skutečnou stranou, která má zájem na sporu.

# DRUHÁ AFIRMATIVNÍ NÁMITKA

Nárokům žalobce brání doktrína „nečistých rukou".

# TŘETÍ AFIRMATIVNÍ NÁMITKA

Žalobce nebyl schopen zformulovat nárok, který by mohl být přiznán.

## ČTVRTÁ AFIRMATIVNÍ NÁMITKA

Žalobce nebyl schopen zvláště obhajovat zpronevěru.

## PÁTÁ AFIRMATIVNÍ NÁMITKA

Nárokům žalobce brání právní překážky.

## PROTIŽALOBA

Žalobci v protižalobě Andrew Weiss (dále jen „Weiss"), Weiss Asset Management LLC (dále jen „WAM"), K T Inc (dále jen „KT") a CVF Investments Ltd. ve své protižalobě proti obžalovaným v protižalobě Kotvě a.s., Martinu Bendovi, Richardu Harazimovi, Forminsteru Enterprises Ltd., SPV CO a Johnu Doesovi 1-5 prohlašují:

*PŘÍSLUŠNOST SOUDU*

1. Soud je věcně příslušný k projednání Protižaloby na základě 28 U.S.C. § 1332 a 28 U.S.C. § 1367.
2. Soud je příslušný k projednání Protižaloby, jelikož obžalovaní v protižalobě se svých přečinů dopustili v Massachusetts, včetně zahájení tohoto právního sporu; obchodovali v Massachusetts tím, že posílali do Massachusetts obchodní korespondenci, včetně e-mailů, dojednávali obchody s osobami s trvalým bydlištěm v Massachusetts; způsobili bezpráví v Massachusetts svým jednáním mimo Massachusetts; a využili příslušnosti tohoto soudu.
3. Soud okresu Massachusetts je místně příslušný k projednání protižaloby podle 28 U.S.C. §§ 1391 (a) a 1391 (c) a také proto, že Kotva a.s. zahájila svůj původní spor v tomto okresu.

*Strany*

4. Obžalovaný a žalobce v protižalobě Andrew Weiss je fyzickou osobou s trvalým bydlištěm v Brookline, Massachusetts.

5. Obžalovaný a žalobce v protižalobě Weiss Asset Management LLC je delawarskou společností s ručením omezeným s hlavním místem podnikání v Bostonu, Massachusetts.

6. Žalobce v protižalobě K T, inc. je delawarskou korporací s hlavním místem podnikání v Bostonu, Massachusets. Vlastní 1000 akcií Kotvy a.s. a 1000 akcií Trendu.

7. Žalobce v protižalobě CVF Investments Ltd. je kyperskou korporací s hlavním místem podnikání v Nicosii, na Kypru. Vlastní akcie Kotvy a akcie Trendu. CVF Investments Ltd. je téměř zcela vlastněnou dceřinnou společností Brookdale Global Opportunity Fundu (dále jen „BGO"). Na zájmy CVF Investments Ltd. v Kotvě je odkazováno obecně buď jako na „akci CVF Investments" nebo „akcie BGO".

8. Žalobce a obžalovaný v protižalobě Kotva a.s. je společnost založena podle práva České republiky s hlavním místem podnikání v Praze, České republice.

9. Obžalovaný v protižalobě Forminster Enterprises Ltd. („Forminster") je společnost založená podle práva Kypru. Na základě informací a přesvědčení se její hlavní místo podnikání nalézá mimo Spojené Státy. Identita jejích vlastníků je přísně utajovaná.

10. Obžalovaný v protižalobě SPV CO je společnost založená podle práva Kypru. Na základě informací a přesvědčení je hlavní místo podnikání SPV CO mimo Spojené Státy.

11. Obžalovaný v protižalobě Martin Benda („Benda") je osoba trvale žijící v České republice. Benda byl členem představenstva Kotvy a.s. buď po celou dobu nebo po část období od 21. Května 1999 do 8. Března 2004. Od 8. Března 2004 do současnosti byl Benda předsedou dozorčí rady společnosti Kotva a.s. Forminster nominoval Bendu do rady Kotvy a využil svého ovládacího vlivu vyplývajícího z ovládání většiny akcií, a zajistil tak jeho zvolení. Benda také je nebo byl členem představenstva Forminsteru a zástupcem Forminsteru. Konečně Benda je také ředitelem SPV CO.

12. Obžalovaný v protižalobě Richard Harazim („Harazim") je osobou s trvalým pobytem v České republice. Harazim je generálním ředitelem nebo výkonným ředitelem Kotvy. Harazim byl členem představenstva Kotvy a.s. buď po celou dobu nebo po část období od 29. Května 1997 do 8. Března 2004. Od 8. Března 2004 do současnosti byl Harazim členem dozorčí rady Kotvy a.s. Forminster nominoval Harazima do představenstva Kotvy a využil svého ovládacího vlivu vyplývajícího z ovládání většiny akcií, a zajistil tak jeho zvolení. Harazim také je nebo byl členem představenstva Forminsteru a zástupcem Forminsteru.

13. Obžalovaní v protižalobě John Does 1-5 jsou jednotlivci trvale žijící v České republice a jinde mimo území Spojených států, kteří jsou součástí spiknutí mezi Forminsterem, SPV CO, Bendou, Harazimem a dalšími (společně „Skupina Forminster").

14. Jedním z cílů spiknutí Skupiny Forminsteru  je obrat Kotvu o její nemovitý majetek, prodat jej a výnosy z prodeje rozdělit mezi členy Skupiny Forminster.

*Věcná obvinění*

15. Weiss Capital LLC je Delawarskou společností s ručením omezeným.

16. V roce 2002 převzal Weiss Capital LLC správu Brookdale Global Opportunity Fondu (dále jen „BGO"). BGO je investičním fondem. Jeho dceřiná společnost CVF Investments Ltd. vlastní akcie Trendu, českého investičního fondu a akcie Kotvy, a.s.

17. CVF Investments Ltd. vlastnila a vlastní akcie Trendu od roku 1996 a akcie Kotvy a.s. od roku 1997.

18. Nejhodnotnějším majetkem Trendu je významný podíl v Kotvě a.s. Nicméně, jak je popsáno podrobněji níže v odstavcích 42-60, tyto akcie byly v polovině 90. Let zpronevěřeny a dostaly se do držby Forminsteru.

19. K T Inc. a CVF Investments Ltd mají oba přímé zájmy v Kotvě a.s. jakožto její akcionáři a dále mají nepřímý zájem na Kotvě z titulu toho, že jsou akcionáři Trendu, který je právoplatným vlastníkem nejméně 32% akcií Kotvy a.s.

20. V září 2003 uzavřel Weiss Capital dohodu s Vladimírem Hoffmannem, v souladu s níž měl Hoffmann pomáhat BGO zpeněžit akcie Kotvy a.s. a Trendu patřící CVF Investments.  Dohoda mezi Hoffmannem a Weiss Capital byla ukončena v říjnu 2004.

21. V září 2003 Harazim vyhledal Hoffmanna a naznačil mu, že Forminster by mohl mít zájem koupit akcie BGO v Kotvě. Člen skupiny Forminster následně navrhl, že akcie Kotvy koupí za 20,000,000 Kč. Weiss tuto nabídku odmítl.

22. J&T Securities následně nabídly v prosinci 2003 za akcie Kotvy ve vlastnictví BGO zhruba 26,000,000 Kč. Na základě informací a přesvědčení, J&T Securities mají také obchodní vztahy se Skupinou Forminster. Weiss tuto nabídku rovněž odmítl.

23. Zatímco se Skupina Forminster snažila koupit akcie Kotvy patřící BGO, snažila se rovněž prodat jediný hodnotný majetek Kotvy, obchodní dům umístěný v centru Prahy (dále jen „obchodní dům").

24. 12.května 2004 se Weiss, Hoffmann, Benda a Harazim sešli v Praze. Na tomto setkání řekl Harazim Weissovi a Hoffmannovi, že akcie Kotvy patřící CVF Investments nemají *žádnou hodnotu*. Harazim řekl, že jelikož CVF Investments je menšinový akcionář Kotvy a.s. jeho akcie v Kotvě nemají žádnou hodnotu. Harazim dále řekl, že Kotva nikdy nebude rozdělovat zisk akcionářům a tudíž akcionáři nikdy nezískají žádný podíl na výnosu

z prodeje obchodního domu. Harazim vyjádřil svůj názor, že s tím Weiss nemůže nic dělat, stejně jako nemůže dělat nic ve věci předchozí zpronevěry majetku Trendu.

25. V červnu 2004 zahájili dva akcionáři Kotvy, Balfindor a Gilroy, soudní spory u českých soudů, napadající činy Forminster Group. Balfindor napadl kroky učiněné na valné hromadě Kotvy, Gilroy napadl snahy skupiny Forminster převést obchodní dům z Kotvy a.s. do jiných společností.

26. V srpnu 2004 vyhledali Benda a Harazim Hoffmanna a nabídli mu, že koupí akce Kotvy v majetku BGO za 75,000,000 Kč. Ani Benda ani Harazim nespecifikovali, která ze společností patřících do skupiny Forminster by tyto akcie kupovala. Weiss tuto nabídku odmítl a učinil protinabídku, a to, že prodá akcie Kotvy patřící BGO za 131,000,000 Kč.

27. 17. Srpna 2004 Harazim reagoval na protinabídku tím, že poslal e-mail tohoto znění zaměstnanci Weiss Capital do Bostonu, Massachusetts:

> Bohužel se nezdá, že by se Vaše nabídka nějak dotkla soudních sporů zahájených Balfindorem a Gilroyem proti naší společnosti. Aniž by se tyto a jakékoliv další potenciální soudní spory zahájené BGO nebo subjekty ovládanými BGO vyřešily, nebudeme schopni uzavřít žádný obchod.

> Pokud si své stanovisko rozmyslíte, můžeme se vrátit k diskusi o kupní ceně akcií Kotvy v majetku BGO.

28. Na základě Harazimova mailu Weiss doplnil svoji nabídku na prodej akcií Kotvy patřících BGO, a sice že je prodá za 131,000,000 Kč a příslib, že nezahájí žádný soudní spor týkající se vlastnictví obchodního domu, a že se rovněž pokusí přesvědčit Gilroye, aby ukončil soudní spor napadající převod obchodního domu.

29. 27. Srpna 2004 Harazim odpověděl e-mailem zaměstnanci Weiss Capital do Bostonu, Massachusets a požadoval, aby jakýkoliv nákup akcií Kotvy byl podmíněn odstoupením od „soudních sporů zahájených Gilroyem A Balfindorem, ne pouze Gilroyem." Kolem stejného data řekl Benda Hoffmannovi, že jakýkoliv nákup akcií Kotvy byl podmíněn zpětvzetím veškerých stížností a žalob, jaké měla a uplatnila BGO proti Skupině Forminster, včetně tvrzení, že akcie Kotvy držené Forminsterem ve skutečnosti patří Trendu.

30. Zpětvzetí žalob o tom, že Trend je právoplatným vlastníkem akcií Kotvy držených Forminsterem, by okamžitě snížilo ty akcie BGO, které vlastnilo v Kotvě přes Trend.

Podíl v Trendu je hodnotný především proto, že Trend je právoplatným vlastníkem nejméně 32% akcií Kotvy a Kotva je právoplatným vlastníkem hodnotné nemovitosti nebo výtěžku z jejího prodeje. Navíc akcionáři Trendu žalují Forminster o ostatní majetek, který byl z Trendu vytunelován. Toto tunelování poskytlo kapitál, který Forminster použil k nakoupení dalších akcií Kotvy. Weiss nemohl souhlasit s tím, že všechny tyto žaloby vzdá obratem za nic.

31. Tedy, aby vyhověl požadavkům Harazima a Bendy, Weiss doplnil svoji nabídku tak, že (a) uvedl soudní spor Balfindora; (b) připojil akcie BGO v Trendu k akciím BGO v Kotvě; a (c) navýšil kupní cenu tak, aby reflektovala hodnotu akcií Trendu patřící BGO. K této nové nabídce Weiss připojil podrobnou kalkulaci podporující pozice BGO v Kotvě i Trendu.

32. Nechtěje zaplatit společnosti CVF Investments spravedlivou cenu odpovídající hodnotě jejich akcií vtažené k hodnotě obchodního domu, Harazim tuto nabídku odmítl. Harazim opakovaně odmítl vysvětlit, proč se mu zdá nákupní cena, jakou Weiss navrhl, příliš vysoká a nebo proč jsou Weissovy kalkulace, které předložil, nesprávné či nepřesné.

33. Namísto toho Skupina Forminster reagovala tím, že využila svého vlivu na donucovací orgány v České republice a zahájila nebo se pokusila o zahájení trestního řízení ve věci vydírání proti Weissovi. Harazim byl citován v tisku jako že „podal trestní oznámení". Toto obvinění, pokud bylo vzneseno, nemá žádnou skutkovou podstatu. Na základě informací a přesvědčení je základem obvinění ze strany Skupiny Forminster to, že Weiss vyhrožoval tím, že zahájí právní spory napadající zpronevěru akcií Kotvy patřící Trendu a převody obchodního domu, pokud investoři nedostanou spravedlivý podíl na výnosech z prodeje obchodního domu. I kdyby bylo takové jednání trestné – jakože není, byl to Harazim a Benda spíše než Weiss, kdo požadoval, aby jakýkoliv nákup akcií byl spojen s ukončením soudních sporů.

34. Motivem Skupiny Forminster k zahájení trestního stíhání proti Weissovi bylo získat nad ním nespravedlivě převahu s cílem donutit ho k tomu, aby vzdal své investorské žaloby u českých soudů, jež byly v rozporu se zájmy skupiny Forminster (dále „české spory").

35. Od srpna 2004 do ledna 2005 poslal Harazim Weissovy a ještě nejméně jednomu člověku v Massachusetts minimálně 9 e-mailů jako součást snahy Skupiny Forminster donutit Weisse k tomu, aby vzdal své investorské žaloby v českých sporech. Konkrétněji, v e-mailech datovaných 17.srpna 2004, 27. Srpna 2004, 1. Prosince 2004, 3. Prosince 2004, 7. Prosince 2004, 8. Prosince 2004, 15. Prosince 2004, 4. Ledna 2005 a 7. Ledna 2005 se neustále Harazim snažil koupit akcie Kotvy, ovšem podmiňoval tento nákup ukončením

českých sporů. Účelově poslal všechny tyto e-maily osobám - příjemcům, o nichž věděl, že mají trvalý pobyt v Massachusetts a pracují v Massachusetts.

36. Harazim poslal tyto e-maily na příkaz Bendy, kterého v e-mailu z 27. Srpna 2004 nazval „majícího tuto záležitost na starosti".

37. Na základě informací a přesvědčení poslal Harazim tyto e-maily také na příkaz Johna Doese 1-5.

38. Skupina Forminster potom zahájila toto občanskoprávní řízení proti Weissovi. Na základě informací a přesvědčení to osobně za Kotvu zahájili Benda a Harazim, kteří dostali takové instrukce od Forminsteru a Johna Doese 1-5.

39. Na základě informací a přesvědčení , Benda, Harazim a / nebo John Does 1-5 poslali několik e-mailů, dopisů a / nebo faxů svým zástupcům v Massachusetts a i jim telefonovali, aby mohli zahájit toto soudní řízení.

40. Zlý úmysl Skupiny Forminsteru k zahájení tohoto řízení byl veden cílem dosáhnout nespravedlivé převahy nad Weissem vedoucí k tomu, aby se vzdal svých investorských žalob v českých sporech.

41. Weiss a WAM utrpěli v Massachusetts škodu a nadále jí trpí, včetně poškození pověsti, rozkolu jejich podnikání, ztraceného času a nákladů na právní služby, a to v důsledku rozhodnutí Skupiny Forminster způsobit zahájení trestního stíhání a způsobit to, že Kotva zahájí tento spor.

*Tunelování majetku ve fondu Trend*

42. V roce 1995 a 1996 zpronevěřil management Trendu majetek Trendu, včetně akcií Kotvy patřících Trendu. Zpronevěra majetku Trendu byla podrobně a dlouhodobě dokumentována v různých českých vládních zprávách a je běžně citována jako tzv. „Skandál Trend" nebo „Tunelování Trendu". Média o Skandálu Trend[1] podrobně informovala stejně jako o několika neobvyklých událostech provázejících vyšetřování Skandálu Trend. Na základě informací a přesvědčení, řada osob zapojených do vyšetřování Skandálu Trend buď odstoupila nebo spáchala sebevraždu za podivných okolností.

43. Miroslav Hálek, který manažersky řídil Trend v době zpronevěry, měl ve stejné době také generelní plnou moc k zastupování Forminsteru.

---

[1] V příloze 2 jsou přiložené některé články o skandálu Trend s anglickým překladem

44. Hálkovo napojení na Forminster a osobní zapojení do zpronevěry majetku Trendu je podrobně dokumentováno v několika zprávách  z pera českých žalobců. Například zástupce krajského státního zástupce napsal:

Nakládání s akciemi Kotvy, a.s. a jejich  převod představoval pro obžalované [Miroslava Hálka a spol.] nejvýznamnější předmět zájmu. Akcie Kotvy patřily mezi zásadní investice fondu před 4. Srpnem 1995. Cílem předchozího vedení bylo a stále je převést akcie Kotvy do společností řízených panem Hálkem a spol. a získat akcionářskou většinu v Kotvě přes jiné nákupy, na něž také použily zdroje fondu. Akcie Kotvy jsou stále ve středu zájmu Ing. Hálka a společností kolem něj. I během nucené správy bylo dosaženo několika převodů akcií Kotvy, jmenovitě mezi osobami a společnostmi a Jiřím Marešem, spolužákem pana Hálka, jehož prostřednictvím byly akcie Kotvy převedeny zpět do společností ovládaných panem Hálkem, a který je s největší pravděpodobností významnou osobou. <u>V době, kdy již bylo vydáno nepravomocné rozhodnutí Krajského soudu v Hradci Králové zakazující jakékoliv nakládání s akciemi Kotvy společností Královéhradecká brokerská,  se uskutečnil na příkaz KHB  převod akcií Kotvy společnosti Forminster Enterprises, Ltd. se sídlem na Kypru, k jejímž finančním účtům má ing. Hálek zvláštní práva.</u>

Aktivity skupiny pana Hálka nebyly zastaveny ani rozhodnutím o nucené správě [Trendu] a jak vyplývá z nedávných zjištění, jejich snaha ovládnout Kotvu a majetek Trendu pokračuje dodnes a ani trestní stíhání ani umístění do vazby nečiní tomuto žádné překážky. <u>I před zahájením trestního stíhání byl převod části akcií Kotvy společnosti Forminster Enterprises, Ltd. se sídlem na Kypru uskutečněn</u> a poté byla společnost Královéhradecká (brokerská) a.s. prodána společnosti Bonit kapital, a.s., Brno. KHB, přejmenovaná na Brněnskou obchodní, a.s., nyní čelí návrhu na prohlášení konkursu. <u>Podle nedávných zjištění, i v době jeho vazby, podepsal ing. Hálek důležité dokumenty týkající se účtů společnosti Forminster Enterprises, Ltd. u LGT Banky ve Vaduzu, Lichnštejnsku.</u>

30. Září 1998, zpráva zástupce krajského státního zástupce Hradec Králové (zvýraznění bylo doplněno).

45. Po sérii komplikovaných transakcí získali členové Skupiny Forminster do své držby akcie Kotvy zpronevěřené z Trendu a s těmito akciemi získali kontrolu nad Kotvou. Skupina Forminster za akcie Kotvy z majetku Trendu zaplatila daleko méně, než jakou měly tyto akcie hodnotu.

