UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
KOTVA a.s.                              )
                                        )
                Plaintiff,              )         Case No. 05-10679-RCL
                                        )
        v.                              )
                                        )
ANDREW WEISS and WEISS ASSET            )
MANAGEMENT, LLC                         )
                                        )
                Defendants.             )
_____)

**OBJECTIONS OF KOTVA, A.S. TO THE DISCOVERY MASTER'S FEBRUARY 13,
2006 ORDER REGARDING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**

**INTRODUCTION**

Pursuant to ¶ 6 of the Court's December 13, 2005 Order Appointing Discovery Master,

Plaintiff Kotva a.s. ("Kotva") respectfully submits its objections to the Discovery Master's

February 13, 2006 Order ("Order"), which granted in part and denied in part Kotva's Motion for

a Protective Order ("Motion").[1]  Kotva objects **only** to that part of the Order denying its request

to protect the identity and location of the financial institutions holding the $65 million in

proceeds from the sale of Kotva's Department store, including the escrow account holding

approximately $24,000,000 pending the resolution of the litigation filed against Kotva in the

Czech Republic.  Because Kotva has demonstrated good cause to protect the identity and

location of the financial institutions holding the relevant accounts—namely, that such disclosure

without limitation will result in specific harm to its business and shareholders—Kotva

respectfully requests that the Court protect this information *by limiting its use for purposes of*

*this litigation only*.

---
[1]  A copy of the Order is attached hereto as Exhibit 1.  A copy of Kotva's Motion is attached hereto as Exhibit 2.

During the course of the February 10, 2006 hearing before the Discovery Master and as part of the Local Rule 37.1 conference required prior to filing these objections, undersigned counsel offered to disclose the financial institution information regarding the relevant accounts for purposes of this litigation only. Defendants' counsel rejected Kotva's offer and refused to agree to any limitation on the use of Kotva's confidential account information.[2]

## PROCEDURAL BACKGROUND AND STANDARD OF REVIEW

In accordance with the Discovery Master's January 6, 2006 Order, Kotva moved on January 17, 2006 for the entry of a narrow protective order to preserve the confidentiality of private bank account information, including the identity and location of the financial institutions holding proceeds from the sale of its Department Store. Kotva simultaneously provided its account information to the Discovery Master for *in camera* review. After hearing on February 10, 2006, the Discovery Master granted Kotva's Motion with respect to Kotva's account numbers but denied the Motion with respect to the identity and location of the financial institutions holding its accounts. Order at ¶ 1.

Pursuant to ¶ 6 of the Court's December 13, 2005 Order Appointing Discovery Master and Fed. R. Civ. P. 72(a), Kotva files the instant objections to the Discovery Master's Order. Objections to the Discovery Master's conclusions of law and findings of fact are subject to *de novo* review by the Court. Fed. R. Civ. P. 53(g); December 13, 2005 Order, ¶ 6.

---

[2] Without filing a motion for protective order or a confidentiality log, as required by the Discovery Master's January 6, 2006 Order, the Weiss Defendants have redacted the name of CVF Investments' auditor from documents produced this month in discovery. *See* W0005370, attached hereto as Exhibit 3. The only reasonable inference for this redaction is that the Weiss Defendants view their financial relationships as confidential—but, at the same time, they contend that Kotva's relationships are not confidential. The Weiss Defendants should not be permitted to apply such a double standard to discovery. At a minimum, of course, the Weiss Defendants should disclose the redacted information for purposes of this litigation.

# ARGUMENT[3]

A.    **Kotva Has Shown Good Cause to Limit Disclosure of its Account Information.**

Kotva has demonstrated the requisite "good cause" for a protective order under Rule 26(c) regarding its financial account information. *See Anderson v. Cryovac, Inc.,* 805 F.2d 1, 7 (1st Cir. 1986) (finding of good cause must be based on a particular factual demonstration of potential harm). Like all responsible businesses, Kotva has a significant interest in maintaining the inherent privacy of its financial account information. *See, e.g., In re Gitto*, 321 B.R. 367, 376 (Bankr. D. Mass. 2005) (finding bank account numbers to be confidential), *aff'd* 2005 WL 1027348 (D. Mass. May 2, 2005). In this case, that information extends beyond the mere account numbers and includes the identity and location of the financial institutions holding the relevant accounts because of the harm that Kotva faces from disclosure.

Kotva's harm must be viewed in the context of the Defendants' past and continuing conduct. *Gill v. Gulfstream Park Racing Association*, 399 F.3d 391, 402 (1st Cir. 2005) (Rule 26(c) good cause standard is "a flexible one that requires an individualized balancing of the many interests that may be present in a particular case.") quoting *United States v. Microsoft Corp.*, 165 F.3d 952, 959-60 (D.C. Cir. 1999). Here, Defendants' pattern of conduct against Kotva leaves no doubt that they will misuse Kotva's confidential account information to interfere with Kotva's accounts and to harm Kotva's business. Public dissemination of Kotva's private account information—through one of Weiss's press conferences, for example—may cause Kotva's creditors and thousands of shareholders to question the security of Kotva's assets and proprietary information, ultimately leading to the disruption of its business. This would no doubt be pleasing to Mr. Weiss, whose sole desire is to cause as much disruption as possible to Kotva

---

[3] Kotva incorporates by reference the arguments set forth in its Motion, attached hereto as Exhibit 2.

in an attempt to compel it to somehow "repurchase" BGO's interest in the company at a grossly inflated price. Indeed, Defendants' counsel admits openly that they seek to use Kotva's account information in "parallel litigation" in the Czech Republic, not for the purposes of this case. *See* Motion at 9.

