UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
KOTVA a.s.                              )
                                        )
            Plaintiff,                  )      Case No. 05-10679-RCL
                                        )
            v.                          )
                                        )
ANDREW WEISS and WEISS ASSET            )
MANAGEMENT, LLC                         )
                                        )
            Defendants.                 )
_____)

## KOTVA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS "COUNTERCLAIM-PLAINTIFFS" KT AND CVF

### INTRODUCTION

Kotva filed suit in Massachusetts because this Court has jurisdiction over the Weiss Defendants—who reside in Massachusetts—and because all of Kotva's claims are based on U.S. law.  In response, Defendants have put up a smoke-screen by:  (1) resurrecting long-settled matters they have no standing to assert (the "Trend tunneling" allegations) and making unwarranted accusations (that Kotva has been "looted"); (2) attempting to add four new foreign parties over whom, respectfully, the Court lacks personal jurisdiction; (3) inserting two new "counterclaim plaintiffs," KT, Inc. ("KT") and CVF Investments, Ltd. ("CVF"), without leave of Court; and (4) introducing a swarm of Czech substantive law claims that are the subject of prior pending litigation filed by KT and CVF in the Czech Republic.  At the January 23, 2006 hearing, the Court questioned whether the Czech-law issues raised in the Counterclaim should be decided in the Czech Republic.  By Order dated January 23, 2006, the Court ruled that Kotva may file the instant motion to dismiss KT and CVF from this action.

As demonstrated below, international comity and judicial deference provide that parallel proceedings, like the simultaneous litigation that KT and CVF attempt here, should not be permitted.  The doctrine of *forum non conveniens* likewise counsels against entertaining the Czech-law based claims advanced by the Weiss Defendants and KT and CVF.  In any event, KT and CVF do not actually "join" any of the claims asserted by the Weiss Defendants.  Instead, KT and CVF assert ***new claims*** against Kotva and ***new foreign parties that are unrelated to the Weiss Defendants' Counterclaim***—which centers solely on abuse of process.  In short, they cannot assert new claims against other and new defendants.

With the possible exception of Count I (Abuse of Process), which was described by the Court as the "tail that wags the Czech dog," the Court noted that all of the remaining counts in the Counterclaim (II-VI and VIII) depend on substantive issues of Czech law.  *See* Order dated January 23, 2006.[1]  Dismissing those claims will streamline this case and render the proposed technical advisor on Czech law unnecessary.   For the reasons set forth below, Kotva respectfully requests the Court to dismiss KT and CVF from this action, and to dismiss Counts II-VI and VIII for lack of standing, *forum non conveniens,* and international comity.

## BACKGROUND

In April 2005, Kotva brought this action against Andrew Weiss ("Weiss"), who lives in Brookline, Massachusetts, and Weiss Asset Management ("WAM"), with a principal place of business in Boston, because the Weiss Defendants are subject to jurisdiction here.  As detailed in the Complaint, Kotva filed suit as a result of the Weiss

---

[1] Though not included as part of the Order, the Court commented during the January 23 hearing that Counts III thru V also rely on issues Czech law.

Defendants' scheme to blackmail Kotva.  As part of that scheme, Weiss filed lawsuits to interfere with the sale of Kotva's Department Store.  One of those lawsuits was filed by KT against Kotva and two other defendants in the District Court for Prague on December 23, 2004 (the "KT/CVF Czech lawsuit").  A translated copy of the Complaint filed by KT is attached hereto as Exhibit 1.[2]

Styled as a "Petition to determine title to real property," the KT/CVF Czech lawsuit asks the Czech courts to rule that the transfer of Kotva's Department Store is "null and void" and that Kotva remains the owner of the Department Store.  *See* Exhibit 1 at K0143.  The KT/CVF Czech lawsuit walks through the same historical background and "Trend tunneling" allegations that the Weiss Defendants assert in their Counterclaim.  *E.g., compare* Exhibit 1 at K0131-142 and Counterclaim ¶¶ 42-60.  Indeed, the specific claims that KT and CVF attempt to assert in this action all turn upon the same allegation that they have asserted in the KT/CVF Czech lawsuit—that Kotva has somehow deprived itself of its Department Store asset, and that the property or proceeds from the sale should be returned to Kotva.  *Compare* Exhibit 1 at K0143 (proposing verdict that Kotva "is the sole owner" of the Department Store) *and* Counterclaim at ¶ 100 ("[t]he sale proceeds belong *instead* to Kotva a.s. and its shareholders") (emphasis added).  In short, all of the allegations by KT and CVF in counts II through VI and VIII are simple variations of the same basic allegation that KT and CVF have chosen to litigate against Kotva in the Czech Republic.[3]

---

[2] On July 20, 2005, KT and CVF petitioned for the addition of CVF as a plaintiff in that lawsuit.  A translated copy of that petition is attached hereto as Exhibit 2.

[3] Count II:  conspiracy to loot Kotva assets (KT and CVF have no standing to assert abuse of process claims—evidenced by the fact that they have not joined in Count I); Count III:  conversion of the proceeds from the sale of the Department Store; Count IV:  unjust enrichment from proceeds of the sale of the Department Store; Count V:  breach of fiduciary duty from alleged stripping of Department Store asset;

<u>**ARGUMENT**</u>

**I.    KT'S AND CVF'S "COUNTERCLAIMS" AND ALL CZECH-LAW
COUNTERCLAIMS SHOULD BE DISMISSED ON GROUNDS OF
<u>INTERNATIONAL COMITY AND *FORUM NON CONVENIENS*</u>**

**A.    KT and CVF's Claims Should Be Dismissed on
<u>Grounds of International Comity</u>**

International comity is "a doctrine that counsels voluntary forbearance when a

sovereign which has a legitimate claim to jurisdiction concludes that a second sovereign

also has a legitimate claim to jurisdiction under principles of international law." *United*

*States v. Nippon Paper Indus. Co., Ltd.*, 109 F.3d 1, 8 (1st Cir. 1997).  Because parallel

proceedings between the same parties concerning the same facts and legal issues result in

a substantial waste of judicial resources and could lead to inconsistent verdicts, federal

courts have the "inherent power to stay an action based on the pendency of a related

action in a foreign jurisdiction." *Goldhammer v. Dunkin' Donuts, Inc.*, 59 F. Supp. 2d

248, 251 (D. Mass. 1999) (citations omitted).[4]  In determining whether to stay or dismiss

an action in deference to parallel foreign litigation, the federal courts look to the

following factors as relevant:

> (1) similarity of parties and issues involved in the foreign
> litigation;
> (2) the promotion of judicial efficiency;
> (3) adequacy of relief available in the alternative forum;
> (4) issues of fairness to and convenience of the parties, counsel,
> and witnesses;
> (5) possibility of prejudice to any of the parties; and
> (6) the temporal sequence of the filing of the action.

---

Count VI:  constructive trust of Department Store; Count VIII:  ownership of proceeds from sale of
Department Store.

[4]   See also *Johnson v. Continental Airlines Corp.*, 353 F. Supp. 2d 160, 161 (D. Mass. 2005) ("substantial
waste of judicial resources to permit conduct of parallel proceedings") and *Boston & Maine Corp. v. United*
*Transportation Union*, 110 F.R.D. 322, 328-329 (noting that parallel proceedings involving the same
parties and closely related issues should ordinarily be avoided), with respect to general comity principles
outside the international context.

*Goldhammer*, 59 F. Supp. 2d at 252-253. (citing cases staying or dismissing federal actions in favor of pending foreign litigations).  Weighing the relevant factors as a whole, the *Goldhammer* court stayed a diversity suit on international abstention grounds pending the outcome of a first-filed English action where the cases shared overlapping legal and factual issues.  *Id*. at 253.

*United Bank for Africa PLC v. Coker*, No. 94 Civ. 0655(TPG), 2003 WL 22741575 (S.D.N.Y. Nov. 18, 2003), (attached hereto as Exhibit 3), is squarely on point.  Coker had sued UBA in Nigeria for libel, wrongful discharge, and other matters relating to an alleged breach of his employment contract.  UBA subsequently sued Coker in federal court in New York, asserting causes of action under RICO, fraud, breach of contract, and breach of fiduciary duty relating to Coker's New York employment for UBA.  *Id*. at *2.  Coker then asserted counterclaims in the New York action for libel, wrongful discharge, and breach of contract issues relating to his employment.  After reviewing the relevant comity and deference factors, the court dismissed Coker's counterclaims and allowed UBA's action to proceed.  *Id*. at *4 ("The relevant factors thus strongly militate in favor of deference to the Nigerian action.  Further, given the identical nature of Coker's Nigerian libel claim and the apparent ability of that forum to accord full relief, it would serve no purpose to stay the instant action rather than simply dismissing it.").

   1. *All of the Comity/Deference Factors Weigh in Favor of Dismissal*

Like *Coker*, KT and CVF *first* filed their claims in a foreign jurisdiction.  *See* Exhibit 1.  The basis for KT and CVF's claims in both actions is the same:  they all turn on the (baseless) allegation that Kotva somehow wrongfully deprived itself of its

Department Store and that the proceeds need to be "returned" to Kotva's shareholders. *Compare* Counterclaim at ¶100 *and* Exhibit 1 at K0143. The parties are also either the same or similar in both actions: KT and CVF on one side and Kotva on the other side are the main parties in both actions. Given the similarity of the parties and issues in the two actions and the fact that all of KT and CVF's claims involve substantive issues of Czech law (Order dated January 23, 2006), dismissing those claims and dropping KT and CVF from this action would promote judicial efficiency and avoid the possibility of inconsistent verdicts.

KT and CVF's attempt to introduce new parties and claims does not turn this factor against dismissal. *See Goldhammer*, 59 F. Supp. 2d at 253, citing *Landis v. North Amer. Co.*, 299 U.S. 248, 254 (1936) ("the parties and claims need not be identical in order for one action to be stayed or dismissed in deference to an earlier action."). KT and CVF's likely objection that their claims here involve more counterclaim-defendants than just Kotva actually further supports dropping KT and CVF from this case. First, this Court lacks personal jurisdiction over all of the counterclaim-defendants with respect to KT and CVF's claims.[5] Second, the Czech Republic is a far more convenient forum than Massachusetts for the counterclaim-defendants to defend against KT and CVF's claims.[6] Considering the historical nature of KT and CVF's Czech-law based claims, sources of

---

[5]  Kotva does not dispute that Weiss and WAM may assert appropriate counterclaims against it in this Court. KT and CVF assert new claims against Kotva that are not related to Defendants' counterclaims, however, and those claims go beyond the basis of specific jurisdiction over Kotva as Plaintiff and counterclaim-defendant in this action. All of the other counterclaim-defendants have challenged personal jurisdiction and have filed motions to dismiss. *See* motions to dismiss filed by counterclaim-defendants Forminster (Docket # 34), Benda and Harazim (Docket # 39), and SPV Co. (Docket # 78).

[6]  Kotva is a publicly traded Czech company; Forminster Enterprises and SPV Co. are Cypriot business entities that have no contacts with this forum; Messrs. Harazim and Benda are both Czech nationals whose only alleged contacts with this forum derive from their official capacity as representatives of Kotva. John Does 1-5 are alleged to be individuals who purportedly "reside in the Czech Republic and elsewhere outside the United States." Counterclaim at ¶ 14.

proof and witnesses would be more accessible in the Czech Republic. *See* Counterclaim at ¶¶ 42-52. Third, KT has already filed a suit in the Czech Republic against Forminster seeking the same relief. *See* Counterclaim Plaintiffs' Opposition to Kotva's Motion to Dismiss at 11-12.

Finally, KT and CVF can make no serious objection on the grounds of fairness, prejudice, or that the relief available in the Czech Republic is inadequate. They chose to file the KT/CVF Czech lawsuit in the Czech Republic. *See Coker*, 2003 WL 22741575 at *4 (taking into consideration party's choice to litigate in foreign forum in weighing adequacy of relief factor); *Caspian Investments, Ltd. v. Vicom Holdings, Ltd.*, 770 F. Supp.880, 885 (S.D.N.Y. 1991) (invoking jurisdiction of foreign forum barred complaint against adequacy of that forum); *see also Goldhammer*, 59 F. Supp. 2d at 255-256 ("notions of international comity are at an apex when parties inject themselves into the economy of another nation for profit . . .and then try to extricate themselves from jurisdiction"). In sum, all of the relevant comity factors weigh in favor of dismissing the claims brought by KT and CVF in deference to the prior pending litigation.

**B**.    **All Czech-Law Based Counterclaims Should Be Dismissed on Grounds of *Forum Non Conveniens***

In addition to principles of international comity, the Court should dismiss all of KT and CVF's claims on *forum non conveniens* grounds because there is (1) an adequate alternative forum available and (2) the absence of transfer would result in serious unfairness. *Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345 (1st Cir. 1992). An alternative forum is generally considered available if the party asserting *forum non conveniens* is amenable to process in the alternative forum. *Mercier*, 981 F.2d at 1349. Kotva is certainly amenable to process in the Czech Republic. There is also little doubt that the

Czech Republic provides an adequate forum for KT and CVF's claims against Kotva—
KT and CVF have already sued Kotva in the Czech Republic requesting the same basic
relief there that they seek here.  *See* Exhibit 1; *see also*, Counterclaim Plaintiffs'
Opposition to Kotva's Motion to Dismiss at 11-12 (describing suit brought by KT in the
Czech Republic against Forminster regarding ownership of Kotva).

The Weiss Defendants' conspiracy count of the Counterclaim (Count II) should
also be dismissed since the Czech Republic is an available, adequate, and more
appropriate forum for such Czech-law based allegations.  *See* Order dated January 23,
2006 (noting that resolution of Count II relied on Czech law).  The fact that Weiss has
been criminally charged in the Czech Republic (*see* Exhibit 4 hereto) does not make the
Czech Republic an inadequate forum.  *See Mercier*, 981 F.2d at 1350 n.2 (discussing
conclusion that female plaintiff's legal difficulties in Turkey, including risk of arrest, did
not make Turkish tribunal an inadequate alternative forum).

## 1.    *The Private Interest Factors Weigh in Favor of Dismissal.*

The Supreme Court has identified certain private and public interest factors to
determine the second prong of the *forum non conveniens* analysis, whether serious
unfairness will result from non-dismissal.  *Olin Corp. v. Fisons PLC*, 47 F. Supp. 2d 151,
158 (D. Mass. 1999).  The private interest factors include:  relative ease of access to
sources of proof; the availability of compulsory process and the cost of securing the
attendance of witnesses; the possibility of a view of the premises, if appropriate; and an
evaluation of "all other practical problems that make trial of a case easy, expeditious and
inexpensive."  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982) quoting *Gulf*

*Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).  All of these factors favor litigating the counterclaims in the Czech Republic rather than in Massachusetts.

Here, KT and CVF's claims do not arise out of the same transaction or series of transactions as Kotva's claim and the Weiss Defendants' Counterclaim.[7]  Rather, KT and CVF base all of their claims on the "Trend tunneling" allegations concerning events that took place in the Czech Republic in the 1990s.  *See* Counterclaim at ¶¶ 42-60, 68-103; *see also* Exhibit 1 at K0131-142.  Since, the allegations underlying KT and CVF's claims involve events that took place in the Czech Republic and have nothing to do with Massachusetts, access to sources of proof and witnesses will be greater in the Czech Republic.  Further, the fact that all counterclaim-defendants and counterclaim-plaintiff CVF are either Czech or European means that proceeding in the Czech Republic would also be more convenient with respect to travel.  *See* Defendants' and Counterclaim Plaintiffs Initial Disclosures at 2-4 (identifying 18 individuals likely to have discoverable information, 17 of whom reside outside the United States and 12 of whom reside in the Czech Republic), attached as Exhibit 5 hereto.  Indeed, counterclaim plaintiffs should be estopped from objecting to dismissing their claims for *forum non conveniens* since they have already sued for the same relief in the Czech Republic.

2.    *The Public Interest Factors Weigh in Favor of Dismissal.*

The public interest factors also cut decisively in favor of dismissing KT and CVF and all of the Czech-law based counterclaims.  The public interest factors include:  the administrative difficulties flowing from court congestion in the chosen forum; the "local interest in having localized controversies decided at home;" the interest in trying a diversity case in a forum that is at home with the law governing the action; ***the avoidance***

---

[7]  *See* Section II below.

*of unnecessary problems in conflict of laws, or in the application of foreign law*; and the unfairness in burdening citizens in an unrelated forum with jury duty. *Piper Aircraft*, 454 U.S. at 241 n.6. (emphasis added). The most obvious and significant public interest factor in this case involves the problematic application of Czech law to resolve counts II thru VIII of the Counterclaim.

This Court has already noted that the resolution of counts II-VI and VIII of the Counterclaim depends upon Czech law. *See* Order dated January 23, 2006.[8] Counterclaim-plaintiffs also have argued that Czech law governs their claims. Counterclaim Plaintiffs' Opposition to Kotva's Motion to Dismiss at 8-9. Given the difficulties inherent in researching, interpreting, and applying foreign law, the Court has proposed the appointment of an expert in Czech law as a technical advisor in this case. *See* Clerk's Notes for Proceedings Held January 23, 2006. Dismissing KT and CVF and the Czech-law based counterclaims makes such an appointment unnecessary.

Count VIII lays bare KT and CVF's real intentions in trying to insert themselves into this lawsuit, and best demonstrates why the Court should dismiss them and defer to the courts of the Czech Republic for the resolution of matters of Czech law. In Count VIII, KT and CVF explicitly ask the Court to sort through events relating to Trend that occurred in the Czech Republic—many of which occurred more than a decade ago—and to declare who owns what percentage of Kotva. *See* Counterclaim at ¶¶ 42-60, 97-103. Leaving aside the fact that Trend is not a party to this action and that the historical allegations involving Trend have nothing to do with Kotva's underlying action, to resolve this claim the Court would have to insert itself completely and needlessly into matters of

---

[8] *See* note 1 *supra.*

Czech law that should be decided by Czech authorities.[9]  Moreover, KT admits that it is
already litigating this issue too in separate litigation in the Czech Republic.  Counterclaim
Plaintiffs' Opposition to Kotva's Motion to Dismiss at 11-12.  ("As with the dispute over
title to the Department Store, KT is involved in a parallel case in the Czech Republic
disputing the Forminster Group's title to the Kotva shares it controls and seeking a
declaration that Trend is the true owner of those shares.")

    The remaining public interest factors also favor dismissal.  There is no local
interest in having KT and CVF's claims decided in Massachusetts.  Although KT has a
principal place of business in Massachusetts, it chose the Czech Republic as the forum to
litigate its claims before asserting them in this action.  CVF is a Cyprus corporation with
a principal place of business in Cyprus and has no connection to Massachusetts.
Counterclaim at ¶ 7.  Moreover, the Czech Republic has a greater stake in resolving the
counterclaims alleged against Kotva, a publicly traded Czech Company, than
Massachusetts does.  The Czech court also has easier access to and experience with
issues of Czech law.  Furthermore, court congestion and the jury duty burden on
Massachusetts citizens will be eased by the streamlining effect that dismissing KT and
CVF and the Czech-law counterclaims will have.  Other courts have reached similar

---

[9]  Even if the allegations in Count VIII and the "Trend Tunneling" claim were proper topics for the Court to
consider, which they are not, Trend would be an indispensable party under Fed. R. Civ. P. 19(b) that cannot
be joined.  Trend has been in bankruptcy since 2000, as Weiss himself admits.  *See* Complaint Ex. E.  Here,
complete relief could not be afforded without Trend, whom the counterclaim-plaintiffs allege to be the
"owner" of 55% of Kotva's shares, not the "Forminster Group."  Counterclaim ¶¶ 101-103.  Thus, Rule 19
provides an alternative ground for dismissing count VIII.  *See also Weizmann Institute of Science v.
Neschis*, 229 F.Supp.2d 243, 250-51 (S.D.N.Y 2002) (when joinder not feasible, the "Plaintiffs must show
why the declaratory judgment claims should *not* be dismissed.") (emphasis added); *National Union Fire
Ins. Co. v. Massachusetts Municipal Wholesale Electric Co.*, 117 F.R.D. 321 (D. Mass. 1987) (refusing to
drop a defendant from an action because in their absence any decision rendered by the court on the
declaratory action judgment would be "hollow or ineffectual").  It is also telling that the Counterclaim
makes no mention of the 1999 settlement agreement in which Trend acknowledged Forminster as the
owner of 55% of Kotva.  *See* Complaint ¶ 12.

conclusions by dismissing counterclaims or counts of claims on *forum non conveniens* grounds.[10]

Because there is an adequate alternative forum and because all of the public and private interest factors weigh in favor of proceeding in the Czech Republic, all of the Czech-law counterclaims should be dismissed on *forum non conveniens* grounds.

## II.    KT AND CVF ARE NOT PROPER PARTIES TO THIS ACTION AND SHOULD BE DISMISSED UNDER FED. R. CIV. P. 21

Kotva did not sue KT and CVF.  Without leave of Court, however, the Weiss Defendants unilaterally inserted KT and CVF as "counterclaim-plaintiffs" in this action. KT and CVF, however, do not actually join in the claims asserted by the Weiss Defendants (Counts I and II).  Instead, KT and CVF assert new and unrelated claims mostly against new parties.  Counts III thru V, asserted *only* by new parties against *only* new parties, demonstrate this fact in stark relief.[11]  Even if KT and CVF had joined in the Weiss Defendants' counterclaims, they could not be added in the manner attempted here without undermining the Federal Rules of Civil Procedure.  Thus, in the alternative to comity and *forum non conveniens*, KT and CVF should be dismissed as misjoined parties pursuant to Fed. R. Civ. P. 21.

