UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
KOTVA a.s.                              )
                                        )
                Plaintiff,              )          Case No. 05-10679-RCL
                                        )
        v.                              )
                                        )
ANDREW WEISS and WEISS ASSET            )
MANAGEMENT, LLC                         )
                                        )
                Defendants.             )
_____)

## MEMORANDUM IN SUPPORT OF KOTVA'S MOTION TO COMPEL

### INTRODUCTION

Plaintiff Kotva a.s. ("Kotva") hereby moves to compel Defendants Andrew Weiss and Weiss Asset Management, LLC ("WAM") (collectively, the "Weiss Defendants" or "Weiss") to produce further documents in response to Kotva's First Set of Document Requests. Kotva brought this action as a result of the Weiss Defendants' scheme to blackmail Kotva. The Weiss Defendants have refused to produce several categories of documents that are central to Kotva's claims and seek to shield many other documents on dubious claims of privilege. In short:

- Weiss failed to log all documents withheld on privilege grounds as required by Fed. R. Civ. P. 26(b)(5) and the Special Master's previous Order;

- The privilege log provided by Weiss is so deficient that it is impossible to assess the applicability of the claimed privilege or protection, including, for example, 220 entries for which Weiss asserts the attorney/client privilege, but fails to list any attorney as an author or recipient;

- Weiss produced redacted documents, but failed to produce a confidentiality log of the redactions and move for a protective order as required by the Special Master's previous Order;

- Weiss improperly withheld as privileged documents that he has given to The Boston Globe, The New York Times, The Wall Street Journal, and the U.S. State Department;

- The Weiss defendants refused to produce documents identifying their investors and all communications with investors, thereby preventing Kotva from securing legitimate third party discovery;

- Weiss has failed to produce broad categories of documents concerning Kotva's RICO claim.

As demonstrated below, the motion to compel should be granted, and Kotva should be awarded its attorneys fees and costs in connection with this motion.

### DISCOVERY CONFERENCES

***Kotva's Document Requests and Defendants' Response***

Kotva served the Weiss Defendants with its First Request for Production of Documents on December 21, 2005. The Weiss Defendants served objections and written responses on January 27, 2006 and, after requesting an extension, produced documents in stages between February 10 and February 24, 2006. On February 24, 2006, the Weiss Defendants provided a privilege log. (Copies of the document requests and responses are attached hereto as Exhibit A).

By letter dated February 17, 2006, Kotva informed counsel for the Weiss Defendants of several deficiencies in the document production received as of that date. In particular, Kotva noted that the Weiss Defendants had made redactions throughout the production without providing a confidentiality log or seeking a protective order as required by the Special Master's January 6, 2006 Order. Further, many documents were missing pages and/or attachments. Kotva also expressed concern that the production thus far was substantively incomplete, generally comprising multiple copies of the same documents and press reports.

After receiving the bulk of the remaining document production the following week, Kotva identified numerous discovery deficiencies in the Weiss Defendants' written responses and document production.  By letter dated February 24, 2006, Kotva again noted that the Weiss Defendants had not provided a confidentiality log or moved for a protective order with respect to redactions made throughout the production.  Kotva also itemized responses in which the Weiss Defendants either refused to produce documents or failed to produce documents.  (A copy of the February 24, 2006 deficiency letter is attached hereto as Exhibit B.)

In addition, Kotva objected to the manner in which the documents had been produced and requested that the Weiss Defendants produce the documents as they were kept in the ordinary course of business.  For example, attachments to many documents were either not produced or were separated from their referencing documents by thousands of pages.  Other documents, meanwhile, appeared to have been broken apart and reshuffled into the production stream randomly among other documents.  Because of these deficiencies, Kotva requested a Local Rule 37.1 discovery conference.

### Local Rule 37.1 Conferences

On March 6, 2006, Joel Beckman and Daniel Pasquarello, representing Kotva, and Edward Liebensperger and Benjamin Goldberger, representing the Weiss Defendants convened a telephone conference call for approximately one hour from 3:00 p.m. to 4:00 p.m.  Using the February 24, 2006 deficiency letter as an agenda, counsel discussed each of the topics in order.  The conference was continued among the same parties by telephone conference call on March 9, 2006 for approximately one half hour from 3:30 p.m. to 4:00 p.m.  On March 15, 2006, Messrs. Pasquarello and Goldberger conferred by

telephone for approximately 5 minutes at 4:45 p.m. regarding the Weiss Defendants'
privilege log.  On March 30, 2006, Messrs. Beckman and Pasquarello and Messrs.
Goldberg and Jaffe conferred by telephone for approximately 20 minutes from 2:00 to
2:20 p.m.

### Privilege Log Issues

Counsel for Kotva objected that the privilege log the Weiss Defendants produced
on February 24, 2006 did not identify any attorneys and did not provide sufficient
information to enable Kotva to assess the privilege claims.  (A copy of the Weiss
Defendants' Privilege Log is attached hereto as Ex. C.)  Counsel for Kotva further noted
that the privilege assertions appeared to be overbroad, and requested counsel for the
Weiss Defendants to supplement the descriptions for the privilege claims.  Counsel for
the Weiss Defendants refused to supplement the descriptions or to supplement the
privilege log in any way other than agreeing to provide a list of attorneys who appear in
the log.[1]

Kotva also discovered during the March 6th conference call that the privilege log
was incomplete.  Indeed, counsel for the Weiss Defendants admitted that they did not log
communications relating to the Czech litigations after an unspecified point in time and
conceded there were otherwise responsive communications between Weiss and
Hoffmann that they neither logged nor produced.  Counsel for Kotva requested that all
documents withheld on privilege grounds other than for the instant litigation should at
least be logged, if not produced.  Counsel for the Weiss Defendants refused to
supplement the privilege log to identify those communications.

---

[1]  Mr. Goldberger subsequently provided an e-mail list of the attorney names who appear in the log.
(Attached hereto as Ex. D)

**<u>Redactions</u>**

Despite numerous redactions that appear in the Weiss Defendants' document production, the Weiss Defendants maintain that they do not need to log the redacted material or seek a protective order in accordance with the Special Master's January 6, 2006 Order.  Rather, Weiss' counsel represented that the redactions related only to "irrelevant" material in otherwise responsive documents.  Counsel for the Weiss Defendants, however, refused to produce a log of the redacted documents so that counsel for Kotva could assess the grounds for withholding the redacted material.

**<u>Manner of Production</u>**

Counsel for Kotva objected to the general manner of production by the Weiss Defendants, including:  attachments to many documents that were either not produced or were produced thousands of pages apart from the documents to which they were supposed to be attached; responsive documents that were referenced in the document production that had not been produced; documents that had been broken apart and produced piecemeal throughout the production.  Counsel for the Weiss Defendants also admitted that the Weiss Defendants' computer system had not been checked for responsive documents, such as correspondence to Jan Veverka, and agreed to search again for documents.  Counsel for Kotva requested that the documents be re-produced as they were kept in the regular course of business or be allowed to inspect the originals. Counsel for the Weiss Defendants have since produced the entire document production in a radically different order.[2]

---

[2] Kotva is in the process of reviewing the 10,000 pages plus of re-produced documents to determine if they were produced as kept in the ordinary course of business.

**Specific Document Requests**

The specific document requests discussed during the Rule 37.1 conferences are as follows:

Counsel for the Weiss Defendants have refused to produce any documents in response to Requests 55 to 61.

With respect to Requests 3, 7, 51, and 52, counsel for the Weiss Defendants agreed to reconsider their objections and limitations and supplement accordingly.

With respect to Request 4, seeking documents identifying BGO's investors, counsel for the Weiss Defendants objected to producing information about non "ring-fenced" investors and produced only one document that listed large institutional investors. The Weiss Defendants since have produced one additional document with the same information.

With respect to requests 11 and 18, regarding documents concerning Gilroy, and Weiss's authorizations to Czech Republic lawyers to file lawsuits, counsel for the Weiss Defendants allege that all non-privileged documents have been produced.

With respect to request 24, counsel for the Weiss Defendants have refused to produce any documents other than invoices from Hoffmann.

Counsel for the Weiss Defendants confirmed that there are no documents responsive to request 32.

With respect to request 35, counsel for the Weiss Defendants is confirming whether there are additional documents regarding Kotva shareholder votes.

With respect to request 38, despite agreeing to do so, the Weiss Defendants have not produced all requested meeting minutes.

With respect to request 44, counsel for the Weiss Defendants represents that all non-privileged documents concerning Defendants' "looting" allegations have been produced.

With respect to request 62, the Weiss Defendants have refused to produce communications with the U.S. State Department and claim that work product protection extends to communications that have been voluntarily disclosed to the State Department on their behalf.

In view of the Weiss Defendants' deficient production, Kotva also asked for confirmation that all documents responsive to Request Nos. 11-14, 22-23, 25, 34, 47-50, and 54 have been produced. The Weiss Defendants refused to do so.

## ARGUMENT

### I.    The Weiss Defendants Have Wrongfully Withheld Responsive Documents As Privileged

The party resisting production on the basis of privilege has the burden of establishing the existence of the asserted privilege and the burden to show that the privilege has not been waived. In re Raytheon Sec. Litig., 218 F.R.D. 354, 357 (D. Mass. 2003) citing United States v. Wilson, 798 F.2d 509, 512-513 (1st Cir. 1986); In re Lernout & Hauspie Sec. Litig., 222 F.R.D. 29, 36 (D. Mass. 2004). When withholding documents on the basis of privilege, the party must state the claim expressly and provide a log that will enable other parties to assess the applicability of the claimed privilege or protection. Fed. R. Civ. P. 26(b)(5). Failure to provide an adequate privilege log may be deemed a waiver of the claimed privilege. Id., Advisory Committee Notes, 1993 Amendments; see also State of Maine v. United States Dep't of Interior, 298 F.3d 60 (1st Cir. 2002) (in FOIA context, privilege index that failed to identify litigation for which

documents were created held to be insufficiently detailed to assert privilege); In re Grand

Jury Subpoena, 274 F.3d 563, 575-77 (1st Cir. 2001) (affirming waiver of underlying

attorney-client and work product privileges for failure to produce a privilege log pursuant

to Fed. R. Civ. P. 45(d)(2)).[3]

Contrary to Rule 26(b)(5), the Weiss Defendants' privilege log fails to provide

information sufficient to enable Kotva to assess the asserted privilege. Weiss' privilege

log is woefully deficient for the following reasons:

- By Weiss' own admission, the privilege log is incomplete. The log produced to Kotva fails to list all documents withheld on privilege grounds, including communications between Weiss and Vladimir Hoffmann that lie at the heart of this case;

- The log fails to identify attorneys or non-attorneys and does not indicate which individuals or parties are represented by which attorneys;

- The log provides descriptions so general that it is impossible to determine who created the alleged work product, what the alleged work product was created for, or when it was created.

As demonstrated below, because the Weiss Defendants have wrongfully withheld

documents as privileged, and failed to satisfy their burden to show the existence of a

privilege, they have waived their privilege claims, and the documents should be

produced.

**A. The Weiss Defendants Have Refused to Log All Relevant and Responsive Documents They Claim to be Privileged, Including Communications Between Weiss and Hoffmann That Likely Go to the Heart of Weiss's Blackmail of Kotva.**

Both Rule 26(b)(5) and the Special Master's January 6, 2006 Order require that

that the parties identify and log documents withheld on the basis of privilege. Weiss'

---

[3] Rule 26(b)(5) and Rule 45(d)(2) are parallel provisions that apply to discovery and subpoenas, respectively.

counsel admitted during the Rule 37.1 conferences that they have not logged all documents they have withheld as privileged.[4]  Kotva asked Weiss to supplement the log and identify all documents withheld as required by the Special Master's Order, but Weiss refused to do so.  Weiss claims that it is too burdensome to log all of the documents.  Instead, Weiss apparently wants Kotva, the Special Master, and the Court to accept on blind faith that the assertions of privilege are proper.

Specifically, Weiss has not logged all documents concerning the Gilroy and KT lawsuits, including documents concerning communications between Weiss and Vladimir Hoffmann, which may be central to Kotva's claims.[5]  Without any log identifying the documents, the attorneys allegedly involved, the authors and recipients, a description of the documents, or even the privilege asserted, it is impossible to assess whether the Weiss' bald assertions of privilege are legitimate, or whether the document should be produced.  By failing to log these documents, Weiss has waived any privilege, and he

---

[4]  In January 2006, Weiss was insisting that Kotva log all communications with its litigation counsel, Nystrom Beckman & Paris.  To facilitate the discovery process, the parties agreed at the last hearing before the Special Master that they need not include on their privilege logs documents between the respective parties and their counsel in the *instant* litigation.  For example, the Weiss Defendants do not need to log their communications with McDermott Will & Emery for the purposes of this litigation, and Kotva need not log its communications with Nystrom Beckman & Paris.  Weiss has taken the liberty of extending this agreement to documents concerning the Czech litigations to which Weiss is not even a party - - documents that lie at the heart of Kotva's blackmail claims against Weiss.

[5]  As described in detail in Kotva's Complaint, Weiss blackmailed Kotva after he learned through the press that Kotva planned to sell its shopping center.  When Kotva refused Weiss' demand that it "repurchase" BGO's shares in Kotva, Gilroy Limited ("Gilroy") and KT, Inc. ("KT") purchased nominal shares of Kotva's stock and filed lawsuits in the Czech Republic, challenging the transfer of the Department Store from Kotva to its subsidiary, which had occurred years before in 2002, solely for the improper purpose of interfering with the sale of the shopping center.  After the sham lawsuits were filed, Weiss made ever increasing demands on Kotva to purchase BGO's shares, and promised that he would "attempt to influence" Gilroy and KT to drop the suits if his price demands were met.  In all of his communications to Kotva, however, Weiss denied any connection with Gilroy or KT.  After Weiss and Vladimir Hoffmann were criminally charged with extortion by the Czech police, Weiss reversed course and took a completely contradictory position, asserting the Czech lawsuits were filed to protect the interests of BGO and its investors.  Weiss has since protested to his investors, the press, and the U.S. State Department that he is being wrongfully prosecuted for extortion because he was simply seeking relief in the courts.  As described herein, Kotva is entitled to discovery concerning the representations or admissions made by Weiss to third parties, particularly in view of his often contradictory positions.

should be ordered to produce the withheld documents.  See In re Grand Jury Subpoena,

274 F.3d at 575-77 (affirming waiver of underlying attorney-client and work product

privileges for failure to produce a privilege log.).

### B.  The Weiss Defendants Have Made Improper Assertions of Attorney-Client Privilege

The First Circuit has looked to Wigmore's commonly cited formula for the

attorney-client privilege, which provides that the privilege applies where:

> (1) legal advice of any kind is sought
> (2) from a professional legal adviser in his capacity as such,
> (3) the communications relating to that purpose,
> (4) made in confidence
> (5) by the client,
> (6) are at his instance permanently protected
> (7) from disclosure by himself or by the legal adviser,
> (8) except the protection be waived.

United States v. M.I.T., 129 F.3d 681, 684 (1st Cir. 1997) citing 8 J. Wigmore Evidence

§ 2292 (McNaughton rev. 1961).  Similarly, a party asserting the attorney-client privilege

with respect to a document provided by an attorney has the burden of showing the

following four elements:

> (1) that the party was or sought to be a client of the attorney;
> (2) that the attorney acted as a lawyer in connection with the document;
> (3) that the document relates to facts communicated for the purpose of securing a legal opinion; and
> (4) that the privilege has not been waived.

Town of Norfolk v. United States Army Corps of Engineers, 968 F.2d 1438, 1457 (1st

Cir. 1992).  As described below, the Weiss Defendants have failed to satisfy their burden

to show that the privilege applies at all to the majority of entries that assert attorney-client

privilege.

