UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
KOTVA a.s.                              )
                                        )
                    Plaintiff,          )        Case No. 05-10679-RCL
                                        )
            v.                          )
                                        )
ANDREW WEISS and WEISS ASSET            )
MANAGEMENT, LLC                         )
                                        )
                    Defendants.         )
_____)

### KOTVA'S OPPOSITION TO WEISS' MOTION FOR PROTECTIVE ORDER

### INTRODUCTION

With high rhetoric, Andrew Weiss has brought claims against Kotva for participation in an alleged conspiracy to defraud investors and has repeatedly sought to compel Kotva to provide ever increasing reams of information by invoking the "wide-ranging" discovery rules. With the shoe on the other foot, however, Weiss now seeks a protective order to "defer" his own deposition until the Czech criminal action against him is concluded. Weiss is not entitled to any such stay.

First and foremost, the United States Supreme Court has expressly held that the Fifth Amendment privilege against self-incrimination does not extend to foreign criminal proceedings. U.S. v. Balsys, 524 U.S. 666 (1998). Even if the privilege were available, Weiss has waived any right to seek shelter from this Court to stay his own deposition by his hard-charging pleading and discovery tactics. He has made no previous motion to stay this action. Indeed, Weiss has aggressively prosecuted counterclaims and actively pursued discovery, receiving the benefit of:

- more than 400 pages of deposition testimony provided by Kotva's Rule 30(b)(6) representative during more than 11 hours of questioning over two days—which Kotva has agreed to continue for an additional three hours;

- over 10,000 pages of documents produced by Kotva in response to two sets of demands for production comprising seventy-five separate document requests; and

- responses and supplemental responses to three separate sets of interrogatories.

The First Circuit aptly described a stay request by a similarly aggressive litigant as *chutzpa*, bordering on bad faith.  Lugo v. Alvarado, 819 F.2d 5, 6-7 (1st Cir. 1987).

Finally, all the equities here weigh heavily against the requested stay.  Weiss' deposition - - including his recitation of the critical face-to-face meetings and correspondence relating to the blackmail scheme - - are at the heart of Kotva's claims.  Any delay in his deposition effectively grinds the litigation to a halt, because certainly defendants cannot be permitted to take further discovery against Kotva, while Kotva (the plaintiff in this action) must sit passively.  Since February 2005, Weiss has refused to accept service of the Czech criminal charges and has unsuccessfully attempted to pressure the Czech government—through multiple channels—to drop them.  Because of Weiss' delay tactics, the Czech criminal proceedings could take years.

In short, Weiss' actions have consequences:

> The only unfairness that the Court perceives is the moving party's assertion that it would be unfair to treat him normally.  The defendant seems to be seeking privileged litigating status because of his own delinquencies.  That defendant's conduct also resulted in a criminal charge against him should not be availed of by him as a shield against a civil suit and prevent plaintiff[s] from expeditiously advancing [their] claim.

Arden Way Associates v. Boesky, 660 F. Supp. 1494, 1497 (S.D.N.Y. 1987) (quotation and citation omitted).

**BACKGROUND**

*Weiss' Blackmail Scheme*

As detailed in Kotva's April 2005 Complaint, Weiss blackmailed Kotva after he learned through the press that Kotva planned to sell its shopping center. When Kotva refused Weiss' demand that it "repurchase" BGO's shares in Kotva, Gilroy Limited ("Gilroy") and KT, Inc. ("KT") purchased nominal shares of Kotva's stock and filed lawsuits in the Czech Republic, challenging the transfer of the Department Store from Kotva to its subsidiary—which had occurred three years earlier—solely to interfere with the shopping center sale. Weiss thereafter made ever increasing demands on Kotva to purchase BGO's shares, and promised that he would "attempt to influence" Gilroy and KT to drop the suits if his price demands were met. In all of his communications to Kotva, however, Weiss denied any connection with Gilroy or KT.

*The Czech Criminal Complaint and Criminal Charges Against Weiss*

Although Kotva suspected that Weiss was behind the Gilroy lawsuit challenging Kotva's ownership of the Department Store, it lacked information about Gilroy's ownership structure. Compl. ¶ 26. On August 23, 2004, however, Kotva received written confirmation from Weiss that he was behind the sham lawsuit. Compl. ¶ 29. Within days of the confirmation, on August 27, 2004, Kotva filed a criminal complaint about Weiss' blackmail scheme with the appropriate Czech authorities. (*See* Czech Police Criminal Charge attached hereto as Ex A.) After receiving Kotva's complaint, the Czech police initiated an investigation that resulted in criminal charges of extortion against Andrew Weiss, Vladimir Hoffmann, and Edita Simkova on February 3, 2005. *Id*. After Weiss and Vladimir Hoffmann were criminally charged with extortion by the Czech

police, Weiss reversed course, and asserted that the Czech lawsuits were filed by him to protect the interests of BGO and its investors.[1]

Weiss' unsupported spy-novel allegations of "influence" and "collusion" with the Czech police have no basis whatsoever.[2]  See Mem. at 2. 14-15; Motion at 1-2.  The chain of events is documented and straightforward:  Kotva filed a complaint with the police; the police investigated, gathered evidence, and initiated prosecution.  There have been no "malicious governmental tactics."  Indeed, the Czech courts approved certain wire taps and the case has been thoroughly investigated to date:

> Kotva a.s. filed on 27 August 2004 to the Police of the Czech Republic . . . criminal charges against the accused Weiss and the accused Hoffmann regarding the criminal offence described above.  Subsequently, an explanatory interrogation with the injured parties Harazim and Benda was carried out.  The police seized documents evidencing extortion.  Furthermore, having obtained court permission, the police tapped telephone calls in this matter.  The calls and seized documents, the criminal charges and explanatory interrogation sufficiently documented this offence.  It was ascertained that there are sufficient grounds, pursuant to Section 160(1) of the Criminal Procedure Code, to start criminal prosecution of specific persons who committed such offence.  Therefore, criminal prosecution of the above accused was started.

Criminal Charge at K0045 (emphasis added).  Court-sanctioned investigation hardly constitutes the type of "corrupt" legal system that Weiss now wails against in his motion.  Mem. at 15.

### *Weiss' Efforts to Delay Service of the Criminal Charges*

Weiss is the only accused defendant who has not accepted service of the charges, apparently to stall the criminal proceedings against him.  Kotva has learned that since at least

---

[1] Weiss' determination to interfere with Kotva's business and disrupt the pending sale of the Department Store subsequently extended to direct contact with the bank for the purchasers of the Department Store to delay or impede the financing.  As a result of the Czech lawsuits, the sale of the Department Store has been severely impaired, costing Kotva millions of dollars as a result of the buyer holding back more than $24,000,000 U.S., almost 40% of the purchase price.  Compl. ¶ 37.

[2] There is no good faith basis or evidentiary support for accusing Kotva of colluding with the Czech police.  Collusion "implies the existence of fraud of some kind, the employment of fraudulent means, or of lawful means for the accomplishment of an unlawful purpose."  Black's Law Dictionary (West 6th ed. 1990).  Weiss' allegations should be withdrawn pursuant to Fed. R. Civ. P. 11.

March 2005 Weiss has attempted to pressure the Czech prosecutors to drop the charges and interfere with service of the criminal charges. In addition to the U.S. State Department, Weiss also has attempted to involve various U.S. politicians on his behalf and retained former Secretary of State Madeline Albright's lobbying firm to influence the upper echelons of the Czech Government, including the Czech Prime Minister, the Czech Ambassador, and the Minster of Justice.[3] *See generally* Ex. K to Kotva's Motion to Compel. Notwithstanding Weiss' pressure, the Czech authorities have not dismissed the charges.

Weiss now represents that he is challenging a subpoena to testify that he received from the U.S. Attorney's Office in response to a request by the Czech Government under the Mutual Legal Assistance Treaty ("MLAT"). Mem. at 5. Kotva has been informed that the mechanical process of service under the MLAT should occur on May 1, 2006—subject, of course, to Weiss' cooperation.

### *Kotva Has Fully Responded to Weiss' Discovery*

As set forth in the Czech criminal charge, Weiss was charged with extortion on the basis of the following evidence gathered to date:

- Documents seized apparently from Vladimir Hoffmann and his counsel Ondrej Peterka;

- Tapped telephone conversations approved by the Czech Courts; and

- Interrogations of witnesses.

(Weiss Criminal Charge, p. 5).

Kotva, as the victim of the extortion, was permitted access to limited portions of the criminal file in 2005. The Czech Police subsequently sealed the criminal file until after Weiss is

---

[3] Weiss' baseless allegations of Czech corruption and collusion are exposed by his efforts to have the charges dismissed. Or, does Weiss now contend that the Czech Prime Minister, Czech Ambassador, Minister of Justice, and supervising prosecutor handling the case are corrupt as well?

served with criminal charges, when Weiss will have full access to the criminal file.  In any event,

Kotva has produced to Weiss all documents it was permitted to copy from the criminal file

before the file was sealed.

### Recordings of Vladimir Hoffmann

With respect to recordings, Kotva's Czech counsel possessed recordings of meetings with

Vladimir Hoffman that were conducted <u>before</u> the Czech police were involved.  On February 9,

2006, the Vladimir Hoffmann recordings were turned over to the Czech police.  After Weiss

asked for the recordings at Kotva's Rule 30(b)(6) deposition on February 22 – 23, 2006, Kotva

requested the recordings from the police to turn over to Weiss.  The Czech police refused, stating

that turning over the tapes would frustrate the investigation and influence those that have yet to

be interrogated (i.e. Weiss)  (See letters exchanged with the Czech police attached as Ex. B).

### Kotva's Rule 30(b)(6) Deposition

In response to Weiss' Rule 30(b)(6) deposition notice, Kotva agreed to provide testimony

in excess of the one-day, seven-hour limitation it was required to provide.  See Fed. R. Civ. P.

30(d)(2).  Richard Harazim, on behalf of Kotva, traveled to Boston and testified for more than 11

hours of questioning over two days.  The transcript of Mr. Harazim's deposition testimony

comprises more than 400 pages, and Kotva has agreed to make Mr. Harazim available for several

more hours of questioning.  During the deposition, Mr. Harazim answered all of the questions

posed to him with one minor exception:  upon instruction from Czech counsel, so as not to

violate Czech law or compromise the Czech authorities' criminal investigation, Mr. Harazim

testified that he could only answer questions about what meetings were recorded by the police

<u>after</u> Mr. Weiss had been served with the criminal charges.  (See Harazim Dep. at 283, relevant

pages attached as Ex. C.)  Mr. Harazim and counsel explained that Kotva was not refusing to

answer such questions, only that it could not answer them until service upon Mr. Weiss had been

confirmed.   Weiss, however, entirely omits that explanation in his quotation of Mr. Harazim's

testimony in the motion for protective order:

> Q.  Again, you will have to come back for further depositions --
>
> MR. BECKMAN:  He's happy to come back after Mr. Weiss --
>
> A.  [by Mr. Harazim]  <u>The moment Mr. Weiss accepts or confirms the receiving of those documents, that the criminal proceedings are against him started, I may talk about it the whole day</u>.

