UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ANDREW WEISS and WEISS ASSET | ) |
| MANAGEMENT, LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) C.A. No. 05-10679-RCL |
| | ) |
| ANDREW WEISS, WEISS ASSET | ) |
| MANAGEMENT LLC, K T, INC. and CVF | ) |
| INVESTMENTS, LTD., | ) |
| | ) |
| Counterclaim-plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| KOTVA a.s., MARTIN BENDA, RICHARD | ) |
| HARAZIM, FORMINSTER ENTERPRISES, | ) |
| LTD., SPV CO and JOHN DOES 1–5, | ) |
| | ) |
| Counterclaim-defendants. | ) |
| | ) |

**MEMORANDUM IN OPPOSITION TO KOTVA'S MOTION TO COMPEL**

**I.    INTRODUCTION AND FACTUAL BACKGROUND**

The plaintiff, Kotva, filed this lawsuit for the improper purpose of exerting pressure on Andrew Weiss in a business dispute in the Czech Republic.  Kotva's complaint fails to state a claim upon which relief can be granted, and the defendants have moved for judgment on the pleadings.  Nevertheless, Kotva pushes forward with discovery requests that are designed to unnecessarily increase litigation costs and interfere with Mr. Weiss's business relationships. More specifically, Kotva seeks to sift through privileged documents to which it is not entitled, go

on a fishing expedition through documents relating to litigation among other entities that has no connection to any claim in this case, and gain access to a confidential list of investors who have no stake in this dispute.  Kotva is continuing its pattern of using discovery for ulterior purposes, as it did earlier this year by issuing subpoenas to Mr. Weiss's investors and a Boston University colleague that falsely asserted that Mr. Weiss has been indicted.  Accordingly, Andrew Weiss, Weiss Asset Management LLC, K T, Inc. and CVF Investments Ltd. (collectively, the "Weiss Parties") oppose Kotva's motion to compel.

Andrew Weiss is the president of Weiss Capital LLC and a director of K T, Inc.  Weiss Capital LLC is the investment manager of Brookdale Global Opportunity Fund ("BGO").  CVF Investments Ltd., a wholly owned subsidiary of BGO, owns shares in both Kotva and a Czech investment fund called Trend.[1]  K T also owns shares in Kotva and Trend.  Weiss Asset Management ("WAM") is a defendant in this case.  Other than being sued by Kotva, WAM has no role in this dispute.

As described in more detail in the counterclaim, Forminster Enterprises, Martin Benda, Richard Harazim and others (collectively, the "Forminster Group") are engaged in an ongoing scheme to take assets that belong to the shareholders of Trend and Kotva and convert those assets for their own benefit.  In 2003, Weiss Capital LLC contracted with Vladimir Hoffmann to handle several matters in the Czech Republic, including matters relating to CVF Investments Ltd.'s stakes in Kotva and Trend.  Among other things, Weiss Capital instructed Mr. Hoffmann to retain Czech counsel to provide legal advice for Weiss Capital and affiliated companies. Ultimately, K T, Inc. and CVF Investments Ltd. used Czech counsel to file litigation against

---

[1] As described in more detail in section V.D.1 below and the declaration of Georgiy Nikitin, the current shareholders of BGO have no financial interest in the Kotva and Trend shares held by CVF Investments Ltd.

Kotva and other companies in the Czech Republic.

Various present and former employees of Weiss Capital LLC, including Andrew Weiss, David Johnson, Georgiy Nikitin[2] and others, communicated with Mr. Hoffmann by email.[3]  As described below, communications between Weiss Capital and its Czech attorneys were frequently channeled through Mr. Hoffmann.  In order to make use of the legal advice they received, Weiss Capital employees discussed this advice among themselves.

## II.    THE DOCUMENTS ON THE WEISS PARTIES' PRIVILEGE LOG ARE NOT DISCOVERABLE

Kotva bases all of its claims in this case on the contention that Andrew Weiss used the services of Vladimir Hoffmann to retain Czech counsel and file lawsuits.  Now, in an effort to pierce the attorney-client privilege and gain access to the Weiss Parties' work product, Kotva takes an entirely contradictory position.  Kotva argues: (1) that communications to and from attorneys in the Czech Republic are not privileged because Mr. Hoffmann, acting as Weiss Capital's representative, was involved in those communications; and (2) materials created in anticipation of parallel litigation in the Czech Republic are not work product.  Kotva's contentions have no basis in law or fact.

### A.    COMMUNICATIONS TO COUNSEL FROM ANDREW WEISS OR OTHER EMPLOYEES OF WEISS CAPITAL LLC CHANNELED THROUGH VLADIMIR HOFFMANN ARE PRIVILEGED

Kotva argues that since Weiss Capital employees channeled certain communications to counsel through Vladimir Hoffmann rather than communicating directly to a Czech lawyer,

---

[2] Mr. Nikitin is also an officer and director of K T, Inc.

[3] Other present and former Weiss Capital employees whose names appear on the Weiss Parties' privilege log are Eitan Milgram (Chief Operating Officer and Head of Trading), Robert Woo (former assistant to Mr. Weiss), Briana Dubrow (former officer manager), Vasudev Vadlamudi (former assistant to Mr. Weiss), and Marta Sluborska (office manager).  Additionally, Holly Kampler, a contract accountant who worked with Weiss Capital on a monthly basis, is also listed on the log.

those communications are not privileged. This argument relies on an incorrect view of the law. Mr. Hoffmann consulted Czech counsel at the direction of Andrew Weiss and other employees of Weiss Capital LLC. A corporation can act only through its agents, and would effectively have no attorney-client privilege if its agents could not communicate with counsel.[4]  In *Upjohn v. United States*, the Supreme Court held that when the client is a corporation, the attorney-client privilege attaches to communications between the lawyers and officers and directors of the corporation as well as other employees who are interacting with the lawyer at the direction of their superiors.[5]  That Mr. Hoffmann was not an employee of Weiss Capital is irrelevant.  "[I]t is inappropriate to distinguish between those on the client's payroll and those who are instead, and for whatever reason, employed as independent contractors."[6]

Even if Vladimir Hoffmann were not under contract with the Weiss Parties, his service as an intermediary between an American company and Czech counsel does not vitiate the privilege. Kotva cites *United States v. MIT*, 129 F.3d 681, 684 (1st Cir. 1997) for the basic components of

---

[4] *Upjohn Co. v. United States*, 449 U.S. 383, 389–90 (1981).

[5] *Id.* at 394–96 (finding that communications made at the direction of management between the attorney and the client's representatives are privileged); *see also CSC Recovery Corp. v. Daido Steel Co.*, No. 94 Civ. 9214 (LAP)(THK), 1997 U.S. Dist. LEXIS 16346, at *9 (S.D.N.Y. Oct. 22, 1997) ("The attorney-client privilege affords confidentiality to communications among clients, their attorneys, and the agents of both, for the purpose of seeking and rendering legal advice, so long as the communications were intended to be and were in fact kept confidential."); *Milwaukee Concrete Studios v. Greeley Ornamental Concrete Prods.*, 140 F.R.D. 373, 378 (E.D. Wis. 1991) (finding no waiver of attorney-client privilege when employees prepared materials at the direction of their employer for the purpose of seeking legal advice and those materials were kept confidential); *In re Beiter Co.*, 16 F.3d 929, 935 (8th Cir. 1994) (quoting Supreme Court Standard 503(b) for the proposition that the attorney-client privilege extends to communications "between representatives of the client or between the client and a representative of the client"); *United States v. Spector*, 793 F.2d 932, 938 (8th Cir. 1986) (recognizing that courts have "relied on [Supreme Court Rule 503] as an accurate definition of the federal common law of attorney-client privilege"); *McCaugherty v. Siffermann*, 132 F.R.D. 234, 239 (N.D. Ca. 1990) (holding that the attorney-client privilege applied to communications between consultants hired by the client); *Winchester Capital Mgmt. Co., v. Mfrs. Hanover Trust Co.*, 144 F.R.D. 170, 172 (D. Mass. 1992) (holding that a communication remains privileged when a disclosure is made "to a third party who is identified with the party claiming the privilege or to whom disclosure is reasonable and necessary in order for all the facts to be made known to the attorney").

[6] *In re Beiter Co.*, 16 F.3d at 937.

4

an assertion of attorney-client privilege.  However, Kotva omits key language from that decision.

The First Circuit explained that "decisions do tend to mark out, although not with perfect

consistency, a small circle of 'others' with whom information may be shared without loss of the

privilege (e.g., secretaries, interpreters, counsel for a cooperating co-defendant, a parent present

when a child consults a lawyer)."[7]  When an American company seeks legal advice in a foreign

country, it is only natural that it would seek that advice through a local representative.  In this

sense, Mr. Hoffmann is no different from the interpreters who routinely facilitate

communications between clients and counsel without impacting the privilege.

Thus, it should be of no surprise that many of the documents for which the Weiss Parties

claim attorney-client privilege have Vladimir Hoffmann, rather than a Czech attorney, listed as a

sender or recipient.

## B.    DISCUSSION OF LEGAL ADVICE AMONG ANDREW WEISS, VLADIMIR HOFFMANN AND EMPLOYEES OF WEISS CAPITAL LLC ARE PRIVILEGED

Kotva also contends that communications among Hoffmann, Weiss and other employees

of Weiss Capital LLC (or some subset of this group) relaying and discussing legal advice are not

privileged.  This argument defies logic and runs against clear precedent.  "It is well settled that

the dissemination of a communication between a corporation's lawyer and an employee of that

corporation to those employees directly concerned with such matters does not waive the

attorney-client privilege."[8]  Since a corporation can only act through its employees and other

---

[7] *MIT*, 129 F. 3d at 684.

[8] *Sylgab Steel & Wire Corp. v. Imoco-Gateway Corp.*, 62 F.R.D. 454, 456–57 (N.D. Ill. 1974), *aff'd*, 534 F.2d 330 (7th Cir. 1976).  *See also In re Grand Jury Proceedings*, No. M-11-189, 2001 U.S. Dist. LEXIS 15646, at *97–98 (S.D.N.Y. Oct. 3, 2001) ("Privileged communications will not lose protection if an executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation.") (citations omitted); *Baltimore Scrap Corp. v. The David J. Joseph Co.*, Civil No.: L-96-827, 1996 U.S. Dist. LEXIS 18617, at *16–17 (D. Md. Sept. 17, 1996) ("Courts have consistently

agents, communications among those individuals regarding the advice of the corporation's attorney must be privileged. This conclusion "follows from the recognition that since the decision-making power of the corporate client may be diffused among several employees, the dissemination of confidential communications to such persons does not defeat the privilege."[9] A contrary rule would render ineffectual any advice a company receives from an attorney. The particular agents who actually spoke to the attorney would know the content of counsel's recommendations, but would be unable to relay those recommendations to anyone else in the organization. Likewise, relaying legal advice to the individuals involved in the administration of CVF Investments Ltd.[10] or the custody of its shares in Kotva or Trend[11] was at times the only way to make use of that legal advice, and cannot defeat the privilege.

### C.    CERTAIN COMMUNICATIONS WITH HOWARD GOLDEN ARE PRIVILEGED

The Weiss Parties produced a number of emails between employees of Weiss Capital and Howard Golden, an attorney who lives in Prague. Mr. Golden is a former business associate of Mr. Weiss and a former director of counterclaim-plaintiff CVF Investments Ltd. The Weiss Parties have produced communications with Mr. Golden in which he was not acting as a lawyer. Only those communications with Mr. Golden made for the purpose of securing his advice on

---

recognized that this type of intra corporate distribution of legal advice received from counsel does not vitiate the privilege even though the legal advice is relayed indirectly from counsel through corporate personnel."); *In re Grand Jury 90-1*, 758 F. Supp. 1411, 1413 (D. Colo. 1991) (upholding the attorney-client privilege when the President of a corporation relayed information from the corporation's attorney to its Board of Directors because he was "merely making advice available to another part of this inanimate entity"); *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 518 (D. Conn. 1976) ("It would be an unnecessary restriction of the privilege to consider it lost when top management personnel discuss legal advice.")

[9] *Bank Brussels Lambert v. Banque Paribas (Suisse) S.A.*, 160. F.R.D. 437, 442 (S.D.N.Y. 1995).

[10] Individuals listed on the privilege log are: Christiana Loizou, Andri Pangalou, Elena Neophytou, Christoforou Costas, and Arlene Nahikian. These individuals are administrators and accountants for CVF Investments Ltd.

[11] Listed on the privilege log are Annick Langlois and Jason LeRoux of HSBC.

legal issues have been withheld.

### D.    THE CRIME-FRAUD EXCEPTION DOES NOT APPLY TO THIS CASE

In its Motion to Compel, Kotva repeats its slanderous, unfounded allegation that the Weiss Parties used the services of Czech counsel "to foster a crime or fraud."  Kotva's Mem. at 18 (quoting *In re Grand Jury Proceedings*, 417 F.3d 18, 23 (1st Cir. 2005)).  The Weiss Parties contacted Czech counsel to initiate litigation in the Czech Republic.  Filing a lawsuit is not criminal behavior.[12]  Thus, Kotva cannot meet *its burden* of demonstrating: "(1) that the client was engaged in (or was planning) criminal or fraudulent activity when the attorney-client communications took place; and (2) that the communications were intended by the client to facilitate or conceal the criminal or fraudulent activity."[13]

The crime fraud exception does not apply to situations where the client sought the attorney's advice with the intent of legally accomplishing its business goals.[14]  Moreover, since filing lawsuits is not a crime under U.S. law,[15] it is irrelevant for purposes of the crime-fraud exception that Kotva was able to use its influence over Czech law enforcement to bring sham criminal charges against Mr. Weiss.  "[C]riminal law should be recognized for purposes of

---

[12] *E.g.*, *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088 & n.2 (11th Cir. 2004) (holding that neither threats to litigate nor actual litigation can constitute extortion under federal law); *Deck v. Eng'd Laminates*, 349 F.3d 1253, 1257–58 (10th Cir. 2003) ("[W]e join a multitude of other courts in holding that meritless litigation is not extortion under § 1951."); *I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265, 267 (8th Cir. 1984) ("We cannot agree that the threat [to bring a civil action] alleged here constituted the infliction of 'fear' for purposes of the extortion statute."); *Dias v. Bogins*, No. 97-1612, 1998 U.S. App. LEXIS 536, at *2 (1st Cir. Jan. 13, 1998) (unpublished) ("[A] threat to sue . . . is not extortion under federal law."); *Di Giambattista v. McGovern*, No. 92-1168, 1992 U.S. App. LEXIS 23569, at *10 (1st Cir. Sept. 4, 1992) (unpublished) (same).

[13] *In re Grand Jury Proceedings*, 417 F.3d 18, 22 (1st Cir. 2005) (holding that the crime-fraud exception applies where the client "sought or employed legal representation *in order* to commit or facilitate a crime or fraud") (emphasis added).

[14] *In re Grand Jury Subpoena*, 220 F.R.D. 130, 151–52 (D. Mass. 2004) ("The client must have actual or constructive intent to engage in wrongful activity. . . .")

[15] Nor is it a crime under Czech law. Kotva can point to no case in which someone was convicted of extortion under Czech law for filing a lawsuit or threatening to file a lawsuit.

federal common law crime-fraud analysis only when it has an analogue in American jurisprudence."[16]  Indeed, the notion that petitioning the courts for redress can be a criminal act is so contrary to our common understanding that even if it could constitute a crime as a matter of law, Kotva cannot demonstrate that Mr. Weiss had the sort of specific intent to commit a crime that is a necessary component of establishing the crime-fraud exception.[17]

### E.    THE WEISS PARTIES' CLAIMS OF WORK PRODUCT PROTECTION ARE ENTIRELY PROPER

Contrary to Kotva's unsubstantiated allegation, documents created in anticipation of litigation or potential litigation in the Czech Republic are not documents created in the ordinary course of business by the Weiss Parties.[18]  Weiss Capital LLC is in the business of investment management.  Lawsuits are the exception—not the rule.  As Weiss Capital employees and others learned about the tremendous damage the Forminster Group has wreaked on the shareholders of Trend and Kotva, they prepared documents in anticipation of potential litigation to redress those wrongs.  These documents are classic work product.

That Mr. Hoffmann was involved with the creation of some of these documents or reviewed other such documents after they were created does not change the analysis.  As discussed in more detail above, Mr. Hoffmann was acting as the local representative for the Weiss Parties and his involvement in the creation of work product does not diminish the scope of

---

[16] *Madanes v. Madanes*, 199 F.R.D. 135, 148 (S.D.N.Y. 2001) (holding that the crime fraud exception did not apply because the alleged crimes were violations of law of Argentina, but the conduct would not constitute a crime in the United States)

[17] *In re Grand Jury Proceedings*, 417 F.3d 18, 22 (1st Cir. 2005) (holding that the crime-fraud exception applies where the client "sought or employed legal representation *in order* to commit or facilitate a crime or fraud") (emphasis added).

