UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s.,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW WEISS and WEISS ASSET MANAGEMENT, LLC,<br><br>    Defendants.<br><br>ANDREW WEISS, WEISS ASSET MANAGEMENT LLC, K T, INC. and CVF INVESTMENTS, LTD.,<br><br>    Counterclaim-plaintiffs,<br><br>v.<br><br>KOTVA a.s., MARTIN BENDA, RICHARD HARAZIM, FORMINSTER ENTERPRISES, LTD., SPV CO and JOHN DOES 1–5,<br><br>    Counterclaim-defendants. | C.A. No. 05-10679-RCL |

## **DECLARATION OF GEORGIY NIKITIN**

1. I, Georgiy Nikitin, make this declaration of my own personal knowledge.

2. I am an employee of Weiss Capital LLC.

3. Weiss Capital LLC is the investment manager of Brookdale Global Opportunity Fund ("BGO").

4. BGO has been called BGO since July 2000. Before July 10, 2000, BGO was named the Czech Value Fund.

5.  With respect to shares of Kotva and Trend, the following quote from BGO's 2004 Annual Report explains the ownership:

> Pursuant to the open ending of the Company [BGO] on September 30, 2000, the Directors resolved to distribute the benefit of certain illiquid assets (the "segregated investments") to The Czech Value Fund shareholders of record on September 30, 2000 (the "segregated shareholders"). Legal title to the segregated investments was not transferred to the segregated shareholders, CVF Investments Ltd, a Cyprus subsidiary of the Company, holds the segregated investments as nominee for the segregated shareholders. A schedule of the segregated investments as at December 31, 2004 is as follows:
>
> | *Segregated investments* | *Shares* |
> |---|---|
> | Trend | 1,096,417 |
> | Harvardsky Prumyslovy Holding | 97,820 |
> | Kotva | 81,082 |

6.  Documents listing the segregated shareholders have been produced in this litigation.

7.  An investor who purchases shares in BGO after September 30, 2000 receives no beneficial interest or any other interest in the segregated assets. In particular, new investors have no beneficial or other interest in CVF's shares in Trend and Kotva

8.  There are many more investors in BGO at present than there were on September 30, 2000.

9.  Investors in BGO may be individuals, companies or other entities.

10. No individual, company or other entity owns a majority of the shares of BGO.

11. Weiss Capital maintains strict safeguards to ensure the confidentiality of the identities of its investors. Employees of Weiss Capital have access to this information only on a need-to-know basis. The list of investors is not available to anyone outside of Weiss Capital except for: (1) KPMG, which audits BGO's accounts, and (2) BISYS, which is BGO's administrator. Like Weiss Capital, BISYS maintains strict safeguards to ensure the confidentiality of this information. *See* Exhibit A (Memorandum regarding Confidentiality

Letter). Likewise, KPMG has entered into an agreement under which it will maintain in strictest confidence the identities of BGO investors, as well as other confidential information, that it receives while conducting its audit. *See* Exhibit B (KPMG engagement letter).

12.    Weiss Capital has assured investors in BGO that their confidentiality and privacy will be maintained. Accordingly, disclosure of investor identities is likely to result in investors withdrawing their investments from BGO, and could result in lawsuits against Weiss Capital LLC or its employees, including Andrew Weiss, by the investors whose identities were disclosed.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 26, 2006.

_____
Georgiy Nikitin

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system and all attachments will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 26, 2006.

_____
Benjamin A. Goldberger

BST99 1499942-5.072198.0012

3

April, 13 2006

To: Georgiy Nikitin

From: Jasem Movafeghzadeh

Re: Confidentiality letter

Please be advised that Staff members are required to sign a
confidentiality agreement upon joining, and are provided with copies of
The BISYS Group's confidentiality policy.

We limit access to a particular fund's information, as well as the
level of access, by employee.  Requests for higher levels of access
must be submitted and granted through a formal, tracked process.

