UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————————
                                          )
KOTVA a.s.                                )
                                          )
            Plaintiff,                    )        Case No. 05-10679-RCL
                                          )
            v.                            )
                                          )
ANDREW WEISS and WEISS ASSET              )
MANAGEMENT, LLC                           )
                                          )
            Defendants.                   )
———————————————————————)

**KOTVA'S OPPOSITION TO WEISS' MOTION TO COMPEL**

**INTRODUCTION**

To deflect attention away from their own discovery abuses, the Weiss Defendants seek to compel: one interrogatory response (to identify the "beneficial" owners of Forminster); a response to one deposition question (to determine whether conversations were recorded during the criminal investigation); a power of attorney (in response to a request this Court has already denied); and a handful of documents that Kotva has either already produced or does not have in its possession, and, in any event, are irrelevant to the claims and defenses asserted in this action. In short, the Weiss Defendants seek documents Kotva does not have and information it does not know.

The lengths Weiss will go to concoct a discovery dispute is best demonstrated by his inconsistencies regarding the Czech criminal proceedings. Weiss takes the following position in his motion to compel:

> "[T]he Court should order [Kotva] to respond to deposition questions <u>without regard to the ongoing Czech criminal investigation</u>." Weiss Mem. in Support of Motion to Compel at 14.

Weiss, however, asserts a completely contradictory position to avoid his own deposition:

> "[T]his Court should enter a protective order precluding the plaintiff from deposing Andrew Weiss until <u>the parallel criminal proceedings in the Czech Republic are resolved</u>." Weiss Motion for Protective Order at 2.

Incredibly, it is Weiss who has delayed the criminal proceedings for over a year. (Weiss was to be served with the Czech criminal charges on May 1, 2006 by the U.S. Attorneys' office in Boston, but Weiss recently filed yet another objection challenging the service. <u>See</u> Weiss Memorandum in Support of Motion for Protective Order at 5).[1] Weiss cannot bar Kotva from taking discovery until the resolution of the criminal proceedings, which he admittedly continues to delay, while at the same time avoid his own discovery obligations. Discovery is a two way street.

Weiss' motion to avoid his deposition, failure to produce documents, and wild conspiracy theories have accomplished nothing other than to delay Kotva's legitimate right to discovery on the core claim in this case: Weiss' blackmail of Kotva. Enough is enough. Weiss should be ordered to appear for his deposition and produce the withheld documents, and Weiss' motion to compel should be denied in its entirety.

---

[1] Kotva asked Weiss to produce the U.S. Attorney's subpoena and his objection thereto, but Weiss has refused on the grounds that the papers were filed under seal.

## ARGUMENT

### I.    Kotva and Forminster are Separate Corporations

At every turn in this case, Weiss has attempted to paint Kotva and Forminster as the same entity, creating the fictitious "Forminster Group" as a means to avoid pleading deficiencies in his "counterclaims." See Counterclaim ¶¶ 13-14. Weiss asserts that "[i]t is undisputable that [Kotva] is controlled by Forminster" and that "Forminster installed Messrs. Harazim and Benda as directors and officers of Kotva." Weiss Mem. at 5. Weiss also asserts without support that "[t]he individuals who control Forminster also control [Kotva] and are the primary beneficiaries of the efforts to loot [Kotva]." Weiss Mem. at 9. Weiss' wild conspiracy theory falls apart, however, when confronted with the reality that Forminster has not even voted its shares in Kotva since 2003. Indeed, a court-appointed trustee of another Czech company, Sprint, has voted the Kotva shares since that time. Kotva Dep. at 62-64, relevant pages attached as Ex. A. Moreover, Messrs. Benda and Harazim, the alleged villains, were actually elected to Kotva's board by BGO, Weiss' own fund. Similarly, the purported "looting" is pure fiction. The sale proceeds are held and invested by SPV Co., a wholly-owned Kotva subsidiary.

Simply because Forminster holds approximately 55% of Kotva's shares does not mean that Weiss can ignore the corporate form and take discovery from Forminster through Kotva, as he attempts to do here. See Weiss Mem. at 22-23. Kotva and Forminster are separate and distinct entities, with:

- Separate and non-overlapping boards of directors;

- Separate bookkeeping;

- Separate tax filings;

- Separate decision-making authority; and

- No common officers or employees.

Affidavit of Rena David at ¶¶ 15-19 submitted in support of Forminster Motion to Dismiss, attached as Ex. C.

###    A.    Weiss Cannot Obtain Forminster Documents and Discovery Through Kotva.

Weiss' motion to compel exposes his true intention behind his document requests--<u>to obtain discovery from Forminster</u>, not Kotva.  Mem. at 22-23 ("K-T-V must also produce documents in the possession, custody or control of Forminster.")  The Court, however, <u>denied</u> Weiss' motion to obtain discovery from the parties challenging jurisdiction, including Forminster.  <u>See</u> Order dated January 6, 2006, (Ex B).  Indeed, Weiss previously attempted to obtain broad discovery from Forminster under the guise of jurisdictional discovery, including the precise subjects that Weiss now moves to compel from Kotva:

> Please identify each person who, directly or indirectly, owns or controls more than 10% of the shares of Forminster Enterprises Ltd., and, if that person is not a natural person, each person who, directly or indirectly, owns or controls more than 10% of the shares or interest of that person.

Interrogatory No. 4 to Weiss' First Set of Interrogatories to Forminster Enterprises, Ltd. attached as Ex. D.  This very discovery was denied by the Court, and Weiss cannot end run around the Court's Order.

Weiss, as the party requesting production, must establish that Kotva has possession, custody, or control over documents held by other parties like Forminster.  <u>Norman v. Young</u>, 422 F2d 470, 472-473 (10th Cir. 1970).  He has failed to carry that burden.  Instead, Weiss makes unsupported--and unsupportable--allegations that Kotva and Forminster are *alter egos*, that Kotva was Forminster's agent in bringing this lawsuit, and that there is "no indication that [Kotva] is unable to obtain documents from Forminster whenever it suits its purposes"--though examples of such are conspicuously absent.  <u>See</u> Mem. at 23.  These are the same strained

arguments Weiss has advanced in his attempt to assert jurisdiction over Forminster, which Forminster has debunked in its motion to dismiss for lack of personal jurisdiction.[2]  See Forminster Memorandum in Support of Motion to Dismiss at 4-5, attached as Ex. E, and Forminster Reply Brief attached as Ex. F.  Moreover, despite more than eleven hours of questioning and over 400 pages of deposition testimony from Kotva's Rule 30(b)(6) designee, Weiss does not provide any citation to that testimony to support his claim that Kotva and Forminster are *alter egos*.  In short, Weiss has not sustained and cannot sustain his burden of proving an *alter ego* relationship or any other reason to pierce the corporate veil, and the motion to compel Kotva to somehow produce Forminster documents should be denied.

**B.    Kotva Has Complied with Its Discovery Obligations in Responding to Interrogatories.**

In response to Weiss' Third Set of Interrogatories, Kotva provided detailed information about the "legal and beneficial owners" of the "Listed Companies" for which it had knowledge, including itself and multiple subsidiaries.  See Kotva's Response to Interrogatory 1, attached as Ex. A to Motion to Compel.  Kotva also answered that it does not know the identity of the "legal and beneficial owners" of Forminster and several other "Listed Companies".

Through a separate interrogatory, Weiss demanded that Kotva describe in detail the efforts it took to gather responsive information.  See Interrogatory 6.  Kotva supplemented its answer, but in violation of the Rules of Civil Procedure, Weiss failed to provide Kotva's full supplemental response in its motion to compel.  See Local R. 37.1(B)(4).  With respect to the interrogatories that Weiss claimed Kotva was "unable to answer," Kotva provided the following response:

---

[2]  Those issues are pending before the Court in multiple jurisdictional motions to dismiss and Weiss cannot sidestep the process through a discovery motion.

**Supplemental Response**:

Kotva objects to this interrogatory to the extent it seeks information that is protected by the attorney/client privilege and work product doctrine. Kotva further objects that this interrogatory is overly broad, unreasonable, unduly burdensome, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objections, Kotva responds that it answered all interrogatories based upon the documents and information known to it. In its previous responses to interrogatories, Kotva stated that it filed a criminal complaint with Czech authorities but lacks knowledge or information sufficient to identify which individuals specifically initiated the criminal charges against Weiss (Kotva has produced the charging document that identifies a prosecutor); that it cannot identify the persons who have an "indirect ownership interest" in Kotva's shares; that it no longer owns Kotva International Ltd. and SPV KN and does not know the current ownership status of those entities; and that it lacks information or knowledge sufficient to identify the legal and beneficial owners of Forminster and the Bonalbo entities. To the extent that the Weiss Defendants are attempting to force Kotva to conduct independent research to acquire information to answer interrogatories, to provide information that is readily available to the Weiss Defendants, or to conduct research on the Weiss Defendants' behalf, the interrogatories are beyond the proper scope of discovery.

Thus, in answering Weiss' interrogatories, Kotva complied with its discovery obligations by

providing answers "based upon the documents and information known to it."

1. **Kotva Has Answered *And Testified* That it Does Not Know Who Owns Forminster**

Kotva does not know the "legal and beneficial owners" of Forminster. In addition to its

interrogatory responses, Kotva has provided testimony during its Rule 30(b)(6) deposition that it

does not know the identity of any beneficial owner of Forminster. Kotva Dep. at 62. Weiss now

moves to compel that information. Weiss' position defies common sense. Kotva, a publicly

traded company, certainly knows and has identified its own shareholders of record, but it does

not know who owns an "indirect" interest in the company. For example, Kotva does not know

the "legal and beneficial" owners of BGO's 12% interest in Kotva and has had to demand that

information through discovery--which Weiss continues to resist. See Opposition to Kotva's

Motion to Compel at 18-19 (claiming that the identity of BGO's investors constitutes

confidential business information even though Defendants failed to log the documents and file a motion for a protective order). Moreover, Weiss has already identified the shareholders of record for Forminster. See Ex. G to Weiss' Motion to Compel. In short, Forminster's legal and beneficial ownership information is obviously not available to Kotva.

      **2.**      **Weiss Cannot Use Toman As a Means to Obtain Forminster Information Through Kotva.**

      Mr. Harazim testified that the only information he had on the subject of Forminster's ownership was a confirmation in 1999 that Forminster's shareholders did <u>not</u> include Mr. Halek or anyone "from his group"--who are at the center of Weiss' "Forminster Group" allegations in the Counterclaim. See Kotva Dep. at 54-56; Mem. at 4-5; and Counterclaim at ¶¶ 42-60. Weiss attempts to use the fact that Forminster's attorney, Mr. Toman, provided this information in 1999 as proof that Kotva must know the legal and beneficial owners of Forminster because Toman "acts as a principal attorney and agent of K-T-V to this day." Mem. at 5. First, Weiss' description of Toman as Kotva's "principal attorney and agent" is false. Contrary to Weiss' suggestion, Toman did not represent Kotva during the sale of the department store. Mr. Harazim testified that Kotva used other counsel for the deal after Toman's firm prepared a preliminary draft of the purchase agreement, and that the listing of Toman as a designated notice recipient in the final was an error. Kotva Dep. at 163-165. While it is true that Toman's firm represented Kotva in the Gilroy lawsuit, the case has since been dismissed by the Czech court.

      Second, while Kotva can provide discovery responses based on facts known to its attorney within the scope of the attorney's representation <u>to Kotva</u>, Kotva cannot provide information beyond the scope of that relationship. In other words, Kotva has a right to information that Mr. Toman's firm may hold with respect to its representation of Kotva, but Kotva has no right to demand information that Mr. Toman may have as a result of representing

other clients.  See Rosie D. v. Romney, 256 F. Supp. 2d 115, 119 (D. Mass 2003) ("the concept of 'control' exists where a party has a legal right to obtain documents.") This proposition of law is well-settled:

> It is quite true that if an attorney for a party comes into possession of a document *as attorney for that party* his possession of the documents is the possession of the party.  The mere fact, however, that the attorney for a party has possession of a document does not make his possession of the document the possession of the party.  The paper may be one of his private papers which he had before the relation of attorney and client was established.  It is inconceivable that he should be required to produce such a paper for the inspection of his client's adversary.  The paper which he has in his possession may be the property of some other client.  It is inconceivable that he should be compelled to produce the document belonging to another client because the adversary of one of his clients demands it.

Poppino v. Jones Store Co., 1 F.R.D. 215, 219 (W.D. Mo. 1940) (emphasis in italics in original; underlined emphasis added).  Indeed, no attorney should provide information it may hold as a result of its attorney-client relationship with another client.

## II.    Kotva Has Not Improperly Refused to Testify About Which Conversations Were Recorded During the Criminal Investigation

*After August 27, 2004, which conversations with Weiss and/or Hoffmann were recorded?*  In a nutshell, that is the only deposition question that Kotva is temporarily unable to answer.[3]

Kotva has testified and will continue to testify about the substance of any conversation at issue.

Kotva has also already provided to Weiss all of the materials that it has concerning the criminal file.   Moreover, Weiss already knows what he said and can demonstrate no legitimate, good faith reason for compelling deposition testimony from Kotva about whether his conversations

---

[3]  Mr. Harazim and counsel explained that Kotva was not refusing to answer such questions, only that it could not answer them until service of the criminal charges upon Mr. Weiss had been confirmed.   Weiss again entirely omits that explanation in his quotation of Mr. Harazim's testimony:

> Q.  Again, you will have to come back for further depositions --
>
>     MR. BECKMAN:  He's happy to come back after Mr. Weiss --
>
> A.  [by Mr. Harazim]  The moment Mr. Weiss accepts or confirms the receiving of those documents, that the criminal proceedings are against him started, I may talk about it the whole day.

