UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
KOTVA a.s.                                          )
                                                    )
              Plaintiff,                            )        Case No. 05-10679-RCL
                                                    )
              v.                                    )
                                                    )
ANDREW WEISS and WEISS ASSET                        )
MANAGEMENT, LLC                                     )
                                                    )
              Defendants.                           )
_____)

**OBJECTIONS OF KOTVA, A.S. TO THE DISCOVERY MASTER'S
MAY 26, 2006 ORDER REGARDING MOTIONS TO COMPEL**

**INTRODUCTION**

Plaintiff Kotva a.s. ("Kotva") hereby objects to two components of the Discovery

Master's May 26, 2006 Order ("Order"). First, Kotva objects to the denial of its request for *in

camera* review of communications between the Weiss Defendants and Czech counsel that are

being withheld as allegedly privileged. Because the Weiss Defendants used Czech counsel to

file lawsuits as part of their extortionate scheme, these documents are likely subject to the crime

fraud exception to the privilege, and Kotva has satisfied the relaxed standard required for *in

camera* review. Second, Kotva objects to the portion of the Order that requires it to produce all

documents relating to all disbursements by SPV Co. as overly broad, unduly burdensome, and

calling for the production of confidential insider information.

**STANDARD OF REVIEW**

Pursuant to ¶ 6 of the Court's December 13, 2005 Order Appointing Discovery Master

and Fed. R. Civ. P. 72(a), Kotva files the instant objections to the Discovery Master's May 26,

2006 Order.[1]  Objections to the Discovery Master's conclusions of law and findings of fact are

subject to *de novo* review by the Court.  Fed. R. Civ. P. 53(g); December 13, 2005 Order, ¶ 6.

## ARGUMENT

I.    **Kotva has Satisfied the Relaxed Standard for *In Camera* Review of Materials Subject to the Crime Fraud Exception and Those Materials Should be Reviewed.**

As described in detail in Kotva's Complaint, Weiss blackmailed Kotva after he learned

through the press that Kotva planned to sell its shopping center.  When Kotva refused Weiss'

demand that it "repurchase" BGO's shares in Kotva, Gilroy Limited ("Gilroy") and KT, Inc.

("KT") purchased nominal shares of Kotva's stock and filed lawsuits in the Czech Republic,

challenging the transfer of the Department Store from Kotva to its subsidiary, which had

occurred years before in 2002, solely for the improper purpose of interfering with the sale of the

shopping center.  After the sham lawsuits were filed, Weiss made ever increasing demands on

Kotva to purchase BGO's shares, and promised that he would "attempt to influence" Gilroy and

KT to drop the suits if his price demands were met.  In all of his communications to Kotva,

however, Weiss denied any connection with Gilroy or KT.  After Weiss and Vladimir Hoffmann,

his Czech associate, were criminally charged with extortion by the Czech police, Weiss reversed

course and took a completely contradictory position, asserting the Czech lawsuits were filed to

protect the interests of BGO and its investors.

Because the Weiss Defendants used Czech counsel to initiate lawsuits against Kotva as

part of their extortionate scheme, Kotva requested an *in camera* review of certain materials

withheld as allegedly privileged as subject to the crime fraud exception.   At least two types of

communications, for example, would be subject to the crime fraud exception:  1)

communications from Czech counsel to the effect that there is no legitimate basis under Czech

---

[1]  A copy of the Order is attached hereto as Exhibit 1.

law for filing the Czech petitions but Weiss filed the sham lawsuits anyway; and 2)

communications regarding the intentional stalling of litigation by filing and failing to prosecute

the Czech lawsuits in order to harm Kotva and disrupt the sale of the Department Store.  These

types of communications would support Kotva's blackmail claims.  Kotva objects to the

Discovery Master's refusal to conduct an *in camera* review despite the relaxed standard that

governs such requests.

### A. The Relaxed "May Reveal" Test for *In Camera* Review Has Been Satisfied

As the United States Supreme Court and the First Circuit have instructed, a lesser

evidentiary showing—one that is met in this case—applies to the question of *in camera* review:

> It is often hard to determine whether the attorney-client relationship has been
> misused by the client for crime or fraud without seeing the document, or hearing
> the testimony, as to which the privilege is claimed.  To overcome this problem (as
> well as other privilege problems) judges have sometimes been willing to review
> privileged materials by themselves *in camera* and then decide whether the other
> side is entitled to it.  The Supreme Court has blessed this procedure in <u>Zolin</u>.
> <u>Zolin</u> also said that a "lesser evidentiary showing" is needed for *in camera* review
> than is needed finally to pierce the privilege, and that upon this showing whether
> to conduct *in camera* review is within the trial court's discretion.  For such a
> review, all that was needed was a factual basis "to support a good-faith belief by a
> reasonable person" that "*in camera* review of the materials may reveal evidence
> to establish the claim that the crime-fraud exception applies."  "<u>May</u>" is a very
> <u>relaxed test and, as only the judge gets this initial access, properly so</u>….Precisely
> because of the initial barrier of the privilege, it is very hard for an adversary
> unaided to show that the privileged communications were themselves corrupt, so
> the requirements for access cannot be set too high.

