UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW WEISS and WEISS ASSET MANAGEMENT, LLC, <br><br> Defendants. <br><br> ANDREW WEISS, WEISS ASSET MANAGEMENT LLC, K T, INC. and CVF INVESTMENTS, LTD., <br><br> Counterclaim-plaintiffs, <br><br> v. <br><br> KOTVA a.s., MARTIN BENDA, RICHARD HARAZIM, FORMINSTER ENTERPRISES, LTD., SPV CO and JOHN DOES 1–5, <br><br> Counterclaim-defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   C.A. No. 05-10679-RCL |

**COUNTERCLAIM-PLAINTIFFS' RESPONSE TO
PLAINTIFF'S OBJECTION TO DISCOVERY MASTER'S ORDER**

Counterclaim-plaintiffs Andrew Weiss ("Weiss"), Weiss Asset Management LLC ("WAM"), K T, Inc. ("K T") and CVF Investments Ltd. ("CVF") (collectively, the "Weiss Parties") hereby submit their Response to the Objection of plaintiff Kotva a.s. ("Kotva") to the Discovery Master's May 26, 2006 Order. This Objection is Kotva's latest effort to resist discovery that the Weiss Parties propounded over *ten months ago*. The Court should overrule it.

## I.     PROCEDURAL HISTORY

On August 1, 2005, the Weiss Parties served written discovery on Kotva.  In direct contravention of the Federal Rules of Civil Procedure, counsel for Kotva refused to produce any documents—even documents for which there was no good faith claim of confidentiality—unless the Weiss Parties agreed to a confidentiality order.  Kotva failed to move for a protective order as required by the rules.  Instead, the Weiss Parties were forced to move to compel (Docket Nos. 22 and 23) and Kotva filed an opposition, which included a request for a protective order (Docket No. 32).  This was the plaintiff's first opportunity to show good cause for a protective order. Kotva failed.

After a hearing on January 6, 2006, the Discovery Master granted the Weiss Parties' Motion to Compel in large part and ordered Kotva to produce documents by January 17, 2006 (Docket No. 55).  The Discovery Master also instructed Kotva to log all documents for which it still requested special treatment and to move for a protective order as to those documents.

On January 17, 2006, Kotva submitted a log and filed a motion for a protective order (Docket Nos. 59–60).  This was Kotva's second opportunity to show good cause for a protective order.  Kotva failed again.

On February 13, 2006, after a hearing, the Discovery Master entered an Order denying the motion for protective order except as to the redaction of bank account numbers (Docket No. 73).  Kotva objected (Docket No. 80) and the Weiss Parties filed a response (Docket No. 84). This was Kotva's *third* opportunity to show good cause for a protective order.  Kotva failed again.

On April 8, 2006, the Court overruled Kotva's objection and adopted the Discovery Master's order as an order of the Court.  On April 18, 2006, the Weiss Parties asked Kotva to comply with the Court's order.  On May 9, 2006, Kotva produced 59 pages of the over 1,800

pages that were the subject of its protective order, along with year-end audited financial statements for SPV CO for 2004 and 2005. The Weiss Parties promptly sent letters objecting to this meager production. Kotva then produced additional documents that were the subject of the Court's April 8, 2006 Order on May 23, 2006 and June 16, 2006.

In April 2006, the parties filed cross-motions to compel (Docket Nos. 90, 92, 100, 102). On May 26, 2006, the Discovery Master entered an Order deciding these motions (Docket No. 113). On June 2, 2006, Kotva sent the Discovery Master a letter asking for reconsideration of part of the Order.

On June 12, 2006, the Discovery Master entered a second Order (Docket No. 116) in which she rejected Kotva's request for reconsideration. Around 4:00 p.m. on June 12, 2006, Daniel Pasquarello left a voicemail for Benjamin Goldberger in which he requested a Rule 37.1 conference. Around 6:00 p.m. on June 12, 2006—just minutes before the filing deadline—Mr. Pasquarello filed Kotva's Objection. Around 8:30 a.m. on June 13, 2006, Mr. Goldberger returned Mr. Pasqaurello's phone call and left Mr. Pasquarello a voicemail. At 10:30 a.m. on June 13, 2006, Messrs. Pasquarello and Goldberger, accompanied by another attorney and a paralegal respectively, discussed the issues raised in Kotva's objection for approximately twenty-five minutes by telephone. After confirming, on June 14, 2006, that the parties were unable to reach any agreement or narrow the issues, Mr. Pasquarello filed a "supplemental" Rule 37.1 certification.

## II.   KOTVA'S OBJECTION FAILS TO COMPLY WITH THE COURT'S DECEMBER 13, 2005 ORDER APPOINTING DISCOVERY MASTER

The Court's December 13, 2005 Order provides, in pertinent part:

Moreover, before any party on nonparty may file with the court a motion by which review of a ruling of the Discovery Master is sought, the movant must first confer in good faith with all other parties and/or nonparties affected by the ruling, for the purpose of resolving or narrowing the issue(s) as to which review

otherwise would be sought. In any motion for review of ruling of the Discovery Master, the movant must include with the motion a certificate of compliance with this provision of this order. That certification must set forth the information required by Rule 37.1 of the Local Rules. The failure of the movant to include such a certificate shall be grounds for denial, with prejudice, of the motion for review of the Discovery Master's ruling.

December 13, 2005 Order ¶ 6 (emphasis added).

The Weiss Parties submit that leaving a voicemail message two hours before the filing deadline does not constitute a sincere effort "to confer in good faith . . . for the purpose of resolving or narrowing the issue(s) as to which review otherwise would be sought" before filing the Objection. *Id.* This failure is particularly important given the volume of documents at issue with respect to Kotva's request for *in camera* review of privileged documents. There are thousands of communications with Czech counsel, yet Kotva does not focus its request on any particular type of communication or time period.

Counsel for Kotva spoke with counsel for the Weiss Parties twice by telephone on June 9, 2006, but did not even hint that Kotva might file an Objection three days later. Kotva's decision to wait until the afternoon of the filing deadline to request a Rule 37.1 conference smacks of tactical maneuvering and the Court should exercise its discretion to reject Kotva's Objection on the grounds that Kotva failed to comply with the December 13, 2005 Order.

III.  **OBJECTION RELATING TO DOCUMENTS CONCERNING DISPOSITION OF SALE PROCEEDS**

Kotva's objects to the following language in the Discovery Master's Order:

In addition, Kotva shall produce forthwith all documents that concern or evidence the receipt and holding of the proceeds of the sale of the Kotva Department Store, including documents within Kotva's possession or control which describe disbursements by SPV CO of the proceeds.

