UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s., <br><br>       Plaintiff, <br><br>   v. <br><br> ANDREW WEISS and WEISS ASSET MANAGEMENT, LLC, <br><br>       Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) |
| ANDREW WEISS, WEISS ASSET MANAGEMENT LLC, K T, INC. and CVF INVESTMENTS, LTD., <br><br>       Counterclaim-plaintiffs, <br><br>   v. <br><br> KOTVA a.s., MARTIN BENDA, RICHARD HARAZIM, FORMINSTER ENTERPRISES, LTD., SPV CO and JOHN DOES 1–5, <br><br>       Counterclaim-defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

C.A. No. 05-10679-RCL

**UNOPPOSED MOTION OF ANDREW WEISS
AND WEISS ASSET MANAGEMENT LLC FOR LEAVE TO FILE REPLY
IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS**

Pursuant to Local Rule 7.1(b)(3), Andrew Weiss and Weiss Asset Management LLC

hereby move for leave to file a Reply Memorandum in Support of Their Motion for Judgment on

the Pleadings (the "Reply"), which is attached hereto.  The Reply addresses statements and

arguments made by Kotva a.s. in its Opposition, including misstatements regarding Kotva's

rights under the purchase and sale agreement at the core of Kotva's complaint and cases cited by

Kotva in opposition to the Defendants' Motion.

Counsel for Kotva a.s. has stated that Kotva will not oppose this motion.

Respectfully submitted,

ANDREW WEISS and WEISS ASSET
MANAGEMENT LLC

By their attorneys,

/s/ Benjamin A. Goldberger
Edward P. Leibensperger (BBO# 292620)
Benjamin A. Goldberger (BBO# 654257)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts  02109-1775
(617) 535-4000

Dated: July 17, 2006

## LOCAL RULE 7.1 CERTIFICATE OF CONSULTATION

I, Benjamin A. Goldberger, hereby certify that I conferred with counsel for Kotva a.s., and attempted in good faith to resolve or narrow the issues presented by this motion.  Counsel for Kotva a.s. has stated that he will not oppose this motion.

/s/ Benjamin A. Goldberger
Benjamin A. Goldberger

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system and all attachments will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 17, 2006.

/s/ Benjamin A. Goldberger
Benjamin A. Goldberger

BST99 1510065-1.072198.0012

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ANDREW WEISS and WEISS ASSET | ) |
| MANAGEMENT, LLC, | ) |
| | ) |
| Defendants. | ) |
| | )    C.A. No. 05-10679-RCL |
| | ) |
| ANDREW WEISS, WEISS ASSET | ) |
| MANAGEMENT LLC, K T, INC. and CVF | ) |
| INVESTMENTS, LTD., | ) |
| | ) |
| Counterclaim-plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| KOTVA a.s., MARTIN BENDA, RICHARD | ) |
| HARAZIM, FORMINSTER ENTERPRISES, | ) |
| LTD., SPV CO and JOHN DOES 1–5, | ) |
| | ) |
| Counterclaim-defendants. | ) |
| | ) |

**REPLY MEMORANDUM OF ANDREW WEISS AND WEISS ASSET MANAGEMENT LLC IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS**

I.    **KOTVA  HAS NO RIGHTS TO THE SALE PROCEEDS UNDER THE SHARE PURCHASE AGREEMENT**

Engaging in a sleight of hand that crosses the line between zealous advocacy and an attempt to mislead the Court, Kotva argues that it "was the seller of the Shopping Centre and, under the express terms of the Share Purchase Agreement, may exercise rights to the sale proceeds."  Opp. at 1.  In support of this argument, Kotva quotes at length from the Share Purchase Agreement (the "SPA"), describing what it claims are "Kotva's" rights and obligations

under the Agreement. *Id.* at 7 & n.1. However, Kotva misleads the Court by failing to acknowledge the fact that the word "Kotva" in the SPA *does not refer to the plaintiff, Kotva a.s.* Rather, the word "Kotva" refers to another company: a limited partnership called Kotva Nemovitosti k.s. Page 1 of the SPA defines the relevant terms:

| Defined Term in SPA | Corresponding Company |
|---|---|
| Seller | SPV CO Limited |
| Buyer | CRQ Czech a.s. |
| SPV KN | SPV KN a.s. |
| **Kotva** | **Kotva Nemovitosti, k.s.,** *__not the Plaintiff__* |
| Markland | Markland Holdings Limited |
| **KAS** | **Kotva a.s.,** *__the Plaintiff__* |
| KO | Kotva Obchodni, a.s. |

SPA at 1, Def.'s Mem. at 4 n.3.

Replacing the defined terms with the names of the corresponding companies, the portion of the SPA quoted by Kotva on page 7 of its Opposition (in an attempt to show that it was entitled to the proceeds of the sale of the Department Store) provides that:

> *If the nature of rights and obligations under this Agreement enables so, [SPV CO Limited's] rights and obligations under this Agreement may be fulfilled and exercised by **[Kotva Nemovitosti k.s.]** and [CRQ Czech a.s.'s] rights and obligations under this Agreement may be fulfilled and exercised by [Markland Holdings Limited].*

> [SPV CO Limited] and **[Kotva Nemovitosti k.s.]** are jointly and severally liable for the fulfillment of the obligations of either of them arising out of this Agreement. **[Kotva Nemovitosti k.s.]**, *[Kotva a.s.] and [Kotva Obchodni, a.s.] jointly and severally guarantee the fulfillment of [SPV CO Limited's] and **[Kotva Nemovitosti k.s.'s]** obligations arising out of this Agreement.* [CRQ Czech a.s.] and [Markland Holdings Limited] are jointly and severally liable for the fulfillment of the obligations of either of them arising out of this Agreement.

SPA, §§ 2.5–2.6 (emphasis added).

