UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s., )<br><br>Plaintiff, )<br><br>v. )<br><br>ANDREW WEISS and WEISS ASSET<br>MANAGEMENT, LLC, )<br><br>Defendants. )<br>_____ )<br><br>ANDREW WEISS, WEISS ASSET )<br>MANAGEMENT LLC, K T, INC. and CVF )<br>INVESTMENTS, LTD., )<br><br>Counterclaim-plaintiffs, )<br><br>v. )<br><br>KOTVA a.s., MARTIN BENDA, RICHARD )<br>HARAZIM, FORMINSTER ENTERPRISES, )<br>LTD., SPV CO and JOHN DOES 1–5, )<br><br>Counterclaim-defendants. )<br>_____ ) | C.A. No. 05-10679-RCL |

**MEMORANDUM IN OPPOSITION TO KOTVA'S MOTION TO COMPEL
REGARDING DEFENDANTS' RESPONSE TO INTERROGATORIES AND
DOCUMENT REQUESTS**

The Defendants address each of the issues raised by Kotva in its Motion to Compel in

turn, using the same numbering system adopted by Kotva:

**I.   THE COURT SHOULD NOT PERMIT KOTVA TO INVADE ATTORNEY
WORK PRODUCT AND GO ON A FISHING EXPEDITION THROUGH THE
FILES OF PROFESSOR WEISS'S CRIMINAL COUNSEL**

Kotva filed a sham criminal complaint in order to improperly pressure Professor Weiss to

abandon his investors' interest in the Czech Republic.  As the complaining party, Kotva was

afforded access to the Czech criminal file. Professor Weiss—who is not officially an "accused" person, but rather merely a "suspect"—has not been afforded complete access to the criminal file by the Czech authorities. Kotva now seeks to force Weiss to turn over copies of documents from the Czech criminal file that were selected by criminal defense counsel in the Czech Republic. This request is entirely improper. The selection of documents by counsel is attorney work product protected from disclosure.

As an initial matter, Weiss does not contest that many of the documents in the Czech criminal file are relevant to this case. But that relevancy is used by Kotva as a red herring for its motion to compel. Kotva *has* all of the documents in the criminal file. What it seeks by this motion is to find out what Weiss's Czech lawyer has learned from, or deemed significant in, the criminal file. The fact that Czech criminal counsel chose to request one or more of those documents is entirely irrelevant to any issue in this case.

Moreover, Kotva claims that it produced the entire Czech criminal file. *See* Harazim Dep. at 297:9–300:15, Exhibit A.[1] Accordingly, unless Mr. Harazim gave false testimony and

---

[1] The deposition testimony reads as follows:

    Q.  What is your answer?

    A.  There was some confusion about it. Kotva, I said in English, Kotva copied the criminal file, and whatever was available in the criminal file was sent over to our American lawyers for production of documents with the exception of the transcripts, which were sealed by the police, transcripts of phone conversations. That is not something Kotva produced to American lawyers, because it's a sealed part of the file.

    Q.  Did you produce to the -- your American lawyers copies of the crinimal complaint?

    A.  I expect so.

    Q.  Did you produce to your American lawyers copies of statements given by you and Mr. Benda to the police?

    A.  I am not sure about it paper by paper. We

copied, we copied the context of the criminal file, and we sent it to United States.

MR. BECKMAN:  I don't have any statements. I gave you everything that was provided by Kotva.  I just want that to be clear.

MR. LEIBENSPERGER:  I was going there.  We do not have any statements by Mr. Harazim or Mr. Benda from counsel.

MR. BECKMAN:  Right.  Right.  I don't know if -- well, you should answer.

A.   There are documents which are being categorically added to the file, and it is possible that at the time where -- at the time when we were making copies those documents weren't there at the time, but they are there now.

Q.   Do you have copies of statements by yourself and Mr. Benda that were given to the police?

A.   I don't have a copy of my own statement to the police.

Q.   Do your lawyers have that?

A.   In the copy which we had, there is my statement for the police is not there.

Q.   Do you have Mr. Benda's statement for the police in your file?

A.   I don't know.  I was just, just -- I don't know about Mr. Benda.  I was just looking for my own statement, and I didn't find it.

MR. BECKMAN:  And I don't have a statement from Mr. Benda, either.

A.   But, we can do the following now:  We will make the complete copy now of the present file, and with the thing, with the exception of the things which are excluded before the complaint is presented officially to the Mr. Weiss, we will -- we can present it or send it.

MR. LEIBENSPERGER:  We request that. Would you mark this as the next exhibit.

MR. BECKMAN:  Just so it's clear, if there is anything in addition, I don't know if there is, but we'll do that.  I don't think there is anything in addition to what we've already given you, but I think he wants to make sure.

MR. LEIBENSPERGER:  Well, I understand.

MR. BECKMAN:  That is, I've given everything that we have.  I just want that to be clear.

MR. LEIBENSPERGER:  I understand that's what you're saying, but he's saying that they'll go back to the police file and make copies of what they can, what they're allowed to do by the police and give

Kotva failed to produce documents that it promised to produce, there is no document from the Czech criminal file that Mr. Weiss's attorneys have that Kotva does not already have.  Therefore, Kotva's discovery request can have only one purpose: an attempt to prejudice Professor Weiss's defense by laying bare his Czech criminal attorney's thought processes through revealing which documents counsel selected, how counsel has organized those documents and which documents have been copied or circulated multiple times.  This is not a proper purpose for discovery.

In any event, counsel's selection and organization of documents from the Czech criminal file are protected attorney work product.  As one court has written in analogous circumstances:

> The high degree of selectivity resulting in a relatively small number of documents being copied clearly reflected the thought processes of defense counsel. Taking into account all of the circumstances concerning the documents in question, including what was revealed to the court during the ex parte proceedings, the court finds and rules that the documents constitute a combination of ordinary and opinion work product. In view of the fact that this is a criminal proceeding where important constitutional rights of due process under the Fifth Amendment and effective assistance of counsel under the Sixth Amendment are at stake, along with the liberty interests of the defendants, this work product deserves special protection. *See Nobles*, 422 U.S. at 238.

*United States v. Horn*, 811 F. Supp. 739, 747 (D.N.H. 1992); s*ee Sporck v. Peil*, 759 F.2d 312 (issuing writ of mandamus when "trial court committed clear error of law in ordering the identification of the documents selected by counsel" to prepare witness for deposition).  *See also*

---

us copies.
     MR. BECKMAN:  Is that what you're saying?
     THE WITNESS:  The file may be exactly the same as it is here.  It also may be the case that something in the meantime arrived into the file.  I don't know.  So, what I'm suggesting is that we will make a copy of the current status, because what we sent here was the copy of the then current status.
    Q.  You gave a statement in the criminal investigation, correct?
    A.  Because I didn't find it, I am even not very sure if I did a statement for the police in this matter or not.

*United States v. Nobles*, 422 U.S. 225, 238 (1975) (recognizing that the role of the work product doctrine is "even more vital" in the criminal justice system).

