UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW WEISS and WEISS ASSET MANAGEMENT, LLC, <br><br> Defendants. <br><hr> ANDREW WEISS, WEISS ASSET MANAGEMENT LLC, K T, INC. and CVF INVESTMENTS, LTD., <br><br> Counterclaim-plaintiffs, <br><br> v. <br><br> KOTVA a.s., MARTIN BENDA, RICHARD HARAZIM, FORMINSTER ENTERPRISES, LTD., SPV CO and JOHN DOES 1–5, <br><br> Counterclaim-defendants. | C.A. No. 05-10679-RCL |

## SECOND DECLARATION OF GEORGIY NIKITIN

1.     I, Georgiy Nikitin, make this declaration of my own personal knowledge.

2.     I am an employee of Weiss Capital LLC.

3.     Weiss Capital LLC is the manager of Brookdale International Partners, L.P. ("BIP").

4.     KPMG audits BIP's financial statements.

5.     With respect to the incorporation and principal activity of BIP, BIP's 2005 Audited Financial Statements explains as follows:

On July 15, 2003 Weiss Asset Management LLC (the "General Partner"), a Delaware limited liability company became the General Partner of the Partnership. . . . . The General Partner is responsible for the business and affairs of the Partnership, including the investment of the Partnership's assets. The sole member of the General Partner is Andrew Weiss, Ph.D. a tenured professor of Economics at Boston University. The General Partner has retained Weiss Capital LLC (the "Manager"), a Delaware limited liability company, to administer the Partnership's investment activities.

6.    With respect to shares of Kotva and Trend, the following quote from BIP's 2005 Audited Financial Statements explains BIP's interest:

> The Partnership has an interest in the segregated assets of Brookdale Global Opportunity Fund ("BGO"). On September 30, 2000, BGO's structure was changed to an open-ended investment fund. Some of the assets that were difficult to value were segregated in BGO's subsidiary CVF Investments Limited, Cyprus, shares of which are now held by BGO as a nominee for the benefit of the shareholders of BGO as of September 30, 2000, who received an entitlement to those segregated assets. The Partnership was the second largest shareholder of BGO at that time and received an entitlement to 32.82% of all future distributions from the liquidation of the segregated assets.

7.    The BIP Audited Financial Statements set forth, as of December 31, 2005: (1) the percentage interest of BIP in the ring-fenced assets; (2) the amount Professor Weiss has invested in BIP personally; and (3) the aggregate amount that related parties to Weiss Asset Management LLC, Weiss Capital LLC and Professor Weiss have invested in the partnership.

8.    Limited Partners in BIP are institutions, funds of funds and individuals.

9.    Weiss Capital maintains strict safeguards to ensure the confidentiality of the identities of its investors. Employees of Weiss Capital have access to this information only on a need-to-know basis. The list of investors is not available to anyone outside of Weiss Capital except for: (1) KPMG, which audits BIP's accounts, (2) BISYS, which is BIP's administrator; and (3) Globe Tax Services, Inc., which provides tax-related services to the limited partners of BIP. Like Weiss Capital, BISYS maintains strict safeguards to ensure the confidentiality of this information. *See* Exhibit A (Memorandum regarding Confidentiality Letter). Likewise, KPMG

has entered into an agreement under which it will maintain in strictest confidence the identities of BIP investors, as well as other confidential information, that it receives while conducting its audit. *See* Exhibit B (KPMG engagement letter). Globe Tax has entered into a confidentiality agreement, in which it promised to maintain the confidentiality of this information. *See* Exhibit C (Confidentiality Agreement).

10.    Weiss Capital has assured investors in BIP that their confidentiality and privacy will be maintained. Accordingly, disclosure of investor identities is likely to result in investors withdrawing their investments from BIP, and could result in lawsuits against Weiss Capital LLC or its employees, including Andrew Weiss, by the investors whose identities were disclosed.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 28, 2006.

_____
Georgiy Nikitin

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system and all attachments will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 28, 2006.

Benjamin A. Goldberger

BST99 1514177-1.072198.0012

3

April, 13 2006

To: Georgiy Nikitin

From: Jasem Movafeghzadeh

Re: Confidentiality letter

Please be advised that Staff members are required to sign a
confidentiality agreement upon joining, and are provided with copies of
The BISYS Group's confidentiality policy.

We limit access to a particular fund's information, as well as the
level of access, by employee.  Requests for higher levels of access
must be submitted and granted through a formal, tracked process.

