UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s.,<br><br>  Plaintiff,<br><br>v.<br><br>ANDREW WEISS and WEISS ASSET MANAGEMENT, LLC,<br><br>  Defendants.<br><br>ANDREW WEISS, WEISS ASSET MANAGEMENT LLC, K T, INC. and CVF INVESTMENTS, LTD.,<br><br>  Counterclaim-plaintiffs,<br><br>v.<br><br>KOTVA a.s., MARTIN BENDA, RICHARD HARAZIM, FORMINSTER ENTERPRISES, LTD., SPV CO and JOHN DOES 1–5,<br><br>  Counterclaim-defendants. | C.A. No. 05-10679-RCL<br><br>*Leave to file granted on*<br>September 13, 2006 |

**REPLY MEMORANDUM OF ANDREW WEISS AND WEISS ASSET MANAGEMENT LLC IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS**

**I.   KOTVA HAS NO RIGHTS TO THE SALE PROCEEDS UNDER THE SHARE PURCHASE AGREEMENT**

Engaging in a sleight of hand that crosses the line between zealous advocacy and an attempt to mislead the Court, Kotva argues that it "was the seller of the Shopping Centre and, under the express terms of the Share Purchase Agreement, may exercise rights to the sale proceeds." Opp. at 1. In support of this argument, Kotva quotes at length from the Share Purchase Agreement (the "SPA"), describing what it claims are "Kotva's" rights and obligations

under the Agreement. *Id.* at 7 & n.1. However, Kotva misleads the Court by failing to acknowledge the fact that the word "Kotva" in the SPA *does not refer to the plaintiff, Kotva a.s.* Rather, the word "Kotva" refers to another company: a limited partnership called Kotva Nemovitosti k.s. Page 1 of the SPA defines the relevant terms:

| Defined Term in SPA | Corresponding Company |
|---|---|
| Seller | SPV CO Limited |
| Buyer | CRQ Czech a.s. |
| SPV KN | SPV KN a.s. |
| **Kotva** | **Kotva Nemovitosti, k.s., *not the Plaintiff*** |
| Markland | Markland Holdings Limited |
| **KAS** | **Kotva a.s., *the Plaintiff*** |
| KO | Kotva Obchodni, a.s. |

SPA at 1, Def.'s Mem. at 4 n.3.

Replacing the defined terms with the names of the corresponding companies, the portion of the SPA quoted by Kotva on page 7 of its Opposition (in an attempt to show that it was entitled to the proceeds of the sale of the Department Store) provides that:

> *If the nature of rights and obligations under this Agreement enables so, [SPV CO Limited's] rights and obligations under this Agreement may be fulfilled and exercised by* **[Kotva Nemovitosti k.s.]** *and [CRQ Czech a.s.'s] rights and obligations under this Agreement may be fulfilled and exercised by [Markland Holdings Limited].*
>
> [SPV CO Limited] and **[Kotva Nemovitosti k.s.]** are jointly and severally liable for the fulfillment of the obligations of either of them arising out of this Agreement. **[Kotva Nemovitosti k.s.]**, *[Kotva a.s.] and [Kotva Obchodni, a.s.] jointly and severally guarantee the fulfillment of [SPV CO Limited's] and* **[Kotva Nemovitosti k.s.'s]** *obligations arising out of this Agreement.* [CRQ Czech a.s.] and [Markland Holdings Limited] are jointly and severally liable for the fulfillment of the obligations of either of them arising out of this Agreement.

SPA, §§ 2.5–2.6 (emphasis added).

The sole damages that Kotva alleges in its Complaint are that it did not receive the proceeds of the sale of the Department Store as quickly as it would have liked. *See* Compl. ¶¶ 37–39. As illustrated above, according to the SPA Kotva has no rights to the sale proceeds and

was never going to receive any money as a result of the Department Store sale. Thus, the express terms of the SPA provide that SPV CO—rather than the plaintiff—is the allegedly injured party.

SPV CO, however, has explicitly rejected this Court as a forum for this dispute and the Court recently granted SPV CO's motion to dismiss for lack of personal jurisdiction. Kotva's attempt to claim damages for injury to SPV CO while shielding SPV CO from this Court's jurisdiction is fatal to Kotva's claims. Kotva cannot pick and choose which companies are exposed to the jurisdiction of this Court when filing a lawsuit by claiming for itself damages suffered by a subsidiary of a subsidiary, alternatively using the corporate veil as a sword and a shield.

