UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
KOTVA a.s.                                          )
                                                    )
                    Plaintiff,                      )        Case No. 05-10679-RCL
                                                    )
            v.                                       )
                                                    )
ANDREW WEISS and WEISS ASSET                        )
MANAGEMENT, LLC                                     )
                                                    )
                    Defendants.                     )
_____           )

**KOTVA'S SUPPLEMENT[1] IN SUPPORT OF ITS
(1) MOTION TO COMPEL AND REQUEST FOR SANCTIONS
PURSUANT TO THE SPECIAL MASTER'S PRIOR ORDER
AND (2) MOTION TO COMPEL REGARDING DEFENDANTS'
RESPONSES TO INTERROGATORIES AND DOCUMENT REQUESTS**

## INTRODUCTION

Despite filing this action in April 2005--almost 18 months ago--Kotva has

received relatively little discovery to date regarding the core issues in this case.  The

Weiss Defendants initially produced approximately five boxes of documents and a

lengthy privilege log.  Following Kotva's initial motion to compel and the Special

Master's May 26, 2006 Order, Weiss produced two to three more boxes of documents.[2]

All told, therefore, Kotva has received approximately eight boxes of documents and has

taken one non-party deposition.  With only a few months left to complete fact discovery,

this case is finally focusing upon the central issue--Weiss's extortion of Kotva.  The

---

[1]  During the August 30, 2006 hearing on Kotva's motions, the Special Master invited the parties to submit a supplement regarding issues that may assist in the determination of the motions.

[2]  Kotva's first motion to compel was based in large part on the Weiss Defendants' wrongful assertions of privilege.  The May 26, 2006 Order found that the Weiss Defendants had indeed made overbroad assertions of privilege - - to the tune of roughly 25% of the log's original entries.

Weiss Defendants, however, continue to stonewall Kotva's discovery efforts by persisting in dubious assertions of privilege.[3]

### Kotva's Proposal for *In Camera* Review[4]

As set forth in Kotva's motion, the Weiss Defendants made hundreds of assertions of attorney-client privilege in the July 10 Revised Privilege log without identifying the attorney from whom the advice came or to whom the request for advice went. The simple facts are these:

> ➢    truly privileged materials are not difficult to describe; and

> ➢    it should not take four attempts to provide an adequate description.

For example, an appropriate description for Hoffmann relaying advice of counsel to Weiss in an e-mail might be, "e-mail from Hoffmann to Weiss relaying legal advice from *[insert attorney name here]*." (Indeed, Kotva has not challenged entries with adequate descriptions.) Weiss, however, has repeatedly failed to incorporate this basic and essential information into the descriptions of hundreds of alleged attorney client communications. Even in the Revised Revised Privilege log from August 8, 2006, Weiss refused to provide an adequate description for many challenged assertions of privilege.[5] In many cases, no individual attorney name is even provided, and some entries allege

---

[3]  The Weiss Defendants' August 8, 2006 Revised Revised Privilege Log demonstrates the insufficiency of the July 10, 2006 log, which repeated many of the deficiencies of the original Privilege Log. Weiss's contention that the May 26, 2006 Order did not require him to identify attorneys in the privilege log is nonsensical. Weiss does not and cannot explain how he can identify the party whom an attorney represents without also identifying the attorney.

[4]  Kotva will unilaterally shoulder the cost of the Special Master's *in camera* review of the materials identified in this section.

[5]  Only after Kotva informed Weiss that it was seeking sanctions and filing a second motion to compel did Weiss start to list law firms that were supposedly affiliated with the questionable claims of privilege. Kotva respectfully requests that the Special Master review the Weiss Defendants' July 10, 2006 Revised Privilege Log for compliance with the May 26, 2006 Order and impose sanctions. See Order at 15.

"various possible attorneys." If Weiss cannot even identify the attorney that was supposedly involved in the communication, how can he establish that the legal advice originated from an attorney or that the request for advice was forwarded to an attorney?

