UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KOTVA A.S.,                    )
                               )
                               )        Civil Action No. 05-10679-RCL
        v.                     )
                               )
WEISS, ET AL.                  )

ORDER OF SPECIAL MASTER
September 29, 2006

A hearing was held on August 30, 2006, at which plaintiff Kotva, a.s. ("Kotva"), and

defendants Andrew Weiss and Weiss Asset Management, LLC (collectively ("Weiss") were

represented by counsel. Supplemental submissions were received on September 18 and 22, 2006.

I have considered the motion to compel discovery from counterclaim-defendant Richard Harazim

on the papers. All pending discovery motions are resolved herein.

**I. Kotva's Motion for Sanctions and to Compel, filed on August 2, 2006**

Kotva argues that the revised privilege log produced by Weiss on July 10, 2006, fails to

comply with the Order of Special Master, issued on May 26, 2006 (hereinafter "May 26 Order"),

which required the parties to provide specific information about withheld documents:

> The logs must identify the author(s) and recipient(s); the person or
> entity whom the attorney represents; the date the communication
> was created or transmitted, as applicable; the nature of the
> communication, and the basis for the claim of privilege or
> protection.

Kotva contends that the revised log contains hundreds of entries that do not list an

attorney as an author or recipient, and complains that the log does not identify the person or

entity whom the attorney purportedly represents and does not sufficiently inform Kotva as to the

basis for assertions of the privilege. Specifically, Kotva identifies in footnote 2 of its Motion to

Compel, at 4, hundreds of entries which it contends are insufficiently described. Kotva contends that Weiss failed to articulate when it was relying on the common-interest doctrine to support his invocation of privilege, and failed to describe the scope and duration of any common interest between Weiss and any other individual or entity. Kotva complains that Weiss has not demonstrated that communications from or to Howard Golden were made to or by Golden in his legal capacity, and not in some other capacity. Kotva also complains that invocations of the work product doctrine should have been supported by a description of which legal proceedings the withheld documents relate to. Kotva contends that Weiss's disclosure in discovery of correspondence (1) relating to the legal advice from Svobodova (Exhibit G to Kotva's Motion); (2) relating to Hoffman's advice to Weiss to call an "extraordinary shareholders meeting" (Exhibit H thereto); (3) relating to Peterka's summary of a meeting with Messrs. Harazim and Benda (Exhibit I thereto); (4) relating to Peterka's analysis of and advice concerning litigation on behalf of Gilroy and KT (Exhibit J); and (5) relating to two memoranda from Peterka concerning efforts to research the ownership of SPV Co.(Exhibits L and M), constitutes a subject matter waiver warranting an order to disclose all communications relating to the same topics.

Kotva also contends that these documents show that Weiss was advised that his litigation strategy was without merit. This, Kotva contends, is sufficient to demonstrate as a preliminary matter that Weiss was probably engaged in an extortionate scheme, and that the privilege should yield to at least *in camera* review. Kotva therefore renews its demand for *in camera* review under the crime-fraud exception and demands sanctions, including an award of attorneys' fees, and an order to show cause why documents listed on the privilege log should not be disclosed, or alternatively, should be reviewed *in camera*.

2

In its September 18 Supplemental Submission, Kotva asks for *in camera* review of the documents identified in footnote 2 of its original Motion, "(*i.e.*, entries that have no reference to any attorney whatsoever), and the entries between May 12, 2004 and June 4, 2004 (*i.e.*, when no attorney was even involved)." Supplemental Submission, 3. Kotva suggests a staged review process, and identifies approximately 442 documents for initial review.[1] Kotva also demands production of the five to six boxes of documents related to entities other than Kotva pursuant to Fed. R. Civ. P. 33(c).

Weiss's response to Kotva's motion is, in essence, that the July 10 log complies with the May 26 Order, which did not expressly require the parties to identify which attorney was associated with each claim of attorney-client privilege nor to identify the proceeding for which each piece of work product was created. According to Weiss, its July 10 revised log did provide all the information which was ordered to be included, and contends that the existence of a privilege does not turn on the identity of the attorney. Weiss further counters that, rather than litigate with Kotva over the production log, it voluntarily undertook to revise and expand the log, resulting in the 261-page log created on August 8, 2006 ("the August 8 log"), which is attached as Exhibit B to Weiss's Memorandum in Opposition. Informed that Weiss had agreed to provide additional information, Kotva nonetheless filed its motion for sanctions and to compel. Weiss notes, too, (1) that it has produced hundreds of communications between Messrs. Hoffmann and Golden, understanding that many communications between them are not privileged; (2) that

---

[1]    Kotva asks for initial review of entries numbered 181-298, 327, 337, 340, 349-354, 404, 410-411, 443-444, 628-630, 633-634, 639-640, 642-647, 663-667, 672-684, 686-688, 691-807, 958-960, 962-963, 966, 976-994, 996, 999-1000, 1002-1023, 1029-1031, 1035, 1037, 1041-1052, 1056-1076, 1080-1091, 1099-1100, 1155, 1161, 1163-1167, 1169, 1175-1178, 1187-1206, 1209-1213, 1216, 1225-1229, 1248-1250, 1273-1282, 1298..

Kotva's own log is suspiciously anemic, containing only 70 entries, and must be incomplete because two emails produced in discovery should have had attachments which were neither produced nor logged, citing to Exhibits F [an earlier message in the chain referenced a submission] and G [in Czech] to Memorandum in Opposition. Weiss notes that the August 8 log, along with an Appendix dated August 10, 2006, does indeed identify the persons and entities represented by each attorney and the period of representation. Opp., Exhibit A. Weiss argues that Kotva has not been willing to engage in negotiations to narrow the areas of dispute or even to articulate exactly which entries are inadequate and why. Moreover, Weiss notes, Kotva's descriptions are no more precise and detailed than Weiss's. Moreover, Kotva has failed to log a single communication related to the instant litigation or the Czech proceedings, civil or criminal, claiming that not a single privileged document related to the litigation exists.

