UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
KOTVA a.s.                                          )
                                                    )
                    Plaintiff,                      )          Case No. 05-10679-RCL
                                                    )
          v.                                        )
                                                    )
ANDREW WEISS and WEISS ASSET                        )
MANAGEMENT, LLC                                     )
                                                    )
                    Defendants.                     )
_____ )

**KOTVA'S MEMORANDUM REGARDING APPORTIONMENT
OF FEES AND COSTS IN RESPONSE TO
THE SPECIAL MASTER'S SEPTEMBER 29, 2006 ORDER**

**INTRODUCTION**

In the September 29, 2006 Order ("September Order"), the Special Master

directed the parties to submit affidavits and a memorandum showing cause why the Court

should not apportion costs and fees between them.  As described below, the Court's prior

Order directed Weiss to provide additional information on his privilege log, and stated

that failure to produce "the privilege log already ordered produced will result in the

imposition of sanctions."  (Special Master's Order dated May 26, 2006 ("May Order") at

15.  As demonstrated by the September Order itself, Weiss did not do so, Kotva's request

for sanctions against Weiss was substantially justified, and its attorneys' fees incurred in

connection with its motion to compel on the privilege log should be paid by Weiss.

(Kotva's counsel's Declaration regarding fees is filed herewith).[1]  As described below,

---

[1]  For the reasons set forth in Kotva's October 13, 2006 Response regarding Subject Matter Waiver and the
reasons set forth herein, no sanctions against Kotva are warranted.

Kotva was substantially justified in seeking *in camera* review and also demonstrated

sufficient factual basis for *in camera* review under the crime-fraud exception.  <u>See</u> Fed.

R. Civ. P. 37.

## <u>DISCUSSION</u>

**I.    Weiss's Revised Privilege Log Failed to Comply with the May Order and
       Kotva's Request for Sanctions was Justified**

Kotva filed a motion to compel on April 3, 2006 due to deficiencies in Weiss's

original privilege log and various other discovery disputes.  In its April motion to compel,

Kotva advised the Court that more than half of the entries on Weiss's original privilege

log (220 of 436) asserted attorney-client privilege without identifying any attorney as an

author or recipient; that privilege had been wrongly asserted for documents prepared by

third parties; that close to a quarter of the log's entries had been disclosed to the press

and/or the State Department; and that the log omitted documents relating to the Czech

litigation filed by Weiss between June and December 2004.  The May Order required

Weiss to log the omitted entries (which now make up the bulk of the revised privilege

log); ordered the production of documents voluntarily disclosed to the press and the State

Department; established a protocol for the assertion of the common interest exception

(calling for the *in camera* review of communications between Weiss and James Woolf,

many of which were ordered produced); and ordered Weiss to provide additional

information when describing claims of privilege.[2]  The May Order also expressly stated

---

[2] "The [privilege] logs must identity the author(s) and recipient(s); the person or entity whom the attorney
represents; the date the communication was created or transmitted, as applicable; the nature of the
communication, and the basis for the claim of privilege or protection.  The log should not contain or reveal
privileged communications.  To the extent the logs prepared by the parties to date do not comply with this
directive, the parties shall amend their logs so that they provide all the foregoing information."
May Order at 2.

that failure to produce "the privilege log already ordered produced will result in the
imposition of sanctions." May Order at 15.

On July 10, 2006, Weiss produced a revised privilege log with many of the same
deficiencies that existed in the original log. In particular, the revised log contained
hundreds of assertions of attorney-client privilege that failed to identify any attorney as
an author or recipient. Moreover, despite the filing of multiple Czech lawsuits between
June and December 2004 and the existence of multiple and varied attorney-client
relationships, the revised log made no distinction between the various legal proceedings
at issue. Knowing which attorneys represent which parties and for what is essential to
mount a challenge on the grounds of waiver.[3] In accordance with the May Order, Kotva
moved to compel and requested sanctions. As discussed below, the September Order
acknowledges the validity of Kotva's grievances and requires the *in camera* review of
numerous assertions of privilege by Weiss. Thus, sanctions against Weiss are warranted
and costs should not be apportioned between the parties.

### A.    The September Order Acknowledges that Weiss's Revised Log was Deficient--Proving the Validity of Kotva's Motion for Sanctions

Although claiming that Weiss's log is "by and large compliant," the September
Order immediately notes an exception: "that it does not specifically identify the client
whom the attorney represents." September Order at 7. In the first place, if the log does
not identify the client whom an attorney represents, how can Kotva know whether the
privilege has been waived by disclosure of the document outside of the protected
relationship? Nevertheless, after attacking Kotva because a handful of the entries listed

---

[3] For example, Weiss's August 8 revised privilege log reveals just such a waiver, where Weiss destroyed
the attorney-client privilege he asserted by disclosing advice of McDermott, Will & Emery to Howard
Golden, a third party outside of the protected relationship. See entry 1363.

3

in footnote 2 of its Motion for Sanctions referred to Attorney Peterka <u>in the description field</u>,[4] the Special Master acknowledges the validity of Kotva's objections to the July 10 revised privilege log:

> Reviewing the July 10 log, I find that in some cases Weiss's description does not adequately describe the basis for the invocation of a privilege without reviewing the document and having additional information about the parties to the communication and the purpose of the communication. The August 8 log is more complete, but in a few instances, it is, as Kotva contends, impossible to assess whether certain claims of attorney-client or work-product privilege is fairly invoked from the privilege log, even giving full credence to the accuracy of the description. There is insufficient detail to demonstrate the existence of a confidential relationship and that the document is entitled to protection as a legal, as opposed to a business, communication.

> I accept Kotva's suggestion of a staged review of documents, although I am dismayed to find that Kotva's first proposed wave of documents is not even a subset of its original footnote 2.[5]

September Order at 8-9. In other words, the July 10 log was deficient and Kotva's request for sanctions was warranted. Indeed, in addition to *in camera* review, the September Order also requires Weiss to submit proposed redactions for documents 17-25, which could only be partially privileged at best.

---

[4] Kotva did not intend to list entries in which a specific attorney could be identified. The extremely small number of entries that Weiss challenged on that point in his opposition (just 15 of the 308 entries listed in Kotva's footnote) proves the point. <u>See</u> his Opposition to Motion for Sanctions at 7-8. In response to the September Order, Kotva reviewed the descriptions provided in the July 10, 2006 log for all 308 entries. Of the 308, <u>only 12</u> make reference to a specific attorney (Peterka) in the description field. Because Kotva did not intend to include such entries, it withdraws the following entries from the list provided in footnote 2: 639-640, 642-644, 676, 772, 865, 999-1000, and 1029-1030. Even with this minor correction, however, <u>the July 10 log still contained 296 assertions of attorney-client privilege for which no specific attorney was identified</u>.

[5] With respect to the "dismay" that is expressed because the first wave of documents is not a subset of Kotva's original footnote 2, Weiss's failure to identify an attorney as an author or recipient for an assertion of the privilege is not the only reason Kotva requested *in camera* review. As the Special Master is aware, Kotva also requested review pursuant to the crime-fraud exception, pursuant to principles of waiver, and pursuant to issues of inadequate description that suggest the documents in question were business communications. <u>See</u> <u>generally</u> Motion for Sanctions. After the August 30th hearing, and at the Special Master's suggestion, Kotva made a diligent effort to identify and narrow the specific entries that warrant *in camera* review.

Unfortunately, the September Order does not go far enough with respect to the scope of the *in camera* review. For example, the September Order calls for the review of only <u>four</u> documents during the entire May-June 2004 period, the period when Weiss made his initial extortionate demand and filed the first sham lawsuit. As discussed in section II below, *in camera* review under the crime-fraud exception is justified, and more documents from this time period should be reviewed. Further, it has already been established in this case that Weiss has made overbroad assertions of privilege. A further example of this is log entry 1100, attached hereto as Exhibit 1. Although the Weiss log alleges privilege based on communications about lawsuits, the document actually concerns a purely <u>business</u> communication between Hoffmann and Weiss about their "negotiations" with Kotva. A similar document appears as log entry 1039, which was attached as Ex. K to the Motion for Sanctions and is attached hereto as Exhibit 2. Apparently, Weiss has attempted to shield these documents as privileged by including attorneys as "cc" recipients. At a minimum, these two documents provide "reason to believe that Weiss's counsel has misrepresented the content and nature of the documents entered on its log . . . ." September Order at 9-10. How many other business communications between Hoffmann and Weiss are being wrongfully withheld as privileged?

When considering *in camera* review, the Special Master also should take into account the dearth of activity in the Gilroy and KT lawsuits. Other than filing the Gilroy complaint in June 2004 and the KT complaint in December 2004, the cases remained essentially dormant (the Gilroy case was ultimately dismissed for lack of standing in September 2005). In other words, these two suits were not generating a consistent hum

of legal activity, yet for the period between June 4, 2004 and December 23, 2004, Weiss's privilege log lists 1017 entries.  Not coincidentally, this is the precise time period when Weiss implemented his extortionate scheme against Kotva.  Given the history of Weiss's overbroad assertions of privilege in this case, it is highly likely that many of these documents do indeed refer to business communications and have nothing to do with "litigation strategy" or "legal advice."

### B.    The Rule 37.1 Conference Complied with the Rules

Over the course of more than a week, the parties were able to reach agreement about a number of issues raised by Kotva about the July 10 log.[6]  The September Order, however, incorrectly portrays the Rule 37.1 conferences as "cursory and *pro forma*." September Order at 5.  It also faults Kotva for failing to conference issues that Kotva did in fact conference.[7]  Far from cursory and *pro forma,* the discovery conference was more than sufficient, especially since the core issues of the conference involved <u>the same deficiencies that existed in the original privilege log</u>.

At the outset of the conference, Kotva's counsel advised Weiss's counsel that the revised privilege log failed to comply with the May Order and that chief among the deficiencies was the continuing failure by Weiss to identify any specific attorney for hundreds of assertions of attorney-client privilege.  Despite Weiss's version of the

---

[6] For example, the parties discussed and reached agreement about the submission of additional Woolf-related documents (listed as <u>legal@demac.cz</u> or Marta Guthova on the log) for *in camera* review, the production of documents 1-13 and 1170 as a result of their production to the press, the revision of entries 1229-1231, and an amendment to the appendix.

[7] With respect to entries 17-25, the September Order notes that, "Kotva should have conferenced the issue before filing a motion to compel."  September Order at 11.  Just six pages earlier, however, the Order concedes that entries 17-26 were "addressed at the meeting."  <u>Id</u>. at 5.  This internal inconsistency in the Order mirrors a similar contradiction in Weiss's Opposition, which first concedes that entries 17-26 were discussed and then complains that they were not.  <u>See</u> Opposition at n.4 and n.8.

conference, Kotva's counsel--who had the specific list of deficient entries at hand--was stopped by Weiss's counsel from reciting the lengthy list.  See August 2, 2006 e-mail attached hereto as Ex. 3.[8]  As the Special Master is aware, these entries are listed in footnote 2 of the Motion for Sanctions.  Regardless, as soon as Kotva advised Weiss of the nature of the deficiency, Weiss had the information to identify the deficient entries in the log.  The same holds true for the James Woolf/Marta Guthova/legal@demac.cz entries, the Howard Golden entries, the Svejnar/Bader/Leroux entries, the Hoffmann entries, and the entries between June and December 2004 for which the legal proceedings at issue were not distinguished.  Therefore, the conclusion that, "Kotva's motion afforded Weiss its first opportunity to discover exactly which entries were being challenged as deficient," is not accurate.  September Order at 5.

