UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KOTVA A.S., ) Civil Action No. 05-10679-RCL
v. )
WEISS, ET AL. )

ORDER OF SPECIAL MASTER
November 17, 2006

After review of the parties' submissions on the Orders to Show Cause issued on September 29, 2006, and after hearing via teleconference held on November 13, 2006, at which all parties were represented, it is hereby ORDERED:

**1. Kotva's Motion for Sanctions and to Compel, filed August 2, 2006**

**A. Preparation of Privilege Logs and Invocation of Privilege**

After review of the parties' memoranda and their *in camera* submissions of documents pursuant to the Order of September 29, 2006 ["September 29 Order"], I find that the invocations of privilege and preparation of the privilege logs, while not in my judgment error-free, were prepared by both parties in good faith and mindful of the applicable principles of law. Preparation of the logs was an onerous task, particularly for the Weiss defendants, and I find that there was substantial basis for counsels' positions even where I disagreed with them. Most of the documents which I ordered to be produced after *in camera* review were cover emails which were of marginal, if any, relevance. Others were portions of documents that contained both business and legal advice; it required careful hairsplitting to untangle the legal and business advice in a given communication. Reasonable minds might disagree with the judgments Weiss's counsel made in invoking the privilege and with my decisions with respect to any particular document.

This extends to documents 1039 and 1100, which relate to the course of negotiations between Benda and Weiss, and Hoffman's advice with respect to these negotiations. Hoffman's advice interweaves legal and business advice, and the potential outcomes of litigation weigh into the negotiation strategy. These documents might reasonably be characterized either as business or legal communications. In truth, they are both, not unlike what I surmise is the vast majority of legal communications concerning business affairs that are routinely withheld as privileged. Whether on balance the documents should be protected is, without a question, a close call. I do not see evidence that either party has tried to hide the ball without substantial basis or that Weiss's revision of the log in response to my May 26, 2006 Order was contumacious or lacked substantial basis. That Kotva successfully pushed for additional disclosures does not warrant the imposition of sanctions where Weiss's compliance with the Order was substantially complete and generally justified. As I have noted before, Kotva's insistence that each and every document withheld on the basis of privilege must identify an attorney and a lawsuit or other matter to which the advice pertains is rejected. The attorney-client and work product privileges serve to protect communications concerning legal advice sought, to be sought, or obtained where no attorney at all may be in the chain of transmission of the specific document at issue. Accordingly, no sanctions will be awarded with respect to the motion filed by Kotva challenging Weiss's invocation of privilege or preparation of the privilege log. Each party shall bear its own costs and fees with respect to Kotva's challenge to the privilege log.

### B. Exhibits F and G to Weiss's Memorandum

The Order of September 29 ordered Kotva to explain why the attachments to the emails submitted as Exhibits F and G to Weiss's Memorandum in Opposition were neither logged nor

produced. Kotva's response, contained in its memorandum entitled Kotva's Response to the Special Master's September 29, 2006 Order with respect to the Issue of Subject Matter Waiver, is that Kotva "obviously produced these documents [Exhibits F and G] to Weiss" because the documents bear Kotva Bates numbers. Response, 9. Kotva states that Weiss is well aware that there were no attachments to the emails. Kotva further responds that the documents referred to in the emails were produced, specifically Kotva's response to the Gilroy complaint (K6147-6152).

Weiss counters that the emails plainly had attachments.

It is uncontested that Kotva produced the documents identified as Exhibits F (K1975-1976) and G (K2241). That is not the issue. The issue is whether Kotva improperly withheld or failed to log documents referred to in those emails. Exhibit F consists of an email from Bryan Wilson to Richard Harazim dated August 19, 2004. An earlier message in the chain reproduced in the document, from Harazim to Wilson, is dated August 17. In it, Harazim states: "Bryan This is the submission we intend to file." And below that is a message from Jan Nekola to Richard Harazim dated August 17, 2004. Plainly, the document referred to as the "submission" was sent to Wilson because his message refers to its contents.

Kotva represents that the document referred to in the August 17 emails was produced as K6147-6152. Obviously, the documents were not numbered consecutive to or even near the August 19 email; it is difficult to see how Weiss would have been made aware of the connection between the two sets of documents produced thousands of pages apart from each other. Moreover, Kotva offers no explanation for the failure to produce the original transmittal emails reproduced in Exhibit F.

