UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ANDREW WEISS and WEISS ASSET | ) |
| MANAGEMENT, LLC, | ) |
| | ) |
| Defendants. | ) |
| ————————————————— | ) C.A. No. 05-10679-RCL |
| | ) |
| ANDREW WEISS, WEISS ASSET | ) |
| MANAGEMENT LLC, K T, INC. and CVF | ) |
| INVESTMENTS, LTD., | ) |
| | ) |
| Counterclaim-plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| KOTVA a.s., MARTIN BENDA, RICHARD | ) |
| HARAZIM, FORMINSTER ENTERPRISES, | ) |
| LTD., SPV CO and JOHN DOES 1–5, | ) |
| | ) |
| Counterclaim-defendants. | ) |
| | ) |

## WEISS PARTIES' MEMORANDUM IN OPPOSITION
## TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

I.    **INTRODUCTION**

Notwithstanding the Court's repeated orders to "produce forthwith all documents that concern or evidence the receipt and holding of the proceeds of the sale of the Kotva Department Store," Kotva continues to withhold the identities of entities to which it has disbursed sale proceeds.  May 26, 2006 Order at 12.  This information is directly relevant to the central issues in this case: whether Kotva and Richard Harazim or Weiss Asset Management and Andrew

Weiss abused process.  The potential for future harm to Kotva from revealing these identities to the Defendants is insufficient to except this information from discovery.

## II.    **PROCEDURAL HISTORY**

On May 26, 2006, the Special Master ordered Kotva to "produce forthwith all documents that concern or evidence the receipt and holding of the proceeds of the sale of the Kotva Department Store."  May 26, 2006 Order at 12.  The Weiss Parties had requested these documents in August 2005 and the Court had ordered these documents produced in January 2006.  On June 2, 2006, Kotva sent a letter requesting "clarification" of this portion of the May 26, 2006 Order.  "While Kotva frame[d] its request as seeking clarification, Kotva apparently s[ought] to have the requirement deleted from the Order."  June 12, 2006 Order at 1.  The Special Master rejected this request, writing:

> The documents, which are plainly relevant, indeed central to the allegations in this case, were ordered produced in January 2006, five months ago. At this juncture, it is disingenuous of Kotva to claim it has not had sufficient process with respect to this issue. There was no need for Weiss to file another motion to compel. Kotva had already agreed to make production subject to its objections and upon condition of entry of a confidentiality order. And, the Special Master had ordered Kotva to produce the documents and had established a procedure for handling claims of business confidentiality. Finally, Weiss did indeed raise the issue of the non-production of documents evidencing the disbursement of the sale proceeds in its submissions on the discovery motions which were disposed of in the May 26 Order. Indeed, there has been more than enough process about the production of these documents which were requested ten months ago.

June 12, 2006 Order at 1–2.

On the same day that the Special Master issued the June 12, 2006, Kotva filed an objection to the May 26, 2006 Order.  On June 26, 2006, the Weiss Parties filed a response to that Objection.  On June 28, 2006, Kotva filed a motion for leave to file a reply in support of its Objection.  In that reply memorandum, Kotva raised the same arguments about relevance that it presses in its present motion for a protective order, dedicating an entire section of its brief to the

argument that "THE JUNE 14, 2006 ORDER RENDERS THE REQUEST FOR DISBURSEMENT DOCUMENTS IRRELEVANT." Kotva argued:

> [O]n June 14, 2006, the Court dismissed Forminster, SPV CO, Martin Benda, and all claims but one (Count I - abuse of process) against Richard Harazim ("Order"). Documents relating to "disbursements" of $65 million in sale proceeds were only relevant to the Defendants' allegation that the "Forminster Group"— which does not include Kotva—had conspired to loot Kotva's assets. By dismissing the alleged "Forminster Group," the looting claim has been eliminated. Accordingly, Kotva respectfully submits that it should not be required to produce irrelevant documents and that the Discovery Master's May 26, 2006 Order should be modified.

Kotva's Proposed Supp. to Its Obj. to the Special Master's Discovery Order in View of the Court's Order Granting Motions to Dismiss at 1–4 (Document No. 121).

Later that day, the Court denied Kotva's Objection, entering an Order reading "Electronic ORDER finding as moot [117] Objections filed by Kotva a.s., to Discovery Master's order of May 26, 2006 regarding motions to compel." However, Kotva did not supplement its document production in response to the Court's June 28, 2006 Order. On July 25, 2006, counsel for the Weiss Parties sent a letter to counsel for Kotva addressing this failure to produce documents, among other issues. The letter reads, in pertinent part:

> Notwithstanding the Court's Order denying your Objection to the Discovery Master's May 26, 2006 Order as moot, you have failed to produce up to date bank account statements for SPV CO and documents concerning what happened to the sales proceeds that were distributed from SPV CO to other entities in the Forminster/Kotva Group and/or third parties. Up to date financial information for SPV CO is particularly important now that Kotva seeks to claim damages based on an alleged diminution of value in its indirect interest in SPV CO.

Letter from Benjamin A. Goldberger to Daniel J. Pasquarello (July 25, 2006) at 1 (attached hereto as Exhibit A).

Three days later, the Court issued a second Order with respect to Kotva's Objection to the May 26, 2006 Order. That Order reads: "Electronic ORDER entered. Over Ruling [117]

3

Objection filed by Kotva a.s., as to the Discovery Master's May 26, 2006 Order Regarding Motions to Compel."

After a series of agreed-upon extensions for Kotva to produce documents, Kotva first raised the issue of confidential business information in a telephone conference on October 31, 2006. Kotva raised this issue only after counsel for the Weiss Parties requested a 37.1 conference concerning issues relating to Kotva's document production, including improper redactions. *See* Letter from Benjamin A. Goldberger to Daniel J. Pasquarello (October 25, 2006) (attached hereto as Exhibit B). Kotva's motion also includes proposed redactions to a contract relating to a restaurant investment, apparently executed on May 26, 2006, that Kotva did not identify until after the October 31, 2006 37.1 conference. *Compare* Exhibit C at 10 *with* Kotva's Motion at 7.[1] The other redactions at issue appear in documents that were apparently executed on January 10, 2006, March 20, 2006 and July 24, 2006. Despite knowing of these confidentiality issues for months, Kotva waited to raise the issue until October 31, 2006 and, after notification on November 1, 2006 that the Weiss Parties did not agree to Kotva's proposed redactions, Kotva did not move for a protective order until November 14, 2006.

