UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s. | ) |
| | ) |
| Plaintiff, | )   Case No. 05-10679-RCL |
| | ) |
| v. | ) |
| | ) |
| ANDREW WEISS and WEISS ASSET | ) |
| MANAGEMENT, LLC | ) |
| | ) |
| Defendants. | ) |

**HARAZIM'S OPPOSITION TO THE WEISS PARTIES' MOTION
FOR SANCTIONS AND TO COMPEL PRODUCTION OF
DOCUMENTS AND ANSWERS TO INTERROGATORIES BY RICHARD HARAZIM**

**INTRODUCTION**

The Weiss Defendants' are not entitled to any of Kotva's privileged documents, because Mr. Harazim, individually was three days late in responding to discovery requests. The parties, in fact, are not even fighting over the production of additional documents from Mr. Harazim individually -- which is what the September 29, 2006 Order allowed. All have been produced. Indeed, Mr. Harazim produced the documents he held as a Kotva representative months ago, in response to the Weiss Defendants' two sets of document requests to Kotva.

According to defendants, however, Mr. Harazim completely and irrevocably waived the entire attorney client privilege for Kotva because he individually responded to discovery requests three business days late. Indeed, defendants argue that the Special Master has no discretion to rule otherwise. First Circuit precedent--which defendants failed to cite--shows that defendants are wrong. Marx v. Kelly, Hart & Hallman, P.C., 929 F.2d 8, 12 (1st Cir. 1991) (failure to

timely respond to discovery request does not automatically waive all objections); <u>Krewson v. City of Quincy</u>, 120 FRD 6, 7 (D. Mass. 1988) (even if the objection is untimely, courts should still deny requests that exceed the bounds of fair discovery); <u>Slauenwhite v. Bekum Maschinenfabriken, GMBH</u>, 35 F.R. Serv.2d 975, 1983 U.S. Dist. Lexis 19520 *1-2 (D. Mass. 1983) (same). Indeed, waiver of the attorney-client privilege is a nuclear sanction that is reserved only for the most extreme and outrageous circumstances—none of which are present here.

Defendants' position also directly contradicts <u>their own</u> prior arguments concerning the sanctity of the attorney-client privilege. On one hand, defendants argued that: (1) the intentional disclosure of privileged materials to the press and the government did not effect a waiver; and (2) the repeated disclosure of privileged materials to opposing counsel in discovery (both intentional and inadvertent) neither waived the attorney-client privilege nor effected even a limited subject matter waiver. On the other hand, defendants argue that Richard Harazim automatically waived the <u>entire</u> attorney-client privilege for himself, his company, and his co-workers by responding three business days late to discovery requests directed to him <u>in his individual capacity</u>. For the reasons set forth herein, defendants' motion should be denied and the costs of opposing this motion should be imposed on the defendants.

## **PROCEDURAL BACKGROUND**

*Defendants' Document Requests*

On August 1, 2005, defendants served their first set of document requests upon Kotva. On March 3, 2006, defendants served their second set of document requests. On June 30, 2006, defendants served a third set of document requests, but this time directed to Richard Harazim.

On July 27, 2006, counsel for Kotva and Mr. Harazim requested an extension until August 9, 2006 to respond to the discovery requests that defendants had issued to Mr. Harazim, which was granted. On August 8, 2006, however, counsel for defendants alleged in an email that the extended deadline had passed and claimed that all objections had been waived. Counsel for Mr. Harazim responded that there had been a misunderstanding and counsel discussed providing responses by the end of the week, August 11, 2006. Mr. Harazim, who resides in the Czech Republic, was unable to finalize his answers to Weiss's interrogatories by that time because he was out of the office, and could not access the finalized answers until late on Monday, August 14, 2006. Mr. Harazim's responses to the discovery requests and interrogatories were served on the next day, August 15, 2006. At that time, multiple extensions to defendants were outstanding--including an extension for defendants to produce documents that were due more than three weeks earlier.

After receiving Mr. Harazim's responses, the Weiss Defendants objected to only two of the seven interrogatory responses. During the discovery conference, leaving aside the fact that Mr. Harazim had raised the same Local Rule objection that the Weiss Defendants had previously asserted (discussed below), counsel explained that Mr. Harazim had already produced all responsive documents in response to the document requests served to Kotva. In fact, counsel for Mr. Harazim had to insist that the parties walk through the document requests to see if there were actually any additional documents responsive to the requests. The parties identified only a few potential categories of documents. Counsel for Mr. Harazim agreed to confirm whether there were any such documents and then respond to defendants' counsel.[1] Before counsel could respond, the Weiss Defendants filed a motion to compel and for sanctions.

