UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
KOTVA a.s.                              )
                                        )
                Plaintiff,              )          Case No. 05-10679-RCL
                                        )
            v.                          )
                                        )
ANDREW WEISS and WEISS ASSET            )
MANAGEMENT, LLC                         )
                                        )
                Defendants.             )
_____)

**OBJECTIONS OF KOTVA, A.S. TO THE DISCOVERY MASTER'S
NOVEMBER 17, 2006 ORDER REGARDING MOTIONS TO COMPEL**

**INTRODUCTION**

During the last status conference on December 4, 2006, the Court stated its intention to

rein in and manage this case generally, and aspects of the past discovery motion practice in

particular.  Kotva welcomes the Court's close consideration of several discovery issues that have

been presented to the Special Master, but is reluctant to burden the Court with objections to the

Special Master's orders.  The critical nature of the matters at issue, however, leaves Kotva with

no choice but to submit these objections.  Specifically, Kotva objects to the Special Master's

refusal to conduct an *in camera* review under the exceedingly low threshold of the crime-fraud

exception, particularly in the context of an alleged blackmail scheme that hinged in large part

upon the use of counsel to file abusive litigation to achieve its purposes.  Kotva further objects to

the imposition of sanctions against Kotva in response to Kotva's substantially justified motions

to compel against the Weiss Defendants.[1]  Kotva respectfully requests that the Court overrule the

Special Master's November 17, 2006 Order ("Order") as described below.

### STANDARD OF REVIEW

Pursuant to ¶ 6 of the Court's December 13, 2005 Order Appointing Discovery Master

and Fed. R. Civ. P. 72(a), Kotva files the instant objections to the Discovery Master's November

17, 2006 Order.[2]  Objections to the Discovery Master's conclusions of law and findings of fact

are subject to *de novo* review by the Court.  Fed. R. Civ. P. 53(g); December 13, 2005 Order, ¶ 6.

### PROCEDURAL BACKGROUND

In view of the deficiencies in the Weiss Defendants' privilege log, Kotva filed a motion

to compel against the Weiss Defendants in April 2006.  After thorough briefing and several

hearings, the Special Master issued an order dated May 26, 2006 ("May Order") requiring Weiss

to amend and supplement his privilege log by July 10, 2006.  The May Order expressly stated

that failure to produce "the privilege log already ordered produced will result in the imposition of

sanctions."  May Order at 15.  The Special Master also ordered Weiss to produce close to one

quarter of the roughly 420 entries listed in its original privilege log, required other documents to

be submitted for *in camera* review, and established a protocol for the assertion of the common

interest exception, which Weiss had employed to withhold work product created by other parties.

On July 10, 2006, Weiss produced a revised privilege log with many of the same

deficiencies that existed in the original log.  In accordance with the May Order, and after a Rule

---

[1]  Kotva filed its motions on August 2 and August 11, 2006.  On September 29, 2006, the Special Master issued a 32 page order regarding Kotva's motions and a motion to compel that the Weiss Defendants filed against Mr. Harazim ("September Order").  The September Order required additional briefing from the parties with respect to sanctions and an additional hearing was held on November 13, 2006.  The Special Master then issued the Order in dispute on November 17, 2006.  Disturbingly, the Special Master's Order contains a number of internal inconsistencies and misapprehensions, as described in more detail below.

[2]  A copy of the Order is attached hereto as Exhibit 1.

37.1 conference, Kotva moved to compel yet again on the Defendants' log.  <u>After</u> Kotva filed its motion, the Weiss Defendants produced a further iteration of their privilege log, which the Special Master apparently relied upon in consideration of Kotva's motion.  Despite acknowledging continuing deficiencies in Weiss's privilege log, the Special Master did not impose sanctions against Weiss.  Instead, the Special Master imposed sanctions <u>against Kotva</u> for seeking subject matter waiver due to various intentional and inadvertent disclosures the Weiss Defendants had made.[3]

On August 11, 2006, Kotva also filed a separate motion to compel the Weiss Defendants to answer certain interrogatories and document requests, which was granted in part and denied in part.  Again, however, the Special Master imposed sanctions only against Kotva.  Finally, the Special Master imposed sanctions against Kotva for costs and fees in connection with the Special Master's review of an issue that the Weiss Defendants raised in opposition to Kotva's motion.  That issue, however, was not raised in a Rule 37.1 conference, not raised as part of a motion to compel, and was not before the Special Master for consideration.

## BACKGROUND REGARDING THE CRIME FRAUD EXCEPTION

The Weiss Defendants' numerous wrongful assertions of privilege in this case militate in favor of the *in camera* review Kotva has requested under the crime fraud exception.  The Special Master has ordered Weiss to produce scores and scores of documents that were wrongfully withheld.  This is not a situation where only a handful of documents were held back due to "close calls."  In addition to documents for which the privilege had been waived, Weiss has also

---

[3]  After reviewing the wrongfully withheld documents that the Special Master had ordered Weiss to produce, Kotva discovered that Weiss had intentionally disclosed privileged materials to third parties in the face of outstanding discovery requests from Kotva.  Those disclosures effected subject matter waiver on several fronts.  Therefore, in accordance with the May Order, Kotva presented the legal question of subject matter waiver to the Special Master in its motion.  Kotva also renewed its request for *in camera* review under the crime fraud exception.

attempted to shield business communications as privileged by including attorneys as "cc"

recipients. The Special Master has held that these too are not privileged and must be produced.

*See, e.g.,* Ex. 2; May Order at 6; Order at 1-2.

As described below, Kotva has made a sufficient demonstration to justify *in camera*

review of materials under the crime-fraud exception. The following timeline helps to place

Weiss's blackmail demands and the ensuing litigation against Kotva into the overall context of

Weiss's extortionate scheme:

- **May 2004**: After learning from the press that Kotva planned to sell its Department Store, Weiss makes oral demands during a May 12, 2004 meeting with Kotva representatives that Kotva must repurchase BGO's shares or Weiss could make "serious problems for Kotva." Compl. ¶ 20. Throughout the month, Weiss searches for Czech counsel to implement his plan to file unrelated litigation against Kotva to force Kotva to repurchase BGO's shares.

- **June 2004**: After retaining Attorney Peterka in the beginning of the month, Weiss launches his scheme to extort Kotva through sham litigation. Weiss first arranges for shell companies, including Gilory Ltd., to purchase nominal shares in Kotva. Peterka then filed a lawsuit on behalf of Gilroy Ltd. in the Czech courts against Kotva and its subsidiaries disputing the title to the Department Store real estate.[4] Weiss recorded the lawsuit in the land register to try to prevent the sale of the Department Store, and the Irish investors who were planning to buy the Department Store were immediately informed.

- **August 2004**: On August 17, 2004, Weiss makes a written demand that Kotva purchase BGO's shares for CZK 131,000,000. To confirm its suspicion that Weiss is behind the recent litigation, Kotva responds that any such purchase must involve the withdrawal of lawsuits against Kotva. On August 23, 2004, Weiss submits a "counter-offer" that links his demand to the withdrawal of the pending suit by Gilroy and a promise of no attacks against the ownership or transfer of the Department Store by "legal or physical entities controlled by" Weiss, although he still denies any control of Gilroy. Compl. Ex B.

  Its suspicions confirmed, Kotva files a criminal complaint with the Czech

---

[4] The only relief Gilroy sought in its complaint was a declaration that Kotva, as opposed to its subsidiary, be declared the owner of the Department Store. The lawsuit had nothing to do with BGO's Kotva or Trend Shares, but Weiss knew that any litigation against Kotva would interfere with the sale of the Department Store. The Czech court subsequently dismissed the lawsuit because Gilroy did not own the shares at the time of the transfer and thus had no standing to sue.

authorities.  The Czech authorities initiate an investigation of Weiss and his associates.

- **October 2004**:  On October 21, 2004 Hoffmann sent to Weiss a memorandum titled Negotiations, Price Offers & Lawsuits. Hoffmann's memorandum does not contemplate that the Gilroy lawsuit would ever be successful or that it would protect the value of BGO's Kotva shares. Rather, under the risks section, the memorandum states:  "The first risk is that the Irish investors withdraw from the contract with Kotva.  It is very unlikely that Kotva would be able to find another investor who would pay CZK 1,5-1, 7 bln. given the legal status of the property."