46. Skupina Forminster použila dalšího majetku zpronevěřeného z Trendu k nákupu akcií Kotvy. Akcie Kotvy, které Forminster získal z Trendu a akcie Kotvy, které získal za majetek Trendu, dohromady představují více než 55% akcií Kotvy.

47. Součástí vyšetřování tunelování Trendu bylo, že v roce 1997 státní zástupce v České republice nechal zmrazit akcie Kotvy držené Skupinou Forminster a zabránil tak Forminsteru v jejich prodeji. V roce 2004 potvrdil český Ústavní Soud akty státního zástupce a napsal:

> Podle názoru tehdejšího státního zástupce z krajského státního zastupitelství v Hradci Králové , řečené akcie byly předmětem zločinu, nebo v tomto případě mohly pocházet z výnosů z trestné činnosti a byly věcně zcela spojeny se spácháním trestného činu proti majetku. <u>Vydáním zákazu (předběžného opatření) se mělo zamezit dokončení řady nelegálních převodů těchto akcií.</u>

Ústavní soud České republiky, rozhodnutí č. II US 267/03 (15. Dubna 2004). Podobně, „(i) podle názoru vrchního státního zástupce, [akcie Kotvy držené Forminsterem] jsou výnosem z trestné činnost spáchané Ing. M. H[alkem] a spol., a byly transformovány na dokumentární cenné papíry a zaknihovány na účty F[orminesteru]  E[nterprices] Limited v SCP v Praze.

48. Státní zástupce Hradce Králové popsal zamrazení akcií Kotvy v držbě Forminsteru jako přesné, „týkající se přesně těch akcií, které byly předmětem trestné činnosti a výnosů z ní" a nedotýkající se těch akcií, „které nemají s trestnou činností nic společného, nebo kde takové spojené, pokud je dedukováno, nemůže být vydedukováno jasně ze shromážděného důkazního materiálu." 13. Května 1997 zákaz (předběžné opatření) Státního zástupce Hradec Králové, No. Kzv 323 / 97.

49. Zhruba ve stejné době, Nejvyšší soud v Lichnštejnsku zmrazil účty Forminsteru v LGT bance ve Vaduzu, Lichnštejnsku na základě podezření z praní špinavých peněz a spiknutí, mimo jiné trestné činy.

50. Bez ohledu na zmrazení akcií Kotvy v držbě Skupiny Forminster českým státním zástupcem byli členové Skupiny Forminster stejně schopni využít hlasovacího práva

s nimi spojeného. Forminster kontroluje minimálně 55% akcií Kotvy. Jako většinový akcionář tak Skupina Forminster volí představenstvo a řídí management Kotvy.

51. Nicméně zmrazení akcií stejně způsobilo Skupině Forminster potíže. Nemohla své akcie přeměnit na hotové peníze. Proto musely změnit své plány a oddělit majetek Kotvy a.s. od zmrazených akcií Kotvy a.s., tento majetek zpeněžit a využít peněžních výnosů ve svůj vlastní prospěch.

52. Nejméně od roku 1999, po zvolení orgánů Kotvy a.s., získala Skupina Forminster prostřednictvím svých nastrčených figur, Bendy a Harazima, plnou kontrolu nad Kotvou a.s. a aktivně řídila veškeré její aktivity, včetně zahájení tohoto sporu. Skupina Forminster využívá své pronikavé moci nad Kotvou a.s. k sobeckému postupu, bez ohledu na zájmy menšinových akcionářů Kotvy a.s. Využívají Kotvu a.s. k tomu, aby sloužila zájmům Skupiny Forminster a defraudují menšinové akcionáře.

53. Skupina Forminster způsobila, že Kotva a.s. převedla Obchodní Dům přes řadu nastrčených společností. Tyto převody nemají žádný legitimní obchodní důvod, ale namísto toho mají za cíl umožnit Skupině Forminster, aby si snadněji mohla přisvojit výnosy z prodeje Obchodního domu. Nakonec byl Obchodní dům prodán Irské společnosti jménem Markland za zhruba 65 milionů amerických dolarů.

54. Přesněji Kotva a.s. nejprve převedla Obchodní dům na společnost s názvem Kotva Nemovitosti, kterou proto vytvořila. Z informací a přesvědčení vyplývá, že Benda byl v té době předsedou představenstva Kotva Nemovitosti. Skupina Forminster následně způsobila, že Kotva a.s. změnila společnost Kotva Nemovitosti ze stoprocentní dceřinné společnost na společnost, kde měla nadále Kotva nárok na méně než polovinu zisku a kapitálových přebytků.

55. Skupina Forminster dále dostala Obchodní dům od akcionářů Kotvy tím, že jej převedla z Kotva Nemovitosti do jiné společnosti nazvané SPV KN. Skupina Forminster použila neregistrované a nedohledatelné akcie na doručitele a na nich založili vlastnictví SPV KN.

56. Na základě informací a přesvědčení, když SPV KN poprvé získala Obchodní dům od Kotva Nemovitosti, Kotva Nemovitosti držela veškeré akcie aby doložila vlastnictví SPV KN. Ovšem podle výroční zprávy Kotvy za rok 2004 přesunula Skupina Forminster Obchodní dům ještě dál od akcionářů Kotvy tím, že nechala převést 97% akcií SPV KN na kyperskou společnost nazvanou SPV CO.

57. SPV CO je součástí Skupiny Forminster. SPV CO má sídlo na adrese: Ledra House, Agiou Pavlou 15, Agio Andreas, 1105 Nicosia, Kypr. Tato adresa je také registrovaným

sídlem právní firmy Chistodoulos G. Vassiliades & Co., právní firmy, která založila v roce 1996 Forminster.

58. Podle výroční zprávy Kotvy za rok 2004 Skupina Forminster ovlivnila prodej Obchodního domu společnosti CRQ Czech, české společnosti kontrolované Marklandem, a to převodem akcií CRQ Czech.

59. Z toho vyplývá, že výnosy z prodeje Obchodního domu nebudou vyplaceny Kotvě ani jiné české společnosti. Namísto toho se zdá, že nákupní cena za akcie SPV KN byla nebo bude vyplacena SPV CO nebo jinému subjektu kontrolovanému Forminsterem, který výnosy rozdělí v rámci Skupiny Forminster namísto akcionářů Kotvy.

60. Intriky Skupiny Forminster poškodily žalobce v protižalobě K T a CVF Investments Ltd tím, že jim neumožnily spravedlivou návratnost jejich investic, takovou, jakou většinoví vlastníci Kotvy a.s., Skupina Forminster očekávají.

## Bod I

### (Zneužití řízení –
### Žalobci v protižalobě Andrew Weiss a Weiss Asset Management LLC proti všem Obžalovaným v protižalobě)

61. Odstavce 1-60 jsou zde uvedeny odkazem s platností jako kdyby zde byly plně citovány.

62. Skupina Forminster, včetně veškerých obžalovaných v protižalobě, využila české trestní řízení tím, že podala trestní oznámení a využila svého vlivu na české donucovací orgány, aby zahájila nebo se pokusila zahájit trestní stíhání Weisse.

63. Tyto činy mají skrytý a nelegální účel, jak je popsáno výše.

64. Žalobce v protižalobě byl tímto zneužitím procesu poškozen, jak je popsáno výše.

65. Skupina Forminster, včetně všech obžalovaných v protižalobě, využila zahájením tohoto sporu občanskoprávní řízení Spojených států.

66. Tento čin má skrytý a nelegální účel, jak je popsáno výše.

67. Žalobci v protižalobě Weiss a Weiss Asset Management byly tímto zneužitím řízení poškozeni, jak bylo popsáno výše.

## Bod II

### (Spiknutí - Žalobci v protižalobě Andrew Weiss, Weiss Asset Management LLC, K T inc., CVF Investments Ltd. proti všem Obžalovaným v protižalobě)

68. Odstavce 1-67 jsou zde uvedeny odkazem s platností jako kdyby zde byly plně citovány.

69. Členové Skupiny Forminster , včetně všech obžalovaných v protižalobě, se dohodli, že budou společně pracovat na tom, aby ukořistili majetek Kotvy, zneužili českého trestního řízení a amerického občanskoprávního řízení.

70. Členové skupiny Forminster mají zvláštní donucovací sílu tím, že jako skupina mají přístup k a vliv na minimálně jednoho člena české vlády, a zároveň mají schopnost dovést orgány činné v trestním řízení v ČR k tomu, aby zahájili trestní řízení poskytující jim výhody v jejich obchodních sporech.

71. Obžalovaní v protižalobě Kotva, Benda, Harazim, Forminster, SPV CO a John Does 1-5 se spikli, aby poškodily žalobce v protižalobě Weisse, Weiss Asset Management, K T, Inc. a CVF Investments Ltd, jak je popsáno výše.

## Bod III

### (přeměna –

**žalobci v protižalobě K T, Inc. a CVF Investments Ltd. proti Bendovi, Harazimovi, Forminsteru, SPV CO a Johnu Doesovi 1-5)**

72. Odstavce 1-71 jsou zde uvedeny odkazem s platností jako kdyby zde byly plně citovány.

73. Kotva a.s., buď přímo nebo prostřednictvím své plně vlastněné dceřinné společnosti, má nebo měla nárok na výnos z prodeje Obchodního domu.

74. Obžalovaní v protižalobě Benda, Harazim, Forminster, SPV CO a John Does 1-5 neoprávněně získali kontrolu nad zájmy Kotvy na výnosech z prodeje Obchodního domu. Tím, že toto učinili, připravili obžalovaní v protižalobě Kotvu a její akcionáře, včetně žalobce v protižalobě K T a CVF Investments Ltd., o jejich právo podílet se na hodnotách získaných z Obchodního domu.

## Bod IV

### (neoprávněné obohacení –

**žalobci v protižalobě K T, Inc. a CVF Investments Ltd. proti Bendovi, Harazimovi, Forminsteru, SPV CO a Johnu Doesovi 1-5)**

75. Odstavce 1-74 jsou zde uvedeny odkazem s platností jako kdyby zde byly plně citovány.

76. Prodejem obchodního domu a tím, že si výnosy z něj nechali pro sebe, se obžalovaní v protižalobě Benda, Harazim, Forminster, SPV CO a John Does 1-5 neoprávněně obohatili na úkor žalobců v protižalobě K T, Inc. a CVF Investments Ltd.

## Bod V

### (Porušení svěřených povinností / zneužití pravomocí –
### žalobci v protižalobě K T, Inc. a CVF Investments Ltd. proti Bendovi, Harazimovi,
### Forminsteru)

77. Odstavce 1-76 jsou zde uvedeny odkazem s platností jako kdyby zde byly plně citovány.

78. Harazim je funkcionářem Kotvy a.s., členem její dozorčí rady a bývalým členem jejího představenstva.

79. Benda je Předsedou dozorčí rady Kotvy a.s. a bývalý člen jejího představenstva.

80. Od roku 1997 Forminster ovládal většinu akcií Kotvy a.s. a nejméně od roku 1999 ovládal představenstvo Kotvy a.s.

81. Jako funkcionář a člen dozorčí rady Kotvy a.s. má Harazim svěřenou povinnost naprosté loajality a dobrých úmyslů vůči Kotvě a jejím akcionářům.

82. Jako ředitel a člen dozorčí rady Kotvy a.s. má Harazim svěřenou povinnost naprosté loajality a dobrých úmyslů vůči Kotvě a jejím akcionářům.

83. Jako subjekt ovládající většinu akcií Kotvy a.s. má Forminster povinnost vůči menšinovým akcionářům Kotvy nezneužít svého většinového hlasu.

84. Jako členové dozorčí rady Kotvy, Benda a Harazim mají povinnost vůči akcionářům Kotvy dohlížet na představenstvo.

85. Řízením a účastí na opakovaných převodech Obchodního domu ve prospěch Skupiny Forminster spíše než ve prospěch akcionářů Kotvy se Harazim, Benda a Forminster dopustili porušení svých svěřených povinností vůči akcionářům Kotvy, včetně žalobců v protižalobě – KT a CVF Investments Ltd.

86. Využitím svého vlivu na představenstvo Kotvy a způsobením toho, že představenstvo jednalo v neprospěch Kotvy a jejích akcionářů, včetně žalobců v protižalobě – KT a CVF Investments Ltd., zneužili Benda, Harazim a Forminster svého vlivu na představenstvo Kotvy v rozporu s § 66c obchodního zákoníku České republiky v platném znění.

87. Tím, že umožnili představenstvu Kotvy oloupit Kotvu o obchodní dům a nezajistili, aby její akcionáři za něj dostali spravedlivou náhradu, porušili Benda a Harazim svoji

povinnost dohlížet na představenstvo Kotvy, aby konalo ve prospěch akcionářů, včetně žalobců v protižalobě K T a CVF Investments Ltd.

88. Žalobci v protižalobě K T a CVF Investments Ltd. byly poškozeni těmito porušeními svěřených povinností a zneužitími pravomocí, jak bylo popsáno výše.

### Bod VI

### (Presumptivní svěřenství –
### žalobci v protižalobě K T, Inc. a CVF Investments Ltd. proti všem obžalovaným
### v protižalobě)

89. Odstavce 1-88 jsou zde uvedeny odkazem s platností jako kdyby zde byly plně citovány.

90. Obchodní dům, akcie na doručitele v SPV KN a / nebo výnosy z prodeje akcií na doručitele v SPV KN jsou předmětem presumptivního svěřenství ve prospěch akcionářů Kotvy včetně žalobců v protižalobě K T a CVF Investments Ltd.

### Bod VII

### (nekalá hospodářská soutěž a nekalé a podvodné obchodní praktiky – Andres Weiss,
### Weiss Asset Management, K T, Inc. and CVF Investments Ltd proti všem obžalovaným
### v protižalobě)

91. Odstavce 1 – 90 jsou zde uvedeny odkazem s platností jako kdyby zde byly plně citovány.

92. Skupina Forminster a její členové jsou zapojeni do obchodů a podnikání ve smyslu M.G.L. ch. 93 A.

93. Žalobci v protižalobě Weiss, WAM, K T, Inc. a CVF Investments Ltd. jsou zapojeni do obchodů a podnikání ve smyslu M.G.L. ch. 93 A.

94. Převody, zpronevěra, zneužití řízení, spiknutí a podvodné převody Obchodního domu představují nekalé a podvodné obchodní praktiky.

95. Skupina Forminster se do těchto nekalých a podvodných obchodních praktik zapojila vědomě.

96. V důsledku takových praktik žalobci v protižalobě utrpěli škodu, jak je popsáno výše.

### Bod VIII

### (Určovací rozsudek – žalobci v protižalobě K T, Inc. a CVF Investments Ltd. proti všem
### obžalovaným v protižalobě)

97. Odstavce 1-96 jsou zde uvedeny odkazem s platností jako kdyby zde byly plně citovány.

98. Existuje skutečný spor mezi žalobci v protižalobě K T, Inc. a CVF Investments Ltd. na jedné straně a Bendou, Harazimem, Forminsterem SPV CO a John Doesem 1-5 na straně druhé co se týče toho, kdo by měl získat výnosy z prodeje Obchodního domu.

99. Benda, Harazim, Forminster, SPV CO a Johnem Does 1-5 získali výnosy z prodeje nelegálními prostředky. Proto na ně nemají žádné právo.

100.  Namísto toho patří výnosy z prodeje Kotvě a.s. a jejím akcionářům.

101.  Existuje skutečný spor mezi žalobcem v protižalobě K T, Inc. na jedné straně a Bendou, Harazimem, Forminsterem SPV CO a Johnem Doesem 1-5 na straně druhé co se týče toho, zda je Forminster právoplatným vlastníkem více než 55% akcií Kotvy.

102.  Tím, že si nelegálně udržuje tyto akcie ve své moci, je Skupina Forminster schopna nadále si udržet kontrolu na Kotvou a činit kroky poškozující menšinové akcionáře, včetně žalobců v protižalobě K T, Inc. a CVF Investments Ltd.

103.  Skupina Forminster nemá žádné právo na akcie Kotvy, protože tyto byly buď ukradeny z Trendu nebo představují výnos z dalšího majetku ukradeného Trendu.

## ŽÁDOST O NÁHRADU ŠKODY

PROTO, žalobce v protižalobě Andrew Weiss, Weiss Asset Management LLC, K T, Inc. a CVF Investments Ltd. uctivě žádáme tento soud aby:

(a)  vydal rozsudek ve prospěch žalobců v protižalobě a proti obžalovaným v protižalobě ve všech bodech Protižaloby;

(b)  uvalil presumptivní svěřenství na výnosy z prodeje Obchodního domu;

(c)  prohlásil, že akcionáři Kotvy a.s. jsou vlastníky výnosů z prodeje obchodního domu;

(d)  prohlásil, že skupina Forminster není právoplatným vlastníkem akcií Kotvy a.s., na jejichž vlastnictví si dělá nárok;

(e)  vydal nařízení, že Benda, Harazim, Forminster a John Does 1-5 musejí vydat výnosy z prodeje Obchodního domu a předat je akcionářům Kotvy a.s.;

(f)  přiznal náhradu škody u bodů I, II, III, IV, V a VII, včetně trojité náhrady škody v bodě VII;

(g)  rozhodl u úhradě nákladů žalobců v protižalobě;

(h)  rozhodl u úhradě nákladů žalobců v protižalobě na právní výlohy; a

(i)    vydal takový další rozsudek, jaký Soud  považuje za řádný a spravedlivý.


POŽADAVEK NA POROTU


OBŽALOVANÍ A ŽALOBCI V PROTIŽALOBĚ POŽADUJÍ SOUD PŘED POROTOU U
VŠECH BODŮ, KDE JE TO PŘÍPUSTNÉ.


Uctivě předkládají,
ANDREW WEISS, WEISS ASSET MANAGEMENT LLC, K T, INC. a CVF
INVESTMENTS LTD.


Prostřednictvím svých právních zástupců,


/s/ Benjamin A. Goldberger

Edward P. Leibensperger (BBO # 292620)

Michael Kendall (BBO # 544866)

Benjamin A. Goldberger (BBO # 654357)

McDermott Will & Emery LLP

28 State Street

Boston Massachusetts 02109-1775

(617) 535-4000


Datováno: 15. Června 2005

## POTVRZENÍ SLUŽBY

Já, Benjamin A. Goldberger, tímto potvrzuji, že dne 15.června 2005 byl pravdivý a správný výtisk předchozího dokumentu poslán k doručení přes noc právnímu zástupci / radě v záznamu Kotvy a.s.

/s/ Benjamin A. Goldberger
_____

Benjamin A. Goldberger

1

Příloha 1
Shrnutí protižalob

| obžalovaný / Bod | I Zneužití řízení, Weiss a WAM | II Spiknutí, Weiss, WAM, K T a CVFI | III Přeměna K T a CVFI | IV Neoprávněné obohacení K T a CVFI | V Porušení svěřených povinností/ zneužití pravomocí K T a CVFI | VI Presumptivní svěřenství K T a CVFI | VII Nekalé obchodní praktiky Weiss, WAM, K T a CVFI | VIII Určovací rozsudek K T a CVFI |
|---|---|---|---|---|---|---|---|---|
| Kobra a.s. | X | X | X | X | | X | X | X |
| Forminster | X | X | X | X | X | X | X | X |
| SPV CO | X | X | X | X | | X | X | X |
| Benda | X | X | X | X | X | X | X | X |
| Harazim | X | X | X | X | X | X | X | X |
| John Does 1-5 | X | X | X | X | X | X | X | X |

2

**ČESKÁ REPUBLIKA**

Lichtenštejnské důkazy o vytunelování Trendu

# Heslo: PIANO ČERNÝ

*Rekonstruujeme modelový příklad, jak vytunelovat investiční fond. TÝDEN získal dokumenty, které nasvědčují tomu, že tzv. prodej obchodního domu Kotva do zahraničí byl jen trikem*

Kauza OD Kotva (tržní hodnota činí asi 2,885 miliardy korun) je hitem v Čechách nevídaného rozměru. Je opřena několika vězeňskými osobami, desítkami žalob, kampaněmi známých mediálních agentur i nebývalou koncentrací nejprestižnějších českých advokátů. Dříve než zrekonstruujeme případ na základě nejnovějších poznatků TÝDNE, shrňme jeho podstatu: firma Královéhradecká brokerská, a. s. (KHB), se podle dokumentů, které máme k dispozici, pokusila majoritní podíl Kotvy převést z investičního fondu Trend prostřednictvím zahraniční společnosti ve prospěch dosud nespecifikovatelných subjektů či osob. Případ je jedním z nejkomplikovanějších v moderní historii komerčního práva u nás.