The instant litigation results from Defendants' attempt to blackmail Kotva through the instigation of sham litigation in the Czech Republic to interfere with the sale of Kotva's Department Store. Until March 2005, Kotva owned and operated a well known department store in Prague through its wholly owned subsidiaries. After learning through the press that Kotva planned to sell the Department Store, Weiss demanded that Kotva "repurchase" BGO's interest in Kotva. When Kotva refused, Weiss instigated litigation against Kotva in the Czech Republic to interfere with the sale of the Department Store and to force Kotva to purchase BGO's shares. Weiss then made ever increasing price demands while representing that he would "attempt to influence" Gilroy and KT to drop their suits. *See* Complaint at ¶ 29 and Ex. B thereto. As a result of those dubious lawsuits, the sale of the Department Store has been severely impaired, costing Kotva millions of dollars. In the wake of Defendants' egregious conduct, Czech authorities criminally charged Weiss.

There is little doubt, therefore, that Kotva will be harmed by (1) the Defendants' certain attempts to initiate additional litigation against Kotva or the financial institutions holding its accounts, and (2) Defendants' further attempts to interfere with the sale of the Department Store.

B.    **Any Need for the Identity and Location of the Financial Institutions is Satisfied by Limiting Disclosure to Purposes of This Litigation.**

Upon showing "good cause" to keep information confidential, the burden shifts to the discovering party to prove that the information at issue is relevant and that the need for the information outweighs the harm that will result from disclosure. *Pansy*, 23 F.3d at 787

(determining whether to issue a protective order involves a balancing process that weighs the need for the information against the harm that might result from disclosure), citing Arthur R. Miller *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv. L. Rev. 427, 433-35 (1991); *see also, Duracell Inc. v. SW Consultants, Inc.*, 126 F.R.D. 576, 578 (N.D. Ga. 1989) (discussing three part balancing test); 8 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2043 (West 2005).

Here, Defendants' repeated rejection of Kotva's offer to provide the identity and location of the financial institutions holding its accounts for purposes of this litigation highlights both that Defendants intend to misuse this information and that they have no actual need for it.  Further, Kotva's production of the identity and location of the relevant financial institutions ***for purposes of this litigation*** completely debunks the counterclaim theory that Kotva has "looted" the proceeds from the sale of the Department store.  Thus, the narrow protective order that Kotva requests should be granted.

## <u>CONCLUSION</u>

For the foregoing reasons and those set forth in its Motion for Protective Order (attached as Exhibit 2 hereto), Kotva requests that the Court extend the Discovery Master's protective order to limit the use of information regarding the identity and location of the financial institutions holding the escrow and proceeds from the sale of Kotva's Department store to purposes of this litigation only.

Respectfully submitted,

KOTVA A.S.

By its attorneys,

/s/ Joel G. Beckman
Joel G. Beckman (BBO# 553086)
William C. Nystrom (BBO# 559656)
Daniel J. Pasquarello (BB0# 647379)
NYSTROM BECKMAN & PARIS LLP
10 St. James Ave., 16th Floor
Boston, Massachusetts 02116
(617) 778-9100
(617) 778-9110 (fax)
jbeckman@nbparis.com
wnystrom@nbparis.com
dpasquarello@nbparis.com

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Kotva believes that oral argument may assist the Court and requests to be heard.

## LOCAL RULE 37.1(B) CERTIFICATION

Undersigned counsel has complied with the provisions of Local Rule 37.1. On February 27, 2006 at approximately 2:00 p.m. for approximately ten minutes, I conferred by telephone with Benjamin Goldberger, Esq., counsel for Defendants, to ask if Defendants would agree to the relief requested herein. Opposing counsel would not agree to the relief requested herein.

/s/ Daniel J. Pasquarello
Daniel J. Pasquarello (BB0# 647379)

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 28th day of February, 2006.

/s/ Daniel Pasquarello

Dated: February 28, 2006

6

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KOTVA A.S.,                )
                           )
                           )          Civil Action No. 05-10679-RCL
        v.                 )
                           )
WEISS, ET AL.              )

ORDER OF SPECIAL MASTER

After hearing held on February 10, 2006, it is hereby ORDERED:

1. Plaintiff's Motion for Protective Order is hereby allowed to the following extent: bank account numbers may be redacted in such a way that the identity of the accounts is protected, but multiple accounts within an institution are distinguishable from each other. The Motion for Protective Order is otherwise denied. In particular, the identity and location of each institution shall be disclosed. References to the escrow account or accounts shall be identified as such. The identity of the escrow agent may not be redacted. No good cause has been shown for protecting the lease and rental arrangements from disclosure in this litigation. The confidentiality agreements in the Deposit Agreement and the Share Purchase Agreement, upon which plaintiff relies, do not by their terms prevent disclosure of the rental and lease information and in any event must yield to disclosure incident to a court proceeding.