---

[10]  *See United Bank for Africa PLC v. Coker*, No. 94 Civ. 0655(TPG), 2003 WL 22741575 (S.D.N.Y. Nov. 18, 2003) (dismissing counterclaims on comity and *forum non conveniens* grounds), attached hereto as Exhibit 3; *Sandstrom v. Cultor Food Science, Inc.*, No. 97 C 8216, 1998 WL 321502 (N.D. Ill. June 14, 1998) (dismissing one count of a two count complaint for *forum non conveniens*); *S. Megga Telecommunications, Ltd. v. Lucent Technologies, Inc.*, No. 96-357-SLR, 1997 WL 86413 at *11 (D. Del. Feb. 14, 1997) (dismissing counterclaims on *forum non conveniens* grounds).

[11]  The Counterclaim originally included eight counts.  The Court has already dismissed Count VII, asserted by Weiss, WAM, KT, and CVF against all counterclaim-defendants.  Order dated January 23, 2006.  Of the remaining seven counts, the Weiss Defendants assert only two, Count I (alone) and Count II (ostensibly with KT and CVF).  The remaining five counts, III-VI and VIII, are asserted only by KT and CVF.  Of the six counts that KT and CVF assert, three involve Kotva and new counterclaim-defendants, Counts II, VI, and VIII, while three involve only new counterclaim-defendants and do not involve Kotva, Counts III-V.  *See* Counterclaim ¶¶ 61-103 and Exhibit 1 thereto.

### A.     The Weiss Defendants Cannot Unilaterally Add KT and CVF as Counterclaim-Plaintiffs Under Rules 13 and 20

In support of their contention that they may add parties as counterclaim-plaintiffs under Rule 13(h), the Weiss Defendants rely on only one authority:  a section of Moore's Federal Practice that cites one Alabama federal district court opinion that, in turn, cites back to Moore's.  *See* Counterclaim Plaintiffs Opposition to Kotva's Motion to Dismiss at 4-5, citing 4 MOORE'S FEDERAL PRACTICE § 20.02[2][b][ii] (3d ed. 2005), citing *Northfield Ins. Co. v. Bender Shipbuilding & Repair Co.*, 122 F.R.D. 30 (S.D. Ala. 1988). The Alabama case only addresses the addition of parties as counterclaim-defendants, however, and does not support the Weiss Defendants' attempt to add new counterclaim-plaintiffs without leave of Court.  In fact, the Weiss Defendants have provided no authority for the proposition that counterclaim-plaintiffs can be added at whim in the manner they attempt here.  There is authority to the contrary, however.  In *Hubner v. Schoonmaker*, No. 89-3400, 1990 WL 149207 (E.D. Pa. Oct. 2 1990) (attached hereto as Exhibit 6), the court ruled that that Rule 13 does not permit the precise procedural maneuver that KT, CVF, and the Weiss Defendants attempt here.

> [Rule 13(h)] generally concerns parties *against* whom counterclaims may be brought, and should not be contorted to operate as a means by which one can seek entrance into an existing action.  Any other holding would render superfluous the standards for admission of non-parties as set forth by the intervention provisions of Rule 24.

*Id*. at * 4 (emphasis in original).  Thus, KT and CVF cannot be unilaterally inserted into this action as the Weiss Defendants have attempted to do here.

#### 1.     KT and CVF Do Not Assert "Counterclaims"

The Weiss Defendants were required to assert as compulsory counterclaims all claims against Kotva arising out of the "transaction or occurrence that is the subject

matter" of Kotva's claim. Fed. R. Civ. P. 13(a). Weiss and WAM asserted only two counts as their counterclaim: abuse of process (count I) and conspiracy to abuse process (count II). Although KT and CVF also allege conspiracy in count II, they necessarily allege different aspects of conspiracy than Weiss and WAM. Because Weiss and WAM are not Kotva shareholders, they lack standing to allege conspiracy to "loot Kotva's assets." Counterclaim at ¶ 69; *see also* Counterclaim Plaintiffs' Opposition to Kotva's Motion to Dismiss at 8. Similarly, KT and CVF lack standing to allege conspiracy to "abuse the Czech criminal process and abuse the United States civil process," demonstrated by the fact that they do not join Count I, because they were not sued or charged criminally. *Id*. Thus, KT and CVF assert entirely different allegations: conspiracy to loot assets (count II); conversion (count III); unjust enrichment (count IV); breach of fiduciary duty (count V); constructive trust (count VI); and declaratory judgment (count VIII). ***These are all new claims***. They are not counterclaims to which KT and CVF are being made parties. Fed. R. Civ. P. 13(h) (allowing joinder of additional parties "***to a*** counterclaim or cross-claim" in accordance with Rules 19 and 20) (emphasis added).

2.      *KT and CVF's Claims Fail the Rule 20 Same Transaction or Occurrence Test*

Even if (i) the rules did permit parties to add counterclaim-plaintiffs without leave of Court, and (ii) KT and CVF were being added as parties to actual counterclaims, joinder would still be inappropriate in this case under Rule 20. Parties may only be permissively joined as plaintiffs if they assert a right to relief "in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action." Fed. R. Civ.

P. 20(a).  But the claims that KT and CVF try to assert here do not arise out of the same transaction or same series of transactions as the subject matter of Kotva's claim against Weiss and WAM.

Kotva's claim arises from the Weiss Defendants' attempt to blackmail Kotva into "repurchasing" a 12% stake of the company (the "BGO shares").  Complaint ¶¶ 21-48.  That scheme materialized in 2004 as an attempt to interfere with the sale of Kotva's Department store.  *Id*.  The Weiss Defendants' Counterclaim, meanwhile, alleges abuse of process from the filing of this lawsuit and the filing of a criminal complaint in the Czech Republic.  *See* Counterclaim Counts I and II.  The claims asserted by KT and CVF, however, dredge up irrelevant and historical "Trend tunneling" allegations that have nothing to do with Kotva's claim or the Weiss Defendants' counterclaim.  The Weiss Defendants' false coupling of the potential repurchase of the BGO shares with an alleged "freeze out" of minority shareholders also fails to satisfy the Rule 20 same transaction requirement.  *See* Counterclaim Plaintiffs' Opposition to Motion to Dismiss at 4.  The repurchase of the BGO shares—which was demanded by the Weiss Defendants— would not have "frozen out" any shareholders.  In fact, the "freeze out" allegations are nothing more than the "Trend tunneling" allegations dressed up in new clothes.[12]   As discussed above in the context of KT and CVF's request for declaratory judgment, those historical allegations do not arise from the same transactions that are at issue in this suit.

---

[12]   The linchpin of the "freeze out" claims is Forminster's majority stake in Kotva, which counterclaim-plaintiffs allege was wrongfully obtained as a result of the "Trend tunneling" allegations.  *See* Counterclaim Plaintiffs' Opposition to Motion to Dismiss at 10, 11 ("The Forminster Group, through its control over a majority of Kotva's shares and by direct contact with Weiss, is engaging in a freeze-out of the minority shareholders including KT and CVF. . . .The Forminster Group is voting its Kotva shares despite the fact that it lacks good legal title to those shares.  Every time that the Forminster Group casts a vote, it overwhelms the voting power of the other Kotva shareholders who purchased their shares legally.")

**B.    Intervention is the Proper Procedure for
Non-Parties to Assert Claims**

The required procedure for non-parties to participate in an action is to file a timely

motion to intervene pursuant to Fed. R. Civ. P. 24, which KT and CVF did not do.  4

MOORE'S FEDERAL PRACTICE §20.02[2][c](3d ed. 2005); *Thompson v. Boggs*, 33 F.3d

847, 858 n. 10 (7th Cir. 1994); *Hubner*, 1990 WL 149207 at *4.  Nevertheless, even if

they had moved to intervene, KT and CVF cannot satisfy the requirements of Rule 24.

The First Circuit has held:

> A party that desires to intervene in a civil action under Rule
> 24(a)(2) must satisfy four conjunctive prerequisites: (1) a timely
> application for intervention; (2) a demonstrated interest relating to
> the property or transaction that forms the basis of the ongoing
> action; (3) *a satisfactory showing that the disposition of the
> action threatens to create a practical impairment or impediment
> to its ability to protect that interest*; and (4) a satisfactory showing
> that existing parties inadequately will represent its interests.  An
> applicant for intervention as of right must run the table and fulfill
> all of four of these preconditions, the failure to satisfy any one of
> them dooms intervention.

*Public Service Company of New Hampshire v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998)

(emphasis added).  Moreover, intervention is not appropriate where the applicant can

recover on its claim through some other means, including prosecuting a separate lawsuit.

*Deus v. Allstate Insurance Company*, 15 F.3d, 506, 526 (11th Cir. 1994).

KT admits that it has filed lawsuits in the Czech Republic challenging the

transfers of the Department Store, seeking to restore the ownership of the Department

Store to Kotva, and challenging Forminster's ownership of its Kotva shares.  Exhibit 1;

Answer to Complaint ¶¶ 24, 32; Counterclaim Plaintiffs' Opposition to Kotva's Motion

to Dismiss at 11-12.   Indeed, KT's lawsuits in the Czech Republic involve precisely the

same scandalous "Trend tunneling" allegations as raised in this lawsuit.  *Compare*

Exhibit 1 *and* Counterclaim ¶¶42-60.  KT and CVF, therefore, cannot satisfy the requirements of Rule 24 as their rights will not be impaired because they are prosecuting separate actions in the Czech Republic (and, according to them, their claims are governed by Czech law).

<u>CONCLUSION</u>

KT and CVF were not sued by Kotva in this action.  They were inserted as "counterclaim-plaintiffs" by the Weiss Defendants without leave of Court in an attempt to distract from the real issues in this lawsuit and to duplicate litigation that is already pending in the Czech Republic.  Because the new claims that KT and CVF try to assert here rely upon substantive issues of Czech law, and because KT and CVF previously initiated litigation in the Czech Republic for the same claims, principles of comity and *forum non conveniens* dictate that KT and CVF and all Czech-law based counterclaims should be dismissed.  In the alternative, KT and CVF should be dismissed as improperly joined parties under Rules 13, 20 and 21.

Respectfully submitted,

KOTVA, A.S.

By its attorneys,


/s/ Joel G. Beckman
Joel G. Beckman (BBO# 553086)
William C. Nystrom (BBO# 559656)
Daniel J. Pasquarello (BB0# 647379)
NYSTROM BECKMAN & PARIS LLP
10 St. James Ave., 16th Floor
Boston, Massachusetts 02116
(617) 778-9100
(617) 778-9110 (fax)
jbeckman@nbparis.com
wnystrom@nbparis.com
dpasquarello@nbparis.com

Dated: March 3, 2006



## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 3rd day of March, 2006.


/s/ Daniel Pasquarello

Companies Register: Municipal Court in Prague
Section A, File 42561
Identification Number: 26 16 97 20
Prague – Bratislava
*Duty Stamp of 3,000 CZK*

PETERKA & PARTNERS
Law Offices

District Court for Prague 1
Ovocný trh 14
110 00 Prague 1

Prague, December 23rd, 2004

[Impression of a stamp:]    District Court for Prague 1
Prague 1, Ovocný trh 14
Received: December 23rd, 2004, *2:35 p.m.*
*4* copies,  enclosures
*taken personally*

Plaintiff:     K T, Inc.
Registered seat: 2711 Centerville Road, Suite 400, City of Wilmington, County of Newcastle, Delaware, USA;
Represented by: Mgr. Ondřej Peterka, Attorney-at-Law registered by the Czech Bar Chamber, Registration No. 4245, practising law as an associate of PETERKA & PARTNERS v.o.s., with its registered seat at Na Příkopě 15, 110 00 Prague 1 (hereinafter referred to as the "Plaintiff"),

Defendant 1:
KOTVA a.s.
Registered seat: Prague 1, Náměstí Republiky 8
Company registration number: 60 19 38 08
Registered in the Companies Register kept by the Municipal Court in Prague, Section B, File 2370,
(hereinafter referred to as "Defendant 1")

Defendant 2:
KOTVA NEMOVITOSTI, k.s.
Registered seat: 602 00 Brno, Příkop 4
Company registration number: 26 22 90 48
Registered in the Companies Register kept by the Regional Court in Brno, Section A, File 16586,
(hereinafter referred to as "Defendant 2"),

Defendant 3:
SPV KN, a.s.
Registered seat: 602 00 Brno, Příkop 4
Company registration number: 26 91 07 05
Registered in the Companies Register kept by the Regional Court in Brno, Section A, File 4043,

**K 0126**

(hereinafter referred to as "Defendant 3")

**Petition to determine title to real property**
Four copies.
Court fee of 3,000 CZK paid in the form of duty stamps.
Delivered in person to the court registry.
Attachments:
Power of attorney for the Plaintiff's legal representative.
For further attachments see the list on the final page of the petition.

*(Duty stamps of 3,000 CZK affixed)*

PETERKA & PARTNERS v.o.s.
Na Příkopě 15/583
CZ – 110 00, Prague 1
Tel.: +420 246 085 300
Fax: +420 246 085 370
www.cabinet.cz
Companies Register: Municipal Court in Prague
Section A, File 42561
Identification Number: 26 16 97 20
Prague – Bratislava

1. SPECIFICATION OF THE PARTIES, SUBJECT OF THE PROCEEDINGS, JURISDICTION OF THE COURT

1.1. Specification of the parties

The Plaintiff is a shareholder of Defendant 1.

Defendant 1 is a trading company registered until 2000 in the Land Registry as the sole owner of the real property specified below in paragraph 1.2. As described below, Defendant 1 is still the sole owner.

Defendant 2 is a trading company registered in the property register as the sole owner of the real property specified below in paragraph 1.2, such based on a statement[1] on an immovable investment made by Defendant 1 in 2000. It was established by transformation of KOTVA NEMOVITOSTI, a.s.[2]

Defendant 3 is a trading company, whose sole associate is Defendant 2. At present Defendant 3 is entered in the Land Registry as the owner of the real property specified below in paragraph 1.2.

1.2. Subject of proceedings

Under this petition, the Plaintiff seeks a court decision, pursuant to Section 80, Letter c) of Act No. 99/1963 Coll. of the Civil Procedure Code (hereinafter referred to as the "CPC"), determining that Defendant 1 is the owner of the following real property:

- Building with Land Registry reference number 656 (civic amenities), belonging to the Staré Město municipality, located on building plot number 680;
- Building with no Land Registry reference number or street number (civic amenities), belonging to the Stare Mesto municipality, located on building plot number 1018/2;
- Land Parcel No. 680 (built-up area and courtyard) with an area of 4,385 m$^2$;
- Land Parcel No. 683/1 (other land) with an area of 851 m$^2$;
- Land Parcel No. 683/2 (other land) with an area of 2,963 m$^2$;
- Land Parcel No. 683/3 (other land) with an area of 2 m$^2$;
- Land Parcel No. 690/2 (other land) with an area of 25 m$^2$;
- Land Parcel No. 690/3 (other land) with an area of 49 m$^2$;
- Land Parcel No. 690/4 (other land) with an area of 9 m$^2$;
- Land Parcel No. 1018/2 (built-up area and courtyard) with an area of 1 m$^2$;

All the above-mentioned real property is registered by the Land Registry for the City of Prague on Title No. 265, maintained for the municipality of Praha, Cadastral District: Staré Město (these properties shall be hereinafter referred to jointly as the "KOTVA Department Store").

---

[1] Based on the stipulation of Section 60, Paragraph 1 of Act No. 513/1991 Coll. of the Commercial Code.
[2] KOTVA NEMOVITOSTI, a.s. changed its legal form from a joint-stock company to a limited partnership. This change in legal form was made in accordance with a decision of the General Meeting held on May 20th, 2003; the decision of the registration court to register the change came into legal force on August 15th, 2003.

1.3. Jurisdiction

The material jurisdiction of the district court is determined by Section 9, Paragraph 1 of the CPC, because there is no indication in provisions of Section 9, Paragraphs 2 and 3 of the CPC or in any other provisions that jurisdiction pertains to a regional court in the first instance.

With regard to local jurisdiction, the Plaintiff refers to Section 88, Paragraph g) of the CPC, under which the competent court is the court in whose circuit the given property is located, provided that the legal proceedings relate to this property. KOTVA Department Store, as a set of property units, is located in the circuit of the District Court for Prague 1.

Evidence:
- Statement from the Center for Securities;
- Statement from the Companies Register regarding the Defendants,
- Proof of the existence of the Plaintiff;
- Statement from the Property Register (Title No. 265 for the Staré Město Cadastral District);
- Annual reports of Defendant 1 for 2000, 2001, and 2003;
- With the reservation of further evidence.

## 2. EXISTENCE OF THE PLAINTIFF'S URGENT LEGAL INTEREST IN DETERMINING OWNERSHIP AS SOUGHT IN THESE PROCEEDINGS

The Supreme Court of the Czech Republic, in Decision No. 3 Cdo 1338/96[3] from March 27th, 1997, took the legal view that there is room for a declaratory petition under Section 80, Paragraph c) of the CPC if:
- this action can help eliminate a threat to a right or uncertainty in a legal relationship and the corresponding remedy cannot be achieved by other means, and
- it is more effective than other legal means in detailing the content and nature of the relevant legal relationship, and it can be used to achieve an adjustment forming a certain legal framework, which functions as a guarantee that there will be no future disputes between the parties.

In accordance with this judicial decision, it is acceptable to file a declaratory petition aimed at ensuring that information about the ownership of the property contained in the Property Register complies with the actual legal situation[4]. Such a petition is usually filed by an entity who considers itself to be the owner of the property in question. However, current decision-making practices at the Supreme Court indicate that a declaratory petition may also be filed by a person who is an associate/shareholder of such an entity.

In this respect, in the proceedings maintained under File No. 29, Odo 767/2002, the Supreme Court inferred that the shareholder has an exigent legal interest in filing a declaratory petition whereby the shareholder seeks the nullity of a contract under which a public limited company

---

[3] Published in the periodical Soudni judikatura (civil) No. 3/1997 on page 58, and subsequently under number Jc 21/1997.
[4] Based on a decision on a declaratory action, the relevant entry can be inserted into the Property Register in accordance with Section 7, Paragraph 1 of Act No. 265/1992 Coll. on records of proprietary and other material rights attached to real property.

transfers its enterprise, or part thereof, to another entity in accordance with Section 476 of the Commercial Code. The Supreme Court stipulated inter alia that "...*the conclusion of a contract on the sale of part of an enterprise could have a significant influence on the legal relations of the company of which he is a shareholder, and therefore indirectly on his legal relations, e.g. on the share in the liquidation balance (in relation to the content of the contract)*."

Analogically, it is necessary to deduce the authorization of a shareholder to file a petition to determine ownership of a set of real property representing the main asset item in the business activities of a company (here the KOTVA Department Store[5] with a value of at least CZK 1.39 billion).

The significance of the ownership of such a principal asset item and its impact on the legal relations of the shareholder can be best expressed by comparing the position of a shareholder in a situation where the company owns such an asset item with a situation where it does not own such an asset.

In a situation where the company owns such an asset item:

- the sale of the asset in a given accounting period can generate a substantial profit, whereby the practical exercise of the shareholder's right specified in the regulation of Section 155, Paragraph 1 of the Commercial Code is achieved, i.e. the shareholder shares in the company profit;
- if the company is liquidated, the acquired sale price of such an asset item would undoubtedly be reflected positively in the shareholder's share in the liquidation balance (again with reference to the provision of Section 155, Paragraph 1 of the Commercial Code);
- the shareholder has the opportunity to make decisions about the business activities of Defendant 1 at the General Meeting; this opportunity is determined by the ownership and use of the asset item, setting the practical content of the shareholder's authorization to share in the management of the company (again with reference to the provision of Section 155, Paragraph 1 of the Commercial Code).

If the company were not the owner of the principal asset item, the above-mentioned entitlements of the shareholder would be completely different, because in connection with ownership (and any future transfer) of this asset item the company would be unable to realize any income from which we could derive the shareholder's right to a share in the profit or a share in the liquidation balance.

For the sake of completeness, the Plaintiff considers it necessary to add that the Supreme Court expressed exactly the same legal opinion in the Verdict under File No. 29 Odo 767/2002 in a previous verdict from November 5th, 2002, under File No. 29 Odo 535/2001. From the aspect of the way this legal issue is handled, we can consider court decisions to be constant.

---

[5] In the case of KOTVA department store, we can also consider whether such a dominant and relatively independent part of an enterprise meets the description of 'part of an enterprise' (i.e. a separate organizational component), bearing in mind that it can only be disposed of in accordance with the pertinent peremptory provisions of the Commercial Code (i.e. the sale or lease of part of the enterprise). It will certainly be possible to find enough factual information for such a conclusion in the documents used by Defendant 1 in its formal justification for the transfer of KOTVA department store to another entity.

Evidence:
- Statement from the Center for Securities;
- Expert opinion evaluating the KOTVA Department Store;
- With the reservation of further evidence.


## 3. REASONS WHY DEFENDANT 1 NEVER LOST OWNERSHIP OF THE KOTVA DEPARTMENT STORE AND THEREFORE IS STILL THE OWNER OF THIS PROPERTY

### 3.1. Competence of persons connected with Miroslav Halek in TREND VIF and IF MERCIA

The beginning of the current problematic relations, in respect of which the verdict issued in these proceedings should help to resolve (and in particular avert other future disputes in accordance with the above-mentioned Supreme Court Decision 3 Cdo 1338/96), relates to TREND VIF[6] and to the investment fund MERCIA, a.s.[7] from 1995 to 1997.