Contradicting the requirements of Rule 26(b)(5), Weiss's counsel provided a privilege log with 426 entries that did not identify any attorneys.[6]  Counsel for Kotva, therefore, could not determine which of the individuals listed for the more than 250 separate claims of attorney-client privilege were actually attorneys.  Following Kotva's request during the Rule 37.1 conferences, Weiss' counsel e-mailed a list of attorneys for the privilege log on March 21, 2006.  (See Ex. D.)  What this list revealed was striking: for more than 250 assertions of attorney client privilege, approximately 220 entries do not list any attorney as an author or recipient.[7]  (A copy of the Weiss privilege log, highlighted to indicate the attorney-client claims for which no attorneys are listed, is attached hereto as Exhibit C.)

It is Weiss' burden to demonstrate that the privilege exists and that he has not waived the privilege.  In re Raytheon Sec. Litig., 218 F.R.D. at 357 citing United States v. Wilson, 798 F.2d 509, 512-513 (1st Cir. 1986).  It does not fall to Kotva to speculate how Weiss' claims may possibly be privileged.  Weiss has failed to satisfy this burden.  To the extent that any of the alleged attorney-client communications were disclosed to parties outside of the attorney-client relationship, the privilege has been waived and the documents must be produced.  United States v. M.I.T., 129 F.3d at 684-685.  With respect to the entries in the log where Weiss does identify an attorney, such as those

---

[6] On March 7, 2006, following the first call of the Rule 37.1 conference, Weiss' counsel supplemented the privilege log to add ten additional claims of work product protection, increasing the total of logged entries to 436.  Weiss' counsel further supplemented the log on March 31, 2006 to add two more entries.

[7] See e.g., 26, 41-43, 47-48, 50, 52-53, 58-82, 90-101, 103-107, 109-112, 114, 120-127, 133-136, 140-171, 174-180, 182-188 190-191, 193-197, 199-201, 210, 213-218, 221-224, 227-229, 232-239, 241-242, 245, 247-273, 277-280, 294-297, 330, 348-359, 361-363, 365-366, 375, 379, 388, 391, 394-395, 398-399, 401, and 420-424.  Less than a third of these entries make any reference at all to an attorney in the description.

involving Howard Golden,[8] Weiss must demonstrate that the attorney was providing legal advice in the capacity of a legal adviser to Weiss as a client—and not acting in some other capacity—for the communication to be privileged.  Furthermore, Weiss also must adequately describe entries to show they satisfy the privilege.  See e.g., log entries 82-89 (asserting attorney client privilege without indicating to whom the communication was made).  Weiss has failed to do so, and the documents should be disclosed.

### C.  The Weiss Defendants Have Made Improper Assertions of Work-Product Protection

The work product protection is intended to promote the adversary system and to prevent free-riding by ensuring that an attorney's efforts are not appropriated by the opposing party.  In re Grand Jury Subpoena, 274 F. 3d at 574 ("The work product rule protects work done by an attorney in anticipation of, or during, litigation from disclosure to the opposing party.") (emphasis added); see also In re Raytheon Sec. Litig., 218 F.R.D. at 359 ("The purpose of the work product privilege is to protect information against *opposing parties*, rather than against *all others* outside a particular confidential relationship, in order to encourage effective trial preparation….") (citation omitted; emphasis in original).  Here, the Weiss Defendants have made improper and overbroad assertions of work product by: (1) claiming work product protection on behalf of non-parties that they have no standing to assert; (2) withholding documents created in the ordinary course of business; and (3) withholding documents that they have already disclosed to the press and the U.S. State Department.  Further, they have failed to provide descriptions that identify who created the work product, the proceedings for which the alleged work product was created, and when the work product was created.  Weiss also

---

[8] See log entries 300-01, 347, 360, 364, 368, 381-83, 385-87, 396-97, and 425-26.

appears to have withheld documents that were not prepared by attorneys, received by attorneys, or have any connection to attorneys at all.

> ### 1.    The Weiss Defendants Cannot Withhold Work Product on Behalf of Non-Parties

The work product protection only applies to materials prepared by or for a party to the litigation in which discovery is sought:

> Documents prepared for one who is not a party to the present suit are wholly unprotected by Rule 26(b)(3) even though the person may be a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the present suit.

8 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2024; In re Cal. Pub. Utils. Comm'n, 892 F.2d 778, 781 (9th Cir. 1989) (Rule 26(b)(3), on its face, limits work product protection to one who is a party to the litigation in which discovery is sought); Loustalet v. Refco, Inc., 154 F.R.D. 243, 246-247 (C.D. Cal. 1993) (same); Hawkins v. South Plains Int'l Trucks, 139 F.R.D. 682, 684 (D. Col. 1991) (same). Therefore, documents and tangible things created by or for other parties for the purposes of other litigation cannot be withheld as work product by the Weiss Defendants in this case. For example, Weiss has asserted work product protection for materials he received from James Woolf - - a non-party - - described only as "correspondence regarding potential legal proceedings." See log entries 28-38, 49, 113, 115-116, 118, and 284-287, 290-292. The Weiss Defendants also have claimed work product protection for numerous documents exchanged with Vladimir Hoffmann (See highlighted sections of privilege log attached as Exhibit C hereto). The Weiss Defendants have no standing to assert work product protection on behalf of either Vladimir Hoffmann or Gilroy, and must produce those materials. Indeed, Weiss has admitted that Hoffmann filed the Gilroy lawsuit. (See March 15, 2005 letter attached hereto as Exhibit E from Weiss as President of WAM,

distancing himself from the Gilroy lawsuit ("A company owned by our associate Vladimir Hoffmann petitioned the courts to invalidate these transfers.")

**2.    Documents Produced in the Ordinary Course of Business Cannot be Withheld as Work Product**

The First Circuit has adopted the "because of" test for determining whether documents can be withheld as work product, which requires documents to have been created because of litigation. State of Maine, 298 F.3d at 68. Documents produced in the ordinary course of business, however, are not entitled to protection. In re Lernout & Hauspie Sec. Litig., 222 F.R.D. at 36-37 ("the 'because of' formulation that we adopt here withholds protection from documents that are prepared in the ordinary course of business *or that would have been created in essentially similar form irrespective of the litigation*.") (emphasis in original) quoting United States v. Adlman 134 F.3d 1202 (2d Cir. 1998).

With respect to the communications exchanged between Vladimir Hoffmann and Weiss, these documents appear to have been created in the ordinary course of business. Weiss retained Hoffman in September 2003 to facilitate the sale of BGO's Kotva and Trend shares. (See September 15, 2003 Agreement (W0002063-65) and October 31, 2003 power of attorney (W0008918) attached as Ex. F.) As part of his duties, Hoffmann was required to provide the BGO board with written updates and to be available for regular telephone conversations on any developments regarding his efforts. (Id. at W0002065). Because those updates and communications would have been created in the same form irrespective of litigation, they are not entitled to work product protection. In re Lernout & Hauspie Sec. Litig., 222 F.R.D. at 36-37. Further, the "mere relation of

documents to litigation does not automatically endow those documents with privileged status."  State of Maine, 298 F.3d at 69

### 3.    The Weiss Defendants Have Waived Work Product Protection Through Disclosure

Disclosing materials in a way that is inconsistent with keeping them from an adversary waives work product protection.  U.S. v. M.I.T., 129 F.3d at 681 (voluntary disclosure of information to a government agency without assurance to keep documents secret waived the privilege with respect to IRS demand).   This Court has considered the following factors in determining whether the work product protection has been waived:

(1)    whether the party claiming the privilege seeks to use it in a way that is inconsistent with the privilege;

(2)    whether the party claiming the privilege had a reasonable basis for believing that the disclosed materials would be kept confidential; and

(3)    whether waiver of the privilege in these circumstances would trench on any policy elements inherent in the privilege.

In re Atlantic Fin. Mgmt. Sec. Litig., 121 F.R.D. 141, 145 (D. Mass 1988) (citations omitted).  The Court noted that disclosure can be consistent with the policy underlying the work product doctrine - - the promotion of the adversary system rather than the protection of a confidential relationship.  Therefore, to the extent the Weiss Defendants have disclosed work product in a manner that increases the opportunity for potential adversaries to obtain the information, the protection has been waived.  See In re Raytheon Sec. Litig., 218 F.R.D. at 359-360.

Nevertheless, the Weiss Defendants have asserted work product protection for materials that they forwarded to the press, including The Boston Globe (Steve Syre), The Wall Street Journal (Nick Carey), The New York Times (Peter Green), Forbes (Heidi Brown), and likely others that undersigned counsel has not yet been able to identify.  (See

generally privilege log entries 309-344, 370-384, and 389-416.)  Most of these entries

simply provide, "email containing information gathered for purposes of litigation" or

"email including materials prepared for purposes of ongoing legal proceedings."

Similarly, the Weiss Defendants have asserted work product protection for

communications they appear to have engaged in voluntarily with the U.S. State

Department.[9]  (A copy of Weiss' privilege log with the highlighted entries involving the

press and the State Department is attached hereto as Exhibit C).  Because the Weiss

Defendants have failed to satisfy their burden of showing that there has been no waiver,

these materials should be produced. See United States v. Wilson, 798 F.2d at 512-513.

---

[9] Kotva has learned that Weiss has attempted to interfere with the service of the criminal charges by
lobbying the U.S. Government to pressure the Czech prosecutors to drop the charges.  For example, a DOS
representative reported in March 2005 to Weiss' counsel the following:

> I saw the deputy head of the municipal prosecutors, Kratochivlova, today.
> She was more familiar with the case than the Supreme Prosecutor.  I laid out all
> the concerns, which you know.  She would not talk about the specifics of the case,
> but indicated that it is still at the very early stages.  She said she doubted that Mr.
> Weiss would be arrested if he came to Prague, but of course I can't guarantee that.  The other
> defendants have given evidence to the prosecutors and are not in custody.  There are papers to
> be served on Weiss, and she said that these could be served with the assistance of the U.S.G.
> [United States Government] at the request of the Czech Embassy in Washington, but it seems to
> me this would take a long time if it ever happened because the papers must go through the
> Supreme Prosecutor (Benesova, the lady we saw on Monday) who sends them to the Embassy.
>                    ***
> The best hope for quick action is for the prosecutors to drop the case, but Kratochvilova didn't
> promise anything.  She seems fairly reasonable, but only time will tell.  I asked her to look at it
> and drop it if she found reason to do (she apparently has the power, although in rare instances the
> working prosecutor can rebel and keep the case going).  I intend also to see the High State
> Prosecutor here in Prague and ask him to look into it and drop it if he agrees it seems fishy, he has
> some line authority over the prosecutor as well.  We will then have hit all the pressure points
> among the prosecutors and will have to wait a while to see if we get action.  I would give it a week
> or so.  The next step would be a request for consultations with the Ministry of Foreign Affairs
> under the Bilateral Investment Treaty!

(A copy of this email is attached as Exhibit G.)

**4.    Even If Considered Work Product, Kotva Has A
Substantial Need for the Documents**

If the party resisting discovery can satisfy its burden of proving work product, the

Court may still order production upon a showing of sufficient need—namely, that the

document is an important part of preparing the discoverer's case for trial and the

substantial equivalent cannot be obtained through other means.  Connelly v. Dun &

Bradstreet, Inc., 96 F.R.D. 339, 343 (D. Mass. 1982); Sham v. Hyannis Heritage House,

Inc., 118 FRD 24 (D. Mass. 1987) (court only considers discovering party's need

materials after it determines that documents are in fact work product); 8 WRIGHT &

MILLER, §2025.

Because of the shortcomings in Weiss' privilege log, it is difficult for Kotva to

establish conclusively at this juncture a showing of substantial need for each and every

document.  In any event, virtually all of the documents that defendants claim to be "work

product" concern their use of the Czech litigation as a lever to extort Kotva to purchase

their shares.  For example, Kotva has obtained an email between Vladimir Hoffmann and

Andrew Weiss that discusses their plan to obtain a higher purchase price by disrupting

Kotva's sale of its department store with the Czech litigation.  (See Ex. I.)  Kotva expects

that the majority of the other communications between defendants and Hoffman contain

similar damning evidence.

**D.  Under the Crime/Fraud Exception, there is No Privilege and No
Protection for Communications and/or Work Product Made in
Furtherance of the Weiss Defendants' Scheme to Blackmail Kotva**

The crime/fraud exception removes attorney-client communications and work

product from privileged or protected status when such communications or work product

were intended by the client to facilitate or conceal criminal or fraudulent behavior.  In re

<u>Violette</u>, 183 F.3d 71, 75 (1st Cir. 1999); <u>Craig v. A.H. Robins Co.</u>, 790 F.2d 1, 4 (1st Cir. 1986) (exception applies to work product).  For the exception to apply, the party challenging the privilege must show: (i) that the client engaged in (or was planning) criminal or fraudulent activity when the attorney-client communications took place or the work product was created; and (ii) that the communications or work product were intended by the client to facilitate or conceal the criminal or fraudulent proceedings.  <u>In re Grand Jury Proceedings</u>, 417 F.3d 18, 22 (1st Cir. 2005).  <u>Id</u>.  In short, when "there is a reasonable basis to believe that the lawyer's services were used by the client to foster a crime or fraud," the privilege or protection does not apply.  <u>Id</u>. at 23.

The crime/fraud exception applies in this case.  Weiss and Hoffmann have been criminally charged in the Czech Republic for extortion arising out of the same operative facts that form the basis of Kotva's claims in this lawsuit.  (<u>See</u> Weiss charging document, attached as Ex. H.)  In fact, Weiss already has disclosed documents that reveal his scheme to retain Czech lawyers to see how they could "block any potential transfer of Kotva building" and "discourage potential buyers of Kotva from the purchase," among other things.  (<u>See</u> e-mail from Hoffmann to Weiss, attached hereto as Ex. I).  Indeed, the Czech Police have seized documents and communications between Weiss, Hoffmann, and an attorney, Peterka, in connection with the criminal investigation, some of which were previously available and are attached as exhibits to the Complaint.  (<u>See</u> Compl. Exs. D & F.)  Therefore, communications and documents that furthered Weiss's scheme to blackmail Kotva, such as communications between Weiss and Hoffmann, Weiss and Gilroy, and/or any of these parties and counsel, are not protected by the attorney-client privilege or the work product doctrine and should be produced.

**II.    The Weiss Defendants Failed To Provide A Log of Confidential Documents and Failed to Move for A Protective Order As Required By The Special Master Despite**

On January 6, 2006, the Special Master entered an Order that provides in pertinent part as follows:

> Any party that withholds production on the ground of privilege or a claim of confidentiality must identify all withheld documents and state the grounds for non-production or protection in a production log. In order to expedite the resolution of issues with respects to claims of business confidentiality, the producing party must submit a copy of documents which are claimed to contain confidential information to the Special Master for *in camera* review, along with a motion for a protective order under Rule 26(c). Privileged documents need not be submitted for *in camera* review.

The Weiss Defendants produced multiple documents with wholesale redactions of information. (See, e.g. redacted documents from Weiss production attached hereto as Ex. J). The Weiss Defendants claim that the redactions were of "irrelevant" information and, therefore, they would not provide any confidentiality log or move for a protective order.

Simply put, if the Weiss Defendants produced the documents, they are obviously relevant. There is no such thing as "relevancy" redaction. By improperly redacting the information, moreover, and refusing to provide any log for the redactions, it is impossible to assess Weiss' purported assertions of irrelevance. Given Weiss' failure to provide a confidentiality log, he should be required to disclose the documents in unredacted form.

**III.    The Weiss Defendants Should Be Compelled To Produce Documents In Response To Specific Requests**

According to the Weiss Defendants, documents should be produced unless they could have "no possible bearing" on the claim or defense of any party:

> The Rules provide for wide-ranging discovery, permitting "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at

the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b). Thus, "discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have **no possible bearing** upon the [claim or defense of any party]." Gagne v. Reddy, 104 F.R.D. 454, 456 (D. Mass. 1984) (emphasis added).

Defendants' Memorandum in Support of Motion to Compel Production of Documents, filed Sept. 23, 2005 [Docket # 23], at 11. When the onus shifts to the Weiss Defendants to produce documents, however, they seek to play by different rules. Kotva requests the Court to compel the Weiss Defendants to produce the following materials.