Harazim Dep. at 284:4-11 (directly following ellipsis in Weiss Mem. at 13; emphasis added).

The following exchange further underscores  Kotva's willingness to respond to Weiss' inquiries:

> Q.  Well, I asked you what tape recordings and video recordings and transcripts you are aware of with respect to Mr. Hoffmann and Mr. Weiss after August 27, 2004?
>
> A.  I have instruction, I have clear instruction from my Czech lawyers until, until the criminal – until Mr. Weiss will be formally charged with the criminal complaint, I cannot talk about it, because I can be an obstruction for the Czech police investigation, which is ongoing.
>
> MR. BECKMAN:  Do you know now –
>
> THE INTERPRETER:  Obstruct.
>
> MR. BECKMAN:  Do you know, Ned, whether Mr. Weiss has been served with the criminal charges?
>
> MR. LEIBENSPERGER:  I just want to ask the questions here in the deposition.
>
> MR. BECKMAN:  Because if he has, then the witness is here, and he'll answer your question.  He'll answer all your questions.  If you can represent that he's been served with the papers by the --
>
> MR. LEIBENSPERGER:  Well, I don't want to get into a debate about the criminal procedure in the Czech Republic, you know.

Harazim Dep. at 287:6-288:5.

## ARGUMENT

**I.    Weiss' Fifth Amendment Rights Do Not Extend to Foreign Criminal Proceedings**

Weiss asks that he be excused from giving a deposition in this action so that he does not have to choose between exercising his Fifth Amendment right against self-incrimination in a foreign criminal proceeding and suffering an adverse inference in this litigation.  Mem. at 14 ("If the Court does not enter a protective order, Mr. Weiss will be unfairly forced to choose whether to exercise his constitutional rights in a criminal case and suffering the consequences in a civil case.").  Weiss' entire argument, however, is premised on the incorrect notion that his "constitutional right" against self-incrimination applies to a foreign criminal proceeding.  It does not.

The United State Supreme Court has held that concerns with foreign prosecution are beyond the scope of the Fifth Amendment privilege against self-incrimination.  U.S. v. Balsys, 524 U.S. 666, 669 (1998).  In Balsys, the Office of Special Investigations of the Department of Justice's Criminal Division subpoenaed Balsys to testify about his wartime activities between 1940 and 1944.  Balsys claimed the Fifth Amendment privilege against self-incrimination based on his fear of prosecution by a foreign nation.  Id. at 666.  Thus, the issue squarely before the Court was "whether a criminal prosecution by a foreign government not subject to our constitutional guarantees presents a "criminal case" for purposes of the privilege against self-incrimination."  After engaging in an in-depth constitutional, political and practical analysis, the Court held that "[c]oncern with foreign prosecution is beyond the scope of the Self-Incrimination Clause."  Id. at 666.

Because Weiss' concern with prosecution in the Czech Republic is beyond the scope of the Fifth Amendment, he has no "constitutional right" to exercise.  Accordingly, he is not being

forced to "choose" between self-incrimination and an adverse inference.  For this reason alone, his motion should be denied.

## II.    Weiss' Choice to Prosecute Counterclaims and to Actively Engage in Discovery Estops Him From Staying his Deposition

Even assuming, <u>arguendo</u>, that Weiss has a Fifth Amendment privilege to assert, Weiss' decision to engage aggressively in discovery, to prosecute his own claims, and not to seek a stay at the outset of this case estops him from the extraordinary relief that he now seeks:

> Considering appellant's conduct prior to filing its motion to stay discovery, as well as thereafter, the mere filing of the motion to stay, to say nothing of the taking of this appeal, demonstrates considerable *chutzpa*, bordering on bad faith abuse of the processes of both the district court and this court.  <u>In fact it could very well be argued that appellant's use of discovery against appellee estops him from raising any limited right that he may have had . . .to restrict the scope of appellee's discovery against him.  Such estoppel arises not only from the appellant's engaging in active discovery against appellee but also in his acquiescence to the discovery schedule established by the district court after consultation with the parties.</u>

<u>Lugo v. Alvarado</u>, 819 F.2d 5, 6-7 (1st Cir. 1987) (citations omitted; emphasis added).  In this case, *chutzpa* is an understatement.

The Czech criminal charges against Weiss were issued on February 3, 2005.  (See Ex. A.) By March 2005, Weiss had already convened a press conference to rail against the charges and had contacted the U.S. State Department to attempt to get the charges dismissed.  (See Ex. E to Compl. and Ex. G to Kotva's Motion to Compel.)  The Complaint in this case was not filed until April 6, 2005.  After service, Weiss did not move to stay this case for fear of having to proceed with parallel criminal proceedings, as he now alleges.  Instead, on June 15, 2005, Weiss asserted counterclaims against Kotva and several additional counterclaim-defendants, and attempted to add two new parties as counterclaim-plaintiffs.  In a letter that Weiss sent to his investors, Weiss admitted that he planned to take tactical advantage of this lawsuit:

> The parties who are suing me either don't appreciate the integrity of the Federal Courts, or else think that by harassing me they can get me to violate my fiduciary responsibilities. However, they don't seem to have realized that by suing in Boston Federal Court they have given us the opportunity to file counter claims in Federal Court. Investors in the segregated assets could be awarded damages of as much as $25 million. The buyers of the stolen property escrowed $24.3 million, which is available to pay damages.

(See May 20, 2005 Letter from Weiss to Investor, attached hereto as Ex. D.) Weiss has since taken full advantage of the discovery process—serving two sets of document requests, three sets of interrogatories, and multiple deposition notices, as well as filing motions for jurisdictional discovery, motions to compel, and a previous motion for a protective order that was denied.

Weiss now wants to avoid his own discovery obligations, however, and seeks the benefit of the Fifth Amendment privilege against self-incrimination without actually invoking it. Like the Boesky court quoted above, the First Circuit has rejected the notion that parties can invoke the Fifth Amendment to the unfair disadvantage of opposing parties in civil litigation:

> We think that in the civil context, where, systemically, the parties are on a somewhat equal footing, one party's assertion of his constitutional right should not obliterate another party's right to a fair proceeding. In other words, while a trial court should strive to accommodate a party's Fifth Amendment interests, it also must ensure that the opposing party is not unduly disadvantaged.

Serafino v. Hasbro, Inc., 82 F.3d 515, 518 (1st Cir. 1996) (citations omitted). As described below, staying Weiss' deposition until the conclusion of the criminal proceedings, which Weiss has already intentionally stalled for more than a year and may remain open for several years, would deprive Kotva of critical discovery indefinitely and constitute an undue disadvantage, particularly in view of Weiss' vigorous use of discovery in this case.

### III. As a Blanket Assertion of the Fifth Amendment Privilege, Weiss' Motion is Defective

Although styled as a motion for a protective order, what Weiss seeks is permission to make a blanket assertion of the Fifth Amendment privilege without actually having to invoke the privilege. This is not the proper procedure:

> If a deposition is sought, the availability of the privilege is not a ground for vacating the notice of deposition. The proper procedure is for the deponent to attend the deposition, to be sworn under oath, and to answer those questions he or she can answer without running a risk of incrimination. In this way a record can be made and the court can determine whether particular questions asked did entitle the deponent to claim the privilege.

8 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2018; see also, National Life Insur. Co. v. Hartford Accident & Indemnity Co., 615 F.2d 595, 598 (3d Cir. 1980) ("a witness cannot relieve himself of the duty to answer questions that may be put to him by a mere blanket invocation of the privilege"); McIntyre's Mini Computer Sales Group, Inc. v. Creative Synergy Corp., 115 F.R.D. 528, (D. Mass. 1987) (holding that rules of civil procedure "do not contemplate a complete refusal to participate in any discovery pertaining to an action which may have criminal overtones" where a non-party witness in a civil case generally asserted the Fifth Amendment in response to almost every deposition question.) In this case, Weiss cannot simply refuse to go forward with his deposition because he thinks he may invoke the privilege at some point. The proper procedure is to allow the deposition to go forward, pose questions to Weiss, and have Weiss choose whether to invoke the privilege. The parties and the Court will then have a record on which to assess Weiss' claims. Weiss' attempt to subvert this procedure by providing no testimony whatsoever should be rejected.

**IV.    Weiss Cannot Justify a Stay Under the *Microfinancial* Factors**

Weiss suggests that the Court should look to the body of case law relating to stays of civil proceedings pending the outcome of parallel criminal proceedings as controlling his request for a stay of his deposition.  In that context, however, the First Circuit has held that "a defendant has no constitutional right to a stay simply because a parallel criminal proceeding is in the works." Microfinancial, Inc. v. Premier Holidays Int'l, Inc., 385 F.3d 72, 77-78 (1st Cir. 2004) (citing United States v. Kordel, 397 U.S. 1, 11 (1970) for the proposition that the "Constitution does not provide parties blanket protection from the perils of contemporaneous criminal and civil proceedings.").  In Microfinancial, for example, the principal case on which Weiss relies, the First Circuit affirmed the denial of a stay requested by the defendants because of a pending federal criminal investigation.  Id. at 78 ("The defendants' caterwauling about the onus of conducting a civil trial during the pendency of a federal grand jury investigation rings hollow.").[4]

The status of the Czech criminal proceedings, including Weiss' continuing efforts to delay the service of the charges, further undermines Weiss' request for a stay.  Pre-indictment status, as the First Circuit explained in Microfinancial, significantly weakens a defendant's request to stay civil proceedings:

> While pre-indictment stays of parallel civil proceedings occasionally have been granted, an unindicted defendant who argues that going forward with a civil proceeding will jeopardize his Fifth Amendment rights usually presents a much less robust case for such extraordinary relief.