[18] Work product materials need not be prepared by an attorney to qualify as work product.  *See Sprague v. Director, Office of Workers' Comp. Programs*, 688 F.2d 862, 870 (1st Cir. 1982) ("Furthermore, the fact that *a doctor* and not *an attorney* prepared this letter is irrelevant for purposes of Rule 26(b)(3) work-product protection."); *In re Grand Jury Subpoena*, 220 F.R.D. 130, 142 & n.6 (D. Mass. 2004).

the protection for that work product.[19]

### F.    EXCHANGES OF WORK PRODUCT WITH JAMES WOOLF ARE NOT DISCOVERABLE UNDER THE COMMON INTEREST DOCTRINE

Kotva claims that documents prepared in anticipation of other similar litigation in the Czech Republic do not fall within the scope of work product.[20]  This is not the law.  "The weight of authority requires application of the doctrine in litigation other than the litigation originally anticipated."[21]  This is the case even if the other litigation is unrelated.[22]  In this case, Messrs. Weiss and Woolf were preparing analogous claims against Kotva and other entities associated with it.  Mr. Woolf has since settled those claims, and his stake in Kotva was purchased by J&T Bank on behalf of an unnamed "client."[23]  At the time of the communications at issue, however, Mr. Weiss and Mr. Woolf had a common interest in pursuing claims against Kotva.  Thus, disclosure of work product from one to the other does not subject that work product to disclosure to Kotva in this or any other proceeding.[24]

### G.    WORK PRODUCT DISCLOSED TO INDIVIDUALS WHO ARE NOT A CONDUIT TO KOTVA MAY BE WITHHELD

Kotva argues that the Weiss Parties waived the protection of the work product doctrine

---

[19] Kotva's claim of substantial need for documents rings false.  At the initial scheduling conference, counsel for Kotva told the Court that this was a simple case and that he already had most of the documents he needed.  Indeed, Kotva makes this argument half-heartedly, failing to identify any particular documents for which it has a substantial need.  Instead, Kotva acknowledges that it cannot establish "at this juncture" that *any* of the documents for which the Weiss Parties claim work product, are "an important part of preparing the discoverer's case for trial and the substantial equivalent cannot be obtained through other means."  Kotva's Mem. at 17.

[20] *See* Kotva's Mem. at 13–14.

[21] *In re Grand Jury Subpoena*, 220 F.R.D. 130, 149 (D. Mass. 2004).

[22] *Id.* at 150 (holding that work product protection can extend to materials prepared for any litigation, even unrelated litigation).

[23] *See* Exhibit A.

[24] *See Ken's Foods, Inc. v. Ken's Steak House, Inc.* 213 F.R.D. 89, 93 (D. Mass. 2002) (recognizing that the common interest privilege applies to communications protected by either the attorney-client privilege or the work product doctrine).

by sharing documents with the United States Department of State and certain reporters.  Waiver of work product protection occurs only when the materials prepared in anticipation of litigation are voluntarily disclosed to outsiders in a way that is inconsistent with keeping the materials from adversaries.[25]  "Most courts have held that disclosure of a document to third persons does not waive the protection unless it has substantially increased the opportunities for potential adversaries to obtain the information."[26]

The United States Department of State is not a conduit to Kotva and disclosures to it did not increase the opportunity for Kotva to receive the Weiss Parties' work product.  By filing a criminal complaint, Kotva involved the Czech Government in this dispute and forced the involvement of the State Department.  The United States need not—and should not—stand idly by while its citizens are threatened with unjust imprisonment or the loss of investments through the actions of a foreign government.  Rather, the United States Government has an interest in facilitating U.S. investment in former Eastern Bloc countries.  Kotva's actions conflict with that interest, and the State Department is, if anything, adverse to Kotva, rather than a conduit to it.

Nor are the particular reporters to whom the Weiss Parties disclosed work product conduits to Kotva.  Reporters routinely accept information from sources with the understanding that it will not be disclosed.  Should there be any doubt, the proof is in the pudding.  Many months have passed since these disclosures, and Kotva still has not received any of the work product shared with reporters.  In the circumstances of this case, the Weiss Parties and the press have a common interest in documenting the unlawful activities of the Forminster Group and ensuring that the responsible parties are brought to account.  Reporters have not shared the Weiss

---

[25] *In re Raytheon Sec. Litig.*, 218 F.R.D. 354, 360 (D. Mass. 2003).

[26] *Id.*

Parties' work product with Kotva and there is no likelihood that they will in the future.

### III.  THE COURT SHOULD NOT FORCE THE PARTIES TO LOG PRIVILEGED DOCUMENTS RELATING TO PARALLEL LITIGATION IN THE CZECH REPUBLIC

Kotva demands that the Weiss Parties log every document relating to parallel litigation in the Czech Republic for which the Weiss Parties are claiming work product or attorney-client privilege.  The Weiss Parties' log does not include the thousands of communications with counsel or internal discussions relating to communications with counsel generated after June 2, 2004.  As described below, Kotva has not provided comparable information on its privilege log.[27]

To put the dispute over the scope of privilege logs in context, counsel first discussed the issue of what documents needed to appear on privilege logs in January 2006.  As contacts between individuals at Kotva and Nystrom, Beckman & Paris were directly relevant to the pending motions to dismiss, counsel for the Weiss Parties asked for a log any such communications leading up to the filing of Kotva's Complaint.  Counsel for Kotva flatly refused to log this information.  Counsel for the Weiss Parties accepted Kotva's position, and instead inquired about the number of communications and the individuals involved at Kotva's 30(b)(6) deposition.  *See* Exhibit B.  The same discovery method is available to Kotva.

The next discussion about the scope of privilege logs took place at the close of the February 10, 2006 hearing before the Discovery Master.  Counsel for the parties were discussing the timeframe for the Weiss Parties to produce their privilege log.  Mr. Goldberger recalls that Mr. Beckman stated that he did not expect a log of litigation related documents.  Mr. Beckman recalls that he stated he did not expect a log of documents relating to *this litigation*.  Based on his

---

[27] The June 2, 2004 cut-off date was established because the Weiss Parties first contacted Ondrej Peterka, litigation counsel for the Czech cases, on June 4, 2004.

understanding, Mr. Goldberger agreed to produce a log by February 24, 2006 notwithstanding the fact that Kotva's 30(b)(6) deposition was scheduled for February 22 and 23, 2006.  On February 24, 2006, the Weiss Parties produced a log with 426 entries.[28]  There are over 1,000 documents in calendar year 2004 alone containing communications to Czech counsel or other litigation-related work product that the Weiss Parties have not logged and, indeed, could not have logged within the agreed upon time period.  Providing a detailed log of each of these documents would result in a substantial and undue burden and expense for the Weiss Parties.

There is no basis for Kotva to distinguish between logging documents relating to this litigation—which it agrees is not required—and documents relating to the parallel Czech litigation.  Both sets of documents are clearly subject to both the attorney-client privilege and work product protections.  Kotva has characterized the Czech lawsuits and this case as: "parallel proceedings" and "simultaneous litigation" involving "the same historical background and 'Trend tunneling' allegations" with only "simple variations of the same basic allegation"  to distinguish them.  *See* Exhibit C at 1–3.

Most importantly, and most tellingly, Kotva seeks to impose an unreasonable burden on the Weiss Parties that it has been unwilling to take on for itself.  Kotva's meager privilege log

---

[28] Throughout the discovery conferences, counsel for the Weiss Parties' repeatedly requested a counter-log to narrow the parties' dispute over privileged documents.  Kotva refused each request and, instead, moved to compel production of large categories of documents based on an inaccurate, cramped view of what constitutes attorney-client privilege and work product.  To the extent that any particular entry on the privilege log requires additional explanation in terms of description of the underlying document, the Weiss Parties' repeated requests for specificity by Kotva and offers to provide additional information preclude any finding of waiver.  There is a strong presumption in favor or preserving privilege in the litigation context.  Waiver is a drastic measure imposed "only if a party behaves unreasonably or worse" and is not imposed automatically if "the party reasonably believed that its objections applied to the documents."  *United States v. British Am. Tobacco*, 387 F.3d 884, 884, 890–91 (D.C.  Cir. 2004) (citing *United States v. Phillip Morris Inc.*, 347 F.3d 951, 954 (D. C. Cir. 2003)); *see also Rivera v. Kmart Corp.*, 190 F.R.D. 298, 300 (D.P.R. 2000) ("A waiver is a serious sanction to be imposed in cases of unjustified delay, inexcusable conduct, bad faith or other flagrant violations.") (citations omitted).

lists fewer than 70 documents. There is not a *single entry* on the Kotva log that refers to the parallel Gilroy or K T litigation in the Czech Republic. It is a party to both of these lawsuits and counsel filed responsive pleadings. There can be no doubt that there are attorney-client privileged documents relating to that litigation.

In fact there are no entries whatsoever on Kotva's log for the period March 20, 2004 to August 26, 2004. During this period, the May 12, 2004 meeting among Messrs. Weiss, Hoffmann, Benda, and Harazim took place, Gilroy filed its lawsuit against Kotva, attorney Petr Toman filed a response on behalf of Kotva, and Kotva hatched its scheme to pursue criminal charges against Mr. Weiss, which it filed on August 27, 2004. Moreover, Kotva's 30(b)(6) designee testified that Kotva consulted multiple attorneys in connection with its pursuit of criminal proceedings against Mr. Weiss and his Czech attorney, Ondrej Peterka. *See* Exhibit D. Thus, it appears that Kotva has taken an identical position as the Weiss Parties with respect to logging its work product and attorney-client privileged documents relating to the parallel Czech litigation. In view of Kotva's failure to log these documents, there is no basis to impose this significant burden on the Weiss Parties.

It is simply not the case, as Kotva asserts, that Rule 26 requires a full privilege log for every privileged document. Rather, "[t]he rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection. Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories." Rule 26, Advisory Committee Notes, 1993 Amendment. The Weiss Parties described the withheld documents with enough specificity that Kotva is able to—and in fact has—mount a

challenge to these claims of privilege. Nothing more is required.

## IV.    ALL REDACTED INFORMATION IS IRRELEVANT TO THIS LITIGATION

The Weiss Parties redacted information from some of the documents produced because that information is completely irrelevant to the lawsuit. Accordingly, these redactions are not subject to the Discovery Master's January 6, 2006 Order relating to confidential information. The documents the Weiss Parties redacted have sufficient unredacted information that Kotva and the Court are both able to determine that the redactions concern irrelevant material. Most of the redactions concern investments in companies other than Kotva or Trend, or expenses of the Weiss Parties. Kotva offers no explanation for why investments or expenditures unrelated to Kotva or Trend could have any bearing on any claim in this case.[29] With respect to fees associated with the underlying litigation, counsel agreed in the Fall of 2005 that they would not produce documents concerning legal fees at this stage in the litigation. Similarly, Kotva fails to address how emails relating to the Kazakhstan Investment Fund ("KIF") or investments in Romania that appear at the tail end of relevant email strings could possibly contain responsive, relevant information.[30]

Ever since Kotva first raised the issue of redactions in February 2005, the Weiss Parties have repeatedly offered to examine any redactions and produce unredacted copies of documents that have been inappropriately redacted. With one exception, Kotva refused to identify any specific documents about which it had redaction concerns.[31] After reviewing Kotva's motion to

---

[29] *See* W0006080–W0006112; W0009080–W0009130; W0006164–W0006170; W0002060–W0002061; W0010730–W0010731.

[30] *See* W0001275–W0001277; W0005517–W0005518.

[31] On February 28, 2006, Kotva identified, in a court filing, one such redaction on page W0005370. The next day, the Weiss Parties directed Kotva to another document that contained the same information in unredacted form. Subsequently, the Weiss Parties provided Kotva with an unredacted copy of page

compel, the Weiss Parties produced four additional documents in unredacted form that should have had redactions removed before production. *See* Exhibit E. Of the remaining documents, all redactions cover irrelevant information as described above except for the redactions on pages W0000846, W0009878 and W0009892. The Weiss Parties received these documents after a third party had already redacted them. Accordingly, the Weiss Parties are physically unable to remove the redactions.

## V.    KOTVA'S DOCUMENT REQUESTS SEEK INFORMATION THAT HAS NO POSSIBLE BEARING ON THE CLAIM OR DEFENSE OF ANY PARTY

### A.    Request Numbers 55–57 and 59–61

Kotva has moved to compel production of documents that relate to litigation and arbitration between third parties: "CEPF," "MCF," "IPB," "Domeana," and others. According to Kotva, Mr. Weiss was "at the center" of this litigation. He was not. Even if he were, the litigation has no possible bearing on any claim in this case.

Kotva claims that these discovery requests concern Kotva's RICO claims. As a threshold matter, Kotva has failed to state a claim under RICO for four independent reasons. *See* Mem. in Supp. of Motion for Judgment on the Pleadings at 7, 10–16. Because Kotva admits that the discovery requests at issue concern solely RICO claims, the Weiss Parties respectfully suggest that this admittedly irrelevant discovery be, at a minimum, deferred until the Court determines whether a RICO claim has been stated.

Even had Kotva stated a cognizable RICO claim in its Complaint, the discovery requests have no relevance to that claim. The terms "CEPF," "MCF," "IPB," "Domeana," and "RIF" do not appear anywhere in Kotva's eighty-seven paragraph Complaint. Kotva cannot solve this

---

W0005370. Despite receiving an unredacted copy of this document nearly a month before filing its motion to compel, Kotva included W0005370 among the redacted documents attached to its motion.

problem by pointing to its skeletal Civil RICO Case Statement—which it resisted providing until February 2006. The sole reference in the Civil RICO Case Statement to which Kotva's document requests relate is found in Kotva's answer to the question "explain how *the predicate acts* amount to or pose a threat of continued criminal activity." Civil RICO Case Stmt. ¶ 5(e) (emphasis added). Kotva does not allege that any activities relating to litigation among other entities constitute a predicate act. Civil RICO Case Stmt. ¶ 5(a). Rather, "[a]ll the predicate acts relate to a common, broad, and far-reaching scheme to blackmail and extort Kotva." *Id.* ¶ 5(d). Nor could Kotva make this allegation, because even the minimal description it provides reveals that Kotva is not describing acts of racketeering. Rather, Kotva characterizes its allegations in Paragraph 5(e) as describing "a scheme to blackmail another Czech entity to purchase shares above market value and as a result of sham litigation." Kotva Mem. at 21.[32] It is well-settled that "blackmail" arising out of "sham litigation" is not a crime and cannot serve as a RICO predicate.[33]

### B.   Request Number 58

Request Number 58 seeks "[a]ll documents concerning communications with Terra Partners." The phrase "Terra Partners" does not appear anywhere in the Complaint or Civil

---

[32] The core of the allegation in the Civil RICO Case statement is the same: "Acting on behalf of CEPF, Brookdale Group Ltd. *filed a lawsuit* which sought to block the merger of two IPB Funds. To drop the merger lawsuit, Brookdale Group sold to an IPB affiliate shares of several IPB funds not affected by the merger and at prices significantly higher than the market price." Civil RICO Case Stmt. at 6 (emphasis added).

[33] *E.g.*, *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088 & n.2 (11th Cir. 2004) (holding that neither threats to litigate nor actual litigation can constitute extortion under federal law); *Deck v. Eng'd Laminates*, ¶349 F.3d 1253, 1257–58 (10th Cir. 2003) ("[W]e join a multitude of other courts in holding that meritless litigation is not extortion under § 1951."); *I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265, 267 (8th Cir. 1984) ("We cannot agree that the threat [to bring a civil action] alleged here constituted the infliction of 'fear' for purposes of the extortion statute."); *Dias v. Bogins*, No. 97-1612, 1998 U.S. App. LEXIS 536, at *2 (1st Cir. Jan. 13, 1998) (unpublished) ("[A] threat to sue . . . is not extortion under federal law."); *Di Giambattista v. McGovern*, No. 92-1168, 1992 U.S. App. LEXIS 23569, at *10 (1st Cir. Sept. 4, 1992) (unpublished) (same).

RICO Case Statement. Kotva has failed to demonstrate how this request is relevant to any issue in this case.

### C.    Communications With BGO Investors

The Weiss Parties do not contest that they are required to produce non-privileged communications with investors concerning this case or the parallel proceedings in the Czech Republic. However, Kotva argues that the Weiss Parties have failed to do so. Kotva attempts to prove this allegation by attaching over thirty pages of emails that QVT produced in response to a third-party subpoena.[34] What Kotva fails to inform the Court is that the Weiss Parties produced *all but two* of these emails in February 2006—before QVT produced anything in response to Kotva's subpoena.[35] The two emails that were not produced are two emails sent from Andrew Weiss to Lars Bader on December 12, 2005—eight months after Kotva filed this lawsuit. The reason that QVT produced these documents, but the Weiss Parties did not, is that QVT pulled documents for production after the Weiss Parties did. The Weiss Parties are in the process of bringing their document pull up to date through April 17, 2006 and will make a supplemental production.

---

[34] The extent of the Rule 37.1 discussion on this issue was: (1) Mr. Beckman asking Mr. Goldberger, on March 30, 2006, whether Mr. Goldberger had reviewed the QVT documents, Mr. Goldberger responding in the negative; and Mr. Beckman stating that there were certain documents in the QVT production that the Weiss Parties did not produce; and (2) Mr. Pasquarello noting, in a telephone call with Mr. Goldberger on April 3, 2006, that this was one of several issues on which Kotva would be filing a motion to compel.

[35] Document QVT002785 corresponds to document W0011571–W0011572; document QVT002778 corresponds to document W0011591–W0011593; document QVT002774 corresponds to document W0011575–W0011577; document QVT002753–QVT002755 corresponds to document W0011594–W0011596; document QVT002744–QVT002745 corresponds to document W0011575–W0011577; document QVT002733–QVT002734 corresponds to document W0008544–W0008545; documents QVT002855–QVT002857 and QVT002844–QVT002845 correspond to document W0011582–W0011587; document QVT002796 corresponds to document W0008627–W0008628; document QVT002798 corresponds to document W0008626.

### D.    List of Current Investors in BGO

1.    The Identities of Current Investors Are Not Relevant to Any Claim in This Case

As explained in detail in the declaration of Georgiy Nikitin, BGO's current shareholders have no relationship to this dispute. Nikitin Decl. ¶¶ 5, 7. They have no financial stake in the Kotva and Trend shares owned by CVF Investments Ltd. Rather, the beneficial owners of those shares are the shareholders of record in BGO as of September 30, 2000. *Id.* The Weiss Parties have produced documents listing these shareholders. *Id.* ¶ 6. Nevertheless, Kotva insists that it is entitled to know who owns shares in BGO today.