If reporting is provided using BISYSReporter, the manager and each
investor will be issued a unique user name and password.

Our system has a firewall, regularly updated anti-virus software, and
intrusion detection software, as well as e-mail and web filtering.  We
also have periodic security testing performed by a third party.


Regards,

Jasem Movafeghzadeh
Director, Client Relations
Bisys-RK Alternative Investment Services, Inc.
105 Eisenhower Parkway
Roseland, NJ 07068
Phone: 973-461-5736
Fax:    973-461-2667
Jasem.m@Bisys.com



KPMG  
PO Box 493GT_Century Yard Building_Grand Cayman, Cayman Islands

Telephone_+1 345 949 4800_Fax _+1 345 949 7164_Internet _www.kpmg.ky

The Directors  
Brookdale Global Opportunity Fund  
P.O. Box 852 GT  
Grand Cayman  
Cayman Islands

Our ref   60863 13

September 30, 2005

Dear Sirs/Madams:

**Engagement Letter**

The purpose of this letter is to confirm and update the terms of our continuing engagement to report on our audit of the financial statements of Brookdale Global Opportunity Fund (the "Company") as of and for the year ending December 31, 2005 and in future years. This letter supersedes our previous letter to the Directors dated January 20, 2005 on this matter.

By signing this letter you confirm that the Company does not have its shares registered with the United States Securities Exchange Commission (SEC) (herein referred to as an "SEC Issuer") nor is it an affiliate of an SEC Issuer, which includes investment funds that are within an investment company complex of an SEC Issuer, nor are the financial statements of the Company included in the financial statements of an SEC Issuer audit client, of any member firm of the KPMG organization.

We will conduct our audit in accordance with International Standards on Auditing with the objective of expressing an opinion as to whether the presentation of the Company's financial statements taken as a whole, conforms with generally accepted accounting principles. We understand that the financial statements of the Company will be prepared in accordance with United States generally accepted accounting principles.

In conducting our audit, we will perform tests of the accounting records and such other procedures as we consider necessary in the circumstances to provide a reasonable basis for our opinion on the financial statements. We also will assess the accounting principles used and significant estimates made by management, as well as evaluate the overall financial statement presentation.

We cannot provide assurance that an unqualified opinion will be rendered. Circumstances may arise in which it is necessary for us to modify our report or withdraw from the engagement. In such circumstances, our findings or reasons for withdrawal will be communicated to the management of the Company.

The Company agrees that all records, documentation, and information we request in connection with our audit will be made available to us on a timely basis in accordance with the guidelines



*Brookdale Global Opportunity Fund*
*Engagement Letter*
*September 30, 2005*

specified in our Prepared by Client letter to be separately communicated prior to commencement of audit fieldwork. The Company agrees that all material information will be disclosed to us, and that we will have the full cooperation of your staff and/or your fund managers. As required by International Standards on Auditing, we will make specific inquiries of management about the representations embodied in the financial statements and the effectiveness of internal control, and obtain a representation letter from management about these matters. The responses to our inquiries, the written representations, and the results of audit tests comprise the evidential matter we will rely upon in forming an opinion on the financial statements. Because of the importance of management's representations to the effective performance of our services, the Company agrees to release and indemnify KPMG and its personnel from any claims, liabilities, costs and expenses relating to our services under this letter attributable to any fraudulent acts, fraudulent omissions or willful default by management and any misrepresentations in the representation letter referred to above. This undertaking will survive termination of this agreement.

Management of the Company has responsibility for the financial statements and all disclosures and representations contained therein. Management also has responsibility for the adoption of sound accounting policies and the implementation of record keeping and internal control which maintain the reliability of the financial statements, safeguard the Company's assets and provide reasonable assurance against the possibility of misstatements that are material to the financial statements.