Kotva Dep. at 284:4-11 (directly following ellipsis in Weiss Mem. at 12).

were recorded during the criminal investigation.  Weiss also knows that all evidence in the

criminal file will be unsealed and made available to him as soon as he accepts service of the

charges, and that Kotva can then answer whether conversations were recorded.[4]

Weiss has stalled the criminal proceedings for more than a year.  He is the only person

charged who has not accepted service, and he admittedly continues to delay the mechanical

process of service under the MLAT.[5]  At the same time, Weiss attempts to stall these civil

proceedings by seeking to stay his deposition until after the conclusion of the criminal

proceedings that he continues to delay.  Weiss apparently believes the only thing that should go

forward is his own discovery.  Weiss is trying to use discovery in this case to pry open the sealed

criminal file without actually accepting service (See e.g. Weiss' counsel's request that Kotva

secure from Czech police copies of Czech criminal file and turn over to Weiss.  Kotva Dep. at

299-300).  Since Weiss has no good faith basis for demanding information about whether

conversations were recorded as part of the criminal investigation, continuing to press for that

information at this time constitutes bad faith.  If necessary, Kotva will file a Rule 30(d)(4)

motion.  Before reaching that point, however, the Court should compel Weiss to disclose the

---

[4]  The following exchange underscores Kotva's willingness to respond to Weiss' inquiries:

Q.  Well, I asked you what tape recordings and video recordings and transcripts you are aware of with
respect to Mr. Hoffmann and Mr. Weiss after August 27, 2004?
A.  I have instruction, I have clear instruction from my Czech lawyers until, until the criminal – until Mr.
Weiss will be formally charged with the criminal complaint, I cannot talk about it, because I can be an obstruction
for the Czech police investigation, which is ongoing.
MR. BECKMAN:  Do you know now –
THE INTERPRETER:  Obstruct.
MR. BECKMAN:  Do you know, Ned, whether Mr. Weiss has been served with the criminal charges?
MR. LEIBENSPERGER:  I just want to ask the questions here in the deposition.
MR. BECKMAN:  Because if he has, then the witness is here, and he'll answer your question.  He'll
answer all your questions.  If you can represent that he's been served with the papers by the --
MR. LEIBENSPERGER:  Well, I don't want to get into a debate about the criminal procedure in the Czech
Republic, you know.

Kotva Dep. at 287:6-288:5.

[5]  Weiss Mem. in Support of Motion for Protective Order at 5.

status of the MLAT procedure he has challenged, which was supposed to be effected by May 1, 2006.

### III.    Kotva Has Already Produced the Documents It Has Within its Possession, Custody or Control

Weiss has moved to compel various documents that Kotva has either already produced or does not have in its possession, custody or control.

*Criminal Complaint*:  As Weiss acknowledges, Kotva produced this document.  When it was discovered that the copy that was produced was missing a page, Kotva provided the missing page.  During the April 18, 2006 discovery conference, Mr. Goldberger conceded that the page that was provided filled the gap in the document.  Even though Kotva has agreed to provide yet another copy of the document, Weiss still presses this non-issue in its motion to compel.

*Audio/Video-Tapes*:  With respect to recordings, Kotva's Czech counsel possessed recordings of meetings with Vladimir Hoffman that were conducted <u>before</u> the Czech police were involved.[6]  On February 9, 2006, the Vladimir Hoffmann recordings were turned over to the Czech police.  Mr. Harazim was not aware that the tapes had been turned over at the time of the Rule 30(b)(6) deposition on February 22 and 23, 2006.  After Weiss requested the recordings during the deposition, Kotva agreed to produce them and requested the recordings from the police to turn over to Weiss.  The Czech police refused, stating that turning over the tapes would frustrate the investigation and influence those that have yet to be interrogated (*i.e.*, Weiss).  Thus, Kotva does not have the Hoffmann tapes in its possession, custody or control.  Kotva also does not have any other tapes responsive to Weiss' demands in its possession, custody or control.

*Powers of Attorney*:  Kotva has already produced all powers of attorney that it has in its possession, custody or control.  Weiss now seeks to compel production of a power of attorney

---

[6]  Kotva testified that the tapes are not usable. (Kotva Dep. at 254-255.)

that Michal Vlach holds outside of the scope of his duties as a Kotva director, which Kotva has

no legal right to obtain.  Weiss' own case law acknowledges the limitation that a corporation

only has "possession, custody or control" of documents within the possession, custody or control

of its officers, directors, or employees to the extent that those documents relate to the

corporation:

> The determination of [whether a corporation that is a party to a lawsuit may be compelled to produce items in the possession of one its officers] must turn on the nature of the documents or things at issue.  Where they were created <u>in connection with the officer's functions as a corporate employee</u>, the corporation has a proprietary interest in them and the officer has a fiduciary duty to turn them over on demand.

<u>Riddell Sports Inc. v. Brooks</u>, 158 F.R.D. 555, 558-559 (S.D.N.Y. 1994) (emphasis added).  It

follows that a corporation has no proprietary interest and, therefore, no legal right to obtain

documents in the possession of a corporate officer that have no connection to the corporation or

the officer's functions as a corporate employee.  The logic of this is evident.  Otherwise every

personal and private document belonging to a corporate officer, such as personal bank account

information and personal correspondence, would be considered the property of the corporation.

This demand is also another example of Weiss' attempt to take discovery that has already

been denied.  Weiss seeks production of this power of attorney pursuant to Request No. 17 of his

Second Set of Requests for Production of Documents.  Request No. 17, however, seeks

information that Weiss previously requested through Request No. 40 of Weiss's First Set of

Requests for Production of Documents.[7]  The Court expressly denied Weiss's previous motion to

---

[7]  <u>Compare</u> Request No. 40 (First Set of Document Requests):

All documents concerning any power of attorney issued by one or more of the Listed Companies, including but not limited to powers of attorney naming Miroslav Hálek, for the period from January 1996 to the present.

<u>and</u> Request 17 (Second Set of Document Requests):

All documents concerning any power of attorney from Kotva or any of its subsidiaries or Forminster to one or more of the following persons:  Michal Vlach, Richard Harazim, Martin Benda or Petr Toman.

compel responses to Requests 35-41 of the First Set of Requests for Production of Documents. See January 6, 2006 Order.

**J&T Banka Documents**:  Kotva has consistently and repeatedly responded that it has no documents concerning transactions to which it was not a party.  This is another attempt by Weiss to obtain documents from Kotva that are simply not within Kotva's possession, custody or control.

**Other Document Requests**:  For the most part, Weiss' "other document requests" are actually the same document requests already discussed, namely, requests for Forminster documents and J&T Banka/Woolf documents.  Kotva has already produced documents concerning the Gilroy lawsuit and has indicated when it has no documents.[8]  In response to Weiss' Second Set of Requests for Production of Documents, Kotva objected that many requests were not directed to Kotva, either in whole or in part.[9]  To the extent that such requests also sought documents from Kotva, Kotva properly limited its response to the documents in its possession, custody and control and answered accordingly.

---

[8]  Compare Weiss' Opposition to Kotva's Motion to Compel at 19-20.

[9]  See e.g., Request No. 8:  All documents concerning any actual or prospective agreement between Forminster and BGO or any other entity represented by Howard Golden to sell or purchase shares in Kotva and/or Trend or to sell or purchase options to sell or purchase shares in Kotva and/or Trend.  (emphasis added).

12

## CONCLUSION

For the foregoing reasons, Kotva respectfully requests that the Court deny Defendants'

motion to compel.

Respectfully submitted,

KOTVA A.S.

By its attorneys,

/s/ Joel G. Beckman
Joel G. Beckman (BBO# 553086)
William C. Nystrom (BBO# 559656)
Daniel J. Pasquarello (BB0# 647379)
NYSTROM BECKMAN & PARIS LLP
10 St. James Ave., 16th Floor
Boston, Massachusetts 02116
(617) 778-9100
(617) 778-9110 (fax)

Dated: May 5, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and paper copies will be sent to those indicated as non registered participants on this 5th day of
May, 2006.

/s/ Joel G. Beckman

Page 1

```
 1                         VOLUME 1, PAGES 1 - 234

 2                           EXHIBITS 1 - 22

 3            IN THE UNITED STATES DISTRICT COURT

 4             FOR THE DISTRICT OF MASSACHUSETTS

 5                              No. 05-10679-RCL

 6    - - - - - - - - - - - - - - - - - - - - - - - -

 7    KOTVA a.s.,

 8                   Plaintiffs

 9            vs.

10    ANDREW WEISS and WEISS ASSET MANAGEMENT, LLC,

11                   Defendants

12    _____

13    ANDREW WEISS, WEISS ASSET MANAGEMENT LLC,

14    KT, INC. and CVF INVESTMENTS, LTD.,

15                   Counterclaim-Plaintiffs,

16          v.

17    KOTVA a.s., MARTIN BENDA, RICHARD HARAZIM,

18    FORMINSTER ENTERPRISES, LTC., SPV CO. and

19    JOHN DOES 1-5,

20                   Counterclaim-Defendants.

21    - - - - - - - - - - - - - - - - - - - - - - - -

22      VIDEOTAPED RULE 30(b)(6) DEPOSITION OF KOTVA a.s.

23            BY AND THROUGH RICHARD HARAZIM

24         Tuesday, February 22, 2006 10:02 a.m
```

Richard Harazim                                                                02/22/2006

Page 54

1    Q.   Is that correct?
2    A.   Yes.
3    Q.   Is this the record you were referring to
4  as showing who the shareholders are?
5    A.   No, no.  This is a record that shows who
6  the directors are.  There must be similar to this
7  record which shows who the shareholders were.
8    Q.   Were the shares of Forminster that were --
9  let me start over.  Were the shares at Forminster at
10 November 30, 1999 held by nominees?
11   A.   I believe so.
12   Q.   Do you know who the beneficial owners were
13 of the shares of Forminster on November 30, 1999?
14   A.   No.
15   Q.   Did you ever ask that question?
16   A.   No.
17   Q.   Was there a reason you did not ask that
18 question?
19       MR. BECKMAN:  Objection.  You may answer.
20   A.   There was no special reason.  I just
21 didn't ask.
22   Q.   You were aware in November, 1999 of the
23 allegation in the press that Forminster had committed
24 criminal acts?

Page 55

1        MR. BECKMAN:  Objection.
2    Q.   Were you aware of those?
3    A.   Yes.
4    Q.   And so didn't you want to know who the
5  owners of Forminster were, before you signed up to be
6  on the Board of Directors?
7    A.   I wanted to know who the shareholders were
8  not.
9    Q.   Okay.  And what did you do in that regard?
10   A.   I asked the law firm, Mr. Toman, if he can
11 assure me that I don't work for Mr. Hßlek, and I got
12 that insurance -- assurance, I'm sorry .
13   Q.   What way did Mr. Toman give you that
14 assurance?
15       MR. BECKMAN:  Objection.  You may answer.
16   A.   Just told me so.
17   Q.   Did he give you anything in writing?
18   A.   No.
19   Q.   Was there anyone else that you wanted to
20 be assured of as not being a shareholder of Forminster?
21   A.   Well, I said Mr. Hßlek or anybody from his
22 group.
23   Q.   So, to be clear here, you asked Mr. Toman
24 whether Mr. Hßlek or anyone from his group were

Page 56

1  shareholders of Forminster, correct?
2    A.   Yes.
3    Q.   And his answer to you was?
4    A.   No.
5    Q.   Did you do anything further to learn the
6  identities of the beneficial shareholders of
7  Forminster?
8    A.   No.
9    Q.   How long did you stay a member of the
10 Board of Directors of Forminster?
11   A.   Once again, I don't remember exactly the
12 day, but I believe it was still Autumn, 2002.
13       MR. LEIBENSPERGER:  Let's mark the next
14 exhibit.
15       (Certificate dated May 6, 2002
16   marked Exhibit 8.)
17       MR. LEIBENSPERGER:  This will be
18 Exhibit 8.
19 BY MR. LEIBENSPERGER:
20   Q.   Exhibit 8 is another certificate
21 referencing you as a member of the Board of Directors
22 of Forminster at May 6, 2002.  Is that correct?
23   A.   Yes.
24   Q.   And so were you a member of the Board of

Page 57

1  Directors continuously from November, '99, to at least
2  May, 2002?
3    A.   I believe so, yes.
4    Q.   And what happened in 2002 to cause you to
5  go off the Board of Directors?
6    A.   First of all, I think that there was some
7  deadlines prescribed by the settlement agreement.  The
8  overall plan when signing this settlement agreement
9  was --
10   Q.   And for the record, you're referring to
11 Exhibit 4?
12   A.   Exhibit 4 --
13   Q.   Thank you.
14   A.   -- was to settle disputes between
15 Forminster and Trend and prepare a sale of the shares
16 of Kotva, jointly.  By the time when I resigned from
17 the position of Forminster, it became obvious that this
18 goal will not be achievable, because the shares were
19 not unblocked, and, in addition, during the
20 negotiations we had with investment bankers, it became
21 clear that even if the shares were unblocked, the
22 shares just wouldn't be sellable.  Therefore, it was
23 clear that my role, as prescribed by the settlement
24 agreement, I just couldn't fulfill.

15 (Pages 54 to 57)

Richard Harazim                                                                02/22/2006

Page 162

1        A.  I asked around, people who were dealing in
2    shares.
3        Q.  Like who?
4        A.  Well, JT Bank.  There is another dealer in
5    securities, Fideja.  I asked -- who did I ask?  I think
6    that's about it.  I asked the people from Fideja,
7    Martin asked them there, maybe asked somewhere else.  I
8    don't know.
9        Q.  Is Fideja a brokerage company?
10       A.  People from Fideja are dealers in
11   securities, yes.  I mean I don't know if officially,
12   but the people simply live on dealing with, in
13   securities.
14       Q.  Did you know Fideja as being a company
15   associated with Mr. Hßlek?
16       A.  No.
17       Q.  Did Fideja also have a business
18   relationship with Kotva?
19       A.  Business relationship, no.
20       Q.  Did they -- strike that.  Did they loan
21   money to Kotva?
22       A.  There was a transaction that might have
23   happened, but didn't happen.  Fideja was basically
24   interested in shares of Kotva since maybe 2002,

Page 163

1    something like that.
2        Q.  They had made that known to you?
3        A.  Not on an official basis, no.  I just
4    know, because I know people, who know them.
5        Q.  But, just to be clear, did Fideja have any
6    financial arrangement with Kotva, either as a lender or
7    in any respect?
8        A.  Contemplated.
9            MR. BECKMAN:  Objection.
10       A.  Contemplated, but something that didn't
11   happen.
12       Q.  In December of 2003, did Petr Toman know
13   of the deal with Markland?
14       A.  December, 2003.  They knew that we were
15   starting to work on SPA, but they knew it I think
16   beginning of summer, when I asked them to provide a
17   draft of SPA, but after they replaced lawyers, so by
18   December of 2003, I don't believe that they were
19   involved in any way.
20       Q.  All right.  So, Toman and his firm were
21   lawyers for Kotva up to a particular time?
22       A.  No.  We used them.  No.
23       Q.  You said that they were involved and then
24   you replaced lawyers.  So, what did you mean by that?