<u>In re Grand Jury Proceedings</u>, 417 F.R.D. 18 at 22, 23 (1st Cir. 2005) (citations and footnote

omitted; emphasis added).  Kotva does not need to "demonstrate on a *prima facie* basis[2] that

---

[2]  The First Circuit also has moved away from the amorphous "prima facie" standard for making the <u>subsequent</u> determination of whether to pierce the privilege itself and adopted a "reasonable basis" test.  <u>In re Grand Jury Proceedings</u>, 417 F.R.D. at 23.  Kotva, however, has satisfied its burden of showing that there is a "reasonable basis" to believe that the Weiss Defendants, and/or Hoffmann at the Weiss Defendants' behest, used an attorney's services to foster a crime or fraud.  417 F.R.D. at 23 (1st Cir. 2005).  The Weiss Defendants' <u>only</u> argument in opposition has been that Kotva could not satisfy its burden because "filing lawsuits" is not a crime.  This is an overly narrow interpretation of the extortionate conduct by the Weiss Defendants and is contradicted by precedent in this Circuit.  <u>See Gonzalez-Morales v. Hernandez-Arencibia</u>, 221 F.3d 45, 51-52 (1st Cir. 2000) (recognizing that

communications are <u>likely</u> to reveal evidence of a plan to extort *as opposed to* litigation strategy." Order at 4 (italics in original; underlining added). Rather, for *in camera* review, Kotva must only satisfy the "may reveal" test by demonstrating a factual basis to support a good faith belief by a reasonable person that the exception applies.

That factual basis is established in this case by, among other things, the following:

- Oral extortionate demands made to Kotva by Weiss (see Complaint ¶ 20 regarding May 12, 2004 meeting);

- Written extortionate demands made to Kotva by Weiss (see Complaint at ¶ 30 and Ex. C) ("We will attempt to influence Gilroy and Balfindor to withdraw the complaint questioning ownership of assets by Kotva, a.s. Since we do not exert control over Gilroy or Balfindor or petitions submitted by them, we cannot guarantee a withdrawal of the complaint.");

- Documents and communications between the Weiss Defendants, Vladimir Hoffmann, and Czech counsel seized by the Czech police during the criminal investigation and court approved wire-taps resulting in criminal charges brought against Weiss and Hoffmann for extortion, based in part on those communications (see Criminal Charge Document attached as Ex. H to Kotva's motion to compel (Docket No. 92));

- Documents produced by the Defendants revealing their bad faith intent to file lawsuits to tie up the Department Store property and interfere with Kotva's business relationship with the buyer, Markland (see e-mail attached as Ex. I to Kotva motion to compel (Docket No. 92) (regarding Weiss' intention to "block any potential transfer of Kotva building" and to "discourage potential buyers of Kotva from the purchase") and Complaint at ¶ 45, citing an October 20, 2004 e-mail ("We can show that if they [Kotva] do not settle with us, their cost of financing will be very high; and they will pay most of this increased cost since we have only 11% of the shares" and "If they [Kotva] do not settle, they will be able to realize the value of the property only in several years, which will be diminished by the discount rate and discounted probability of winning the lawsuits.");

- Identification of the attorney involved in those communications, Ondrej Peterka, as a critical witness in the criminal proceedings and his preclusion from representing Weiss in those proceedings by the Czech police (see Criminal Charge Document);

---

filing of suits may constitute RICO extortion); <u>Lemelson v. Wang Labs</u>, 874 F. Supp. 430 (D. Mass. 1994) (denying motion to dismiss RICO claim where litigation was part of extortionate scheme.)

- Refusal by the Czech authorities to dismiss the criminal charges against Weiss despite Weiss' efforts to interfere and pressure the Czech Government through the United States State Department, Madeline Albright's lobbying firm, U.S. Senators Kennedy, Kerry, and Biden, and Congressman Frank upon the Czech Prime Minister, Czech Ambassador, and Czech prosecutors; and

- Request for a protective order by Weiss to postpone his deposition to avoid having to invoke the Fifth Amendment privilege against self-incrimination (see Weiss Motion for Protective Order (Docket No. 98).

Despite overwhelming evidence to support a good faith belief by a reasonable person that *in camera* review <u>may</u> reveal evidence that the crime fraud exception applies in this case, the Order applies the wrong standard for the *in camera* review determination. Indeed, in the context of the facts of the case, it would be difficult for a reasonable person <u>not</u> to form a good-faith belief that *in camera* review of the allegedly privileged materials <u>may</u> reveal evidence that the crime fraud exception applies and that the Czech litigation was part of the extortionate scheme against Kotva.

As described above, the Order erred in holding that the relaxed "may reveal" test had not been satisfied. Although *in camera* review is ultimately within the discretion of the trial court, the discretionary factors come into play only <u>after</u> the "may reveal" test has been applied. <u>See</u> <u>U.S. v. Zolin</u>, 491 U.S. 554, 572 (1989). Those factors, moreover, counsel in favor of *in camera* review here. The volume of materials is not expected to be very large, the importance to the case of communications that reveal the Defendants' extortionate intentions is extremely high, and the likelihood is great that the evidence produced through *in camera* review in combination with other evidence of the Defendants' blackmail scheme will demonstrate that the crime fraud exception does apply. <u>Zolin</u>, 491 U.S. at 572. Therefore, the materials should be reviewed *in camera* in the overall context of this litigation and the extortionate conduct at issue, and should not be viewed as merely concerning business or litigation strategy, as the Order suggests. <u>See</u> Order at 4.