Kotva's sole objection is that it has been "deprived" of the ability to seek a protective order as to these documents. Nothing could be further from the truth. Kotva has had ten months to seek a protective order, but chose not to. As the Discovery Master wrote:

> Similarly unavailing is Kotva's claim that it has been "preempted" from seeking a protective order with respect to these documents and has not been heard on the issue. The parties are not entitled to a hearing on each and every discovery issue, but in this case, <u>the parties have been afforded ample opportunity to be heard and to file a motion for a protective order.</u> Indeed, Kotva has already filed, and I have ruled on, a motion for a protective order with respect to confidential business information. See Kotva's Motion for Protective Order, dated January 17, 2006; Order of Special Master, February 13, 2006. Accordingly, <u>the notion that Kotva has been "preempted" from filing a motion for a protective order is completely baseless.</u> Finally, Kotva was afforded ample opportunity to address and respond to Weiss's submissions in the hearings held in May. I see no reason for a further hearing or further delay. <u>Even at this juncture, after months and months of delay, Kotva does not articulate a good reason why it should not produce plainly relevant documents forthwith.</u>

June 12, 2006 Order at 2 (emphasis added).

Thus, Kotva's suggestion that the documents may contain confidential information is too little, too late. Kotva had multiple opportunities to raise this objection in the proper form, as provided for by the Rules and the Discovery Master's January 6, 2006 Order, but did not.

Finally, Kotva's bald assertion that "[t]he documents already produced by Kotva about its receipt and holding of the proceeds . . . conclusively demonstrate" that sales proceeds have not been moved out of SPV CO is incorrect. Rather, the documents reveal a number of disbursements totaling approximately $10,000,000 for which Kotva refuses to produce additional documents. The few documents provided do not explain the purposes or recipients of these disbursements. The Court should order Kotva to stop its campaign of delay tactics and produce these documents—requested over ten months ago—immediately.

## IV.    <u>OBJECTION RELATING TO PRIVILEGED DOCUMENTS</u>

Kotva objects to: (1) the Discovery Master's finding that it has not made the sort of threshold showing to justify *in camera* review of privileged communications between the Weiss Parties and Czech counsel; and (2) the Discovery Master's decision to exercise her discretion not to conduct such a review even had Kotva made the requisite showing. Neither the finding nor the exercise of discretion was in error, and either is sufficient to justify the Discovery Master's decision.

With respect to the Discovery Master's finding that Kotva has failed to make the requisite showing to permit *in camera* review, Kotva mischaracterizes the Discovery Master's decision. First, the Discovery Master never suggested that the crime-fraud exception does not apply in civil cases or that a discovering party must make a greater showing in order to permit *in camera* review in civil cases. Rather, the Discovery Master noted that there are different considerations in the context of civil litigation that "counsel the exercise of great caution in piercing the privilege." May 26, 2005 Order at 4. This statement, and the paragraph of which it is part, focuses on the decision whether to pierce the privilege rather than the decision whether to conduct *in camera* review of documents. It is the decision not to conduct *in camera* review that Kotva is appealing.

Second, contrary to Kotva's suggestion, the Discovery Master applied the proper standard in deciding not to conduct *in camera* review of communications with Czech counsel. The Discovery Master made an explicit finding that "Kotva's showing falls short of demonstrating a good faith basis upon which a reasonable person may believe that *in camera* inspection may reveal documents that should lose their status as privileged or protected documents." May 26, 2006 Order at 4. This finding is correct for two reasons.

First, it is undisputed that the Weiss Parties engaged Czech counsel for the purpose of initiating litigation in the Czech Republic. The crime fraud exception does not apply to situations where the client sought the attorney's advice with the intent of legally accomplishing its business goals. Filing a lawsuit is not criminal behavior under U.S. law.[1] The Court should look to U.S. law to determine if the conduct at issue is criminal because "[c]riminal law should be recognized for purposes of federal common law crime-fraud analysis only when it has an analogue in American jurisprudence." *Madanes v. Madanes*, 199 F.R.D. 135, 148 (S.D.N.Y. 2001) (holding that the crime fraud exception did not apply because the alleged crimes were violations of law of Argentina, but the conduct would not constitute a crime in the United States).

Notwithstanding the myriad decisions—including two unpublished First Circuit decisions—holding that filing a lawsuit or threatening to file a lawsuit cannot constitute extortion under U.S. law, Kotva claims in a footnote that there is precedent to the contrary in this Circuit. This assertion is incorrect.

In *Gonzalez-Morales v. Hernandez-Arencibia*, 221 F.3d 45, 51–52 (1st Cir. 2000), the First Circuit did not address the question of whether alleged meritless litigation was a crime that could serve as a RICO predicate. Rather, the First Circuit *assumed for the purpose of argument* that this was the case and rejected the RICO claim on other grounds. *Id.* ("Although we will assume that the filing of frivolous suits may constitute RICO extortion in some instances . . . .

---

[1] *E.g.*, *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088 & n.2 (11th Cir. 2004) (holding that neither threats to litigate nor actual litigation can constitute extortion under federal law); *Deck v. Eng'd Laminates*, 349 F.3d 1253, 1257–58 (10th Cir. 2003) ("[W]e join a multitude of other courts in holding that meritless litigation is not extortion under § 1951."); *I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265, 267 (8th Cir. 1984) ("We cannot agree that the threat [to bring a civil action] alleged here constituted the infliction of 'fear' for purposes of the extortion statute."); *Dias v. Bogins*, No. 97-1612, 1998 U.S. App. LEXIS 536, at *2 (1st Cir. Jan. 13, 1998) (unpublished) ("[A] threat to sue . . . is not extortion under federal law."); *Di Giambattista v. McGovern*, No. 92-1168, 1992 U.S. App. LEXIS 23569, at *10 (1st Cir. Sept. 4, 1992) (unpublished) (same).

[T]he Gonzalezes have not alleged a pattern of racketeering activity. Thus, we need not address whether the other elements of RICO (such as the allegation of an 'enterprise') were pled appropriately.").

In the two cases where the First Circuit squarely confronted the question, it consistently held that "[a] threat to sue, even if groundless and made in bad faith, may be tortious under state law, but it is not extortion under federal law." *Di Giambattista v. McGovern*, No. 92-1168, 1992 U.S. App. LEXIS 23569, at *10 (1st Cir. Sept. 4, 1992) (unpublished); *Dias v. Bogins*, No. 97-1612, 1998 U.S. App. LEXIS 536, at *2 (1st Cir. Jan. 13, 1998) (unpublished) ("[A] threat to sue . . . is not extortion under federal law."). The Court should not read the First Circuit's "assum[ption]" in *Gonzalez* as a decision to depart from the consensus reached by "a multitude of other courts in holding that meritless litigation is not extortion under § 1951." *Deck v. Eng'd Laminates*, 349 F.3d 1253, 1257–58 (10th Cir. 2003).