The sole damages that Kotva alleges in its Complaint are that it did not receive the proceeds of the sale of the Department Store as quickly as it would have liked. *See* Compl. ¶¶ 37–39. As illustrated above, according to the SPA Kotva has no rights to the sale proceeds and

was never going to receive any money as a result of the Department Store sale. Thus, the express terms of the SPA provide that SPV CO—rather than the plaintiff—is the allegedly injured party.

SPV CO, however, has explicitly rejected this Court as a forum for this dispute and the Court recently granted SPV CO's motion to dismiss for lack of personal jurisdiction. Kotva's attempt to claim damages for injury to SPV CO while shielding SPV CO from this Court's jurisdiction is fatal to Kotva's claims. Kotva cannot pick and choose which companies are exposed to the jurisdiction of this Court when filing a lawsuit by claiming for itself damages suffered by a subsidiary of a subsidiary, alternatively using the corporate veil as a sword and a shield.

Kotva asserts, in the alternative, that it is entitled to a daisy chain recovery of damages for the diminution in value of its limited partnership interest in Kotva Nemovitosti resulting from the diminution in value of Kotva Nemovitosti's shares in SPV CO. However, the cases Kotva cites offer no support for this novel legal theory. Rather, in *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 210 F.3d 1 (1st Cir. 2000), Judge Stearns granted a motion in limine precluding the plaintiff from presenting evidence of its wholly owned subsidiary's damages—in that case lost profits. *Id.* at 16. The First Circuit affirmed. *Id.* at 16–17. In *Eateries v. J.R. Simplot Co.*, 346 F.3d 1225, 1229–30 (10th Cir. 2003), the Tenth Circuit did not even address this issue as the appellant had taken one position before the trial court and the opposite position on appeal.

Kotva's blanket assertion that it can recover for damage to a company (SPV CO) owned by a partnership (Kotva Nemovitosti k.s.) in which Kotva has a partnership interest is contradicted by controlling precedent. The First Circuit has squarely held that:

> In order to establish Article III standing, a plaintiff must have a "personal stake in the outcome of the controversy." *Baker v. Carr*, 369 U.S. 186, 204 (1962). And, "[a]ctions to enforce corporate rights or redress injuries to [a] corporation cannot be maintained by a stockholder in his own name . . . even though the injury to the

corporation may incidentally result in the depreciation or destruction of the value of the stock." *Pignato v. Dein Host, Inc.*, 835 F.2d 402, 406 (1st Cir. 1987) (quoting *Brictson v. Woodrough*, 164 F.2d 107, 109 (8th Cir. 1947)). This standing rule applies even when there is only one shareholder in a corporation. *See id.*

*Diva's Inc. v. City of Bangor*, 411 F.3d 30, 42 (1st Cir. 2005) (alterations in original). *See also Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 29–30 (1st Cir. 1987) (holding that shareholders may not bring RICO claims for harm to a corporation in which they hold shares).

Allowing Kotva to assert these claims would be particularly inappropriate in this case. Like SPV CO, Kotva's controlling shareholder, Forminster, has also successfully fought this Court's jurisdiction. Kotva/Forminster offers no reason why it should be able to break the chain of ownership with Kotva a.s., rather than its natural end-point: Forminster and those who control it.[1]

## II.    SECURITIES FRAUD AND COMMON LAW FRAUD REQUIRE RELIANCE, WHICH KOTVA ACKNOWLEDGES IT HAS NOT PLEAD

Kotva acknowledges that it has not plead reliance—a necessary prerequisite to any claim for common law fraud or securities fraud. Instead, it argues that "[n]o reliance is needed for fraudulent schemes under 10b-5 or for fraud by conduct." Opp. at 2. However, Kotva cites no authority for this proposition. Rather, Kotva claims that since it is asserting some kind of nebulous "fraud by conduct" theory (that is not plead with any particularity) it is somehow exempt from pleading and proving reliance. Controlling precedent is to the contrary. *E.g.*, *Eureka Broadband Corp. v. Wentworth Leasing Corp.*, 400 F.3d 62, 68 (1st Cir. 2005) (listing

---

[1] The other purported damages Kotva now identifies in its Opposition are simply not plead in its Complaint. Kotva's Complaint seeks attorneys' fees as an additional remedy in connection with its 93A, RICO and securities fraud claims, but does not claim these fees as damages. Nor does Kotva allege that it—as opposed to one of its subsidiaries—incurred any legal fees as a result of the Czech litigation or allege any lost business opportunities. These sort of damages cannot be plead generally. *See* FED. R. CIV. P. 9(g) ("When items of special damage are claimed, they shall be specifically stated.").

reasonable reliance to one's detriment as an element of common-law fraud); *Nei v. Burley*, 388 Mass. 307, 311 (1983) ("Reliance is an element of actionable fraud.").

Reliance is also an essential element of securities fraud. *E.g.*, *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 205–06 (1976) (quoting Senate Report for elements of private action under Securities Act of 1934); *Steiner v. Unitrode Corp.*, 834 F. Supp. 40, 42 (D. Mass. 1993) (requiring, for securities fraud claim, "that plaintiff relied on such misrepresentations or omissions to his detriment"). Cases holding that reliance is a necessary element of any civil securities fraud claim do not distinguish among the various types of fraud that fall within § 10(b). No matter whether a defendant makes an untrue statement, employs a scheme to defraud or engages in an act that would operate as a fraud, a plaintiff who did not reasonably rely on the defendant's actions may not bring a private claim under § 10(b). *See In re Lerner & Hauspie Sec. Litig.*, 230 F. Supp. 2d 152, 161 (D. Mass. 2002) ("Actors can only be held liable under SEC Rule 10b-5 if they themselves 'employ[] a manipulative device or make[] a material misstatement (or omission) on which a purchaser or seller of securities relies.'") (quoting *Central Bank v. First Interstate Bank*, 511 U.S. 164, 191 (1994)) (alternations in original).[2]