In *Horn*, defense counsel copied selected documents from a storehouse of documents maintained by the Department of Justice. The Department of Justice arranged for a contractor to make the Department of Justice a duplicate set of the documents selected by defense counsel. Recognizing the serious implications of this invasion into counsel's mental processes, the district court conducted a series of hearings, including multiple *ex parte* hearings with different subsets of defense counsel. The Court found that "[t]he series of events described in this opinion is disturbing because the rights of the defendants have been trespassed upon and the integrity of the process has been tampered with," and ordered a series of remedial measures, including removal of the lead prosecutor and an award of costs and attorneys' fees against the government.

In this case, Kotva offers no reason to invade the files of Czech criminal counsel. Kotva has more access to the Czech criminal file than Professor Weiss and can select whatever documents it wishes and make as many copies of those documents as it wishes. Professor Weiss does not contend that the file itself, as a standalone collection of documents, is privileged. However, the limited subset of documents that Czech criminal counsel have selected, as well as their organization, is.

Finally, the Weiss Parties must take issue with Kotva's statement that "when defendants wanted the videotaped recordings of Vladimir Hoffman[n] (which are part of the Czech criminal file) they claimed that they were relevant because the claims in this case are based on [the] same conduct that is the basis of the criminal matter." This statement is incorrect. First, at the time that the Weiss Parties requested the videotapes, and at the time that the Court ordered Kotva to produce those videotapes, the tapes were not part of the Czech criminal file. Rather, they were

sitting in the office of one of Kotva's officers or attorneys.  It was only after being ordered to produce those tapes that Kotva gave them to the police.

For these reasons, the Motion to Compel should be denied with respect to Interrogatory No. 1 and Document Request No. 10.

## II.    THIS SESSION LACKS AUTHORITY TO UNSEAL DOCUMENTS SEALED BY ANOTHER SESSION OF THE COURT

As an initial matter, the particular steps taken by Weiss and his representatives to obtain a termination of the criminal investigation are not relevant to any claim in this case.  Although communications with third parties may be relevant if there is reference to conduct *before* the criminal complaint, other documents simply are not.  Kotva makes no attempt to explain why it should receive anything other than communications with third parties.[2]

The only other dispute between the parties regarding documents concerning Weiss's efforts to fight the Czech criminal charges is a narrow one: whether the Weiss Parties must disclose information to Kotva that another session of this Court ordered sealed.  Kotva's efforts to analogize this dispute to Kotva's improper withholding of documents and testimony based on the desires of the police department of the municipality of a foreign country fails.  In this case, an Article III judge of this very Court has ordered the requested materials sealed.  This session lacks authority to countermand that Order.

As Chief Judge Wolf has said: "The judges of this court don't have access to sealed documents in their colleagues' cases. . . . .  Competent attorneys, in this court, know that the judge who issued a sealing order is the only person who can modify that order to permit the use

---

[2] Contrary to Kotva's contention on page 7 of its memorandum, the Weiss Parties never claimed that communications between The Albright Group ("TAG") and third parties were privileged. However, TAG has been retained by counsel and communications between counsel and TAG are privileged.

of sealed information in another case." *United States v. Sampson*, Cr. No. 01-10384-MLW, Document 885, Transcript of Motion Hearing, at 11–12 (D. Mass. March 3, 2006).

For the first time in its Motion to Compel, Kotva suggests that it might seek to intervene in the MLAT proceedings and file a motion to unseal the record. Kotva is certainly entitled to pursue this course of action. The Weiss Parties have never sought to stop Kotva from making such a request.

Since this session lacks authority to order the Weiss Parties to violate a sealing order, the Motion to Compel should be denied as to this issue.

III.     **KOTVA MAY NOT, BY PROPOUNDING INTERROGATORIES, FORCE THE DEFENDANTS TO REVIEW DOCUMENTS WHEN THE COURT HAS ALREADY FOUND THAT REVIEWING THOSE DOCUMENTS IS UNDULY BURDENSOME**

The interrogatories at issue relate solely to Kotva's fatally flawed RICO claims and its search for information concerning entirely irrelevant litigation. In denying Kotva's April Motion to Compel with respect to document requests on these subjects, the Discovery Master wrote:

> The requests all concern Kotva's allegations that Weiss engaged in what it characterizes as blackmail and extortion in connection with entities unrelated to Kotva. While this general subject may have tangential relevance to prove a pattern of racketeering, as well as intent, the discovery requested is extremely far-ranging, as well as vague and overbroad. The discovery request greatly enlarges the already enormous scope of discovery in this case. Mindful that the District Court has imposed a July 2006 discovery deadline and has not authorized a stay of discovery while motions to dismiss or for judgment on the pleadings are pending, and mindful as well of the cost and burden of such far-reaching discovery as Kotva has propounded, it is ORDERED that Kotva may inquire into these subjects during depositions and through interrogatories and other non-document discovery. At this time, Kotva shall not propound document requests with respect to these transactions. If Kotva identifies specific and limited categories of documents which are clearly connected to the alleged scheme and can establish a substantial need for the documents, it may move for leave to serve such requests.

May 26, 2006 Order at 8–9.

Kotva acknowledges that the Court found that "the document requests were too onerous."

Kotva's Mem. at 8. However, Kotva now claims that Professor Weiss must review all of the requested documents and, based on that review, provide Kotva with information. This was surely not the Court's intent in permitting Kotva to propound interrogatories on these subjects, but forbidding Kotva from burdening Professor Weiss with digging through boxes and boxes of documents relating to transactions and events with which he was not involved. The only reason Professor Weiss even has access to these materials is that they were boxed up and placed in storage when the individual involved and in charge of the events went out on his own. Neither Professor Weiss nor anyone at Weiss Capital LLC has reviewed these boxes. Professor Weiss provided truthful answers to the interrogatories based on his present knowledge.

Finally, contrary to Kotva's suggestion, the Defendants' Motion for Judgment on the Pleadings identifies multiple deficiencies in Kotva's RICO claim independent of whether Kotva has alleged a pattern of activity that stretches over a sufficiently long period of time. Discovery regarding unrelated alleged blackmail has no potential to cure any of the deficiencies raised by the Defendants. That motion remains pending before Judge Lindsay.

Accordingly, the Motion to Compel should be denied with respect to Interrogatories 12, 13 and 14.

## IV.   DOCUMENTS AND OTHER INFORMATION RELATING TO A PRIVATE INVESTIGATOR'S WORK ON BEHALF OF COUNSEL ARE NOT DISCOVERABLE

According to Kotva, Professor Weiss relayed to certain members of the press and government officials that a private investigator retained by Weiss's Czech counsel had reported that Mr. Benda had a law enforcement officer murdered. Kotva claims that, in so doing, Mr. Weiss has placed the work of the investigator "at issue." Even if, as Kotva claims, limited information provided by a private investigator has been placed "at issue" with the press, that does not make every document prepared by the investigator or communications with counsel

relating to the investigator discoverable. The documents created by the private investigator are work product and communications with counsel are privileged.