If reporting is provided using BISYSReporter, the manager and each
investor will be issued a unique user name and password.

Our system has a firewall, regularly updated anti-virus software, and
intrusion detection software, as well as e-mail and web filtering.  We
also have periodic security testing performed by a third party.


Regards,

Jasem Movafeghzadeh
Director, Client Relations
Bisys-RK Alternative Investment Services, Inc.
105 Eisenhower Parkway
Roseland, NJ 07068
Phone: 973-461-5736
Fax:    973-461-2667
Jasem.m@Bisys.com



KPMG
PO Box 493GT_Century Yard Building_Grand
Cayman, Cayman Islands

Telephone_+1 345 949 4800_Fax        _+1 345
949 7164_Internet   _www.kpmg.ky

The General Partner
Brookdale International Partners, L.P.
Weiss Asset Management, LLC
29 Commonwealth Avenue
Boston, MA 02116
U.S.A.

Our ref   62271 13

September 30, 2005

Dear Sirs/Madams:

## Engagement Letter

The purpose of this letter is to confirm and update the terms of our continuing engagement to report on our audit of the financial statements of Brookdale International Partners, L.P. (the "Partnership") as of and for the year ending December 31, 2005 and in future years. This letter supersedes our previous letter to the General Partner dated January 20, 2005 on this matter.

By signing this letter you confirm that the Partnership does not have its partners' capital registered with the United States Securities Exchange Commission (SEC) (herein referred to as an "SEC Issuer") nor is it an affiliate of an SEC Issuer, which includes investment funds that are within an investment company complex of an SEC Issuer, nor are the financial statements of the Partnership included in the financial statements of an SEC Issuer audit client, of any member firm of the KPMG organization.

We will conduct our audit in accordance with International Standards on Auditing with the objective of expressing an opinion as to whether the presentation of the Partnership's financial statements taken as a whole, conforms with generally accepted accounting principles. We understand that the financial statements of the Partnership will be prepared in accordance with United States generally accepted accounting principles.

In conducting our audit, we will perform tests of the accounting records and such other procedures as we consider necessary in the circumstances to provide a reasonable basis for our opinion on the financial statements. We also will assess the accounting principles used and significant estimates made by management, as well as evaluate the overall financial statement presentation.

We cannot provide assurance that an unqualified opinion will be rendered. Circumstances may arise in which it is necessary for us to modify our report or withdraw from the engagement. In such circumstances, our findings or reasons for withdrawal will be communicated to the management of the Partnership.

KPMG, a partnership established under Cayman Islands law, is a
member of KPMG International, a Swiss cooperative.



The Partnership agrees that all records, documentation, and information we request in connection with our audit will be made available to us on a timely basis in accordance with the guidelines specified in our Prepared by Client letter to be separately communicated prior to commencement of audit fieldwork. The Partnership agrees that all material information will be disclosed to us, and that we will have the full cooperation of your staff and/or your fund managers. As required by International Standards on Auditing, we will make specific inquiries of management about the representations embodied in the financial statements and the effectiveness of internal control, and obtain a representation letter from management about these matters. The responses to our inquiries, the written representations, and the results of audit tests comprise the evidential matter we will rely upon in forming an opinion on the financial statements. Because of the importance of management's representations to the effective performance of our services, the Partnership agrees to release and indemnify KPMG and its personnel from any claims, liabilities, costs and expenses relating to our services under this letter attributable to any fraudulent acts, fraudulent omissions or willful default by management and any misrepresentations in the representation letter referred to above. This undertaking will survive termination of this agreement.

Management of the Partnership has responsibility for the financial statements and all disclosures and representations contained therein. Management also has responsibility for the adoption of sound accounting policies and the implementation of record keeping and internal control which maintain the reliability of the financial statements, safeguard the Partnership's assets and provide reasonable assurance against the possibility of misstatements that are material to the financial statements.