Kotva asserts, in the alternative, that it is entitled to a daisy chain recovery of damages for the diminution in value of its limited partnership interest in Kotva Nemovitosti resulting from the diminution in value of Kotva Nemovitosti's shares in SPV CO. However, the cases Kotva cites offer no support for this novel legal theory. Rather, in *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 210 F.3d 1 (1st Cir. 2000), Judge Stearns granted a motion in limine precluding the plaintiff from presenting evidence of its wholly owned subsidiary's damages—in that case lost profits. *Id.* at 16. The First Circuit affirmed. *Id.* at 16–17. In *Eateries v. J.R. Simplot Co.*, 346 F.3d 1225, 1229–30 (10th Cir. 2003), the Tenth Circuit did not even address this issue as the appellant had taken one position before the trial court and the opposite position on appeal.

Kotva's blanket assertion that it can recover for damage to a company (SPV CO) owned by a partnership (Kotva Nemovitosti k.s.) in which Kotva has a partnership interest is contradicted by controlling precedent. The First Circuit has squarely held that:

> In order to establish Article III standing, a plaintiff must have a "personal stake in the outcome of the controversy." *Baker v. Carr*, 369 U.S. 186, 204 (1962). And, "[a]ctions to enforce corporate rights or redress injuries to [a] corporation cannot be maintained by a stockholder in his own name . . . even though the injury to the

3

> corporation may incidentally result in the depreciation or destruction of the value of the stock." *Pignato v. Dein Host, Inc.*, 835 F.2d 402, 406 (1st Cir. 1987) (quoting *Brictson v. Woodrough*, 164 F.2d 107, 109 (8th Cir. 1947)). This standing rule applies even when there is only one shareholder in a corporation. *See id.*

*Diva's Inc. v. City of Bangor*, 411 F.3d 30, 42 (1st Cir. 2005) (alterations in original). *See also Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 29–30 (1st Cir. 1987) (holding that shareholders may not bring RICO claims for harm to a corporation in which they hold shares).

Allowing Kotva to assert these claims would be particularly inappropriate in this case. Like SPV CO, Kotva's controlling shareholder, Forminster, has also successfully fought this Court's jurisdiction. Kotva/Forminster offers no reason why it should be able to break the chain of ownership with Kotva a.s., rather than its natural end-point: Forminster and those who control it.[1]

## II. SECURITIES FRAUD AND COMMON LAW FRAUD REQUIRE RELIANCE, WHICH KOTVA ACKNOWLEDGES IT HAS NOT PLEAD

Kotva acknowledges that it has not plead reliance—a necessary prerequisite to any claim for common law fraud or securities fraud. Instead, it argues that "[n]o reliance is needed for fraudulent schemes under 10b-5 or for fraud by conduct." Opp. at 2. However, Kotva cites no authority for this proposition. Rather, Kotva claims that since it is asserting some kind of nebulous "fraud by conduct" theory (that is not plead with any particularity) it is somehow exempt from pleading and proving reliance. Controlling precedent is to the contrary. *E.g.*, *Eureka Broadband Corp. v. Wentworth Leasing Corp.*, 400 F.3d 62, 68 (1st Cir. 2005) (listing

---

[1] The other purported damages Kotva now identifies in its Opposition are simply not plead in its Complaint. Kotva's Complaint seeks attorneys' fees as an additional remedy in connection with its 93A, RICO and securities fraud claims, but does not claim these fees as damages. Nor does Kotva allege that it—as opposed to one of its subsidiaries—incurred any legal fees as a result of the Czech litigation or allege any lost business opportunities. These sort of damages cannot be plead generally. *See* FED. R. CIV. P. 9(g) ("When items of special damage are claimed, they shall be specifically stated.").

4

reasonable reliance to one's detriment as an element of common-law fraud); *Nei v. Burley*, 388 Mass. 307, 311 (1983) ("Reliance is an element of actionable fraud.").

Reliance is also an essential element of securities fraud. *E.g.*, *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 205–06 (1976) (quoting Senate Report for elements of private action under Securities Act of 1934); *Steiner v. Unitrode Corp.*, 834 F. Supp. 40, 42 (D. Mass. 1993) (requiring, for securities fraud claim, "that plaintiff relied on such misrepresentations or omissions to his detriment"). Cases holding that reliance is a necessary element of any civil securities fraud claim do not distinguish among the various types of fraud that fall within § 10(b). No matter whether a defendant makes an untrue statement, employs a scheme to defraud or engages in an act that would operate as a fraud, a plaintiff who did not reasonably rely on the defendant's actions may not bring a private claim under § 10(b). *See In re Lerner & Hauspie Sec. Litig.*, 230 F. Supp. 2d 152, 161 (D. Mass. 2002) ("Actors can only be held liable under SEC Rule 10b-5 if they themselves 'employ[] a manipulative device or make[] a material misstatement (or omission) on which a purchaser or seller of securities relies.'") (quoting *Central Bank v. First Interstate Bank*, 511 U.S. 164, 191 (1994)) (alternations in original).[2]