Moreover, many of the assertions of privilege involve Vladimir Hoffmann, someone who served Weiss in various business capacities. The May 26, 2006 Order expressly stated that business-related communications from Hoffmann were not privileged. Order at 6. The inadequate descriptions provided thus far, the Weiss Defendants' foot-dragging to complete a relatively simple task, and the timing of many of the communications--when Weiss was not represented by counsel and when Hoffmann was acting in a business capacity--indicate that Weiss continues to make overbroad assertions of privilege. Therefore, Kotva requests that the Special Master conduct an *in camera* review of the documents identified in footnote 2 (*i.e.*, entries that have no reference to any attorney whatsoever), and the entries between May 12, 2004 and June 4, 2004 (*i.e.*, when no attorney was even involved).

The Weiss Defendants' Revised Privilege Log also reveals many questionable claims of privilege during other critical time periods, particularly when Weiss was issuing his demands to Kotva. Many of these entries plainly involve business issues regarding the sale of Weiss's Kotva and Trend shares; such business communications cannot be converted to privileged status merely by the inclusion of counsel. Indeed, the descriptions for many entries before, during, and after Weiss's demands to purchase the Kotva shares apparently relate more to business issues than to the subject matter of the litigation that was filed and for which the privilege is asserted. For example:

- Email regarding negotiations and pending litigation (962);

- Email enclosing communication regarding <u>negotiations</u> including advice of counsel (1041-1044);

- Email enclosing communication from counsel regarding <u>settlement</u> (1083-1090);

- Communications regarding <u>negotiations with R. Harazim</u> (1169; 1175-1178; 1229);

- Email enclosing communication providing update on pending litigation and <u>other Kotva/Trend matters</u> (1225-1228);

- Communication regarding <u>transfer of shares</u> (1273-1282).

To minimize the burden of review, Kotva proposes an initial review of selected materials from certain key time periods, as designated on the table below, which highlight both improperly overbroad assertions of privilege and the entries that likely evidence the furtherance of Weiss's extortion scheme:[6]

| Date Range | Context | Selected Entries |
|---|---|---|
| May 14 - June 4 | Communications following the May 12, 2004 meeting, during which time Weiss was not represented by counsel, and leading up to Weiss's retention of Peterka & Partners. | 181-298 |
| June 5 - June 30 | Communications leading up to the filing of the Gilroy litigation. | 327, 337, 340, 349-354, 404, 410-411, 443-444 |
| July 31 - Aug 4 | Documents concerning Hoffmann's August 2, 2004 meeting with Martin Benda and Hoffmann's August 4, 2004 demand for a written offer from Kotva to purchase Weiss's Kotva shares. | 628-630, 633-634, 639-640, 642-647 |
| Aug 5 - Aug 31 | On August 9, 2004, Kotva offered CZK 75M in an effort to determine who was behind the sham Gilroy lawsuit and whom Mr. Hoffmann was | 663-667, 672-684, 686-688, 691-807 |

---

[6] As the Special Master is already aware, Kotva also challenges what would otherwise be privileged entries on the grounds of the crime-fraud exception. Kotva respectfully submits that it has satisfied the relaxed "may reveal" test for *in camera* review. <u>In re Grand Jury Proceedings</u>, 417 F.R.D. 18 at 22-23 (1st Cir. 2005). Even if some of these materials were privileged, the purpose of the Weiss-instigated-litigation--to extort Kotva as part of Weiss's blackmail scheme--strips those communications of any privilege. <u>See</u> motion at 11-17. In short, the Peterka and Hoffmann communications expose that the Weiss Defendants filed the KT and Gilroy lawsuits as part of a plan to "foster and promote an extortion scheme"--not for the stated purposes of the lawsuits (*i.e.,* challenging the title to the Department Store). <u>See</u> Order at 5. In other words, Kotva submits that the withheld documents do not address litigation strategy involving KT and Gilroy's title challenges, but address Weiss's efforts to file the actions to interrupt the sale and force Kotva to buy Weiss's Kotva and Trend shares.