With respect to Kotva's specific claims, Weiss asserts that the documents identified in Kotva's footnote 2 do indeed identify an attorney or law firm or otherwise indicate the basis for the invocation of privilege. With respect to the Jason LaRoux and Lars Bader documents, Weiss asserts that Weiss had interests in common with LaRoux's employer, HSBC/Bank of Bermuda, which was custodian of CVF Investments Ltd.'s shares in Kotva, and Bader's employer, QVT, which holds a beneficial interest in a portion of the ring-fenced assets owned by CVF. Weiss argues that Kotva is well aware of the fact that LaRoux's and Bader's communications are privileged and its position to the contrary is not "substantially justified" for purposes of Fed. R. Civ. P. 37(a)(4)(B)(providing for an award of sanctions if moving party's position is not substantially justified).

Rule 37.1 Conference

As required by Local Rule 37.1, the parties conferred in an effort to resolve their differences. In the course of the conferencing, which took place by telephone for a total of one hour and twenty minutes spread over several calls and days, and by email, Weiss offered to augment the log with an additional column which would identify the attorneys involved. Kotva objected to this procedure and instead filed the instant motion to compel.

The Rule 37.1 conferencing appears to have been cursory and *pro forma*. One hour and twenty minutes over the phone spread out over days is not sufficient time to negotiate all the issues I have gone to pains to summarize in this orders. And, indeed, it appears that many issues raised in the motions were not discussed at all. While Kotva complains that hundreds of entries are incomplete or questionable (*see* Motion, 4 n. 2), Weiss responds that only entries 1-13 (Kotva questioned whether handwritten notes were distributed to third parties and Weiss produced the document with notes), 17-26 (Kotva questioned that no attorney was specified), 182 (same), 1229-31 (clerical error), and those relating to Jan Svejnar, Jason LaRoux, Lars Bader, James Woolf, and Marta Guthova were addressed at the meeting. Kotva's motion afforded Weiss its first opportunity to discover exactly which entries were being challenged as deficient. Specifically, Weiss represents that, had the issues been brought to its attention in the 37.1 process, entries 942 and 1101 could easily have been resolved and that entries 17-25 could have been redacted. Finally, Weiss has agreed to produce entry 1362.

Complaining that Kotva utterly failed to conference the issues raised in sections III and IV on pages 11-20 of its Motion, Weiss seeks fees for time spent responding to those issues which relate to Kotva's renewed request for the court to conduct an *in camera* review to determine

whether the crime-fraud exception applies and its claim that Weiss's disclosure of privileged documents effect a subject matter waiver.

Review of Adequacy of Logs

Fed. R. Civ. P. 26(b)(5) requires the party withholding information on the basis of privilege to "make the claim expressly and [to] describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Local Rule 34.1(E) adds the requirement that the claim be particularized with respect to each document withheld: "When a claim of privilege is asserted in objection to any document request, . . . , the attorney asserting the privilege shall identify in the objection the nature of the privilege that is being claimed with respect to each such document."  By the May 26 Order, the parties were obligated to provide additional information in order to facilitate any challenge to the invocation of the privilege.  It is necessary that the party seeking to prevent production on the grounds of privilege provide sufficient information either in the log or apart from the log to permit the opposing party and the court to assess the applicability of the privilege to the document in question.  Where the relationship between the author and the recipients is not apparent, the party seeking to invoke the privilege must provide that information.  As Massachusetts Superior Court Judge Peter Agnes, Jr. cogently observed in assessing the adequacy of a privilege log  in *Allmerica Financial Corporation v. Certain Underwriters at Lloyd's London*, 17 Mass. L. Rep. 665, 2004 Mass. Super. LEXIS 182, *2-3 (2004):

> [A]s a general rule a privilege log should include a list of individual documents accompanied by the date of each document, its author, the addressee or recipient, a description of its contents sufficient to describe its character as privileged, and the particular privilege

> asserted. In keeping with the view of the drafters of the federal
> rules, this general rule is not hard and fast and some flexibility is
> permitted when the character of a group or category of documents
> as privileged is evident. [Citations omitted]. However, the
> indispensable requirement of a privilege log remains that it must
> contain enough information to permit the party seeking discovery
> and the court to "assess the applicability of the privilege or
> protection." *Fed. R. Civ. P. 26(b)(5). See Heavin v. Owens-
> Corning Fiberglass*, 2004 U.S. Dist. LEXIS 2265, 2004 WL
> 316072, *2 (D. Kan. 2004).

In an effort to determine whether the logs are adequate for the purpose of permitting

challenges to the invocation of privilege, I have reviewed both Weiss's and Kotva's respective

logs.

<u>Weiss's Log</u>

I have reviewed each and every entry in the privilege log which Kotva complains is

insufficient. It must be noted that the July 10 amended privilege log consists of 215 pages

containing 1440 entries. The August 8 revision extends to 261 pages. It is, by and large,

compliant with the May 26 Order, except that it does not specifically identify the client whom the

attorney represents. In many instances, indeed most, it is obvious whom the attorney represents.

In other instances, it is reasonably apparent whom the attorney represents, e.g. 120-127, 150

(communications between Hoffmann and Weiss or Hoffmann and Weiss employees).

Accordingly, I do not find the log materially deficient in failing to identify the person or entity

whom the attorney represents in such cases. The imposition of sanctions is therefore not

warranted with respect to this complaint.

While Kotva maintains that none of the entries identified in its footnote 2 refers to any

attorney at all, that is simply not true. *See, e.g.*, 639-644, among others. Repetition of this claim

in the September 18 Supplemental Submission, more than a month after service of the August 8

log, which identifies attorneys and proceedings with respect to many additional entries, compounds the error. Some of the challenged entries have already been produced. *See, e.g.*, 177, 178. Some have been withdrawn. *See, e.g.*, 999, 1000. These are the sorts of issues that could have been and should have been easily resolved had the Rule 37.1 procedure been properly followed.

Numerous entries Kotva faults for failure to identify an attorney (*e.g.*, 44-46, 48, 50-53, 62, 67, 75, 83-84) relate to the period of time in the fall of 2003 when Hoffmann and Woolf were engaged in evaluating potential lawyers to represent Weiss's and Woolf's common interests. These communications are sufficiently described in the log to permit my review. I find that Kotva does not have a right to know the identities of attorneys whom Weiss, Hoffmann, and/or Woolf consulted or interviewed in anticipation of litigation. Such information is not relevant unless Weiss asserts an advice-of-counsel defense or Kotva is prepared to support its request with more than mere speculation that attorneys were not or declined to be hired because they refused to be part of what Kotva characterizes as Weiss's extortionate scheme. Kotva is not entitled to invade Weiss's decision-making process with respect to the hiring of attorneys on the basis of nothing more than speculation that the crime-fraud exception might apply.