During the conference, the parties discussed the possibility of an amendment to the July 10 log to remedy the deficiencies that Kotva had identified.  Weiss's counsel proposed providing a "new column" that would list the missing attorneys.  Kotva explained that merely providing the name of an attorney would not solve the problem.  The issue was confirmation that the attorney was either the source of legal advice or the recipient of a request for legal advice by means of an adequate description.  The August 8 log confirmed Kotva's suspicions.  Weiss merely tacked on attorney and proceeding information at the end of the description column, and did not make an effort to incorporate the information into the description itself.  In any event, the August 8 log is

---

[8]  Kotva is providing herewith the e-mail exchange between the parties that constituted the conclusion of the Rule 37.1 Conference in order to provide a more accurate and complete account of the discovery conference than the version recounted in the September Order.  As demonstrated by the  July 31, 2006 email, it was Weiss's counsel who suggested completing the Rule 37.1 Conference in writing.

irrelevant for the purposes of Kotva's Motion for Sanctions.  Weiss is subject to sanctions

because the July 10 log failed to comply with the May Order.[9]

## II.    Kotva Satisfied the Relaxed Burden for *In Camera* Review Under the Crime-Fraud Exception

The September Order expressly acknowledges that the Czech litigation instigated

by Weiss can be part of an extortionate scheme:

> Just as the filing of litigation can constitute a tort (*e.g.*, abuse of process or malicious prosecution), it can also be a predicate act in furtherance of a scheme to extort or defraud.  *See generally United States v. Sturm*, 870 F.2d 769, 773 (1st Cir. 1989) (discussing use of economic fear and litigation to obtain property in context of Hobbs Act prosecution).

September Order at 14.[10]  Nevertheless, the Order trivializes the substantial evidence

Kotva has presented regarding Weiss's use of litigation as part of his extortionate

scheme.  As set forth below, Kotva has demonstrated a factual basis to support a good

faith belief that Weiss did in fact use the Czech litigation not to achieve its stated

purpose, but to further his extortionate scheme to force Kotva to buy BGO's Kotva and

Trend shares.

The standard for *in camera* review in the context of the crime-fraud exception is

exceedingly relaxed.  Kotva need only demonstrate a factual basis that would support a

good faith belief by a reasonable person that "*in camera* review of the materials may

---

[9]  "By the May 26 Order, the parties were obligated to provide additional information in order to facilitate any challenge to the invocation of the privilege [by July 10, 2006]."  September Order at 6.  Therefore, the subsequently produced log nearly a month later should have no bearing on this calculus.

[10]  Contrary to Weiss's repeated position that "filing lawsuits" is not a crime and could not be used to support Kotva's extortion allegations, Kotva cited First Circuit precedent on this issue.  See Gonzalez-Morales v. Hernandez-Arencibia, 221 F.3d 45, 51-52 (1st Cir. 2000) (recognizing that filing of suits may constitute RICO extortion); Lemelson v. Wang Labs, 874 F. Supp. 430 (D. Mass. 1994) (denying motion to dismiss RICO claim where litigation was part of extortionate scheme.)  The September Order now cites the Sturm decision.  Weiss cited none of these cases.  Kotva notes Weiss's continuing failure to cite controlling precedent on this subject since the citation of authority has been raised as an issue in other parts of the September Order.

reveal[11] evidence to establish a claim that the crime-fraud exception applies." In re Grand Jury Proceedings, 417 F.R.D. 18 at 22, 23 (1st Cir. 2005) (emphasis added). In other words, Kotva's burden is to show a factual basis sufficient to support a good faith belief by a reasonable person that the materials in question may reveal the Czech litigation was part of an extortionate scheme by Weiss against Kotva. The September Order, however, continues to impose too heavy a burden on Kotva, requiring it to demonstrate that the Czech litigation has "no objective merit."[12] Id. at 14.

In the May Order, the Special Master explained that the fact of the lawsuit and the allegations in the Complaint provided "evidence" of Weiss's extortion:

> the fact of the litigation speaks for itself. If extortion was intended, one would expect that there would be non-privileged communications, e.g., extortionate demands made to Kotva, demonstrating such intent. And, indeed, the complaint alleges such demands. It is difficult to see what the attorney-client communications and work product would materially add to this evidence that is not piling on.

May Order at 5 (emphasis added). There are at least three written extortionate demands from Weiss attached as exhibits to the Complaint. See Compl. Exs. A-C. The September Order, however, disregards this evidence that Kotva had already identified:

> As I noted in the May 26 Order, I would expect the evidence of extortion would be the demands Weiss made to Kotva, evidence which would logically be in Kotva's possession, and yet that evidence has not been forthcoming.

---

[11] "'May' is a very relaxed test and, as only the judge gets this initial access, properly so." Id.

[12] Even so, the Gilroy and KT lawsuits against Kotva do demonstrate no objective merit. Gilroy and KT were objecting to transfers of the Kotva Department Store prior to either of them being a Kotva shareholder. In dismissing Gilroy's lawsuit, the Czech court confirmed that the "Plaintiff [Gilroy] however, has no legal relation to the real property the determination of whose ownership he had sought," and further stated, "Undoubtedly, the Plaintiff had information about the changes in the registry of legal relations in the Land Registry prior to having bought any share in the company Kotva, a.s.''

September Order at 15 (emphasis added).[13]   The reversal from "piling on" to an alleged

absence of evidence is confusing.  In any event, Kotva has indeed already identified and

submitted evidence of Weiss's extortionate demands.

The following timeline helps to place Weiss's blackmail demands that Kotva

purchase BGO's shares and the ensuing Weiss-instigated litigation against Kotva into the

overall context of Weiss's extortionate scheme:

- **May 2004**:  After learning from the press that Kotva planned to sell its
  Department Store, Weiss makes oral demands during a May 12, 2004
  meeting with Kotva representatives that Kotva must repurchase BGO's
  shares or Weiss could make "serious problems for Kotva."  Compl. ¶ 20.
  Indeed, Weiss's demand that Kotva purchase its shares is illegal under
  Czech law--a Czech company cannot repurchase more than 10% of its
  own shares.  Moreover, a shareholder in a publicly traded company is not
  entitled to a percentage of the proceeds from the sale of a company asset.
  Nevertheless, throughout the month, Weiss searches for Czech counsel to
  implement his plan to file unrelated litigation against Kotva to force Kotva
  to repurchase BGO's shares.

- **June 2004**:  After retaining Attorney Peterka in the beginning of the
  month, Weiss launches his scheme to extort Kotva through sham
  litigation.  Weiss first arranges for shell companies to purchase nominal
  shares in Kotva.  Specifically, on June 23 and June 29, 2004, Gilroy Ltd.
  purchased 135 shares in Kotva.  On June 30, 2004, Peterka filed a lawsuit
  on behalf of Gilroy Ltd. in the Czech courts against Kotva and its
  subsidiaries disputing the title to the Department Store real estate, and
  immediately informed the Irish investors who were planning to buy the

---

[13] In addition, Kotva's Rule 30(b)(6) designee testified that, after the Gilroy lawsuit was filed, Vladimir
Hoffman demanded that Kotva purchase BGO's Kotva shares in exchange for dropping the Gilroy lawsuit.
(Deposition of Richard Harazim pp. 259-260).  Thereafter, Weiss made written extortionate demands for
the sale of BGO's Kotva shares and Trend shares.  (These demands were marked as Exhibits 27 at Mr.
Harazim's deposition and are attached hereto as Exhibit 4).

After the KT lawsuit was filed in December 2004, Mr. Harazim inquired of Mr. Weiss whether the "KT
suit belongs to [Weiss's] group as well."  Weiss responded:

> KT is not controlled by Weiss Asset Management; however, if a satisfactory resolution of all other
> matters can be achieved, I would try to persuade KT to settle its lawsuits and I am highly
> confident that I would endeavor.  Thus, I do not expect that the KT lawsuit will impair the ability
> of the parties to achieve a successful agreement.

See January 6, 2005 email at page 4242 of Ex. 4.

Department Store. Weiss also recorded the lawsuit in the land register to try to prevent the sale. The Gilroy lawsuit asserted that Kotva should be declared the owner of the Department Store rather than the wholly owned subsidiary that was selling it. (Kotva had transferred the Department Store to a subsidiary four years earlier in a publicly disclosed transaction, and prior to Gilroy even becoming a shareholder of Kotva). Gilroy bought the nominal shares solely to file the lawsuits against Kotva.

The only relief Gilroy sought in its complaint was a declaration that Kotva, as opposed to its subsidiary, be declared the owner of the Department Store, the lawsuit had nothing to do with BGO's Kotva or Trend Shares, but Weiss knew that any litigation against Kotva would interfere with the sale of the Department Store. The Czech court subsequently dismissed the lawsuit because Gilroy did not own the shares at the time of the transfer and thus had no standing to sue.[14]

- **August 2004**: On August 17, 2004, Weiss makes a written demand that Kotva purchase BGO's shares for CZK 131,000,000. To confirm its suspicion that Weiss is behind the recent litigation, Kotva responds that any such purchase must involve the withdrawal of lawsuits against Kotva. On August 23, 2004, Weiss submits a "counter-offer" that links his demand to the withdrawal of the pending suit by Gilroy and a promise of no attacks against the ownership or transfer of the Department Store by "legal or physical entities controlled by" Weiss, although he still denies any control of Gilroy. Compl. Ex B.

  Its suspicions confirmed, Kotva files a criminal complaint with the Czech authorities. The Czech authorities initiate an investigation of Weiss and his associates.

- **October 2004**: On October 18, 2004 Peterka confirms to Weiss that Harazim and Benda are representing Kotva and that Kotva is the buyer of BGO's Kotva shares. Peterka advises Weiss "as we have already stated in our e-mail of August 31, 2004 we consider it as being risky to sell shares to Kotva, a.s., or to any of its subsidiaries." See Ex. I to Motion for Sanctions. As evidence that Weiss's demands were illegitimate and that it was illegal for Kotva to purchase BGO's Kotva shares, an August 2006, WAM press release acknowledged "it would be impossible to pressure Kotva to purchase shares at an inflated price as, under Czech law, Kotva was not permitted to purchase those shares."

  On October 21, 2004 Hoffmann sent to Weiss a memorandum titled Negotiations, Price offers & Lawsuits. With respect to lawsuits, Hoffmann's memorandum does not even contemplate that the Gilroy

---

[14] Weiss's own Czech lawyers pointed out the standing problems in suing in the name of Gilroy (and later KT) but this did not stop Weiss from filing frivolous lawsuits.

lawsuit to invalidate the transfer of the Department Store would ever be successful or that it protects the value of BGO's Kotva shares. On the contrary, Hoffmann mentions under the risks section, "The first risk is that the Irish investors withdraw from the contract with Kotva.  It is very unlikely that that Kotva would be able to find another investor who would pay CZK 1,5-1, 7 bln. given the legal status of the property."  See Ex. 5.

The following admission, from an email exchanged between WAM and Hoffman, illustrates that the Czech litigation was not filed for the stated purpose of seeking a declaration that Kotva was the true owner of the Department Store:

> We can show that if [Kotva] do not settle with us, their cost of financing will be very high;…If they do not settle, they will be able to realize the value of the property only in several years…

October 21, 2004 email from Georgie Nikitin of WAM to Hoffman (attached as Ex. K to the Motion for Sanctions).