Exhibit G (K2241-42) consists of an email chain spanning September 10, 2004 to October

11, 2004. On the earlier date, Jan Nekola sent to Harazim a message regarding Gilroy, which is not included in the email trail (the body of the email seems to contain only the standard system warning about confidentiality, in English and apparently in Czech). On October 11, 2004, Harazim forwarded the message to Bryan Wilson with the message "This is the defense." While Kotva, in its Response, asserts that there was no attachment and that the email refers to the same document as Exhibit F refers to, that claim is made without benefit of affidavit and does not ring true. Why would Harazim send the same document to Wilson in October that he sent him in August? I am not satisfied that the two emails refer to the same document and I am not satisfied with Kotva's response. Kotva is ORDERED to supplement its response with appropriate factual support, meaning an affidavit from a person with knowledge of the asserted facts, within two weeks of the date of this Order, and to pay Weiss $600 in costs and fees in connection with my review of the issue and Weiss's memorandum in response to Kotva's argument.

**C. Subject Matter Waiver**

In the September 29 Order, I listed four reasons why I concluded that sanctions should be imposed against Kotva with respect to its argument that Weiss's "disclosure" of Exhibits G, H, I, J, L, and M effects a broad subject matter waiver as to vitiate the privilege with respect to all communications on the same subjects. Kotva, through its counsel, submitted a Response consisting of a memorandum of law and attached exhibits. Although the Response makes numerous assertions of fact, no affidavits of either Kotva or counsel attesting to such facts were submitted in response to the Order.

Kotva's Response consists of the following arguments: (1) the Special Master's Order "provides a window into a tendency in this case to apply a double standard of leniency to Weiss,

but penalty to Kotva when it comes to discovery obligations" (Response, 2); (2) there was no intention to conceal the fact that Exhibits I and J had been attached to the complaint as Exhibits D and F; (3) *XYZ Corp. v. United States (In re Keeper of the Records)*, 348 F.3d 16 (1st Cir. 2003), is not controlling authority which Kotva was obligated to cite; (4) Rule 37.1 did not apply to the question of subject matter waiver; and (5) Kotva's general objection relating to inadvertent disclosure presumed reasonable precaution pursuant to *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 290 F.R.D. 287, 292 (D. Mass. 2000).

The first argument does not pertain to the merits of the issue and will not be addressed herein. If Kotva believes in good faith that the Orders reflect bias, its argument is best raised in a motion for reconsideration directed to the District Court.

As to the second, whether or not there was a conscious intention to deceive, the fact is that Kotva's counsel knew and should have brought to my attention that the documents were already part of the public record at the time Weiss disclosed them to third parties. Had Kotva done so, it would have been free to argue the proposition that Weiss's subsequent disclosure effected a subject-matter waiver. Instead, Kotva led me to believe *sub silentio* that the documents had been private at the time Weiss disclosed them to the State Department. Moreover, its claim that there was no intention to deceive is belied by the fact that Kotva did not attach to its motion copies of Exhibit D and F to the complaint, but rather the Bates-stamped copies Weiss produced in discovery, minus the cover sheets which were sequentially numbered and which identified the documents as exhibits to the complaint.

As to the argument that *XYZ* is not controlling authority, I disagree. Had Kotva argued that it simply missed *XYZ* in preparing to file its motion with respect to subject matter waiver, the

failure might have been excused, but to justify the failure to cite it on the ground that it is not controlling warrants censure. The case plainly establishes the controlling principle that no subject matter waiver is effected when the disclosure is extra-judicial. Whether or not Kotva could properly advance what I consider to be the frivolous argument that disclosure to the State Department is not "extra-judicial," Kotva was required to acknowledge the test established in *XYZ Corp.* and face up to it. Instead, it ignored it as inapposite and continues to take that position in its Response. Finally, Kotva failed to reveal that the disclosure to the State Department was not in the context of arguing the merits of Weiss's position in the litigation, but rather to demonstrate that the Czech police had invaded Weiss's attorney-client privilege by disclosing to Kotva documents it had seized and which Kotva then made public.

Kotva's justification for not raising this issue in a Rule 37.1 conference is rejected. Kotva relies on a provision of the May 26 Order which relates to disputes about the scope of the privilege as it pertains to the Weiss-Hoffmann communications. Moreover, there is nothing in that provision that operates to exempt even motions related to the Weiss-Hoffmann communications from the requirements of Rule 37.1. Nothing is to be gained by circumventing Rule 37.1 and I never suggested that any category of motions lay outside its scope.