## III.    ARGUMENT

Kotva raises two arguments in support of its motion for a protective order. Neither is persuasive.

### A.    The Redacted Information is Relevant to the Central Issues in This Case

First, Kotva argues that the disposition of the Department Store sale proceeds is no longer relevant in view of the Court's June 14, 2006 Order. However, as illustrated above, Kotva made this exact same argument in June of this year and the Court properly rejected it. Accounting for

---

[1] Prior to filing the Motion, counsel for Kotva called counsel for the Weiss Parties to discuss these redactions and completed the 37.1 process with respect to these redactions.

the disposition of the proceeds is directly relevant to the dueling abuse of process claims that are at the core of this case:

- Kotva contends that Professor Weiss and Weiss Asset Management abused Czech civil process by filing litigation in order to "blackmail" Kotva. Professor Weiss counters that he authorized the filing of litigation in order to prevent the looting of Kotva's assets and their transfer to entities and individuals affiliated with the Forminster Group to the detriment of Kotva's minority shareholders.

- Professor Weiss and Weiss Asset Management contend that Kotva and Richard Harazim abused Czech criminal process and U.S. civil process by initiating criminal proceedings and this case in order to obtain an unfair advantage over Professor Weiss in their efforts to coerce Weiss to abandon his investors' claims in the Czech courts so that the Forminster Group could loot Kotva's assets in relative peace. Kotva and Mr. Harazim counter that they took the steps they did in response to Professor Weiss's filing of lawsuits that allegedly damaged Kotva.

Thus, the identities of the individuals and entities to whom the Department Store sales proceeds are being transferred is directly relevant to the central issues in this case. If the Forminster Group is looting Kotva's assets, it is less likely that Professor Weiss abused process and more likely that Mr. Harazim, through the Kotva corporate shell, abused process. *See* FED. R. EVID. 401 (defining relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). As the information meets the relevancy test for admission at trial, it meets the even broader relevancy test for discovery. Counsel for the Weiss Parties repeatedly attempted to explain this to counsel for Kotva during the 37.1 process, apparently unsuccessfully. *See* Kotva's Motion at 6 n.7 (noting that "Weiss's counsel also suggested that the documents may somehow be relevant to *Kotva's* abuse of process claim, though it was not made clear how").

The fact that proceeds have been disbursed in the form of loans or other "investments" does not diminish the relevance of the recipients of the proceeds. Making "unfortunate" investments or extending loans that are never repaid are classic methods of tunneling assets. *See*

*generally* Andrew Weiss & Georgiy Nikitin, *Effects of Ownership by Investment Funds on the Performance of Czech Firms, in* DESIGNING FINANCIAL SYSTEMS IN TRANSITION ECONOMIES 187 (Anna Meyendorff & Anjan V. Thakor eds. 2002) (citing, among others, Jan Veverka, *Current Aspects of the Czech Capital Market*, (Ministry of Finance of the Czech Republic Working Paper 1997)).

During the 37.1 conference, counsel for Kotva suggested that they might allay any concerns over these disbursements by providing an affidavit that the counterparties to the contracts at issue are not affiliated with Forminster.  Counsel for the Weiss Parties reminded counsel for Kotva that Mr. Harazim had stated under oath that he had exhausted the knowledge of every person at Kotva and was unable to determine who owned Forminster.  *See* Supplemental Interrogatory Response (attached hereto as Exhibit D).   Nevertheless, Kotva offered the following assurance from Mr. Harazim:

> None of the [counterparties] described above is Forminster Enterprises Ltd. ("FEL").  As I previously testified, I do not know the identity of the "beneficial owners" of FEL.  None of the [counterparties] described above, however, is owned by, controlled by, or affiliated with FEL.

Harazim Decl. ¶ 8.

Mr. Harazim has disavowed all knowledge of Forminster's present-day owners and claims to no longer be a representative of the company.   Either Mr. Harazim has misled the Court with respect to his knowledge about Forminster, or his statement that the counterparties who have received Department Store sales proceeds are not affiliated with Forminster lacks any foundation.

Additionally, in response to the Weiss Defendants' Motion for Judgment on the Pleadings, which is still pending, Kotva for the first time claimed damages resulting from the diminution in value of its partnership interest in a company that owns shares in SPV CO. Controlling First Circuit precedent holds that this theory of damages is not available to Kotva—it

lacks standing to claim damages suffered by another company even if that results in a diminution in value of its investment. *Diva's Inc. v. City of Bangor*, 411 F.3d 30, 42 (1st Cir. 2005). Nevertheless, so long as Kotva holds on to this damages theory, the Weiss Defendants are entitled to discovery establishing exactly how and why the value of SPV CO as a company has been diminished, through disbursements of Department Store sales proceeds or otherwise. For this same reason, Kotva's contention that it need not produce documents regarding transactions that do not relate to Department Store Sales proceeds, *see* Kotva's Motion at 8, is incorrect.

### B.    <u>Confidentiality Concerns Do Not Justify Withholding the Redacted Information</u>

Second, Kotva argues that the Court should create an exception and exempt the identities of counterparties from discovery because they are confidential commercial information. However, Kotva cannot meet *its* burden of demonstrating the "good cause" required for any protective order. In *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786–87 (3d Cir. 1994), the Third Circuit wrote:

> Good cause is established on a showing that disclosure will work <u>a clearly defined and serious injury</u> to the party seeking closure. <u>The injury must be shown with specificity.</u> Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning do not support a good cause showing. <u>The burden</u> of justifying the confidentiality of each and every document sought to be covered by a protective order <u>remains on the party seeking the order.</u>

*Id.* at 786–87 & n.17 (internal quotation marks and citations omitted; emphasis added).

The Weiss Parties' request for the identities of the counterparties to these contracts is not at all analogous to Kotva's requests for the identities of Weiss's investors. With respect to Weiss's investors, what was relevant is what Weiss told them about the underlying events, not who they are. With respect to Kotva's counterparties, who they are is at the center of this case. Accordingly, Kotva has failed to show good cause.