---

[1] The fact that the only documents Mr. Harazim produced in response to the defendants' document requests to him were an airline ticket, business cards (that had already been produced by Kotva), newspaper articles, and two

3

*Kotva's Document Requests*

On December 21, 2005, Kotva served its first set of document requests on defendants. Defendants provided written responses on January 27, 2006 to what they claimed was Kotva's "second set" of document requests.[2] On June 22, 2006, Kotva served its actual second set of document requests to defendants. On July 24, 2006, defendants provided written responses to Kotva's "latest set of document requests," which they asseverated were "beyond what is allowed by the Local Rule."[3] Defendants objected to Kotva's second set of document requests and conditioned their production of documents upon an "agreement with respect to additional requests for documents propounded by the Weiss Parties."[4] Id.

---

employment agreements, therefore, is no surprise to defendants. Moreover, these documents have no bearing on the abuse of process claim against him.

[2] On November 2, 2005, counsel for defendants asked Kotva to produce documents that were identified in its initial disclosures. On November 10, 2005, counsel for Kotva obliged. Even though defendants' document requests did not include a request for such documents, Kotva did not take the unreasonable position that the November 2nd request should count as a discovery event against defendants. "[I]n the spirit of cooperation," counsel for Kotva asked Weiss's counsel to reciprocate and similarly produce the documents identified in defendants' initial disclosures. See November 10, 2006 Letter from Joel Beckman, Esq. to Benjamin Goldberger, Esq., attached as Ex. A to Richard Harazim's Response to the Special Master's September 29, 2006 Order with respect to the Issue of Attorney's Fees and Costs [Docket # 148]. On December 12, 2005, defendants styled their response to this informal exchange as "Objections and Responses of Andrew Weiss and Weiss Asset Management LLC to First Set of Requests for Production of Documents of Kotva, A.S.," and simultaneously made objections to the form of Kotva's "request." Far from a spirit of cooperation, this attempt to recast Kotva's call for reciprocal treatment as a formal document request evinces a proclivity for gamesmanship that borders on bad faith.

[3] July 24, 2005 Letter from Benjamin Goldberger, Esq. to Joel Beckman, Esq., attached as Ex. B to Richard Harazim's Response to the Special Master's September 29, 2006 Order with respect to the Issue of Attorney's Fees and Costs [Docket # 148].

[4] Defendants did not produce any documents in response to Kotva's second set of documents until after the Special Master issued her September 29, 2006 Order.

**ARGUMENT**

I.  **DEFENDANTS CANNOT OBTAIN PRIVILEGED <u>KOTVA</u> DOCUMENTS UNDER THE GUISE OF DOCUMENT REQUESTS TO <u>HARAZIM</u>.**

   A.  **There Are No Documents to Compel from Mr. Harazim Individually.**

As discussed above, Mr. Harazim initially objected to defendants' document requests as impermissible under the local rules and void *ab initio*. In the September 29, 2006 Order, the Special Master disagreed and ruled that Harazim, as a party, must produce documents "<u>in his individual capacity</u>." See September Order at 28 (emphasis added). Mr. Harazim complied with the Order and provided all responsive documents that he held "in his individual capacity." [5]

<u>Mr. Harazim holds no relevant privileged documents individually</u>. Undersigned counsel's communications with Mr. Harazim have been overwhelmingly, if not exclusively, in his official capacity as a representative of Kotva, not individually. This is not suprising since the counterclaims asserted against Mr. Harazim have no merit. Indeed, all counterclaims against Mr. Harazim except for Count I (abuse of process) have been dismissed. Thus, the only privileged documents that might relate to undersigned counsel's representation of Mr. Harazim individually would concern his motion to dismiss for lack of personal jurisdiction--a motion that was filed in combination with Mr. Benda.[6] Personal jurisdiction, however, is no longer relevant with respect to Mr. Harazim, and the defendants have failed to articulate any other reason why the documents might be relevant. As the defendants have repeatedly been informed, therefore, there are no documents to compel.

---

[5] Mr. Harazim had previously provided all responsive documents that he held in his capacity as a Kotva representative in response to defendants' previous two sets of discovery requests to Kotva.

[6] Any such documents would necessarily post-date the counterclaim against Mr. Harazim.