  The following admission, moreover, illustrates that the Czech litigation was not filed for the stated purpose of seeking a declaration that Kotva was the true owner of the Department Store:

  > We can show that if [Kotva] do not settle with us, their cost of financing will be very high;…If they do not settle, they will be able to realize the value of the property only in several years…

  October 21, 2004 email from Georgie Nikitin of WAM to Hoffman (attached as Ex. K to the Motion for Sanctions).

- **November 2004**:  Weiss ups the ante and demands that Kotva purchase not only BGO's Kotva shares, <u>but BGO's Trend shares as well</u>.  Compl. Ex. C.  The demand price soars from CZK 131,000,000 to CZK 296,000,000.  <u>Weiss's demands that Kotva purchase BGO's shares in Kotva and Trend have nothing to do with the subject matter of the Czech litigation that Weiss filed</u>.

- **December 2004**:  Another Weiss shell company, KT Inc., joins the extortion scheme against Kotva, filing a claim identical to the first Gilroy suit.

- **February 2005**:  After almost six months of investigation, including court-approved wire-taps, the Czech Police charge Weiss and two associates with extortion.

- **March 2005**:  Contrary to previous denials, Weiss reverses course and admits that he did indeed instigate the Czech litigation against Kotva by instructing his lawyers to take legal action "to protect the interests of BGO and its investors." Compl. Ex. E.  None of the lawsuits, however, were filed by BGO, and none deals with an obligation of Kotva to buy Weiss's shares.

As discussed below, Kotva's request for *in camera* review under the crime fraud exception should be granted, and the sanctions imposed by the Order should be overruled.

## ARGUMENT

I.    **Kotva's Has Repeatedly Satisfied the Standard for *In Camera* Review Under the Crime Fraud Exception.**

The standard for *in camera* review in the context of the crime-fraud exception is exceedingly relaxed.  Kotva need only demonstrate a factual basis that would support a good faith belief by a reasonable person that "*in camera* review of the materials <u>may</u> <u>reveal</u>[5] evidence to establish a claim that the crime-fraud exception applies."  <u>In re Grand Jury Proceedings</u>, 417 F.R.D. 18 at 22, 23 (1st Cir. 2005) (emphasis added).  Kotva has more than demonstrated a factual basis for a reasonable person to have a good faith belief that the materials in question <u>may</u> <u>reveal</u> the Czech litigation was part of an extortionate scheme by Weiss against Kotva.  Kotva also has offered to shoulder the cost of the review it has requested.[6]  The Special Master, however, misinterpreted the law, applied the wrong standard, and declined to conduct a full review.

Instead of the "may reveal" test, both the September Order and the November Order impose too heavy a burden on Kotva:  requiring Kotva to demonstrate that the Czech litigation has "no objective merit."[7]  (September Order at 14); "Kotva says it has ample evidence of such [extortionate demands].  It is difficult to see, then, why it is necessary to invade the attorney-

---

[5]  "'May' is a very relaxed test and, as only the judge gets this initial access, properly so."  <u>Id</u>.

[6]  The Special Master conducted a limited *in camera* review of some documents, indicated that the process is not as time-consuming as anticipated, and, during the last hearing, indicated she was inclined to conduct a full *in camera* review of the documents Kotva had designated.  Kotva is still amenable to paying for the review should the Court order it.

[7]  Even so, the Gilroy and KT lawsuits against Kotva do demonstrate no objective merit.  Gilroy and KT were objecting to transfers of the Kotva Department Store prior to either of them being a Kotva shareholder.  In dismissing Gilroy's lawsuit, the Czech court confirmed that the "Plaintiff [Gilroy] however, has no legal relation to the real property the determination of whose ownership he had sought," and further stated, "Undoubtedly, the Plaintiff had information about the changes in the registry of legal relations in the Land Registry prior to having bought any share in the company Kotva, a.s.''

client privilege to fish for additional evidence." (November Order at 8). Simply put, review is necessary because the evidence suggests that the crime-fraud exception is in play.

If the crime fraud exception does not apply, then the privilege remains intact, the opposing party does not receive the documents, and there is no "invasion." Similarly, when the exception applies, there is no "invasion" of the privilege because there is no privilege. The misunderstanding about this fundamental point appears to be the cause for the significant confusion in the Special Master's orders concerning Kotva's requests for *in camera* review. For example, the Special Master has expressed reluctance to conduct an *in camera* review because, "Kotva is the target of the litigation at issue and would stand to benefit from the disclosure of attorney-client communications quite apart from whether they evidence extortion." Order at 9. That analysis misses the mark.[8] Attorney-client communications that do not fall under the crime-fraud exception would not be revealed to Kotva. And communications that do fall under the crime-fraud exception are not privileged status and deserve no protection.

The orders also have been inconsistent with respect to the showing Kotva has made to justify *in camera* review in this case. The September Order expressly acknowledged that the Czech litigation instigated by Weiss can be part of an extortionate scheme:

> Just as the filing of litigation can constitute a tort (*e.g.*, abuse of process or malicious prosecution), it can also be a predicate act in furtherance of a scheme to extort or defraud. *See generally United States v. Sturm*, 870 F.2d 769, 773 (1st Cir. 1989) (discussing use of economic fear and litigation to obtain property in context of Hobbs Act prosecution).

September Order at 14. Nevertheless, that Order trivialized the substantial evidence Kotva had presented regarding Weiss's use of litigation as part of his extortionate scheme.

---

[8] In the first place, the documents will be reviewed by the Special Master, not Kotva. In its Motion for Sanctions, Kotva requested the review of all communications between May and December. In response to the Special Master's request during the August 30, 2006 hearing, Kotva substantially scaled back its request in its September 18, 2006 Supplement. Moreover, the likelihood that *in camera* review may reveal evidence that the crime-fraud exception applies far outweighs any possible prejudice to the Weiss Defendants.

In the May Order, the Special Master explained that the lawsuit and the allegations in the

Complaint provided "evidence" of Weiss's extortion:

> the fact of the litigation speaks for itself.  If extortion was intended, one would
> expect that there would be non-privileged communications, *e.g.*, extortionate
> demands made to Kotva, demonstrating such intent.  <u>And, indeed, the complaint
> alleges such demands</u>.  It is difficult to see what the attorney-client
> communications and work product would materially add to this evidence that is
> not piling on.

May Order at 5 (emphasis added).   <u>There are at least three written extortionate demands from

Weiss attached as exhibits to the Complaint</u>.  <u>See</u> Compl. Exs. A-C.  The September Order,

however, disregards this evidence, which Kotva had already identified:

> As I noted in the May 26 Order, I would expect the evidence of extortion would
> be the demands Weiss made to Kotva, evidence which would logically be in
> Kotva's possession, *and yet that evidence has not been forthcoming*.

September Order at 15 (emphasis added).   The reversal from "piling on" to an alleged absence

of evidence is confusing.  The Special Master attempted to explain this contradiction in the

November Order:

> Even a slam-dunk extortion case does not justify, by itself, invading the attorney-
> client privilege.  There has to be some indication that counsel was involved in the
> extortion, counseled the extortion, aided it.  And, so, there are simultaneously
> considerations of both piling on and insufficiency which militate against invading
> the privilege.

November Order at 8-9.  But Kotva has also provided evidence indicating the involvement of

Weiss's Czech counsel in the extortion scheme.  *See* Complaint Exs. D and F.

The fact that Weiss's extortion scheme involved litigation calls for <u>more</u> <u>scrutiny</u> of

allegedly privileged communications in this case, not less.  The September Order, however,

again revealed an overly narrow approach to *in camera* review by focusing only on the

challenged entries themselves:  "Since <u>none of the entries</u> suggests that the content of the

documents furthered a crime or a fraud, I decline to review documents that are amply described

and obviously privileged." September Order at 10 (emphasis added). In the context of crime-fraud, however, it cannot be concluded that the documents are "obviously privileged" <u>without reviewing the documents themselves</u>. The allegedly privileged materials, moreover, must be viewed <u>in the context of the overall extortionate scheme, not in isolation</u>.[9]

This case involves much more than an unsupported allegation that the crime fraud exception might apply. Kotva has provided evidence of Weiss's extortionate demands, both verbal and written. Moreover, the timing of the Weiss-instigated litigation (just after Weiss learned of the pending Department Store sale and Kotva's refusal to accede to his demands), the subject-matter of the litigation (completely unrelated to the purchase of BGO shares, *i.e.*, seeking to reverse Kotva corporate acts that occurred before the litigants were Kotva shareholders),[10] the manner in which the litigation was filed (through shell companies that purchased nominal shares of Kotva), and the documents that have been produced by Weiss in this case (admitting to various standing problems and deficiencies about the Czech claims) all suggest that Weiss's litigation was part of an extortionate scheme.