## Rekonstrukce kauzy Trend & Kotva

Fond Trend (založený Bankou Skala a Montovanými stavbami) využil politického zázemí Michaela Kocába a podnikatelských schopností Martina Kratochvíla k důvěryhodnému úspěchu v kuponové privatizaci. Prvním nebezpečím pro „otce zakladatele" fondu Trend byla aktivita spojená se sdružováním menších akcionářů a skupováním akcií. Trend se pokusil zabránit vzniku silné minoritní skupiny akcionářů, která by mohla vyměnit statutární orgány složené z „otců zakladatelů". Rozhodli se pro výplatu velmi slušných dividend (s předpokladem, že původní akcionáři fondu namlsaní dividendou, akcie neprodají). To však zjevně nestačilo a po několika měsících dikové opět prodávali akcie fondu investorovi, který je shromažďoval (šlo o firmu

Czech Value Fund, která v případě že mlhavinou akcionářům fondu Trend bude mají tok navrácen, tuto sumu si fondu chtít a později ji na nějaký dobročinný ale kontrolovaný ný účel"

Czech Value Fund, která v případě že mlhavinou akcionářům fondu Trend bude mají tok navrácen, tuto sumu si fondu chtít a později ji na nějaký dobročinný ale kontrolovaný ný účel"

roli)

V únoru 1995 byla založena nová Investiční společnost Trend, a. s., se základním jměním 1 000 000 Kč, mezi jejímiž akcionáři byli i Michael Kocáb a Martin Kratochvíl. Tato společnost pak fond Trend spravovala. Její založení a existence se však zdají silně účelové. Akcie správcovské společnosti Trend, a. s., byly totiž 2. srpna 1995 prodány firmě Královéhradecká brokerská, a. s. za 318,365 milionu korun. Jejím hlavním akcionářem byl Miroslav Hálek (nyní ve vazbě). Z tohoto obchodu měl Kocáb zisk 36.142 milionu Kč. Ze se jednalo o první a zásadní faul na akcionáře fondu Trend, je zřejmé z Kocábova prohlášení

## Tunel hned na počátku

Noví správci z Královéhradecké brokerské uskutečnili první podivný obchod s akciemi již tři týdny poté, co správcovskou firmu koupili. Ve třech smlouvách prodali lukrativní akcie z Trendu (Telecom Chemapetrol a Syntho sia) společnosti Consult Invest (jejž šéf je nyní ve vazbě) za 487 milionů korun. Kupec zaplatil jen první splátku (135 milionů), zbytek zůstal dlužen dodnes, čímž Trend ztratil 352 milionů korun Akcie držel pár dnů a obratem je prodal firmě spřízněné s Královéhradeckou brokerskou

Porovnání čísel vede logicky k podezření, že šlo o pokrytí investic KHB za koupi

zpráva vě-ská investiční společnosti Trend, a. s. věřitelé si stanovují provizi. Je třeba uvést že v téže době je ště zůstávali v představenstvu fondu Trend Michael Kocáb a Martin Kratochvíl, avšak obě tvrdí že v ohradě, kdy fond prodával lukrativní akcie byli na dovolené v zahraničí

## Na řadu přišla Kotva

Koncem roku 1995 vlastnil Trend již přibližně 20 procent akcií Kotvy Hálkovi, který byl té tady až na je u majitelem správcovské firmy ale i představ přihlásl na samostatného fondu Trend se postupně podařilo shromáždit v rozličných firmách různým způsobem celkem 65 % akcií Kotvy

O tento obchodní dům měla zájem právě již zmíněná společnost Czech Value Fund (CVF). Během roku 1996 proto koupila na kapitálovém trhu 37 procent akcií fondu Trend za zhruba 10 milionů dolarů a 4. listopadu byli zvoleni její zástupci i John Moffit a Michael Blum - do představenstva fondu O týden později, když obě zjistili, že fond již byl vytunelován, byla na jejich nátlak ministerstvem



Ve vazbě. Miroslav Hálek (v popředí, bývalý předseda představenstva IF Trend obviněný vyšetřovatelem z trestného činu podvodu. (6. března 1997 na chodbě Krajského úřadu vyšetřování v Hradci Králové.)

finanční uvalena na fond Trend
nucená správa. Londýnský
právník spolčnosti vlastníf
CVF pan Kingsnorth svého
času prohlásil, že odpověd-
ost za špatné hospodaření
s fondem Trend nese spolu s Hál-
kem i jejho představenstvo
i představenstvo předchozí jí-
ž tedy Michael Kocáb a jeho
poradci.)

## Zablokování účtu

John Moffit, šéf CVF, však
začátkem roku 1997 přechází
za pomocí Michaela Kocába
a advokátní kanceláře Váňa,
Pergl a partneři (AK VPP) do
tvrdého útoku. Účty Trendu
byly rozhodnutím soudu
zablokovány, ale rozhodnutí
soudu se dostalo do Střediska
cenných papírů pozdě. Hálek
a spol. proto stihli prodat
svým spřízněným firmám kon-
cem ledna 1997 z již zabloko-
vaných účtů Trendu asi
14 procent akcií Kotvy. Kro-
mě toho stahovali další akcie
a nakonec 30. ledna 1997
Hálek a spol. balík o velikosti
56 % akcií Kotvy prodali za
80 milionů Kč kyperské firmě
Forminster Enterprises Limi-
ted (FEL). Začátkem března
se ocitli ve vazbě a 65 % akcií
Kotvy státní úředníci zabloko-
vali. Tak propukl naplno nevi-
daný právní spor mezi FEL
a Czech Value Fund

## Bitva advokátů

Advokáti z advokátní kanceláře
Váňa, Pergl a partneři ve
zájmech minoritního akcioná-
ře Czech Value Fund vstupují
do orgánů fondu Trend.
Kromě toho již jako statutární
orgánci, ale zároveň Mgr.
Radek Pergl a Mgr. Radek
Hodný z AK VPP na valných
hromadách Kotvy vystupují za
Trend v roli právníků a podaří
se jim v přímém souboji zvítě-
zit nad zástupci FEL. Advokát
Pergl prohlašuje v Právu
(22. 10. 1997): "...a teď jsme
odtrhli ze sebe, jejich před-
seda..." On to po hodině
nevydržel to nervově."
Dokazují dva představite-
lé AK Pergl vystavuje plnou moc
Advokáti v AK 1997 zastupuje
novou 56 procent Kotvy klienti
svých kyperský FEL,
zastupuje advokátní kan-
celář Halma ji Toman

a partneři. Do obchodního rej-
stříku však bylo 4. srpna
zapsáno představenstvo mino-
ritního vlastníka - tedy Czech
Value Fund

V srpnu 1997 je podepsána
další zvláštní smlouva: kom-
plement JUDr. Tomanu bývalý
ředitel Bezpečnostní infor-
mační služby Stanislav Devátý
od starého hálkovského
představenstva koupil za
2,885 miliardy korun Kotvu
jako nemovitost (Stalo se tak
zaregistrováním na katastrál-
ním úřadě v Praze, součástí
operace bylo deklarované
zpětvzetí.) Smyslem této ope-
race byla snaha kyperské fir-
my FEL, kterou Tomanova
kancelář zastupovala, zabránit
jakémukoliv nakládání
s majetkem Kotvy. V listopadu
1997 pak došlo ke zrušení
této smlouvy, protože údajně
nebezpečí neoprávněného
nakládání s nemovitostmi
pominulo

## Bankovní dokumenty

Vraťme se však k zásadní otáz-
ce, otázce právoplatnosti důle-
žitých rozhodnutí a k otázce,
oč usilovala firma FEL.

V prosinci 1997 zrušil Vrch-
ní soud v Praze zápis minorit-
ního představenstva a na
bojovné prosincové valné hro-
madě Kotvy, kterou vedl
JUDr. Tomáš Sokol (pověřen
většinovým vlastníkem Tren-
du, tedy kyperskou společnos-
tí FEL), došlo ke zvolení nové-
ho představenstva. V něm se
z ničeho nic objevil zástupci
Českého investičního holdingu
(ČIH). Ten zastupovala další
přední advokátní kancelář
Kříž, Bělina & spol. Jak se
však mohl český investiční
holding objevit v této hře?
Holding ČIH koupil od kyper-
ského FEL opět na akcie Kot-
vy. (Této valné hromadě byl
přítomen mino JUDr. Toman
a i JUDr. Josef Lžičař - taková



„PIANO ČERNÝ". Tak zní heslo umožňující operovat s kontem společ-
nosti kyperské firmy Forminster Enterprises Limited v LGT Bank in
Liechtenstein. Z dalšího dokumentu jsou patrné podpisové vzory kon-
ta Forminster Enterprises Limited v LGT Bank in Liechtenstein. Jde
o důkaz o tom, že Hálek a spol. mohli s kontem volně disponovat.

koncentrace nejrenomovaněj-
ších českých právníků nastala
v našich novodobých dějinách
poprvé.)

ČIH je ryze český investor,
pro nějž je investice do akcií
Kotvy obchodem s únosnou
mírou rizika. Jeho zástupci
budou v orgánech Kotvy při-
nejmenším do té doby, než
soud rozhodne, komu zabloko-
vané akcie vlastně patří. Role
ČIH se zdá v případě operací
týkajících se Kotvy spíše
náhodná

## „PIANO ČERNÝ"

Prosincová valná hromada
Kotvy tedy nedopadla pro
Czech Value Fund dobře a jen
několik dnů poté se objevuje
prohlášení advokátky
JUDr. Jirkové z advokátní kan-
celáře Váňa, Pergl a partneři
v LN (12 12 1997), že mají
důkazy o tom, že kyperská fir-
ma FEL byla pouze Hálkovou
schránkou TÝDNU se podařilo
část těchto dokumentů získat
Pokud by se potvrdila jejich
pravost, podařil by se advoká-
tům husarský kousek (vzpo-
meňme si, že stejní právníci
vnesli jasno i do kauzy tunelo-
vání CS Fondů, když popsali
přesné toky peněz)

V případě Trendu by totiž
prolomili bankovní tajemství
lichtenštejnské banky LGT
Bank in Liechtenstein, kde
kyperská firma FEL měla svůj
účet. Hálek si totiž měl „prona-
jmout" firmu FEL se svým
obchodem, což má dokazovat
plná moc od kyperského FEL
pro nakládání s jeho kontem
ve prospěch Hálka a heslo pro
telefonické příkazy: „PIANO
ČERNÝ" je nepravděpodob-
né, že by kyperský občan zvolil
heslo v češtině

Tento průlom však určitě
povede k objasnění celého pří-
padu. Hálek a spol. s největší
pravděpodobností využili spo-
lečnosti FEL k převodu majet-
ku z fondu Trend ve prospěch
vlastních firem. Angličanům
z Czech Value Fund, který za
akcie Trendu zaplatili zhruba
10 milionů dolarů, a dalším
investorům se pak snad vrátí
peníze vložené do akcií fondu.
Případ neskončil podle zasvě-
cených právníků mlhou bít
ještě vzneseno až padesát
žalob

Jaromír Piskoř
(Autor je volný reportér)

LIECHTENSTEIN EVIDENCE ON THE TUNNELING OF TREND

# Password: PIANO BLACK

Reconstruction of a model case of how to tunnel an investment fund: TYDEN has evidence supporting the suspicion that the so-called "sale" of Kotva Department Store to abroad was a mere fraudulent trick.

TÝDEN MAGAZINE 04/1998

The case of Kotva DS (with the market value of about 2,885 billion Czech Crowns) is a battle of unseen dimensions in the Czech Republic. It is spiced up with people turned in jail, dozens of court claims, campaigns of well-known PR agencies as well as an unusual concentration of the most prestigious Czech lawyers. Before we present to you our reconstruction of the case on the basis of the newest findings by TYDEN, let's focus on its fundamental aspects: the company Kralovehradecka brokerska, a.s., (KHB), has attempted, as the documents we have acquired show, to take the majority share in Kotva out of Trend and transfer it via a foreign company to the benefit of not yet specifiable persons or entities. The case is one of the most complicated ones in the modern history of commercial law in our country.

### Reconstruction of the case of Trend & Kotva

The mutual investment fund Trend (founded by Skala Bank and the company Montovane stavby) took the advantage of the political background of Michael Kocab in combination with the business talents of Martin Kratochvil and won a credible success in the voucher privatization. The first activities perceived as a threat by the "founding fathers" of the fund were the activities concerning the grouping of small shareholders and the purchase and concentration of shares. Trend made an attempt to prevent a strong minority shareholders' group that would have the power of replacing the statutory bodies of the fund composed of the "founding fathers" from coming into existence by having made an offer of very good dividends (assuming that the original shareholders, satiated by such dividends, shall not get rid of their shares). However, this tactic did not prove effective enough and in a few short months, the investment vouchers holders (shareholders) started selling off their shares to the investor accumulating them again (the company Czech Value Fund, which shall turn out to play a significant role in the case later).

In February 1995, the new investment company Trend, a s , was founded having the registered capital of CZK 1,000,000, amongst whose shareholders were also Michael Kocab and Martin Kratochvil. This company undertook the administration of Trend. Its foundation and existence alone, however, seem to be very purpose-sown, since the shares of the administrating company Trend, a.s., were, on 2 August 1995, sold to Kralovehradecka brokerska, a.s , for the price of CZK 318,365,000, whose major shareholder was Miroslav Halek (held in custody now) Kocab's profit from this deal came to be CZK 36,142,000. The fact that this transfer was the first and principal foul against Trend's shareholders is borne out in Kocab's public announcement of November 1997: "In the case that the assets of the minority shareholders are not returned to them, I will not accept this sum of money but give it up to some charitable purpose under good control."

**Tunnel from the beginning**

The new administrators of Trend from Kralovehradecka brokerska realized their first fishy deal with the shares already three weeks after their takeover of the administrating company. Under three contracts they sold the lucrative shares of Trend (Telecom, Chemopetrol and Synthesia) to the company Consult Invest (whose boss is in custody now) for 487 million Czech Crowns. The purchaser only paid up the first installment (135 million) owing the rest until today – and having Trend lose 352 million in result. Moreover, it only held the shares purchased for a couple of days and then resold it to a company tied to Kralovehradecka brokerska

The simple comparison of the figures logically and immediately leads to a suspicion that this transaction served to cover the investment of KHB for the purchase of the administrating investment company Trend, a.s., including a 10% provision. We need to add at that time, Michael Kocab and Martin Kratochvil were still sitting on Trend's Board of Directors but both of them assert they were on holiday abroad and out of touch when the fund was selling the lucrative shares.

**Eyes on Kotva**

By the end of 1995, Trend owned about 20% of shares in Kotva. Halek, who was then not only the owner of the administrating company but already sat in the chair of the Chairman of the Board of Trend itself, gradually succeeded in gathering up 65% of shares in Kotva within all sorts of various companies.

The already mentioned Czech Value Fund (CVF) was interested in the Department Store and during 1996, it bought 37% of the shares in Trend on the capital market for about $ 10 million: on 1 November, the representatives of CVF, John Moffit and Michael Blum, were elected in the Board of Directors of the Fund. A week later, when they found out that the fund had already been tunneled out, the Ministry of Finance under their pressure imposed forced administration on Trend. The London executive of the company controlling CVF, Mr. Kingsnorth, once commented that it is not only the Board of Directors headed by Halek, who should be held responsible for the poor management of the fund, but also the previous Board of Directors, i.e. Kocab and his associates.

**Account Freezing**

John Moffit, the head of CVF, turns to fight back hard with the help of Michael Kocab and the law firm Vana, Pergl and Partners (AK VPP) in 1997. The accounts of Trend are frozen but the freezing order arrives at the Prague Security Center too late, which gives enough room to Halek and Co. to use their time and resell about 14% of the shares in Kotva from the frozen account to their crony companies by the end of January 1997. Besides that, they kept on removing other shares until they finally managed, on January 30, 1997, to sell the bulk of 56% shares in Kotva to the Cyprus company Forminster Enterprises Limited (FEL) for CZK 80 million. At the beginning of March, they were eventually put in custody and the governmental officials managed to freeze 65% of the shares in Kotva. This kicked off an unprecedented legal dispute between FEL and Czech Value Fund with violence.

**The battle of lawyers**

The lawyers from AK VPP hired by the minority shareholder, Czech Value Fund, enter the statutory bodies of Trend. They become the statutory representatives in April but at the same time Mgr. Robert Pergl and Mgr. Radek Blaha of AK VPP act in the role of Trend's attorneys at the general meetings of Kotva and they succeed in beating the reps of FEL in a head-on combat. As the attorney Pergl says in an interview for Pravo (newspaper) on October 27, 1997:"...and now we spoke over each others voices, me and their Chairman. And he gave it up in an hour – didn't have the nerves for it." In result, two Boards of Directors of Kotva emerge. Pergl draws up a power of attorney for himself.

In June 1997, the new owner of the 56% shares in Kotva, FEL from Cyprus, appoints as its attorney the law firm JUDr. Petr Toman and Partners. However, the Board of Directors nominated by the minority shareholder, i.e. Czech Value Fund, was already registered in the Commercial Register on August 4.

In August 1997, another fishy contract is signed: the junior lawyer of JUDr. Toman, the ex-head of the Security and Information Agency of the Czech Republic Stanislav Devaty buys Kotva as a real estate from the old Halek's Board of Directors for 2,885 billion Czech Cronws (it was achieved by the registration at the Land Registry of Prague, and the part of the transaction was the declared retraction of the contract after the fulfillment of certain conditions). The purpose of this transaction was the effort of the Cyprus company, being represented by Toman's law firm, to prevent any possible manipulation with the property of Kotva. In November 1997, this contract was cancelled since the danger of illegal disposition allegedly ceased to exist.

**Bank Documents**

But lets get back to the principal question of legality of the crucial decisions that were made and also to the one of what was FEL really after?

In December 1997, the Supreme Court in Prague abolished the registration of the minority Board of Directors and the new Board of Directors was elected at the inflammatory general meeting headed by JUDr. Tomas Sokol (appointed by the majority owner of Trend, the Cyprus company FEL). The new Board of Directors was partly made up of the reps of Czech Investment Holding (CIH). Out of the blue. CIH was represented by another leading law firm, Kriz, Belina & Co. But how did CIH get in the game? CIH bought an option for the shares in Kotva from Cyprus FEL. (By the way, personas like JUDr. Toman and JUDr. Lzicar were to be found at this general meeting – creating a concentration of the most renowned Czech lawyers per meter square unseen in our modern Czech history.)

CIH is a purely Czech investor for whom the investment in the shares in Kotva represents a transaction with a bearable risk. Its representatives shall remain in the statutory bodies of Kotva at least until the decision is finally made as to who is the owner of the frozen shares in Kotva. The role of CIH in the transactions around Kotva seems to be rather a coincidence than anything else.

**"PIANO BLACK"**

The December general meeting of Kotva didn't work out too well then for Czech Value Fund; a few days later, a statement by JUDr. Jirkova of the law firm Vana, Pergl and Partners appears in the press (LN, December 12, 1997) saying that they possess evidence that Cyprus FEL was nothing but Halek's money chest. TYDEN managed to get a hold of a part of these documents of evidence. If their authenticity is proved, the lawyers would have managed a quire an impressive feat (let us remember that it was the same law firm that brought the light into the case of the tunneled out CS Funds, having disclosed and described the exact money flows used).