2. Emergency Motion of Andrew Weiss and Weiss Asset Management LLC for Protective Order is hereby denied except to the following extent: the pending criminal proceedings in the Czech Republic shall not be described an "indictment" which the parties agree appears to be inaccurate. Plaintiff agrees to, and it is hereby ordered, that the criminal proceedings shall be referred to as a "criminal charge." It is further agreed by the parties and

1

ordered, in the interest of orderly management of discovery and to afford the parties an opportunity to address confidentiality and other concerns prior to service of process, that the parties will serve each other notice of non-party discovery subpoenas no less than ten days before service of process of such subpoena upon the non-party witness.

3. The Motion for Issuance of Letters Rogatory filed by Andrew Weiss, et al., unopposed by plaintiff, has been referred to Judge Reginald Lindsay with a recommendation that the Letters be approved and signed.

So ordered this 13th day of February, 2006.

/s/ Jeanne M. Kempthorne

_____

Special Master

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| KOTVA a.s. | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05-10679-RCL |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW WEISS and WEISS ASSET | ) | |
| MANAGEMENT, LLC | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION FOR PROTECTIVE ORDER PURSUANT TO
FED. R. CIV. P. 26(C) AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

**INTRODUCTION**

In accordance with the Discovery Master's January 6, 2006 Order ("Order"), Plaintiff

Kotva a.s. ("Kotva") hereby requests the entry of a narrow protective order to preserve the

confidentiality of private bank account information, the disclosure of which would cause harm to

the company and its thousands of shareholders. Specifically, Kotva requests an order to maintain

the privacy of its account numbers and financial institutions holding proceeds from the sale of its

Prague department store ("Department Store"), including $24,000,000.00 held in escrow pending

completion of the Department Store sale. The Court can confirm from its *in camera* review of

Kotva's account information submitted herewith that the proceeds are indeed safely deposited in

accounts controlled by Kotva, with internationally recognized financial institutions. Since

Defendants can demonstrate no other legitimate reason for access to this information, Kotva

respectfully requests that the Court keep its account information private, by permitting the

company to produce documents bearing that information in redacted form and subject to an order

that such documents are confidential and can only be used in the prosecution or defense of this

litigation, and for no other purpose.  Specifically, Kotva seeks protection for the following

documents that contain its bank account information:

- Bank Statements identifying Escrow Account, Escrow Account Number, and SPV Co's Bank Account and Bank Account Number (attached as Exhibit A to the Affidavit of Joel G. Beckman ("Beckman Aff.") provided to the Discovery Master for *in camera* review);

- Emails exchanged between and among Kotva and Markland identifying Kotva's subsidiaries' bank account numbers (attached as Ex. B to the Beckman Aff.);

- Emails exchanged between and among Kotva and Markland (and their respective counsel) and Escrow Agent identifying the parties' Escrow Account, Escrow Account number, and Escrow Agent (attached as Ex. C to the Beckman Aff.);

- Draft Agreements exchanged between and among Kotva and Markland (and their respective counsel) identifying the parties' Escrow Account, Escrow Account Number, and Escrow Agent (attached as Ex. D to the Beckman Aff.);

- Escrow Agreement; Joint Investment Instructions; March 4, 2005 Deposit Agreement; December 20, 2004 Share Purchase Agreement (in English & Czech) (attached as Ex. E to the Beckman Aff.); and

- Detailed listings of rents and revenues of ongoing leases and current tenants of the Kotva Department Store (attached as Ex. F to the Beckman Aff.).

Pursuant to the Discovery Master's Order, Kotva is submitting these documents for *in camera* review only.  *See* Kotva's Log of Confidential Documents ("Confidentiality Log") attached hereto as Exhibit 1.

Kotva also requests protection for documents concerning ongoing lease information with current tenants ("Lease Documents") as confidential and commercially sensitive.  (The Lease Documents for which Kotva seeks protection are identified in the Confidentiality Log and attached as Exhibit F to the Beckman Affidavit.)  With respect to these documents, Kotva requests that the Court limit their use for only this litigation.

## **BACKGROUND**

In response to Defendants' first request for production of documents—which sought a broad swath of documents going back over a decade—Kotva agreed to produce the bulk of the documents requested, and simply asked the Defendants to agree to a standard confidentiality order to limit use of the documents to the instant litigation. Defendants, however, refused and pressed for the production of all documents without any confidentiality designation. Defendants filed a motion to compel dated September 23, 2005. On January 6, 2006, the Discovery Master granted in part, and denied in part, Defendants' motion to compel. In response to the Court's Order, Kotva has produced over 6,000 pages of documents to the Defendants, including the following categories:

- Documents concerning the transfer of the Department Store;
- Valuations of the Department Store, including Ernst and Young's recommendations;
- Portions of meeting minutes and annual reports;
- Documents concerning Kotva's decision to sell and efforts to sell the Department Store;
- Documents concerning the negotiations of the sale of the Department Store;
- Communications with Kotva's real estate broker;
- Drafts and the final signed Sale Purchase Agreement (in redacted form) and schedules;
- Trend settlement agreement; and
- Czech's criminal complaint, indictment, and criminal file.