In the scope of voucher privatization, TREND VIF was very successful, especially due to the fact that the celebrities Michael Kocáb and Martin Kratochvil were among the fund management and its portfolio contained the shares of top Czech enterprises, the value of which was well above a billion crowns, including the shares of Defendant 1.

In 1995, a group of persons connected with Královehradecká Brokerská, a.s.[8], represented in particular by Miroslav Hálek, took over managerial control of TREND VIF.

At the time of this takeover, TREND VIF had equity of approximately 1.45 billion CZK.

This takeover was followed by a number of transactions, the purpose of which was to transfer these assets, including the shares of Defendant 1, to entities from the group of Miroslav Halek unlawfully and to the detriment of TREND VIF. The method used to strip the assets of TREND VIF was legal transactions which are described in detail, for example, in the Report of the Compulsory Administrator of TREND VIF of February 22nd, 1997, in Report No. 102/9017697 of the Ministry of Finance of January 21st, 1998, concerning an investigation into trading in securities from the TREND VIF portfolio, in the indictment of the deputy regional public prosecutor JUDr. Vladislav Kusal brought against Mr. Hálek et al. on September 30th, 1998, and in the indictment of the High Prosecuting Attorney JUDr. František Fíla brought against Mr. Hálek et al. on August 8th, 2003. A very detailed description of the personnel relations of all entities contributing to these transactions can be found in the indictment from September 30th, 1998 (page 25 et seq.).

As a result of these transactions, the equity of TREND VIF fell to CZK 116 million as of December 31st, 1996, i.e. by more than 90 percent.

---

[6] TREND, a.s. – general investment fund ., registered seat: 500 02 Hradec Králové, Škroupova 441, Company Registration Number: 45 24 51 77 (hereinafter referred to as the 'TREND VIF').
[7] Investicni fond MERCIA, a.s., registered seat: Prague 2, Londýnská 53, Company Registration Number: 15 05 41 01.
[8] KRÁLOVEHRADECKÁ BROKERSKÁ, a.s. (now Brněnská obchodni, a.s., in liquidation), Company Registration Number: 60 91 41 22, former registered seat: Hradec Králové, Škroupova 9, current registered seat: Brno, Lipová 27.

K 0131

The participation of Královehradecká Brokerská, a.s. in the financial management of the Mercia Investment Fund, a.s. followed exactly the same course.

## 3.2. Demonstrative list of significant unlawful activities of entities connected with Miroslav Hálek and directly or indirectly concerning shares of Defendant 1.

Individual actions aimed at the unlawful enrichment of acting persons are described in both of the above-mentioned reports and in the indictments. Given the extensiveness of this conduct, the Plaintiff refers to these documents and makes their content, in the parts directly or indirectly[9] concerning the shares of Defendant 1, part of the claims in this petition. Therefore, in this petition the Plaintiff only mentions several cases of the most serious conduct that damaged TREND VIF and that, according to the indictment, can be qualified as a crime[10].

The Plaintiff specifies the two groups of principal unlawful transactions perpetrated by entities connected with Mr Hálek. In terms of their type, these transactions are characterized on page 24 of the indictment from September 30th, 1998.

The first group (see Paragraph 3.2.1 of this petition) is comprised of actions whereby the shares of Defendant 1 were unlawfully transferred from the assets of TREND VIF.

The second group (see Paragraph 3.2.2) is comprised of actions whereby finances were transferred from TREND VIF (and also from IF Mercia) and were used by entities connected with Mr. Hálek to pay the purchase price of the shares of Defendant 1 which were bought from third parties.

Since, according to the indictment, all the transactions described below can be qualified as crimes and were therefore an infringement of the law, they have civil law implications, most commonly resting on the fact that such actions are null and void from the outset[11].

Regarding the evaluation of the conduct described in the two reports as crimes, the Plaintiff refers to the indictment against the Accused Mr. Miroslav Hálek et al. from September 30th, 1998, as well as from August 8th, 2003.

### 3.2.1. Transfer of the shares of Defendant 1 from the assets of TREND VIF

#### 3.2.1.1. Disadvantageous trading with the shares of Defendant 1

The compulsory administrator's report states on page 21 that: *"On May 28th, 1996, the investment fund sold 152,935 shares of KOTVA, a.s. to KHB via the SCP for a price of 400.00*

---

[9] E.g., the transfer of financial resources from TREND VIF so that other parties involved could use these funds to purchase the shares of Defendant 1 (see paragraph 3.2.2).

[10] Regarding the qualification of crimes committed, according to the indictment, by entities connected with Mr. Halek (often as members of a criminal conspiracy), the Plaintiff refers to the relevant passages of the indictment, in particular to pages 7, 8, 11, 12, 13, 14, 16, 19, and 20.

[11] For the sake of completeness, the Plaintiff also states that in most transactions with the shares of Defendant 1 Section 17, Paragrapgh 3 of Act No. 248/1992 Coll. on investment companies and investment funds, in the wording in force until June 30th, 1996, stipulating that an investment fund is obliged to sell a security only at the highest price for which it is possible to sell the security while taking due professional care, was breached (or, in relation to the preceding manipulation of the share price, was circumvented).

*CZK. On the same day, the investment fund repurchased 152,935 shares of KOTVA, a.s. from KHB, but for a price of 952.00 CZK per share, and subsequently the investment fund sold these shares to IFM, a.s., again for 400.00 CZK. See the documents attached to Article 14.11 of this report. This transaction resulted in a loss of 168,840,240.00 CZK on the part of the investment fund."*

### 3.2.1.2. Backdating of contracts intended to ensure that, in connection with provisions on contractual penalties, the shares of Defendant 1 were transferred from the assets of TREND VIF without any consideration.

The indictment states the following on page 24: *"The conclusion of the backdated contracts was essentially merely an instrument to carry out other transactions, as mentioned above. Contracts were probably concluded in this way that were secured, to the detriment of the fund, with high contractual penalties. However, it has only been possible to prove the backdating of the contract from January 10th, 1996, with IFM, a.s. This procedure had resulted in damage to the fund at a time when the Ministry of Finance of the Czech Republic had suspended trading of the securities from the fund's portfolio."*

The essence of the backdated contract labelled with the date of January 10th, 1996 is described in the compulsory administrator's report on page 12 et seq., by the indictment (e.g. on page 27), and in brief on page 2 of the report of the Ministry of Finance as follows: *"On January 10th, 1996 – IFM, a.s. signed a contract for the transfer of 200,000 shares of Kotva from the fund's portfolio for the total price of 360,000,000.00 CZK. Based on this contract, IFM, a.s. acquired 60,000 shares of Kotva in the form of a contractual penalty, without any consideration."*

### 3.2.1.3. Non-observance of the preliminary measure concerning the shares of Defendant 1

The indictment states on page 31 that *"On January 24th, 1997, Mr. Miroslav Hálek, as the Chairman of the Board of Directors and Chief Executive Officer of IFM a.s., decided to transfer 361,375 shares of Sokolovská Uhelná a.s. and 30,000 shares of Kotva a.s. from IFM account number 100200879133 at the Prague Center for Securities to the account of Královehradecká Brokerská a.s. (KHB) even though an order had been placed on IMF a.s. to refrain from handling the above-mentioned shares under Resolution of the Hradec Králové Regional Court No. Nc 542/96 from January 21st, 1997, delivered to IFM, a.s. on January 23rd, 1997. This resolution was delivered to IFM, a.s. on January 23rd, 1997 and on the same day Mr. Hálek was acquainted with it through Karel Kavalír, on whom he had conferred power of attorney to study the document. Although he knew of the court's preliminary measure, he decided to transfer the above-mentioned shares to KHB a.s., which then transferred the shares to the account of the foreign company Forminster Enterprises Ltd..."*

### 3.2.2. Use of the financial resources of TREND VIF and IF MERCIA so that companies around KHB, a.s. could purchase the shares of Defendant 1 for their own account.

### 3.2.2.1. Misuse of financial resources of investment funds for the benefit of persons connected with KHB, a.s.

K 0133

The compulsory administrator's report states the following in its Article 8.9: *"It is proven by the investment fund's bank account statement for account number 103745574, held at IPB, a.s., dated September 7th, 1995, and in particular by a payment order of the same day, that the management of the investment fund transferred 112,000,000.00 CZK to the bank account of KHB, which used this sum to purchase 70,077 shares of KOTVA, a.s. for a price of 1,800.00 CZK per share from Brno Broker Group, a.s., as evidenced by the confirmation of the conclusion of a contract from September 4th, 1995. Confirmation on the conclusion of the business transaction from September 4th, 1995 is attached to this report under Article 14.15. These shares were purchased by KHB in its own name and to its own account and were ultimately transferred, according to information obtained from the compulsory administration, to one of the companies controlled by the management of the investment fund."*

Page 3 of the Finance Ministry report adds that on September 25th, 1995 KHB purchased an additional 28,033 shares of Defendant 1 for 49,057,750.00 CZK in its own name and to its own account, and in relation to the description of the transaction with Brno Broker Group, a.s., the following conclusion is drawn: *"KHB purchased securities to its own account with the funds of another party (175,196,350.00 CZK).*

### 3.2.2.2.  Acquisition of the financial resources of investment funds via provisions on contractual penalties

On page 10, the report of the Ministry of Finance states[12] that: *"The method for contractual penalties was based on the conclusion of contracts which formed contractual obligations for the investment fund that the investment fund subsequently failed to fulfill; the contract penalized this with unusually high contractual penalties. Given the form of the contracts, a legal analysis thereof, and the unusual amount of the contractual penalties, there is a strong suspicion, backed up also by the evidence that has been collected, that the actual subjects of these contracts was not the transfer of shares, but the artificial creation of a liability of the investment fund and the transfer of the assets of the investment fund.*

*As a result of this method, the following assets disappeared from the investment fund:*

*a) The sum of 126,000,000.00 CZK was acquired by IFM, a.s. based on the contract from January 10th, 1996. This contractual penalty was paid in the form of the transfer of 60,000 shares of KOTVA with a value of 108,000,000.00 CZK.*
*b) The sum of 45,617,000.00 CZK was acquired by Moravská Zemská, a.s. based on the contract from July 10th, 1996.*
*c) The sum of 44,896,666.00 CZK was acquired by Lidová Obchodní Společnost, s.r.o. based on the contract from July 17th, 1996.*
*d) The sum of 73,718,000.00 CZK was acquired by Moravská Zemská, a.s. based on the contract from July 22nd, 1996. See the document attached to the Article 14.8 of this report.*
*e) The sum of 70,526,475.00 CZK was acquired by Sokolovský Investicni Fond, a.s. based on the contract from July 24th, 1996."*

### 3.2.2.3. Non-payment of purchase prices for shares and the thirty-year maturity period for payment of the purchase price

---

[12] The compulsory administrator's report agrees with this on page 12 et seq.; this method of transferring assets is also described on many pages of the indictment.

These two methods are described by the compulsory administrator's report on pages 13-15 as follows. As regards the method of defaulting on the payment of the purchase prices of shares, the report states that "*This very simple method was based on the conclusion of contracts with companies which subsequently failed to pay the purchase price for the purchase of shares from the investment fund portfolio. These transferred assets were then transferred to companies controlled by the management of the investment fund.*" This is followed by a list of contracts concluded in this manner; the loss incurred by TREND VIF from these transactions exceeds 350 million CZK.

The method of a thirty-year maturity period is described by the compulsory administrator as follows: "*The method described in this paragraph is based on the conclusion of contracts under which the investment fund sold shares from the investment fund portfolio to companies controlled by the management of the investment fund for a price, the payment of which was set in monthly instalments and distributed over a period of thirty years.*" Contracts worth CZK 336,841,700 were concluded in this way.

### 3.3. Transfer of assets from TREND VIF and IF MERCIA to Forminster[13], a company connected with Mr. Hálek

The parties involved managed, especially by means of the above-mentioned methods, to realize practically all the assets transferred from TREND VIF in the form of securities and to gain enrichment from the subsequent sale of these assets. They also intended to follow this procedure with the shares of Defendant 1. After compulsory administration was introduced, they implemented a series of transfers, described by the compulsory administrator on pages 21 and 22 of his report; the only aim of these transfers was to avoid the effects of the legal measures taken by the compulsory administrator aimed at returning the shares of Defendant 1 to the assets of TREND VIF.

In this respect, the shares of Defendant 1 were eventually transferred to Forminster. As regards the personnel connection between Forminster and Mr. Hálek, and the purpose of the transfer of shares of Defendant 1 to Forminster, the Plaintiff refers to the following passages of the indictment (page 25):

"*The trading in and transfers of shares of Kotva, a.s. were the most significant interest of the Accused. In the period before August 4th, 1995, shares of Kotva were among the fund's key investments. The aim of the investment fund's then management was and still is to transfer shares of Kotva to companies controlled by Mr. Hálek et al., and to gain a majority stake in Kotva by means of further purchases, in respect of which they have used the fund's resources.*

*The shares of Kotva are currently at the center of interest of companies connected with Mr. Hálek et al. Even in the course of compulsory administration, several transfers of shares in Kotva have taken place between entities and companies; Jiří Mareš, a schoolmate of Mr. Hálek, is evidently a significant person – it was through him that shares in Kotva were transferred back to companies controlled by Mr. Hálek. At a time when the Regional Court in Hradec Králové had reached a decision (which had not yet come into force) to prohibit the handling of shares of Kotva by Královehradecká Brokerská, at the instruction of KHB shares*

---

[13] Forminster Enterprises Limited, registered seat: 20 Queen Frederica Street, El Greco House, Nicosia, Cyprus (hereinafter referred to as the "Forminster").

*of Kotva were transferred to Forminster Enterprises Ltd., based in Cyprus, in respect of whose financial accounts Mr. Hálek has specific entitlements..."*

*The activities of Mr. Hálek's group were not even stopped by a decision on compulsory administration; latest findings indicate that their attempts to take control of Kotva and the assets of Trend remain today, and that neither criminal proceedings nor custody are an obstacle. Before criminal proceedings began, some of the shares of Kotva were transferred to Forminster Enterprises Ltd, domiciled in Cyprus, and then this company was sold to Královehradecká Společnost a.s. and Bonit Kapital, a.s., Brno; KHB, renamed to Brněnská Obchodní, a.s. is currently in a situation where a bankruptcy petition has been filed against it. According to latest information, even when Mr. Hálek was in remand prison he would continue signing important documents connected with the accounts of Forminster Enterprises Ltd held at LGT Bank in Vaduz, Liechtenstein."*

From the indictment submitted by the General Prosecutor's Office in Prague against Mr. Hálek et. al from August 8th, 2003 (see pages 84, 483, and 484 of the stated indictment), it is obvious that Mr. Hálek in his testimony within the frame of the criminal proceedings led against him admits that the power of attorney to act in the name of Forminster was delegated to him. This power of attorney had a general character and authorized Mr. Hálek almost to all acts in the name of Forminster, especially to trading with securities. Mr. Hálek's explanation that there was another person behind Forminster, whom he cannot identify because of usual business practices, seems to be false and for a certain purpose.

The indictment from August 8th, 2003 adds to the above on page 483 the following: *"The directors of FEL Vassilidies and Massonidou companies granted Mr. Hálek power of attorney on October 23[rd], 1996, to act on behalf of FEL. Based on this power of attorney, the defendant Mr. Hálek was able to especially trade securities on behalf of FEL. On November 27[th], 1996, a consignment contract between KHB, a.s. and FEL was signed. The subject of the contract was a provision, based on which KHB, a.s. was supposed to arrange purchase and sale of securities for the consignor, the FEL company. The consignor firm company FEL agreed for the consignee, KHB, a.s., to open in its name an account in the Center for Securities and the Stock Exchange in Prague. FEL issued powers of attorney for the benefit of KHB, a.s. for the purpose of purchasing and transferring securities. On November 29[th], 1996, the defendant Mr. Hálek, witness Stanislav Křemenák, and witness Jiří Šámal applied to open bank accounts at LTG Bank in Liechtenstein. Based on these applications, two bank accounts were opened at the LTG Bank in Vaduz, bank account No. 012341AA and bank account No. 012341AC. The owners of these accounts were FEL and the Presley company."*

The indictment from August 8th, 2003 states on page 484 the following: *"Both companies, FEL as well as Presley, were contractually and personally connected with KHB, a.s. The defendant Mr. Hálek based on the general powers of attorney acted on behalf of FEL as well as Presley. The general powers of attorney included ownership and management powers and were lacking responsibilities. Exceptionally important was the ability of the defendant Mr. Hálek to freely deal with the assets while acting on behalf of FEL and Presley. The signing right for the accounts of Presley and FEL at the LGT Bank in Vaduz had, besides the defendant Mr. Hálek, also other persons from KHB, a.s. It is obvious from the above that KHB, a.s. was trading with FEL and Presley and that these trades took place inside of the IFM holding. The trades were presented as independent international trades among different legal entities, however, in reality, the trades were taking place inside of the holding. KHB, a.s. held all possibilities to influence the business success of FEL as well as Presley. FEL had*

K 0136

*no possibility whatsoever to influence trades with KHB, a.s. The contracts between FEL and KHB, a.s., respectively Presley and KHB, a.s. do not contain any provision common for international contracts. FEL as well as Presley were completely subordinated to the economic interests of KHB, a.s. In the process of trading between FEL, Presley, and IFM holding, tax evasion took place related to the prices of transferring prices; the investment funds Trend and Mercia incurred damages during this process. The sale of shares to FEL in case of the KOTVA Department Store and Sokolovská Uhelná was executed for uniquely low prices.*

A connection between Forminster, Mr. Hálek, and other entities is also evident from the fact that, in a similar manner to the trading in the shares of Defendant 1, trading in the shares of Sokolovská Uhelná, a.s. also took place (for a description, see page 7 of the Finance Ministry report, which indicates that after the shares of Sokolovská Uhelná, a.s. had been transferred from KHB to Forminster, these shares were immediately sold by Forminster with a profit of 135 million CZK). In this respect, the Plaintiff also refers to page 9 of this report, in which the personnel connection of Mr. Miroslav Hálek with Forminster is described.

In addition, the indictment served against Mr. Hálek et al. on August 8th, 2003 by the General Prosecutor's Office in Prague notes (see page 485 and the following, and page 488 and the following) that the trades executed between TREND VIF and the companies connected with Mr. Hálek et al. had no economic backing, were executed between connected persons, would not be executed between independent companies acting under conditions of common business relations, and their only purpose was the enrichment of Mr. Hálek and the persons connected with him to the detriment of TREND VIF.

From the indictment from August 8th, 2003 the following can be stated (page 484 and the following): *"The trades between KHB, a.s. and FEL and Presley companies had the character of internal holding trades. The expert opinion about these trades sees these trades as transfers of illegal profit of KHB, a.s. and at the same time as forming loss for the Trend and Mercia Investment funds. KHB, a.s. misused the Trend and Mercia investment funds through contracts of mandate and brokerage and also through personal connection. KHB, a.s. had a full asset control over Trend, a.s. The management of KHB, a.s., respectively the IFM holding executed transactions that are contradictory to the ethics and valid laws (the obligations resulting, pursuant to the Commercial Code, from the contracts of mandate and brokerage). The transfers between KHB, a.s. and the Presley and FEL companies belong in the category of so-called transfer prices (transfer prices served to transfer illegal profit and to reduce the tax obligations)."*

**All the above-mentioned circumstances are of fundamental importance in assessing the activities related to the KOTVA Department Store, because these actions were taken by members of the statutory body who had been elected by Forminster, in respect of which the indictment refers to the connection with Mr. Hálek. <u>All the annual reports of Defendant 1 since 2000 state that Forminster is an entity controlling Defendant 1</u>[14].**

**3.4. Measures taken by the Public Prosecutor – blocking the shares of Defendant 1**

---

[14] The annual reports for 2001 and 2003 state this on page 3; the annual report for 2000 states this on page 2.

Under a measure of the Public Prosecutor, however, the shares of Defendant 1 were blocked in the asset account of Forminster at the SCP in 1997. Therefore, it is evident that no income from criminal activity can be gained from these shares, at least in the foreseeable future.

Nevertheless, the shares represent a majority stake in a company owning a building and land worth approximately one and a half billion crowns. Since Forminster has not yet been prevented by any measure imposed by a court or public authority from exercising voting rights, it has the opportunity to profit from criminal activity or legalize proceeds from criminal activities.

The Plaintiff describes below that steps are currently taking place to circumvent the measure of the Public Prosecutor blocking the handling of Defendant 1's shares.