### A. The Weiss Defendants Should Produce All Documents Responsive to Requests Nos. 55 to 61

The Weiss Defendants have refused to provide <u>any</u> documents in response to requests 55 to 61, which concern Kotva's RICO claim:

> **REQUEST NO. 55:** All documents concerning legal actions commenced by CEPF, MCF, and/or Brookdale Group in the Czech Republic, including litigation commenced against Potravinářský investiční fond, a.s."PIF" and/or První Investiční a.s. P.I.A.S. and/or IPB and/or other funds managed by PIAS.

> **RESPONSE:** The Defendants object to this Request on the grounds that it is unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

> **REQUEST NO. 56:** All documents concerning the <u>EC Group v. CEPF and MCF</u> arbitration, and/or the settlement between BGO and EG Group.

> **RESPONSE:** The Defendants object to this Request on the grounds that it is unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

> **REQUEST NO. 57:** All documents concerning the management of CEPF and MCF, auditor reports, the purchase of RIF shares, and all documents concerning and communications with IPB and/or Domeana.

> **RESPONSE:** The Defendants object to this Request on the grounds that it is unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

> **REQUEST NO. 58:** All documents concerning communications with Terra Partners.

> **RESPONSE:** The Defendants object to this Request on the grounds that it is unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 59:** All documents concerning and communications with Domeana spol. s.r.o. and/or Investiční Poštovní banka, a.s., IPB" and/or PIAS including but not limited to all agreements entered into by Brookdale Group on behalf of CEPF and/or MCF concerning the transfer/sale of shares in PIF, Restituční investiční fond České republiky, a.s. ("RIF") and/or other funds managed by PIAS.

**RESPONSE:** The Defendants object to this Request on the grounds that it is unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 60:** All such documents concerning the accounting and use of 364.5 million CZK that CEPF and MCF received from Domeana spol. S.r.o., from the time of the receipt of such funds to the award in the CEPF and MCF Arbitration in 2003, including but not limited to documents concerning any financial benefit Brookdale Group and/or Weiss received from the 364.5 million CZK during this period.

**RESPONSE:** The Defendants object to this Request on the grounds that it is unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 61:** All documents concerning Czech criminal of Howard Golden, Weiss and/or Brookdale Group, including but not limited to investigations related to the transfer/sale of RIF shares or other shares of funds managed by PIAS , CEPF and/or MCF.

**RESPONSE:** The Defendants object to this Request on the grounds that it is vague, unduly burdesome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.  The Defendants further object to this Request on the grounds that there are, to the Defendants knowledge no Czech criminal investigations of Howard Golden or Brookdale Group.  The Defendants further object to this request to the extent that it has the purpose and effect of interfering with or prejudicing the ongoing defense of a pending criminal investigation.  In view of Kotva's other Requests and the Defendants' Responses thereto, there are no documents responsive to this Request that are properly discoverable that are not being produced in response to another Request. Accordingly, the Defendants will produce no additional documents in response to this Request.

As described in Kotva's Civil RICO Case Statement, Weiss was at the center of

the IPB/Domeana blackmail scheme involving the Czech fund RIF.  Weiss's participation

in a scheme to blackmail another Czech entity to purchase shares above market value and

as a result of sham litigation is obviously relevant to Kotva's claims in this case.  See

Kotva's Civil RICO Case Statement at 5(e).  Because these requests go directly to

Kotva's RICO claim and the underlying nature of the Weiss Defendants' conspiracy and

crminal enterprise, the Weiss Defendants' should be compelled to produce documents

responsive to these requests.

    **B.**    **The Weiss Defendants Should Be Ordered To Produce <u>All Communications With BGO Investors And All Documents Identifying BGO Investors</u>**

Request Nos. 4 and 6[10] seek <u>all</u> communications with BGO's investors concerning Trend, Kotva, this action, the Czech lawsuits and the criminal charges against Weiss; and documents as are sufficient to identify BGO's investors.  In response, Weiss produced very limited communications with BGO's investors, including copies of form letters sent to investors.  (<u>See</u>, <u>e.g.</u> BGO investor letter attached hereto as Exhibit E.)  Weiss, however, refuses to produce the mailing list identifying the investors to whom the letter was sent, or produce any other documents identifying BGO's investors.[11]  Furthermore, as described below, Weiss failed to produce <u>all</u> communications with BGO's investors.

---

[10] **<u>Request No. 4:</u>**  Such documents are sufficient to identify BGO's investors from 1996 to the present.
**<u>Response:</u>** The Defendants object to this Request on the grounds that it is unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to these Objections and the General Objections above, the Defendants will produce such documents as are sufficient to identify the shareholders of the Czech Value Fund as of September 30, 2000.

**<u>Request No. 6:</u>**  All communications with BGO's investors concerning Trend, Kotva, this action, the Czech Lawsuits, and/or the criminal indictment against Weiss.
**<u>Response:</u>**  The Defendants object to this Request on the grounds that it is vague, unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object to the use of the phrase "criminal indictment against Weiss."  This phrase refers to the inaccurate, scurrilous allegation in the Complaint that there has been an "indictment" of Weiss in the Czech Republic where, to Defendants' knowledge, there has been an investigation as a result of an abusive criminal compliant filed by the counterclaim-defendants.  No indictment has occurred.  Plaintiff's continued use of the phrase is further evidence of its abuse of process.  The Defendants further object to this request to the extent that it has the purpose or effect of interfering with or prejudicing an ongoing defense of a pending criminal investigation.  Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

[11] Weiss produced a single document, which only identifies the institutional custodians, but not the actual BGO investors.  In the discovery conferences, Weiss first took the position that this document is the only document that he has identifying investors.  When subsequently asked for at least the mailing list for the letter sent to BGO investors, Weiss conceded that such a list exists, but refused to produce it.

### 1.    Communications With BGO Investors

In January 2006, Weiss filed an "emergency" motion seeking a protective order to prevent Kotva from issuing additional subpoenas to BGO's investors. In support of his motion, Weiss argued that "[t]hese <u>subpoenas are unnecessary, calling for the production of documents that [Kotva] will obtain directly from Weiss and WAM."</u> Emergency motion at 2. (Emphasis added). Notwithstanding Weiss' representations in its emergency motion, Kotva has uncovered multiple documents provided by Weiss to his investors that were not produced by Weiss. For example, in response to a third party subpoena QVT, a BGO investor, produced emails from Weiss and his employees, copies of letters that Weiss sent to QVT written on his behalf by Senators John Kerry and Joe Biden and Congressman Barney Frank, all of which concern the Czech extortion charges against Weiss (See <u>e.g.</u>, documents produced by QVT attached hereto as Ex. K). Weiss failed to produce these documents, did not disclose their existence on any log, and did not move for a protective order. Kotva requests that Weiss be ordered to conduct a thorough search, and produce <u>all</u> communications with all BGO investors.

### 2.    Documents Identifying BGO Investors

Request No. 4 seeks documents as are sufficient to identify BGO's investors, which Weiss has refused to produce. With respect to the mailing list for the investor letter (Ex. E hereto) and other documents identifying BGO investors, Weiss again failed and refused to produce a confidentiality log or move for a protective order as required by the Discovery Master's Order. Instead, Weiss asserts that such documents are "irrelevant."[12] On the contrary, in connection with Weiss' emergency motion to quash

---

[12] It makes no sense that the letters sent to the investors are relevant and discoverable, but the identity of the recipients of the letters is not.

the investor subpoenas, the Special Master indicated that Kotva is entitled to discovery concerning representations or admissions made by Weiss to BGO investors concerning, among other things, this lawsuit, the Kotva shares and the Czech criminal charges, and the Special Master denied Weiss' motion for a protective order.  Indeed, the BGO investors may have relevant communications concerning Weiss that Kotva can only get from the investors.  Without documents from Weiss identifying the BGO investors, however, Kotva is prevented from pursuing this legitimate line of discovery.  In short, Weiss should be ordered to produce the mailing list and all other documents sufficient to identify all BGO's investors.

> **C.    Critical Documents Are Inexplicably Missing**
> **And Should Be Immediately Produced**

> **1.    Shareholder Votes and Meeting Minutes (Request Nos. 35 and 38)**

Request No. 35 seeks documents concerning Kotva shareholder votes.  Given Weiss' defenses asserted in this case, such documents are critical and should be produced.  For example, Weiss contends that Richard Harazim and Martin Benda were installed as Kotva Board members by the fictitious "Forminster Group" to "loot" Kotva's assets.  BGO, however, voted in favor of Messrs.  Benda and Harazim's appointment to the Board, but Weiss failed to produce the shareholder vote in discovery.  In addition, Weiss' entire theory is that BGO, as a Kotva shareholder, is directly entitled to a percentage of the proceeds from sale of the Kotva Department Store.  Such a distribution is only possible if Kotva's shareholders vote in favor of winding up and liquidating the company.  BGO, however, voted against liquidation.  Weiss has not produced the shareholder votes, and should be ordered to do so.  Similarly, Weiss has produced next to

no meeting minutes.[13]  Weiss should be compelled to thoroughly search for and produce all responsive meeting minutes.

### 2.    Communications With Jan Veverka Are Missing And Should Be Produced

Weiss produced several documents that refer to emails or letters sent by Weiss regarding a "proposal" to Jan Veverka concerning Kotva.  (See, e.g., Exhibit L attached hereto.)  The emails or letters to Veverka, however, have not been produced.  The Veverka communications may be critical documents as they were prepared at the outset of Weiss's blackmail scheme, and Veverka subsequently declined to get involved with Weiss.  Instead of hiring Mr. Veverka, Weiss hired Vladimir Hoffmann who, along with Weiss, was subsequently charged with extortion.

Weiss now claims that he cannot locate the Veverka communications.  First, Weiss declared he did not maintain copies of the letters.  When asked to search his computer system for the letters, Weiss asserted that the letters cannot be found.  Given

---

[13]  **Request No. 35**:  All documents concerning Kotva shareholder votes and proxies, including but not limited to BGO's vote in favor of electing Benda and Harazim to the Kotva board.
**Response:**  The Defendants object to this Request on the grounds that it is unduly burdensome, overly broad, not reasonably calculated to lead to the discovery of admissible evidence.  The Defendants further object on the grounds that, to the Defendants' knowledge, BGO did not authorize any vote in favor of electing Benda or Harazim to Kotva's board.  Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

**Request No. 38:**  All meeting minutes of the managers and/or members of WAM, Weiss Capital, Brookdale Group, BGO, CVF Ltd., CVF LLC, KT, Gilroy, and Balfindor concerning Kotva, Trend, the Czech Lawsuits and/or Weiss' criminal indictment.
**Response:**  The Defendants object to this Request on the grounds that it is vague, unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence and to the extent that it calls for documents protected by the attorney-client privilege and work product doctrine.  Defendants further object to the use of the phrase "Weiss' criminal indictment."  The phrase refers to the inaccurate, scurrilous allegation in the Complaint that there has been an "indictment" of Weiss in the Czech Republic where, to Defendants' knowledge, there has been an investigation as a result of an abusive criminal complaint filed by the counterclaim-defendants.  No indictment has occurred.  Plaintiff's continued use of the phrase is further evidence of its abuse of process.  The Defendants further object to this request to the extent that it has the purpose or effect of interfering with or prejudicing the ongoing defense of a pending criminal investigation.  Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

25

the critical nature of these documents, Kotva requests that Weiss be ordered to conduct a

through search, including computer hard drives, for all Veverka communications.

## CONCLUSION

For the foregoing reasons, Kotva respectfully requests that the Motion to Compel

be granted, and that it be awarded its attorneys' fees and costs in connection with this

motion.

Respectfully submitted,

KOTVA, A.S.

By its attorneys,

/s/ Joel G. Beckman

Joel G. Beckman (BBO# 553086)
William C. Nystrom (BBO# 559656)
Daniel J. Pasquarello (BB0# 647379)
NYSTROM BECKMAN & PARIS LLP
10 St. James Ave., 16th Floor
Boston, Massachusetts 02116
(617) 778-9100
(617) 778-9110 (fax)
jbeckman@nbparis.com
wnystrom@nbparis.com
dpasquarello@nbparis.com

Dated: April 3, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing
(NEF) and paper copies will be sent to those indicated as non registered participants on
this 3rd day of April, 2006.

/s/ Daniel Pasquarello

26

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ANDREW WEISS and WEISS ASSET ) | C.A. No. 05-10679-RCL |
| MANAGEMENT, LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ANDREW WEISS, WEISS ASSET ) | |
| MANAGEMENT LLC, K T, INC. and CVF ) | |
| INVESTMENTS, LTD., ) | |
| ) | |
| Counterclaim-plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| KOTVA a.s., MARTIN BENDA, RICHARD ) | |
| HARAZIM, FORMINSTER ENTERPRISES, ) | |
| LTD., SPV CO and JOHN DOES 1–5, ) | |
| ) | |
| Counterclaim-defendants. ) | |
| ) | |

**OBJECTIONS AND RESPONSES OF ANDREW WEISS AND WEISS ASSET
MANAGEMENT LLC TO SECOND SET OF REQUESTS FOR PRODUCTION OF
DOCUMENTS OF KOTVA A.S.**

**GENERAL OBJECTIONS**

1.      The Defendants object to Kotva's failure to describe each item or category of

documents requested with "reasonable particularity." FED. R. CIV. P. 34(b).

2.      The Defendants object to Kotva's failure to "specify a reasonable time, place, and

manner of making the inspection and performing the related acts." FED. R. CIV. P. 34(b).

3.      The Defendants object to Kotva's characterization of these sixty-three requests as Kotva's "First Request for Production of Documents." These requests are Kotva's second set of document requests to the defendants.

4.      The Defendants object to the Definitions and Requests, including but not limited to the definition of "BGO Shares," to the extent that they assume facts that may be in dispute and do not, by responding to any request, admit that the assumed facts are true.

5.      The Defendants object to the definition of "Irish Investors" as vague in that the Defendants did not author the Complaint.

6.      The Defendants object to the use of the phrase "Weiss' criminal indictment." This phrase refers to the inaccurate, scurrilous allegation in the Complaint that there has been an "indictment" of Weiss in the Czech Republic where, to Defendants' knowledge, there has been an investigation as a result of an abusive criminal complaint filed by the counterclaim-defendants. No indictment has occurred. Plaintiff's continued use of the phrase is further evidence of its abuse of process.

7.      The Defendants object to these requests to the extent that they have the purpose or effect of interfering with or prejudicing the ongoing defense of a pending criminal investigation.

8.      The Defendants object to these requests and the incorporated instructions and definitions to the extent they seek the disclosure of documents or other information not required under the Federal Rules of Civil Procedure and the Local Rules.

9.      The Defendants object to these requests to the extent they seek documents not in Defendants' possession, custody or control.

10.    The Defendants object to each Request where, and to the extent that, such Request calls for information that is protected by the attorney-client privilege, the work product doctrine, or any other privilege provided by law.

11.    Defendants object to each Request to the extent that it encompasses work product that was created after the filing of this case or any related Czech civil or criminal case.

12.    Defendants object to each Request to the extent that it calls for the inspection of documents in their custody in which third parties may have an interest.

13.    For any inspection and production that occurs in this case, the Defendants specifically reserve the right to assert and maintain privilege objections as to any privileged documents that may be inadvertently produced in response to these Requests. The Defendants expect that Kotva's counsel will return any inadvertently produced document containing attorney-client privileged, work product or any other privileged and/or protected communication or information.

14.    Any response by the Defendants inconsistent with its objections shall not be deemed a waiver of such objections.

15.    No response or objection set forth herein may be deemed an admission that the information that Kotva a.s. requests:  (a) is relevant to the subject matter of this lawsuit or is reasonably calculated to lead to the discovery of admissible evidence; and/or (b) is admissible in evidence in this case.

16.    Subject to and without waiving any of their objections, Defendants reserve the right to supplement these responses, as needed, should they later obtain or locate additional, responsive documents.

## RESPONSES TO SPECIFIC REQUESTS

1.      All documents concerning WAM's filing system (including indices of all retained documents and files concerning Kotva) and WAM's document retention and/or destruction policy.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is vague, unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

2.      All documents referenced and/or identified in the Answer, Counterclaim, and/or the Initial Disclosures.

**RESPONSE:**

Subject to the General Objections above, the Defendants will produce non-privileged responsive documents.