385 F.3d at 79 (emphasis added); see also SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1376 (D.C. Cir. 1980) ("No indictment has been returned; no Fifth Amendment privilege is

---

[4]  See also, Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th Cir. 1994) (Constitution does not require that civil proceedings be stayed pending the outcome of criminal proceedings); Koester v. Amer. Republic Invs., Inc., 11 F.3d 818, 823 (8th Cir. 1994) (affirming decision to deny stay of civil proceedings); United States v. Little Al, 712 F.2d 133, 136 (5th Cir. 1983) (affirming decision to deny stay of civil proceedings).

threatened…."). For the past several months, Weiss has repeatedly protested that he has not been "indicted" in the Czech Republic.[5] Indeed, Weiss continues to make that representation in this motion. Mem. at 14 ("Although Mr. Weiss is not under indictment…"). He cannot now retreat from that position. Thus, the very case law that Weiss recommends as a guide to the Court on this issue reveals the fundamental weakness Weiss' request for a stay. A review of the Microfinancial factors also demonstrates there is no justification for such relief.[6]

### A.    The Stay that Weiss Requests Would Severely Prejudice Kotva.

"The plaintiff is entitled to a speedy discovery process. This is particularly true in the context of complex litigation which must proceed in an efficient manner." Digital Equipment Corp., 142 F.R.D. at 12, citing Arden Way Associates v. Boesky, 660 F. Supp. At 1497. Although Weiss attempts to portray the stay of his deposition as the request for a "narrow protective order," the effect of granting his request will be to indefinitely delay all of Kotva's discovery. Indeed, Weiss admits that he intends to make further application for a protective order for as long as Czech criminal proceedings are pending. Mem. at 9 n.17. He also admits that he is continuing to challenge the mechanical procedure regarding service under the

---

[5]  Defendants' Written Response to Kotva's Requests for Production, General Objection 6: "The Defendants object to the use of the phrase 'Weiss criminal indictment.' . . .No indictment has occurred."

Defendants' Emergency Motion for Protective Order at 3-4: "There is no criminal indictment of Andrew Weiss. . . .K-T-V . . .knows full well that no 'indictment' exists."

[6]  All of the Microfinancial factors weigh against Weiss' requested stay, including the public interest, the interest of third parties, the status of the cases, and the convenience of the courts. Weiss concedes that the public has an interest in the prompt resolution of civil cases, Mem. at 17, citing Microfinancial, 385 F.3d at 79 n.4, which will be frustrated by the indefinite delay imposed by the requested stay. The interests of third parties, including Kotva's shareholders and other potential targets of Weiss' criminal tactics, are also negatively affected by the requested order for an indefinite stay. With respect to the status of the cases and the convenience of the courts, that this case has been pending for more than a year and the parties have been actively engaged in discovery and motion practice counsels against a stay. See Fed. Sav. & Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 903 (affirming denial of stay of civil action that had been pending for one year). Moreover, Weiss has refused to accept service of the criminal charges against him and has already stalled those proceedings for more than a year. Kotva is entitled to the expeditious resolution of its civil claims.

13

MLAT—after he has refused to accept service of the charges for more than a year.  *See* Mem. at 5 and n.14.  In other words, Weiss wants to postpone his deposition until after the conclusion of proceedings that he has intentionally stalled, proceedings that have not yet advanced beyond the charging stage.  Amazingly, Weiss tries to blame Kotva for this delay, apparently because Kotva reported Weiss' criminal conduct to the authorities.[7]

Weiss' deposition is central to Kotva's claims, which focus on Weiss' efforts to blackmail Kotva.  Weiss is the first witness Kotva intends to depose.  Weiss is the only person Kotva can depose that was present at the May 2004 meeting in which Weiss initiated his blackmail scheme.  Weiss made the written demands to purchase his Kotva shares, and Weiss is the principal owner of defendant WAM and KT, the shell company utilized to file the sham lawsuit.  Furthermore, Kotva is entitled to take Weiss' deposition before he can craft and backfill his testimony based on deposition testimony of his employees and investors (other witnesses that Kotva may depose), and Kotva should not be forced to proceed with discovery out of sequence. In short, deposing Weiss first is particularly important in the context of the claims that are at issue. and postponing Weiss' deposition will frustrate all of Kotva's discovery.  Moreover, there is no guarantee that Weiss will not continue to invoke the Fifth Amendment.  Thus, the "narrow" relief that Weiss requests will actually cause an indefinite stay to all of Kotva's discovery and grind the case to a halt.

### B.     Weiss Has Demonstrated No Hardship from Proceeding with His Deposition

For good reason, Weiss barely addresses the hardship prong of the <u>Microfinancial</u> balancing test and makes only two allegations of hardship.  First, Weiss claims that his ability to

---

[7]  Without support, Weiss alleges that Kotva "improperly used its influence over Czech law enforcement as leverage in this commercial dispute," and that none of the issues raised in Weiss' motion would exist if Kotva had not complained about Weiss' criminal conduct.  Mem. at 9.  Of course, none of those issues would exist if Weiss had not engaged in the blackmail scheme.

prepare for his deposition has been impeded because Kotva cannot yet reveal whether conversations were recorded by the Czech authorities during the criminal investigation. Mem. at 13-14. Second, Weiss alleges that in the absence of a protective order he will be "unfairly forced to choose whether to exercise his constitutional rights in a criminal case and suffering the consequence in a civil case." Mem. at 14-15. Neither allegation constitutes actual hardship to Weiss.

### 1. Weiss' Purported Discovery Issues Do Not Justify a Stay.

The material that Weiss claims to be essential to his deposition preparation is telling. Weiss has taken the position that he cannot prepare for his deposition because he does not know if the Czech authorities made recordings of him or his associates during the criminal investigation. This is a red herring. First, Mr. Harazim fully testified about the <u>substance</u> of all conversations and communications inquired about at deposition. The only thing that Mr. Harazim could not yet testify about is whether conversations after August 27, 2004 were recorded. Weiss knows what he said. He does not need to know which conversations were recorded, except to somehow craft his testimony. Second, Weiss knows that all evidence in the criminal file will be unsealed and made available to him as soon as he accepts service of the criminal charges. Third, Mr. Harazim testified that there are no recorded conversations of Weiss before August 27, 2004. Harazim Dep. at 290. Fourth, Kotva has already provided to Weiss all of the materials that it has concerning the criminal file. The only things that Kotva has not produced—under instruction from the Czech police—are the pre-criminal investigation recordings of Hoffmann. Thus, Weiss has not been deprived of any materials that could impede his ability to prepare for deposition. Rather, Weiss' position reveals one thing: that Weiss desperately wants to keep the Czech criminal file sealed.

###### 2.    *Choosing to Invoke the Fifth Amendment Does Not Constitute Hardship*

Invoking the Fifth Amendment privilege is a choice, not an obligation, and there is nothing "unfair" about the choice that Weiss faces. The First Circuit has already rejected the argument that Weiss obliquely advances. In Arthurs v. Stern, 560 F.2d 477 (1st Cir. 1977), a doctor facing criminal charges for writing illegal prescriptions sought to stay disciplinary proceedings against him until the criminal charges were resolved. Reversing the district court's stay of the disciplinary hearings, the First Circuit rejected the argument that the threat of an adverse inference in civil litigation, the presumed hardship that Weiss seeks to avoid here, unfairly forced the doctor to choose to assert the Fifth Amendment. Id. at 478-479 ("nor is there anything repugnant to due process in requiring the doctor to choose between giving testimony at the disciplinary hearing, … and keeping silent"). Citing the Supreme Court's decision in Kordel, the Stern court rejected the proposition that "parties with something to lose in a proceeding may never be forced to make this choice." Id.; see also SEC v. Grossman, 121 F.R.D. 207, 210 (S.D.N.Y. 1987) ("There is no violation of due process where a party is faced with the choice of testifying or invoking the Fifth Amendment….[H]e must make the choice despite any extra legal problems and pressures that might follow.") citing Gellis v. Casey, 338 F. Supp. 651, 653 (S.D.N.Y. 1972). Thus, Weiss has not presented any hardship that justifies a stay of his deposition.

### C.    **The Conduct of the Parties Counsels Against a Stay**

##### 1.    *Kotva Has Not "Colluded" with the Czech Authorities Nor Abused this Court's Discovery Rules*

Weiss asserts—without support—that Kotva is using discovery in this case to amplify the investigative powers of the Czech police. Mem. at 14-15. Apparently, Weiss has forgotten that it was Kotva who proposed the entry of a Confidentiality Stipulation and Order at the outset of

discovery, which, ironically, would have protected both parties from the disclosure of

confidential information outside of the instant litigation.  Weiss vehemently resisted the entry of

a Confidentiality Order <u>so that Weiss</u>, not Kotva, could use discovery from this case in the Czech

Republic:

> More importantly, an order forbidding the parties from using the information they
> learn in this case in the parallel Czech proceedings is unworkable and unjust.  The
> Discovering Parties cannot simply forget what they learn in this case and conduct
> the Czech litigation as if they are ignorant of things they in fact know.  Were they
> to attempt these mental gymnastics, this Court's protective order would turn the
> Czech proceedings—<u>including a potential criminal proceeding</u>—into kangaroo
> courts in which the parties have information that they are unable to share with
> prosecutors and judges.
>
> Thus, any protective order should, at a minimum, allow the parties to use
> discovery in the parallel Czech litigation.

Defendants' Mem. in Support of Motion to Compel, filed September 23, 2005, at 9 (emphasis

added).  Thus, it is Weiss, not Kotva, that seeks to use discovery from this case in foreign

proceedings—including the criminal proceedings against him.

## 2.    *Weiss' Bad Faith Weighs Against a Stay*

Weiss' bad faith from the blackmail scheme and groundless litigation against Kotva has

carried over into the discovery process in this case.  In response to Kotva's First Request for

Production of Documents, Weiss refused to produce categories of responsive documents that are

central to Kotva's claims and sought to shield many other documents on improper claims of

privilege, forcing Kotva to file a motion to compel.[8]  With respect to documents that Weiss did

produce, documents had been broken apart and produced piecemeal throughout the production

and attachments to many documents were either not produced or were produced thousands of

---

[8]  Weiss' failure to log privileged documents, inadequate and wrongful assertion of privilege, inappropriate
redactions, and outright refusal to produce responsive documents are discussed in Kotva's pending motion to
compel.

17

pages apart from their referencing documents. Kotva had to demand that Weiss re-produce the documents as they were kept in the ordinary course of business.

Weiss also engaged in questionable tactics with respect to the deposition of Kotva's Rule 30(b)(6) witness by providing an interpreter that did not speak Czech, and by surreptitiously attempting to provide a live feed of the deposition to the Czech Republic. At the beginning of the deposition, the stenographer happened to ask Weiss' counsel (in the presence of Kotva's counsel) if the set up for the "live feed" of the deposition to the Czech Republic was ready to go. When Kotva's counsel inquired about the "live feed" of the deposition, Weiss' counsel only then disclosed that the deposition transcript was being provided live to Ondrej Peterka, the lawyer involved in filing the blackmail lawsuit (who is barred by the police from representing Weiss in the criminal action because he is a potential witness). Mr. Peterka has never entered an appearance in this case and Kotva objected to his contemporaneous feed of the deposition so he could indirectly participate. Only when Kotva insisted on contacting the Court did Weiss relent and terminate the live feed to the Czech Republic. In short, Weiss' bad faith discovery tactics militate against the indefinite stay that he seeks.