The identities of BGO's current investors are not relevant any claim in this case. The only argument Kotva makes in favor of disclosure is that Mr. Weiss sent a *form letter* to current investors discussing this dispute and Kotva needs the identities of investors in order to seek third party discovery from them. What is relevant is what Mr. Weiss said about this dispute—not the precise identities of the companies and individuals who held shares of BGO at the time that Mr. Weiss sent his form letter.[36] Seeking discovery from these investors—who have no financial stake in this dispute—is like seeking the subscriber lists of the *Wall Street Journal*, *Boston Globe* or other newspapers that have published articles about this case. The real reason that Kotva is seeking this information is to use it as a tool to further harass investors in BGO, and to harm Mr. Weiss's business and reputation.

2.    The Identities of Current Investors Constitute Confidential Business Information, Exempt from Disclosure Under Rule 26(c)(7)

Should the Court find that the identities of BGO's current investors fall within the

---

[36] Analogously, Kotva produced its annual reports, but refused to identify the shareholders to whom the reports were sent, other than its three largest shareholders—Forminster, CVF and Ardmore Risk Management. *See* Kotva's Resp. to First Set of Interrogatories (attached as Exhibit F).

technical scope of Rule 26(b), the Court should enter a protective order that Kotva not have this discovery or, in the alternative, not use that information for any purpose other than this litigation, a parallel proceeding in the Czech Republic, or in communications with the Czech or U.S. governments.

The identities of BGO's investors constitute confidential business information. *See* FED. R. CIV. P. 26(c)(7). Several courts including this one have recognized that similar lists of customers merit protection under this Rule.[37] As set forth in detail in the declaration of Georgiy Nikitin, Weiss Capital LLC treats this information as confidential and maintains strict safeguards to ensure that this information remains confidential. Nikitin Decl. ¶ 11. "Weiss Capital has assured investors in BGO that their confidentiality and privacy would be maintained. Accordingly, disclosure of investor identities is likely to result in investors withdrawing their investments from BGO." *Id.* ¶ 12. Thus, if this Court orders disclosure, Weiss Capital will suffer a direct and serious harm. Moreover, current investors in BGO—who have no financial stake in this dispute—have an expectation of privacy that this Court should not vitiate in view of the non-existent link between their identities and this dispute.

## E. Other Documents

The Weiss Parties have produced all Kotva shareholder votes, requested meeting minutes and communications with Jan Veverka in their electronic and physical files.[38] There is nothing

---

[37] *E.g.*, *GTE Prods. Corp. v. Gee*, 112 F.R.D. 169, 171 (D. Mass 1986) (entering a protective order because the case law supported "the propriety of issuing such an order to limit the disclosure of the types of confidential commercial information, i.e. customer lists, prices, etc. to which the order relates"); *Feldman v. Cmty. Coll.*, 85 Fed. Appx. 821, 828 (3rd Cir. 2004) (unpublished) (affirming the District Court's order quashing a subpoena for a customer list); *Asch/Grossbardt Inc.*, 02 Civ. 5914 (SAS), 2003 U.S. Dist. LEXIS 2837, at *8 (S.D.N.Y. Feb. 28, 2003) (requiring a protective order before the defendant's customer list was produced).

[38] Kotva suggests that "[t]he Veverka communications may be critical documents as they were prepared at the outset of Weiss's blackmail scheme, and Veverka subsequently declined to get involved with Weiss."

more for the Weiss Parties to produce.

## VI.  CONCLUSION

For the above reasons, the Court should deny Kotva's Motion to Compel.

Respectfully Submitted,

ANDREW WEISS, WEISS ASSET
MANAGEMENT LLC, K T INC. and CVF
INVESTMENTS LTD.

By their attorneys,

/s/ Benjamin A. Goldberger
Edward P. Leibensperger (BBO# 292620)
Benjamin A. Goldberger (BBO# 654357)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts  02109-1775
(617) 535-4000

Dated: April 26, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system and all attachments will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 26, 2006.

/s/ Benjamin A. Goldberger
Benjamin A. Goldberger

BST99 1499364-5.072198.0012

---

Kotva omits Mr. Veverka's September 6, 2003 email in which he describes the gall bladder issues, surgery and after-operation complications that prevented him from "get[ting] involved with Weiss."  *See* Exhibit G.  Perhaps Mr. Veverka's September 10, 2003 reference to Mr. Weiss's "nice letter" refers to a handwritten get-well wish that the Weiss Parties did not keep a copy of.

Mr. Andrew Dixon-Smith
Deutsche Bank A.G.
Legal Counsel
Fax: +44 113 336 1143

Prague, 29.3.05

Dear Mr Dixon-Smith

Thank you for your letter from March 15, 2005, in which you expressed readiness of DB to execute various documents relating to the Assignment of Receivables & Deed of Indemnity among DB, Flow, Kotva and other parties.

We consulted JT Bank about their attitude and we were informed that JT Bank is still willing to buy the claims of DB and Flow for their client and that their consent was already communicated to your legal counsel, Mrs. Schweigelová.

After having received consent of JT Bank we also can confirm we are ready to conclude the deal as prescribed by the documents that were signed by your side already.

At the same time, though, we would like to inform you that we received information from Flow that seems to be contradictory to the deemed conclusion of the Settlement. Mr. Nováček informed us that the willingness of Flow to join the Settlement is conditioned by reaching an agreement with Markland by which DB and Flow would be entitled to additional money from Markland. As we were repeatedly told by Markland, there were attempts of Flow to enforce several million Euros from Markland, but there is reportedly no chance that Markland would pay anything.

It is a joint standpoint of Kotva and JT Bank that both parties are ready to conclude the pre-signed Settlement. None of the parties, though, are willing to take part in another round of negotiations and business maneuvering. We request a clear answer as to whether by DB presented offer to execute the old Settlement has taken all factors into consideration and whether it represents a fixed standpoint of DB. Due to our past experience of canceling the deal at the last second both parties request assurance that both the effort and expenses associated with deemed execution of the Settlement are this time not performed in vain.

Yours faithfully

Richard Harazim
CEO KOTVA a.s.
Email: richard.harazim@od-kotva.cz
Direct line: +420 224 801 230

K 6168

THIS DEED OF INDEMNITY is made on the _____ 2005 (hereinafter referred to as "Agreement")

BETWEEN:

1.   KOTVA, a.s., with its registered office nám. Republiky 1, Praha 1, Post code: 113 88, Company ID: 60193808 (hereinafter referred to as *"KOTVA"*)

2.   KOTVA GARÁŽE s.r.o., with its registered office nám. Republiky 656, Praha 1, Post code: 113 88, Company ID: 25666797 (hereinafter referred to as *"KOTVA GARÁŽE"*)

3.   KOTVA OBCHODNÍ, a.s., with its registered office Příkop 4, Brno, Post code: 602 00, Company ID: 26231735 (hereinafter referred to as *"KOTVA OBCHODNÍ"*)

4.   KOTVA SPRÁVCOVSKÁ, a.s., with its registered office Příkop 4, Brno, Post code: 602 00, Company ID: 26510081 (hereinafter referred to as *"KOTVA SPRÁVCOVSKÁ"*),

5.   KOTVA PARKING s.r.o., with its registered office nám. Republiky 656, Praha 1, Post code: 113 88, Company ID: 26685914 (hereinafter referred to as *"KOTVA PARKING"*),

6.   KOTVA NEMOVITOSTI, k.s., with its registered office Příkop 4, Brno, Post code: 602 00, Company ID: 26229048 (hereinafter referred to as *"KOTVA NEMOVITOSTI"*),

7.   Ing. Michal Vlach, birth number: 660411/0183, residence address Galandauerova 10, Brno, Post code: 612 00

8.   Ing. Jaromír David, CSc., birth number: 420511/429, residence address V Lužích 1, Brno, Post code: 637 00

9.   Jiří Kvapil, birth number: 670906/0105, residence address Ortenovo nám. 448/9, Praha 7, Post code: 170 00

10.   Martin Benda, birth number: 710908/3795, residence address Borač 46, Doubravník, Post code: 592 61

11.   Ing. Richard Harazim, birth number: 650310/1363, residence address U Bažantnice 305, Přezletice, Post code: 250 73

12.   Jiří Mařas, birth number: 680721/1521, residence address Lidická 1000, Mnichovo Hradiště, Post code: 295 01

13.   Ing. Jiří Brada, birth number: 660101/1285, residence address Vrchlického 1285, Říčany, Post code: 251 01

K 6172

14. **Ing. Pavel Richter**, birth number: 480524/409, residence address Rolnická 7, Brno, Post code: 625 00

15. **Mgr. Lucie Šimáčková**, birth number: 745515/0175, residence address Dobřejovická 568/3, Praha 4, Post code: 142 00

16. **FORMINSTER ENTERPRISES LIMITED**, with its registered seat at 4 Diagorou street, Kermia Building, Office 601, Nicosia, Cyprus (hereinafter referred to as „*FEL*"), and

17. **SURINGHAM ENTERPRISE LIMITED**, with its registered seat at Lawford House, Albert Place, London N3 1QA, UK (hereinafter referred to as *"SEL"* or *"Indemnifying Party"*)

(KOTVA, KOTVA GARÁŽE, KOTVA OBCHODNÍ, KOTVA SPRÁVCOVSKÁ, KOTVA PARKING, KOTVA NEMOVITOSTI, Ing. Michal Vlach, Ing. Jaromír David, CSc., Jiří Kvapil, Martin Benda, Ing. Richard Harazim, Jiří Mařas, Ing. Jiří Brada, Ing. Pavel Richter, Mgr. Lucie Šimáčková a FEL shall together be referred to as the *"Indemnified Persons"*.)

**WHEREAS**

(A) On the date hereof J & T Banka a.s., Pobřežní 297/14, Praha 8, Post code: 186 00, Company ID: 47115378 has entered (i) with FLOW CORPORATION, Ltd., with its registered office at 25 Harley Street, London W1N 2BR (hereinafter referred to as *"FLOW"*) into an agreement on assignment of receivables against TREND – všeobecný investiční fond a.s., with its registered office at Hradec Králové, Škroupova 441, Post code: 500 02, Company ID: 45245177 (hereinafter referred to as *"TREND"*) arising from a share purchase agreement for shares in KOTVA (hereinafter referred to as the *"Flow Assignment Agreement"*), (ii) with DB UK Bank Limited, with its registered office at 23 Great Winchester Street, London EC2 P2 AX (hereinafter referred to as *"DBUKBL"*) into an agreement on assignment of receivables against TREND arising from a loan agreement (hereinafter referred to as the *"DBUKBL Assignment Agreement"*), (iii) with F E Reality a.s., with its registered office at Mostecká 12/49, Praha 1, Post code: 118 00, Company ID: 47672943 (hereinafter referred to as *"F E Reality"*), into a share purchase agreement for the purchase of F E Reality's shares in KOTVA and (iv) with Realty IX, s.r.o., with its registered office at Mostecká 12/49, Praha 1, Post code: 118 00, Company ID: 25129295 (hereinafter referred as *"Realty IX"*), into a share purchase agreement for the purchase of Reality IX's shares in KOTVA.

(B) FLOW, DBUKBL, F E Reality and Realty IX in their respective capacities as creditors of TREND and/or shareholders of KOTVA have taken certain steps and actions to protect their interests, including civil law actions, criminal and other investigations against TREND, the bankruptcy administrator of TREND, the management of TREND, namely Mr. Moffitt and Mr. Bluhm, certain Indemnified Persons and SEL in connection with disputes and controversies related to KOTVA property, shares in KOTVA, TREND and the bankruptcy proceedings of TREND (all

**K 6173**

such actions, steps, disputes and controversies together, hereinafter referred to as the *"Kotva Case"*).

(C)  FLOW, DBUKBL, F E Reality, Realty IX, Mr. James Lewis Woolf and Ms. Marta Guthová concluded with Indemnified Persons and SEL a Deed of Indemnity (hereinafter referred to as *"Deed"*). Under the Deed KOTVA, KOTVA GARÁŽE, KOTVA OBCHODNÍ, KOTVA SPRÁVCOVSKÁ, KOTVA PARKING, KOTVA NEMOVITOSTI, SPV KN, Ing. Michal Vlach, Ing. Jaromír David, CSc., Jiří Kvapil, Martin Benda, Ing. Richard Harazim, Jiří Mařas, Ing. Jiří Brada, Ing. Pavel Richter, Mgr. Lucie Šimáčková, FEL and SEL are, *inter alia*, obliged to indemnify FLOW, DBUKBL, F E Reality, Realty IX, Mr. James Lewis Woolf and Ms. Marta Guthová under the conditions contained in the Deed. For the case of SEL's failure to comply with its undertakings, confirmations and obligations under the Deed, Indemnified Persons concluded with SEL this Agreement.

**NOW THIS DEED WITNESSES THAT:**

**1.    No further Actions**

1.1  The Indemnifying Party confirms and undertakes that it shall not from the date of execution of this Agreement and at any time in the future bring any action, suit, proceedings (including any governmental or regulatory investigation or criminal proceedings), allegation, claim, petition or demand (hereinafter referred to as *"Action"*), including any steps for the appointment of a liquidator, receiver, executor or similar officer, in any jurisdiction against or in any way affecting any of the Indemnified Persons relating to the Kotva Case, or any other matters connected or ancillary thereto or to this Agreement.

1.2  Each of the Indemnified Persons confirms and undertakes that it shall not and shall procure that any member of such Indemnified Persons Group shall not from the date of execution of this Agreement and at any time in the future bring any Action in any jurisdiction against or in any way affecting the Indemnifying Party relating to the Kotva Case, or any other matters connected or ancillary thereto or to this Agreement.

"**Indemnified Persons Group**" means, at any time, in respect of each of Indemnified Persons, such Indemnified Person and/or any person directly or indirectly controlled by such Indemnified Person and/or directors and/or agents of such Indemnified Person and/or any such controlled person, and/or any person acting in concert with and/or upon the instruction of such Indemnified Person, and/or any assignee (legal or beneficial) of any of such Indemnified Person assets, Claims and/or Actions, and/or any legal successor of such Indemnified Person.

1.3  For the avoidance of doubt the confirmations and undertakings given in Clauses 1.1 and 1.2 do not affect good faith performance of genuine public duties and obligations stipulated by law related to the subject matter of this Agreement.

K 6174

## 2.    Indemnity

2.1    Subject to Clause 2.4, SEL undertakes as a continuing indemnity that it will indemnify and keep indemnified and hold harmless each and every Indemnified Person, its directors, officers, employees and agents and each person controlling it from and against any and all losses, liabilities, costs, claims, damages, expenses or demands (hereinafter referred to as *"Claims"*) or Actions in respect thereof which any of them may incur or which may be made against any of them, *in so far as* such Claims or Actions are asserted or taken by any member of the SEL Group *and* arise out of, in relation to or in connection with the Kotva Case, including any Action related thereto taken by any Indemnified Person, whether such Claims or Actions commenced or occurred before or after the date of this Agreement and will reimburse each of the Indemnified Persons for all costs, charges and expenses which it may pay or incur in connection with investigating, disputing or defending any such Claims or Actions.

"**SEL Group**" means, at any time, SEL and/or any person directly or indirectly controlled by SEL and/or directors, officers, employees, agents of SEL and/or any such controlled person and/or any assignee (legal or beneficial) of any of SEL's assets, Claims and/or Actions, and/or any legal successor of SEL.

2.2    If any Action is brought or asserted (whether prior to or after the date of this Agreement) against any Indemnified Person in respect of which indemnity may be sought pursuant to Clause 2.1, the Indemnified Person concerned shall notify the Indemnifying Party in accordance with Clause 3. For the avoidance of doubt, the omission to so notify shall not relieve the Indemnifying Party from any liability which the Indemnifying Party may have to any Indemnified Person under this Agreement.

2.3    If the Indemnifying Party shall be required under this Agreement to indemnify any Indemnified Person, the Indemnifying Party shall be entitled to take over the conduct of the defence of the relevant Action, with legal representation to be approved by the Indemnified Person (such approval not to be unreasonably withheld or delayed), upon the delivery to the Indemnified Person of written notice of its election to do so.

2.4    Nothing in this Agreement shall be construed as implying (i) any SEL's liability or accountability for actions taken by any person other than a member of the SEL Group as specified in Clause 2.1 (ii) SEL's consent or agreement to indemnify or keep indemnified or hold harmless any Indemnified Person for any Claim or Action *not* asserted or taken by a member of the SEL Group or for any Claim or Action of SEL's assignees (whether legal or beneficial) *not* directly derived from a Claim or Action assigned to them by SEL or (iii) undertaking by SEL to reimburse any of the Indemnified Persons for costs, charges and expenses in connection with Kotva Case that any of the Indemnified Persons actually incurred *before* the date of this Agreement.

**K 6175**

3.    Notices

3.1   Any notice, demand, certificate or other communication (a "**Notice**") required to be given or sent to SEL in connection with this Agreement shall be given in writing or by fax to Mr. Daniel Mališ, Attorney-at-Law, at the address: Longin Business Center, Na Rybníčku 5, 120 00 Prague 2, fax (+420) 296 368 351 or to such other appointed representative of SEL at such other address (or fax number) as may be notified on behalf of SEL to the Indemnified Persons in writing or by fax pursuant to Clause 3.2.

3.2   Any Notice required to be given or sent to the Indemnified Persons in connection with this Agreement shall be given in writing or by fax to Mr. Jaroslav Novák, Attorney-at-Law, at the address: Trojanova 12, 120 00 Prague 2, fax (+420) 224 918 490 or to such other appointed representative of the Indemnified Persons at such other address (or fax number) as may be notified on behalf of the Indemnified Persons to SEL in writing or by fax pursuant to Clause 3.1.