The primary responsibility for the prevention and detection of irregularities, including error and fraud, and of non-compliance with laws and regulations rests with you. An audit conducted in accordance with International Standards on Auditing is designed to provide reasonable assurance that the financial statements taken as a whole are free from material misstatement, whether caused by fraud or error. However, because of the test nature and other inherent limitations of an audit performed in accordance with International Standards on Auditing, together with the inherent limitations of any system of internal control, there is an unavoidable risk that a material misstatement, or fraud, may remain undiscovered. The fact that an audit is carried out may act as a deterrent, but we are not and cannot be held responsible for the prevention of fraud and error. Also, an audit is not designed to detect matters that are immaterial to the financial statements. To the extent that they come to our attention, we will inform management about any material errors and any instances of fraud or illegal acts. Further, to the extent that they come to our attention, we will inform the Board of Directors about fraud and illegal acts that involve senior management, fraud that in our judgment causes a material misstatement of the financial statements of the Company, and illegal acts, unless clearly inconsequential, that have not otherwise been communicated to the Board of Directors.

In planning and performing our audit, we will consider the Company's internal control in order to determine our auditing procedures for the purpose of expressing an opinion on the financial statements and not to provide assurance on internal control. While we are not being engaged to report on the Company's internal control, we will report to you any significant weaknesses in your internal control structure to the extent they come to our attention.

Management is responsible for adjusting the financial statements to correct material misstatements and for affirming to us in the representation letter that the effects of any uncorrected misstatements

2



*Brookdale Global Opportunity Fund*
*Engagement Letter*
*September 30, 2005*

aggregated by us during the current engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the financial statements taken as a whole.

KPMG's maximum liability to the Company for any reason relating to the services under this letter shall be limited to three times the fees paid to KPMG for the services or work product giving rise to liability, except to the extent determined to have resulted from the willful, intentional or gross negligence or misconduct or fraudulent behaviour of KPMG.

Our fees are based on the time required by the individuals assigned to the engagement plus direct out-of-pocket expenses. Individual hourly rates vary according to the degree of responsibility involved and the experience and skill required. Based upon our discussions, we estimate that audit fees will range from US$52,500 to US$70,000. Our estimate contemplates that no additional work will be required due to delays in receiving information or to satisfy us on significant accounting problems that may unexpectedly arise during the course of our examination. Should these situations arise, we will discuss it with you before undertaking any additional work. Any additional time incurred for unexpected situations or special work will be billed in addition to the fee estimate. In addition, expenses are billed for reimbursement as incurred.

Our fees and expenses will be billed as follows: 40% of the audit fee upon commencement of the audit; a further 40% upon deliverance of our draft audit opinion; and the final 20% upon deliverance of our signed audit opinion. All invoices shall be paid within 30 days after the date thereof. In the event any invoice is not timely paid as set forth herein, a monthly finance charge of 1% of the aggregate outstanding amount due may be charged to the Company.

Other than as specifically outlined below, when considering the use of our report in other documents you agree not to quote our name, whether directly or through implication, in any material other than financial statements (which we have audited) prepared in accordance with generally accepted accounting principles or applicable legal or regulatory requirements, without our prior written consent. The definitive version of financial statements which we have audited shall be those bearing our original manuscript signature and we shall not be responsible or liable for any errors or inaccuracies appearing in any reproduction in any form or medium.

We recognise that the Company may wish to publish its financial statements and our report, (the audit report signed by KPMG) on the Company's web site, or to distribute such material to shareholders or other parties having a legitimate right to receive such by electronic means, such as e-mail.



*Brookdale Global Opportunity Fund*
*Engagement Letter*
*September 30, 2005*

- KPMG consents to allowing the Company to identify KPMG as its auditors of its annual financial statements in the Company's offering memorandum, on the Company's web site and in marketing materials, marketing presentations, and when asked either verbally or in writing. KPMG's consent relates solely to identification of KPMG as the Company's auditors of its annual financial statements and may not be conveyed in any manner that may give any recipient the impression that KPMG is endorsing the sale, offering, promotion, transaction or other matter with respect to such marketing materials.