Page 164

1        A.  I asked them to provide the first draft of
2    the SPA when it looked like we were principally in
3    agreement with Markland, and we started -- we thought
4    about starting drafting some contracts.  I asked
5    Toman's office to provide a draft.
6        Q.  And that would be in the Summer of 2003?
7        A.  It was in the e-mails.  I don't recall the
8    correct.  I don't recall precisely the date.  But, it
9    could be.
10       Q.  Well, if I tell you that the deal to make
11   a deal was October of 2003, does that refresh your
12   recollection of when you were using Toman?
13       A.  Well, I know that we started to negotiate
14   with Markland at the beginning of 2003, so I'm weighing
15   how long could we have negotiated without thinking
16   about drafting the first draft, and I think that the
17   negotiations might have been like two, three, four
18   months before we started.
19       Q.  In October, 2003, there was a contract
20   entered into with Markland with a draft SPA attached to
21   it.  Do you remember that?
22       A.  Yes.
23       Q.  Do you remember that Toman is the person
24   indicated in that draft to receive notices on behalf of

Page 165

1    Kotva?
2        A.  I don't.
3        Q.  Does that refresh your memory that you
4    used Toman up to and through the October, 2003, deal to
5    make a deal?
6        A.  No.  Toman was replaced much earlier on.
7    We started with the draft from Toman, but from there
8    on, the lawyers working on the contract was Zdenek
9    Kubica and Phillips Mayer.  It's different law firms.
10       Q.  Why did you change?
11       A.  Toman's office?
12       Q.  Yes.
13       A.  The other guys were cheaper and better.
14       Q.  So, Mr. Toman would have been aware by
15   October of 2003 from this work that there was going to
16   be an offer from Markland in roughly 48 million Euro?
17       A.  The price was set fairly early.  Maybe.
18       Q.  To the best of your recollection, would
19   you say he would have known that from the progress of
20   the deal?
21           MR. BECKMAN:  Objection.  You may answer.
22       A.  I'm not sure.  I would have to look when,
23   when they finished with their participation in the SPA,
24   but it is possible.

Richard Harazim, Vol. 2

2/23/2006

Page 235

1                                        VOLUME 2, PAGES 235 - 403

2                                        EXHIBITS 23 - 40

3                     IN THE UNITED STATES DISTRICT COURT

4                     FOR THE DISTRICT OF MASSACHUSETTS

5                                        No. 05-10679-RCL

6    - - - - - - - - - - - - - - - - - - - - - - - - - -

7    KOTVA a.s.,

8                           Plaintiffs

9              vs.

10   ANDREW WEISS and WEISS ASSET MANAGEMENT, LLC,

11                          Defendants

12   _____

13   ANDREW WEISS, WEISS ASSET MANAGEMENT LLC,

14   KT, INC. and CVF INVESTMENTS, LTD.,

15                          Counterclaim-Plaintiffs,

16             v.

17   KOTVA a.s., MARTIN BENDA, RICHARD HARAZIM,

18   FORMINSTER ENTERPRISES, LTC., SPV CO. and

19   JOHN DOES 1-5,

20                          Counterclaim-Defendants.

21   - - - - - - - - - - - - - - - - - - - - - - - - - -

22        CONTINUED VIDEOTAPED DEPOSITION OF KOTVA a.s.

23             BY AND THROUGH RICHARD HARAZIM

24        Wednesday, February 23, 2006 9:44 a.m

Page 252

1  My understanding of the situation is as follows:  If
2  somebody brings the lawsuit for a different purpose
3  than the lawsuit states or looks like, and then he
4  requires money to take the lawsuit back, to recall it
5  back --
6      A.  To drop.
7          THE INTERPRETER:  To drop it, thank you.
8  Then I believe that this is a criminal act.
9      Q.  What was the stated claim in the Gilroy
10 lawsuit?
11     A.  The lawsuit stated or claimed that the
12 building doesn't belong to the KN company, but belongs
13 to KAS.
14     Q.  KAS is Kotva a.s.?
15     A.  Right.  And KN is Kotva Nemovitosti real
16 estate, and KAS is Kotva shareholding company.
17         MR. LEIBENSPERGER:  Let me mark this as
18 the next exhibit.
19             (E-mail dated August 5, 2004
20     marked Exhibit 24.)
21 BY MR. LEIBENSPERGER:
22     Q.  Exhibit 24 is an e-mail from Mr. Prestage
23 to you, Mr. Harazim, dated August 5, 2004.  In
24 Paragraph -- strike that.  Underneath the Prestage

Page 253

1  e-mail is your e-mail to Mr. Prestage.  And in
2  Paragraph 2, you tell Mr. Prestage that the filing of a
3  lawsuit is a criminal act.  Is that correct?
4      A.  Yes.
5      Q.  On the date you say that --
6          THE INTERPRETER:  The question was if
7  submitting the --
8      A.  A lawsuit is a criminal act?  Is that was
9  the question?
10     Q.  Yes.
11     A.  In general, meaning no.  No.  This one
12 was.  Generally, filing a lawsuit is not a criminal
13 complaint, of course.
14     Q.  You told Mr. Prestage that this suit, the
15 Gilroy suit, is a criminal act?
16     A.  Yes.
17     Q.  And you believed that before anyone
18 approached you about settling the Gilroy lawsuit?
19         THE INTERPRETER:  Could you repeat the
20 last couple of words?
21     Q.  And you believed that before anyone
22 approached you about settling the Gilroy lawsuit?
23     A.  That's correct.  Yes.
24     Q.  At the top of the e-mail, Mr. Prestage

Page 254

1  asks about a meeting on Monday, concerning Gilroy.
2  Describe that meeting.  Who was present?
3      A.  This was a negotiation between Mr. Benda
4  and Mr. Hoffmann, where Mr. Hoffmann relived or said --
5  revealed for the first time that Gilroy is controlled
6  by him; that is, Hoffmann, based on the instructions
7  from Mr. Weiss.
8      Q.  Who was present at this meeting?
9      A.  Mr. Benda and Mr. Hoffmann.
10     Q.  Were you present?
11     A.  No.
12     Q.  Where did it take place?
13     A.  I don't recall where it took place.
14     Q.  Was there a tape recording of that
15 meeting?
16     A.  I am not sure about the dates, but
17 probably, yes.
18     Q.  Was there a video recording of that
19 meeting?
20     A.  I am not sure if it was only audio or
21 video recording.
22     Q.  How was it tape recorded?
23     A.  I wasn't present at that meeting.  I am
24 not sure how Martin arranged for -- Martin Benda

Page 255

1  arranged for a recording of that meeting.
2      Q.  Is there a transcript of the tape
3  recording?
4      A.  It doesn't exist.  The recording is not
5  usable.
6      Q.  Do you have the tape?
7      A.  I don't have the tape.
8      Q.  Does Mr. Benda have the tape?
9      A.  He doesn't have it.
10     Q.  Do you know where the location is of the
11 tape?
12     A.  The tape is stored at our law offices.
13     Q.  Which law offices?
14     A.  Kubitza Vladika law firm.
15     Q.  Whose idea was it to tape this meeting on
16 August 2nd?
17     A.  I believe that it was a collective
18 decision.  I cannot name one person, who decided that.
19     Q.  Were you involved in the decision?
20     A.  I was present at those discussions, yes.
21     Q.  Who else was present?
22         THE INTERPRETER:  People from the -- from
23 the board.
24     A.  Board.

Page 284

1    Q.   I press for an answer regardless of the
2  statements of counsel.
3    A.   I will not answer that.
4    Q.   Again, you will have to come back for
5  further deposition.
6    MR. BECKMAN:  He's happy to come back
7  after Mr. Weiss --
8    A.   The moment Mr. Weiss accepts or confirms
9  the receiving of those documents, that the criminal
10 proceedings are against him started, I may talk about
11 it the whole day.
12   Q.   Do you have at Kotva copies of any tape
13 recordings of or transcripts after August 27, 2004?
14   A.   We have copies of the criminal complaint,
15 and I am not able to discuss the contents.  I am not
16 allowed to discuss the contents.
17   COURT REPORTER:  One second.  Can we go
18 off?
19   THE VIDEOGRAPHER:  Going off the record.
20 The time is 11:32 a.m.
21   (A brief recess was taken.)
22   THE VIDEOGRAPHER:  Going back on the
23 record.  The time is 11:34 a.m.
24   MR. LEIBENSPERGER:  The record should

Page 285

1  reflect that we went off the record, because the court
2  reporter had a glitch in her machine and needed to call
3  a recess.
4  BY MR. LEIBENSPERGER:
5    Q.   My last question, sir, was:  Do you have
6  at Kotva copies of any tape recordings or transcripts
7  of conversations after August 27, 2004?
8    A.   I am -- I cannot answer that question,
9  because Mr. Weiss will have to be interviewed by the
10 police in this matter, and I cannot release any
11 information from the criminal file which may obstruct
12 this investigation.
13   Q.   My question is simply whether you have
14 copies or tapes or transcripts?
15   A.   I don't have them.
16   Q.   Is it your position that you will refuse
17 to testify about anything that happened after
18 August 27, 2004, with respect to the criminal
19 investigation?
20   A.   This is the instructions which I got from
21 my Czech lawyers, which they gave me in order for me
22 not to break Czech law.
23   MR. BECKMAN:  Let me say this, just to
24 move this along, Rule 30(b)(6), the notice that you

Page 286

1  served on Kotva, is Kotva's communications with Czech
2  law enforcement.  If you want to try to do it question
3  by question, but I think what you're suggesting, that
4  communication, Kotva's communications after the
5  criminal file -- after the criminal complaint was filed
6  are initiated, is part of the investigation, and I
7  don't think Kotva can disclose that until Mr. Weiss is
8  served with the criminal charges.
9    MR. LEIBENSPERGER:  Are you instructing
10 the witness not to answer any questions in that regard?
11   MR. BECKMAN:  We can try to do it question
12 by question, because I don't want to -- I don't want to
13 prohibit your line of questioning, because I don't know
14 exactly what you have in mind.  We can try to do it,
15 but I think you understand from the witness's testimony
16 he cannot do it under Czech law.  He can't disclose
17 what the police did after they received the complaint.
18   MR. LEIBENSPERGER:  I hear the objection.
19 I don't agree with it.  But, I don't want to waste time
20 asking a lot of questions and hearing the same response
21 from Mr. Harazim that he can't answer it, so I just
22 want to understand when, what rules you are going to
23 play by so that the record will be clear what questions
24 you're going to not allow the witness to answer, or

Page 287

1  that he won't answer, and then I'll move onto something
2  else.
3    MR. BECKMAN:  Well, I think you should try
4  to ask.  I don't know where you're going.  You can try
5  to ask them.
6    Q.   Well, I asked you what tape recordings and
7  video recordings and transcripts you are aware of with
8  respect to Mr. Hoffmann and Mr. Weiss after August 27,
9  2004?
10   A.   I have instruction, I have clear
11 instruction from my Czech lawyers until, until the
12 criminal -- until Mr. Weiss will be formally charged
13 with the criminal complaint, I cannot talk about it,
14 because I can be an obstruction for the Czech police
15 investigation, which is ongoing.
16   MR. BECKMAN:  Do you know now --
17   THE INTERPRETER:  Obstruct.
18   MR. BECKMAN:  Do you know, Ned, whether
19 Mr. Weiss has been served or not with the criminal
20 charges?
21   MR. LEIBENSPERGER:  I just want to ask the
22 questions here in the deposition.
23   MR. BECKMAN:  Because if he has, then the
24 witness is here, and he'll answer your question.  He'll

14 (Pages 284 to 287)

Page 296

1  Exhibit 31, which are the board minutes for August 18,
2  2004. Do you have those in front of you?
3       A.  Yes.
4       Q.  I'm going to ask the interpreter to
5  translate the minutes starting at the bottom of the
6  first page where it says "Richard Harazim," and going
7  on to the next page, and then I'll ask you,
8  Mr. Harazim, whether you agree with his translation.
9       THE INTERPRETER:  The first line is
10 partially illegible, but I think I was able to decipher
11 it, and it reads to me as follows:  Richard Harazim
12 submitted report about the case with Gilroy Company and
13 especially about how it -- and continues on the next
14 page -- fully fulfill the signs of the criminal action.
15 He proposed that the Board of Directors of the company
16 adopt following resolution.
17      Q.  Please read the resolution.
18      THE INTERPRETER:  Okay.  One, the Board of
19 Directors of Kotva agrees with submitting criminal
20 complaint against Andrew Weiss and Vladimir Hoffmann.
21 Second, Board of Directors of Kotva gives a task to the
22 chairman of the Board of Directors to prepare within 30
23 days of the written criminal complaint.
24      Q.  Do you accept that translation,

Page 297

1  Mr. Harazim?
2       THE INTERPRETER:  We were discussing how I
3  read the text, and you agree with my Czech reading of
4  the text and with the translation.
5       A.  I believe so that this is the way how it's
6  written there.  Can I return to one thing, please?
7  About what the files from the criminal files Kotva has
8  available and what files Kotva does not have available?
9       Q.  What is your answer?
10      A.  There was some confusion about it.  Kotva,
11 I said in English, Kotva copied the criminal file, and
12 whatever was available in the criminal file was sent
13 over to our American lawyers for production of
14 documents with the exception of the transcripts, which
15 were sealed by the police, transcripts of phone
16 conversations.  That is not something Kotva produced to
17 American lawyers, because it's a sealed part of the
18 file.
19      Q.  Did you produce to the -- your American
20 lawyers copies of the crinimal complaint?
21      A.  I expect so.
22      Q.  Did you produce to your American lawyers
23 copies of statements given by you and Mr. Benda to the
24 police?

Page 298

1       A.  I am not sure about it paper by paper.  We
2  copied, we copied the context of the criminal file, and
3  we sent it to United States.
4       MR. BECKMAN:  I don't have any statements.
5  I gave you everything that was provided by Kotva.  I
6  just want that to be clear.
7       MR. LEIBENSPERGER:  I was going there.  We
8  do not have any statements by Mr. Harazim or Mr. Benda
9  from counsel.
10      MR. BECKMAN:  Right.  Right.  I don't know
11 if -- well, you should answer.
12      A.  There are documents which are being
13 categorically added to the file, and it is possible
14 that at the time where -- at the time when we were
15 making copies those documents weren't there at the
16 time, but they are there now.
17      Q.  Do you have copies of statements by
18 yourself and Mr. Benda that were given to the police?
19      A.  I don't have a copy of my own statement to
20 the police.
21      Q.  Do your lawyers have that?
22      A.  In the copy which we had, there is my
23 statement for the police is not there.
24      Q.  Do you have Mr. Benda's statement for the

Page 299

1  police in your file?
2       A.  I don't know.  I was just, just -- I don't
3  know about Mr. Benda.  I was just looking for my own
4  statement, and I didn't find it.
5       MR. BECKMAN:  And I don't have a statement
6  from Mr. Benda, either.
7       A.  But, we can do the following now:  We will
8  make the complete copy now of the present file, and
9  with the thing, with the exception of the things which
10 are excluded before the complaint is presented
11 officially to the Mr. Weiss, we will -- we can present
12 it or send it.
13      MR. LEIBENSPERGER:  We request that.
14 Would you mark this as the next exhibit.
15      MR. BECKMAN:  Just so it's clear, if there
16 is anything in addition, I don't know if there is, but
17 we'll do that.  I don't think there is anything in
18 addition to what we've already given you, but I think
19 he wants to make sure.
20      MR. LEIBENSPERGER:  Well, I understand.
21      MR. BECKMAN:  That is, I've given
22 everything that we have.  I just want that to be clear.
23      MR. LEIBENSPERGER:  I understand that's
24 what you're saying, but he's saying that they'll go

17 (Pages 296 to 299)

Page 300

1  back to the police file and make copies of what they
2  can, what they're allowed to do by the police and give
3  us copies.
4        MR. BECKMAN: Is that what you're saying?
5        THE WITNESS: The file may be exactly the
6  same as it is here. It also may be the case that
7  something in the meantime arrived into the file. I
8  don't know. So, what I'm suggesting is that we will
9  make a copy of the current status, because what we sent
10  here was the copy of the then current status.
11        Q. You gave a statement in the criminal
12  investigation, correct?
13        A. Because I didn't find it, I am even not
14  very sure if I did a statement for the police in this
15  matter or not.
16        MR. LEIBENSPERGER: Would you mark this as
17  the next exhibit.
18        (Criminal Complaint
19        marked Exhibit 32.)
20  BY MR. LEIBENSPERGER:
21        Q. Mr. Harazim, can you identify what
22  Exhibit 32 is?
23        A. This is the criminal complaint submitted
24  by Kotva.