**B.      The Crime Fraud Exception Applies to Civil Proceedings**

The Order seems to suggest that a more rigorous standard applies to the crime fraud exception in civil proceedings as opposed to criminal matters.  (See Order at 3-4 discussing the crime fraud exception with respect to grand jury investigations.)  It is well-settled, however, that the crime fraud exception applies in both criminal and civil matters.  <u>See</u> Edna Selan Epstein, The Attorney-Client Privilege and the Work-Product Doctrine at 448-454 ("Reaching Privileged Communications in Furtherance of Tort") (ABA 4th ed. 2001) citing, <u>e.g.</u>, <u>Natta v. Zletz</u>, 418 F.2d 633, 636 (7th Cir. 1969) as an early example of the application of the exception in civil litigation.[3]  Further, whether Kotva has an interest in the subject matter of the communications or whether it stands to benefit from disclosure of the communications is irrelevant to the analysis of whether the exception applies.  Simply put, if communications and work product fall within the exception, they are not privileged or protected and must be produced.  Therefore, the concern about disclosure of a party's "privileged" communications to the opposing party is misplaced and operates under the erroneous presumption that the communications are privileged.  (See Order at 4).

The Discovery Master has ordered the Weiss Defendants to supplement their privilege log to include the critical communications and work product concerning the Czech lawsuits against Kotva—which they previously had refused to log.  With this universe identified, and by viewing the Czech litigation in the context of the extortionate scheme that Kotva has alleged, there is sufficient guidance for conducting an *in camera* review.

---

[3]  There is also precedent that the exception to the privilege applies with respect to torts beyond fraud.  Id.

II.    **The Order Deprives Kotva of the Ability to Seek a Protective Order by Deciding an Issue that was Neither Briefed Nor Presented for Decision in the Pending Motions.**

The Weiss Defendants issued a document request for all documents "concerning the disposition of the proceeds of the sale of the Department Store." Kotva objected to this request on a number of grounds, including the fact that it called for irrelevant information and was overly broad and unduly burdensome, but agreed to produce documents "concerning the receipt and holding of the proceeds of the sale of the Department Store." Kotva subsequently produced 2005 statements for the escrow account and bank account held by SPV Co., the wholly-owned subsidiary that received the proceeds from the sale, and year-end audited financial statements for SPV Co. from 2004 and 2005 prepared by an international accounting firm. Kotva has agreed to supplement by continuing to produce audited financial statements as well as annual reports to shareholders, and reports to the Czech stock exchange. Kotva's proposed supplement will continue to account for the proceeds held by SPV Co. The Weiss defendants, however, are now demanding production of all documents regarding every expense of SPV Co. on a going forward basis ("disbursement documents"). The only question, therefore, is the scope of Kotva's supplemental production.[4]

A.    **Kotva Has Already Produced and Will Continue to Produce Documents that Account for the Proceeds from the Department Store Transaction.**

The disbursement documents are only relevant to the claim by counterclaim-plaintiffs KT and CVF that the sale proceeds had been looted. The documents already produced by Kotva about its receipt and holding of the proceeds, however, conclusively demonstrate the baseless nature of that claim—which is subject to a pending motion to dismiss (Docket No. 81). In any

---

[4] Kotva requested clarification of this part of the Order from the Discovery Master on June 2, 2006. The Discovery Master issued a brief Order this afternoon, June 12, 2006, that does not address the fundamental point of Kotva's request—the proper scope of its obligation to supplement—and misinterprets Kotva's request as one to produce no documents at all. Kotva has already produced documents in response to the original document request. A copy of the June 12 Order is attached as Ex. 2.

event, more than a year has passed since the sale of the Department Store. Kotva is an operating public corporation that is moving forward with its business. As Weiss' counsel noted at the May 11, 2006 hearing, a potential merger or acquisition may be in the pipeline. Kotva will continue to provide such information to <u>all</u> of its shareholders and the public, as appropriate. But compelling the production of all documents concerning all "disbursements," including documents related to the proposed merger, would place Kotva in the position of having to reveal confidential insider information, which many of the documents concerning "disbursements" would contain, to a single shareholder.

Kotva's agreement to supplement by continuing to provide audited financial statements, annual reports to shareholders, and reports to the Czech Stock Exchange, is more than sufficient to satisfy its obligation to supplement and provide information concerning the Department Store sale proceeds. That information has accounted for and will continue to account for the sale proceeds. Therefore, in view of the documents Kotva has produced already and the documents that it will continue to produce, the Weiss Defendants' demand for <u>all</u> "disbursement" related documents is both unduly burdensome[5] and unnecessary.

---

[5] It is not clear what the scope of such documents would be. In the context of the Weiss Defendants' previous document demands, however, it could quickly spiral to a scale that "greatly enlarges the already enormous scope of discovery in this case." Order at ¶ 7 page 8.

## CONCLUSION

For the foregoing reasons, Kotva requests that the Court grant its objections, allow Kotva an opportunity to move for a protective order on the disbursement documents issue, and order the *in camera* review of the communications between the Weiss Defendants, Hoffmann, Peterka regarding the Czech litigation against Kotva with respect to whether the crime fraud exception applies.

Respectfully submitted,

KOTVA A.S.

By its attorneys,

/s/ Joel G. Beckman
Joel G. Beckman (BBO# 553086)
William C. Nystrom (BBO# 559656)
Daniel J. Pasquarello (BB0# 647379)
NYSTROM BECKMAN & PARIS LLP
10 St. James Ave., 16th Floor
Boston, Massachusetts 02116
(617) 778-9100
(617) 778-9110 (fax)
jbeckman@nbparis.com
wnystrom@nbparis.com
dpasquarello@nbparis.com

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Kotva believes that oral argument may assist the Court and requests to be heard.