*Lemelson v. Wang Laboratories, Inc.*, 874 F. Supp. 430 (D. Mass. 1994) is not to the contrary. The counterclaim-plaintiff in *Lemelson* did not even take the position that the filing of a lawsuit was a crime. *See* Exhibit A at 7–9. Instead, it alleged that Lemelson had engaged in a scheme to defraud the U.S. Patent and Trademark Office (the "PTO") to obtain a series of patents. *Id.* The RICO predicates in *Lemelson* were mail fraud and wire fraud—not extortion. *Id.* Thus, *Lemelson* stands for the narrow proposition that a scheme to defraud the PTO can constitute mail fraud or wire fraud.

As an initial matter, it appears that *Lemelson* is no longer good law. In *Semiconductor Energy Laboratory Co. v. Samsung Electronics Co.*, 204 F.3d 1368, 1378–80 (Fed. Cir. 2000), the Federal Circuit held that a scheme to defraud the PTO in order to obtain a patent and then use that patent to extort others does not constitute mail fraud or wire fraud. More importantly, the

conduct alleged in *Lemelson* has no parallel in Kotva's allegations in the case. In this case, Kotva has not alleged a scheme to defraud a third party in order to obtain a right that can serve as the basis of a lawsuit. Instead, it alleges that the filing of the lawsuit is itself a crime.

The notion that petitioning the courts for redress can be a criminal act is so contrary to common understanding that even if it could constitute a crime as a matter of law, Kotva cannot demonstrate that Mr. Weiss had the sort of specific intent to commit a crime that is a necessary component of establishing the crime-fraud exception. *See In re Grand Jury Proceedings*, 417 F.3d 18, 22 (1st Cir. 2005) (holding that the crime-fraud exception applies where the client "sought or employed legal representation *in order to* commit or facilitate a crime or fraud") (emphasis added).

Second, there is no evidence to suggest that the two categories of documents Kotva claims it might find even exist. Kotva states that it hopes to find documents stating that there is no basis under Czech law for the lawsuits. However, experienced Czech counsel did file the lawsuits. Undersigned counsel also filed counterclaims in this case that, according to Kotva, "request[] the same basic relief" as the Czech lawsuits. Kotva's Mem. in Support of Motion to Dismiss "Counterclaim-Plaintiffs" K T and CVF at 8. The mere fact that the lawsuits were filed indicates that no documents stating that the lawsuits lack merit exist. Moreover, as a result of the efforts of Mr. Peterka, a Czech court recently entered an injunction preventing Forminster from voting its shares in order to merge Kotva a.s. with another company.[2] *See* Exhibit B.

The evidence of a "crime" that Kotva identifies in its Objection is the sort of evidence that one would likely see in any settlement discussion in any lawsuit. The Discovery Master correctly described the email that Kotva characterized as "damning" in its Motion to Compel as

---

[2] Kotva also states that it hopes to find documents concerning "the intentional stalling of litigation," but offers no evidence that the Czech litigation has, in fact, been "stalled" by the Weiss Parties.

"an evaluation of litigation and business strategy designed to maintain the value of the Kotva shares rather than 'damning' evidence of extortion." May 26, 2006 Order at 5. The only difference between this case and any other is that Kotva has used its influence over Czech law enforcement to bring sham criminal charges against Mr. Weiss and others.[3]

Finally, the Discovery Master wrote that "[e]ven if Kotva's showing meets *Zolin*'s lesser threshold for *in camera* review, I decline, in the exercise of my discretion, to conduct such review at this time." May 26, 2006 Order at 4. This decision was correct for all the reasons the Discovery Master lays out on pages 4 and 5 of the Order. Kotva places no limits on the review it asks the Discovery Master to undertake, has not offered to pay the substantial expenses involved in reviewing thousands of documents, and has offered no good reason for the Discovery Master—or the Court—to exercise its discretion in Kotva's favor.

## V.    REQUEST FOR SANCTIONS

Kotva's Objection to the Discovery Master's May 26, 2006 Order is Kotva's latest effort to resist legitimate discovery and delay this case. The Objection is not "substantially justified" on the merits. FED. R. CIV. P. 37(a)(4). Rather, its purpose is to impose additional costs, including the costs of delay, on the Weiss Parties. The Objection is part of pattern of discovery abuse that began with Kotva's refusal to produce non-confidential documents unless the Weiss Parties agreed to a burdensome blanket confidentiality order. This resistance continued with a meritless motion for a protective order, an objection to the discovery master's denial of that

---

[3] The Weiss Parties note that counsel for Kotva continues to mischaracterize Weiss's motion for a protective order as a motion filed "to avoid having to invoke the Fifth Amendment privilege against self-incrimination." The motion for a protective order sought to sequence Mr. Weiss's deposition based on the unfairness of Kotva collaborating with the Czech police to bring sham criminal charges and then using the pendency of those charges to improperly refuse to provide discovery. The Discovery Master denied the particular relief sought by Mr. Weiss's Motion, but did enter an order precluding Kotva from taking Mr. Weiss's deposition until it had complied with its outstanding discovery obligations, including answering questions at its 30(b)(6) deposition that it had refused to answer based on the pending criminal investigation in the Czech Republic.

motion, and further delay in producing documents after the Objection was overruled.  Since the latest Objection lacks substantial justification, the Court should sanction Kotva for submitting it.

## VI.    CONCLUSION

For the above reasons, the Court should overrule Kotva's Objection to the Discovery Master's Order.

.                                                    Respectfully Submitted,

ANDREW WEISS, WEISS ASSET MANAGEMENT LLC, K T, INC. and CVF INVESTMENTS LTD.

By their attorneys,


/s/ Edward P. Leibensperger
Edward P. Leibensperger (BBO# 292620)
Benjamin A. Goldberger (BBO# 654357)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts  02109-1775
(617) 535-4000

Dated: June 26, 2006


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system and all attachments will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 26, 2006.

/s/ Edward P. Leibensperger
Edward P. Leibensperger

BST99 1507426-5.072198.0012

11

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JUL 12  10  AM '93

|  |  |
|---|---|
| JEROME H. LEMELSON, as party successor to PATENT INCENTIVES, INC., | ) ) ) ) |
|  Plaintiff and<br> Counterclaim-<br> Defendant, | ) ) ) ) ) |
|  v. | ) ) Civil Action No. 90-11338-K ) |
| WANG LABORATORIES, INC., DATA GENERAL CORPORATION, and APOLLO COMPUTER, INC., | ) ) ) ) |
|  Defendants and<br> Counterclaim-<br> Plaintiffs, | ) ) ) ) ) |
|  v. | ) ) |
| DOES 1.-10., | ) ) |
|  Additional Counter-<br> claim-Defendants. | ) ) ) |

DATA GENERAL'S MEMORANDUM
IN OPPOSITION TO LEMELSON'S
MOTION PURSUANT TO FED. R. CIV. P. 12(b)(6)

MORRIS, NICHOLS, ARSHT & TUNNELL
Douglas E. Whitney
Jack B. Blumenfeld
Julia Heaney
1201 N. Market Street
P.O. Box 1347
Wilmington, DE    19899
(302) 658-9200
  Attorneys for Defendant and
  Counterclaim-Plaintiff
  Data General Corporation

OF COUNSEL:

Sewall P. Bronstein, Esquire
Dike, Bronstein, Roberts & Cushman
130 Water Street
Boston, MA  02109-4260
(617) 523-3400

July 12, 1993



i.