## III.   KOTVA LACKS STANDING AS A PURCHASER OR SELLER OF SECURITIES AND, THEREFORE, MAY NOT BRING A SECURITIES FRAUD CLAIM

Kotva characterizes Defendants' argument that "Kotva lacks standing to assert a securities fraud claim because it 'did not buy or sell securities'" as "rely[ing] on an overly

---

[2] Kotva attempts to distract the Court from the requirement that the plaintiff in a securities fraud case plead reliance by arguing that the statutory language covers a variety of different types of fraud: *See* Opp. at 8 The breadth of fraud swept in by the statute is entirely independent of the requirement that a plaintiff rely on that fraud to its detriment in order to maintain a securities fraud claim. Moreover, the purported quotation from 15 U.S.C. § 78j in Kotva's Opposition includes text that appears nowhere in the statute.

restrictive view of both the law and Kotva's Complaint." Opp. at 9.  Kotva is wrong on both counts.

Kotva first suggests that the Supreme Court's recent decision in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 126 S. Ct. 1503, 1513 (2006) permits recovery on a civil claim for securities fraud so long as "the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else."  Kotva's quotation from page 1513 is inapposite.  On pages 1509–10, the Court reaffirmed the *Blue Chip Stamps* rule that private actions for securities fraud—as distinct from Government enforcement actions—must be brought by a purchaser or seller of securities.

Second, Kotva argues that SPV CO's sale of securities to Markland confers standing on Kotva.  This argument ignores the separate corporate existence of SPV CO, which counsel for Kotva trumpeted in SPV CO's motion to dismiss and the Court implicitly recognized in granting that motion and dismissing the counterclaims against SPV CO.  Even if Kotva were able to claim SPV CO's sale of securities as its own, Kotva does not allege that it relied on any misrepresentation of the Defendants in deciding to sell those securities or sold those securities at a lower price as a result of the Defendants' actions.  *See Kennedy v. Josephthal & Co.*, 814 F.2d 798, 804 (1st Cir. 1987) (requiring plaintiffs bringing 10(b) claim to show "that, in connection with the purchase of the [securities], [the defendant], with scienter, made false representations or omissions, that [plaintiffs] relied upon these false representations or omissions in deciding to purchase the [securities], and that such reliance was justifiable").  Nor could Kotva make such an allegation, as it claims that the decision to sell the securities was made long before the Defendants allegedly made *any* representations to Kotva.  *Compare* Compl. ¶ 17 (describing

October 2003 and January 2004 agreements) *with* Compl. ¶¶ 20–21 (describing how Weiss "devised a scheme" in response to a May 12, 2004 meeting).

## IV.    KOTVA'S RICO CLAIMS ARE FATALLY DEFECTIVE

### A.    Kotva Fails to Allege Facts That Constitute Any RICO Predicate That Caused It Harm

Kotva claims that "[c]ontrolling authority from the First Circuit and District of Massachusetts holds" that the threat of litigation or the filing of litigation can serve as a RICO predicate. Opp. at 1, 12–13. This is incorrect.

In *Gonzalez-Morales v. Hernandez-Arencibia*, 221 F.3d 45, 51–52 (1st Cir. 2000), the First Circuit did not "hold" anything with respect to whether litigation can serve as a RICO predicate. Rather, the First Circuit *assumed for the purpose of argument* that this could be the case in some circumstances and rejected the RICO claim on other grounds. *Id.* ("Although we will assume that the filing of frivolous suits may constitute RICO extortion in some instances . . . . [T]he Gonzalezes have not alleged a pattern of racketeering activity. Thus, we need not address whether the other elements of RICO . . . were pled appropriately.").

In the two cases where the First Circuit squarely confronted the question, it consistently held that "[a] threat to sue, even if groundless and made in bad faith, may be tortious under state law, but it is not extortion under federal law." *Di Giambattista v. McGovern*, No. 92-1168, 1992 U.S. App. LEXIS 23569, at *10 (1st Cir. Sept. 4, 1992) (unpublished); *Dias v. Bogins*, No. 97-1612, 1998 U.S. App. LEXIS 536, at *2 (1st Cir. Jan. 13, 1998) (unpublished) ("[A] threat to sue . . . is not extortion under federal law."). The Court should not read the First Circuit's "assum[ption]" in *Gonzalez* as a decision to depart from the consensus reached by "a multitude of other courts in holding that meritless litigation is not extortion under § 1951." *Deck v. Eng'd Laminates*, 349 F.3d 1253, 1257–58 (10th Cir. 2003).

*Lemelson v. Wang Laboratories, Inc.*, 874 F. Supp. 430 (D. Mass. 1994) is not to the contrary. Kotva argues that "[t]he use of the Gilroy and KT lawsuits to extort Kotva is the same 'wrongful means' that was used in *Lemelson* and found to constitute a RICO predicate act by Judge Ste[a]rns." Opp. at 13 (purporting to quote from *Lemelson*, 874 F. Supp. at 433).[3] This is not correct. The counterclaim-plaintiff in *Lemelson* did not even take the position that the filing of a lawsuit was Hobbs Act extortion. *See* Exhibit A at 7–9. Instead, it alleged that Lemelson had engaged in a scheme to defraud the U.S. Patent and Trademark Office (the "PTO") to obtain a series of patents. *Id.* Thus, the sole RICO predicates alleged in *Lemelson* were mail fraud and wire fraud. *Id.*

Even if *Lemelson* remains good law,[4] the facts alleged in *Lemelson* have no parallel here. *Lemelson* stands for the proposition that a person sued for infringement of a patent obtained as a result of a scheme to defraud the PTO can assert a RICO claim against the patentee. Kotva does not make the parallel allegation in the context of a shareholder lawsuit: that the Defendants obtained their right to sue by defrauding a third party of shares in the company. Instead, Kotva alleges that the Defendants attempted to defraud Kotva, by filing a lawsuit and later making allegedly false statements about the lawsuit.