The uncontroverted facts are these: "Peterka & Partners hired a private investigator to assist it in the Czech litigation. The investigator was retained on 11 February 2005." Response to Int. No. 9. In February 2005, litigation in the Czech Republic had been pending for several months.

Thus, the discoverability of communications with the investigator is governed by Federal Rule of Civil Procedure 26(b)(4)(B), which provides:

> A party may, through interrogatories or by deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or *upon a showing of exceptional circumstances* under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

FED. R. CIV. P. 26(b)(4)(B) (emphasis added). *See Thuma v. Polymedica Corp. (In re Polymedica Corp. Sec. Litig.)*, 235 F.R.D. 25, 33 (D. Mass. 2006) ("In the case of a non-testifying expert, whose opinion will not be presented in court, however, fairness does not require discovery. Indeed, fairness requires that each side fully prepare its own case and not try to benefit through discovery from the other side's better preparation."). The fact that the investigator was retained by Czech counsel is not material. *Id.* at 32 ("[N]on-testifying experts are protected from discovery in sufficiently related litigation.").

Kotva has ample opportunity "to obtain facts or opinions on" Mr. Benda's involvement in murder or other aspects of organized crime by speaking with Mr. Benda. Accordingly, Kotva has failed to demonstrate the "exceptional circumstances" required by the Rule and the Court should deny the Motion to Compel with respect to Interrogatory No. 9 and Document Request No. 15.

**V.      KOTVA IS NOT ENTITLED TO LEARN THE IDENTITIES OF CURRENT INVESTORS IN BROOKDALE INTERNATIONAL PARTNERS OR THE IDENTITIES AND LEVEL OF INVESTMENT OF WEISS'S FAMILY MEMBERS**

**A.      The Identities of the Limited Partners of Brookdale International Partners Are Not Discoverable**

Before addressing the merits of Kotva's request, it is important to clarify exactly what Kotva is asking this Court to do.  The Kotva shares owned by CVF Investments are held for the benefit of those individuals and entities who were shareholders of record in Brookdale Global Opportunity Fund ("BGO") on September 30, 2000.  The Weiss Parties produced to Kotva records regarding the identities of those shareholders.  One of these shareholders is Brookdale International Partners L.P. ("BIP").  *See* Exhibit B.  In April, Kotva moved to compel the Weiss Parties to reveal the identities of the *current* investors in BGO, despite the fact that they have no interest in Kotva (unless, of course, they were also investors on September 30, 2000).  The Court rejected this motion, finding that the identities of current BGO shareholders are confidential commercial information.  Now Kotva has moved in a different direction and has taken its inquiry to yet another level of irrelevance.  It seeks to learn the identities of the current limited partners of BIP.

If the Court were to allow Kotva's motion with respect to Interrogatory No. 7 or Document Request No. 16, which request the identities of "all legal or beneficial owners of . . . BIP that have interests in the 'ring fenced assets,'" Professor Weiss would be required to reveal, to the extent known, all current legal and beneficial owners of BIP.  As previously stated, BIP has a beneficial interest in the ring-fenced assets owned by CVF Investments Ltd.  *See* Second Nikitin Decl., ¶ 6.  Thus, all present investors in BIP could be said to have, derivatively, a beneficial interest in the ring-fenced assets.

The Court has already rebuffed Kotva's attempt to gain access to the identities of current investors in BGO and should treat Kotva's attempt to gain access to the identities of limited partners in BIP the same way.

      1.     The Identities of Limited Partners Are Irrelevant to the Claims in this Case

Kotva has no shortage of information about the structure of BIP.  The Weiss Parties have produced the financial statements for BIP for 2004 and 2005.  As these statements explain:

> On July 15, 2003 Weiss Asset Management LLC (the "General Partner"), a Delaware limited liability company became the General Partner of the Partnership. . . . .  The General Partner is responsible for the business and affairs of the Partnership, including the investment of the Partnership's assets.  The sole member of the General Partner is Andrew Weiss, Ph.D. a tenured professor of Economics at Boston University.  The General Partner has retained Weiss Capital LLC (the "Manager"), a Delaware limited liability company, to administer the Partnership's investment activities.

Second Nikitin Decl., ¶ 5.

The limited partners, who have no control over BIP in view of their status as limited partners, are a number of institutions, funds of funds and individuals.  Second Nikitin Decl., ¶ 8.  The limited partners have no authority over BIP's investment decisions, nor do they have access to a list of BIP's current investments.  They are a group that is not involved in this lawsuit, save that they have received communications from the Weiss Parties such as a form letter or annual report that reference this litigation.  Accordingly, their identities are irrelevant and not discoverable.  Indeed, Kotva took a similar tact when the Weiss Parties sought to find out the beneficial owners of Kotva and limited its response to shareholders currently owning more than 10% of the company.  *See* Exhibit C.

      2.     The Identities of BIP Investors Constitute Confidential Business Information, Exempt from Disclosure Under Rule 26(c)(7)

Should the Court find that the identities of BIP's current investors fall within the technical scope of Rule 26(b), the Court should enter a protective order that Kotva not have this

discovery or, in the alternative, not use that information for any purpose other than this litigation, a parallel proceeding in the Czech Republic, or in communications with the Czech or U.S. governments.

The identities of BIP's investors constitute confidential business information. *See* FED. R. CIV. P. 26(c)(7). Several courts including this one have recognized that similar lists of customers merit protection under this Rule and this Court has already afforded identical treatment for the list of current investors in BGO.[3] As set forth in detail in the Second Declaration of Georgiy Nikitin, Weiss Capital LLC treats this information as confidential and maintains strict safeguards to ensure that this information remains confidential. Second Nikitin Decl. ¶ 9. "Weiss Capital has assured investors in BIP that their confidentiality and privacy would be maintained. Accordingly, disclosure of investor identities is likely to result in investors withdrawing their investments from BIP." *Id.* ¶ 10. Thus, if this Court orders disclosure, Weiss Capital will suffer a direct and serious harm. Moreover, current investors in BIP have an expectation of privacy that this Court should not vitiate in view of their status as limited partners with no direct connection to this dispute.

**B.    Kotva is Not Entitled to Discover the Specific Identities and Dollar Amounts of Investment by Weiss's Family Members**

Kotva's Third Set of Interrogatories, and Weiss's response, are as follows:

**Interrogatory No. 1**

---

[3] *E.g.*, *GTE Prods. Corp. v. Gee*, 112 F.R.D. 169, 171 (D. Mass 1986) (entering a protective order because the case law supported "the propriety of issuing such an order to limit the disclosure of the types of confidential commercial information, i.e. customer lists, prices, etc. to which the order relates"); *Feldman v. Cmty. Coll.*, 85 Fed. Appx. 821, 828 (3rd Cir. 2004) (unpublished) (affirming the District Court's order quashing a subpoena for a customer list); *Asch/Grossbardt Inc.*, 02 Civ. 5914 (SAS), 2003 U.S. Dist. LEXIS 2837, at *8 (S.D.N.Y. Feb. 28, 2003) (requiring a protective order before the defendant's customer list was produced).