The primary responsibility for the prevention and detection of irregularities, including error and fraud, and of non-compliance with laws and regulations rests with you. An audit conducted in accordance with International Standards on Auditing is designed to provide reasonable assurance that the financial statements taken as a whole are free from material misstatement, whether caused by fraud or error. However, because of the test nature and other inherent limitations of an audit performed in accordance with International Standards on Auditing, together with the inherent limitations of any system of internal control, there is an unavoidable risk that a material misstatement, or fraud, may remain undiscovered. The fact that an audit is carried out may act as a deterrent, but we are not and cannot be held responsible for the prevention of fraud and error. Also, an audit is not designed to detect matters that are immaterial to the financial statements. To the extent that they come to our attention, we will inform management about any material errors and any instances of fraud or illegal acts. Further, to the extent that they come to our attention, we will inform the General Partner about fraud and illegal acts that involve senior management, fraud that in our judgment causes a material misstatement of the financial statements of the Partnership, and illegal acts, unless clearly inconsequential, that have not otherwise been communicated to the General Partner.

In planning and performing our audit, we will consider the Partnership's internal control in order to determine our auditing procedures for the purpose of expressing an opinion on the financial statements and not to provide assurance on internal control. While we are not being engaged to report on the Partnership's internal control, we will report to you any significant weaknesses in your internal control structure to the extent they come to our attention.

KPMG

*Brookdale International Partners, L.P.*
*Engagement Letter*
*September 30, 2005*

Management is responsible for adjusting the financial statements to correct material misstatements and for affirming to us in the representation letter that the effects of any uncorrected misstatements aggregated by us during the current engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the financial statements taken as a whole.

KPMG's maximum liability to the Partnership for any reason relating to the services under this letter shall be limited to three times the fees paid to KPMG for the services or work product giving rise to liability, except to the extent determined to have resulted from the willful, intentional or gross negligence or misconduct or fraudulent behaviour of KPMG.

Our fees are based on the time required by the individuals assigned to the engagement plus direct out-of-pocket expenses. Individual hourly rates vary according to the degree of responsibility involved and the experience and skill required. Based upon our discussions, we estimate that audit fees will range from US$52,500 to US$70,000. Our estimate contemplates that no additional work will be required due to delays in receiving information or to satisfy us on significant accounting problems that may unexpectedly arise during the course of our examination. Should these situations arise, we will discuss it with you before undertaking any additional work. Any additional time incurred for unexpected situations or special work will be billed in addition to the fee estimate. In addition, expenses are billed for reimbursement as incurred.

Our fees and expenses will be billed as follows: 40% of the audit fee upon commencement of the audit; a further 40% upon deliverance of our draft audit opinion; and the final 20% upon deliverance of our signed audit opinion. All invoices shall be paid within 30 days after the date thereof. In the event any invoice is not timely paid as set forth herein, a monthly finance charge of 1% of the aggregate outstanding amount due may be charged to the Company.

Other than as specifically outlined below, when considering the use of our report in other documents you agree not to quote our name, whether directly or through implication, in any material other than financial statements (which we have audited) prepared in accordance with generally accepted accounting principles or applicable legal or regulatory requirements, without our prior written consent. The definitive version of financial statements which we have audited shall be those bearing our original manuscript signature and we shall not be responsible or liable for any errors or inaccuracies appearing in any reproduction in any form or medium.

We recognise that the Partnership may wish to publish its financial statements and our report, (the audit report signed by KPMG) on the Partnership's web site, or to distribute such material to shareholders or other parties having a legitimate right to receive such by electronic means, such as e-mail.



■ KPMG consents to allowing the Partnership to identify KPMG as its auditors of its annual financial statements in the Partnership's offering memorandum, on the Partnership's web site and in marketing materials, marketing presentations, and when asked either verbally or in writing. KPMG's consent relates solely to identification of KPMG as the Partnership's auditors of its annual financial statements and may not be conveyed in any manner that may give any recipient the impression that KPMG is endorsing the sale, offering, promotion, transaction or other matter with respect to such marketing materials.

■ It is and shall remain the responsibility of the Partnership to ensure that any such electronic publication or distribution properly presents the financial information and our report. The Partnership shall ensure that financial information on the Partnership's web site distinguishes clearly between financial information that we have audited and other information and avoids any inappropriate association.

■ Responsibility for the security of any electronic distribution of this report remains the responsibility of the Partnership and KPMG accepts no liability if the report is or has been altered in any way by any person.

Where the Partnership proposes to take advantage of laws or regulations allowing for electronic publication and distribution of financial statements and our report and other financial information to shareholders and to any regulatory authority, the Partnership shall remain responsible for establishing and controlling the process for doing so.