### III. KOTVA LACKS STANDING AS A PURCHASER OR SELLER OF SECURITIES AND, THEREFORE, MAY NOT BRING A SECURITIES FRAUD CLAIM

Kotva characterizes Defendants' argument that "Kotva lacks standing to assert a securities fraud claim because it 'did not buy or sell securities'" as "rely[ing] on an overly

---

[2] Kotva attempts to distract the Court from the requirement that the plaintiff in a securities fraud case plead reliance by arguing that the statutory language covers a variety of different types of fraud: *See* Opp. at 8 The breadth of fraud swept in by the statute is entirely independent of the requirement that a plaintiff rely on that fraud to its detriment in order to maintain a securities fraud claim. Moreover, the purported quotation from 15 U.S.C. § 78j in Kotva's Opposition includes text that appears nowhere in the statute.

restrictive view of both the law and Kotva's Complaint." Opp. at 9. Kotva is wrong on both counts.

Kotva first suggests that the Supreme Court's recent decision in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 126 S. Ct. 1503, 1513 (2006) permits recovery on a civil claim for securities fraud so long as "the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else." Kotva's quotation from page 1513 is inapposite. On pages 1509–10, the Court reaffirmed the *Blue Chip Stamps* rule that private actions for securities fraud—as distinct from Government enforcement actions—must be brought by a purchaser or seller of securities.

Second, Kotva argues that SPV CO's sale of securities to Markland confers standing on Kotva. This argument ignores the separate corporate existence of SPV CO, which counsel for Kotva trumpeted in SPV CO's motion to dismiss and the Court implicitly recognized in granting that motion and dismissing the counterclaims against SPV CO. Even if Kotva were able to claim SPV CO's sale of securities as its own, Kotva does not allege that it relied on any misrepresentation of the Defendants in deciding to sell those securities or sold those securities at a lower price as a result of the Defendants' actions. *See Kennedy v. Josephthal & Co.*, 814 F.2d 798, 804 (1st Cir. 1987) (requiring plaintiffs bringing 10(b) claim to show "that, in connection with the purchase of the [securities], [the defendant], with scienter, made false representations or omissions, that [plaintiffs] relied upon these false representations or omissions in deciding to purchase the [securities], and that such reliance was justifiable"). Nor could Kotva make such an allegation, as it claims that the decision to sell the securities was made long before the Defendants allegedly made *any* representations to Kotva. *Compare* Compl. ¶ 17 (describing

6

October 2003 and January 2004 agreements) *with* Compl. ¶¶ 20–21 (describing how Weiss "devised a scheme" in response to a May 12, 2004 meeting).

## IV. KOTVA'S RICO CLAIMS ARE FATALLY DEFECTIVE

### A. Kotva Fails to Allege Facts That Constitute Any RICO Predicate That Caused It Harm

Kotva claims that "[c]ontrolling authority from the First Circuit and District of Massachusetts holds" that the threat of litigation or the filing of litigation can serve as a RICO predicate. Opp. at 1, 12–13. This is incorrect.

In *Gonzalez-Morales v. Hernandez-Arencibia*, 221 F.3d 45, 51–52 (1st Cir. 2000), the First Circuit did not "hold" anything with respect to whether litigation can serve as a RICO predicate. Rather, the First Circuit *assumed for the purpose of argument* that this could be the case in some circumstances and rejected the RICO claim on other grounds. *Id.* ("Although we will assume that the filing of frivolous suits may constitute RICO extortion in some instances . . . . [T]he Gonzalezes have not alleged a pattern of racketeering activity. Thus, we need not address whether the other elements of RICO . . . were pled appropriately.").

In the two cases where the First Circuit squarely confronted the question, it consistently held that "[a] threat to sue, even if groundless and made in bad faith, may be tortious under state law, but it is not extortion under federal law." *Di Giambattista v. McGovern*, No. 92-1168, 1992 U.S. App. LEXIS 23569, at *10 (1st Cir. Sept. 4, 1992) (unpublished); *Dias v. Bogins*, No. 97-1612, 1998 U.S. App. LEXIS 536, at *2 (1st Cir. Jan. 13, 1998) (unpublished) ("[A] threat to sue . . . is not extortion under federal law."). The Court should not read the First Circuit's "assum[ption]" in *Gonzalez* as a decision to depart from the consensus reached by "a multitude of other courts in holding that meritless litigation is not extortion under § 1951." *Deck v. Eng'd Laminates*, 349 F.3d 1253, 1257–58 (10th Cir. 2003).