| | | |
|---|---|---|
| | representing.  Additional meetings with Weiss representatives took place on the 12th, 16th, and 24th.  Weiss made a demand of CZK 131M on August 17, 2004.  During this period, Weiss initially denied having any control over Gilroy.  On August 23, 2004, however, Weiss represents that he will "attempt to influence" the parties who have sued Kotva.  Weiss later took the position that he filed the lawsuits to protect his investors. | |
| Oct 12 - Oct 14 | Communications following a September 27th meeting and leading up to and following the October 12, 2004 meeting between Messrs. Peterka, Benda, and Harazim. | 958-960, 962-963, 966, 976-994, 996, 999-1000 |
| Oct 15 - Nov 3 | Communications leading up to the October 18, 2004 meeting between Messrs. Peterka, Benda, Harazim and Markland representative.[7] | 1002-1023, 1029-1031, 1035, 1037, 1041-1052, 1056-1076, 1080-1091, 1099-1100 |
| Nov 15 - Dec 3 | Communications leading up to and following the November 23 demand by Weiss.  Many of these entries refer specifically to business negotiations involving Kotva, as well as negotiations with Hoffmann regarding his resignation. | 1155, 1161, 1163-1167, 1169, 1175-1178, 1187-1206, 1209-1213, 1216, 1225-1229 |
| Dec 13 - Dec 21 | Communications leading up to the filing of the KT petition. | 1248-1250, 1273-1282, 1298 |

**<u>Defendants Should Produce the Documents concerning RICO</u>**

Weiss should be ordered to produce the five to six boxes of relevant documents

(according to his counsel's representation) pursuant to Fed. R. Civ. P. 33(c).  In

responding to Kotva's interrogatories, Weiss is obligated to provide responses based

upon the information within his custody and control, and he has admitted that the

documents are in his custody and control.  Weiss cannot simply turn a blind eye to five or

---

[7]  As set forth in Kotva's motion, because Weiss has already produced a communication from Peterka regarding the meeting, all such communications should be disclosed as a result of subject matter waiver. <u>See</u> motion at 15-16.

six boxes of documents and claim that he has no personal knowledge of their contents.[8]
Indeed, this Court required Kotva to certify that it reviewed all documents and
information available to it in response to one of Weiss's interrogatories.  Weiss is not
entitled to special treatment and a different standard.  Moreover, reviewing and producing
five to six boxes of documents will not impose an undue burden on McDermott, Will &
Emery.

**Howard Golden Documents,**
**<u>Other Third Party Documents, and Alleged Common Interest</u>**

Weiss has asserted privilege for various communications with Howard Golden as
both work product and attorney-client communications.  For attorney-client
communications, there is no dispute that Weiss has the burden of establishing a valid
attorney-client relationship, including the fact that Mr. Golden was acting in the capacity
of a professional legal adviser and that the communications related to that purpose (<u>see</u>
<u>United States v. M.I.T.</u>, 129 F.3d at 684), as opposed to acting in a business capacity
pursuant to his contract with BGO.   To the extent that Weiss asserts work product
protection on behalf of Golden, or any third party, Weiss must satisfy the burden of
establishing a common interest.  Order at 7-8; <u>United States v. Bay State Ambulance &</u>
<u>Hosp. Rental Serv. Inc.</u>, 874 F.2d 20, 28 (1st Cir. 1989).  Kotva therefore has requested
the *in camera* review of the Howard Golden entries.[9]

Similarly, to the extent that Weiss is asserting work product protection on behalf
of third parties, like Lars Bader or Jan Svejnar or Jan Veverka (102), for example, such

---

[8] Weiss's assertion that he has no personal knowledge lacks credibility as he is the investment manager
and 50% owner of Brookdale, the entity that employed the prior pattern of extortion.

[9] <u>See</u> log entries 14-15, 1316, 1324-25, 1329, 1344, 1350, 1355, 1360-64, 1368, 1370. 1438-39.

materials should either be produced or submitted for review pursuant to the protocol that the Special Master established for the Woolf documents.[10]

### Contents of Documents From the Criminal File

The Czech Criminal File has been closed to Kotva for more than a year due to the fact that Weiss has not yet been served with the charges. Contrary to Weiss's assertions, Kotva has not and does not have access to the complete file. Weiss apparently has had access to the criminal file and may have materials relevant to this action that Kotva has not had access to.[11] Kotva has produced the materials it obtained from the criminal file in response to Weiss's document requests. Weiss should be compelled to do the same. As the Special Master stated during the August 30th hearing, documents that are responsive to Kotva's document requests are not shielded from production simply because Weiss may have obtained them from the criminal file. Documents from the criminal file that Weiss may have are responsive to other document requests and should be produced.[12]