Reviewing the July 10 log, I find that in some cases Weiss's description does not adequately describe the basis for the invocation of a privilege without reviewing the document and having additional information about the parties to the communication and the purpose of the communication. The August 8 log is more complete, but in a few instances, it is, as Kotva contends, impossible to assess whether certain claims of attorney-client or work product privilege is fairly invoked from the privilege log, even giving full credence to the accuracy of the

description.  There is insufficient detail to demonstrate the existence of a confidential relationship and that the document is entitled to protection as a legal, as opposed to a business, communication.

I accept Kotva's suggestion of a staged review of documents, although I am dismayed to find that Kotva's proposed first wave of documents to be reviewed is not even a subset of its original footnote 2.  Numerous documents listed in the Supplemental Submission are not even listed in footnote 2 or anywhere else in Kotva's Motion.  Again, Kotva's challenges should have been sorted out and raised in a 37.1 conference well before filing a motion to compel and for sanctions.

Nonetheless, at this juncture, given the time and expense already expended by the parties in briefing and arguing the issues, I exercise my discretion to proceed with a limited review. Comparing Weiss's August 8 log and Kotva's list of documents for the first wave of review (Supplemental Submission, at 4-5), I find the following entries are too vague to permit resolution of the privilege question and the corresponding documents must be produced for *in camera* review:

Entries 212, 224, 225, 226, 629, 630, 647, 686, 958-960, 963, 966, 976-994, 996, 1003, 1004, 1029-1031, 1200-1206, 1213, 1273-1279, 1281-1282, 1298.

While Kotva claims that the documents it lists as inadequate raise "questionable claims of privilege" and "plainly involve business issues" (Supplemental Submission, 3, [emphasis in original]), my review indicates that is patently not the case.  Almost all the documents identified by Kotva as questionable are described as involving litigation advice or the gathering of information for litigation purposes.  In the complete absence of any reason to believe that Weiss's

counsel has misrepresented the content and nature of the documents entered on its log, I decline to disbelieve the descriptions contained therein. In fact, the only possible basis for Kotva's request for *in camera* review of the vast majority of the documents is the crime-fraud exception. Since none of the entries suggests that the content of the documents furthered a crime or a fraud, I decline to review documents that are amply described and obviously privileged. *See* further discussion *infra*.

There are certain recurring themes in the documents I have ordered submitted for *in camera* inspection, which I note both by way of explanation to the parties and in order to facilitate the District Court's review should either party appeal my decision. In particular, a draft of a non-privileged letter (*e.g*, one addressed to a party to a proposed transaction) prepared by a non-attorney principal or employee does not become privileged simply because it was or was intended to be vetted by counsel. Nor, in my view, is a draft letter, intended to be transmitted outside a confidential relationship, privileged merely because it "reflects" legal advice. In contrast, the advice sought or given concerning the draft and any revisions counsel noted on the draft are privileged. In short, if the draft contains annotations by counsel, then it is privileged. Similarly, if the draft was not intended to be submitted to a third party but was for discussion purposes only, then it qualifies as privileged. On the other hand, depending on the nature and content of the letter, it may be work product. Accordingly, documents described as "Draft of letter to be reviewed by counsel" must be submitted for review, with additional information supporting the invocation of the privilege, or alternatively must be produced.

Second, an engagement letter describing the scope of services an attorney is retained to render is not privileged. Thus, it appears that "email regarding provision of legal services" (629,

630) or "communication regarding principles governing future activities" (958-960) may not include actual advice or a request for advice, but merely set forth the terms and scope of the engagement. If so, it must be produced *if relevant and responsive to any discovery request*.

Third, documents that are described as relating to the "transfer of shares," which were sent to counsel along with several other individuals, may or may not involve legal advice. It appears just as likely, if not more likely, that the documents involve nothing more than business communications.

I recommend that the parties review their invocations of privilege with these principles in mind and produce forthwith documents with respect to which the claim of privilege will not sustain scrutiny. The parties may submit additional justification for the invocation of the privilege with respect to the documents ordered submitted for *in camera* review. Any such additional information, though not, of course, the allegedly privileged documents themselves, should be served upon opposing counsel.

Weiss should submit documents described in entries 17-25, along with proposed redactions for *in camera* review. Weiss should have submitted proposed redactions when it realized that the documents contained non-privileged, as well as privileged material. On the other hand, Kotva should have conferenced the issue before filing a motion to compel.

I will reserve the question of sanctions concerning the preparation of the privilege logs and invocation of privilege upon completion of the *in camera* review.

<u>Kotva's Log</u>

My review reveals that every communication on Kotva's log relates to drafts of the legal audit, the Share Purchase Agreement, the Lease of Non-Residential Premises, and other

11

transactional business documents.  Not a single communication relating to the initiation of the

Czech criminal proceedings or any of the litigation has been logged.  It is difficult to see from the

log why transmittal emails attaching drafts of agreements would be protected by a privilege.  A

draft of an agreement may or may not contain legal advice.  It may or may not be intended to

remain confidential.  If the draft was intended to be submitted to the other party or parties to a

commercial transaction  memorialized by contracts, the draft is discoverable no matter who

prepared it.  No presumption of confidentiality flows merely from the existence of an attorney-

client relationship.  Something more is necessary.  *See Winchester Capital Management Co., Inc.*