- **November 2004**:  Weiss ups the ante and demands that Kotva purchase not only BGO's Kotva shares, but BGO's Trend shares as well.  Compl. Ex. C.  The demand price soars from CZK 131,000,000 to CZK 296,000,000.  Weiss's demands that Kotva purchase BGO's shares in Kotva and Trend have nothing to do with the subject matter of the Czech litigation that Weiss filed.  In response, Kotva informed Weiss that, "We don't intend to deal with your share in Trend.  We – as the management of Kotva – strive to achieve just one goal and that is to be able to dispose freely with out assets."  (December 7, 2004 e-mail attached hereto as Ex. 6.)

- **December 2004**:  Another Weiss shell company, KT Inc., joins the extortion scheme against Kotva, filing a claim identical to the first Gilroy suit.

- **February 2005**:  After almost six months of investigation, including court-approved wire-taps, the Czech Police charge Weiss and two associates with extortion.

- **March 2005**:  Contrary to previous denials, Weiss reverses course and admits that he did indeed instigate the Czech litigation against Kotva by instructing his lawyers to take legal action "to protect the interests of BGO and its investors."  Compl. Ex. E.  None of the lawsuits, however, were filed by BGO, and none deals with an obligation of Kotva to buy Weiss's shares.

This case involves much more than an unsupported allegation that the crime fraud exception might apply. In short, Kotva has provided evidence of Weiss's extortionate demands, both verbal and written. Moreover, the timing of the Weiss-instigated litigation (just after Weiss learned of the pending Department Store sale and Kotva's refusal to accede to his demands), the subject-matter of the litigation (completely unrelated to the purchase of BGO shares, *i.e.*, seeking to reverse Kotva corporate acts that occurred before the litigants were Kotva shareholders), the manner in which the litigation was filed (through shell companies that purchased nominal shares of Kotva), and the documents that have been produced by Weiss in this case (admitting to various standing problems and deficiencies about the Czech claims) all suggest that Weiss's litigation was part of an extortionate scheme.

It is worth repeating that Weiss did not resort "to litigation in order to preserve the value of BGO's shares in Kotva and to prevent the dissipation of the proceeds of the sale of the Department Store through 'tunnelling' via various Kotva subsidiaries and affiliates." Sept. Order at 14-15. None of the litigation was brought by BGO. And none of the litigation sought to force Kotva to purchase BGO's shares. The Czech litigation involved matters wholly unrelated to BGO, filed by shell companies with no standing (e.g., Gilroy's nominal purchase of Kotva shares the day before it filed suit to challenge a transfer that happened years earlier). On top of that are Weiss's own admissions. After initially denying involvement with the Czech litigation, Weiss reversed course--after being criminally charged--and admitted his involvement. Finally, <u>if Weiss's litigation was supposed to be about preserving the value of "BGO's shares in Kotva," why was Weiss also demanding that Kotva repurchase BGO's shares in Trend</u>? <u>See</u> Compl. Ex. C.

Of course, KT and Gilroy had no claim or right to demand that Kotva should purchase

BGO's Kotva and Trend shares.

In addition, criminal charges have been filed against Weiss in the Czech Republic.

Indeed, before charging them with extortion the Czech authorities investigated Weiss and

his associates for months.  With Court approval, the Czech Police listened to telephone

conversations between Weiss and his associates and assembled evidence.  Those

conversations are part of the criminal file but access to them has been denied to all parties

because Weiss is resisting service of the charges.  The Czech authorities have been

unwavering in their refusal to drop the criminal charges against Weiss despite repeated

attempts by Weiss to have representatives of the United States Government intervene and

pressure the Czech Government.  Furthermore, in January 2006, at Weiss' own request,

the High State Prosecutor in Prague conducted a review of the municipal prosecutor's

conduct, and concluded that "the unlawfulness of [Weiss'] conduct does not consist in the

mere filing of said civil lawsuits but on the fact that these lawsuits were intended to serve

as an instrument of pressure with the intention to gain unlawful benefits from the sale of

securities…"  See Ex. 7.

Simply put, the Czech lawsuits were meant to be an instrument of pressure and

extortion to force Kotva to "repurchase" BGO's shares at an inflated price.  The point

was to exert pressure on Kotva to deal with Weiss because the unrelated litigation,

however frivolous, was intended to prevent Kotva from completing the sale of the

Department Store by challenging the legal title to the building.  Despite the fact that

Czech law does not permit companies to purchase more than 10% of their shares, and the

fact that shareholders' investments are not measured by the purchase price of company

assets, Weiss demanded exactly that from Kotva. The weight of the combined facts presented by Kotva that Weiss's Czech litigation was part of an extortionate scheme satisfies the "may reveal" test and justifies *in camera* review.

The fact that Weiss's extortion scheme involved litigation actually calls for <u>more scrutiny</u> of allegedly privileged communications, not less. The September Order, however, reveals an overly narrow approach to *in camera* review under the crime-fraud exception by focusing only on the challenged entries themselves: "Since <u>none of the entries</u> suggests that the content of the documents furthered a crime or a fraud, I decline to review documents that are amply described and obviously privileged." September Order at 10 (emphasis added). But in the context of crime-fraud, it cannot be concluded that the documents are "obviously privileged" <u>without reviewing the documents themselves</u>. In short, the allegedly privileged materials must be viewed <u>in the context of the overall extortionate scheme, not in isolation</u>.[15] Finally, the likelihood that Kotva's requested *in camera* review may reveal evidence that the crime-fraud exception applies far outweighs any possible prejudice to the Weiss Defendants. The documents will be reviewed by the Special Master, not Kotva.[16]

### III. The September Order Misconstrues Czech Law with Respect to the Criminal File

The September Order draws erroneous conclusions about Czech law and the Czech criminal file. For example, the Order states that:

---

[15] Application of the crime-fraud exception necessarily involves the review of communications that could be described as "litigation strategy." Indeed, if attorney-client communications and work product were not at issue, there would be no need to challenge the materials under the crime-fraud exception. It is precisely the disadvantage of not knowing the content of documents withheld as privileged that leads to such a low burden for justifying *in camera* review.

> Kotva simply has no right to unfettered access to materials compiled and seized by the Czech authorities in connection with its investigation of Weiss, no more than Weiss would have a right to unfettered access to such a file compiled by Kotva. Kotva's access to Weiss's criminal file may be relevant to demonstrate that Kotva directed or influenced the Czech authorities to prosecute Weiss.

September Order at 22. This is simply not the law in the Czech Republic. Moreover, and with all due respect, there is nothing in the record to justify or support such a conclusion. Kotva, as an aggrieved party, is legally entitled to have access to the criminal file. See June 14, 2006 letter from Czech Police ("only the accused party, the aggrieved party and an involved party and their legal counsel and proxies can be given access to the case files.") attached hereto as Exhibit. 8.

### IV. Allowing Weiss to Treat the Identities of the BIP Investors as Confidential Information without Moving for a Protective Order Flouts the Court's Prior Orders and Evinces a Double Standard

Kotva requested Weiss to identify the beneficial owners of Brookdale International Partners "that have interests in the 'ring-fenced assets." Interrogatory No. 7 (First Set). Weiss conceded that the identity of investors with interests in the ring-fenced assets is relevant, having previously identified the relevant subset of the BGO investors with such an interest. Weiss then took the opposite position that the identity of BIP investors who have an interest in the ring-fenced assets was somehow irrelevant. Kotva suspects that Andrew Weiss and his family members are the principal investors and partners in BIP. In addition to showing bias, the identity of the BIP investors goes directly towards Weiss's credibility. Weiss has claimed that he engaged in his scheme to protect "his investors." It is also relevant discovery with respect to party admissions

---

[16] In its Motion for Sanctions, Kotva requested the review of all communications between May and December. In response to the Special Master's request during the August 30, 2006 hearing, Kotva substantially scaled back its request in its Supplement.

made by Weiss. Indeed, documents produced by Weiss reveal that he requested the BIP investors to take action and get personally involved in this litigation by contacting politicians and writing letters.

Despite the relevance of this information, the September Order states that the identity of the BIP investors "is confidential business information." September Order at 24. No motion for a protective order was filed. Moreover, there is already a procedure in place that requires the parties to submit third-party discovery requests before issuance. As it stands now, the September Order ignores this procedure and rewards Weiss for failing to move for a protective order.

## <u>CONCLUSION</u>

Kotva's motions were substantially justified in accordance with Fed. R. Civ. P. 37. For the foregoing reasons, Weiss should be sanctioned for failing to comply with the May Order.

Kotva requests a hearing on this matter.

Respectfully submitted,

KOTVA, A.S.

By its attorneys,


/s/ Joel G. Beckman
Joel G. Beckman (BBO# 553086)
William C. Nystrom (BBO# 559656)
Daniel J. Pasquarello (BB0# 647379)
NYSTROM BECKMAN & PARIS LLP
10 St. James Ave., 16th Floor
Boston, Massachusetts 02116
(617) 778-9100
(617) 778-9110 (fax)
jbeckman@nbparis.com
wnystrom@nbparis.com
dpasquarello@nbparis.com

Dated: October 18, 2006




**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing
(NEF) and paper copies will be sent to those indicated as non registered participants on
this 18th day of October, 2006.


/s/ Joel G. Beckman

| | |
|---|---|
| | "Vladimir Hoffmann" <vlado1@volny.cz> |
| u: | "Andrew Weiss" <aweiss@weissasset.com> |
| ie: | "Ondrej Peterka" <peterka@cabinet.cz>; "Georgiy Nikitin" <georgiy@weissasset.com> |
| esláno: | 3. listopadu 2004 16:59 |
| řipojit: | E-mail Andy Nov 3 2004.doc |
| Předmět: | Kotva/Trend |

E-mail Andy, November 3, 2004

cc:    Yossi Barath
       Georgiy Nikitin
       Ondrej Peterka

Dear Andy,

Despite my numerous e-mails and phone calls I have not heard from you for at least three weeks or so.

Yesterday Georgiy informed me that you decided to reject the latest Benda's offer of CZK 131m. Georgiy also said, that you did not want to give a counter offer, but that you might give a counter offer later. Georgiy also told me to inform Benda that we were still open to their potential higher offers. Georgiy did not support your decision by any rational arguments.

I believe that the decision to reject the offer is very important. This decision might result in the total failure of negotiations which would mean lengthy and expensive lawsuits with uncertain outcome. In my memorandums of Oct.21 and 25 I have provided comprehensive analysis of the situation and I gave all my reasons why I believe that we should settle for CZK 131m or close.

According to my contract that expires on Jan 31, 2005 I report to the board of directors of BGO. I respect Georgiy but he is not director as far as I know. Since I have not heard from any member of the board and since I was not provided any rational explanation of the decision to decline the offer I require a written confirmation signed by the board or by you personally instructing me to reject the offer before I officially approach Benda.

Best regards,


Vlado.


P.S.: I am copying Yossi since according to my information he is director of BGO. Please inform me if there are also other directors of BGO so that I could report to the complete board.

K 0057

Komu:      "Georgiy Nikitin" <georgiy@weissasset.com>
           "Vladimir Hoffmann" <vlado1@volny.cz>; "Andrew Weiss" <AWeiss@WeissAsset.com>
Kopie:     "Hynek Peroutka" <peroutka@cabinet.cz>; "Jiri Cerny, <cerny@cabinet.cz>; "Ladislav
           Chundela" <chundela@cabinet.cz>; "Ondrej Peterka" <peterka@cabinet.cz>
Odesláno:  21. října 2004 23:09
Připojit:  E-mail Vlado Oct 21 2004.doc
Předmět:   RE: Kotva/Trend

My letter is attached.
Best regards,
Georgiy

Georgiy Nikitin, Ph.D.