Kotva argues that it need not have mentioned that it had taken the position in its own discovery responses that inadvertent disclosure of privileged documents would not effect a subject matter waiver. The argument is premised on the notion, raised for the first time in response to the order to show cause, that its general objection presumed that reasonable precautions had been taken to prevent disclosure.

There is no basis for presuming any such condition, which is nowhere stated or implied in

the general objection, which reads: "In the event that Kotva produces any privileged document, its production is inadvertent and does not constitute a waiver of privilege." It defies logic that counsel would have written such an objection, designed to protect its client, intending to limit such protection to a standard already provided by case law. That would make the objection nothing more than surplusage. Accordingly, I find that the argument is a *post hoc* justification for the failure to bring the issue to the Court's attention.

Even if Kotva had intended to limit its own protection for inadvertent disclosures, it was still necessary for counsel to address the issue and then to argue, if it could, that the objection did not effect an estoppel.[1]

For all these reasons, singly and in combination, I conclude that there was no substantial basis for counsel's moving to compel production of privileged documents on the basis of Weiss's inadvertent disclosure of Exhibits G and H. Accordingly, I impose sanctions on Nystrom Beckman & Paris LLP, as counsel to Kotva, in the amount of $ 3,000,[2] payable to the Weiss defendants, through their counsel, as reasonable reimbursement of the defendants' costs and expenses incurred in connection with the subject matter waiver issue.

**II. Kotva's Motion to Compel, filed August 11, 2006**

In the September 29 Order, I ordered the parties to submit affidavits concerning fees and expenses and to show cause why such fees and costs should not be apportioned between them

---

1 The issue of estoppel might have been usefully fleshed out in a Rule 37.1 conference.

2 I have made an allocation of Weiss's attorneys' fees incurred with respect to Kotva's Motion for Sanctions and to Compel, as set forth in the Declaration of Edward P. Leibensperger, and the cost of my addressing the issue.

with respect to Kotva's Motion to Compel. Kotva's submission seeks, in essence, reconsideration of my rulings on *in camera* review under the crime-fraud exception (Kotva's Memorandum Regarding Apportionment of Fees and Costs, 8-15); argues that the September 29 Order "draws erroneous conclusions about Czech law and the Czech criminal file" (*Id.* 15-16); and argues that it was improper to treat the identities of the BIP investors as confidential information in the absence of a motion for a protective order. Again, Kotva asserts that the September 29 Order "evinces a double standard." *Id.* at 16. Counsel to Kotva submitted a declaration attesting to the fees incurred in advancing the motions to compel and for sanctions.

I see no basis to reconsider the crime-fraud issue in the context of this show-cause proceeding related to sanctions. Kotva's contention appears to be that if it has pleaded evidence of extortion, then the attorney-client privilege must yield. That is not so, any more than a company accused of criminal fraud foregoes the privilege. The communications with counsel must be shown to have furthered the extortion. Kotva's confusion between evidence of extortion and evidence that privileged communications were in furtherance of the pattern of racketeering undermines its analysis. I repeat: if an extortionate act occurred, if a pattern of extortionate acts occurred, there should be evidence of the extortionate demands, and evidence that the demands were unwarranted. And Kotva says it has ample evidence of such. It is difficult to see, then, why it is necessary to invade the attorney-client privilege to fish for additional evidence. That is the "piling on" to which the Order refers. Yet such evidence is not enough, in my view, to justify invading the privilege. Even a slam-dunk extortion case does not justify, by itself, invading the attorney-client privilege. There has to be some indication that counsel was involved in the extortion, counseled the extortion, aided it. And, so, there are simultaneously considerations of

both piling on and insufficiency which militate against invading the privilege. And, as I have stated before, I am particularly mindful that the entity which seeks disclosure in this case is hardly disinterested. Rather, Kotva is the target of the litigation at issue and would stand to benefit from the disclosure of attorney-client communications quite apart from whether they evidence extortion. Finally, I weigh certain practical considerations. The cost of *in camera* review is substantial in light of the volume of documents at issue. Kotva has had ample opportunity to delve into Weiss's business strategy in pursing the litigation at issue and has had extraordinary access to privileged material by virtue of the actions of the Czech police in turning over to it seized material. I do not see why it is necessary to invade the privilege to fish for more. Enough is enough. Finally, the criteria to be used in winnowing problematic communications from legitimate litigation strategy are, practically speaking, impossible to articulate. For all these reasons, I decline to reconsider the issue.[3]

Having devoted most of its Response to an issue not pertinent to the order to show cause, Kotva offers very little defense on the question of sanctions. Its claim that the September 29 Order misconstrues Czech law is specious since the Order never purports to characterize Czech law. The Order was based on the Federal Rules of Civil Procedure, not Czech law. If Kotva has rights to the Weiss criminal file under Czech law, then it should enforce such rights in a Czech forum.