Moreover, even if the Court accepts Mr. Harazim's conclusory statements about fears of future harm should the identities of the counterparties be disclosed, the Court can prevent any such harm by designating the redacted information as confidential information to be used solely in this proceeding or parallel proceedings in the Czech Republic.[2]  As demonstrated above, the identities of the counterparties to these transactions are directly relevant to the central issues in this case.  In view of the importance of this information, a total bar on discovering this information is not warranted.  As the Supreme Court has noted, "orders forbidding any disclosure of trade secrets or confidential information are rare.  More commonly, the trial court will enter a protective order restricting disclosure to counsel or to the parties." *Federal Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 362 n.24 (1979).  "The need for the information is ordinarily held paramount but reasonable protective measures are supplied to minimize the effect on the party making the disclosure."  8 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 2043, at 565 (2d ed. 1994).

## IV.    <u>CONCLUSION</u>

For the above reasons, the Court should deny Kotva's Motion for a Protective Order, or, in the alternative, order disclosure of the redacted information with restrictions on its use in accordance with Rule 26(c)(7).

---

[2] Judges in this District have allowed use of confidential discovery in parallel proceedings, including parallel proceedings in other countries. *See Baker v. Liggett Group, Inc.*, 132 F.R.D. 123 (D. Mass. 1990) (allowing use of confidential discovery in parallel suits by other plaintiffs against cigarette manufacturers); *Pharmachemie, B.V. v. Pharmacia, Inc.*, C.A. No. 95-40085-NMG, 1998 U.S. Dist. LEXIS 2192, at *4–*6 (D. Mass. Jan. 30, 1998) (allowing use of confidential discovery in a related foreign patent proceeding).

Respectfully Submitted,

ANDREW WEISS and WEISS ASSET
MANAGEMENT LLC

By their attorneys,


/s/ Benjamin A. Goldberger
Edward P. Leibensperger (BBO# 292620)
Benjamin A. Goldberger (BBO# 654357)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts  02109-1775
(617) 535-4000

Dated: November 29, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system and any attachments will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 29, 2006.

/s/ Benjamin A. Goldberger
Benjamin A. Goldberger

BST99 1524057-4.072198.0012

# McDermott
# Will & Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington. D C

Benjamin A Goldberger
Associate
bgoldberger@mwe com
617 535 4483

July 25, 2006

BY ELECTRONIC MAIL AND REGULAR MAIL

Daniel Pasquarello, Esq.
Nystrom Beckman & Paris LLP
10 St. James Ave., 16th Floor
Boston, MA  02116

Re:    Kotva a.s. v. Andrew Weiss et al., C.A. No. 05-10679-RCL

Dear Dan:

This is to follow up on a number of deficiencies in Kotva's discovery obligations.  They are:

- Notwithstanding the Court's Order denying your Objection to the Discovery Master's May 26, 2006 Order as moot, you have failed to produce up to date bank account statements for SPV CO and documents concerning what happened to the sales proceeds that were distributed from SPV CO to other entities in the Forminster/Kotva Group and/or third parties.  Up to date financial information for SPV CO is particularly important now that Kotva seeks to claim damages based on an alleged diminution of value in its indirect interest in SPV CO.

- Kotva has not produced or identified any additional meeting minutes since I raised this issue—for a second time—in my June 9, 2006 letter.  The current production appears to have significant gaps.  Please identify, by bates number, all meeting minutes produced to date and supplement the production as required.  Kotva is now seeking discovery relating to Howard Golden's service on Kotva's board and shareholder meetings that took place around that time. Accordingly, Kotva must identify or produce, for it and its subsidiaries, additional minutes for Board and stockholder meetings that took place then in addition to the missing minutes for more recent meetings.

- Kotva has yet to update its response to Interrogatory Number 4 of the First Set of Interrogatories ("For each count in the Complaint, state the basis for Kotva's claim.").  At a minimum, we are entitled to know how Kotva claims it has been damaged, the amount of any such damages, and the basis for Kotva's claim that it is entitled to recover for alleged damage to SPV CO.

U.S. practice conducted through McDermott Will & Emery LLP.

28 State Street  Boston. Massachusetts  02109-1775    Telephone: 617 535 4000    Facsimile: 617.535.3800    www.mwe.com

Daniel J. Pasquarello
July 25, 2006
Page 2

- Kotva has not produced any correspondence with members of the media or documents concerning such correspondence. Please produce all such correspondence responsive to Request Number 2 of the Second Set of Requests for Production, as well as any other communications or documents concerning communications with third parties that you have been withholding.

- Kotva's privilege log, as supplemented, does not identify a single communication to which Richard Harazim is not a party. The log also does not identify a single communication authored by Mr. Harazim. Moreover, you have logged only four communications relating to the Gilroy lawsuit, and no communications with Petr Toman, who appeared as counsel in the lawsuit. Please provide us with a *complete* log of all privileged communications as required by the Discovery Master's May 26, 2006 Order.

- Kotva has yet to produce any business cards in response to Request Numbers 25 and 26 in the Second Set of Document Requests.

Please let me know, by Friday July 28, 2006, whether you will provide us with the requested documents and information by August 10, 2006. If you will not provide us with the requested documents and information, please propose a time for a 37.1 conference on August 2 or August 3.

Truly,

Benjamin A. Goldberger

cc:     Edward P. Leibensperger
        Joel G. Beckman

BST99 1510733-1 072198 0012

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington D C

Benjamin A Goldberger
Associate
bgoldberger@mwe com
617 535 4483

October 25, 2006

BY ELECTRONIC MAIL AND REGULAR MAIL

Daniel J. Pasquarello
Nystrom Beckman & Paris LLP
10 St. James Ave., 16th Floor
Boston, MA  02116

Re:    <u>Kotva a.s. v. Andrew Weiss et al.</u>, C.A. No. 05-10679-RCL

Dear Dan:

I write regarding Kotva's most recent document production.  On May 26, 2006, the Discovery Master ordered Kotva to "produce forthwith all documents that concern or evidence the receipt and holding of the proceeds of the sale of the Kotva Department Store, including documents within Kotva's possession or control which describe disbursements by SPV CO of the proceeds." We are entitled to all such documents, and not merely the documents that Kotva finds convenient to produce.  To the extent that disbursements were made to other Kotva related companies, we are entitled to receive the documents showing where the money went, how it is held, whether it has been expended by the recipient company, and for what and to whom.  When will you make a full production?

By way of example, on October 20, 2006, Kotva produced document K7534.  This document evidences disbursements of what appear to be department store sales proceeds totaling just under 700,000,000 CZK during the period March 24, 2006 to June 14, 2006.  The disbursements are described as "cash out."  Kotva has failed to produce any documents that explain where this cash went.