### B.     Defendants Cannot Obtain Kotva's Privileged Documents Through Harazim.

By filing this motion, defendants revealed their true intentions--to tear down Kotva's entire attorney-client privilege and work-product protection under the pretext of seeking documents from Harazim. Indeed, counsel for defendants admitted during the discovery conference that they want to "back up a truck to the loading dock" at Kotva's counsel's offices and drive off with counsel's work files from this case.[7]

To the extent that defendants seek Kotva's privileged documents on the grounds that there is a commonality of interest between Mr. Harazim and Kotva, moreover, the requests are void *ab initio* as an impermissible third set of document requests to Kotva.[8] The September Order applies to Mr. Harazim individually, not in his official capacity as a Kotva representative. And defendants' own motion concedes that they are not entitled to destroy Kotva's privilege and obtain such materials. See Motion at 8 ("waiver does not extend to other joint clients") citing Interfaith Housing Delaware, Inc. v. Town of Georgetown, 841 F. Supp. 1393, 1400 (D. Del.

---

[7]   As the Special Master is aware, privilege has been rigorously guarded in this case. For example, the Special Master expressed reluctance about conducting an *in camera* review of Weiss's alleged privileged documents under the crime-fraud exception because Kotva might "benefit directly from the disclosure of Weiss's litigation strategy." See May Order at 3-4; see also September Order at 14 ("in order to invade the sanctity of the attorney-client privilege, Kotva would have to make a preliminary showing...."). In addition, despite defendants' voluntary and intentional waiver of materials they deemed privileged to the press and the State Department, no subject matter waiver was found. Subject matter waiver on the basis of inadvertent disclosure was also rejected. Work product protection was also invoked to protect the defendants' selection of documents from the Czech criminal file. See September Order at 22. In sum, the sanctity of the privilege and work product doctrine is not an issue to be bandied about lightly. At best, defendants' motion can be described as overreaching; in reality, it is an unjustified attempt to seize Kotva's privileged materials and wrongfully benefit from Kotva's counsel's work product and privileged communications.

[8]  Defendants' document requests to Mr. Harazim followed two sets of document requests by defendants to Kotva. Local Rule 26.1(C) provides, "Unless the judicial officer orders otherwise, the number of discovery events shall be limited for each side (**or group of parties with a common interest**) to. . .two (2) separate sets of requests for production." (emphasis added). Kotva's position remains that Kotva and Mr. Harazim are parties with a common interest and that the set of document requests served on Mr. Harazim was not permissible. Nevertheless, the September Order allowed defendants to obtain discovery from Mr. Harazim in his individual capacity only, not in his capacity as a Kotva representative.

6

1994) (in the context of a joint representation, a waiver by one defendant does not extend to any other joint clients).[9]

Mr. Harazim's privilege and Kotva's privilege are separate. Defendants, nevertheless, conflate the two as a "joint" privilege solely because Mr. Harazim (as an individual) and Kotva have the same counsel. Mr. Harazim, however, individually cannot waive Kotva's privilege. Indeed, defendants' own case law states so. See Interfaith, 841 F. Supp. at 1399 (an agent can only bind a corporation if he is acting within the scope of his authority.) (citation omitted) The only First Circuit case that defendants cite, In re Grand Jury Subpoena, 274 F.3d 563 (1st Cir. 2001), is not to the contrary.[10] Indeed, the Special Master's May Order denying defendants' previous motion to compel leaves no doubt about the distinction between a corporate officer's individual and official capacities:

> A document in the hands of a corporate officer or director or a shareholder is not automatically also in the possession of the corporation. If the document is in the possession of the officer, director, or shareholder because of the officer's, director's, or shareholder's personal business, then the document is not in the possession of the corporation merely because it is in the hands of the officer or shareholder. <u>Put another way, the officer's, director's, or shareholder's possession must be as the agent of the corporation, not in his or her individual capacity.</u>

May Order at 13-14 (emphasis added).

Defendants seem to understand this fundamental distinction and concede as much in their motion:

---

[9] Similarly, In re CFS-Related Secs. Fraud Litig., 223 F.R.D. 631 (N.D. Okla. 2004) provides no support for the Weiss Defendants. In that case, the RSKO plaintiffs agreed that they had waived their privilege and sought an order from the Court that their waiver did not affect the privilege asserted by other plaintiffs. Citing Interfaith, the In re CFS court agreed that the RSKO plaintiffs' waiver did not operate as a waiver of any other plaintiff's privilege. Id. at 634.