In addition, criminal charges have been filed against Weiss in the Czech Republic--following months of investigation by the Czech authorities. The Czech authorities have been unwavering in their refusal to drop the criminal charges against Weiss despite repeated attempts

---

[9] Application of the crime-fraud exception necessarily involves the review of communications that could be described as "litigation strategy." If attorney-client communications and work product were not at issue, there would be no need to challenge the materials under the crime-fraud exception. It is precisely the disadvantage of not knowing the content of documents withheld as privileged that leads to such a low burden for justifying *in camera* review.

[10] Weiss did not resort "to litigation in order to preserve the value of BGO's shares in Kotva and to prevent the dissipation of the proceeds of the sale of the Department Store through 'tunnelling' via various Kotva subsidiaries and affiliates." Sept. Order at 14-15. None of the litigation was brought by BGO. And none of the litigation sought to force Kotva to purchase BGO's shares. The Czech litigation involved matters wholly unrelated to BGO, filed by shell companies with no standing (<u>e.g.</u>, Gilroy's nominal purchase of Kotva shares the day before it filed suit to challenge a transfer that happened years earlier). <u>If Weiss's litigation was supposed to be about preserving the value of "BGO's shares in Kotva," why was Weiss also demanding that Kotva repurchase BGO's shares in Trend?</u> <u>See</u> Compl. Ex. C. KT and Gilroy had no claim or right to demand that Kotva should purchase BGO's Kotva and Trend shares.

by Weiss to have representatives of the United States Government intervene and pressure the

Czech Government.  Furthermore, in January 2006, at Weiss' own request, the High State

Prosecutor in Prague conducted a review of the municipal prosecutor's conduct, and concluded

that "the unlawfulness of [Weiss'] conduct does not consist in the mere filing of said civil

lawsuits but on the fact that these lawsuits were intended to serve as an instrument of pressure

with the intention to gain unlawful benefits from the sale of securities…"  See Ex. 3.  The weight

of the combined facts presented by Kotva that Weiss's Czech litigation was part of an

extortionate scheme satisfies the "may reveal" test and justifies *in camera* review.

II.    **Kotva Should Not Be Sanctioned for Seeking Subject Matter Waiver and the Court**
       **Should Find that the Weiss Defendants' Intentional and Inadvertent Disclosures did**
       **Effect a Subject Matter Waiver.**

Kotva learned from the documents the Special Master ordered Weiss to produce as part

of the May Order that the Weiss Defendants had made numerous intentional disclosures of

allegedly privileged materials to third parties, including the State Department.  The disclosures to

the State Department, moreover, were made in the face of discovery requests from Kotva that

expressly called for the production of communications between Weiss and the State Department.

In other words, the Weiss Defendants knew at the time they made such disclosures that the

communications were subject to Kotva's discovery demands in this litigation.  Kotva also sought

subject matter waiver with respect to several documents the Weiss Defendants alleged were

produced inadvertently.

In the September Order, the Special Master listed four reasons why she was inclined to

impose sanctions against Kotva for seeking subject matter waiver:

> (1)  that Kotva "failed to disclose" in its motion that two of the privileged documents
> disclosed by Weiss to the State Department were also exhibits to the Complaint;

(2)  that Kotva did not cite a decision regarding "extra-judicial" disclosures in its motion and later discussed the decision only in a footnote (despite Kotva's position that the decision is not controlling);

(3)  that Kotva stated in its general objections to written discovery responses that any inadvertent production of its own privileged documents does not constitute a waiver and was therefore estopped from asserting the argument against Weiss; and

(4)  that subject matter waiver was not discussed as part of the Rule 37.1 conference regarding Weiss's deficient privilege log.

Id. at 18.  Kotva demonstrated that none of these reasons warranted sanctions.  "For all these reasons, singly and in combination," however, the Special Master concluded that there was no substantial basis for Kotva to move to compel on the basis of inadvertent disclosure and imposed sanctions against Kotva. Order at 7.  As discussed below, the Special Master continues to misapprehend Kotva's intentional waiver argument, makes erroneous and unsupported conclusions of law, and applies internally inconsistent standards with respect to meet and confer requirements.

A.  **Weiss's Voluntary Disclosure of Exhibits I and J Long After the Complaint was Filed, While He Continued to Claim Privilege for the Documents, Makes Subject Matter Waiver Appropriate**

Two of the documents that Weiss disclosed to the State Department in March 2006, Exhibits I and J to Kotva's motion, were attached by Kotva as Exhibits D and F to the Complaint.  Those documents had been seized by the Czech authorities and were previously available as part of the Czech criminal file against Andrew Weiss.  In its April motion to compel, Kotva directed the Special Master's attention to these specific documents as exhibits to Kotva's Complaint.[11]  Kotva, however, never previously argued that the documents effected a subject matter waiver because it understood that the Weiss Defendants still considered them to be

---

[11]  "Indeed, the Czech Police have seized documents and communications between Weiss, Hoffmann, and an attorney, Peterka, in connection with the criminal investigation, some of which were previously available and are attached as exhibits to the Complaint.  (See Compl. Exs. D & F.)"  April 3, 2006 Mem. at 18.

privileged.  The Weiss Defendants subsequently abandoned their position and voluntarily

destroyed the privilege by disseminating the documents to third parties.

There is no doubt that Weiss continued to treat the documents as privileged long after the

Complaint was filed.  See First Amended Answer & Counterclaim at ¶¶ 38, 44 (describing

documents as privileged).  Weiss's counsel later confirmed this position in a letter to Kotva's

counsel.[12]  In March 2006, Weiss's counsel disseminated these documents to third parties,

thereby destroying Weiss's position that the documents continued to be privileged.  The Special

Master's conclusion that the documents could not effect a subject matter waiver because the

documents were "already out of the bag," therefore, is erroneous.

The subsequent disclosure by Weiss--while he continued to assert privilege for the

documents-- destroyed the privilege in a way that triggered subject matter waiver.  Kotva

explained its argument and the relevant facts in briefing to the Special Master before she issued

the November 17, 2006 Order.  Nevertheless, the Special Master failed to address either the facts

or Kotva's argument.  Instead, she insinuated that Kotva intended to deceive her about the nature

of Exhibits I and J to its motion.  This conclusion is belied by the nature of Kotva's argument

(that subsequent disclosure was the trigger), by the representations of Weiss's counsel (that the

documents continued to be privileged despite inclusion in the Complaint), by Kotva's previous

submissions to the Special Master (directing her attention to Complaint Exhibits D and F), and

---

[12]   In a November 3, 2005 Letter to Mr. Beckman, Mr. Leibensperger wrote:

> I write regarding certain documents in your possession that are protected by the attorney-client privilege
> and work product doctrine.  Two of the exhibits attached to Kotva's complaint in this case--exhibits D and
> F--as well as some of the documents you produced to us on October 21, 2005, reflect communications
> between some of the counterclaim-plaintiffs and their attorney, Ondrej Peterka.  These communications are
> protected by the attorney-client privilege.  They are also protected by the work product doctrine.  As far as
> we know, no one has authorized the release of these memoranda or any similar documents that Kotva may
> possess.  Accordingly, there has been no waiver of the privilege.

(emphasis added).  A copy of the letter is attached hereto as Ex. 4.

by the Complaint itself (which had been provided to the Special Master).   In short, subject

matter waiver was effected and there is no basis for sanctioning Kotva.

  **B.**  **The <u>XYZ Corp.</u> Decision is Inapposite Because the Disclosures at Issue in this Case Were Not "Extrajudicial."**

  The second reason the Special Master cited for imposing sanctions against Kotva for its

subject matter waiver argument was Kotva's failure to cite <u>XYZ Corp. v. United States (In re

Keeper of the Records)</u>, 348 F.3d 16 (1st Cir. 2003) with respect to Weiss's intentional

disclosures to third parties.  Both during the August 30, 2006 hearing and in subsequent briefing,

however, Kotva explained its position that <u>XYZ Corp.</u> is <u>not</u> controlling authority in this case.

<u>XYZ Corp.</u> articulates an <u>exception</u> to the subject matter waiver rule that applies only to

disclosures that are "extrajudicial" in nature.