In the case of Trend it would mean that they were able to break through the bank secret of LGT Bank in Liechtenstein where the Cyprian FEL held its account. By their allegations, Halek was supposed to "hire" FEL for his own business, a fact that should be evidenced by FEL's power of attorney for Halek to handle its account, including the phone-banking password 'PIANO BLACK'. It is rather unlikely that a Cyprus citizen would have selected a password in the Czech language.

However, it seems certain that this breakthrough will lead to the clarification of the whole case. Halek and Co. have most likely used FEL to transfer the assets from Trend to the benefit of the various companies owed by them. Hopefully, the Britons of Czech Value Fund, having paid about 10 million Czech Crowns for the shares in Trend, as well as the other investors have finally began to see the chance of recovering their investments put into the shares of the fund. Although the story is not over with yet and the lawyers initiated in the case claim that about 50 more court claims may still be brought and tried.

JAROMIR PISKOR<br>
<em>(an independent journalist)</em>

# Případ Trend: Co se dělo, všichni vědí, ale majetek se vrátí jen stěží

## Rozhýbat stát

## S jídlem roste chuť

### Jak získal Forminster peníze na nákup Kotvy



## Tunel koncil na Kypru

## Koncipient a tři miliardy

## Boj o Kotvu

## Návrat majetku nejistý

## Lobbing nebo občanská povinnost?

---

## Vývoj situace okolo Trendu

## Kocáb: Za to, jak fond skončil, cítím odpovědnost

### Tunel stihl tunel

### Tři rozmazené nabídky



### Jeden ze způsobů, jak Trend přišel o majetek

**TREND case – everybody knows what happened but the assets will hardly be restored**

Slovo daily - September 18, 1997 - Prague

The TREND case seems to be the touchstone with regards to tunnelled investment funds. At first appearance, this case seems to arouse optimism, as the main participants in the fraud connected to Královéhradecká Brokerská are in custody, the majority of the embezzled assets is frozen in the accounts kept with the Securities Centre and the majority shareholders of TREND assumed control over Kotva department store, which represented Trend's main asset. However, is everything as clear as this and will the former owners get their property back?

TREND, from which its managers "drained" CZK 1.25 billion, was the first investment fund to be placed under forced administration. However, the steps undertaken in the investment funds by Královéhradecká brokerská were far from isolated in the Czech Republic. *"Such deals were by then commonly undertaken Dozens of other similar deals – and I would not be surprised if there were hundreds – were undertaken even without being noticed"*, confirms the Stock Exchange analyst Michal Konečný from Komero.

**The taste grows with food**

TREND was one of the most successful investment funds in coupon privatisation. Within both waves of the privatisation, more than 100.000 "DIKS" (designation of the holders of the investment coupons – remark of translator) put their points to this fund and its assets amounted to CZK 1.3 billion. However, very soon after the purchase of TREND from Michael Kocáb by Miroslav Hálek and his company Královéhradecká brokerská, the assets of the fund decreased to one twentieth. The managers of the fund could probably have effectuated even this step without difficulties. The whole group around Královéhradecká brokerská may thank its greed for more than half a year of custody.

As taste grows with food, Mr. Hálek tried to sell the empty shell of the investment fund to a foreign investor – the British Czech Value Fund belonging to a group of British Regents Funds. Before this the investment company Prag Invest had already started to buy up shares in TREND from the minority shareholders for this investor. Prag Invest warned the British investors about the bad state of TREND. The fund was, however, in far worse condition than the British investors anticipated, and consequently, they hired lawyers and started immediately to bombard the state authorities.

**To make the state move**

*"The shareholders would not be able to do anything whatsoever The Ministry would maybe put the fund under forced administration, but nothing more"* says Robert Pergl from the law office Váňa, Pergl and Partners, which took on the representation of Czech Value Fund and of the tunnelled TREND. *"The TREND case is completely clear It was an absolute lack of professionalism and crooks are presently much more careful"* he alleges.

*"It was most difficult to make the state act and to compel it as well as all the other institutions, as for example the supervision over the capital market, to handle the case"*, he says. *"Initially, the state authorities were perplexed, they did not know what to do whatsoever. However, the situation soon made a turn"* he adds. The result of the efforts of the

shareholders was that, at the beginning of the May, the court took into the custody the first five participants in the fraud and one moth later, two other participants. The whole work of detecting the embezzled property was, however, several times incomprehensibly complicated by the court, which for example decided, at the end of the January, on the freezing of shares in Sokolovská uhelná and in Kotva in the accounts of the company IFM, but it delivered the freezing order only to the company IFM and failed to deliver it also to the Securities Centre. Consequently, the shares could have disappeared, on the same day, from the account. Within a further few days the court made a grave mistake for the second time, when it ordered, at the request of the Police, the freezing of all the accounts of KHB and of the companies linked to it, however, it confused the number of one of the accounts, in which there was deposited, by coincidence, all the money concerned – i.e. several hundred million Czech crowns. However, this failure contrived to be rectified.

### The tunnel ends in Cyprus

The most valuable asset of TREND was represented by the majority block of the shares in KOTVA. These share also disappeared. However, the court finally succeeded in freezing these shares in the account of the Cyprus company Forminster Enterprises Limited.

The mode of acquisition by FEL of the money for the purchase of the shares in Kotva is particularly remarkable: FEL arranged the transfer of the shares in Sokolovská uhelná from KHB to Atlanta Safe and acquired by this sole business deal the unbelievable profit of CZK 135 million (see table). After the purchase of 55.73% of shares in Kotva for less than CZK 83 million, more than CZK 50 million remained with FEL. "*It is true that a profit of CZK 135 million from one business deal is unusual, but it is not prohibited by law. The Act on money laundering could however apply to this business deal and the person who undertook this deal should have reported it immediately to Ministry of Finance*", estimates the analyst Konečný.

The shares in KOTVA were probably intended to be further transferred, however, before this could be effectuated, the court had finally frozen the account of FEL. Nevertheless, FEL, which was meanwhile bought by the French company DUNA with total assets amounting to CZK 200,000, alleges that it acquired the shares via a legitimate purchase and that it has no connection with KHB, which tunnelled TREND.

However, the brokers have a different opinion. "*These business deals prove an evident connection between KHB and FEL*", alleges Mr. Pergl and he also points out that the majority block of shares was sold for half of the price for which the shares were sold at the time on the Stock Exchange. "*The bigger the block of shares is, the higher is the average price of one share. Not even a multiple of the price on the Stock exchange is exceptional*", agrees Konečný.

### Lobbing or civil duty?

Meanwhile, the state authorities finally started to work faster, which is showed, inter alia, by more than a dozen of the frozen accounts with shares, which originated from TREND. However, the majority shareholders allege that this is all due to Michael Kocáb who exploited his good connections. "*The court succumbed after more than one year to consistent media pressure and to the one-sided description of the situation that the heroes from Trend are saving the minority shareholders. In fact, they seek to assume control over KOTVA, which was legally purchased by FEL*", alleges Mr. Petr Toman. "*The courts undoubtedly did not act*

*in our favour and were committing a lot of mistakes.*" counters Mr. Pergl and refers to the two above-mentioned mistakes of the commercial court in Hradec Králové.

Michael Kocáb does not deny that he negotiated about TREND with Ministers Ruml and Parkanová and with the Supreme Public Prosecutor Mr. Hrbotický, however, he defends himself against the charge of misuse of his contacts. "*It was not lobbying but a civil duty. When someone sees a thief, he should come forward. It is not a pleasure for me to be engaged in this case, but we have to understand that when you make your bed you must lie in it*", says Kocáb and adding that if he did not do anything he would certainly be charged with idleness. "*We have always played fairly, we tried to give the property back to the robbed,*" he adds.

## Battle for KOTVA

Meanwhile, the battle for TREND was definitively transformed into the battle for KOTVA. In spring, two general meetings of the department store took place within a short time period, at which two groups of shareholders refused to acknowledge one another and elected their own Boards of Directors. The minority shareholders allege that FEL did not announce, after the acquisition of the majority block of shares, that it was acting in concert with KHB and simultaneously failed to offer publicly the purchase of shares, which is why FEL lost all voting rights for a one-year period. However, FEL counters that in such a case it would lose only shares exceeding 50%. Total prevention from the possibility of exercising the rights of a shareholder is too hard a sanction. "*This case is a precedent, no other court has ever decided on such a case,*" alleges Mr. Tomáš Pelikán, who specialises in commercial law. According to him, the legal provisions are not completely clear in this case. Nevertheless, the court has not decided yet on the cancellation of the exercise of the rights of the shareholders of FEL and it refused requests from the minority shareholders regarding the delivery of the interlocutory injunction preventing FEL from the possibility of voting at yesterday's general meeting.

Both parties have filed several petitions against one another, which must be now treated by the court. The commercial register registered, on August 4, the Board of Directors elected by the minority shareholders around the Czech Value Fund. This registration was, however, immediately questioned by the majority shareholders. The attorneys of both the parties filed also a complaint with the Bar Association against their colleagues and charged them thereby with unethical behaviour.

## Law clerk and three billion

The case has gathered steam approximately a month ago. Kotva was bought from FEL through a purchase agreement by the former chief of BIS and current law clerk of Mr. Toman's law office, Stanislav Devátý, who has immediately admitted that the agreement was fake and that he hasn't got any money. "*If someone does something like that, he is absolutely hopeless. Attorneys at law should advise their clients and not purchase department stores for them and even admit to this as being a fake,*" says Pergl.

"*We were afraid that transfer of the real estate of Kotva to third persons was being prepared. The only lawful way how to foil this transfer was to make a seal at the Land Registry. The purpose is nothing else but sealing possible transfers until the court issues a final and binding decision on the ownership of Kotva,*" explains Mr. Toman.

Subsequently, Devátý and Forminster granted together a power of attorney to Michael Kocáb, authorising him exclusively to remove the lead seal from the Land Registry. Before this removal could have been effectuated he must have already received a signed agreement on the cancellation of the purchase agreement, which now lies with the notary. *"We needed again a trustworthy person, and so we chose the representative of the other party,"* says Toman.

Kocáb, however, strictly objects to the abuse of his name. *"If I had accepted that, I would have in fact legalized all their steps,"* he says indignantly. At the same time he refuses to accept Toman's interpretation of all these steps. *"By doing this acrobatic step in public, they intended to achieve that the view that it would not be considered as tunnelling. If some famous person pick pockets pedestrians on the Wenceslas square, grimacing and screaming. I am not stealing, would that also be in order?"* chafes Kocáb. Mr. Tomáš Pelikán thinks that all this is just a useless racket. *"The legal act, which has not been made seriously, even if made in writing, is invalid according to law,"* he asserts.

## The return of the property is uncertain

The thing that the shareholders of Trend, and of the other tunnelled funds, are principally interested in is, however, not the dispute of the two shareholders over the department store, but the question whether the state will finally begin to chase these cases fiercely and, principally, whether it will return the stolen property to them. Certain advances have been made, but there is no decisive campaign against the depravity on the Czech Capital market.

The stock market's analysts doubt that the entire property will return to the shareholders of Trend, although the vast majority of its original shares are frozen in the accounts of the Securities Centre. *"New owners must win the eventual court disputes. The shares are not numbered and it will be difficult to determine who was their original owner,"* says Michal Konečný from Komero. According to him, the purchaser will always, bar some exceptions, prove that he acted in good faith. But Pergl thinks the opposite. *"We have informed all of them in press. Whoever monitors the capital market must also know that KHB and the companies connected with it sold the stolen shares,"* he says. *"No one will prove to anyone that he knew about this media campaign,"* opposes Konečný. *"We are Trend's attorneys at law, and therefore we must assert that they knew, and they will evidently assert that they did not. It is up to the court to decide,"* concludes Pergl.

**Table:**
**How FEL acquired the money for the purchase of KOTVA**



The Regional Commercial Court in Hradec Králové decided, on January 24, on the freezing of the shares in the account of IFM. The judge, however, failed to deliver this decision to the Czech Securities Centre and consequently, Mr. Hálek and Co. were warned in time and managed to transfer the shares.

TREND

shares

IFM

24.1 1997
357,000
shares for
CZK 320
per share

The contract of 22.1 1997 on the purchase of 357,000 shares for CZK 700 per share

KHB — ATLANTA SAFE

24.1 1997
357,000 shares
for
CZK 320 per
share

27.1. 1997
357 000 shares
for
CZK 700 per
share

FORMINSTER

The profit of this sole financial operation amounts to CZK 135.6 million.

Titulek:        Trend:Předání tunelářů soudu je signálem pro zahraniční
investory
Datum vydání:   2.10.1998
Čas vydání:     15:53
Klíčová slova:  ČR; obchod; Trend; obžaloba
ID:             19981002F02034
Servis:         ece
Priorita:       4
Kategorie:      obo; zak; fin


Trend:Předání tunelářů soudu je signálem pro zahraniční investory

PRAHA 2.října (ČTK) - Předání tunelářů investičních fondů Trend a Mercia
soudu je očekávaným signálem pro zahraniční investory. ČTK to v reakci na
obžalobu sedmi osob stíhaných v případu vytunelování investičních fondů Trend
a Mercia řekl současný člen představenstva Trendu John Moffitt. Jak dodal,
případ je zlomovým pro celý český kapitálový trh.

Moffitt také připomněl, že tunelování Trendu je prvním případem v ČR, kde by
měly být stíhané osoby obžalovány z trestného činu zločinného spolčení.
Důkazy shromážděné v trestním řízení dokládají, že společnost Forminster
Enterprises Limited, na niž byly převedeny z Trendu akcie Kotvy, stále ovládá
Miroslav Hálek, který řídí boj proti Trendu dokonce i z vězení, dodal Moffitt

Na sedm osob stíhaných v případu vytunelování investičních fondů Trend a
Mercia podal ve čtvrtek královéhradecký krajský státní zástupce obžalobu k
tamnímu krajskému soudu. V současnosti je ve vazbě z obviněných pouze
Miroslav Hálek. Jeden z největších případů poškození investičních fondů v ČR,
kde škoda činí více než 1,3 miliardy korun, se tak dostává tímto
krokem do závěrečné fáze.

Státní zástupce obžalované viní ze spáchání trestných činů zneužití informací
v obchodním styku a zpronevěry spáchaných ve zločinném spolčení či pro účast
na tomto spolčení. Pokud budou soudem uznáni vinnými, hrozí jim až 15 let
vězení.

Marcela Prošková jw


_____

**Title:** Trend: Handing over of tunnellers is signal for foreign investors
**Date of issue:** October 2, 1998
**Time of issue:** 15:53
**Key words:** Czech Republic; business; Trend; charges
**ID:** 19981002F02034
**Service:** ece
**Priority:** 4
**Category:** obo; zak; fin

Trend: Handing over of tunnellers is signal for foreign investors

PRAGUE, October 2, (Czech Press Agency) – The handing over of the tunnellers of the Trend and Mercia investment funds to the court is a long awaited signal for foreign investors, stated John Moffitt, a current member of the Board of Directors of Trend, to the Czech Press Agency, in reaction to the charges of seven people prosecuted in the case of the tunnelling of the Trend and Mercia investment funds. He added that this case represents a turning point for the whole Czech capital market.

Moffitt also mentioned that the tunnelling of the Trend fund is the first case in the Czech Republic where the persons are charged with the offence of criminal conspiracy

The evidence collected in the criminal proceedings proves that the company Forminster Enterprises Limited, to which the shares in Kotva were transferred from Trend, is still controlled by Mr. Hálek, who is leading a battle against Trend even from prison, added Moffitt.

The Regional Public Prosecutor in Hradec Králové delivered to regional court, on Thursday, an indictment of seven people prosecuted in the case of the tunnelling of the Trend and Mercia investment funds. At the moment, from all the indicted persons, only Miroslav Hálek remains in custody. One of the greatest cases of causing damage to investment funds in the Czech Republic, where the damage amounts to almost CZK 1.3 billion, enters hereby into the final phase.

The Public Prosecutor indicted the accused persons with the criminal offences of insider dealing and embezzlement committed in a criminal conspiracy, or for participation in such a criminal conspiracy Should the court find the accused guilty, they could be imprisoned for up to 15 years.

Marcela Prošková jw

# United States District Court

_____  District of  **Massachusetts** _____

KOTVA a.s.

**SUMMONS IN A CIVIL CASE**

V.

ANDREW WEISS and
WEISS ASSET MANAGEMENT, LLC

CASE NUMBER: **05-10679 RCL**

TO:

Richard Harazim
U Bažantnice 305
Prezletice ZIP: 250 73
Czech Republic

**YOU ARE HEREBY SUMMONED** and required to serve upon COUNTER-CLAIMANT'S ATTORNEYS

Edward P. Leibensperger
Benjamin A. Goldberger
McDermott Will & Emery LLP
28 State St.
Boston, MA 02109
USA

1 + 617-535-4000

an answer to the counter-claim which is herewith served upon you, within <u>20</u> days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the counter-claim. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.



SARAH A. THORNTON                                      JUN 2 0 2005

_____                      _____
CLERK                                                                              DATE

_____
(BY) DEPUTY CLERK

AO 440 (Rev. 10/93) Summons in a Civil Action

## RETURN OF SERVICE

| Service of the Summons and complaint was made by me[1] | DATE |
|---|---|
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐  Served personally upon the third-party defendant   Place where served: _____

_____

☐  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

☐  Returned unexecuted: _____

_____

_____

☐  Other *(specify)*: _____

_____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____
   Date

_____
*Signature of Server*

_____
*Address of Server*

[1] As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KOTVA a.s., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW WEISS and WEISS ASSET MANAGEMENT, LLC, <br><br> Defendants. <br> ANDREW WEISS, WEISS ASSET MANAGEMENT LLC, K T, INC. and CVF INVESTMENTS, LTD., <br><br> Counterclaim-plaintiffs, <br><br> v. <br><br> KOTVA a.s., MARTIN BENDA, RICHARD HARAZIM, FORMINSTER ENTERPRISES, LTD., SPV CO and JOHN DOES 1–5, <br><br> Counterclaim-defendants. | C.A. No. 05-10679-RCL |

## FIRST AMENDED ANSWER AND COUNTERCLAIM

### SUMMARY

Defendant and counterclaim-plaintiff Andrew Weiss ("Weiss") is a professor of economics at Boston University. He has advised the World Bank on the Czech Republic's capital markets and is an authority on developing markets and their need for financial regulation. He also operates a company that manages investments in the Czech Republic. Among those investments is a significant minority interest in the plaintiff, Kotva a.s ("Kotva"). In May of 2004, representatives of Forminster Enterprises Ltd. ("Forminster"), the majority shareholder of Kotva, threatened to take Kotva's only valuable asset for itself and give the minority

shareholders nothing. Weiss responded by authorizing lawyers in the Czech Republic to file lawsuits to protect the rights of the minority shareholders.

Forminster's first response was to approach Weiss and offer to purchase his investors' interest in Kotva. However, Forminster would not agree to pay an amount equal to the proportional share of Kotva's value to which Weiss's investors were entitled. When Weiss rejected Forminster's inadequate offers, Forminster adopted a second, more sinister approach. Forminster and its affiliates used their influence over Czech law enforcement to instigate a criminal prosecution of Weiss on sham charges of blackmail. Although Weiss has not received formal notice of any charges, the press has reported that charges were brought. Seeking to apply additional pressure, Forminster and its affiliates then used their control over Kotva to file this lawsuit against Weiss in Kotva's name.