The Order also set up a mechanism by which either party could seek to maintain the confidentiality of sensitive commercial information. Here, Kotva is seeking to protect only the most sensitive, non-public details of approximately U.S. $65,000,000 in sale proceeds, and current proprietary leasing information. Without the protection of a confidentiality order, Kotva is legitimately concerned that Defendants will misuse this confidential account information—

either to further its blackmailing scheme or attempt to further disrupt Kotva's business. Kotva

therefore seeks a very narrow protective order that will protect its business interests and its

shareholders and impose no hardship on Defendants.

## ARGUMENT

I.    **KOTVA'S REQUEST FOR A NARROW PROTECTIVE ORDER SATISFIES THE RULE 26(C) STANDARD AND SHOULD BE GRANTED.**

Rule 26(c) specifically authorizes this Court to protect confidential commercial

information by ordering that it not be revealed at all or that it be revealed only in a designated

way. Fed. R. Civ. P. 26(c)(7) (Court may issue order that confidential "commercial information

not be revealed or be revealed only in a designated way"); *see also Bailey v. Dart Container

Corp. of Michigan*, 980 F. Supp. 560, 583 (D. Mass. 1997) (J. Lindsay) (allowing protective

order in trade secrets case that limited access to information to one in-house attorney and one in-

house expert); *GTE Prods. Corp. v. Gee*, 112 F.R.D. 169, 171-172 (D. Mass. 1986) (allowing

protective order prohibiting defendants' counsel from disclosing confidential discovery

information to defendants and noting that orders prohibiting attorneys from disclosing protected

information to their clients have been frequently entered). The United States Supreme Court,

moreover, has held that the courts have a substantial interest in preventing the abuse of the

litigation discovery process by prohibiting or limiting the public release of private information

obtained through discovery. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984) ("There is

an opportunity, therefore, for litigants to obtain—incidentally or purposefully—information that

not only is irrelevant but if publicly released could be damaging to reputation and privacy. The

government clearly has a substantial interest in preventing this sort of abuse of its processes.").[1]

As such, parties engaged in commercial litigation typically agree to the entry of a Confidentiality Agreement in order to prevent the disclosure of confidential business information. *See Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 532 (1st Cir. 1993) ("Protective orders of various kinds are employed in civil cases, ranging from true blanket orders (everything is tentatively protected until otherwise ordered) to very narrow ones limiting access only to specific information after a specific finding of need."). Indeed, courts look favorably upon such agreements because they facilitate the overall litigation process.

> [I]t is not unusual in commercial litigation in the federal courts for each party, as well as third-party witnesses, to share mutual concerns about the potential harm that may flow from discovery and unnecessary disclosure of sensitive, confidential commercial information. In such circumstances, it is typical for the parties to agree to a stipulated protective order setting forth procedures controlling access to, and unnecessary disclosure of, such discovered material and to present the stipulation to the court for entry as an order. Courts typically view such stipulated protective orders as an aid to the litigation process and readily agree to their entry in an action.

BUSINESS AND COMMERCIAL LITIGATION IN FEDERAL COURTS § 18.5 (Robert L. Haig ed.) (West Group & ABA 1998).

In the absence of an agreement, once a party demonstrates "good cause" to keep information confidential, the burden shifts to the discovering party to prove that the information at issue is relevant and that the need for the information outweighs the harm that will result from disclosure. *Pansy*, 23 F.3d at 787 (determining whether to issue a protective order involves a

---

[1] This case involves a dispute between private commercial litigants that does not involve matters of public interest. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3d Cir. 1994) ("if a case involves private litigants, and concerns matters of little legitimate public interest, that should be a factor weighing in favor of granting or maintaining an order of confidentiality."). Defendants' attempt to rely on First Amendment cases allowing the disclosure of confidential information on the basis of public interest is misplaced. "A litigant has no First Amendment right of access to information made available only for purposes of trying his suit." *Seattle Times*, 467 U.S. at 32.

balancing process that weighs the need for the information against the harm that might result

from disclosure), citing Arthur R. Miller *Confidentiality, Protective Orders, and Public Access to*

*the Courts*, 105 Harv. L. Rev. 427, 433-35 (1991); *see also, Duracell Inc. v. SW Consultants,*

*Inc.*, 126 F.R.D. 576, 578 (N.D. Ga. 1989) (discussing three part balancing test); 8 WRIGHT &

MILLER, FEDERAL PRACTICE AND PROCEDURE § 2043 (West 2005).

### A.    <u>Kotva's Account Information Is Inherently Private and Confidential.</u>

Courts recognize the confidential nature of bank account numbers.  *See In re Gitto*, 321

B.R. 367, 376 (Bankr. D. Mass. 2005) (finding bank account numbers to be confidential and

ordering Bankruptcy Examiner to delete all bank account numbers from report and exhibits that

were otherwise unsealed and made public), *aff'd* 2005 WL 1027348 (D. Mass. May 2, 2005).