### *3.4.1. Specification of the above-mentioned unlawful conduct as the legalization of income from criminal activities in the decisions of the competent authorities*

In this respect, the Plaintiff believes it would be expedient to recall the definition given in Section 1a, Paragraph 1, of Act No. 61/1996 Coll. on certain measures against the legalization of proceeds from criminal activities and on an amendment of related laws:

*"For the purposes of this Act, the legalization of proceeds from criminal activities (hereinafter referred to as 'legalization of proceeds') shall mean conduct aimed at concealing the illegal origin of proceeds from such activities with the intention of giving the impression that these proceeds are income acquired in accordance with the law. It is irrelevant whether such conduct occurs fully or partly in the Czech Republic. This conduct includes, but is not limited to*

*a) the transformation or transfer of assets in the knowledge that they come from criminal activities in order to conceal them or disguise their origin, or in order to assist a person who takes part in the perpetration of such activity to evade the legal consequences of such conduct;*

*b) the concealment or disguise of the real nature, source, location, or movement of assets and the handling thereof, or changes in the rights related to assets in the knowledge that such assets come from criminal activities;*

*c) the acquisition, possession, or use of assets or the handling thereof in the knowledge that such assets come from criminal activities;*

*d) the criminal conspiracy of persons or another form of cooperation for the purposes of the conduct stipulated under the letters (a), (b), or (c)."*

With regard to the assessment of the above-mentioned conduct as activity aimed at legalizing proceeds from criminal activities, the Plaintiff refers to page 30 of the indictment:

*"Part of the proceeds from the above-mentioned criminal activity was subsequently transferred, in the amount of 151,237,425.00 CZK on January 31st, 1997 from the account of KHB, a.s. held at IPB, account number 100200878/5100, on the instruction of Libor Páv to the account of Forminster Enterprises Limited (FEL), account number 0123414AA, held at LGT Bank in Liechtenstein, which Mr Hálek, in accordance with a general power of attorney from FEL, opened on November 26th, 1996. A sum of 5,422,251.00 USD corresponding to the aforementioned amount in CZK when translated, was deposited in the account at LGT Bank in Liechtenstein on February 5th, 1997. Of this amount, on February 14th, 1997, 2 million*

K 0138

*USD was cleared to the account of Presley Industries at the same bank, account number 0123415AA, which Mr. Hálek also opened on November 26th, 1996 pursuant to a general power of attorney from the said company. On the same day, i.e. on February 14th, 1997, an amount of 2,964,287.21 USD, corresponding to the sum of 82,768,765.00 CZK was cleared back to the account of KHB, a.s. In return, on January 30th, 1997 KHB transferred 384,971 shares of Kotva, acquired by criminal means from the portfolio of the investment funds Trend and Mercia, to the FEL account opened at the SCP at the request of Mr. Vlastník and Mr. Páv."*

In a preliminary measure issued by the Provincial Court of the Liechtenstein Principality on November 4th, 1997, blocking the funds in the bank account of Forminster, after the description of the above-mentioned transfers of finances to and from the Forminster bank account, it is stated that: *"The above-mentioned investigations give rise to the suspicion of money laundering under Section 165 of the Criminal Code. It is necessary to work on the basis that unknown perpetrators have tried, by means of transferring fraudulently obtained money to accounts in Liechtenstein, with a subsequent transfer, to conceal from Trend VIF a.s. the place where the profits from the sale of securities, and other transactions, have been deposited, and in particular to prevent the flow of money from being monitored."*

In a notification of the General Public Prosecutor's Office in Prague, addressed August 29th, 2002 in the matter of the Accused Miroslav Hálek, whereby the Provincial Court of the Liechtenstein Principality was requested to release the money for the return thereof to the accounts of TREND VIF and MERCIA, it is stated that: *"With reference to Article 1, Paragraph 1 of the European Convention on Mutual Assistance in Criminal Matters from April 20th, 1959, and with reference to the Convention on Laundering, Search, Seizure, and Confiscation of the Proceeds from Crime from December 18th, 1995... On November 27th, 2001 the Supreme General Public Prosecutor's Office of the Czech Republic, under File No. 2 NZt 749/2001, took over the criminal proceedings conducted in the Liechtenstein Principality against Miroslav Hálek, such being at the request of the Attorney General of the Principality of Liechtenstein. In Liechtenstein, criminal proceedings were conducted against Miroslav Hálek for the crimes of money laundering, criminal conspiracy, and other crimes pursuant to the relevant criminal-law provisions of the Liechtenstein Criminal Code."*

Finally, the Plaintiff refers to the fact that the Report of the Ministry of Finance of the Czech Republic also contains, on page 4, a passage titled 'Suspicion of the possible legalization of proceeds from crime'. The report also discusses this suspicion on pages 6 and 7 (with regard to shares of Sokolovská Uhelná, a.s.). At the end (page 9), the report states: *"In the case of persons incorporated into this group, there is reason to suspect that their activities are financed by means of assets from the portfolios of funds. Another group of persons cooperates with these entities to legalize the proceeds from the criminal activities of the first group, such being by means of traditional activities in money laundering, i.e. the organization of seeming intercompany transactions, the implementation of banking transactions in third states, artificial increases of profits of otherwise legally operating companies.*

*The following companies should be included in this group:*
- *Forminster Enterprises Limited*
- *Burzovní Společnost Egretta, a.s.*
- *Atlanta Safe, a.s.*
- *Severní Brokerská, a.s.*
- *DYNAMIC PARTNERS, a.s.*

- *Sokolovský IF, a.s.*
- *Natural persons Anatolij Salamatin, Jiří Mareš"*

### 3.4.2. Circumventing the purpose of the measure imposed by the Public Prosecutor

From what is mentioned above, it is clear that the Public Prosecutor's measure to block the shares of Defendant 1, which are currently in the account of Forminster, had a **very obvious purpose, i.e. to prevent – at least until the end of the police investigation – proceeds from criminal activities, which according to the above-mentioned relevant decisions and according to the indictment comprise the shares of Defendant 1 (numbering 384,971 shares), from being handled in any manner and to prevent Forminster and any entities related to it from achieving any undue enrichment in connection with ownership of the shares of Defendant 1.**

Undoubtedly, the purpose of the Public Prosecutor's measure is to prevent the assets of Defendant 1, which are controlled by Forminster as the majority shareholder as a result of conduct labelled a crime by the indictment, from being transferred.

It ensues from the Public Prosecutor's measure in particular (even considering the above-mentioned ban on legalizing proceeds from crime) that no actions may be taken which are aimed at diminishing the assets of Defendant 1 and that the assets must not be transformed in a manner that would give rise (even only theoretically) to a risk that Defendant 1 will not have direct control over such transformed assets. Because of the above-mentioned actions of the competent authorities of several states, based on the suspicion of money laundering, it is quite evident that none of the actions of Forminster in the exercise of shareholder rights and none of the actions of members of statutory bodies de facto appointed by Forminster as the controlling entity are allowed to give rise to any doubt.

However, in the case at hand, not only has the main asset value, i.e. KOTVA Department Store, been transferred from the assets of Defendant 1, but other activities have also been carried out leading to Defendant 1's complete loss of control over this asset.

So far, the following activities have been carried out:

1. Defendant 1 invested KOTVA Department Store into its subsidiary, which at the time in question was Defendant 2. At the time of the investment of Kotva Department Store, Defendant 1 was the sole shareholder of Defendant 2;

2. Defendant 1 decided, as the sole shareholder of Defendant 2, to transform Defendant 2 into a limited partnership, which had the following consequences:

a) There was a fundamental reduction in the share of Defendant 1 in the profits of Defendant 2 and its liquidation balance (at present, Defendant 1 has a share in the profits of just under 50 percent, and a share in the liquidation balance of 40 percent, even though its contribution represents 98.6 percent of all contributions into the company of Defendant 2),

b) Because Defendant 1 became the limited partner of Defendant 2, it does not contribute to the business management of the defendant, i.e. by making the transformation, Defendant 1 de facto surrendered the opportunity to influence the financial management of Defendant 2.

**K 0140**

3. Defendant 2, acting in the capacity of the General Meeting of Defendant 3 (as the sole shareholder of Defendant 3), decided to increase the registered capital by 1,390,000,000.00 CZK, i.e. from the current 2,000,000.00 CZK to a new amount of registered capital standing at 1,392,000,000.00 CZK. The increase in registered capital was made by means of a new share subscription; all shares were offered to the sole shareholder – Defendant 2 – for subscription. The new shares were paid by means of a non-monetary contribution – the KOTVA Department Store. Therefore, Defendant 3 became the owner of the KOTVA Department Store.

As mentioned above, the Public Prosecutor's measure to block the shares of Defendant 1 naturally relates to the assets of Defendant 1, which is represented by the blocked shares in the broader sense of the word.

By means of the steps that have been already taken, Forminster and the statutory bodies of Defendant 1, who were appointed by Forminster as the main shareholder, have managed to separate the ownership of the shares of Defendant 1 from the main asset value which was held by Defendant 1 at the time the Public Prosecutor's measure was imposed, i.e. from the KOTVA Department Store, and transfer this asset value to an entity in whose registered capital Defendant 1 does not share at all.

Therefore, the practical result of these steps is that there is now practically no sense in the Public Prosecutor's measure.

In this respect, it is also significant that Defendant 3 issued bearer shares. This means that if these shares are transferred, no one (including the police) will discover that such a transfer has occurred. It will not be possible to examine the terms and conditions of the transfer (in particular the person of the buyer, the purchase price, whether security was provided, whether the purchase price has been paid). Therefore, there is a risk of repeating the scenario executed in the case of TREND VIF and the Mercia investment fund, wherein the shares of Defendant 3 will be transferred outside the group of the KOTVA group of companies without payment of the purchase price and that the buyer will transfer the shares to other entities, and as such the income from the sale of the shares, respectively the KOTVA Department Store, will be realized completely outside the KOTVA group of companies. Considering the above-mentioned description of transactions executed by the group connected with Mr. Hálek related to the assets of TREND VIF, and because the current board of directors of Defendant 1 was elected by Forminster, to which the income from trades with the assets of TREND VIF was transferred, it is quite understandable that the Plaintiff is concerned in this respect.

### 3.4.3. Consequences of circumventing the Public Prosecutor's measure

Naturally, as a shareholder of Defendant 1, the Plaintiff is not interested in a risk existing in this manner and to the Plaintiff's detriment whereby the process that various authorities (see the quotations above) have labelled as the legalization of proceeds from crime will be completed, and therefore the Plaintiff files this petition.

There can be no doubt that the circumstances mentioned above, although primarily a criminal law matter, are, in their consequences, also a civil-law issue. Undoubtedly, it is a general truth that all legal activities aimed at legalizing proceeds from crime are unlawful as set forth in Section 39 of the Civil Code (a conflict with the law). Since all the above-mentioned legal

K 0141

transactions about the handling of the KOTVA Department Store are therefore null and void, Defendant 1 remains the owner of the KOTVA Department Store[15].

---

[15] The Plaintiff does not consider necessary to discuss at this point the invalidity of legal transactions concerning the shares of Defendant 1, because its legal status is affected by the transactions related to the KOTVA Department Store. In this respect, the Plaintiff also states that he is aware that, between the persons who represented TREND VIF and Forminster, an agreement was concluded in 1999 whereby, in the future, TREND VIF was to refrain from casting doubt on Forminster's ownership of the shares of Defendant 1. Nevertheless, since the legal actions, which are not only null and void because they are an infringement of the law, but which were also executed to perpetrate crime, cannot be subsequently legitimized by the conclusion of a settlement agreement, the Plaintiff does not believe it is necessary to discuss this agreement in greater detail here.

To conclude, the Plaintiff refers to the fact that in the above-mentioned context preventative nature of this action comes to the fore, because the decision on this action is capable of preventing the emergence of judicial disputes, probably also with an international element (see the above-mentioned Decision of the Supreme Court of the Czech Republic, File No. 3 Cdo 1338/96, on the existence of an exigent legal interest in determining the existence of a legal relationship).

Evidence:

- Report of the compulsory administrator of TREND-VIF from February 22nd, 1997 including the documents specified in its appendix;
- Report of the Ministry of Finance from January 21st, 1998, Ref. No. 102/90 17697;
- Indictment against the Accused Miroslav Hálek et al., submitted by the Regional Public Prosecutor's Office in Hradec Králové on September 30th, 1998, File No. KZv 323/97;
- Indictment against the Accused Miroslav Hálek et al., submitted by the General Prosecutor's Office in Prague on September 30th, 2003, File No. VI VZv 3/2000-2419;
- Expert opinion from August 8th, 2003, which the Plaintiff refers to (may be requested by the court);
- Complete statement from the Companies Register regarding TREND VIF;
- Report of the Center for Securities on the transfer of shares of Defendant 1 from TREND VIF to Forminster (may be requested by the court);
- Contributor's statement from October 10th, 2000, on the transfer of the KOTVA Department Store from Defendant 1 to Defendant 2;
- Complete statement from the Companies Register regarding Defendant 2;
- Notarial Deed of JUDr. Václav Halbich from May 20th, 2003, No. NZ 235/203, N 317/2003 (contains a decision on a change in the legal form of Defendant 2, including the new wording of the Articles of Association, shows the reduction in the share in profits, the settlement share, and the share in the liquidation balance);
- Statement from the Property Register (Title No. 265 for the Staré Město cadastral district);
- Annual reports of Defendant 1 for 2000, 2001, and 2003;
- Decision of the Liechtenstein Provincial Court in Vaduz, Liechtenstein Principality, to freeze the assets in the accounts of Forminster and Presley Industries;

K 0142

- Application of the General Prosecutor's Office on August 29th, 2002, File No. VI VZv 3/2002 – 1597, for legal assistance – request of the Provincial Court in Vaduz, Liechtenstein Principality, from August 29th, 2002;
- Public Prosecutor's Measure to block transfers of shares issued by Defendant 1;
- Expert opinion evaluating the KOTVA Department Store;
- With the reservation of further evidence.

## 4. CONCLUSION, PLAINTIFF'S DEMAND

The Plaintiff has described the reasons why the transfers of the KOTVA Department Store from Defendant 1 to Defendant 2 and from Defendant 2 to Defendant 3 are null and void and why Defendant 1 remains the owner of the property. The Plaintiff has also shown its exigent legal interest in having the ownership of the KOTVA Department Store determined by a court.

For the above-mentioned reasons, the Plaintiff proposes that, after discussing the matter, the court issues the following:

### VERDICT

1. It has been determined that Defendant 1 is the sole owner of the following real property:

- Building with Land Registry reference number 656 (civic amenities), belonging to the Staré Město municipality, located on building plot number 680;
- Building with no Land Registry reference number or street number (civic amenities), belonging to the Staré Město municipality, located on building plot number 1018/2;
- Land Parcel No. 680 (built-up area and courtyard) with an area of 4,385 m2;
- Land Parcel No. 683/1 (other land) with an area of 851 m$^2$;
- Land Parcel No. 683/2 (other land) with an area of 2,963 m$^2$;
- Land Parcel No. 683/3 (other land) with an area of 2 m$^2$;
- Land Parcel No. 690/2 (other land) with an area of 25 m$^2$;
- Land Parcel No. 690/3 (other land) with an area of 49 m$^2$;
- Land Parcel No. 690/4 (other land) with an area of 9 m$^2$;
- Land Parcel No. 1018/2 (built-up area and courtyard) with an area of 1 m$^2$;

all located in the Staré Město cadastral district and municipality of Prague.

II. The Defendants are obliged to reimburse the costs of proceedings jointly and severally to the Plaintiff within three days from the date that this verdict comes into force.

*(signature illegible)*
K T, Inc.
Mgr. Ondřej Peterka
Attorney-at-Law, pursuant to power of attorney

Appendices:
- Statements from the Companies Register regarding the Defendants;

- Proof of the existence of the Plaintiff;
- Statement from the Property Register (Title No. 265 for the Staré Město cadastral district);
- Annual reports of Defendant 1 for 2000, 2001, and 2003;
- Expert Opinion evaluating the KOTVA Department Store;
- Report of the compulsory administrator of TREND-VIF from February 22nd, 1997 including the documents specified in its appendix;
- Report of the Ministry of Finance from January 21st, 1998, Ref. No. 102/90 17697;
- Indictment against the Accused Miroslav Hálek et al., submitted by the Regional Public Prosecutor's Office in Hradec Králové on September 30th, 1998, File No. KZv 323/97;
- Indictment against the Accused Miroslav Hálek et al., submitted by the General Prosecutor's Office in Prague on September 30th, 2003, File No. VI VZv 3/2000-2419;
- Complete statement from the Companies Register regarding TREND VIF;
- Contributor's Statement from October 10th, 2000, on the transfer of the KOTVA Department Store from Defendant 1 to Defendant 2;
- Notarial Deed of Václav Halbich from May 20th, 2003, No. NZ 235/203, N 317/2003;
- Decision of the Liechtenstein Provincial Court in Vaduz, Liechtenstein Principality, to freeze the assets in the accounts of Forminster and Presley Industries;
- Public Prosecutor's Measure to block transfers of shares issued by Defendant 1;
- Application of the General Prosecutor's Office from August 29th, 2002, File No. VI VZv 3/2002 – 1597, for legal assistance – request of the Provincial Court in Vaduz, Liechtenstein Principality, from August 29th, 2002.

K 0144

District Court for Prague 1
Ovocný trh 14
110 00 Prague 1

(File ref.: 22 C 239/2004)

Prague, 20 July 2005

Plaintiff:          **K T, Inc.**
                    Registered offices 2711 Centreville Road, Suite 400, City of Wilmington, County of
                    Newcastle, Delaware, USA

                    Represented by **Mgr. Ondřej Peterka**, attorney at law registered in the list of attorneys at law
                    maintained by the Czech Bar Association under No. 4245, performing advocacy as a partner in
                    PETERKA & PARTNERS v.o.s. registered offices 110 00 Prague 1, Na Příkopě 15

Defendant No.1: **KOTVA a.s.**
                    Registered offices Prague 1, Náměstí Republiky 8
                    Business ID No. 60 19 38 08
                    Entered in the Commercial Register maintained by the Municipal Court in Prague, section B,
                    insert 2370
                    (hereinafter only "Defendant No.1")

Defendant No.2: **KOTVA NEMOVITOSTI k.s.**
                    Registered offices 602 00 Brno, Příkop 4
                    Business ID No. 26 22 90 48
                    Entered in the Commercial Register maintained by the Regional Court in Brno, section A,
                    insert 16 586
                    (hereinafter only "Defendant No.2")

Defendant No.3: **SPV KN, a.s.**
                    Registered offices 602 00 Brno, Příkop 4
                    Business ID No. 26 91 07 05
                    Entered in the Commercial Register maintained by the Regional Court in Brno, section B,
                    insert 4043
                    (hereinafter only "Defendant No.3")

for the determination of ownership rights to properties.

**Petition for the entry of another plaintiff into the proceedings pursuant to Section 92 paragraph 1 of the
Civil Procedure Code**

Four copies
By fax 495512264
Registered with advice of delivery

Annexes:          Agreement from CVF with entry into the proceedings

PETERKA & PARTNERS v.o.s.
Na Příkopě 15/583
CZ – 110 00 Praha 1
Tel.: +420 246 085 300
Fax: +420 246 085 370
www.cabinet.cz
Commercial Register: Municipal Court in Prague
Section A, insert 42561
Business ID No. 26 16 97 20

                          PRAGUE - BRATISLAVA

I.

On 23 December 2004 the plaintiff filed an action at this court to determine that Defendant No.1 is the owner of the following properties:

- Building No. 656 (amenities) belonging in Staré Město, located on building lot No.680;
- Building with no number (amenities) belonging in Staré Město, located on building lot No.1018/2;
- Plot No.680 (built-up area and courtyard) measuring 4385m²;
- Plot No.683/1 (other area) measuring 851m²;
- Plot No.683/2 (other area) measuring 2963m²
- Plot No.683/3 (other area) measuring 2m²
- Plot No.690/2 (other area) measuring 25m²
- Plot No.690/3 (other area) measuring 49m²
- Plot No.690/4 (other area) measuring 9m²
- Plot No.1018/2 (built-up area and courtyard) measuring 1m²;

all the given properties are entered in the Land Registry for the City of Prague on title deed No.265 maintained for the municipality of Prague, cadastral territory Staré Město (these properties will hereinafter be referred to together only as "KOTVA Department Store").

This action is registered with this court under file ref. 22 C 239/2004.

II.

The plaintiff hereby petitions that another participant enters these proceedings, i.e. the company CVF Investments Limited, registered offices Nicolaou Pentradromos Centre, Office 1908, Block A, P.O.Box 123, Limassol (205), Cyprus (hereinafter only "CVF"). CVF would enter these proceedings on the side of the plaintiff.

CVF is a significant shareholder in Defendant No.1, the company KOTVA, a.s. (CVF is the beneficial owner of 81,082 shares, i.e. around 11.67%) and thus has an immediate legal interest in the determination of the ownership of the main asset value of Defendant No.1, the KOTVA Department Store. CVF does not directly hold these shares, but CVF Bank of Bermuda (Guernsey) Limited, registered offices Bermuda House, St. Julian's Avenue, St. Peter Port, Guernsey, Channel Islands GY1 3NF holds these shares for CVF in its name and expense on the basis of a contract for the storage of securities.

III.

In view of the above, the plaintiff petitions that the court issues the following

**resolution:**

This court permits the entry of CVF Investments Limited, registered offices Nicolaou Pentradromos Centre, Office 1908, Block A, P.O.Box 123, Limassol (205), Cyprus on the side of the plaintiff into the case of the *plaintiff* K T, Inc. and the *defendants* (i) KOTVA a.s., (ii) KOTVA NEMOVITOSTI k.s. and (iii) SPV KN, a.s. *for the determination of the ownership* of KOTVA Department Store.

[illegible signature]
K T, Inc.
Mgr. Ondřej Peterka, Attorney at Law
on the basis of power of attorney

Westlaw.

Not Reported in F.Supp.2d                                                                          Page 1
Not Reported in F.Supp.2d, 2003 WL 22741575 (S.D.N.Y.)
**(Cite as: 2003 WL 22741575 (S.D.N.Y.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
UNITED BANK FOR AFRICA PLC, Plaintiff,
v.
Adegboyega A. COKER, Defendant.
**No. 94 Civ. 0655(TPG).**

Nov. 18, 2003.