3.      All documents concerning the ownership, transfer, custody, purchase or sale of any or all of the BGO Shares from 1996 to the present, including but not limited to the transfer of such shares to CVF Ltd, CVF LLC, Gilroy, and/or KT.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is unduly burdensome. Subject to the General Objections above, the Defendants will produce such documents as are sufficient to identify all transfers, including purchases and sales, and changes in custody, of the BGO Shares from 1996 to the present for which the Defendants have one or more documents evidencing such a transfer or change in custody.

4.      Such documents as are sufficient to identify BGO's investors from 1996 to the

present.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Subject to these Objections and the General Objections above, the Defendants will produce such documents as are sufficient to identify the shareholders of the Czech Value Fund as of September 30, 2000.

5.    Such documents as are sufficient to identify each and every entity in which Weiss, WAM and/or Weiss Capital has or had any ownership or other interest, including but not limited to KT, Gilroy, CVF Ltd, CVF LLC, Weiss Capital, Brookdale Group, BGO, CEPF and MCF.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is vague, unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Subject to these Objections and the General Objections above, the Defendants will produce such documents as are sufficient to identify any ownership interest Weiss, WAM or Weiss Capital has or had in K T, Inc., Gilroy, CVF Investments Ltd., CVF Investments LLC, Weiss Capital LLC, Weiss Asset Management LLC, Brookdale Group, BGO, CEPF and MCF to the extent that the Defendants have documents reflecting any such ownership interests.

6.    All communications with BGO's investors concerning Trend, Kotva, this action, the Czech Lawsuits, and/or the criminal indictment against Weiss.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is vague, unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible

evidence. Defendants further object to the use of the phrase "criminal indictment against Weiss" This phrase refers to the inaccurate, scurrilous allegation in the Complaint that there has been an "indictment" of Weiss in the Czech Republic where, to Defendants' knowledge, there has been an investigation as a result of an abusive criminal complaint filed by the counterclaim-defendants. No indictment has occurred. Plaintiff's continued use of the phrase is further evidence of its abuse of process. The Defendants further object to this request to the extent that it has the purpose or effect of interfering with or prejudicing the ongoing defense of a pending criminal investigation. Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

      7.    All documents concerning the management of BGO, including all management contracts or other agreements with Weiss, WAM, Weiss Capital, Brookdale Group, and/or Howard Golden.

**RESPONSE:**

      The Defendants object to this Request on the grounds that it is unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Subject to these Objections and the General Objections above, the Defendants will produce, for the time period beginning when Weiss Capital LLC took over as BGO's investment manager to the present, documents concerning the management of the BGO Shares.

      8.    All documents concerning: (a) the formation of CVF LLC; (b) communications with CVF LLC; (c) the transfer/sale of Kotva or Trend shares to CVF LLC; and (d) the Czech Lawsuits.

**RESPONSE:**

      The Defendants object to this Request on the grounds that it is unduly burdensome,

overly broad, not reasonably calculated to lead to the discovery of admissible evidence and calls for the production of documents protected by the attorney-client privilege and work product doctrine. Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

  9.  All documents concerning: (a) the formation of KT; (b) communications with KT; (c) the transfer/sale of Kotva or Trend shares to KT; and (d) the Czech Lawsuits.

  **RESPONSE:**

  The Defendants object to this Request on the grounds that it is repetitive, unduly burdensome, overly broad, not reasonably calculated to lead to the discovery of admissible evidence and calls for the production of documents protected by the attorney-client privilege and work product doctrine. Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

  10.  All documents concerning: (a) the formation of CVF Ltd; (b) communications with CVF Ltd; (c) the transfer/sale of Kotva or Trend shares to CVF Ltd; and (d) the Czech Lawsuits.

  **RESPONSE:**

  The Defendants object to this Request on the grounds that it is repetitive, unduly burdensome, overly broad, not reasonably calculated to lead to the discovery of admissible evidence and calls for the production of documents protected by the attorney-client privilege and work product doctrine. Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

  11.  All documents concerning: (a) the formation of Gilroy; (b) communications with Gilroy; (c) the transfer/sale of Kotva or Trend shares to Gilroy; and (d) the Czech Lawsuits.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is repetitive, unduly burdensome, overly broad, not reasonably calculated to lead to the discovery of admissible evidence and calls for the production of documents protected by the attorney-client privilege and work product doctrine. Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

12.    All documents concerning: (a) the formation of Balfindor; (b) communications with Balfindor; (c) the transfer/sale of Kotva or Trend shares to Balfindor; and (d) the Czech Lawsuits.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is repetitive, unduly burdensome, overly broad, not reasonably calculated to lead to the discovery of admissible evidence and calls for the production of documents protected by the attorney-client privilege and work product doctrine. Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

13.    Such documents as are sufficient to identify each current and former employee, member, officer, director, and/or shareholder of: (1) Weiss; (2) WAM; (3) Weiss Capital; (4) KT; (5) CVF Ltd; (6) CVF LLC; (7) Balfindor; and (8) Gilroy.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is unduly burdensome, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence Subject to these Objections and the General Objections above, the Defendants will produce such documents as are sufficient to identify the requested individuals to the extent that the Defendants

have such documents in their possession, custody or control.

14.    All documents concerning and communications with the Bank of Bermuda and/or HSBC, including but not limited to any custodian agreements.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is unduly burdensome, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence.  In view of Kotva's other Requests and the Defendants' Responses thereto, there are no documents responsive to this Request that are properly discoverable that are not being produced in response to another Request.  Subject to these Objections and the General Objections above, the Defendants will produce non-privileged, responsive documents concerning the BGO Shares from 1996 to the present.

15.    All documents concerning any valuation of Kotva and/or Kotva's shares, Trend shares, and/or BGO's shares, including any valuations performed for the benefit of BGO's investors.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is vague, unduly burdensome, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence and to the extent that it calls for the production of documents protected by the attorney-client privilege and work product doctrine.  Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents concerning any valuation of Kotva and/or Kotva's shares, Trend shares, and/or the BGO Shares.  The Defendants will not produce documents concerning valuations of shares in any company other than Kotva or Trend.

9

16.     All documents concerning any notifications or disclosures of this lawsuit or the Czech Lawsuits and/or Weiss' criminal indictment to BGO, BGO's investors and/or any governmental authority.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is vague, unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to the use of the phrase "Weiss' criminal indictment." This phrase refers to the inaccurate, scurrilous allegation in the Complaint that there has been an "indictment" of Weiss in the Czech Republic where, to Defendants' knowledge, there has been an investigation as a result of an abusive criminal complaint filed by the counterclaim-defendants. No indictment has occurred. Plaintiff's continued use of the phrase is further evidence of its abuse of process. The Defendants further object to this request to the extent that it has the purpose or effect of interfering with or prejudicing the ongoing defense of a pending criminal investigation. Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

17.     All documents concerning the alleged threat in May 2004 "to take Kotva's only valuable asset for itself and give the minority shareholders nothing" as set forth in the "summary" to the Counterclaim.

**RESPONSE:**

The Defendants object to this Request to the extent that it calls for the production of documents protected by the attorney-client privilege and work product doctrine. Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

18.    All documents concerning the authorization given to "lawyers in the Czech Republic to file lawsuits to protect the rights of the minority shareholders" of Kotva as set forth in the "summary" to the Counterclaim.

**RESPONSE:**

The Defendants object to this Request to the extent that it calls for the production of documents protected by the attorney-client privilege and work product doctrine. Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

19.    All documents concerning communications between or among Weiss, Hoffmann, and Ondrej Peterka, including those communications referenced in Paragraph 22 of the Answer.

**RESPONSE:**

The Defendants object to this Request to the extent that it calls for the production of documents protected by the attorney-client privilege and work product doctrine. Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

20.    All documents concerning and communications with Hoffmann, including but not limited to all contracts with Hoffmann and all bills and invoices from Hoffmann.

**RESPONSE:**

The Defendants object to this Request to the extent that it calls for the production of documents protected by the attorney-client privilege and work product doctrine. Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

21.    The agreement with Hoffmann referenced in Paragraph 20 of the Counterclaim.

**RESPONSE:**

The Defendants will produce the agreement with Hoffmann referenced in Paragraph 20 of the Counterclaim

22.    All documents concerning Gilroy's lawsuit filed against Kotva, KN, and SPV KV referenced in Paragraph 24 of the Complaint.

**RESPONSE:**

The Defendants object to this Request to the extent that it calls for the production of documents not within the possession, custody or control of the Defendants and the production of documents protected by the attorney-client privilege and work product doctrine. Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

23.    All documents concerning Balfindor's lawsuit against Kotva referenced in Paragraph 25 of the Complaint.

**RESPONSE:**

The Defendants object to this Request to the extent that it calls for the production of documents not within the possession, custody or control of the Defendants and the production of documents protected by the attorney-client privilege and work product doctrine. Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

24.    All documents concerning expenses and fees billed, incurred and/or paid in connection with the Czech Lawsuits.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is vague, unduly

burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence and to the extent that it calls for the production of documents protected by the attorney-client privilege and work product doctrine. Subject to these Objections and the General Objections above, the Defendants will produce such documents as are sufficient to identify the entity or entities who have submitted and paid bills for expenses and fees in connection with the Czech Lawsuits.

25.     All documents concerning communications between Gilroy's lawyers and the Czech Republic Property Registry as referenced in Paragraph 25 of the Complaint.

**RESPONSE:**

The Defendants object to this Request to the extent that it calls for the production of documents outside their possession, custody or control and calls for the production of documents protected by the attorney-client privilege and work product doctrine. Subject to these Objections and the General Objections above, the Defendants do not believe that they have any non-privileged responsive documents, but will conduct a further search and produce any non-privileged responsive documents that they locate..

26.     All documents identifying the directors, officers, members, shareholders and/or employees of (1) KT; (2) Gilroy; (3) CVF Ltd; and (4) CVF LLC.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is repetitive, unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence. In view of Kotva's Request No. 13 and the Defendants' response thereto, the Defendants will not produce any additional documents in response to this Request.

27.     All documents concerning and communications with the Irish Investors.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is vague, unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

28.    All documents concerning Weiss' video press conference in Boston on March 15, 2005 referenced in Paragraph 41 of the Complaint, including, without limitation, all documents concerning Weiss' instructions to lawyers in the Czech Republic referred to in the press conference.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence and to the extent it calls for the production of documents that are protected by the attorney-client privilege and work product doctrine. Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

29.    All documents concerning any communications with the press involving Kotva.

**RESPONSE:**

The Defendants object to this Request the extent it calls for the production of documents that are protected by the attorney-client privilege and work product doctrine. Subject to the General Objections above, the Defendants will produce non-privileged responsive documents.

30.    All documents concerning CVF LLC's ownership of shares in Kotva and Trend as referenced in Paragraphs 16 and 17 of the Counterclaim.

**RESPONSE:**

The Defendants object to this Request on the grounds that it misrepresents the allegations in the Counterclaim, is unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence and to the extent it calls for the production of documents that are protected by the attorney-client privilege and work product doctrine. Subject to these Objections and the General Objections above, the Defendants will produce such documents as are sufficient to establish CVF Investments Ltd.'s ownership of shares in Kotva and Trend.

31.     All documents concerning the alleged meeting between Harazim and Hoffmann referenced in Paragraph 21 of the Counterclaim.

**RESPONSE:**

The Defendants object to this Request on the grounds to the extent it calls for the production of documents that are protected by the attorney-client privilege and work product doctrine. Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

32.     All documents concerning the damages allegedly suffered by Weiss and/or WAM referenced in Paragraph 41 of the Counterclaim.

**RESPONSE:**

The Defendants object to this Request to the extent it calls for the production of documents that are protected by the attorney-client privilege and work product doctrine or documents that are within the scope of the parties' agreement not to produce bills for legal services until such time as the court is considering attorneys' fees as an element of damages. Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents. Weiss and WAM continue to suffer damages on an ongoing basis, and additional documents may be created concerning those damages. The Defendants will

make supplemental productions as new documents come to their attention.

33.    All documents concerning KT's lawsuit filed against Kotva, KN, and SPV KN and all documents concerning any other lawsuits filed by KT relating to Kotva or shares in Kotva and/or Trend shares.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is repetitive, unduly burdensome, overly broad, not reasonably calculated to lead to the discovery of admissible evidence and calls for the production of documents protected by the attorney-client privilege and work product doctrine. Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

34.    All documents concerning the persons or entities empowered from 1996 to the present to vote the BGO Shares.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is vague, unduly burdensome, overly broad, not reasonably calculated to lead to the discovery of admissible evidence. Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

35.    All documents concerning Kotva shareholder votes and proxies, including but not limited to BGO's vote in favor of electing Benda and Harazim to the Kotva board.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is unduly burdensome, overly broad, not reasonably calculated to lead to the discovery of admissible evidence. The Defendants further object on the grounds that, to the Defendants' knowledge, BGO did not

authorize any vote in favor of electing Benda or Harazim to Kotva's board. Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

36.    All documents concerning the Trend settlement with Forminster, including without limitation all communications with BGO's investors concerning the Trend settlement.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is unduly burdensome, overly broad, not reasonably calculated to lead to the discovery of admissible evidence. Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

37.    All documents concerning the corporate structure of (1) WAM; (2) Weiss Capital; (3) Brookdale Group; and (4) BGO, including without limitation, the operating agreement, certificate of organization, annual reports, form SS4s, and all documents and charts showing its parents, subsidiaries and related entities.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is vague, unduly burdensome, overly broad, not reasonably calculated to lead to the discovery of admissible evidence. Subject to these Objections and the General Objections above, the Defendants will produce such operating agreements, certificates of organization and annual reports as are in their possession, custody or control for WAM, Weiss Capital, Brookdale Group and BGO

38.    All meeting minutes of the managers and/or members of WAM, Weiss Capital, Brookdale Group, BGO, CVF Ltd, CVF LLC, KT, Gilroy, and Balfindor concerning Kotva, Trend, the Czech Lawsuits and/or Weiss' criminal indictment.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is vague, unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence and to the extent that it calls for documents protected by the attorney-client privilege and work product doctrine. Defendants further object to the use of the phrase "Weiss' criminal indictment." This phrase refers to the inaccurate, scurrilous allegation in the Complaint that there has been an "indictment" of Weiss in the Czech Republic where, to Defendants' knowledge, there has been an investigation as a result of an abusive criminal complaint filed by the counterclaim-defendants. No indictment has occurred. Plaintiff's continued use of the phrase is further evidence of its abuse of process. The Defendants further object to this request to the extent that it has the purpose or effect of interfering with or prejudicing the ongoing defense of a pending criminal investigation. Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

39.    All documents concerning and communications with Kotva.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is vague, unduly burdensome and overly broad and to the extent that it calls for documents protected by the attorney-client privilege and work product doctrine. Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

40.    All documents concerning and communications with (1) Ondrej Peterka; (2) Branston Haggerty; (3) Etian Milgram; and (4) Georgiy Nitikin, relating to Trend, Kotva, this Action, the Czech Lawsuits, and/or the BGO Shares.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is vague, unduly burdensome and overly broad and to the extent that it calls for documents not within the Defendants' custody, possession or control and documents protected by the attorney-client privilege and work product doctrine. Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

41.    All documents concerning and communications with David Paul Wilson.

**RESPONSE:**

Subject to the General Objections above, the Defendants will produce non-privileged responsive documents.

42.    All documents concerning a potential or contemplated transfer of BGO's shares in Trend and/or Kotva to KT.

**RESPONSE:**

The Defendants object to this request on the grounds that it is vague and assumes that BGO has shares in Trend and/or Kotva. Subject to this Objection and the General Objections above, the Defendants will produce non-privileged responsive documents.

43.    All documents concerning the lawsuit filed by Balfindor as referenced in Paragraph 25 of the Counterclaim.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is repetitive, unduly burdensome, overly broad, not reasonably calculated to lead to the discovery of admissible evidence and to the extent it calls for the production of documents outside of the Defendants' possession, custody or control or protected by the attorney-client privilege and work product doctrine. Subject to these Objections and the General Objections above, the Defendants will

produce non-privileged responsive documents.