## <u>CONCLUSION</u>

For the foregoing reasons, Kotva requests that the Court deny Defendants' motion for a protective order. In view of the Supreme Court's decision in <u>Balsys</u>, which precludes even asserting the Fifth Amendment in foreign proceedings, Kotva also requests that it be awarded its costs and reasonable attorneys' fees in opposing this motion.

Respectfully submitted,

KOTVA A.S.

By its attorneys,

/s/ Joel G. Beckman
Joel G. Beckman (BBO# 553086)
William C. Nystrom (BBO# 559656)
Daniel J. Pasquarello (BB0# 647379)
NYSTROM BECKMAN & PARIS LLP
10 St. James Ave., 16th Floor
Boston, Massachusetts 02116
(617) 778-9100
(617) 778-9110 (fax)

Dated: April 25, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 25th day of April, 2006.

/s/ Joel G. Beckman

1

Stamp:
POLICE OF THE CZECH REPUBLIC
ADMINISTRATION OF THE CITY OF PRAGUE
*Criminal Police and Investigation Service*
Economic Crime Section
140 21 PRAGUE 4, Kongresová 2

Criminal Prosecution No.: PSP-4035/OHK-3-2004

At Prague on 3 February 2005

DECISION

Pursuant to Section 160(1) of the Criminal Procedure Code, I hereby initiate criminal prosecution of the accused:

1)  Ing. Vladimír Hoffmann,
    nationality: Czech Republic
    born on 30 October 1965 in Bratislava I, Slovak Republic
    birth index no. 651030/6990
    permanent resident at Medinská 825,
                               Klánovice, Prague 9, 190 14
    owner of the company Balfindor a.s., Company ID No. 27107892
    with its seat at Na Kocourkách 2915, Prague 6
    owner of the company Gilroy Limited, Company ID No. 0090061682
    with its seat at Pikioni, 4, Limassol, Republic of Cyprus

2)  Edita Šimková
    nationality: Czech Republic
    born on 27 July 1968 in the Slovak Republic
    birth index no. 685727/6140
    permanent resident at Na Folimance 2153/19,
                               Vinohrady, Prague 2, 120 00
    chairperson of the board of directors of Balfindor a.s., Company ID No. 27107892
    with its seat at Na Kocourkách 2915, Prague 6

3)  Andrew Weiss,
    nationality: United States of America
    born on 2 January 1947, passport no. Z7528881
    resident at 46 Abbottsford Road, 2 Brookline, Massachusetts, 2446 USA
    owner of the company Weiss Asset Management,
    company address 29 Commonwealth Avenue, Boston, Massachusetts 02116,
    which manages the company Brookdale Global Opportunity Fund,
    company address      P.O. Box 1748, GT 27 Hospital Road, George Town
                               Grand Cayman, Cayman Islands
    and controls the company KT, Inc.
    with its seat at 2711 Centerville Road, Suite 400, City of Wilmington, County of Newcastle, Delaware, USA,

**K 0041**

for the criminal offence of

extortion pursuant to Section 235(1) and (3) of the Criminal Code, committed as accomplices pursuant to Section 9(2) of the Criminal Code,

because it has been sufficiently substantiated by the facts ascertained until now that

the accused Andrew Weiss and the accused Ing. Vladimír Hoffmann met on 12 May 2004 at 2:00 p.m. in the French restaurant of Obecní dům (Municipal House) in Prague 1, náměstí Republiky 1090/5, with the management of Kotva a.s., ID No. 60193808, with its seat at Prague 1, náměstí Republiky 8, represented by Richard Harazim, general manager of Kotva a.s., born on 10 March 1965, permanent resident at Přezletice, U bažantnice 305, district of Prague-East, and Martin Benda, chairman of the supervisory board of Kotva a.s., born on 8 September 1971, permanent resident at Borač 46, district of Žďár nad Sázavou, and requested from them redemption of 11.9% shares of the registered capital of Kotva a.s., i.e. 82,782 shares, which are held by Brookdale Global Opportunity Fund, P.O. BOX 1748, GT 27 Hospital Road, George Town, Grand Cayman, Cayman Islands (where these shares are administered by the accused Weiss Andrew through his company Weiss Asset Management, 29 Commonwealth Avenue, Boston, Massachusetts 02116), for an amount of 4,000,000 US dollars, stating that if these shares were not so redeemed, the accused Weiss would arrange for blocking the real estate of Obchodní dům Kotva (Kotva Department Store), located at náměstí Republiky 8, Prague 1, in the real estate cadastre by filing fabricated and self-serving lawsuits against Kotva a.s., by which he would substantially disturb negotiations of Kotva Holding with potential strategic partners and financial institutions about the financing of operations and sales of Obchodní dům Kotva, and would restrict the disposal of this property for several years, because he knew that Kotva a.s. had concluded a contract for sale of the above Obchodní dům Kotva from which it could not withdraw and that Kotva a.s. was under a time pressure and had financial problems, and if Kotva a.s. did not purchase his shares, the next offer would be substantially higher, and if Kotva a.s. refused to purchase these shares from him, he would file criminal charges against the board of directors of Kotva a.s. By this way, the accused blackmailed Kotva a.s. and its board of directors by the threat of causing large-scale damage, physical violence or other major detriment, forcing Kotva a.s. and its board of directors to perform, omit or suffer an act, although the above representatives of

3

Kotva a.s. refused to redeem the above shares, stating that the asked price for the shares of Kotva a.s. is excessively high and that Kotva a.s. is not allowed to redeem its own shares.

Subsequently, the accused Weiss and the accused Hoffmann informed through Gilroy Limited and Balfindor a.s. Mr. Henry Prestige, the strategic partner of Kotva a.s., and financial institutions financing the operations of Kotva a.s. about actions filed against Kotva a.s. (as noted below), by which they hindered business operations of Kotva a.s. Such notification of the strategic partner and the financial institutions was meant to prevent the sale of the real property of Kotva a.s. to the strategic partner.

Subsequently, the accused Hoffmann, being the owner of Balfindor a.s., the accused Šimková as the chairperson of the board of director of Balfindor a.s., and the accused Weiss (who instructed the accused Hoffman and the accused Šimková to file the action referred to below), represented by Mgr. Ondřej Peterka, attorney-a-law, registered in the attorneys register kept by the Czech Bar Association under no, 4245, filed with the Municipal Court in Prague on 8 June 2004 on behalf of Balfindor a.s., Company ID No. 27107892, with its seat at Prague 6, Na Kocourkách 29/5 (which purchased on 8 June 2004, specifically for such purpose, one share of Kotva a.s. from the accused Hoffmann), an action for determination of invalidity of the general meeting of Kotva a.s., Company ID No. 60193808. On the same day, i.e. 8 June 2004, they submitted the statement of claim regarding the above action to the Cadastral Office of the City of Prague to attach in the real estate cadastre a seal to the lands and properties of Kotva a.s.

Subsequently, the accused Hoffmann, being the owner of Gilroy Limited, and the accused Weiss (who instructed the accused Hoffmann to file the action referred to below), represented by Mgr. Ondřej Peterka, attorney-at-law, filed with the Municipal Court in Prague on 30 June 2004 on behalf of Gilroy Limited, Company ID No. 0090061682, with its seat at Pikioni, 4, Limassol, Republic of Cyprus, which holds a part of shares of Kotva a.s., an action for determination of title to real estate of Kotva a.s., Company ID No. 60193808, Kotva nemovitosti k.s. with its seat at Příkopy 4, Brno, Company ID No. 26229048, and SPV KN a.s., with its seat at Příkopy 4, Brmo. At the same time (on 2 July 2004), they submitted the statement of claim regarding the above action to the Cadastral Office of the City of Prague to attach in the real estate cadastre a seal to the lands and properties of Kotva a.s., Kotva nemovitosti k.s. and SPV KN a.s.

**K 0043**

4

Subsequently, the accused Ing. Vladimír Hoffmann, born on 30 October 1965, birth index number 651030/6990, permanent resident at Prague 9, Medinská 825, as the holder of a part of shares of Kotva a.s., acting jointly with JUDr. Petr Streiberg, permanent resident at Prague 6, Na Kuthance 16/1218, born on 18 October 1955, who holds a part of shares of Kotva a.s., and with the accused Weiss, being the owner of Weiss Asset Management, company address 29 Commonwealth Avenue, Boston, Massachusetts 02116, which manages Brookdale Global Opportunity Fund, with its seat at P.O. BOX 1748, GT 27 Hospital Road, George Town, Grand Cayman, Cayman Islands, which owns a part of shares of Kotva, a.s., all of them represented by Mgr. Jiří Černý, attorney-at-law, substituted by Mgr. Ondřej Peterka, filed with the Municipal Court in Prague on 15 July 2004, on behalf of Brookdale Global Opportunity Fund and on behalf of Ing. Vladimír Hoffman and JUDr. Petr Streitberg as individuals, an action for declaration of invalidity of the general meeting of Kotva a.s. At the same time, they submitted the statement of claim regarding the above action to the Cadastral Office of the City of Prague to attach in the real estate cadastre a seal to the lands and properties of Kotva a.s.

Subsequently, the accused Weiss, who controls KT, Inc., with its seat at 2711 Centerville Road, Suite 400, City of Wilmington, County of Newcastle, Delaware, USA, which holds a part of shares of Kotva a.s. through Brookdale Global Opportunity Fund (which also holds a part of shares of Kotva a.s.), represented by Mgr. Ondřej Peterka, attorney-at-law, filed individually with the Municipal Court in Prague on 23 December 2004 on behalf of KT, Inc. an action for determination of title to real estate. At the same time, he submitted the statement of claim regarding the above action to the Cadastral Office of the City of Prague to attach in the real estate cadastre a seal to the lands and properties of Kotva a.s.

Subsequently, the three accused have requested Kotva a.s. repeatedly by extortion, from 12 May 2004 to date, to redeem of 11.9% of shares of Kotva a.s. and to purchase 39.73% (i.e. 11,098,617 shares) of Trend – všeobecný investiční fond a.s., with its seat at Hradec Králové, Škroupova 9/441, Company ID No. 45245177. They increased the requested redemption price up to 295,000,000 CZK, otherwise they would not withdraw their lawsuits against Kotva a.s., Kotva nemovitosti k.s. and SPV KN a.s., thus causing high financial losses to these companies. The extortion itself was represented by filing the above actions, by personal

5

contacts of the accused with representatives of Kotva a.s., and by a telephone call, by fax and e-mail messages sent to these representatives.