3.3   A Notice given or sent in accordance with Clause 3.1 or, as the case may be, Clause 3.2, shall be deemed to have been duly received, if left at such address as aforesaid, on the day it was so left, or if sent by post, five days after the time when the same was put in the post and in proving delivery it shall be sufficient to prove that the same was properly addressed and put in the post. A Notice sent by fax shall be deemed to have been duly to given at the time of despatch.

4.    Payments

4.1   All payments falling due under this Agreement shall be made in Czech Crowns to a bank account or accounts indicated by the Indemnified Person(s) in the relevant Notice (hereinafter referred to as the "**Specified Account**"). Where a Claim or Action is brought against any Indemnified Person(s) in a currency other than Czech Crowns the Indemnified Person(s) may select to receive the payments hereunder in the currency of such Claim or Action; failing such selection, the payments shall be made to the Specified Account in Czech Crowns, the exchange rate for such transfer to be made at the prevailing exchange rate as listed by the Czech National Bank as of the date of the Notice under Clause 3.

4.2   Every sum payable by the Indemnifying Party under this Agreement shall be paid in full without set-off, counterclaim or condition and free and clear of and without deduction of or withholding for or on account of any taxes. If Indemnifying Party shall be required by law to make any deduction or withholding from any payment to any Indemnified Person, it shall pay to such Indemnified Person such additional amount as will result in the receipt by that Indemnified Person of the full amount which would otherwise have been received by it hereunder had no such deduction or withholding been made.

5.    Remedies and Waivers

No delay or omission on the part of any of the Indemnified Persons in exercising any right, power, privilege or remedy pursuant to this Agreement shall impair such rights or be construed as a waiver thereof nor shall any single or partial exercise of any such rights preclude any other or further exercise thereof or the exercise of any other right. The rights herein provided are cumulative and not exclusive of any rights provided by law.

6.    Miscellaneous

6.1    This Agreement shall be binding upon and enure for the benefit of each party hereto and its successors.

6.2    The parties hereto shall execute, acknowledge and deliver all such acts, documents or instruments or do such other things as may be reasonably necessary to give full effect to this Agreement.

6.3    This Agreement constitutes the entire agreement and understanding of the parties hereto and supersedes any previous agreement or understanding between the parties hereto relating to the subject matter of this Agreement.

6.4    If, at any time, any provision of this Agreement is or becomes invalid, ineffective or unenforceable in any respect, the validity, effectiveness and/or enforceability of the remaining provisions hereof shall not be in any way affected.

6.5    This Agreement may only be amended or supplemented by written amendments numbered in chronological order and signed by or on behalf of the parties hereto.

6.6    This Agreement shall be governed by and construed in accordance with the laws of England and Wales (excluding any English conflict of law rules which would refer any matter in issue between the parties hereto to be decided according to the laws of another jurisdiction).

6.7    Each party hereto irrevocably agrees to submit to the exclusive jurisdiction of the courts of England and Wales any claim, dispute or other issue arising under or in connection with this Agreement and waives any objection on the grounds of venue or inconvenient forum.

6.8    This Agreement, including all undertakings, obligations and representations of the parties hereto shall automatically be canceled and shall cease to exist in the event that the Deed (as defined in Clause (C)) is canceled or ceases to be of any further effect due to occurrence of the conditions subsequent therein.

K 6177

**SIGNED AND DELIVERED AS A DEED** on the day above noted by

Signed as a deed in the name and on behalf of **KOTVA a.s.** by Mr. Jaroslav Novák, Attorney-at-Law appointed for the purpose by **KOTVA a.s.** as its attorney, under a power of attorney dated 17th September 2004



........................................
**KOTVA, a.s.,** by its attorney Jaroslav Novák
Company ID: 60193808
Praha 1, nám. Republiky 8, PSČ: 113 88


Signed as a deed in the name and on behalf of **KOTVA GARÁŽE, s.r.o.,** by Mr. Jaroslav Novák, Attorney-at-Law appointed for the purpose by **KOTVA GARÁŽE, s.r.o.,** as its attorney, under a power of attorney dated 17th September 2004

........................................
**KOTVA GARÁŽE, s.r.o.,** by its attorney Jaroslav Novák
Company ID: 25666797
Praha 1, nám. Republiky 656, PSČ: 113 88


Signed as a deed in the name and on behalf of **KOTVA OBCHODNÍ, a.s.,** by Mr. Jaroslav Novák, Attorney-at-Law appointed for the purpose by **KOTVA OBCHODNÍ, a.s.,** as its attorney, under a power of attorney dated 16th September 2004

........................................
**KOTVA OBCHODNÍ, a.s.,** by its attorney Jaroslav Novák
Company ID: 26231735
Brno, Příkop 4, PSČ: 602 00


Signed as a deed in the name and on behalf of **KOTVA SPRÁVCOVSKÁ, a.s.,** by Mr. Jaroslav Novák, Attorney-at-Law appointed for the purpose by **KOTVA SPRÁVCOVSKÁ, a.s.,** as its attorney, under a power of attorney dated 16th September 2004

........................................
**KOTVA SPRÁVCOVSKÁ, a.s.,** by its attorney Jaroslav Novák
Company ID: 26510081
Brno, Příkop 4, PSČ: 602 00


Signed as a deed in the name and on behalf of **KOTVA PARKING, s.r.o.,** by Mr. Jaroslav Novák, Attorney-at-Law appointed for the purpose by **KOTVA PARKING, s.r.o.,** as its attorney, under a power of attorney dated 17th September 2004

K 6178



**KOTVA PARKING, s.r.o.**, by its attorney Jaroslav Novák
Company ID: 26685914
Praha 1, nám. Republiky 656, Post code: 113 88


Signed as a deed in the name and on behalf of **KOTVA NEMOVITOSTI, k.s.**, by Mr. Jaroslav Novák, Attorney-at-Law appointed for the purpose by **KOTVA NEMOVITOSTI, k.s.**, as its attorney, under a power of attorney dated 16th September 2004



**KOTVA NEMOVITOSTI, k.s.**, by its attorney Jaroslav Novák
Company ID: 26229048
Brno, Příkop 4, Post code: 602 00


Signed as a deed in the name and on behalf of **Ing. Michal Vlach** by Mr. Jaroslav Novák, Attorney-at-Law appointed for the purpose by Ing. Michal Vlach as its attorney, under a power of attorney dated 17th September 2004



**Ing. Michal Vlach**, by its attorney Jaroslav Novák
birth number: 660411/0183
Galandauerova 10, Brno, Post code: 612 00


Signed as a deed in the name and on behalf of **Ing. Jaromír David** by Mr. Jaroslav Novák, Attorney-at-Law appointed for the purpose by Ing. Jaromír David as its attorney, under a power of attorney dated 16th September 2004

**Ing. Jaromír David , CSc.**, by its attorney Jaroslav Novák
birth number: 420511/429
V Luzích 1, Brno, Post code: 637 00


Signed as a deed in the name and on behalf of **Jiří Kvapil** by Mr. Jaroslav Novák, Attorney-at-Law appointed for the purpose by Jiří Kvapil as its attorney, under a power of attorney dated 13th September 2004

**Jiří Kvapil**, by its attorney Jaroslav Novák
birth number 670906/0105
Ortenovo nám. 448/9, Praha 7, Post code: 170 00

K 6179

Signed as a deed in the name and on behalf of **Martin Benda** by Mr. Jaroslav Novák, Attorney-at-Law appointed for the purpose by Martin Benda as its attorney, under a power of attorney dated 17th September 2004



.......................................
**Martin Benda,** by its attorney Jaroslav Novák
birth number 710908/3795
Borač 46, Doubravník, Post code: 592 61


Signed as a deed in the name and on behalf of **Ing. Richard Harazim** by Mr. Jaroslav Novák, Attorney-at-Law appointed for the purpose by Ing. Richard Harazim as its attorney, under a power of attorney dated 9th September 2004



.......................................
**Ing. Richard Harazim,** by its attorney Jaroslav Novk
birth number 650310/1363
U Bažantnice 305, Přezletice, Post code: 250 73


Signed as a deed in the name and on behalf of **Jiří Mařas** by Mr. Jaroslav Novák, Attorney-at-Law appointed for the purpose by Jiří Mařas as its attorney, under a power of attorney dated 13th September 2004



.......................................
**Jiří Mařas,** by its attorney Jaroslav Novák
birth number 680721/1521
Lidická 1000, Mnichovo Hradiště, Post code: 295 01


Signed as a deed in the name and on behalf of **Ing. Jiří Brada** by Mr. Jaroslav Novák, Attorney-at-Law appointed for the purpose by Ing. Jiří Brada as its attorney, under a power of attorney dated 16th September 2004

.......................................
**Ing. Jiří Brada,** by its attorney Jaroslav Novák
birth number: 660101/1285
Vrchlického 1285, Říčany, Post code: 251 01

**K 6180**

Signed as a deed in the name and on behalf of **Ing. Pavel Richter** by Mr. Jaroslav Novák, Attorney-at-Law appointed for the purpose by Ing. Pavel Richter as its attorney, under a power of attorney dated 16th September 2004



..............................
**Ing. Pavel Richter,** by its attorney Jaroslav Novák
birth number 480524/409
Rolnická 7, Brno, Post code: 625 00

Signed as a deed in the name and on behalf of **Mgr. Lucie Šimáčková** by Mr. Jaroslav Novák, Attorney-at-Law appointed for the purpose by Mgr. Lucie Šimáčková as its attorney, under a power of attorney dated

..............................
**Mgr. Lucie Šimáčková,** by its attorney Jaroslav Novák
birth number 745515/0175,
Dobřejovická 568/3, Praha 4, Post code: 142 00

Signed as a deed in the name and on behalf of **FORMINSTER ENTERPRISES LIMITED** by Mr. Jaroslav Novák, Attorney-at-Law appointed for the purpose by the board of directors of **FORMINSTER ENTERPRISE LIMITED** as its attorney, under a power of attorney dated 25th August 2004

..............................
**FORMINSTER ENTERPRISE LIMITED** by its attorney Jaroslav Novák
4 Diagorou street, Kermia Building, Office 601, Nicosia, Cyprus

Signed as a deed in the name and on behalf of **SURINGHAM ENTERPRISE LIMITED** by Mr. Daniel Mališ, Attorney-at-Law appointed for the purpose by the board of directors of **SURINGHAM ENTERPRISE LIMITED** as its attorney, under a power of attorney dated 13th September 2004:

**SURINGHAM ENTERPRISE LIMITED** by its attorney Daniel Mališ
Lawford House, Albert Place, London N3 1QA, UK

K 6181

THIS DEED OF INDEMNITY is made the ___ day of _____ 2004 (the "Agreement")

BETWEEN:

1. FLOW CORPORATION, Ltd., with its registered office at 25 Harley Street, London W1N 2BR ("Flow"),

2. DB UK Bank Limited, with its registered office at 23 Great Winchester Street, London EC2 P2 AX ("DBUKBL"),

3. F E Reality a.s., with its registered office at Mostecká 12/49, 118 00 Praha 1, Company ID: 47672943 ("FE Reality"),

4. Realty IX s.r.o., with its registered office at Mostecká 12/49, Praha 1, 118 00, Company ID: 25129295 ("Realty IX"),

5. Marta Guthová, Birth ID: 725505/0319, resident at Praha 1, U Obecního dvora 794/4, PSČ: 11000 („Marta Guthová"),

6. James Lewis Woolf, born on July 27, 1964, resident at Praha 2, Mánesova 47 („James Woolf"), and

7. The other parties named and, if relevant, defined on the signature pages (the "Indemnifying Parties")

(Flow, DBUKBL, FE Reality and Realty IX shall together be referred to as the "Sellers".)

WHEREAS

(A) On the date hereof J&T Banka a.s, Pobřežní 297/14, Praha 8, 186 00, IČ: 47115378 ("JT Banka") has entered (i) with Flow into an agreement on assignment of receivables against TREND – všeobecný investiční fond a.s , with its registered office at Hradec Králové, Škroupova 441, PSČ 500 02, Company ID No 45245177 ("TREND") arising from a share purchase agreement for shares in KOTVA a.s., Náměstí republiky 8, Praha 1, PSČ 113 88, IČ 60193808 ("Kotva") (the "Flow Assignment Agreement"), (ii) with DBUKBL into an agreement on assignment of receivables against TREND arising from a loan agreement (the "DBUKBL Assignment Agreement"), (iii) with FE Reality into a share purchase agreement for the purchase of FE Reality's shares in Kotva and (iv) with Realty IX into a share purchase agreement for the purchase of Realty IX's shares in Kotva (the "Transaction Agreements" respectively)

(B) The Sellers in their respective capacities as creditors of TREND and/or sharcholders of Kotva have taken certain steps and actions to protect their interests, including civil law actions, criminal and other investigations against TREND, the bankruptcy

K 6221

administrator of TREND, the management of TREND, namely Mr. Moffitt and Mr. Bluhm, SURINGHAM ENTERPRISE LIMITED, with its registered seat at Lawford House, Albert Place, London N3 1QA, UK (hereinafter "SEL"), and certain other parties, including the Indemnifying Parties, in connection with disputes and controversies related to Kotva property, shares in Kotva, TREND and the bankruptcy proceedings of TREND (all such actions, steps, disputes and controversies together, the "Kotva Case").

(C)    The Indemnifying Parties have been materially involved in the Kotva Case in different capacities, including as management of Kotva and Kotva group companies, as management of Forminster Enterprises Limited, with its registered seat at 4 Diagorou street, Kennia Building, Office 601, Nicosia, Cyprus (hereinafter "FEL"), against the Sellers. The Kotva Case has been continuing for several years and significant costs have been incurred by the Sellers as well as by the Indemnifying Parties. Therefore, the Indemnifying Parties have a material interest in the Sellers concluding the Transaction Agreements with JT Banka, whereby the Sellers will cease to be parties to the Kotva Case. The Sellers acknowledge that JT Banka, as counterparty to the Sellers under the Transaction Agreements, is acting as financial intermediary in the interest of the Indemnifying Parties. It is therefore a condition precedent to the Sellers entering into the Transaction Agreements that the Indemnifying Parties provide the Sellers with certain comfort regarding the finality of the settlement of the Kotva Case effected in the Transaction Agreements.

## NOW THIS DEED WITNESSES THAT:

1.    **No further Actions**

1.1    Each of the Indemnifying Parties confirms and undertakes that it shall not from the date of execution of this Agreement and at any time in the future bring any action, suit, proceedings (including any governmental or regulatory investigation or criminal proceedings), allegation, claim, petition or demand ("Action"), including any steps for the appointment of a liquidator, receiver, executor or similar officer, in any jurisdiction against or in any way affecting any of the Indemnified Persons (as defined in Clause 2.1) relating to the Transaction Agreements, excluding Art. II Sec. 1) and Art. VI Sec. 1) of the DBUKBL Assignment Agreement, and excluding Art. II Sec. 1) and Art. VI Sec. 1) of Flow Assignment Agreement (hereinafter referred as "Excluded provisions"), the Kotva Case, or any other matters connected or ancillary thereto or to this Agreement and that it shall not take any step (including granting instructions, assigning any claim, receivables or rights, etc.) for the purpose of or which may have the effect of a third party taking any Action against any of the Indemnified Persons.

1.2    Subject to (i) the fulfilment of all the conditions precedent in the Transaction Documents Agreements including for the avoidance of doubt the DBUKBL Assignment Agreement and the Flow Assignment Agreement and (ii) the DBUKBL Assignment Agreement and the Flow Assignment Agreement having taken effect pursuant to their respective terms

- 2 -

K 6222

(a)   each of the Sellers confirms and undertakes that it shall not and shall procure that any member of such Seller's Group shall not from the date of execution of this Agreement and at any time in the future bring any Action in any jurisdiction against or in any way affecting any of the Indemnifying Persons relating to the Kotva Case, or any other matters connected or ancillary thereto or to this Agreement and that it shall not take any step for the purpose of or which may have the effect of a third party taking any Action against any of the Indemnified Persons, and

(b)   Marta Guthová and James Woolf jointly and severally confirm and undertake that they and each of them shall not and shall procure that any member of any of the Seller's Groups shall not from the date of execution of this Agreement and at any time in the future bring any Action in any jurisdiction against or in any way affecting any of the Indemnifying Persons relating to the Kotva Case, or any other matters connected or ancillary thereto or to this Agreement and that it shall not take any step for the purpose of or which may have the effect of a third party taking any Action against any of the Indemnified Persons.

"Seller's Group" means, at any time, in respect of each of DBUKBL, Flow, FE Reality and Realty IX, such Seller and/or any person directly or indirectly controlled by such Seller and/or any person directly or indirectly controlling such Seller, and/or directors and/or agents of such Seller and/or any such controlling or controlled person, and/or any person acting in concert with and/or upon the instruction of such Seller, and/or any assignee (legal or beneficial) of any of such Seller's assets, Claims and/or Actions, and/or any legal successor of such Seller. For the avoidance of doubt Seller's Group shall not include JT Banka or any other party or beneficiary in relation to the assignment or transfer of assets, Claims or Actions under the Transaction Agreements.

1.3   For the avoidance of doubt the confirmations and undertakings given in Clauses 1.1 and 1.2 do not affect good faith performance of genuine public duties and obligations stipulated by law related to the subject matter of this Agreement.