- It is and shall remain the responsibility of the Company to ensure that any such electronic publication or distribution properly presents the financial information and our report. The Company shall ensure that financial information on the Company's web site distinguishes clearly between financial information that we have audited and other information and avoids any inappropriate association.

- Responsibility for the security of any electronic distribution of this report remains the responsibility of the Company and KPMG accepts no liability if the report is or has been altered in any way by any person.

Where the Company proposes to take advantage of laws or regulations allowing for electronic publication and distribution of financial statements and our report and other financial information to shareholders and to any regulatory authority, the Company shall remain responsible for establishing and controlling the process for doing so.

The work papers for this engagement are the property of KPMG and constitute confidential information. However, the Company acknowledges that in certain circumstances KPMG, its partners or employees, may be obliged to give evidence and information to courts or regulatory authorities in connection with the affairs of the Company. Disclosure will not normally be made to third parties unless required by applicable laws and regulations, professional standards or where failure to make such disclosures would, in our opinion, be prejudicial to KPMG. If disclosure is required, access to such work papers will be provided under the supervision of KPMG personnel. Furthermore, upon request, we may provide photocopies of selected work papers to the relevant court or regulator. In the event that KPMG is required pursuant to subpoena or other legal process to produce its documents relating to engagements for the Company in judicial or administrative proceedings to which KPMG is not a party, the Company shall reimburse KPMG for its professional time and expense, including reasonable attorney's fees, incurred in responding to such requests.

Confidential information, i.e. information of a proprietary or sensitive nature about the strategies, models or data used by the Company, Company portfolio, geographic, sectoral, or other distribution of Company's investments, trading records, or any other information, acquired by audit staff through their employment is considered to be privileged and must be held in strictest confidence during the performance of audit services and after the completion of the work. Confidential information must be transmitted only to those persons who need the information to discharge their duties at KPMG. Any other dissemination of information or correspondence must be approved by the appropriate Officer of the Company. KPMG warrants that it has procedures in place to ensure

4



*Brookdale Global Opportunity Fund*
*Engagement Letter*
*September 30, 2005*

that its current and former employees do not abuse the confidential information obtained in the course of performing the audit services and that any dissemination without authorization will be considered gross negligence on behalf of the auditor. Further, KPMG acknowledges that unauthorized dissemination of privileged information could potentially cause material losses.

It is agreed that we may communicate with you via e-mail as well as the traditional forms of communication, including letter, fax and telephone, although it is understood and agreed that all e-mail communication from us will not be binding unless and until communicated to you in writing and received by hand, post or fax.

Our engagement will be governed by, and construed in accordance with, the laws of the Cayman Islands and it is agreed that the courts of the Cayman Islands shall have final jurisdiction to settle any disputes which may arise out of, or in connection with, our engagement as your auditors in accordance with the terms of this letter. In the event that any term or provision of this Agreement shall be held to be invalid, void or unenforceable, then the remainder of this Agreement shall not be affected, impaired or invalidated, and each such term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

The terms outlined in this letter will continue in effect from year to year unless changed by mutual agreement. This letter forms the entire Agreement and understanding between KPMG and the Company with respect to the audit we will perform for the Company. It supersedes all previous arrangements and understandings between the parties, with respect to the audit of the Company, which shall cease to have any further force or effect. Any variation of the terms of this letter shall be made in writing and will not be effective unless signed by a partner of KPMG and by a duly authorised representative of the Company.

We appreciate the opportunity of continuing to be of service to the Company. We shall be pleased to discuss this letter with you at any time. For your convenience in confirming these arrangements, we enclose a copy of this letter. Please sign and return it to us.

Yours faithfully,



KPMG

KPMG

*Brookdale Global Opportunity Fund*
*Engagement Letter*
*September 30, 2005*

TERMS ACCEPTED:

AUTHORISED SIGNATURE: _[signature]_

ORGANISATION: **Brookdale Global Opportunity Fund**

TITLE: Director

DATE: 10-12-05

6