Page 301

1        Q. And this was submitted on August 27, 2004?
2        A. That's correct. Yes.
3        Q. Did you read this statement before it was
4  submitted?
5        A. No.
6        Q. Why not?
7        A. I was taking care of the other things,
8  basically by this minutes from the meeting, the whole
9  matter was closed for me, and from now on it was the
10  responsibility of Mr. Vlach.
11        Q. Mr. Vlach had not had any conversations
12  with Mr. Weiss or Mr. Hoffmann; is that correct?
13        A. He did not.
14        Q. Wasn't it important for you to read what
15  Mr. Vlach said Mr. Weiss and Mr. Hoffmann did?
16        MR. BECKMAN: Objection.
17        A. I don't think so. I submitted all the
18  information, which I had about the whole thing, and
19  preparation of this document was the responsibility of
20  the lawyers and the gentleman whose task was it to
21  prepare it.
22        Q. Did Mr. Benda read this document before it
23  was submitted to the police?
24        A. I don't know.

Page 302

1        Q. And you said you submitted information for
2  purposes of preparing this document?
3        A. I regularly informed about how the Gilroy
4  case was developing.
5        Q. Did you do that in writing?
6        A. No.
7        MR. LEIBENSPERGER: Wait just a second.
8        (Discussion off the record.)
9        Q. Mr. Harazim, if you look at Exhibit 32,
10  which is the letter to the police, correct?
11        A. Yes.
12        Q. And read from going from the first page to
13  the second page to yourself.
14        MR. BECKMAN: Just the first two pages?
15        MR. LEIBENSPERGER: Yes.
16        (Witness complies.)
17        MR. LEIBENSPERGER: And for the record,
18  this document is in Czech.
19        Q. Does it appear to you, Mr. Harazim, that
20  there is something missing in the photocopy of this
21  document going from Page 1 to Page 2?
22        A. I don't think so.
23        Q. At the top of Page 2, does that translate
24  to approximately in case the company did not accept the

Page 303

1  proposed request?
2        THE INTERPRETER: Yes. You stated it
3  approximately correctly, according to my opinion.
4        Q. And, Mr. Harazim, is that your answer,
5  sir?
6        A. I say yes.
7        MR. LEIBENSPERGER: Did you get his yes?
8        COURT REPORTER: Yes.
9        THE INTERPRETER: Yes. I'm completely
10  confused. Sorry. I apologize.
11  BY MR. LEIBENSPERGER:
12        Q. So, do you agree, Mr. Harazim, that at the
13  top of Page 2, there is an incomplete sentence?
14        A. It doesn't make much sense.
15        Q. But, do you agree it's an incomplete
16  sentence?
17        A. I agree that this sentence is not
18  understandable.
19        Q. And does it appear to you that there is
20  something coming before that sentence at the top of
21  Page 2 that has, that's not there? It's been omitted?
22        MR. BECKMAN: Objection.
23        MR. LEIBENSPERGER: Mr. Translator? What
24  did he just say?

18 (Pages 300 to 303)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KOTVA A.S.,                    )
                               )
                               )         Civil Action No. 05-10679-RCL
        v.                     )
                               )
WEISS, ET AL.                  )

<u>ORDER OF SPECIAL MASTER</u>

After hearing held on this date, and all parties being represented and heard, it is hereby

ORDERED:

1.  The Counterclaim Plaintiffs' Motion to Compel Production of Documents, and For

Expenses and Sanctions, is hereby ALLOWED and production is to be made no later than

January 17, 2005, with the following exceptions:

   a.      Request no. 28: The time period is limited to January 1, 2000 to date.

   b.      Requests no. 44 and 45: DENIED.  The requests may be reframed more narrowly

           so that they target documents relevant to the instant allegations.

   c.      Requests nos. 35 through 41: DENIED.  By agreement, counterclaim plaintiffs will

           seek the requested information about the interrelationships and agreements among

           the Listed Companies by means of interrogatories.  Kotva shall respond to such

           interrogatories within 30 days of receipt.  Thereafter, counterclaim plaintiffs may

           formulate more narrowly focused requests for production of documents.

By agreement between the parties, the answer to Interrogatory no. 5 will be supplemented

by January 17, 2006.

The motion for expenses and sanctions is hereby DENIED without prejudice to renewal if

1

production is not made consistent with the terms of this Order.

2.  Plaintiff's Request for Entry of Confidentiality Order is hereby DENIED.  No good ground for such a blanket order has been demonstrated and the documents specifically identified as confidential (i.e., the purchase and sale agreement for the Department Store, the escrow agreement, documents concerning the negotiations and sale of the Department Store, and documents concerning the receipt and holding of the sale proceeds) have not been shown to warrant protection.  The notion that confidentiality orders should be or are "routinely granted  in most commercial cases" is rejected as inconsistent with Fed. R. Civ. P. 26(c).  Similarly rejected is the proposition that the requesting party must "offer [a] good reason why the Court should not enter a confidentiality order."  Moreover, the suggested procedure by which the plaintiff would unilaterally deem documents "confidential" and then place the onus upon the discovering party to move to remove the designation unfairly and improperly shifts the burden of proof.

Any party that withholds production on the ground of privilege or a claim of confidentiality must identify all withheld documents and state the grounds for non-production or protection in a production log.  In order to expedite the resolution of issues with respects to claims of business confidentiality, the producing party must submit a copy of documents which are claimed to contain confidential information to the Special Master for *in camera* review, along with a motion for a protective order under Rule 26(c).  Privileged documents need not be submitted for *in camera* review.

3.      The Counterclaim Plaintiffs' Motion for Civil Rico Statement is hereby ALLOWED  by agreement of the parties.  The statement shall be filed and served no later than February 6, 2006.

4.  The Counterclaim-Plaintiffs' Motion to Take Jurisdictional Discovery is hereby DENIED.  The motion seeks discovery which is not narrowly tailored to jurisdictional issues. Moreover, the discovery requested is manifestly unnecessary in light of jurisdictional facts already known to the counterclaim plaintiffs, and discovery which is ordered herein to be produced within ten days.  Finally, the motion is untimely in light of the currently scheduled hearing on the motions to dismiss for lack of jurisdiction and no good cause for the delay has been demonstrated.

So ordered this 6th day of January, 2006.


/s/ Jeanne M. Kempthorne

_____

Special Master

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KOTVA a.s.,

    Plaintiff,

v.

ANDREW WEISS and
WEISS ASSET MANAGEMENT, LLC,

    Defendants.

Civil Action No. 05-10679-RCL

ANDREW WEISS;
WEISS ASSET MANAGEMENT, LLC;
K T, INC.; and
CV INVESTEMENTS, LTD.,

    Counterclaim-plaintiffs,

v.

KOTVA a.s.; MARTIN BENDA;
RICHARD HARAZIM;
FORMINSTER ENTERPRISES, LTD.;
SPV CO and JOHN DOES 1-5,

    Counterclaim-defendants.

**<u>AFFIDAVIT OF RENA DAVID</u>**

   I, Rena David, being duly sworn, state as follows:

   1.   I am a national of Cyprus currently residing at Diagorou 4, Kermia Building, 6th

floor, Office 601, Nicosia, P.C. 1097, Cyprus.

2.      I am a Director of Forminster Enterprises, Limited ("FEL").   I have been Director since October 30th 2002.

3.      FEL is incorporated under Cyprus Companies Law, Chapter 113, as a limited liability company.

4.      FEL is primarily an investment company.

5.      FEL's offices are located at 4 Biagorou Street, Kermia Building, Office 601, Nicosia, Cyprus.  FEL has no other offices or places of business.

6.      In addition to myself, FEL's current directors are Doxa Pericleous, Anthony Indianos, and Andreas Papsiantis, all of whom are Cypriots.

7.      FEL has no business in Massachusetts.  It has no clients, partners, or shareholders in Massachusetts.  It does not have an office or agent in Massachusetts, it does not have a telephone number or mailing address in Massachusetts, and it does not own, rent, or use any property in Massachusetts.  FEL also is not registered with any Massachusetts agency to conduct any business in the Commonwealth.

8.      FEL has never solicited any business in the Commonwealth of Massachusetts.

9.      FEL has never initiated a lawsuit in any Massachusetts court nor been a party to any lawsuit in Massachusetts, except as named above as a Counterclaim defendant in this case.

10.     FEL has no business in the United States of America.  It has no clients, partners, or shareholders in the United States.  It does not have an office or agent in the United States, it does not have a telephone number or mailing address in the United States, and it does not own, rent, or use any property in the United States.  FEL also is not registered with any agency of the United States to conduct any business in the United States.

2

11.    FEL has never solicited any business in the United States of America.  It has not had any communications or transactions with any person or entity residing in the United States.

12.    FEL has never initiated a lawsuit in any Court of the United States of America, nor been a party to any lawsuit in the United States of America, except as named above as a Counterclaim defendant in this case.

13.    FEL holds shares in Kotva a.s. ("Kotva").  Currently, FEL holds 55.74% of Kotva's shares.

14.    Kotva's shares are publicly traded on the Czech stock exchange.

15.    Kotva and FEL have separate boards of directors, and no one who sits on FEL's board of directors also sits on Kotva's board.

16.    Kotva and FEL do not share bookkeeping.

17.    Kotva and FEL make separate tax filings.

18.    Kotva and FEL have separate decision-making authority.

19.    Kotva does not have officers or employees who are also employed with FEL.

20.    Richard Harazim was one of FEL's directors from 30/11/1999 to 30/10/2002.

21.    Martin Benda was one of FEL's directors from 30/11/1999 to 30/10/2002.

22.    FEL has never given instructions to Richard Harazim or Martin Benda regarding their dealings with Andrew Weiss or Weiss Asset Management.

23.    FEL has no knowledge of or any involvement in any negotiations that Richard Harazim or Martin Benda may have had with Andrew Weiss or Weiss Asset Management regarding the purchase of shares of Kotva.

24.    FEL has never been contacted by Weiss Asset Management, LLC, or Andrew Weiss regarding an offer to buy Weiss Asset Management's Kotva shares.

3

25.    FEL did not instruct Kotva, Richard Harazim, or Martin Benda to file a lawsuit or criminal complaints against Weiss Asset Management, LLC, or against Andrew Weiss.

Signed under the pains and penalties of perjury.

Dated: 26/10/2005

Rena David

4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW WEISS and WEISS ASSET<br>MANAGEMENT, LLC,<br><br>　　　　Defendants.<br><br>ANDREW WEISS, WEISS ASSET<br>MANAGEMENT LLC, K T, INC. and CVF<br>INVESTMENTS, LTD.,<br><br>　　　　Counterclaim-plaintiffs,<br><br>　　v.<br><br>KOTVA a.s., MARTIN BENDA, RICHARD<br>HARAZIM, FORMINSTER ENTERPRISES,<br>LTD., SPV CO and JOHN DOES 1–5,<br><br>　　　　Counterclaim-defendants. | C.A. No. 05-10679-RCL |

## ANDREW WEISS'S, WEISS ASSET MANAGEMENT LLC'S, K T, INC.'S AND CVF INVESTMENTS LTD.'S FIRST SET OF INTERROGATORIES TO FORMINSTER ENTERPRISES, LTD.

Pursuant to Federal Rule of Civil Procedure 33, Andrew Weiss ("Weiss"), Weiss Asset Management LLC ("WAM"), K T, Inc. ("K T") and CVF Investments Ltd. ("CVF") (collectively, the "Discovering Parties") hereby submit the following interrogatories to Forminster Enterprises, Ltd.

## DEFINITIONS

Except as otherwise provided herein, the Discovering Parties hereby incorporate by reference all definitions in their First Set of Requests for Production of Documents to Forminster Enterprises, Ltd. as though fully set forth herein.

1.      "Identify" shall have the meanings ascribed to it in Local Rule 26.5(c)(3)–(4) and;  (a) when referring to a meeting, to state the date of the meeting, the location of the meeting, the attendees, and the subject matter addressed; and (b) when referring to a communication, to state the date the communication was made, the identity and location of the person who initiated the communication, the identities and locations of the person or persons who received the communication, and the medium (e.g., voice, electronic mail, letter, facsimile) by which the communication was made.

2.      "Persons involved in the decision making process" means any person, whether a director, officer, employee or agent of Forminster Enterprises Ltd. or a third party, consulted by Forminster Enterprises Ltd. prior to the making of a decision for the purpose of communicating about the subject matter of the decision, whether that communication was ultimately relied on or not.

## INSTRUCTIONS

1.      These interrogatories are continuing in nature and require automatic supplemental or amended responses to the extent specified in Fed. R. Civ. P. 26(e) should you or your counsel obtain further supplemental information.

2.      If any of these interrogatories cannot be answered in full, answer the interrogatory to the extent possible, specifying each reason for the inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portion.

2

3.     In answering the interrogatories, furnish all information available to you, regardless of whether or not it is based on personal knowledge or records of you, your agents or representatives of others.

4.     State which answers or parts thereof are based upon personal knowledge, and which answers or parts thereof are based upon information and belief.  For each answer or part thereof based upon information and/or belief, describe in detail and with particularity the basis for the information and/or belief.

5.     With respect to any information which you withhold, do not disclose, or assert a claim of privilege of non-disclosure, your counsel shall provide a statement which:

    (a)     states the nature of the claim of non-disclosure or privilege and sets forth the statute, rule, decision or other basis which is claimed to give rise to the privilege or other justification for the non-disclosure of the requested information; and

    (b)     a summary statement of the subject matter of the information requested or the document withheld in sufficient detail to permit the Court to rule on the propriety of the objection.