## **LOCAL RULE 37.1(B) CERTIFICATION**

The issues in this motion have been the subject of a meet and confer process and hearing before the Discovery Master, as well as a separate meet and confer process that was initiated on May 22, 2006.  On June 12, 2006, I made several telephone calls to Mr. Goldberger and Mr. Leibensperger, counsel for Defendants, to confer further and confirm that Defendants would not agree to the relief requested herein.  I was unable to reach either Mr. Goldberger or Mr. Leibensperger, leaving a voicemail for Mr. Goldberger.  I did not hear back from Mr. Goldberger prior to the filing deadline.  As of this date, however, the parties have been unable to narrow the issues further.

/s/ Daniel J. Pasquarello
Daniel J. Pasquarello (BB0# 647379)

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 12th day of June, 2006.

/s/ Daniel Pasquarello

Dated: June 12, 2006

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KOTVA A.S.,                    )
                               )
                               )          Civil Action No. 05-10679-RCL
        v.                     )
                               )
WEISS, ET AL.                  )

<u>ORDER OF SPECIAL MASTER</u>

After hearing held on May 11, 2006, and a teleconference held on May 24, 2006, at which

counsel for both plaintiff Kotva, a.s. ("Kotva"), and defendants Andrew Weiss and Weiss Asset

Management, LLC (collectively ("Weiss")  were present, it is hereby ORDERED:

        A.  With respect to Kotva's Motion to Compel, filed on April 4, 2006:

        1.  <u>Redactions</u>   Redactions to responsive documents may not be made without a

court order authorizing the redaction or, alternatively, by agreement with the opposing party.[1]

Good cause for the proposed redaction must be demonstrated.  In general, good cause will be

established if the moving party demonstrates that the proposed redaction relates to privileged

material or material containing confidential business information or private, embarrassing facts.

That responsive documents also contain harmless, irrelevant information will not support a motion

for a protective order authorizing redaction.  Weiss shall produce unredacted documents within

twenty days of this order or shall file a motion for a protective order, submitting the proposed

redactions under seal for *in camera* inspection.

        2.  <u>Privilege Log</u>   All responsive documents which are withheld on the ground of

attorney-client privilege or the work-product doctrine or some other asserted basis of protection,

_____

        [1]        The parties are, of course, free to agree between themselves that certain
information, such as legal fees, will be redacted.

must be logged, *except for the following:* (1) work-product material maintained in the attorneys' internal files that was never transmitted outside the law firm unless such material memorializes relevant, nonprivileged communications;  and (2) attorney-client communications and work product exchanged between any of the parties' respective counsel of record in the instant case, the parallel Czech litigation, and the Czech criminal proceeding, and their respective clients, clients' representatives and counsel's agents, with respect to this case or the parallel Czech proceedings, civil and criminal, and which were created *after* December 23,  2004.  This cut-off date is the date on which the KT, Inc. litigation was commenced, and is warranted by the specific allegations of the complaint which tie the commencement of the Gilroy and KT litigation to the alleged extortion scheme.  Communications and documents exchanged between parties or counsel alleged to be within the common interest umbrella must be logged.

The logs must identify the author(s) and recipient(s); the person or entity whom the attorney represents; the date the communication was created or transmitted, as applicable; the nature of the communication, and the basis for the claim of privilege or protection.  The log should not contain or reveal privileged communications.  To the extent the logs prepared by the parties to date do not comply with this directive, the parties shall amend their respective logs so that they provide all the foregoing information.  Both parties shall serve their amended and completed privilege logs within 45 days of this order.

3.  Crime-Fraud Exception   With respect to Kotva's claim that the attorney-client privilege must be pierced on the basis of the crime-fraud exception, the motion to compel the production of privileged documents is DENIED without prejudice because Kotva has not met its burden to establish, on a *prima facie* basis, that Weiss was engaged in or was planning a criminal

2

or fraudulent activity when the communications took place; and that the communications in

question were intended to facilitate or conceal the criminal or fraudulent activity. *See In re Grand*

*Jury Proceedings (Violette)*, 183 F.3d 71, 75 (1st Cir. 1999). With respect to Kotva's request for

a preliminary *in camera* review, the Court has the discretion to conduct such review if the party

seeking to pierce the privilege makes a factual showing sufficient to warrant a good faith belief in

a reasonable person that "*in camera* review may reveal evidence to establish the claim that the

crime fraud exception applies." *United States v. Zolin*, 491 U.S. 554, 572 (1989); *In re Grand*

*Jury Proceedings*, 417 F.3d 18, 22-23 (1st Cir. 2005). "The court should make that decision in

light of the facts and circumstances of the particular case, including, among other things, the

volume of materials the district court has been asked to review, the relative importance to the case

of the alleged privileged information, and the likelihood that the evidence produced through *in*

*camera* review, together with other available evidence then before the court, will establish that the

crime-fraud exception does apply." *Zolin*, 491 U.S. at 572.