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| TABLE OF CITATIONS |  | ii |
| I. | INTRODUCTION | 1 |
| II. | ARGUMENT | 3 |
|  | A. DGC's RICO Counterclaim Meets The Liberal Standard Of Rule 12(b)(6). | 3 |
|  | B. Lemelson Misapprehends DGC's Statement Of The RICO Enterprise. | 4 |
|  | C. DGC's Counterclaim Contains Sufficient Allegations Of Mail Fraud And Wire Fraud. | 7 |
|  | D. DGC's Counterclaim Sufficiently Alleges Injury To Its Business And Property. | 9 |
| CONCLUSION |  | 12 |

ii.

TABLE OF CITATIONS

Page(s)

Cases

Arzuaga-Collaza v. Oriental Federal Savings
    Bank, 913 F.2d 5 (1st Cir. 1990)                          4,6

Capasso v. Cigna Ins. Co.,
    765 F. Supp. 839 (S.D.N.Y. 1991)                          11

Com-Tech Assoc. v. Computer Associates Intern.,
    753 F. Supp. 1078, 1092 (E.D.N.Y. 1990)                   7

Conley v. Gibson, 355 U.S. 41 (1957)                          3

Doe v. Roe, 958 F.2d 763 (7th Cir. 1992)                      10

Hughes Automatic, Inc. v. Mid-Atlantic
    Toyota Distrib., Inc.,
    543 F. Supp. 1056 (D. Md. 1982)                           4

In Re Healthco Int'l Securities Litigation,
    777 F. Supp. 109 (D. Mass. 1991)                          3

McEvoy Travel Bureau, Inc. v. Heritage
    Travel, Inc., 904 F.2d 786 (1st Cir. 1990)                8

McNally v. United States, 483 U.S. 350 (1987)                8

Miranda v. Ponce Federal Bank, 948 F.2d 41
    (1st Cir. 1991)                                           9

Nodine v. Textron, Inc., 819 F.2d 347 (1st Cir. 1987)        10

Official Publications v. Kable News,
    775 F. Supp. 631 (S.D.N.Y. 1991)                          6

Pujol v. Shearson/American Express, Inc.,
    829 F.2d 1201 (1st Cir. 1987)                             10

Rodriguez v. Banco Central, 777 F. Supp. 1043
    (D. Puerto Rico 1991)                                     7

Roeder v. Alpha Indus., Inc., 814 F.2d 22
    (1st Cir. 1987)                                           9

Rylewicz v. Beaton Services, Ltd.,
    888 F.2d 1175 (7th Cir. 1989)                             11

Schofield v. First Commodity Corp. of Boston,
    793 F.2d 28 (1st Cir. 1986)                               5,6

iii.

TABLE OF CITATIONS (Continued)

Cases                                                      Page(s)

Schmuck v. United States, 489 U.S 705 (1989)                 7

Sedima, S.P.R.L. v. Imrex Co.,
    473 U.S. 479 (1985)                                      9

United States v. Carpenter, 484 U.S. 19 (1987)               8

United States v. Turkette, 452 U.S. 576 (1981)               6


Statutes and Other Authorities

18 U.S.C. § 1341                                             7

18 U.S.C. § 1343                                             7

18 U.S.C. § 1346                                             8

18 U.S.C. § 1962(c)                                          3

18 U.S.C. § 1964(c)                                          3

Fed. R. Civ. P. 12(b)(6)                                    1,3

Fed. R. Civ. P. 12(f)                                        1

Edmund L. Andrews, Rich in the 90's on Ideas
    Hatched in the 50's, N.Y. Times, Nov. 12, 1992           1

J.S. Rakoff and H.W. Goldstein, RICO Civil and
    Criminal Law and Strategy, § 1.04[1][b]                  7


Stewart Yerton, The Sky's the Limit,
    The American Lawyer, May 1993 at 64                      9

1.

## I.    INTRODUCTION

The allegations Data General Corp. ("DGC") sets forth in its RICO counterclaim are based, in part, on Lemelson's coercive enforcement of patents obtained, to a large extent, by material misrepresentations to the U.S. Patent and Trademark Office ("PTO"). By one account, Lemelson has spent much of the last three decades in court pressing lawsuits on many of his nearly 500 patents, making him certainly one of the most litigious patent holders in history. Edmund L. Andrews, Rich in the 90's on Ideas Hatched in the 50's, N.Y. Times, Nov. 12, 1992 at D1 (Exh. A). Much in the same way that Lemelson and others confounded the PTO with webs of succeeding patents and patent applications, they are now attacking U.S. industry through prodigious litigation involving often meritless infringement claims, of which this litigation is one small part.

Not surprisingly, Lemelson has resorted to the same tactics to respond to DGC's RICO allegations in this litigation that he and other counterclaim-defendants have already employed in their illegal scheme to exploit fraudulently obtained patents. Lemelson here moves to dismiss[1] DGC's RICO count for failure to state a claim, but fails to disclose to the Court his deliberate waiver of his

---

[1]    Lemelson titles his brief as a "Memorandum in Support of His Rule 12(b)(6) Motion to Strike Defendant Data General's RICO Counterclaim" but nowhere refers to Fed. R. Civ. P. 12(f). DGC therefore assumes that the motion is brought pursuant to Fed. R. Civ. P. 12(b)(6) and not a Motion to Strike under 12(f).

2.

parallel challenge to a very similar RICO claim against him in
another jurisdiction.  In <u>Mitsubishi Electric Corp. v. Jerome
H. Lemelson</u>, No. SA CV-93-142-LHM (RwRx) (C.D. Cal.), Lemelson
originally filed a motion to dismiss Mitsubishi's RICO counts
(Exh. B), but when Lemelson succeeded in having the case
transferred to the District of Nevada, No. CV-N-93-380 HDM, he
answered Mitsubishi's complaint (Exh. C) and thereby admitted
the sufficiency of the RICO pleading.  Lemelson surely cannot
argue, as he now must here, that a RICO claim against him is
viable only on his own turf.

3.