If Kotva's allegations are sufficient to make out a case of mail or wire fraud, then every plaintiff alleging abuse of process, combined with an allegation that the defendant made a false statement during settlement negotiations in an effort to "extort" a settlement, will be able to tack

---

[3] Kotva repeatedly argues that *Gonzalez-Morales* and *Lemelson* establish that litigation can constitute "wrongful means," placing the term "wrongful means" in quotation marks. Neither opinion contains the phrase "wrongful means" or even the word "wrongful."

[4] In *Semiconductor Energy Laboratory Co. v. Samsung Electronics Co.*, 204 F.3d 1368, 1378–80 (Fed. Cir. 2000), the Federal Circuit held that a scheme to defraud the PTO in order to obtain a patent and then use that patent to extort others does not constitute mail fraud or wire fraud and therefore cannot serve as the predicate act for a RICO claim.

on a RICO claim.  Surely, Congress and the president did not intend to criminalize what would otherwise be a tort under state law, and, in so doing, confer federal question jurisdiction on what would otherwise be state law civil claims for abuse of process.

Thus, as a matter of law, the facts alleged by Kotva cannot constitute extortion.  Kotva's attempt to recharacterize these allegations as mail and wire fraud fails for two independent reasons.  First, even if a series of allegedly false statements about the control of the plaintiffs in the Czech litigation could constitute a scheme to defraud, the fact remains that, according to the Complaint, Kotva's alleged damages were caused by the filing of the lawsuits rather than any subsequent false statements about them.  Thus, Kotva suffered no damage from any alleged scheme to defraud and  neither mail nor wire fraud can serve as a RICO predicate for Kotva.  *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 274 (1992) (requiring that plaintiff in civil RICO case prove that RICO predicate was proximate cause of damages).

Second, Kotva practically acknowledges in its Opposition, *see* Opp. at 14, that it has alleged only a scheme to extort as opposed to a scheme to defraud.  Not every bad act is fraud or part of a scheme to defraud.  The essence of a scheme to defraud is an effort to obtain property from someone by lying.  Kotva's allegations are that the Defendants attempted (but did not succeed) in obtaining property from Kotva by "filing sham lawsuits." *Id.*  This is not a scheme to defraud.  Moreover, in order for the scheme Kotva describes to work, the alleged victim—Kotva—would have to believe that Weiss had the ability to cause the plaintiffs in the Czech litigation to drop the suits.  *E.g.*, Compl. at 2 (describing dismissal of lawsuits as "carrot" offered by Weiss).  Thus, taking Kotva's allegations as true, Weiss could not have had a specific intent to defraud Kotva when he made the three allegedly false statements Kotva identifies in its Complaint.

In sum, over the course of its 19-page opposition, Kotva fails to identify where in its Complaint it alleged a specific intent to defraud or a scheme to defraud as opposed to a scheme to extort, prerequisites to any mail fraud or wire fraud claim. Thus, in addition to the fact that the alleged false statements could not have conceivably caused any damage to Kotva, those statements plainly do not constitute mail or wire fraud. Kotva cannot meet its pleading burden by making the conclusory allegation that there was mail fraud or wire fraud of some sort. As the First Circuit recently wrote:

> On a motion to dismiss, a court is required to accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187, 200 (1st Cir. 2005).The court need not accept a plaintiff's assertion that a factual allegation satisfies an element of a claim, however, nor must a court infer from the assertion of a legal conclusion that factual allegations could be made that would justify drawing such a conclusion. *Resolution Trust Corp. v. Driscoll*, 985 F.2d 44, 48 (1st Cir. 1993); *see also* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004) ("[T]he court will not accept conclusory allegations concerning the legal effect of the events the plaintiff has set out if these allegations do not reasonably follow from the pleader's description of what happened . . . ."). The court was under no obligation to read the plaintiffs' complaint, which failed to allege with specificity the factual predicates for a RICO violation, as implying that a RICO claim could have been made out with specificity.

*Cordero-Hernandez v. Hernandez-Ballesteros*, -- F.3d --, No. 04-2435, 2006 U.S. App. LEXIS 13619, at *9 n.3 (1st Cir. June 2, 2006).

   **B.**    **If Kotva Has Successfully Alleged a Scheme to Defraud, Then Kotva's RICO Claim is Barred by the Private Securities Litigation Reform Act (the "PSLRA")**

Kotva's argues that it can clear the PSLRA's bar of civil RICO actions by pleading in the alternative. However, in order to make use of this style of pleading, Kotva would have to actually allege two alternative schemes to defraud rather than only one. The only scheme to defraud that Kotva attempts to make out in its complaint is a scheme to defraud in connection with the sale of securities, or, as Kotva describes it, an "audacious stock fraud scheme." Thus,

the conduct alleged by Kotva is "actionable as fraud in the purchase or sale of securities" even though Kotva is, for multiple reasons, not a proper plaintiff. 18 U.S.C. § 1964(c).[5] If Kotva wishes to plead in the alternative, it must plead a second, alternate scheme to defraud that is not connected with the purchase or sale of securities. Since Kotva has not and cannot make any such allegations, it may not rely on mail or wire fraud as RICO predicates.

This case is not analogous to the situation where a plaintiff seeks recovery in the alternative under two mutually exclusive legal theories.[6] Rather, the PSLRA bars any RICO claim that relies on *conduct* that would have been actionable as securities fraud regardless of whether the plaintiff actually asserts a securities fraud claim. A plaintiff cannot evade the statutory bar by simply not seeking recovery under the securities laws or offering to forego recovery under the securities laws as trial approaches. Otherwise, the bar against RICO claims would be entirely ineffective.