Identify the dollar value and percentage of the total amount of segregated assets (which include the Kotva shares) that Weiss and his family members hold either through BGO's or BIP's holdings in the segregated assets. (The term "segregated assets" as used in this interrogatory and in any other prior interrogatory of Kotva refers to the investments that "were segregated in September, 2000 when conversion of Czech Value Fund to an open ended fund was completed." See BGO Annual Report, page 34 attached hereto and Bates Labeled WP 0013430). Identify each such Weiss family member in your answer and identify documents sufficient to identify the dollar value and percentage amount of such holdings in the segregated assets, including account statements..

**Response to Interrogatory No. 1:**

Weiss incorporates the General Objections above, and further objects to this Interrogatory on the grounds that it is overly broad, not reasonably calculated to lead to the discovery of admissible evidence and seeks confidential business information and personal financial information of parties and non-parties. Weiss further objects to this Interrogatory on the grounds that Kotva is not permitted, without leave of court or written stipulation, to serve more than 25 interrogatories on Weiss.

Kotva's sole argument in support of its motion to compel an answer to this interrogatory is: "Finally, plaintiff is entitled to discover whether Weiss is an owner of BIP—i.e., the extent of his personal stake in the purchase price of BGO's Trend and Kotva shares. This information is relevant to his bias, motive, and defense that he is being persecuted for trying to protect 'his investors.'" Kotva's Mem. at 11.

Based on BIP's financial statements, which are audited by KPMG and have been produced to Kotva, Kotva already knows: (1) the percentage interest of BIP in the ring-fenced assets; (2) the amount Professor Weiss has invested in BIP personally; and (3) the aggregate amount that related parties to Weiss Asset Management LLC, Weiss Capital LLC and Professor Weiss have invested in the partnership. Second Nikitin Decl. ¶ 7. Kotva makes no effort to explain why it is entitled to know the particular identities of Weiss's family members who have invested in BIP and the dollar amounts of those investments on an individual by individual basis. These individuals—who are not parties to this dispute—have a privacy interest in not having

their personal financial information being made part of a public court proceeding.  In any event, the exact identities and dollar amounts of their investments are not relevant to any claim in this case.

The Court should not, however, even consider whether this Interrogatory is proper on the merits, as Kotva has already served more than 25 interrogatories on Professor Weiss—the limit established by Federal Rule of Civil Procedure 33.  Although Kotva uses a creative numbering scheme, many of its interrogatories include multiple discrete subparts.  For example:

| | |
|---|---|
| Interrogatory Number 3 Contains 2 Subparts | This interrogatory seeks information regarding the ownership and control of Gilroy in June 2004 (part 1); and information regarding Gilroy's relationship with Peterka & Partners (part 2) |
| Interrogatory Number 4 Contains 2 Subparts | This interrogatory seeks information regarding the ownership and control of K T in December 2004 (part 1); and information regarding K T's relationship with Peterka & Partners (part 2) |
| Interrogatory Number 7 Contains 3 Subparts | This interrogatory seeks information about the owners of BGO and BIP (part 1); information regarding the ring-fencing of Kotva shares (part 2); and information regarding potential success fees/bonuses for Weiss (part 3) |
| Interrogatory Number 8 Contains 3 Subparts | This interrogatory seeks information regarding efforts to have the Czech criminal charges dismissed (part 1); complaints under the Bilateral Investment Treaty (part 2); and the challenged to the MLAT subpoena (part 3) |
| Interrogatory 18 Contains 2 Subparts | This interrogatory seeks information regarding damages (part 1); and disclosures to investors regarding legal fees (part 2) |
| Interrogatory 1 (Second Set) Contains 2 Subparts | This interrogatory seeks information regarding service of the Czech criminal charges (part 1); and access to the Czech criminal file (part 2) |

Thus, Kotva had already served 30 interrogatories on Weiss before it served the Third Set of Interrogatories.

For the foregoing reasons, Kotva's Motion to Compel should be denied with respect to

the Third Set of Interrogatories.

## VI.    THERE IS NO DISPUTE OVER THE DISCOVERABILITY OF FEE AGREEMENTS

Kotva seeks fee agreements with the Weiss Parties' Czech counsel, Peterka & Partners. Kotva's bald statement that "a fee agreement with an attorney, however, is not privileged because it does not relate to the provision of legal advice" is entirely at odds with Kotva's responses to the Weiss Parties' discovery requests. Kotva has yet to produce an engagement letter or fee agreement with Nystrom, Beckman & Paris, despite the Weiss Parties' request for "[a]ll documents concerning the decision to initiate this lawsuit." and "[a]ll documents concerning communications between Kotva . . . and any third party, . . . . concerning Andrew Weiss, Weiss Asset Management LLC, Weiss Capital LLC, Vladimir Hoffmann, Ondrej Peterka, the Czech Lawsuits or this lawsuit." Nor has Kotva produced copies of fee agreements with its Czech counsel.

In any event, there is nothing for the Court to rule on as there is no dispute between the parties. During the discovery conferences held during the week of August 7, 2006, counsel for the Weiss Parties agreed to review the engagement document for legal services between K T, Inc. and Peterka & Partners and to produce it to the extent that there are no protected attorney-client communications therein.

## VII.    COMMUNICATIONS REGARDING CHANGES TO INVESTMENT MANAGEMENT AGREEMENTS THAT DO NOT REFERENCE THE ONGOING LITIGATION ARE NOT DISCOVERABLE

Kotva seeks to know "what, if anything, defendants told the investors of BGO and BIP as to why certain changes were made to the Investment Management Agreement[s] of BGO and BIP after the filing of this lawsuit." This information is entirely irrelevant to every claim in the case. Kotva claims—without benefit of citation to the agreements—that these changes "relate

directly to the defense and prosecution of this lawsuit, the Czech litigation, and the criminal charges against Weiss." Kotva's Mem. at 12. Nothing could be further from the truth.

The Weiss Parties have agreed to produce all communications with investors regarding this lawsuit and the parallel proceedings in the Czech Republic. Communications with investors regarding changes to the investment management agreements or any other subject that do not refer to those proceedings are irrelevant and not discoverable.

Notwithstanding Kotva's fanciful interpretation of various changes to the respective agreements, the fact remains that there is no link between those changes and any element of any claim in this case. It appears that Kotva presses this issue for an improper purpose: to spread false rumors about investors' potential liability as a result of Kotva's lawsuit and dissuade companies and individuals from investing with BGO or BIP. Needless to say, this is not a proper purpose for discovery.

## VIII.    CONCLUSION

For the above reasons, the Court should deny Kotva's Motion to Compel and award the

Defendants their expenses as the Motion was not "substantially justified" within the meaning of

Rule 37(b)(4)(B).

## REQUEST FOR ORAL ARGUMENT

The Defendants believe that oral argument may assist the Court and wish to be heard.

Accordingly, pursuant to Local Rule 7.1(d), they request a hearing.