The work papers for this engagement are the property of KPMG and constitute confidential information. However, the Partnership acknowledges that in certain circumstances KPMG, its partners or employees, may be obliged to give evidence and information to courts or regulatory authorities in connection with the affairs of the Partnership. Disclosure will not normally be made to third parties unless required by applicable laws and regulations, professional standards or where failure to make such disclosures would, in our opinion, be prejudicial to KPMG. If disclosure is required, access to such work papers will be provided under the supervision of KPMG personnel. Furthermore, upon request, we may provide photocopies of selected work papers to the relevant court or regulator. In the event that KPMG is required pursuant to subpoena or other legal process to produce its documents relating to engagements for the Partnership in judicial or administrative proceedings to which KPMG is not a party, the Partnership shall reimburse KPMG for its professional time and expense, including reasonable attorney's fees, incurred in responding to such requests.

Confidential information, i.e. information of a proprietary or sensitive nature about the strategies, models or data used by the Partnership, Partnership portfolio, geographic, sectoral, or other distribution of Partnership's investments, trading records, or any other information, acquired by audit staff through their employment is considered to be privileged and must be held in strictest confidence during the performance of audit services and after the completion of the work. Confidential information must be transmitted only to those persons who need the information to discharge their duties at KPMG. Any other dissemination of information or correspondence must be approved by the appropriate Officer of the Partnership. KPMG warrants that it has procedures in



place to ensure that its current and former employees do not abuse the confidential information obtained in the course of performing the audit services and that any dissemination without authorization will be considered gross negligence on behalf of the auditor. Further, KPMG acknowledges that unauthorized dissemination of privileged information could potentially cause material losses.

It is agreed that we may communicate with you via e-mail as well as the traditional forms of communication, including letter, fax and telephone, although it is understood and agreed that all e-mail communication from us will not be binding unless and until communicated to you in writing and received by hand post or fax.

Our engagement will be governed by, and construed in accordance with, the laws of the Cayman Islands and it is agreed that the courts of the Cayman Islands shall have final jurisdiction to settle any disputes which may arise out of, or in connection with, our engagement as your auditors in accordance with the terms of this letter. In the event that any term or provision of this Agreement shall be held to be invalid, void or unenforceable, then the remainder of this Agreement shall not be affected, impaired or invalidated, and each such term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

The terms outlined in this letter will continue in effect from year to year unless changed by mutual agreement. This letter forms the entire Agreement and understanding between KPMG and the Partnership with respect to the audit we will perform for the Partnership. It supersedes all previous arrangements and understandings between the parties, with respect to the audit of the Partnership, which shall cease to have any further force or effect. Any variation of the terms of this letter shall be made in writing and will not be effective unless signed by a partner of KPMG and by a duly authorised representative of the Partnership.

We appreciate the opportunity of continuing to be of service to the Partnership. We shall be pleased to discuss this letter with you at any time. For your convenience in confirming these arrangements, we enclose a copy of this letter. Please sign and return it to us.

Yours faithfully,

KPMG

5



*Brookdale International Partners, L.P.*
*Engagement Letter*
*September 30, 2005*

TERMS ACCEPTED:

AUTHORISED SIGNATURE:

ORGANISATION: **Brookdale International Partners, LP**

TITLE: _President_

DATE: _10-12-05_

6

# CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement ("Agreement") is entered into as of the 08 December 2005, ("Effective Date'), by and between Weiss Asset Management, LLC ("WAM") and Globe Tax Services, Inc., an independent contractor ("GlobeTax").

WAM is in the business of securities investments and Globe Tax Services, Inc. is in the business of filing tax reclamation applications with various foreign governments and custodians on behalf of investors seeking to recover taxes withheld by such foreign governments or any custodian on dividends and interest payments made to these investors.

WHEREAS, WAM and GlobeTax will engage in discussions in connection with GlobeTax providing services to WAM (the "Authorized Purpose");

WHEREAS, WAM and GlobeTax desire that all of their confidential and proprietary information revealed to the other be subject to the confidential and non-disclosure restrictions imposed by this Agreement.

NOW, THEREFORE, in consideration of the disclosure by the parties to authorized representatives of confidential and proprietary information and material, the parties agree as follows:

1.      "Confidential Information" means and shall include all information that is not known by, or generally available to the public at large and that concerns the parties' business and affairs or its affiliates, which may include information or documents regarding the parties or an affiliate's products, systems, software, source code and those in development and any related documentation and business plans.  Neither party shall have any obligation to specifically identify any information as to which the protection of this Agreement extends by any notice or other action.