*Lemelson v. Wang Laboratories, Inc.*, 874 F. Supp. 430 (D. Mass. 1994) is not to the contrary. Kotva argues that "[t]he use of the Gilroy and KT lawsuits to extort Kotva is the same 'wrongful means' that was used in *Lemelson* and found to constitute a RICO predicate act by Judge Ste[a]rns." Opp. at 13 (purporting to quote from *Lemelson*, 874 F. Supp. at 433).[3] This is not correct. The counterclaim-plaintiff in *Lemelson* did not even take the position that the filing of a lawsuit was Hobbs Act extortion. *See* Exhibit A at 7–9. Instead, it alleged that Lemelson had engaged in a scheme to defraud the U.S. Patent and Trademark Office (the "PTO") to obtain a series of patents. *Id.* Thus, the sole RICO predicates alleged in *Lemelson* were mail fraud and wire fraud. *Id.*

Even if *Lemelson* remains good law,[4] the facts alleged in *Lemelson* have no parallel here. *Lemelson* stands for the proposition that a person sued for infringement of a patent obtained as a result of a scheme to defraud the PTO can assert a RICO claim against the patentee. Kotva does not make the parallel allegation in the context of a shareholder lawsuit: that the Defendants obtained their right to sue by defrauding a third party of shares in the company. Instead, Kotva alleges that the Defendants attempted to defraud Kotva, by filing a lawsuit and later making allegedly false statements about the lawsuit.

If Kotva's allegations are sufficient to make out a case of mail or wire fraud, then every plaintiff alleging abuse of process, combined with an allegation that the defendant made a false statement during settlement negotiations in an effort to "extort" a settlement, will be able to tack

---

[3] Kotva repeatedly argues that *Gonzalez-Morales* and *Lemelson* establish that litigation can constitute "wrongful means," placing the term "wrongful means" in quotation marks. Neither opinion contains the phrase "wrongful means" or even the word "wrongful."

[4] In *Semiconductor Energy Laboratory Co. v. Samsung Electronics Co.*, 204 F.3d 1368, 1378–80 (Fed. Cir. 2000), the Federal Circuit held that a scheme to defraud the PTO in order to obtain a patent and then use that patent to extort others does not constitute mail fraud or wire fraud and therefore cannot serve as the predicate act for a RICO claim.

on a RICO claim. Surely, Congress and the president did not intend to criminalize what would otherwise be a tort under state law, and, in so doing, confer federal question jurisdiction on what would otherwise be state law civil claims for abuse of process.

Thus, as a matter of law, the facts alleged by Kotva cannot constitute extortion. Kotva's attempt to recharacterize these allegations as mail and wire fraud fails for two independent reasons. First, even if a series of allegedly false statements about the control of the plaintiffs in the Czech litigation could constitute a scheme to defraud, the fact remains that, according to the Complaint, Kotva's alleged damages were caused by the filing of the lawsuits rather than any subsequent false statements about them. Thus, Kotva suffered no damage from any alleged scheme to defraud and neither mail nor wire fraud can serve as a RICO predicate for Kotva. *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 274 (1992) (requiring that plaintiff in civil RICO case prove that RICO predicate was proximate cause of damages).

Second, Kotva practically acknowledges in its Opposition, *see* Opp. at 14, that it has alleged only a scheme to extort as opposed to a scheme to defraud. Not every bad act is fraud or part of a scheme to defraud. The essence of a scheme to defraud is an effort to obtain property from someone by lying. Kotva's allegations are that the Defendants attempted (but did not succeed) in obtaining property from Kotva by "filing sham lawsuits." *Id.* This is not a scheme to defraud. Moreover, in order for the scheme Kotva describes to work, the alleged victim—Kotva—would have to believe that Weiss had the ability to cause the plaintiffs in the Czech litigation to drop the suits. *E.g.*, Compl. at 2 (describing dismissal of lawsuits as "carrot" offered by Weiss). Thus, taking Kotva's allegations as true, Weiss could not have had a specific intent to defraud Kotva when he made the three allegedly false statements Kotva identifies in its Complaint.