---

[10]  Weiss's counsel agreed to submit the additional Woolf-related documents that were disclosed for the first time in the August 8, 2006 privilege log -- communications involving "lawyers working for J. Woolf; probably Glatzova & Co." See, e.g., entries 215, 217-218, 230, and 250. It is Weiss' obligation to confirm the universe of these documents.

[11]  Defendants have also failed to establish the factual predicates to their assertion of work product protection based on a selection theory. That protection only applies where counsel has selected a discrete subset of documents from a much greater defined universe. See Bamberg v. KPMG, LLP, 219 F.R.D. 33, 36 (D. Mass. 2003) (protection applied where counsel reviewed **millions of documents contained in thousands of boxes** and selected only 5% of the documents); Salvas v. Wal-Mart Stores, Inc., 2004 WL 616293 *1 (Mass. Super. March 11, 2004) (protection applied where counsel selected 1,000 pages to copy out of the 500,000 to 1,000,000 pages available). Even if applicable here, defendants have not stated whether they "selected" a subset of those pages or whether they copied the entire file. If defendants copied the entire file--which presumably they did--then the selection theory does not apply. Moreover, since Defendants have stated that they did not have access to the entire criminal file, it would be impossible for Plaintiff to determine what was selected, if anything.

[12]  E.g.: Document Request No. 49 (First Set): "All documents concerning the criminal indictment against Weiss in the Czech Republic." (NOTE: Defendants have since agreed to substitution of the term "charges" for "indictment" with respect to the criminal proceedings against Weiss.); Document Request No. 61 (First Set): "All documents concerning Czech criminal investigations of Howard Golden, Weiss, and/or Brookdale Group. . . ."; Document Request No. 9 (Second Set): "All communications concerning the Czech criminal file."

## Waiver of Protection for Private Investigator Materials

This is not a question about trial preparation or the protected materials of a non-testifying expert.  This is a question of waiver.  As they have done repeatedly in the course of this litigation, the Weiss Defendants voluntarily destroyed whatever privilege or protection might have applied to these materials.  The fact that Weiss's Czech counsel "hired a private investigator to assist it in the Czech litigation" does not imbue any subsequent work product with special protections against waiver.[13]  If you trumpet the allegedly protected material to the press, you destroy the protection--a lesson that Weiss apparently has not learned from the May 26, 2006 Order.

## Subject Matter Waiver

As noted, Weiss has repeatedly destroyed the attorney-client privilege and work-product protection by intentionally disclosing such materials to third parties, including various press outlets and the State Department.  Weiss's contention that his voluntary destruction of the privilege does not effect a waiver because this Court subsequently ordered the production of those materials is a red herring.  The Court ordered the production of those materials because Weiss and his counsel had destroyed the privilege or protection and then wrongfully withheld the materials.  As with inadvertent disclosure of privileged materials, voluntary disclosure effects a subject matter waiver.[14]

---

[13]  Weiss has the burden to show that the materials have not been waived.  In re Raytheon Sec. Litig., 218 F.R.D. 354, 357 (D. Mass. 2003) citing United States v. Wilson, 798 F.2d 509, 512-513 (1st Cir. 1986); In re Lernout & Hauspie Sec. Litig., 222 F.R.D. 29, 36 (D. Mass. 2004).  Moreover, both the outrageous nature of the allegations and the shocking arrogance of Weiss's opposition (that Kotva has ample opportunity to obtain information from one of its officers about unfounded allegations of murder and organized crime) weigh heavily in favor of disclosure.