*v. Manufacturers Hanover Trust Co.*, 144 F.R.D. 170, 174-175 (D. Mass. 1992).  The transmittal

letter itself may or may not contain legal advice, but if it is merely an instrument of  transmittal

indicating that a document is attached and indicating to whom the document was distributed, it is

not privileged.  Moreover, it is highly unlikely that every portion of a transmittal email conveys

legal advice, and yet Kotva did not submit proposed redactions of any of the documents for

review.  The existence of an attorney in the chain of the transmission has no talismanic quality that

operates to transform business communications into legal advice.  Just as business

communications between Hoffmann and Weiss, or even between Peterka and Weiss, are not

privileged, neither are communications simply transmitting drafts of business contracts, which are

themselves to be disclosed to the other side of the proposed transaction.  Only the portion of the

communication that articulates legal advice is privileged.  It appears, on a preliminary basis, from

a review of Kotva's privilege log, that it has not held itself to the same exacting standard to which

it seeks to hold Weiss.  Accordingly, pursuant to my authority to supervise discovery, Kotva is

hereby ORDERED to submit for *in camera* review an initial sample of seven documents which it

alleges are privileged, but as to which the log does not clearly demonstrate the basis for the invocation: 4/30/2003 - Email attaching draft of portions of Share Purchase Agreement; 5/12/2003 (same); 5/14/2003 (same); 6/9/2003 (same); 6/16/2003 (same); 7/2/2003 (same); 9/8/2003 (same). None of these documents seems likely to be protected by privilege, but possibly the transmittal emails do indeed convey legal advice. If the documents do not speak for themselves, Kotva is invited to supplement its justification of the invocation of privilege with respect to this sample of documents if it deems it necessary. Any such submission must be served upon opposing counsel, although the documents themselves need not be disclosed pending further order (unless counsel, on further reflection, withdraws the invocation of privilege). If this tiny sample indicates that non-privileged business communications, specifically transmittal emails, were mischaracterized in a conclusory fashion as "legal advice" then I will order *in camera* inspection of all documents so designated.

Kotva is further ordered to explain why the attachments to the emails submitted as Exhibits F and G to Weiss's Memorandum in Opposition were neither logged nor produced.

<u>Crime-Fraud Exception: Request for *in Camera* Review</u>

Kotva points to no new evidence or to specific log entries to support its renewed request for an *in camera* examination of all documents Weiss withheld on the basis of privilege or work product. Instead, Kotva relies on what it characterizes as the "woefully deficient" log, the withholding of documents based on a "bald" assertion of privilege, and that the discovery period is drawing to a close. Motion, 12. None of these grounds support the renewed request. First, the log is not demonstrably "woefully deficient." Second, I do not find the invocations of privilege to be "bald" even if they are not entirely adequate in every instance. Third, Kotva has

failed to submit any new evidence in support of its renewed motion for an *in camera* review of privileged documents.  Two of the documents which it submits in support of its request were exhibits to its complaint and the third was produced by Kotva in 2005.  Exhibit I, which Kotva quotes at length, indicated that Kotva, and not Weiss, conditioned purchasing shares on the withdrawal of lawsuits; it does not evidence extortion by Weiss.  Nor does a document, plainly privileged, which was seized by the Czech police (Exhibit J), describing standing of Gilroy and KT as "problematic" and acknowledging that Kotva may face financing problems if it does not settle with Weiss.  Not only does this not demonstrate that Weiss was engaged in extortion, but it is not new evidence.  It provides no basis for renewing the motion for *in camera* review.

Even though I decline at this time to order wholesale *in camera* review of privileged documents, I reject Weiss's renewed argument that bringing litigation could never be a crime or a RICO predicate.  Opposition, 12.  Just as the filing of litigation can constitute a tort (e.g., abuse of process or malicious prosecution), it can also be a predicate act in furtherance of a scheme to extort or defraud.  *See generally United States v. Sturm*, 870 F.2d 769, 773 (1st Cir. 1989) (discussing use of economic fear and litigation to obtain property in context of Hobbs Act prosecution).  The bringing of a lawsuit is not absolutely privileged against attacks that the lawsuit was filed for improper or unlawful purposes.  But, in order to invade the sanctity of the attorney-client privilege, Kotva would have to make a preliminary showing, at a minimum, that the KT and Gilroy litigation had no objective merit and that Weiss both instigated the litigation and subjectively knew it had no merit in order to extract from Kotva economic benefits to which he had no legitimate claim.  If, however, Weiss resorted to litigation in order to preserve the value of BGO's shares in Kotva and to prevent the dissipation of the proceeds of the sale of the

department store through "tunneling" via various Kotva subsidiaries and affiliates, it is difficult to see that the litigation was motivated by an intention to extort an illegitimate benefit.  While Kotva contends that Weiss demanded eight times the publicly traded market price of the shares in order to settle the litigation, I do not see evidence supporting that contention nor do I have evidence suggesting that such a  price was illegitimate.  It is not enough to point to inadvertently disclosed privileged documents indicating that Weiss's former counsel Svobodova conveyed doubts that a lawsuit (never initiated)  to challenge the Kotva board's refusal to include an agenda to the shareholders' meeting would afford any real benefit to Weiss or that, in fact, the Gilroy suit was dismissed for lack of standing.  Kotva must first make a preliminary showing that Weiss's ultimate objective was not to preserve or maximize the value of BGO's shares, but to obtain something illegitimate.  As I noted in the May 26 Order, I would expect the evidence of extortion would be the demands Weiss made to Kotva, evidence which would logically be in Kotva's possession, and yet that evidence has not been forthcoming.  In short, *in camera* review of privileged material remains an option should a factual basis materialize, but is not justified on the record before me.

<u>Subject Matter Waiver</u>

Kotva argues that Weiss's production of numerous attorney-client communications (Exhibits G, H, I, J, L, and M) effects a broad subject-matter waiver such that all documents concerning the same subjects must be produced.  "[T]he party who invokes the privilege bears the burden of establishing that it applies to the communications at issue and that it has not been waived."  *XYZ Corp. v. United States (In re Keeper of the Records)*, 348 F.3d 16, 22 (1ˢᵗ Cir. 2003).  The burden of persuasion therefore rests with Weiss.

Exhibits G and H consist of documents disclosing the advice of Weiss's counsel

Svobodova and were disclosed in discovery. Weiss contends that Exhibits G and H were disclosed inadvertently and that the inadvertent disclosure does not constitute a waiver. The defendants have submitted the affidavit of Weiss's counsel Benjamin Goldberger, Esq., to the effect that the documents at issue, two of approximately 17,500 that were produced and twice that number that were reviewed, were miscoded in the process of document review and as a result, were produced. I credit this account of how the disclosure was made, and find that counsel took appropriate measures to ensure the secrecy of privileged materials.