Weiss Asset Management
tel. + 1 (617) 778-7725
fax + 1 (617) 778-7781

-----Original Message-----
From: Vladimir Hoffmann [mailto:vlado1@volny.cz]
Sent: Thursday, October 21, 2004 12:29 PM
To: Andrew Weiss
Cc: Georgiy Nikitin; Hynek Peroutka; Jiri Cerny; Ladislav Chundela; Ondrej Peterka
Subject: Kotva/Trend

Dear Andy,

Please find enclosed the Memorandum.

Best regards,

Vlado.

This email is confidential and is intended solely for the addressee(s). If you are not an addressee, you must not disclose, copy, circulate
or in any other way use or rely on the information contained in this email. If received in error, please notify the sender immediately
and then delete this email. Any disclosure, copying, distribution or use of this communication is prohibited and may be unlawful.

Any views or opinions expressed do not necessarily represent those of Weiss Asset Management or any affiliated companies. Please
note that the content of this e-mail may be intercepted, monitored or recorded for compliance purposes. Sensitive personal data should
not normally be transmitted by e-mail.

Weiss Asset Management or any affiliated companies shall not be liable to the recipient or any third party for any loss or damage
howsoever arising from this e-mail and/or its content, including loss or damage caused by virus. It is the responsibility of the recipient
to ensure that the opening or use of this message and any attachments shall not adversely affect systems or data.

Weiss Asset Management
29 Commonwealth Avenue
Boston, MA 02116
TEL: (617) 778-7780
FAX: (617) 778-7781

To Vlado – 21 October 2004

Dear Vlado,

Thank you for the memo you wrote. Do you think you could write a similar letter to
Kotva people: use the same assumptions and the same discount rates, just calculate how
much they will spend on the lawsuits and how much they can get? You can consider
different scenarios: settlement now, us winning, them winning, or some combination. We
should give them such calculations for their consideration. We can show that if they do
not settle with us, their cost of financing will be very high; and they will pay most of this
increased cost since we have only 11% of the shares. Also, the total serviceability of
Kotva store in the table you produced does not include the parking garage, which by itself
has a large value in the downtown Prague. If they do not settle, they will be able to
realize the value of the property only in several years, which will be diminished by the
discount rate and discounted probability of winning the lawsuits.

It is my understanding that Andrew does not want to settle all the lawsuits if all we get
for our shares in Kotva is CZK 131 million. However, he has not given me any directions
regarding how to reply to Benda and Harazim. I will try to speak with him about this.

Vlado, the facts about violence that you provided are very impressive. I really hope it
does not get to the point when we get personally threatened. Do you have contact
information for Vladislav Kusala and Martin Razim? It would be very interesting and
possibly useful to talk to them about the reasons of their resignations and their views of
the situation.

Please, keep me updated on the status of KT registration with the Securities Center.

Best regards,
Georgiy

## Daniel J. Pasquarello

**From:** Daniel J. Pasquarello
**Sent:** Wednesday, August 02, 2006 1:12 PM
**To:** 'BGoldberger@mwe.com'
**Cc:** Joel Beckman
**Subject:** RE: Kotva

Ben

Your proposal regarding the Svejnar, Bader, and Leroux documents is not acceptable. Our position remains that these documents should be produced. Weiss is not entitled to assert work product protection for these documents. As the May 26, 2006 Order made clear, if Weiss is claiming that the common interest exception applies then Weiss has the burden to establish that a common interest applies and the parameters of such an interest. There has been no effort to do so.

With respect to the remaining Woolf-related documents, including Guthova and legal@demac.cz entries, we agree that such documents should either be produced to us or produced to the Special Master for in camera review. We do not agree that it is our obligation to confirm the universe of such documents. Please identify all such documents and either produce them to us or submit them to the Special Master.

With respect to the e-mail attachment problem in your recent production of at least 3 boxes (attachments are missing or produced out of order), we requested that you produce the documents in proper sequence. If you provide confirmation that the subset of documents that you produced this week (from the recent production and described in your July 28 letter) corrects all of the problem documents, then we are willing to accept the subset as the solution. Without a confirmation that all e-mail/attachment problems have been fixed, we require the recent production to be re-produced in its entirety.

The privilege log descriptions are deficient and fail to comply with the May 26 Order. I have provided specific examples to you during our previous calls. In fact, you stopped me on more than one occasion because I was providing too many specific document references. A "new column" approach that simply provides attorney names will not solve the description deficiency. In addition to the failure to identify attorneys for claims of attorney-client communications and the failure to identify legal proceedings, the log does not provided sufficient information regarding the roles played by multi-hat individuals like Howard Golden and Vladimir Hoffmann. Finally, in many cases the appendix lists multiple clients or prospective clients as being represented by multiple attorneys without indicating the parameters of such representations.

We cannot agree to the continued delay in providing information that Weiss was ordered to produce months ago.

Dan

---

**From:** BGoldberger@mwe.com [mailto:BGoldberger@mwe.com]
**Sent:** Monday, July 31, 2006 4:21 PM
**To:** Daniel J. Pasquarello
**Subject:** RE: Kotva

Dan--

When we spoke at 10:00, you said that you wanted to respond to my email before we continued the 37.1 process. I have received and read that email. I am not going to respond to your inaccurate characterization of the discussions we had last week. Instead, I hope that the following will allow us to complete the 37.1 process in writing:

With respect to the specific entries relating to Messrs. Svejnar, Bader and LaRoux for which you asked us to withdraw our claims

of privilege, I will send you an item by item response in a few minutes that gives further specifics to what I told you during the telephone call with David Jaffe on Friday.

With respect to additional information, please confirm whether you still insist that names of specific attorneys and legal proceedings appear in the description column, rather than another column or columns. I expect that a log with this additional information will be ready for my review on Friday. However, I am out of the office Friday, and will not return to Boston until Sunday evening. Accordingly, I would not have the additional information ready to give to you until Monday.

For other additional information that you seek, I again invite you to provide specific references to privilege log entries that you claim are deficient in some way other than that an attorney is not identified by name or a proceeding is not identified by party.

We will produce the copies of the arbitration decision with handwritten comments.

By now, I expect you have already received a package containing the small portions of the most recent productions where it is unclear to you which attachments belong to which emails.

Benjamin A. Goldberger
McDermott Will & Emery LLP
28 State Street
Boston, MA 02109
t.  +1 617 535 4483
f.  +1 617 535 3800
e.  bgoldberger@mwe.com

---

**"Daniel J. Pasquarello" <dpasquarello@nbparis.com>**

07/31/2006 10:28 AM

To  <BGoldberger@mwe.com>, "Joel Beckman" <jbeckman@nbparis.com>

cc  <ELeibensperger@mwe.com>, <DJaffe@mwe.com>

Subject RE: Kotva

Ben,

Unfortunately, I need to correct some factual inaccuracies in your e-mail about the recent 37.1 process. During our first conference call, last Tuesday, I informed you of the continuing deficiencies in the Weiss privilege log. Chief among these is the failure to comply with the May 26 Order by providing adequate descriptions regarding many claims of attorney-client privilege where no attorney is identified. There also continue to be overbroad and vague assertions of work product. We discussed these issues on July 25, with examples provided, in addition to a number of other problems with the log. You told me on Tuesday that you would get back to me with answers to some of the smaller problems by the next day, but that you could not get back to me until at least the end of the week on the remaining issues. I said that I did not agree that the process should take until the end of the week. As you know, most of the issues I raised were the same deficiencies that existed in the original log.

On Wednesday, we spoke about some of the smaller issues and you told me that you still needed more time and had to get back to me. In response to other issues, I sent you an e-mail and said that I would plan to talk to you about the remaining issues on Thursday. You did not call me on Thursday. On Friday morning, having not heard from you, I left you a voicemail. In that voicemail, I asked you to get back to me to conclude the process. I also indicated that Weiss had produced to the press certain alleged work product that we had discussed during the call on Tuesday. I provided the bates number of the document substantiating this. This was hardly a new issue.

On Friday, you provided more detail about the "new column" approach that you proposed to fix the deficiencies in the log. As I did from the outset, I told you that it was not clear that your proposal would fix the problems. I requested a sample of your proposed fix, and you told me that one could not be provided because it had not been attorney reviewed. I told you I would get back to you

on the issue before 5.

During our last call, you refused to complete the discovery conference because your paralegal was not available.  I informed you that (1) the log is deficient (2) separate columns that do not provide new and adequate descriptions of the alleged privilege will not solve the problem; and (3) we are reserving our rights to move for sanctions.  I also asked when the corrected log could be ready.  You did not know.  The only items remaining to be discussed today are (1) when the corrected log will be ready; and (2) resolution of the e-mail/attachment problem (documents again produced out of order) from Weiss' last document production.

Your claims that we have not provided specific information about the deficiencies in the log are simply false.  Further, your accusation that I have been unable to explain how the information you are required to provide will assist us in challenging privilege is both untrue and diversionary.

    Dan

_____

**From:** BGoldberger@mwe.com [mailto:BGoldberger@mwe.com]
**Sent:** Friday, July 28, 2006 6:34 PM
**To:** Joel Beckman
**Cc:** Daniel J. Pasquarello; ELeibensperger@mwe.com; DJaffe@mwe.com
**Subject:** Re: Kotva

Joel--

Let's plan to talk at 10:00 a.m. on the 2nd about Kotva's discovery deficiencies.

With respect to today's phone calls, your email contains some factual inaccuracies.  You were not on the line for either phone call, or for any of the three phone calls that took place earlier this week.

On Monday afternoon, Dan asked me several questions about the privilege log and asked for a Rule 37.1 conference relating to the log.  I agreed to one on Tuesday afternoon at 2:00.  We had that conference, and continued discussions on Wednesday, during which Dan added some additional issues.  I did not agree to any particular deadline to complete the meet and confer process.

On Wednesday, Dan sent me an email saying, in part, that he would "plan on talking to [me] tomorrow about the remaining privilege log issues."  He did not call on Thursday.  On Friday morning, Dan left me a voicemail around 10:00 or 10:30.  In this voicemail, Dan raised another new issue.  I responded at 1:00, suggesting a 3:45 call.  When I did not hear from Dan at 3:45, I called and left him a voicemail.  He promptly returned my call and we spoke for approximately 20 minutes.  At the end of the 20 minutes, Dan said that he would need to check on some things, and would call me back before 5:00.

Dan called at 4:58.  I tried to conference in my paralegal, but was unsuccessful.  I then told Dan that I would not discuss details of the discovery disputes without someone else from the firm on the line in view of past instances where details of our discovery conferences have been mischaracterized or misrepresented in correspondence or to the court.  I suggested that we speak again Monday morning.  Dan agreed to a 10:00 a.m. call and asked me some questions that he wanted answered during that call.

I am not sure what you mean by the last sentence in your email, but there seem to me to be a number of areas where Dan and I could further narrow the issues in dispute and where your firm's efforts to narrow the disputes have been wholly lacking in any attempt to reveal specifics about your complaints about the revised privilege log.  In spite of this failure--and Dan's inability to explain how certain information or formatting he has requested will assist you in determining whether a document is or is not privileged--I remain willing to work with you and Dan to provide you with additional information and/or withdraw claims of privilege with respect to particular documents if that withdrawal is appropriate in the circumstances.

Are you cancelling the 10:00 a.m. call on Monday?