As for the BIP Investors, I did not rule only on the basis of the confidentiality of their

---

[3] I have assumed throughout that abusive litigation could in principle constitute the basis for a civil RICO action. That assumption has been called into question by cases cited by Weiss, specifically, *Raney v. Allstate Insurance Co.*, 370 F.3d 1086 (11th Cir. 2004); *Deck v. Engineered Laminates*, 349 F.3d 1253 (10th Cir. 2003); *I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265 (8th Cir. 1984), as well as two unpublished decisions of the First Circuit.

identity, but also on the attenuated relevance and undue burden of the request. I noted that the request for the identification of family members was overkill and bordered on abusive.

Incorporating my findings as set forth in the September 29 Order and for the reasons set forth in the Weiss Parties' Memorandum in Response to Order to Show Cause, I adopt the proposal of the Weiss defendants and shift to Kotva Weiss's costs and expenses attributable to five of the seven issues raised in the Motion to Compel. Accordingly, Kotva is to pay 71% of Weiss's attorney's fees and costs associated with defending the Motion to Compel, which amounts to $5200. I also order Kotva to reimburse Weiss $3000 in Special Master's fees, the portion which I allocate to resolution of the Motion to Compel.

**III. Weiss's Motion to Compel Production of Documents and Answers to Interrogatories by Richard Harazim and for Sanctions, filed August 29, 2006**

Richard Harazim's negotiation for an extension of time to respond to discovery followed by a belated claim that the document requests were void *ab initio* smacks of gamesmanship outside the rules of fair play. Surely the question of the validity of the document request could have been raised before negotiating an extension of time in which to respond. If Mr. Harazim and his counsel believed that the document request was void *ab initio*, why did they negotiate an extension of time to respond? I can think of only one reason: to delay resolution of the issue.

Quite apart from whether or not it was reasonable to interpret Local Rule 26.1(c) as exempting Mr. Harazim entirely from the burden of producing documents because Kotva had already responded to two sets of requests, and quite apart from the issue of whether the interrogatories were objectionable as overbroad had they been responded to in time, stands the question of the manner and means Mr. Harazim and his counsel employed to raise the issues. The responses were filed late; there was no good excuse for failing to raise the Rule 26.1(c) issue in

advance of the due date; and it is simply not permissible to refuse to answer interrogatories on the grounds that the questions are better answered in a deposition.

Mr. Harazim's position on the Local Rules is colorable, although not, in my view, a reasonable one. While Mr. Harazim repeatedly refers to the "plain language" of Local Rule 26.1(c), it is in fact not very plain and case law makes clear that a purpose of the rule is to prevent a party from enduring multiple sets of discovery served by numerous opposing parties, all with the same interest. When he interposed the objection to responding to the request for documents, Mr. Harazim had not already been subjected to multiple document requests served by multiple parties with a common interest; indeed, he had responded to none.[4] I am aware of no case which interprets the Local Rule as shielding a party from responding to a single document request. Finally, whether or not Mr. Harazim was out of the office on the due date, which is asserted without benefit of affidavit, objections to the document request were filed and signed by counsel, not Mr. Harazim.

Mr. Harazim's complaint that it would be "inconsistent" to impose sanctions against him for taking the position he and his counsel did in this case is simply baseless. I have not been presented with a motion to impose sanctions on Weiss for the same conduct and am aware of none. No conduct of Weiss of which I am aware is comparable to Mr. Harazim's demonstration of disregard for the rules applicable to discovery.

I defer the question of sanctions on this Motion pending resolution of the Motion for Sanctions and to Compel Production of Documents and Answers to Interrogatories by Richard

---

4 While he claims that his is the same position Weiss has taken, he is in error. Weiss, unlike Mr. Harazim, had itself already responded to two sets of documents requests (including the initial disclosure), and Weiss, unlike Mr. Harazim, did in fact respond to the third.

Harazim, filed by Weiss on November 7, 2006.

So Ordered this 17th day of November, 2006.

/s/ Jeanne M. Kempthorne

______________________________

Special Master