Moreover, it appears that Kotva has improperly redacted information other than account numbers from the documents it did produce.  *See, e.g.*, K7304–K7305.  Did Kotva redact documents with something other than black ink and no obvious indicator that a document has been redacted? What is this redacted information?

Daniel J. Pasquarello
October 25, 2006
Page 2


We request *unredacted* copies of all documents that you have been ordered to produce.  We also
request a 37.1 conference on these issues as soon as possible.

Truly,

Benjamin A. Goldberger

cc:     Edward P. Leibensperger
        Joel G. Beckman
BST99 1520705-1 072198 0012

# SMLOUVA
# O PŘEVODU
# CENNÝCH PAPÍRŮ

*uzavřená v souladu*
*s ustanoveními § 13 a násl.*
*zákona č. 591/1992 Sb., o cenných papírech, ve znění pozdějších předpisů*
*mezi následujícími smluvními stranami:*



**(dále uváděn pouze jako „Převodce")**

*a*

## SPV CO. LIMITED
Agiou Pavlou, 15, Ledra House, Agios Andrea, P.C. 1105,
Nicosia, Kyperská republika
Zastoupená ředitelem společnosti, kterým je
Marek Kolíbal, Veveří 61, Brno, Česká republika

**(dále uváděna pouze jako „Nabyvatel")**

(dále uváděni též jako **„smluvní strany"** nebo jednotlivě též **„smluvní strana"**)

K7937



# I.
## *Úvodní prohlášení*

1. *Smluvní strany* prohlašují, že nejsou úpadci ani dlužníky v řízení o konkursu a vyrovnání a ani návrh na prohlášení konkursu u nich nebyl zamítnut pro nedostatek majetku, a to bez ohledu na to, zda jsou tyto skutečnosti zapsány do obchodního či jiného registru.

2. *Smluvní strany*, resp. jejich zástupci prohlašují, že jsou oprávněni vstupovat do právních vztahů, že jsou oprávněni činit veškeré právní úkony, které jsou předmětem této smlouvy, a že jsou k nim plně způsobilí.

3. *Převodce* prohlašuje, že je majitelem *Akcií* a že je s nimi oprávněn disponovat ve smyslu a pro účely této *Smlouvy*. *Převodce* dále prohlašuje, že k *Akciím* neváznou žádná práva třetích osob.

4. *Převodce* prohlašuje, že *Akcie* jsou volně obchodovatelné a nejsou zatíženy žádnými závazky ani omezeními, které by bránily jejich obchodovatelnosti, zejména že nejsou předmětem zástavního práva či fiduciárního převodu práva podle § 553 občanského zákoníku a že v tomto stavu zůstanou až do momentu převodu vlastnictví podle této smlouvy.

5. *Převodce* prohlašuje, že podle stanov ████ jsou podle ustanovení § 156 odst. 4 obchodního zákoníku *Akcie* převoditelné se souhlasem představenstva společnosti. Převodce prohlašuje, že představenstvo ████ v tomto smyslu udělilo souhlas s převodem *Akcií* dle této smlouvy, přičemž zápis z jednání představenstva je přílohou č. 1 této *Smlouvy*.

6. *Převodce* prohlašuje, že žádná samostatně převoditelná práva spojená s akciemi nebyly předmětem smluvního převodu a že tato práva jsou součástí práv souvisejícího s Akciemi. Jedná o tato práva:
   - právo na vyplacení dividendy,
   - přednostní právo na upisování akcií a vyměnitelných a prioritních dluhopisů a
   - právo na vyplacení podílu na likvidačním zůstatku

7. *Smluvní strany* si vzájemně odpovídají za škody, které by jim vznikly v důsledku nesprávnosti těchto prohlášení.



## II.
## *Definice*

1.  ***Akcie*** pro účely této smlouvy znamená, akcie, kterými je tvořen základní kapitál ▮▮ o následující specifikaci:
    **Název emitenta:** ▮▮▮▮▮▮▮▮▮▮▮▮▮

    | | |
    |---|---|
    | **Počet akcií:** | **40 ks** |
    | **Jmenovitá hodnota** | **100.000,- Kč** (slovy: *jedno sto tisíc korun českých*) |
    | **Podoba akcií** | **listinná** |
    | **Forma akcií** | na jméno |
    | **Čísla akcií** | ▮▮▮▮▮▮ |

2.  ***Důvěrné informace*** pro účely této smlouvy znamená veškeré údaje, informace a obchodní sdělení, účetní, marketingové, finanční, technické, právní či jiné povahy týkající se ▮▮, poskytnuté či zpřístupněné *Nabyvateli* přímo nebo nepřímo v rámci *DD* či v souvislosti s ním bez ohledu na skutečnost, v jaké formě a jakým způsobem jsou sděleny či zachyceny, a bez ohledu na skutečnost, zda tyto údaje, informace či sdělení byly jednotlivě označeny jako tajné nebo důvěrné. Pro účely této smlouvy se důvěrné informace považují za obchodní tajemství ve smyslu ustanovení § 17 zákona č. 513/1991 Sb., obchodní zákoník, ve znění pozdějších předpisů.

3.  ▮▮▮ pro účely této smlouvy znamená obchodní společnost ▮▮▮▮ ▮▮▮▮ sídlem ▮▮▮▮▮▮▮▮▮▮ Česká republika, IČ ▮▮▮▮, zapsaná v obchodním rejstříku vedeném ▮▮▮ ▮▮▮▮ oddíl ▮, vložka ▮▮.

4.  ***DD*** pro účely této smlouvy znamená Due Diligence mající charakter právního, účetního, daňového a obchodního auditu, popř. ověření stavu ▮▮ a jejího postavení na trhu.

5.  ***Smlouva*** pro účely této smlouvy znamená ustanovení této smlouvy včetně ustanovení jejich příloh či dodatků.

6.  ***Splátkový kalendář*** pro účely této smlouvy znamená přehled splátek kupní ceny obsahující výši každé dílčí splátky, její splatnost a platební údaje. *Splátkový kalendář* je přílohou č. 2 této *smlouvy*.

7.  ***Svěřenská smlouva*** pro účely této smlouvy znamená smlouva o svěřenství, kterou současně s podpisem této *Smlouvy* uzavřeli *Nabyvatel*, *Převodce* a *Správce* a jejímž předmětem je úprava podmínek správy *Akcií* jejich vydávání *Nabyvateli* a dále pak správa finančních prostředků placených *Nabyvatelem* z titulu kupní ceny a podmínky vydávání těchto finančních prostředků *Převodci*.