[10] In In re Grand Jury Subpoena, a corporation waived its privilege with respect to communications "made by a corporate officer in his corporate capacity." See Motion at 17 (quoting In re Grand Jury Subpoena at 573). All communications in that case were corporate communications; there were no communications to be protected on an individual basis. Id. at 574. Simply put, a corporation waiving its privilege for itself and its corporate officers is not the same as an officer in his individual capacity allegedly waiving the corporation's privilege.

> In this case, as Mr. Harazim was an agent of Kotva and member of the corporation's control group, there is an argument that Mr. Harazim has waived the privilege of Kotva as well. <u>However, the Weiss parties do not press this point in this Motion</u>.

Motion at 14 n.8 (emphasis added). Yet in the next breath, they press for documents that are protected by Kotva's privilege:

> As explained in more detail below, Mr. Harazim must produce the documents at issue regardless of whether Kotva has also waived the privilege.

<u>Id</u>. In other words, despite the fact that the September Order only applies to Mr. Harazim in his individual capacity, defendants ignore the distinction and press for the disclosure of <u>Kotva's</u> documents. Defendants can provide no good faith basis for ignoring the terms of the Special Master's Order and the law, however, or for seeking such an enormous waiver of Kotva's privilege. Because defendants' motion is not substantially justified under Rule 37.1, the costs incurred in filing this opposition should be shifted.

## II. THE COURT IS NOT COMPELLED TO IMPOSE THE DRACONIAN PUNISHMENT OF WAIVING HARAZIM'S PRIVILEGE AND THE PRIVILEGE HAS NOT BEEN WAIVED.

### A. The September 29, 2006 Order Does Not State That Harazim Waived The Attorney-Client Privilege For Himself, Kotva and Martin Benda

Mr. Harazim does not believe that the September 29, 2006 Order found that the privilege had been waived or required him to produce privileged materials. Mr. Harazim made this position perfectly clear when he asserted the privilege in making his supplemental responses.[11] The September 29, 2006 Order does not specifically address the issue of privilege. Defendants concede this point, as they must. <u>See</u> Motion at 12. Indeed, the Special Master noted that no

---

[11] Defendants cite Local Rule 34.1(a) and argue that Mr. Harazim's general objection as to privilege is insufficient. (Motion at 13 n.7) That rule, however, does not state that general objections are insufficient. Defendants, moreover, have repeatedly stated general objections in their responses to discovery requests. If those general objections had no effect, then they would be "nothing more than surplusage." The Special Master has already ruled that this cannot be the case and that general objections are to be given their stated effect. <u>See</u> November Order at 6-7.

8

privileged communications had been logged by Kotva and, therefore, likely believed that no such privileged communications existed. See September Order at 29-30. Pursuant to the May 26, 2006 Order, however, Mr. Harazim was not required to log any such communications:

> All responsive documents which are withheld on the ground of attorney-client privilege or the work-product doctrine or some other asserted basis of protection, must be logged, *except for the following*: . . . (2) attorney-client communications and work product exchanged between any of the parties' respective counsel of record in the instant case, the parallel Czech litigation, and the Czech criminal proceeding, and their respective clients' representatives and counsel's agents, with respect to this case or the parallel Czech proceedings, civil and criminal, and which were created *after* December 23, 2004.

May Order at 1-2 (emphasis in original). Mr. Harazim is only involved in his individual capacity as a counterclaim-defendant for allegedly abusing United States process.[12] Thus, any privileged communications with Mr. Harazim in his individual capacity are with Nystrom Beckman & Paris LLP after May 13, 2005, when the counterclaim was filed.

Contrary to the defendants' assertions, the Special Master is not and was not compelled to find a waiver of the privilege, and does, in fact, have the discretion to find that there has been no waiver.

### B.    Defendants Have Misstated The Law With Respect To Waiver Of Privilege

Defendants have argued under both the Federal Rules and the Local Rules, that a failure to timely respond to discovery requests automatically waives all objections—including those based on the attorney-client privilege and work product doctrine. Indeed, defendants claimed that the Discovery Master had "no discretion" in deciding the issue. Motion at 6.