  What constitutes a "judicial" disclosure as opposed to an "extrajudicial" disclosure is an

uncertain and murky area, as the First Circuit itself acknowledged in <u>XYZ Corp.</u>:

> Although plotting the precise line that separates judicial disclosures from
> extrajudicial disclosures sometimes can be difficult, no such difficulties are
> presented here.  The call took place entirely outside the judicial context.  The
> parties to it were co-venturers bent on ironing out wrinkles and reaching a joint
> business decision.

<u>Id.</u> at 25.  The only guidance that the First Circuit provides is that a judicial disclosure is "a

disclosure made in the course of a judicial proceeding."  Id. at 24.  The disclosures at issue,

although made to third parties, precisely fit that bill.

  The disclosures were made during the course of a judicial proceeding and <u>in the face of

pending discovery requests that expressly called for their production to the Plaintiff</u>.  Without

explanation or analysis, however, the Special Master provided a conclusory, one-sentence

finding that the disclosures were "extrajudicial" (September Order at 18); and, again without

analysis, characterized Kotva's argument as "frivolous" (Order at 6).  The very different facts at

play in <u>XYZ Corp.</u>, however, and the "judicial" nature of the disclosures in this case demonstrate

that <u>XYZ Corp.</u> is inapposite.  Because the Weiss disclosures highlighted by Kotva are not

"extrajudicial," the case does not control and its omission cannot be the basis for sanctions

against Kotva.[13]

Weiss took affirmative action to send protected information to the State Department in an

effort to influence both this litigation and the criminal proceedings to his benefit.  Weiss made

those disclosures, moreover, in the face of  Plaintiff's <u>pending</u> discovery demands that expressly

called for the production of communications with the State Department.[14]   In other words, in

making these disclosures to the State Department, Weiss knew that he had to produce the same

materials in response to Plaintiff's discovery requests in this action.  This point is critical.  As

soon as Weiss made voluntarily disclosures in the course of this judicial proceeding--disclosures

that were simultaneously subject to Plaintiff's discovery demands--he removed any doubt about

the nature of the disclosures.  The knowing waiver of privileged material in the face of pending

document requests satisfies even the narrowest definition of judicial disclosure.

The fact that the Special Master considers the citation of authority to be an appropriate

reason to impose sanctions raises questions of fairness.  The Special Master did not consider

---

[13]  In <u>XYZ Corp.</u>, the government alleged that XYZ had waived the attorney-client privilege and work product protection as the result of a telephone call between XYZ and its business partner in which XYZ's outside counsel participated.  <u>Id.</u> at 21.  At the time of the call--and unlike the disclosures by Weiss--<u>no litigation was pending or anticipated</u>.  Several years later, after XYZ had refused to agree to repeated requests for a voluntary waiver of privilege, the government alleged waiver on the ground that XYZ's counsel had provided legal advice in the presence of third parties and had disclosed previously provided legal advice during the call.  <u>Id.</u> at 21.  In refusing to endorse the District Court's broad finding of subject matter waiver (which was unlimited in time and exceeded even the government's request), the First Circuit stressed the business nature of the call and the lack of any judicial proceedings at the time of the alleged waiver.  Citing Weinstein's <u>Federal Evidence</u>, the First Circuit explained that a common denominator in implied waiver cases is that "the party asserting the privilege placed protected information in issue for personal benefit through some affirmative act."  <u>Id.</u> at 24.   Unlike the party in <u>XYZ</u>, that is exactly what Weiss did.

[14]  "62.  All documents concerning and communications with the State Department of the United States as referenced on page 10 of the Memorandum in Support of Motion to Compel Production of Documents dated September 23, 2005."  Kotva's First Request for Production of Documents served on December 21, 2005.

sanctions to be appropriate when Weiss's counsel failed to cite <u>United States v. Balsys</u>, 524 U.S. 666 (1998), controlling United States Supreme Court precedent. Weiss previously moved for a protective order to put off his deposition, arguing that he should not be forced to choose whether to invoke the Fifth Amendment.[15] Weiss is not entitled to lenient treatment for failing to cite plainly controlling precedent from the United States Supreme Court, while Kotva is subject to penalty for not citing a First Circuit decision of questionable--at best--applicability.

### C. Kotva's Own General Objections Do Not Support an Estoppel Argument-- The Objection Presumes Reasonable Precautions Pursuant to <u>Amgen.</u>

With respect to subject matter waiver and the inadvertent production of privileged materials, the Special Master considers sanctions against Kotva to be appropriate because Kotva did not address its own position on the subject of inadvertent production. Kotva stated in the general objections section of its document responses that the inadvertent production of privileged documents would not work a waiver. Weiss made a similar objection. There was no agreement between the parties on this point, however, that would entitle either to deviate from this Circuit's precedent. In other words, both parties' objections are--and must be--subject to the jurisdiction's authority. Neither Kotva nor Weiss can divorce themselves from such authority. In this case, both parties' general objections must be interpreted to presume the application of <u>Amgen's</u> reasonable precautions test.[16] The Weiss Defendants have not argued to the contrary.

---

[15] Weiss argued that: "If the Court does not enter a protective order, Mr. Weiss will be unfairly forced to choose whether to exercise his constitutional rights in a criminal case [in the Czech Republic] and suffering the consequences in a civil case." Memorandum in Support of Weiss Motion for Protective Order at 14. The Supreme Court expressly held in <u>Balsys</u>, however, that the Fifth Amendment privilege against self-incrimination does not extend to foreign criminal proceedings.

[16] <u>Amgen Inc., v. Hoechst Marion Roussel, Inc.</u>, 190 F.R.D. 287, 292 (D. Mass. 2000). Under the <u>Amgen</u> test, the Court examines five factors for whether the inadvertent production of privileged material works a waiver: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure; (2) the amount of time it took the producing party to recognize its error; (3) the scope of the production; (4) the extent of the inadvertent disclosure; and (5) the overriding interest of fairness and justice.

The Special Master's Order, however, holds that "[t]here is no basis for presuming any such condition." This is not the law. In the absence of an agreement, parties cannot pick and choose which aspects of the law apply to them. Kotva's own position regarding the inadvertent production of privileged material, therefore, is irrelevant to the question of whether Weiss's productions effected a waiver. In sum, the Special Master's "estoppel" theory does not justify the imposition of sanctions against Kotva.

> D.     **Rule 37.1 Did Not Apply to the Questions of Waiver Addressed in Kotva's Motion**

Finally, the fact that Kotva did not include the issue of subject matter waiver as part of the Rule 37.1 conference regarding Weiss's deficient privilege log does not warrant the imposition of sanctions. Kotva reasonably interpreted the Special Master's May Order, which addressed many of the same discovery issues raised in Kotva's previous motion, to allow its request for a finding of subject matter waiver:

> To the extent that the parties dispute specific claims of privilege notwithstanding this general directive, <u>a motion describing the specific document or documents and the claim of privilege or waiver may be filed</u>.

May Order at 7 (emphasis added). The issue of subject matter waiver and the scope of such waiver, moreover, are purely questions of law. Since they are not discovery issues that can be narrowed, the rationale for a Rule 37.1 conference does not apply. For example, as evidenced by the Weiss Defendants' opposition to Kotva's request for subject matter waiver, the issue of whether or not the privilege has been waived was and is contested and could not be narrowed. Further, there is no reason to treat this portion of Kotva's motion differently than its renewed request for *in camera* review, which did not warrant sanctions (the Special Master considered Kotva's argument, finding that it "remain[ed] an option" September Order at 15).

Once again, the imposition of sanctions against Kotva on this rationale raises questions of fairness. In the November Order, the Special Master states that, "Nothing is to be gained by circumventing Rule 37.1 and I never suggested that any category of motions lay outside its scope." Order at 6. Yet just two pages earlier, the Special Master fails to apply the same standard to the Weiss Defendants. In fact, the Special Master rewards the Weiss Defendants and sanctions Kotva for an issue that was not raised in a Rule 37.1 conference and not presented as part of a motion to compel. Despite the Special Master's pronouncement concerning the merits of the Rule 37.1 process and its purported uniform application, this was not the first time the Weiss Defendants circumvented the meet and confer process and benefited from it.[17] In short, if the Special Master is going to apply a rigorous standard regarding motion practice, it should be applied evenly to both parties.