Kotva is presently a corporate shell and alter ego to Forminster and its affiliates: counterclaim-defendants Forminster, Martin Benda ("Benda"), Richard Harazim ("Harazim"), SPV CO and John Does 1–5 (collectively the "Forminster Group"). The Forminster Group has conspired against Weiss and the shareholders of Kotva to convert the assets of Kotva for their own benefit. Forminster is a private company, incorporated in Cyprus, and the conspirators keep the identity of its owners a closely-kept secret. Harazim and Benda serve as the front men for Forminster, and hide the identities of the company's true beneficial owners.

According to reports in the Czech press and reports of Czech prosecutors and as detailed below, the Forminster Group controls proceeds looted in one of the most notorious frauds in the post-Communist history of the Czech Republic, a crime known as the "Trend Scandal" or "Trend Tunneling." The Czech press adopted the word "tunneling" to describe the process by which a company's management embezzles the company's assets and moves them through a series of

intermediaries until the intended recipients of the assets are able to liquidate the assets and abscond with the loot. Most importantly for this case, the illegal proceeds obtained by the Forminster Group include its control over a majority of the shares of Kotva.

In the early 1990s, Kotva a.s. was a department store company with a large, valuable store location ("Department Store") in downtown Prague in the Czech Republic. A Czech investment fund known as the Trend Fund ("Trend") was the largest shareholder of Kotva a.s. According to press reports of the results of a government investigation, Trend's assets, including its shares in Kotva, were looted through a series of frauds, and the Kotva shares ended up in the control of the Forminster Group. As a result of the Trend Tunneling, the Forminster Group claims to own at least 55% of Kotva's shares.

As a result of Forminster's involvement in the Trend Tunneling, the High Court of Liechtenstein froze Forminster's accounts at a bank in Vaduz, Liechtenstein. Similarly, a Czech prosecutor froze Forminster's shares in Kotva a.s. because of suspicion that they were the proceeds of criminal activity. Thus, unable to liquidate their shares in Kotva, the Forminster Group decided to use their control over Kotva to sell the company's only valuable asset—its real estate—and keep all of the proceeds for itself, defrauding Kotva's minority shareholders and depriving the Trend victims of their rightful share of the proceeds.

## ANSWER

Defendants Weiss and Weiss Asset Management LLC ("WAM") (collectively, the "Defendants") answer the Complaint of Plaintiff Kotva a.s.:

## INTRODUCTION

The Introduction contains no averments within the meaning of Federal Rules of Civil Procedure 8 and 10 and requires no response. To the extent a response is required, the Defendants deny the factual allegations in the Introduction.

3

## JURISDICTION

1.    Paragraph 1 states a conclusion of law to which no response is required.

2.    Paragraph 2 states a conclusion of law to which no response is required.

3.    Paragraph 3 states a conclusion of law to which no response is required.

## PARTIES

4.    Admitted.

5.    Admitted.

6.    Admitted.

## FACTS

7.    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 7.

8.    Admitted.

9.    Defendants admit that Weiss Asset Management, LLC is an investment firm headquartered in Boston, Massachusetts. Defendants further admit that Weiss owns a majority of Weiss Asset Management and controls Weiss Asset Management. Defendants deny the remainder of paragraph 9.

10.    Defendants admit the first sentence of paragraph 10. Defendants deny the second sentence of paragraph 10.

11.    Denied.

12.    Defendants admit the first sentence of paragraph 12. Defendants deny the remainder of paragraph 12.

13.    Defendants admit that the Forminster Group installed new management at Kotva and called this a management change. On information and belief, Defendants deny that the

4

purpose of installing new management was to effectuate a turnaround of Kotva's business. By way of further answering, Defendants believe that the purpose of installing new management was to loot Kotva a.s. of its real estate. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of paragraph 13.

14.    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 14.

15.    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 15.

16.    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 16.

17.    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 17.

18.    On information and belief, Defendants deny that the purpose of this alleged transfer was "to effectuate the sale" of the Shopping Centre. By way of further answering, Defendants believe that the purpose of the alleged transfer was to divert the proceeds from the sale of the Shopping Centre. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of paragraph 18.

19.    Defendants admit that during May 2004, the press reported a pending sale of the Shopping Centre to Irish investors. Defendants deny the remainder of paragraph 19.

20.    Defendants admit that, on May 12, 2004, Weiss and Hoffmann met with Harazim and Benda. Defendants admit that Harazim and Benda were, respectively, the CEO and chairman of the board of Kotva at that time but deny that Benda and Harazim held themselves

out as representatives of Kotva during the May 12, 2005 meeting. Defendants deny the remainder of paragraph 20.

21. Denied.

22. Defendants admit that Gilroy commenced a lawsuit claiming that SPV KN is not the legal owner of the Shopping Centre and that Kotva is the legal owner of the Shopping Centre. Defendant Andrew Weiss further admits that he communicated with Hoffman and Ondrej Peterka from Boston and that Hoffman sent bills to Brookdale in Boston. Defendant Weiss Asset Management denies that it communicated with Hoffman and Peterka from Boston. Defendants deny the remainder of paragraph 22.

23. Defendants admit that Gilroy opened an account at the Securities Centre on June 23, 2004. Defendants further admit that Gilroy purchased one share of Kotva for 430 CZK on June 24, 2004 and 134 shares of Kotva for 430 CZK per share on June 29, 2004. Defendants deny the remainder of paragraph 23.

24. Defendants admit that, on June 30, 2004, Gilroy filed a civil lawsuit against Kotva, KN and SPV KN in Prague challenging the transfers of the Kotva Shopping Centre from Kotva to KN and the subsequent transfer from KN to SPV KN and seeking a declaration that Kotva owns the Shopping Centre. Defendants are without knowledge or information sufficient to form a belief as to the truth of whether KN and SPV KN were wholly owned by Kotva at the time of both transfers. Defendants deny the remainder of paragraph 24.

25. Defendants admit the first sentence of paragraph 25. Defendants deny the remainder of paragraph 25.

26. Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 26.

27.    Defendants admit that, on August 17, 2004, Weiss sent the letter attached to the Complaint as Exhibit A to Martin Benda, who held himself out as a representative of Forminster. That document speaks for itself. Defendants deny the remainder of paragraph 27.

28.    Defendants admit that an e-mail was sent on August 17, 2004 with Richard Harazim listed as the sender and that e-mail speaks for itself. Defendants deny the remainder of paragraph 28.

29.    Defendants admit that, on August 23, 2004, Weiss sent the letter attached to the Complaint as Exhibit B to Martin Benda and Richard Harazim, who held themselves out as representatives of Forminster. That document speaks for itself. Defendants deny the remainder of paragraph 29.

30.    Defendants admit that, on November 23, 2004, Weiss sent the letter attached to the Complaint as Exhibit C to Martin Benda and Richard Harazim, who held themselves out as representatives of Forminster. That document speaks for itself. Defendants deny the remainder of paragraph 30.

31.    Denied.

32.    Admitted, except that Defendants deny that Weiss is the sole director of K T Inc.

33.    Defendants admit that, on December 23, 2004, Peterka sent a letter to Bryan David Paul Wilson, of Linklaters Prague, and that the letter contained the block quote in paragraph 33. That letter speaks for itself. Defendants deny the remainder of paragraph 33.

34.    Defendants admit the second sentence of paragraph 34, except that Defendants deny that Weiss's e-mail was in response to a communication from Kotva. Defendants deny the remainder of paragraph 34.

35.    Denied.

36.    Denied.

37.    Defendants deny the first sentence of paragraph 37. Defendants are without knowledge or information sufficient to form a belief as to truth of the remainder of paragraph 37.

38.    Defendants deny the first two sentences of paragraph 38. Defendants neither admit nor deny the remainder of paragraph 38, but instead state that they reference material protected by the attorney-client privilege and which the plaintiff has obtained improperly.

39.    Denied.

40.    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 40.

41.    Defendants admit that Weiss held a video press conference in Boston on March 15, 2005. Defendants further admit that Exhibit E contains a true and accurate copy of Weiss's written statement in English. That document speaks for itself. Defendants are without knowledge or information sufficient to form a belief as to whether the portion of Exhibit E written in Czech is a completely accurate translation of Weiss's written statement. Defendants deny the remainder of paragraph 41.

42.    Denied.

43.    Defendants are without knowledge or information sufficient to form a belief as to whether internal documents were disclosed as a result of any charges. Defendants deny the remainder of paragraph 43.

44.    Defendants neither admit nor deny the allegations in paragraph 44, but instead state that they reference material protected by the attorney-client privilege and which the plaintiff has obtained improperly.

45.    Denied.

46.    Defendants admit that, on October 25, 2004, Hoffman sent Weiss an email that includes the text quoted in paragraph 46 of the Complaint.  That e-mail speaks for itself. Defendants deny the remainder of paragraph 46.

47.    Defendants admit that, on November 25, 2004, Weiss sent Hoffman the document attached to the Complaint as Exhibit G.  That document speaks for itself.  Defendants deny the remainder of paragraph 47.

48.    Denied.

## Count I

49.    Defendants incorporate by reference their responses to the allegations in the preceding paragraphs.

50.    Denied.

51.    Denied.

52.    Defendants admit that Weiss is a resident of Massachusetts and that Weiss Asset Management has its principal place of business in Massachusetts.  Defendants deny the remainder of paragraph 52.

53.    Denied.

54.    Denied.

## Count II

55.    Defendants incorporate by reference their responses to the allegations in the preceding paragraphs.

56.    Paragraph 56 states a conclusion of law as to which no response is required.

57.    Denied.

58.    Denied.

59.    Denied.

60.    Denied.

61.    Denied.

62.    Denied.

63.    Denied.

64.    Denied.

65.    Denied.

66.    Denied.

67.    Denied.

68.    Denied.

## Count III

69.    Defendants incorporate by reference their responses to the allegations contained in the preceding paragraphs.

70.    Denied.

## Count IV

71.    Defendants incorporate by reference their responses to the allegations contained in the preceding paragraphs.

72.    Paragraph 72 states a conclusion of law as to which no response is required.

73.    Denied.

74.    Denied.

75.    Denied.

76.    Denied.

## Count V

77.    Defendants incorporate by reference their responses to the allegations contained in the preceding paragraphs.

78.    Paragraph 78 states a conclusion of law as to which no response is required.

79.    Denied.

80.    Denied.

## Count VI

81.    Defendants incorporate by reference their responses to the allegations contained in the preceding paragraphs.

82.    Denied.

83.    Denied.

## Count VII

84.    Defendants incorporate by reference their responses to the allegations contained in the preceding paragraphs.

85.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of paragraph 85.

86.    Denied.

87.    Denied.

## REQUESTS FOR RELIEF

The Plaintiff's Requests for Relief are not averments within the meaning of Federal Rules of Civil Procedure 8 and 10 and require no response. To the extent a response is required, Defendants request that the Court deny all of the Plaintiff's Requests for Relief.

## FIRST AFFIRMATIVE DEFENSE

Kotva a.s. is not a real party in interest.

## SECOND AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred by the doctrine of unclean hands.

## THIRD AFFIRMATIVE DEFENSE

The Plaintiff has failed to state a claim on which relief can be granted.

## FOURTH AFFIRMATIVE DEFENSE

The Plaintiff has failed to plead fraud with particularity.

## FIFTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred by estoppel.

## COUNTERCLAIM

Counterclaim-plaintiffs Andrew Weiss ("Weiss"), Weiss Asset Management LLC ("WAM"), K T, Inc. ("K T") and CVF Investments Ltd. for their Counterclaim against counterclaim-defendants Kotva a.s., Martin Benda, Richard Harazim, Forminster Enterprises, Ltd., SPV CO and John Does 1–5 state:

### Jurisdiction and Venue

1.      The Court has subject matter jurisdiction over the Counterclaim under 28 U.S.C. § 1332 and 28 U.S.C. § 1367.

2.      The Court has personal jurisdiction over the counterclaim-defendants because they have committed tortious acts in Massachusetts, including filing this lawsuit; transacted business in Massachusetts by sending correspondence into Massachusetts, including e-mails, soliciting business from Massachusetts residents; caused injury in Massachusetts by their actions outside of Massachusetts; and availed themselves of the jurisdiction of this Court.

3.      Venue is proper in the District of Massachusetts under 28 U.S.C. §§ 1391(a) and 1391(c) and because Kotva a.s. filed the original complaint in this District.

*Parties*

4.     Defendant and counterclaim-plaintiff Andrew Weiss is an individual residing in Brookline, Massachusetts.

5.     Defendant and counterclaim-plaintiff Weiss Asset Management LLC is a Delaware limited liability company with its principal place of business in Boston, Massachusetts.

6.     Counterclaim-plaintiff K T, Inc. is a Delaware corporation with its principal place of business in Boston, Massachusetts. It owns 1,000 shares of Kotva a.s. and 1,000 shares of Trend.

7.     Counterclaim-plaintiff CVF Investments Ltd. is a Cyprus corporation with its principal place of business in Nicosia, Cyprus. It owns shares of Kotva a.s. and shares of Trend. CVF Investments Ltd. is a nearly wholly owned subsidiary of Brookdale Global Opportunity Fund ("BGO"). The interests of CVF Investments Ltd. in Kotva a.s. and Trend is referred to generally and interchangeably as "CVF Investments' shares" or "BGO's shares."

8.     Plaintiff and counterclaim-defendant Kotva a.s. is a company organized under the laws of the Czech Republic with its principal place of business in Prague, Czech Republic.

9.     Counterclaim-defendant Forminster Enterprises Ltd. ("Forminster") is a company organized under the laws of Cyprus. On information and belief, Forminster's principal place of business is outside the United States. The identity of its owners is a closely-kept secret.

10.     Counterclaim-defendant SPV CO is a company organized under the laws of Cyprus. On information and belief, SPV CO's principal place of business is outside the United States.

11.     Counterclaim-defendant Martin Benda ("Benda") is an individual residing in the Czech Republic. Benda was a member of the board of Kotva a.s. for part or all of the period

13

from May 21, 1999 to March 8, 2004. From March 8, 2004 to the present, Benda has been the Chairman of the Supervisory Board of Kotva a.s. Forminster nominated Benda to Kotva's board and used its control over a majority of Kotva's shares to secure his election. Benda also is or was a member of the board of Forminster and an agent of Forminster. Finally, Benda is a director of SPV CO.

12.    Counterclaim-defendant Richard Harazim ("Harazim") is an individual residing in the Czech Republic. Harazim is Kotva's general manager or chief executive officer. Harazim was a member of the board of Kotva a.s. for part or all of the period from May 29, 1997 to March 8, 2004. From March 8, 2004 to the present, Harazim has been a member of the Supervisory Board of Kotva a.s. Forminster nominated Harazim to Kotva's board and used its control over a majority of Kotva's shares to secure his election. Harazim also is or was a member of the board of Forminster and an agent of Forminster.

13.    Counterclaim-defendants John Does 1–5 are individuals residing in the Czech Republic and elsewhere outside the United States who are members of a conspiracy among Forminster, SPV CO, Benda, Harazim and others (collectively, the "Forminster Group").

14.    One object of the Forminster Group's conspiracy is to strip Kotva a.s. of its real estate, sell the real estate and distribute the proceeds among the members of the Forminster Group.

*Factual Allegations*

15.    Weiss Capital LLC is a Delaware limited liability company.

16.    In 2002, Weiss Capital took over the management of Brookdale Global Opportunity Fund ("BGO"). BGO is an investment fund. Its subsidiary, CVF Investments Ltd., owns shares in Trend, a Czech investment fund, and shares in Kotva a.s.

14

17.    CVF Investments Ltd. has owned shares in Trend since 1996 and shares in Kotva a.s. since 1997.

18.    Trend's most valuable asset is a significant stake in Kotva a.s. However, as described in more detail in paragraphs 42–60 below, these shares were embezzled in the mid-1990s and came into the possession of Forminster.

19.    K T, Inc. and CVF Investments Ltd. have both a direct interest in Kotva a.s. as shareholders and an indirect interest in Kotva as shareholders in Trend, which is the rightful owner of at least 32% of the shares of Kotva a.s.

20.    In September 2003, Weiss Capital entered into an agreement with Vladimir Hoffmann under which Hoffmann would assist BGO in liquidating CVF Investments' shares in Trend and Kotva a.s. Hoffmann's agreement with Weiss Capital ended in October 2004.

21.    In September 2003, Harazim approached Hoffmann and suggested that Forminster might be interested in purchasing BGO's shares in Kotva. A Forminster Group affiliate then offered to purchase BGO's Kotva shares for 20,000,000 CZK. Weiss rejected this offer.

22.    J&T Securities then offered approximately 26,000,000 CZK for BGO's Kotva shares in December 2003. On information and belief, J&T Securities also has commercial relationships with the Forminster Group. Weiss rejected this offer as well.

23.    While attempting to purchase BGO's shares in Kotva, the Forminster Group was also attempting to sell Kotva's only valuable asset, a department store in downtown Prague (the "Department Store").

24.    On May 12, 2004, Weiss, Hoffmann, Benda and Harazim met in Prague. At the meeting, Harazim told Weiss and Hoffmann that CVF Investments' shares in Kotva were worth

*nothing*. Harazim said that because CVF Investments is a minority shareholder of Kotva a.s. its

shares in Kotva have no value. Harazim further said that Kotva will never make any

distributions to its shareholders and, therefore, Kotva's shareholders would not receive any of the

proceeds of the sale of the Department Store. Harazim offered his opinion that there was nothing

that Weiss could do about this, or the previous theft of Trend's assets.

25.     In June 2004, two of Kotva's shareholders, Balfindor and Gilroy, filed lawsuits in

the Czech courts challenging actions taken by the Forminster Group. Balfindor challenged

actions taken at a Kotva general meeting. Gilroy challenged the Forminster Group's efforts to

move the Department Store from Kotva a.s. to other companies.

26.     In August 2004, Benda and Harazim approached Hoffmann and offered to

purchase BGO's Kotva shares for 75,000,000 CZK. Neither Benda nor Harazim specified what

company within the Forminster Group would purchase those shares. Weiss rejected this offer

and made a counter-offer to sell BGO's Kotva shares for 131,000,000 CZK.

27.     On August 17, 2004, Harazim responded to the counter-offer by sending an email

to a Weiss Capital employee in Boston, Massachusetts, stating:

> Unfortunately, your offer doesn't seem to deal with the lawsuits
> brought about by Balfindor and Gilroy against our company.
> Without resolving these and any other potential lawsuits against
> our company raised by BGO or by BGO controlled entities we
> won't be able to conclude any deal at all.
>
> Should you reconsider your position we can return to the
> discussion about the purchase price for Kotva shares held by BGO.

28.     Based on Harazim's email, Weiss amended his offer to sell BGO's shares for

131,000,000 CZK by including a promise not to initiate any legal challenges relating to the

ownership of the Department Store and a promise to attempt to persuade Gilroy to withdraw its

lawsuit challenging the transfer of the Department Store.

29.    On August 27, 2004, Harazim responded by email to a Weiss Capital employee in Boston, Massachusetts and demanded that any purchase of Kotva shares was conditioned on the withdrawal of "lawsuits filed by Gilroy AND Balfindor, not only Gilroy." Around the same date, Benda told Hoffmann that any purchase of Kotva shares was conditioned on the release of all claims that BGO had against the Forminster Group, including claims that Forminster's shares in Kotva really belong to Trend.

30.    The release of claims that Trend is the rightful owner of Forminster's shares in Kotva would effectively strip BGO's Trend shares of their value. A share in Trend is valuable primarily because Trend is the rightful owner of at least 32% of Kotva and Kotva is the rightful owner of a valuable piece of real estate or the proceeds from the sale of that real estate. Moreover, the shareholders of Trend have a claim against Forminster for the other assets that were tunneled from Trend. This tunneling provided the capital that Forminster used to buy additional shares in Kotva. Weiss could not agree to surrender these claims for nothing in return.