With respect to bank account records in general, courts routinely grant protective orders that

prohibit the disclosure of such materials to non-parties and restrict the use of such information to

the litigation at hand.  *E.g., Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 593 (D.

Kan. 2003) (prohibiting disclosure of bank account documents to non-parties, prohibiting use by

discovering party for any commercial advantage, and limiting use of the information to purposes

of the instant litigation only); *Dean v. Anderson*, 2002 WL 1377729 at *3 (D. Kan. June 6, 2002)

(limiting disclosure of all confidential information, including bank account information, to

purposes of instant litigation only); *Duracell Inc. v. SW Consultants, Inc.*, 126 F.R.D. 576, 579

(N.D. Ga. 1989) (prohibiting discovery of bank account information as irrelevant and

unnecessary at particular stage of litigation).

Like all responsible business organizations—and all individual account holders, for that

matter—Kotva has a significant interest in maintaining the privacy of its bank account

information.  Indeed, the closing documents with the Department Store buyers ("Markland")

provide that the account information—and all other sensitive financial and business data—must

be preserved as confidential. *See, e.g.*, KC 1-2039, KC 1-2670 (included in Tab E of Affidavit of Counsel). Kotva, therefore, satisfies the first prong of the "good cause" analysis.

**B.    Disclosure of Kotva's Bank Account Numbers to Defendants Would Result in Serious Harm to Kotva.**

Kotva has good cause to protect its confidential account information because disclosure to Defendants would potentially harm Kotva. *Anderson v. Cryovac, Inc.,* 805 F.2d 1, 7 (1st Cir. 1986) (finding of good cause must be based on a particular factual demonstration of potential harm). The "good cause" standard in Rule 26(c) is "a flexible one that requires an individualized balancing of the many interests that may be present in a particular case." *Gill v. Gulfstream Park Racing Association*, 399 F.3d 391, 402 (1st Cir. 2005) quoting *United States v. Microsoft Corp.*, 165 F.3d 952, 959-60 (D.C. Cir. 1999). In this case, the harm Kotva faces must be viewed in the context of the Defendants' past and continuing conduct. That pattern of conduct leaves no doubt that Defendants will misuse and abuse Kotva's confidential account information in the absence of a protective order.

1.    *The Publication of its Private Account Information Will Harm Kotva.*

The disclosure of commercially sensitive bank account information, without any limitation on its use, could cause serious financial harm to any commercial litigant. The publication of Kotva's private bank information would make Kotva's accounts more susceptible to unlawful access.[2] The public disclosure of the information may also cause investors, including Kotva's thousands of shareholders, to question whether the corporation's assets—and its confidential information—are safe and secure. Simply put, private account information does not belong in the public domain.

---

[2]Defendants have demonstrated a proclivity for waging a media campaign against Kotva regarding the matters at issue in this lawsuit, including by press conference and through U.S. and Czech newspapers. *See* Complaint at ¶ 41 and Ex. E thereto.

    2.     *Defendants' Past and Continuing Conduct Presages Additional Harm to Kotva.*

Defendants' conduct throughout this dispute demonstrates that they would misuse Kotva's account-related information in a manner that would harm Kotva. Kotva filed this action as a result of the Weiss Defendants' attempted blackmail. Until March 2005, Kotva, a public company traded on the Czech securities market, owned and operated a well known department store in Prague through its wholly owned subsidiaries. After learning through the press that Kotva planned to sell the Department Store, Defendant Andrew Weiss ("Weiss") demanded that Kotva "repurchase" a 12% interest in Kotva owned by the Brookdale Global Opportunity Fund ("Brookdale"), which is managed by Weiss's Boston-based investment firm, Weiss Asset Management, LLC ("WAM"). When Kotva refused, Weiss instigated litigation against Kotva in the Czech Republic to interfere with the sale of the Department Store and to force Kotva to purchase Brookdale's shares.[3] Weiss then made ever increasing price demands—eventually seeking almost eight times the publicly traded market value—for the purchase of Brookdale's shares in Kotva *and* its shares in Trend, a separate investment, while representing that he would "attempt to influence" Gilroy and KT to drop their suits. *See* Complaint at ¶ 29 and Ex. B thereto. As a result of those dubious lawsuits, the sale of the Department Store has been severely impaired, costing Kotva millions of dollars.

Weiss's determination to interfere with Kotva's business and disrupt the pending sale of the Department Store has extended to direct contact with the bank for the purchasers of the Department Store to delay or impede the financing. *See* March 15, 2005 letter from McDermott,

---

[3]Specifically, Weiss used a shell company based in Cyprus named Gilroy Limited ("Gilroy"), and later a Delaware shell company named KT, Inc. ("KT"), to purchase nominal shares of Kotva's stock. Gilroy and KT then filed lawsuits against Kotva in order to interfere with the sale of the Department Store. *See* Complaint at ¶¶ 22-35. Without following appropriate procedure, Defendants have attempted to add KT to this action by unilaterally inserting KT as a "counterclaim plaintiff." Kotva's motion to dismiss KT as an improper "counterclaim plaintiff" is pending.