Nigerian bank sued former New York branch manager, alleging violation of Racketeer Influenced and Corrupt Organizations Act (RICO) and making related common law claims. Manager counterclaimed, alleging libel, wrongful termination, breach of employment contract and false imprisonment, latter occurring while he was passing through Nigerian airport. Bank moved to dismiss counterclaims. The District Court, Griesa, J., held that: (1) libel counterclaim would be dismissed, in exercise of judicial deference to suit earlier commenced by manager against bank in Nigeria; (2) libel counterclaim would be dismissed under doctrine of forum non conveniens; (3) wrongful discharge counterclaim would be dismissed, in exercise of judicial deference; (4) breach of employment agreement claim would be dismissed, in exercise of judicial deference; and (5) false imprisonment claim would be dismissed on forum non conveniens grounds.

Counterclaims dismissed.

West Headnotes

**[1] Courts** 💾514
106k514 Most Cited Cases
Court, in exercise of judicial deference, would dismiss libel counterclaim, asserted in suit brought by Nigerian bank against former New York branch manager, in favor of earlier filed libel action brought by manager against bank in Nigeria; counterclaim was no further advanced than original claim, actions were identical and Nigerian courts could accord full relief.

**[2] Federal Courts** 💾45
170Bk45 Most Cited Cases
Under doctrine of forum non conveniens, court would dismiss libel counterclaim, asserted in suit brought by Nigerian bank against former New York branch manager, in favor of earlier filed libel action brought by manager against bank in Nigeria; private interests heavily favored litigation in Nigeria, as evidence was there, and public factors were neutral.

**[3] Courts** 💾514
106k514 Most Cited Cases
Court, in exercise of judicial deference, would dismiss wrongful discharge counterclaim, asserted in suit brought by Nigerian bank against former New York branch manager, in favor of earlier filed wrongful dismissal action brought by manager against bank in Nigeria; counterclaim was no further advanced than original claim, actions were identical, both involving alleged breach of employment contract, and Nigerian courts could accord full relief.

**[4] Courts** 💾514
106k514 Most Cited Cases
Court, in exercise of judicial deference, would dismiss breach of employment contract counterclaim, asserted in suit brought by Nigerian bank against former New York branch manager, in favor of earlier breach of contract action brought by manager against bank in Nigeria; counterclaim was no further advanced than original claim, actions were identical, both involving same contract, and Nigerian courts could accord full relief.

**[5] Federal Courts** 💾45
170Bk45 Most Cited Cases
Under doctrine of forum non conveniens, court would dismiss counterclaim that he was falsely imprisoned for period of several hours while passing through Nigerian airport, asserted in suit brought by Nigerian bank against former New York branch manager, despite contention that claim was cognizable under Alien Tort Claims Act (ATCA) and Torture Victims Prevention Act (TVPA); even if cognizable, wrongful imprisonment suit in Nigeria was preferable, as relevant parties resided there. 28 U.S.C.A. § 1350.

*Opinion*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 2
Not Reported in F.Supp.2d, 2003 WL 22741575 (S.D.N.Y.)
**(Cite as: 2003 WL 22741575 (S.D.N.Y.))**

GRIESA, J.

**\*1** This is an action by plaintiff United Bank of Africa ("UBA") against its former employee, defendant Adegboyega Coker, to recover under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and on related common law claims. UBA is a corporate banking institution organized and existing under the laws of the Republic of Nigeria. Its principal place of business is in Lagos, Nigeria, and it operates a branch in New York City. Coker was employed by UBA between 1977 and 1992 in Nigeria and New York.

The complaint alleges, in sum, that while serving as branch manager in UBA's New York City branch, Coker facilitated and personally profited from numerous loans to entities that were not credit worthy. Coker has counterclaimed alleging that UBA damaged him through libelous communications regarding his tenure at UBA, wrongfully discharged him, breached his employment contract, and caused his false imprisonment by Nigerian security forces.

Now before the Court is UBA's motion seeking summary judgment dismissing Coker's counterclaims. The motion is granted.

*FACTS*

The following undisputed facts are taken from the complaint, the answer, and affidavits submitted on the motion.

Coker was hired in 1977 to work in UBA's office in Lagos, Nigeria. In 1986, UBA's Board of Directors in Nigeria appointed Coker as General Manager of UBA's New York branch office in Manhattan. The appointment was confirmed by the Board of Directors in Nigeria. Coker served in this capacity until his resignation in 1992.

In the role of branch manager, Coker had authority to unilaterally approve some loans, and was required to seek authorization from UBA's Board of Directors for approval of other loans that exceeded his unilateral approval authority. In October 1991, a Special Report filed with UBA's head office regarding an internal audit of UBA's New York branch documented a number of questionable practices by Coker at the branch. Those practices included authorizing loan disbursements that exceeded his approval authority, and misrepresenting to UBA's Board the financial status of certain loan applicants in the course of securing Board approval where that was required. The report cited "failed transactions" and "files ... showing signs of distress" as a result of Coker's practices.

During the fourth quarter of 1991, an outside independent audit of UBA's New York branch was conducted at the request of UBA's Board of Directors. The audit revealed irregularities in loan portfolios and a high number of nonperforming loans. Subsequently, in November 1991, Coker received a letter of warning from UBA, advising him that the head office objected to the quality of New York's loan portfolios and Coker's loan approval practices. The letter suspended Coker's discretionary lending powers, and requesting that he return to the head office in Lagos. Shortly after the issuance of the letter UBA's Board of Directors resolved at a meeting that Coker should be recalled from his post as soon as inspection of the New York branch was completed and a successor to Coker could be dispatched.

**\*2** Coker did not return to Nigeria, and instead tendered his resignation to UBA on January 13, 1992. The resignation was effective March 31, 1992, after the expiration of Coker's remaining vacation days.

In April 1992 the UBA Board of Directors considered Coker's resignation and voted to defer action on it pending completion of ongoing investigations regarding the New York branch. These investigations culminated in a report prepared by the Special Disciplinary Committee on New York Branch Problems. The report detailed an investigation that included interviews and review of documentary evidence, and set forth a host of problems relating to specific loan approvals and disbursements, as well as general management lapses. The report concluded that "the responsibility for the lapses, omissions and commissions ascertained in the management of the New York branch, should be attributable to the style of management, unprofessional conduct and gross negligence of Mr. Ade Coker."

On June 17, 1992, the UBA Board met to consider the Special Disciplinary Committee's report, and adopted the Committee's recommendation that Coker should be dismissed from service effective March 31, 1992, "for poor style of management, unprofessional conduct, and gross negligence in handling banking transactions of the branch."

On February 8, 1993, the Deputy Chief Inspector for UBA forwarded the following letter to the Central Bank of Nigeria and the United States Comptroller of the Currency:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22741575 (S.D.N.Y.)
(Cite as: 2003 WL 22741575 (S.D.N.Y.))

As a result of some malpractices, ultra vires lendings, and poor administrative controls [Mr. Ade Coker] was dismissed from the services of the Bank with effect from 31st March, 1992. Mr. Ade Coker is therefore, no longer a bona fide member of UBA staff and we consider it prudent that his unethical behavior whilst in the employment of the Bank should be brought to your attention.
We have been unable to establish any contact with him to attend to some pending inquiries with regards to his conduct when performing the duties of General Manager of our New York Branch.

At some point Coker returned to Nigeria, where he now resides. In July 1993, Coker filed a civil action against UBA in the High Court of Lagos State, Lagos Judicial Division. Coker's complaint alleged that UBA published defamatory statements regarding him in the February 1993 Deputy Chief Inspector letter, and that Coker suffered damage to his reputation and career in Nigeria and the United States as a result of such publication. Coker also alleged that UBA wrongfully dismissed him without cause in violation of his employment contract, and that UBA failed to pay Coker certain "entitlements," including salary, allowances, and relocation costs, to which Coker was contractually entitled. According to the affidavit of Rotimi Jacobs, one of Coker's attorneys in Nigeria, this action has been "adjourned indefinitely" since 1995.

On February 2, 1994, UBA filed the present action in the federal court in New York, asserting causes of action under RICO, for fraud, breach of contract, and breach of fiduciary duty. Subsequently, on July 1, 1994, Coker obtained an injunction in the Nigerian court against prosecution of the suit in the United States while Coker's Nigerian action was pending. That injunction was overturned on appeal in February 1996. On August 8, 1997, Coker filed his answer and counterclaims in the U.S. action. The answer and counterclaims were amended on March 19, 1998.

*3 In November 1999, Coker filed a second suit in Nigeria in the Ikeja High Court, naming UBA and the Nigerian Deposit Insurance Company as defendants in connection with another alleged libel arising from Coker's termination. That action is still pending.

DISCUSSION
On each of Coker's counterclaims, UBA presents arguments for summary judgment both on the merits, as well as on judicial deference, forum non conveniens, or act of state grounds. Specifically, both judicial deference and forum non conveniens are

raised as to Coker's libel counterclaim, while judicial deference alone is raised as to the wrongful discharge and breach of contract counterclaims, and forum non conveniens and act of state are raised as grounds for dismissal of the false imprisonment claim. Having concluded that judicial deference or forum non conveniens justifies dismissal of each of Coker's claims, the Court will not address UBA's other arguments.

I. The Libel Counterclaim
[1] Coker's first counterclaim alleges that UBA libeled Coker by transmitting the Deputy Inspector's February 1993 letter to the Central Bank of Nigeria and the United States Comptroller of Currency. UBA argues that this claim should be dismissed in deference to the closely related pending Nigerian suit or on the basis of forum non conveniens. Coker objects to dismissal on either of these grounds, arguing in sum that he is entitled to litigate his counterclaims in the New York forum chosen by UBA for its action.

A. Deference to the Pending Nigerian Action

It has been recognized that principals of judicial efficiency and international comity give courts the "inherent power" to stay or dismiss actions that are duplicative of pending foreign suits. See Dragon Capital Partners L.P. v. Merrill Lynch Capital Services, Inc., 949 F.Supp. 1123, 1127 (S.D.N.Y.1997); In re Houbigant, Inc., 914 F.Supp. 997, 1003 (S.D.N.Y.1996). Factors weighed by courts to determine whether deference to a foreign proceeding is appropriate include the similarity of parties and issues involved, promotion of judicial efficiency, adequacy of relief available in the alternative forum, considerations of fairness to all parties and possible prejudice to any of them, and the sequence of commencement of the actions. Caspian Investments, Ltd. v. Vicom Holdings, Ltd., 770 F.Supp. 880, 884 (S.D.N.Y.1991).

Here, Coker's Nigerian libel claim and his New York libel counterclaim are essentially the same, with the same parties (Coker and UBA) and arising from the same set of facts. As to the sequence, Coker filed his Nigerian libel claim in 1993, four years before the filing of the New York counterclaim.

Courts considering the question of deference have traditionally accorded great weight to the first suit filed. See Colorado River Water Conservation District v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); Ronar, Inc. v. Wallace,

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22741575 (S.D.N.Y.)
(Cite as: 2003 WL 22741575 (S.D.N.Y.))

649 F.Supp. 310, 318 (S.D.N.Y.1986).

Interests of judicial efficiency also weight in favor of deferring to the Nigerian action. Coker's most recent discovery plan for his New York counterclaims includes taking depositions of eight witnesses, all of whom apparently are in Nigeria. This plan directly contradicts Coker's assertion that his counterclaims are "ready for trial" in New York, and that requiring him to "restart" in Nigeria would be both inefficient and prejudicial.

**\*4** Moreover, Coker is wrong in arguing that prosecution of his counterclaim has proceeded apace while the Nigerian action has been dormant. Coker's counterclaim appears to be no further developed than the original claim still pending in Nigeria.

The relevant factors thus strongly militate in favor of deference to the Nigerian action. Further, given the identical nature of Coker's Nigerian libel claim and the apparent ability of that forum to accord full relief, it would serve no purpose to stay the instant action rather than simply dismissing it. *See Caspian Investments, 770 F.Supp. at 885.* Therefore, Coker's libel counterclaim is dismissed on the ground of judicial deference.

B. Forum Non Conveniens

[2] The doctrine of forum non conveniens allows a court, in its discretion, to dismiss an action, otherwise properly brought, on the ground that litigating in another forum would better serve the convenience of the parties and the interests of justice. *See Jota v. Texaco, Inc., 157 F.3d 153, 159 (2d Cir.1998); Dragon Capital Partners, 949 F.Supp. at 1130.*

To determine whether forum non conveniens dismissal is appropriate, courts generally determine first whether the alternative forum is adequate. *See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).* After determining that the alternative forum is adequate, courts go on to assess whether private and public interests weigh strongly in favor of dismissal. Private interests considered by the courts generally are factors that relate to the relative difficulty and cost to the parties of pursuing and trying the case in one forum or the other. *See, e .g., Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).* Public interests include court congestion and local interest in the resolution of localized controversies. *Id. at 508-09.*

As to the threshold inquiry, there is no question that the Nigerian forum is adequate to litigate the subject matter of the libel counterclaim. Coker himself has sued UBA in Nigeria in *two* closely related pending actions and has raised no substantial contention that the Nigerian courts are unable to effectuate a just resolution of those claims.

Furthermore, for many of the reasons set forth with respect to the deference issue, the balance of private and public interests weighs strongly in favor of dismissal. It appears from Coker's allegations as well as from his proposed list of depositions that most, if not all, of the proof germane to Coker's libel counterclaim is in Nigeria.

Finally, there are other difficulties, particularly for UBA, that would be imposed by trying the counterclaim in this forum while an identical suit is pending in Nigeria, including duplicative proceedings and the risk of inconsistent judgments.

It is generally true that where a forum non conveniens issue is raised, the plaintiff's choice of forum is entitled to deference. *Gilbert, 330 U.S. at 508.* But here, there is no real reason for such deference in view of the pending libel claim in Coker's earlier filed Nigerian action, and Coker's presence in and ties to the Nigerian forum. *See Iragorri v. United Technologies Corp., 274 F.3d 65, 72 (2d Cir.2001); Murray v. British Broadcasting Corp., 81 F.3d 287, 290 (2d Cir.2000).*

**\*5** With respect to the public interests at stake, it is difficult to see that the consideration of such interests tips the scale toward one forum or the other. Thus the private interest factors are dispositive, and they weigh heavily against New York as a forum. Therefore the libel counterclaim is dismissed on forum non conveniens grounds as well as on the ground of judicial deference.

II. The Wrongful Discharge Counterclaim

[3] Coker's second counterclaim alleges wrongful discharge by UBA. Although UBA chose originally to argue for dismissal of this counterclaim on the merits, it points out in subsequent submissions to the Court that judicial deference militates in favor of dismissal here as much as with Coker's libel counterclaim.

Coker's pending action in Nigeria alleges that UBA wrongfully dismissed him without cause in violation of his employment contract. This claim is indistinguishable from Coker's wrongful discharge

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22741575 (S.D.N.Y.)
(Cite as: 2003 WL 22741575 (S.D.N.Y.))

counterclaim, which alleges simply that UBA "wrongfully discharged the defendant from his employment." Therefore, for the reasons discussed with regard to Coker's libel counterclaim, this counterclaim should be dismissed in deference to the ongoing civil action in Nigerian courts.

### III. The Breach of Employment Contract Counterclaim

[4] Coker's third counterclaim alleges that UBA breached his employment contract by failing to pay outstanding salary, leave allowance, U.S. taxes, repatriation costs, and other contractual allowances allegedly owed to Coker. UBA argues that this counterclaim, like Coker's libel counterclaim, should be dismissed in deference to Coker's pending Nigerian civil action.

One claim in Coker's Nigerian suit against UBA alleges that UBA failed to pay Coker certain "entitlements," including salary, allowances, and relocation costs, to which Coker was contractually entitled. It is identical to Coker's breach of contract counterclaim in the instant action.

The reasons set forth in the discussion of deference as to the libel and wrongful discharge counterclaims apply equally here. Therefore, Coker's breach of employment contract counterclaim is dismissed on the ground of judicial deference.

### IV. The False Imprisonment Counterclaim

[5] Coker's fourth counterclaim alleges that in the fall of 1996 UBA approached the Nigerian State Security Service and caused Coker to be arrested while he was traveling through the Lagos Airport. Coker states that the "arrest, detention and imprisonment of [Coker] ... were unlawful and without justification," and that UBA's act of approaching Nigerian security forces was "willful, wanton and without reasonable excuse." As a result of his arrest, Coker alleges that "[d]uring a period of several hours" he was "subjected to severe physical discomfort and mental anguish."

UBA argues that Coker's false imprisonment counterclaim should be dismissed on the ground of forum non conveniens.

Coker attempts to argue in opposition to summary judgment that this counterclaim comes within the ambit of the Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350, or the Torture Victims Prevention Act ("TVPA"), 28 U.S.C. § 1350. Relying on the Second Circuit's decision in *Wiwa v. Royal Dutch*

*Petroleum Co.*, 226 F.3d 88, 105 (2d Cir.2000), Coker argues that because ATCA and the TVPA express an intention to create a U.S. forum for plaintiffs to bring claims of violations of rights under international law, ordinary doctrines of abstention may often be inapposite.

*6 Coker's amended counterclaim, as pleaded, does not invoke ATCA or the TVPA. These statutes are mentioned only in briefing the motion. But assuming that the argument under the statutes is properly raised, and further assuming, arguendo, that Coker's allegations could come within the ambit of these statutes, the balance of factors would still militate in favor of dismissal of the false imprisonment claim on forum non conveniens grounds. See *Aguinda v. Texaco, Inc.*, 303 F.3d 470 (2d Cir.2002).

As an initial matter, Nigeria is an adequate forum for the wrongful imprisonment counterclaim. Not only are Coker's previously filed actions still pending, but it is also clear that Nigeria has a cause of action for wrongful imprisonment. Coker presents no reason why a wrongful imprisonment claim could not be added to *his own* pending Nigerian actions, or filed anew in a Nigerian court. It should be noted that, according to submissions by UBA, the Nigerian statute of limitations for wrongful imprisonment may have run in 2002, while the instant motion was pending. This does not present a barrier to dismissal to the extent that UBA is prepared to waive a statute of limitations defense to an expeditiously filed Nigerian action.

The private and public interests at stake also balance heavily in favor of dismissal. All of the events underlying Coker's counterclaim took place in Nigeria, suggesting strongly that any evidence or testimony Coker may contemplate bringing before the Court is located in Nigeria. Additionally, it is manifestly clear that the Nigerian forum has a stronger local interest in hearing the counterclaim. Coker alleges misconduct on the part of not only UBA, a Nigerian corporation, but also by the Nigerian State Security Service, an arm of the Nigerian State.

Finally, even assuming that Coker's counterclaim may be cognizable under ATCA or the TVPA, UBA has met its burden of showing that the balance of factors tips in favor of dismissal. The *Wiwa* court discussed several unique difficulties that might result to ATCA and TVPA plaintiffs from a dismissal of their claims on forum non conveniens grounds. The plaintiff is often not present in the alternative forum

Not Reported in F.Supp.2d                                                          Page 6
Not Reported in F.Supp.2d, 2003 WL 22741575 (S.D.N.Y.)
**(Cite as: 2003 WL 22741575 (S.D.N.Y.))**

and cannot safely return there. Courts in the alternative forum may be inhospitable to the claims. Plaintiffs and defendants may not be protected or governed by the domestic law of the alternative forum. _Wiwa, 226 F.3d at 106_. For the reasons discussed above, Coker has not made a showing that any of these factors apply in the present case. In any event, as noted above, Coker's counterclaim does not plead the ATCA or the TVPA as a basis for his false imprisonment action.

 Therefore, Coker's false imprisonment counterclaim is dismissed on the ground of forum non conveniens, on the condition that UBA waive any statute of limitations defense to a false imprisonment claim in Nigerian court.

*CONCLUSION*
 For the foregoing reasons, UBA's motion to dismiss Coker's four counterclaims is granted.

 **\*7** SO ORDERED

 Not Reported in F.Supp.2d, 2003 WL 22741575 (S.D.N.Y.)