44.    All documents concerning your allegation that Kotva participated in a plan to loot its own assets, abuse Czech criminal process and abuse the United States civil process, as referenced in Paragraph 69 of the Counterclaim.

**RESPONSE:**

The Defendants object to this Request to the extent it calls for the production of documents that are protected by the attorney-client privilege and work product doctrine. The Defendants further object to this request to the extent that it has the purpose or effect of interfering with or prejudicing the ongoing defense of a pending criminal investigation. Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

45.    All documents concerning KT's ownership of shares in Kotva and Trend, as referenced in Paragraph 6 of the Counterclaim.

**RESPONSE:**

The Defendants object to this Request to the extent it calls for the production of documents that are protected by the attorney-client privilege and work product doctrine. Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

46.    All documents concerning Weiss's counteroffer to sell BGO's Kotva shares for 131,000,000 CZK, as referenced in Paragraph 26 of the Counterclaim.

**RESPONSE:**

The Defendants object to this Request to the extent it calls for the production of documents that are protected by the attorney-client privilege and work product doctrine. Subject

to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

      47.    All documents concerning any effort to sell or market for sale the Kotva shares.

**RESPONSE:**

      The Defendants object to this Request on the grounds that it vague. Subject to this Objection and the General Objections above, the Defendants will produce non-privileged documents concerning any effort to sell or market for sale the BGO shares.

      48.    All emails identified in Paragraph 35 of the Counterclaim.

**RESPONSE:**

      The Defendants will produce the emails identified in Paragraph 35 of the Counterclaim

      49.    All documents concerning the criminal indictment against Weiss in the Czech Republic.

**RESPONSE:**

      The Defendants object to this Request on the grounds that it is vague, unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence and to the extent that it calls for documents protected by the attorney-client privilege and work product doctrine. Defendants further object to the use of the phrase "criminal indictment against Weiss." This phrase refers to the inaccurate, scurrilous allegation in the Complaint that there has been an "indictment" of Weiss in the Czech Republic where, to Defendants' knowledge, there has been an investigation as a result of an abusive criminal complaint filed by the counterclaim-defendants. No indictment has occurred. Plaintiff's continued use of the phrase is further evidence of its abuse of process. The Defendants further object to this request to the extent that it has the purpose or effect of interfering with or

prejudicing the ongoing defense of a pending criminal investigation. Subject to these Objections and the General Objections above, the Defendants will produce non-privileged documents concerning the criminal investigation of Weiss in the Czech Republic.

50.    All documents concerning Weiss' "advise[][to] the World Bank on the Czech Republic's capital markets" as referenced in the "summary" of the Counterclaim, and his status as a Boston University professor.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is vague, unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Subject to these Objections and the General Objections above, the Defendants will produce non-privileged responsive documents.

51.    All documents concerning Weiss Capital's "take-over" of BGO, alleged in Paragraph 16 of the Counterclaim.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is vague, unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence and to the extent that it calls for documents protected by the attorney-client privilege and work product doctrine. Defendants further object to Kotva's mischaracterization of the counterclaim, which states in pertinent part, that "[i]n 2002, Weiss Capital took over the management of Brookdale Global Opportunity Fund ('BGO')." Subject to these Objections and the General Objections above, the Defendants will produce such documents as are sufficient to establish the fact and timing of BGO's decision to select Weiss Capital as its manager.

52.    All documents concerning the registration of BGO, Weiss, WAM, and Weiss

Capital with the United States Securities and Exchange Commission or any state agency.

**RESPONSE:**

The Defendants object to this Request as vague. The Defendants reserve all other objections. The Defendants do not believe that they have any responsive documents, but, upon clarification of the request, may be able to locate non-privileged responsive documents.

53.    All agreements from 1996 to the present between Weiss and/or WAM with BGO, Weiss Capital, Brookdale Group, Central European Privatization Fund ("CEPF") and/or Czech Manhattan Fund ("MCF") including but not limited to management and/or advisory agreements.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Subject to these Objections and the General Objections above, the Defendants will produce, for the period September 2002 to present, copies of any agreements between Weiss and BGO, Weiss Capital and Brookdale Group. The Defendants have no documents containing agreements between WAM and any listed entity and no documents containing agreements between Weiss and CEPF or MCF.

54.    All documents concerning and communications with Howard Golden ("Golden") including but not limited to all agreements with Golden relating to Kotva and/or Trend, and all agreements relating to the termination of the relationship between Weiss and Golden.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Subject to these Objections and the General Objections above, the Defendants state that they

have no agreements with Howard Golden relating to Kotva and/or Trend, but that they will produce all non-privileged communications with Howard Golden relating to Kotva and/or Trend.

55.     All documents concerning legal actions commenced by CEPF, MCF, and/or Brookdale Group in the Czech Republic, including litigation commenced against Potravinářský investiční fond, a.s."PIF" and/or První Investiční a.s. P.I.A.S. and/or IPB and/or other funds managed by PIAS.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

56.     All documents concerning the <u>EC Group v. CEPF and MCF</u> arbitration, and/or the settlement between BGO and EG Group.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

57.     All documents concerning the management of CEPF and MCF, auditor reports, the purchase of RIF shares, and all documents concerning and communications with IPB and/or Domeana.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

58.     All documents concerning communications with Terra Partners.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is unduly burdensome,

overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

59.    All documents concerning and communications with Domeana spol. s.r.o. and/or Investiční Poštovní banka, a.s., IPB" and/or PIAS including but not limited to all agreements entered into by Brookdale Group on behalf of CEPF and/or MCF concerning the transfer/sale of shares in PIF, Restituční investiční fond České republiky, a.s. ("RIF") and/or other funds managed by PIAS.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

60.    All such documents concerning the accounting and use of 364.5 million CZK that CEPF and MCF received from Domeana spol. s.r.o., from the time of the receipt of such funds to the award in the CEPF and MCF Arbitration in 2003, including but not limited to documents concerning any financial benefit Brookdale Group and/or Weiss received from the 364.5 million CZK during this period.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is vague, unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

61.    All documents concerning Czech criminal investigations of Howard Golden, Weiss and/or Brookdale Group, including but not limited to investigations related to the transfer/sale of RIF shares or other shares of funds managed by PIAS , CEPF and/or MCF.

**RESPONSE:**

The Defendants object to this Request on the grounds that it is unduly burdensome,

overly broad and not reasonably calculated to lead to the discovery of admissible evidence. The Defendants further object to this Request on the grounds that there are, to the Defendants' knowledge no Czech criminal investigations of Howard Golden or Brookdale Group. The Defendants further object to this request to the extent that it has the purpose or effect of interfering with or prejudicing the ongoing defense of a pending criminal investigation. In view of Kotva's other Requests and the Defendants' Responses thereto, there are no documents responsive to this Request that are properly discoverable that are not being produced in response to another Request. Accordingly, the Defendants will produce no additional documents in response to this Request.

62.     All documents concerning and communications with the State Department of the United States as referenced on page 10 of the Memorandum in Support of Motion to Compel Production of Documents dated September 23, 2005.

**RESPONSE:**

The Defendants object to this request to the extent that it has the purpose or effect of interfering with or prejudicing the ongoing defense of a pending criminal investigation. Subject this Objection and the General Objections above, the Defendants will produce non-privileged responsive documents.

63.     All documents concerning the allegation in Paragraph 29 of the Counterclaim that "Benda told Hoffmann that any purchase of Kotva shares was conditioned on the relase of all claims that BGO had against the forminster Group, including claims that Forminster's shares in Kotva really belong to Trend."

**RESPONSE:**

Subject to the General Objections above, the Defendants will produce non-privileged

responsive documents.

ANDREW WEISS and WEISS ASSET
MANAGEMENT LLC

By their attorneys,

Edward P. Leibensperger (BBO# 292620)
Benjamin A. Goldberger (BBO# 654257)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts  02109-1775
(617) 535-4000

Dated: January 27, 2006

## CERTIFICATE OF SERVICE

I, Benjamin A. Goldberger, hereby certify that on the 27th day of January, 2006, a true and correct copy of the foregoing document was served by first class mail and electronic mail on counsel for each other party.

Benjamin A. Goldberger

BST99 1486458-2.072198.0012

# Nystrom Beckman & Paris LLP

Counselors at Law

February 24, 2006

**Via Facsimile and First Class Mail**
Edward P. Leibensperger, Esquire
McDermott Will & Emery LLP
28 State Street
Boston, MA 02109-17775

  Re: Kotva a.s. v. Andrew Weiss and Weiss Asset Management, LLC
     C.A. No. 05-10679-PBS (D. Mass.)

Dear Ned:

   This is to follow up on my letter to you of last week concerning Defendants' document production. Defendants have yet to provide a confidentiality log or move for a protective order with respect to redacted documents as required under the Discovery Master's Order. Please let me know on Monday whether we need to raise the issue with the Discovery Master. Please also consider this a request to convene a Local Rule 37.1 conference.

   We request that you supplement your responses to produce documents in response to Request Nos. 55 – 61. In addition, we request that you reconsider your objections and limitations to production asserted with respect to Request Nos. 3, 7, 51 and 52 and supplement accordingly.

   With respect to Request No. 4 seeking documents identifying BGO's investors, the Discovery Master previously indicated that we are entitled to discovery concerning representations or admissions made by Defendants to BGO investors concerning, among other things, this lawsuit, the Kotva shares, and the Czech criminal charges. Your "emergency" motion for a protective order on this issue was denied. Please produce a list of BGO investors



Edward P. Leibensperger, Esquire
February 24, 2006
Page 2 of 4

responsive to Request No. 4. Moreover, contrary to your response to Request No. 4, Defendants have not produced documents identifying investors in the Czech Value Fund.

Defendants have not produced any documents responsive to Request No. 18 concerning Weiss' authorization given to "lawyers in the Czech Republic to file lawsuits to protect the rights of minority shareholders." Please confirm that you have no such documents.

Defendants have not produced any documents responsive to Request No. 11 concerning Gilroy. Weiss has taken the position that he has no connection to Gilroy. Therefore, to the extent Defendants have documents in their possession concerning communications between Peterka, Hoffman and/or Defendants regarding Gilroy, all such documents should be produced.

With respect to Request No. 24, other than Hoffman's invoices, Defendants have failed to produce documents "as are sufficient to identify the entity or entities who have submitted and paid bills for expenses and fees in connection with the Czech lawsuits." Please produce these documents.

Defendants have produced no documents concerning alleged damages (Request No. 32). Please confirm you have no responsive documents.

Request No. 35 seeks documents concerning Kotva shareholder votes. Defendants produced only two such votes. We ask that you conduct a search for responsive documents, including votes by BGO in favor or electing Messrs. Harazim and Benda to the Board, as well as BGO voting against the liquidation. Similarly, Defendants have not produced all requested meeting minutes (see Request No. 38) despite agreeing to do so. Please produce all requested meeting minutes.

Request No. 44 seeks documents concerning Defendants allegations that "Kotva participated in a plan to loot its own assets, abuse Czech criminal process and abuse United

Edward P. Leibensperger, Esquire
February 24, 2006
Page 3 of 4

States civil process." Defendants have not produced any responsive documents. Please confirm
that defendants have no such responsive documents.

     With respect to the documents Defendants produced to date, we have discovered
significant gaps and deficiencies, including the following:

- Multiple attachments are identified in emails produced by Defendants, but the
  attachments themselves are not included in the production stream (see e.g. W1101;
  W1105; W1108; W1211; W1256; W5244-45; W5574; W5592; W5595; W5597;
  W5598; W5609).

- The documents produced refer to encrypted emails and/or emails only accessible
  via a password. (see e.g. W1213; W5295; W5324; W5624; W5808; W5927;
  W7427-7656; W8303-W8491; W8636). Please produce these documents in
  readable form.

- Defendants have not produced all communications with Jan Veverka referenced
  in the documents that were produced. (see e.g. W1251; W1253).

- Defendants have not produced all communications with BGO investors (see e.g.
  W8671).

- Defendants have not produced all communications with the U.S. State
  Department, including files and attachments that were apparently sent to the State
  Department (see W8674-W8675).

Edward P. Leibensperger, Esquire
February 24, 2006
Page 4 of 4

- Defendants failed to produce documents as they are kept in the ordinary course of business, and instead threw together random documents with missing pages. See e.g. W45-W134, including incomplete portions of a Jones Lang LaSalle report mixed in with miscellaneous other documents dating back to 1997; W1531; W2362; W2376; W2476; W2816; W4035-4037. In view of Defendants failure to comply with Fed. R. Civ. P. 34, we ask that we be permitted to inspect the original files as they are kept by Defendants in the ordinary course of business.

I also note that you marked documents at the deposition yesterday that were not produced in discovery on the basis that Plaintiff had not requested them. To the extent you are intentionally withholding additional documents, I trust they are not responsive to Request No. 44 or any other documents requested by Plaintiff. Please confirm. Please also confirm that you have produced all documents response to Request Nos. 11, 12, 13, 14, 22, 23, 25, 34, 47, 49, 50, and 54.

I will call you on Wednesday, March, 1, 2006 at 2 p.m. to convene our discovery conference. If this is inconvenient, please let me know and provide an alternative time.

Sincerely,

Joel G. Beckman

# EXHIBIT C
(Not Filed Electronically)

**From:** BGoldberger@mwe.com [mailto:BGoldberger@mwe.com]
**Sent:** Tuesday, March 21, 2006 9:07 AM
**To:** Daniel J. Pasquarello
**Subject:** Kotva v. Weiss: Lawyers' Names

Dan,

Here is a list of attorneys for the privilege log:

Bart Friedman
Jiri Cerny
Ladislav Chundela
Olga Humlova
mnewmanpc@aol.com
Ondrej Peterka
Marta Guthova
Pavel Wenzl
Roman Andel
Gabriela Svobodova
Andel, Svobodova
Sarah Bolton
Pavel Wenzl
legal@demac.cz
Howard Golden
IVA ISTVANKOVA
JOSEF MONSPORT
IVO MRAZ

Benjamin A. Goldberger
McDermott Will & Emery LLP
28 State Street
Boston, MA 02109
t.  +1 617 535 4483
f.  +1 617 535 3800
e.  bgoldberger@mwe.com

*********************************************************************************
*****************************
IRS Circular 230 Disclosure:  To comply with requirements imposed by the IRS, we inform you that any
U.S. federal tax advice contained herein (including any attachments), unless specifically stated otherwise, is
not intended or written to be used, and cannot be used, for the purposes of (i) avoiding penalties under the
Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or
matter herein.

This message is a PRIVATE communication. This message and all attachments are a private
communication sent by a law firm and may be confidential or protected by privilege. If you are not the
intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the
information contained in or attached to this message is strictly prohibited.  Please notify the sender of the
delivery error by replying to this message, and then delete it from your system.  Thank you.
*********************************************************************************
*****************************

# WEISS ASSET MANAGEMENT

15 March 2005

Dear Partners,

In the course of aggressively protecting the interests of the investors in BGO I seem to have aroused the ire of the wrong people in the Czech Republic. It is possible that I may be charged with extortion.

I am enclosing the transcript of a statement I made to the Czech news agency, as well as a letter we have written to the U.S. embassy in Prague, a chronology of events and some diagrams and tables that may help you understand what is going on. I will first give a brief summary. Before we took over the management of BGO, it was called Czech Value Fund (CVF) and was managed by Regent Kingpin. Under the previous management, the fund had made large investments in Trend Fund and KOTVA a.s.; CVF owned 40% of Trend and 12% of KOTVA. By the time we took over management of CVF, all of Trend's assets had been stolen and 56% of the shares KOTVA were held by people who had stolen the money from Trend. The funds were tunneled through a series of transactions involving dummy companies controlled by the managers of Trend; and 56% of the shares of KOTVA ended up in a Cyprus company called Forminster. A Czech court froze those shares and a Lichtenstein court froze Forminster's bank account on suspicions of money laundering. However, Forminster was allowed to vote its shares and put its people in control of KOTVA. By the time we took over management of CVF, there was no market for Trend shares, and the market price of KOTVA bore no relationship to the value of its assets, so we held on to those shares, but "ring fenced" them along with some other dubious investments that we inherited in the CVF portfolio. The ring-fenced assets were not included in the valuation of BGO (the new name we chose for CVF). We did not take a management fee for those assets. They belonged to the persons who were investors in BGO as of September 2000. All expenses associated with those investments are charged to those investors.