Subsequently, the accused Hoffmann has demanded individually from Kotva a.s. by extortion, from November 2004 to date, payment of 45,000,000 CZK as compensation for withdrawal of claims against Kotva a.s. filed by his companies, i.e. Gilroy Limited and Balfindor a.s. He forced Kotva a.s. to conclude with him a preliminary agreement on compensation for withdrawal of the above claims filed by his companies. The extortion itself was represented by filing the above actions by the companies owned by Hoffman, and by a telephone call, by fax and e-mail messages sent to the representatives of Kotva a.s.

By the foregoing conduct, the accused committed the above criminal offence to the detriment of the following injured parties:

Kotva a.s.

Kotva nemovitosti k.s.

SPV KN a.s.

Martin Benda, born on 8 September 1971

Richard Harazim, born on 10 March 1965.

## Statement of reasons

Kotva a.s. filed on 27 August 2004 to the Police of the Czech Republic, Administration of the Capital City of Prague, Criminal Police and Investigation Service, Kongresová 2, Prague 4, criminal charges against the accused Weiss and the accused Hoffmann regarding the criminal offence described above. Subsequently, an explanatory interrogation with the injured parties Harazim and Benda was carried out. The police seized documents evidencing extortion. Furthermore, having obtained court permission, the police tapped telephone calls in this matter. These calls and seized documents, the criminal charges and explanatory interrogation sufficiently documented this offence. It was ascertained that there are sufficient grounds, pursuant to Section 160(1) of the Criminal Procedure Code, to start criminal prosecution of specific persons who committed such offence. Therefore, the criminal prosecution of the above accused was started.

K 0045

6

**Instruction:**

Pursuant to Section 36(3) of the Criminal Procedure Code, you, as the accused, must have a legal counsel to defend you at the pre-trial proceeding, because you have committed an offence that is punishable under the law by a prison sentence with the upper limit of more than 5 years. If you fail to choose a counsel by yourself or if the counsel is not selected by the persons listed in Section 37 of the Criminal Procedure Code within two hours of the service of this Decision, the defence counsel shall be appointed for you in accordance with Section 38(1) of the Criminal Procedure Code.

I further instruct you that every accused must have his own defence counsel, because the interests of individual accused at this criminal suit are conflicting.

I further instruct you that the following persons will be heard among the witnesses in this criminal matter: Mgr. Ondřej Peterka, Mgr. Jiří Černý and Mgr. Ladislav Chundela of the law offices of Peterka & Partners v.o.s., and JUDr. Ing. Petr Šrámek, listed in the attorneys register of the Czech Bar Association under no. 5076; therefore, you cannot choose these persons as your defence counsels pursuant to Section 37 of the Criminal Procedure Code.

A complaint against this decision may be filed by an accused within three days of the service hereof with the police authority that has prepared this decision. Such complaint has no suspensory effect.

Ing. Pavel Brož

Police Commissioner: *[Signature]*

Accepted by the accused Ing. Vladimír Hoffman on 3 February 2005 at 2:00 p.m. *[Initial]*

Accepted by the accused Andrew Weiss              on

Accepted by the accused Edita Šimková             on 3 February 2005 at 11.20 a.m.

*[Signature]*

**K 0046**

POLICIE ČESKÉ REPUBLIKY
SPRÁVA HLAVNÍHO MĚSTA PRAHY
*služba kriminální policie a vyšetřování*
odbor hospodářské kriminality
140 21 PRAHA 4, Kongresová 2                    -1-

ČTS:PSP-4035/OHK-3-2004

Praha dne 3. února 2005

U S N E S E N Í

Podle ustanovení § 160 odstavce 1 trestního řádu zahajuji trestní stíhání obviněných:

1)     ing. Vladimír Hoffmann,
        státní příslušník České republiky,
        narozen 30.10.1965 v Bratislavě I, Slovenská republika,
        rodné číslo 651030/6990,
        trvale bytem Medinská 825,
                    Klánovice, Praha 9, 190 14,
        majitel firmy Balfindor a. s., IČO 27107892,
        sídlo firmy Na Na Kocourkách 2915, Praha 6,
        majitel firmy Gilroy Limited, IČO 0090061682,
        sídlo firmy Pikioni, 4, Limassol, Kyperská republika,

2)     Edita Šimková,
        státní příslušník České republiky,
        narozená 27.7.1968 v Slovenské republice,
        rodné číslo 685727/6140
        trvale bytem Na Folimance 2153/19,
                    Vinohrady, Praha 2, 120 00,
        předseda představenstva firmy Balfindor a. s., IČO 27107892,
        sídlo firmy Na Kocourkách 2915, Praha 6,

3)     Andrew Weiss,
        státní příslušník Spojených států amerických,
        narozen 2.1.1947, pas č. Z7528881,
        bytem 46 Abbottsford Road, 2 Brookline, Massachusetts, 2446 USA,
        majitel firmy Weiss Asset Management,
        adresa firmy 29 Commonwealth Avenue, Boston, Massachusetts 02116,
        která spravuje firmu Brookdale Global Opportunity Fund,
        adresa firmy        P. O. BOX 1748, GT 27 Hospital Road, George Town,

-2-

Grand Cayman, Cayman Islands,

ovládá firmu KŤ,Inc.,

se sídlem 2711 Centerville Road, Suite 400, City of Wilmington, County of Newcastle,
Delaware, USA,

pro trestný čin

"Vydírání" podle § 235 odstavce 1, odstavce 3 trestného zákona ve spolupachatelství podle § 9
odstavce 2 trestního zákona,

neboť na základě doposud zjištěných skutečností je dostatečně odůvodněn závěr,

že obviněný Andrew Weiss a obviněný ing. Vladimír Hoffmann, dne 12.5.2004 v 14.00 hod, v
francouzské restauraci v Obecním domě v Praze 1, náměstí Republiky 1090/5, požadovali po
managementu společnosti Kotva a. s., IČ 60193808, se sídlem Praha 1, náměstí Republiky 8,
zastupovanou ředitelem společnosti Kotva a. s., Richardem Harazimem, narozeným
10.3.1965, trvale bytem Přezletice, U bažantnice 305, okres Praha - východ, a předsedou
dozorčí rady společnosti Kotva a. s., Martinem Bendou, narozeným 8.9.1971, trvale bytem
Borač 46, okres Žďár nad Sázavou, odkoupení 11,9% akcií základního jmění společnosti
Kotva a. s., což je 82.782,-ks akcií, které jsou v majetku společnosti Brookdale Global
Opportunity Fund, P. O. BOX 1748, GT 27 Hospital Road, George Town, Grand Cayman,
Cayman Islands, které tyto akcie spravuje obviněný Weiss Andrew, prostřednictvím jeho
společnosti Weiss Asset Management, 29 Commonwealt Avenue, Boston, Massachusetts
02116, za částku 4.000.000,- amerických dolarů s tím, že pokud nedojde k uvedenému
odkoupení akcií, tak obviněný Weiss zajistí zablokování nemovitosti Obchodního domu Kotva,
nacházející se na adrese náměstí Republiky 8, Praha 1, prostřednictvím katastru nemovitostí,
podáním vykonstruovaných účelových žalob k soudu proti společnosti Kotva a. s., a tím
zásadním způsobem naruší Holdingu Kotva jednání s možnými strategickými partnery a
finančními institucemi ohledně financování provozu a prodeje Obchodního domu Kotva a
omezí tak dispozici s tímto majetkem na několik let, protože je mu známo, že společnost Kotva
a. s. má uzavřenou smlouvu na prodej uvedeného Obchodního domu Kotva, od které nemůže
odstoupit, a je v časové a finanční tísni, a když hned společnost Kotva a. s. nekoupí jeho akcie,
tak příští nabídka bude podstatně vyšší, a v případě, že společnost Kotva a. s. odmítne od něj
nakoupit uvedené akcie, tak ještě na představenstvo společnosti Kotva a. s. podá trestní
oznámení, tímto způsobem obvinění vydírali uvedenou společnost Kotva a. s. a samotné
představenstvo společnosti Kotva a. s. způsobením škody velkého rozsahu, pohrůžkou násilí
nebo jiné těžké újmy nucením, aby společnost Kotva a. s. a její představenstvo něco konali,
opominuli nebo strpěli, přestože uvedení zástupci společnosti Kotva odmítali provést uvedený
nákup akcií s poukazováním na skutečnost, že požadovaná cena za akcie společnosti Kotva je

-3-

nepřiměřeně předražená a navíc společnost Kotva nesmí nakupovat své vlastní akcie,

následně společně obviněný Weiss a obviněný Hoffmann, prostřednictvím společnosti Gilroy Limited a společnosti Balfindor a. s., informovali strategického partnera společnosti Kotva a. s, pana Henryho Prestige, a peněžní ústavy, financující provoz společnosti Kotva a. s., že byly podány žaloby na společnost Kotva a. s., jak je níže uvedeno, čímž zkomplikovali podnikání společnosti Kotva a. s., přičemž vyrozumění strategického partnera a peněžních ústavů bylo za cílem znemožnění prodeje nemovitosti společnosti Kotva a. s., strategickému partnerovi,

následně společně obviněný Hoffmann, jako majitel společnosti Balfindor a. s., obviněná Šimková, jako předseda představenstva společnosti Balfindor a. s., a obviněný Weiss, který obviněnému Hoffmannovi a obviněné Šimkové dal pokyn podat níže uvedenou žalobu, podali v zastoupení advokáta Mgr. Ondřeje Peterky, vedený v seznamu advokátů u České advokátní kanceláře pod číslem 4245, za společnost Balfindor a. s., IČO 27107892, se sídlem Praha 6 Na Kocourkách 29/5, která účelově nakoupila dne 8.6.2004 od obviněného Hoffmanna 1 ks akcií společnosti Kotva a. s., žalobu na určení neplatnosti valné hromady, proti společnosti Kotva a. s., IČO 60193808, k Městskému soudu v Praze, téhož dne 8.6.2004, a současně podali k Katastrálnímu úřadu Praha - město, uvedenou žalobu s návrhem na vyznačení plomby do katastru nemovitostí na pozemky a nemovitosti společnosti Kotva a. s.,

následně společně obviněný Hoffmann, jako majitel společnosti Gilroy Limited, a obviněný Weiss, který dal pokyn obviněnému Hoffmannovi podat níže uvedenou žalobu, podali v zastoupení advokáta Mgr Ondřeje Peterky, za společnost Gilroy Limited, IČO 0090061682, se sídlem Pikioni, 4, Limassol, Kyperská republika, která vlastní část akcií společnosti Kotva a. s, žalobu na určení vlastnického práva k nemovitostem, proti společnosti Kotva a. s., IČO 60193808, proti společnosti Kotva nemovitosti k.s., se sídlem Příkopy 4 Brno, IČO 26229048, proti společnosti SPV KN a. s., se sídlem Příkopy 4 Brno, k Městskému soudu v Praze, dne 30.6.2004, a současně, dne 2.7.2004, podali k Katastrálnímu úřadu Praha - město, uvedenou žalobu s návrhem na vyznačení plomby do katastru nemovitostí na pozemky a nemovitosti společnosti Kotva a. s., společnosti Kotva nemovitosti k.s. a společnosti SPV KN a. s.,

následně společně obviněný ing. Vladimír Hoffmann, narozen 30.10.1965, rodné číslo 651030/6990, trvale bytem Praha 9 Medínská 825, jako majitel části akcií společnosti Kotva a. s., s MUDr. Petrem Streibergem trvale bytem Praha 6 Na Kuthance 16/1218, narozen 18.10.1955, jako majitelem části akcií společnosti Kotva a. s., a s obviněným Weissem, jako majitelem společnosti Weiss Asset Management, adresa společnosti 29 Commonwealth Avenue, Boston, Massachusetts 02116, která spravuje společnost Brookdale Global Opportunity Fund, se sídlem P. O. BOX 1748, GT 27 Hospital Road, George Town, Grand Cayman, Cayman Islands, která vlastní část akcií společnosti Kotva a. s., podali v zastoupení advokáta Mgr. Jiřího Černého v instituci Mgr. Ondřeje Peterky, za společnost Brookdale