## 2.   Indemnity

2.1   a)   Subject to Clause 2.4, SEL undertakes as a continuing indemnity that it will indemnify and keep indemnified and hold harmless each and every Seller, its directors, officers, employees and agents and each person controlling it, Marta Guthová and James Woolf (each Seller and such other person, an "Indemnified Person") from and against any and all losses, liabilities, costs, claims, damages, expenses or demands ("Claims") or Actions in respect thereof which any of them may incur or which may be made against any of them, *in so far as* such Claims or Actions are asserted or taken by any member of the SEL Group *and* arise out of, in relation to or in connection with the Kotva Case, including any Action related thereto taken by any Indemnified Person, whether such Claims or Actions commenced or occurred before or after the date of this Agreement and will reimburse each of the Indemnified Persons for all costs, charges and expenses which it may pay or incur in

- 3 -

K 6223

connection with investigating, disputing or defending any such Claims or Actions

"SEL Group" means, at any time, SEL and/or any person directly or indirectly controlled by SEL and/or directors, officers, employees, agents of SEL and/or any such controlled person, and/or any assignee (legal or beneficial) of any of SEL's assets, Claims and/or Actions, and/or any legal successor of SEL.

2.1    b)    Subject to Clause 2.5 FEL undertakes as a continuing indemnity that it will indemnify and keep indemnified and hold harmless each and every Indemnified Person from and against any and all Claims or Actions in respect thereof which any of them may incur or which may be made against any of them, *in so far as* such Claims or Actions are asserted or taken by any member of FEL Group and/or any member of SEL Group *and* arise out of, in relation to or in connection with the Kotva Case and/or the Transaction Agreements except Excluded Provisions, including any Action related thereto taken by any Indemnified Person, whether such Claims or Actions commenced or occurred before or after the date of this Agreement and will reimburse each of the Indemnified Persons for all costs, charges and expenses which it may pay or incur in connection with investigating, disputing or defending any such Claims or Actions.

"FEL Group" means, at any time, FEL and/or any person directly or indirectly controlled by FEL and/or any person directly or indirectly controlling FEL and/or directors and/or agents of FEL and/or any person acting in concert with and/or upon instruction of FEL and/or any assignee (legal or beneficial) of any of FEL's assets, Claims and/or Action, and/or any legal successor of FEL.

2.1    c)    Subject to Clause 2.6 Martin Benda and Richard Harazim jointly and severally and as a continuing indemnity undertake that they and each of them will indemnify and keep indemnified and hold harmless each and every Indemnified Person from and against any and all Claims or Actions in respect thereof which any of them may incur or which may be made against any of them, *in so far as* such Claims or Actions are asserted or taken by any Indemnifying Party and/or any member of SEL Group and/or FEL Group and/or any member of any Other Indemnifying Party Group, as defined in Clause 2.1d) and/or by any other person linked with any of them (whether personally, by way of ownership or otherwise) at any time, *and* arise out of, in relation to or in connection with the Kotva Case and/or the Transaction Agreements except Excluded Provisions, including any Action related thereto taken by any Indemnified Person, whether such Claims or Actions commenced or occurred before or after the date of this Agreement, and will reimburse each of the Indemnified Persons for all costs, charges and expenses which it may pay or incur in connection with investigating, disputing or defending any such Claims or Actions

2.1    d)    Subject to Clause 2.7 each Indemnifying Party other than SEL, FEL, Martin Benda and Richard Harazim (the "Other Indemnifying Parties") as a

- 4 -

K 6224

continuing indemnity undertakes that it will indemnify and keep indemnified and hold harmless each and every Indemnified Person from and against any and all Claims or Actions in respect thereof which any of them may incur or which may be made against any of them, *in so far as* such Claims or Actions are asserted or taken by any member of its Other Indemnifying Party Group, if any *and* arise out of, in relation to or in connection with the Kotva Case and/or the Transaction Agreements except Excluded Provisions, including any Action related thereto taken by or against any Indemnified Persons whether such Claims or Actions commenced or occurred before or after the date of this Agreement and will reimburse each of the Indemnified Persons for all costs, charges and expenses which it may pay or incur in connection with investigating, disputing or defending any Claim or Action.

"Other Indemnifying Party Group" means, at any time, in respect of each of Kotva, Kotva nemovitosti, Kotva obchodní, Kotva správcovská, Kotva garáže, Kotva parking and SPV KN (each, a "Corporate Other Indemnifying Party"), such Corporate Other Indemnifying Party, any person directly or indirectly controlled by such Corporate Other Indemnifying Party and/or any person directly or indirectly controlling such Corporate Other Indemnifying Party and/or directors and/or agents of such Corporate Other Indemnifying Party and/or any person acting in concert with and/or upon instruction of such Corporate Other Indemnifying Party and/or any assignee (legal or beneficial) of any of such Corporate Other Indemnifying Party's assets and/or Claims and/or Actions, and/or any legal successor of such Corporate Other Indemnifying Party, but for the avoidance does not include the SEL Group and/or FEL Group.

2.2    If any Action is brought or asserted (whether prior to or after the date of this Agreement) against any Indemnified Person in respect of which indemnity may be sought pursuant to Clause 2.1, the Indemnified Person concerned shall notify the Indemnifying Parties in accordance with Clause 3. For the avoidance of doubt, the omission to so notify shall not relieve the Indemnifying Parties from any liability which they and each of them may have to any Indemnified Person under this Agreement.

2.3    If the Indemnifying Parties or any of them shall be required under this Agreement to indemnify any Indemnified Person, the Indemnifying Party shall be entitled to take over the conduct of the defence of the relevant Action, with legal representation to be approved by the Indemnified Person (such approval not to be unreasonably withheld or delayed), upon the delivery to the Indemnified Person of written notice of its election to do so

2.4    Nothing in this Agreement shall be construed as implying (i) any SEL's liability or accountability for actions taken by any person other than a member of the SEL Group as specified in Clause 2.1a) (ii) SEL's consent or agreement to indemnify or keep indemnified or hold harmless any Indemnified Person for any Claim or Action *not* asserted or taken by a member of the SEL Group or for any Claim or Action of SEL's assignees (whether legal or beneficial) *not* directly derived from a Claim or Action assigned to them by SEL or (iii) undertaking by SEL to reimburse any of the Indemnified Persons for costs, charges and expenses in connection with Kotva Case

- 5 -

K 6225

that any of the Indemnified Persons actually incurred *before* the date of this Agreement.

2.5 Nothing in this Agreement shall be construed as implying (i) any FEL's liability or accountability for actions taken by any person other than a member of the SEL Group and/or of the FEL Group, as specified in Clause 2.1b) (ii) FEL's consent or agreement to indemnify or keep indemnified or hold harmless any Indemnified Person for any Claim or Action *not* asserted or taken by a member of the SEL Group and/or of the FEL Group or (iii) undertaking by SEL to reimburse any of the Indemnified Persons for costs, charges and expenses in connection with Kotva Case that any of the Indemnified Persons actually incurred *before* the date of this Agreement.

2.6 Nothing in this Agreement shall be construed as implying (i) any liability or accountability of Martin Benda and/or Richard Harazim for actions taken by any person other than as specified in Clause 2.1c) (ii) Martin Benda's and/or Richard Harazim's consent or agreement to indemnify or keep indemnified or hold harmless any Indemnified Person for any Claim or Action *not* asserted or taken by persons specified in Clause 2.1c) or (iii) undertaking by Martin Benda and/or Richard Harazim to reimburse any of the Indemnified Persons for costs, charges and expenses in connection with Kotva Case that any of the Indemnified Persons actually incurred *before* the date of this Agreement.

2.7 Nothing in this Agreement shall be construed as implying (i) any Other Indemnifying Party's liability or accountability for actions taken by any person other than a member of the relevant Indemnifying Party's Group, as specified in Clause 2.1d) (ii) any Other Indemnifying Party's consent or agreement to indemnify or keep indemnified or hold harmless any Indemnified Person for any Claim or Action *not* asserted or taken by a member of such Other Indemnifying Party Group or (iii) undertaking by any Other Indemnifying Party to reimburse any of the Indemnified Persons for costs, charges and expenses in connection with Kotva Case that any of the Indemnified Persons actually incurred *before* the date of this Agreement.

3. **Notices & Process Agent**

3.1 a) Aside from the service of process, any notice, demand, certificate or other communication (a "Notice") required to be given or sent to SEL in connection with this Agreement shall be given in writing or by fax to Mr. Daniel Mališ, Attorney-at-Law, at the address: Longin Business Center, Na Rybníčku 5, 120 00 Prague 2, fax (+420) 296 368 351 or to such other appointed representative of SEL at such other address (or fax number) as may be notified on behalf of SEL to each of the Sellers, Marta Guthová and James Woolf in writing or by fax at their addresses stated in the signature pages hereof from time to time for that purpose.

3.1 b) Aside from the service of process, any Notice required to be given or sent to the Indemnifying Parties other than SEL in connection with this Agreement shall be given in writing or by fax to Mr Jaroslav Novák, attorney at law, at the address: Trojanova 12, 120 00 Praha 2, fax +420 224 918 490 or to such

- 6 -

**K 6226**

other appointed representative of the Indemnifying Parties at such other address (or fax number) as may be notified on behalf of the Indemnifying Parties to each of the Sellers, Marta Guthová and James Woolf in writing or by fax at their addresses stated in the signature pages hereof from time to time for that purpose.

3.1    c)    The Indemnifying Parties (other than SEL) hereby appoint the following as their agent for service of process in England and Wales:

Deutsche Bank AG London Branch
Winchester House
1 Great Winchester Street
London
EC2N 2DB

Attention: Head of Legal Department

3.2    A Notice given or sent to the Indemnifying Parties in accordance with Clause 3.1 shall be deemed to have been duly received by them, if left at such address as aforesaid, on the day it was so left, or if sent by post, five days after the time when the same was put in the post and in proving delivery it shall be sufficient to prove that the same was properly addressed and put in the post. A Notice sent by fax shall be deemed to have been duly given at the time of despatch.

4.    Payments

4.1    All payments falling due under this Agreement shall be made in Czech Crowns to a bank account or accounts indicated by the Indemnified Person(s) in the relevant Notice (the "Specified Account"). Where a Claim or Action is brought against any Indemnified Person(s) in a currency other than Czech Crowns the Indemnified Person(s) may select to receive the payments hereunder in the currency of such Claim or Action; failing such selection, the payments shall be made to the Specified Account in Czech Crowns, the exchange rate for such transfer to be made at the prevailing exchange rate as listed by the Czech National Bank as of the date of the Notice under Clause 3.

4.2    Every sum payable by the Indemnifying Parties under this Agreement shall be paid in full without set-off, counterclaim or condition and free and clear of and without deduction of or withholding for or on account of any taxes. If any Indemnifying Party shall be required by law to make any deduction or withholding from any payment to any Indemnified Person, it shall pay to such Indemnified Person such additional amount as will result in the receipt by that Indemnified Person of the full amount which would otherwise have been received by it hereunder had no such deduction or withholding been made.

- 7 -

K 6227

5.    **Remedies and Waivers**

No delay or omission on the part of any of the Indemnified Persons in exercising any right, power, privilege or remedy pursuant to this Agreement shall impair such rights or be construed as a waiver thereof nor shall any single or partial exercise of any such rights preclude any other or further exercise thereof or the exercise of any other right. The rights herein provided are cumulative and not exclusive of any rights provided by law.

6.    **Miscellaneous**

6.1    This Agreement shall be binding upon and enure for the benefit of each party hereto and its successors.

6.2    The parties hereto shall execute, acknowledge and deliver all such acts, documents or instruments or do such other things as may be reasonably necessary to give full effect to this Agreement.

6.3    This Agreement constitutes the entire agreement and understanding of the parties hereto and supersedes any previous agreement or understanding between the parties hereto relating to the subject matter of this Agreement.

6.4    If, at any time, any provision of this Agreement is or becomes invalid, ineffective or unenforceable in any respect, the validity, effectiveness and/or enforceability of the remaining provisions hereof shall not be in any way affected.

6.5    This Agreement may only be amended or supplemented by written amendments numbered in chronological order and signed by or on behalf of the parties hereto.

6.6    This Agreement shall be governed by and construed in accordance with the laws of England and Wales (excluding any English conflict of law rules which would refer any matter in issue between the parties hereto to be decided according to the laws of another jurisdiction).

6.7    Each party hereto irrevocably agrees to submit to the exclusive jurisdiction of the courts of England and Wales any claim, dispute or other issue arising under or in connection with this Agreement and waives any objection on the grounds of venue or inconvenient forum.

K 6228

6.8   This Agreement, including all undertakings, obligations and representations of the parties hereto shall automatically be cancelled and shall cease to exist in the event that any of Transaction Agreements does not take effect or ceases to be of any further effect due to non-occurrence of any of the conditions precedent or occurrence of any of the conditions subsequent therein

SIGNED AND DELIVERED AS A DEED on the day above noted by

FLOW CORPORATION, Ltd.
Address:
25 Harley Street, London W1N 2BR

By: _____
Name:
Function: Director

By: _____
Name:
Function: Director / Company Secretary

DB UK BANK LIMITED
Address and fax:
23 Great Winchester Street, London EC2 P2 AX
+44 (0) 113 336 1143

By: _____
Name:
Function:

By: _____
Name:
Function:

F E Reality a.s.
Address and fax:
Praha 1, Mostecká 12 č.p. 49, PSČ: 11800
+44 296 518 112

By: _____
Name: James Lewis Woolf
Function: BoD member

- 9 -

K 6229

1              VOLUME 2, PAGES 235 - 403

2              EXHIBITS 23 - 40

3        IN THE UNITED STATES DISTRICT COURT

4        FOR THE DISTRICT OF MASSACHUSETTS

5              No. 05-10679-RCL

6      - - - - - - - - - - - - - - - - - - - - - - - - -

7    KOTVA a.s.,

8          Plaintiffs

9        vs.

10   ANDREW WEISS and WEISS ASSET MANAGEMENT, LLC,

11         Defendants

12   _____

13   ANDREW WEISS, WEISS ASSET MANAGEMENT LLC,

14   KT, INC. and CVF INVESTMENTS, LTD.,

15         Counterclaim-Plaintiffs,

16       v.

17   KOTVA a.s., MARTIN BENDA, RICHARD HARAZIM,

18   FORMINSTER ENTERPRISES, LTC., SPV CO. and

19   JOHN DOES 1-5,

20         Counterclaim-Defendants.

21     - - - - - - - - - - - - - - - - - - - - - - - - -

22     CONTINUED VIDEOTAPED DEPOSITION OF KOTVA a.s.

23        BY AND THROUGH RICHARD HARAZIM

24     Wednesday, February 23, 2006 9:44 a.m

1          McDermott, Will & Emery

2           28 State Street, Boston, MA 02109

3          Reporter:  Janet M. Konarski, RMR, CRR

4                 LegaLink Boston

5          320 Congress Street, Boston, MA 02210

6                 (617)542-0039

7

8     APPEARANCES:

9     MCDERMOTT, WILL & EMERY

10    (By Edward P. Leibensperger, Esquire,

11    Benjamin A. Goldberger, Esquire, and

12    Sylvia Kratky, Esquire)

13    28 State Street

14    Boston, Massachusetts 02109

15    (617)535-4000

16    Counsel for the Defendants/Counterclaim-Plaintiffs

17

18    NYSTROM, BECKMAN & PARIS LLP

19    (By Joel G. Beckman, Esquire)

20    10 St. James Avenue

21    Boston, Massachusetts 02116

22    (617)778-9100

23    Counsel for the Plaintiff/Counterclaim-Defendant

24    - Continued -

1    dormant.

2        Q.   What is Mr. Kokna doing with Suringham's

3    claim against Forminster?

4        A.   I don't know.

5        Q.   Do you know of any proceeding that has

6    occurred?

7        A.   I don't know.

8        Q.   Do you know whether he has any intent ever

9    to do anything with respect to that claim?

10       A.   I have -- I know nothing about that.

11       Q.   Is Kotva doing anything to unblock the

12   Forminster shares?

13       A.   No.  No.  Kotva doesn't do anything.

14       Q.   And are you aware of anybody doing

15   anything to unblock the Forminster shares of Kotva?

16       A.   You mean from Kotva company or anybody?

17       Q.   Do you have knowledge from any source,

18   anywhere about anybody doing anything?

19            MR. BECKMAN:  Objection.

20       A.   I don't know anything about the Forminster

21   and its shares.

22       Q.   Mr. Harazim, was it you, who first

23   contacted Mr. Beckman's law firm about this lawsuit?

24            MR. BECKMAN:  I'm objecting.  I'm

1    instructing the witness not to answer that.

2        Q.  Who contacted Nystrom Beckman about this

3    lawsuit?

4        MR. BECKMAN:  I'm instructing you not to

5    answer that question.

6        MR. LEIBENSPERGER:  Joel, I will state on

7    the record you're making a mistake.

8        MR. BECKMAN:  What is the mistake?  What

9    is the basis?

10       MR. LEIBENSPERGER:  I'm not asking for

11   privileged information.  I am entitled to know this

12   information.  It relates directly to the jurisdictional

13   issues that are before the Court.

14       MR. BECKMAN:  Right.  And you were denied

15   jurisdictional discovery.

16       MR. LEIBENSPERGER:  We were not denied

17   this deposition.  If you read that order, you'll

18   understand exactly.

19       MR. BECKMAN:  I have read the order.

20       MR. LEIBENSPERGER:  All right.  I'm going

21   to keep asking these questions, and Mr. Beckman is

22   going to make his bed.

23       MR. BECKMAN:  You can answer you contacted

24   me.  Go ahead.

1      Q.  Did you contact Mr. Beckman?

2      A.  Yes.

3      Q.  All right.  Did anyone else from Kotva

4   have any contact with Mr. Beckman or his law firm?

5      A.  Only me.

6      Q.  How many times did you call Mr. Beckman's

7   law firm before the filing of the complaint?

8         MR. BECKMAN:  Objection.  I'm instructing

9   you not to answer that.  Actually, go ahead.  Answer

10  it.

11     A.  I have no idea.

12     Q.  More than once, though?

13        THE INTERPRETER:  Yes.

14     A.  Of course.

15        THE INTERPRETER:  Yes.

16     Q.  Did you come to the United States to talk

17  with Mr. Beckman before the filing of the lawsuit?