6.     Where anything has been deleted or redacted from a document produced in response to an interrogatory, specify:

    (a)     the nature of the material deleted or redacted; and

    (b)     the reason for the deletion or redaction.

7.     Where any copy or copies of any document which you produce in response to an interrogatory is/are not identical to any other copy thereof, by reason of any alterations, notes, comments, or other material contained thereon or attached thereto, or otherwise, all such non-identical copies shall be produced separately.

8.      In producing documents in response to an interrogatory, all documents which are physically attached to each other in files, shall be left so attached.  Documents which are segregated or separated from other documents whether by inclusion in binders, files, subfiles, or by use of dividers, tabs, or any other method, shall be left so segregated or separated. Documents shall be produced in the order in which they were maintained.

9.      If any information requested by this discovery was at one time in existence but is no longer in existence, or has been made unavailable in any manner, you must state the following:

(a)     identify the nature of the information and state the date on which it ceased to exist;

(b)     identify the circumstances under which it ceased to exist and the identity of all persons having knowledge of the contents thereof.

## INTERROGATORIES

1.      For each officer and director of Forminster Enterprises Ltd., please identify all other companies of which that individual is a director or officer.

2.      Please list all companies that share the mailing address Diagorou 4, Kermia Building, 6th floor, Office 601, Nicosia, P.C. 1097, Cyprus.

3.      For each past or present director of Forminster Enterprises Ltd., please state the number of hours that the director spent working on company business during each year from 2000 to 2005.

4.      Please identify each person who, directly or indirectly, owns or controls more than 10% of the shares of Forminster Enterprises Ltd., and, if that person is not a natural person, each person who, directly or indirectly, owns or controls more than 10% of the shares or interest

of that person, and if that person is not a natural person, each person who, directly or indirectly, owns or controls more than 10% of the shares or interest of that person.

5.    Please identify each communication between a director or officer of Forminster Enterprises Ltd. and another person concerning this lawsuit.

6.    Please identify each communication between a director or officer of Forminster Enterprises Ltd. and another person concerning Andrew Weiss.

7.    Please identify each communication between a director or officer of Forminster Enterprises Ltd. and another person concerning criminal charges against Andrew Weiss.

8.    Please describe in detail the relationship among Kotva a.s., Forminster Enterprises Ltd., Bonalbo Fiduciaries Ltd.; Bonalbo Group Ltd.; Bonalbo Management Ltd.; Bonalbo Group U.K. Ltd.; and Bonalbo Group Cyprus Ltd.

9.    Please describe in detail how Forminster Enterprises Ltd. makes decisions relating to its interest in Kotva a.s., identifying all persons involved in the decision making process.

10.    Please describe in detail the past and present relationship between Forminster Enterprises Ltd. and  each member of Kotva's Supervisory Board, including Martin Benda.

11.    Please describe in detail the past and present relationship between Forminster Enterprises Ltd. and each member of Kotva's board of directors.

12.    Please describe in detail the past and present relationship between Forminster Enterprises Ltd. and Richard Harazim.

Respectfully Submitted,

ANDREW WEISS, WEISS ASSET
MANAGEMENT LLC, K T, INC. and CVF
INVESTMENTS LTD.

By their attorneys,

_____
Edward P. Leibensperger (BBO# 292620)
Benjamin A. Goldberger (BBO# 654357)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts  02109-1775
(617) 535-4000

Dated: December ___, 2005

## CERTIFICATE OF SERVICE

I, Benjamin A. Goldberger, hereby certify that on the _____ day of December, 2005, a true
and correct copy of the foregoing document was served by hand on counsel for all other parties.

_____
Benjamin A. Goldberger

6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANDREW WEISS and WEISS ASSET )<br>MANAGEMENT, LLC, )<br>)<br>Defendants. )<br>_____ )<br>)<br>ANDREW WEISS, WEISS ASSET )<br>MANAGEMENT LLC, K T, INC. and CVF )<br>INVESTMENTS, LTD., )<br>)<br>Counterclaim-plaintiffs, )<br>)<br>v. )<br>)<br>KOTVA a.s., MARTIN BENDA, RICHARD )<br>HARAZIM, FORMINSTER ENTERPRISES, )<br>LTD., SPV CO and JOHN DOES 1–5, )<br>)<br>Counterclaim-defendants. )<br>_____ ) | C.A. No. 05-10679-RCL |

## ANDREW WEISS'S, WEISS ASSET MANAGEMENT LLC'S, K T INC.'S AND CVF INVESTMENTS LTD.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO FORMINSTER ENTERPRISES, LTD.

Pursuant to Federal Rule of Civil Procedure 34, Andrew Weiss ("Weiss"), Weiss Asset

Management LLC ("WAM"), K T, Inc. ("K T") and CVF Investments Ltd. ("CVF") hereby

request that Forminster Enterprises, Ltd. produce for inspection and copying the documents

listed below at the offices of McDermott Will & Emery LLP, 28 State Street, Boston, MA 02109

within fourteen days of the date of service of this request or at such other time and place as may

be mutually agreed upon by the parties.

## DEFINITIONS

For purposes of this request, the following definitions shall apply:

1.      "And" shall mean and/or.

2.      "Or" shall mean and/or.

3.      "Including" shall mean "including without limitation."

4.      "Concerning", "Person", "Communication" shall have the meanings ascribed to them in Local Rule 26.5.

5.      Any entity defined or referenced herein, including Forminster Enterprises Ltd and Kotva a.s., shall mean the entity itself and its present and former officers, directors, agents, partners, employees, attorneys, accountants, consultants and representatives of any kind, and all parent companies, subsidiaries, divisions, affiliates, predecessors, successors and all other persons acting or purporting to act on behalf of any of the foregoing.

6.      The term "document" is used herein in its customary and broadest sense under Federal Rule of Civil Procedure 34(a)(1) and Local Rule 26.5(c)(2), and includes any form of information, be it written, recorded, photographed, or otherwise, however stored, be it on paper, disk, tape, film, electronically, analog recording medium, digital recording medium or otherwise, in your actual or constructive possession, custody, care, or control, that relates or refers, directly or indirectly, in whole or in part, to any of the subjects listed in this request or to any other matter relevant to the issues in this request.  The term "document" or "documents" also includes all drafts that are not identical with the final version, and all copies that are not identical with the original.

7.      The term "date," as well as any date specifically set forth herein, means and refers to the date, month and year, if ascertainable, or if not, the best approximation of the date (based upon relationship with other events).

2

8.      As used herein, the singular shall always include the plural and vice versa; and the present tense shall always include the past tense and vice versa.

9.      "Department Store" as used herein shall mean one or more of the following parcels of real estate: (a) the real estate referred to as the "Shopping Centre" in the Complaint; (b) building No. 656 (commercial facility), city district Stare Mesto, situated on lot No. 680; (c) building without any allocated number (civic facility), city district Stare Mesto, situated on lot No. 1018/2; (d plot No. 680 (built-up area and court) with an area of 4385 sq.m.; (e) plot No. 683/1 (other area) with an area of 851 sq.m.; (f) plot No. 683/2 (other area) with an area of 2963 sq.m.; (g) plot No. 683/3 (other area) with an area of 2 sq.m.; (h) plot No. 690/2 (other area) with an area of 25 sq.m.; (i) plot No. 690/3 (other area) with an area of 49 sq.m.; (j) plot No. 690/4 (other area) with an area of 9 sq.m.; (k) plot No. 1018/2 (built-up area and court) with an area of 1 sq.m.

10.     "Czech law enforcement" shall mean the police or prosecutors of the Czech Republic and any political subdivision or local authorities thereof.

11.     "Irish Investors" shall have the same meaning as that term is used in the Complaint.

## INSTRUCTIONS

1.      Documents include those which are in your actual or constructive possession, custody, care, or control, whether or not such documents were received from or disseminated to any other person or entity, including but not limited to attorneys, accountants, or employees.

2.      The obligation to produce the documents sought by this Document Request is of a continuing nature pursuant to Federal Rule of Civil Procedure 26(e).  If at any time after responding to this Request, you should acquire actual or constructive possession, custody, care,

or control of any additional documents within the scope of a particular Document Request, you must identify such documents to the attorneys for the requesting parties within ten (10) days of their receipt.

      3.      In the event that any responsive document was, but is no longer, in your actual or constructive possession, custody, care, or control, state what disposition was made of it, when, and the reason for such disposition.

      4.      In the event that the document whose production has been requested has been destroyed, state the reason for the document's destruction and the date on which the document was destroyed; identify fully the person in whose possession, custody, care, or control the document was when it was destroyed; and identify fully the person who destroyed the document or who ordered its destruction.

      5.      The final version and each draft of each document should be produced separately. Each original and each non-identical copy (bearing marks or notations not found on the original) of each final version and draft of each document should be produced separately.

      6.      If you claim that any document requested is privileged or constitutes attorney-client work product, submit on the time and date of production a written statement for each document withheld sufficient to evaluate the claim of privilege or work product, including information that:

            (a)      identifies the person who prepared or authored the documents and all recipients or addressees, including recipients of copies;

            (b)      specifies the date on which the document was prepared or transmitted;

            (c)      describes the nature of the document (*e.g.*, letter, memorandum notice, *etc.*);

4

    (d)       identifies the subject matter of the document;

    (e)       if the document refers or relates to a meeting or conversation, identifies all persons who were present at or parties to the meeting or conversation and describes who those persons are; and

    (f)       sets forth the nature of and basis for the privilege asserted.

### DOCUMENTS TO BE PRODUCED

1.      Such documents as are sufficient to identify all directors, officers, employees and agents of Forminster Enterprises, Ltd. from January 1, 2003 to present.

2.      Organizational charts for Forminster Enterprises, Ltd. from January 1, 2003 to present.

3.      All documents concerning communications between or among Forminster Enterprises Ltd., including any of its directors, officers, employees or agents; Martin Benda; Richard Harazim; or Kotva a.s., including telephone records, for the period January 1, 2003 to present.

4.      All documents concerning the decision to initiate criminal charges against Andrew Weiss in the Czech Republic.

5.      All documents concerning this lawsuit or the decision to initiate this lawsuit.

6.      All documents concerning board meetings of Forminster Enterprises Ltd., including minutes and agendas, for the period from January 1, 2003 to present.

7.      All documents concerning communications between Forminster Enterprises Ltd. and a person or persons in Massachusetts, including but not limited to phone logs and phone bills.

8.      All documents concerning agreements between or among any two or more of the following: (a) Kotva a.s.; (b) Forminster Enterprises Ltd.; (c) Martin Benda; and (d) Richard Harazim.

9.      All documents concerning financial transactions between or among any two or more of the following: (a) Kotva a.s.; (b) Forminster Enterprises Ltd.; (c) Martin Benda; and (d) Richard Harazim.

Respectfully Submitted,

ANDREW WEISS, WEISS ASSET MANAGEMENT LLC, K T, INC. and CVF INVESTMENTS LTD.

By their attorneys,

_____
Edward P. Leibensperger (BBO# 292620)
Benjamin A. Goldberger (BBO# 654357)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts  02109-1775
(617) 535-4000

Dated: December ___, 2005

## CERTIFICATE OF SERVICE

I, Benjamin A. Goldberger, hereby certify that on the ___day of December, 2005, a true and correct copy of the foregoing document was served by hand on counsel for each other party.

_____
Benjamin A. Goldberger

6

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s., <br><br>         Plaintiff, <br><br> v. <br><br> ANDREW WEISS and <br> WEISS ASSET MANAGEMENT, LLC, <br><br>         Defendants. | |
| ANDREW WEISS; <br> WEISS ASSET MANAGEMENT, LLC; <br> K T, INC.; and <br> CVF INVESTMENTS, LTD., <br><br>         Counterclaim-Plaintiffs, <br><br> v. <br><br> KOTVA a.s.; MARTIN BENDA; <br> RICHARD HARAZIM; <br> FORMINSTER ENTERPRISES, LTD.; <br> SPV CO and JOHN DOES 1-5, <br><br>         Counterclaim-Defendants. | Civil Action No. 05-10679-RCL |

**FORMINSTER ENTERPRISES, LTD.'S MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS COUNTERCLAIM FOR LACK OF PERSONAL JURISDICTION**

## I.     INTRODUCTION

Forminster Enterprises, Ltd. ("FEL") is a company organized under Cyprus law, with a

principal place of business in Cyprus, and has no contacts whatsoever in or with the

Commonwealth or District of Massachusetts. Accordingly, FEL moves pursuant to Federal Rule

of Civil Procedure 12(b)(2) to dismiss the counterclaim of Andrew Weiss, Weiss Asset

Management, LLC, K T, Inc., and CVF Investments, Ltd. (collectively, the "Counterclaim-Plaintiffs") for lack of personal jurisdiction.  The exercise of personal jurisdiction over FEL would violate both the Massachusetts long-arm statute and the Due Process Clauses of the Fifth and Fourteenth Amendments of the Constitution.

The Counterclaim Plaintiffs bear the burden of demonstrating that the Massachusetts long-arm statute and the Due Process Clause of the United States Constitution permit the Counterclaim Plaintiffs to bring their claims against FEL in a Massachusetts court.  *See Dodora Unified Communications, Inc. v. Direct Information Pvt. Ltd.*, 379 F.Supp.2d 10, 12-13 (D. Mass. 2005).  They cannot meet this burden because FEL has never done or solicited any business in United States, has no material contacts with the United States, and has committed no alleged, let alone actual, act in the United States that has any connection whatsoever with this litigation.  Even from the face of the Counterclaim it is apparent that the causes of action alleged in the Counterclaim do not arise out of any business or other activity by FEL in or directed toward the Commonwealth of Massachusetts.  To the contrary, the Counterclaim outlines events that allegedly occurred in the Czech Republic, that do not constitute acts of FEL, and that have no connection to Massachusetts in any manner that would satisfy the requirements of personal jurisdiction.

Perhaps in implicit recognition of the complete absence of meaningful jurisdictional contacts, the Counterclaim Plaintiffs seek to drag FEL, a 55% shareholder of Plaintiff Kotva, a.s. ("Kotva"), into this dispute by a sleight of hand: Counterclaim Plaintiffs attach a fanciful label of their own making -- "the Forminster Group" -- to an assortment of alleged actions in the Czech Republic of Kotva, its officers and the mysterious "John Does 1-5," and, based on this

misleading characterization, asserts an array of common law claims and a claim under Massachusetts General Laws Chapter 93A.