Where the party seeking to pierce the attorney-client and work-product privileges is a

federal grand jury, or as in *Zolin*, the IRS, conducting an investigation into a criminal matter, the

inquiring party is not itself the subject of the communications. The grand jury or the investigative

agency is disinterested in the content of the communications, apart from whether those

communications bear on its investigation. In contrast, Kotva's interest in learning about Weiss's

litigation strategy is not disinterested; Kotva is itself the subject of the communications and stands

to benefit directly from disclosure of Weiss's litigation strategy, quite apart from whether the

communications support the allegations in the instant case. Whereas a federal grand jury is not in

a position to use or abuse the content of the attorney-client communications, Kotva is. Piercing

the privilege in order for a grand jury to determine, for example, whether an attorney facilitated the client's obstruction of justice or concocted a money-laundering scheme – subjects outside the proper scope of an attorney-client relationship, and of no intrinsic interest to the grand jury apart from its evidentiary value –  is quite different from opening up to one party the entire litigation file of its adversary on the ground that the litigation between the parties was initiated for an improper purpose.  I note, too, that privileged communications pierced by the grand jury remain secret pursuant to Fed. R. Crim. P. 6.  There is no such protection in the civil arena, and even a protective order would not and could not prevent the harm of disclosure of one party's privileged communications to the opposing party.  In short, these considerations counsel the exercise of great caution in piercing the privilege in the context of this case.

I conclude that Kotva has not demonstrated a basis to believe that the privileged communications were for the purpose of fostering or concealing the allegedly criminal activity, as opposed to ordinary strategic and tactical considerations inherent in bringing litigation.  Kotva's showing falls short of demonstrating a good faith basis upon which a reasonable person may believe that *in camera* inspection may reveal documents that should lose their status as privileged or protected documents.  While the documents Kotva seeks to discover will undoubtedly reveal Weiss's litigation strategy, business strategy, and so forth, this material does not lose its privileged status simply because Kotva alleges that the litigation had an improper purpose.  Rather, Kotva must demonstrate on a *prima facie* basis that the communications are likely to reveal evidence of a plan to extort *as opposed to* litigation strategy.  This threshold has not been met.

Even if Kotva's showing meets *Zolin*'s lesser threshold for *in camera* review, I decline, in the exercise of my discretion, to conduct such review at this time.  For one thing, Kotva has not

4

proposed which among the thousands of privileged or protected documents it contends warrant preliminary *in camera* review. For another, the fact of the litigation speaks for itself. If extortion was intended, one would expect that there would be non-privileged communications, *e.g.*, extortionate demands made to Kotva, demonstrating such intent. And, indeed, the complaint alleges such demands. It is difficult to see what the attorney-client communications and work product would materially add to this evidence that is not piling on. And, finally and most critically, Kotva offers no guidance on how I should distinguish between perfectly usual attorney-client communications weighing litigation strategy, pros and cons, risks and benefits, from what Kotva alleges is improper facilitation of an extortion scheme. Even Exhibit I to Kotva's Motion to Compel, consisting of email correspondence between Dave Johnson and Vladimir Hoffmann begs the question: I interpret the communication to concern an evaluation of litigation and business strategy designed to maintain the value of the Kotva shares rather than "damning" evidence of extortion. In sum, balancing the likelihood of discovering material, admissible evidence warranting piercing the privilege against the burden of wholesale *in camera* review, I decline, in the exercise of my discretion, to conduct such review.

If the amended privilege log or other discovery, such as communications with investors, gives rise to a reasonable inference that particular, identifiable communications or categories of communications between Weiss and Hoffmann or others were intended to foster and promote an extortionate scheme as opposed to advantageous business litigation, the issue of *in camera* inspection will be revisited.

4.  <u>Documents Disclosed to the Press and to the State Department</u>   Documents

5

which Weiss has voluntarily disclosed to the press or to government agencies are no longer within

the attorney-client privilege nor are they protected by the work-product doctrine.  If the

documents were originally privileged or protected from disclosure, the privilege or protection has

been waived by voluntary disclosure to persons and entities who are under no obligation not to

disclose the information to Kotva.  *See United States v. MIT*, 129 F.3d 681 (1st Cir. 1997).

Disclosure to the press is tantamount to full public disclosure and inconsistent with an intention to

maintain confidentiality.  While Weiss contends that the State Department undertook to maintain

confidentiality with respect to certain documents, Weiss has not supported that assertion with

affidavits or other factual support, nor has it identified which documents were to be treated

confidentially.  But, more to the point, Weiss does not establish that it was compelled to turn over

the documents to the State Department, nor that it did so on the condition that the State

Department would maintain confidentiality.  Finally, Weiss has no ability to prevent either the

press or the State Department from disclosing information received from Weiss to Kotva.

Accordingly, all such documents shall be produced forthwith.

     5.  <u>Scope of the Privilege: Weiss-Hoffmann Communications</u>   Communications

between Weiss and its Czech representative, Vladimir Hoffmann, for the purpose of seeking legal

advice in the Czech Republic on Weiss's behalf, are within the scope of the attorney-client

privilege.  Business communications between Weiss and Hoffmann, e.g.,  for the purpose of

selling Weiss's holdings in Kotva and Trend, however, are not privileged.  To the extent that

Weiss retained Hoffmann as its representative for the additional purpose of obtaining legal advice

in the Czech Republic, communications between Weiss and Hoffmann for that purpose are

protected by the privilege.  *MIT*, 129 F.3d at 684.  Similarly, communications among Weiss

decision-making employees related to legal advice are within the scope of the privilege.  On the other hand, directives from management to employees that are based upon legal advice, but that do not refer specifically to attorney-client communications, are not privileged.  To the extent that the parties dispute specific claims of privilege notwithstanding this general directive, a motion describing the specific document or documents and the claim of privilege or waiver may be filed.