II.   ARGUMENT

    A.   DGC'S RICO Counterclaim Meets The
        Liberal Standard Of Rule 12(b)(6).

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the challenged pleading must be construed in a light most favorable to the pleader, and its allegations taken as true.  Furthermore, as Lemelson correctly concedes, the RICO counterclaim can be dismissed only if it appears beyond doubt that DGC can prove no set of facts which would entitle it to relief.  In Re Healthco Int'l Securities Litigation, 777 F. Supp. 109, 112-13 (D. Mass. 1991); Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

DGC's counterclaim alleges facts sufficient to support all of the elements of a RICO claim under 18 U.S.C. § 1962(c) and its standing under 18 U.S.C. § 1964(c). Specifically, DGC's RICO counterclaim alleges that Lemelson and other counterclaim-defendants (1) are associated with an enterprise consisting of the counterclaim-defendants and other members (¶ 46); (2) are participating in a pattern of racketeering activity through acts of mail and wire fraud, which affects interstate commerce (¶¶ 46-48); and that DGC (3) is suffering injury in its business and property by having to incur the cost of defending this lawsuit, which is one small part of Lemelson's larger scheme (¶ 49).

DGC will require discovery on its RICO counterclaim in order to identify the additional counterclaim-defendants and non-parties which comprise the illegal RICO enterprise.

4.

In its pleading, DGC has alleged that the counterclaim-defendants include the lawyer teams and corporate entities, as a whole or in various sub-groups, who have committed the repeated acts of mail and wire fraud which constitute the RICO predicate acts. Simply because DGC does not, at this time, have enough information to specify every RICO defendant does not subject its RICO counterclaim to dismissal. See Hughes Automatic, Inc. v. Mid-Atlantic Toyota Distrib., Inc., 543 F. Supp. 1056, 1058 (D. Md. 1982) (when proof is in the hands of the alleged defendants, such as with antitrust conspirators, dismissal for failure to state a claim is particularly inappropriate).

      B.    Lemelson Misapprehends DGC's State-ment Of The RICO Enterprise.

Lemelson attacks DGC's statement of the RICO enterprise in its counterclaim on the ground that it consists entirely of defendants (Lemelson Mem. at 14), relying on the rule in this Circuit that the alleged RICO defendants must be an entity distinct from the § 1962(c) enterprise. Arzuaga-Collazo v. Oriental Federal Savings Bank, 913 F.2d 5, 6 (1st Cir. 1990). Lemelson, however, misapprehends DGC's statement of the RICO enterprise in paragraph 46 of the counterclaim:

> Together as a whole or in various sub-groups of lawyer teams and corporate entities, plaintiff, the additional counterclaim-defendants and non-parties constitute one or more RICO enterprises within the meaning of 18 U.S.C. § 1961(4), consisting of an association-in-fact for the purpose of procuring and exploiting plaintiff's patents, and have

5.

> engaged in, or the activities of which
> affect, interstate commerce. (emphasis
> added).

DGC's counterclaim distinguishes the RICO defendants from the enterprise by alleging that Lemelson and some persons (as yet undetermined) among his lawyers, representatives, agents and associated corporations, are culpable, and that the enterprise is the unlawful association of those culprits with other non-parties in their law firms or corporations, as well as the law firm partnerships and corporations themselves, which have conspired for the purpose of procuring and exploiting Lemelson's patents. Thus, the enterprise includes persons who are not alleged to be RICO defendants.

Furthermore, DGC's statement of the RICO enterprise and defendants in its counterclaim finds support in the rationale which courts of this Circuit have stated when requiring the RICO enterprise to be distinct from the defendants. In Schofield v. First Commodity Corp. of Boston, 793 F.2d 28, 30 (1st Cir. 1986), the court analyzed the language of § 1962(c) and found:

> The enterprise is mentioned in the
> section [1962(c)] only as the instrument
> of the person doing the racketeering, and
> there is no suggestion that the enter-
> prise also may be liable, even if it is a
> wholly illegitimate operation.

Looking to the legislative history surrounding RICO, the Schofield court reasoned that because the primary purpose of RICO is to cope with the infiltration of legitimate businesses, section 1962(c) should reach the criminal but

6.

protect the victimized enterprise from liability. <u>Id.</u> at 31. Lemelson and his co-conspirators have allegedly done just that, in combination with legitimate entities and individuals.

Here, DGC alleges the existence of an illegitimate enterprise,[2] but DGC is not seeking to impose liability on the enterprise as an entity. Rather, DGC alleges that certain actors separate from the enterprise -- Lemelson and those who aided him in committing the RICO predicate acts -- should be held liable. In <u>Arzuaga-Collazo</u>, 913 F.2d at 6, the First Circuit granted a motion to dismiss a RICO complaint which named a bank and its subsidiary as both defendants and the enterprise, but the court recognized that that defect in the complaint would have been corrected if it named as the enterprise the business the defendants ran. DGC's counterclaim is correctly framed that way.

Contrary to Lemelson's assertions, DGC's statement of the RICO defendants and the enterprise is <u>not</u> analogous to instances where courts have rejected the theory that a corporation can be a RICO defendant, and the corporation and its officers, the RICO enterprise. <u>E.g.</u>, <u>Official Publications v. Kable News</u>, 775 F. Supp. 631 (S.D.N.Y. 1991). Those cases are distinguishable on their facts because DGC alleges that a network of multiple corporations, law firms, and individuals -- both culprits and innocents -- associated

---

2    The Supreme Court has held that "enterprise" as used in RICO encompasses both legitimate and illegitimate enterprises. <u>United States v. Turkette</u>, 452 U.S. 576 (1981).

7.

with them, constitute the enterprise.    Unlike <u>Rodriguez v. Banco Central</u>, 777 F. Supp. 1043, 1054 (D. Puerto Rico 1991), and other cases cited by Lemelson, DGC has not named a single corporation and its employees, subsidiaries or agents as an association-in-fact enterprise "in order to save as defendants all the corporate entities in the scheme, often the deep pockets." DGC has alleged that Lemelson has crafted teams of lawyers and a network of law firms and corporations as his unlawful enterprise.

C.    DGC's    Counterclaim    Contains
Sufficient Allegations Of Mail Fraud
And Wire Fraud.

Mail fraud and wire fraud, the predicate acts of DGC's RICO counterclaim, are among the broadest of all criminal statutes.    J. S. Rakoff and H. W. Goldstein, <u>RICO Civil and Criminal Law and Strategy</u>, § 1.04[1][b] (1993). DGC's counterclaim (¶ 47) alleges the three elements of mail or wire fraud:  (1) a scheme to defraud or to obtain money or property by means of false pretenses, representations or promises; (2) use of the mails or interstate wires for the purpose of executing the scheme; and (3) specific intent to defraud, by devising, participating in or abetting the scheme. 18 U.S.C. § 1341; 18 U.S.C. § 1343.    The mail and wire fraud statutes do not require that the injury complained of stem directly from the mail or wire communication at issue.    <u>Com-Tech Assoc. v. Computer Associates Intern.</u>, 753 F. Supp. 1078, 1092 (E.D.N.Y. 1990) <u>citing</u> <u>Schmuck v. United States</u>, 489 U.S 705 (1989) (denying motion to dismiss RICO claim on ground