## V.    THE COURT'S DECISION DISMISSING THE DEFENDANTS' CHAPTER 93A COUNTERCLAIM REQUIRES DISMISSAL OF KOTVA'S CHAPTER 93A CLAIM

In dismissing the Defendants' Chapter 93A, § 11 counterclaim, the Court held that Kotva and the two Defendants were not "engage[d] in the conduct of any trade or commerce" for purposes of this dispute. Since both the plaintiff and defendant in a Chapter 93A, § 11 claim must be engaged in the conduct of trade or commerce for the claim to succeed, Kotva's claim must fail.

---

[5] If there were a scheme to defraud, the SEC could be a proper plaintiff.

[6] For example, a plaintiff might properly allege that he either qualifies as a seaman and is entitled to relief under the Jones Act or, in the alternative, he qualifies as a longshoreman and is entitled to relief under the Longshore and Harbor Workers' Compensation Act. *See McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 347 ("[T]he Jones Act and the LHWCA are mutually exclusive.").

## VI.    <u>CONCLUSION</u>

For the above reasons, and those set forth in the Defendants' Memorandum in Support of

Their Motion for Judgment on the Pleadings, the Court should enter judgment for the Defendants

on all counts of the Complaint.

.                                              Respectfully Submitted,

                                              ANDREW WEISS and WEISS ASSET
                                              MANAGEMENT LLC

                                              By their attorneys,


                                              /s/ Benjamin A. Goldberger
                                              Edward P. Leibensperger (BBO# 292620)
                                              Benjamin A. Goldberger (BBO# 654357)
                                              McDermott Will & Emery LLP
                                              28 State Street
                                              Boston, Massachusetts  02109-1775
                                              (617) 535-4000

Dated: July 17, 2006


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system and all attachments will
be sent electronically to the registered participants as identified on the Notice of Electronic Filing
(NEF) and paper copies will be sent to those indicated as non registered participants on July 17,
2006.

                                              /s/ Benjamin A. Goldberger
                                              Benjamin A. Goldberger


BST99 1507240-4.072198.0012

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JUL 12   10   AH '93

THE
DIST COURTS

| | |
|---|---|
| JEROME H. LEMELSON, as party successor to PATENT INCENTIVES, INC., | ) ) ) ) |
| Plaintiff and Counterclaim-Defendant, | ) ) ) ) |
| v. | ) Civil Action No. 90-11338-K ) |
| WANG LABORATORIES, INC., DATA GENERAL CORPORATION, and APOLLO COMPUTER, INC., | ) ) ) ) |
| Defendants and Counterclaim-Plaintiffs, | ) ) ) ) |
| v. | ) ) |
| DOES 1.-10., | ) ) |
| Additional Counter-claim-Defendants. | ) ) ) |

DATA GENERAL'S MEMORANDUM
IN OPPOSITION TO LEMELSON'S
MOTION PURSUANT TO FED. R. CIV. P. 12(b)(6)

MORRIS, NICHOLS, ARSHT & TUNNELL
Douglas E. Whitney
Jack B. Blumenfeld
Julia Heaney
1201 N. Market Street
P.O. Box 1347
Wilmington, DE   19899
(302) 658-9200
    Attorneys for Defendant and
    Counterclaim-Plaintiff
    Data General Corporation

OF COUNSEL:

Sewall P. Bronstein, Esquire
Dike, Bronstein, Roberts & Cushman
130 Water Street
Boston, MA  02109-4260
(617) 523-3400

July 12, 1993

55

i.

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| TABLE OF CITATIONS |  | ii |
| I. | INTRODUCTION | 1 |
| II. | ARGUMENT | 3 |
| | A. DGC's RICO Counterclaim Meets The Liberal Standard Of Rule 12(b)(6). | 3 |
| | B. Lemelson Misapprehends DGC's Statement Of The RICO Enterprise. | 4 |
| | C. DGC's Counterclaim Contains Sufficient Allegations Of Mail Fraud And Wire Fraud. | 7 |
| | D. DGC's Counterclaim Sufficiently Alleges Injury To Its Business And Property. | 9 |
| CONCLUSION | | 12 |

ii.

TABLE OF CITATIONS

Page(s)

Cases

Arzuaga-Collaza v. Oriental Federal Savings
    Bank, 913 F.2d 5 (1st Cir. 1990)                          4,6

Capasso v. Cigna Ins. Co.,
    765 F. Supp. 839 (S.D.N.Y. 1991)                         11

Com-Tech Assoc. v. Computer Associates Intern.,            7
    753 F. Supp. 1078, 1092 (E.D.N.Y. 1990)

Conley v. Gibson, 355 U.S. 41 (1957)                         3

Doe v. Roe, 958 F.2d 763 (7th Cir. 1992)                    10

Hughes Automatic, Inc. v. Mid-Atlantic
    Toyota Distrib., Inc.,                                    4
    543 F. Supp. 1056 (D. Md. 1982)

In Re Healthco Int'l Securities Litigation,                 3
    777 F. Supp. 109 (D. Mass. 1991)

McEvoy Travel Bureau, Inc. v. Heritage                      8
    Travel, Inc., 904 F.2d 786 (1st Cir. 1990)

McNally v. United States, 483 U.S. 350 (1987)               8

Miranda v. Ponce Federal Bank, 948 F.2d 41                  9
    (1st Cir. 1991)

Nodine v. Textron, Inc., 819 F.2d 347 (1st Cir. 1987)      10

Official Publications v. Kable News,                        6
    775 F. Supp. 631 (S.D.N.Y. 1991)

Pujol v. Shearson/American Express, Inc.,                  10
    829 F.2d 1201 (1st Cir. 1987)

Rodriguez v. Banco Central, 777 F. Supp. 1043              7
    (D. Puerto Rico 1991)

Roeder v. Alpha Indus., Inc., 814 F.2d 22                   9
    (1st Cir. 1987)

Rylewicz v. Beaton Services, Ltd.,                         11
    888 F.2d 1175 (7th Cir. 1989)

Schofield v. First Commodity Corp. of Boston,             5,6
    793 F.2d 28 (1st Cir. 1986)

iii.