Respectfully Submitted,

ANDREW WEISS and WEISS ASSET
MANAGEMENT LLC

By their attorneys,


/s/ Benjamin A. Goldberger
Edward P. Leibensperger (BBO# 292620)
Benjamin A. Goldberger (BBO# 654357)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts  02109-1775
(617) 535-4000

Dated: August 28, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system and all attachments will
be sent electronically to the registered participants as identified on the Notice of Electronic Filing
(NEF) and paper copies will be sent to those indicated as non-registered participants on August
28, 2006.

/s/ Benjamin A. Goldberger
Benjamin A. Goldberger

BST99 1514166-4.072198.0012

17

```
 1                    VOLUME 2, PAGES 235 - 403

 2                      EXHIBITS 23 - 40

 3           IN THE UNITED STATES DISTRICT COURT

 4            FOR THE DISTRICT OF MASSACHUSETTS

 5                        No. 05-10679-RCL

 6   - - - - - - - - - - - - - - - - - - - - - - - - -

 7   KOTVA a.s.,

 8                  Plaintiffs

 9          vs.

10   ANDREW WEISS and WEISS ASSET MANAGEMENT, LLC,

11                  Defendants

12   _____

13   ANDREW WEISS, WEISS ASSET MANAGEMENT LLC,

14   KT, INC. and CVF INVESTMENTS, LTD.,

15                  Counterclaim-Plaintiffs,

16          v.

17   KOTVA a.s., MARTIN BENDA, RICHARD HARAZIM,

18   FORMINSTER ENTERPRISES, LTC., SPV CO. and

19   JOHN DOES 1-5,

20                  Counterclaim-Defendants.

21   - - - - - - - - - - - - - - - - - - - - - - - - -

22      CONTINUED VIDEOTAPED DEPOSITION OF KOTVA a.s.

23            BY AND THROUGH RICHARD HARAZIM

24        Wednesday, February 23, 2006 9:44 a.m
```

```
 1                 McDermott, Will & Emery

 2            28 State Street, Boston, MA 02109

 3          Reporter:   Janet M. Konarski, RMR, CRR

 4                    LegaLink Boston

 5           320 Congress Street, Boston, MA 02210

 6                     (617)542-0039

 7

 8   APPEARANCES:

 9   MCDERMOTT, WILL & EMERY

10   (By Edward P. Leibensperger, Esquire,

11   Benjamin A. Goldberger, Esquire, and

12   Sylvia Kratky, Esquire)

13   28 State Street

14   Boston, Massachusetts 02109

15   (617)535-4000

16   Counsel for the Defendants/Counterclaim-Plaintiffs

17

18   NYSTROM, BECKMAN & PARIS LLP

19   (By Joel G. Beckman, Esquire)

20   10 St. James Avenue

21   Boston, Massachusetts 02116

22   (617)778-9100

23   Counsel for the Plaintiff/Counterclaim-Defendant

24   - Continued -
```

1    ALSO PRESENT:

2    Wesley Hicks, Videographer

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1  Mr. Harazim?

2          THE INTERPRETER:  We were discussing how I

3  read the text, and you agree with my Czech reading of

4  the text and with the translation.

5          A.   I believe so that this is the way how it's

6  written there.  Can I return to one thing, please?

7  About what the files from the criminal files Kotva has

8  available and what files Kotva does not have available?

9          Q.   What is your answer?

10         A.   There was some confusion about it.  Kotva,

11  I said in English, Kotva copied the criminal file, and

12  whatever was available in the criminal file was sent

13  over to our American lawyers for production of

14  documents with the exception of the transcripts, which

15  were sealed by the police, transcripts of phone

16  conversations.  That is not something Kotva produced to

17  American lawyers, because it's a sealed part of the

18  file.

19         Q.   Did you produce to the -- your American

20  lawyers copies of the crinimal complaint?

21         A.   I expect so.

22         Q.   Did you produce to your American lawyers

23  copies of statements given by you and Mr. Benda to the

24  police?

298

1        A.    I am not sure about it paper by paper.  We

2   copied, we copied the context of the criminal file, and

3   we sent it to United States.

4             MR. BECKMAN:  I don't have any statements.

5   I gave you everything that was provided by Kotva.  I

6   just want that to be clear.

7             MR. LEIBENSPERGER:  I was going there.  We

8   do not have any statements by Mr. Harazim or Mr. Benda

9   from counsel.

10            MR. BECKMAN:  Right.  Right.  I don't know

11  if -- well, you should answer.

12       A.    There are documents which are being

13  categorically added to the file, and it is possible

14  that at the time where -- at the time when we were

15  making copies those documents weren't there at the

16  time, but they are there now.

17       Q.    Do you have copies of statements by

18  yourself and Mr. Benda that were given to the police?

19       A.    I don't have a copy of my own statement to

20  the police.

21       Q.    Do your lawyers have that?

22       A.    In the copy which we had, there is my

23  statement for the police is not there.

24       Q.    Do you have Mr. Benda's statement for the

1  police in your file?

2        A.   I don't know.  I was just, just -- I don't

3  know about Mr. Benda.  I was just looking for my own

4  statement, and I didn't find it.

5              MR. BECKMAN:  And I don't have a statement

6  from Mr. Benda, either.

7        A.   But, we can do the following now:  We will

8  make the complete copy now of the present file, and

9  with the thing, with the exception of the things which

10  are excluded before the complaint is presented

11  officially to the Mr. Weiss, we will -- we can present

12  it or send it.

13             MR. LEIBENSPERGER:  We request that.

14  Would you mark this as the next exhibit.

15             MR. BECKMAN:  Just so it's clear, if there

16  is anything in addition, I don't know if there is, but

17  we'll do that.  I don't think there is anything in

18  addition to what we've already given you, but I think

19  he wants to make sure.

20             MR. LEIBENSPERGER:  Well, I understand.

21             MR. BECKMAN:  That is, I've given

22  everything that we have.  I just want that to be clear.

23             MR. LEIBENSPERGER:  I understand that's

24  what you're saying, but he's saying that they'll go

 1  back to the police file and make copies of what they

 2  can, what they're allowed to do by the police and give

 3  us copies.

 4            MR. BECKMAN:  Is that what you're saying?

 5            THE WITNESS:  The file may be exactly the

 6  same as it is here.  It also may be the case that

 7  something in the meantime arrived into the file.  I

 8  don't know.  So, what I'm suggesting is that we will

 9  make a copy of the current status, because what we sent

10  here was the copy of the then current status.

11       Q.   You gave a statement in the criminal

12  investigation, correct?

13       A.   Because I didn't find it, I am even not

14  very sure if I did a statement for the police in this

15  matter or not.

16            MR. LEIBENSPERGER:  Would you mark this as

17  the next exhibit.

18                 (Criminal Complaint

19       marked Exhibit 32.)

20  BY MR. LEIBENSPERGER:

21       Q.   Mr. Harazim, can you identify what

22  Exhibit 32 is?

23       A.   This is the criminal complaint submitted

24  by Kotva.