2.      WAM and GlobeTax shall use the Confidential Information solely for the Authorized Purpose, and shall hold the Confidential Information in strictest confidence, and shall not, without the prior written consent of the disclosing Party, copy or disclose any portion thereof to any third party.  A party may disclose Confidential Information to its responsible employees only as strictly necessary for that party to achieve the Authorized Purpose.

3.      WAM and GlobeTax shall not be prevented from disclosing or using any information or material, or any element thereof, whether or not such information or material is Confidential Information for purposes of this Agreement, to the extent any such information or material, or any element thereof:

(a)     is or becomes public domain information or material through no fault of the party using the information;
(b)     as demonstrated by its written records of the party using the information was already lawfully known (without restriction on disclosure) prior to being disclosed by the party disclosing the information;
(c)     has been or is hereafter rightfully furnished to the party using such information without restriction on disclosure from a third person lawfully in possession thereof and itself without restriction on disclosure; or
(d)     has been independently developed by the party using the information without reference to the Confidential Information.

It shall be presumed that any Confidential Information in the possession of a party using such information is not within exceptions (b), (c), or (d) above, and the burden is on that party to prove otherwise by records and documentation.

4.    Notwithstanding any other provision of this Agreement, a party using such information shall not be liable for disclosure of Confidential Information pursuant to law or the order, requirement or request of any court or government authority, provided the party providing the information is notified in writing prior to such disclosure and is given the reasonable opportunity to defend.  A party using such information will take reasonable steps in any such disclosure to have the court or governmental authority protect the confidentiality of all information so disclosed.

5.    Each party agrees and acknowledges that any breach of this Agreement would cause the other party irreparable harm for which monetary damages would be inadequate.  Accordingly, either party will be entitled to seek injunctive or other equitable relief to remedy any threatened or actual breach of this Agreement by the other party.

6.    Each party agrees that, upon termination of the Authorized Purpose, or at any time upon the written request of the party disclosing the information, it will promptly:

   (i)    return or destroy, at option of the other party, all originals and copies of all documents and materials it has received containing Confidential Information;

   (ii)    deliver or destroy, at option of the other party, all originals and copies of all summaries, records, descriptions, modifications, negatives, drawings, adoptions and other documents or materials, whether in writing or in machine-readable form, prepared by it or prepared under its direction or at its request from the documents and materials referred to in subparagraph (i); and

   (iii)    provide a notarized written statement to the other party certifying that all documents and materials referred to in subparagraphs (i) and (ii) have been delivered to such other party or destroyed.

7.    This Agreement shall be binding upon, and shall inure to the benefit of the parties and their respective successors and assigns.  Any modifications to this Agreement must be in writing and signed by both parties.

8.    This Agreement shall remain in effect for five years commencing on the Effective Date, regardless of the earlier termination or expiration of any other contract for services between the parties.  The termination of this Agreement shall not affect either party's obligation with respect to the Confidential Information disclosed prior to the effective date of termination.

9.    This Agreement shall be governed by the laws of the State of New York.

**IN WITNESS WHEREOF,** the parties have executed and delivered this Agreement on the dates set forth beneath their respective signatures below, effective as of the Effective Date.

Weiss Asset Management

Signature

Name Andrew Weiss
Title President & CIO
Phone 617-778-7780
Address 29 Commonwealth Avenue, 10th Fl.
Boston, MA 02116

Globe Tax Services, Inc.

Signature
Name        Martin S. Foont
Title        President
Phone        212-747-9100
Address        90 Broad Street
New York, New York  10004

# Agreement for Tax Reclamation Services

Weiss Asset Management by its President & CIO, Andrew Weiss (Customer) hereby retains Globe Tax Services, Inc. (GlobeTax) to provide tax reclamation services.  GlobeTax will file tax reclaim applications as required by certain foreign tax authorities on Customer's behalf.  In exchange for these services, Customer agrees to pay the following:

1.    <u>Set-Up and Annual Fee</u>.    In consideration for GlobeTax's performance of Services described in Paragraph 1, Customer shall pay GlobeTax a set up fee of $200 per account and an annual maintenance fee of $200 per account for each prior and/or subsequent calendar year for which the beneficial owner received in excess of $400.  Said fees are due and payable upon billing.