9

In sum, over the course of its 19-page opposition, Kotva fails to identify where in its Complaint it alleged a specific intent to defraud or a scheme to defraud as opposed to a scheme to extort, prerequisites to any mail fraud or wire fraud claim. Thus, in addition to the fact that the alleged false statements could not have conceivably caused any damage to Kotva, those statements plainly do not constitute mail or wire fraud. Kotva cannot meet its pleading burden by making the conclusory allegation that there was mail fraud or wire fraud of some sort. As the First Circuit recently wrote:

> On a motion to dismiss, a court is required to accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187, 200 (1st Cir. 2005).The court need not accept a plaintiff's assertion that a factual allegation satisfies an element of a claim, however, nor must a court infer from the assertion of a legal conclusion that factual allegations could be made that would justify drawing such a conclusion. *Resolution Trust Corp. v. Driscoll*, 985 F.2d 44, 48 (1st Cir. 1993); *see also* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004) ("[T]he court will not accept conclusory allegations concerning the legal effect of the events the plaintiff has set out if these allegations do not reasonably follow from the pleader's description of what happened . . . ."). The court was under no obligation to read the plaintiffs' complaint, which failed to allege with specificity the factual predicates for a RICO violation, as implying that a RICO claim could have been made out with specificity.

*Cordero-Hernandez v. Hernandez-Ballesteros*, -- F.3d --, No. 04-2435, 2006 U.S. App. LEXIS 13619, at *9 n.3 (1st Cir. June 2, 2006).

      **B.**    **If Kotva Has Successfully Alleged a Scheme to Defraud, Then Kotva's RICO Claim is Barred by the Private Securities Litigation Reform Act (the "PSLRA")**

Kotva's argues that it can clear the PSLRA's bar of civil RICO actions by pleading in the alternative. However, in order to make use of this style of pleading, Kotva would have to actually allege two alternative schemes to defraud rather than only one. The only scheme to defraud that Kotva attempts to make out in its complaint is a scheme to defraud in connection with the sale of securities, or, as Kotva describes it, an "audacious stock fraud scheme." Thus,

10

the conduct alleged by Kotva is "actionable as fraud in the purchase or sale of securities" even though Kotva is, for multiple reasons, not a proper plaintiff. 18 U.S.C. § 1964(c).[5] If Kotva wishes to plead in the alternative, it must plead a second, alternate scheme to defraud that is not connected with the purchase or sale of securities. Since Kotva has not and cannot make any such allegations, it may not rely on mail or wire fraud as RICO predicates.

This case is not analogous to the situation where a plaintiff seeks recovery in the alternative under two mutually exclusive legal theories.[6] Rather, the PSLRA bars any RICO claim that relies on *conduct* that would have been actionable as securities fraud regardless of whether the plaintiff actually asserts a securities fraud claim. A plaintiff cannot evade the statutory bar by simply not seeking recovery under the securities laws or offering to forego recovery under the securities laws as trial approaches. Otherwise, the bar against RICO claims would be entirely ineffective.

## V.     THE COURT'S DECISION DISMISSING THE DEFENDANTS' CHAPTER 93A COUNTERCLAIM REQUIRES DISMISSAL OF KOTVA'S CHAPTER 93A CLAIM

In dismissing the Defendants' Chapter 93A, § 11 counterclaim, the Court held that Kotva and the two Defendants were not "engage[d] in the conduct of any trade or commerce" for purposes of this dispute. Since both the plaintiff and defendant in a Chapter 93A, § 11 claim must be engaged in the conduct of trade or commerce for the claim to succeed, Kotva's claim must fail.

---

[5] If there were a scheme to defraud, the SEC could be a proper plaintiff.

[6] For example, a plaintiff might properly allege that he either qualifies as a seaman and is entitled to relief under the Jones Act or, in the alternative, he qualifies as a longshoreman and is entitled to relief under the Longshore and Harbor Workers' Compensation Act. *See McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 347 ("[T]he Jones Act and the LHWCA are mutually exclusive.").

## VI. CONCLUSION

For the above reasons, and those set forth in the Defendants' Memorandum in Support of Their Motion for Judgment on the Pleadings, the Court should enter judgment for the Defendants on all counts of the Complaint.

.
        Respectfully Submitted,

ANDREW WEISS and WEISS ASSET MANAGEMENT LLC

By their attorneys,

/s/ Benjamin A. Goldberger
Edward P. Leibensperger (BBO# 292620)
Benjamin A. Goldberger (BBO# 654357)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts 02109-1775
(617) 535-4000

Dated: September 13, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system and all attachments will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 13, 2006.

/s/ Benjamin A. Goldberger
Benjamin A. Goldberger

BST99 1507240-4.072198.0012