[14]  See In re Lernout & Hauspie Sec. Litig., 222 F.R.D. 29, 34-35 (D. Mass. 2004) ("The First Circuit has held that with respect to the attorney-client privilege, '[i]n general, a waiver premised on inadvertent disclosure will be deemed to encompass all other such communications on the same subject.'  **If this is the law with respect to inadvertent disclosure, it is surely the rule for knowing disclosures**.") (citation omitted; emphasis added);  AMCA International Corp. v. Phipard, 107 F.R.D. 39, 44 (D. Mass. 1985); see

With respect to inadvertent disclosures, Weiss's counsel fails the <u>Amgen</u> test[15] and the privilege has been waived.  First, Weiss's counsel failed to take reasonable precautions to prevent the disclosure of privileged information since the only step taken was a single review by one associate attorney.[16]   Second, Weiss's counsel did not recognize the error for more than five months, and then only after Plaintiff attached the documents to a court filing.  Making matters worse, Kotva had attached a similar document as an exhibit to its April motion to compel, and Weiss's counsel did not review their production to see if other documents had been produced.  Third, the scope of Weiss's production was only four to five boxes, *i.e.*, small and manageable, when these documents were produced.  Fourth, Weiss produced multiple privileged documents during this litigation, and produced the documents in question <u>not once but twice</u> during discovery.  Finally, the interests of fairness and justice weigh in favor of waiver.  Weiss has been overzealous in asserting privilege in this case, has repeatedly failed to provide an adequate privilege log, has engaged in gamesmanship during discovery by producing

---

<u>also</u> <u>Texaco Puerto Rico, Inc. v. Dept. of Consumer Affairs</u>, 60 F.3d 867, 883-884 (1st Cir. 1995).  As discussed at the hearing, Defendants' reliance on <u>In re Keeper of the Records (XYZ Corp.)</u>, 348 F.3d 16 (1st Cir. 2003) is misplaced given the drastically different factual situation in that case.  Even if the rule from <u>XYZ</u> applied, subject matter waiver still applies here because (1) Defendants made their disclosures during the course of litigation, and (2) Defendants attempted to gain adversarial advantage by affecting the litigation and by attempting to shield their disclosures from Plaintiff.

[15] <u>Amgen Inc., v. Hoechst Marion Roussel, Inc.</u>, 190 F.R.D. 287, 292 (D. Mass. 2000).  Under the <u>Amgen</u> test, the Court examines five factors:  (1) the reasonableness of the precautions taken to prevent inadvertent disclosure; (2) the amount of time it took the producing party to recognize its error; (3) the scope of the production; (4) the extent of the inadvertent disclosure; and (5) the overriding interest of fairness and justice.  <u>Id</u>.

[16] <u>See</u> Goldberger Decl. dated August 28, 2006; <u>contrast</u> <u>In re Lernout & Hauspie Sec. Litig.</u>, 222 F.R.D. at 33 (producing party employed "review involving both <u>junior and senior attorneys</u>.  Potentially privileged documents receive <u>heightened scrutiny</u> and are <u>reviewed multiple times</u> to ensure that appropriate decisions are made regarding disclosure or non-disclosure of those documents.") (emphasis added).  Unlike the system described in <u>Lernout</u>, Weiss's counsel designated documents as privileged or non-privileged based upon a <u>single</u> review by a single attorney, and either produced or withheld the documents without subsequent review by other attorneys.  In light of the large number of documents that have been wrongfully withheld in this case, and the other privileged documents that have been intentionally or inadvertently produced, Defendants' privilege review falls short.

documents out of sequence and without attachments, and has repeatedly destroyed the

privilege to his own advantage.  The policy rationale for the privilege is <u>not</u> to encourage

its selective use as a sword and shield.

Respectfully submitted,

KOTVA, A.S.

By its attorneys,

/s/ Daniel J. Pasquarello
Joel G. Beckman (BBO# 553086)
William C. Nystrom (BBO# 559656)
Daniel J. Pasquarello (BB0# 647379)
NYSTROM BECKMAN & PARIS LLP
10 St. James Ave., 16th Floor
Boston, Massachusetts 02116
(617) 778-9100
(617) 778-9110 (fax)
jbeckman@nbparis.com
wnystrom@nbparis.com
dpasquarello@nbparis.com

Dated: September 18, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing
(NEF) and paper copies will be sent to those indicated as non registered participants on
this 18th day of September, 2006.

/s/ Daniel J. Pasquarello