But quite apart from the issue of whether counsel took appropriate measures to protect privileged documents from inadvertent disclosure is the issue of estoppel. Both parties expressly took the position in making production that inadvertent disclosure of privileged documents would not work a waiver. *See, e.g.*, Objections and Responses of Plaintiff to Counterclaim Plaintiffs [Weiss, et al.]'s First Request for Production of Documents, 2; Objections and Responses of [Weiss, et al.] to Second Set of Requests for Production of Documents of Kotva A.S., 3. Kotva is therefore estopped from asserting the contrary proposition.

In sum, in light of the volume of discovery reviewed and produced and in light of Kotva's stance that its own inadvertent production would not effect a waiver, I exercise my discretion to find no subject matter waiver.

Weiss argues that its disclosure of Exhibits I, J, L, and M, all of which were submitted to the State Department in March 2006, were ordered to be produced by the Discovery Master and therefore cannot be an inadvertent disclosure. Weiss misses the point. Voluntary, intentional disclosure is more likely, not less likely, to effect a waiver than inadvertent disclosure is. Thus, the issue is whether Weiss's voluntary and intentional disclosure to the State Department effected

16

a waiver of the privilege as it pertains to the subject matter of the disclosed documents, not whether the subsequent disclosure in discovery pursuant to this Court's Order was or was not inadvertent. The fact that I ordered Weiss to produce certain documents that had been disclosed to the State Department is irrelevant to the question before me now.

As Weiss points out and Kotva omits to mention, two of the documents, Exhibits I and J, were attached to Kotva's Complaint (*see* Exhibits D and F to the Complaint). Thus, Kotva already had the documents when Weiss disclosed them to the State Department. It is not clear to me how Kotva obtained them in the first place, although Weiss implies (Opposition, 13) that the documents were seized by the Czech police and turned over to Kotva. However Kotva obtained them, Weiss's later disclosure to the State Department of documents already out of the bag could not effect a subject matter waiver.

Weiss originally withheld Exhibits L and M on the grounds of the work-product doctrine. The documents obviously contain attorney work product, but they are also attorney-client privileged communications. Because Weiss had voluntarily disclosed them to the State Department, they were ordered produced to Kotva. Weiss contends, citing *XYZ Corp.*, 348 F.3d at 24, that no subject matter waiver was effected by the voluntary disclosure to the State Department and that the privilege as to other documents on the same subject remains intact.

Considerations of fairness inform the question of the scope of an implied waiver by virtue of a voluntary disclosure. *Id.* at 22 [citations omitted]. As the First Circuit noted in *XYZ Corp.*, '[v]irtually every reported instance of an implied waiver extending to an entire subject matter involves a judicial disclosure, that is, a disclosure made in the course of a judicial proceeding." *Id.* at 24.

> Accordingly, we hold, as a matter of first impression in this circuit, that the extrajudicial disclosure of attorney-client communications, not thereafter used by the client to gain adversarial advantage in judicial proceedings, cannot work an implied waiver of all confidential communications on the same subject matter.
>
> . . .
>
> Where a party has not thrust a partial disclosure into ongoing litigation, fairness concerns neither require nor permit massive breaching of the attorney-client privilege.

*Id.* at 24-25.

In this case, I find that the disclosures of Exhibit L and M to the State Department were extrajudicial. Accordingly, the disclosures do not effect a waiver of attorney-client communications on the same subject. Nor is there a subject matter waiver with respect to the attorney work product contained in Exhibit L and M. *See United States v. MIT*, 129 F.3d 681, 687 (1st Cir. 1997) (disclosure of work product does not effect a waiver unless the disclosure is made to an adversary).

Because Kotva (1) failed to disclose in its motion that it had taken the position in its responses to discovery requests in this litigation that inadvertent disclosure would not constitute subject matter waiver of privileged communications; (2) failed to disclose in its Motion that Exhibits I and J had been attached to the Complaint; (3) failed to cite, much less distinguish, *XYZ Corp.*, which is controlling authority on the question of the scope of an implied waiver of attorney-client privileged documents in its Motion and relegated the case to a footnote in its supplemental submission; (4) failed to comply with Rule 37.1 with respect to the issue of subject matter waiver, I am inclined to impose sanctions, including attorney's fees and expenses, on Kotva and counsel with respect to this portion of its motion. I hereby ORDER that Kotva and its counsel shall show cause why sanctions should not enter against either or both of them. Kotva

18

and counsel may make a written submission and Weiss may submit an affidavit setting forth fees and expenses allocated to this issue on or before October 13, 2006. A hearing affording Kotva and Weiss an opportunity to be heard on the issue shall be scheduled at a later date, unless the parties wish to forego their right to a hearing.

Howard Golden Documents

Kotva seeks *in camera* inspection of communications to which Howard Golden was a party. Golden is an attorney, but is also a former director of BGO's predecessor and therefore wore a business, as well as a legal, hat. Kotva seeks *in camera* review of log entries 14-15, 1316, 1324-25, 1329, 1344, 1350, 1355, 1360-64, 1368, 1370, and 1438-39 in order to determine whether the attorney-client privilege was properly invoked. These specific documents were not identified in the Rule 37.1 conferences.

Weiss is willing to produce document 1362, but otherwise stands by the adequacy of the log and represents that it has sifted through the documents involving Mr. Golden in order to distinguish those which are business-related from those which are legal in nature.

I have reviewed all the listed entries in the August 8 log that describe Golden-related documents. All are adequately described and all provide a basis for invoking either the attorney-client and/or work product doctrines. Kotva's motion with respect to these documents is therefore denied.

Lars Bader and Jason LaRoux Documents

Kotva challenges the application of the common interest doctrine to Lars Bader and Jason LaRoux. Kotva contends that Weiss has failed to describe the scope and duration of any common interest between Bader and LaRoux, on the one hand, and Weiss on the other. Kotva specifically

19

challenges log entries 1317, 1320-21, 1323, 1326, 1433, 1416-1420, 1422-1432. Kotva has declined Weiss's offer to produce certain of these documents under a stipulation that the production would not constitute a subject matter waiver.