Benjamin A. Goldberger

McDermott Will & Emery LLP
28 State Street
Boston, MA 02109
t.  +1 617 535 4483
f.  +1 617 535 3800
e.  bgoldberger@mwe.com

"Joel Beckman" <jbeckman@nbparis.com>

07/28/2006 05:53 PM

To  <BGoldberger@mwe.com>

cc  "Daniel J. Pasquarello" <dpasquarello@nbparis.com>

Subject  Kotva

Ben:

In response to your letter of July 25th, I will agree to convene a meet and confer conference with you on August 2nd.   I am confident we will be able to resolve the issues in your letter.

As you know, you agreed to complete the meet and confer process concerning Weiss' deficient privilege log and missing attachments by this week.  You then waited to schedule a call until 3:45 today, only to cut the call short, with a promise to call again on Monday.  We have done our best to narrow the issues in dispute, and cannot wait any longer.

Joel



Joel G. Beckman
10 St. James Avenue, 16th Floor
Boston, MA  02116
Direct: (617) 778-9126
Fax:  (617) 778-9110

*************************************************************************************************
IRS Circular 230 Disclosure:  To comply with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained herein (including any attachments), unless specifically stated otherwise, is not intended or written to be used, and cannot be used, for the purposes of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter herein.

This message is a PRIVATE communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited.  Please notify the sender of the delivery error by replying to this message, and then delete it from your system.  Thank you.
*************************************************************************************************

10/18/2006

Please visit http://www.mwe.com/ for more information about our Firm.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IRS Circular 230 Disclosure:  To comply with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained herein (including any attachments), unless specifically stated otherwise, is not intended or written to be used, and cannot be used, for the purposes of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter herein.

_____

This message is a PRIVATE communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited.  Please notify the sender of the delivery error by replying to this message, and then delete it from your system.  Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Please visit http://www.mwe.com/ for more information about our Firm.

10/18/2006

## Daniel J. Pasquarello

**From:**  Daniel J. Pasquarello
**Sent:**  Monday, July 31, 2006 3:34 PM
**To:**  'BGoldberger@mwe.com'
**Cc:**  Joel Beckman
**Subject:** Kotva v. Weiss

Ben,

As you know, I sent you an e-mail this morning in response to your e-mail from Friday evening regarding the Rule 37.1 conferences.  When I told you this morning that I was sending you a written response, you proposed that we conduct our scheduled call after you read my e-mail, which I sent at 10:28 a.m.  At approximately 12:00 p.m., having not heard from you, I called you.  You told me that you had been preparing a written response to my e-mail, which in all likelihood, would obviate the need for a further call.  I asked when you would send that response.  Due to Ned Leibensperger's schedule, you advised me that I would receive the response either in 5 minutes or sometime early this afternoon.  It is now 3:30 p.m. and I still have not received your response.

Dan

Daniel J. Pasquarello
Nystrom Beckman & Paris LLP
10 St. James Avenue, 16th Floor
Boston, MA  02116
Direct: (617) 778-9104
Main: (617) 778-9100
Fax:  (617) 778-9110
dpasquarello@nbparis.com

**Georgiy Nikitin**

| | |
|---|---|
| From: | Georgiy Nikitin |
| Sent: | Tuesday, August 17, 2004 10:09 AM |
| To: | 'Vladimír Hoffmann'; 'richard.harazim@od-kotva.cz' |
| Cc: | Andrew Weiss |
| Subject: | RE: Kotva |



KotvaOffer
ug17-2004.pdf (26 .

Dear Mr. Harazim,

Attached, please, find the offer from Weiss Asset Management to sell the BGO's shares of Kotva.
We will be looking forward to your response.
Best regards,

Georgiy Nikitin, Ph.D.

Weiss Asset Management
tel. + 1 (617) 778-7725
fax + 1 (617) 778-7781



1

W0004223



# WEISS ASSET MANAGEMENT

**PRIVATE AND CONFIDENTIAL**

August 16th, 2004

To: Martin Benda
From: Andrew Weiss,
Weiss Asset Management

August 17, 2004

Dear Mr. Benda

Based on our previous correspondence and based on your request we herewith submit our counter-offer to sell you the shares of Kotva held by Brookdale Opportunity Fund (BGO).

Conditions of the offer:

1. We offer to sell the 82,781 shares of Kotva held by BGO for a purchase price of 131 million CZK, no additional obligations or restrictions are placed on either the buyer or seller.
2. This offer expires on August 31, 2004.

Sincerely yours,

Andrew Weiss

---

29 Commonwealth Avenue • Boston • Massachusetts • 02116
Phone: (617) 778-7780 • Fax: (617) 778-7781 • E-mail: info@weissasset.com

W0004224

**Georgiy Nikitin**

| | |
|---|---|
| **From:** | Richard Harazim [richard.harazim@od-kotva.cz] |
| **Sent:** | Tuesday, August 17, 2004 11:51 AM |
| **To:** | Georgiy Nikitin; Vladimir Hoffmann |
| **Cc:** | Andrew Weiss |
| **Subject:** | RE: Kotva |

Dear Mr. Nikitin

Thank you for your offer.

Unfortunatelly, your offer doesn't seem to deal with the lawsuits brought about by Balfindor and Gilroy against our company. Without resolving these and any other potential lawsuits against our company raised by BGO or by BGO controlled entities we won't be able to conclude any deal at all.

Should you reconsider your position we can return to the discussion about the purchase price for Kotva shares held by BGO.


Best regards


Richard Harazim

W0004225

**Georgiy Nikitin**

| | |
|---|---|
| **From:** | Georgiy Nikitin |
| **Sent:** | Wednesday, August 18, 2004 11:07 AM |
| **To:** | 'Richard Harazim'; Vladimir Hoffmann |
| **Cc:** | Andrew Weiss |
| **Subject:** | RE: Kotva |

Dear Mr. Harazim,

We are preparing another counter-offer, which would deal with the lawsuits brought regarding the ownership of Kotva, a.s. property. Andrew Weiss is currently on vacation. He will be back in the beginning of the next week and we will try to have the written offer ready then.
Best regards,
Georgiy

Georgiy Nikitin, Ph.D.

Weiss Asset Management
tel. + 1 (617) 778-7725
fax + 1 (617) 778-7781

W0004226

**Georgly Nikitin**

| | |
|---|---|
| **From:** | vlado1@volny.cz |
| **Sent:** | Monday, August 23, 2004 2:15 PM |
| **To:** | richard.harazim@od-kotva.cz |
| **Cc:** | Georgly Nikitin |
| **Subject:** | Nabídka |



Kotva+Offer+23-A
ug-04.pdf (76 ...

        Vážený pane Harazíme,

dle instrukcí pana Nikitina - zástupce prof. Weisse Vám přeposílám nabídku na prodej akcií
Kotva, a.s.

S pozdravem,

Vladimír Hoffmann.

--
Zrychlete si až 7x načítání www stránek a obrázků přes vytáčené připojení pomocí VOLNÝ
internet akcelerátoru. Stažení a používání je ZDARMA. http://akcelerator.volny.cz

1

W0004227



# WEISS ASSET MANAGEMENT

**PRIVATE AND CONFIDENTIAL**
Without Prejudice

August 23rd, 2004

To: Martin Benda, Richard Harazim
From: Andrew Weiss, Weiss Asset Management

Dear Mr. Benda and Mr. Harazim,

Based on our previous correspondence and based on your request we herewith submit our counter-offer to sell you 82,771 shares of Kotva, a.s.

Conditions of the offer:

1. We offer to sell you 82,771 shares of Kotva for a total consideration of 131 million CZK.
2. We will attempt to influence Gilroy to withdraw the complaint questioning ownership of assets by Kotva, a.s. Since we do not exert control over Gilroy and Balfindor or petitions submitted by them, we cannot guarantee a withdrawal of the complaint. The sale agreement shall be conditional on withdrawal of the existing lawsuit where Gilroy is the plaintiff.
3. We provide a guarantee that no legal or physical entities controlled by us will initiate attacks against the ownership or transfer of KOTVA Department Store.
4. This offer expires on August 31ˢᵗ.

Please, note that this is a non-binding offer, which will be subject to contract.
We will be looking forward to your reply.

Sincerely yours,
Andrew Weiss

Signed by Georgiy Nikitin on behalf of Andrew Weiss:

Georgiy Nikitin

---

29 Commonwealth Avenue • Boston • Massachusetts • 02116
Phone: (617) 778-7780 • Fax: (617) 778-7781 • E-mail: info@weissasset.com

W0004228

**Georgiy Nikitin**

| | |
|---|---|
| **From:** | Richard Harazim [richard.harazim@od-kotva.cz] |
| **Sent:** | Friday, August 27, 2004 7:51 AM |
| **To:** | Georgiy Nikitin |
| **Subject:** | Kotva shares |

Dear Mr. Nikitin

Thank you for your offer from 23.8.04. While we appreciate your offer and we are basically interested in buying the shares of Kotva from BGO we feel the following areas are problematic for us:

1. The purchase contract must be tied to lawsuits filed by Gilroy AND Balfindor, not only to Gilroy.

2. The purchase price is too high from several points of view. First of all, it is too high in general. It is much higher than the price on Stock exchange. Secondly, even if we disregarded this, we certainly wouldn't be able to sell the shares to another investor at the same price, which means we would have to decrease the share capital of Kotva. If it showed in the process of capital decrease that NAV is lower than the purchase price (the deal created a loss) - which is a certainty at the level suggested by you - we as a board would face risks that are not acceptable.

3. The process of acquiring more than 10 % of our own shares poses accounting and legal complications that must be consulted with our auditors and lawyers.

4. Due to the above we can't react as quickly as requested from us.

5. Mr. Benda who is in charge of this particular deal is leaving for a holiday and will not be back before Monday 13, September.

Therefore we suggest to prolong the negotiating period till the end of September.

Best regards

Richard Harazim

1

W0004229

**Georgiy Nikitin**

| | |
|---|---|
| From: | Andrew Weiss |
| Sent: | Tuesday, November 23, 2004 12:24 PM |
| To: | 'Richard Harazim' |
| Cc: | Andrew Weiss |
| Subject: | RE: Kotva |



Counter-offer
11-23-04.pdf (10...

Dear Mr. Harazim,

Attached please find our counter offer to sell shares in Kotva and Trend.

Andrew Weiss

1

W0004230

# WEISS ASSET MANAGEMENT

**PRIVATE AND CONFIDENTIAL**
Without Prejudice

November 23, 2004

To: Martin Benda, Richard Harazim
From: Andrew Weiss, Weiss Asset Management

Dear Mr. Benda and Mr. Harazim,

Based on our previous correspondence and based on your request we herewith submit our counter-offer to sell you all our holdings in Kotva, a.s. (82,782 shares or 11.92%) and Trend VIF (1,098,617 shares or 39.73%)

Conditions of the offer:

1. We offer to sell you 82,782 shares of Kotva and 1,098,617 shares of Trend for a total consideration of 295.75 million CZK (our computations are detailed in Appendix A).
2. We will attempt to influence Gilroy and Balfindor to withdraw the complaint questioning ownership of assets by Kotva, a.s. Since we do not exert control over Gilroy and Balfindor or petitions submitted by them, we cannot guarantee a withdrawal of the complaint. The sale agreement shall be conditional on withdrawal of the existing lawsuits where Gilroy and Balfindor are the plaintiffs.
3. We provide a guarantee that no legal or physical entities controlled by us will initiate litigation against the ownership or transfer of Kotva, a.s. shares, KOTVA Department Store, or Kotva subsidiaries.
4. This offer expires on December 10, 2004.