8.  ***Správce*** pro účely této smlouvy znamená Mgr. ▮▮▮▮▮▮ advokát v ▮▮▮▮▮▮, zapsaný na seznamu advokátů České advokátní komory pod číslem ▮▮, který je smluvní stranou *Svěřenské smlouvy*.

K7939

### III.
### *Předmět smlouvy*

1.  Předmětem této smlouvy je úplatný převod *Akcií*, jakožto i úprava vztahů s tím spojených.

2.  *Převodce* tímto převádí do výlučného vlastnictví *Nabyvatele Akcie*, spolu s veškerými právy k těmto *Akciím*, a *Nabyvatel* je tímto kupuje a přijímá do svého výlučného vlastnictví a zavazuje se *Převodci* zaplatit kupní cenu v souladu s touto *Smlouvou*.

### IV.
### *Kupní cena*

1.  Za převod *Akcií* je *Nabyvatel* povinen *Převodci* zaplatit kupní cenu stanovenou dohodou ve výši 250.000,-- Kč za jednu *Akcii*, celkem za 40 ks *Akcií* tedy:

# = 10.000.000,- Kč
### *(slovy: deset miliónů korun českých).*

2.  *Smluvní strany* se dohodly, že kupní cena bude *Převodci* placena prostřednictvím *Správce* za podmínek a v souladu se *Svěřenskou* smlouvou, a to bezhotovostním převodem na účet *Správce*.

3.  *Smluvní strany* se dohodly, že *Nabyvatel* je oprávněn splácet kupní cenu nad rámec dohodnutých splátek mimořádnou splátkou, kterou je převodce povinen přijmout. Mimořádnou splátkou není nijak dotčena povinnost *Nabyvatele* splácet dohodnuté splátky dle *Splátkového* kalendáře.

### V.
### *Nabytí vlastnického práva k Akciím a jejich předání*

1.  Vlastnické právo k *Akciím* přechází na *Nabyvatele* předáním *Akcií* opatřených řádným rubopisem. V rubopisu uvede *Převodce* firmu a sídlo *Nabyvatele*. Akcie budou *Nabyvateli* předány *Správcem* za podmínek níže uvedených a specifikovaných ve *Svěřenské smlouvě*.

2.  *Smluvní strany* se dohodly, že převodce je povinen složit při podpisu této smlouvy *Akcie* do správy *Správci*, který je v souladu se *Svěřenskou smlouvou* vydá *Nabyvateli* tak, že vždy vydá takový počet akcií, který odpovídá splátce kupní ceny tak, že 1 *Akcie* bude vydána vždy oproti splátce ve výši odpovídající kupní ceně za jednu *Akcii*, přičemž v případě, že splátka kupní ceny bude vyšší než kupní cena za jednu *Akcii* započítává se částka přesahující kupní cenu za jednu *Akcii* na další kupní cenu jedné *Akcie*.

K7940



## VI.
### *Zápis do knihy akcionářů*

1.  K účinnosti převodu *Akcií* vůči společnosti ▆▆▆ se vyžaduje zápis o změně v osobě akcionáře v seznamu akcionářů, vedeném ▆▆▆. Za tímto účelem se *Smluvní strany* dohodly, že o každém vydání *Akcie* či *Akcií Správcem Nabyvateli* v souladu a za podmínek *Svěřenské smlouvy* informuje *Správce* bez zbytečného odkladu *Převodce* a současně i představenstvo ▆▆▆, které tento zápis o změně v osobě akcionáře v seznamu akcionářů bezodkladně provede.

## VII.
### *Reporting*

1.  *Smluvní strany* se dohodly, že *Prodávající* se zavazuje zajistit, aby ▆▆▆, resp. statutární orgán ▆▆▆ vypracovával, předkládal a zasílal *Kupujícímu* následující výkazy, přehledy a komentáře, které *Kupující* využije výhradně pro účely a potřeby konsolidace svých účetních výstupů, plánování hospodářské činnosti a výkaznictví:
    a) Roční účetní závěrka
       - Rozvaha
       - Výkaz zisku a ztrát
       - Cash flow
       - Výkaz o stavu a pohybu fondů
       - Příloha k roční účetní závěrce v rozsahu § 39 Vyhlášky č.500/2002 Sb. provádějící Zákon o účetnictví Konsolidovaná roční účetní závěrka - v rozsahu údajů dle Části páté Vyhlášky

       s tím, že uvedené dokumenty bude ▆▆▆ předkládat nejpozději do 31.3. roku následujícího po ukončení ročního účetního období

    b) Čtvrtletní zprávy o hospodářské situaci ▆▆▆ v rozsahu:
       - Účetní výkazy Rozvaha a Výkaz zisku a ztrát
       - Operativní cash flow příjmů a vydání po jednotlivých měsících
       - Rozklad příjmů a výdajů podle předmětu činnosti
       - Rozklad specifických nákladových položek
       - Přehled pohledávek v časovém režimu do 30, 90 a 120 dnů po lhůtě splatnosti s bilanční vazbou na výkaz Rozvaha
       - Přehled závazků v časovém režimu do 30, 90 a 120 dnů po lhůtě splatnosti s bilanční vazbou na výkaz rozvaha; Uvedené údaje budou vykazovány za celou společnost a jednotlivá střediska - (samostatně hospodařící prodejny, restaurace apod.)
       - Komentář obsahující stručné a výstižné informace o hospodářské činnosti ▆▆▆, navrhovaná opatření k odstranění zjištěných nedostatků a odchylek.

       s tím, že uvedené dokumenty bude ▆▆▆ předkládat nejpozději do 30. dne následujícího měsíce po ukončení čtvrtletí.

K7941



c) <u>Plán hospodářské činnosti</u> na roční období v členění do měsíčních období v rozsahu údajů uvedených ve výkaze Rozvaha, Výkaz zisku a ztrát a operativní cash flow s tím, že tento plán bude ████ předkládat do 15.2. ročního plánovacího období.

d) <u>Přehled o uvažovaných aktivitách</u>, skládající se z těchto výkazů:
   - o Nákup a prodej majetku
   - o Investiční činnost
   - o Propagace a reklama
   - o Pracovníci
   - o Organizace – střediska
   - o Podnikatelské záměry s vyčíslením efektivnosti do výnosů a finančními nároky do nákladů a vydání.