---

[12]  See June 14, 2006 Order Granting Motions to Dismiss for Lack of Personal Jurisdiction ("The only relevant contact with Massachusetts is the filing of this lawsuit, which is attributable both to Kotva and to Richard Harazim, who is alleged to be the central figure in Kotva's filing of suit. See Escude Cruz v. Ortho Pharm. Corp., 619 F.2d 902, 907 (1st Cir. 1980). Given Harazim's alleged direct involvement with the claimed tort directed into Massachusetts, the exercise of personal jurisdiction over Harazim for the abuse of process claim is constitutional. See Northern Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25-26 (1st Cir. 2005).").

The First Circuit and Massachusetts District Court, however, have held that under the Federal Rules, a failure to serve timely objections to discovery requests does <u>not</u> automatically waive all objections.  Rather, the determination of such a waiver is within the discretion of the Court.  <u>Marx v. Kelly, Hart & Hallman, P.C.</u>, 929 F.2d 8, 12 (1st Cir. 1991) ("If the responding party fails to make a timely objection, or fails to state the reasons for an objection, he <u>may</u> be held to have waived any or all of his objections.") (emphasis added) [13]; <u>Krewson v. City of Quincy</u>, 120 FRD 6, 7 (D. Mass. 1988) <u>citing</u> <u>Slauenwhite v. Bekum Maschinenfabriken, GMBH</u>, 35 F.R. Serv.2d 975, 1983 U.S. Dist. Lexis 19520 *1-2 (D. Mass. 1983); 4A Moore's Federal Practice, ¶34.05[2] (similar).[14]  Indeed, Magistrate Collings has stated that a court may "decline to compel production of requested documents even if a timely objection has not been made when the request far exceeds the bounds of fair discovery."  <u>Krewson</u>, 120 FRD at 7; <u>Slauenwhite</u>, 35 F.R. Serv.2d 975, 1983 U.S. Dist. Lexis 19520 at *1-2.

For this reason, courts almost never find that a party has waived the attorney-client privilege by responding late to a discovery request.  <u>See</u>, <u>e.g.</u>, <u>Scaturro v. Warren and Sweat Manufacturing</u>, 160 F.R.D. 44, 46 (M.D.Pa. 1995) (an untimely response in and of itself is no grounds for finding all objections to be waived).  Indeed, "a waiver of privilege is a serious sanction reserved for cases of unjustified delay, inexcusable conduct, bad faith, or other flagrant

---

[13] Defendants may argue that unlike the Federal Rules, the Local Rules do not provide for discretion on the issue of waiver.  The Special Master, however, has already ruled that if the Local Rules conflict with the Federal Rules, then the Local Rules must yield.  (September Order at 28)

[14] Defendants failed to cite these controlling cases to the Discovery Master or lay out the applicable legal standard.  This is the <u>third time</u> that defendants have failed to cite controlling precedent directly on point.  Indeed, in their motion for a protective order staying the deposition of Andrew Weiss, they failed to cite <u>U.S. v. Balsys</u>, 524 U.S. 666 (1998), a United States Supreme Court decision that was directly on point and destroyed their argument.  Similarly, in seeking to limit Kotva's RICO discovery, defendants represented to the Special Master that <u>no</u> Massachusetts court has <u>ever</u> held that filing lawsuits could be part of an extortion scheme.  Defendants, however, failed to cite several cases directly on point that contradicted their argument—e.g., <u>Lemelson v. Wang Laboratories</u>, 874 F.Supp. 430 (D.Mass 1994), <u>Gonzalez-Morales v. Hernandez-Arencibia</u>, 221 F.3d 45, 51-52 (1st Cir. 2000), and <u>U.S. v. Sturm</u>, 870 F.2d 769 (1st Cir. 1989).  As this is the third time that defendants have failed to "acknowledge the test established [in the First Circuit] and face up to it," defendants should be ordered to shoulder the costs and feed incurred in connection with this opposition.

violations." Applied Systems, Inc. v. Northern Ins. Co. of New York, 1997 WL 639235 *2 (N.D. Ill. Oct. 7, 1997); Jones v. American General Life and Accident Ins. Co., 2002 WL 32073037 *6 (S.D. Ga. Dec. 4, 2002). Accordingly, even where courts find that other objections have been waived, they are "more circumspect in finding a waiver of a privilege objection." First Savings Bank, F.S.B. v. First Bank System, Inc., 902 F.Supp. 1356, 1361 (D.Kan. 1995). This is particularly true where the producing party made good faith attempts to meet the deadline and acted promptly in curing its error. Id. at 1362.