## II.    Kotva Should Not Be Sanctioned For an Issue that Was Not the Subject of Any Motion to Compel and Was Not Before the Special Master for Consideration.

In opposition to Kotva's motion to compel regarding Weiss's deficient privilege log, Weiss raised irrelevant issues about two email chains that Kotva had produced--issues that were not discussed during any 37.1 conference and not presented as part of a motion to compel. Instead of applying the standard pronounced in the November Order, however, the Special Master entertained the Weiss Defendants' allegations, and ultimately ruled against Kotva. Indeed, the Special Master sanctioned Kotva to compensate Weiss for costs and fees in connection with this matter. Ironically, those costs and fees directly resulted from the Special Master's review of an issue that was not properly before her. Order at 4. The Special Master

---

[17]   The Weiss Defendants received the benefit of two protective orders in this case without filing any motion for such relief. In both cases, the Special Master considered arguments raised by the Weiss Defendants' in opposition briefs to Kotva's motions. This tactic has the obvious benefit of depriving Kotva of the opportunity to submit opposition briefing.

also ordered Kotva to provide an affidavit regarding this issue.  Kotva has provided that

affidavit.  It demonstrates there was no substance to this issue--which would have been revealed

during a Rule 37.1 conference.  The imposition of sanctions on this issue, therefore, is entirely

inappropriate, and Kotva respectfully requests the Court to overrule those sanctions.

III.    **The Sanctions Imposed Against Kotva and the Failure to Impose Sanctions Against Weiss is Inequitable and Should be Overruled.**

Kotva's August 11, 2006 motion to compel Weiss to answer interrogatories and

document requests was granted in part and denied in part.  Despite prevailing on a portion of this

motion, the Special Master sanctioned Kotva by shifting the costs for the parts of the motion that

were denied.  She did not, however, apply the same standard and shift costs to Weiss for the

portion of the motion on which Kotva prevailed.  As noted above, the Special Master also

refused to sanction Weiss for failure to comply with May Order.[18]

At a minimum, costs should be shifted to Weiss with respect to their refusal to provide

discovery regarding Kotva's RICO claim, which necessitated the motion to compel.  A more

reasonable approach, however, would be to overrule the sanctions provided in the Order and

apportion costs to each side.  Although Weiss requested sanctions for the five requests that were

denied, those requests were substantially justified and do not warrant sanctions.

---

[18]    *See* September Order at 8-9:

> Reviewing the July 10 log, I find that in some cases Weiss's description does not adequately describe the basis for the invocation of a privilege without reviewing the document and having additional information about the parties to the communication and the purpose of the communication.  The August 8 log is more complete, but in a few instances, it is, as Kotva contends, impossible to assess whether certain claims of attorney-client or work-product privilege is fairly invoked from the privilege log, even giving full credence to the accuracy of the description.  There is insufficient detail to demonstrate the existence of a confidential relationship and that the document is entitled to protection as a legal, as opposed to a business, communication.

> I accept Kotva's suggestion of a staged review of documents . . .

## <u>CONCLUSION</u>

For the foregoing reasons, Kotva requests that the Court grant its objections and overrule the Special Master's November 17, 2006 Order, and grant Kotva's request for *in camera* review.

Respectfully submitted,

KOTVA A.S.

By its attorneys,

/s/ Joel G. Beckman
Joel G. Beckman (BBO# 553086)
William C. Nystrom (BBO# 559656)
Daniel J. Pasquarello (BB0# 647379)
NYSTROM BECKMAN & PARIS LLP
10 St. James Ave., 16th Floor
Boston, Massachusetts 02116
(617) 778-9100
(617) 778-9110 (fax)
jbeckman@nbparis.com
wnystrom@nbparis.com
dpasquarello@nbparis.com

## <u>REQUEST FOR ORAL ARGUMENT</u>

Pursuant to Local Rule 7.1(D), Kotva believes that oral argument may assist the Court and requests to be heard.

## <u>LOCAL RULE 37.1(B) CERTIFICATION</u>

The issues in this motion have been the subject of a meet and confer process and hearing before the Discovery Master, as well as a separate meet and confer process that was initiated on January 18, 2007 and concluded on January 19, 2007.

<u>/s/ Daniel J. Pasquarello</u>
Daniel J. Pasquarello (BB0# 647379)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 19th day of January, 2007.

<u>/s/ Daniel Pasquarello</u>

Dated: January 19, 2007

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KOTVA A.S.,                    )
                              )
                              )        Civil Action No. 05-10679-RCL
        v.                     )
                              )
WEISS, ET AL.                  )

ORDER OF SPECIAL MASTER
November 17, 2006

After review of the parties' submissions on the Orders to Show Cause issued on

September 29, 2006, and after hearing via teleconference held on November 13, 2006, at which

all parties were represented, it is hereby ORDERED:

**1.      Kotva's Motion for Sanctions and to Compel, filed August 2, 2006**

**A.      Preparation of Privilege Logs and Invocation of Privilege**

After review of the parties' memoranda and their *in camera* submissions of documents

pursuant to the Order of September 29, 2006 ["September 29 Order"], I find that the invocations

of privilege and preparation of the privilege logs, while not in my judgment error-free, were

prepared by both parties in good faith and mindful of the applicable principles of law.  Preparation

of the logs was an onerous task, particularly for the Weiss defendants, and I find that there was

substantial basis for counsels' positions even where I disagreed with them.  Most of the

documents which I ordered to be produced after *in camera* review were cover emails which were

of marginal, if any, relevance.  Others were portions of documents that contained both business

and legal advice; it required careful hairsplitting to untangle the legal and business advice in a

given communication.  Reasonable minds might disagree with the judgments Weiss's counsel

made in invoking the privilege and with my decisions with respect to any particular document.

This extends to documents 1039 and 1100, which relate to the course of negotiations between Benda and Weiss, and Hoffman's advice with respect to these negotiations. Hoffman's advice interweaves legal and business advice, and the potential outcomes of litigation weigh into the negotiation strategy. These documents might reasonably be characterized either as business or legal communications. In truth, they are both, not unlike what I surmise is the vast majority of legal communications concerning business affairs that are routinely withheld as privileged. Whether on balance the documents should be protected is, without a question, a close call. I do not see evidence that either party has tried to hide the ball without substantial basis or that Weiss's revision of the log in response to my May 26, 2006 Order was contumacious or lacked substantial basis. That Kotva successfully pushed for additional disclosures does not warrant the imposition of sanctions where Weiss's compliance with the Order was substantially complete and generally justified. As I have noted before, Kotva's insistence that each and every document withheld on the basis of privilege must identify an attorney and a lawsuit or other matter to which the advice pertains is rejected. The attorney-client and work product privileges serve to protect communications concerning legal advice sought, to be sought, or obtained where no attorney at all may be in the chain of transmission of the specific document at issue. Accordingly, no sanctions will be awarded with respect to the motion filed by Kotva challenging Weiss's invocation of privilege or preparation of the privilege log. Each party shall bear its own costs and fees with respect to Kotva's challenge to the privilege log.

### B.    Exhibits F and G to Weiss's Memorandum

The Order of September 29 ordered Kotva to explain why the attachments to the emails submitted as Exhibits F and G to Weiss's Memorandum in Opposition were neither logged nor

produced.  Kotva's response, contained in its memorandum entitled Kotva's Response to the

Special Master's September 29, 2006 Order with respect to the Issue of Subject Matter Waiver, is

that Kotva "obviously produced these documents [Exhibits F and G] to Weiss" because the

documents bear Kotva Bates numbers.  Response, 9.  Kotva states that Weiss is well aware that

there were no attachments to the emails.  Kotva further responds that the documents referred to

in the emails were produced, specifically Kotva's response to the Gilroy complaint (K6147-6152).

Weiss counters that the emails plainly had attachments.

It is uncontested that Kotva produced the documents identified as Exhibits F (K1975-

1976) and G (K2241).  That is not the issue.  The issue is whether Kotva improperly withheld or

failed to log documents referred to in those emails.  Exhibit F consists of an email from Bryan

Wilson to Richard Harazim dated August 19, 2004.  An earlier message in the chain reproduced

in the document, from Harazim to Wilson, is dated August 17.  In it, Harazim states:  "Bryan

This is the submission we intend to file."  And below that is a message from Jan Nekola to

Richard Harazim dated August 17, 2004.  Plainly, the document referred to as the "submission"

was sent to Wilson because his message refers to its contents.