31.    Thus, in order to meet Harazim's and Benda's demands, Weiss amended his offer so that it (a) referenced Balfindor's lawsuit; (b) included BGO's shares in Trend in addition to BGO's shares in Kotva; and (c) increased the purchase price to reflect the value of BGO's Trend shares. Weiss enclosed with the new offer a detailed calculation supporting the valuation of BGO's holdings in both Kotva and Trend.

32.    Unwilling to pay CVF Investments the fair value of its shares, as reflected by the value of the Department Store, Harazim rejected this offer. Harazim repeatedly refused to respond to requests to explain why the purchase price Weiss suggested was too high or why the calculations Weiss presented were incorrect or inaccurate.

17

33.    Instead the Forminster Group responded by using its influence over Czech law enforcement to cause or attempt to cause a contrived criminal charge of blackmail to be brought against Weiss. Harazim is quoted in the Czech press as having "filed a criminal complaint." This charge, if it has been brought, has no merit. On information and belief, the essence of the Forminster Group's allegation is that Weiss threatened to bring lawsuits challenging the embezzlement of Trend's shares in Kotva and the transfers of the Department Store unless his investors received their fair share of the proceeds of the sale of the Department Store. Even if this sort of conduct were criminal—it is not—it was Harazim and Benda rather than Weiss who demanded that any purchase of stock be linked to the withdrawal of lawsuits.

34.    The Forminster Group's motive in causing Czech law enforcement to bring the criminal charge was to obtain an unfair advantage over Weiss in its efforts to coerce Weiss to abandon his investors' claims in the Czech courts that were contrary to the Forminster Group's interests (the "Czech litigation").

35.    From August 2004 until January 2005, Harazim sent at least nine emails to Weiss and at least one other person in Massachusetts as part of the Forminster Group's efforts to pressure Weiss to abandon his investors' claims in the Czech litigation. More specifically, in these emails dated August 17, 2004, August 27, 2004, December 1, 2004, December 3, 2004, December 7, 2004, December 8, 2004, December 15, 2004, January 4, 2005, and January 7, 2005, Harazim consistently sought to purchase shares in Kotva a.s. but conditioned any purchase on the termination of the Czech litigation. Harazim purposefully directed each of these emails to recipients he knew to be residents of Massachusetts who worked in Massachusetts.

36.    Harazim sent these emails at the direction of Benda, who he described in an August 27, 2004 email as "in charge of this deal."

18

37.    On information and belief, Harazim also sent these emails at the direction of John Does 1–5.

38.    The Forminster Group then filed this civil case against Weiss. On information and belief, Benda and Harazim personally caused Kotva a.s. to bring this lawsuit, after receiving instructions to do so from Forminster and John Does 1–5.

39.    On information and belief, Benda, Harazim and/or John Does 1–5 sent multiple e-mails, letters and/or facsimile transmissions and made multiple telephone calls to their agents in Massachusetts in order to bring this lawsuit.

40.    The Forminster Group's bad faith motive in filing this case was to obtain an additional unfair advantage over Weiss in its efforts to coerce Weiss to abandon his investors' claims in the Czech litigation.

41.    Weiss and WAM have incurred and continue to incur damages in Massachusetts, including damage to reputation, disruption of their business, lost time and attorneys' fees, as a result of the Forminster Group's decisions to cause Czech law enforcement to bring the criminal charge and to cause Kotva to file this case.

### The Tunneling of the Assets of the Trend Fund

42.    In 1995 and 1996, Trend's management embezzled Trend's assets, including Trend's shares in Kotva. The embezzlement of Trend's assets has been documented extensively in several Czech government reports and is commonly referred to as the "Trend Scandal" or "Trend Tunneling." The media has also reported extensively on the Trend Scandal[1] as well as several unusual events surrounding the investigation of the Trend Scandal. On information and

---

[1] Attached hereto as Exhibit 2 are some press articles about the Trend Scandal, with English translations.

belief, multiple law enforcement personnel involved in the investigation of the Trend Scandal have either resigned or committed suicide under suspicious circumstances.

43.    Miroslav Hálek, who exerted managerial control over Trend at the time of the embezzlement, also possessed a general power of attorney to act on behalf of Forminster during the same time period.

44.    Hálek's connections to Forminster and personal involvement in the embezzling of Trend's assets are documented in detail in several reports authored by Czech prosecutors. For example, the Deputy Regional Public Prosecutor wrote:

> Dealings and transfers of shares of Kotva, a.s., represented the most significant object of interest for the defendants [Miroslav Hálek & Co.]. Kotva shares belonged among essential investments of the fund within the period before August 4, 1995. The aim of the previous management was, and still is, to transfer the shares of Kotva to companies controlled by Mr. Hálek and Co., and to gain majority shareholding in Kotva through other purchases, whereto they also used the resources of the fund. The Kotva shares are still in the focus of interest of Ing. Hálek's and Co. surrounding companies. Even within the period of the forced administration, several transfers of Kotva shares were accomplished, namely between persons and companies and Jiří Mareš, classmate of Mr. Hálek, through whom Kotva shares were transferred back to the companies controlled by Ing. Hálek, and who is, with a high probability, a significant person. At the time of adoption of a non-effective resolution by the Regional Court in Hradec Králové to prohibit any disposal with the shares of Kotva by Královehradecká brokerská, the transfer of Kotva shares to the company **Forminster Enterprises, Ltd.**, with the registered office at Cyprus, to whose financial accounts Ing. Hálek holds particular rights, was effectuated by an order of KHB.
>
> The activities of Mr. Hálek's group have not been stopped even by the decision about the forced administration [of Trend], and as it results from recent findings, their effort to take the control of Kotva and the assets of Trend continues up to the present and neither the criminal proceedings nor their placement in detention constitute any obstacle to it. Even before the commencement of criminal proceedings, the transfer of part of shares of Kotva to **Forminster Enterprises, Ltd.**, with its registered office at Cyprus, was effectuated and after that the company Královehradecká (brokerská) a.s. was sold to the company Bonit kapital, a.s., Brno. KHB, renamed to Brněnská obchodní, a.s., is now facing a petition for declaration of bankruptcy against it. According to recent findings, even within the period of his detention, Ing. Hálek signed important documents concerning the accounts of the **Forminster Enterprises, Ltd.** Company with LGT Bank in Vaduz in Liechtenstein.

20

September 30, 1998 Report of the Hradec Králové Deputy Regional Public Prosecutor (emphasis added).

45.    After a complicated series of transactions, members of the Forminster Group gained possession of the Kotva shares embezzled from Trend and, with those shares, control over Kotva. The Forminster Group paid significantly less for Trend's Kotva shares than the shares were worth.

46.    The Forminster Group also used other assets embezzled from Trend to purchase shares in Kotva. The Kotva shares Forminster obtained from Trend and the Kotva shares Forminster purchased with Trend's assets total more than 55% of Kotva's shares.

47.    As part of an investigation of the Trend Tunneling, in 1997 a public prosecutor in the Czech Republic froze the Kotva shares held by the Forminster Group, preventing Forminster from selling them. In 2004, the Czech Constitutional Court affirmed the actions of the prosecutor, writing:

> In the opinion of the then Supervising Public Prosecutor of the Regional Public Prosecutor's Office in Hradec Kralove, the said securities were the subject of a crime or as the case may be, the proceeds of crime, and were totally and materially related to the commitment of a grievous crime against property. The issuance of the injunction was meant to preclude the completion of the chain of illegal securities' transfers.

Czech Constitutional Court, Decision No. II US 267/03 (April 15, 2004). Similarly, "[i]n the opinion of the High Public Prosecutor, [Forminster's shares in Kotva] are the proceeds of a crime committed by Ing. M. H[alek] and Co., which had been transformed into documentary securities and placed in the account of F[orminster] E[nterprises] Limited in the Prague Security Exchange Center." Id.

48.    The Hradec Králové Public Prosecutor described the freeze of Forminster's Kotva shares as a narrow one, "specify[ing] exactly those securities that have been the subject matter of

crime, or the effects thereof," and not applying to securities "hav[ing] no connection to crime whatsoever, or where such a connection, if assumed, cannot be deduced conclusively on the basis of the evidence produced." May 13, 1997 Injunction of the Hradec Králové Public Prosecutor, No. KZv 323/97.

49.     Around the same time, the High Court in Liechtenstein froze Forminster's accounts at the LGT Bank in Vaduz, Liechtenstein on suspicion of money laundering and conspiracy, among other crimes.

50.     Despite the Czech prosecutor's order freezing the Kotva shares held by the Forminster Group, members of the Forminster Group were still able to vote those shares. The Forminster Group controls at least 55% of the shares of Kotva. As majority shareholders, the Forminster Group elects the board of Kotva and controls its management.

51.     Nevertheless, the freeze inconvenienced the Forminster Group. They could not convert their Kotva shares into cash. Thus, they had to devise a scheme to separate the assets of Kotva a.s. from the frozen shares of Kotva a.s., liquidate those assets, and appropriate the cash proceeds for their own benefit.

52.     Since at least 1999, after electing board members of Kotva a.s., the Forminster Group has, through its front-men, Benda and Harazim, exerted full control over Kotva a.s. and actively directed all of its activities, including the bringing of this lawsuit. The Forminster Group uses its pervasive control over Kotva a.s. to act in a selfish way, disregarding the interests of Kotva a.s.'s minority shareholders. They use Kotva a.s. to serve the Forminster Group's interests and defraud the minority shareholders.

53.     The Forminster Group caused Kotva a.s. to transfer the Department Store through a series of shell companies. These transfers have no legitimate business purpose but are instead

designed to allow the Forminster Group to take more easily the proceeds of the sale of the Department Store. Ultimately, the Department Store was sold to an Irish company called Markland for approximately $65 million.

54.    More specifically, Kotva a.s. first transferred the Department Store to a company it created called Kotva Nemovitosti. On information and belief, Benda was the chairman of the board of Kotva Nemovitosti at the time. The Forminster Group then caused Kotva a.s. to convert Kotva Nemovitosti from a wholly owned child corporation into a limited partnership in which Kotva a.s. had a right to less than half of the profits and liquidation surplus.

55.    The Forminster Group then further removed the Department Store from Kotva's shareholders by transferring the Department Store from Kotva Nemovitosti to another company called SPV KN. The Forminster Group used unregistered and untraceable bearer shares to establish ownership of SPV KN.

56.    On information and belief, when SPV KN first received the Department Store from Kotva Nemovitosti, Kotva Nemovitosti held all of the bearer shares evidencing the ownership of SPV KN. However, according to the Kotva's 2004 annual report, the Forminster Group moved the Department Store even further away from Kotva's shareholders by causing Kotva Nemovitosti to transfer 97% of the shares of SPV KN to a Cyprus company called SPV CO.

57.    SPV CO is part of the Forminster Group. SPV CO has as its registered seat the address: Ledra House, Agiou Pavlou 15, Agio Andreas, 1105 Nicosia, Cyprus. This address is also the registered seat of the law offices of Chistodoulos G. Vassiliades & Co., the law firm that established Forminster in 1996.

58.    According to Kotva's 2004 annual report, the Forminster Group effected the sale of the Department Store to CRQ Czech, a Czech company controlled by Markland, by transferring the bearer shares of SPV KN from SPV CO to CRQ Czech.

59.    Thus, the proceeds from the sale of the Department Store will not be paid to Kotva or even another Czech company. Instead, it appears that the purchase price for the SPV KN shares will be or has been paid to SPV CO or another Forminster-controlled entity that will distribute the proceeds of the sale among the Forminster Group rather than among Kotva's shareholders.

60.    The Forminster Group's scheme has damaged counterclaim-plaintiffs K T and CVF Investments Ltd. by preventing them from realizing the rightful return on their investments that the majority shareholders in Kotva a.s., the Forminster Group, have or expect to realize.

## Count I
### (Abuse of Process —
### Counterclaim-Plaintiffs Andrew Weiss and Weiss Asset Management LLC v. All Counterclaim-Defendants)

61.    Paragraphs 1–60 are incorporated by reference as if set forth fully herein.

62.    The Forminster Group, including all counterclaim-defendants, used Czech criminal process by filing a criminal complaint and by exerting its influence over Czech law enforcement to cause or attempt to cause criminal charges to be brought against Weiss.

63.    This action had an ulterior and illegitimate purpose as described above.

64.    Counterclaim-plaintiff Weiss was damaged by this abuse of process as described above.

65.    The Forminster Group, including all counterclaim-defendants, used United States civil process by filing this lawsuit.

66.    This action had an ulterior and illegitimate purpose as described above.

24

67.    Counterclaim-plaintiffs Weiss and Weiss Asset Management were damaged by this abuse of process as described above.

## Count II
### (Conspiracy — Counterclaim-Plaintiffs Andrew Weiss, Weiss Asset Management, K T, Inc. and CVF Investment Ltd. v. All Counterclaim-Defendants)

68.    Paragraphs 1–67 are incorporated by reference as if set forth fully herein.

69.    The members of the Forminster Group, including all counterclaim-defendants, agreed to work together to loot Kotva's assets, abuse the Czech criminal process and abuse the United States civil process.

70.    The members of the Forminster Group have a peculiar power of coercion in that, as a group, they have access to and influence over at least one member of the Czech government, including the ability to cause Czech law enforcement to bring criminal charges to provide them with leverage in their commercial disputes.

71.    Counterclaim-defendants Kotva, Benda, Harazim, Forminster, SPV CO and John Does 1–5 have conspired to damage counterclaim-plaintiffs Weiss, Weiss Asset Management, K T, Inc. and CVF Investments Ltd. as described above.

## Count III
### (Conversion —
### Counterclaim-Plaintiffs K T, Inc. and CVF Investments Ltd. v. Benda, Harazim, Forminster, SPV CO and John Does 1–5)

72.    Paragraphs 1–71 are incorporated by reference as if set forth fully herein.

73.    Kotva a.s., either directly or through a wholly owned subsidiary, has or had the right to the proceeds from the sale of the Department Store.

74.    Counterclaim-defendants Benda, Harazim, Forminster, SPV CO and John Does 1–5 unlawfully seized control of Kotva's interest in the proceeds from the sale of the Department Store. In so doing, the counterclaim-defendants deprived Kotva and its shareholders, including

counterclaim-plaintiffs K T and CVF Investments Ltd., of their rights to benefit from the value of the Department Store.

### Count IV
### (Unjust Enrichment —
### Counterclaim-Plaintiffs K T, Inc. and CVF Investments Ltd. v. Benda, Harazim, Forminster, SPV CO and John Does 1–5)

75.    Paragraphs 1–74 are incorporated by reference as if set forth fully herein.

76.    By selling the Department Store and keeping the proceeds for themselves, counterclaim-defendants Benda, Harazim, Forminster, SPV CO and John Does 1–5 have unjustly enriched themselves at the expense of counterclaim-plaintiffs K T, Inc. and CVF Investments Ltd.

### Count V
### (Breach of Fiduciary Duty / Abuse of Control —
### Counterclaim-Plaintiffs K T, Inc and CVF Investments Ltd. v. Benda, Harazim and Forminster)

77.    Paragraphs 1–76 are incorporated by reference as if set forth fully herein.

78.    Harazim is an officer of Kotva a.s., a member of its Supervisory Board and a former member of the board of directors of Kotva a.s.

79.    Benda is the Chairman of the Supervisory Board of Kotva a.s. and a former member of the board of directors of Kotva a.s.

80.    Since 1997, Forminster has controlled a majority of the shares of Kotva a.s. and, since at least 1999, has controlled Kotva a.s.'s board of directors.

81.    As an officer, director and supervisory board member of Kotva a.s , Harazim owes a fiduciary duty of utmost loyalty and good faith to Kotva and its shareholders.

82.    As a director and supervisory board member of Kotva a.s., Benda owes a fiduciary duty of utmost loyalty and good faith to Kotva and its shareholders.

83.   As the entity controlling a majority of the shares of Kotva a.s., Forminster owes Kotva's minority shareholders a duty not to misuse its majority vote.

84.   As supervisory board members of Kotva, Benda and Harazim owe a duty to Kotva's shareholders to monitor the board of directors.

85.   By directing and participating in the repeated transfers of the Department Store for the benefit of the Forminster Group rather than Kotva's shareholders, Harazim, Benda and Forminster breached their respective duties to Kotva's shareholders, including counterclaim-plaintiffs K T and CVF Investments Ltd.

86.   By using their influence over Kotva's board of directors to cause the board of directors to act to the detriment of Kotva and its shareholders, including counterclaim-plaintiffs K T and CVF Investments Ltd., Benda, Harazim and Forminster abused their control over Kotva's board of directors in violation of Czech Commercial Code § 66c.

87.   By allowing and encouraging the board of directors to strip Kotva of the Department Store and not ensuring that Kotva's shareholders would receive fair compensation in exchange, Benda and Harazim breached their duty to monitor Kotva's board of directors to the detriment of Kotva's shareholders, including counterclaim-plaintiffs K T and CVF Investments Ltd.

88.   Counterclaim-plaintiffs K T and CVF Investments Ltd. were damaged by these breaches of fiduciary duty and abuse of control as described above.

### Count VI
### (Constructive Trust —
### Counterclaim-Plaintiffs K T, Inc. and CVF Investments Ltd. v. All Counterclaim-Defendants)

89.   Paragraphs 1–88 are incorporated by reference as if set forth fully herein.

90.    The Department Store, the bearer shares in SPV KN and/or the proceeds of the

sale of the SPV KN bearer shares are subject to a constructive trust for the benefit of Kotva's

shareholders, including counterclaim-plaintiffs K T and CVF Investments Ltd.

### Count VII
### (Unfair Competition and Unfair and Deceptive Trade Practices — Andrew Weiss, Weiss Asset Management, K T, Inc. and CVF Investments Ltd. v. All Counterclaim-Defendants)

91.    Paragraphs 1–90 are incorporated by reference as if set forth fully herein.

92.    The Forminster Group and its members are engaged in trade and commerce

within the meaning of M.G.L. ch. 93A.

93.    Counterclaim-plaintiffs Weiss, WAM, K T, Inc. and CVF Investments Ltd. are

engaged in trade and commerce within the meaning of M.G.L. ch. 93A.

94.    The Forminster Group's conversion, fraud, abuse of process, conspiracy and

fraudulent transfers of the Department Store are unfair and deceptive trade practices.

95.    The Forminster Group engaged in these unfair and deceptive trade practices

knowingly and willfully.

96.    As a result of these actions, the counterclaim-plaintiffs have suffered damages as

described above.

### Count VIII
### (Declaratory Judgment — Counterclaim-Plaintiffs K T, Inc. and CVF Investments Ltd. v. All Counterclaim-Defendants)

97.    Paragraphs 1–96 are incorporated by reference as if set forth fully herein.

98.    There is a genuine controversy between counterclaim-plaintiffs K T, Inc and CVF

Investments Ltd. on the one hand and Benda, Harazim, Forminster, SPV CO and John Does 1–5

on the other hand as to who should receive the proceeds of the sale of the Department Store.

99.    Benda, Harazim, Forminster, SPV CO and John Does 1–5 have obtained possession of the sale proceeds through unlawful means. Accordingly, they have no right to those proceeds.

100.    The sale proceeds belong instead to Kotva a.s. and its shareholders.

101.    There is a genuine controversy between counterclaim-plaintiffs K T, Inc. on the one hand and Benda, Harazim, Forminster, SPV CO and John Does 1–5 on the other hand as to whether Forminster is the rightful owner of over 55% of the shares of Kotva.

102.    By unlawfully maintaining control of these shares, the Forminster Group is able to maintain control over Kotva and take actions to the detriment of minority shareholders including counterclaim-plaintiffs K T, Inc. and CVF Investments Ltd.

103.    The Forminster Group has no legal right to its Kotva shares because those shares were either stolen from Trend or represent the proceeds of other assets stolen from Trend.