Will & Emery to Anglo Irish Bank, attached hereto as Exhibit 2. In the wake of Defendants'

egregious conduct, Czech authorities criminally indicted Weiss for blackmail. Weiss has refused

to accept in hand service of the Czech criminal indictment, apparently to stall the criminal

proceedings against him.

There is little doubt, therefore, that Weiss would attempt to use Kotva's confidential

account information to further interfere with the sale of the Department Store and to further

harass Kotva.[4] The Defendants would also likely use Kotva's confidential account information

to initiate even more groundless litigation against the company.

Finally, Defendants already have announced that they have no intention of maintaining

the confidentiality of materials they obtain from Kotva:

> [Defendants'] counsel are in close contact with Czech counsel for
> the Discovering Parties . . . [A]n order forbidding the parties from
> using the information they learn in this case in the parallel Czech
> proceedings is unworkable and unjust. The Discovering Parties
> cannot simply forget what they learn in this case and conduct the
> Czech litigation as if they are ignorant of things they in fact know.

Defendants' Memorandum in Support of Motion to Compel ("Motion to Compel") at 9. In short,

Defendants have made clear that they will disseminate whatever information they obtain in this

case to non-parties whose sold agenda is to harass Kotva until the company accedes to Weiss's

blackmail demands.

### C.    Defendants Can Demonstrate No Legitimate Need for the Disclosure of Kotva's Account Information.

Given the confidential nature of Kotva's account information, the burden shifts to

Defendants to demonstrate that the account information "is sufficiently relevant and necessary *to

[their] case* to outweigh the harm disclosure would cause. 8 WRIGHT & MILLER, FEDERAL

---

[4]The sale of the Department store is not yet complete because a substantial portion of the purchase price is being
held in escrow until the resolution of the frivolous lawsuits instigated in the Czech Republic by Weiss.

PRACTICE AND PROCEDURE § 2043 (West 2005) (emphasis added).  Defendants, however, can

demonstrate *no need* for Kotva's account information in this case."  Defendants' counterclaims

in this case turn on the theory that Kotva has somehow allowed the proceeds from the

Department Store sale to be spirited way.[5]  Contrary to Defendants' conspiracy theory, however,

Kotva produced documents chronicling Kotva's transfer of ownership of the Department Store to

its wholly owned subsidiaries and then, ultimately, to the Irish investors who purchased it.

Indeed, these documents explain the entire transaction, including how the investment group

purchased the Department Store from Kotva's wholly-owned subsidiary.  They also utterly

debunk Defendants' theory that Kotva's shareholders have somehow been harmed.

In short, the *in camera* production to the Court and the voluminous deal records produced

to Defendants conclusively demonstrate the baseless nature of Defendants' wild accusations

about absconded assets.  As a result, Defendants can show no need for Kotva's confidential bank

information and, therefore, cannot meet their burden to justify disclosure.

## II.   PROPRIETARY LEASE AND RENTAL INFORMATION SHOULD BE LIMITED TO THE INSTANT LITIGATION ONLY.

The Lease Documents for which Kotva requests confidential treatment contain rental data

and lease terms of current tenants of the Department Store.  Disclosure of this commercially

sensitive tenant information would harm not only the business interests of the current owner of

the Department Store but also the business interests of the tenants themselves.  Kotva also has

agreed to keep this information confidential under its agreements with Markland.  *See, e.g.*, KC

1-2039, KC 1-2670 (included in Tab E of Affidavit of Counsel).

---

[5]With no basis in law or fact, Defendants allege that Kotva's officers and its majority shareholder have somehow run off with the Department Store proceeds. *See* Motion to Compel at 3.

The lease and rental information also has no relevance to this case, and Defendants do not need such information for the prosecution or defense of this action. Kotva therefore requests an order that conditions the disclosure of the lease and rental information in the Loan Documents for use in this litigation only. *See* 8 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2043 ("The most common kind of order allowing discovery on conditions is an order limiting the persons who are to have access to the information disclosed and the use to which these persons may put the information.").

## CONCLUSION

For the foregoing reasons Kotva requests that the Court enter the Proposed Protective Order (attached hereto as Exhibit 3) to keep Kotva's account information private, to produce documents in redacted form, and to limit the use of any confidential information disclosed by Kotva to the purposes of this litigation only.

Respectfully submitted,

KOTVA A.S.

By its attorneys,

/s/ Joel G. Beckman
Joel G. Beckman (BBO# 553086)
William C. Nystrom (BBO# 559656)
Dana A. Zakarian (BBO# 641058)
Daniel J. Pasquarello (BB0# 647379)
NYSTROM BECKMAN & PARIS LLP
10 St. James Ave., 16th Floor
Boston, Massachusetts 02116
(617) 778-9100
(617) 778-9110 (fax)

## LOCAL RULE 7.1(A)(2) and 37.1(B) CERTIFICATION

In accordance with Local Rule 7.1(A)(2), I certify that I have conferred with opposing counsel and have attempted in good faith to resolve or narrow the issue addressed in this motion.