 **Motions, Pleadings and Filings (Back to top)**

• 1:94cv00655 (Docket) (Feb. 02, 1994)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1

Stamp:
POLICE OF THE CZECH REPUBLIC
ADMINISTRATION OF THE CITY OF PRAGUE
*Criminal Police and Investigation Service*
Economic Crime Section
140 21 PRAGUE 4, Kongresová 2

Criminal Prosecution No.: PSP-4035/OHK-3-2004

At Prague on 3 February 2005

DECISION

Pursuant to Section 160(1) of the Criminal Procedure Code, I hereby initiate criminal prosecution of the accused:

1) Ing. Vladimír Hoffmann,
   nationality: Czech Republic
   born on 30 October 1965 in Bratislava I, Slovak Republic
   birth index no. 651030/6990
   permanent resident at Medinská 825,
                          Klánovice, Prague 9, 190 14
   owner of the company Balfindor a.s., Company ID No. 27107892
   with its seat at Na Kocourkách 2915, Prague 6
   owner of the company Gilroy Limited, Company ID No. 0090061682
   with its seat at Pikioni, 4, Limassol, Republic of Cyprus

2) Edita Šimková
   nationality: Czech Republic
   born on 27 July 1968 in the Slovak Republic
   birth index no. 685727/6140
   permanent resident at Na Folimance 2153/19,
                          Vinohrady, Prague 2, 120 00
   chairperson of the board of directors of Balfindor a.s., Company ID No. 27107892
   with its seat at Na Kocourkách 2915, Prague 6

3) Andrew Weiss,
   nationality: United States of America
   born on 2 January 1947, passport no. Z7528881
   resident at 46 Abbottsford Road, 2 Brookline, Massachusetts, 2446 USA
   owner of the company Weiss Asset Management,
   company address 29 Commonwealth Avenue, Boston, Massachusetts 02116,
   which manages the company Brookdale Global Opportunity Fund,
   company address      P.O. Box 1748, GT 27 Hospital Road, George Town
                         Grand Cayman, Cayman Islands
   and controls the company KT, Inc.
   with its seat at 2711 Centerville Road, Suite 400, City of Wilmington, County of Newcastle, Delaware, USA,

K 0041

2

for the criminal offence of

extortion pursuant to Section 235(1) and (3) of the Criminal Code, committed as accomplices pursuant to Section 9(2) of the Criminal Code,

because it has been sufficiently substantiated by the facts ascertained until now that

the accused Andrew Weiss and the accused Ing. Vladimír Hoffmann met on 12 May 2004 at 2:00 p.m. in the French restaurant of Obecní dům (Municipal House) in Prague 1, náměstí Republiky 1090/5, with the management of Kotva a.s., ID No. 60193808, with its seat at Prague 1, náměstí Republiky 8, represented by Richard Harazim, general manager of Kotva a.s., born on 10 March 1965, permanent resident at Přezletice, U bažantnice 305, district of Prague-East, and Martin Benda, chairman of the supervisory board of Kotva a.s., born on 8 September 1971, permanent resident at Borač 46, district of Žďár nad Sázavou, and requested from them redemption of 11.9% shares of the registered capital of Kotva a.s., i.e. 82,782 shares, which are held by Brookdale Global Opportunity Fund, P.O. BOX 1748, GT 27 Hospital Road, George Town, Grand Cayman, Cayman Islands (where these shares are administered by the accused Weiss Andrew through his company Weiss Asset Management, 29 Commonwealth Avenue, Boston, Massachusetts 02116), for an amount of 4,000,000 US dollars, stating that if these shares were not so redeemed, the accused Weiss would arrange for blocking the real estate of Obchodní dům Kotva (Kotva Department Store), located at náměstí Republiky 8, Prague 1, in the real estate cadastre by filing fabricated and self-serving lawsuits against Kotva a.s., by which he would substantially disturb negotiations of Kotva Holding with potential strategic partners and financial institutions about the financing of operations and sales of Obchodní dům Kotva, and would restrict the disposal of this property for several years, because he knew that Kotva a.s. had concluded a contract for sale of the above Obchodní dům Kotva from which it could not withdraw and that Kotva a.s. was under a time pressure and had financial problems, and if Kotva a.s. did not purchase his shares, the next offer would be substantially higher, and if Kotva a.s. refused to purchase these shares from him, he would file criminal charges against the board of directors of Kotva a.s. By this way, the accused blackmailed Kotva a.s. and its board of directors by the threat of causing large-scale damage, physical violence or other major detriment, forcing Kotva a.s. and its board of directors to perform, omit or suffer an act, although the above representatives of

**K 0042**

3

Kotva a.s. refused to redeem the above shares, stating that the asked price for the shares of Kotva a.s. is excessively high and that Kotva a.s. is not allowed to redeem its own shares.

Subsequently, the accused Weiss and the accused Hoffmann informed through Gilroy Limited and Balfindor a.s. Mr. Henry Prestige, the strategic partner of Kotva a.s., and financial institutions financing the operations of Kotva a.s. about actions filed against Kotva a.s. (as noted below), by which they hindered business operations of Kotva a.s. Such notification of the strategic partner and the financial institutions was meant to prevent the sale of the real property of Kotva a.s. to the strategic partner.

Subsequently, the accused Hoffmann, being the owner of Balfindor a.s., the accused Šimková as the chairperson of the board of director of Balfindor a.s., and the accused Weiss (who instructed the accused Hoffman and the accused Šimková to file the action referred to below), represented by Mgr. Ondřej Peterka, attorney-a-law, registered in the attorneys register kept by the Czech Bar Association under no, 4245, filed with the Municipal Court in Prague on 8 June 2004 on behalf of Balfindor a.s., Company ID No. 27107892, with its seat at Prague 6, Na Kocourkách 29/5 (which purchased on 8 June 2004, specifically for such purpose, one share of Kotva a.s. from the accused Hoffmann), an action for determination of invalidity of the general meeting of Kotva a.s., Company ID No. 60193808. On the same day, i.e. 8 June 2004, they submitted the statement of claim regarding the above action to the Cadastral Office of the City of Prague to attach in the real estate cadastre a seal to the lands and properties of Kotva a.s.

Subsequently, the accused Hoffmann, being the owner of Gilroy Limited, and the accused Weiss (who instructed the accused Hoffmann to file the action referred to below), represented by Mgr. Ondřej Peterka, attorney-at-law, filed with the Municipal Court in Prague on 30 June 2004 on behalf of Gilroy Limited, Company ID No. 0090061682, with its seat at Pikioni, 4, Limassol, Republic of Cyprus, which holds a part of shares of Kotva a.s., an action for determination of title to real estate of Kotva a.s., Company ID No. 60193808, Kotva nemovitosti k.s. with its seat at Příkopy 4, Brno, Company ID No. 26229048, and SPV KN a.s., with its seat at Příkopy 4, Brmo. At the same time (on 2 July 2004), they submitted the statement of claim regarding the above action to the Cadastral Office of the City of Prague to attach in the real estate cadastre a seal to the lands and properties of Kotva a.s., Kotva nemovitosti k.s. and SPV KN a.s.

K 0043

4

Subsequently, the accused Ing. Vladimír Hoffmann, born on 30 October 1965, birth index number 651030/6990, permanent resident at Prague 9, Medinská 825, as the holder of a part of shares of Kotva a.s., acting jointly with JUDr. Petr Streiberg, permanent resident at Prague 6, Na Kuthance 16/1218, born on 18 October 1955, who holds a part of shares of Kotva a.s., and with the accused Weiss, being the owner of Weiss Asset Management, company address 29 Commonwealth Avenue, Boston, Massachusetts 02116, which manages Brookdale Global Opportunity Fund, with its seat at P.O. BOX 1748, GT 27 Hospital Road, George Town, Grand Cayman, Cayman Islands, which owns a part of shares of Kotva, a.s., all of them represented by Mgr. Jiří Černý, attorney-at-law, substituted by Mgr. Ondřej Peterka, filed with the Municipal Court in Prague on 15 July 2004, on behalf of Brookdale Global Opportunity Fund and on behalf of Ing. Vladimír Hoffman and JUDr. Petr Streitberg as individuals, an action for declaration of invalidity of the general meeting of Kotva a.s. At the same time, they submitted the statement of claim regarding the above action to the Cadastral Office of the City of Prague to attach in the real estate cadastre a seal to the lands and properties of Kotva a.s.

Subsequently, the accused Weiss, who controls KT, Inc., with its seat at 2711 Centerville Road, Suite 400, City of Wilmington, County of Newcastle, Delaware, USA, which holds a part of shares of Kotva a.s. through Brookdale Global Opportunity Fund (which also holds a part of shares of Kotva a.s.), represented by Mgr. Ondřej Peterka, attorney-at-law, filed individually with the Municipal Court in Prague on 23 December 2004 on behalf of KT, Inc. an action for determination of title to real estate. At the same time, he submitted the statement of claim regarding the above action to the Cadastral Office of the City of Prague to attach in the real estate cadastre a seal to the lands and properties of Kotva a.s.

Subsequently, the three accused have requested Kotva a.s. repeatedly by extortion, from 12 May 2004 to date, to redeem of 11.9% of shares of Kotva a.s. and to purchase 39.73% (i.e. 11,098,617 shares) of Trend – všeobecný investiční fond a.s., with its seat at Hradec Králové, Škroupova 9/441, Company ID No. 45245177. They increased the requested redemption price up to 295,000,000 CZK, otherwise they would not withdraw their lawsuits against Kotva a.s., Kotva nemovitosti k.s. and SPV KN a.s., thus causing high financial losses to these companies. The extortion itself was represented by filing the above actions, by personal

K 0044

5

contacts of the accused with representatives of Kotva a.s., and by a telephone call, by fax and e-mail messages sent to these representatives.

Subsequently, the accused Hoffmann has demanded individually from Kotva a.s. by extortion, from November 2004 to date, payment of 45,000,000 CZK as compensation for withdrawal of claims against Kotva a.s. filed by his companies, i.e. Gilroy Limited and Balfindor a.s. He forced Kotva a.s. to conclude with him a preliminary agreement on compensation for withdrawal of the above claims filed by his companies. The extortion itself was represented by filing the above actions by the companies owned by Hoffman, and by a telephone call, by fax and e-mail messages sent to the representatives of Kotva a.s.

By the foregoing conduct, the accused committed the above criminal offence to the detriment of the following injured parties:

Kotva a.s.

Kotva nemovitosti k.s.

SPV KN a.s.

Martin Benda, born on 8 September 1971

Richard Harazim, born on 10 March 1965.

### Statement of reasons

Kotva a.s. filed on 27 August 2004 to the Police of the Czech Republic, Administration of the Capital City of Prague, Criminal Police and Investigation Service, Kongresová 2, Prague 4, criminal charges against the accused Weiss and the accused Hoffmann regarding the criminal offence described above. Subsequently, an explanatory interrogation with the injured parties Harazim and Benda was carried out. The police seized documents evidencing extortion. Furthermore, having obtained court permission, the police tapped telephone calls in this matter. These calls and seized documents, the criminal charges and explanatory interrogation sufficiently documented this offence. It was ascertained that there are sufficient grounds, pursuant to Section 160(1) of the Criminal Procedure Code, to start criminal prosecution of specific persons who committed such offence. Therefore, the criminal prosecution of the above accused was started.

K 0045

6

**Instruction:**

Pursuant to Section 36(3) of the Criminal Procedure Code, you, as the accused, must have a legal counsel to defend you at the pre-trial proceeding, because you have committed an offence that is punishable under the law by a prison sentence with the upper limit of more than 5 years. If you fail to choose a counsel by yourself or if the counsel is not selected by the persons listed in Section 37 of the Criminal Procedure Code within two hours of the service of this Decision, the defence counsel shall be appointed for you in accordance with Section 38(1) of the Criminal Procedure Code.

I further instruct you that every accused must have his own defence counsel, because the interests of individual accused at this criminal suit are conflicting.

I further instruct you that the following persons will be heard among the witnesses in this criminal matter: Mgr. Ondřej Peterka, Mgr. Jiří Černý and Mgr. Ladislav Chundela of the law offices of Peterka & Partners v.o.s., and JUDr. Ing. Petr Šrámek, listed in the attorneys register of the Czech Bar Association under no. 5076; therefore, you cannot choose these persons as your defence counsels pursuant to Section 37 of the Criminal Procedure Code.

A complaint against this decision may be filed by an accused within three days of the service hereof with the police authority that has prepared this decision. Such complaint has no suspensory effect.

Ing. Pavel Brož

Police Commissioner: *[Signature]*

Accepted by the accused Ing. Vladimír Hoffman on 3 February 2005 at 2:00 p.m. *[Initial]*

Accepted by the accused Andrew Weiss          on

Accepted by the accused Edita Šimková          on 3 February 2005 at 11.20 a.m.

*[Signature]*

**K 0046**

**POLICIE ČESKÉ REPUBLIKY**
SPRÁVA HLAVNÍHO MĚSTA PRAHY
*služba kriminální policie a vyšetřování*
odbor hospodářské kriminality
**140 21 PRAHA 4, Kongresová 2**                    -1-

ČTS:PSP-4035/OHK-3-2004

Praha dne 3. února 2005

## U S N E S E N Í

Podle ustanovení § 160 odstavce 1 trestního řádu zahajuji trestní stíhání obviněných:

1)    ing. Vladimír Hoffmann,
      státní příslušník České republiky,
      narozen 30.10.1965 v Bratislavě I, Slovenská republika,
      rodné číslo 651030/6990,
      trvale bytem Medinská 825,
                    Klánovice, Praha 9, 190 14,
      majitel firmy Balfindor a. s., IČO 27107892,
      sídlo firmy Na Kocourkách 2915, Praha 6,
      majitel firmy Gilroy Limited, IČO 0090061682,
      sídlo firmy Pikioni, 4, Limassol, Kyperská republika,

2)    Edita Šimková,
      státní příslušník České republiky,
      narozená 27.7.1968 v Slovenské republice,
      rodné číslo 685727/6140
      trvale bytem Na Folimance 2153/19,
                    Vinohrady, Praha 2, 120 00,
      předseda představenstva firmy Balfindor a. s., IČO 27107892,
      sídlo firmy Na Kocourkách 2915, Praha 6,

3)    Andrew Weiss,
      státní příslušník Spojených států amerických,
      narozen 2.1.1947, pas č. Z7528881,
      bytem 46 Abbottsford Road, 2 Brookline, Massachusetts, 2446 USA,
      majitel firmy Weiss Asset Management,
      adresa firmy 29 Commonwealth Avenue, Boston, Massachusetts 02116,
      která spravuje firmu Brookdale Global Opportunity Fund,
      adresa firmy        P. O. BOX 1748, GT 27 Hospital Road, George Town,

-2-

Grand Cayman, Cayman Islands,

ovládá firmu KT,Inc.,

se sídlem 2711 Centerville Road, Suite 400, City of Wilmington, County of Newcastle, Delaware, USA,

pro trestný čin

"Vydírání" podle § 235 odstavce 1, odstavce 3 trestného zákona ve spolupachatelství podle § 9 odstavce 2 trestního zákona,

neboť na základě doposud zjištěných skutečností je dostatečně odůvodněn závěr,

že obviněný Andrew Weiss a obviněný ing. Vladimír Hoffmann, dne 12.5.2004 v 14.00 hod, v francouzské restauraci v Obecním domě v Praze 1, náměstí Republiky 1090/5, požadovali po managementu společnosti Kotva a. s., IČ 60193808, se sídlem Praha 1, náměstí Republiky 8, zastupovanou ředitelem společnosti Kotva a. s., Richardem Harazimem, narozeným 10.3.1965, trvale bytem Přezletice, U bažantnice 305, okres Praha - východ, a předsedou dozorčí rady společnosti Kotva a. s., Martinem Bendou, narozeným 8.9.1971, trvale bytem Borač 46, okres Žďár nad Sázavou, odkoupení 11,9% akcií základního jmění společnosti Kotva a. s., což je 82.782,-ks akcií, které jsou v majetku společnosti Brookdale Global Opportunity Fund, P. O. BOX 1748, GT 27 Hospital Road, George Town, Grand Cayman, Cayman Islands, které tyto akcie spravuje obviněný Weiss Andrew, prostřednictvím jeho společnosti Weiss Asset Management, 29 Commonwealt Avenue, Boston, Massachusetts 02116, za částku 4.000.000,- amerických dolarů s tím, že pokud nedojde k uvedenému odkoupení akcií, tak obviněný Weiss zajistí zablokování nemovitostí Obchodního domu Kotva, nacházející se na adrese náměstí Republiky 8, Praha 1, prostřednictvím katastru nemovitostí, podáním vykonstruovaných účelových žalob k soudu proti společnosti Kotva a. s., a tím zásadním způsobem naruší Holdingu Kotva jednání s možnými strategickými partnery a finančními institucemi ohledně financování provozu a prodeje Obchodního domu Kotva a omezí tak dispozici s tímto majetkem na několik let, protože je mu známo, že společnost Kotva a. s. má uzavřenou smlouvu na prodej uvedeného Obchodního domu Kotva, od které nemůže odstoupit, a je v časové a finanční tísni, a když hned společnost Kotva a. s. nekoupí jeho akcie, tak příští nabídka bude podstatně vyšší, a v případě, že společnost Kotva a. s. odmítne od něj nakoupit uvedené akcie, tak ještě na představenstvo společnosti Kotva a. s. podá trestní oznámení, tímto způsobem obvinění vydírali uvedenou společnost Kotva a. s. a samotné představenstvo společnosti Kotva a. s. způsobením škody velkého rozsahu, pohrůžkou násilí nebo jiné těžké újmy nucením, aby společnost Kotva a. s. a její představenstvo něco konali, opominuli nebo strpěli, přestože uvedení zástupci společnosti Kotva odmítali provést uvedený nákup akcií s poukazováním na skutečnost, že požadovaná cena za akcie společnosti Kotva je

-3-

nepřiměřeně předražená a navíc společnost Kotva nesmí nakupovat své vlastní akcie,

následně společně obviněný Weiss a obviněný Hoffmann, prostřednictvím společnosti Gilroy Limited a společnosti Balfindor a. s., informovali strategického partnera společnosti Kotva a. s., pana Henryho Prestige, a peněžní ústavy, financující provoz společnosti Kotva a. s., že byly podány žaloby na společnost Kotva a. s., jak je níže uvedeno, čímž zkomplikovali podnikání společnosti Kotva a. s., přičemž vyrozumění strategického partnera a peněžních ústavů bylo za cílem znemožnění prodeje nemovitosti společnosti Kotva a. s., strategickému partnerovi,

následně společně obviněný Hoffmann, jako majitel společnosti Balfindor a. s., obviněná Šimková, jako předseda představenstva společnosti Balfindor a. s., a obviněný Weiss, který obviněnému Hoffmannovi a obviněné Šimkové dal pokyn podat níže uvedenou žalobu, podali v zastoupení advokáta Mgr. Ondřeje Peterky, vedený v seznamu advokátů u České advokátní kanceláře pod číslem 4245, za společnost Balfindor a. s., IČO 27107892, se sídlem Praha 6 Na Kocourkách 29/5, která účelově nakoupila dne 8.6.2004 od obviněného Hoffmanna 1 ks akcií společnosti Kotva a. s., žalobu na určení neplatnosti valné hromady, proti společnosti Kotva a. s., IČO 60193808, k Městskému soudu v Praze, téhož dne 8.6.2004, a současně podali k Katastrálnímu úřadu Praha - město, uvedenou žalobu s návrhem na vyznačení plomby do katastru nemovitostí na pozemky a nemovitosti společnosti Kotva a. s.,

následně společně obviněný Hoffmann, jako majitel společnosti Gilroy Limited, a obviněný Weiss, který dal pokyn obviněnému Hoffmannovi podat níže uvedenou žalobu, podali v zastoupení advokáta Mgr Ondřeje Peterky, za společnost Gilroy Limited, IČO 0090061682, se sídlem Pikioni, 4, Limassol, Kyperská republika, která vlastní část akcií společnosti Kotva a. s, žalobu na určení vlastnického práva k nemovitostem, proti společnosti Kotva a. s., IČO 60193808, proti společnosti Kotva nemovitosti k.s., se sídlem Příkopy 4 Brno, IČO 26229048, proti společnosti SPV KN a. s., se sídlem Příkopy 4 Brno, k Městskému soudu v Praze, dne 30.6.2004, a současně, dne 2.7.2004, podali k Katastrálnímu úřadu Praha - město, uvedenou žalobu s návrhem na vyznačení plomby do katastru nemovitostí na pozemky a nemovitosti společnosti Kotva a. s., společnosti Kotva nemovitosti k.s. a společnosti SPV KN a. s.,

následně společně obviněný ing. Vladimír Hoffmann, narozen 30.10.1965, rodné číslo 651030/6990, trvale bytem Praha 9 Medínská 825, jako majitel části akcií společnosti Kotva a. s., s MUDr. Petrem Streibergem trvale bytem Praha 6 Na Kuthance 16/1218, narozen 18.10.1955, jako majitelem části akcií společnosti Kotva a. s., a s obviněným Weissem, jako majitelem společnosti Weiss Asset Management, adresa společnosti 29 Commonwealth Avenue, Boston, Massachusetts 02116, která spravuje společnost Brookdale Global Opportunity Fund, se sídlem P. O. BOX 1748, GT 27 Hospital Road, George Town, Grand Cayman, Cayman Islands, která vlastní část akcií společnosti Kotva a. s., podali v zastoupení advokáta Mgr. Jiřího Černého v instituci Mgr. Ondřeje Peterky, za společnost Brookdale

-4-

Global Opportunity Fund a osobně za obviněného ing. Vladimíra Hoffmanna a osobně za
MUDr. Petr Streitberga, žalobu na vyslovení neplatnosti valné hromady, konané dne
20.6.2002, proti společnosti Kotva a. s., k Městskému soudu v Praze, dne 15.7.2004, a
současně podali k Katastrálnímu úřadu Praha - město, uvedenou žalobu s návrhem na
vyznačení plomby do katastru nemovitostí na pozemky a nemovitosti společnosti Kotva a. s.,

následně samostatně obviněný Weiss, který ovládá společnost KT, Inc., se sídlem 2711
Centerville Road, Suite 400, City of Wilmington, County of Newcastle, Delaware, USA, která
vlastní část akcií společnosti Kotva a. s., prostřednictvím společnosti Brookdale Global
Opportunity Fund, která rovněž vlastní část akcií společnosti Kotva a. s., podal v zastoupení
advokáta Mgr. Ondřeje Peterky, za společnost KT, Inc., žalobu na určení vlastnického práva k,
nemovitostem, k Městskému soudu v Praze, dne 23.12.2004,a současně podal k Katastrálnímu
úřadu Praha - město, uvedenou žalobu s návrhem na vyznačení plomby do katastru
nemovitostí na pozemky a nemovitosti společnosti Kotva a. s.,

následně všichni tři obvinění, opakovaně, od 12.5.2004 až do současnosti, vydíráním
požadovali odkoupení 11,9 % akcií společnosti Kotva a. s. a 39,73 % akcií, (což je 11098617
akcií) společnosti Trend - všeobecný investiční fond a. s., se sídlem Hradec Králové,
Škroupova 9/441, IČO 45245177, od samotné společnosti Kotva a. s., a zvyšovali svůj
požadavek až na částku 295 000 000,-Kč, že jinak nestáhnou podané žaloby na společnost
Kotva a. s., na společnost Kotva Nemovitosti k.s. a na společnost SPV KN a. s., a způsobí tím
uvedeným společnostem vysoké finanční ztráty, přičemž samotné vydírání probíhalo
podáváním žalob, jak je výše uvedeno, dále prostřednictvím osobního kontaktu obviněných s
zástupci společnosti Kotva a. s., dále prostřednictvím telefonního hovoru, dále prostřednictvím
zasílání faxů a dále prostřednictvím zasílání emailů prostřednictvím počítače zástupcům
společnosti Kotva a. s.,

následně samostatně obviněný Hoffmann, od listopadu 2004 do současnosti, vydíráním
požadoval po společnosti Kotva a. s. zaplacení 45 000 000,-Kč, jako odstupné za stažení žalob
na společnost Kotva a. s. od jeho společností a to od společnosti Gilroy Limited a od
společnosti Balfindor a. s., přičemž donutil společnost Kotva a. s., sepsat s ním předběžnou
smlouvu na uvedené odstupné za stažení výše uvedených žalob od jeho firem, přičemž
samotné vydírání bylo provedeno způsobem podání výše uvedených žalob od firem, které
byly v majetku obviněného Hoffmanna, dále prostřednictvím osobního kontaktu s zástupci
společnosti Kotva a. s., dále prostřednictvím telefonního hovoru, dále prostřednictvím
zasíláním faxů a dále prostřednictvím zasílání emailů prostřednictvím počítače zástupcům
společnosti Kotva a. s.,

tímto svým jednáním se dopustili obvinění, shora uvedeného trestného činu ke škodě těmto
poškozeným :

-5-

pošk. společnost Kotva a. s.,
pošk. společnost Kotva Nemovitosti k.s.,
pošk. společnost SPV KN a. s.,
pošk. Martin Benda narozen 8.9.1971,
pošk. Richard Harazim narozen 10.3.1965.