However, we were aware that the value of the property owned by KOTVA was around $70 million. In a related matter a U.K. arbitration court ruled that with 80% probability a Czech court would rule that 32% of KOTVA's shares belonged to Trend. During 2002, 2003 and 2004, the Forminster people who were running KOTVA moved the assets through a series of intricate and increasingly bizarre transfers through a succession of dummy companies and subsidiaries that resulted in all the shares being owned by a dummy company called SPV. That company has bearer shares so it is now impossible to know who actually owns the property. A company owned by our associate Vladimir Hoffmann petitioned the courts to invalidate these transfers.

In November 2003, Forminster offered to buy BGO's shares in KOTVA for $1 million. We refused. They requested a meeting with us in which they told me that a minority interest in KOTVA was worthless, and that there was nothing anyone could do about the embezzlement of the assets of TREND – that those shares were worthless. After this meeting, additional lawsuits

---

29 Commonwealth Avenue • Boston • Massachusetts • 02116
Phone: (617) 778-7780 • Fax: (617) 778-7781 • E-mail: info@weissasset.com

W0003073

were brought to invalidate the dummy transactions so that the shareholders of KOTVA a.s. would control its assets, and to restore the KOTVA's shares that were stolen from Trend.

Now is when things get completely bizarre.

The response of Forminster was to get a prosecutor to charge Hoffmann and his assistant with extortion. According to the newspapers the prosecutor has also charged me with extortion. Apparently the basis of the charge (which I have not been allowed to see) is that BGO's share of the value of KOTVA was more than its market price so I was demanding more than the market price, and that in order to get the fair price I had threatened legal actions. Since the crooks were guilty of fraud, the legal action would cause them serious damage, and the threat to cause serious damage is part of the Czech definition of extortion.

I am proud of the actions that I have taken to defend the interests of our investors. If people like us do not stand up for shareholder rights, who will? My lawyers have said that it is unprecedented for anyone to be charged with extortion for bringing a lawsuit. One of the reasons we have been able to achieve high returns is that I have always fought for the rights of our investors. I must admit I never expected that fighting for our investors to be treated fairly would get me into so much trouble. However, I have no intention of changing our policy of always acting in the most ethical manner and vigorously protecting the interests of our investors.

Sincerely yours,

Andrew Weiss
President and CIO
Weiss Asset Management

W0003074

| Attention: | **Briana Dubrow** | Date: | 31.10.2003 |
|---|---|---|---|
| Company: | Brookdale Group; The | Number of Pages: | 3 |
| Fax Number: | 001 617 778 7781 | | |
| Voice Number: | 001 617 778 7710 | | |

| From: | **Vladimir Hoffmann** |
|---|---|
| Company: | |
| Fax Number: | +420 281 961 580 |
| Voice Number: | |

Subject:    Contract

**Comments:**

W0002063

*Brookdale Global Opportunity Fund*

September 15, 2003

Mr. Vladimir Hoffmann
Medinská 825
190 14 Praha 9 – Klánovice
Czech Republic

## Re: Success Fee Regarding the Sale of Ring Fenced Assets

Dear Mr. Hoffmann:

This letter agreement refers to the Kotva and Trend shares held by Brookdale Global Opportunity Fund ("BGO"). BGO currently owns 82,782 Kotva shares and 1,141,794 Trend shares ("The Shares").

You agree to provide BGO with such services as may be reasonably requested by BGO to facilitate the sale of the Shares, including, but not limited to, identifying and communicating with prospective purchasers. You further agree that in providing such services he will not offer the Shares for sale to any person or entity living or headquartered in the United States.

BGO agrees to front the payment of expense incurred directly for the purpose of selling Kotva and/or Trend shares owned by BGO, or to enter into any other arrangements or contracts that will improve the expected return on those securities for BGO. Any single expenditures in excess of $1,000, or cumulative monthly expenses in excess of $5,000 must be approved in advance by either Andrew Weiss or Eitan Milgram. Expenditures related to your normal business activities such as rent, secretarial help, would not be included. In other words BGO will not be paying a share of Vladimir Hoffmann's normal overhead and operating costs. BGO would only be paying costs that would not otherwise have been incurred by V. Hoffmann or the associated entity. Itemized bills will be submitted as the expenses are incurred. In addition to expense reimbursements, BGO will pay Vladimir Hoffmann a monthly retainer of $2,000 per month.

In addition to the payments set forth in the preceding paragraph, BGO agrees to pay Vladimir Hoffmann a Success Fee in the amount of 30% of the proceeds paid to BGO for the sale or other disposition of the Kotva and/or Trend shares minus the cumulative expenses and retainer fee that had been paid by BGO in relationship to this contract. In other words if the Kotva shares were sold for $1,000,000 in December 30, 2003; and suppose that between now and Dec.. 30, 2003, we had paid legal fees and other expenses of $35,000 and had paid Vladimir Hoffmann $4,000; then Hoffmann would receive $261,000 from the Kotva transaction. If one month later BGO received $2,000,000 for its' interest in Trend, and if during that month an additional $61,000 has been paid in expenses Hoffmann had been paid an additional $2,000, then Hoffmann's net success fee on the Trend transaction would be $537,000: i.e. 30% of the $2,000,000 equals $600,000 deducting all the new expenses whose cost BGO advanced, we come up with $539,000 and then subtracting the additional retainer paid we end up with a payment to Hoffmann of $537,000. Hoffmann's total payment under those circumstances would be $798,000. The Success Fee will be paid within 20 business days following the sale of shares

W0002064

of Kotva or Trend and the receipt of the proceeds of such sales by BGO . The payment of the Success Fee for the sale of Kotva shares is not conditional upon sale of Trend shares and vice versa.

The price and terms for the sale of the BGO shares in Trend and Kotva are subject to the approval of the board of directors of BGO in their sole discretion.

Vladimir Hoffmann will provide the Board of BGO with written updates on any developments relating to the sale of the Shares. Those updates will be provided on an ongoing basis, but if there has been no written communication in any month then an update will be mailed at the end of that month. These written communications can be via email. Vladimir Hoffmann will also be available for regular telephone conversations with members of the board of Brookdale Global Opportunities Fund. It is anticipated that such telephone conversations will occur at least once a week.

This contract expires January 31, 2004, unless it is renewed before that date by mutual written agreement of the parties. Upon expiration of this contract, Hoffmann shall be entitled to reimbursement of all unpaid expenses incurred prior to such expiration and any portion of the monthly retainer accrued but unpaid prior to such expiration. Renewals will be for three month periods and can be terminated by either party at the end of the applicable three month period.

We very much look forward to working with you and to achieving success for BGO, and in doing so, for you.

Sincerely yours,

Andrew Weiss

Agreed to:

Vladimir Hoffmann

W0002065

# Mandate Agreement

This Mandate is between Brookdale Global Opportunity Fund ("BGO") with its registered office at 29 Commonwealth Ave., Boston, MA 02116 and Vladimír Hoffmann, an individual person with the address Medinska 825, 190 14 Praha 9 – Klanovice, The Czech Republic, birth number 651030/6990, concerning the sale, disposition, negotiations regarding 82,782 Kotva shares, (the "Kotva Shares") and 1,141,794 Trend shares (the "Trend Shares")  (collectively, the Trend Shares and the Kotva Shares are called "The Shares").

BGO hereby authorizes Vladimír Hoffmann to act as its agent, in its place and stead, to negotiate for the sale, transfer or other disposition of the Kotva Shares and The Trend Shares.

Signed in Boston,

This <u>31st</u> of October, 2003

By

Andrew Weiss, Chairman of the Board

W0008918

# Lucy Chen

**From:** mkendall@mwe.com
**Sent:** Thursday, March 24, 2005 11:52 AM
**To:** Kiene, Robert R
**Cc:** Dodman, Michael J; Richard. Steffens (E-mail)
**Subject:** RE: Criminal case in Czech Republic against Andrew Weiss

Thank you. We appreciate your efforts greatly I will discuss this with Professor Weiss. The most he has ever broken is a pencil, and never threatened any physical acts or authorized such things.

Michael Kendall
McDERMOTT WILL & EMERY LLP
28 State Street
Boston, MA  02109
617-535-4085 work
617-535-3800 fax
617-905-8206 cell

"Kiene, Robert R"
<KieneRR2@state.gov>

03/24/2005 10:56 AM

**To:** <mkendall@mwe.com>
**cc:** "Dodman, Michael J" <DodmanMJ@state.gov>, "Richard. Steffens \(E-mail\)"
<Richard.Steffens@mail.doc.gov>
**Subject:** RE: Criminal case in Czech Republic against Andrew Weiss

I saw the deputy head of the municipal prosecutors, Kratochvilova, today. She was more familiar with the case than the Supreme Prosecutor. I laid out all the concerns, which you know. She would not talk about the specifics of the case, but indicated that it is still at the very early stages. She said she doubted that Mr. Weiss would be arrested if he came to Prague, but of course I can't guarantee that. The other defendants have given evidence to the prosecutors and are not in custody. There are papers to be served on Weiss, and she said that these could be served with the assistance of the U.S.G. at the request of the Czech Embassy in Washington, but it seems to me this would take a long time if it ever happened because the papers must go through the Supreme Prosecutor (Benesova, the lady we saw on Monday) who sends them to the Embassy.

She said that it would be "easier" for the prosecutors to make a decision to drop the charges if Weiss came to Prague voluntarily and gave evidence to the police that would counter what Harazim has claimed. That is up to Weiss, of course. I don't know what Hoffman and Simkova said to the police or if they are still friendly to Weiss. Kratochvilova mentioned that someone said something about threats of breaking legs and that will make things more difficult if such an allegation has been made by them or Harazim, since an element of the crime of extortion is violence or threats thereof. Do you know anything about that?

The best hope for quick action is for the prosecutors to drop the case, but Kratochvilova didn't promise anything. She seems fairly reasonable, but only time will tell. I asked her to look at it and to drop it if she found reason to do (she apparently has the power, although in rare instances the working prosecutor can rebel and keep the case going). I intend also to see the High State Prosecutor here in Prague and ask him to look into it and drop it if he agrees it seems fishy, he has some line authority over the prosecutor as well. We will then have hit all the pressure points among the prosecutors and will have to wait a while to see if we get action. I would give it a week

11/17/2005

W0008548

or so. The next step would be a request for consultations with the Ministry of Foreign Affairs under the Bilateral Investment Treaty.!

-----Original Message-----
**From:** mkendall@mwe.com [mailto:mkendall@mwe.com]
**Sent:** Monday, March 21, 2005 8:06 PM
**To:** Kiene, Robert R
**Subject:** Re: Criminal case in Czech Republic against Andrew Weiss

Thanks Robert. I would like to supplement our conversation. Could you call my cell at your convenience

Michael Kendall
McDERMOTT WILL & EMERY LLP
28 State Street
Boston, MA  02109
617-535-4085 work
617-535-3800 fax
617-905-8206 cell

"Kiene, Robert R" <KieneRR2@state.gov>

03/21/2005 11:43 AM

To:     <mkendall@mwe.com>
cc:
Subject:     Criminal case in Czech Republic against Andrew Weiss

Mr. Kendall:

I talked today to the Supreme State Prosecutor about the extortion charges brought against Mr. Weiss and his associates. Not knowing anything about the case, she didn't make any comment on it. She is going to look into the matter and let us know what the situation is.

On Thursday I have an appointment with the deputy state prosecutor for Prague to discuss the matter as well. She has direct line authority over the prosecutor who brought the charges. I will let you know what I hear. Further action will depend on the outcome of these talks.

You may be interested to read the attached article, if you haven't already seen it.

http://www.praguepost.com/P03/2005/RE/0217/rel.php

*******************************************************************************************
This message is a PRIVATE communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Thank you.
*******************************************************************************************

11/17/2005

W0008549

Please visit http://www.mwe.com/ for more information about our Firm.

**************************************************************************
This message is a PRIVATE communication. This message and all attachments are a private
communication sent by a law firm and may be confidential or protected by privilege. If you are not the
intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the
information contained in or attached to this message is strictly prohibited. Please notify the sender of
the delivery error by replying to this message, and then delete it from your system. Thank you.
**************************************************************************

Please visit http://www.mwe.com/ for more information about our Firm.

11/17/2005

W0008550

1

Stamp:
POLICE OF THE CZECH REPUBLIC
ADMINISTRATION OF THE CITY OF PRAGUE
*Criminal Police and Investigation Service*
Economic Crime Section
140 21 PRAGUE 4, Kongresová 2


Criminal Prosecution No.: PSP-4035/OHK-3-2004

At Prague on 3 February 2005

DECISION


Pursuant to Section 160(1) of the Criminal Procedure Code, I hereby initiate criminal prosecution of the accused:

1) Ing. Vladimír Hoffmann,
   nationality: Czech Republic
   born on 30 October 1965 in Bratislava I, Slovak Republic
   birth index no. 651030/6990
   permanent resident at Medinská 825,
                       Klánovice, Prague 9, 190 14
   owner of the company Balfindor a.s., Company ID No. 27107892
   with its seat at Na Kocourkách 2915, Prague 6
   owner of the company Gilroy Limited, Company ID No. 0090061682
   with its seat at Pikioni, 4, Limassol, Republic of Cyprus

2) Edita Šimková
   nationality: Czech Republic
   born on 27 July 1968 in the Slovak Republic
   birth index no. 685727/6140
   permanent resident at Na Folimance 2153/19,
                       Vinohrady, Prague 2, 120 00
   chairperson of the board of directors of Balfindor a.s., Company ID No. 27107892
   with its seat at Na Kocourkách 2915, Prague 6

3) Andrew Weiss,
   nationality: United States of America
   born on 2 January 1947, passport no. Z7528881
   resident at 46 Abbottsford Road, 2 Brookline, Massachusetts, 2446 USA
   owner of the company Weiss Asset Management,
   company address 29 Commonwealth Avenue, Boston, Massachusetts 02116,
   which manages the company Brookdale Global Opportunity Fund,
   company address    P.O. Box 1748, GT 27 Hospital Road, George Town
                       Grand Cayman, Cayman Islands
   and controls the company KT, Inc.
   with its seat at 2711 Centerville Road, Suite 400, City of Wilmington, County of Newcastle, Delaware, USA,

K 0041

2

for the criminal offence of

extortion pursuant to Section 235(1) and (3) of the Criminal Code, committed as accomplices pursuant to Section 9(2) of the Criminal Code,

because it has been sufficiently substantiated by the facts ascertained until now that

the accused Andrew Weiss and the accused Ing. Vladimír Hoffmann met on 12 May 2004 at 2:00 p.m. in the French restaurant of Obecní dům (Municipal House) in Prague 1, náměstí Republiky 1090/5, with the management of Kotva a.s., ID No. 60193808, with its seat at Prague 1, náměstí Republiky 8, represented by Richard Harazim, general manager of Kotva a.s., born on 10 March 1965, permanent resident at Přezletice, U bažantnice 305, district of Prague-East, and Martin Benda, chairman of the supervisory board of Kotva a.s., born on 8 September 1971, permanent resident at Borač 46, district of Žďár nad Sázavou, and requested from them redemption of 11.9% shares of the registered capital of Kotva a.s., i.e. 82,782 shares, which are held by Brookdale Global Opportunity Fund, P.O. BOX 1748, GT 27 Hospital Road, George Town, Grand Cayman, Cayman Islands (where these shares are administered by the accused Weiss Andrew through his company Weiss Asset Management, 29 Commonwealth Avenue, Boston, Massachusetts 02116), for an amount of 4,000,000 US dollars, stating that if these shares were not so redeemed, the accused Weiss would arrange for blocking the real estate of Obchodní dům Kotva (Kotva Department Store), located at náměstí Republiky 8, Prague 1, in the real estate cadastre by filing fabricated and self-serving lawsuits against Kotva a.s., by which he would substantially disturb negotiations of Kotva Holding with potential strategic partners and financial institutions about the financing of operations and sales of Obchodní dům Kotva, and would restrict the disposal of this property for several years, because he knew that Kotva a.s. had concluded a contract for sale of the above Obchodní dům Kotva from which it could not withdraw and that Kotva a.s. was under a time pressure and had financial problems, and if Kotva a.s. did not purchase his shares, the next offer would be substantially higher, and if Kotva a.s. refused to purchase these shares from him, he would file criminal charges against the board of directors of Kotva a.s. By this way, the accused blackmailed Kotva a.s. and its board of directors by the threat of causing large-scale damage, physical violence or other major detriment, forcing Kotva a.s. and its board of directors to perform, omit or suffer an act, although the above representatives of

3

Kotva a.s. refused to redeem the above shares, stating that the asked price for the shares of Kotva a.s. is excessively high and that Kotva a.s. is not allowed to redeem its own shares.