-4-

Global Opportunity Fund a osobně za obviněného ing. Vladimíra Hoffmanna a osobně za
MUDr. Petr Streitberga, žalobu na vyslovení neplatnosti valné hromady, konané dne
20.6.2002, proti společnosti Kotva a. s., k Městskému soudu v Praze, dne 15.7.2004, a
současně podali k Katastrálnímu úřadu Praha - město, uvedenou žalobu s návrhem na
vyznačení plomby do katastru nemovitostí na pozemky a nemovitosti společnosti Kotva a. s.,

následně samostatně obviněný Weiss, který ovládá společnost KT, Inc., se sídlem 2711
Centerville Road, Suite 400, City of Wilmington, County of Newcastle, Delaware, USA, která
vlastní část akcií společnosti Kotva a. s., prostřednictvím společnosti Brookdale Global
Opportunity Fund, která rovněž vlastní část akcií společnosti Kotva a. s., podal v zastoupení
advokáta Mgr. Ondřeje Peterky, za společnost KT, Inc., žalobu na určení vlastnického práva k,
nemovitostem, k Městskému soudu v Praze, dne 23.12.2004, a současně podal k Katastrálnímu
úřadu Praha - město, uvedenou žalobu s návrhem na vyznačení plomby do katastru
nemovitostí na pozemky a nemovitosti společnosti Kotva a. s.,

následně všichni tři obvinění, opakovaně, od 12.5.2004 až do současnosti, vydíráním
požadovali odkoupení 11,9 % akcií společnosti Kotva a. s. a 39,73 % akcií, (což je 11098617
akcií) společnosti Trend - všeobecný investiční fond a. s., se sídlem Hradec Králové,
Škroupova 9/441, IČO 45245177, od samotné společnosti Kotva a. s., a zvyšovali svůj
požadavek až na částku 295 000 000,-Kč, že jinak nestáhnou podané žaloby na společnost
Kotva a. s., na společnost Kotva Nemovitosti k.s. a na společnost SPV KN a. s., a způsobí tím
uvedeným společnostem vysoké finanční ztráty, přičemž samotné vydírání probíhalo
podáváním žalob, jak je výše uvedeno, dále prostřednictvím osobního kontaktu obviněných s
zástupci společnosti Kotva a. s., dále prostřednictvím telefonního hovoru, dále prostřednictvím
zasílání faxů a dále prostřednictvím zasílání emailů prostřednictvím počítače zástupcům
společnosti Kotva a. s.,

následně samostatně obviněný Hoffmann, od listopadu 2004 do současnosti, vydíráním
požadoval po společnosti Kotva a. s. zaplacení 45 000 000,-Kč, jako odstupné za stažení žalob
na společnost Kotva a. s. od jeho společností a to od společnosti Gilroy Limited a od
společnosti Balfindor a. s., přičemž donutil společnost Kotva a. s., sepsat s ním předběžnou
smlouvu na uvedené odstupné za stažení výše uvedených žalob od jeho firem, přičemž
samotné vydírání bylo provedeno způsobem podáním výše uvedených žalob a firem, které
byly v majetku obviněného Hoffmanna, dále prostřednictvím osobního kontaktu s zástupci
společnosti Kotva a. s., dále prostřednictvím telefonního hovoru, dále prostřednictvím
zasíláním faxů a dále prostřednictvím zasílání emailů prostřednictvím počítače zástupcům
společnosti Kotva a. s.,

tímto svým jednáním se dopustili obvinění, shora uvedeného trestného činu ke škodě těmto
poškozeným :

-5-

pošk. společnost Kotva a. s.,
pošk. společnost Kotva Nemovitosti k.s.,
pošk. společnost SPV KN a. s.,
pošk. Martin Benda narozen 8.9.1971,
pošk. Richard Harazim narozen 10.3.1965.


## O d ů v o d n ě n í


Dne 27.8.2004 bylo podáno trestní oznámení k Policii České republiky, Správě hlavního města Prahy, službě kriminální policie a vyšetřování, Kongresová 2 Praha 4, od společnosti Kotva a. s., na obviněného Weisse a obviněného Hoffmanna pro shora uvedený trestný čin. Dále bylo provedeno podání vysvětlení od poškozeného Harazima a od poškozeného Bendy. Policie zajistila doklady, které dokládají trestný čin vydírání. Dále policie na základě soudního povolení, prováděla odposlechy telefonních hovorů v této věci. Na základě těchto odposlechů a zajištěných dokladů a trestního oznámení a podání vysvětlení byl dostatečně zadokumentován tento trestný čin. Bylo zjištěno, že je dostatečný důvod k zahájení trestního stíhání podle § 160 odstavce 1 trestného řádu, pro výše uvedený trestný čin a to ke konkrétním osobám. Proto bylo zahájeno trestní stíhání uvedených obviněných.


**Poučení:**

Jako obviněný musíte mít podle ustanovení §36 odstavce 3 trestního řádu obhájce již v přípravném řízení z důvodu nutné obhajoby, neboť se jedná o trestný čin, na který zákon stanoví trest odnětí svobody, jehož horní hranice převyšuje 5 let. Pokud si sám obhájce nezvolíte a nezvolí Vám jej osoby uvedené v ustanovení § 37 trestního řádu do dvou hodin od doručení tohoto usnesení, bude Vám ustanoven obhájce podle ustanovení § 38 odstavce 1 trestního řádu.

Dále Vás poučuji o tom, že každý obviněný musí mít vlastního obhájce, neboť zájmy jednotlivých obviněných si v tomto trestním řízení odporují.
Dále Vás poučuji o tom, že v této trestní věci budou mimo jiné vyslechnuti jako svědci Mgr. Ondřej Peterka, Mgr. Jiří Černý a Mgr. Ladislav Chundela, z advokátní kanceláře Peterka & Partners v.o.s., a dále JUDr. ing. Petr Šrámek, vedený v seznamu advokátů u České advokátní kanceláře pod číslem 5076, a proto si jako obhájce výše uvedené osoby nemůžete zvolit za své obhájce podle ustanovení § 37 trestního řádu.

-6-

Proti tomuto usnesení je přípustná stížnost, kterou může podat obviněný do tří dnů od
doručení tohoto usnesení u policejního orgánu, který toto usnesení vyhotovil.
Stížnost nemá odkladný účinek.



kpt. ing. Pavel Brož

Policejní komisař :

Obviněný ing. Vladimír Hoffmann    převzal dne            v hod
Obviněný Andrew Weiss              převzal dne            v hod
Obviněná Edita Šimková            převzala dne           v hod

Re: ČTS: PSP-4350/OHK-3-2004

In Prague on February 9, 2006

## Official Record

According to the previous agreement made by phone, Mgr. Bedřich Moulík, DOB: November 20, 1949, address: Bož. Němcové 251, Příbram, ID No.: 102 566 465, Chairman of the Board of Directors of the company K-T-V invest a.s., presented himself on this day.

He submitted three video tapes to the police commissioner requiring that they be entered in the investigation file; the video recordings were used in the evidence collection proceedings within the pending criminal proceedings.

Description of the submitted video tapes:
1st TDK video tape - marked Digital 8, 60, in a plastic cover – 1
2nd SONY video tape - marked Digital 8, SP 90, LP 135 without a cover – 1
3rd SONY video tape - marked Digital 8, DP 60, LP 90 - without a cover – 1

This written record can be used by the person handing over the video tapes, i.e. Mgr. Moulík to confirm that he has actually handed over the above tapes.

Handed over by:                    Received by:

Mgr. Bedřich Moulík                kpt. Ing. Pavel Nevtípil

K 6376

POLICIE ČESKÉ REPUBLIKY
SPRÁVA HLAVNÍHO MĚSTA PRAHY
služba kriminální policie a vyšetřování
odbor hospodářské kriminality
140 21 PRAHA 4, Kongresová 2

------------------------------------------

ČTS : PSP-4350/OHK-3-2004                               Praha dne 9. února 2006


# Ú ř e d n í   z á z n a m


    Dnešního dne se dostavil po předchozí tel. dohodě na zdejší součást Mgr. Bedřich Moulík, nar. 20.11.1949, bytem Příbram, Bož. Němcové 251, č. OP 102 566 465, předseda představenstva spol. K-T-V invest a.s..

    Jmenovaný předložil pol. komisaři tři kusy videokazet s tím, aby byly přiloženy k vyšetřovacímu spisu a videonahrávky byly použity v důkazním řízení v probíhajícím trestním řízení.

Popis předaných videokazet :
1. videokazeta zn. TDK - ozn. Digital 8, 60, v v plastové odalu          - 1 ks
2. videokazeta zn. SONY - ozn. Digital 8, SP 90, LP 135 - bez obalu     - 1 ks
3. videokazeta zn. SONY - ozn. Digital 8, DP 60, LP 90 - bez obalu      - 1 ks

    Tento záznam slouží předávajícímu, tj. Mgr. Moulíkovi současně jako potvrzení o předání výše specifikovaných videokazet.


                předal :                               převzal :

           Mgr. Bedřich Moulík                    kpt. Ing. Nevtípil Pavel


K 6377

Vladyka & Kubica
Law Office

**Czech Republic Police**
Administration of the Capital City of Prague
Criminal Police and Investigation Service
Economic Crime Department
Kongresová 2
Prague 4
140 21
---------------------------------------------------------

**Re: ČTS: PSP-4035/OHK-3-2004**

In person

In Prague on February 28, 2006

Subject matter:     **Application for the delivery of an item – record of communication with the accused Hoffman**

To whom it may concern:

Acting on behalf of the injured party, the company K-T-V invest, a.s., business ID No.: 601 93 808, registered office Náměstí republiky 8, Prague 1, incorporated in the Commercial Register kept by the Municipal Court in Prague, Section B, Insert 2370 (hereinafter ' the injured party'), I hereby apply to you to deliver the video recording taken by my client of the communication between the injured party and the accused Ing. Vladimír Hoffman.