18        MR. BECKMAN:  Go ahead.  Answer it.

19     A.  I didn't.

20        MR. BECKMAN:  Let me just note for the

21  record I've given you wide latitude, but again it

22  relates not to the subject matter, and you were denied

23  jurisdictional discovery.

24     Q.  Did you send information, documents to

1    Mr. Beckman in connection with the commencement of this

2    lawsuit?

3         A.  I did.

4         Q.  How many times did you send information to

5    Mr. Beckman?

6             MR. BECKMAN:  If you know.  Go ahead.

7         A.  I don't know.  That's it.  Several times.

8         Q.  And did you e-mail Mr. Beckman in

9    Massachusetts in connection with the commencement of

10   this lawsuit?

11        A.  I did.

12        Q.  Do you know how many e-mails you sent?

13        A.  No.

14        Q.  Okay.  When did you first contact

15   Mr. Beckman?

16        A.  When?  It's a rough guess, but I would say

17   January, February.

18        Q.  What is your best memory?

19        A.  My best memory is say January.

20        Q.  Of 2005?

21        A.  2005.

22            MR. LEIBENSPERGER:  I'm going to mark as

23   the next exhibit the Complaint filed in this case.

24            (Complaint

1       marked Exhibit 37.)

2               MR. LEIBENSPERGER:  That's Exhibit --

3               COURT REPORTER:  Thirty-seven.

4               MR. LEIBENPERGER:  -- thirty-seven.

5       Q.   Take a moment, Mr. Harazim, and look at

6   what has been marked Exhibit 37.  It's a document

7   entitled "Complaint."  Did you read this document

8   before it was filed in court?

9       A.   I am not sure if I really read the last

10  version, but I am sure I read all previous drafts.

11      Q.   So, you read drafts of the agreement -- I

12  mean of the complaint?

13      A.   Yes.

14      Q.   Did anyone else at Kotva read drafts of

15  the complaint?

16      A.   This material was discussed in the board

17  of directors' meeting.

18              MR. BECKMAN:  I have to instruct the

19  witness do not disclose any privileged communications

20  between me and you that you may have shared with the

21  board.

22      Q.   Did -- my question was:  Did anyone else

23  at Kotva read the drafts of the complaint?

24              MR. BECKMAN:  This may implicate work

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
KOTVA a.s.                              )
                                        )
              Plaintiff,                )       Case No. 05-10679-RCL
                                        )
       v.                               )
                                        )
ANDREW WEISS and WEISS ASSET            )
MANAGEMENT, LLC                         )
                                        )
              Defendants.               )
_____)

## KOTVA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS "COUNTERCLAIM-PLAINTIFFS" KT AND CVF

### INTRODUCTION

Kotva filed suit in Massachusetts because this Court has jurisdiction over the Weiss Defendants—who reside in Massachusetts—and because all of Kotva's claims are based on U.S. law.  In response, Defendants have put up a smoke-screen by:  (1) resurrecting long-settled matters they have no standing to assert (the "Trend tunneling" allegations) and making unwarranted accusations (that Kotva has been "looted"); (2) attempting to add four new foreign parties over whom, respectfully, the Court lacks personal jurisdiction; (3) inserting two new "counterclaim plaintiffs," KT, Inc. ("KT") and CVF Investments, Ltd. ("CVF"), without leave of Court; and (4) introducing a swarm of Czech substantive law claims that are the subject of prior pending litigation filed by KT and CVF in the Czech Republic.  At the January 23, 2006 hearing, the Court questioned whether the Czech-law issues raised in the Counterclaim should be decided in the Czech Republic.  By Order dated January 23, 2006, the Court ruled that Kotva may file the instant motion to dismiss KT and CVF from this action.

As demonstrated below, international comity and judicial deference provide that parallel proceedings, like the simultaneous litigation that KT and CVF attempt here, should not be permitted.  The doctrine of *forum non conveniens* likewise counsels against entertaining the Czech-law based claims advanced by the Weiss Defendants and KT and CVF.  In any event, KT and CVF do not actually "join" any of the claims asserted by the Weiss Defendants.  Instead, KT and CVF assert **new claims** against Kotva and ***new foreign parties that are unrelated to the Weiss Defendants' Counterclaim***—which centers solely on abuse of process.  In short, they cannot assert new claims against other and new defendants.

With the possible exception of Count I (Abuse of Process), which was described by the Court as the "tail that wags the Czech dog," the Court noted that all of the remaining counts in the Counterclaim (II-VI and VIII) depend on substantive issues of Czech law.  *See* Order dated January 23, 2006.[1]  Dismissing those claims will streamline this case and render the proposed technical advisor on Czech law unnecessary.   For the reasons set forth below, Kotva respectfully requests the Court to dismiss KT and CVF from this action, and to dismiss Counts II-VI and VIII for lack of standing, *forum non conveniens,* and international comity.

## BACKGROUND

In April 2005, Kotva brought this action against Andrew Weiss ("Weiss"), who lives in Brookline, Massachusetts, and Weiss Asset Management ("WAM"), with a principal place of business in Boston, because the Weiss Defendants are subject to jurisdiction here.  As detailed in the Complaint, Kotva filed suit as a result of the Weiss

---

[1] Though not included as part of the Order, the Court commented during the January 23 hearing that Counts III thru V also rely on issues Czech law.

Defendants' scheme to blackmail Kotva. As part of that scheme, Weiss filed lawsuits to interfere with the sale of Kotva's Department Store. One of those lawsuits was filed by KT against Kotva and two other defendants in the District Court for Prague on December 23, 2004 (the "KT/CVF Czech lawsuit"). A translated copy of the Complaint filed by KT is attached hereto as Exhibit 1.[2]

Styled as a "Petition to determine title to real property," the KT/CVF Czech lawsuit asks the Czech courts to rule that the transfer of Kotva's Department Store is "null and void" and that Kotva remains the owner of the Department Store. *See* Exhibit 1 at K0143. The KT/CVF Czech lawsuit walks through the same historical background and "Trend tunneling" allegations that the Weiss Defendants assert in their Counterclaim. *E.g., compare* Exhibit 1 at K0131-142 and Counterclaim ¶¶ 42-60. Indeed, the specific claims that KT and CVF attempt to assert in this action all turn upon the same allegation that they have asserted in the KT/CVF Czech lawsuit—that Kotva has somehow deprived itself of its Department Store asset, and that the property or proceeds from the sale should be returned to Kotva. *Compare* Exhibit 1 at K0143 (proposing verdict that Kotva "is the sole owner" of the Department Store) *and* Counterclaim at ¶ 100 ("[t]he sale proceeds belong ***instead*** to Kotva a.s. and its shareholders") (emphasis added). In short, all of the allegations by KT and CVF in counts II through VI and VIII are simple variations of the same basic allegation that KT and CVF have chosen to litigate against Kotva in the Czech Republic.[3]

---

[2] On July 20, 2005, KT and CVF petitioned for the addition of CVF as a plaintiff in that lawsuit. A translated copy of that petition is attached hereto as Exhibit 2.

[3] Count II: conspiracy to loot Kotva assets (KT and CVF have no standing to assert abuse of process claims—evidenced by the fact that they have not joined in Count I); Count III: conversion of the proceeds from the sale of the Department Store; Count IV: unjust enrichment from proceeds of the sale of the Department Store; Count V: breach of fiduciary duty from alleged stripping of Department Store asset;

# ARGUMENT

## I.   KT'S AND CVF'S "COUNTERCLAIMS" AND ALL CZECH-LAW COUNTERCLAIMS SHOULD BE DISMISSED ON GROUNDS OF INTERNATIONAL COMITY AND *FORUM NON CONVENIENS*

### A.   KT and CVF's Claims Should Be Dismissed on Grounds of International Comity

International comity is "a doctrine that counsels voluntary forbearance when a sovereign which has a legitimate claim to jurisdiction concludes that a second sovereign also has a legitimate claim to jurisdiction under principles of international law." *United States v. Nippon Paper Indus. Co., Ltd.*, 109 F.3d 1, 8 (1st Cir. 1997).  Because parallel proceedings between the same parties concerning the same facts and legal issues result in a substantial waste of judicial resources and could lead to inconsistent verdicts, federal courts have the "inherent power to stay an action based on the pendency of a related action in a foreign jurisdiction." *Goldhammer v. Dunkin' Donuts, Inc.*, 59 F. Supp. 2d 248, 251 (D. Mass. 1999) (citations omitted).[4]  In determining whether to stay or dismiss an action in deference to parallel foreign litigation, the federal courts look to the following factors as relevant:

> (1)  similarity of parties and issues involved in the foreign litigation;
> (2)  the promotion of judicial efficiency;
> (3)  adequacy of relief available in the alternative forum;
> (4)  issues of fairness to and convenience of the parties, counsel, and witnesses;
> (5)  possibility of prejudice to any of the parties; and
> (6)  the temporal sequence of the filing of the action.

---

Count VI:  constructive trust of Department Store; Count VIII:  ownership of proceeds from sale of Department Store.
[4]   See also *Johnson v. Continental Airlines Corp.*, 353 F. Supp. 2d 160, 161 (D. Mass. 2005) ("substantial waste of judicial resources to permit conduct of parallel proceedings") and *Boston & Maine Corp. v. United Transportation Union*, 110 F.R.D. 322, 328-329 (noting that parallel proceedings involving the same parties and closely related issues should ordinarily be avoided), with respect to general comity principles outside the international context.

*Goldhammer*, 59 F. Supp. 2d at 252-253. (citing cases staying or dismissing federal actions in favor of pending foreign litigations).  Weighing the relevant factors as a whole, the *Goldhammer* court stayed a diversity suit on international abstention grounds pending the outcome of a first-filed English action where the cases shared overlapping legal and factual issues.  *Id*. at 253.

*United Bank for Africa PLC v. Coker*, No. 94 Civ. 0655(TPG), 2003 WL 22741575 (S.D.N.Y. Nov. 18, 2003), (attached hereto as Exhibit 3), is squarely on point. Coker had sued UBA in Nigeria for libel, wrongful discharge, and other matters relating to an alleged breach of his employment contract.  UBA subsequently sued Coker in federal court in New York, asserting causes of action under RICO, fraud, breach of contract, and breach of fiduciary duty relating to Coker's New York employment for UBA.  *Id*. at *2.  Coker then asserted counterclaims in the New York action for libel, wrongful discharge, and breach of contract issues relating to his employment.  After reviewing the relevant comity and deference factors, the court dismissed Coker's counterclaims and allowed UBA's action to proceed.  *Id*. at *4 ("The relevant factors thus strongly militate in favor of deference to the Nigerian action.  Further, given the identical nature of Coker's Nigerian libel claim and the apparent ability of that forum to accord full relief, it would serve no purpose to stay the instant action rather than simply dismissing it.").

       1.       *All of the Comity/Deference Factors Weigh in Favor of Dismissal*

Like *Coker*, KT and CVF ***first*** filed their claims in a foreign jurisdiction.  *See* Exhibit 1.  The basis for KT and CVF's claims in both actions is the same:  they all turn on the (baseless) allegation that Kotva somehow wrongfully deprived itself of its

Department Store and that the proceeds need to be "returned" to Kotva's shareholders. *Compare* Counterclaim at ¶100 *and* Exhibit 1 at K0143. The parties are also either the same or similar in both actions: KT and CVF on one side and Kotva on the other side are the main parties in both actions. Given the similarity of the parties and issues in the two actions and the fact that all of KT and CVF's claims involve substantive issues of Czech law (Order dated January 23, 2006), dismissing those claims and dropping KT and CVF from this action would promote judicial efficiency and avoid the possibility of inconsistent verdicts.

KT and CVF's attempt to introduce new parties and claims does not turn this factor against dismissal. *See Goldhammer*, 59 F. Supp. 2d at 253, citing *Landis v. North Amer. Co.*, 299 U.S. 248, 254 (1936) ("the parties and claims need not be identical in order for one action to be stayed or dismissed in deference to an earlier action."). KT and CVF's likely objection that their claims here involve more counterclaim-defendants than just Kotva actually further supports dropping KT and CVF from this case. First, this Court lacks personal jurisdiction over all of the counterclaim-defendants with respect to KT and CVF's claims.[5] Second, the Czech Republic is a far more convenient forum than Massachusetts for the counterclaim-defendants to defend against KT and CVF's claims.[6] Considering the historical nature of KT and CVF's Czech-law based claims, sources of

---

[5] Kotva does not dispute that Weiss and WAM may assert appropriate counterclaims against it in this Court. KT and CVF assert new claims against Kotva that are not related to Defendants' counterclaims, however, and those claims go beyond the basis of specific jurisdiction over Kotva as Plaintiff and counterclaim-defendant in this action. All of the other counterclaim-defendants have challenged personal jurisdiction and have filed motions to dismiss. *See* motions to dismiss filed by counterclaim-defendants Forminster (Docket # 34), Benda and Harazim (Docket # 39), and SPV Co. (Docket # 78).

[6] Kotva is a publicly traded Czech company; Forminster Enterprises and SPV Co. are Cypriot business entities that have no contacts with this forum; Messrs. Harazim and Benda are both Czech nationals whose only alleged contacts with this forum derive from their official capacity as representatives of Kotva. John Does 1-5 are alleged to be individuals who purportedly "reside in the Czech Republic and elsewhere outside the United States." Counterclaim at ¶ 14.

proof and witnesses would be more accessible in the Czech Republic. *See* Counterclaim at ¶¶ 42-52. Third, KT has already filed a suit in the Czech Republic against Forminster seeking the same relief. *See* Counterclaim Plaintiffs' Opposition to Kotva's Motion to Dismiss at 11-12.

Finally, KT and CVF can make no serious objection on the grounds of fairness, prejudice, or that the relief available in the Czech Republic is inadequate. They chose to file the KT/CVF Czech lawsuit in the Czech Republic. *See Coker*, 2003 WL 22741575 at *4 (taking into consideration party's choice to litigate in foreign forum in weighing adequacy of relief factor); *Caspian Investments, Ltd. v. Vicom Holdings, Ltd.*, 770 F. Supp.880, 885 (S.D.N.Y. 1991) (invoking jurisdiction of foreign forum barred complaint against adequacy of that forum); *see also Goldhammer*, 59 F. Supp. 2d at 255-256 ("notions of international comity are at an apex when parties inject themselves into the economy of another nation for profit . . .and then try to extricate themselves from jurisdiction"). In sum, all of the relevant comity factors weigh in favor of dismissing the claims brought by KT and CVF in deference to the prior pending litigation.

## B. All Czech-Law Based Counterclaims Should Be Dismissed on Grounds of *Forum Non Conveniens*

In addition to principles of international comity, the Court should dismiss all of KT and CVF's claims on *forum non conveniens* grounds because there is (1) an adequate alternative forum available and (2) the absence of transfer would result in serious unfairness. *Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345 (1st Cir. 1992). An alternative forum is generally considered available if the party asserting *forum non conveniens* is amenable to process in the alternative forum. *Mercier*, 981 F.2d at 1349. Kotva is certainly amenable to process in the Czech Republic. There is also little doubt that the

Czech Republic provides an adequate forum for KT and CVF's claims against Kotva—
KT and CVF have already sued Kotva in the Czech Republic requesting the same basic
relief there that they seek here.  *See* Exhibit 1; *see also*, Counterclaim Plaintiffs'
Opposition to Kotva's Motion to Dismiss at 11-12 (describing suit brought by KT in the
Czech Republic against Forminster regarding ownership of Kotva).

 The Weiss Defendants' conspiracy count of the Counterclaim (Count II) should
also be dismissed since the Czech Republic is an available, adequate, and more
appropriate forum for such Czech-law based allegations.  *See* Order dated January 23,
2006 (noting that resolution of Count II relied on Czech law).  The fact that Weiss has
been criminally charged in the Czech Republic (*see* Exhibit 4 hereto) does not make the
Czech Republic an inadequate forum.  *See Mercier*, 981 F.2d at 1350 n.2 (discussing
conclusion that female plaintiff's legal difficulties in Turkey, including risk of arrest, did
not make Turkish tribunal an inadequate alternative forum).

   1. *The Private Interest Factors Weigh in Favor of Dismissal.*

 The Supreme Court has identified certain private and public interest factors to
determine the second prong of the *forum non conveniens* analysis, whether serious
unfairness will result from non-dismissal.  *Olin Corp. v. Fisons PLC*, 47 F. Supp. 2d 151,
158 (D. Mass. 1999).  The private interest factors include:  relative ease of access to
sources of proof; the availability of compulsory process and the cost of securing the
attendance of witnesses; the possibility of a view of the premises, if appropriate; and an
evaluation of "all other practical problems that make trial of a case easy, expeditious and
inexpensive."  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982) quoting *Gulf*

*Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).  All of these factors favor litigating the counterclaims in the Czech Republic rather than in Massachusetts.

Here, KT and CVF's claims do not arise out of the same transaction or series of transactions as Kotva's claim and the Weiss Defendants' Counterclaim.[7]  Rather, KT and CVF base all of their claims on the "Trend tunneling" allegations concerning events that took place in the Czech Republic in the 1990s.  *See* Counterclaim at ¶¶ 42-60, 68-103; *see also* Exhibit 1 at K0131-142.  Since, the allegations underlying KT and CVF's claims involve events that took place in the Czech Republic and have nothing to do with Massachusetts, access to sources of proof and witnesses will be greater in the Czech Republic.  Further, the fact that all counterclaim-defendants and counterclaim-plaintiff CVF are either Czech or European means that proceeding in the Czech Republic would also be more convenient with respect to travel.  *See* Defendants' and Counterclaim Plaintiffs Initial Disclosures at 2-4 (identifying 18 individuals likely to have discoverable information, 17 of whom reside outside the United States and 12 of whom reside in the Czech Republic), attached as Exhibit 5 hereto.  Indeed, counterclaim plaintiffs should be estopped from objecting to dismissing their claims for *forum non conveniens* since they have already sued for the same relief in the Czech Republic.