In effect, the Counterclaim-Plaintiffs rest jurisdiction over FEL solely on the fact that FEL is a majority shareholder in Kotva, a basis which has never been sufficient for asserting jurisdiction. *See Kleinerman v. Morse*, 533 N.E.2d 221, 224 (Mass. App. Ct. 1989) ("ownership alone of the controlling stock of a subsidiary does not confer jurisdiction" in Massachusetts over the controlling stock owner). As demonstrated by the accompanying affidavit, FEL and Kotva are wholly separate and independent entities, each having its own business, governance structure, decision making authority, directors, employees, assets and other components of corporate business organization. The actions and decisions of Kotva, therefore, cannot be imputed to FEL. Accordingly, FEL respectfully requests that it be dismissed from this action for lack of personal jurisdiction.

## II.    **BACKGROUND**

The utter absence of meaningful contacts between FEL and Massachusetts and the United States, or of evidence or even serious allegation that FEL and Kotva are *alter egos* of each other for purposes of jurisdiction, requires that the Counterclaim against FEL be dismissed.

### A.    **Forminster Enterprises, Ltd. has no contacts with Massachusetts or the United States of America.**

FEL is a company located in Nicosia, Cyprus and is incorporated under Cypriot Companies Law as a limited liability company. *See Exhibit 1* (David Aff.) ¶¶ 3, 5. FEL is primarily an investment company, and it is overseen by four directors. *Id.* ¶ 4, 6. All four directors are Cypriot nationals who have no business reasons to travel to the Massachusetts or to the United States. *Id.* ¶ 6-11. FEL has no address, telephone number, offices, or agents anywhere in the United States. *Id.* ¶ 7, 10. It does not own, rent, or use any property anywhere

3

in the United States. *Id.* It is not registered with any agency of the Commonwealth of Massachusetts or with any agency of the United States to conduct any business anywhere in the Commonwealth or elsewhere in the United States. *Id.* FEL has never solicited any business anywhere in the United States, nor has it been a party to any lawsuit in the United States. *Id.* ¶¶ 8, 9, 11, 12. In sum, FEL's activities have never purposefully reached the United States or the Commonwealth of Massachusetts in any way.

### B.    FEL and Kotva Are Separate Companies

Even reading the Counterclaim generously in a light most favorable to the conspiracy-theory of the Counterclaim-Plaintiffs, the suggestion "on information and belief" that some unspecified assortment of John Does and Kotva employees had some form of unspecified communication by which FEL caused Kotva to bring this action in Massachusetts, cannot create personal jurisdiction over FEL. See Counterclaim ¶¶ 38, 39. As set forth in the accompanying affidavit and summarized below, FEL may be a shareholder of Kotva but it did not cause or instruct that Czech company to bring this action, nor is Kotva in any way an *alter ego* of FEL.

As part of its investment portfolio, FEL holds 55% of the shares of Kotva, a Czech corporation. *See Exhibit 1* (David Aff.) ¶ 13. Kotva is a public company whose shares are traded on the Czech stock exchange. *Id.* ¶ 14. Kotva's decision-making processes are separate and independent of FEL. *Id.* ¶¶ 18-19, 23-25. Kotva and FEL have separate boards of directors, and no one who sits on FEL's board also sits on Kotva's board.[1] *Id.* ¶ 15. Similarly, FEL and Kotva do not have any common officers or employees. *Id.* ¶ 19. Kotva and FEL have separate bookkeeping and make separate tax filings. *Id.* ¶¶ 17, 18.

---

[1] Richard Harazim and Martin Benda were previously members of the four person FEL board from November 1999 to October 2002. *Id.* at ¶¶ 20-21. This fact is of no import for purposes of the question of jurisdiction.

FEL did not instruct Kotva to file its suit against Weiss, nor did FEL instruct Kotva to file a civil or criminal complaint against Weiss. *Exhibit 1* (David Aff.) ¶ 22. FEL was not involved in or even aware of the negotiations that the Counterclaim-Plaintiffs allege took place between Mr. Harazim, Mr. Benda, and Weiss for the transfer of Kotva's shares. *Id.* at ¶¶ 22-24. Kotva's decisions in connection with this lawsuit have been independently made and are not attributable to FEL.

C.    **None of the Allegations in The Counterclaim Involve FEL's Conduct in or Contacts With Massachusetts.**

The Counterclaim's allegations of any specific activity by FEL, as opposed to counterclaim plaintiff's fanciful creation, "the Forminster Group," are sparse. The assertions in the counterclaim outline two sets of events: 1) the sale of a department store located in Prague by Kotva to an Irish company; and 2) the transfer of Kotva's shares to various entities in the mid-1990s. As for FEL in particular, the Counterclaim alleges few specifics: FEL allegedly acquired a majority of Kotva shares in 1995 and 1996, *Counterclaim* ¶¶ 18, 44; FEL allegedly nominated Martin Benda and Richard Harazim to Kotva's board, *Counterclaim* ¶¶ 11, 12; and "on information and belief," FEL allegedly instructed Mr. Benda and Mr. Harazim to cause Kotva to file suit against Andrew Weiss and Weiss Asset Management, *Counterclaim* ¶ 38. Even if true, these allegations about a majority shareholder would not support jurisdiction. Moreover, these allegations are made without any factual support, and the attached affidavit demonstrates that FEL did <u>not</u> instruct Kotva to file a lawsuit against Weiss in Massachusetts. *Exhibit 1* (David Aff.) ¶ 25.

Following the Counterclaim Plaintiffs' half-hearted effort to tie FEL to the filing of this action in Massachusetts, they lurch to allegations that are described as occurring almost a decade ago concerning how FEL allegedly acquired shares in Kotva. *Counterclaim* ¶¶ 42-49. The

counterclaim sketches out alleged actions taken by management of a Czech investment fund called "Trend" in which Counterclaim-Plaintiff CVF Investments, Ltd. owned shares. *Counterclaim* ¶ 16.  Apparently relying on a translation of 1997 and 1998 articles from Czech tabloids, the Counterclaim sets forth a series of allegations ominously entitled "the Tunneling of the Assets of the Trend Fund." *Counterclaim* ¶¶ 42-48.  The general assertion of this section in the Counterclaim appears to be that FEL's acquisition of a majority of Kotva's shares did not comply with Czech law. *Counterclaim* ¶¶ 42, 45.  Again, these allegations are false, but for purposes of jurisdiction over FEL in Massachusetts, they are irrelevant.

## III.    ARGUMENT

### A.    The Counterclaim-Plaintiffs Fail to Make a Prima Facie Showing of Personal Jurisdiction Over FEL.

#### 1.    The Counterclaim-Plaintiffs' Allegations Do Not Establish Any Connection Between FEL and Massachusetts

This Court has personal jurisdiction over FEL only if the counterclaim-plaintiffs can show that FEL is within the reach of the Massachusetts long-arm statute, Mass. Gen. Laws. ch. 223A, § 3, and if the exercise of personal jurisdiction complies with the due process requirements of the Fifth and Fourteenth Amendments. *See Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 204 (1st Cir. 1994).  The Counterclaim-Plaintiffs bear the burden to demonstrate jurisdictional prerequisites with <u>evidence</u>, not mere allegations. *See Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671, 674-75 (1st Cir. 1992); *Moldflow Corp. v. Simcon, Inc.*, 296 F.Supp.2d 34, 38 (D.Mass. 2003).  "It has long been the rule of [the First Circuit] that plaintiffs may not rely on unsupported allegations in their pleadings to make a *prima facie* showing of personal jurisdiction." *Boit*, 967 F.2d at 675.  Here, the counterclaim-plaintiffs' allegations fail to assert a sufficient connection between Massachusetts and FEL to satisfy either the long-arm

statute or the Due Process Clause.  Moreover, the few allegations about FEL are incorrect and unsupported.

<div style="margin-left:2em;">

a.    *FEL's Alleged Acts Are Not Within the Massachusetts Long-Arm Statute's Reach*

</div>

The provisions of the Massachusetts long-arm statute relevant here permit jurisdiction over a defendant if the cause of action arises from the defendant or its agent: "(a) transacting any business" in Massachusetts, or "(c) causing tortious injury by an act or omission" in Massachusetts.  Mass. Gen. Laws ch. 223A, § 3.  In order for a party to "transact[] any business" in Massachusetts, it must "purposefully" avail itself of the privilege of doing business in Massachusetts.  *See "Automatic" Sprinkler Corp. of America v. Seneca Foods Corp.*, 280 N.E.2d 423, 426 (Mass. 1972).  If the cause of action asserted against the defendant arises out of acts which the defendant or its agent committed wholly outside of Massachusetts, the long-arm statute grants jurisdiction over the defendant only if the defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth."  *Id.* § 3(d).

FEL has neither transacted any business in Massachusetts, nor has it caused tortious injury by an act or omission in Massachusetts.  As noted, the Counterclaim contains only four allegations of specific acts by FEL:

1.    In the 1990s, Forminster acquired a majority of Kotva shares from various individuals and/or entities. *Counterclaim* ¶¶ 18, 44.

2.    "Forminster nominated Benda to Kotva's board and used its control over a majority of Kotva's shares to secure his election." *Counterclaim* ¶ 11.

3.    "Forminster nominated Harazim to Kotva's board and used its control over a majority of Kotva's shares to secure his election." *Counterclaim* ¶ 12.

4.    "On information and belief, Benda and Harazim personally caused Kotva a.s. to bring this lawsuit, after receiving instructions to do so from Forminster and John Does 1-5." *Counterclaim* ¶ 38.

Only the fourth of these alleged acts has any relationship whatsoever to Massachusetts. However, not only is this allegation baseless – and the accompanying affidavit shows it to be untrue – but even if it were true that FEL urged Kotva to sue Weiss and Weiss Asset Management, that is not an act through which FEL purposefully availed itself of this forum. Kotva's suit against Weiss and Weiss Asset Management seeks to vindicate rights of Kotva, not FEL. The suit is an act that Kotva carried out on its own behalf, not as an "agent" of FEL.

FEL, therefore, does not "transact business" nor has it tortiously caused injury in Massachusetts as required by subsections 3(a) and 3(c) of the Massachusetts long-arm statute. FEL has not availed itself of this forum, does not do business in Massachusetts, and does not derive profit from Massachusetts. Under no provisions of the long-arm statute can FEL demonstrate a basis for jurisdiction over FEL.

b.    *The Due Process Clause of the Constitution Also Prohibits the Exercise of Personal Jurisdiction Over FEL*

Even if the allegations contained in the Counterclaim somehow fall within an expansive reading of the Massachusetts long-arm statute, the Due Process Clause of the Constitution bars a finding of personal jurisdiction on the facts here. Under the Constitution, the Massachusetts District Court may exercise personal jurisdiction over a party only if: (1) the claims asserted against it arise out of or relate to the party's activities in Massachusetts; (2) the party purposefully availed itself of the privilege of conducting activities in Massachusetts; and (3) the exercise of jurisdiction is consonant with "fair play" and "substantial justice" in light of five "gestalt factors." *See Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir. 1994). The five gestalt factors are: "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the

8

dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial

system's interest in obtaining the most effective resolution of the controversy, and (5) the

common interests of all sovereigns in promoting substantive social policies." *Id.* at 63-64.

The counterclaim fails to satisfy the due process clause's requirements of in-state activity

and purposeful availment. As discussed above, the counterclaim does not assert, nor could it,

that FEL has engaged in any activity inside Massachusetts. Similarly, the counterclaim advances

no claim that FEL has purposefully availed itself of the privilege of conducting business in

Massachusetts. The standards for showing activity or purposeful availment of conducting

business in Massachusetts largely track those demanded as part of the Massachusetts long-arm

statute analysis, and for the reasons discussed above, the Counterclaim-Plaintiffs fail to satisfy

these standards. *See Good Hope Industries, Inc. v. Ryder Scott Co.*, 389 N.E.2d 76, 79-80 (Mass.

1979) (explaining that the analysis under the long-arm statute and that under the due process

clause "tend to converge").

The gestalt factors further confirm that the exercise of personal jurisdiction over FEL

would fall short of the Constitutional requirements of due process. The First Circuit has held

that the gestalt factors function to ensure that, "A distant court cannot constitutionally exercise *in*

*personam* jurisdiction over a non-resident defendant at the behest of a plaintiff who can muster

only the most tenuous showings of relatedness and purposefulness if … forcing the defendant to

defend in the forum would be plainly unreasonable." *Ticketmaster-New York, Inc. v. Alioto*, 26

F.3d 201, 212 (1st Cir. 1994). This holding is directly applicable here. FEL is a small, privately

held entity based in Cyprus. None of FEL's employees or principals have a residence in

Massachusetts nor do they have any business reason to travel here. The Counterclaim-Plaintiffs

show no reason why courts in the Czech Republic or Cyprus would not be available to adjudicate

issues arising from alleged activities in the Czech Republic.  While there is some indication that Weiss may be reluctant to travel to the Czech Republic because of a pending criminal matter against him there, that reluctance would not be fair grounds to compel FEL to defend against Weiss's tenuous conspiracy theories in this forum.

      c.    *The Counterclaim Plaintiffs' Effort to Compensate for the Absence of Relevant Allegations About FEL By Blurring the Alleged Actions of Other Counterclaim Defendants Into A Fictional "Forminster Group" Fails to Show Jurisdiction Over FEL.*

The Counterclaim employs an acknowledged fiction to try to impute the actions of the other Counterclaim-Defendants, particularly those of Kotva executives Martin Benda and Richard Harazim, to FEL.  The Counterclaim makes the completely unsupported assertion that the Counterclaim-Defendants Martin Benda, Richard Harazim, FEL, SPV Co., and John Does 1-5 were engaged in a "conspiracy."  *Counterclaim* ¶¶ 13-14.  The Counterclaim offers no evidence or allegations about when, where, or how this conspiracy sprung into existence.  Instead, it seeks to create the illusion that these individuals and entities all acted in concert by referring to the counterclaim defendants as the "Forminster Group" although no such group or entity actually exists.  The counterclaim then uses this fictional "Forminster Group" to make it appear as though the actions of any one of the counterclaim defendants can be attributed to all of them.  For example, the counterclaim asserts that "the Forminster Group [used] its influence over Czech law enforcement to cause a contrived criminal charge of blackmail to be brought against Weiss."  *Counterclaim* at ¶ 33.  In support of this claim that the so-called "Forminster Group" had engaged in this conduct, the Counterclaim states that "Harazim is quoted in the Czech press as having 'filed a criminal complaint.'"  *Counterclaim* at ¶ 18.  Even if Mr. Harazim filed such a complaint, there is no evidence or allegation to support the conclusion that FEL (or even any of the other Counterclaim-Defendants) was involved in any way in his decision to do so.  To the

contrary, in the affidavit by FEL director Rena David, she states that FEL played no role in any decisions Mr. Harazim may have made about filing a criminal complaint. *See Exhibit 1* (David Aff.) ¶¶ 22, 25. This deceptive strategy of including all of the Counterclaim-Defendants in the acts of one by attributing the acts to the "Forminster Group" is used repeatedly throughout the counterclaim. *See e.g., Counterclaim* ¶¶ 23, 26, 35, 38, 40, 45, 50, 52, 53-58.