6.  <u>Woolf Documents</u>   Kotva complains that Weiss has improperly invoked the work-product doctrine with respect to documents it received from James Woolf, who is not a party to this litigation, and with respect to documents exchanged between Weiss and Vladimir Hoffmann or Gilroy.  Since Weiss is asserting the protection of the work-product doctrine as to documents in its possession, standing is not an issue.  Rather, the issue is whether the work-product doctrine extends to documents in Weiss's possession that were not prepared by Weiss, its attorneys or its representatives.  Protection for work product extends to materials prepared by the party, the party's attorneys, and their representatives with respect to other anticipated litigation. *In re Grand Jury Subpoena*, 220 F.R.D. 130, 150 (D. Mass. 2004); 8 Wright, Miller, & Marcus, Federal Practice and Procedure, § 2024 (2d ed. 1994).  Disclosure between persons who share a common interest against a common adversary does not effect a waiver of the work-product protection.  *See, e.g.*, *Loustalet v. Refco, Inc.*, 154 F.R.D. 243 (C.D. Cal. 1993).   In order for the common interest exception to apply, "the party asserting the privilege must show that (1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived." *United States v. Bay State Ambulance and Hosp. Rental Serv. Inc.*, 874 F.2d 20, 28 (1st Cir. 1989).  Weiss represents, without benefit of affidavit or specificity, that Woolf and Hoffmann were involved in advancing

analogous claims against Kotva, their common adversary.  If this claim is substantiated, material prepared by Woolf or Hoffmann in anticipation of other litigation against Kotva and disclosed to Weiss at a time when Weiss had a common interest with them falls within the protections of the privilege.  Weiss has not demonstrated, however, when the common interest between Woolf and Weiss was established, its scope, and when it ended.   Accordingly, it is ORDERED that, if Weiss chooses to invoke any privilege or protection with respect to Woolf-Weiss communications, Weiss shall (1) state when the common interest between Weiss and Woolf arose, its scope; and its termination date; and (2) submit the Weiss-Woolf documents for *in camera* review to determine whether the documents withheld from production were made in the course of the common interest and whether they were designed to further that interest.  Kotva may challenge Weiss's showing and establish sufficient need to override the privilege if it applies.

       7.   <u>Document request nos. 55 - 61</u> (Documents concerning IPB/Domeana, RIF, etc.).   Denied without prejudice.  The requests all concern Kotva's allegations that Weiss engaged in what it characterizes as blackmail and extortion in connection with entities unrelated to Kotva.  While this general subject may have tangential relevance to prove a pattern of racketeering, as well as intent, the discovery requested is extremely far-ranging, as well as vague and overbroad.  The discovery request greatly enlarges the already enormous scope of discovery in this case.  Mindful that the District Court has imposed a July 2006 discovery deadline and has not authorized a stay of discovery while motions to dismiss or for judgment on the pleadings are pending, and mindful as well of the cost and burden of such far-reaching discovery as Kotva has propounded, it is ORDERED that Kotva may inquire into these subjects during depositions and through interrogatories and other non-document discovery.  At this time, Kotva shall not

8

propound document requests with respect to these transactions.  If Kotva identifies specific and limited categories of documents which are clearly connected to the alleged scheme and can establish a substantial need for the documents, it may move for leave to serve such requests.

8.  <u>Document request nos. 4, 6</u>.  (Communications with BGO investors concerning Trend, etc.)  The requested documents may  reveal, along with litigation strategy, admissible admissions.  Accordingly, the documents come within the broad scope of discovery. No privilege is asserted.  To the extent it has not already done so, Weiss shall produce the text of all communications with BGO investors that concern or refer to Kotva, Trend, the Czech lawsuits, and the criminal proceedings against Weiss in the Czech Republic.  Weiss has agreed to produce such documents and will make a supplemental production.

Weiss represents that it has disclosed the "segregated shareholders" who hold the beneficial interest in its holdings in Kotva and Trend shares, i.e., BGO investors as of September 30, 2000.  The identity of current BGO investors, which is confidential business information (*see* Declaration of Georgiy Nikitin), shall be redacted from documents produced by Weiss in response to Kotva's document requests.  Such identifying information is likely to injure Weiss's business relationships with the current BGO investors with little, if any, concomitant benefit to Kotva. Although the communications are discoverable for their content as possible admissions by Weiss, disclosure of the identity of the BGO investor recipients is more likely to harm Weiss's business interests than it is likely to lead to the discovery of admissible evidence.

9.  <u>Document request nos. 35, 38</u>   (Shareholder votes and meeting minutes). Kotva seeks production of shareholder votes and meeting minutes which it says Weiss agreed to

but has failed to produce. Weiss represents that it has produced all such documents in its possession. Weiss is directed to certify that it has exhaustively searched for the missing documents.

        10. <u>Veverka correspondence</u>   Weiss represents that it cannot locate Veverka correspondence with Weiss regarding a "proposal" with respect to Kotva. Weiss is directed to certify that it has exhaustively searched for responsive documents and has produced everything in its possession.