8.

that predicate act of mail fraud does not require injury from each isolated act of mailing). Rather, the communication need only be in furtherance of a scheme which itself intentionally or recklessly causes the harm. <u>Id.</u>

Lemelson's assertions that the mail and wire fraud statutes require more than DGC has pled are simply wrong. Contrary to Lemelson's misstatement of the law[3] (Lemelson Mem. at 8), the mail and wire fraud statutes do not require that the specific communication in issue be aimed at depriving some person or entity of property. Lemelson's and the other counterclaim-defendants' acts of deception of the PTO through the use of mail and wires constitute actionable mail and wire fraud, because the statements were made in furtherance of Lemelson's fraudulent scheme to obtain and exploit patents. In addition, Lemelson's scheme has involved use of the mail and wires to obtain wrongfully the payments of money for licenses on the fraudulently obtained patents and to bring baseless lawsuits such as this. The counterclaim-defendants'

---

[3]    Indeed, Lemelson's citation of <u>McNally v. United States</u>, 483 U.S. 350 (1987), despite his explanatory footnote (Lemelson Mem. at n. 3), is misleading, because <u>McNally</u> has subsequently been narrowed, <u>see</u> <u>United States v. Carpenter</u>, 484 U.S. 19 (1987), and reversed in part by the enactment of 18 U.S.C. § 1346, which makes breaches of fiduciary duty actionable as mail and wire frauds. Lemelson's attempt to explain the effect of § 1346 on <u>McNally</u> completely misses the mark. Likewise, Lemelson's citation to <u>McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.</u>, 904 F.2d 786, 791 (1st Cir. 1990), is misleading because <u>McEvoy</u> applied the old <u>McNally</u> rule that a breach of duty, standing alone, cannot constitute mail fraud, but there must be a specific intent to deprive another of property.

9.

actions are not "practices employed by all businesses," as Lemelson asserts (Lemelson Mem. at 9). Normal business practices do not involve singling out a group of unknown business executives in a crowded nightclub, for future targets, as Lemelson's lead lawyer reportedly did ("I've never heard of them. . . . But I'm sure they'll be defendants sooner or later"). Stewart Yerton, <u>The Sky's the Limit</u>, The American Lawyer, May 1993 at 64, 69 (Exh. D).

        D.    DGC's    Counterclaim    Sufficiently
              Alleges Injury To Its Business And
              <u>Property.</u>

Since the Supreme Court decided <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479 (1985), the law has been clear that a RICO plaintiff need allege only that its injury proximately results from the underlying predicate offenses which are the basis of the RICO claim.[4] <u>See</u>, <u>e.g.</u> <u>Roeder v. Alpha Indus., Inc.</u>, 814 F.2d 22, 29 (1st Cir. 1987)("Recovery under RICO, however, is not limited to direct victims. . . . Damages that 'flow from the commission of the predicate acts' are recoverable"); <u>Miranda v. Ponce Federal Bank</u>, 948 F.2d 41, 46-47 (1st Cir. 1991)("In order to prevail under 18 U.S.C. § 1962(c), a plaintiff must establish a causal relationship between the racketeering predicates and her asserted injury.")

---

[4]    Furthermore, as the Supreme Court stated in <u>Sedima</u> at 495, "Given that 'racketeering activity' consists of no more and no less than commission of a predicate act, § 1961(1) . . . . There is no room in the statutory language for an additional, amorphous 'racketeering injury' requirement," as Lemelson would lead the Court to believe (Lemelson Mem. at 5).

10.

DGC has alleged adequately that its injury resulted from Lemelson's unlawful exploitation and enforcement of fraudulently obtained patents.

The First Circuit authorities, cited in Lemelson's fabricated "injury" requirement, are distinguishable cases of whistleblowers who were not injured by the predicate acts of their employers. In <u>Pujol v. Shearson/American Express, Inc.</u>, 829 F.2d 1201, 1205 (1st Cir. 1987), a fired employee's allegation that his injury was caused by his employer's defrauding of investors was dismissed because the employee was not himself an investor or in any way a target of the pleaded predicate acts. Similarly, in <u>Nodine v. Textron, Inc.</u>, 819 F.2d 347, 348 (1st Cir. 1987), the court held that the RICO plaintiff's "injury resulted from Textron's decision to fire him after he reported the customs scheme to his superiors. Firing Nodine under these circumstances was wrong, but it did not violate the RICO act." On the other hand, the injury DGC has suffered clearly flows from the precise conduct of Lemelson which constitutes the predicate acts.

Finally, the costs DGC is incurring in defending this lawsuit against Lemelson clearly constitute injury to business and property within the meaning of RICO's § 1964(c) injury requirement. The cases which Lemelson cites for its specious argument that the costs of defending against baseless litigation do not constitute "injury" are distinguishable. In <u>Doe v. Roe</u>, 958 F.2d 763, 770 (7th Cir. 1992), the court's decision to dismiss the plaintiff's allegation that her

11.

employment of a new attorney to represent her in a divorce action was an "injury", turned on the rule that <u>personal</u> injuries, rather than injury to business or property, are not recoverable under RICO.    In <u>Rylewicz v. Beaton Services, Ltd.</u>, 888 F.2d 1175, 1179 (7th Cir. 1989), the court's decision rested on the longstanding rule that stockholders may not bring individual claims under RICO for diminution in the value of the corporation.  In another RICO suit stemming from a divorce action, <u>Capasso v. Cigna Ins. Co.</u>, 765 F. Supp. 839, 842-43 (S.D.N.Y. 1991), the court dismissed the plaintiff's allegation that her divorce attorney's fees constituted property injury, on the ground that the defendants' fraudulent scheme with her former husband could not reasonably have been contemplated to increase her fees in the divorce.  All of these cases clearly are far removed from DGC's allegations, and none supports dismissal of its RICO counterclaim.

12.

### CONCLUSION

DGC's counterclaim alleges the necessary elements of a RICO claim. Furthermore, Lemelson has admitted the viability of a very similar RICO claim against him in another jurisdiction. For the foregoing reasons, Lemelson's motion to dismiss DGC's RICO counterclaim should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL

Douglas E. Whitney
Jack B. Blumenfeld
Julia Heaney
1201 N. Market Street
P.O. Box 1347
Wilmington, DE    19899
(302) 658-9200
  Attorneys for Defendant and
  Counterclaim-Plaintiff
  Data General Corporation

OF COUNSEL:

Sewall P. Bronstein, Esquire
Dike, Bronstein, Roberts & Cushman
130 Water Street
Boston, MA    02109-4260
(617) 523-3400

July 12, 1993

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail, hand on July 12, 1993.