TABLE OF CITATIONS (Continued)

Cases                                                          Page(s)

Schmuck v. United States, 489 U.S 705 (1989)                     7

Sedima, S.P.R.L. v. Imrex Co.,
    473 U.S. 479 (1985)                                          9

United States v. Carpenter, 484 U.S. 19 (1987)                   8

United States v. Turkette, 452 U.S. 576 (1981)                   6


Statutes and Other Authorities

18 U.S.C. § 1341                                                 7

18 U.S.C. § 1343                                                 7

18 U.S.C. § 1346                                                 8

18 U.S.C. § 1962(c)                                              3

18 U.S.C. § 1964(c)                                              3

Fed. R. Civ. P. 12(b)(6)                                       1,3

Fed. R. Civ. P. 12(f)                                           1

Edmund L. Andrews, Rich in the 90's on Ideas
    Hatched in the 50's, N.Y. Times, Nov. 12, 1992               1

J.S. Rakoff and H.W. Goldstein, RICO Civil and
    Criminal Law and Strategy, § 1.04[1][b]                      7


Stewart Yerton, The Sky's the Limit,
    The American Lawyer, May 1993 at 64                          9

## I.   INTRODUCTION

The allegations Data General Corp. ("DGC") sets forth in its RICO counterclaim are based, in part, on Lemelson's coercive enforcement of patents obtained, to a large extent, by material misrepresentations to the U.S. Patent and Trademark Office ("PTO"). By one account, Lemelson has spent much of the last three decades in court pressing lawsuits on many of his nearly 500 patents, making him certainly one of the most litigious patent holders in history. Edmund L. Andrews, Rich in the 90's on Ideas Hatched in the 50's, N.Y. Times, Nov. 12, 1992 at D1 (Exh. A). Much in the same way that Lemelson and others confounded the PTO with webs of succeeding patents and patent applications, they are now attacking U.S. industry through prodigious litigation involving often meritless infringement claims, of which this litigation is one small part.

Not surprisingly, Lemelson has resorted to the same tactics to respond to DGC's RICO allegations in this litigation that he and other counterclaim-defendants have already employed in their illegal scheme to exploit fraudulently obtained patents. Lemelson here moves to dismiss[1] DGC's RICO count for failure to state a claim, but fails to disclose to the Court his deliberate waiver of his

---

[1]    Lemelson titles his brief as a "Memorandum in Support of His Rule 12(b)(6) Motion to Strike Defendant Data General's RICO Counterclaim" but nowhere refers to Fed. R. Civ. P. 12(f). DGC therefore assumes that the motion is brought pursuant to Fed. R. Civ. P. 12(b)(6) and not a Motion to Strike under 12(f).

parallel challenge to a very similar RICO claim against him in another jurisdiction. In <u>Mitsubishi Electric Corp. v. Jerome H. Lemelson</u>, No. SA CV-93-142-LHM (RwRx) (C.D. Cal.), Lemelson originally filed a motion to dismiss Mitsubishi's RICO counts (Exh. B), but when Lemelson succeeded in having the case transferred to the District of Nevada, No. CV-N-93-380 HDM, he answered Mitsubishi's complaint (Exh. C) and thereby admitted the sufficiency of the RICO pleading. Lemelson surely cannot argue, as he now must here, that a RICO claim against him is viable only on his own turf.

II.  ARGUMENT

A.  DGC'S RICO Counterclaim Meets The
    Liberal Standard Of Rule 12(b)(6).

On a motion to dismiss pursuant to Fed. R. Civ. P.
12(b)(6), the challenged pleading must be construed in a light
most favorable to the pleader, and its allegations taken as
true.  Furthermore, as Lemelson correctly concedes, the RICO
counterclaim can be dismissed only if it appears beyond doubt
that DGC can prove no set of facts which would entitle it to
relief.  In Re Healthco Int'l Securities Litigation, 777 F.
Supp. 109, 112-13 (D. Mass. 1991); Conley v. Gibson, 355 U.S.
41, 45-46 (1957).

DGC's counterclaim alleges facts sufficient to
support all of the elements of a RICO claim under 18 U.S.C.
§ 1962(c) and its standing under 18 U.S.C. § 1964(c).
Specifically, DGC's RICO counterclaim alleges that Lemelson
and other counterclaim-defendants (1) are associated with an
enterprise consisting of the counterclaim-defendants and other
members (¶ 46); (2) are participating in a pattern of
racketeering activity through acts of mail and wire fraud,
which affects interstate commerce (¶¶ 46-48); and that DGC (3)
is suffering injury in its business and property by having to
incur the cost of defending this lawsuit, which is one small
part of Lemelson's larger scheme (¶ 49).

DGC will require discovery on its RICO counterclaim
in order to identify the additional counterclaim-defendants
and non-parties which comprise the illegal RICO enterprise.

4.

In its pleading, DGC has alleged that the counterclaim-defendants include the lawyer teams and corporate entities, as a whole or in various sub-groups, who have committed the repeated acts of mail and wire fraud which constitute the RICO predicate acts.  Simply because DGC does not, at this time, have enough information to specify every RICO defendant does not subject its RICO counterclaim to dismissal.  See Hughes Automatic, Inc. v. Mid-Atlantic Toyota Distrib., Inc., 543 F. Supp. 1056, 1058 (D. Md. 1982) (when proof is in the hands of the alleged defendants, such as with antitrust conspirators, dismissal for failure to state a claim is particularly inappropriate).

> B.   Lemelson Misapprehends DGC's State-
> ment Of The RICO Enterprise.