WP0004774



| Name | Shares | % Holding | Country |
|---|---|---|---|
| - Credit Suisse First Boston Europe, London (a/c ▮9) | 184,724 | 3.45% | UK |
| - Bear Stearns Secs Corporation, New York (a/c ▮2) | 1,630,992 | 30.43% | USA (WAM interest) |
| - Stanley CH 1 Co Limited, London (a/c ▮8) | 950 | 0.02% | UK |
| - RBC Dominion Secs, Toronto (a/c ▮6) | 245,100 | 4.57% | Canada |
| - Bank of Copenhagen, Copenhagen (a/c ▮4) | 690 | 0.01% | Denmark |
| - RT Corp of Canada, Toronto (a/c ▮2) | 97,000 | 1.81% | Canada |
| - Merrill Lynch Intl, London (a/c ▮5) | 25,000 | 0.47% | UK |
| - ING Barings Ltd, London (a/c ▮9) | 3,000 | 0.06% | UK |
| - PaineWebber Inc, New York (a/c ▮1) | 14,500 | 0.27% | USA (WAM interest) |
| - LCF Rothschild Secs, London (a/c ▮5) | 400 | 0.01% | UK |
| - Meinl Bank AG, Vienna (z/c ▮7) | 100 | 0.00% | Austria |
| - Fleming Robert Co Ltd, London (a/c ▮0) | 373 | 0.01% | UK |
| - Royal Bank of Canada, Saint Peters Port (a/c ▮8) | 1,950 | 0.04% | ? |
| - Barings Guernsey Ltd, Saint Peters Port (a/c ▮9) | 30,000 | 0.56% | ? |
| - Rahn and Bodmer, Zurich (a/c ▮1) | 43,619 | 0.81% | Switzerland |
| - Deutsche Bank, New York (a/c ▮1) | 652,500 | 12.17% | Germany (economic rights in the USA - WAM interest) |
| - Pershing Secs Ltd, London (a/c ▮8) | 14,750 | 0.28% | UK |
| - Merrill Lynch PFS, New York (a/c ▮3) | 1,000 | 0.02% | USA |
| - Deutsche Bank Secs, New York (a/c ▮8) | 1,972,445 | 36.80% | Germany (economic rights in the USA) |
| Clearstream's position on September 30th 2000 | 417,445 | 7.79% | ? |
| Certified shares | 24000 | 0.45% | USA? |
| | | | |
| **TOTAL** | **5,360,538** | **100.00%** | |

WP0004775

**Name**
- Credit Suisse First Boston Europe, London (a/c 20079)
- Bear Stearns Secs Corporation, New York (a/c 90782)
- Stanley CH 1 Co Limited, London (a/c 90998)
- RBC Dominion Secs, Toronto (a/c 91206)
- Bank of Copenhagen, Copenhagen (a/c 91674)
- RT Corp of Canada, Toronto (a/c 92282)
- Merrill Lynch Intl, London (a/c 92835)
- ING Barings Ltd, London (a/c 92959)
- PaineWebber Inc, New York (a/c 92980)
- LCF Rothschild Secs, London (a/c 94035)
- Meinl Bank AG, Vienna (z/c 94167)
- Fleming Robert Co Ltd, London (a/c 94470)
- Royal Bank of Canada, Saint Peters Port (a/c 94678)
- Barings Guernsey Ltd, Saint Peters Port (a/c 94689)
- Rahn and Bodmer, Zurich (a/c 94781)
- Deutsche Bank, New York (a/c 97511)
- Pershing Secs Ltd, London (a/c 98988)
- Merrill Lynch PFS, New York (a/c 99178)
- Deutsche Bank Secs, New York (a/c 99728)
Clearstream's position on September 30th 2000
Certified shares

**Notes**

This is a U.S. limited partnership, called Brookdale International Partners LP

This is a U.S. limited partnership, called Brookdale International Partners LP

This is a large U.S. investment fund called QVT

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| KOTVA a.s. | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05-10679-RCL |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW WEISS and WEISS ASSET | ) | |
| MANAGEMENT, LLC | ) | |
| | ) | |
| Defendants. | ) | |

## OBJECTIONS AND RESPONSES OF KOTVA A.S. TO DEFENDANTS' THIRD SET OF INTERROGATORIES

Pursuant to Fed. R. Civ. P. 33, Local Rule 33.1, Plaintiff, Kotva, a.s. ("Kotva") hereby responds to the Third Set of Interrogatories of Defendants Andrew Weiss and Weiss Asset Management, LLC (collectively "Weiss").

### GENERAL OBJECTIONS

I.    Kotva objects to each interrogatory to the extent it seeks information that is beyond the scope of Rules 26 or 33 of the Federal Rules of Civil Procedure, is beyond the proper scope of discovery because of the attorney client relationship, prepared in anticipation of litigation or trial or constitutes attorney work product, or is otherwise immune from discovery.

II.    In providing answers to these interrogatories, Kotva does not in any way waive or intend to waive but rather intends to preserve the following:

a.    All objections as to competency, relevancy, materiality and admissibility;

b.    All rights to object on any ground to the use of any of the Answers herein, including the trial of this or any other action;

c.    All objections as to vagueness or ambiguity; and

d.    All rights to object on any ground to any further interrogatories or other discovery requests involving or related to any of the interrogatories in Weiss' First Set of Interrogatories.

III.    Privileged information responsive to any interrogatory below is not being provided. Kotva does not waive, and intends to preserve and is preserving the attorney client privilege, the work product doctrine, and every other privilege with respect to each and every answer, document or other repository of information protected by such a privilege.

IV.    Kotva objects to the Instructions and/or Definitions contained in the Interrogatories to the extent that they attempt to impose obligations on Kotva that are inconsistent with and/or in addition to those required under the Federal Rules of Civil Procedure and the Local Rules.

V.    Kotva objects to the Interrogatories to the extent each interrogatory contains several subparts and therefore exceeds the number of interrogatories permitted under Fed. R. Civ. P. 33(a).

VI.    Kotva objects to the Interrogatories to the extent that they demand production of any information containing any confidential, proprietary and/or trade secret information.

VII.    Kotva's answers to the Interrogatories are qualified by the General Objections. Failure to restate any General Objection in response to a particular interrogatory does not

constitute a waiver of such General Objection. By responding to these Interrogatories, Kotva

does not waive any asserted objection.

## Interrogatory No. 1

Please identify the legal and beneficial owners of an interest, including shares of stock or
a partnership interest, in each of the Listed Companies, for the period from January 1, 2000 until
to present.

### Response to Interrogatory No. 1

Kotva objects to this interrogatory to the extent it is overly broad, unreasonable, unduly

burdensome, seeks irrelevant information, and is not reasonably calculated to lead to the

discovery of admissible evidence. Plaintiff further objects to this interrogatory to the extent it

seeks information concerning entities unaffiliated with Plaintiff. Plaintiff also objects to the

extent this interrogatory has been previously asked and fully responded to by Plaintiff. (See

Defendants' Second Set of Interrogatories, No. 1 and response thereto). Subject to the foregoing

General and Specific Objections, Plaintiff responds as follows:

a.    Forminster Enterprises, Ltd.