2.    <u>Transactional</u>.        In addition to payments made in section 1., Customer will pay for items filed based on the following:
   (a)    For items with a recoverable greater than $100, for non-partnership accounts, the fee per item is the greater of $50 or 20% of the recoverable.  For partnership accounts, the fee is the greater of $50 or 35% of the recoverable.  Except that if the data feed is manual, the fee is increased in each circumstance by $5 or 5% of the recoverable, which ever is greater.
   (b)    For items filed with a recoverable equal to or less than $100, the fee is 50% of the recoverable.
   (c)    Applications are filed once the recoverable reaches $100.
   (d)    Customer shall reimburse GlobeTax for all reasonable out-of-pocket costs and expenses (i) incurred by GlobeTax in connection with the Services or (ii) incurred by GlobeTax on behalf of Customer in connection with the Services.  Such costs and expenses shall be collectively referred to herein as, the "Costs and Expenses."

Customer agrees and hereby authorizes (main custodian) and any custodian(s) for Customer's securities to provide all documents, records and other relevant information for the filing of tax reclamation claims as GlobeTax, within its sole discretion, determines necessary.  The customer shall use GlobeTax exclusively to provide tax reclamation services.

This agreement may be cancelled by either party upon thirty days written notice.

Customer agrees that this agreement is subject to the laws of the State of New York.

Accepted:
08 December 2005

_____
Weiss Asset Management
By Andrew Weiss
President & CIO

_____
Globe Tax Services, Inc.
Martin S. Foont, President

| Form **8802** | **Application for United States** | |
|---|---|---|
| (December 2003) | **Residency Certification** | OMB No. 1545-1817 |
| Department of the Treasury Internal Revenue Service | ► See separate instructions | |

| Applicant's Name | Applicant's U.S. taxpayer identification number |
|---|---|
| **Brookdale International Partners, LP** | **13-379-0123** |

| If a joint return was filed, spouse's name (see instructions) | If a joint return was filed, spouse's U.S. taxpayer identification number |
|---|---|

If a separate certification is needed for spouse, check here ► ☐

**1** Name and taxpayer identification number as it should appear on the certification if different from above

**2** Applicant's address during the calendar year for which certification is requested, including country and ZIP or postal code (see instructions)

29 Commonwealth Avenue, 10th Floor, Boston, MA 02116

**3a** Mail the certification to (check the appropriate box):

☐ Address on line 2                    ☐ Address shown on the attached Form 2848 or Form 8821
☒ Address on line 3b                   ☐ Other (specify) ► .....................................................

**b** Appointee's name and address (if any)

**GLOBE TAX SERVICES, INC.**
**90 BROAD STREET – 8TH FLOOR**
**NEW YORK, NY 10004**
**ATTN: ROBERT A. WEISS, ESQ.**

Appointee's (see instructions):

CAF/Appointee No. ► ..........................................

Phone No. ► **( 212 ) 747-9100** .................

Fax No. ► **( 212 ) 747-0029** ...................

**4** Applicant is (check appropriate box(es)):

**a** ☐ Individual. Check all applicable boxes
    ☐ U.S. citizen
    ☐ Sole proprietor
    ☐ U.S. permanent resident alien (green card holder)
    ☐ Other U.S. resident alien. Type of entry visa ► ..............................................
      Current nonimmigrant status ► ................................ and date of change (see instructions) ► ....................
    ☐ Dual-Status U.S. resident (see instructions). From ► ................................ to ► ....................
    ☐ Partial-year Form 2555 filer (see instructions). U.S. resident from ► ................................ to ► ....................
**b** ☒ Partnership. Check all applicable boxes.    ☒ U.S.    ☐ Foreign    ☐ LLC
**c** ☐ Trust. Check if:    ☐ Grantor (U.S.)    ☐ Simple    ☐ Rev. Rul. 81-100 Trust    ☐ Section 584
                    ☐ Grantor (foreign)    ☐ Complex    ☐ IRA
**d** ☐ Estate
**e** ☐ Corporation. If incorporated in the United States, go to line 5. Otherwise, continue.
    Check if:    ☐ Section 269B    ☐ Section 943(e)(1)    ☐ Section 953(d)    ☐ Section 1504(d)
    Country of incorporation ► ............................................................................
    If a dual-resident corporation, specify other country of residence ► ........................................
    If included on a consolidated return, attach page 1 of Form 1120 and Form 851.
**f** ☐ S corporation
**g** ☐ Employee benefit plan/trust. Plan number, if applicable ► ..................
    Check if:    ☐ Section 401(a)    ☐ Section 403(b)    ☐ Section 457
**h** ☐ Exempt organization. If organized in the United States, check applicable box.
    ☐ Section 501(c)(3)    ☐ Governmental entity    ☐ Other (specify) ► ........................................