Weiss in response notes, accurately, that the May 26 Order did not require that the log explain the basis for all claims of privilege based on common interest and then represents that Bader was employed by QVT, the beneficial owner of a portion of the ring-fenced assets owned by CVF Investments, Ltd, including shares of Kotva and Trend. LaRoux was employed by HSBC/Bank of Bermuda, which was the custodian of CVF's shares in Kotva. Accordingly, QVT and Weiss shared an identical interest with respect to proceedings involving Kotva, and HSBC/Bank of Bermuda was the entity subject to a freezing order with respect to CVF Investment's shared in Kotva.

While it is true that the May 26 Order expressly addressed only the Woolf documents and the showing necessary to invoke the privilege on the basis of the alleged common interest between Weiss and Woolf, the principles stated therein are applicable generally. The privilege log has to be sufficiently detailed so that it permits challenges and review. It should not be necessary to resort to motion practice in order to flush out the basis for an invocation of a privilege.

That said, the common interest between Weiss and Bader/LaRoux seems evident and Kotva does not mount a challenge on the merits of the invocation. I note in this regard that Kotva has taken the deposition of Lars Bader and is therefore presumably quite familiar with the relationship between them, their employers, and Weiss. Rather, Kotva takes the position that Weiss forfeited the privilege by failing to describe the common interest in the log. I am not prepared to hold Weiss to such a standard, given that the May 26 Order did not expressly require

20

the log to set forth the factual foundation for an assertion of privilege based on the common interest doctrine.

I have reviewed all the log entries listed by Kotva in its motion with respect to Bader and LaRoux. It is unclear to me why an email transmitting a draft power of attorney, or the draft itself, is privileged (1359, 1382-1383, *et seq.*). I invite counsel to Weiss to supplement its justification for invoking the privilege with respect to the draft powers of attorney, documents presumably not intended to be confidential, along with its submission of those documents for *in camera* review. The balance of the entries are adequate and appropriately invoke either the attorney-client or work product privileges.

## II.  Kotva's Motion to Compel, filed August 11, 2006

Kotva's Motion to Compel seeks answers to interrogatories and documents concerning:

- the Czech criminal file and Weiss's access thereto;

- Weiss's attempts to have the criminal charges against him dismissed;

- Weiss's other blackmail schemes;

- Weiss's private investigator's accusations that a Kotva representative "did in" a Czech police investigator

- fee agreements with Czech counsel; and

- communications with the Weiss defendants' investors concerning changes to the Investment Management Agreement of BGO made after the filing of this action.

These topics relate to First Set of Interrogatories Nos. 7, 8, 9, 12, 13, and 14; Second Set of Interrogatories, No. 1, and Third Set of Interrogatories, No. 1, and Second Set of Document Requests Nos. 5, 10, 15, 16, and 26.

### A.  Criminal File

21

Denied.  The request is overbroad and not reasonably calculated to lead to the discovery of admissible evidence. As I stated at the August 30 hearing, the criminal file, in its entirely, is not *per se* relevant and it is now apparent that it contains privileged documents which the Czech police seized and disclosed to Kotva.  While it is not a defense to production of otherwise relevant and responsive documents that they came from or are now in the criminal file, Kotva is not entitled to discovery of the entire criminal file without regard to what is contained in it, whether the documents are privileged, from whom and how the information was obtained, whether the information in the file is relevant or irrelevant, etc.  While "discovery is a two-way street", as Kotva contends, Kotva and Weiss do not stand in the same position with respect to the criminal file.  Kotva simply has no right to unfettered access to materials compiled and seized by the Czech authorities in connection with its investigation of Weiss, no more than Weiss would have a right to unfettered access to such a file compiled about Kotva.  Kotva's access to Weiss's criminal file may be relevant to demonstrate that Kotva directed or influenced the Czech authorities to prosecute Weiss.  Weiss's access to its own criminal file is irrelevant to any issue in the case.  Weiss's privacy interest in the criminal file is decidedly different from Kotva's privacy interest in the same file.  Thus, the argument that Weiss must produce exactly what it demanded Kotva produce does not bear scrutiny.

I repeat, however: if otherwise unobjectionable requests call for the production of documents which, by happenstance, came from the criminal file (*e.g.*, unprivileged witness statements, tape recordings of witnesses, relevant and unprivileged  documents that had been in Weiss's possession but were seized by the Czech police), then they must be produced.  This appears to be an academic distinction in light of the fact that Kotva has had unimpeded access to

the criminal file and was permitted to copy what it chose to from it; indeed, it apparently copied

the entire file, according to Mr. Harazim's deposition testimony.  Indeed, Kotva does not identify

a single document it believes Weiss has from the criminal file that it does not have and needs.

Thus, it appears that Kotva is only interested in obtaining Weiss's work product or alternatively,

that the request is simply intended to harass and oppress.

      B.  <u>Weiss's Attempts to Have Criminal Charges Against Him Dismissed</u>

Denied.  Weiss's attempts to have the criminal charges against him dismissed are irrelevant

to any issue in this lawsuit.  Weiss's representations and admissions about the facts and

circumstances giving rise to the criminal charges and this lawsuit are, of course, relevant and

admissible, but the request goes far beyond a request for Weiss's representations and admissions.

Indeed, interrogatory no. 8 does not even ask for Weiss's statements and admissions, but rather

identification of "all actions" taken not only by Weiss but by others.

      C.  <u>Other Alleged Blackmail Schemes (Interrogatories Nos. 12, 13, and 14)</u>

Allowed.  While Weiss has answered that he has no personal knowledge of the requested

information, he must either, at his option, review business records in his possession or control

which contain the information in order to answer the interrogatories, or specify the records from

which the answer may be derived and afford Kotva a reasonable opportunity to inspect the

records and to make copies.  Fed. R. Civ. P. 33(d).  I understand that the documents at issue are

stored in five or six boxes.  It may well be less onerous to simply find the answers to the

interrogatories from the stored files and answer the interrogatories than to produce all five or six

boxes, vet them for privileged material, etc., but I leave it to Weiss and his counsel to make that

assessment.