Please, note that this is a non-binding offer, which will be subject to contract.
I am looking forward to your reply. Please contact me directly.

Sincerely yours,

Andrew Weiss

29 Commonwealth Avenue • Boston • Massachusetts • 02116
Phone: (617) 778-7780 • Fax: (617) 778-7781 • E-mail: info@weissasset.com

W0004231

# Appendix A. Valuation of BGO holdings of Kotva and Trend

BGO holdings: 1,098,617 shares of Trend (39.73%) and 82,782 shares of Kotva (11.92%).

## Estimated value of Kotva:

<u>Assets</u> = CZK 1.7 billion (value of the Kotva Department Store building)
<u>Estimated Liabilities</u> = CZK 0.3 billion
Net Asset Value of Kotva = CZK 1.4 billion
**BGO's share of Kotva's NAV = CZK 167 million**

## Estimated value of Trend:

**Scenario 1:**
<u>Assets</u>:
Kotva shares held in Forminster and Melodia to be sold to Mr. Woolf: 277,036 shares (as per Paragraph 101 of London Court of International Arbitration Case No. 0250 decision that those shares legally belong to Trend) at CZK 1,350 per share (the option strike price from the agreement with Mr. Woolf) = CZK 373,998,600; receivable with 80% probability: CZK 283,198,880.
Other assets, including undisputed shares of Kotva and claim for 327 237 shares in Sokolovska Uhelna = CZK 35 million
<u>Estimated Liabilities</u> = CZK 45 million
Net Asset Value of Trend = CZK 273,198,880
**BGO's share of Trend's NAV = CZK 108.5 million**

**Scenario 2:**
<u>Assets</u>:
Penalty payable under Moffitt-Forminster agreement = CZK 350 million plus interest (10% per annum) = CZK 559 million.
Other assets, including undisputed shares of Kotva and claim for 327 237 shares in Sokolovska Uhelna = CZK 35 million
Total Assets = CZK 594 million
<u>Estimated Liabilities</u> = CZK 110 million (CZK 45 million as above plus CZK 65 million for Moffitt's claim) plus the CZK 109 million awarded by the London Court of International Arbitration Case No. 0250 decision.
Total Estimated Liabilities = CZK 219 million.
Net Asset Value of Trend = CZK 375 million
**BGO's share of Trend's NAV = CZK 149 million**

The total price for the assets is the value of Kotva shares plus the average of the Trend value under the two valuation scenarios = CZK 295.75 million

---

29 Commonwealth Avenue • Boston • Massachusetts • 02116
Phone: (617) 778-7780 • Fax: (617) 778-7781 • E-mail: info@weissasset.com

W0004232

**Georgly Nikitin**

| | |
|---|---|
| **From:** | Richard Harazim [richard.harazim@od-kotva.cz] |
| **Sent:** | Wednesday, December 01, 2004 10:32 AM |
| **To:** | Andrew Weiss |
| **Subject:** | RE: Kotva |

Dear Mr Weiss

Thank you for your email from 23.11.04.

We have studied your offer carefully. Unfortunately, we feel there are many factors that come into our decision making process and we need to discuss them with someone authorized to make decision on you part. The lack of such a person makes it impossible for us to assign a value to various scenarios and therefore we can't provide a clear answer to you offer.

We plan a week of very important negotiations with our Irish partners. These negotiations should establish the final frameworks of our relations. The exact dates are just under discussions. Would it be feasible for someone from your side to take part in these negotiations? The person we would have on mind, though, would need to be someone more than a messenger. In ideal case it would be yourself as we will need to consider various alternatives and we are sure there will be a necessity to make qualified decisions on the spot. This is a unique chance to put all relevant parties at one table and suggest a final scheme which would satisfy everybody.

Tentatively, we speak about next week as the week when we should meet. If you were interested and this proved to be of a too short notice for you to arrange your travel plans we can postpone the meeting by one week and meet during the week starting 13th of December as neither us nor the Irish have time preference when considering these two weeks. All we know is that we have to meet in order to make some important decisions and both our parties wish to make those decisions before the end of the year.

Please let me know as soon as possible whether you'd be interested in coming and if so what dates would be most convenient to you. It is our believe that it would help move things ahead if you decided to come.

Best regards

Richard Harazim

W0004233

**Georgiy Nikitin**

| | |
|---|---|
| **From:** | Andrew Weiss |
| **Sent:** | Wednesday, December 01, 2004 7:49 PM |
| **To:** | 'richard.harazim@od-kotva.cz' |
| **Cc:** | 'Ondrej Peterka'; Georgiy Nikitin; Eitan Milgram |
| **Subject:** | Kotva/Trend |

Dear Mr. Harazim,

It would be impractical for me personally to spend more than a few hours negotiating this matter. I found the last meeting at which I was present to have been unproductive. I don't understand why my physical presence would affect the value you would assign to various alternatives. My view is that valuations are a mathematical exercise, and I would need to do the arithmetic regardless of whether an authorized representative were present or not. The terms of the final agreement are a legal matter, and I would not agree to any terms without taking legal advice. My legal advisors and quantitative analysts would need to have time to evaluate any alternatives your group would present. You have seen our evaluation methodology, if you find flaws with our methodology please explain those flaws, if you wish to propose alternatives that would be mutually beneficial please set them out in writing. I would then have time to respond. Once we had agreed upon the numbers involved in a settlement I would be willing to give Mr. Peterka authority to represent our organization in meeting during which the final legal details were worked out, but I would expect that you would tell us who is representing Forminster and the Irish investors at the meeting and would show me what authority they have to represent the various parties. Of course Mr. Ondrej Peterka's attendance would be conditional on his availability, and I would have to approve any final agreement.

I will be traveling from December 9 through December 13, other members of my team will be available at that time.

I will be vacationing with my family starting December 19 and may not be available at that time - the end of December could be a difficult time to reach other members of our firm.

Sincerely yours,

Andrew Weiss,

President and CIO

Weiss Asset Management

Office 617 778 7780

Mobile 617 548 0580

2/7/2005

W0004234

**Georgiy Nikitin**

| | |
|---|---|
| **From:** | Richard Harazim [richard.harazim@od-kotva.cz] |
| **Sent:** | Friday, December 03, 2004 8:04 AM |
| **To:** | Andrew Weiss |
| **Subject:** | RE: Kotva/Trend |

Dear Mr Weiss

It is a pity you will not be able to come. We don't think that we face mere mathematical computations. The whole situation comprises of many other factors than just purely technical and we hoped we would have a chance to discuss them. As it stands, we understand that we will not utilise the unique opportunity of having all relevant parties at one table.

Under these circumstances and without clear answers to some of the questions we have and we wanted to discuss in person we won't be in a position to accept your offer by the 10th of December. As to further development we will wait for the meeting with Markland and its outcome. Only then we will be able to define our further steps.

Best regards

Richard Harazim

W0004235

**Georgiy Nikitin**

| | |
|---|---|
| **From:** | Andrew Weiss |
| **Sent:** | Friday, December 03, 2004 1:27 PM |
| **To:** | 'Richard Harazim' |
| **Cc:** | Georgiy Nikitin |
| **Subject:** | RE: Kotva/Trend |

Dear Mr. Harazim,
As I said without telling me the other issues in advance it would not be fruitful for me to participate in a meeting. I will be taveling
December 9-13.

Andrew Weiss
Office 617 778 7780

Mobile 617 548 0580

W0004236

**Georgiy Nikitin**

| | |
|---|---|
| **From:** | Georgiy Nikitin |
| **Sent:** | Tuesday, December 07, 2004 7:07 PM |
| **To:** | 'Richard Harazim'; Andrew Weiss |
| **Subject:** | RE: Kotva/Trend |

Dear Mr. Harazim,

I saw the message that you wrote to Mr. Weiss and was quite surprised by your statement that our valuation of Kotva property is wrong. Would it be possible for you to provide documentation showing this?
I would appreciate your reply.
Best regards,
Georgiy


Georgiy Nikitin, Ph.D.

Weiss Asset Management
tel. + 1 (617) 778-7725
fax + 1 (617) 778-7781

W0004237

**Georgly Nikitin**

| | |
|---|---|
| **From:** | Richard Harazim {richard.harazim@od-kotva.cz] |
| **Sent:** | Wednesday, December 08, 2004 1:57 AM |
| **To:** | Georgly Nikitin |
| **Subject:** | RE: Kotva/Trend |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Dear Mr. Nikitin

Of course we couldn't and that is the reason we can't resolve this over the email. We can't provide you with specific data because

1. This information is under confidentiality agreement
2. You as a sharehoder would obtain an insider information which might bear its consequences for both our parties.


regards


Richard Harazim

W0004238

**Georgiy Nikitin**

| | |
|---|---|
| **From:** | Georgiy Nikitin |
| **Sent:** | Wednesday, December 08, 2004 6:56 PM |
| **To:** | 'Richard Harazim' |
| **Cc:** | Andrew Weiss |
| **Subject:** | RE: Kotva/Trend |

Dear Mr. Harazim.

Andrew Weiss has left for the conference and will not be accessible until middle of the next week. I understand your concerns, but neither of the problems you site seem to be crucial. We are ready to sign a side confidentiality agreement. If you need. Also, we would not need any information that you would not disclose in a personal meeting.
The second issue is not crucial for us: we do not mind to be insiders. What kind of consequences do you think it might have for you? In order to move on this matter, I would like to suggest that you come back to us with your corrections to our valuation of Kotva and Trend shares. If you do that by the beginning of the next week, Professor Weiss should be able to analyze your response as soon as ne comes back and we will try to respond to you by the middle of the next week.

Sincerely yours,
Georgiy

Georgiy Nikitin, Ph.D.

Weiss Asset Management
tel. + 1 (617) 778-7725
fax + 1 (617) 778-7781

W0004239

**Georgiy Nikitin**

| | |
|---|---|
| **From:** | Richard Harazim [richard.harazim@od-kotva.cz] |
| **Sent:** | Wednesday, December 15, 2004 8:31 AM |
| **To:** | Georgiy Nikitin |
| **Subject:** | RE: Kotva/Trend |

Dear Mr. Nikitin

I am afraid I can't be more specific about the value of the building and about your assumptions used in the valuation in general. I expressed our concerns already and we still view them as serious. Also, as I stated before, we are not interested in the Trend stake you hold and therefore any discussions about your valuations of this stake are not beneficial.

Having all these constrainst on mind we repeatedly suggest that the only way forward is to meet in person and discuss these and other aspects so that layout to a final solution can be found during the meeting. Please let us know whether this is possible. We do not insist, of course, but it is true that we do not see how else we can find a solution. In other words, unless we manage to find some solution during the talks we will not be able to accept your offer.

We would appreciate your final position ASAP becasue we need to organize the dates for more parties and that can be sometimes difficult.


Best regards


Richard

W0004240

**Georgly Nikitin**

| | |
|---|---|
| **From:** | Georgiy Nikitin |
| **Sent:** | Wednesday, December 15, 2004 7:48 PM |
| **To:** | 'Richard Harazim' |
| **Cc:** | Ondrej Peterka; Andrew Weiss |
| **Subject:** | RE: Kotva/Trend |

Dear Mr. Harazim,

Andrew Weiss is leaving for vacation this Friday and much of the staff will be gone from Christmas until after the New Year. He told me to advise you that if you cannot give a written response to our latest offer or communicate a verbal response to Mr. Peterka, then further negotiations will have to wait until the New Year.

Sincerely yours,

Georgly

Georgly Nikitin, Ph.D.