## VIII.
### *Due Delligence, povinnosti mlčenlivosti*

1. *Převodce* jakožto majoritní akcionář ████ a předseda představenstva ████ se zavazuje, že *Nabyvateli* umožní provedení *DD* v ████ a jejích provozovnách, resp. i provozovnách, kapitálově propojených společností či ovládaných (dceřiné společnosti) a za tímto účelem předloží *Nabyvateli* veškerou obchodní, účetní a právní dokumentaci ████ jakožto i veškerou další dokumentaci dle požadavku *Nabyvatele*.

2. *Nabyvatel* se zavazuje zachovávat mlčenlivost o *Důvěrných informacích* a dodržovat dále uvedená pravidla pro nakládání s těmito informacemi.

3. *Nabyvatel* se zejména zavazuje, že neposkytne, nezpřístupní či jakkoliv neumožní získat *Důvěrné informace* jakékoliv třetí osobě, s výjimkou případů předvídaných níže v této smlouvě a s výjimkou případů, kdy poskytnutí takových informací vyžadují příslušné právní předpisy nebo na základě a v mezích právních předpisů příslušný orgán veřejné správy či soud; v takovém případě se *Nabyvatel* zavazuje bez zbytečného odkladu informovat *Převodce* o rozsahu a povaze informací, které byl či bude povinen sdělit příslušným orgánům či jiným subjektům. *Nabyvatel* je dále povinen učinit veškerá opatření, která od něj lze rozumně požadovat, aby nedošlo k vyzrazení *Důvěrných informací* a aby bylo zamezeno možnosti neoprávněného přístupu k jakýmkoli *Důvěrným informacím* nebo využití takových informací třetí osobou, zejména pak zajistí, aby všichni zaměstnanci *Nabyvatele*, externí poradci, společníci, osoby v rámci koncernu, zmocněnci nebo zástupci a další osoby spolupracující s *Nabyvatelem*, které by mohly přijít či přijdou do styku s *Důvěrnými informacemi*, s nimi nakládali v souladu s touto smlouvou.

4. V případě, že *Nabyvatel* zjistí, že došlo nebo může dojít k prozrazení, resp. získání *Důvěrných informací* třetí osobou, zavazuje se neprodleně informovat o této skutečnosti *Převodce* a podniknout veškeré kroky potřebné k odvrácení vzniku škody nebo ke zmírnění škody již vzniklé.

K7942



5.  *Nabyvatel* se zavazuje, že žádným způsobem nevyužije *Důvěrné informace* ve vztahu ke klientům, zákazníkům či obchodním partnerům ███, o nichž je *Nabyvateli* známo, že jsou klienty, zákazníky či obchodními partnery ███, zejména, s výlučným nebo s částečným využitím *Důvěrných informací* nebo na jejich základě, nevstoupí do obchodního vztahu s klientem, zákazníkem nebo obchodním partnerem ███ a/nebo se individuálně neobrátí na žádného klienta, zákazníka nebo obchodního partnera ███ s obchodní nabídkou a/nebo nevstoupí s klientem, zákazníkem nebo obchodním partnerem ███ do jakéhokoli individuálního jednání o uzavření smlouvy nebo je neosloví marketingovou, reklamní, propagační či jinou obdobnou nabídkou, to vše ve věcech, které souvisí s předmětem podnikání společnosti ███. Obchodní vztahy ke klientům, zákazníkům nebo obchodním partnerům ███, do kterých nabyvatel vstoupil přede dnem uzavření této smlouvy, nejsou tímto ustanovením dotčeny.

6.  Povinnost mlčenlivosti podle této *Smlouvy* se nevztahuje na případy, kdy *Důvěrná informace* je či se stane obecně známou a v obecnou známost vešla či vejde bez zavinění nabyvatele; dále pokud *Důvěrná informace* byla *Nabyvateli* prokazatelně známa předtím, než mu byla poskytnuta v rámci *DD* či v souvislosti s *DD* či pokud podle příslušného právního předpisu existuje povinnost sdělit *Důvěrnou informaci* třetí osobě (zejména soudu nebo jinému státnímu či jinému orgánu); nebo *Převodce* udělí *Nabyvateli* písemné svolení ke sdělení příslušné *Důvěrné informace.*

7.  *Nabyvatel* se zavazuje, že ihned po skončení *DD* předá *Převodci* veškeré dokumenty obsahující *Důvěrné informace*, které od něj v souvislosti s *DD* získá, ať už se jedná o dokumenty uchovávané v písemné, elektronické či jakékoli jiné podobě, včetně všech kopií takových dokumentů tak, aby *Důvěrné informace* nebyly dále zjistitelné z žádného dokumentu, který bude v dispozici *Nabyvatele* nebo z přičinění *Nabyvatele* v dispozici jiné osoby, s výjimkou souhrnné zprávy o průběhu a výsledcích *DD*, která bude vyhotovena osobami provádějícími *DD* pro *Nabyvatele*, přičemž *Nabyvatel* je povinen zajistit, aby se zprávou o *DD* bylo nakládáno vždy jako s *Důvěrnou informací* podle této *Smlouvy.*

8.  *Převodce* nenese žádnou odpovědnost za jakákoliv rozhodnutí *nabyvatele*, která budou přijata na základě či v souvislosti s informacemi poskytnutými či získanými při *DD.*

9.  *Převodce* nenese žádnou odpovědnost za jakékoliv škody či ztráty, které by v budoucnu vznikly na straně *Nabyvatele* v souvislosti s informacemi, které byly získány v rámci *DD.*

10. Ujednáními obsaženými v této smlouvě není dotčeno právo *Převodce* domáhat se, aby se nabyvatel v případě, že poruší povinnost zachovávat mlčenlivost podle této smlouvy, zdržel jednání porušujícího povinnost zachovávat mlčenlivost a odstranil závadný stav, pokud takový stav nastal, ani právo požadovat přiměřené zadostiučinění, náhradu škody a vydání případného bezdůvodného obohacení.