Here, the circumstances do not warrant the extreme sanction of finding a waiver of the attorney-client privilege. Indeed, Mr. Harazim's responses were only three business days late. The brief delay, moreover, caused no prejudice to defendants as there were no pending briefs, arguments, depositions or other events scheduled. In other words, the delinquency was minor and was promptly cured. In fact, responses were served before defendants' filed a motion to compel or initiated the rule 37.1 process.

Mr. Harazim's responses, moreover, were substantive and did not merely state objections. Indeed, Mr. Harazim provided substantive answers to five of the seven interrogatories—objecting only to two requests that asked him to catalog all of his communications during a two year period. His response to the document requests, moreover, stated that he did not have any documents in his individual capacity and that he had already produced responsive documents via Kotva's production. During the Rule 37.1 conference, defense counsel indicated that he was looking for Mr. Harazim's business cards, call specific cell phone records, calendars, and other documents evidencing his travels to Massachusetts.

Despite Mr. Harazim's agreement to search for these records, Weiss immediately moved to compel. Mr. Harazim has since located and produced these records, which consist of: (1) two

11

Kotva business cards (that were previously produced); (2) a newspaper article; (3) a plane ticket; and (4) two employment agreements.[15] Needless to say, these documents have little or no relevance to this case, and Mr. Harazim's alleged "withholding" of them does not warrant sanctions.

### C.    Mr. Harazim Has Answered The Interrogatories To The Best Of His Ability

Defendants nit-pick Mr. Harazim's answers to their request that he catalog every communication that he has had with anyone for the past two years, and claim that he "could have done better." A review of Mr. Harazim's supplemental answers, however, shows that he provided substantive and complete answers to two overly broad interrogatories. Indeed, Mr. Harazim incorporated by reference all of his non-privileged written communications. Those documents provide most of the alleged "missing" information—*e.g.*, the medium of communication and location of participants. To the extent his communications were verbal, he answered to the best of his ability. The fact that he does not recall the number of times that he spoke to a specific person over a two year period, or where he was during each specific communication, is nothing extraordinary. What is extraordinary, however, is the notion that this minutia is somehow relevant to the single claim against Mr. Harazim for allegedly abusing United States process. Indeed, Judge Lindsay's November 28, 2006 order mooted defendants' interrogatory No. 2, which concerns the Czech criminal complaint. Because Mr. Harazim has provided substantive responses to these interrogatories defendants' motion should be denied.

### CONCLUSION

Defendants do not actually seek documents from Mr. Harazim with this motion. Rather, they seek to obtain Kotva's privileged documents--documents to which they are not entitled. Mr.

---

[15] Mr. Harazim's cell phone records do not itemize calls but rather merely state a total fee. Weiss' counsel stated that they were not interested in phone records that do not itemize calls.

Harazim has already complied with the Special Master's Order, and defendants have been informed that there are no more documents. They have also been informed that there are no relevant privileged documents held by Mr. Harazim individually. The rules bar defendants from using their document requests to Harazim individually as a third set of requests to Kotva. Moreover, although they know that they are not entitled to Kotva's privileged documents under the terms of the Special Master's Orders and established case law, defendants press for a complete destruction of Kotva's privilege and work product protection anyway. Because defendants' motion was not substantially justified and relevant case law was again omitted, the costs and fess associated with this opposition should be shifted to defendants.

On June 14, 2006, Judge Lindsay granted several motions to dismiss that eviscerated defendants' diversionary theory of "looting." By Order dated November 28, 2006, Judge Lindsay granted Kotva's March 3, 2006 motion to dismiss counterclaim-defendants KT, Inc. and CVF Investments Ltd. entirely. In short, the construct created by defendants to distract the Court from the real issues in this case--Weiss's blackmail scheme and tortious interference with Kotva's business--has crumbled away. The current motion is simply the latest diversionary tactic by defendants. The motion should be denied.

Respectfully submitted,

RICHARD HARAZIM.

By his attorneys,

/s/ Dana A. Zakarian
Joel G. Beckman (BBO# 553086)
William C. Nystrom (BBO# 559656)
Dana A. Zakarian (BBO# 641058)
Daniel J. Pasquarello (BB0# 647379)
NYSTROM BECKMAN & PARIS LLP
10 St. James Ave., 16th Floor
Boston, Massachusetts 02116
(617) 778-9100
(617) 778-9110 (fax)

Dated: November 29, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 29th day of November, 2006.

/s/ Dana A. Zakarian