Kotva represents that the document referred to in the August 17 emails was produced as

K6147-6152.  Obviously, the documents were not numbered consecutive to or even near the

August 19 email; it is difficult to see how Weiss would have been made aware of the connection

between the two sets of documents produced thousands of pages apart from each other.

Moreover,  Kotva offers no explanation for the failure to produce the original transmittal emails

reproduced in Exhibit F.

Exhibit G (K2241-42) consists of an email chain spanning September 10, 2004 to October

11, 2004. On the earlier date, Jan Nekola sent to Harazim a message regarding Gilroy, which is not included in the email trail (the body of the email seems to contain only the standard system warning about confidentiality, in English and apparently in Czech). On October 11, 2004, Harazim forwarded the message to Bryan Wilson with the message "This is the defense." While Kotva, in its Response, asserts that there was no attachment and that the email refers to the same document as Exhibit F refers to, that claim is made without benefit of affidavit and does not ring true. Why would Harazim send the same document to Wilson in October that he sent him in August? I am not satisfied that the two emails refer to the same document and I am not satisfied with Kotva's response. Kotva is ORDERED to supplement its response with appropriate factual support, meaning an affidavit from a person with knowledge of the asserted facts, within two weeks of the date of this Order, and to pay Weiss $600 in costs and fees in connection with my review of the issue and Weiss's memorandum in response to Kotva's argument.

## C.    Subject Matter Waiver

In the September 29 Order, I listed four reasons why I concluded that sanctions should be imposed against Kotva with respect to its argument that Weiss's "disclosure" of Exhibits G, H, I, J, L, and M effects a broad subject matter waiver as to vitiate the privilege with respect to all communications on the same subjects. Kotva, through its counsel, submitted a Response consisting of a memorandum of law and attached exhibits. Although the Response makes numerous assertions of fact, no affidavits of either Kotva or counsel attesting to such facts were submitted in response to the Order.

Kotva's Response consists of the following arguments: (1) the Special Master's Order "provides a window into a tendency in this case to apply a double standard of leniency to Weiss,

4

but penalty to Kotva when it comes to discovery obligations" (Response, 2); (2) there was no intention to conceal the fact that Exhibits I and J had been attached to the complaint as Exhibits D and F; (3) *XYZ Corp. v. United States (In re Keeper of the Records)*, 348 F.3d 16 (1st Cir. 2003), is not controlling authority which Kotva was obligated to cite; (4) Rule 37.1 did not apply to the question of subject matter waiver; and (5) Kotva's general objection relating to inadvertent disclosure presumed reasonable precaution pursuant to *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 290 F.R.D. 287, 292 (D. Mass. 2000).

The first argument does not pertain to the merits of the issue and will not be addressed herein. If Kotva believes in good faith that the Orders reflect bias, its argument is best raised in a motion for reconsideration directed to the District Court.

As to the second, whether or not there was a conscious intention to deceive, the fact is that Kotva's counsel knew and should have brought to my attention that the documents were already part of the public record at the time Weiss disclosed them to third parties. Had Kotva done so, it would have been free to argue the proposition that Weiss's subsequent disclosure effected a subject-matter waiver. Instead, Kotva led me to believe *sub silentio* that the documents had been private at the time Weiss disclosed them to the State Department. Moreover, its claim that there was no intention to deceive is belied by the fact that Kotva did not attach to its motion copies of Exhibit D and F to the complaint, but rather the Bates-stamped copies Weiss produced in discovery, minus the cover sheets which were sequentially numbered and which identified the documents as exhibits to the complaint.

As to the argument that *XYZ* is not controlling authority, I disagree. Had Kotva argued that it simply missed *XYZ* in preparing to file its motion with respect to subject matter waiver, the

5

failure might have been excused, but to justify the failure to cite it on the ground that it is not controlling warrants censure.  The case plainly establishes the controlling principle that no subject matter waiver is effected when the disclosure is extra-judicial.  Whether or not Kotva could properly advance what I consider to be the frivolous argument that disclosure to the State Department is not "extra-judicial," Kotva was required to acknowledge the test established in *XYZ Corp.* and face up to it.  Instead, it ignored it as inapposite and continues to take that position in its Response.  Finally, Kotva failed to reveal that the disclosure to the State Department was not in the context of arguing the merits of Weiss's position in the litigation, but rather to demonstrate that the Czech police had invaded Weiss's attorney-client privilege by disclosing to Kotva documents it had seized and which Kotva then made public.

Kotva's justification for not raising this issue in a Rule 37.1 conference is rejected.  Kotva relies on a provision of the May 26 Order which relates to disputes about the scope of the privilege as it pertains to the Weiss-Hoffmann communications.  Moreover, there is nothing in that provision that operates to exempt even motions related to the Weiss-Hoffmann communications from the requirements of Rule 37.1.  Nothing is to be gained by circumventing Rule 37.1 and I never suggested that any category of motions lay outside its scope.

Kotva argues that it need not have mentioned that it had taken the position in its own discovery responses that inadvertent disclosure of privileged documents would not effect a subject matter waiver.  The argument is premised on the notion, raised for the first time in response to the order to show cause, that its general objection presumed that reasonable precautions had been taken to prevent disclosure.

There is no basis for presuming any such condition, which is nowhere stated or implied in

6

the general objection, which reads: "In the event that Kotva produces any privileged document, its production is inadvertent and does not constitute a waiver of privilege." It defies logic that counsel would have written such an objection, designed to protect its client, intending to limit such protection to a standard already provided by case law. That would make the objection nothing more than surplusage. Accordingly, I find that the argument is a *post hoc* justification for the failure to bring the issue to the Court's attention.

Even if Kotva had intended to limit its own protection for inadvertent disclosures, it was still necessary for counsel to address the issue and then to argue, if it could, that the objection did not effect an estoppel.[1]

For all these reasons, singly and in combination, I conclude that there was no substantial basis for counsel's moving to compel production of privileged documents on the basis of Weiss's inadvertent disclosure of Exhibits G and H. Accordingly, I impose sanctions on Nystrom Beckman & Paris LLP, as counsel to Kotva, in the amount of $ 3,000,[2] payable to the Weiss defendants, through their counsel, as reasonable reimbursement of the defendants' costs and expenses incurred in connection with the subject matter waiver issue.

## II.    Kotva's Motion to Compel, filed August 11, 2006

In the September 29 Order, I ordered the parties to submit affidavits concerning fees and expenses and to show cause why such fees and costs should not be apportioned between them

---

[1]    The issue of estoppel might have been usefully fleshed out in a Rule 37.1 conference.

[2]    I have made an allocation of Weiss's attorneys' fees incurred with respect to Kotva's Motion for Sanctions and to Compel, as set forth in the Declaration of Edward P. Leibensperger, and the cost of my addressing the issue.

with respect to Kotva's Motion to Compel. Kotva's submission seeks, in essence, reconsideration of my rulings on *in camera* review under the crime-fraud exception (Kotva's Memorandum Regarding Apportionment of Fees and Costs, 8-15); argues that the September 29 Order "draws erroneous conclusions about Czech law and the Czech criminal file" (*Id.* 15-16); and argues that it was improper to treat the identities of the BIP investors as confidential information in the absence of a motion for a protective order. Again, Kotva asserts that the September 29 Order "evinces a double standard." *Id.* at 16. Counsel to Kotva submitted a declaration attesting to the fees incurred in advancing the motions to compel and for sanctions.