### PRAYER FOR RELIEF

WHEREFORE, counterclaim-plaintiffs Andrew Weiss, Weiss Asset Management LLC, K T, Inc. and CVF Investments Ltd. respectfully request that this Court:

(a)    Enter judgment for the counterclaim-plaintiffs and against the counterclaim-defendants on all counts of the Counterclaim;

(b)    Impose a constructive trust on the proceeds of the sale of the Department Store;

(c)    Declare that the shareholders of Kotva a.s. are the owners of the proceeds of the sale of the Department Store;

(d)    Declare that the Forminster Group is not the rightful owner of the shares of Kotva a.s. to which it claims ownership;

29

(e)    Enter an Order requiring Benda, Harazim, Forminster and John Does 1–5 to disgorge the proceeds of the sale of the Department Store and transfer them to the shareholders of Kotva, a.s.;

(f)    Award damages on Counts 1, II, III, IV, V  and VII, including treble damages on Count VII;

(g)    Award the counterclaim-plaintiffs their costs;

(h)    Award the counterclaim-plaintiffs their attorneys' fees; and

(i)    Grant such other relief as the Court deems just and proper.

## JURY DEMAND

DEFENDANTS AND COUNTERCLAIM-PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Respectfully Submitted,
ANDREW WEISS, WEISS ASSET
MANAGEMENT LLC, K T, INC. and CVF
INVESTMENTS LTD.

By their attorneys,

Edward P. Leibensperger (BBO# 292620)
Michael Kendall (BBO# 544866)
Benjamin A. Goldberger (BBO# 654357)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts  02109-1775
(617) 535-4000

Dated: June 15, 2005

## **CERTIFICATE OF SERVICE**

I, Benjamin A. Goldberger, hereby certify that on the 15th day of June, 2005, a true and correct copy of the foregoing document was served by overnight delivery on counsel of record for Kotva a.s.

Benjamin A. Goldberger

EXHIBIT 1
SUMMARY OF COUNTERCLAIMS

| Count / Defendant | I Abuse of Process Weiss and WAM | II Conspiracy Weiss, WAM, KT and CVFI | III Conversion KT and CVFI | IV Unjust Enrichment KT and CVFI | V Breach of Fiduciary Duty / Abuse of Control KT and CVFI | VI Constructive Trust KT and CVFI | VII Unfair Trade Practices Weiss, WAM, KT and CVFI | VIII Declaratory Judgment KT and CVFI |
|---|---|---|---|---|---|---|---|---|
| Kotva a.s. | X | X | | | | X | X | X |
| Forminster | X | X | X | X | X | X | X | X |
| SPV CO | X | X | X | X | | X | X | X |
| Benda | X | X | X | X | X | X | X | X |
| Harazim | X | X | X | X | X | X | X | X |
| John Does 1–5 | X | X | X | X | | X | X | X |



**ČESKÁ REPUBLIKA**

Lichtenštejnské důkazy o vytunelování Trendu

# Heslo: PIANO ČERNÝ

*Rekonstruujeme modelový příklad, jak vytunelovat investiční fond. TÝDEN získal dokumenty, které nasvědčují tomu, že tzv. prodej obchodního domu Kotva do zahraničí byl jen trikem*

Kauza OD Kotva (tržní hodnota činí asi 2,885 miliardy korun) je bitvou v Čechách nevídaného rozměru. Je opředena několika věznenými osobami, desítkami žalob kampaněmi známých mediálních agentur i nebývalou koncentrací nejprestižnějších českých advokátů. Dříve než zrekonstruujeme případ na základě nejnovějších poznatků TÝDNE, shrňme jeho podstatu: firma Královéhradecká brokerská, a s (KHB), se podle dokumentů které máme k dispozici, pokusila majoritní podíl Kotvy převést z investičního fondu Trend prostřednictvím zahraniční společnosti ve prospěch dosud nespecifikovaných subjektů či osob Případ je jedním z nejkomplikovanějších v moderní historii komerčního práva u nás

## Rekonstrukce kauzy Trend & Kotva

Fond Trend (založený Bankou Skala a Montovanými stavbami) využil politického zázemí Michaela Kocába a podnikatelských schopností Martina Kratochvíla k důvěryhodnému úspěchu v kuponové privatizaci Prvním nebezpečím pro „otce zakladatele" fondu Trend byla aktivita spojená se sdružováním menších akcionářů a skupováním akcií Trend se pokusil zabránit vzniku silné minoritní skupiny akcionářů, která by mohla vyměnit statutární orgány složené z „otců zakladatelů" Rozhodl se pro výplatu velmi slušných dividend (s předpokladem, že původní akcionáři fondu namísání dividendou, akcie neprodají) To však zjevně nestačilo a po několika měsících dikové opět prodávali akcie fondu Investorovi, který je shromažďoval (šlo o firmu

Czech Value Fund, která v případu bude hrát podstatnou roli)

V únoru 1995 byla založena nová investiční společnost Trend, a s., se základním jměním 1 000 000 Kč, mezi jejímiž akcionáři byli i Michael Kocáb a Martin Kratochvíl Tato společnost pak fond Trend spravovala Její založení a existence se však zdají silně účelové Akcie správcovské společnosti Trend, a s., byly totiž 2 srpna 1995 prodány firmě Královéhradecká brokerská, a s za 318,365 miliónu korun Jejím hlavním akcionářem byl Miroslav Hálek (nyní ve vazbě) Z tohoto obchodu měl Kocáb zisk 36,142 miliónu Kč Že se jednalo o první a zásadní faul na akcionáře fondu Trend, je zřejmé z Kocábova prohlášení

v listopadu 1997: „V případě, že minoritním akcionářům fondu Trend nebude nabídek k navrácení. Tuto sumu nebudu chtít a použiji ji na nějaký dobročinný ale kontrolovatelný účel

## Tunel hned na počátku

Noví správci z Královéhradecké brokerské uskutečnili první podivný obchod s akciemi již tři týdny poté, co správcovskou firmu koupili Ve třech smlouvách prodali lukrativní akcie z Trendu (Telecom Chemopetrol a Synthesia) společnosti Consult Invest (jejíž šéf je nyní ve vazbě) za 487 miliónů korun Kupec zaplatil jen první splátku (135 miliónů), zbytek zůstal dlužen dodnes, čímž Trend ztratil 352 miliónů korun Akcie držel pár dnů a obratem je prodal firmě spřízněné s Královéhradeckou brokerskou

Porovnání čísel vede logicky k podezření, že šlo o pokrytí investic KHB za koupi

správcovské investiční společnosti Trend a. s. větně do nájmu apod je 5ti zůstávají v předstan stvu fondu Trend Michael Kocáb a Martin Kratochvíl, avšak oba tvrdí že v obdobi, kdy fond prodával lukrativní akt je byli na dovolené v zahraničí

## Na řadu přišla Kotva

Koncem roku 1995 vlastnil Trend přibližně 20 procent akcií Kotvy Hálkovi, který byl te hdy už je n v majitelem správcovské firmy ale i předsedou představenstva samotného fondu Trend se postupně podařilo shromáždit v rozličných firmách různým způsobem celkem 65 % akcií Kotvy

O tento obchodní dům měla zájem právě již zmíněná společnost Czech Value Fund (CVF) Během roku 1996 proto koupila na kapitálovém trhu 37 procent akcií fondu Trend za zhruba 10 miliónů dolarů a 1 listopadu byli zvoleni její zástupci - John Moffit a Michael Blum - do představenstva fondu O týden později, když oba zjistili, že fond již byl vytunelován, byla na jejich nátlak ministerstvem



Ve vazbě. Miroslav Hálek (v popředí), bývalý předseda představenstva IF Trend obviněný vyšetřovatelem z trestného činu podvodu. (6. března 1997 na chodbě Krajského úřadu vyšetřování v Hradci Králové.)

financí uvalena na fond Trend
mocná správa Londýnský
i dům í spol čnosti vlastní I
[AF pan Kingsworth svého
času prohlásil, že odpovědnost za špatné hospodaření
fondu Trend nese spolu s Hálkem a je ho při dstavenstvo
i před stavenstvo předchází ji
ž tehdy Michael Kocáb a jeho
poď fúční

## Zablokování účtu

John Moffit, šéf CVF, však
začátkem roku 1997 přechází
za pomocí Michaela Kocába
i advokátní kanceláře Váňa,
Pergl a partneři (AK VPP) do
tvrdého útoku Účty Trendu
byly rozhodnutím soudu
zablokovány, ale rozhodnutí
soudu se dostalo do Střediska
cenných papírů pozdě Hálek
i spol proto stihli prodat
svým spřízněným firmám koncom ledna 1997 z již zablokóvaných účtů Trendu asi
14 procent akcií Kotvy. Kromě toho stahovali další akcie
a nakonec 30. ledna 1997
Hálek a spol balík o velikosti
56 % akcií Kotvy prodali za
80 milionů Kč kyperské firmě
Forminster Enterprises Limited (FEL) Začátkem března
se ocitli ve vazbě a 65 % akcií
Kotvy státní úředníci zablokovali Tak propukl naplno nevidaný právní spor mezi FEL
i Czech Value Fund

## Bitva advokátů

V dvokátů z advokátní kanceláře
Váňa, Pergl a partneři ve
službách minoritního akcionó
ře Czech Value Fund vstupují
i právníci fondu Trend
i dnou již jako statutární
i cnpci, ale zároveň Mgr.
Vincent Pergl a Mgr Radek
Rušba z AK VPP na valných
hromadách Kotvy vystupují za
Trend v roli právníků a podaří
se jim v přímém souboji zvítězit nad zástupci FEL Advokát
Pergl prohlašuje v Právu
z 4. 10 1997): a teď jsme
uda: dr. o s sebe, jejich předsta a a v Otu po hodině
i k s edrží to nervově.
Fak s c. i sají dvě představ stva i drž Pergl vystavaje za u plnou moc

V z u i 1997 pověřuje
nový a dr. h 56 procent Kotvy kterou tj perský FEL,
zastupu i im advokátní kancelář H F I Toman

n partneři. Do obchodního rejstříku však bylo 4 srpna
zapsáno představenstvo minoritního vlastníka - tedy Czech
Value Fund

V srpnu 1997 je podepsána
další zvláštní smlouva: koncipient JUDr Tomana bývalý
ředitel Bezpečnostní informační služby Stanislav Devátý
od starého hálkovského
představenstva koupil za
2,885 miliardy korun Kotvu
jako nemovitost (Stalo se tak
zaregistrováním na katastrálním úřadě v Praze, součástí
operace bylo deklarované
zpětvzetí ) Smyslem této operace byla snaha kyperské firmy FEL, kterou Tomanova
kancelář zastupovala, zabránit
jakémukoliv nakládání
s majetkem Kotvy V listopadu
1997 pak došlo ke zrušení
této smlouvy, protože údajně
nebezpečí neoprávněného
nakládání s nemovitostní
pominulo

## Bankovní dokumenty

Vraťme se však k zásadní otázce, otázce právoplatnosti dále
žitých rozhodnutí a k otázce,
oč usilovala firma FEL.

V prosinci 1997 zrušil Vrchní soud v Praze zápis minoritního představenstva a na
bojové prosincové valné hromadě Kotvy, kterou vedl
JUDr Tomáš Sokol (pověřen
většinovým vlastníkem Trendu, tedy kyperskou společností FEL), došlo ke zvolení nového představenstva. V něm se
z ničeho nic objevil zástupci
Českého investičního holdingu
(CIH). Ten zastupovala další
přední advokátní kancelář
Kříž, Bělina & spol Jak se
však mohl český investiční
holding objevit v této hře?
Holding CIH koupil od kyperského FEL opci na akcie Kotvy. (Této valné hromadě byl
přítomen mimo JUDr Toman
a i JUDr Josef Lžičař - taková

koncentrace nejrenomovaněj
ších českých právníků nastala
v našich novodobých dějinách
poprvé )

Cíl je ryze český investor,
pro nehož je investice do akcií
Kotvy obchodem s únosnou
mírou rizika. Jeho zástupci
budou v orgánech Kotvy přitejmi ném do té doby, než
soud rozhodne, komu zablokované akcie vlastně patří. Role
CIH se zdá v případě operací
týkajících se Kotvy spíše
náhodná

## „PIANO ČERNÝ"

Prosincová valná hromada
Kotvy tedy nedopadla pro
Czech Value Fund dobře a jen
několik dnů poté se objevuje
prohlášení advokátky
JUDr Jirkové z advokátní kanceláře Váňa, Pergl a partneři
v LN (12 12 1997), že mají
důkazy o tom, že kyperská firma FEL byla pouze Hálkovou
schránkou TÝDNU se podařilo
část těchto dokumentů získat
Pokud by se potvrdila jejich
pravost, podařil by se advokátům husarský kousek (vzpomeňme si, že stejní právníci
vnesli jasno i do kauzy tunelování CS Fondů, když popsali
přesné toky peněz)

V případě Trendu by totiž
prolomili bankovní tajemství
lichtenštejnské banky LGT
Bank in Liechtenstein, kde
kyperská firma FEL měla svůj
účet Hálek si totiž měl „pronajmout" firmu FEL ke svým
obchodům, což má dokazovat
plná moc od kyperského FEL
pro nakládání s jeho kontem
ve prospěch Hálka a heslo pro
telefonické příkazy: „PIANO
ČERNÝ" Je nepravděpodobné, že by kyperský občan zvolil
heslo v češtině

Tento průlom však určitě
povede k objasnění celého případu. Hálek a spol s největší
pravděpodobností využili společnosti FEL k převodu majetku z fondu Trend ve prospěch
vlastních firem. Angličanům
z Czech Value Fund, který za
akcie Trendu zaplatil zhruba
10 milionů dolarů, a dalším
investorům se pak snad vrátí
peníze vložené do akcií fondu.
Případ neskončil podle zasvěcených právníků může být
ještě vznesено až padesát
žalob

JAROSLAV PISKOR
(Autor je i volný reportér)



„PIANO ČERNÝ". Tak zní heslo umožňující operovat s kontem společnosti kyperské firmy Forminster Enterprises Limited v LGT Bank in Liechtenstein. Z dalšího dokumentu jsou patrné podpisové vzory konta Forminster Enterprises Limited v LGT Bank in Liechtenstein. Jde o důkaz o tom, že Hálek a spol. mohl s kontem volně disponovat.

LIECHTENSTEIN EVIDENCE ON THE TUNNELING OF TREND

# Password: PIANO BLACK

Reconstruction of a model case of how to tunnel an investment fund: TYDEN has evidence supporting the suspicion that the so-called "sale" of Kotva Department Store to abroad was a mere fraudulent trick.

TÝDEN MAGAZINE 04/1998

The case of Kotva DS (with the market value of about 2,885 billion Czech Crowns) is a battle of unseen dimensions in the Czech Republic. It is spiced up with people turned in jail, dozens of court claims, campaigns of well-known PR agencies as well as an unusual concentration of the most prestigious Czech lawyers. Before we present to you our reconstruction of the case on the basis of the newest findings by TYDEN, let's focus on its fundamental aspects: the company Kralovehradecka brokerska, a.s., (KHB), has attempted, as the documents we have acquired show, to take the majority share in Kotva out of Trend and transfer it via a foreign company to the benefit of not yet specifiable persons or entities. The case is one of the most complicated ones in the modern history of commercial law in our country.

### Reconstruction of the case of Trend & Kotva

The mutual investment fund Trend (founded by Skala Bank and the company Montovane stavby) took the advantage of the political background of Michael Kocab in combination with the business talents of Martin Kratochvil and won a credible success in the voucher privatization. The first activities perceived as a threat by the "founding fathers" of the fund were the activities concerning the grouping of small shareholders and the purchase and concentration of shares. Trend made an attempt to prevent a strong minority shareholders' group that would have the power of replacing the statutory bodies of the fund composed of the "founding fathers" from coming into existence by having made an offer of very good dividends (assuming that the original shareholders, satiated by such dividends, shall not get rid of their shares). However, this tactic did not prove effective enough and in a few short months, the investment vouchers holders (shareholders) started selling off their shares to the investor accumulating them again (the company Czech Value Fund, which shall turn out to play a significant role in the case later).

In February 1995, the new investment company Trend, a.s., was founded having the registered capital of CZK 1,000,000, amongst whose shareholders were also Michael Kocab and Martin Kratochvil. This company undertook the administration of Trend. Its foundation and existence alone, however, seem to be very purpose-sown, since the shares of the administrating company Trend, a.s., were, on 2 August 1995, sold to Kralovehradecka brokerska, a s , for the price of CZK 318,365,000, whose major shareholder was Miroslav Halek (held in custody now) Kocab's profit from this deal came to be CZK 36,142,000. The fact that this transfer was the first and principal foul against Trend's shareholders is borne out in Kocab's public announcement of November 1997: "In the case that the assets of the minority shareholders are not returned to them, I will not accept this sum of money but give it up to some charitable purpose under good control."

## Tunnel from the beginning

The new administrators of Trend from Kralovehradecka brokerska realized their first fishy deal with the shares already three weeks after their takeover of the administrating company. Under three contracts they sold the lucrative shares of Trend (Telecom, Chemopetrol and Synthesia) to the company Consult Invest (whose boss is in custody now) for 487 million Czech Crowns. The purchaser only paid up the first installment (135 million) owing the rest until today – and having Trend lose 352 million in result. Moreover, it only held the shares purchased for a couple of days and then resold it to a company tied to Kralovehradecka brokerska.

The simple comparison of the figures logically and immediately leads to a suspicion that this transaction served to cover the investment of KHB for the purchase of the administrating investment company Trend, a.s., including a 10% provision. We need to add at that time, Michael Kocab and Martin Kratochvil were still sitting on Trend's Board of Directors but both of them assert they were on holiday abroad and out of touch when the fund was selling the lucrative shares.

## Eyes on Kotva

By the end of 1995, Trend owned about 20% of shares in Kotva. Halek, who was then not only the owner of the administrating company but already sat in the chair of the Chairman of the Board of Trend itself, gradually succeeded in gathering up 65% of shares in Kotva within all sorts of various companies.

The already mentioned Czech Value Fund (CVF) was interested in the Department Store and during 1996, it bought 37% of the shares in Trend on the capital market for about $ 10 million: on 1 November, the representatives of CVF, John Moffit and Michael Blum, were elected in the Board of Directors of the Fund. A week later, when they found out that the fund had already been tunneled out, the Ministry of Finance under their pressure imposed forced administration on Trend. The London executive of the company controlling CVF, Mr. Kingsnorth, once commented that it is not only the Board of Directors headed by Halek, who should be held responsible for the poor management of the fund, but also the previous Board of Directors, i.e. Kocab and his associates.

## Account Freezing

John Moffit, the head of CVF, turns to fight back hard with the help of Michael Kocab and the law firm Vana, Pergl and Partners (AK VPP) in 1997. The accounts of Trend are frozen but the freezing order arrives at the Prague Security Center too late, which gives enough room to Halek and Co. to use their time and resell about 14% of the shares in Kotva from the frozen account to their crony companies by the end of January 1997. Besides that, they kept on removing other shares until they finally managed, on January 30, 1997, to sell the bulk of 56% shares in Kotva to the Cyprus company Forminster Enterprises Limited (FEL) for CZK 80 million. At the beginning of March, they were eventually put in custody and the governmental officials managed to freeze 65% of the shares in Kotva. This kicked off an unprecedented legal dispute between FEL and Czech Value Fund with violence.

### The battle of lawyers

The lawyers from AK VPP hired by the minority shareholder, Czech Value Fund, enter the statutory bodies of Trend. They become the statutory representatives in April but at the same time Mgr. Robert Pergl and Mgr. Radek Blaha act in the role of Trend's attorneys at the general meetings of Kotva and they succeed in beating the reps of FEL in a head-on combat. As the attorney Pergl says in an interview for Pravo (newspaper) on October 27, 1997:"...and now we spoke over each others voices, me and their Chairman. And he gave it up in an hour -- didn't have the nerves for it." In result, two Boards of Directors of Kotva emerge. Pergl draws up a power of attorney for himself.