Undersigned counsel has also complied with the provisions of Local Rule 37.1. On January 13, 2006 at 10:30 a.m. for approximately ten minutes and on the morning of January 17, 2006 for approximately five minutes, I conferred by telephone with Edward Liebensperger, Esq., counsel for Defendants, to ask if Defendants would agree to the relief requested herein. Opposing counsel did not agree to any of the relief requested herein.

/s/ Joel G. Beckman
Joel G. Beckman (BBO# 553086)

## RULE 26(c) CERTIFICATION

I certify that I have conferred in good faith with opposing counsel in an effort to resolve the issues addressed in this motion without Court action.

/s/ Joel G. Beckman
Joel G. Beckman (BBO# 553086)

Dated: January 17, 2006

KOTVA a.s. v. Andrew Weiss and Weiss Asset Management, LLC
Case No. 05-10679-RCL

## KOTVA'S LOG OF CONFIDENTIAL DOCUMENTS

| Exhibit to Affidavit of Counsel | Bates Range | Description of Documents |
|---|---|---|
| A | KC 1-2149 – KC 1-2640 | Bank Statements identifying Escrow Account, Escrow Account Number, and SPV Co's Bank Account and Bank Account Number. |
| B | KC1 0001- KC1 0007 | Emails exchanged between and among Kotva and Markland identifying Kotva's subsidiaries' bank account numbers. (Proposed redactions are in red) |
| C | KC1 0008- KC1 0284; K 1548-K 1549; K 3282-K 3283 | Emails exchanged between and among Kotva and Markland (and their respective counsel) and Escrow Agent identifying the parties' Escrow Account, Escrow Account number, and Escrow Agent. (Proposed redactions are in red) |
| D | KC1 0285-1360 | Draft Agreements exchanged between and among Kotva and Markland (and their respective counsel) identifying the parties' Escrow Account, Escrow Account Number, and Escrow Agent. (Kotva seeks to redact all references to the Escrow Account, Escrow Account Number, and the Escrow Agent. Redactions to be made in production set when resolved by Special Master) |

1

KOTVA a.s. v. Andrew Weiss and Weiss Asset Management, LLC

Case No. 05-10679-RCL

**KOTVA'S LOG OF CONFIDENTIAL DOCUMENTS**

| Exhibit to Affidavit of Counsel | Bates Range | Description of Documents |
|---|---|---|
| E | KC 1-1937 – KC 1-1957; KC 1-2018 – KC 1-2062; KC 1-2063 – KC 1-2148; KC 1-2641 – 1-2689 | Escrow Agreement; Joint Investment Instructions; March 4, 2005 Deposit Agreement; December 20, 2004 Share Purchase Agreement (in English & Czech). (Proposed Redactions are in red. Documents have been produced to defendants in redacted form) |
| F | KC 1-1776 - KC 1-1785; KC 1-1910- KC 1-1919; KC 1-1981- KC 1-2004; KC 1-1991- KC 1-2009; KC 1-2199- KC 1-2123. | Detailed listings of rents and revenues of ongoing leases and current tenants of the Kotva Department Store |

2

# McDermott
# Will & Emery

Boston  Brussels  Chicago  Düsseldorf  London  Los Angeles  Miami  Milan
Munich  New York  Orange County  Rome  San Diego  Silicon Valley  Washington, D.C.

# FACSIMILE

**Date:**    March 15, 2005                                        **Time Sent:**

| **To:** | **Company:** | **Facsimile No:** | **Telephone No:** |
|---|---|---|---|
| Henry Prestage | | 353 1 676 20 00 | |

| **From:** | Benjamin A. Goldberger | *Direct Phone:* | 617.535.4483 |
| *E-Mail:* | bgoldberger@mwe.com | | |
| *Sent By:* | | *Direct Phone:* | |
| *Client/Matter/Tkpr:* | | *Original to Follow by Mail:* | No |
| | | *Number of Pages, Including Cover:* | 3 |

**Message:**

The information contained in this facsimile message is legally privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copy of this facsimile is strictly prohibited. If you have received this facsimile in error, please notify us immediately by telephone and return the original message to us at the below address by mail. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE CALL AS SOON AS POSSIBLE.**

Main Facsimile: 617.535.3800      Facsimile Operator: 617.535.4000

**U.S. practice conducted through McDermott Will & Emery LLP.**
28 State Street      Boston, Massachusetts 02109-1775      Telephone: 617.535.4000

K5101

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Milan
Munich New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Michael Kendall
Attorney at Law
mkendall@mwe.com
617.535.4085

March 15, 2005

BY ELECTRONIC MAIL — Daviddrumm@angloirishbank.ie AND FACSIMILE — 353 1 616 2488

David Drumm
Chief Executive
Anglo Irish Bank
Stephen Court
18/21 St. Stephen's Green
Dublin 2, Ireland

Re:    Markland Holding Limited's Acquisition of Kotva Department Store in Prague, Czech
Republic

Dear Mr. Drumm:

I represent Weiss Asset Management, LLC, an American asset management company. I understand that AIB has or will soon complete the financing of Markland Holding Limited's acquisition of Kotva Department Store in Prague, Czech Republic. I also understand that James Woolf of Flow East has told the participants in this acquisition in writing that the ostensible sellers acquired their interest in the property through improper means, and do not have a valid title to convey. Among the persons he has informed are Bryan Wilson of Linklaters, Messrs. Prestage, Scully and Sheehan of Markland, and Ben Bannatyne of Jones Lang LaSalle. Have these gentlemen informed AIB of Mr. Woolf's concerns?