## Odůvodnění

Dne 27.8.2004 bylo podáno trestní oznámení k Policii České republiky, Správě hlavního města Prahy, službě kriminální policie a vyšetřování, Kongresová 2 Praha 4, od společnosti Kotva a. s., na obviněného Weisse a obviněného Hoffmanna pro shora uvedený trestný čin. Dále bylo provedeno podání vysvětlení od poškozeného Harazima a od poškozeného Bendy. Policie zajistila doklady, které dokladují trestný čin vydírání. Dále policie na základě soudního povolení, prováděla odposlechy telefonních hovorů v této věci. Na základě těchto odposlechů a zajištěných dokladů a trestního oznámení a podání vysvětlení byl dostatečně zadokumentován tento trestný čin. Bylo zjištěno, že je dostatečný důvod k zahájení trestního stíhání podle § 160 odstavce 1 trestného řádu, pro výše uvedený trestný čin a to konkrétním osobám. Proto bylo zahájeno trestní stíhání uvedených obviněných.

**Poučení:**

Jako obviněný musíte mít podle ustanovení §36 odstavce 3 trestního řádu obhájce již v přípravném řízení z důvodu nutné obhajoby, neboť se jedná o trestný čin, na který zákon stanoví trest odnětí svobody, jehož horní hranice převyšuje 5 let. Pokud si sám obhájce nezvolíte a nezvolí Vám jej osoby uvedené v ustanovení § 37 trestního řádu do dvou hodin od doručení tohoto usnesení, bude Vám ustanoven obhájce podle ustanovení § 38 odstavce 1 trestního řádu.

Dále Vás poučuji o tom, že každý obviněný musí mít vlastního obhájce, neboť zájmy jednotlivých obviněných si v tomto trestním řízení odporují.

Dále Vás poučuji o tom, že v této trestní věci budou mimo jiné vyslechnuti jako svědci Mgr. Ondřej Peterka, Mgr. Jiří Černý a Mgr Ladislav Chundela, z advokátní kanceláře Peterka & Partners v.o.s., a dále JUDr. ing. Petr Šrámek, vedený v seznamu advokátů u České advokátní kanceláře pod číslem 5076, a proto si jako obhájce výše uvedené osoby nemůžete zvolit za své obhájce podle ustanovení § 37 trestního řádu.

-6-

Proti tomuto usnesení je přípustná stížnost, kterou může podat obviněný do tří dnů od doručení tohoto usnesení u policejního orgánu, který toto usnesení vyhotovil. Stížnost nemá odkladný účinek.



kpt. ing. Pavel Brož

Policejní komisař :

Obviněný ing. Vladimír Hoffmann    převzal dne          v hod
Obviněný Andrew Weiss              převzal dne          v hod
Obviněná Edita Šimková            převzala dne         v hod

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ANDREW WEISS and WEISS ASSET ) | |
| MANAGEMENT, LLC, ) | |
| ) | |
| Defendants. ) | C.A. No. 05-10679-RCL |
| ) | |
| ANDREW WEISS, WEISS ASSET ) | |
| MANAGEMENT LLC, K T, INC. and CVF ) | |
| INVESTMENTS, LTD., ) | |
| ) | |
| Counterclaim-plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| KOTVA a.s., MARTIN BENDA, RICHARD ) | |
| HARAZIM, FORMINSTER ENTERPRISES, ) | |
| LTD., SPV CO and JOHN DOES 1–5, ) | |
| ) | |
| Counterclaim-defendants. ) | |
| ) | |

## DEFENDANTS' AND COUNTERCLAIM-PLAINTIFFS' INITIAL DISCLOSURES

Pursuant to Federal Rule of Civil Procedure 26(a)(1), defendants Andrew Weiss and

Weiss Asset Management LLC and counterclaim-plaintiffs Andrew Weiss, Weiss Asset

Management LLC, K T, Inc. and CVF Investments Ltd. (collectively, the "Disclosing Parties")

hereby make the following initial disclosures based on the information reasonably available to

them at this time.  The Disclosing Parties reserve the right to supplement this disclosure as new

information is made available to them.

## I.     INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION

The following individuals are likely to have discoverable information that the Disclosing

Parties may use to support their claims or defenses, other than solely for impeachment:

| INDIVIDUAL | SUBJECT MATTER(S) OF KNOWLEDGE |
|---|---|
| Haig Assadourian<br>Bonalbo Group Cyprus | Identity of and relationships among members of the Forminster Group |
| Alain Baudin<br>DUNA S.A.<br>73 Avenue Carnot<br>91600 Savigny sur Orge<br>France | Identity of and relationships among members of the Forminster Group |
| Martin Benda<br>Borač 46<br>Borač ZIP: 592 61<br>Czech Republic | Negotiations relating to the sale of Kotva and Trend shares to the Forminster Group; Trend Tunneling and purported settlement; identity of and relationships among members of the Forminster Group; reasons for use of criminal and civil process against Weiss and Weiss Asset Management LLC; sale of real estate to Markland; movement of real estate through shell companies; efforts to freeze out minority shareholders of Kotva |
| Emil Bušek<br>Příkrá 255/3<br>Praha 4 ZIP: 147 00 | Trend Tunneling and purported settlement |
| Jean-Pierre Coutard<br>DUNA S.A.<br>55 Avenue Marceau<br>751 16 Paris<br>France | Identity of and relationships among members of the Forminster Group |
| Stanislav Devátý<br>Toman, Devátý & Partneři<br>Trojanova 12<br>Prague 2 ZIP: 120 00<br>Czech Republic | Trend Tunneling and purported settlement; identity of and relationships among members of the Forminster Group; efforts to freeze out minority shareholders of Kotva |
| František Fíla<br>High Public Prosecutor's Office in Prague<br>Nám Hrdinů 1300<br>Prague 4 ZIP: 140 65 | Trend Tunneling and purported settlement; identify of and relationships among members of the Forminster Group |

| INDIVIDUAL | SUBJECT MATTER(S) OF KNOWLEDGE |
|---|---|
| Howard Golden<br>Terra Partners<br>7th floor<br>Prague City Center<br>Klimentska 46<br>110 02 Prague 1<br>Czech Republic<br>+420 221 85 3300 | Trend Tunneling and purported settlement; relationships among members of the Forminster Group; investment by CVF in Trend and Kotva; efforts to freeze out minority shareholders of Kotva |
| Richard Harazim<br>U Bažantnice 305<br>Prezletice ZIP: 250 73<br>Czech Republic | Negotiations relating to the sale of Kotva and Trend shares to the Forminster Group; Trend Tunneling and purported settlement; identity of and relationships among members of the Forminster Group; reasons for use of criminal and civil process against Weiss and Weiss Asset Management LLC; sale of real estate to Markland; movement of real estate through shell companies; efforts to freeze out minority shareholders of Kotva |
| Miroslav Hálek<br>Mužíkova 336<br>Hradec Králové<br>Czech Republic | Trend Tunneling and purported settlement; identity of and relationships among members of the Forminster Group |
| Vladimir Hoffmann<br>Anezska 10<br>Praha 1 110 00<br>Czech Republic<br>+420 221 892 350 | Negotiations relating to the sale of Kotva and Trend shares to the Forminster Group; relationship or lack thereof among Hoffmann, Weiss and Weiss Asset Management LLC; efforts to freeze out minority shareholders of Kotva |
| Nicholas Larcos<br>Bonalbo Group Cyprus<br>4th Floor<br>5 Costis Palamas Street<br>PO Box 29000<br>CY-2084 Nicosia<br>Cyprus<br>+ 357 2284 6000 | Identity of and relationships among members of the Forminster Group |
| Markland Holdings Limited<br>19 Fitzwilliam Street Upper<br>Dublin 2<br>Ireland<br>+353 1 676 2023 | Sale of real estate to Markland |

| INDIVIDUAL | SUBJECT MATTER(S) OF KNOWLEDGE |
|---|---|
| Petr Toman<br>Toman, Devátý & Partneři<br>Trojanova 12<br>Prague 2 ZIP: 120 00<br>Czech Republic | Trend Tunneling and purported settlement; identity of and relationships among members of the Forminster Group; efforts to freeze out minority shareholders of Kotva |
| Igor Veleba<br>AK Veleba, Milichovský a spol.<br>Soběšická 151<br>Brno ZIP: 638 00<br>Czech Republic | Trend Tunneling and purported settlement; identity of and relationships among members of the Forminster Group |
| Miroslav Vlastník<br>Orlická 343<br>Hradec Králové<br>Czech Republic | Trend Tunneling and purported settlement; identity of and relationships among members of the Forminster Group |
| Andrew Weiss<br>Weiss Asset Management LLC<br>29 Commonwealth Avenue<br>10th Floor<br>Boston, MA 02116<br>+1 617 778 7780 | Negotiations relating to the sale of Kotva and Trend shares to the Forminster Group; reasons for filing of lawsuits in Czech courts; relationships or lack thereof among Weiss, Weiss Asset Management LLC and Hoffmann; efforts to freeze out minority shareholders of Kotva |
| James Lewis Woolf<br>Mánesova 47<br>Prague 2<br>Czech Republic | Trend Tunneling and purported settlement; identity of and relationships among members of the Forminster Group; efforts to freeze out minority shareholders of Kotva |

## II.  **DOCUMENTS**

The Disclosing Parties have the following categories of documents, data compilations, and tangible things in their possession, custody, or control that the Disclosing Parties may use to support their claims or defenses, unless solely for impeachment:

1.  Documents reflecting internal communications relating to Kotva and Trend, located at 29 Commonwealth Avenue, 10th Floor, Boston, MA 02116;

2.  Documents reflecting communications with the Forminster Group and others, including Valdimir Hoffmann, relating to Kotva and Trend, located at 29 Commonwealth Avenue, 10th Floor, Boston, MA 02116;

3.      Press articles, located at 29 Commonwealth Avenue, 10th Floor, Boston, MA 02116;

4.      Copies of Czech government documents including documents from the Czech Securities Center, located at 29 Commonwealth Avenue, 10th Floor, Boston, MA 02116.

5.      Copies of documents relating to the Trend Tunneling, located at 29 Commonwealth Avenue, 10th Floor, Boston, MA 02116.

6.      Documents relating to the structure of the Forminster Group, located at 29 Commonwealth Avenue, 10th Floor, Boston, MA 02116.

## III.    **DAMAGES**

The Disclosing Parties state that they have suffered the following damages:

*Andrew Weiss*: Andrew Weiss is incurring liability for attorneys' fees and costs, damage to his reputation, disruption of his business and lost time associated with the counterclaim-defendants' abuse of process, conspiracy and unfair and deceptive trade practices. The amount of damages is not presently susceptible to calculation as it continues to increase.

*Weiss Asset Management LLC:* Weiss Asset Management LLC is incurring liability for attorneys' fees and costs, damage to its reputation and disruption of its business associated with the counterclaim-defendants' abuse of process, conspiracy and unfair and deceptive trade practices. The amount of damages is not presently susceptible to calculation as it continues to increase.

*K T, Inc.:* K T, Inc.'s damages are linked to the value of the real estate that the counterclaim-defendants misappropriated for themselves. K T, Inc. estimates the value of the real estate to be at least 65 million USD. K T, Inc. has been damaged in an amount equal to a share of the value of the real estate proportional to its direct and indirect interest in Kotva a.s.

*CVF Investments Ltd.:* CVF Investments Ltd.'s damages are linked to the value of the real estate that the counterclaim-defendants misappropriated for themselves. CVF Investments Ltd. estimates the value of the real estate to be at least 65 million USD. CVF Investments Ltd. has been damaged in an amount equal to a share of the value of the real estate proportional to its direct and indirect interest in Kotva a.s.

## IV.    INSURANCE

The Disclosing Parties state that they have not identified any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Respectfully Submitted,

ANDREW WEISS, WEISS ASSET
MANAGEMENT LLC, K T, INC. and CVF
INVESTMENTS LTD.

By their attorneys,

Edward P. Leibensperger (BBO# 292620)
Benjamin A. Goldberger (BBO# 654357)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts  02109-1775
(617) 535-4000

Dated: August 3, 2005

## CERTIFICATE OF SERVICE

I, Benjamin A. Goldberger, hereby certify that on the 3rd day of August, 2005, a true and correct copy of the foregoing document was served by hand on counsel of record for Kotva a.s.

Benjamin A. Goldberger

BST99 1458578-1.072198.0012

Westlaw.

Not Reported in F.Supp.                                                      Page 1

Not Reported in F.Supp., 1990 WL 149207 (E.D.Pa.), 18 Fed.R.Serv.3d 741
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents

United States District Court, E.D. Pennsylvania.
William F. HUBNER, et al., Plaintiffs,
v.
Lee E. SCHOONMAKER, et al, Defendants.
James R. LATHAM, et al, Counterclaimants,
v.
William F. HUBNER, et al, Counterdefendants.
**CIV. A. No. 89-3400.**

Oct. 2, 1990.

Gary Tilles, Devon, Pa., for defendants counter-claimants.
Joseph A. Whip, Jr., Philadelphia, Pa., for James R. Latham.
Mark S. Halpern, Philadelphia, Pa., Special Master.
Lowell V. Summerhays, Adamson & Summerhays, Salt Lake City, Utah, pro hac vice, John P. Kopesky , Philadelphia, Pa., for James R. Latham & Lee E. Schoonmaker.
Lee E. Schoonmaker, pro se.
Donald B. Caffray, Brian A. Osborne, Long Beach Cal., pro hac vice, for defendants.
Patrick W. Kittredge, Kenneth A. Roos, Philadelphia, Pa., for Banc One Credit Corp.
John P. Kopesky, Hoyle, Morris & Kerr, Philadelphia, Pa., for All Defts Except Banc One.

*MEMORANDUM AND ORDER*

BECHTLE, Chief Judge.
**\*1** Presently before the court are several motions relating to the dismissal of various claims and parties. Among the parties' submissions are motions for joinder and intervention through which non-parties seek to become parties to this action. For the reasons set forth below, the court will not allow these non-parties to assert their interests in the present action. For reasons further set forth below, the court's denial of these motions requires the

dismissal of the pending counterclaim and all of the motions which relate to it.

*FACTS*

The dispute between the parties arises out of the operation of a network of health clubs. Plaintiffs Hubner, Hoppin and Barth are partners in the limited partnerships Allied Investment Co. ("Allied" ) and Fitness Investment Co. ("Fitness"). Plaintiffs' complaint states that Allied and Fitness entered into agreements with defendant Schoonmaker. Pursuant to these agreements, the parties allegedly formed several corporations for the purpose of owning and operating health clubs in Pennsylvania and New Jersey (these corporations, as well as the other corporations established for the purpose of operating health clubs, as described hereinafter, shall be referred to as "operating corporations").

According to the allegations of the complaint, Schoonmaker owned 49% of the shares in each of the Pennsylvania/New Jersey operating corporations, while either Allied or Fitness owned the remaining 51%. The corporations conducted their operations out of Pittsburgh, Pa. through the Pittsburgh Health Club, Inc. operating corporation, and conducted their Eastern Pennsylvania/New Jersey business through the "United" operating corporations. Plaintiffs allege that Schoonmaker was responsible, under the terms of the agreements, for the day-to-day management of the health clubs. Plaintiffs further allege that the operating corporations agreed to pay plaintiffs Health Industries, National Credit Corporation and Fitness Management Corp. certain rental and management fees related to the operation of the health clubs.

Plaintiffs' complaint brings claims stemming from defendant Schoonmaker's alleged mismanagement of the Pennsylvania and New Jersey health clubs. Plaintiffs allege that Schoonmaker caused the operating corporations to breach their agreements

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                  Page 2

Not Reported in F.Supp., 1990 WL 149207 (E.D.Pa.), 18 Fed.R.Serv.3d 741
**(Cite as: Not Reported in F.Supp.)**

with plaintiffs Health Industries, National Credit Corporation and Fitness Management Corporation. Plaintiffs further maintain that Schoonmaker established new corporations that misappropriated the assets of some of the operating corporations. The complaint also brings claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et. seq.,* based on alleged acts of mail and wire fraud committed by the defendants in furtherance of a purported scheme to defraud plaintiffs.

Subsequent to this court's denial of the defendants' motion to dismiss the complaint, the defendants filed a counterclaim. The counterclaim was asserted against the plaintiffs and several additional parties who were not named in the original action. Further, several parties that were not named as defendants in the complaint joined the original defendants as counterclaimants. [FN1]

**\*2** The counterclaim is jumbled and confusing, and is replete with many irrelevant details. The central thrust of the counterclaim, however, remains somewhat clear. The counterclaimants assert that plaintiff Hubner engaged in a nationwide scheme to solicit individuals to invest in his health clubs, but then withdrew his financial support and allowed the health clubs to fail. The counterclaimants also allege that Hubner established the operating corporations for the fraudulent purpose of shielding himself from liability while retaining the right to collect the profits from the corporations.

When pared to its essentials, it would appear that the claims set forth in the counterclaim stem from transactions that occurred in five different geographic areas. The counterclaimants assert claims arising out of transactions that occurred in Eastern Pennsylvania/New Jersey, Arizona, Pittsburgh, California, and Kentucky.

With respect to the Eastern Pennsylvania/New Jersey transactions that are the subject of the complaint, the counterclaim alleges that Hubner and his related entities fraudulently caused one of the New Jersey health clubs to lose its lease on the property where it operated its business. The counterclaimants also allege that Hubner and

additional counterdefendant Banc One unlawfully conspired to withhold financing from the Eastern Pennsylvania health clubs.

The claims stemming from the Arizona transactions relate to dealings between Hubner and additional counterclaimant Latham. The counterclaimants allege that Latham owned 49% of operating corporation Southern Arizona Health Spa Corporation and 33% of Southern Arizona Health Spa Corporation-North. Latham asserts that Hubner broke certain promises regarding Hubner's obligations to the Arizona clubs, and also alleges that Hubner breached a promise to Latham relating to Hubner's obligation to deliver to Latham shares of the Arizona corporation which had been placed in escrow. Latham further maintains that Hubner fraudulently induced Latham to loan the Arizona clubs $20,000 by telling Latham that the Arizona clubs were in poor financial condition when the clubs were, in fact, fiscally sound. Lastly, the counterclaimants maintain that Hubner unlawfully transported various assets belonging to the Arizona corporation from Arizona to Hubner's operations in Michigan.

The counterclaimants also bring actions against the counterdefendants stemming from the affairs of the Pittsburgh operating corporation. According to the allegations of the counterclaim, Hubner owned 51 percent of the Pittsburgh operating corporation, while Latham and Schoonmaker each owned 24.5 percent. The counterclaimants allege that Hubner broke promises regarding the Pittsburgh clubs that were of the same nature as those allegedly made to Latham and the Arizona clubs. Further, the counterclaim states that Hubner unlawfully took control of Latham's stock in the Pittsburgh operating corporation after Latham, without relinquishing his ownership interest, resigned as an employee of the Pittsburgh corporation.

**\*3** Counterclaimant Parker brings claims based on transactions that occurred in California. Parker alleges that he and Hubner were shareholders in Reliable Credit Corporation ("Reliable"), with Parker owning 22% of the corporation and Hubner owning the rest. Reliable Credit Corporation, according to the allegations of the counterclaim,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                           Page 3

Not Reported in F.Supp., 1990 WL 149207 (E.D.Pa.), 18 Fed.R.Serv.3d 741
**(Cite as: Not Reported in F.Supp.)**

was a California corporation established for the purpose of purchasing and collecting health club membership contracts. As can best be discerned from the counterclaim, it appears that Reliable's purpose was to purchase, at a discount, the health clubs' rights to collect unpaid membership dues from health club members. Parker alleges that Hubner "stole" the membership contracts by transferring them to Hubner's operations in Michigan.