Subsequently, the accused Weiss and the accused Hoffmann informed through Gilroy Limited and Balfindor a.s. Mr. Henry Prestige, the strategic partner of Kotva a.s., and financial institutions financing the operations of Kotva a.s. about actions filed against Kotva a.s. (as noted below), by which they hindered business operations of Kotva a.s. Such notification of the strategic partner and the financial institutions was meant to prevent the sale of the real property of Kotva a.s. to the strategic partner.

Subsequently, the accused Hoffmann, being the owner of Balfindor a.s., the accused Šimková as the chairperson of the board of director of Balfindor a.s., and the accused Weiss (who instructed the accused Hoffman and the accused Šimková to file the action referred to below), represented by Mgr. Ondřej Peterka, attorney-a-law, registered in the attorneys register kept by the Czech Bar Association under no, 4245, filed with the Municipal Court in Prague on 8 June 2004 on behalf of Balfindor a.s., Company ID No. 27107892, with its seat at Prague 6, Na Kocourkách 29/5 (which purchased on 8 June 2004, specifically for such purpose, one share of Kotva a.s. from the accused Hoffmann), an action for determination of invalidity of the general meeting of Kotva a.s., Company ID No. 60193808. On the same day, i.e. 8 June 2004, they submitted the statement of claim regarding the above action to the Cadastral Office of the City of Prague to attach in the real estate cadastre a seal to the lands and properties of Kotva a.s.

Subsequently, the accused Hoffmann, being the owner of Gilroy Limited, and the accused Weiss (who instructed the accused Hoffmann to file the action referred to below), represented by Mgr. Ondřej Peterka, attorney-at-law, filed with the Municipal Court in Prague on 30 June 2004 on behalf of Gilroy Limited, Company ID No. 0090061682, with its seat at Pikioni, 4, Limassol, Republic of Cyprus, which holds a part of shares of Kotva a.s., an action for determination of title to real estate of Kotva a.s., Company ID No. 60193808, Kotva nemovitosti k.s. with its seat at Příkopy 4, Brno, Company ID No. 26229048, and SPV KN a.s., with its seat at Příkopy 4, Brno. At the same time (on 2 July 2004), they submitted the statement of claim regarding the above action to the Cadastral Office of the City of Prague to attach in the real estate cadastre a seal to the lands and properties of Kotva a.s., Kotva nemovitosti k.s. and SPV KN a.s.

**K 0043**

4

Subsequently, the accused Ing. Vladimír Hoffmann, born on 30 October 1965, birth index number 651030/6990, permanent resident at Prague 9, Medinská 825, as the holder of a part of shares of Kotva a.s., acting jointly with JUDr. Petr Streiberg, permanent resident at Prague 6, Na Kuthance 16/1218, born on 18 October 1955, who holds a part of shares of Kotva a.s., and with the accused Weiss, being the owner of Weiss Asset Management, company address 29 Commonwealth Avenue, Boston, Massachusetts 02116, which manages Brookdale Global Opportunity Fund, with its seat at P.O. BOX 1748, GT 27 Hospital Road, George Town, Grand Cayman, Cayman Islands, which owns a part of shares of Kotva, a.s., all of them represented by Mgr. Jiří Černý, attorney-at-law, substituted by Mgr. Ondřej Peterka, filed with the Municipal Court in Prague on 15 July 2004, on behalf of Brookdale Global Opportunity Fund and on behalf of Ing. Vladimír Hoffman and JUDr. Petr Streitberg as individuals, an action for declaration of invalidity of the general meeting of Kotva a.s. At the same time, they submitted the statement of claim regarding the above action to the Cadastral Office of the City of Prague to attach in the real estate cadastre a seal to the lands and properties of Kotva a.s.

Subsequently, the accused Weiss, who controls KT, Inc., with its seat at 2711 Centerville Road, Suite 400, City of Wilmington, County of Newcastle, Delaware, USA, which holds a part of shares of Kotva a.s. through Brookdale Global Opportunity Fund (which also holds a part of shares of Kotva a.s.), represented by Mgr. Ondřej Peterka, attorney-at-law, filed individually with the Municipal Court in Prague on 23 December 2004 on behalf of KT, Inc. an action for determination of title to real estate. At the same time, he submitted the statement of claim regarding the above action to the Cadastral Office of the City of Prague to attach in the real estate cadastre a seal to the lands and properties of Kotva a.s.

Subsequently, the three accused have requested Kotva a.s. repeatedly by extortion, from 12 May 2004 to date, to redeem of 11.9% of shares of Kotva a.s. and to purchase 39.73% (i.e. 11,098,617 shares) of Trend – všeobecný investiční fond a.s., with its seat at Hradec Králové, Škroupova 9/441, Company ID No. 45245177. They increased the requested redemption price up to 295,000,000 CZK, otherwise they would not withdraw their lawsuits against Kotva a.s., Kotva nemovitosti k.s. and SPV KN a.s., thus causing high financial losses to these companies. The extortion itself was represented by filing the above actions, by personal

K 0044

5

contacts of the accused with representatives of Kotva a.s., and by a telephone call, by fax and e-mail messages sent to these representatives.

Subsequently, the accused Hoffmann has demanded individually from Kotva a.s. by extortion, from November 2004 to date, payment of 45,000,000 CZK as compensation for withdrawal of claims against Kotva a.s. filed by his companies, i.e. Gilroy Limited and Balfindor a.s. He forced Kotva a.s. to conclude with him a preliminary agreement on compensation for withdrawal of the above claims filed by his companies. The extortion itself was represented by filing the above actions by the companies owned by Hoffman, and by a telephone call, by fax and e-mail messages sent to the representatives of Kotva a.s.

By the foregoing conduct, the accused committed the above criminal offence to the detriment of the following injured parties:

Kotva a.s.

Kotva nemovitosti k.s.

SPV KN a.s.

Martin Benda, born on 8 September 1971

Richard Harazim, born on 10 March 1965.

## Statement of reasons

Kotva a.s. filed on 27 August 2004 to the Police of the Czech Republic, Administration of the Capital City of Prague, Criminal Police and Investigation Service, Kongresová 2, Prague 4, criminal charges against the accused Weiss and the accused Hoffmann regarding the criminal offence described above. Subsequently, an explanatory interrogation with the injured parties Harazim and Benda was carried out. The police seized documents evidencing extortion. Furthermore, having obtained court permission, the police tapped telephone calls in this matter. These calls and seized documents, the criminal charges and explanatory interrogation sufficiently documented this offence. It was ascertained that there are sufficient grounds, pursuant to Section 160(1) of the Criminal Procedure Code, to start criminal prosecution of specific persons who committed such offence. Therefore, the criminal prosecution of the above accused was started.

**K 0045**

6

**Instruction:**

Pursuant to Section 36(3) of the Criminal Procedure Code, you, as the accused, must have a legal counsel to defend you at the pre-trial proceeding, because you have committed an offence that is punishable under the law by a prison sentence with the upper limit of more than 5 years. If you fail to choose a counsel by yourself or if the counsel is not selected by the persons listed in Section 37 of the Criminal Procedure Code within two hours of the service of this Decision, the defence counsel shall be appointed for you in accordance with Section 38(1) of the Criminal Procedure Code.

I further instruct you that every accused must have his own defence counsel, because the interests of individual accused at this criminal suit are conflicting.

I further instruct you that the following persons will be heard among the witnesses in this criminal matter: Mgr. Ondřej Peterka, Mgr. Jiří Černý and Mgr. Ladislav Chundela of the law offices of Peterka & Partners v.o.s., and JUDr. Ing. Petr Šrámek, listed in the attorneys register of the Czech Bar Association under no. 5076; therefore, you cannot choose these persons as your defence counsels pursuant to Section 37 of the Criminal Procedure Code.

A complaint against this decision may be filed by an accused within three days of the service hereof with the police authority that has prepared this decision. Such complaint has no suspensory effect.

Ing. Pavel Brož

Police Commissioner: *[Signature]*

Accepted by the accused Ing. Vladimír Hoffman on 3 February 2005 at 2:00 p.m. *[Initial]*

Accepted by the accused Andrew Weiss                on

Accepted by the accused Edita Šimková             on 3 February 2005 at 11.20 a.m.

*[Signature]*

**K 0046**

**POLICIE ČESKÉ REPUBLIKY**
SPRÁVA HLAVNÍHO MĚSTA PRAHY
*služba kriminální policie a vyšetřování*
odbor hospodářské kriminality
**140 21 PRAHA 4, Kongresová 2**                     -1-

ČTS:PSP-4035/OHK-3-2004

Praha dne 3. února 2005

U S N E S E N Í

Podle ustanovení § 160 odstavce 1 trestního řádu zahajuji trestní stíhání obviněných:

1)    ing. Vladimír Hoffmann,
      státní příslušník České republiky,
      narozen 30.10.1965 v Bratislavě I, Slovenská republika,
      rodné číslo 651030/6990,
      trvale bytem Medinská 825,
                  Klánovice, Praha 9, 190 14,
      majitel firmy Balfindor a. s., IČO 27107892,
      sídlo firmy Na Kocourkách 2915, Praha 6,
      majitel firmy Gilroy Limited, IČO 0090061682,
      sídlo firmy Pikioni, 4, Limassol, Kyperská republika,


2)    Edita Šimková,
      státní příslušník České republiky,
      narozená 27.7.1968 v Slovenské republice,
      rodné číslo 685727/6140
      trvale bytem Na Folimance 2153/19,
                  Vinohrady, Praha 2, 120 00,
      předseda představenstva firmy Balfindor a. s., IČO 27107892,
      sídlo firmy Na Kocourkách 2915, Praha 6,


3)    Andrew Weiss,
      státní příslušník Spojených států amerických,
      narozen 2.1.1947, pas č. Z7528881,
      bytem 46 Abbottsford Road, 2 Brookline, Massachusetts, 2446 USA,
      majitel firmy Weiss Asset Management,
      adresa firmy 29 Commonwealth Avenue, Boston, Massachusetts 02116,
      která spravuje firmu Brookdale Global Opportunity Fund,
      adresa firmy        P. O. BOX 1748, GT 27 Hospital Road, George Town,

-2-

Grand Cayman, Cayman Islands,

ovládá firmu KT,Inc.,

se sídlem 2711 Centerville Road, Suite 400, City of Wilmington, County of Newcastle, Delaware, USA,

pro trestný čin

"Vydírání" podle § 235 odstavce 1, odstavce 3 trestného zákona ve spolupachatelství podle § 9 odstavce 2 trestního zákona,

neboť na základě doposud zjištěných skutečností je dostatečně odůvodněn závěr,

že obviněný Andrew Weiss a obviněný ing. Vladimír Hoffmann, dne 12.5.2004 v 14.00 hod, v francouzské restauraci v Obecním domě v Praze 1, náměstí Republiky 1090/5, požadovali po managementu společnosti Kotva a. s., IČ 60193808, se sídlem Praha 1, náměstí Republiky 8, zastupovanou ředitelem společnosti Kotva a. s., Richardem Harazimem, narozeným 10.3.1965, trvale bytem Přezletice, U bažantnice 305, okres Praha - východ, a předsedou dozorčí rady společnosti Kotva a. s., Martinem Bendou, narozeným 8.9.1971, trvale bytem Borač 46, okres Žďár nad Sázavou, odkoupení 11,9% akcií základního jmění společnosti Kotva a. s., což je 82.782,-ks akcií, které jsou v majetku společnosti Brookdale Global Opportunity Fund, P. O. BOX 1748, GT 27 Hospital Road, George Town, Grand Cayman, Cayman Islands, které tyto akcie spravuje obviněný Weiss Andrew, prostřednictvím jeho společnosti Weiss Asset Management, 29 Commonwealt Avenue, Boston, Massachusetts 02116, za částku 4.000.000,- amerických dolarů s tím, že pokud nedojde k uvedenému odkoupení akcií, tak obviněný Weiss zajistí zablokování nemovitosti Obchodního domu Kotva, nacházející se na adrese náměstí Republiky 8, Praha 1, prostřednictvím katastru nemovitostí, podáním vykonstruovaných účelových žalob k soudu proti společnosti Kotva a. s., a tím zásadním způsobem naruší Holdingu Kotva jednání s možnými strategickými partnery a finančními institucemi ohledně financování provozu a prodeje Obchodního domu Kotva a omezí tak dispozici s tímto majetkem na několik let, protože je mu známo, že společnost Kotva a. s. má uzavřenou smlouvu na prodej uvedeného Obchodního domu Kotva, od které nemůže odstoupit, a je v časové a finanční tísni, a když hned společnost Kotva a. s. nekoupí jeho akcie, tak příští nabídka bude podstatně vyšší, a v případě, že společnost Kotva a. s. odmítne od něj nakoupit uvedené akcie, tak ještě na představenstvo společnosti Kotva a. s. podá trestní oznámení, tímto způsobem obvinění vydírali uvedenou společnost Kotva a. s. a samotné představenstvo společnosti Kotva a. s. způsobením škody velkého rozsahu, pohrůžkou násilí nebo jiné těžké újmy nucením, aby společnost Kotva a. s. a její představenstvo něco konali, opominuli nebo strpěli, přestože uvedení zástupci společnosti Kotva odmítali provést uvedený nákup akcií s poukazováním na skutečnost, že požadovaná cena za akcie společnosti Kotva je