This recording, i.e. its original copy, is required by the injured party in connection with the civil proceedings conducted in the state of Massachusetts, USA, between the injured party and the accused Andrew Weiss and the company Weiss Asset Management, LLC.

Please let me when this recording can be picked up in person.


Yours faithfully,

**Mgr. Robert Vladyka**

Attorney at Law

Two copies of the application were taken over in person on March 1, 2006.
Czech Republic Police
Administration of the Capital City of Prague
Criminal Police and Investigation Service
Economic Crime Department
Kongresová 2
Prague 4
140 21
Re: ČTS: PSP-4150/OHK-3-2004

K 6378

# Vladyka & Kubica
## ADVOKÁTNÍ KANCELÁŘ

Policie České republiky
Správa hlavního města Prahy
služba kriminální policie a vyšetřování
odbor hospodářské kriminality
Kongresová 2
Praha 4
140 21
-------------------------------------------------

k ČTS: PSP-4035/OHK-3-2004

osobně

V Praze dne 28. února 2006

Věc:   **Žádost o vrácení věci – záznamu komunikace s obv. Hoffmannem**

Vážení,

v zastoupení poškozeného, společnosti K-T-V invest a.s., IČ: 601 93 808, se sídlem: Praha 1, Náměstí republiky 8, zapsané v obchodním rejstříku vedeném Městským soudem v Praze, oddíl B, vložka 2370 (dále jen „**poškozený**") se na Vás obracím s žádostí o vydání videozáznamu komunikace mezi poškozeným a obviněným Ing. Vladimírem Hoffmannem, pořízeného mým klientem.

Uvedený záznam, tj. jeho originál, je po poškozeném vyžadován v souvislosti s civilním soudním řízením vedeným ve státě Messatchuses v USA mezi poškozeným na straně jedné a obviněným Andrew Weissem a společností Weiss Asset Management, LLC na straně druhé.

Dovoluji si Vás požádat o sdělení termínu možného osobního vyzvednutí záznamu.

V úctě

Mgr. Robert Vladyka

advokát

*Žádost ve dvojím vyhotovení osobně převzal dne 1.3. 2006*

POLICIE ČESKÉ REPUBLIKY
SPRÁVA HLAVNÍHO MĚSTA PRAHY
*služba kriminální policie a vyšetřování*
odbor hospodářské kriminality
140 21 PRAHA 4, Kongresová 2

Revoluční 3, 110 00 Praha 1
tel.:   +420 242 487 525
fax:   +420 242 487 526

e-mail: office@akvladyka.cz
IČ: 66251249
DIČ: CZ7311230058

K 6379

In Prague on April 3, 2006

Vladyka & Kubica
Law Office
Revoluční 3
110 00 Prague 1

Number of pages: 1

The accused Ing. Hoffmann, the accused Edita Šimková, the suspect Andrew Weiss – notification

With reference to your application for the delivery of audio recordings, this is to inform you that until the investigation is over we cannot give an affirmative reply to your application in order to prevent the frustration of investigation procedures and the possible influence of those who have not been interrogated yet.

If the informant has any reproductions or copies of these recordings, this is to make him explicitly aware that these recordings must not used in any manner whatsoever for the above reasons.

Tel. No.: 974 826 759

kpt. Ing. Pavel Nevtípil

Police Commissioner

K 6380

POLICIE ČESKÉ REPUBLIKY
SPRÁVA HLAVNÍHO MĚSTA PRAHY
služba kriminální policie a vyšetřování
odbor hospodářské kriminality
140 21 PRAHA 4, Kongresová 2
------------------------------------------
ČTS : PSP-4150/OHK-3-2005

Praha dne 3. dubna 2006

Vladyka & Kubica
advokátní kancelář
Revoluční 3
110 00 Praha 1

Počet listů : 1

Obv. Ing. Vladimír Hoffmann, obv. Edita Šimková, pod. Andrew Weiss - sdělení
-------------------------------------------------------------------------------------------------

     Na základě Vaší žádosti, týkající se vydání zvukových záznamů Vám sděluji, že do doby skončení vyšetřování  nelze Vaší žádosti vyhovět, a to z důvodu, aby nedošlo k maření postupu vyšetřování a možnému ovlivnění dosud nevyslechnutých osob.

     Pokud má oznamovatel k dispozici jakékoliv rozmnoženiny či kopie uvedených záznamů, výslovně jej upozorňuji, že je z důvodu shora uvedených nesmí jakkoliv použít.

tel.: 974 826 759

kpt. Ing. Névtípil Pavel
policejní komisař

K 6381

Page 235

1          VOLUME 2, PAGES 235 - 403

2              EXHIBITS 23 - 40

3      IN THE UNITED STATES DISTRICT COURT

4        FOR THE DISTRICT OF MASSACHUSETTS

5                No. 05-10679-RCL

6    - - - - - - - - - - - - - - - - - - - - - - - -

7    KOTVA a.s.,

8               Plaintiffs

9          vs.

10   ANDREW WEISS and WEISS ASSET MANAGEMENT, LLC,

11              Defendants

12   _____

13   ANDREW WEISS, WEISS ASSET MANAGEMENT LLC,

14   KT, INC. and CVF INVESTMENTS, LTD.,

15               Counterclaim-Plaintiffs,

16        v.

17   KOTVA a.s., MARTIN BENDA, RICHARD HARAZIM,

18   FORMINSTER ENTERPRISES, LTC., SPV CO. and

19   JOHN DOES 1-5,

20              Counterclaim-Defendants.

21   - - - - - - - - - - - - - - - - - - - - - - - -

22     CONTINUED VIDEOTAPED DEPOSITION OF KOTVA a.s.

23        BY AND THROUGH RICHARD HARAZIM

24       Wednesday, February 23, 2006 9:44 a.m

Richard Harazim, Vol. 2                                                    2/23/2006

Page 280

1  We will involve you into the process.  No steps were
2  taken so far.  We're just exploring."  Did you say that
3  to Mr. Prestage?
4      A.  Yes.  I wrote that.
5      Q.  All right.  What did you mean by having
6  all the data ready?
7      A.  By that, I meant that we finally will
8  understand the background of the Gilroy.
9      Q.  What data, specifically, did you have?
10     A.  This, in this context, the word is not
11  used exactly.  Under the data, we meant understanding
12  the situation.
13     Q.  Did you have any tape recordings of
14  conversations with Mr. Hoffmann?
15         MR. BECKMAN:  Objection as to time.
16     Q.  At this time that you wrote this?
17         MR. BECKMAN:  Prior to August 20th?
18     Q.  On August 17th?
19         MR. BECKMAN:  Okay.
20         THE INTERPRETER:  In order for me to
21  translate it exactly, are you talking any recording?
22         MR. LEIBENSPERGER:  Any recording.
23     A.  I am not able to -- I don't recall.  I am
24  not able to say.

Page 281

1      Q.  All right.  Let me ask this:  Does Kotva
2  have any tape recordings of Mr. Hoffmann's
3  conversations from any time?
4      A.  Yes.
5      Q.  How many?
6      A.  I don't know.  Maybe four.
7      Q.  Are they tape recordings of meetings or
8  telephone conversations?
9      A.  Meetings.
10     Q.  And are there transcripts of those tape
11  recordings?
12     A.  No.
13     Q.  What is your best approximation of the
14  dates of those tape recordings?
15     A.  It was a period of time from August 2nd
16  until the submission of the criminal complaint.
17     Q.  The submission of the criminal complaint
18  was August 27.  Is that what you're referring to?
19     A.  Yes.
20     Q.  So, your memory is you have as many as
21  four tape recordings from August 2 to August 27, 2004?
22     A.  Yes.
23         MR. LEIBENSPERGER:  We request the
24  production of those tape recordings.  I don't know why

Page 282

1  we don't have -- I don't know why they haven't been
2  produced already.
3         MR. BECKMAN:  No. 1, if you're going to
4  state it on the record, I'll state you didn't ask for
5  them.  Two, they're in the Czech counsel's office.
6  Kotva doesn't have them.  Three, I've never heard them,
7  or -- because, as he's testified, the recordings are so
8  poor.
9         If you want to inspect those, there is a
10  protocol for that.  You can ask for documents pursuant
11  to Rule 34.  We don't have documents pertaining to
12  that.  The recordings are poor.
13         We can coordinate and perhaps try to have
14  you have access to them.  We'll leave it at that.  I've
15  never heard them.  I don't have them, either.
16         MR. LEIBENSPERGER:  Don't make speeches.
17  We did request them, Request No. 34, and you should
18  have produced them, and we'll push for that.
19         MR. BECKMAN:  If you're going to state
20  things for the record, what is Request No. 34?
21         MR. LEIBENSPERGER:  I'm going to go on
22  with my deposition, because you are shortening the
23  time, in any event.
24         MR. BECKMAN:  Okay.

Page 283

1  BY MR. LEIBENSPERGER:
2      Q.  After August 27, 2004, are you aware of
3  any tape recordings of conversations with Mr. Hoffmann?
4         THE INTERPRETER:  This is the area where
5  I, after consultation with my Czech lawyer, I am not
6  supposed to talk about.  This is because it's connected
7  to the investigation of Mr. Weiss, and because
8  Mr. Weiss never received the statement about start of
9  the criminal proceedings against him in the Czech
10  Republic, from the Czech lawyer.  I would, if I would
11  talk about it, I may state something which could
12  obstruct the police investigation.
13     A.  Compromise.
14         THE INTERPRETER:  Compromise.
15     Q.  Regardless, are you aware that there are
16  tape recordings of Mr. Hoffmann after August 27, 2004?
17         MR. BECKMAN:  Let me just interject.
18  Based on the advice of Czech counsel, Kotva is
19  prohibited from disclosing the police investigation
20  or -- and because it would result in compromising the
21  police investigation until after the complaint of the
22  charges is served upon Mr. Weiss.  So, he can't answer
23  those, because it revolves around Czech criminal
24  police.