2.    *The Public Interest Factors Weigh in Favor of Dismissal.*

The public interest factors also cut decisively in favor of dismissing KT and CVF and all of the Czech-law based counterclaims.  The public interest factors include:  the administrative difficulties flowing from court congestion in the chosen forum; the "local interest in having localized controversies decided at home;" the interest in trying a diversity case in a forum that is at home with the law governing the action; ***the avoidance***

---

[7] *See* Section II below.

*of unnecessary problems in conflict of laws, or in the application of foreign law*; and the unfairness in burdening citizens in an unrelated forum with jury duty. *Piper Aircraft*, 454 U.S. at 241 n.6. (emphasis added). The most obvious and significant public interest factor in this case involves the problematic application of Czech law to resolve counts II thru VIII of the Counterclaim.

This Court has already noted that the resolution of counts II-VI and VIII of the Counterclaim depends upon Czech law. *See* Order dated January 23, 2006.[8] Counterclaim-plaintiffs also have argued that Czech law governs their claims. Counterclaim Plaintiffs' Opposition to Kotva's Motion to Dismiss at 8-9. Given the difficulties inherent in researching, interpreting, and applying foreign law, the Court has proposed the appointment of an expert in Czech law as a technical advisor in this case. *See* Clerk's Notes for Proceedings Held January 23, 2006. Dismissing KT and CVF and the Czech-law based counterclaims makes such an appointment unnecessary.

Count VIII lays bare KT and CVF's real intentions in trying to insert themselves into this lawsuit, and best demonstrates why the Court should dismiss them and defer to the courts of the Czech Republic for the resolution of matters of Czech law. In Count VIII, KT and CVF explicitly ask the Court to sort through events relating to Trend that occurred in the Czech Republic—many of which occurred more than a decade ago—and to declare who owns what percentage of Kotva. *See* Counterclaim at ¶¶ 42-60, 97-103. Leaving aside the fact that Trend is not a party to this action and that the historical allegations involving Trend have nothing to do with Kotva's underlying action, to resolve this claim the Court would have to insert itself completely and needlessly into matters of

---

[8] *See* note 1 *supra.*

Czech law that should be decided by Czech authorities.[9]  Moreover, KT admits that it is already litigating this issue too in separate litigation in the Czech Republic.  Counterclaim Plaintiffs' Opposition to Kotva's Motion to Dismiss at 11-12.  ("As with the dispute over title to the Department Store, KT is involved in a parallel case in the Czech Republic disputing the Forminster Group's title to the Kotva shares it controls and seeking a declaration that Trend is the true owner of those shares.")

The remaining public interest factors also favor dismissal.  There is no local interest in having KT and CVF's claims decided in Massachusetts.  Although KT has a principal place of business in Massachusetts, it chose the Czech Republic as the forum to litigate its claims before asserting them in this action.  CVF is a Cyprus corporation with a principal place of business in Cyprus and has no connection to Massachusetts.  Counterclaim at ¶ 7.  Moreover, the Czech Republic has a greater stake in resolving the counterclaims alleged against Kotva, a publicly traded Czech Company, than Massachusetts does.  The Czech court also has easier access to and experience with issues of Czech law.  Furthermore, court congestion and the jury duty burden on Massachusetts citizens will be eased by the streamlining effect that dismissing KT and CVF and the Czech-law counterclaims will have.  Other courts have reached similar

---

[9]  Even if the allegations in Count VIII and the "Trend Tunneling" claim were proper topics for the Court to consider, which they are not, Trend would be an indispensable party under Fed. R. Civ. P. 19(b) that cannot be joined.  Trend has been in bankruptcy since 2000, as Weiss himself admits.  *See* Complaint Ex. E.  Here, complete relief could not be afforded without Trend, whom the counterclaim-plaintiffs allege to be the "owner" of 55% of Kotva's shares, not the "Forminster Group."  Counterclaim ¶¶ 101-103.  Thus, Rule 19 provides an alternative ground for dismissing count VIII.  *See also Weizmann Institute of Science v. Neschis*, 229 F.Supp.2d 243, 250-51 (S.D.N.Y 2002) (when joinder not feasible, the "Plaintiffs must show why the declaratory judgment claims should *not* be dismissed.") (emphasis added); *National Union Fire Ins. Co. v. Massachusetts Municipal Wholesale Electric Co.*, 117 F.R.D. 321 (D. Mass. 1987) (refusing to drop a defendant from an action because in their absence any decision rendered by the court on the declaratory action judgment would be "hollow or ineffectual").  It is also telling that the Counterclaim makes no mention of the 1999 settlement agreement in which Trend acknowledged Forminster as the owner of 55% of Kotva.  *See* Complaint ¶ 12.

conclusions by dismissing counterclaims or counts of claims on *forum non conveniens* grounds.[10]

Because there is an adequate alternative forum and because all of the public and private interest factors weigh in favor of proceeding in the Czech Republic, all of the Czech-law counterclaims should be dismissed on *forum non conveniens* grounds.

## II.    KT AND CVF ARE NOT PROPER PARTIES TO THIS ACTION AND SHOULD BE DISMISSED UNDER FED. R. CIV. P. 21

Kotva did not sue KT and CVF.  Without leave of Court, however, the Weiss Defendants unilaterally inserted KT and CVF as "counterclaim-plaintiffs" in this action. KT and CVF, however, do not actually join in the claims asserted by the Weiss Defendants (Counts I and II).  Instead, KT and CVF assert new and unrelated claims mostly against new parties.  Counts III thru V, asserted *only* by new parties against *only* new parties, demonstrate this fact in stark relief.[11]  Even if KT and CVF had joined in the Weiss Defendants' counterclaims, they could not be added in the manner attempted here without undermining the Federal Rules of Civil Procedure.  Thus, in the alternative to comity and *forum non conveniens*, KT and CVF should be dismissed as misjoined parties pursuant to Fed. R. Civ. P. 21.

---

[10]  *See United Bank for Africa PLC v. Coker*, No. 94 Civ. 0655(TPG), 2003 WL 22741575 (S.D.N.Y. Nov. 18, 2003) (dismissing counterclaims on comity and *forum non conveniens* grounds), attached hereto as Exhibit 3; *Sandstrom v. Cultor Food Science, Inc.*, No. 97 C 8216, 1998 WL 321502 (N.D. Ill. June 14, 1998) (dismissing one count of a two count complaint for *forum non conveniens*); *S. Megga Telecommunications, Ltd. v. Lucent Technologies, Inc.*, No. 96-357-SLR, 1997 WL 86413 at *11 (D. Del. Feb. 14, 1997) (dismissing counterclaims on *forum non conveniens* grounds).

[11]  The Counterclaim originally included eight counts.  The Court has already dismissed Count VII, asserted by Weiss, WAM, KT, and CVF against all counterclaim-defendants.  Order dated January 23, 2006.  Of the remaining seven counts, the Weiss Defendants assert only two, Count I (alone) and Count II (ostensibly with KT and CVF).  The remaining five counts, III-VI and VIII, are asserted only by KT and CVF.  Of the six counts that KT and CVF assert, three involve Kotva and new counterclaim-defendants, Counts II, VI, and VIII, while three involve only new counterclaim-defendants and do not involve Kotva, Counts III-V.  *See* Counterclaim ¶¶ 61-103 and Exhibit 1 thereto.

### A.    The Weiss Defendants Cannot Unilaterally Add KT and CVF as Counterclaim-Plaintiffs Under Rules 13 and 20

In support of their contention that they may add parties as counterclaim-plaintiffs under Rule 13(h), the Weiss Defendants rely on only one authority:  a section of Moore's Federal Practice that cites one Alabama federal district court opinion that, in turn, cites back to Moore's.  *See* Counterclaim Plaintiffs Opposition to Kotva's Motion to Dismiss at 4-5, citing 4 MOORE'S FEDERAL PRACTICE § 20.02[2][b][ii] (3d ed. 2005), citing *Northfield Ins. Co. v. Bender Shipbuilding & Repair Co.*, 122 F.R.D. 30 (S.D. Ala. 1988). The Alabama case only addresses the addition of parties as counterclaim-defendants, however, and does not support the Weiss Defendants' attempt to add new counterclaim-plaintiffs without leave of Court.  In fact, the Weiss Defendants have provided no authority for the proposition that counterclaim-plaintiffs can be added at whim in the manner they attempt here.  There is authority to the contrary, however.  In *Hubner v. Schoonmaker*, No. 89-3400, 1990 WL 149207 (E.D. Pa. Oct. 2 1990) (attached hereto as Exhibit 6), the court ruled that that Rule 13 does not permit the precise procedural maneuver that KT, CVF, and the Weiss Defendants attempt here.

> [Rule 13(h)] generally concerns parties *against* whom counterclaims may be brought, and should not be contorted to operate as a means by which one can seek entrance into an existing action.  Any other holding would render superfluous the standards for admission of non-parties as set forth by the intervention provisions of Rule 24.

*Id*. at * 4 (emphasis in original).  Thus, KT and CVF cannot be unilaterally inserted into this action as the Weiss Defendants have attempted to do here.

#### 1.    KT and CVF Do Not Assert "Counterclaims"

The Weiss Defendants were required to assert as compulsory counterclaims all claims against Kotva arising out of the "transaction or occurrence that is the subject

matter" of Kotva's claim.  Fed. R. Civ. P. 13(a).  Weiss and WAM asserted only two

counts as their counterclaim:  abuse of process (count I) and conspiracy to abuse process

(count II).  Although KT and CVF also allege conspiracy in count II, they necessarily

allege different aspects of conspiracy than Weiss and WAM.  Because Weiss and WAM

are not Kotva shareholders, they lack standing to allege conspiracy to "loot Kotva's

assets."  Counterclaim at ¶ 69; *see also* Counterclaim Plaintiffs' Opposition to Kotva's

Motion to Dismiss at 8.   Similarly, KT and CVF lack standing to allege conspiracy to

"abuse the Czech criminal process and abuse the United States civil process,"

demonstrated by the fact that they do not join Count I, because they were not sued or

charged criminally.  *Id*.  Thus, KT and CVF assert entirely different allegations:

conspiracy to loot assets (count II); conversion (count III); unjust enrichment (count IV);

breach of fiduciary duty (count V); constructive trust (count VI); and declaratory

judgment (count VIII).  ***These are all new claims***.  They are not counterclaims to which

KT and CVF are being made parties.  Fed. R. Civ. P. 13(h) (allowing joinder of

additional parties "***to a*** counterclaim or cross-claim" in accordance with Rules 19 and 20)

(emphasis added).

### 2. *KT and CVF's Claims Fail the Rule 20 Same Transaction or Occurrence Test*

Even if (i) the rules did permit parties to add counterclaim-plaintiffs without leave

of Court, and (ii) KT and CVF were being added as parties to actual counterclaims,

joinder would still be inappropriate in this case under Rule 20.  Parties may only be

permissively joined as plaintiffs if they assert a right to relief "in respect of or arising out

of the same transaction, occurrence, or series of transactions or occurrences and if any

question of law or fact common to all these persons will arise in the action."  Fed. R. Civ.

P. 20(a).  But the claims that KT and CVF try to assert here do not arise out of the same transaction or same series of transactions as the subject matter of Kotva's claim against Weiss and WAM.

Kotva's claim arises from the Weiss Defendants' attempt to blackmail Kotva into "repurchasing" a 12% stake of the company (the "BGO shares").  Complaint ¶¶ 21-48. That scheme materialized in 2004 as an attempt to interfere with the sale of Kotva's Department store.  *Id*.  The Weiss Defendants' Counterclaim, meanwhile, alleges abuse of process from the filing of this lawsuit and the filing of a criminal complaint in the Czech Republic.  *See* Counterclaim Counts I and II.  The claims asserted by KT and CVF, however, dredge up irrelevant and historical "Trend tunneling" allegations that have nothing to do with Kotva's claim or the Weiss Defendants' counterclaim.  The Weiss Defendants' false coupling of the potential repurchase of the BGO shares with an alleged "freeze out" of minority shareholders also fails to satisfy the Rule 20 same transaction requirement.  *See* Counterclaim Plaintiffs' Opposition to Motion to Dismiss at 4.  The repurchase of the BGO shares—which was demanded by the Weiss Defendants— would not have "frozen out" any shareholders.  In fact, the "freeze out" allegations are nothing more than the "Trend tunneling" allegations dressed up in new clothes.[12]  As discussed above in the context of KT and CVF's request for declaratory judgment, those historical allegations do not arise from the same transactions that are at issue in this suit.

---

[12]  The linchpin of the "freeze out" claims is Forminster's majority stake in Kotva, which counterclaim-plaintiffs allege was wrongfully obtained as a result of the "Trend tunneling" allegations.  *See* Counterclaim Plaintiffs' Opposition to Motion to Dismiss at 10, 11 ("The Forminster Group, through its control over a majority of Kotva's shares and by direct contact with Weiss, is engaging in a freeze-out of the minority shareholders including KT and CVF. . . .The Forminster Group is voting its Kotva shares despite the fact that it lacks good legal title to those shares.  Every time that the Forminster Group casts a vote, it overwhelms the voting power of the other Kotva shareholders who purchased their shares legally.")

### B.    Intervention is the Proper Procedure for Non-Parties to Assert Claims

The required procedure for non-parties to participate in an action is to file a timely motion to intervene pursuant to Fed. R. Civ. P. 24, which KT and CVF did not do.  4 MOORE'S FEDERAL PRACTICE §20.02[2][c](3d ed. 2005); *Thompson v. Boggs*, 33 F.3d 847, 858 n. 10 (7th Cir. 1994); *Hubner*, 1990 WL 149207 at *4.  Nevertheless, even if they had moved to intervene, KT and CVF cannot satisfy the requirements of Rule 24. The First Circuit has held:

> A party that desires to intervene in a civil action under Rule 24(a)(2) must satisfy four conjunctive prerequisites: (1) a timely application for intervention; (2) a demonstrated interest relating to the property or transaction that forms the basis of the ongoing action; (3) *a satisfactory showing that the disposition of the action threatens to create a practical impairment or impediment to its ability to protect that interest*; and (4) a satisfactory showing that existing parties inadequately will represent its interests.  An applicant for intervention as of right must run the table and fulfill all of four of these preconditions, the failure to satisfy any one of them dooms intervention.

*Public Service Company of New Hampshire v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998) (emphasis added).  Moreover, intervention is not appropriate where the applicant can recover on its claim through some other means, including prosecuting a separate lawsuit. *Deus v. Allstate Insurance Company*, 15 F.3d, 506, 526 (11th Cir. 1994).

KT admits that it has filed lawsuits in the Czech Republic challenging the transfers of the Department Store, seeking to restore the ownership of the Department Store to Kotva, and challenging Forminster's ownership of its Kotva shares.  Exhibit 1; Answer to Complaint ¶¶ 24, 32; Counterclaim Plaintiffs' Opposition to Kotva's Motion to Dismiss at 11-12.   Indeed, KT's lawsuits in the Czech Republic involve precisely the same scandalous "Trend tunneling" allegations as raised in this lawsuit.  *Compare*

Exhibit 1 *and* Counterclaim ¶¶42-60.  KT and CVF, therefore, cannot satisfy the requirements of Rule 24 as their rights will not be impaired because they are prosecuting separate actions in the Czech Republic (and, according to them, their claims are governed by Czech law).

## CONCLUSION

KT and CVF were not sued by Kotva in this action.  They were inserted as "counterclaim-plaintiffs" by the Weiss Defendants without leave of Court in an attempt to distract from the real issues in this lawsuit and to duplicate litigation that is already pending in the Czech Republic.  Because the new claims that KT and CVF try to assert here rely upon substantive issues of Czech law, and because KT and CVF previously initiated litigation in the Czech Republic for the same claims, principles of comity and *forum non conveniens* dictate that KT and CVF and all Czech-law based counterclaims should be dismissed.  In the alternative, KT and CVF should be dismissed as improperly joined parties under Rules 13, 20 and 21.

Respectfully submitted,

KOTVA, A.S.

By its attorneys,


/s/ Joel G. Beckman
Joel G. Beckman (BBO# 553086)
William C. Nystrom (BBO# 559656)
Daniel J. Pasquarello (BB0# 647379)
NYSTROM BECKMAN & PARIS LLP
10 St. James Ave., 16th Floor
Boston, Massachusetts 02116
(617) 778-9100
(617) 778-9110 (fax)
jbeckman@nbparis.com
wnystrom@nbparis.com
dpasquarello@nbparis.com

Dated: March 3, 2006


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 3rd day of March, 2006.


/s/ Daniel Pasquarello

1       VOLUME 2, PAGES 235 - 403

2       EXHIBITS 23 - 40

3    IN THE UNITED STATES DISTRICT COURT

4     FOR THE DISTRICT OF MASSACHUSETTS

5       No. 05-10679-RCL

6    - - - - - - - - - - - - - - - - - - - - - - - -

7    KOTVA a.s.,

8       Plaintiffs

9     vs.

10   ANDREW WEISS and WEISS ASSET MANAGEMENT, LLC,

11      Defendants

12   _____

13   ANDREW WEISS, WEISS ASSET MANAGEMENT LLC,

14   KT, INC. and CVF INVESTMENTS, LTD.,

15      Counterclaim-Plaintiffs,

16     v.