Since the Counterclaim-Plaintiffs cannot offer any evidence to support their claim that the Counterclaim-Defendants were engaged in a deliberate, unitary effort, none of their allegations relating to the acts of Mr. Harazim, Mr. Benda, or John Does 1-5 can be attributed to FEL. The counterclaim advances no allegations to support its underlying assumption that Mr. Benda, Mr. Harazim, FEL, SPV Co., and John Does 1-5 came together, decided on a common purpose, or otherwise acted in a manner which would allow the actions of one to be imputed to the others. Indeed, only two allegations relate FEL to the other counterclaim defendants in any way:

> 11.     Forminster nominated Benda to Kotva's board and used its control over a majority of Kotva's shares to secure his election. Benda also is or was a member of the board of Forminster and an agent of Forminster.
>
> 12.     Forminster nominated Harazim to Kotva's board and used its control over a majority of Kotva's shares to secure his election. Harazim also is or was a member of the board of Forminster and an agent of Forminster.

*Counterclaim* ¶¶ 11-12. Even assuming that these allegations were true, the fact that a majority shareholder would use its majority position to vote for board members it preferred, by itself, merely is evidence of normal and acceptable business practice, not of any conspiracy. The counterclaim does not explain why it asserts that Mr. Benda and Mr. Harazim were "agents" of FEL, it does not offer any evidence or allegations establishing when and how they acted as agents of FEL, nor does it explain what it means by that broad assertion. In sum, actions taken

by Mr. Harazim, Mr. Benda, or John Does 1-5 cannot serve as a basis for personal jurisdiction over FEL.

**B.    FEL's Status as a Majority Shareholder in Kotva Is an Insufficient Basis for Personal Jurisdiction.**

The counterclaim-plaintiffs' effort to cure the insufficiency of FEL's contact with Massachusetts by suggesting that Kotva is a "shell" corporation and a mere *alter ego* of FEL is both inadequately pled and false. While FEL is Kotva's largest shareholder, FEL's status as majority shareholder is insufficient to assert personal jurisdiction over FEL simply because the company in which it holds a 55% share has submitted to jurisdiction in Massachusetts. *See Kleinerman v. Morse*, 533 N.E.2d 221, 224 (Mass. App. Ct. 1989). A majority shareholder, or even an outright parent company, is not subject to the jurisdiction of a court merely because the company in which it holds a controlling share is subject to jurisdiction in the forum. *See Alvarado-Morales v. Digital Equipment Corp.*, 843 F.2d 613, 616 (1st Cir. 1988). Even if a plaintiff can show that a defendant company has "overall financial and policy control" over a subsidiary, this does not render the defendant company subject to personal jurisdiction wherever its subsidiary is subject to jurisdiction. *See Andersen v. Diorio*, 349 F.3d 8, 12 (1st Cir. 2003). Instead, the fact of the parent company's influence over the subsidiary "is inherent in the relationship" and, by itself, is an insufficient basis for extending personal jurisdiction from the subsidiary to the parent. *Id.*

FEL's relationship with Kotva does not fall into that rare and narrow set of circumstances which would allow the Counterclaim-Plaintiffs to assert that Kotva is a "sham" or functions as an *alter ego* of FEL. *Andersen*, 349 F.3d at 12 (such circumstances require an improper control so pervasive as to destroy the subsidiary's status as a separate entity). If the Counterclaim-Plaintiffs seek to make such a showing, they would need to meet the high standard associated

with "piercing the corporate veil" to reach a parent or controlling shareholder. *See e.g.,*

*Alvarado-Morales*, 843 F.3d at 616-17; *Northern Laminate Sales, Inc. v. Matthews*, 249

F.Supp.2d 130, 139 (D.N.H. 2003); *Giuliano v. Nations Title, Inc.*, 938 F.Supp. 78, 81 (D. Mass.

1996). However, "Massachusetts permits disregard of the corporate form only in rare

situations." *Giuliano*, 938 F.Supp. 78 (D. Mass. 1996). *See also United Electric Radio and*

*Machine Workers of America v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1091-92 (1st Cir.

1992) (finding plaintiffs' evidence insufficient to pierce veil to assert personal jurisdiction).

The Supreme Judicial Court has allowed courts to disregard the corporate form and

separateness of a subsidiary in only two circumstances:

> (a) when there is active and direct participation by the representatives of one
> corporation, apparently exercising some form of pervasive control, in the
> activities and there is some fraudulent or injurious consequence of the
> intercorporate relationship, or (b) when there is a confused intermingling of
> activity of two or more corporations engaged in a common enterprise with
> substantial disregard of the separate nature of the corporate entities, or serious
> ambiguity about the manner and capacity in which the various corporations and
> their respective representatives  are acting.

*My Bread Baking Co. v. Cumberland Farms, Inc.*, 233 N.E.2d 748, 752 (Mass. 1968).  Since

neither the counterclaim's allegations nor evidence begin to support a finding that FEL's

relationship to Kotva is marked by either pervasive and fraudulent control or by a "confused

intermingling of activity", the Counterclaim-Plaintiffs cannot base jurisdiction over FEL on

Kotva's decision to file this lawsuit in Massachusetts.  Indeed, the evidence is to the contrary.

In the affidavit submitted with this memorandum, FEL offers numerous facts

demonstrating that Kotva is an independent entity, including: 1) Kotva's shares are publicly

traded on the Czech stock exchange, 2) Kotva and FEL have separate boards of directors, 3) no

one who sits on FEL's board of directors also sits on Kotva's board, 4) Kotva and FEL do not

share bookkeeping, 5) Kotva and FEL make separate tax filings, 6) Kotva and FEL have separate

decision-making authority, an 6) Kotva currently does not have officers or employees who are also employed with FEL. *Exhibit 1* (David Aff.) ¶¶ 14-19.

## CONCLUSION

FEL's contacts with Massachusetts are insufficient to support a finding of personal jurisdiction. The fact that FEL is the majority shareholder in Kotva does not cure this lack of connection between FEL and this forum. Accordingly, the counterclaims against FEL should be dismissed.

Respectfully submitted,

FORMINSTER ENTERPRISES, LTD.

by its attorneys,

/s/ Jeffrey D. Clements

Jeffrey D. Clements, BBO #632544
Ingrid S. Martin, BBO #653632
Clements & Clements, LLP
50 Federal Street
Boston, MA 02110
617- 451-1800

DATED: November 14, 2005

### CERTIFICATE OF SERVICE

I, Jeffrey D. Clements, hereby certify that a copy of the foregoing document was served by electronic filing to counsel of record for the Counterclaim-Plaintiffs on November 14, 2004

/s/ Jeffrey D. Clements

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KOTVA a.s.,

        Plaintiff,

v.

ANDREW WEISS and
WEISS ASSET MANAGEMENT, LLC,

        Defendants.

ANDREW WEISS;
WEISS ASSET MANAGEMENT, LLC;
K T, INC.; and
CVF INVESTMENTS, LTD.,

        Counterclaim-Plaintiffs,

v.

KOTVA a.s.; MARTIN BENDA;
RICHARD HARAZIM;
FORMINSTER ENTERPRISES, LTD.;
SPV CO and JOHN DOES 1-5,

        Counterclaim-Defendants.

Civil Action No. 05-10679-RCL

**FORMINSTER ENTERPRISES, LTD.'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS COUNTERCLAIM
FOR LACK OF PERSONAL JURISDICTION**

Forminster Enterprises, Ltd. ("FEL") has moved to dismiss the counterclaims asserted

against it because it is a Cypriot company that has no contact with Massachusetts or the United

States which would allow this Court to exercise personal jurisdiction over FEL.  In their

opposition to FEL's motion, the counterclaim plaintiffs – Andrew Weiss; Weiss Asset

Management, LLC; K T, Inc.; and CVF Investments, Ltd. (collectively the "Weiss Parties") –

concede that FEL has no meaningful contacts with this forum. Rather than show any factual basis for asserting jurisdiction over FEL, the Weiss Parties make broad conclusory allegations of three dubious theories by which, the Weiss Parties argue, the Court should go to extraordinary lengths to summon a Cypriot company into this jurisdiction.

First, the Weiss Parties urge the Court to find that Richard Harazim is FEL's "agent" and that his alleged acts are sufficient to render Harazim, and then by some stretching, FEL, subject to the personal jurisdiction of this Court. Second, they assert – not only without evidence but contrary to the evidence in the record – that Kotva a.s. ("Kotva"), a publicly traded company, is a "shell," and that Kotva's corporate decision to file suit against Andrew Weiss and Weiss Asset Management in Massachusetts can somehow be attributed to FEL, Kotva's majority shareholder. Finally, the Weiss Parties fall back on a "conspiracy theory" of personal jurisdiction that the First Circuit has expressly declined to recognize, and that at least one District Court has summarized as "frivolous". *See In re New Motor Vehicles Canadian Export*, 307 F. Supp. 2d 145, 157-58 (D. Me. 2004).

None of these theories create jurisdiction over FEL, and none are supported with evidence. Instead of providing relevant facts, or even sufficient allegations, to support their various theories of personal jurisdiction, the Weiss Parties resort to mischaracterizations and insults about FEL, none of which support any basis for personal jurisdiction over FEL. The Weiss Parties' effort to drag FEL into a lawsuit to which it has no connection other than that it is the majority shareholder of Kotva should be rejected, and FEL dismissed for lack of personal jurisdiction.

A.    **The Weiss Parties Have Not Offered Evidence that Harazim**
       **Is An "Agent" of FEL Nor Does the Alleged Agency Create Jurisdiction**

The Weiss Parties' attempt to attribute alleged acts of Harazim to FEL fails because the

Counterclaim's allegations do not support the conclusion that Harazim acted as an agent of FEL.

*See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 55-60 (1st Cir.

2002) (finding that plaintiff had offered sufficient facts to support finding that defendant

subjected itself to jurisdiction in Massachusetts through the acts of its agent); *Romak USA, Inc. v.

Rich*, 384 F.3d 979, 985 (8th Cir. 2004) (finding that "a party who relies upon the authority of an

agent has the burden of proof regarding both the fact of the agency relationship and the scope of

the agent's authority").  Under Massachusetts law, an agency relationship "results from the

manifestation of consent by one person to another that the other shall act on his behalf and

subject to his control." *Kirkpatrick v. Boston Mut. Life Ins. Co.*, 473 N.E.2d 173, 176 (Mass.

1985).  Stated another way, an agency relationship exists only where there is "mutual consent,

express or implied, that the agent is to act on behalf and for the benefit of the principal, and

subject to the principal's control." *Theos & Sons, Inc. v. Mack Trucks, Inc.*, 729 N.E.2d 1113,

1119 (Mass. 2000).  The Weiss Parties' allegations do not show that such an agency relationship

existed between FEL and Harazim.

The Weiss Parties' agency claim rests on three alleged facts.  First, the Weiss parties

offer records from the Cypriot Ministry of Commerce which show that Harazim was a Director

of FEL in 1999 and in 2002. *See Memorandum in Opposition to FEL's Motion to Dismiss*, Ex.

B. This information is irrelevant since the Weiss Parties' counterclaims rest on transactions that

began well after Harazim ceased to be one of FEL's directors.  Similarly, the two acts that the

Weiss Parties seek to impute to FEL – Harazim's emails to Weiss and Harazim's alleged act of

filing suit against the Weiss Parties in the District of Massachusetts – also both occurred well

after Harazim ceased to be one FEL's directors. *See Counterclaim* ¶ 35 (Harazim emails sent in

2004 and 2005). Instead, the records offered by the Weiss Parties show that some time in 2002,

Harazim ceased to be a director of FEL, and since then has never returned to FEL's board. *See*

*Memorandum in Opposition to FEL's Motion to Dismiss*, Ex. B.

Second, the Weiss Parties allege that FEL "nominated Harazim to Kotva's board and

used its control over a majority of Kotva's shares to secure his election." *Counterclaim* ¶ 12.

Even if this unsupported allegation were true, the mere fact that FEL backed Harazim's election

to Kotva's board does not render him FEL's agent for all acts that he then carried out in his

capacity as a Kotva director. It also does not support a conclusion that FEL gave Harazim

authority to act as its agent in any matters affecting FEL. Instead, in his own affidavit, Harazim

states that all of his dealings with the Weiss Parties "have been in my capacity as an officer of

Kotva" and that neither he nor Kotva are "controlled by" FEL. *See Affidavit of Richard Harazim*

¶¶ 18, 14.

Third, the Weiss Parties try to shore up their agency claim by offering emails in which

Andrew Weiss and Vladimir Hoffman, "the Czech resident with whom Weiss was working,"

refer to an offer by "Forminster" to purchase shares of Kotva. *See Memorandum in Opposition*

*to FEL's Motion to Dismiss* at 6, Exs. G, H. It is not clear how self-serving or careless phrasing

by the Weiss Parties in their own e-mails would create a relevant jurisdictional fact. At best,

these emails suggest that Weiss and Hoffman suspected that FEL, as Kotva's majority

shareholder, was behind the offers to purchase Kotva shares. But such suspicions by the Weiss

Parties and their affiliates are not evidence that an agency relationship actually existed between

FEL and Harazim. Tellingly, they do not offer any email or other correspondence by Harazim to

the Weiss Parties in which he states that he is offering to purchase the Weiss Parties' shares on

FEL's behalf. Without any evidence that Harazim was authorized to act as FEL's agent purposes of any conduct relevant to the claims in this case, the Weiss Parties' agency theory of jurisdiction fails. *See Romak v. Rich*, 384 F.3d 979, 985 (8th Cir. 2004) (dismissing defendant for lack of personal jurisdiction because plaintiff failed to present evidence that persons acting within forum were "acting in the scope of their authority as personal agents" for defendant); *Wright v. City of Las Vegas*, 395 F. Supp. 2d 789, 804 (S.D. Iowa 2005) (dismissing defendant for lack of personal jurisdiction because plaintiff's "pleadings contain no manifestations by [the defendant] that [the alleged agent] could act on his behalf"); *South Alabama Pigs, LLC v. Farmer Feeders, Inc.*, 305 F. Supp. 2d 1252, 1259 (M.D. Ala. 2004) (dismissing defendant for lack of personal jurisdiction because plaintiff's "conclusory allegations that the bank acted as [defendant's] agent" were insufficient to establish necessary agency relationship with in-forum actor); *Piper v. Kassel*, 817 F. Supp. 802, 804 (E.D. Mon. 1993) (dismissing defendant for lack of personal jurisdiction because plaintiff's allegations did not establish agency relationship with in-forum actor).