        B. Andrew Weiss's Motion for Protective Order, filed on April 7, 2006, to preclude Kotva from taking Mr. Weiss's deposition pending the resolution of parallel criminal proceedings is hereby DENIED. Where the entire case has not been stayed pending resolution of the criminal case in the Czech Republic, and the parties have conducted extensive discovery, including the deposition of Kotva's CEO Richard Harazim, where it is premature to determine whether and to what extent any of Mr. Weiss's constitutional guarantees may be implicated by any questions posed to him, and where Weiss maintains that his conduct was not conceivably criminal in any respect under either United States or Czech law, Kotva may take his deposition. If Weiss, notwithstanding his position that the Czech criminal proceedings against him are baseless, nonetheless believes in good faith that any particular question or series of questions may subject him to risk of criminal sanctions in the United States, he may, of course, refuse to answer by invoking his Fifth Amendment right not to incriminate himself. The deposition of Mr. Weiss shall not take place unless and until Kotva complies with its outstanding discovery obligations, including those ordered herein as well as depositions that were noticed by Weiss before Kotva noticed Mr.Weiss's deposition .

C.  With respect to Weiss's Motion to Compel Answers to Interrogatories and Deposition Questions, Production of Documents and for Expenses and Sanctions, filed on April 19, 2006, it is hereby ORDERED:

1.  Kotva must answer questions which its Rule 30(b)(6) witness Mr. Richard Herazim refused to answer on the advice of Czech counsel.  In the absence of a motion by Kotva for a protective order or a motion to intervene by Czech authorities for the purpose of seeking a protective order, it was improper for Kotva to refuse to answer questions concerning relevant subjects, including the tape recordings of conversations involving Mr. Hoffmann.  Moreover, based upon a review of the deposition transcript, it is apparent that counsel repeatedly interposed objections to relevant questions the form of which was unobjectionable and which did not raise issues of privilege, the only proper bases for objections under the stipulation of the parties.  Counsel is admonished not to object for reasons other than to preserve privileges or to the form of the question.

2.  Kotva shall produce forthwith videotapes requested on August 3, 2005 (*see* request no. 34).  Although Kotva agreed to produce responsive documents, notwithstanding its objection to the scope, etc., it did not produce the audio and videotapes that were specifically requested.  Kotva asserts that the tapes are no longer in its possession because it turned the tapes over to the Czech police on February 9, 2006.  If Kotva has not retained copies of the tapes, then Kotva shall take all steps necessary to retrieve the tapes from Czech police and any other third parties who were given custody or are in possession of the tapes.  If, as Kotva represents, the tapes are useless, the Czech police can have no objection to returning them or providing copies of them.  If the tapes are not turned over as required herein, Kotva shall account to the Court and

11

opposing counsel in writing and under oath for the whereabouts of the tapes, the circumstances of its failure to produce the tapes when originally requested and when ordered to produce all responsive documents forthwith, and its efforts to retrieve and produce the tapes pursuant to this Order.

> 3.  Kotva shall produce all requested documents reflecting the escrow arrangement forthwith, and shall certify to the Court the date upon which discovery has been completed as ordered herein.  In addition, Kotva shall produce forthwith all documents that concern or evidence the receipt and holding of the proceeds of the sale of the Kotva Department Store, including documents within Kotva's possession or control which describe disbursements by SPV CO of the proceeds.

> 4.  Kotva shall produce all documents reflecting powers of attorney (*see* request no. 17) and the J&T Banka documents (*see* request no. 42)  in the possession, custody, or control of its employees, officers, directors, or agents, including its attorneys, to the extent that they acquired the requested documents in their official capacity as Kotva employees, officers, directors, or agents.  Unless and until the District Court determines that it has jurisdiction over Forminster,  Forminster is not required to produce discovery as a party to this proceeding.  That said, however, Kotva is required to produce all documents that are within its power to produce. Kotva's principal shareholder may not cause Kotva not to produce documents or discovery otherwise discoverable and Kotva may not collude with its principal shareholder in order to evade its discovery obligations.  If documents and things that were once within the possession, custody, or control of Kotva have been transferred to the possession of Forminster, Michal Vlach, attorney Petr Toman or any other person or entity since the commencement of this lawsuit, then such

documents and things must be produced or accounted for.

      5.  With respect to the motion to compel Kotva to identify the beneficial owners of Forminster, Kotva has answered under oath that it does not know who the beneficial owners are. Similarly,  Mr. Harazim, a director of Forminster from November 30, 1999, to October 30, 2002, has testified under oath that he does not know who the beneficial owners are.  The corporate veil between Forminster and Kotva has not been pierced, and Forminster's motion to dismiss for want of jurisdiction is still pending.  Arguments asserting the incredibility of Kotva's and Mr. Harazim's responses to date are more properly directed to the Court in connection with the motion to dismiss Forminster.  That said, Kotva is obligated to exercise due diligence to ascertain whether its employees, officers, directors, or agents know the requested information or possess the requested documents.  Kotva is hereby ordered to describe the steps it took to respond to interrogatory no. 1 with respect to Forminster, and the individuals whose knowledge is reflected in the response.  If the response does not reflect the knowledge of all Kotva employees, officers, directors, and agents, Kotva shall supplement the response forthwith.  If someone who happens to be a Kotva agent came by the requested information in some other capacity, and if divulging that information would violate fiduciary or contractual obligations to such other principal, then the information need not be disclosed.

      6  Certain of Weiss's document requests to Kotva concern transactions between Messrs. Harazim and/or Benda and/or others on the one hand, and Forminster on the other.  *See* request nos. 18, 19.  It is difficult to see why Kotva would have copies of such documents reflecting  transactions that do not concern Kotva.  A document in the hands of a corporate officer or director or a shareholder is not automatically also in the possession of the corporation.