# EXHIBIT B

**ORIGINAL COPY**

6 T 5/2005-19108

# RESOLUTION

The Regional Court in Hradec Králové adopted through the presiding judge on 15 June 2006 in the criminal case of **Mr. Miroslav Hálek,** born on December 12, 1956 in Semily, entrepreneur, domiciled at Hradec Králové, Mužíkova St. 336, **Mr. Jan Cholasta,** born on May 12, 1963 in Zlín, entrepreneur, domiciled in Jaroměř, Lánského St. 838, **Mr. Michal Plachta,** born on September 9, 1965 in Turnov, entrepreneur, domiciled in Jablonec nad Nisou, Budovatelů St. 21, **Mr. Pavel Šrejtr,** born on December 20, 1958 in Hradec Králové, entrepreneur, domiciled in Hradec Králové, Nad Rozárkou St. 1745, **Mr. Luďek Spriňar,** born on March 6, 19696 in Hradec Králové, entrepreneur, domiciled in Hradec Králové, Šmilovského St. 1154, **Mr. Miroslav Vlastník,** born on November 17, 1967 in Hradec Králové, entrepreneur, domiciled in Hradec Králové, Kyjevská St. 444, current whereabouts unknown, **Mr. Libor Páv,** born on June 9, 1969 in Hradec Králové, entrepreneur, domiciled in Hradec Králové Turinského St. 1671, **Mr. Aleš Machalíček,** born on September 7, 1943 in Zlín, entrepreneur, domiciled in Prague 9 – Újezd nad Černými Lesy, Ranská St. 1032, **Mr. Jiří Trnka,** born on April 7, 1948 in Poděbrady, entrepreneur, domiciled in Hradec Králové, Dukelská St. 1643, **Mr. Václav Dius, PhD,** born on February 12, 1960 in Jičín,  entrepreneur, domiciled in Ústí nad Labem, Pavla Stránského St. 77 and **Mr. Petr Kožený,** born on June 29 1961 in Čáslav, entrepreneur, domiciled at Františka Halase St. 64/3, Hradec Králové, accused of the commission of the crime of a violation of good business practises under Section 127(1)(2) of the Criminal Code and  the crime of insider trading under Section 128(2)(4) of the Criminal Code, **the following resolution:**

Under the provisions of Section 79c(3) of the Criminal Procedure Code, the court hereby **e x t e n d s** the injunction issued by the Regional Public Prosecutor of Hradec Králové of 12 May 1997, reg. no. KZv 323/97, for the registration of a freezing order on the exercise of shareholder rights attached to securities pursuant to the provisions of Section 27(3)(d) of Act No. 591/1992 Coll., as amended, pursuant to the provisions of Section 79(1) of the Criminal Procedure Code, until the effective termination of the criminal proceedings, for the following entities:

1/ IFM, a.s., seated at Škroupova St. 9, ZIP: 500 02, Hradec Králové, BIN: 0060913916
- 1,000 shares in Kotva Praha, a.s., ISIN CZ 0009048955
- 802 shares in SVÚOM Praha, ISIN CZ 0005087353

2/ FIREX, a.s., seated at Škroupova St. 9, ZIP: 500 02, Hradec Králové, BIN: 0045534128
- 832 shares in Nápojová technika, ISIN CZ 0005027853

- 8,000 shares in Kotva Praha, a.s., ISIN CZ 0009048955

3/ GENTA, a.s., seated at Škroupova St. 441, ZIP: 500 02, Hradec Králové, BIN: 0064789748
- 393 shares in SVÚM Praha, ISIN CZ 0005092056

4/ Krávlovéhradecká Brokerská, a.s., seated at Škroupova St. 9, ZIP: 500 02, Hradec Králové, BIN: 0060914122
- 2,492 shares in SVÚOM Praha, ISIN: CZ 0005087353

5/ Jiří Mareš, domiciled at Jáchymovská St. 275, ZIP: 460 10, Liberec 10, birth identification no. 540626/2048
- 45,497 shares in SVÚOM Praha, ISIN CZ 0005087353

6/ FORMINSTER ENTERPRISES LIMITED, seated at 20 Queen Frederica Street, 999 99 El Greco House (the registration card of the Prague Securities Centre of 14 January 1996 reads "FORMINSTER" as the applicant's business name...), BIN: 0090012606
- 384,971 shares in Kotva Praha, a.s., ISIN CZ 0009048955

7/ IFM Melodia, s.r.o., Na Hrázce St. 241, ZIP: 500 09, Hradec Králové, BIN: 0013585274
- 56,000 shares in KOTVA Praha, a.s., ISIN CZ 0009048955

**In the following manner:**

As regards the shares held by the following entities:

a/ IFM, a.s., in liquidation, seated in Brno, Soběšická St. 151, ZIP: 638 00, BIN: 609 13 916 (formerly IFM, a.s., seated at Škroupova St. 9, ZIP: 500 02, Hradec Králové, BIN: 0060913916)
- 1,000 shares in Kotva Praha, a.s., ISIN CZ 0009048955,

b/ FIREX, akciová společnost, at Škroupova St. 9, ZIP: 500 02, Hradec Králové, BIN: 455 34 128 (formerly FIREX, a.s., seated at Škroupova St. 9, ZIP: 500 02, Hradec Králové, BIN: 0045534128)
- 8,000 shares in Kotva Praha, a.s., ISIN CZ 0009048955,

c/ FORMINSTER ENTERPRISES LIMITED, seated at 20 Queen Frederica Street, 999 99 El Greco House (the registration card of the Prague Securities Centre of 14 January 1996 reads "FORMINSTER" as the applicant's business name...), BIN: 0090012606
384,971 shares in Kotva Praha, a.s., ISIN CZ 0009048955 and

d/ MELODIA, spol. s.r.o., seated in Hradec Králové, Na Hrázce St. 241, BIN: 135 85 274 (formerly IFM Melodia, s.r.o., Na Hrázce St. 241, ZIP: 500 09, Hradec Králové, BIN: 0013585274)
- 56,000 shares in Kotva Praha, a.s., ISIN CZ 0009048955.