Lemelson attacks DGC's statement of the RICO enterprise in its counterclaim on the ground that it consists entirely of defendants (Lemelson Mem. at 14), relying on the rule in this Circuit that the alleged RICO defendants must be an entity distinct from the § 1962(c) enterprise.  Arzuaga-Collazo v. Oriental Federal Savings Bank, 913 F.2d 5, 6 (1st Cir. 1990).  Lemelson, however, misapprehends DGC's statement of the RICO enterprise in paragraph 46 of the counterclaim:

> Together as a whole or in various sub-
> groups of lawyer teams and corporate
> entities, plaintiff, the additional
> counterclaim-defendants and non-parties
> constitute one or more RICO enterprises
> within the meaning of 18 U.S.C.
> § 1961(4), consisting of an association-
> in-fact for the purpose of procuring and
> exploiting plaintiff's patents, and have

> engaged in, or the activities of which
> affect, interstate commerce. (emphasis
> added).

DGC's counterclaim distinguishes the RICO defendants from the enterprise by alleging that Lemelson and some persons (as yet undetermined) among his lawyers, representatives, agents and associated corporations, are culpable, and that the enterprise is the unlawful association of those culprits with other non-parties in their law firms or corporations, as well as the law firm partnerships and corporations themselves, which have conspired for the purpose of procuring and exploiting Lemelson's patents. Thus, the enterprise includes persons who are not alleged to be RICO defendants.

Furthermore, DGC's statement of the RICO enterprise and defendants in its counterclaim finds support in the rationale which courts of this Circuit have stated when requiring the RICO enterprise to be distinct from the defendants. In Schofield v. First Commodity Corp. of Boston, 793 F.2d 28, 30 (1st Cir. 1986), the court analyzed the language of § 1962(c) and found:

> The enterprise is mentioned in the
> section [1962(c)] only as the instrument
> of the person doing the racketeering, and
> there is no suggestion that the enter-
> prise also may be liable, even if it is a
> wholly illegitimate operation.

Looking to the legislative history surrounding RICO, the Schofield court reasoned that because the primary purpose of RICO is to cope with the infiltration of legitimate businesses, section 1962(c) should reach the criminal but

protect the victimized enterprise from liability.  Id. at 31.
Lemelson and his co-conspirators have allegedly done just
that, in combination with legitimate entities and individuals.

Here, DGC alleges the existence of an illegitimate
enterprise,[2] but DGC is not seeking to impose liability on the
enterprise as an entity.  Rather, DGC alleges that certain
actors separate from the enterprise -- Lemelson and those who
aided him in committing the RICO predicate acts -- should be
held liable.  In Arzuaga-Collazo, 913 F.2d at 6, the First
Circuit granted a motion to dismiss a RICO complaint which
named a bank and its subsidiary as both defendants and the
enterprise, but the court recognized that that defect in the
complaint would have been corrected if it named as the
enterprise the business the defendants ran.    DGC's
counterclaim is correctly framed that way.

Contrary to Lemelson's assertions, DGC's statement
of the RICO defendants and the enterprise is not analogous to
instances where courts have rejected the theory that a
corporation can be a RICO defendant, and the corporation and
its officers, the RICO enterprise.    E.g., Official
Publications v. Kable News, 775 F. Supp. 631 (S.D.N.Y. 1991).
Those cases are distinguishable on their facts because DGC
alleges that a network of multiple corporations, law firms,
and individuals -- both culprits and innocents -- associated

---

2    The Supreme Court has held that "enterprise" as used in
     RICO encompasses both legitimate and illegitimate enter-
     prises.  United States v. Turkette, 452 U.S. 576 (1981).

with them, constitute the enterprise. Unlike <u>Rodriguez v.</u>
<u>Banco Central</u>, 777 F. Supp. 1043, 1054 (D. Puerto Rico 1991),
and other cases cited by Lemelson, DGC has not named a single
corporation and its employees, subsidiaries or agents as an
association-in-fact enterprise "in order to save as defendants
all the corporate entities in the scheme, often the deep
pockets." DGC has alleged that Lemelson has crafted teams of
lawyers and a network of law firms and corporations as his
unlawful enterprise.

      C.    DGC's    Counterclaim    Contains
           Sufficient Allegations Of Mail Fraud
           <u>And Wire Fraud.</u>

      Mail fraud and wire fraud, the predicate acts of
DGC's RICO counterclaim, are among the broadest of all
criminal statutes. J. S. Rakoff and H. W. Goldstein, <u>RICO</u>
<u>Civil and Criminal Law and Strategy</u>, § 1.04[1][b] (1993).
DGC's counterclaim (¶ 47) alleges the three elements of mail
or wire fraud: (1) a scheme to defraud or to obtain money or
property by means of false pretenses, representations or
promises; (2) use of the mails or interstate wires for the
purpose of executing the scheme; and (3) specific intent to
defraud, by devising, participating in or abetting the scheme.
18 U.S.C. § 1341; 18 U.S.C. § 1343. The mail and wire fraud
statutes do not require that the injury complained of stem
directly from the mail or wire communication at issue. <u>Com-</u>
<u>Tech Assoc. v. Computer Associates Intern.</u>, 753 F. Supp. 1078,
1092 (E.D.N.Y. 1990) <u>citing</u> <u>Schmuck v. United States</u>, 489 U.S
705 (1989) (denying motion to dismiss RICO claim on ground

that predicate act of mail fraud does not require injury from each isolated act of mailing). Rather, the communication need only be in furtherance of a scheme which itself intentionally or recklessly causes the harm.  Id.