Unknown.

b.    Kotva, a.s.

Kotva's approximately 694,209 shares are publicly traded on the Czech securities market,

and there are currently approximately 7,700 shareholders. Given that Kotva's shares are publicly

traded, Kotva's ownership changes regularly. Shareholders currently owning more than 10% of

Kotva's outstanding shares are:

| | | |
|---|---|---|
| Forminster Enterprises Limited/Sprint | 385,038 shares | 55.74% |
| Ardmore Risk Management Limited | 97,753 shares | 14.08% |

3

HSBC Bank plc                81,082 shares                11.92%

Kotva cannot identify those persons who have an "indirect ownership interest" in Kotva's shares.

    b.    <u>Kotva Nemovitosti ("KN")</u>

Kotva owns 100% of KN.

    c.    <u>SPV KN</u>

Pursuant to the Share Purchase Agreement with Markland, (which has been produced to Defendants) SPV KN was sold to Markland in connection with the department store sale in 2005, and Plaintiff does not know the current ownership status of SPV KN.

    d.    <u>SPV Co., Ltd. "(SPV")</u>

SPV is owned 100% by KN. In further answering, see response to Interrogatory 1(c) and the documents produced in response to Defendants' document requests (Bates No. K5106).

    f-j.    Unknown. Interrogatory 1(f-j) seeks information regarding entities that have no relationship to Plaintiff, and Plaintiff has no information or documents responsive to this interrogatory concerning such entities.

    k.    <u>Kotva správcovská a.s.</u>

K Spra is owned 100% by Kotva Parking s.r.o.

    l.    <u>Kotva obchodni' a.s. ("KO")</u>

Kotva owns 100% of KO.

    m.    <u>Kotva Parking s.r.o. ("KP")</u>

Kotva owns 100% of KP.

    n.    <u>Kotva International, Ltd. ("KI")</u>

Kotva sold KI sometime ago and the current status is not known of Kotva. Kotva will supplement its answer if information responsive to this interrogatory is discovered.

**Interrogatory No. 2**

Please identify the directors, officers and managers of the Listed Companies, for the period from January 1, 2000 until the present.

**Answer No. 2**

Kotva objects to this interrogatory to the extent it is overly broad, unreasonable, unduly burdensome, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this interrogatory to the extent the information is publicly available to Defendants. Subject to the foregoing General and Specific Objections, Plaintiff responds as follows: Pursuant to Fed R. Civ. P. 33(d), with respect to the Kotva owned Czech entities (i.e. Kotva a.s.; Kotva Nemovitosti; Kotva Správcovská a.s.; Kotva Obchodni a s.; Kotva Parking s r.o.), the identities of individuals who served as officers, directors and managers since 2000 may be ascertained from Kotva's annual reports, which will be produced to Defendants.

The directors, officers and managers of SPV C.O. are as follows:

Marek Kolíbal
SPVCO
Pavlou 15
Ledra House
Aglos Andreas
P.C. 1105
Nicosia, Cyprus


Paraskevas Zacharoullis
SPVCO
Pavlou 15
Ledra House
Aglos Andreas
P.C. 1105
Nicosia, Cyprus

Elena Makrigiorgi
SPVCO
Pavlou 15
Ledra House
Aglos Andreas
P.C. 1105
Nicosia, Cyprus

## Interrogatory No. 3

Please identify all documents, including but not limited to meeting minutes, concerning any meetings of shareholders, directors or supervisory board members of the Listed Companies at which one or more of the following topics was discussed: (a) the sale or potential sale of the Department Store; (b) the value of the Department Store; (c) the value of Kotva a.s. or its shares; (d) any transfer of the Department Store or an entity owning the Department Store from one person to another; (e) Weiss, WAM, K T, Inc. or CVF Investments, Ltd., Weiss Capital LLC or Vladimir Hoffmann; (f) this lawsuit; (g) criminal complaints or proceedings in the Czech Republic in which Andrew Weiss, Vladimir Hoffman or Edita Simkova are defendants or potential defendants, or (h) Kotva's relationship with Forminster Enterprises Ltd.

## Answer No. 3

Kotva objects to this interrogatory to the extent it is overly broad, unreasonable, unduly

burdensome, seeks irrelevant information, and is not reasonably calculated to lead to the

discovery of admissible evidence. Notwithstanding the foregoing General and Specific

Objections, Plaintiff responds as follows: Plaintiff has produced the documents identified in

Interrogatory No. 3 and, pursuant to Fed. R. Civ. P. 33(d), the answer to this interrogatory may

be ascertained or derived from the documents produced by Plaintiffs in response to Defendants'

document requests.

## Interrogatory No. 4

Please identify any describe in detail all agreements between and among the Listed Companies from the period January 1, 2000 to the present, including but not limited to, any promissory notes, loans, mortgages, security interests, option agreements, other contracts, and agreements on inter-company allocation of revenues or expenses.

6

**Answer No. 4**

Kotva objects to this interrogatory to the extent it is overly broad, unreasonable, unduly

burdensome, seeks irrelevant information, and is not reasonably calculated to lead to the

discovery of admissible evidence. Notwithstanding the foregoing General and Specific

Objections, Plaintiff responds as follows: Pursuant to Fed. R. Civ. P. 33(d), the answer to this

interrogatory may be ascertained or derived from Kotva's annual reports, which identify any

such inter-company agreements and/or allocation of revenues and expenses to the extent such

allocations occurred.

**Interrogatory No. 5**

Please identify any powers of attorney issued by one or more of the Listed Companies,
including but not limited to powers of attorney naming Miroslav Hálek, for the period from
January 1, 1996 to the present.

**Answer No. 5**

Kotva objects to this interrogatory to the extent it is overly broad, unreasonable, unduly

burdensome, seeks irrelevant information, and is not reasonably calculated to lead to the

discovery of admissible evidence. Plaintiff further objects to this interrogatory to the extent

Defendants seek documents dating back to 1996, which is beyond the scope of discovery

permitted by the Discovery Master. Notwithstanding the foregoing General and Specific

Objections, Plaintiff is unaware of any powers of attorney naming Miroslav Hálek from 2000 to

the present.

**Interrogatory No. 6**

For each and every interrogatory response in which Kotva claims that it is unable to
answer, in whole or in part, please describe in detail the efforts Kotva took to gather responsive
information.

7

**Answer No. 6**

Plaintiff is able to and has fully answered the foregoing interrogatories

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY ON THIS 17 DAY OF FEBRUARY, 2006.

_____
Richard Harazim

As to objections:

_____
Joel G. Beckman (BBO #553086)
William C. Nystrom (BBO#559656)
Daniel J. Pasquarello (BB0# 647379)
NYSTROM BECKMAN & PARIS LLP
10 St. James Avenue, 16th Floor
Boston, Massachusetts 02116
(617) 778-9100
(617) 778-9110 (fax)

Dated: February 17, 2006

## CERTIFICATE OF SERVICE

I, Daniel Pasquarello, hereby certify that on February 17, 2006 I caused and a true copy of the foregoing document to be served by email and First Class mail postage pre-paid upon all counsel of record.