**5** Was the applicant required to file a U.S. tax form for the tax period(s) on which certification will be based?
    **Yes.**    Check the appropriate box for the form filed and go to line 7.
        ☐ 990    ☐ 990-T    ☐ 1040    ☐ 1041    ☒ 1065    ☐ 1120    ☐ 1120S    ☐ 5227    ☐ 5500
        ☒ Other (specify) ► *1042 MA State return*
    **No.**    Attach explanation (see instructions). Check applicable box and go to line 6.
        ☐ Minor child    ☐ QSub    ☐ U.S. DRE (LLC)    ☐ Foreign DRE    ☐ Section 761(a) election
        ☐ FASIT    ☐ Foreign partnership    ☐ Other ► ................

For Privacy Act and Paperwork Reduction Act Notice, see page 5 of the instructions.            Form **8802** (12-2003)

Form **8802** (12-2003)                                                                                                      Page **2**

**6** Was the applicant's parent or parent organization required to file a U.S. tax form?

   **Yes.**  Check the appropriate box for the form filed by the parent.

      ☐ 990   ☐ 990-T   ☐ 1040   ☐ 1041   ☐ 1065   ☐ 1120   ☐ 1120S   ☐ 5500

      ☐ Other (specify) ▶

      Parent's name and address ▶

      and U.S. taxpayer identification number ▶

   **No.**  Attach explanation (see instructions).

**7** Calendar year(s) for which certification is requested (see instructions)

**8** Tax period(s) on which certification will be based (see instructions)

**9** Purpose of certification. Check applicable box.

   ☐ Income Tax     ☐ VAT (specify NAICS codes) ▶

   ☒ Other (specify) ▶ **Request for US Certification of Residence only.**

**10** Enter the number of certifications needed in the column to the right of each country for which certification is requested (see instructions)

| Country | # | Country | # | Country | # | Country | # | Country | # |
|---|---|---|---|---|---|---|---|---|---|
| Armenia | | Estonia | | Jamaica | | Norway | | Tajikistan | |
| Australia | | Finland | | Japan | | Pakistan | | Thailand | |
| Austria | | France | | Kazakhstan | | Philippines | | Trinidad & Tobago | |
| Azerbaijan | | Georgia | | Rep. of Korea | | Poland | | Tunisia | |
| Barbados | | Germany | | Kyrgyzstan | | Portugal | | Turkey | |
| Belarus | | Greece | | Latvia | | Romania | | Turkmenistan | |
| Belgium | | Hungary | | Lithuania | | Russia | | Ukraine | |
| Canada | | Iceland | | Luxembourg | | Slovak Rep. | | United Kingdom (see page 2 of the instructions) | |
| China | | India | | Mexico | | Slovenia | | Uzbekistan | |
| Cyprus | | Indonesia | | Moldova | | South Africa | | Venezuela | |
| Czech Rep. | | Ireland | | Morocco | | Spain (see page 2 of the instructions) | | Other(s) (specify below) | |
| Denmark | | Israel | | Netherlands | | Sweden | | | |
| Egypt | | Italy | | New Zealand | | Switzerland | | | |

**11** This space can be used to enter additional required information

**Brookdale International Partners, LP, 13-379-0123, is a U.S. resident and will continue to be throughout the current tax year. The entity has filed its required return and the entity classification has not changed since the return was filed.**

**Sign here**

Under penalties of perjury, I declare that I have examined this application and accompanying attachments, and to the best of my knowledge and belief, they are true, correct, and complete. If I have designated a third party to receive the residency certification(s), I declare that the certification(s) will be used only for obtaining information or assistance from that person relating to matters designated on line 9.

Applicant's signature (or individual authorized to sign for the applicant)   |   Date 12/8/05   |   Capacity in which acting *President of General Partner*   |   Daytime phone number (617) 778-7780

Keep a copy for your records.