D.  Information Concerning Private Investigator  (Interrogatory No. 9, Request No. 15)

Denied.  The information requested is not reasonably calculated to lead to the discovery of relevant, admissible evidence.  Contrary to Kotva's contention, Weiss has not placed the investigative work of Ladislav Pavek "at issue" unless and until Mr. Pavek is intended to be called as a witness.  Weiss has represented that Mr. Pavek is not going to be a witness in this case.  Accordingly, even if it were relevant, his investigative work is protected by the work product privilege, as to which there has been no waiver.  Kotva has not argued, much less demonstrated, that there are exceptional circumstances which would warrant overriding the privilege.

E.  Identification of Legal and Beneficial Owners of BIP (Interrogatory Nos. 7 (First Set) and 1 (Third Set), Request Nos. 16 and 26

Denied.  Kotva has been given full rein to ask for Weiss's representations to investors about this case.  While it is theoretically conceivable that Kotva may unearth something more by contacting individual investors in order to verify Weiss's responses to discovery or to unearth other communications, I find that the request is unduly burdensome and not reasonably calculated to lead to anything useful to Kotva's case.  The identity of investors is confidential business information and Kotva does not present a need for the discovery sufficiently compelling to warrant overriding the investors' reasonable expectation of privacy or compromising Weiss's business relationship with the investors.  In fact, the request appears to be nothing more than a fishing expedition for an investor who will say that Weiss admitted that he had no basis to sue Kotva and knew the case was unjustified and was bringing suit in order to extort an inflated price for the Kotva shares.  The success of this proposed discovery venture, particularly in light of how attenuated BIP's investors are to the Kotva and Trend shares at issue in this case, is speculative at best.  The fact of the matter is, the core of this case is what Weiss demanded of Kotva in order to

24

settle the litigation and whether the demands were justified and legitimate and the means used to achieve Weiss's objectives proper – not what Weiss told his investors.

While Weiss's personal ownership stake in BIP may be relevant to establish bias, it is only marginally so. It is already clear that Weiss Capital LLC  is the General Partner of BIP and that Weiss personally controls Weiss Capital LLC; it is already clear that he has a financial interest in the outcome of this case and, specifically, in BIP.  More is overkill and unnecessary.  Kotva is in no way compromised from asking Weiss about his financial interest in the outcome of this litigation at trial.  The request for the names of Weiss's family members who hold interests in BIP borders on abusive.  Finallly, Kotva has exceeded the number of interrogatories permitted by Rule 33 and has not sought leave to expand the number.  While Kotva's three sets of interrogatories comprise a total of 23 enumerated interrogatories, several of them have distinct and discrete subparts which should have been separately enumerated.  I note, too, that Kotva objected generally to interrogatories with multiple subparts to the extent the total number exceeded 25, and, as Kotva states, discovery is a two-way street.  But, even if Kotva had requested leave to exceed the total, I would deny the request as excessive, unreasonable, and unduly burdensome.

F.  Fee Agreements with Weiss's Czech Counsel

Denied.  While fee agreements with counsel are not necessarily privileged, neither are they relevant to the issues in this case.  Kotva offers two theories of relevance, but they cut in opposite ways.  On the one hand, it wants to prove that Weiss was involved in or directed the Czech lawsuits to block the sale of the department store, presumably by showing that Weiss was in an attorney-client relationship with Czech counsel who initiated the lawsuits, and, on the other, it seeks to discredit the claim that Weiss stood in an attorney-client relationship with Czech counsel

25

in order to undermine Weiss's invocation of the attorney-client privilege. First, Rule 26 does not authorize Kotva to employ the tools of discovery to investigate and police whether an asserted privilege is properly invoked, and second, production of the fee agreements is not necessary in order to determine whether and by whom Weiss is or has been represented.

If, as appears to be the case, the parties wish to exchange fee agreements, they are free to do so, but I decline to order production in the absence of a better showing of relevance.

G. <u>Communications with Investors Concerning Changes to the Investment Management Agreement of BGO</u>

Denied. Changes to the Investment Management Agreement after this lawsuit was initiated make no fact alleged in the complaint more or less likely. Whether a change does or does not remove any limit on what the defendants can spend on legal fees is completely irrelevant to any issue in this case.

Pursuant to Rule 37(a)(4)(A) and (B), the parties are ordered to submit affidavits concerning attorneys' fees and costs and a memorandum showing cause why the Court should not apportion costs and fees between them within fourteen days of receipt of this Order. An opportunity to be heard shall be granted and a hearing scheduled at a later date. If the parties wish to waive their right to be heard, they may submit the issue on the papers.

III. **Weiss's Motion to Compel Production of Documents and Answers to Interrogatories by Richard Harazim and for Sanctions, filed August 29, 2006**

The Weiss defendants move to compel counterclaim defendant Richard Harazim ("Harazim") to produce documents and to answer interrogatories, and seek sanctions for his alleged failures to date. While this motion was not addressed in the hearing held on August 30, I

26

do not think that oral argument is necessary in order to clarify the issues.

Weiss has sued Harazim in a counterclaim which, as currently formulated after the Court's dismissal of certain counts and parties, alleges abuse of process. Among other things, Harazim challenged the court's jurisdiction over him. That motion was granted in part and denied in part on June 28, 2006. Harazim successfully resisted discovery before that date. On June 30, 2006, Weiss served document requests and interrogatories upon Harazim, the answers and responses to which were due a month later, on July 31, 2006. Shortly before that date, Harazim's counsel asked for an extension of time until August 9, 2006. On August 15, responses and answers were served.

Document Requests

In sum, forty-six days after receiving the document request, Harazim responded that Local Rule 26.1(C) bars the document request because Weiss has already served two sets of requests and did not seek leave to serve a third set. Moreover, Harazim responded, he does not possess responsive documents. Harazim does not indicate in his Opposition which requests he considers the first and second requests. According to Weiss's motion papers, the earlier requests were served on August 1, 2005, and March 3, 2006, and Harazim responded to neither. As to the assertion that Harazim does not possess responsive documents, that is apparently not true, according to the representations of counsel that additional responsive documents, such as cell phone records, planners and calendars and business cards, might exist.

Weiss argues that the late response to the request for production effects a waiver to all objections. Harazim counters that the request was void *ab initio* and required no response because leave was not granted to file it.