Weiss Asset Management
tel. + 1 (617) 778-7725
fax + 1 (617) 778-7781

W0004241

**Georgiy Nikitin**

| | |
|---|---|
| **From:** | Andrew Weiss |
| **Sent:** | Thursday, January 06, 2005 11:12 AM |
| **To:** | 'Richard Harazim' |
| **Subject:** | RE: KT |

Dear Mr. Harazim,

KT is not controlled by Weiss Asset Management; however, if a satisfactory resolution of all other matters can be achieved, I would try to persuade KT to settle its lawsuits and I am highly confident that I would be successful in that endeavor. Thus, I do not expect that the KT lawsuit will impair the ability of the parties to achieve a successful agreement.

Andrew Weiss

---

**From:** Richard Harazim [mailto:richard.harazim@od-kotva.cz]
**Sent:** Tuesday, January 04, 2005 8:08 AM
**To:** Andrew Weiss
**Cc:** Georgiy Nikitin
**Subject:** KT

Dear Mr. Weiss

I was informed by Linklaters Prague today that they received a letter from Mr. Petarka putting them on notice that a new lawsuit was filed. As it uses exactly the same format, phrases and logic in general as the previous lawsuit filed on behalf of Gilroy we assume that KT belongs to your group, as well.

Please confirm whether or not KT's lawsuit is part of the deal offered by you on November 23, 04. As this is a completely new issue we would like to know what exactly each of the various factors represent.

Best regards

Richard Harazim

2/7/2005

W0004242

| Od: | "Vladimír Hoffmann" <vlado1@volny.cz> |
|---|---|
| Komu: | "Andrew Weiss" <aweiss@weissasset.com> |
| Kopie: | "Georgiy Nikitin" <georgiy@weissasset.com>; "Hynek Peroutka" <peroutka@cabinet.cz>; "Jiri Cerny" <cerny@cabinet.cz>; "Ladislav Chundela" <chundela@cabinet.cz>; "Ondrej Peterka" <peterka@cabinet.cz> |
| Odesláno: | 21. října 2004 17:29 |
| Připojit: | Memo BGO Oct 21, 2004.doc |
| Předmět: | Kotva/Trend |

Dear Andy,

Please find enclosed the Memorandum.

Best regards,

Vlado.

16.11.2004

K 0074



Confidential Memorandum to the board of the Brookdale Global Opportunity Fund
Prepared by: Vladimir Hoffmann
Prague, October 21, 2004

Dear Andy,

The purpose of this Memorandum is to summarize the latest developments in Kotva & Trend case to enable the Board of BGO to make informed decision.

<u>Negotiations, Price offers & Lawsuits</u>

In the fall of 2003 I was approached by Mr. Harazim, CEO of Kotva who offered CZK 20m for BGO's Kotva shares. We declined this offer as too low and we received an increased and firm offer from J&T Banka who acted as a broker for Kotva with the price of USD 1m (about CZK 26m). We declined this offer at the end of 2003.

In May 2004 you visited Prague and during our meeting with Messrs. Benda and Harazim we were told by Mr. Harazim that BGO's Kotva shares have no value, since they represent a minority interest and Kotva would never pay dividends or make any other distribution. Following this we have hired Peterka & Partners and initiated several lawsuits questioning the ownership of Kotva property and Kotva shares.

In August 2004 Mr. Benda offered CZK 75m for BGO's Kotva shares. The offer was conditional upon the withdrawal of all lawsuits filed by Gilroy and Balfindor. We have responded by offering BGO's Kotva shares for CZK 131m and to withdraw Gilroy's lawsuit (lawsuit against ownership of Kotva property). Mr. Benda responded rather vaguely that the price was too high and that they insist on withdrawal of all lawsuits, not only Gilroy's lawsuit. He also asked for more time since he was leaving for holiday and since he asked his lawyers to provide their legal opinion on Kotva buying its own shares.

During our meeting on Oct.18, 2004 Mr. Benda said in the presence of Mr. Peterka and myself that he would accept the price of CZK 131m provided that all lawsuits are withdrawn. I have emphasized that our offer was conditional only upon the withdrawal of Gilroy's lawsuit and that it has expired at the end of August 2004 anyway. Later, Messrs. Prestage – representative of the Irish investors and Harazim joined the meeting. Mr.Prestage said, that it should not be a problem for him to pay part of the money intended for the Kotva property directly to us for Kotva's shares.

<u>Valuation of Kotva property</u>

We were informed by Mr. Woolf that the price of the property that the Irish investors agreed to pay was approx CZK 1,5 billion. This was confirmed to me also by another party who is involved in the Czech real-estate market. The latest article published in Sunday Times on Oct.4[th], 2004 has the price at EUR 54m, or approx. CZK 1,7 billion. This price was quoted also in the latest article published in the Czech Business Weekly on Oct. 11th, 2004.

K 0075

Page 1 of 4

The same group of Irish investors has bought two neighbouring buildings to Kotva at Revolucni 1 and 3 for CZK 496m in public auction. The comparative valuation is in the following table:

| Property | Built up area | Additional Ground | Total Serviceability | Overground Floors | Underground Floors | Price (CZK '000) | Price per Total Serviceability (CZK/sqm) |
|---|---|---|---|---|---|---|---|
| Kotva[1] | 4,385 | 3,900 | 39,575 sqm[2] | 7 | 3 | 1,700m | 42,956 |
| | | | | | | 1,500m | 37,902 |
| Revolucni 1+3[3] | 2,800 | ? | 20,500 sqm | 8 | 3 | 496m | 24,195 |

The comparison shows that even at CZK 1,5 billion Kotva is valued relatively expensive (by 50%) compared to the neighbouring Revolucni 1 and 3.


Valuation of Kotva shares

We have estimated Kotva's liabilities, costs and taxes associated with the sale of the property at CZK 400m. The following table shows the **NAV of BGO's 11,9%** stake for the property price of CZK 1,5 and 1,7 billion.

| Price of the property (CZK '000) | Liabilities (CZK '000) | Total NAV (CZK '000) | NAV of BGO's stake of 11,9 % (CZK '000) |
|---|---|---|---|
| 1,500,000 | 400,000 | 1,100,000 | 130,900 |
| 1,700,000 | 400,000 | 1,300,000 | 154,700 |

The **alternative to the sale of Kotva shares is the pursuing of the lawsuits until the end**. In the best case scenario Trend would end up with 212,935 shares of Kotva – which represents 30,7%. The following table shows the "pursuing of the lawsuits scenario" under the following assumptions:

1. Lawsuits will take 5 years
2. We will win all the lawsuits
3. The associated legal and other costs will be CZK 5m per year
4. Trend with BGO and other shareholders will take over Kotva and pursue the sale of property which will take 1 year (sale and distribution)
5. The price of the property less costs and taxes will be CZK 1,5 billion and the NAV of Kotva will be 1,1 billion
6. The appropriate discount rate of this project is 35% due to its very high risk

---

[1] Source: Jones Lang Lasalle
[2] Does not include 368 underground parking places
[3] Source: Naxos

K 0076

| Year | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|
| Costs (CZK '000) | -5 000 | -5 000 | -5 000 | -5 000 | -5 000 | -5 000 |
| Sale of Kotva for CZK 1,5bln, NAV 1,1bln | | | | | | 1 100 000 |
| Distribution to BGO from Kotva | | | | | | 130 900 |
| Distribution to Trend from Kotva | | | | | | 337 700 |
| Distribution from Trend to BGO | | | | | | 139 470 |
| Total Cash Flow BGO | -5 000 | -5 000 | -5 000 | -5 000 | -5 000 | 265 370 |

| NPV @ 35% (CZK '000) | 32 738 |
|---|---|

Due to the costs, time involved and high risk the NPV of "pursuing lawsuits" is very low at
**CZK 32,738m.**

Risks

*Irish withdraw*
The first risk is that the Irish investors withdraw from the contract with Kotva. It is very
unlikely that Kotva would be able to find another investor who would pay CZK 1,5-1,7 bln.
given the legal status of the property. That would mean that Forminster will not be able and
willing to purchase BGO's shares.

*Bankruptcy*
The only posibility to "clean" the property completely is to put it into bankruptcy. Forminster
has used this method already at least on two ocasions: bankruptcy of Trend and bankruptcy of
Sprint. In both cases Forminster was able to install bankruptcy administrator friendly to them.
Forminster has also demonstrated the ability to create huge artificial receivables in the past
and they would very likely be by far the largest creditor of Kotva. High receivables in
combination with the sale of the Property, or Kotva Nemovitosti at depressed price would
mean zero or very low distribution to the shareholders.

*Damages*
During our last meeting Mr. Benda said that Kotva has financing secured from banks only
until the end of 2004. He said that the banks would not extend the credit if there is still lien on
the property resulting from the lawsuits. That would cause damage to Kotva. It is possible that
Forminster will try to sue us for damages resulting from this. Forminster might also secure
financing from its own sources, siphon profits from Kotva through high interest and at the
same time create the high receivable it needs to put Kotva to bankruptcy.

*Violence*
Up to now Forminster used only legal methods in negotiations. However it was not always the
case. The list of "unusual events" is quite extensive:

*13.6.1998 – CEO of Kotva Jindrich Zeleznik suddenly died at the age of 52*
*25.10.1998 – Chalet of Martin Benda exploded*
*27.10.1998 – Car of Bronislav Becka (CIH) exploded*
*1998 – Flow East representatives claimed they were threatened and spied*
*30.8.1999 - Explosion in the sixth floor of Kotva near the office of the board*
*Aug. 2000 – Investigator Blahoslav Kavka committed suicide*

K 0077

*March. 2001 – Prosecutor Vladislav Kusala resigned*
*2002 - Martin Razim, bankruptcy trustee of Trend resigned, privately claimed that he was*
*threatened*

Considering how much money is at stake for Forminster it is difficult to assess how they react if pushed to the corner.


Conclusion

Since the beginning of the negotiations Forminster has increased its offer **from CZK 20m to CZK 131m, or by 555%.** The price of CZK 131m represents zero, or near to zero discount to the NAV of Kotva. This is very extraordinary for this kind of non-transparent companies. The NPV of continuing the lawsuits is very low at approx **CZK 33m**. The risks involved are substantial.

Even if we drop the lawsuits against Kotva we would still be able to work on Trend case and we could initiate lawsuits for other property than Kotva – e.g. Sokolovska Uhelna. We might also sue former Trend directors for damages. Depending on the outcome of Flow East's and John Moffit's claims we might expect bankruptcy proceeds from Trend in the amount of **USD 1-2m** (even if Trend does not recover any additional assets) on top of the money received for Kotva shares.

Given the facts I recommend you to agree with Forminster on the price of CZK 131m or close.

I believe that if we do not bring this round of negotiations to the successful end we will not get another chance in forseeable future. To put my money where my mouth is I am willing to reduce my success fee by 30% - which would leave BGO with more money. This „voluntary reduction" is valid until the end of October 2004.


Best regards,

Vladimir Hoffmann.