K7943



## IX.
### Zastoupení Nabyvatele v orgánech společnosti

1.  *Převodce* se zavazuje výkonem svých hlasovacích práv akcionáře ▮▮▮ zajistit účast zástupce *Nabyvatele* v orgánech společnosti, a to tak, že *Nabyvatel* bude v představenstvu ▮▮▮ zastoupen jedním členem představenstva. Účast *Nabyvatele* v dozorčí radě bude zajištěna v případě, že k tomu tento vyzve *Převodce*.

2.  Volba zástupce do orgánů ▮▮▮ bude realizována na nejbližší valné hromadě *HMG*.

## X.
### Porušení povinností, odstoupení od smlouvy

1.  *Smluvní strany* se dohodly, že hrubým porušením *Smlouvy* se rozumí:
    a)  na straně *Nabyvatele* prodlení se splácením kupní ceny po dobu delší než 30 dnů;
    b)  na straně *Převodce* prodlení s povinností specifikovanou v čl. VII, bod 1 písm. a) (roční účetní závěrka) po dobu delší než 30 dnů.

2.  Pro případ hrubého porušení této *Smlouvy* specifikované v bodě 1. tohoto článku je druhá smluvní strana oprávněna od této *Smlouvy* odstoupit.

## XI.
### Rozhodčí doložka

1.  Jakýkoliv spor z této smlouvy nebo v souvislosti s ní bude řešen s vyloučením pravomoci obecných soudů a s konečnou platností v českém jazyce v rozhodčím řízení u Rozhodčího soudu při Hospodářské komoře České republiky a Agrární komoře České republiky v Praze, v souladu s aktuální verzí rozhodčího řádu tohoto soudu. Rozhodčí senát bude mít tři členy. Každá strana má právo jmenovat jednoho rozhodce. Tito dva rozhodci zvolí předsedu rozhodčího senátu, který se zároveň stane třetím rozhodcem. Místem konání rozhodčího řízení bude Brno, Česká republika. *Smluvní strany* se zavazují splnit všechny povinnosti uložené jim v rozhodčím nálezu ve lhůtách v něm uvedených.

2.  O nákladech rozhodčího řízení, které tvoří odměna rozhodce (rozhodčí poplatek) a náklady právního zastoupení smluvních stran, rozhoduje jmenovaný rozhodce. Pro stanovení jejich výše se užijí přiměřeně ustanovení příslušných obecně závazných předpisů (např. občanský soudní řád, vyhláška Ministerstva spravedlnosti č. 484/2000 Sb.). Výše nákladů rozhodčího řízení nesmí překročit částku stanovenou těmito předpisy.

3.  Pro případ nemožnosti doručit listinu od rozhodce kterémukoliv z účastníků nebo pro případ neúčasti jednoho z účastníků v rozhodčím řízení se strany dohodly, že rozhodce může rozhodovat na základě tvrzení a důkazů druhého z účastníků.

K7944

## XII.
### *Použité právo*

1. *Smluvní strany* se dohodly, že právní vztahy z touto *Smlouvou* založené nebo s ní související se řídí právním řádem České republiky.

## XIII.
### *Převody a postoupení, zákaz započtení*

1. Žádné nároky, práva či pohledávky z této smlouvy vzešlá nemohou být předmětem postoupení, nebude-li smluvními stranami dohodnuto písemně jinak.

2. Žádné nároky, práva či pohledávky z této smlouvy vzešlá nemohou být započtena, nebude-li *Smluvními stranami* dohodnuto písemně jinak.

## XIV.
### *Doručování*

1. Veškeré písemnosti, oznámení a jiná korespondence dle této *Smlouvy* budou zasílány v listinné podobě prostřednictvím držitele poštovní licence nebo e-mailem a současně faxem na níže uvedené adresy *Smluvních stran*:

   <u>Adresa pro doručování *Převodce*</u>:
   **Název**
   **Adresa**

   

   **Označeno „na vědomí komu"**
   **Fax**

   <u>Adresa pro doručování *Nabyvatele*</u>:
   | | |
   |---|---|
   | **Název** | SPV CO. LIMITED |
   | **Adresa** | Advokátní kancelář Vladyka a Kubica |
   | | Revoluční 3, Praha |
   | | Česká republika |
   | **Označeno „na vědomí komu"** | Mgr. Robert Vladyka |
   | | Mgr. MUDr. Zdeněk Kubica |
   | **Fax** | +420 242487526 |

2. Písemností odeslané poštou na výše uvedené adresy, není-li jiného důkazu o jejich doručení, se považují za doručené třetím dnem poté, kdy se odeslaná zásilka vrátí nedoručená anebo bude doručovatelem odesílateli oznámeno, že nebyla doručena.

3. V případě jakékoliv změny v osobách *Smluvních stran* nebo změny adres pro doručování jsou *Smluvní strany* povinny navzájem si nové skutečnosti písemně neprodleně sdělit. Do doby doručení písemného sdělení o změně platí za platné doručení na adresy uvedené v této *Smlouvě*.

K7945




## XV.
### *Salvatorská klauzule*

1. Pokud kterékoli ustanovení této smlouvy nebo jeho část je nebo se stane neplatným či nevynutitelným rozhodnutím soudu či jiného příslušného orgánu, nebude mít tato neplatnost či nevynutitelnost vliv na platnost či vynutitelnost ostatních ustanovení této smlouvy nebo jejich částí, pokud nevyplývá přímo z obsahu této smlouvy, že toto ustanovení nebo jeho část nelze oddělit od dalšího obsahu.

2. V případě uvedeném výše se smluvní strany zavazují neúčinné a neplatné ustanovení nahradit novým ustanovením, které je svým účelem a hospodářským významem co nejbližší ustanovení této smlouvy, jež má být nahrazeno.

## XVI.
### *Závěrečná ustanovení*

1. Tato smlouva byla sepsána ve dvou vyhotoveních.

2. *Smluvní strany* prohlašují, že smlouvu četly a že je výsledkem jejich svobodného projevu vůle.