I see no basis to reconsider the crime-fraud issue in the context of this show-cause proceeding related to sanctions. Kotva's contention appears to be that if it has pleaded evidence of extortion, then the attorney-client privilege must yield. That is not so, any more than a company accused of criminal fraud foregoes the privilege. The communications with counsel must be shown to have furthered the extortion. Kotva's confusion between evidence of extortion and evidence that privileged communications were in furtherance of the pattern of racketeering undermines its analysis. I repeat: if an extortionate act occurred, if a pattern of extortionate acts occurred, there should be evidence of the extortionate demands, and evidence that the demands were unwarranted. And Kotva says it has ample evidence of such. It is difficult to see, then, why it is necessary to invade the attorney-client privilege to fish for additional evidence. That is the "piling on" to which the Order refers. Yet such evidence is not enough, in my view, to justify invading the privilege. Even a slam-dunk extortion case does not justify, by itself, invading the attorney-client privilege. There has to be some indication that counsel was involved in the extortion, counseled the extortion, aided it. And, so, there are simultaneously considerations of

both piling on and insufficiency which militate against invading the privilege. And, as I have

stated before, I am particularly mindful that the entity which seeks disclosure in this case is hardly

disinterested. Rather, Kotva is the target of the litigation at issue and would stand to benefit from

the disclosure of attorney-client communications quite apart from whether they evidence

extortion. Finally, I weigh certain practical considerations. The cost of *in camera* review is

substantial in light of the volume of documents at issue. Kotva has had ample opportunity to

delve into Weiss's business strategy in pursing the litigation at issue and has had extraordinary

access to privileged material by virtue of the actions of the Czech police in turning over to it

seized material. I do not see why it is necessary to invade the privilege to fish for more. Enough

is enough. Finally, the criteria to be used in winnowing problematic communications from

legitimate litigation strategy are, practically speaking, impossible to articulate. For all these

reasons, I decline to reconsider the issue.[3]

Having devoted most of its Response to an issue not pertinent to the order to show cause,

Kotva offers very little defense on the question of sanctions. Its claim that the September 29

Order misconstrues Czech law is specious since the Order never purports to characterize Czech

law. The Order was based on the Federal Rules of Civil Procedure, not Czech law. If Kotva has

rights to the Weiss criminal file under Czech law, then it should enforce such rights in a Czech

forum.

As for the BIP Investors, I did not rule only on the basis of the confidentiality of their

---

[3]    I have assumed throughout that abusive litigation could in principle constitute the
basis for a civil RICO action. That assumption has been called into question by cases cited by
Weiss, specifically, *Raney v. Allstate Insurance Co.*, 370 F.3d 1086 (11th Cir. 2004); *Deck v.
Engineered Laminates*, 349 F.3d 1253 (10th Cir. 2003); *I.S. Joseph Co. v. J. Lauritzen A/S*, 751
F.2d 265 (8th Cir. 1984), as well as two unpublished decisions of the First Circuit.

identity, but also on the attenuated relevance and undue burden of the request.  I noted that the request for the identification of family members was overkill and bordered on abusive.

Incorporating my findings as set forth in the September 29 Order and for the reasons set forth in the Weiss Parties' Memorandum in Response to Order to Show Cause, I adopt the proposal of the Weiss defendants and shift to Kotva Weiss's costs and expenses attributable to five of the seven issues raised in the Motion to Compel.  Accordingly, Kotva is to pay 71% of Weiss's attorney's fees and costs associated with defending the Motion to Compel, which amounts to $5200.  I also order Kotva to reimburse Weiss $3000 in Special Master's fees, the portion which I allocate to resolution of the Motion to Compel.

### III.     Weiss's Motion to Compel Production of Documents and Answers to Interrogatories by Richard Harazim and for Sanctions, filed August 29, 2006

Richard Harazim's negotiation for an extension of time to respond to discovery followed by a belated claim that the document requests were void *ab initio* smacks of gamesmanship outside the rules of fair play.  Surely the question of the validity of the document request could have been raised before negotiating an extension of time in which to respond.  If Mr. Harazim and his counsel believed that the document request was void *ab initio*, why did they negotiate an extension of time to respond?  I can think of only one reason: to delay resolution of the issue.

Quite apart from whether or not it was reasonable to interpret Local Rule 26.1(c) as exempting Mr. Harazim entirely from the burden of producing documents because Kotva had already responded to two sets of requests, and quite apart from the issue of whether the interrogatories were objectionable as overbroad had they been responded to in time, stands the question of the manner and means Mr. Harazim and his counsel employed to raise the issues.  The responses were filed late; there was no good excuse for failing to raise the Rule 26.1(c) issue in

10

advance of the due date; and it is simply not permissible to refuse to answer interrogatories on the grounds that the questions are better answered in a deposition.

Mr. Harazim's position on the Local Rules is colorable, although not, in my view, a reasonable one. While Mr. Harazim repeatedly refers to the "plain language" of Local Rule 26.1(c), it is in fact not very plain and case law makes clear that a purpose of the rule is to prevent a party from enduring multiple sets of discovery served by numerous opposing parties, all with the same interest. When he interposed the objection to responding to the request for documents, Mr. Harazim had not already been subjected to multiple document requests served by multiple parties with a common interest; indeed, he had responded to none.[4] I am aware of no case which interprets the Local Rule as shielding a party from responding to a single document request. Finally, whether or not Mr. Harazim was out of the office on the due date, which is asserted without benefit of affidavit, objections to the document request were filed and signed by counsel, not Mr. Harazim.

Mr. Harazim's complaint that it would be "inconsistent" to impose sanctions against him for taking the position he and his counsel did in this case is simply baseless. I have not been presented with a motion to impose sanctions on Weiss for the same conduct and am aware of none. No conduct of Weiss of which I am aware is comparable to Mr. Harazim's demonstration of disregard for the rules applicable to discovery.

I defer the question of sanctions on this Motion pending resolution of the Motion for Sanctions and to Compel Production of Documents and Answers to Interrogatories by Richard

---

[4]     While he claims that his is the same position Weiss has taken, he is in error. Weiss, unlike Mr. Harazim, had itself already responded to two sets of documents requests (including the initial disclosure), and Weiss, unlike Mr. Harazim, did in fact respond to the third.

Harazim, filed by Weiss on November 7, 2006.

So Ordered this 17th day of November, 2006.

/s/ Jeanne M. Kempthorne

_____

Special Master

"Vladimir Hoffmann" <vlado1@volny.cz>
"Andrew Weiss" <aweiss@weissasset.com>
"Ondrej Peterka" <peterka@cabinet.cz>; "Georgiy Nikitin" <georgiy@weissasset.com>
deslóno:   3. listopadu 2004 16:59
Připojit:   E-mail Andy Nov 3 2004.doc
Předmět:   Kotva/Trend

E-mail Andy, November 3, 2004

cc:    Yossi Barath
       Georgiy Nikitin
       Ondrej Peterka

Dear Andy,

Despite my numerous e-mails and phone calls I have not heard from you for at least three
weeks or so.

Yesterday Georgiy informed me that you decided to reject the latest Benda's offer of CZK
131m. Georgiy also said, that you did not want to give a counter offer, but that you might give
a counter offer later. Georgiy also told me to inform Benda that we were still open to their
potential higher offers. Georgiy did not support your decision by any rational arguments.

I believe that the decision to reject the offer is very important. This decision might result in
the total failure of negotiations which would mean lengthy and expensive lawsuits with
uncertain outcome. In my memorandums of Oct.21 and 25 I have provided comprehensive
analysis of the situation and I gave all my reasons why I believe that we should settle for CZK
131m or close.

According to my contract that expires on Jan 31, 2005 I report to the board of directors of
BGO. I respect Georgiy but he is not director as far as I know. Since I have not heard from
any member of the board and since I was not provided any rational explanation of the
decision to decline the offer I require a written confirmation signed by the board or by you
personally instructing me to reject the offer before I officially approach Benda.

Best regards,


Vlado.


P.S.: I am copying Yossi since according to my information he is director of BGO. Please
inform me if there are also other directors of BGO so that I could report to the complete
board.

K 0057

Georgiy Nikitin <gnikitin@WeissAsset.com>
**Komu:** "Vladimir Hoffmann" <vlado1@volny.cz>; "Andrew Weiss" <AWeiss@WeissAsset.com>
**Kopie:** "Hynek Peroutka" <peroutka@cabinet.cz>; "Jiri Cerny" <cerny@cabinet.cz>; "Ladislav Chundela" <chundela@cabinet.cz>; "Ondrej Peterka" <peterka@cabinet.cz>
**Odesláno:** 21. října 2004 23:09
**Připojit:** E-mail Vlado Oct 21 2004.doc
**Předmět:** RE: Kotva/Trend

My letter is attached.
Best regards,
Georgiy

Georgiy Nikitin, Ph.D

Weiss Asset Management
tel. + 1 (617) 778-7725
fax + 1 (617) 778-7781

-----Original Message-----
**From:** Vladimir Hoffmann [mailto:vlado1@volny.cz]
**Sent:** Thursday, October 21, 2004 12:29 PM
**To:** Andrew Weiss
**Cc:** Georgiy Nikitin; Hynek Peroutka; Jiri Cerny; Ladislav Chundela; Ondrej Peterka
**Subject:** Kotva/Trend

Dear Andy,

Please find enclosed the Memorandum.