In June 1997, the new owner of the 56% shares in Kotva, FEL from Cyprus, appoints as its attorney the law firm JUDr. Petr Toman and Partners. However, the Board of Directors nominated by the minority shareholder, i.e. Czech Value Fund, was already registered in the Commercial Register on August 4.

In August 1997, another fishy contract is signed: the junior lawyer of JUDr. Toman, the ex-head of the Security and Information Agency of the Czech Republic Stanislav Devaty buys Kotva as a real estate from the old Halek's Board of Directors for 2,885 billion Czech Cronws (it was achieved by the registration at the Land Registry of Prague, and the part of the transaction was the declared retraction of the contract after the fulfillment of certain conditions). The purpose of this transaction was the effort of the Cyprus company, being represented by Toman's law firm, to prevent any possible manipulation with the property of Kotva. In November 1997, this contract was cancelled since the danger of illegal disposition allegedly ceased to exist.

### Bank Documents

But lets get back to the principal question of legality of the crucial decisions that were made and also to the one of what was FEL really after?

In December 1997, the Supreme Court in Prague abolished the registration of the minority Board of Directors and the new Board of Directors was elected at the inflammatory general meeting headed by JUDr. Tomas Sokol (appointed by the majority owner of Trend, the Cyprus company FEL). The new Board of Directors was partly made up of the reps of Czech Investment Holding (CIH). Out of the blue. CIH was represented by another leading law firm, Kriz, Belina & Co. But how did CIH get in the game? CIH bought an option for the shares in Kotva from Cyprus FEL. (By the way, personas like JUDr. Toman and JUDr. Lzicar were to be found at this general meeting – creating a concentration of the most renowned Czech lawyers per meter square unseen in our modern Czech history.)

CIH is a purely Czech investor for whom the investment in the shares in Kotva represents a transaction with a bearable risk. Its representatives shall remain in the statutory bodies of Kotva at least until the decision is finally made as to who is the owner of the frozen shares in Kotva. The role of CIH in the transactions around Kotva seems to be rather a coincidence than anything else.

## "PIANO BLACK"

The December general meeting of Kotva didn't work out too well then for Czech Value Fund; a few days later, a statement by JUDr. Jirkova of the law firm Vana, Pergl and Partners appears in the press (LN, December 12, 1997) saying that they possess evidence that Cyprus FEL was nothing but Halek's money chest. TYDEN managed to get a hold of a part of these documents of evidence. If their authenticity is proved, the lawyers would have managed a quire an impressive feat (let us remember that it was the same law firm that brought the light into the case of the tunneled out CS Funds, having disclosed and described the exact money flows used).

In the case of Trend it would mean that they were able to break through the bank secret of LGT Bank in Liechtenstein where the Cyprian FEL held its account. By their allegations, Halek was supposed to "hire" FEL for his own business, a fact that should be evidenced by FEL's power of attorney for Halek to handle its account, including the phone-banking password 'PIANO BLACK'. It is rather unlikely that a Cyprus citizen would have selected a password in the Czech language.

However, it seems certain that this breakthrough will lead to the clarification of the whole case. Halek and Co. have most likely used FEL to transfer the assets from Trend to the benefit of the various companies owed by them. Hopefully, the Britons of Czech Value Fund, having paid about 10 million Czech Crowns for the shares in Trend, as well as the other investors have finally began to see the chance of recovering their investments put into the shares of the fund. Although the story is not over with yet and the lawyers initiated in the case claim that about 50 more court claims may still be brought and tried.

JAROMIR PISKOR
*(an independent journalist)*

# Případ Trend: Co se dělo, všichni vědí, ale majetek se vrátí jen stěží

Jako pruhlídky lámen v cune vytunelovaných investičních fondů působí případ Trend. Na první pohled vzbuzuje optimismus – hlavní aktéři podvodů, sejití s Králem dračkovanou koncernu jsou ve vazbě, dluhá v celám vytunelovaného majetku je zmrazena na účtech v Středním cenných papírů a investiční aktuelní ludem Trendu uvláli obchodníkům kona o jednu, jeneš patří mezi tíhlé k možoščí majetek. Je ale stu tak jeste a dočkají se původní vlastníci obratů svého majetku?

Trend, s nímž jeho správci vysáli jeden z tří milionů korun loni prvním fondem, na jeden tyká uváhu na nucená správa. Přitom tu, co ve fondech proudělo Krále odškodník investorům. Aby se o co se konečně vše dozvíte...

## Rozbyšat stát

...

## S jídlem roste chuť

Trend byl jedním z nejúspěšnějších fondů kuponové privatizace. Své body do něj v oboo tolech vlelo přes sto tisíc lidí a jeho majetek jste dosahoval 1,1 miliardy korun. Peče co jej od Michaela Kučba

### Jak získal Forminster peníze na nákup Kotvy



## Tunel končí na Kypru

Nejrozsáhlejší majetkem Trendu byl majetkový balík všech Kotvy. Tam vytunelované peníze ale nouže na tři...

## Boj o Kotvu

## Koncipient a tři miliardy

## Lobbing nebo občanská povinnost?

## Návrat majetku nejistý



*Pražský obchodní dům Kotva...*

---

## Vývoj situace okolo Trendu

leden 1991 Stupina čtyř subjektů – Montere...

## Kocáb: Za to, jak fond skončil, cítím odpovědnost



Tunel stihl tunel

Tři rozmezené nabídky

Jeden ze způsobů, jak Trend přišel o majetek

**TREND case – everybody knows what happened but the assets will hardly be restored**

Slovo daily - September 18, 1997 - Prague

The TREND case seems to be the touchstone with regards to tunnelled investment funds. At first appearance, this case seems to arouse optimism, as the main participants in the fraud connected to Královéhradecká Brokerská are in custody, the majority of the embezzled assets is frozen in the accounts kept with the Securities Centre and the majority shareholders of TREND assumed control over Kotva department store, which represented Trend's main asset. However, is everything as clear as this and will the former owners get their property back?

TREND, from which its managers "drained" CZK 1.25 billion, was the first investment fund to be placed under forced administration. However, the steps undertaken in the investment funds by Královéhradecká brokerská were far from isolated in the Czech Republic. "*Such deals were by then commonly undertaken. Dozens of other similar deals – and I would not be surprised if there were hundreds – were undertaken even without being noticed*", confirms the Stock Exchange analyst Michal Konečný from Komero.

**The taste grows with food**

TREND was one of the most successful investment funds in coupon privatisation. Within both waves of the privatisation, more than 100.000 "DIKS" (designation of the holders of the investment coupons – remark of translator) put their points to this fund and its assets amounted to CZK 1.3 billion. However, very soon after the purchase of TREND from Michael Kocáb by Miroslav Hálek and his company Královéhradecká brokerská, the assets of the fund decreased to one twentieth. The managers of the fund could probably have effectuated even this step without difficulties. The whole group around Královéhradecká brokerská may thank its greed for more than half a year of custody.

As taste grows with food, Mr. Hálek tried to sell the empty shell of the investment fund to a foreign investor – the British Czech Value Fund belonging to a group of British Regents Funds. Before this the investment company Prag Invest had already started to buy up shares in TREND from the minority shareholders for this investor. Prag Invest warned the British investors about the bad state of TREND. The fund was, however, in far worse condition than the British investors anticipated, and consequently, they hired lawyers and started immediately to bombard the state authorities.

**To make the state move**

"*The shareholders would not be able to do anything whatsoever. The Ministry would maybe put the fund under forced administration, but nothing more*" says Robert Pergl from the law office Váňa, Pergl and Partners, which took on the representation of Czech Value Fund and of the tunnelled TREND. "*The TREND case is completely clear. It was an absolute lack of professionalism and crooks are presently much more careful*" he alleges.

"*It was most difficult to make the state act and to compel it as well as all the other institutions, as for example the supervision over the capital market, to handle the case*", he says. "*Initially, the state authorities were perplexed; they did not know what to do whatsoever. However, the situation soon made a turn*" he adds. The result of the efforts of the

shareholders was that, at the beginning of the May, the court took into the custody the first five participants in the fraud and one moth later, two other participants. The whole work of detecting the embezzled property was, however, several times incomprehensibly complicated by the court, which for example decided, at the end of the January, on the freezing of shares in Sokolovská uhelná and in Kotva in the accounts of the company IFM, but it delivered the freezing order only to the company IFM and failed to deliver it also to the Securities Centre. Consequently, the shares could have disappeared, on the same day, from the account. Within a further few days the court made a grave mistake for the second time, when it ordered, at the request of the Police, the freezing of all the accounts of KHB and of the companies linked to it, however, it confused the number of one of the accounts, in which there was deposited, by coincidence, all the money concerned – i e. several hundred million Czech crowns. However, this failure contrived to be rectified.

**The tunnel ends in Cyprus**

The most valuable asset of TREND was represented by the majority block of the shares in KOTVA. These share also disappeared. However, the court finally succeeded in freezing these shares in the account of the Cyprus company Forminster Enterprises Limited.

The mode of acquisition by FEL of the money for the purchase of the shares in Kotva is particularly remarkable: FEL arranged the transfer of the shares in Sokolovská uhelná from KHB to Atlanta Safe and acquired by this sole business deal the unbelievable profit of CZK 135 million (see table). After the purchase of 55.73% of shares in Kotva for less than CZK 83 million, more than CZK 50 million remained with FEL. "*It is true that a profit of CZK 135 million from one business deal is unusual, but it is not prohibited by law. The Act on money laundering could however apply to this business deal and the person who undertook this deal should have reported it immediately to Ministry of Finance*", estimates the analyst Konečný.

The shares in KOTVA were probably intended to be further transferred, however, before this could be effectuated, the court had finally frozen the account of FEL. Nevertheless, FEL, which was meanwhile bought by the French company DUNA with total assets amounting to CZK 200,000, alleges that it acquired the shares via a legitimate purchase and that it has no connection with KHB, which tunnelled TREND.

However, the brokers have a different opinion. "*These business deals prove an evident connection between KHB and FEL*", alleges Mr. Pergl and he also points out that the majority block of shares was sold for half of the price for which the shares were sold at the time on the Stock Exchange. "*The bigger the block of shares is, the higher is the average price of one share. Not even a multiple of the price on the Stock exchange is exceptional*", agrees Konečný.

**Lobbing or civil duty?**

Meanwhile, the state authorities finally started to work faster, which is showed, inter alia, by more than a dozen of the frozen accounts with shares, which originated from TREND. However, the majority shareholders allege that this is all due to Michael Kocáb who exploited his good connections. "*The court succumbed after more than one year to consistent media pressure and to the one-sided description of the situation that the heroes from Trend are saving the minority shareholders. In fact, they seek to assume control over KOTVA, which was legally purchased by FEL*", alleges Mr. Petr Toman. "*The courts undoubtedly did not act*

*in our favour and were committing a lot of mistakes.*" counters Mr. Pergl and refers to the two above-mentioned mistakes of the commercial court in Hradec Králové.

Michael Kocáb does not deny that he negotiated about TREND with Ministers Ruml and Parkanová and with the Supreme Public Prosecutor Mr. Hrbotický, however, he defends himself against the charge of misuse of his contacts. "*It was not lobbying but a civil duty. When someone sees a thief, he should come forward. It is not a pleasure for me to be engaged in this case, but we have to understand that when you make your bed you must lie in it*", says Kocáb and adding that if he did not do anything he would certainly be charged with idleness. "*We have always played fairly, we tried to give the property back to the robbed,*" he adds.

## Battle for KOTVA

Meanwhile, the battle for TREND was definitively transformed into the battle for KOTVA. In spring, two general meetings of the department store took place within a short time period, at which two groups of shareholders refused to acknowledge one another and elected their own Boards of Directors. The minority shareholders allege that FEL did not announce, after the acquisition of the majority block of shares, that it was acting in concert with KHB and simultaneously failed to offer publicly the purchase of shares, which is why FEL lost all voting rights for a one-year period. However, FEL counters that in such a case it would lose only shares exceeding 50%. Total prevention from the possibility of exercising the rights of a shareholder is too hard a sanction. "*This case is a precedent, no other court has ever decided on such a case,*" alleges Mr. Tomáš Pelikán, who specialises in commercial law. According to him, the legal provisions are not completely clear in this case. Nevertheless, the court has not decided yet on the cancellation of the exercise of the rights of the shareholders of FEL and it refused requests from the minority shareholders regarding the delivery of the interlocutory injunction preventing FEL from the possibility of voting at yesterday's general meeting.

Both parties have filed several petitions against one another, which must be now treated by the court. The commercial register registered, on August 4, the Board of Directors elected by the minority shareholders around the Czech Value Fund. This registration was, however, immediately questioned by the majority shareholders. The attorneys of both the parties filed also a complaint with the Bar Association against their colleagues and charged them thereby with unethical behaviour.

## Law clerk and three billion

The case has gathered steam approximately a month ago. Kotva was bought from FEL through a purchase agreement by the former chief of BIS and current law clerk of Mr. Toman's law office, Stanislav Devátý, who has immediately admitted that the agreement was fake and that he hasn't got any money. "*If someone does something like that, he is absolutely hopeless. Attorneys at law should advise their clients and not purchase department stores for them and even admit to this as being a fake,*" says Pergl.

"*We were afraid that transfer of the real estate of Kotva to third persons was being prepared. The only lawful way how to foil this transfer was to make a seal at the Land Registry. The purpose is nothing else but sealing possible transfers until the court issues a final and binding decision on the ownership of Kotva,*" explains Mr. Toman.

Subsequently, Devátý and Forminster granted together a power of attorney to Michael Kocáb, authorising him exclusively to remove the lead seal from the Land Registry. Before this removal could have been effectuated he must have already received a signed agreement on the cancellation of the purchase agreement, which now lies with the notary. "*We needed again a trustworthy person, and so we chose the representative of the other party,*" says Toman.

Kocáb, however, strictly objects to the abuse of his name. "*If I had accepted that, I would have in fact legalized all their steps,*" he says indignantly. At the same time he refuses to accept Toman's interpretation of all these steps. "*By doing this acrobatic step in public, they intended to achieve that the view that it would not be considered as tunnelling. If some famous person pick pockets pedestrians on the Wenceslas square, grimacing and screaming. I am not stealing, would that also be in order?*" chafes Kocáb. Mr. Tomáš Pelikán thinks that all this is just a useless racket. "*The legal act, which has not been made seriously, even if made in writing, is invalid according to law,*" he asserts.

### The return of the property is uncertain

The thing that the shareholders of Trend, and of the other tunnelled funds, are principally interested in is, however, not the dispute of the two shareholders over the department store, but the question whether the state will finally begin to chase these cases fiercely and, principally, whether it will return the stolen property to them. Certain advances have been made, but there is no decisive campaign against the depravity on the Czech Capital market.

The stock market's analysts doubt that the entire property will return to the shareholders of Trend, although the vast majority of its original shares are frozen in the accounts of the Securities Centre. "*New owners must win the eventual court disputes. The shares are not numbered and it will be difficult to determine who was their original owner,*" says Michal Konečný from Komero. According to him, the purchaser will always, bar some exceptions, prove that he acted in good faith. But Pergl thinks the opposite. "*We have informed all of them in press. Whoever monitors the capital market must also know that KHB and the companies connected with it sold the stolen shares,*" he says. "*No one will prove to anyone that he knew about this media campaign,*" opposes Konečný. "*We are Trend's attorneys at law, and therefore we must assert that they knew, and they will evidently assert that they did not. It is up to the court to decide,*" concludes Pergl.

**Table:**
**How FEL acquired the money for the purchase of KOTVA**



The Regional Commercial Court in Hradec Králové decided, on January 24, on the freezing of the shares in the account of IFM. The judge, however, failed to deliver this decision to the Czech Securities Centre and consequently, Mr. Hálek and Co. were warned in time and managed to transfer the shares.

The profit of this sole financial operation amounts to CZK 135.6 million.

Titulek:        Trend:Předání  tunelářů  soudu  je  signálem  pro  zahraniční
investory
Datum vydání:   2.10.1998
Čas vydání:     15:53
Klíčová slova:  ČR; obchod; Trend; obžaloba
ID:             19981002F02034
Servis:         ece
Priorita:       4
Kategorie:      obo; zak; fin


Trend:Předání tunelářů soudu je signálem pro zahraniční investory

PRAHA 2.října (ČTK) - Předání tunelářů investičních fondů Trend a Mercia
soudu je očekávaným signálem pro zahraniční investory. ČTK to v reakci na
obžalobu sedmi osob stíhaných v případu vytunelování investičních fondů Trend
a Mercia řekl současný člen představenstva Trendu John Moffitt. Jak dodal,
případ je zlomovým pro celý český kapitálový trh.

Moffitt také připomněl, že tunelování Trendu je prvním případem v ČR, kde by
měly být stíhané osoby obžalovány z trestného činu zločinného spolčení.
Důkazy shromážděné v trestním řízení dokládají, že společnost Forminster
Enterprises Limited, na niž byly převedeny z Trendu akcie Kotvy, stále ovládá
Miroslav Hálek, který řídí boj proti Trendu dokonce i z vězení, dodal Moffitt

Na sedm osob stíhaných v případu vytunelování investičních fondů Trend a
Mercia podal ve čtvrtek královéhradecký krajský státní zástupce obžalobu k
tamnímu krajskému soudu. V současnosti je ve vazbě z obviněných pouze
Miroslav Hálek. Jeden z největších případů poškození investičních fondů v ČR,
kde škoda činí více než 1,3 miliardy korun, se tak dostává tímto
krokem do závěrečné fáze.

Státní zástupce obžalované viní ze spáchání trestných činů zneužití informací
v obchodním styku a zpronevěry spáchaných ve zločinném spolčení či pro účast
na tomto spolčení. Pokud budou soudem uznáni vinnými, hrozí jim až 15 let
vězení.

Marcela Prošková jw

---

**Title:** Trend: Handing over of tunnellers is signal for foreign investors
**Date of issue:** October 2, 1998
**Time of issue:** 15:53
**Key words:** Czech Republic; business; Trend; charges
**ID:** 19981002F02034
**Service:** ece
**Priority:** 4
**Category:** obo; zak; fin

Trend: Handing over of tunnellers is signal for foreign investors

PRAGUE, October 2, (Czech Press Agency) – The handing over of the tunnellers of the Trend and Mercia investment funds to the court is a long awaited signal for foreign investors, stated John Moffitt, a current member of the Board of Directors of Trend, to the Czech Press Agency, in reaction to the charges of seven people prosecuted in the case of the tunnelling of the Trend and Mercia investment funds. He added that this case represents a turning point for the whole Czech capital market.

Moffitt also mentioned that the tunnelling of the Trend fund is the first case in the Czech Republic where the persons are charged with the offence of criminal conspiracy.

The evidence collected in the criminal proceedings proves that the company Forminster Enterprises Limited, to which the shares in Kotva were transferred from Trend, is still controlled by Mr. Hálek, who is leading a battle against Trend even from prison, added Moffitt.

The Regional Public Prosecutor in Hradec Králové delivered to regional court, on Thursday, an indictment of seven people prosecuted in the case of the tunnelling of the Trend and Mercia investment funds. At the moment, from all the indicted persons, only Miroslav Hálek remains in custody. One of the greatest cases of causing damage to investment funds in the Czech Republic, where the damage amounts to almost CZK 1.3 billion, enters hereby into the final phase.

The Public Prosecutor indicted the accused persons with the criminal offences of insider dealing and embezzlement committed in a criminal conspiracy, or for participation in such a criminal conspiracy. Should the court find the accused guilty, they could be imprisoned for up to 15 years

Marcela Prošková jw