Weiss Asset Management serves as the investment adviser to an investment fund that has direct and indirect interests equaling 22% of Kotva, a.s., the rightful owner of the real property. It appears the sale could be designed to deprive minority shareholders, such as the investment fund Weiss Asset Management advises, from benefiting from the sale.

If AIB has not yet financed the transaction, I ask that you take steps to verify the issues raised concerning the title before financing the sale. If AIB has financed the transaction, I ask that you take immediate steps to protect the rights of minority shareholders in Kotva, a.s.

K5102

12:55 FAX 617   5353800                                                    ☒003

Mr. David Drumm
March 15, 2005
Page 2


We have substantial information that may be of assistance to you. If you would like this
information or to discuss this further, please contact me by telephone at 617.535.4085 or
617.905.8206.

Sincerely,

Michael Kendall

cc:    Padraig Murray (by electronic mail — Padraigmurray@angloirishbank.ie)
       Bryan Wilson (by facsimile 420 221 622 199)
       Henry Prestage (by facsimile 353 1 676 20 00)
       Ben Bannatyne (by facsimile 420 221 622 199)

MK/pmf

DST99 1449857-2.072198.0011

K5103

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KOTVA a.s. | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05-10679-RCL |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW WEISS and WEISS ASSET | ) | |
| MANAGEMENT, LLC | ) | |
| | ) | |
| Defendants. | ) | |

## (PROPOSED) PROTECTIVE ORDER

After hearing, all parties being represented and heard, it is hereby ORDERED:

1.　　The (a) identity of the financial institutions holding the Escrow Account and the SPV CO Account, and (b) the account numbers and bank information identifying those accounts, both constitute confidential commercial information that Plaintiff shall not be required to disclose. Plaintiff may redact such confidential information from the discovery materials it produces in this litigation. In the event that Plaintiff inadvertently discloses the confidential account information described in this paragraph, the information shall continue to be treated as confidential and shall be limited to attorneys' eyes only, pending a further ruling of the Court.

2.　　Documents and information regarding the rents and revenues of ongoing leases and current tenants of the Kotva Department Store shall be

– 1 –

considered confidential commercial information and the use of such

information shall be limited to the purposes of the instant litigation only.

3. If Confidential Information is disclosed in any way in a pleading, motion,

deposition, transcript, or other paper filed with the Court, it shall be the

responsibility of the party filing such Confidential Material to obtain the

necessary order of impoundment, and all other parties will cooperate in

obtaining such an order.  All copies of such documents served on counsel

for other parties shall be marked "CONFIDENTIAL."

So ordered this ___ day of _____, 2006.


Jeanne M. Kempthorne


_____
Special Master

## RE: Holiday In Cyprus

Dave Johnson

**To:**        'Ergoserve'

Dear Geoffrey,
We are getting resignation letters from two of the current directors but are having trouble locating
the third director, a ██████████  If you know him, could you please give me his contact
details? I figure Cyprus is a small island where you may know him. Thank you.

Regards,
Dave

-----Original Message-----
**From:** Ergoserve [mailto:ergoserv@logosnet.cy.net]
**Sent:** Thursday, April 01, 2004 11:40 PM
**To:** Dave Johnson
**Subject:** Re: Holiday In Cyprus

Dear Dave

Please send us exact spelling on name and company registration number.  We can do a
search but it may take the Registrar a few days.  Under Cyprus law there must be a local
administrator - secretary?  If you tell me who shareholders are (if nominees) I may be
able to tell you what firm it is.

Regards

Geoffrey

—— Original Message ——
**From:** Dave Johnson
**To:** Ergoserve
**Cc:** Eitan Milgram
**Sent:** Friday, April 02, 2004 1:28 AM
**Subject:** RE: Holiday In Cyprus

Geoffrey -
I do not believe that CVF Investments currently has an administrator, but its auditor is
████████████████████  We believe that it is just a name on the register of
companies in Cyprus.  Is there any way for you to check what its status is, we have not
used it in many years as a holder of securities but I do believe that its accounts are in
good standing.  We would like to get this set up as soon as possible and may need some
ground support in Cyprus to make that happen.  Thank you.  If you'd like to speak
tomorrow, I'll be in the office around 9am EST or 5pm Cyprus time.  617-778-7780.

Regards,
Dave

-----Original Message-----
**From:** Ergoserve [mailto:ergoserv@logosnet.cy.net]
**Sent:** Wednesday, March 31, 2004 12:11 AM
**To:** Dave Johnson
**Cc:** haggerty@OCSeurope.com
**Subject:** Re: Holiday In Cyprus