According to the counterclaim, the Kentucky operating corporation was a wholly owned subsidiary of the Pittsburgh operating corporation. The counterclaimants allege that Hubner reneged on a commitment to Schoonmaker whereby Hubner promised that he would relinquish the accounts receivable of the Kentucky corporation to Schoonmaker. The counterclaimants also allege that Hubner withheld the income generated by the Kentucky corporation so that the Kentucky corporation was unable to meet its bills as they came due. Hubner's actions allegedly resulted in the closure of the only health club owned by the Kentucky corporation.

Each of the counterclaimants brings claims under RICO. In support of their RICO claim, the counterclaimants allege that the counterdefendants, in furtherance of the acts set forth above, committed mail and wire fraud, extortion, and interstate transportation of stolen property. In addition, the counterclaimants assert state law claims against the counterdefendants based on fraud, conversion, and breach of fiduciary duty.

Schoonmaker, Latham, and Parker bring the actions set forth in the counterclaim in an individual capacity and also sue derivatively on behalf of the corporations in which they held an interest. Schoonmaker sues derivatively on behalf of United Health Clubs, Inc.-Management; United Health Clubs, Inc. of Reading; United Health Clubs Inc. of New Jersey; United Health Clubs, Inc.-City Line; Pittsburgh Health Clubs, Inc.; and Kentucky Health Spas, Inc. Latham sues derivatively on behalf of Southern Arizona Health Spa Corporation; Southern Arizona Health Spa Corporation-North; Pittsburgh Health Clubs, Inc.; and Kentucky

Health Spas, Inc. Parker appears to be suing derivatively on behalf of Reliable Credit Corporation. [FN2] Neither Parker nor Latham was named in the complaint. The corporations that were not named in the complaint are the "Management" and "City Line" United corporations, the Kentucky corporation, the Arizona corporations, and Reliable Credit Corporation.

The additional counterclaimants, [FN3] initially attempted to gain entrance into this lawsuit simply by including their names in the caption of the counterclaim and setting forth their assertions therein. In response, the plaintiffs filed a motion seeking dismissal of the counterclaim because it was asserted, in part, by non-parties who had not properly intervened.

*4 The additional counterclaimants responded to plaintiff's motion in several ways. First, the additional counterclaimants argue that "leave of court" is not required in order to assert a counterclaim under F.R.C.P. 13(h), so that the additional counterclaimants should be permitted to become parties to this action without resorting to any motion. Prepared for the possibility of the court's rejection of this contention, however, and in further effort to gain the right to assert their claims in this action, the additional counterclaimants filed a motion for "joinder of additional parties," relying on the reference in Rule 13(h) to permissive joinder under Rule 20. Lastly, while steadfastly denying in the motion for joinder that intervention is the proper means for their entrance into this lawsuit, the additional counterclaimants, nonetheless, also filed a motion for intervention pursuant to Rule 24. The plaintiffs have contested each of the additional counterclaimants' efforts to infuse their interests into this lawsuit.

The court agrees with the counterdefendants' position that the additional counterclaimants have not presented sufficient grounds to permit the additional counterclaimants' entrance into this lawsuit. Accordingly, the court will deny the additional counterclaimants' motions for intervention and joinder.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                Page 4

Not Reported in F.Supp., 1990 WL 149207 (E.D.Pa.), 18 Fed.R.Serv.3d 741
**(Cite as: Not Reported in F.Supp.)**

*DISCUSSION*

The additional counterclaimants' argument with respect to Rule 13 can be easily discarded. Rule 13 governs counterclaims. A counterclaim is "any claim ... which one *party* has against an opposing party.... Rule 13 is not limited in application to original parties, but is applicable to all *parties,* those original and those brought in or who intervene. " 3A *Moore's Federal Practice,* ¶ 13.02 (1987) (emphasis added). Rule 13 permits the use of counterclaims, but entity can take advantage of its provisions only after it has been admitted into the dispute. Rule 13 is not the vehicle by which such admission takes place. *See Cowan v. Tipton et al.,* 1 F.R.D. 694 (E.D.Tenn.1941) (non-parties must be made parties before they can assert Rule 13 crossclaims).

Rule 13(h) states that "[p]ersons other than those made parties to the original action may be made parties to a counterclaim or cross-claim in accordance with the provisions of Rules 19 and 20." This rule generally concerns parties *against* whom counterclaims may be brought, and should not be contorted to operate as a means by which one can seek entrance into an existing action. Any other holding would render superfluous the standards for admission of non-parties as set forth by the intervention provisions of Rule 24. If an existing party is seeking to bring in an outsider the court should apply the joinder provisions of Rules 19 and 20; if the outsider is seeking to enter the suit of his own accord, the court should apply the intervention provisions set forth in Rule 24. *See New York State Association For Retarded Children, Inc. v. Carey,* 438 F.Supp. 440 (E.D.N.Y.1977) ("the only difference between intervention of right under Rule 24(a)(2) and joinder under Rule 19(a)(2)(i) is which party initiates the addition of a new party to the case. "). Accordingly, the additional counterclaimants' motion for "joinder" pursuant to Rule 13 is inappropriate and must be denied. [FN4]

*5 The court now turns to whether the additional counterclaimants have presented sufficient grounds to support their motion for intervention under Rule 24. Parker and Latham have sought both intervention as of right pursuant to Rule 24(a)(2),

and permissive intervention pursuant to Rule 24(b)(2).

Rule 24(a)(2) allows for intervention as of right when:

the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

F.R.C.P. 24(a)(2). Parker and Latham set forth two grounds which purportedly support the position that their interests will be significantly impaired if they are not permitted to become parties to this action. First, Parker and Latham contend that a judgment in the main action could collaterally estop the additional counterclaimants from asserting their claims in a subsequent proceeding. Second, Parker and Latham allege that their interests will be impaired because defendant Hubner has commingled the funds to which the additional counterclaimants claim an entitlement. [FN5] Neither of these contentions can support Parker or Latham's motion for intervention under Rule 24(a)(2).

In order for a prior action to operate as a bar to subsequent litigation, it must be shown that the parties to the subsequent action are either identical to, or "in privity" with, the parties to the prior action. 18 Wright and Miller, *Federal Practice and Procedure,* § 4448; *Society Hill Civic Assoc., et al. v. Harris, et al.,* 632 F.2d 1045 (3rd Cir.1980) ; *Aerojet General Corp. v. Askew,* 511 F.2d 710 (5th Cir.1975), *cert. denied,* 423 U.S. 908, 96 S.Ct. 210 ("[A] person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative.")

It cannot be said that Schoonmaker is the "virtual representative" of Parker. Absolutely no legal relationship exists between them; the only commonality alleged is that they seek recovery from the same defendant. Accordingly, a judgment in the main action would have no *res judicata* effect

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 5

Not Reported in F.Supp., 1990 WL 149207 (E.D.Pa.), 18 Fed.R.Serv.3d 741
**(Cite as: Not Reported in F.Supp.)**

on any claims subsequently brought by Parker. The same analysis applies to Latham's claims arising out of the Arizona transactions. [FN6] No relationship exists between Schoonmaker and Latham with respect to the Arizona transactions that are now the subject of Latham's claims, so that a judgment in the main proceeding cannot act as a bar to any of Latham's Arizona claims.

The scant allegations of commingling of funds also cannot support a finding of impairment of Parker or Latham's interests. Under the terms of Rule 24(a)(2), a movant must demonstrate an interest in the property or transaction that is the subject of the main claim before intervention as of right will be permitted. The counterclaim alleges only that funds belonging to the United operating corporations may have been commingled with funds belonging to the Pittsburgh operating corporations. United and Pittsburgh are both original defendants in this action. Parker has not alleged an interest in the assets of either United or Pittsburgh. Parker can not assert an interest in the property that is the subject matter of the main action based on commingling of funds when the only commingling that allegedly took place was of funds purportedly belonging to original defendants. For the same reason, Latham cannot successfully claim that the alleged commingling has caused an impairment of any rights arising out of his interests in the Arizona corporations. [FN7] For the foregoing reasons, Parker's motion for intervention as of right will be denied, as will Latham's to the extent that it arises out of the Arizona transactions.

**\*6** Rule 24(b)(2) allows for permissive intervention when "an applicant's claim or defense and the main action have a question of law or fact in common." Resolution of the question of whether to allow permissive intervention under Rule 24(b) "is wholly discretionary with the district court even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied." *Bush v. Viterna,* 740 F.2d 350, 359 (5th Cir.1984). In exercising its discretion, the court declines to allow Parker or Latham to permissively intervene in this action.

Parker and Latham seek to enter this action solely

for the purpose of asserting their counterclaims. An attempt by an intervenor to seek affirmative relief can operate as grounds for denial of the motion for permissive intervention. It has been noted that:

[T]he desire of the petitioner to present a counterclaim or to add new parties may be one reason for denying intervention if the right to intervene is only discretionary. The fact that the intervenor's "position is essentially aggressive" ... may be one reason for denying intervention. The addition of new issues and new parties under certain circumstances may be considered contrary to orderly procedure.

[T]he court may properly deny or limit permissive intervention where it feels that the interposition of counterclaims not related to the matters at issue between the plaintiff and the defendant would unduly delay or complicate the determination of those issues.

3A *Moore's Federal Practice,* ¶ 24.17 (1987) (citations and footnotes omitted). There can be no doubt that Parker's position is "essentially aggressive." He seeks to assert completely new claims against the plaintiffs and seeks to draw new parties into the dispute. The same can be said of Latham's efforts to have his Arizona claims heard in this action. Infusion of the California and Arizona transactions into this dispute would significantly broaden the scope of the original action by requiring the presentation of claims that involve a myriad of additional factual and legal issues that bear only a remote relationship to the dispute between the original plaintiffs and defendants. The court finds that allowing the presentation in this action of all of Parker's claims and Latham's Arizona claims would be "contrary to orderly procedure." [FN8]

As to Latham's Pittsburgh claims, the counterclaim alleges that Latham, Schoonmaker, and plaintiff Hubner were the only shareholders of the Pittsburgh operating corporation. It could be argued that this fact demonstrates a stronger connection between

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 6

Not Reported in F.Supp., 1990 WL 149207 (E.D.Pa.), 18 Fed.R.Serv.3d 741
**(Cite as: Not Reported in F.Supp.)**

Latham's Pittsburgh claims and the main action than that presented by Latham's Arizona claims and the main action, so that intervention should be granted as to Latham's Pittsburgh claims. [FN9] Despite their possible similarities to the main action, however, Latham's Pittsburgh claims must also be precluded from this lawsuit at this time.

With respect to Latham's efforts to intervene for the purpose of asserting derivative claims on behalf of the Pittsburgh and Kentucky operating corporations, [FN10] Latham ignores the fact that Schoonmaker, an original defendant and also a shareholder of the Pittsburgh and Kentucky corporations, has asserted these same derivative claims. Because derivative recoveries belong to the corporation on whose behalf the individual sues, Latham's efforts to intervene in a derivative capacity on behalf of the Pittsburgh and Kentucky operating corporations is superfluous in light of Schoonmaker's ability to protect those same corporate interests. *Martin v. Kavlar Corporation, et al.,* 411 F.2d 552 (5th Cir.1969) (non-party stockholder intervention improper in derivative action absent showing of inadequate representation by party stockholder), cited with approval in *Delaware Valley Citizens' Council v. Commonwealth,* 674 F.2d 970 (3rd Cir.1982).

**\*7** The court will also preclude Latham from intervening for the purpose of asserting his individual, as opposed to derivative, Pittsburgh claims. The court's rationale for this holding is based on a procedural principle that actually could have also been applied to deny intervention for each of the other claims that have already been addressed.

Simply put, the court refuses to allow parties to intervene solely for the purpose of asserting a counterclaim. Rule 24 was not designed to allow a party to interject its affirmative interests into a lawsuit through use of a counterclaim. Rather, the Rule allows a non-party who wishes to align himself with a defendant to contest a plaintiff's right to recovery by intervening *as a defendant.* The additional counterclaimants, however, have made no attempt to intervene as defendants. They have not claimed a potential liability to the plaintiffs. Rule 24 will allow a non-party to intervene either as

a plaintiff or as a defendant; the additional parties to this lawsuit have not met the requirements of Rule 24 because they seek to intervene only as counterclaimants.

Significantly, Rule 24(c) requires a party seeking intervention to submit a motion that is " accompanied by a *pleading* setting forth the claim or defense for which intervention is sought." Rule 24(c) (emphasis added). Under the terms of Rules 7 and 13, a counterclaim is not a pleading in and of itself, but, rather, must be asserted as part of an answer or other responsive pleading. Accordingly, it can be deduced that a party cannot intervene solely as a counterclaimant because that party will be unable to submit a proposed pleading to the court, and will therefore be unable to comply with the terms of Rule 24(c). [FN11]

The fact that the additional parties seek to intervene solely as counterclaimants presents additional support for the denial of intervention as stated previously in the court's discussion of Parker's claims, Latham's Arizona claims, and Latham's derivative Pittsburgh claims. The court denies intervention as to Latham's individual Pittsburgh claims solely on the ground that Latham seeks intervention only as a counterclaimant. The court does not hold, however, that there are no circumstances under which Latham's Pittsburgh claims could be asserted in this action. If Latham so chooses, he is free to bring his Pittsburgh claims in a court of competent jurisdiction and venue and then seek to consolidate that action with the one now before this court. The court will not comment at this time on whether Latham's Pittsburgh claims and the main action are of sufficient similarity so as to permit consolidation.

## CONCLUSION

Neither Parker nor Latham will be permitted to become a party to this lawsuit in any capacity. Accordingly, the motions for "joinder" and intervention will be denied.

It is not entirely clear which claims in the counterclaim are being asserted by Schoonmaker

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 7

Not Reported in F.Supp., 1990 WL 149207 (E.D.Pa.), 18 Fed.R.Serv.3d 741
**(Cite as: Not Reported in F.Supp.)**

alone, which claims are being asserted by Latham alone, and which claims are being asserted by Schoonmaker and Latham together. The court finds that the interests of clarity and caution are best served by requiring Schoonmaker to file an amended counterclaim which does not assert Parker or Latham's individual or derivative claims. The counterclaim, therefore, will be dismissed in its entirety. The court will grant Schoonmaker leave to file an amended counterclaim. [FN12] All of the motions that relate to the counterclaim that are pending in this action will be dismissed as moot in light of the court's dismissal of the counterclaim.

**\*8** The court notes the authority of the special master to control discovery in this case. The court anticipates that the decision issued today will not result in the significant delay of any discovery matters. The parties shall continue to abide by the special master's decisions regarding discovery issues.

An appropriate order will be entered.

### ORDER

AND NOW, to wit, this 2nd of October, 1990, upon consideration of counterdefendants' motion for dismissal of the counterclaim because it is asserted, in part, by non-parties, and upon consideration of counterclaimants motions for joinder and intervention, IT IS ORDERED that:

1. Counterdefendants' motion for dismissal of the counterclaim because it is asserted in part, by non-parties, is *granted.* An amended counterclaim, the content of which must be in accordance with the Memorandum issued today, may be filed within 20 days of the date of this Order. Any objections to the amended counterclaim will be due 15 days after the filing of the amended counterclaim. A response to those objections, should any objections arise, will be due 15 days after the filing of the motion raising the objections. Any reply will be due 10 days after the filing of the response.

2. Counterclaimants' motions for joinder and intervention are *denied.*

3. The following motions are *dismissed as moot:*

a) Counterdefendants' (Except Banc One) motion to dismiss the counterclaim for failure to state a claim upon which relief can be granted;

b) Counterdefendant Banc One's motion to dismiss the counterclaim for failure to state a claim upon which relief can be granted;

c) Reliable Credit Corporations' motion for dismissal of the counterclaim for lack of jurisdiction and joinder of counterdefendants (except Banc One);

d) Plaintiffs' motion to strike various documents that were submitted by the counterclaimants in opposition to counterdefendants' motions to dismiss; and

e) Counterdefendants' motion to strike portions of the counterclaim for impertinence, irrelevance, and immateriality.

FN1. The issue of whether those counterclaimants not named as original defendants have the right to become parties to this action is discussed *infra.* For purposes of clarity, references in this Memorandum to "plaintiffs" and "defendants" shall mean those entities which were named in the complaint; "counterclaimants" and "counterdefendants" shall mean those entities which were named in the counterclaim; and "additional counterclaimants" and "additional counterdefendants" shall mean those parties that were named in the counterclaim but not the complaint.

FN2. The question of whether Parker is suing derivatively remains unclear. Reliable Credit Corporation is not listed as a counterclaimant, yet paragraph seven of the Counterclaim states that Counterclaimant Parker is bringing his claims derivatively on behalf of Reliable Credit Corporation. The question of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                 Page 8

Not Reported in F.Supp., 1990 WL 149207 (E.D.Pa.), 18 Fed.R.Serv.3d 741
**(Cite as: Not Reported in F.Supp.)**

whether Parker has pleaded claims against Reliable or whether he is suing on their behalf, however, is moot, because, for the reasons explained more fully below, the court will not allow claims arising out of the California transactions to be asserted in this lawsuit.

FN3. The additional counterclaimants, i.e. those counterclaimants who were not named in plaintiffs' complaint, are Parker and Latham in their individual and derivative capacities. Those corporations for whom Schoonmaker sues derivatively that were not named in plaintiffs' complaint cannot be considered additional parties to the counterclaim, in that the " Schoonmaker corporations" themselves were not actually named as counterclaimants. This Memorandum addresses only the issue of whether the *additional* parties, namely, Parker and Latham, may assert any of their interests in this proceeding. Obviously, Schoonmaker, named as a defendant in the complaint in an individual capacity, can not be precluded from asserting those counterclaims which would entitle him to individual recovery. It should be noted, however, that nothing in this Memorandum should be construed as a comment on whether Schoonmaker, sued individually, may assert counterclaims in a derivative capacity.

FN4. The motion to which the court refers was actually titled by the additional counterclaimants as one for "Joinder of Additional Parties Pursuant to F.R.C.P. 21. " Rule 21 deals with misjoinder of parties, and in no way operates as a means by which a party can be brought into a lawsuit. The court would have thought this title was simply a typographical error were it not for the fact that the additional counterclaimants, in several other pleadings, refer to this motion as one for joinder under Rule 21. Mistakenly titled or not, the motion will be denied.

FN5. The Additional Counterclaimants set forth these grounds in very conclusory fashion, and present no authority for either the proposition that the main action could act as a bar to a subsequent proceeding or for the position that commingling of funds must compel the court to allow intervention as of right.

FN6. Latham's claims arising out of the Pittsburgh transactions are discussed *infra*.

FN7. The court notes that the Additional Counterclaimants' right to Rule 24(a)(2) intervention would remain questionable even if the Additional Counterclaimants had alleged commingling of their own property. It may be that the additional counterclaimants could only claim a significant impairment of their interests if they could show that the fund into which their money had been commingled was insufficient to satisfy the judgments that could be subsequently obtained by the Additional Counterclaimants. The additional counterclaimants have not made any such allegation. The allegations of the counterclaim set forth facts that are different from those presented by cases which have allowed intervention on grounds that the intervenors asserted a claim to the *same funds* that were the subject of the original action. *See* 7C Wright, Miller, and Kane, *Federal Practice and Procedure,* § 1908, n. 28, and cases cited therein.

FN8. The court recognizes that Latham and Parker have alleged that the transactions that took place in each of the geographic areas at issue are part of a common RICO scheme. This allegation, however, will not allow Latham and Parker to completely alter the tenor of this proceeding through intervention. Should Latham and Parker so desire, they may initiate other proceedings and then move to have the separate actions combined through whatever means may be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1990 WL 149207 (E.D.Pa.), 18 Fed.R.Serv.3d 741
**(Cite as: Not Reported in F.Supp.)**

appropriate.

FN9. Latham's Pittsburgh claims were previously asserted as counterclaims in the United States District Court for the Western District of Pennsylvania in the case of *Pittsburgh Health Clubs v. Latham,* Docket No. 84-1191. On August 30, 1990, the Western District dismissed Latham's claims without prejudice.

FN10. Latham has not presented a claim for individual recovery arising out his position as a shareholder of the Kentucky operating corporation.

FN11. The court recognizes that there are cases that may have taken a view that differs from the court's with respect to the assertion of counterclaims by intervenors. *See* 7C Wright, Miller and Kane, *Federal Practice and Procedure,* § 1921, and cases cited therein. The court disagrees with these cases to the extent that they hold that a party may intervene solely for the purpose of asserting a counterclaim.

FN12. The court directs Schoonmaker's attention to those objections contained in the counterdefendants' motion to dismiss the counterclaim, so that any of the objections to the counterclaim raised therein, if meritorious, can be remedied in Schoonmaker's amended counterclaim. The counterdefendants are, of course, free to object to any unremedied deficiency in the amended counterclaim, and may challenge any new defect which may be presented.

E.D.Pa.,1990.
Hubner v. Schoonmaker
Not Reported in F.Supp., 1990 WL 149207 (E.D.Pa.), 18 Fed.R.Serv.3d 741

Briefs and Other Related Documents (Back to top)

• 2:89cv03400 (Docket) (May. 05, 1989)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.