-3-

nepřiměřené předražená a navíc společnost Kotva nesmí nakupovat své vlastní akcie,

následně společně obviněný Weiss a obviněný Hoffmann, prostřednictvím společnosti Gilroy
Limited a společnosti Balfindor a. s., informovali strategického partnera společnosti Kotva a. s.
pana Henryho Prestige, a peněžní ústavy, financující provoz společnosti Kotva a. s., že byly
podány žaloby na společnost Kotva a. s., jak je níže uvedeno, čímž zkomplikovali podnikání
společnosti Kotva a. s., přičemž vyrozumění strategického partnera a peněžních ústavů bylo za
cílem znemožnění prodeje nemovitostí společnosti Kotva a. s., strategickému partnerovi,

následně společně obviněný Hoffmann, jako majitel společnosti Balfindor a. s., obviněná
Šimková, jako předseda představenstva společnosti Balfindor a. s., a obviněný Weiss, který
obviněnému Hoffmannovi a obviněné Šimkové dal pokyn podat níže uvedenou žalobu, podali
v zastoupení advokáta Mgr. Ondřeje Peterky, vedený v seznamu advokátů u České advokátní
kanceláře pod číslem 4245, za společnost Balfindor a. s., IČO 27107892, se sídlem Praha 6 Na
Kocourkách 29/5, která účelově nakoupila dne 8.6.2004 od obviněného Hoffmanna 1 ks akcií
společnosti Kotva a. s., žalobu na určení neplatnosti valné hromady, proti společnosti Kotva a.
s., IČO 60193808, k Městskému soudu v Praze, téhož dne 8.6.2004, a současně podali k
Katastrálnímu úřadu Praha - město, uvedenou žalobu s návrhem na vyznačení plomby do
katastru nemovitostí na pozemky a nemovitosti společnosti Kotva a. s.,

následně společně obviněný Hoffmann, jako majitel společnosti Gilroy Limited, a obviněný
Weiss, který dal pokyn obviněnému Hoffmannovi podat níže uvedenou žalobu, podali v
zastoupení advokáta Mgr Ondřeje Peterky, za společnost Gilroy Limited, IČO 0090061682, se
sídlem Pikioni, 4, Limassol, Kyperská republika, která vlastní část akcií společnosti Kotva a. s,
žalobu na určení vlastnického práva k nemovitostem, proti společnosti Kotva a. s., IČO
60193808, proti společnosti Kotva nemovitosti k.s., se sídlem Příkopy 4 Brno, IČO 26229048,
proti společnosti SPV KN a. s., se sídlem Příkopy 4 Brno, k Městskému soudu v Praze, dne
30.6.2004, a současně, dne 2.7.2004, podali k Katastrálnímu úřadu Praha - město, uvedenou
žalobu s návrhem na vyznačení plomby do katastru nemovitostí na pozemky a nemovitosti
společnosti Kotva a. s., společnosti Kotva nemovitosti k.s. a společnosti SPV KN a. s.,

následně společně obviněný ing. Vladimír Hoffmann, narozen 30.10.1965, rodné číslo
651030/6990, trvale bytem Praha 9 Medínská 825, jako majitel části akcií společnosti Kotva a.
s., s MUDr. Petrem Streibergem trvale bytem Praha 6 Na Kuthance 16/1218, narozen
18.10.1955, jako majitelem části akcií společnosti Kotva a. s., a s obviněným Weissem, jako
majitelem společnosti Weiss Asset Management, adresa společnosti 29 Commonwealth
Avenue, Boston, Massachusetts 02116, která spravuje společnost Brookdale Global
Opportunity Fund, se sídlem P. O. BOX 1748, GT 27 Hospital Road, George Town, Grand
Cayman, Cayman Islands, která vlastní část akcií společnosti Kotva a. s., podali v zastoupení
advokáta Mgr. Jiřího Černého v instituci Mgr. Ondřeje Peterky, za společnost Brookdale

-4-

Global Opportunity Fund a osobně za obviněného ing. Vladimíra Hoffmanna a osobně za MUDr. Petr Streitberga, žalobu na vyslovení neplatnosti valné hromady, konané dne 20.6.2002, proti společnosti Kotva a. s., k Městskému soudu v Praze, dne 15.7.2004, a současně podali k Katastrálnímu úřadu Praha - město, uvedenou žalobu s návrhem na vyznačení plomby do katastru nemovitostí na pozemky a nemovitosti společnosti Kotva a. s.,

následně samostatně obviněný Weiss, který ovládá společnost KT, Inc., se sídlem 2711 Centerville Road, Suite 400, City of Wilmington, County of Newcastle, Delaware, USA, která vlastní část akcií společnosti Kotva a. s., prostřednictvím společnosti Brookdale Global Opportunity Fund, která rovněž vlastní část akcií společnosti Kotva a. s., podal v zastoupení advokáta Mgr. Ondřeje Peterky, za společnost KT, Inc., žalobu na určení vlastnického práva k, nemovitostem, k Městskému soudu v Praze, dne 23.12.2004,a současně podal k Katastrálnímu úřadu Praha - město, uvedenou žalobu s návrhem na vyznačení plomby do katastru nemovitostí na pozemky a nemovitosti společnosti Kotva a. s.,

následně všichni tři obvinění, opakovaně, od 12.5.2004 až do současnosti, vydíráním požadovali odkoupení 11,9 % akcií společnosti Kotva a. s. a 39,73 % akcií, (což je 11098617 akcií) společnosti Trend - všeobecný investiční fond a. s., se sídlem Hradec Králové, Škroupova 9/441, IČO 45245177, od samotné společnosti Kotva a. s., a zvyšovali svůj požadavek až na částku 295 000 000,-Kč, že jinak nestáhnou podané žaloby na společnost Kotva a. s., na společnost Kotva Nemovitosti k.s. a na společnost SPV KN a. s., a způsobí tím uvedeným společnostem vysoké finanční ztráty, přičemž samotné vydírání probíhalo podáváním žalob, jak je výše uvedeno, dále prostřednictvím osobního kontaktu obviněných s zástupci společnosti Kotva a. s., dále prostřednictvím telefonního hovoru, dále prostřednictvím zasílání faxů a dále prostřednictvím zasílání emailů prostřednictvím počítače zástupcům společnosti Kotva a. s.,

následně samostatně obviněný Hoffmann, od listopadu 2004 do současnosti, vydíráním požadoval po společnosti Kotva a. s. zaplacení 45 000 000,-Kč, jako odstupné za stažení žalob na společnost Kotva a. s. od jeho společností a to od společnosti Gilroy Limited a od společnosti Balfindor a. s., přičemž donutil společnost Kotva a. s., sepsat s ním předběžnou smlouvu na uvedené odstupné za stažení výše uvedených žalob od jeho firem, přičemž samotné vydírání bylo provedeno způsobem podáním výše uvedených žalob a firem, které byly v majetku obviněného Hoffmanna, dále prostřednictvím osobního kontaktu s zástupci společnosti Kotva a. s., dále prostřednictvím telefonního hovoru, dále prostřednictvím zasíláním faxů a dále prostřednictvím zasílání emailů prostřednictvím počítače zástupcům společnosti Kotva a. s.,

tímto svým jednáním se dopustili obvinění, shora uvedeného trestného činu ke škodě těmto poškozeným :

-5-

pošk. společnost Kotva a. s.,
pošk. společnost Kotva Nemovitosti k.s.,
pošk. společnost SPV KN a. s.,
pošk. Martin Benda narozen 8.9.1971,
pošk. Richard Harazim narozen 10.3.1965.

## Odůvodnění

Dne 27.8.2004 bylo podáno trestní oznámení k Policii České republiky, Správě hlavního města Prahy, službě kriminální policie a vyšetřování, Kongresová 2 Praha 4, od společnosti Kotva a. s., na obviněného Weisse a obviněného Hoffmanna pro shora uvedený trestný čin. Dále bylo provedeno podání vysvětlení od poškozeného Harazima a od poškozeného Bendy. Police zajistila doklady, které dokladují trestný čin vydírání. Dále policie na základě soudního povolení, prováděla odposlechy telefonních hovorů v této věci. Na základě těchto odposlechů a zajištěných dokladů a trestního oznámení a podání vysvětlení byl dostatečně zadokumentován tento trestný čin. Bylo zjištěno, že je dostatečný důvod k zahájení trestního stíhání podle § 160 odstavce 1 trestného řádu, pro výše uvedený trestný čin a to konkrétním osobám. Proto bylo zahájeno trestní stíhání uvedených obviněných.

**Poučení:**

Jako obviněný musíte mít podle ustanovení §36 odstavce 3 trestního řádu obhájce již v přípravném řízení z důvodu nutné obhajoby, neboť se jedná o trestný čin, na který zákon stanoví trest odnětí svobody, jehož horní hranice převyšuje 5 let. Pokud si sám obhájce nezvolíte a nezvolí Vám jej osoby uvedené v ustanovení § 37 trestního řádu do dvou hodin od doručení tohoto usnesení, bude Vám ustanoven obhájce podle ustanovení § 38 odstavce 1 trestního řádu.

Dále Vás poučuji o tom, že každý obviněný musí mít vlastního obhájce, neboť zájmy jednotlivých obviněných si v tomto trestním řízení odporují.

Dále Vás poučuji o tom, že v této trestní věci budou mimo jiné vyslechnuti jako svědci Mgr. Ondřej Peterka, Mgr. Jiří Černý a Mgr Ladislav Chundela, z advokátní kanceláře Peterka & Partners v.o.s., a dále JUDr. ing. Petr Šrámek, vedený v seznamu advokátů u České advokátní kanceláře pod číslem 5076, a proto si jako obhájce výše uvedené osoby nemůžete zvolit za své obhájce podle ustanovení § 37 trestního řádu.

-6-

Proti tomuto usnesení je přípustná stížnost, kterou může podat obviněný do tří dnů od doručení tohoto usnesení u policejního orgánu, který toto usnesení vyhotovil. Stížnost nemá odkladný účinek.



kpt. ing. Pavel Brož

Policejní komisař :

| | | |
|---|---|---|
| Obviněný ing. Vladimír Hoffmann | převzal dne | v hod |
| Obviněný Andrew Weiss | převzal dne | v hod |
| Obviněná Edita Šimková | převzala dne | v hod |

## Jack Hsiao

**From:** Dave Johnson
**Sent:** Thursday, November 20, 2003 11:23 AM
**To:** 'Vladimír Hoffmann'
**Subject:** RE: Kotva update

Vlado-
We'll call you at 3pm today.  I have not received an engagement letter yet from Andel &
Svobodova.  When would they like it signed by?  I guess I have a few questions to be
answered.
1) How detrimental is the London Arbitration to our shares of Trend?  Is it worth it to
not fight the arbitration and partner with Woolf or is there any value in fighting for our
Trend shares?
2) Have we tried to go back and talk to Fidea Consulting?  I still believe 20 million is
unreasonable, but given the circumstances, 25-30 million might not be a bad option and
then continue the fight on Trend.
3) Have we looked into hiring the PR firm yet?  If they are worried about us making them
look bad in the press, perhaps we should make them a little nervous by pursuing that route
4) Under bankruptcy, would we receive anything?  Is there any way to prevent bankruptcy or
buy some debt of Kotva as well to hedge ourselves?
5)Wouldn't bankruptcy negate the capital increase?  I'm unsure of how bankruptcy works in
the Czech Republic, but in the US equity holders usually get nothing and the debt holders
take control.  How much debt of Kotva does Forminster have?  Will Forminster write up a
lot of receivables and what is the likelihood we could invalidate these claims?
6)What is our best and worst case scenarios?  The more I learn about this, the more I feel
as though we're powerless in this situation and that we need settle or we'll lose
everything.

Looking forward to our conversation.

Regards,
Dave


-----Original Message-----
From: Vladimir Hoffmann [mailto:vladol@volny.cz]
Sent: Wednesday, November 19, 2003 3:39 PM
To: Dave Johnson; Eitan Milgram; Andrew Weiss
Subject: Kotva update

Dear Andy,

I spoke today with Marta Gutova, James Woolf's assistant. She told me that James refuses
to cooperate with us because we do not respect the results of the London Arbitration. Not
only they rejected the proposed swap of our Trend shares for their claim, they also
rejected our offer to share the legal costs to fight the capital increase of Kotva. She
also told me that they think that our Trend shares are worth zero.

From the Real Estate Register I learned that they have registered a pledge against Kotva
for Fidea Consulting's claim of CZK 700 million and a right of first refusal !!! Fidea
Consulting is the company that owns 14 % of Kotva and that offered CZK 20 million for our
Kotva shares. Now I understand why Harazim told me that Kotva's shares have no value and
that they offered 20 million just to get rid of us - to avoid potential lawsuits or bad
publicity that we could create ! I also understand Maras's of Fidea notes that our
valuation of Kotva shares might not reflect "potential" claims that were not yet in the
accounting ...

This afternoon I also met the lawyers that I want to hire to work for us in Kotva/Trend
situation. Their name is Andel & Svobodova. They will send you the contract in English
tomorrow. They charge CZK 2000 per hour (about USD
75) and they will ask for a prepayment of CZK 30000 (about USD 1100) since we are a new
client. They agreed to start working immediately but please process their contract and

W0010600

invoice without delay.

I asked them to look how we could:

1) Block the capital increase of Kotva
2) Block Forminster from voting their shares
3) Block any potential transfer of Kotva building and block the sale of Kotva Nemovitosti shares
3) Learn more about the Fidea's claim against Kotva
4) Learn more about Barbican's claim against Kotva
5) Find out who the small creditors of Trend are
6) Invalidate the auction of Trend's receivable
7) Map all the lawsuits, both criminal and business that are under way
8) Discourage potential buyers of Kotva from the purchase

We also discussed the situation generally and I fear that maybe Forminster's master plan could be the bankruptcy of Kotva. The bankruptcy would be even more detrimental to the value of our shares than the capital increase.
Morover the bankruptcy would "clean" the building from any liens and thus would make it better sellable.

I should get the documents about Fidea's lien from the Real Estate Register tomorrow and we will se if they have any real ground.

I am enclosing a new spreadsheet with Kotva NAV reflecting these "new"
claims. If Fidea's claim is approved, the NAV of our stake in Kotva goes down to CZK 17 million.

Please call me tomorrow (Thursday) at about 3.00PM your time to discuss this.

Regards,

Vladimir.
---
Odchozí zpráva neobsahuje viry.
Zkontrolováno antivirovým systémem AVG (http://www.grisoft.cz).
Verze: 6.0.538 / Virová báze: 333 - datum vydání: 10.11.2003

2

W0010601

# EXHIBIT J

(Not Filed Electronically)

# EXHIBIT K
(Not Filed Electronically)

| | |
|---|---|
| **From:** | jan veverka [vevejan@centrum.cz] |
| **Sent:** | Tuesday, August 26, 2003 6:08 AM |
| **To:** | Andrew Weiss |
| **Subject:** | Re: Kotva/trend/Veverka |

August 26, 2003

Dear. Mr. Weiss,

Your proposal is very interesting for me. Thank. You. In my opinion we should concrete, what I could do for You and which post of me. (The post regarding investment fund law and commercial code).
For our cooperation we sholud emhasize:
- Your interest as an investor,
- Situation, in which Trend is,
- Condition for chairmen functions given by laws.

Summarization:
1. Investmen fund Trend is in the bankruptcy. It is manager of bankruptcy, who desides about all property and jurisdical aspects. The power of board of directors is, we can say, none. Board of directors can not decide about property and it can not sign any contract.

2. It is justice who is supervise the functioning of manager of bankruptcy, the influence of the Securities Commission on course of bankkruptcy is very small.
3. According to the law, all investment funds must be changed after the year 2002 to open mutual fund, otherwise it will be liquidated. After the end of the bankruptcy, investmen fund Trend be also liquidated. But it can be realized after a long period of time.
4. If there was a decision, in spite of given facts, to change board of directors, the old board of directors would have to ask Securities Commisison for preliminary agreement to appoint this person.
5. I was talking about actual situation of Trend with a members of Securities Commission. Some important decisions still have not be done, some of them are in the process of solving.

In the post of member, repectively chairman of the board of directors I can enforce your interests by persuading, negotiating an pressing on institutions, partners or manager of bankruptcy to do this acts.
But I can negotiate more actively if you give me power of attorney to represent your interes.

The range of activities and conditions of our cooperation written in your letter from 15 th August 2003 are acctetable for me.

Please, consider my commentary and let me know your opinion, please.

Internet e-mail is good form of communication for me.  Use my old address:
ing.veverka@quick.cz or my new address: vevejan@centrum.cz. My home phone is 420 384 386 141. This is also the number of my fax. My mobile phone is 420 602 227 116.

What concerns distribution of the cash that is held by Manhattan IF, there is problem with selling of United Energy. The process will be quicker as soon as possible after this shares are sold. (This is target of  ING Bank).

Best Regards
Jan Veverka

1

W0001251

| | |
|---|---|
| **From:** | jan veverka [vevejan@centrum.cz] |
| **Sent:** | Wednesday, September 10, 2003 2:40 PM |
| **To:** | Andrew Weiss |
| **Subject:** | Recommendation |

Dear Mr. Weiss,

Thank You very much for Your nice letter. I am glad, that You appreciate my work.
You asked me who do I think would be better collaborator for You. I mean, that it is not
the most important if Your expense will be 20% or 30%. The most important is to win Your
dispute. I recommend You Mr. Hoffman because he knows better czech and foreign character,
he can negotiate very well and he is more accteptable for all participators.
If You decide for Mr. Hoffman      I agree to cooperate with him immediately when I feel
healthy.

Best Regards,                Jan Veverka

1

W0001253