13 (Pages 280 to 283)

Richard Harazim, Vol. 2                                          2/23/2006

Page 284

1      Q.   I press for an answer regardless of the
2   statements of counsel.
3      A.   I will not answer that.
4      Q.   Again, you will have to come back for
5   further deposition.
6      MR. BECKMAN:  He's happy to come back
7   after Mr. Weiss --
8      A.   The moment Mr. Weiss accepts or confirms
9   the receiving of those documents, that the criminal
10  proceedings are against him started, I may talk about
11  it the whole day.
12     Q.   Do you have at Kotva copies of any tape
13  recordings of or transcripts after August 27, 2004?
14     A.   We have copies of the criminal complaint,
15  and I am not able to discuss the contents. I am not
16  allowed to discuss the contents.
17     COURT REPORTER:  One second. Can we go
18  off?
19     THE VIDEOGRAPHER:  Going off the record.
20  The time is 11:32 a.m.
21     (A brief recess was taken.)
22     THE VIDEOGRAPHER:  Going back on the
23  record. The time is 11:34 a.m.
24     MR. LEIBENSPERGER:  The record should

Page 285

1   reflect that we went off the record, because the court
2   reporter had a glitch in her machine and needed to call
3   a recess.
4   BY MR. LEIBENSPERGER:
5      Q.   My last question, sir, was: Do you have
6   at Kotva copies of any tape recordings or transcripts
7   of conversations after August 27, 2004?
8      A.   I am -- I cannot answer that question,
9   because Mr. Weiss will have to be interviewed by the
10  police in this matter, and I cannot release any
11  information from the criminal file which may obstruct
12  this investigation.
13     Q.   My question is simply whether you have
14  copies or tapes or transcripts?
15     A.   I don't have them.
16     Q.   Is it your position that you will refuse
17  to testify about anything that happened after
18  August 27, 2004, with respect to the criminal
19  investigation?
20     A.   This is the instructions which I got from
21  my Czech lawyers, which they gave me in order for me
22  not to break Czech law.
23     MR. BECKMAN:  Let me say this, just to
24  move this along, Rule 30(b)(6), the notice that you

Page 286

1   served on Kotva, is Kotva's communications with Czech
2   law enforcement. If you want to try to do it question
3   by question, but I think what you're suggesting, that
4   communication, Kotva's communications after the
5   criminal file -- after the criminal complaint are filed
6   are initiated, is part of the investigation, and I
7   don't think Kotva can disclose that until Mr. Weiss is
8   served with the criminal charges.
9      MR. LEIBENSPERGER:  Are you instructing
10  the witness not to answer any questions in that regard?
11     MR. BECKMAN:  We can try to do it question
12  by question, because I don't want to -- I don't want to
13  prohibit your line of questioning, because I don't know
14  exactly what you have in mind. We can try to do it,
15  but I think you understand from the witness's testimony
16  he cannot do it under Czech law. He can't disclose
17  what the police did after they received the complaint.
18     MR. LEIBENSPERGER:  I hear the objection.
19  I don't agree with it. But, I don't want to waste time
20  asking a lot of questions and hearing the same response
21  from Mr. Harazim that he can't answer it, so I just
22  want to understand when, what rules you are going to
23  play by so that the record will be clear what questions
24  you're going to not allow the witness to answer, or

Page 287

1   that he won't answer, and then I'll move onto something
2   else.
3      MR. BECKMAN:  Well, I think you should try
4   to ask. I don't know where you're going. You can try
5   to ask them.
6      Q.   Well, I asked you what tape recordings and
7   video recordings and transcripts you are aware of with
8   respect to Mr. Hoffmann and Mr. Weiss after August 27,
9   2004?
10     A.   I have instruction, I have clear
11  instruction from my Czech lawyers until, until the
12  criminal -- until Mr. Weiss will be formally charged
13  with the criminal complaint, I cannot talk about it,
14  because I can be an obstruction for the Czech police
15  investigation, which is ongoing.
16     MR. BECKMAN:  Do you know now --
17     THE INTERPRETER:  Obstruct.
18     MR. BECKMAN:  Do you know, Ned, whether
19  Mr. Weiss has been served or not with the criminal
20  charges?
21     MR. LEIBENSPERGER:  I just want to ask the
22  questions here in the deposition.
23     MR. BECKMAN:  Because if he has, then the
24  witness is here, and he'll answer your question. He'll

14 (Pages 284 to 287)

Richard Harazim, Vol. 2                                                    2/23/2006

Page 288

1  answer all your questions.  If you can represent that
2  he's been served with the papers by the --
3          MR. LEIBENSPERGER:  Well, I don't want to
4  get into a debate about the criminal procedure in the
5  Czech Republic, you know.
6          MR. BECKMAN:  I'm not asking you to.
7          MR. LEIBENSPERGER:  Because I don't know
8  what you mean by "served with the papers."  You know,
9  there's not -- so, I don't want to represent anything
10  to you with respect to that.
11          MR. BECKMAN:  Well, we all know that, and
12  I've seen the e-mails from McDermott, Will & Emery,
13  their efforts to contact the State Department, to delay
14  the service of those charges.  If those charges have
15  been served upon Mr. Weiss, Mr. Harazim is here and
16  will answer all your questions with respect to the
17  police investigation.
18          MR. LEIBENSPERGER:  Well, I take issue
19  with your description of what McDermott, Will & Emery
20  has attempted to do.  But, I'm not going to opine about
21  the status of --
22          MR. BECKMAN:  So, you won't tell us
23  whether he's been served or not?
24          MR. LEIBENSPERGER:  This is not

Page 289

1  appropriate.  I am taking this deposition of
2  Mr. Harazim.
3          MR. BECKMAN:  Well, you have to create the
4  record, because if you're making an issue --
5          MR. LEIBENSPERGER:  I ask the questions,
6  and I think he should answer.  I'm going to ask the
7  questions, and I think he should answer them.  If he
8  will not answer them, then we'll deal with that with a
9  subsequent motion.
10      A.  So, I already repeated and answer it until
11  Mr. Weiss will be formally served or charged, I cannot
12  talk about it, because I can be in the violation of the
13  Czech police law investigations.
14          THE INTERPRETER:  I was asking if I
15  translated it correctly.
16      Q.  So, you will not answer my last question?
17      A.  No.  I can't.
18      Q.  Who is your Czech lawyer?
19      A.  Kubica Vladika.
20      Q.  Is that a firm or an individual name?
21      A.  This is a law firm.
22      Q.  What is the name of the lawyer?
23          THE INTERPRETER:  I can write it for you.
24          MR. LEIBENPERGER:  Please.  I want the

Page 290

1  name of the individual lawyer.  Did you give that?
2          THE INTERPRETER:  This is one of the
3  lawyers.  This is the name (indicating).
4      Q.  Kubica, is that the principal lawyer, who
5  is advising you?
6      A.  This is the lawyer with whom I talk about.
7      Q.  All right.
8          MR. LEIBENSPERGER:  Would you give the
9  spelling of the name to the court reporter.
10      Q.  Prior to August 27, 2004, did you record
11  any conversations with Mr. Weiss?
12      A.  Did you recall or record?
13      Q.  Record?
14          THE INTERPRETER:  Record.  Oh, pardon.  I
15  misunderstood.
16      A.  No.  We did not.
17      Q.  Do you have any tape recordings of
18  Mr. Weiss?
19      A.  From the period of time?
20      Q.  We'll start with from the period of time
21  before August 27th?
22      A.  No.
23      Q.  Do you have any video recordings of
24  Mr. Weiss?

Page 291

1      A.  From the period before?
2      Q.  We'll start with that, yes.
3      A.  No.
4      Q.  All right.  Are you aware of any tape
5  recordings of Mr. Weiss after August 27, 2004?
6      A.  I am referring to my previous answer that
7  I cannot answer that because of the police
8  investigation.
9      Q.  So, to make this shorter, if you won't
10  answer because of the police investigation, you can
11  just say, you know, I will not answer on the same
12  grounds.
13          Does Kotva have access to what is in the
14  police file in the investigation of Mr. Hoffmann and
15  Mr. Weiss?
16          THE INTERPRETER:  Yes.  Kotva has access
17  to those files, because the Kotva is the, is the --
18      A.  Damaged party here.
19      Q.  Does Kotva have copies of the documents
20  that are in the police file?
21      A.  Those which are accessible, we were
22  allowed to copy them.
23      Q.  You said those that "are accessible."  Is
24  there, do you have access to the entire file?

15 (Pages 288 to 291)

# WEISS ASSET MANAGEMENT

May 20, 2005

Dear Investor:

In previous correspondence I described the prospective criminal charges being brought against me in the Czech Republic, and sent investors a copy of the Boston Globe article describing the situation. To recap the situation: the previous managers of BGO had bought shares in Trend and Kotva a.s., a closed-end fund and the owner of a large department store, respectively. Those shares were segregated and are not included in the assets of BGO. The assets of both those companies were embezzled by the same people who are now suing me for trying to recover the stolen assets. They have also persuaded the police to charge my former associate and his office manager with extortion for threatening to petition the courts to return the assets to their rightful owners. A low level prosecutor has frozen the Kotva shares that had been bought by the previous owners – there was no explanation offered for that action. According to media accounts, the police are intending to also charge me with extortion for petitioning the courts to stop this thievery.

In the last two months there have been several new developments. I personally have been sued in Boston Federal Court as has Weiss Asset Management. These lawsuits are ridiculous – I have done nothing other than fulfill my fiduciary responsibilities to my investors, and Weiss Asset Management had no involvement in any of the matters under dispute and has no managerial authority over the segregated assets. Their suit has numerous factual errors, and the accusations make no sense. The objective of these lawsuits, as well as the criminal charges brought in the Czech Republic, is to try to discourage me from continuing my efforts to prevent the segregated assets from being stolen.

The parties who are suing me either don't appreciate the integrity of the Federal Courts, or else think that by harassing me they can get me to violate my fiduciary responsibilities. However, they don't seem to have realized that by suing in Boston Federal Court they have given us the opportunity to file counter claims in Federal Court. Investors in the segregated assets could be awarded damages of as much as $25 million. The buyers of the stolen property escrowed $24.3 million, which is available to pay damages. The investors in BGO as of Sept. 2000 will benefit directly from the damage award. BIP has a 43% stake in those segregated assets and thus could derive a significant benefit from a just resolution of this dispute. The revenue from the sale of other securities in the pool of segregated assets is being used to finance all costs associated with the recovery of the stolen property. There is $675,000 remaining available to pay future legal bills. If additional monies are needed, the second largest owner of the ring fenced assets (with a 37% ownership interest) has agreed to share in those costs proportionately with BIP. There is minimal risk to BIP investors from these legal problems, and an opportunity for significant gains.

There is likely to be continued media coverage of this story. Fortune Magazine, Dow Jones/Wall Street Journal, and the European edition of Time magazine have all expressed interest. I will communicate with investors as any material changes occur.

Sincerely yours,

Andrew Weiss

---

29 Commonwealth Avenue · Boston · Massachusetts · 02116
Phone: (617) 778-7780 · Fax: (617) 778-7781 · E-mail: info@weissasset.com

Fitz 0095