17   KOTVA a.s., MARTIN BENDA, RICHARD HARAZIM,

18   FORMINSTER ENTERPRISES, LTC., SPV CO. and

19   JOHN DOES 1-5,

20      Counterclaim-Defendants.

21   - - - - - - - - - - - - - - - - - - - - - - - -

22    CONTINUED VIDEOTAPED DEPOSITION OF KOTVA a.s.

23      BY AND THROUGH RICHARD HARAZIM

24    Wednesday, February 23, 2006 9:44 a.m

1            McDermott, Will & Emery

2            28 State Street, Boston, MA 02109

3        Reporter:  Janet M. Konarski, RMR, CRR

4                LegaLink Boston

5        320 Congress Street, Boston, MA 02210

6                (617)542-0039

7

8        APPEARANCES:

9        MCDERMOTT, WILL & EMERY

10       (By Edward P. Leibensperger, Esquire,

11       Benjamin A. Goldberger, Esquire, and

12       Sylvia Kratky, Esquire)

13       28 State Street

14       Boston, Massachusetts 02109

15       (617)535-4000

16       Counsel for the Defendants/Counterclaim-Plaintiffs

17

18       NYSTROM, BECKMAN & PARIS LLP

19       (By Joel G. Beckman, Esquire)

20       10 St. James Avenue

21       Boston, Massachusetts 02116

22       (617)778-9100

23       Counsel for the Plaintiff/Counterclaim-Defendant

24       - Continued -

1    arranged for a recording of that meeting.

2        Q.  Is there a transcript of the tape

3    recording?

4        A.  It doesn't exist.  The recording is not

5    usable.

6        Q.  Do you have the tape?

7        A.  I don't have the tape.

8        Q.  Does Mr. Benda have the tape?

9        A.  He doesn't have it.

10       Q.  Do you know where the location is of the

11   tape?

12       A.  The tape is stored at our law offices.

13       Q.  Which law offices?

14       A.  Kubitza Vladika law firm.

15       Q.  Whose idea was it to tape this meeting on

16   August 2nd?

17       A.  I believe that it was a collective

18   decision.  I cannot name one person, who decided that.

19       Q.  Were you involved in the decision?

20       A.  I was present at those discussions, yes.

21       Q.  Who else was present?

22       THE INTERPRETER:  People from the -- from

23   the board.

24       A.  Board.

1       THE INTERPRETER:  And our lawyers.

2       MR. BECKMAN:  If it involves lawyers --

3       THE INTERPRETER:  Board of Directors, yes,

4   because Board of Directors is the big one.  People from

5   the Board of Directors.

6       MR. BECKMAN:  I need to instruct the

7   witness if you had communications with your lawyer,

8   that is privileged, and you can't disclose that.

9       Q.   Who was there from the Board of Directors?

10      THE INTERPRETER:  I, I am not able to say

11  the names now.  It was more people.  There were the

12  people from the Board of Directors.

13      A.   And there were more discussions.  It was

14  not one, single discussion.  We discussed the process

15  on an ongoing basis.

16      Q.   The process, meaning to tape record?

17      MR. BECKMAN:  If this involves counsel,

18  communications with counsel, I'm instructing the

19  witness not to answer.  That's -- you need to cut off

20  this line of questioning.

21      MR. LEIBENSPERGER:  I do not need to cut

22  off this line of questioning.

23      MR. BECKMAN:  If it's privileged

24  communications with counsel, you established who was

1    there and who was present.  You can't ask about the

2    substance of communications with counsel.  You know

3    that.

4        Q.   Was it your idea to tape record the

5    meeting?

6        A.   I already answered, it was -- I believe it

7    was a collective decision, and I am not able to name

8    one person, who made the decision.

9        Q.   Was Mr. Benda involved in the decision to

10   tape record?

11       A.   He was present at those discussions.

12       Q.   The only -- is it correct that the only

13   persons present were members of the Board of Directors

14   and lawyers?

15       A.   And Benda and me were also present.  I

16   repeat one more time.  And I repeat one more time, it

17   was not only one meeting.  It was a number of

18   discussions, which we had about that situation.

19       Q.   When did those discussions start?

20       A.   After Mr. Hoffmann asked for the meeting,

21   where he was supposed to tell us very important

22   information about Gilroy.

23       Q.   Who did Mr. Hoffmann contact to ask for a

24   meeting?

Harazim, Richard Vol. 2 2/23/2006 9:44:00 AM

1      Q.  Do you know who she is?  Strike that.  If

2    you saw her, would you recognize her?

3      A.  No.

4      Q.  Did Kotva file a criminal complaint

5    against Mr. Peterka?

6      A.  Yes.

7      Q.  When did that happen?

8      A.  I cannot tell you the date.  I don't know,

9    but it was later than, than -- it was later than the

10   criminal complaint against Mr. Weiss.

11     Q.  Does Kotva have a copy of the complaint it

12   submitted against Mr. Peterka?

13     A.  Yes.

14        MR. LEIBENSPERGER:  We request a copy of

15   that document, also.  It hasn't been produced.

16     Q.  Did you give -- did you read the copy --

17   strike that.  Did you read the complaint filed against

18   Mr. Peterka?

19     A.  Yes.

20     Q.  Did you recommend to the Board of

21   Directors to file the complaint against Mr. Peterka?

22     A.  No.

23     Q.  Did you recommend that the board not file

24   a complaint against Mr. Peterka?

1    A.  No.

2        Q.  Were you at a board meeting in which the

3    decision to file a criminal complaint against

4    Mr. Peterka was made?

5        A.  No.

6        Q.  Did you agree with the decision to file

7    the complaint against Mr. Peterka?

8        A.  I agree with that.

9        MR. LEIBENSPERGER:  Why don't we go off

10   the record.

11       THE VIDEOGRAPHER:  Going off the record.

12   The time is 1:04 p.m.

13           (A recess was taken.)

14       THE VIDEOGRAPHER:  Going back on the

15   record.  The time is 1:28 p.m.

16   BY MR. LEIBENSPERGER:

17       Q.  Mr. Harazim, before we broke, I was asking

18   about the decision to file a criminal complaint against

19   Mr. Peterka.  Do you recall that?

20       A.  Yes.

21       Q.  Was there a board meeting of Kotva to

22   decide to file the criminal complaint against

23   Mr. Peterka?

24       A.  I believe that not.

1          Q.  Who made the decision to file the

2     complaint against Mr. Peterka?

3          A.  I don't recall it exactly.  I think

4     that -- it was conclusion to do that was based on the

5     legal analysis of the criminal file.

6          Q.  Someone at Kotva made a decision to file

7     the complaint, correct?

8          A.  We don't have the copy of the criminal

9     complaints against him, because somebody has to be

10    signed there.  Do we have the copy here?  Somebody has

11    to be signed that.

12         Q.  No.  We do not have a copy of the criminal

13    complaint against Mr. Peterka.

14         A.  I don't recall any board of directors'

15    meeting which would decide about that.

16         Q.  You're the chief executive officer of

17    Kotva?

18         A.  Yes.  I was.

19         Q.  Is it correct to say that the criminal

20    complaint against Mr. Peterka would not be filed unless

21    you agreed to do it?

22             MR. BECKMAN:  Objection.

23         A.  I was informed about this decision.

24         Q.  Who informed you?

1        A.  Legal Department.

2            MR. BECKMAN:  Don't disclose any

3    communications with counsel.

4        Q.  Who from the Legal Department?

5        A.  If I remember it correctly, it was

6    colleague Phillips Smeja, S-M-E-J-A.

7        Q.  Is he in the law firm that you've

8    referenced previously?

9        A.  He is a member of another law firm, which

10   is called Dolezal Valdauf.

11       Q.  Why did you engage another law firm?

12           MR. BECKMAN:  Objection.  I don't think he

13   can answer.

14           THE INTERPRETER:  Those are two small law

15   firms with whom we are cooperating on a long-term

16   basis, Kubica Vladyka and Dolezal Valdauf.

17           MR. LEIBENSPERGER:  Do you have all of

18   that?

19           THE INTERPRETER:  I am writing it for you.

20   K-U-B-I-C-A V-L-A-D-Y-K-A.

21       Q.  Was there a reason you consulted with a

22   different law firm with respect to the criminal

23   complaint against Peterka, as opposed to the law firm

24   you consulted with respect to the previous criminal

1    complaint?

2         MR. BECKMAN:  Let me hear his answer,

3    before, see if it discloses.  I'm not sure where you're

4    going with this, Ned.

5         THE INTERPRETER:  Can I translate it or

6    it's okay?

7         MR. LEIBENSPERGER:  Translate the

8    question, please.

9         THE INTERPRETER:  So, the question was why

10   did you consult with a second firm about proceeding

11   against the second person?

12        A.  Workload.  That's the only reason.  We

13   distribute work evenly among these two.

14        Q.  My question is:  Who at Kotva was

15   responsible for the decision to file the Peterka

16   complaint?

17        A.  Because I don't recall any board meeting

18   about that, so it means that I had to do that decision.

19        Q.  With respect to the board meeting that we

20   looked at on August 18, 2004, was Mr. Benda present for

21   that board meeting?

22        A.  I don't think so.

23        Q.  Can you find the exhibit that the, of the

24   board meeting minutes.  It's 31.  Now that you've seen

# McDermott
# Will & Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D C

Benjamin A Goldberger
Associate
bgoldberger@mwe com
617 535 4483

April 18, 2006

BY HAND DELIVERY

Joel G. Beckman
Daniel J. Pasquarello
Nystrom Beckman & Paris LLP
10 St. James Ave., 16th Floor
Boston, MA  02116

Re:    <u>Kotva a.s. v. Andrew Weiss et al.</u>, C.A. No. 05-10679-RCL

Dear Gentlemen:

Enclosed please find unredacted copies of the following documents: W0000619–33; W0005364–68; W0005376–77; and W0008629–30

Truly,

Benjamin A. Goldberger

Enclosures

cc:    Edward P Leibensperger (w/out enclosures)
       David L. Jaffe (w/out enclosures)

BST99 1499471-1 072198 0012

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ANDREW WEISS and WEISS ASSET | ) |
| MANAGEMENT, LLC, | ) |
| | ) |
| Defendants. | ) CA No. 05-10679-RCL |
| ―――――――――――――――― | ) |
| | ) |
| ANDREW WEISS, WEISS ASSET | ) |
| MANAGEMENT LLC, KT, INC. and CVF | ) |
| INVESTMENTS, LTD., | ) |
| | ) |
| Counterclaim-plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| KOTVA a.s., MARTIN BENDA, RICHARD | ) |
| HARAZIM, FORMINSTER ENTERPRISES, LTD., | ) |
| SPV CO AND JOHN DOES 1-5, | ) |
| | ) |
| Counterclaim-defendants. | ) |

**OBJECTIONS AND RESPONSES OF PLAINTIFF TO DEFENDANTS ANDREW
WEISS, WEISS ASSET MANAGEMENT, LLC, KT, INC., AND
CVF INVESTMENTS, LTD.'S SECOND SET OF
INTERROGATORIES TO THE PLAINTIFF**

Pursuant to Fed. R. Civ. P. 33 and Local Rule 33.1, plaintiff, Kotva, a.s.

("Kotva") hereby responds to the Second Set of Interrogatories of defendants, Andrew

Weiss, Weiss Asset Management, LLC, KT, Inc., and CVF Investments, Ltd.

(collectively the "Counterclaim plaintiffs').

1

## GENERAL OBJECTIONS

I.      Kotva objects to each interrogatory to the extent it seeks information that is beyond the scope of Rules 26 or 33 of the Federal Rules of Civil Procedure, is beyond the proper scope of discovery because of the attorney client relationship, prepared in anticipation of litigation or trial or constitutes attorney work product, or is otherwise immune from discovery.

II.     In providing answers to these interrogatories, Kotva does not in any way waive or intend to waive but rather intends to preserve the following:

        a.      All objections as to competency, relevancy, materiality and admissibility;

        b.      All rights to object on any ground to the use of any of the Answers herein, including the trial of this or any other action;

        c.      All objections as to vagueness or ambiguity; and

        d.      All rights to object on any ground to any further interrogatories or other discovery requests involving or related to any of the interrogatories in the Counterclaim plaintiffs' Second Set of Interrogatories.

III.    Privileged information responsive to any interrogatory below is not being provided. Kotva does not waive, and intends to preserve and is preserving the attorney client privilege, the work product doctrine, and every other privilege with respect to each and every answer, document or other repository of information protected by such a privilege.

IV.     Kotva objects to the Instructions and/or Definitions contained in the Interrogatories to the extent that they attempt to impose obligations on Kotva that are

2

inconsistent with and/or in addition to those required under the Federal Rules of Civil

Procedure and the Local Rules.

    V.    Kotva objects to the Interrogatories to the extent each interrogatory

contains several subparts and therefore exceeds the number of interrogatories permitted

under Fed. R. Civ. P. 33(a).

    VI.    Kotva objects to the Interrogatories to the extent that they demand

production of any information containing any confidential, proprietary and/or trade secret

information.

    VII.    Kotva's answers to the Interrogatories are qualified by the General

Objections. Failure to restate any General Objection in response to a particular

interrogatory does not constitute a waiver of such General Objection. By responding to

these Interrogatories, Kotva does not waive any asserted objection.

<u>INTERROGATORY NO. 1</u>:

Please identify all persons which have a direct or indirect ownership interest in Kotva a.s.
and all persons in which Kotva a.s. has a direct or indirect ownership interest, and for
each such person which is not a natural person, state the date of that entity's formation
and describe the reasons the entity was created.

    <u>Response</u>:

    Kotva objects to this interrogatory to the extent it is overly broad, unreasonable,

unduly burdensome, seeks irrelevant information, and is not reasonably calculated to lead

to the discovery of admissible evidence. Notwithstanding these objections and subject to

the foregoing General Objections, Kotva responds as follows: Kotva's shares are

publicly traded on the Czech securities market, and there are currently approximately

7,700 shareholders. Given that Kotva's shares are publicly traded, Kotva's ownership

changes regularly. Shareholders currently owning more than 10% of Kotva's outstanding shares are:

| | | |
|---|---|---|
| Forminster Enterprises Limited | 385,038 shares | 55.74% |
| Ardmore Risk Management Limited | 97,753 shares | 14.08% |
| HSBC Bank plc | 81,082 shares | 11.92% |

Kotva cannot identify those persons who have an "indirect ownership interest" in Kotva's shares.

Kotva owns 100% of Kotva Nemovitosti ("KN"), and Kotva Obchodni. These entities were created for the following reasons: In 2000, Kotva found itself on the brink of bankruptcy. Kotva sought to restructure its business operations to alleviate this threat and to optimize its structure for a potential strategic financial sale. Ernst & Young opined that Kotva could unlock the value of its assets by separating the property ownership and the department store operations. Ernst & Young, therefore, suggested the transfer of the Shopping Centre real estate from Kotva to a wholly owned subsidiary. To this end, in late 2000, Kotva established two separate wholly owned subsidiaries: Kotva Nemovitosti ("KN") and Kotva Obchondi. The shopping centre was transferred from Kotva to KN in November 2000.

SPV KN as and SPV CO. Ltd. were created to effectuate the sale of the shopping center to Markland Holdings, Ltd. KN transferred the shopping center to SPV KN, which was 100% owned by KN. Pursuant to the Share Purchase Agreement with Markland, Markland purchased the shares of SPV KN and paid the purchase price to SPV CO. SPV CO., is and always has been 100% owned by KN, which is 100% owned by Kotva. In further answering, pursuant to Fed. R. Civ. P. 33(c) the answer to this

4

interrogatory may be derived or ascertained by the Share Purchase Agreement and Ernst

& Young report, which will be provided upon the entry of a Confidentiality Order.

INTERROGATORY NO. 2:

Please identify all persons, including Kotva, its employees, officers, directors, agents, owners, attorneys and affiliates and the Irish Investors, their employees, officers, directors, agents, owners, attorneys and affiliates, who have knowledge regarding the purported sale of the Department Store to the Irish Investors, including the negotiations leading up to that sale and the disposition of the proceeds of that sale.

Response:

Kotva objects to this interrogatory to the extent it is overly broad, unduly

burdensome, seeks irrelevant information, and is not reasonably calculated to lead to the

discovery of admissible evidence. Subject to these objections, Kotva responds that the

following persons have had the most knowledge concerning the sale of the Department

Store:

Richard Harazim, Kotva

Martin Benda, Kotva

Michael Vlach, Kotva

Jiří Brada, Kotva

Pavel Richtr, Kotva

Jaromír David, Kotva

Henry Prestage, Irish Investors

Frank Walker, Irish Investors

Aidan Scully, Irish Investors

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY ON THIS ⎡5⎤ DAY

OF SEPTEMBER, 2005.

Richard Harazim

As to objections:

Joel G. Beckman (BBO #552086)
William C. Nystrom (BBO#559656)
Dana A. Zakarian (BBO#641058)
NYSTROM BECKMAN & PARIS LLP
10 St. James Avenue, 16th Floor
Boston, Massachusetts 02116
(617) 778-9100
(617) 778-9110 (fax)

Dated: September 6, 2005

6

#### CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2005 I caused a copy of the foregoing document to be served by Facsimile and First Class Mail upon all defendants.

Joel G. Beckman

7

**From:**      jan veverka [vevejan@centrum cz]
**Sent:**      Saturday, September 06, 2003 4:25 AM
**To:**        Andrew Weiss
**Subject:**   information

Dear Mr. Weiss

      I would like to apologize myself, but circumstances of last several days changed a
lot my life. 29 th of August  I had to undergo a surgical operation. The reason was acute
inflammation of gall-bladder.        Now I have a after-operation complications.
Because of my bad health and possible stay in hospital I can not do any stressfull
activities. I am sorry, but I can not cooperate with you.
      I mean that one of the best man who could help you with solving your problems is Mr.
Vlado Hoffmann. I know him very wel and I consider him as a smart and honest man.
      I wish you the best for future times.


      Best Regards,                          Jan    Veverka


1

W0001252