Even if the Weiss Parties could establish that Harazim was acting as FEL's agent when he negotiated the possible sale of the Weiss Parties' Kotva shares, Harazim's contacts with Massachusetts during those negotiations do not support a finding of personal jurisdiction over Harazim or, by extension, over FEL. These negotiations concerned the sale of stock in a Czech company traded on the Czech stock exchange whose major asset is a department store in downtown Prague. The Counterclaim alleges that Harazim was seeking to purchase "BGO's shares", *see Counterclaim* ¶¶ 26-32, which are the Kotva shares held by counterclaim-plaintiff CVF Investments Ltd., a Cyprus corporation with its principal place of business in Nicosia, Cyprus, *see Counterclaim* ¶ 7. The Weiss Parties assert that reason that these negotiations failed

is that Harazim allegedly insisted that as part of the deal, two other Kotva shareholders would

have to drop their Czech lawsuits. *Counterclaim* at ¶ 27. Alleged negotiations in Prague about a

Prague company and possible dismissal of lawsuits pending in Prague have no connection to

Massachusetts, and it is difficult to discern what connection they have to the counterclaims.

Even as to Harazim, let alone stretching to reach FEL, the handful of emails that the Weiss

Parties claim to have read in Massachusetts is at most a "fortuitous" contact with this forum, and

is not the kind of purposeful contact which would support personal jurisdiction. *See Lyle

Richards Intern., Ltd. v. Ashworth, Inc.*, 132 F.3d 111, 113 (1st Cir. 1997) (defendant's

correspondence and telephone calls with Massachusetts plaintiff was "incidental" contact with

forum and would not support personal jurisdiction); *LaForest v. Ameriquest Mortg. Co.*, 383 F.

Supp. 2d 278 (D. Mass 2005) (defendant's correspondence with Massachusetts plaintiff did not

give rise to personal jurisdiction because they were not "purposeful" contacts with this forum).

**B.    <u>The Weiss Parties Cannot Demonstrate That Kotva Is a Sham Corporation</u>**

The Weiss Parties also cannot impute Kotva's action of bringing this lawsuit in

Massachusetts to FEL because they have offered no evidence which would support a finding that

Kotva is a shell company acting as FEL's alter ego. As outlined in FEL's motion to dismiss, the

required showing for such an "alter ego" or "piercing-the-veil" theory can be met only in rare

circumstances, none of which are present here. *See Giuliano v. Nations Title, Inc.*, 938 F. Supp.

78, 81 (D. Mass. 1996). "Ordinarily, courts respect the legal independence of a corporation" and

so long as "the corporate veil remains intact," the acts of a corporation such as Kotva cannot be

the basis for personal jurisdiction over a majority shareholder such as FEL. *Id.* at 79, *quoting

United Electrical, Radio and Machine Workers of America v. 163 Pleasant Street Corp.*, 960

F.2d 1080, 1091 (1st Cir. 1992). Here, it is undisputed that Kotva is a publicly traded

6

corporation with its own assets and bookkeeping as well as separate tax and corporate filings. Furthermore, while FEL holds approximately 55% of Kotva's shares, there are at least two other large stock holders – Ardmore Risk Management Limited owns approximately 14 % of Kotva's stock, and HSBC Bank, plc. owns approximately 11 % of the stock. *See Affidavit of Richard Harazim* ¶ 9.[1] It is also undisputed that FEL and Kotva do not share any employees or executives, and that Benda and Harazim have not been directors of FEL since sometime in 2002. There is no basis for finding that Kotva is FEL's alter ego. *See also McKesson HBOC, Inc. v. New York State Common Retirement Fund, Inc.*, 339 F.3d 1087, 1094-95 (9th Cir. 2003) (finding that it would be "unprecedented" and inappropriate to pierce the veil of a publicly traded company).

The Weiss Parties' reliance on *Kleinerman v. Morse*, 533 N.E.2d 221 (Mass. App. Ct. 1989) for their alter ego theory is misplaced. In *Kleinerman*, a New York corporation called North American Instrument Corporation ("NAMIC") established an operation called North American Fiber Optics Corporations ("NAMFO") which operated out of Worcester, Massachusetts. *Id.* at 223. NAMIC owned eighty percent of NAMFO's stock and the two companies shared a single president. *Id.* Additionally, NAMIC's vice president for research and product development was in charge of NAMFO's operations. *Id.* The Massachusetts Appeals Court found that it was appropriate to attribute NAMFO's Massachusetts operations to NAMIC because "NAMIC executives made decisions about budgets, staffing, and the scope of activities" at NAMFO. *Id.* at 224. NAMFO was functionally "a division" of NAMIC. *Id.* The Weiss Parties point to no evidence that anything about Kotva's budgeting, staffing, or day-to-day

---

[1] The Weiss Parties urge the Court to ignore the affidavits offered by the counterclaim-defendants. However, when evaluating a motion to dismiss for lack or personal jurisdiction under the *prima facie* standard, it considers "facts put forward by the defendants to the extent that they are uncontradicted." *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n.*, 142 F.3d 26, 34 (1st Cir. 1998).

operations would suggest that Kotva operates as such a division of FEL. On the contrary, the evidence shows that FEL ownership of 55% of the shares of Kotva, a public company, reflect a typical relationship between a majority shareholder and a company in which it holds stock. In *Kleinerman*, the Massachusetts Appeals Court expressly remarked that such an "ownership" relationship alone could not support personal jurisdiction over the majority shareholder. *Id.*

**C.    The Conspiracy Theory of Personal Jurisdiction is Not Viable as a Matter of Law and Cannot Support the Weiss Parties' Claims of Jurisdiction**

The Weiss Parties' argument that this Court should apply some kind of "conspiracy theory" of personal jurisdiction to FEL and the other counterclaim-plaintiffs fails as a matter of law and fact. Under this theory, this Court would have personal jurisdiction over FEL if the Weiss Parties could show that FEL was part of a conspiracy and that substantial acts in furtherance of that conspiracy occurred in Massachusetts. *See Davis v. A & J Electronics*, 792 F.2d 74, 75 (7th Cir. 1986) (finding theory did not apply where it was not expressly included in long-arm statute). In *Glaros v. Perse*, 628 F.2d 679, 682 (1st Cir. 1980), the First Circuit expressly declined to adopt such a theory of personal jurisdiction. In *Glaros*, the First Circuit noted that "some courts have recognized a 'conspiracy theory of personal jurisdiction," but it found that the requirements for this theory were not met by the plaintiff in *Glaros*. *Glaros*, 628 F.2d at 682. The First Circuit then went on to stress that by discussing cases that had accepted such a "conspiracy theory of personal jurisdiction" it did not "mean to imply that we would adopt [this] rather liberal approach to conspiracy pleading, or to decide that we would recognize a conspiracy theory of personal jurisdiction at all." *Id.* at 682, n. 4.

The conspiracy theory of personal jurisdiction has been rejected by other courts as well. When Judge Hornby of the Federal District Court of Maine was recently confronted by this

theory, he reiterated that "the First Circuit has never recognized the conspiracy doctrine" and

then found as follows:

> The Supreme Court has labeled the conspiracy doctrine in the venue context as
> having "all the earmarks of a frivolous albeit ingenious attempt to expand the
> statute." *Bankers Life & Cas. Co. v. Holland,* 346 U.S. 379, 384 (1953). As one
> court has said, using conspiracy as a basis for personal jurisdiction is "[t]hat much
> more frivolous." Another has said that "[t]he conspiracy theory of personal
> jurisdiction is being rejected by a growing number of courts." *Group Health Plan
> v. Philip Morris, Inc.,* 1999 U.S. Dist. LEXIS 9640, *16 (D.Minn.).  Additionally,
> scholars have been skeptical of the doctrine's conformance to notions of
> constitutional due process. *See, e.g.,* Ann Althouse, *The Use of Conspiracy
> Theory to Establish in Personam Jurisdiction: A Due Process Analysis,* 52
> Fordham L.Rev. 234 (1983). *See also* Stuart M. Riback, Note, *The Long Arm and
> Multiple Defendants: The Conspiracy Theory of In Personam Jurisdiction,* 84
> Colum. L.Rev. 506, 533 (1984) (noting that courts have rejected the conspiracy
> theory of venue virtually unanimously). For these reasons, I do not believe that
> the First Circuit would recognize a conspiracy theory of personal jurisdiction,
> whereby jurisdiction can be obtained over nonresident defendants based upon the
> jurisdictional contacts of co-conspirators.

*In re New Motor Vehicles Canadian Export,* 307 F. Supp. 2d 145, 157-58 (D. Me. 2004).  The

problem with the conspiracy theory of personal jurisdiction identified by Judge Hornby and by

the courts and scholars he cites is illustrated by this dispute between the Weiss Parties and

Kotva.  As has been demonstrated above, courts will not impute the in-forum acts of one party to

a second party in the absence of evidence demonstrating some sort of agency or alter ego

relationship between the two parties.  If the Court were to accept the conspiracy theory of

personal jurisdiction, the need for such preliminary demonstrations by a plaintiff would be

eliminated.  For example, whenever a plaintiff sought to include a parent company in a suit

against a subsidiary, the plaintiff could simply allege that the parent and the subsidiary had

"conspired" to harm the plaintiff, and the need to show that the subsidiary was a mere shell

would fall away.  This approach would undo the well-established constitutional requirement that

a party must make knowing and deliberate contact with a forum before it may be subject to

personal jurisdiction there. *See Insolia v. Philip Morris, Inc.*, 31 F. Supp. 2d 660, 672-73 (W.D. Wis. 1998) (refusing to apply conspiracy theory of personal jurisdiction because it would subject defendant to jurisdiction in a forum which it did not make purposeful contacts); *Karsten Mfg. Corp. v. U.S. Golf Ass'n.* 728 F. Supp. 1429, 1434 (D. Ariz. 1990) (finding that conspiracy theory of personal jurisdiction violated rule of *Calder v. Jones*, 465 U.S. 783 (1984) that each defendant's contacts with the forum must individually meet the purposeful availment test).

However, even if the Court were to entertain a conspiracy theory of personal jurisdiction, the Weiss Parties have not presented evidence that would allow that theory to create personal jurisdiction over FEL in Massachusetts. First, the Weiss Parties have offered no evidence that FEL engaged in an illicit conspiratorial agreement with Benda, Harazim, Kotva, SPV Co., or the unidentifiable "John Does 1-5." Again, the only evidence of coordination between FEL and the other counterclaim-defendants is that FEL is the majority shareholder of Kotva. Second, there is no evidence that FEL directed or otherwise conspired with Kotva to file an "abusive" lawsuit here against the Weiss Parties, which is the sole substantive act that the alleged conspiracy supposedly carried out in Massachusetts.

**D.    The Weiss Parties' Efforts to Provoke Controversy and the Illusion of Impropriety Do Not Create Jurisdiction Over FEL**

In the absence of any genuine factual support for their claim that FEL is subject to personal jurisdiction in Massachusetts, the Weiss Parties attempt to create distractions through lengthy discussions of irrelevant matters. First, in the Counterclaim and in their memorandum in opposition to FEL's motion to dismiss, the Weiss Parties discuss in great detail their allegation that FEL became the majority shareholder of Kotva through something they call, based on a purported article in a Czech tabloid, "tunneling". Quite apart from the lack of any foundation for this charge, the allegations are wholly irrelevant. The Weiss Parties' counterclaims against FEL

have no relationship to the "tunneling" allegation, which allegedly occurred entirely in the Czech

Republic and Cyprus approximately ten years ago.

The Weiss Parties also imply that FEL was set up to hide assets for tax reasons and that

FEL's directors are merely "nominee directors." *See, e.g., Weiss Parties' Opposition to FEL's*

*Motion to Dismiss* at 4-8. Again, putting aside the gross mischaracterization of FEL, this

allegation has no relevance to the issue of whether this Court has personal jurisdiction over FEL.

Regardless of how the Weiss Parties choose to characterize FEL or its directors, the issue is

whether the Weiss Parties have demonstrated that FEL has had jurisdictional contacts with

Massachusetts. They clearly have not.

**E.    No Jurisdictional Discovery Is Warranted or Needed**

Finally, the Weiss Parties attempt to sidestep the absence of jurisdiction, and make a

demand for "jurisdictional discovery" that has already been rejected by the Discovery Master.

See Order of Discovery Master, January 7, 2006. This Order denying the Weiss Parties motion

for discovery from FEL was well-founded. *See United States v. Swiss American Bank, Ltd.*, 274

F.3d 610, 625-26 (1st Cir. 2001) (district court properly denied jurisdictional discovery where

plaintiff had not adequately demonstrated need); *Sunview Condominium Association v. Flextel*

*International, Ltd.*, 116 F.3d 962, 964 (1st Cir. 1997) (plaintiff seeking jurisdictional discovery

had not acted diligently and was not entitled to the discovery sought); *Kelly v. Syria Shell*

*Petroleum Development B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (where lack of personal

jurisdiction was clear from a review of the complaint, "discovery would serve no purpose and

should not be permitted"); *Donatelli v. UnumProvident Corp.*, 324 F. Supp. 2d 153, 163-64 (D.

Me. 2004) (denying plaintiff's request for discovery because the requested information was not

"not reasonably calculated to resolve any of the analytical problems" presented by the motion to

dismiss for lack of personal jurisdiction); *Noonan v. Winston Co.*, 902 F. Supp. 298, 306-09 (D.

Mass. 1995) (denying plaintiff's request for jurisdictional discovery because information sought

would not aid in resolving jurisdictional issues).

## CONCLUSION

Neither the Counterclaim nor any of the additional allegations in the Weiss Parties'

opposition to FEL's motion to dismiss can support a finding of personal jurisdiction over FEL.

FEL has never had any purposeful, deliberate contacts with this forum either directly or through

an agent or an alleged co-conspirator. There is no evidence to support a finding that Kotva is a

sham or that Harazim acted as FEL's agent in negotiating the possible sale of BGO's Kotva

shares. FEL is a Cypriot company with no contacts with this forum and with no role in Kotva's

suit against Andrew Weiss or Weiss Asset Management. FEL respectfully requests that the

Court grant its motion to dismiss for lack of personal jurisdiction.

Respectfully submitted,

FORMINSTER ENTERPRISES, LTD.

by its attorneys,

/s/ Ingrid S. Martin

Jeffrey D. Clements, BBO #632544
Ingrid S. Martin, BBO #653632
Clements & Clements, LLP
50 Federal Street
Boston, MA 02110
617- 451-1800

DATED:        January 23, 2006

### CERTIFICATE OF SERVICE

I, Ingrid S. Martin, hereby certify that a copy of the foregoing document was served by electronic filing to all counsel of record on January 23, 2006.

/s/  Ingrid S. Martin