If the document is in the possession of the officer, director, or shareholder because of the officer's, director's, or shareholder's personal business, even if that business concerns the corporation, and not the corporation's business, then the document is not in the possession of the corporation merely because it is in the hands of the officer or shareholder. Put another way, the officer's, director's, or shareholder's possession must be as the agent of the corporation, not in his or her individual capacity. Similarly, an outside attorney need only produce those documents and provide that information which he or she acquired as a result of the attorney's representation of the corporation and not by virtue of his or her representation of other clients. Both request nos. 18 and 19 appear to be seek documents which concern transactions between Forminster and others – not Kotva. Possession of responsive documents in the hands of Forminster, Benda, Harazim and others may not be imputed to Kotva unless and until the veil between them and Kotva is pierced, or unless the possession occurred in the entity or person's official capacity as an agent of Kotva. Applying the principles set forth herein, Kotva shall supplement its responses to request nos. 5, 9, 12, 18, 19, 8, 3, 20, 21, 23, and 27.

7. <u>Sanctions</u> At this time, the parties' respective motions for sanctions are DENIED. While I am particularly concerned about Kotva's failure to produce the audio/videotapes and escrow documents in the face of an order to do so, as well as Mr. Harazim's baseless refusal to answer deposition questions related to the tape recordings of Mr. Hoffmann, I credit Mr. Beckman's explanation that Kotva's failure to produce the audiotapes, in particular, was inadvertent and not, as it appeared, a deliberate flouting of the production order. I also am persuaded that neither party has been wholly in the right with respect to discovery. I am also mindful that some of the issues, particularly with respect to the scope of the attorney-client

14

privilege and constructive possession, are complex and that the parties' positions have been

generally advanced in good faith.  That said, continued failure to produce documents, witnesses,

and the privilege log already ordered produced will result in the imposition of sanctions.

So ordered this 26th day of May, 2006.


/s/ Jeanne M. Kempthorne
_____

Special Master

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KOTVA A.S.,                    )
                              )
                              )        Civil Action No. 05-10679-RCL
            v.                 )
                              )
WEISS, ET AL.                  )

<u>ORDER OF SPECIAL MASTER</u>

By letter from counsel dated June 2, 2006, Kotva requested "clarification" concerning

para. 3 on page 12 of the Order of May 26, 2006.  Specifically, Kotva challenges the following

language:

> In addition, Kotva shall produce forthwith all documents that concern or evidence
> the receipt and holding of the proceeds of the sale of the Kotva Department Store,
> including documents within Kotva's possession or control which describe
> disbursements by SPV CO of the proceeds.

While Kotva frames its request as seeking clarification, Kotva apparently seeks to have the

requirement deleted from the Order.  Kotva argues that the Order is beyond the scope of Weiss's

motion to compel, was neither briefed nor discussed during the hearings on the outstanding

motions, and is the subject of the meet-and-confer process.  Finally, Kotva states that the

requirement that it divulge documents which describe disbursements of the proceeds from the sale

of the department store "would place Kotva in an untenable position under Czech law as many of

the documents concerning 'disbursements' would contain confidential insider information that

Kotva could not reveal to a single shareholder . . . without providing the same information to all

of its shareholders."

The disbursement documents were requested in August 2003.  Weiss's First Request for

Production of Documents, request no. 8.  The documents, which are plainly relevant, indeed

1

central to the allegations in this case, were ordered produced in January 2006, five months ago. At this juncture, it is disingenuous of Kotva to claim it has not had sufficient process with respect to this issue.  There was no need for Weiss to file another motion to compel.  Kotva had already agreed to make production subject to its objections and upon condition of entry of a confidentiality order.  And, the Special Master had ordered Kotva to produce the documents and had established a procedure for handling claims of business confidentiality.  Finally, Weiss did indeed raise the issue of the non-production of documents evidencing the disbursement of the sale proceeds in its submissions on the discovery motions which were disposed of in the May 26 Order.  Indeed, there has been more than enough process about the production of these documents which were requested ten months ago.

Similarly unavailing is Kotva's claim that it has been "preempted" from seeking a protective order with respect to these documents and has not been heard on the issue.  The parties are not entitled to a hearing on each and every discovery issue, but in this case, the parties have been afforded ample opportunity to be heard and to file a motion for a protective order.  Indeed, Kotva has already filed, and I have ruled on, a motion for a protective order with respect to confidential business information.  *See* Kotva's Motion for Protective Order, dated January 17, 2006; Order of Special Master, February 13, 2006.  Accordingly, the notion that Kotva has been "preempted" from filing a motion for a protective order is completely baseless.  Finally, Kotva was afforded ample opportunity to address and respond to Weiss's submissions in the hearings held in May.  I see no reason for a further hearing or further delay.

Even at this juncture, after months and months of delay, Kotva does not articulate a good reason why it should not produce plainly relevant documents forthwith.  If compliance with its

discovery obligations would place Kotva in an "untenable position under Czech law" – a proposition which is far from obvious – then Kotva may have difficult choices to make. But, this argument sounds particularly hollow given that there is already a procedure in place to protect confidential business information, which appears to be the basis of Kotva's non-production of the disbursement documents. Kotva has chosen not to avail itself of this procedure.

Accordingly, Kotva's request for clarification or further hearing is DENIED.

So ordered this 12th day of June, 2006.

/s/ Jeanne M. Kempthorne
_____
Special Master