**It is further decided that** due to the freezing order **it is not possible to exercise a particular right attached to the above-defined book-entered securities – the right to exercise votes by those shares at general meetings.**

# Reasoning

On 12 May 1997, the supervising Public Prosecutor of the Regional Public Prosecutor's Office in Hradec Králové issued, under reg. no. KZv 323/97, an injunction for the registration of a freezing order on the exercise of the right to transfer shares pursuant to the provisions of Section 27(3)(d) of Criminal Code Act No. 591/1992 Coll., on Securities, as subsequently amended, for the following entities: IFM, a.s., seated at Škroupova St. 9, ZIP: 500 02, Hradec Králové, BIN: 0060913916 (1,000 shares in Kotva Praha, a.s., ISIN CZ 0009048955 and 802 shares in SVÚOM Praha, ISIN CZ 0005087353), FIREX, a.s., seated at Škroupova St. 9, ZIP: 500 02, Hradec Králové, BIN: 0045534128 (832 shares in Nápojová technika, ISIN CZ 0005027853 and 8,000 shares in Kotva Praha, a.s., ISIN CZ 0009048955), GENTA, a.s., seated at Škroupova St. 441, ZIP: 500 02, Hradec Králové, BIN: 0064789748 (393 shares in SVÚM Praha, ISIN CZ 0005092056), Krávlovéhradecká Brokerská, a.s., seated at Škroupova St. 9, ZIP: 500 02, Hradec Králové, BIN: 0060914122 (2,492 shares in SVÚOM Praha, ISIN: CZ 0005087353), Jiří Mareš, domiciled at Jáchymovská St. 275, ZIP: 460 10, Liberec 10, birth identification no. 540626/2048 (45,497 shares in SVÚOM Praha, ISIN CZ 0005087353), FORMINSTER ENTERPRISES LIMITED, seated at 20 Queen Frederica Street, 999 99 El Greco House (the registration card of the Prague Securities Centre of 14 January 1996 reads "FORMINSTER" as the applicant's business name...), BIN: 0090012606 (384,971 shares in Kotva Praha, a.s., ISIN CZ 0009048955) and IFM Melodia, s.r.o., Na Hrázce St. 241, ZIP: 500 09, Hradec Králové, BIN: 0013585274 (56,000 shares in KOTVA Praha, a.s., ISIN CZ 0009048955). According to the opinion then supervising Public Prosecutor of the Regional Public Prosecutor's Office in Hradec Králové, the said securities represented an object of criminal activities, or the proceeds of crime, and had a crucial connection with grave crimes against property committed. The injunction was meant to prevent the completion of a series of illegal securities transfers and it was issued to apply until the definitive and effective conclusion of the relevant criminal proceedings. The above-referenced injunction of 12 May 1997, reg. no. KZv 323/97, revoked the previous injunction of the then supervising Public Prosecutor of the Regional Public Prosecutor's Office in Hradec Králové issued on 11 March 1997 under reg. no. KZv 323/97.

At the present time, the trial on the crimes indicated above is being held before the Regional Court in Hradec Králové. The above-described means of securing the book-entered shares remain effective for the same reason – the suspicion that the said securities represent the proceeds of crimes committed by the accused. In the court's opinion, the present circumstances of the case (with reference to the state of facts in the matter tried) do not allow for a cancellation or restriction of the means serving to secure the book-entered shares issued by Kotva, a.s., seated at Náměstí republiky 8, Prague 1, ISIN CZ 0009048955 which are held by the above-listed entities in special proprietary accounts kept with the Prague Securities Centre. As far as this issue is concerned, the court has dismissed repeated applications for the cancellation of the said securing means. From the documents presented to the court it follows that the general meeting of K-T-V invest, a.s., (formerly Kotva, a.s.) was summoned to be held on 22 June 2006; at this general meeting, a proposal for a merger with ČESKÁ

INVESTIČNÍ A SPRÁVCOVSKÁ, a.s., is intended to be presented to the shareholders. If the proposed merger is approved, K-T-V invest, a.s., will cease to exist, i.e. will be cancelled without liquidation, and its assets, including labour law rights and obligations, are to be conveyed to the successor company, ČESKÁ INVESTIČNÍ A SPRÁVCOVSKÁ, a.s. In consequence of that, the present shares issued by K-T-V invest, a.s., should be cancelled and replaced with new shares in the successor company issued in documentary form. The changes outlined would also affect the shares whereto the Public Prosecutor's Office injunction applies. The court had at its disposal, and took into consideration, an invitation to the general meeting held on 22 June 2006 by K-T-V invest, a.s., a draft of the agreement on merger by unification, a Joint Expert Report on the Merger, Analysis of Partnership Co-Investment Strategy – August 2005 and other relevant resources.

In the court's opinion, the above-outlined procedure circumvents the decision of the Public Prosecutor – the injunction for the registration of the freezing order on the exercise of the shareholder's right to transfer the shares the purpose of which was to prevent the completion of the allegedly illegal transfers of the securities; for this reason, the injunction issued was to remain in force until the definitive and effective conclusion of the relevant criminal proceedings. In the present case this circumvention is based on the fact that the securing injunction will loose effect, if the above-outlined scheme is completed, irrespective of the will of the criminal procedure authorities; moreover, the form of the shares would be changed and, further, the new shares would be issued with a lower nominal value than the original shares whereby the value of the property secured under criminal proceedings might be diminished. Therefore, the court has decided, as given in the main statement of this resolution, to extend under the provisions of Section 79c(3) of the Criminal Procedure Code the scope of the original securing of the shares held by the following entities: IFM, a.s., in liquidation, seated in Brno, Soběšická St. 151, ZIP: 638 00, BIN: 609 13 916 (formerly IFM, a.s., seated at Škroupova St. 9, ZIP: 500 02, Hradec Králové, BIN: 0060913916) - 1,000 shares in Kotva Praha, a.s., ISIN CZ 0009048955; FIREX, akciová společnost, at Škroupova St. 9, ZIP: 500 02, Hradec Králové, BIN: 455 34 128 (formerly FIREX, a.s., seated at Škroupova St. 9, ZIP: 500 02, Hradec Králové, BIN: 0045534128) - 8,000 shares in Kotva Praha, a.s., ISIN CZ 0009048955; FORMINSTER ENTERPRISES LIMITED, seated at 20 Queen Frederica Street, 999 99 El Greco House (the registration card of the Prague Securities Centre of 14 January 1996 reads "FORMINSTER" as the applicant's business name…), BIN: 0090012606 - 384,971 shares in Kotva Praha, a.s., ISIN CZ 0009048955 and MELODIA, spol. s.r.o., seated in Hradec Králové, Na Hrázce St. 241, BIN: 135 85 274 (formerly IFM Melodia, s.r.o., Na Hrázce St. 241, ZIP: 500 09, Hradec Králové, BIN: 0013585274) - 56,000 shares in Kotva Praha, a.s., ISIN CZ 0009048955 in such a manner that a particular shareholder right attached to the said shares – the right to exercise votes by those shares at general meetings is prohibited.

Notice of Appeal:     A complaint may be filed against this resolution **within 3 days** of the notification hereof to the High Court in Prague via the Regional Court in Hradec Králové. The complaint does not have suspensory effects on this resolution (Section 79(c)(4) of the Criminal Procedure Code in connection with Section 79a(5) and Section 141(4) of the Criminal Procedure Code). The account owner has the right to request that the securing be cancelled or restricted at any time. If the request is dismissed, the account owner may file **14 days after** the court's

decision takes legal effect unless the account owner has new reasons for such a request to present to the court (Section 79a(4) of the Criminal Procedure Code).

In Hradec Králové on 15 June 2006

JUDr. Luboš Sovák
Presiding Judge

*Signature*