Lemelson's assertions that the mail and wire fraud statutes require more than DGC has pled are simply wrong. Contrary to Lemelson's misstatement of the law[3] (Lemelson Mem. at 8), the mail and wire fraud statutes do not require that the specific communication in issue be aimed at depriving some person or entity of property.  Lemelson's and the other counterclaim-defendants' acts of deception of the PTO through the use of mail and wires constitute actionable mail and wire fraud, because the statements were made in furtherance of Lemelson's fraudulent scheme to obtain and exploit patents. In addition, Lemelson's scheme has involved use of the mail and wires to obtain wrongfully the payments of money for licenses on the fraudulently obtained patents and to bring baseless lawsuits such as this. The counterclaim-defendants'

---

[3]   Indeed, Lemelson's citation of McNally v. United States, 483 U.S. 350 (1987), despite his explanatory footnote (Lemelson Mem. at n. 3), is misleading, because McNally has subsequently been narrowed, see United States v. Carpenter, 484 U.S. 19 (1987), and reversed in part by the enactment of 18 U.S.C. § 1346, which makes breaches of fiduciary duty actionable as mail and wire frauds. Lemelson's attempt to explain the effect of § 1346 on McNally completely misses the mark. Likewise, Lemelson's citation to McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc., 904 F.2d 786, 791 (1st Cir. 1990), is misleading because McEvoy applied the old McNally rule that a breach of duty, standing alone, cannot constitute mail fraud, but there must be a specific intent to deprive another of property.

actions are not "practices employed by all businesses," as
Lemelson asserts (Lemelson Mem. at 9).   Normal business
practices do not involve singling out a group of unknown
business executives in a crowded nightclub, for future
targets, as Lemelson's lead lawyer reportedly did ("I've never
heard of them. . . .   But I'm sure they'll be defendants
sooner or later").  Stewart Yerton, The Sky's the Limit, The
American Lawyer, May 1993 at 64, 69 (Exh. D).

> D.   DGC's   Counterclaim   Sufficiently
> Alleges Injury To Its Business And
> Property.

Since the Supreme Court decided Sedima, S.P.R.L. v.
Imrex Co., 473 U.S. 479 (1985), the law has been clear that a
RICO plaintiff need allege only that its injury proximately
results from the underlying predicate offenses which are the
basis of the RICO claim.[4]  See, e.g. Roeder v. Alpha Indus.,
Inc., 814 F.2d 22, 29 (1st Cir. 1987)("Recovery under RICO,
however, is not limited to direct victims. . . . Damages that
'flow from the commission of the predicate acts' are
recoverable"); Miranda v. Ponce Federal Bank, 948 F.2d 41, 46-
47 (1st Cir. 1991)("In order to prevail under 18 U.S.C.
§ 1962(c), a plaintiff must establish a causal relationship
between the racketeering predicates and her asserted injury.")

---

[4]   Furthermore, as the Supreme Court stated in Sedima at
495, "Given that 'racketeering activity' consists of no
more and no less than commission of a predicate act,
§ 1961(1) . . . . There is no room in the statutory
language for an additional, amorphous 'racketeering
injury' requirement," as Lemelson would lead the Court to
believe (Lemelson Mem. at 5).

DGC has alleged adequately that its injury resulted from Lemelson's unlawful exploitation and enforcement of fraudulently obtained patents.

The First Circuit authorities, cited in Lemelson's fabricated "injury" requirement, are distinguishable cases of whistleblowers who were not injured by the predicate acts of their employers. In Pujol v. Shearson/American Express, Inc., 829 F.2d 1201, 1205 (1st Cir. 1987), a fired employee's allegation that his injury was caused by his employer's defrauding of investors was dismissed because the employee was not himself an investor or in any way a target of the pleaded predicate acts. Similarly, in Nodine v. Textron, Inc., 819 F.2d 347, 348 (1st Cir. 1987), the court held that the RICO plaintiff's "injury resulted from Textron's decision to fire him after he reported the customs scheme to his superiors. Firing Nodine under these circumstances was wrong, but it did not violate the RICO act." On the other hand, the injury DGC has suffered clearly flows from the precise conduct of Lemelson which constitutes the predicate acts.

Finally, the costs DGC is incurring in defending this lawsuit against Lemelson clearly constitute injury to business and property within the meaning of RICO's § 1964(c) injury requirement. The cases which Lemelson cites for its specious argument that the costs of defending against baseless litigation do not constitute "injury" are distinguishable. In Doe v. Roe, 958 F.2d 763, 770 (7th Cir. 1992), the court's decision to dismiss the plaintiff's allegation that her

employment of a new attorney to represent her in a divorce
action was an "injury", turned on the rule that personal
injuries, rather than injury to business or property, are not
recoverable under RICO.    In Rylewicz v. Beaton Services,
Ltd., 888 F.2d 1175, 1179 (7th Cir. 1989), the court's
decision rested on the longstanding rule that stockholders may
not bring individual claims under RICO for diminution in the
value of the corporation.  In another RICO suit stemming from
a divorce action, Capasso v. Cigna Ins. Co., 765 F. Supp. 839,
842-43 (S.D.N.Y. 1991), the court dismissed the plaintiff's
allegation that her divorce attorney's fees constituted
property injury, on the ground that the defendants' fraudulent
scheme with her former husband could not reasonably have been
contemplated to increase her fees in the divorce.   All of
these cases clearly are far removed from DGC's allegations,
and none supports dismissal of its RICO counterclaim.

12.

## CONCLUSION

DGC's counterclaim alleges the necessary elements of a RICO claim. Furthermore, Lemelson has admitted the viability of a very similar RICO claim against him in another jurisdiction. For the foregoing reasons, Lemelson's motion to dismiss DGC's RICO counterclaim should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL

Douglas E. Whitney
Jack B. Blumenfeld
Julia Heaney
1201 N. Market Street
P.O. Box 1347
Wilmington, DE    19899
(302) 658-9200
  Attorneys for Defendant and
  Counterclaim-Plaintiff
  Data General Corporation

OF COUNSEL:

Sewall P. Bronstein, Esquire
Dike, Bronstein, Roberts & Cushman
130 Water Street
Boston, MA   02109-4260
(617) 523-3400

July 12, 1993

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail hand on July 12, 1993.