_____
Daniel Pasquarello

8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ANDREW WEISS and WEISS ASSET ) | |
| MANAGEMENT, LLC, ) | |
| ) | |
| Defendants. ) | |
| ———————————————————— ) | C.A. No. 05-10679-RCL |
| ) | |
| ANDREW WEISS, WEISS ASSET ) | |
| MANAGEMENT LLC, K T, INC. and CVF ) | |
| INVESTMENTS, LTD., ) | |
| ) | |
| Counterclaim-plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| KOTVA a.s., MARTIN BENDA, RICHARD ) | |
| HARAZIM, FORMINSTER ENTERPRISES, ) | |
| LTD., SPV CO and JOHN DOES 1–5, ) | |
| ) | |
| Counterclaim-defendants. ) | |
| ———————————————————— ) | |

## SUPPLEMENTAL OBJECTIONS AND RESPONSES OF PLAINTIFF TO DEFENDANTS ANDREW WEISS AND WEISS ASSET MANAGEMENT, LLC'S THIRD SET OF INTERROGATORIES TO THE PLAINTIFF

Pursuant to Fed. R. Civ. P. 33, Local Rule 33.1, Plaintiff, Kotva, a.s. ("Kotva")

hereby supplements its response to the Third Set of Interrogatories of defendants,

Andrew Weiss and Weiss Asset Management, LLC (collectively "Weiss").

## GENERAL OBJECTIONS

I.    Kotva objects to each interrogatory to the extent it seeks information that

is beyond the scope of Rules 26 or 33 of the Federal Rules of Civil Procedure, is beyond

the proper scope of discovery because of the attorney client relationship, prepared in anticipation of litigation or trial or constitutes attorney work product, or is otherwise immune from discovery.

II.    In providing answers to these interrogatories, Kotva does not in any way waive or intend to waive but rather intends to preserve the following:

a.    All objections as to competency, relevancy, materiality and admissibility;

b.    All rights to object on any ground to the use of any of the Answers herein, including the trial of this or any other action;

c.    All objections as to vagueness or ambiguity; and

d.    All rights to object on any ground to any further interrogatories or other discovery requests involving or related to any of the interrogatories in Weiss' First Set of Interrogatories.

III.    Privileged information responsive to any interrogatory below is not being provided. Kotva does not waive, and intends to preserve and is preserving the attorney client privilege, the work product doctrine, and every other privilege with respect to each and every answer, document or other repository of information protected by such a privilege.

IV.    Kotva objects to the Instructions and/or Definitions contained in the Interrogatories to the extent that they attempt to impose obligations on Kotva that are inconsistent with and/or in addition to those required under the Federal Rules of Civil Procedure and the Local Rules.

V.    Kotva objects to the Interrogatories to the extent each interrogatory contains several subparts and therefore exceeds the number of interrogatories permitted under Fed. R. Civ. P. 33(a).

VI.    Kotva objects to the Interrogatories to the extent that they demand production of any information containing any confidential, proprietary and/or trade secret information.

VII.    Kotva's answers to the Interrogatories are qualified by the General Objections. Failure to restate any General Objection in response to a particular interrogatory does not constitute a waiver of such General Objection. By responding to these Interrogatories, Kotva does not waive any asserted objection.

**Interrogatory No. 2**

Please identify the directors, officers and managers of the Listed Companies, for the period from January 1, 2000 until the present.

**Answer No. 2**

Kotva objects to this interrogatory to the extent it is overly broad, unreasonable, unduly burdensome, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this interrogatory to the extent the information is publicly available to Defendants. Subject to the foregoing General and Specific Objections, Plaintiff responds as follows: Pursuant to Fed R. Civ. P. 33(d), with respect to the Kotva owned Czech entities (i.e. Kotva a.s.; Kotva Nemovitosti; Kotva Správcovská a.s.; Kotva Obchodni a.s.; Kotva Parking s.r.o.), the identities of individuals who served as officers, directors and managers since 2000 may be ascertained from Kotva's annual reports, which will be produced to Defendants.

The directors, officers and managers of SPV C.O. are as follows:

3

Marek Kolíbal
SPVCO
Pavlou 15
Ledra House
Aglos Andreas
P.C. 1105
Nicosia, Cyprus

Paraskevas Zacharoullis
SPVCO
Pavlou 15
Ledra House
Aglos Andreas
P.C. 1105
Nicosia, Cyprus

Elena Makrigiogi
SPVCO
Pavlou 15
Ledra House
Aglos Andreas
P.C. 1105
Nicosia, Cyprus

**Supplemental Response**:

Subject to and without waiving its objections, Kotva is gathering information

regarding the previous directors, officers and managers of SPV C.O. and will provide that

information in a further supplement.

**Interrogatory No. 6**

For each and every interrogatory response in which Kotva claims that it is unable
to answer, in whole or in part, please describe in detail the efforts Kotva took to gather
responsive information.

**Answer No. 6**

Plaintiff is able to and has fully answered the foregoing interrogatories.

**Supplemental Response**:

Kotva objects to this interrogatory to the extent it seeks information that is protected by the attorney/client privilege and work product doctrine. Kotva further objects that this interrogatory is overly broad, unreasonable, unduly burdensome, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objections, Kotva responds that it answered all interrogatories based upon the documents and information known to it. In its previous responses to interrogatories, Kotva stated that it filed a criminal complaint with Czech authorities but lacks knowledge or information sufficient to identify which individuals specifically initiated the criminal charges against Weiss (Kotva has produced the charging document that identifies a prosecutor); that it cannot identify the persons who have an "indirect ownership interest" in Kotva's shares; that it no longer owns Kotva International Ltd. and SPV KN and does not know the current ownership status of those entities; and that it lacks information or knowledge sufficient to identify the legal and beneficial owners of Forminster and the Bonalbo entities. To the extent that the Weiss Defendants are attempting to force Kotva to conduct independent research to acquire information to answer interrogatories, to provide information that is readily available to the Weiss Defendants, or to conduct research on the Weiss Defendants' behalf, the interrogatories are beyond the proper scope of discovery.

As to objections:

_____
Joel G. Beckman (BBO #553086)
William C. Nystrom (BBO#559656)
Daniel J. Pasquarello (BBO#647379)
NYSTROM BECKMAN & PARIS LLP
10 St. James Avenue, 16th Floor
Boston, Massachusetts 02116
(617) 778-9100
(617) 778-9110 (fax)

Dated:  April 7, 2006

CERTIFICATE OF SERVICE

    I hereby certify that on April 7, 2006 I caused a copy of the foregoing document to be served by Facsimile and First Class Mail upon all defendants.

_____
Joel G. Beckman

6

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY OF THE LAWS OF
THE UNITED STATES OF AMERICA ON THIS 3 DAY OF APRIL, 2006.

_____
Richard Harazim