Spouse's signature. If a joint application, **both** must sign   |   Date

Form **8802** (12-2003)

# Power Of Attorney

KNOW ALL MEN BY THESE PRESENTS, that Brookdale International Partners, LP, 29 Commonwealth Avenue, 10th Floor, Boston, MA 02116, ("Customer") by and through its general partner who is authorized to act on behalf of the partnership and its partners in such matters does hereby make, constitute and appoint either Robert A. Weiss, Esq. or John A. Astorina, Esq. as agents of GLOBE TAX SERVICES INCORPORATED, 90 Broad Street, New York, NY 10004-2205, as Customer's true and lawful attorney-in-fact and agents, with full power of substitution for Customer and in Customer's name, place, and stead, in any and all capacities, to sign any and all applications, requests, or claims for refund, reduction, repayment, and credit of, or exemption or relief from, any withholding or similar taxes in any jurisdiction whether in or outside of the United States and to file or deliver the same, with any exhibits or accompanying documentation that may be necessary in connection therewith, with the appropriate authorities, granting unto said attorney-in-fact and agent, full power and authority to do so and perform every act and sign all such documents or papers required in connection with the exercise of the powers conferred on it by these presents solely for the purposes set forth herein, as fully to intents and purposes as Customer might or could do in person, hereby ratifying and confirming all that said attorney-in-fact and agent, or its substitute, may lawfully do or cause to be done by virtue hereof.

IN WITNESS THEREOF, the undersigned has duly signed these presents this __8__ day of __December__ 2005.

by _____
**Authorized Signature**
Andrew Weiss
CIO & President of Weiss Asset Management LLC
General Partner of Brookdale International Partners LP
_____
**Print Name & Title**

_____
**Notary Public**

MARTA SLUBORSKA
Notary Public
Commonwealth of Massachusetts
My Commission Expires
December 15, 2011

# Power Of Attorney

KNOW ALL MEN BY THESE PRESENTS, that Brookdale International Partners, LP, 29 Commonwealth Avenue, 10th Floor, Boston, MA 02116, ("Customer") by and through its general partner who is authorized to act on behalf of the partnership and its partners in such matters does hereby make, constitute and appoint GLOBE TAX SERVICES INCORPORATED, 90 Broad Street, New York, NY 10004-2205, as Customer's true and lawful attorney-in-fact and agents, with full power of substitution for Customer and in Customer's name, place, and stead, in any and all capacities, to sign any and all applications, requests, or claims for refund, reduction, repayment, and credit of, or exemption or relief from, any withholding or similar taxes in any jurisdiction whether in or outside of the United States and to file or deliver the same, with any exhibits or accompanying documentation that may be necessary in connection therewith, with the appropriate authorities, granting unto said attorney-in-fact and agent, full power and authority to do so and perform every act and sign all such documents or papers required in connection with the exercise of the powers conferred on it by these presents solely for the purposes set forth herein, as fully to intents and purposes as Customer might or could do in person, hereby ratifying and confirming all that said attorney-in-fact and agent, or its substitute, may lawfully do or cause to be done by virtue hereof.

IN WITNESS THEREOF, the undersigned has duly signed these presents this ___8___ day of ___December___ 2005.

by _____
*Authorized Signature*

Andrew Weiss
CIO & President of Weiss Asset Management LLC
General Partner of Brookdale International Partners LP
*Print Name & Title*

_____
*Notary Public*

MARTA SLUBORSKA
Notary Public
Commonwealth of Massachusetts
My Commission Expires
_____ 15 2011

# WEISS ASSET MANAGEMENT

08 December 2005

Danielle D'Aloia
BISYS/RK
105 Eisenhower Parkway, 3rd Floor
Roseland, NJ 07068

Dear Danielle:

Weis has engaged Globe Tax Services, Inc., 90 Broad Street, New York, N.Y.  10004, to act on its behalf in the filing and recovery of excess taxes withheld by the various tax authorities.  In providing this service, we would appreciate your cooperation in satisfying GlobeTax's requests.

- We hereby authorize you to provide GlobeTax with all relevant fund and partner information and documentation regarding the ownership and registration of our fund(s) for the purposes of tax reclamation.  This can be coordinated with Mr. Len A. Lipton or Mr. Robert Weiss at GlobeTax (212-747-9100).

- We further authorize you to provide GlobeTax with updates to this information as required by GlobeTax for the sole purpose of tax reclamation.

As you know, from time to time, GlobeTax may ask for additional information as we invest into new markets and governments change their requirements.

Thank you for your support and for aiding our efforts with the timely recovery of these funds.

Sincerely,

Andrew Weiss

cc:    Len A. Lipton, GlobeTax
       Robert Weiss, GlobeTax

29 Commonwealth Avenue • Boston • Massachusetts • 02116
Phone: (617) 778-7780 • Fax: (617) 778-7781 • E-mail: info@weissasset.com