As I understand the facts, Harazim, a party, has never produced documents in his individual capacity and has never responded to a document request. Under Fed. R. Civ. P. 34, "[a]ny party may serve on any other party a request . . . to produce . . .". Local Rule 26.1(C) limits the total number of discovery events for "each side" but does not specify whether the restriction applies per responding party or with respect to all responding parties, taken together. The reported cases all seem to deal with the problem of a single responding party being bombarded with multiple sets of interrogatories or requests for admission issued by several requesting parties (*see, e.g., St. Paul Fire and Marine Insurance Co. v. Birch, Stewart, Kolasch & Birch, LLP*, 217 F.R.D. 288 (D. Mass. 2003)(Collings, M.J.), not the situation presented here, where the other sets of requests were apparently served on Kotva, not Harazim. If the Local Rule were read to preclude one party from requesting documents from another party, the Local Rule would be inconsistent with Rule 34. The Local Rule must yield to permit Weiss to obtain documents from Harazim. *Cf. St Paul Fire and Marine Insurance Co., supra*, in which Magistrate Judge Collings ruled that Local Rule 26.1(C)'s limit of 25 interrogatories *per side* was invalid because it was inconsistent with Rule 33.

Accordingly, I rule that the document request was not void *ab initio*. Moreover, Harazim's failure to respond within the time allowed by the Rules, and without seeking either a stipulation extending the time or an order from the court extending the time evidences a nonchalance and cavalier attitude that cannot be excused. Accordingly, objections are deemed waived, pursuant to Local Rules 34.1(c)(1) and 33.1(c)(1). *See Tropix, Inc. v. Lyon & Lyon*, 169 F.R.D. 3 (D. Mass. 1996). Harazim is directed to respond to the requests in full, and to make production of all documents not previously produced. Production shall be made forthwith and in

no event later than October 10, 2006.

Interrogatories

Weiss seeks to compel answers to Interrogatory Nos. 1 and 2, and argues that Harazim, by serving his answers late, waived his objections to the interrogatories, and that this court has no discretion to rule otherwise.

Indeed, Harazim served his answers to interrogatories late, whether or not one considers the conditioning of the extension on Harazim's answering as opposed to objecting to the requests "too cute" as Harazim contends. The answers were not served until August 15, six days after the asked-for and agreed-to extension to August 9, even disregarding any condition attached to the extension. Harazim offers no excuse for the late service, nor for his failure to move for a protective order on the scope and breadth of the interrogatories. Not a single responsive, allegedly privileged communication was logged. The objection that the information sought in interrogatory nos. 1 and 2 "is more appropriately obtained at deposition" is not properly stated as an objection unless it is followed promptly with a motion for a protective order pursuant to Fed. R. Civ. P. 26(c). Instead of moving for a protective order, Harazim chose to delay responding, and then to interpose an objection to both interrogatories in their entirety. While complaining that the interrogatories were overbroad, Harazim did not describe a single communication between himself and any other individual concerning either the decision to bring this lawsuit or concerning the criminal charges against Weiss. This was plainly improper. Even if Harazim believed that the interrogatories were overbroad, unduly burdensome, etc., such objection is not a license to refuse to make any substantive response whatsoever.

Given that the answers were filed late and given that no privileged communication was

even identified in a log and given that no motion for a protective order was filed, I am compelled to find that the objections to the interrogatories are deemed to be waived. Hence, Harazim is ordered to answer interrogatories nos. 1 and 2 forthwith, and in no event later than October 10, 2006.

Harazim and counsel are further ordered to show cause why Weiss should not be awarded costs and fees incurred in filing this motion. Weiss is invited to submit an affidavit of costs and fees. Submissions shall be filed by October 18. The parties shall be afforded an opportunity to be heard on the question of sanctions, unless they agree to submit the matter on the papers.

IV. <u>Marta Guthova Documents</u>

By letter dated August 3, 2006, counsel to Weiss submitted so-called Guthova documents for *in camera* review. According to counsel, Ms. Guthova was a director of Flow East, a company affiliated with James Woolf, and was working with Mr. Woolf on Kotva-related matters.

I have reviewed the following documents. I incorporate herein my analysis of the Woolf-Weiss relationship and documents contained in my order dated June 19, 2006. In many instances, the documents most recently submitted do not convey legal advice, but they do relate to litigation strategy, the hiring of attorneys, collection and review of documents. All fall within the period of common interest between Woolf and Weiss. The documents that relate to the evaluation of various attorneys and the fees the attorneys may charge are not in my view relevant, although they are not, strictly speaking, attorney-client privileged. They are, arguably, work product-protected. As noted in my earlier order, documents that bear on the relationship of cooperation between Weiss and Woolf are potentially relevant, however. Finally, communications between Peterka and/or Weiss with Woolf or Marta Ghutova relating to the collection of documents, etc. are

30

protected work product in anticipation of litigation.  Consonant with these principles, Weiss is

ordered to produce the documents or portions thereof indicated in the table below.

| No. | Description | Action Required |
|---|---|---|
| 216 | Email regarding terms for legal work and potential attorneys | Produce.  The document is relevant to the relationship between Weiss and Woolf. |
| 221 | Email regarding terms for legal work and potential attorneys | Do not produce.  The document relates to the evaluation and fees of a specific attorney. Not relevant. |
| 222 | Email regarding terms for legal work and potential attorneys | Do not produce.  The document relates to the fees of a specific firm. Not relevant. |
| 230 | Email regarding retention of counsel in Czech Republic | Do not produce.  The document relates to the evaluation of specific attorneys and law firms.  Not relevant. |
| 233 | Email regarding terms for work and potential attorneys | Do not produce.  The document relates to the evaluation of specific attorneys and law firms.  Not relevant. |
| 234 | Email regarding terms for work and potential attorneys | Do not produce.  The document relates to the evaluation of specific attorneys and law firms.  Not relevant. |
| 432 | Correspondence regarding potential legal proceedings and materials gathered for those proceedings | Do not produce.  Attorney-client privileged communication; work product-protected material. |
| 441 | Correspondence regarding material gathered for legal proceedings | Produce header of first message without the subject line. Produce the three lines of the message, beginning "Dear Mr Peterka, as you can read" and ending "111."  The subject line and the balance of the message and the remainder of the document may be redacted. |

So ordered this 29th day of September, 2006.

/s/ Jeanne M. Kempthorne

31

_____

Special Master