**K 0078**

Weiss Asset Management
tel. + 1 (617) 778-7725
fax + 1 (617) 778-7781

-----Original Message-----
**From:** Richard Harazim [mailto:richard.harazim@od-kotva.cz]
**Sent:** Tuesday, December 07, 2004 11:39 AM
**To:** Andrew Weiss
**Subject:** RE: Kotva/Trend

Dear Mr. Weiss

The reason we feel a personal meeting is necessary is this: we strongly disagree with probably every single line of the valuation appendix to your offer. Let me go through just two examples:

Value of Kotva shares:

Assets: 1.7 billion (value of the department store) - wrong.
Estimated liabilities: 0.3 billion    - wrong

Both these assumptions are wrong and we can't see how we can detail explanation in an email correspondence. Further, other costs and expenses were totally omitted, thus rendering the valuation useless. On the other hand, a factor we are willing to take into account in our valuation was not included here and no value was assigned to it: the lawsuits of Gilroy and Balfindor. This mix of omitted factors that increase and decrease the value must be dealt with. In our opinion, it is not best to do so over the mail.

I could point out similar assumptions that we find as erroneous on the side of Trend's valuation but I will not. We don't intend to deal with your share in Trend. We - as the management of Kotva - strive to achieve just one goal and that is to be able to dispose freely with our assets. All other discussions should be aimed at other entities.

All of this brings us to the conclusion that the fastest way forward is to meet in person. Despite the nature of our last meeting we believe such a meeting could be useful. We wish to move forward even if it meant steps against our feelings and we will seek a solution that would enable us to move forward. If your attitude is the same then the result of our meeting can be commercially sound to both parties, regardless of emotions on either side.

Please consider our offer again and let me know if we should postpone the meeting with Markland so as you can take part in it or if we should definitely rule your participation out and meet without you.


Regards


Richard Harazim




-----Original Message-----



8/22/2005

WP0016813

UNOFFICIAL TRANSLATION

Heading: High State Prosecutor in Prague, Criminal Division, address

Date: In Prague, January 31, 2006

Address of Mr. Topinka

Dear Sir:

On the basis of your motion of October 24 and 25, 2005, Motion to Conduct Supervision of the Conduct of Municipal Prosecutor, the High State Prosecution Department conducted supervision of the conduct of the Municipal State Prosecution Department in Prague of the criminal case against Andrew Weiss and others registered under File No. 1 KZV 38/2005.

It was established on the basis of the review of the documents for the files to the necessary extent that the State Prosecutor's conduct on these criminal proceedings was in accordance with the law.

The resolution of the police division dated Feb. 3, 2005, CTS: PSP-4035/OHK-3-2004 is in accordance with the legal requirements and the background material supporting this resolution supports the suspicion that the accused persons committed acts which would constitute the crimes specified in the resolution. Therefore, there was no reason under the law for the State Prosecutor conducting supervision over the pretrial proceedings to suspend the decision of the police investigator.

For the sake of completeness, we point out that the unlawful conduct of the accused persons was to lie in the fact that they demanded of the representatives of the company the purchase of securities were inappropriately high priced under the threat of filing civil lawsuits which should have negative impact on the running and business intentions of this company. Therefore, the unlawfulness of their conduct does not consist in the mere filing of said civil lawsuits but on the fact that these lawsuits were intended to serve as an instrument of pressure with the intention to gain unlawful benefits from the sale of securities for inappropriately high price. Of course, the aim of further investigation will be to ascertain with the help of evidence gained procedurally whether the present suspicion expressed in the resolution for initiation of criminal proceedings will be confirmed or rejected.

As to your objection consisting of the claim that the accused persons were to demand certain acts of conduct upon a legal person and that the alleged threats of causing other serious harm was directed also towards a legal person, the protected interest of the crime of blackmail couldn't have been violated, we do not share your view.

Our laws do not expressly define the concept of a legal person, but they are based on the fact that legal persons are subjects under the law, different from natural persons, they are artificially created by law and vested with the capability to have rights and obligations with the capability to perform legal and illegal acts and with the responsibilities in legal relations. A legal person may perform legal acts only through its bodies or the acts may be performed by its representative. As far as the decision-making of a legal person is concerned, it is done by its statutory bodies, usually consisting of natural persons.

BST99 1491525-1 072198 0011

UNOFFICIAL TRANSLATION

Therefore, we may infer that in case such natural persons will be acting on behalf of a legal person, meaning especially its statutory bodies, they are acting as the legal person. Therefore, this is a certain legal construct which is based on the concept of the very act of legal persons in legal relations. Otherwise, we would not speak of legal or illegal acts of legal persons at all because these acts are expressions of will and a legal person as such does not have any will and cannot express it.

From the above, we may conclude that it is possible to force a legal person to make a certain decision; for example, by forcing natural persons authorized to act in the name of the legal person to make decisions as its statutory bodies. We may not exclude the possibility that natural persons acting on behalf of the legal person will be forced by unlawful means, for example, physical force, threat of physical force, or threat of other serious harm to act to the detriment of this legal person or in violation of its interests which they are obliged to represent and defend. The threat may then objectively be directed against towards legal person, but at the same time it has a practical impact on persons who are forced to act on behalf of legal persons in violation of interests. Therefore, we cannot exclude the possibility of perpetrators at the above-mentioned act pursuant to the legal provisions concerning the crime of blackmail.

As to your procedural objections, we declare that the municipal state prosecutor in Prague made no mistake when they did not make a decision on your motion of September 22, 2005, as a complaint of an accused person against the resolution of the police on initiation of criminal proceedings. In the present phase of criminal proceedings, when the resolution on initiation of criminal proceedings has not been delivered to Andrew Weiss yet, the said person is not in the procedural position of an accused and therefore he doesn't have the right of an accused person.

Therefore, we may conclude from the above that a legal representative of a person who is to become an accused may not be vested with the right of a defense counsel pursuant to Article 41 of the Criminal Procedure Code. Thus, no flaws or errors were detected in the conduct of the Municipal State Prosecution Department in Prague. Your motion for review is hereby rejected as unjustified. At the same time, I'm obliged to inform you pursuant to Article 1, section 4, chapter 23/1994, concerning your motion, that further motions of identical content will not be reviewed and the Petitioner will not be informed of their delivery.

Signed "High State Prosecutor's Office".
JUDr. Vladimir Vanicek

Secretary signed because the original is in the "file", and Topinka received only a copy.

BST99 1491525-1 072198 0011

WP0013771

*(Translator's note: Rectangular, borderless stamp:)*
**POLICE OF THE CZECH REPUBLIC**
Prague Administration
*Criminal Police and Investigation Services*
*Financial Crimes Department*
**140 21 Prague 4, Kongresová 2**

*(Translator's note: Rectangular, borderless stamp:)*
**June 23, 2006**
*Illegible Initials*

Prague, June 14, 2006

Criminal Case File: PSP-4035/OHK-3-2004

Number of Pages: 2

Vladyka & Kubica
Law Offices
Revoluční 3
110 00 Prague 1

**The accused, Vladimír Hoffmann (date of birth: October 30, 1965), the accused, Edita Šimková (date of birth: July 27, 1968) and the suspect, Andrew Weiss (date of birth: January 2, 1947)** — *response to the aggrieved party's request for the release of audio recordings and the request for an opinion regarding the supply of data that is part of a criminal case file.*

First of all, I would like to note that the criminal investigation into the subject case is being handled by this department under the above-referenced criminal case file number. The case file number, which was mentioned in a statement dated April 3, 2006 – i.e. PSP-4150/OHK-3-2005 – was noted in that statement by mistake and the Police Commissioner would like to take this opportunity to apologize for the error.

With respect to your filing dated June 9, 2006, which was received by this office of the Czech Police on June 14, 2006, I would once again like to reiterate that we cannot respond to your request for the release of audio recordings as already indicated in our letter dated April 3, 2006. The primary reason for this rejection is the concern that the release of these materials might interfere with an investigation and also possibly, influence the individuals that are yet to be brought in for questioning.

The suspect Andrew Weiss is permanently out of the country and, for that reason, he has still not been served the ruling on the initiation of the criminal prosecution (pursuant to the provisions of Section 160, Subsection 1 of the Penal Code). With respect to the above, I would like to add that we have so far been unsuccessful in our attempts to serve this ruling with the use of our international legal assistance channels because the US side has failed to standup to its commitments, to which it is bound under an international legal assistance treaty (the US has been failing to meet these obligations for over a year now). This is what is holding back the progress with the preparatory proceedings and the investigation process. Also, Andrew Weiss still has the status of a 'suspect' in this case and, as such, he has no right to have access to the contents of the criminal case file – even if such access should be through his attorneys.

Pursuant to the provisions of Section 65, Subsection 1 of Act No. 141/1961 Coll. on judicial criminal proceedings (Penal Code), as last amended, only the accused party, the aggrieved party and an involved party and their legal counsel and proxies can be given access to the case files. They also have the right to make excerpts and take notes from the contents of these files and to make copies of the entire files (or a part thereof) at their own expense.

K 6560

To this, I would like to further add that the term 'involved party' is carefully defined under the provisions of Section 42, Subsection 1 of the Penal Code – notwithstanding, Andrew Weiss doesn't qualify for this status in this case. Thus, for the above reasons, he currently only has the status of being a 'suspect' in the matter.

Also, I would like to refer to the provisions of Section 65, Subsection 2 of the Penal Code, according to which, a state prosecutor or the police authorities participating in the preparatory proceedings may deny the right of access to a case file and the other associated rights, as discussed under paragraph 1, should they have a legitimate reason for doing so. The police commissioner believes that without any doubt a possible interference with the investigatory process and the possible influencing of witnesses definitely qualify as such reasons. At the same time, the police commissioner would like to point out that there is the option of having this process and the severity of the reasons, due to which these rights have been denied, re-examined by the supervising state prosecutor.

Until Andrew Weiss accepts the decision on the initiation of the criminal prosecution, it will not be possible to obtain and process the necessary evidence – and specifically, to question important witnesses in the case. In the current situation, we cannot allow the suspect, Andrew Weiss, to access the case file or to gain access to the requested audio recordings. Furthermore, the ability to access these audio recordings has also been denied to Mr. V. Hoffmann and Ms. E. Šimková, who have already been indicted in the case. Their request to access these materials was denied for a single reason and that reason was the fact that the suspect, Andrew Weiss, has so far failed to accept the decision on the initiation of the criminal proceedings. As I have already noted above, allowing Andrew Weiss to access the criminal case file and its contents would create the possible risk of tampering with the investigatory process and the influencing of the witnesses who have not yet been questioned – an outcome that is simply unacceptable. According to the current knowledge of the Czech Police, Andrew Weiss has already been attempting to interfere with the investigation of this criminal case – specifically, when it comes to the serving of the aforementioned decision on the initiation of the criminal proceedings (the indictment notice), something that your client is aware of. These facts are currently being reviewed.

The release to your clients of the information contained in the criminal case file and the copies of the related audio recordings, and subsequently, through them and the US courts, to the suspect Andrew Weiss, would only be possible if Andrew Weiss agreed to accept – in person – the service of a decision on the initiation of the criminal prosecution (indictment notice). Subsequently, in accordance with the penal code, it would be necessary to complete the required procedural tasks and the questioning of witnesses.

Due to the above-described reasons, at this time and under the current status of the case, the release of any information that is part of the case file (including the audio recordings referred to in your request) is absolutely out of the question. The release of such information might tamper with the investigation of the criminal activities in which the indicted parties (Hoffmann, Šimková) and the suspect Andrew Weiss were allegedly involved and the release of these materials would effectively allow them to escape the criminal investigation.

Finally, I would like to note that should it become necessary, the US courts can request a response or an opinion in the matter from the authorities that are involved in this criminal investigation by using the available channels for international legal assistance.

Tel.: 974 826 759

Capt. Pavel Nevtípil
*Illegible Signature*
Police Commissioner

cc.: Dagmar Máchová – State Prosecutor with the State Prosecutor's Office for the City of Prague.

K 6561