3. Na důkaz souhlasu s obsahem této smlouvy připojují smluvní strany vlastnoruční podpisy.

V Brně, dne 26.5.2006



.....................     *Převodce*

V Brně, dne 26.5.2006

.........................................
**SPV CO. LIMITED**
**Marek Kolíbal**
*Nabyvatel*

K7946

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| KOTVA a.s. | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05-10679-RCL |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW WEISS and WEISS ASSET | ) | |
| MANAGEMENT, LLC | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## KOTVA'S SUPPLEMENTAL RESPONSE TO INTERROGATORY 6 OF DEFENDANTS' THIRD SET OF INTERROGATORIES IN COMPLIANCE WITH THE SPECIAL MASTER'S MAY 26, 2006 ORDER

Subject to its general and specific objections, Kotva answered that it did not know the identity of the beneficial owners of Forminster in response to interrogatory 1 of the Defendants' Third Set of Interrogatories [1]  In compliance with the Special Master's May 26, 2006 Order, Kotva provides the following additional response to interrogatory 6 of the Defendants' Third Set of Interrogatories regarding its response to interrogatory 1:

---

[1]  **Interrogatory No. 1**

Please identify the legal and beneficial owners of an interest, including shares of stock or a partnership interest, in each of the Listed Companies, for the period from January 1, 2000 until to present

**Response to Interrogatory No. 1**

Kotva objects to this interrogatory to the extent it is overly broad, unreasonable, unduly burdensome, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence  Plaintiff further objects to this interrogatory to the extent it seeks information concerning entities unaffiliated with Plaintiff. Plaintiff also objects to the extent this interrogatory has been previously asked and fully responded to by Plaintiff (See Defendants' Second Set of Interrogatories, No. 1 and response thereto)  Subject to the foregoing General and Specific Objections, Plaintiff responds as follows:

a          Forminster Enterprises, Ltd.
Unknown

**Interrogatory No. 6**

For each and every interrogatory response in which Kotva claims that it is unable to answer, in whole or in part, please describe in detail the efforts Kotva took to gather responsive information.

**Answer No. 6**

Plaintiff is able to and has fully answered the foregoing interrogatories

**Supplemental Response:**

Kotva objects to this interrogatory to the extent it seeks information that is protected by the attorney/client privilege and work product doctrine  Kotva further objects that this interrogatory is overly broad, unreasonable, unduly burdensome, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence  Subject to and without waiving any objections, Kotva responds that it answered all interrogatories based upon the documents and information known to it  In its previous responses to interrogatories, Kotva stated that it filed a criminal complaint with Czech authorities but lacks knowledge or information sufficient to identify which individuals specifically initiated the criminal charges against Weiss (Kotva has produced the charging document that identifies a prosecutor); that it cannot identify the persons who have an "indirect ownership interest" in Kotva's shares; that it no longer owns Kotva International Ltd. and SPV KN and does not know the current ownership status of those entities; and that it lacks information or knowledge sufficient to identify the legal and beneficial owners of Forminster and the Bonalbo entities  To the extent that the Weiss Defendants are attempting to force Kotva to conduct independent research to acquire information to answer interrogatories, to provide information that is readily available to the Weiss Defendants, or to conduct research on the Weiss Defendants' behalf, the interrogatories are beyond the proper scope of discovery.

**Further Supplemental Response Pursuant to Special Master's Order:**

Kotva hereby certifies that it exercised due diligence when it provided its response to Interrogatory No 1, answering that it does not know the identity of the legal and beneficial owners of Forminster. Richard Harazim of Kotva, verified the accuracy of Kotva's response to Interrogatory No. 1. In preparing Kotva's response to this interrogatory, Mr Harazim asked Michael Vlach and Martin Benda, Kotva's senior management, if they know the legal or beneficial owners of Forminster. They do not

The May 26th Order also states that Kotva shall exercise due diligence and produce documents and provide information "in the possession, custody, or control of its employees, officers, directors, or agents, including its attorneys, to the extent that they acquired the requested documents [or information] in their official capacity as Kotva employees, officers, directors, or agents." Pursuant to the Order, Mr. Harazim has confirmed that Kotva's employees, officers, directors, and agents in their official capacity do not know the identity of the legal and beneficial owners of Forminster Specifically, Mr. Harazim has asked Kotva's officers, directors and employees if they know the legal and beneficial owners of Forminster. They do not This interrogatory reflects the knowledge of the following individuals:

- Richard Harazim;
- Bedřich Moulík, chairman of board of directors;
- Jiří Kvapil, member of board of directors;
- Miloslav Sobola, member of board of directors;
- Martin Benda, chairman of supervisory board;
- Jiří Mařas, member of supervisory board;
- Libor Laichman, member of supervisory board;
- Jana Furstova, financial manager;
- Michal Vlach, an employee of KTV finance k.s.;

3

- Jiří Brada, manager of KTV finance k.s.;
- Pavel Richter;
- Lucie Simackova;
- Jaromir David; and
- Marek Kolibal.

Mr. Harazim also spoke to Kotva's attorneys who may have such knowledge as agents of Kotva, including:

- Stanislav Devátý, attorney at the law firm Toman & Devaty;
- Jaroslav Novák, attorney at the law firm Toman & Devaty;
- Petr Toman, attorney at the law firm Toman & Devaty;
- Robert Vladyka, attorney at the law firm Vladyka & Kubica;
- Zdeněk Kubica, attorney at the law firm Vladyka & Kubica;
- František Mészáros, attorney at the law firm Vladyka & Kubica;
- Michal Doležal, attorney; and
- Filip Směja, attorney.

Kotva states that the above-listed attorneys confirmed that they do not know the requested information in their capacity as Kotva's agents. These attorneys refused to discuss with Kotva whether they possess this information in connection with representing other clients.

Kotva also searched for responsive documents within the possession of its employees, officers, directors, and agents in their capacity as such, and no documents were found that identify the beneficial or legal owners of Forminster.

Kotva hereby confirms that its previous responses regarding Interrogatory No. 1 were accurate and that Kotva, including its employees, officers, directors, and agents in their official capacity as such, do not know the identity of the legal and beneficial owners of Forminster.

4

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY OF THE LAWS OF THE
UNITED STATES OF AMERICA ON THIS 16 DAY OF JUNE, 2006.

_____
Richard Harazim

As to objections,

KOTVA,

By its attorneys,

_____
Joel G. Beckman (BBO# 553086)
William C Nystrom (BBO# 559656)
Daniel J. Pasquarello (BBO# 647379)
NYSTROM BECKMAN & PARIS LLP
10 St. James Ave., 16th Floor
Boston, Massachusetts 02116
(617) 778-9100
(617) 778-9110 (fax)
jbeckman@nbparis.com
wnystrom@nbparis.com
dpasquarello@nbparis.com

Dated: June 5, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on June __, 2006, I caused a copy of the foregoing document to be
served by Facsimile and First Class Mail upon all defendants. hand delivery

_____
Joel G. Beckman

5