Best regards,

Vlado

... ... ... .... ..................................

This email is confidential and is intended solely for the addressee(s). If you are not an addressee, you must not disclose, copy, circulate or in any other way use or rely on the information contained in this email. If received in error, please notify the sender immediately and then delete this email. Any disclosure, copying, distribution or use of this communication is prohibited and may be unlawful

Any views or opinions expressed do not necessarily represent those of Weiss Asset Management or any affiliated companies. Please note that the content of this e-mail may be intercepted, monitored or recorded for compliance purposes. Sensitive personal data should not normally be transmitted by e-mail.

Weiss Asset Management and any affiliated companies shall not be liable to the recipient or any third party for any loss or damage howsoever arising from this e-mail and/or its contents, including loss or damage caused by virus. It is the responsibility of the recipient to ensure that the opening or use of this message and any attachments shall not adversely affect systems or data.

Weiss Asset Management
29 Commonwealth Avenue
Boston, MA 02116
TEL: (617) 778-7780
FAX: (617) 778-7781
... .. ..................

To Vlado - 21 October 2004

Dear Vlado,

Thank you for the memo you wrote. Do you think you could write a similar letter to Kotva people: use the same assumptions and the same discount rates, just calculate how much they will spend on the lawsuits and how much they can get? You can consider different scenarios: settlement now, us winning, them winning, or some combination. We should give them such calculations for their consideration. We can show that if they do not settle with us, their cost of financing will be very high; and they will pay most of this increased cost since we have only 11% of the shares. Also, the total serviceability of Kotva store in the table you produced does not include the parking garage, which by itself has a large value in the downtown Prague. If they do not settle, they will be able to realize the value of the property only in several years, which will be diminished by the discount rate and discounted probability of winning the lawsuits.

It is my understanding that Andrew does not want to settle all the lawsuits if all we get for our shares in Kotva is CZK 131 million. However, he has not given me any directions regarding how to reply to Benda and Harazim. I will try to speak with him about this.

Vlado, the facts about violence that you provided are very impressive. I really hope it does not get to the point when we get personally threatened. Do you have contact information for Vladislav Kusala and Martin Razim? It would be very interesting and possibly useful to talk to them about the reasons of their resignations and their views of the situation.

Please, keep me updated on the status of KT registration with the Securities Center.

Best regards,
Georgiy

UNOFFICIAL TRANSLATION

Heading: High State Prosecutor in Prague, Criminal Division, address

Date: In Prague, January 31, 2006

Address of Mr. Topinka

Dear Sir:

On the basis of your motion of October 24 and 25, 2005, Motion to Conduct Supervision of the Conduct of Municipal Prosecutor, the High State Prosecution Department conducted supervision of the conduct of the Municipal State Prosecution Department in Prague of the criminal case against Andrew Weiss and others registered under File No. 1 KZV 38/2005.

It was established on the basis of the review of the documents for the files to the necessary extent that the State Prosecutor's conduct on these criminal proceedings was in accordance with the law.

The resolution of the police division dated Feb. 3, 2005, CTS: PSP-4035/OHK-3-2004 is in accordance with the legal requirements and the background material supporting this resolution supports the suspicion that the accused persons committed acts which would constitute the crimes specified in the resolution. Therefore, there was no reason under the law for the State Prosecutor conducting supervision over the pretrial proceedings to suspend the decision of the police investigator.

For the sake of completeness, we point out that the unlawful conduct of the accused persons was to lie in the fact that they demanded of the representatives of the company the purchase of securities were inappropriately high priced under the threat of filing civil lawsuits which should have negative impact on the running and business intentions of this company. Therefore, the unlawfulness of their conduct does not consist in the mere filing of said civil lawsuits but on the fact that these lawsuits were intended to serve as an instrument of pressure with the intention to gain unlawful benefits from the sale of securities for inappropriately high price. Of course, the aim of further investigation will be to ascertain with the help of evidence gained procedurally whether the present suspicion expressed in the resolution for initiation of criminal proceedings will be confirmed or rejected.

As to your objection consisting of the claim that the accused persons were to demand certain acts of conduct upon a legal person and that the alleged threats of causing other serious harm was directed also towards a legal person, the protected interest of the crime of blackmail couldn't have been violated, we do not share your view.

Our laws do not expressly define the concept of a legal person, but they are based on the fact that legal persons are subjects under the law, different from natural persons, they are artificially created by law and vested with the capability to have rights and obligations with the capability to perform legal and illegal acts and with the responsibilities in legal relations. A legal person may perform legal acts only through its bodies or the acts may be performed by its representative. As far as the decision-making of a legal person is concerned, it is done by its statutory bodies, usually consisting of natural persons.

WP0013770

UNOFFICIAL TRANSLATION

Therefore, we may infer that in case such natural persons will be acting on behalf of a legal person, meaning especially its statutory bodies, they are acting as the legal person. Therefore, this is a certain legal construct which is based on the concept of the very act of legal persons in legal relations. Otherwise, we would not speak of legal or illegal acts of legal persons at all because these acts are expressions of will and a legal person as such does not have any will and cannot express it.

From the above, we may conclude that it is possible to force a legal person to make a certain decision; for example, by forcing natural persons authorized to act in the name of the legal person to make decisions as its statutory bodies. We may not exclude the possibility that natural persons acting on behalf of the legal person will be forced by unlawful means, for example, physical force, threat of physical force, or threat of other serious harm to act to the detriment of this legal person or in violation of its interests which they are obliged to represent and defend. The threat may then objectively be directed against towards legal person, but at the same time it has a practical impact on persons who are forced to act on behalf of legal persons in violation of interests. Therefore, we cannot exclude the possibility of perpetrators at the above-mentioned act pursuant to the legal provisions concerning the crime of blackmail.

As to your procedural objections, we declare that the municipal state prosecutor in Prague made no mistake when they did not make a decision on your motion of September 22, 2005, as a complaint of an accused person against the resolution of the police on initiation of criminal proceedings. In the present phase of criminal proceedings, when the resolution on initiation of criminal proceedings has not been delivered to Andrew Weiss yet, the said person is not in the procedural position of an accused and therefore he doesn't have the right of an accused person.

Therefore, we may conclude from the above that a legal representative of a person who is to become an accused may not be vested with the right of a defense counsel pursuant to Article 41 of the Criminal Procedure Code. Thus, no flaws or errors were detected in the conduct of the Municipal State Prosecution Department in Prague. Your motion for review is hereby rejected as unjustified. At the same time, I'm obliged to inform you pursuant to Article 1, section 4, chapter 23/1994, concerning your motion, that further motions of identical content will not be reviewed and the Petitioner will not be informed of their delivery.

Signed "High State Prosecutor's Office".
JUDr. Vladimir Vanicek

Secretary signed because the original is in the "file", and Topinka received only a copy.

BST99 1491525-1 072198 0011

# McDermott
# Will & Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Milan
Munich New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Edward P. Leibensperger
Attorney at Law
eleibensperger@mwe.com
617.535.4046

November 3, 2005

Joel G. Beckman
Nystrom Beckman & Paris LLP
10 St. James Ave., 16th Floor
Boston, MA 02116

Re:    Kotva a.s. v. Andrew Weiss et al., C.A. No. 05-10679-RCL

Dear Joel:

I write regarding certain documents in your possession that are protected by the attorney-client privilege and work product doctrine. Two of the exhibits attached to Kotva's complaint in this case—exhibits D and F—as well as some of the documents you produced to us on October 21, 2005, reflect communications between some of the counterclaim-plaintiffs and their attorney, Ondrej Peterka. These communications are protected by the attorney-client privilege. They are also protected by the work product doctrine. As far as we know, no one has authorized the release of these memoranda or any similar documents that Kotva may possess. Accordingly, there has been no waiver of the privilege.

Kotva's Responses to Discovery Requests Nos. 15–16 indicate that Kotva may have additional similar documents. Are there any documents that are responsive to these requests that Kotva has not yet produced?

Please provide us with a copy of all privileged communications in your or your client's possession and destroy all other copies.

Very truly yours,

Edward P. Leibensperger

EPL/pmf

cc:    JUDr. Ondrej Peterka

BST99 1475285-2.072198.0012

U.S. practice conducted through McDermott Will & Emery LLP.

28 State Street  Boston, Massachusetts  02109-1775  Telephone: 617.535.4000  Facsimile: 617.535.3800  www.mwe.com