UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s., )<br><br>Plaintiff, )<br><br>v. )<br><br>ANDREW WEISS and WEISS ASSET )<br>MANAGEMENT, LLC, )<br><br>Defendants. )<br>————————————————— )<br>ANDREW WEISS, WEISS ASSET )<br>MANAGEMENT LLC, )<br><br>Counterclaim-plaintiffs, )<br><br>v. )<br><br>KOTVA a.s. and RICHARD HARAZIM, )<br><br>Counterclaim-defendants. )<br>————————————————— ) | C.A. No. 05-10679-RCL |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
OBJECTION TO DISCOVERY MASTER'S NOVEMBER 17, 2006 ORDER**

Defendants Andrew Weiss ("Weiss") and Weiss Asset Management LLC ("WAM")
(collectively, the "Defendants" or the "Weiss Parties"), hereby respond to the Objection of
plaintiff Kotva a.s. ("Kotva") to the Discovery Master's November 17, 2006 Order:

The November 17, 2006 Order decided the parties' cross-motions for sanctions. As
described in more detail below, the sanctions that the Discovery Master imposed on Kotva were
in accordance with the law and reasonable in amount. The Court should affirm them.
Additionally, Kotva's Objection seeks to challenge the Discovery Master's September 29, 2006
Order rejecting Kotva's request to conduct an *in camera* review of documents allegedly not

privileged because of the crime-fraud exception.  This challenge is too little, too late.  It was not filed within ten days of the September 29, 2006 Order and, in any event, fails to point to any new evidence suggesting that the Discovery Master was incorrect in refusing to conduct an *in camera* review in her May 26, 2006 Order or that the Court was incorrect in overruling Kotva's objection to the May 26, 2006 Order.

## I.    PROCEDURAL HISTORY

On August 1, 2005, the Weiss Parties served written discovery on Kotva.  In direct contravention of the Federal Rules of Civil Procedure, counsel for Kotva refused to produce any documents—even documents for which there was no good faith claim of confidentiality—unless the Weiss Parties agreed to a confidentiality order.  The Weiss Parties moved to compel.  After a hearing on January 6, 2006, the Discovery Master granted the Weiss Parties' Motion to Compel in large part and ordered Kotva to produce documents by January 17, 2006 (Docket No. 55).

In April 2006, the parties filed cross-motions to compel (Docket Nos. 90, 92, 100, 102).  These motions included a request by Kotva for *in camera* review of privileged documents pursuant to the crime-fraud exception.  On May 26, 2006, the Discovery Master entered an Order deciding these motions (Docket No. 113).  The Discovery Master rejected Kotva's request for *in camera* review.

Kotva filed an objection to the May 26, 2006 Order, including the Discovery Master's decision with respect to Kotva's request for *in camera* review (Docket No. 117).  On June 28, 2006 the Court entered an electronic Order "finding as moot [117] Objections filed by Kotva a.s., to Discovery Master's order of May 26, 2006 regarding motions to compel" and on July 26, 2006, the Court entered a second electronic Order "Over Ruling [117] Objection filed by Kotva a.s., as to the Discovery Master's May 26, 2006 Order Regarding Motions to Compel."

In August 2006, Kotva filed two motions to compel (Docket Nos. 128, 129) and the Weiss Parties filed a motion to compel against counterclaim-defendant Richard Harazim (Docket No. 136). On September 29, 2006 the Discovery Master issued a detailed, thirty-two page Order, noting on the first page that "[a]ll pending discovery motions are resolved herein." A copy of that Order is attached hereto as Exhibit A. In this Order, the Discovery Master rejected Kotva's renewed request for an *in camera* review of privileged documents under the crime-fraud exception, writing:

> Kotva points to <u>no new evidence</u> or to specific log entries to support its renewed request for an *in camera* examination of all documents Weiss withheld on the basis of privilege or work product. Instead, Kotva relies on what it characterizes as the "woefully deficient" log, the withholding of documents based on a "bald" assertion of privilege, and that the discovery period is drawing to a close. Motion, 12. None of these grounds support the renewed request. First, the log is not demonstrably "woefully deficient." Second, I do not find the invocations of privilege to be "bald" even if they are not entirely adequate in every instance. Third, <u>Kotva has failed to submit any new evidence in support of its renewed motion for an *in camera* review of privileged documents</u>. Two of the documents which it submits in support of its request were exhibits to its complaint and the third was produced by Kotva in 2005. . . . . Not only does this not demonstrate that Weiss was engaged in extortion, but it is not new evidence. It provides no basis for renewing the motion for *in camera* review.

Sept. 29, 2006 Order at 13–14.

In the September 29, 2006 Order, the Discovery Master ordered the parties to submit various materials for her review, including affidavits and briefing regarding sanctions and apportionment of costs.

Kotva did not object to the September 29, 2006 Order.

Instead, Kotva and the Weiss Parties submitted the materials the Discovery Master requested. On November 6 and 7, 2006, the Discovery Master issued two Orders relating to those materials.

Kotva did not object to the November 6 and 7 Orders.

On November 17, 2006, the Discovery Master issued an Order deciding the pending requests for sanctions and apportionment of costs. The Discovery Master ordered Kotva to pay the Weiss Parties a total of $11,800. Kotva objected to this Order after filing two motions for an extension of time to do so.[1]

## II.  KOTVA'S OBJECTION IS UNTIMELY INSOFAR AS IT RELATES TO THE CRIME-FRAUD EXCEPTION

The Court's December 13, 2005 Order provides that "[t]he procedure for seeking review of a ruling on the Discovery Master, however, shall be that set out in Fed. R. Civ. P. 72(a) with respect to non-dispositive matters referred to a magistrate judge." This Rule provides:

> Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made.

FED. R. CIV. P. 72(a) (emphasis added).

Kotva's request for *in camera* review was rejected in the Discovery Master's May 26, 2006 Order, the Court's June 28, 2006 and July 26, 2006 Orders and, again, most recently in the Discovery Master's September 29, 2006 Order. Kotva did not object to the September 29, 2006 Order within ten days. Accordingly, it has waived any objection to the Discovery Master's decision with respect to *in camera* review pursuant to the crime-fraud exception.

The November 17, 2006 Order did not decide this issue. It was a "show-cause proceeding related to sanctions." November 17, 2006 Order at 8 (rejecting Kotva's October 18, 2006 request for reconsideration of the crime-fraud issue). Kotva seems to acknowledge that the

---

[1] The Defendants note that the Court has not yet acted on the second of these two motions, Docket No. 183. The Defendants have assented to that Motion and do not contend that Kotva's Objection as it relates to the $11,800 in sanctions is untimely.

crime-fraud issue was not a subject of the November 17, 2006 Order, describing the procedural history associated with its Objection as follows:

> Kotva filed its motions on August 2 and August 11, 2006. On September 29, 2006, the Special Master issued a 32 page order regarding Kotva's motions and a motion to compel that the Weiss Defendants filed against Mr. Harazim ("September Order"). The September Order required additional briefing from the parties with respect to sanctions and an additional hearing was held on November 13, 2006. The Special Master then issued the Order in dispute on November 17, 2006. Disturbingly, the Special Master's Order contains a number of internal inconsistencies and misapprehensions, as described in more detail below.

Objection at 2 n.1.

Objections to the September 29, 2006 Order were due on October 16, 2006. Kotva cannot resuscitate a dead-on-arrival challenge to the September 29, 2006 Order by filing a brief on October 18, 2006 seeking reconsideration of an issue that was not within the scope of the Discovery Master's briefing order. *Cf. Official Comm. of Unsecured Creditors for the Bankruptcy Estate of Boston Reg'l Med. Ctr. v. Ricks (In re Boston Reg'l Med. Ctr.)*, 328 F. Supp. 2d 130, 142–43 (D. Mass. 2004).

## III.    KOTVA'S ARGUMENT RELATING TO THE CRIME-FRAUD EXCEPTION IS WITHOUT MERIT

In any event, Kotva offers no good reason for the Court to depart from its earlier Orders affirming the Discovery Master's decision to reject Kotva's request for *in camera* review. As the Discovery Master repeatedly noted in the September 29, 2006 Order, Kotva presented no new evidence in support of its request—first made in April 2006. Kotva has failed to make the threshold showing that could justify *in camera* review. *See* May 26, 2006 Order at 4. Moreover, even if it had made that showing, it has failed to demonstrate why the Court should exercise its discretion to conduct such a review. Once a discovering party has made the required threshold showing, the decision to conduct *in camera* review rests in the sound discretion of the Court. *Id.* at 3 (citing *United States v. Zolin*, 491 U.S. 554, 572 (1989)). Kotva's proposal for *in camera*

review is a massive, unbounded undertaking.  Since Kotva's allegations in this Court center on litigation filed in the Czech courts, the number of privileged documents that the Court would need to review is quite large.  At the time that the parties briefed Kotva's August 2, 2006 Motion to Compel, the Weiss Parties' privilege log was over 260 pages and had over 1,400 entries. Kotva offers no good reason why the Court should engage in this massive undertaking.

In rejecting Kotva's request, the Discovery Master "assumed throughout that abusive litigation could in principle constitute the basis for a civil RICO action," but noted that this "assumption has been called into question by cases cited by Weiss, specifically, *Raney v. Allstate Insurance Co.*, 370 F.3d 1086 (11th Cir. 2004); *Deck v. Engineered Laminates*, 349 F.3d 1253 (10th Cir. 2003); *I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265 (8th Cir. 1984), as well as two unpublished decisions of the First Circuit."  Nov. 17, 2006 Order at 9 n.3.  These cases, which are addressed in more detail in the Defendants' pending Motion for Judgment on the Pleadings, establish that the "crime" underlying Kotva's crime-fraud arguments is, as a matter of law, no crime at all.  In any event, Kotva's arguments seek to put the cart before the horse, and establish this "crime" before trial rather than during trial.

With respect to the merits of Kotva's request, the Defendants incorporate and rely on their previous submissions on this subject: April 26, 2006 Memorandum at 7–8 (Docket No. 106); June 26, 2006 Response at 6–10 (Docket No. 120); August 28, 2006 Memorandum at 11–13 (Docket No. 134); and November 7, 2006 Supplemental Memorandum at 1–5 (Docket No. 157).  For the Court's convenience, these pages are attached hereto as Exhibit B.

## IV. SANCTIONS RELATING TO KOTVA'S ARGUMENTS CONCERNING SUBJECT MATTER WAIVER ARE APPROPRIATE

The Discovery Master identified four reasons that Kotva's behavior with respect to its argument that the Weiss Parties had waived privilege for an entire subject matter by producing

privileged documents.  These reasons, individually and collectively, provide ample support for the $3,000 in sanctions ordered.

In its Objection, Kotva states up front that "[t]wo of the documents that Weiss disclosed to the State Department in March 2006, Exhibits I and J to Kotva's motion, were attached by Kotva as Exhibits D and F to the Complaint." Obj. at 11.  However, in its original motion, Kotva did not mention the State Department or its Complaint at all and instead pretended that the production of these documents in discovery effected a waiver.  Indeed, Kotva attempted to conceal the source of these documents, picking and choosing pages from the Weiss Parties' production to include (shaded) or omit (not shaded) in filing its Motion:

| WP0013978 | First Page of Kotva's Complaint |
| WP0013979 | Exhibit D cover page attached to Kotva's Complaint |
| WP0013980 | Exhibit D to Kotva's Complaint, Page 1 |
| WP0013981 | Exhibit D to Kotva's Complaint, Page 2 |
| WP0013982 | Exhibit F cover page attached to Kotva's Complaint |
| WP0013983 | Exhibit F to Kotva's Complaint, Page 1 |
| WP0013984 | Exhibit F to Kotva's Complaint, Page 2 |

In April 2006, the Discovery Master ordered the Weiss Parties to produce documents disclosed to the State Department for which the Weiss Parties had claimed work product protection.[2]  The Weiss Parties complied with that Order, and Kotva then received the pages that it attached to its motion as Exhibits I, J, L and M, including the pages referenced in the table above.

Thus, the legal issue for the Court was whether the disclosure to the State Department effected a subject matter waiver, not whether production to Kotva effected a subject matter

---

[2] The Weiss Parties believed—and still believe—that work product protection is not waived by disclosure of documents to third parties, including the State Department, that are not a conduit to Kotva.  *E.g.*, *In re Raytheon Sec. Litig.*, 218 F.R.D. 354, 360 (D. Mass. 2003).  However, rather than object to the May 26, 2006 Order, the Weiss Parties produced the documents at issue.

waiver. Sept. 29, 2006 Order at 16–17. That legal issue is governed by controlling First Circuit precedent. The First Circuit has squarely "h[e]ld, as a matter of first impression in this circuit, that the extrajudicial disclosure of attorney client communications, not thereafter used by the client to gain adversarial advantage in judicial proceedings, cannot work an implied waiver of all confidential communications on the same subject matter." *XYZ Corp. v. United States (In re Keeper of the Records)*, 348 F.3d 16, 24 (1st Cir. 2003).

Kotva first attempted to obscure the legal issue by not acknowledging the source of the documents and why they were produced in response to the May 26, 2006 Order. Kotva then refused to acknowledge that *XYZ* is the controlling authority with respect to disclosures outside judicial proceedings. A disclosure to the State Department is indisputably extrajudicial. Moreover, as Exhibit K to the Weiss Parties' Opposition makes clear, the Weiss Parties were not asking the State Department to examine or rely on the contents of the enclosed exhibits to Kotva's Complaint, but rather to note that the Czech police had provided Weiss's attorney-client privileged material to Kotva.

Kotva's suggestion that the Discovery Master is applying a double standard is entirely without support. Kotva's repeated accusations that the Defendants failed to cite controlling authority are entirely without merit. First, Kotva's suggestion that *Balsys* somehow "controll[ed]" Weiss's Motion for a Protective Order is belied by the Court's decision denying the specific relief Weiss requested, but ordering that "[t]he deposition of Mr. Weiss shall not take place unless and until Kotva complies with its outstanding discovery obligations, including those ordered herein as well as depositions that were noticed by Weiss before Kotva noticed Mr.

Weiss's deposition."[3]    More recently, counsel for Kotva and Mr. Harazim accused the Defendants of failing to cite controlling authority in connection with a Motion to Compel filed by the Defendants that relied in significant part on Local Rule 34.1.  In deciding that Motion, and imposing an additional $5,000 in sanctions on Mr. Harazim, the Discovery Master wrote:

> Conversely, Mr. Harazim's counsel mischaracterizes the authority it cites in support of Mr. Harazim's opposition. For example, the First Circuit in *Marx v. Kelly, Hart & Hallman, PC*, 929 F.2d 8, 12 (1991), did not *hold* that a court has discretion not to deem objections waived. The *holding* of the case was an affirmance of orders dismissing the case and deeming privileges waived as a sanction for discovery abuses. Worse, *Marx* was decided the year before Local Rule 34.1 was promulgated and does not speak to the import of the Local Rule's mandatory language.

Jan. 27, 2006 Order at 4.

Finally, Kotva admits that it did not raise this issue in the 37.1 process, and seeks to rely on the following language from the May 26, 2006 Order:

> To the extent that the parties dispute specific claims of privilege notwithstanding this general directive, a motion describing the specific document or documents and the claim of privilege or waiver may be filed.

May 26, 2006 Order at 7 (emphasis added).

This language comes from a section of the Order, labeled: "5. Scope of the Privilege: Weiss-Hoffmann Communications."    It is preceded by a "general directive" outlining the difference between communications made for business reasons and communications made for the purpose of obtaining legal advice.  This language is clearly focused on disputes relating to particular entries on the Weiss Parties' log and is not a blanket invitation to ignore Local Rule 37.1 with respect to any issue relating to privilege.

---

[3] In any event, Weiss specifically disavowed any argument that his motion for a protective order was based on constitutional grounds and instead appealed to the Court's discretion. *See* Mem. in Support of Mot. for Protective Order at 7. Moreover, for the reasons described in his *Balsys*

V.    **SANCTIONS RELATING TO KOTVA'S FAILURE TO LOG OR PRODUCE EMAILS BETWEEN RICHARD HARAZIM AND JAN NEKOLA ARE APPROPRIATE**

This issue, addressed on pages 17–18 of Kotva's Objection, involves sanctions of $600. Kotva's objection to paying $600 does not appear to meet the Court's "expect[ation] that parties and nonparties affected by rulings of the Discovery Master will exercise restraint in seeking review of rulings made by the Discovery Master; and that review will not be sought routinely, but only in those circumstances in which substantial interests of the party or nonparty seeking review are affected by the rulings of the Discovery Master."  Dec. 13, 2005 Order ¶ 6.

On January 19, 2007, Kotva requested that the Discovery Master reconsider her decision to sanction Kotva $600.  On January 27, 2007, the Discovery Master issued an Order denying that request and pointing out additional deficiencies in Kotva's submission.  A copy of that Order is attached hereto as Exhibit C.  The Defendants submit that, for the reasons articulated by the Discovery Master in her November 17, 2006 and January 27, 2007 Orders, the $600 sanction was appropriate.

VI.   **SANCTIONS APPORTIONING COSTS ASSOCIATED WITH KOTVA'S AUGUST 11, 2006 MOTION TO COMPEL ARE APPROPRIATE**

Among other motions, the September 29, 2006 Order decided Kotva's August 11, 2006 Motion to Compel.  *See* Sept. 29, 2006 Order at 21–26.  After addressing the merits of the August 11, 2006 Motion to Compel, the Discovery Master wrote:

> Pursuant to Rule 37(a)(4)(A) and (B), the parties are ordered to submit affidavits concerning attorneys' fees and costs and a memorandum showing cause why the Court should not apportion costs and fees between them within fourteen days of receipt of this Order.

Sept. 29, 2006 Order at 26.

The Weiss Parties submitted a response, attached hereto as Exhibit D. The Weiss Parties' response laid out the governing legal standard and then addressed, one by one, the seven distinct issues raised by the August 11, 2006 Motion to Compel.

> Federal Rule of Civil Procedure 37(a)(4) establishes a presumption in favor of expense shifting that can be overcome only if: (1) the losing party's position was "substantially justified;" or (2) other circumstances make expense shifting unjust. *See* FED. R. CIV. P. 37(a)(4)(A), 37(a)(4)(B). "In a similar context, the Supreme Court has said that 'substantially justified' does not mean 'justified to a high degree,' but only 'justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person.'" *Sheppard v. River Valley Fitness One, L.P.*, 428 F.3d 1, 11–12 (1st Cir. 2005); *see also* ("The standard of 'substantially justified' has been said to have been satisfied if there is a 'genuine dispute,' . . . or 'if reasonable people could differ . . . .'") (citations omitted)

Mem. in Response to Order to Show Cause at 2.

In contrast, Kotva's response (as well as its Objection) failed to address any of the distinct issues on their merits and explain why the position Kotva took was substantially justified. The Weiss Parties prevailed on six of the seven issues Kotva raised. With respect to one of the issues on which the Weiss Parties prevailed, the Weiss Parties acknowledged that Kotva's position was substantially justified. Accordingly, the Weiss Parties requested cost and fee shifting with respect to five of the six issues on which the Weiss Parties prevailed. The Discovery Master adopted this proposal. For the reasons set forth in Exhibit D and the November 17, 2006 Order, this allocation of costs and fees is appropriate.

## VII.    <u>CONCLUSION</u>

For the above reasons, the Court should overrule Kotva's Objection to the Discovery Master's November 17, 2006 Order.

.                                               Respectfully Submitted,

                                                ANDREW WEISS and WEISS ASSET
                                                MANAGEMENT LLC

                                                By their attorneys,


                                                /s/ Benjamin A. Goldberger
                                                Edward P. Leibensperger (BBO# 292620)
                                                Benjamin A. Goldberger (BBO# 654357)
                                                McDermott Will & Emery LLP
                                                28 State Street
                                                Boston, Massachusetts  02109-1775
                                                (617) 535-4000

Dated: February 2, 2007


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system and any attachments will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 2, 2007.

                                                /s/ Benjamin A. Goldberger
                                                Benjamin A. Goldberger

BST99 1530593-1.072198.0012

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KOTVA A.S.,                    )
                               )
                               )        Civil Action No. 05-10679-RCL
        v.                     )
                               )
WEISS, ET AL.                  )

ORDER OF SPECIAL MASTER
September 29, 2006

A hearing was held on August 30, 2006, at which plaintiff Kotva, a.s. ("Kotva"), and

defendants Andrew Weiss and Weiss Asset Management, LLC (collectively ("Weiss")  were

represented by counsel.  Supplemental submissions were received on September 18 and 22, 2006.

I have considered the motion to compel discovery from counterclaim-defendant Richard Harazim

on the papers.  All pending discovery motions are resolved herein.

**I.  Kotva's Motion for Sanctions and to Compel, filed on August 2, 2006**

Kotva argues that the revised privilege log produced by Weiss on July 10, 2006, fails to

comply with the Order of Special Master, issued on May 26, 2006 (hereinafter "May 26 Order"),

which required the parties to provide specific information about withheld documents:

> The logs must identify the author(s) and recipient(s); the person or
> entity whom the attorney represents; the date the communication
> was created or transmitted, as applicable; the nature of the
> communication, and the basis for the claim of privilege or
> protection.

Kotva contends that the revised log contains hundreds of entries that do not list an

attorney as an author or recipient, and complains that the log does not identify the person or

entity whom the attorney purportedly represents and does not sufficiently inform Kotva as to the

basis for assertions of the privilege.  Specifically, Kotva identifies in footnote 2 of its Motion to

1

Compel, at 4, hundreds of entries which it contends are insufficiently described. Kotva contends that Weiss failed to articulate when it was relying on the common-interest doctrine to support his invocation of privilege, and failed to describe the scope and duration of any common interest between Weiss and any other individual or entity. Kotva complains that Weiss has not demonstrated that communications from or to Howard Golden were made to or by Golden in his legal capacity, and not in some other capacity. Kotva also complains that invocations of the work product doctrine should have been supported by a description of which legal proceedings the withheld documents relate to. Kotva contends that Weiss's disclosure in discovery of correspondence (1) relating to the legal advice from Svodobova (Exhibit G to Kotva's Motion); (2) relating to Hoffman's advice to Weiss to call an "extraordinary shareholders meeting" (Exhibit H thereto); (3) relating to Peterka's summary of a meeting with Messrs. Harazim and Benda (Exhibit I thereto); (4) relating to Peterka's analysis of and advice concerning litigation on behalf of Gilroy and KT (Exhibit J); and (5) relating to two memoranda from Peterka concerning efforts to research the ownership of SPV Co.(Exhibits L and M), constitutes a subject matter waiver warranting an order to disclose all communications relating to the same topics.

Kotva also contends that these documents show that Weiss was advised that his litigation strategy was without merit. This, Kotva contends, is sufficient to demonstrate as a preliminary matter that Weiss was probably engaged in an extortionate scheme, and that the privilege should yield to at least *in camera* review. Kotva therefore renews its demand for *in camera* review under the crime-fraud exception and demands sanctions, including an award of attorneys' fees, and an order to show cause why documents listed on the privilege log should not be disclosed, or alternatively, should be reviewed *in camera*.

In its September 18 Supplemental Submission, Kotva asks for *in camera* review of the documents identified in footnote 2 of its original Motion, "(*i.e.*, entries that have no reference to any attorney whatsoever), and the entries between May 12, 2004 and June 4, 2004 (*i.e.*, when no attorney was even involved)." Supplemental Submission, 3. Kotva suggests a staged review process, and identifies approximately 442 documents for initial review.[1] Kotva also demands production of the five to six boxes of documents related to entities other than Kotva pursuant to Fed. R. Civ. P. 33(c).

Weiss's response to Kotva's motion is, in essence, that the July 10 log complies with the May 26 Order, which did not expressly require the parties to identify which attorney was associated with each claim of attorney-client privilege nor to identify the proceeding for which each piece of work product was created. According to Weiss, its July 10 revised log did provide all the information which was ordered to be included, and contends that the existence of a privilege does not turn on the identity of the attorney. Weiss further counters that, rather than litigate with Kotva over the production log, it voluntarily undertook to revise and expand the log, resulting in the 261-page log created on August 8, 2006 ("the August 8 log"), which is attached as Exhibit B to Weiss's Memorandum in Opposition. Informed that Weiss had agreed to provide additional information, Kotva nonetheless filed its motion for sanctions and to compel. Weiss notes, too, (1) that it has produced hundreds of communications between Messrs. Hoffmann and Golden, understanding that many communications between them are not privileged; (2) that

---

[1]     Kotva asks for initial review of entries numbered 181-298, 327, 337, 340, 349-354, 404, 410-411, 443-444, 628-630, 633-634, 639-640, 642-647, 663-667, 672-684, 686-688, 691-807, 958-960, 962-963, 966, 976-994, 996, 999-1000, 1002-1023, 1029-1031, 1035, 1037, 1041-1052, 1056-1076, 1080-1091, 1099-1100, 1155, 1161, 1163-1167, 1169, 1175-1178, 1187-1206, 1209-1213, 1216, 1225-1229, 1248-1250, 1273-1282, 1298..

Kotva's own log is suspiciously anemic, containing only 70 entries, and must be incomplete because two emails produced in discovery should have had attachments which were neither produced nor logged, citing to Exhibits F [an earlier message in the chain referenced a submission] and G [in Czech] to Memorandum in Opposition. Weiss notes that the August 8 log, along with an Appendix dated August 10, 2006, does indeed identify the persons and entities represented by each attorney and the period of representation. Opp., Exhibit A. Weiss argues that Kotva has not been willing to engage in negotiations to narrow the areas of dispute or even to articulate exactly which entries are inadequate and why. Moreover, Weiss notes, Kotva's descriptions are no more precise and detailed than Weiss's. Moreover, Kotva has failed to log a single communication related to the instant litigation or the Czech proceedings, civil or criminal, claiming that not a single privileged document related to the litigation exists.

With respect to Kotva's specific claims, Weiss asserts that the documents identified in Kotva's footnote 2 do indeed identify an attorney or law firm or otherwise indicate the basis for the invocation of privilege. With respect to the Jason LaRoux and Lars Bader documents, Weiss asserts that Weiss had interests in common with LaRoux's employer, HSBC/Bank of Bermuda, which was custodian of CVF Investments Ltd.'s shares in Kotva, and Bader's employer, QVT, which holds a beneficial interest in a portion of the ring-fenced assets owned by CVF. Weiss argues that Kotva is well aware of the fact that LaRoux's and Bader's communications are privileged and its position to the contrary is not "substantially justified" for purposes of Fed. R. Civ. P. 37(a)(4)(B)(providing for an award of sanctions if moving party's position is not substantially justified).

4

Rule 37.1 Conference

As required by Local Rule 37.1, the parties conferred in an effort to resolve their differences. In the course of the conferencing, which took place by telephone for a total of one hour and twenty minutes spread over several calls and days, and by email, Weiss offered to augment the log with an additional column which would identify the attorneys involved. Kotva objected to this procedure and instead filed the instant motion to compel.

The Rule 37.1 conferencing appears to have been cursory and *pro forma*. One hour and twenty minutes over the phone spread out over days is not sufficient time to negotiate all the issues I have gone to pains to summarize in this orders. And, indeed, it appears that many issues raised in the motions were not discussed at all. While Kotva complains that hundreds of entries are incomplete or questionable (*see* Motion, 4 n. 2), Weiss responds that only entries 1-13 (Kotva questioned whether handwritten notes were distributed to third parties and Weiss produced the document with notes), 17-26 (Kotva questioned that no attorney was specified), 182 (same), 1229-31 (clerical error), and those relating to Jan Svejnar, Jason LaRoux, Lars Bader, James Woolf, and Marta Guthova were addressed at the meeting. Kotva's motion afforded Weiss its first opportunity to discover exactly which entries were being challenged as deficient. Specifically, Weiss represents that, had the issues been brought to its attention in the 37.1 process, entries 942 and 1101 could easily have been resolved and that entries 17-25 could have been redacted. Finally, Weiss has agreed to produce entry 1362.

Complaining that Kotva utterly failed to conference the issues raised in sections III and IV on pages 11-20 of its Motion, Weiss seeks fees for time spent responding to those issues which relate to Kotva's renewed request for the court to conduct an *in camera* review to determine

whether the crime-fraud exception applies and its claim that Weiss's disclosure of privileged

documents effect a subject matter waiver.

Review of Adequacy of Logs

Fed. R. Civ. P. 26(b)(5) requires the party withholding information on the basis of

privilege to "make the claim expressly and [to] describe the nature of the documents,

communications, or things not produced or disclosed in a manner that, without revealing

information itself privileged or protected, will enable other parties to assess the applicability of the

privilege or protection." Local Rule 34.1(E) adds the requirement that the claim be particularized

with respect to each document withheld: "When a claim of privilege is asserted in objection to

any document request, . . . , the attorney asserting the privilege shall identify in the objection the

nature of the privilege that is being claimed with respect to each such document."  By the May 26

Order, the parties were obligated to provide additional information in order to facilitate any

challenge to the invocation of the privilege.  It is necessary that the party seeking to prevent

production on the grounds of privilege provide sufficient information either in the log or apart

from the log to permit the opposing party and the court to assess the applicability of the privilege

to the document in question.  Where the relationship between the author and the recipients is not

apparent, the party seeking to invoke the privilege must provide that information.  As

Massachusetts Superior Court Judge Peter Agnes, Jr. cogently observed in assessing the adequacy

of a privilege log  in *Allmerica Financial Corporation v. Certain Underwriters at Lloyd's

London*, 17 Mass. L. Rep. 665, 2004 Mass. Super. LEXIS 182, *2-3 (2004):

> [A]s a general rule a privilege log should include a list of individual
> documents accompanied by the date of each document, its author,
> the addressee or recipient, a description of its contents sufficient to
> describe its character as privileged, and the particular privilege

asserted.  In keeping with the view of the drafters of the federal rules, this general rule is not hard and fast and some flexibility is permitted when the character of a group or category of documents as privileged is evident. [Citations omitted]. However, the indispensable requirement of a privilege log remains that it must contain enough information to permit the party seeking discovery and the court to "assess the applicability of the privilege or protection."  *Fed. R. Civ. P. 26(b)(5).  See Heavin v. Owens-Corning Fiberglass*, 2004 U.S. Dist. LEXIS 2265, 2004 WL 316072, *2 (D. Kan. 2004).

In an effort to determine whether the logs are adequate for the purpose of permitting challenges to the invocation of privilege, I have reviewed both Weiss's and Kotva's respective logs.

<u>Weiss's Log</u>

I have reviewed each and every entry in the privilege log which Kotva complains is insufficient.  It must be noted that the July 10 amended privilege log consists of 215 pages containing 1440 entries.  The August 8 revision extends to 261 pages.  It is, by and large, compliant with the May 26 Order, except that it does not specifically identify the client whom the attorney represents.  In many instances, indeed most, it is obvious whom the attorney represents. In other instances, it is reasonably apparent whom the attorney represents, e.g. 120-127, 150 (communications between Hoffmann and Weiss or Hoffmann and Weiss employees). Accordingly, I do not find the log materially deficient in failing to identify the person or entity whom the attorney represents in such cases.  The imposition of sanctions is therefore not warranted with respect to this complaint.

While Kotva maintains that none of the entries identified in its footnote 2 refers to any attorney at all, that is simply not true.  *See, e.g.*, 639-644, among others.  Repetition of this claim in the September 18 Supplemental Submission, more than a month after service of the August 8

log, which identifies attorneys and proceedings with respect to many additional entries, compounds the error. Some of the challenged entries have already been produced. *See, e.g.*, 177, 178. Some have been withdrawn. *See, e.g.*, 999, 1000. These are the sorts of issues that could have been and should have been easily resolved had the Rule 37.1 procedure been properly followed.

Numerous entries Kotva faults for failure to identify an attorney (*e.g.*, 44-46, 48, 50-53, 62, 67, 75, 83-84) relate to the period of time in the fall of 2003 when Hoffmann and Woolf were engaged in evaluating potential lawyers to represent Weiss's and Woolf's common interests. These communications are sufficiently described in the log to permit my review. I find that Kotva does not have a right to know the identities of attorneys whom Weiss, Hoffmann, and/or Woolf consulted or interviewed in anticipation of litigation. Such information is not relevant unless Weiss asserts an advice-of-counsel defense or Kotva is prepared to support its request with more than mere speculation that attorneys were not or declined to be hired because they refused to be part of what Kotva characterizes as Weiss's extortionate scheme. Kotva is not entitled to invade Weiss's decision-making process with respect to the hiring of attorneys on the basis of nothing more than speculation that the crime-fraud exception might apply.

Reviewing the July 10 log, I find that in some cases Weiss's description does not adequately describe the basis for the invocation of a privilege without reviewing the document and having additional information about the parties to the communication and the purpose of the communication. The August 8 log is more complete, but in a few instances, it is, as Kotva contends, impossible to assess whether certain claims of attorney-client or work product privilege is fairly invoked from the privilege log, even giving full credence to the accuracy of the

description.  There is insufficient detail to demonstrate the existence of a confidential relationship

and that the document is entitled to protection as a legal, as opposed to a business,

communication.

I accept Kotva's suggestion of a staged review of documents, although I am dismayed to

find that Kotva's proposed first wave of documents to be reviewed is not even a subset of its

original footnote 2.  Numerous documents listed in the Supplemental Submission are not even

listed in footnote 2 or anywhere else in Kotva's Motion.  Again, Kotva's challenges should have

been sorted out and raised in a 37.1 conference well before filing a motion to compel and for

sanctions.

Nonetheless, at this juncture, given the time and expense already expended by the parties

in briefing and arguing the issues, I exercise my discretion to proceed with a limited review.

Comparing Weiss's August 8 log and Kotva's list of documents for the first wave of review

(Supplemental Submission, at 4-5), I find the following entries are too vague to permit resolution

of the privilege question and the corresponding documents must be produced for *in camera*

review:

Entries 212, 224, 225, 226, 629, 630, 647, 686, 958-960, 963, 966, 976-994, 996, 1003,

1004, 1029-1031, 1200-1206, 1213, 1273-1279, 1281-1282, 1298.

While Kotva claims that the documents it lists as inadequate raise "questionable claims of

privilege" and "plainly involve business issues" (Supplemental Submission, 3, [emphasis in

original]), my review indicates that is patently not the case.  Almost all the documents identified

by Kotva as questionable are described as involving litigation advice or the gathering of

information for litigation purposes.  In the complete absence of any reason to believe that Weiss's

counsel has misrepresented the content and nature of the documents entered on its log, I decline

to disbelieve the descriptions contained therein.  In fact, the only possible basis for Kotva's

request for *in camera* review of the vast majority of the documents is the crime-fraud exception.

Since none of the entries suggests that the content of the documents furthered a crime or a fraud,

I decline to review documents that are amply described and obviously privileged.  *See* further

discussion *infra*.

There are certain recurring themes in the documents I have ordered submitted for *in

camera* inspection, which I note both by way of explanation to the parties and in order to facilitate

the District Court's review should either party appeal my decision.  In particular, a draft of a non-

privileged letter (*e.g,* one addressed to a party to a proposed transaction)  prepared by a non-

attorney principal or employee does not become privileged simply because it was or was intended

to be vetted by counsel.  Nor, in my view, is a draft letter,  intended to be transmitted outside a

confidential relationship, privileged merely because it "reflects" legal advice.  In contrast, the

advice sought or given concerning the draft and any revisions counsel noted on the draft are

privileged.  In short, if the draft contains annotations by counsel, then it is privileged.  Similarly, if

the draft was not intended to be submitted to a third party but was for discussion purposes only,

then it qualifies as privileged.  On the other hand, depending on the nature and content of the

letter, it may be work product.  Accordingly, documents described as "Draft of letter to be

reviewed by counsel" must be submitted for review, with additional information supporting the

invocation of the privilege, or alternatively must be produced.

Second, an engagement letter describing the scope of services an attorney is retained to

render is not privileged.  Thus, it appears that "email regarding provision of legal services" (629,

10

630) or "communication regarding principles governing future activities" (958-960) may not include actual advice or a request for advice, but merely set forth the terms and scope of the engagement.  If so, it must be produced *if relevant and responsive to any discovery request*.

Third, documents that are described as relating to the "transfer of shares," which were sent to counsel along with several other individuals, may or may not involve legal advice.  It appears just as likely, if not more likely, that the documents involve nothing more than business communications.

I recommend that the parties review their invocations of privilege with these principles in mind and produce forthwith documents with respect to which the claim of privilege will not sustain scrutiny.  The parties may submit additional justification for the invocation of the privilege with respect to the documents ordered submitted for *in camera* review.  Any such additional information, though not, of course, the allegedly privileged documents themselves, should be served upon opposing counsel.

Weiss should submit documents described in entries 17-25, along with proposed redactions for *in camera* review.  Weiss should have submitted proposed redactions when it realized that the documents contained non-privileged, as well as privileged material. On the other hand, Kotva should have conferenced the issue before filing a motion to compel.

I will reserve the question of sanctions concerning the preparation of the privilege logs and invocation of privilege upon completion of the *in camera* review.

<u>Kotva's Log</u>

My review reveals that every communication on Kotva's log relates to drafts of the legal audit, the Share Purchase Agreement, the Lease of Non-Residential Premises, and other

11

transactional business documents. Not a single communication relating to the initiation of the Czech criminal proceedings or any of the litigation has been logged. It is difficult to see from the log why transmittal emails attaching drafts of agreements would be protected by a privilege. A draft of an agreement may or may not contain legal advice. It may or may not be intended to remain confidential. If the draft was intended to be submitted to the other party or parties to a commercial transaction memorialized by contracts, the draft is discoverable no matter who prepared it. No presumption of confidentiality flows merely from the existence of an attorney-client relationship. Something more is necessary. *See Winchester Capital Management Co., Inc. v. Manufacturers Hanover Trust Co.*, 144 F.R.D. 170, 174-175 (D. Mass. 1992). The transmittal letter itself may or may not contain legal advice, but if it is merely an instrument of transmittal indicating that a document is attached and indicating to whom the document was distributed, it is not privileged. Moreover, it is highly unlikely that every portion of a transmittal email conveys legal advice, and yet Kotva did not submit proposed redactions of any of the documents for review. The existence of an attorney in the chain of the transmission has no talismanic quality that operates to transform business communications into legal advice. Just as business communications between Hoffmann and Weiss, or even between Peterka and Weiss, are not privileged, neither are communications simply transmitting drafts of business contracts, which are themselves to be disclosed to the other side of the proposed transaction. Only the portion of the communication that articulates legal advice is privileged. It appears, on a preliminary basis, from a review of Kotva's privilege log, that it has not held itself to the same exacting standard to which it seeks to hold Weiss. Accordingly, pursuant to my authority to supervise discovery, Kotva is hereby ORDERED to submit for *in camera* review an initial sample of seven documents which it

12

alleges are privileged, but as to which the log does not clearly demonstrate the basis for the invocation: 4/30/2003 - Email attaching draft of portions of Share Purchase Agreement; 5/12/2003 (same); 5/14/2003 (same); 6/9/2003 (same); 6/16/2003 (same); 7/2/2003 (same); 9/8/2003 (same).  None of these documents seems likely to be protected by privilege, but possibly the transmittal emails do indeed convey legal advice.  If the documents do not speak for themselves, Kotva is invited to supplement its justification of the invocation of privilege with respect to this sample of documents if it deems it necessary.  Any such submission must be served upon opposing counsel, although the documents themselves need not be disclosed pending further order (unless counsel, on further reflection, withdraws the invocation of privilege).  If this tiny sample indicates that non-privileged business communications, specifically transmittal emails, were mischaracterized in a conclusory fashion as "legal advice" then I will order *in camera* inspection of all documents so designated.

Kotva is further ordered to explain why the attachments to the emails submitted as Exhibits F and G to Weiss's Memorandum in Opposition were neither logged nor produced.

Crime-Fraud Exception: Request for *in Camera* Review

Kotva points to no new evidence or to specific log entries to support its renewed request for an *in camera* examination of all documents Weiss withheld on the basis of privilege or work product.  Instead, Kotva relies on what it characterizes as the "woefully deficient" log, the withholding of documents based on a "bald" assertion of privilege, and that the discovery period is drawing to a close.  Motion, 12.  None of these grounds support the renewed request.  First, the log is not demonstrably "woefully deficient."  Second, I do not find the invocations of privilege to be "bald" even if they are not entirely adequate in every instance.  Third, Kotva has

13

failed to submit any new evidence in support of its renewed motion for an *in camera* review of privileged documents.  Two of the documents which it submits in support of its request were exhibits to its complaint and the third was produced by Kotva in 2005.  Exhibit I, which Kotva quotes at length, indicated that Kotva, and not Weiss, conditioned purchasing shares on the withdrawal of lawsuits; it does not evidence extortion by Weiss.  Nor does a document, plainly privileged, which was seized by the Czech police (Exhibit J), describing standing of Gilroy and KT as "problematic" and acknowledging that Kotva may face financing problems if it does not settle with Weiss.  Not only does this not demonstrate that Weiss was engaged in extortion, but it is not new evidence.  It provides no basis for renewing the motion for *in camera* review.

Even though I decline at this time to order wholesale *in camera* review of privileged documents, I reject Weiss's renewed argument that bringing litigation could never be a crime or a RICO predicate.  Opposition, 12.  Just as the filing of litigation can constitute a tort (e.g., abuse of process or malicious prosecution), it can also be a predicate act in furtherance of a scheme to extort or defraud.  *See generally United States v. Sturm*, 870 F.2d 769, 773 (1st Cir. 1989) (discussing use of economic fear and litigation to obtain property in context of Hobbs Act prosecution).  The bringing of a lawsuit is not absolutely privileged against attacks that the lawsuit was filed for improper or unlawful purposes.  But, in order to invade the sanctity of the attorney-client privilege, Kotva would have to make a preliminary showing, at a minimum, that the KT and Gilroy litigation had no objective merit and that Weiss both instigated the litigation and subjectively knew it had no merit in order to extract from Kotva economic benefits to which he had no legitimate claim.  If, however, Weiss resorted to litigation in order to preserve the value of BGO's shares in Kotva and to prevent the dissipation of the proceeds of the sale of the

14

department store through "tunneling" via various Kotva subsidiaries and affiliates, it is difficult to see that the litigation was motivated by an intention to extort an illegitimate benefit.  While Kotva contends that Weiss demanded eight times the publicly traded market price of the shares in order to settle the litigation, I do not see evidence supporting that contention nor do I have evidence suggesting that such a  price was illegitimate.  It is not enough to point to inadvertently disclosed privileged documents indicating that Weiss's former counsel Svobodova conveyed doubts that a lawsuit (never initiated)  to challenge the Kotva board's refusal to include an agenda to the shareholders' meeting would afford any real benefit to Weiss or that, in fact, the Gilroy suit was dismissed for lack of standing.  Kotva must first make a preliminary showing that Weiss's ultimate objective was not to preserve or maximize the value of BGO's shares, but to obtain something illegitimate.  As I noted in the May 26 Order, I would expect the evidence of extortion would be the demands Weiss made to Kotva, evidence which would logically be in Kotva's possession, and yet that evidence has not been forthcoming.  In short, *in camera* review of privileged material remains an option should a factual basis materialize, but is not justified on the record before me.

<u>Subject Matter Waiver</u>

Kotva argues that Weiss's production of numerous attorney-client communications (Exhibits G, H, I, J, L, and M) effects a broad subject-matter waiver such that all documents concerning the same subjects must be produced.  "[T]he party who invokes the privilege bears the burden of establishing that it applies to the communications at issue and that it has not been waived."  *XYZ Corp. v. United States (In re Keeper of the Records)*, 348 F.3d 16, 22 (1st Cir. 2003).  The burden of persuasion therefore rests with Weiss.

Exhibits G and H consist of documents disclosing the advice of Weiss's counsel

15

Svobodova and were disclosed in discovery. Weiss contends that Exhibits G and H were disclosed inadvertently and that the inadvertent disclosure does not constitute a waiver. The defendants have submitted the affidavit of Weiss's counsel Benjamin Goldberger, Esq., to the effect that the documents at issue, two of approximately 17,500 that were produced and twice that number that were reviewed, were miscoded in the process of document review and as a result, were produced. I credit this account of how the disclosure was made, and find that counsel took appropriate measures to ensure the secrecy of privileged materials.

But quite apart from the issue of whether counsel took appropriate measures to protect privileged documents from inadvertent disclosure is the issue of estoppel. Both parties expressly took the position in making production that inadvertent disclosure of privileged documents would not work a waiver. *See, e.g.*, Objections and Responses of Plaintiff to Counterclaim Plaintiffs [Weiss, et al.]'s First Request for Production of Documents, 2; Objections and Responses of [Weiss, et al.] to Second Set of Requests for Production of Documents of Kotva A.S., 3. Kotva is therefore estopped from asserting the contrary proposition.

In sum, in light of the volume of discovery reviewed and produced and in light of Kotva's stance that its own inadvertent production would not effect a waiver, I exercise my discretion to find no subject matter waiver.

Weiss argues that its disclosure of Exhibits I, J, L, and M, all of which were submitted to the State Department in March 2006, were ordered to be produced by the Discovery Master and therefore cannot be an inadvertent disclosure. Weiss misses the point. Voluntary, intentional disclosure is more likely, not less likely, to effect a waiver than inadvertent disclosure is. Thus, the issue is whether Weiss's voluntary and intentional disclosure to the State Department effected

16

a waiver of the privilege as it pertains to the subject matter of the disclosed documents, not whether the subsequent disclosure in discovery pursuant to this Court's Order  was or was not inadvertent.  The fact that I ordered Weiss to produce certain documents that had been disclosed to the State Department is irrelevant to the question before me now.

As Weiss points out and Kotva omits to mention, two of the documents, Exhibits I and J, were attached to Kotva's Complaint  (*see* Exhibits D and F to the Complaint).  Thus, Kotva already had the documents when Weiss disclosed them to the State Department.  It is not clear to me how Kotva obtained them in the first place, although Weiss implies (Opposition, 13) that the documents were seized by the Czech police and turned over to Kotva.  However Kotva obtained them, Weiss's later disclosure to the State Department of documents already out of the bag could not effect a subject matter waiver.

Weiss originally withheld Exhibits L and M on the grounds of the work-product doctrine. The documents obviously contain attorney work product, but they are also attorney-client privileged communications.  Because Weiss had voluntarily disclosed them to the State Department, they were ordered produced to Kotva.  Weiss contends, citing *XYZ Corp.*, 348 F.3d at 24, that no subject matter waiver was effected by the voluntary disclosure to the State Department and that the privilege as to other documents on the same subject remains intact.

Considerations of fairness inform the question of the scope of an implied waiver by virtue of a voluntary disclosure.  *Id.* at 22 [citations omitted].  As the First Circuit noted in *XYZ Corp.*, '[v]irtually every reported instance of an implied waiver extending to an entire subject matter involves a judicial disclosure, that is, a disclosure made in the course of a judicial proceeding." *Id.* at 24.

17

> Accordingly, we hold, as a matter of first impression in this circuit,
> that the extrajudicial disclosure of attorney-client communications,
> not thereafter used by the client to gain adversarial advantage in
> judicial proceedings, cannot work an implied waiver of all
> confidential communications on the same subject matter.
> . . .
> Where a party has not thrust a partial disclosure into ongoing
> litigation, fairness concerns neither require nor permit massive
> breaching of the attorney-client privilege.

*Id.* at 24-25.

In this case, I find that the disclosures of Exhibit L and M to the State Department were extrajudicial. Accordingly, the disclosures do not effect a waiver of attorney-client communications on the same subject. Nor is there a subject matter waiver with respect to the attorney work product contained in Exhibit L and M. *See United States v. MIT*, 129 F.3d 681, 687 (1st Cir. 1997) (disclosure of work product does not effect a waiver unless the disclosure is made to an adversary).

Because Kotva (1) failed to disclose in its motion that it had taken the position in its responses to discovery requests in this litigation that inadvertent disclosure would not constitute subject matter waiver of privileged communications; (2) failed to disclose in its Motion that Exhibits I and J had been attached to the Complaint; (3) failed to cite, much less distinguish, *XYZ Corp.*, which is controlling authority on the question of the scope of an implied waiver of attorney-client privileged documents in its Motion and relegated the case to a footnote in its supplemental submission; (4) failed to comply with Rule 37.1 with respect to the issue of subject matter waiver, I am inclined to impose sanctions, including attorney's fees and expenses, on Kotva and counsel with respect to this portion of its motion. I hereby ORDER that Kotva and its counsel shall show cause why sanctions should not enter against either or both of them. Kotva

18

and counsel may make a written submission and Weiss may submit an affidavit setting forth fees and expenses allocated to this issue on or before October 13, 2006. A hearing affording Kotva and Weiss an opportunity to be heard on the issue shall be scheduled at a later date, unless the parties wish to forego their right to a hearing.

<u>Howard Golden Documents</u>

Kotva seeks *in camera* inspection of communications to which Howard Golden was a party. Golden is an attorney, but is also a former director of BGO's predecessor and therefore wore a business, as well as a legal, hat. Kotva seeks *in camera* review of log entries 14-15, 1316, 1324-25, 1329, 1344, 1350, 1355, 1360-64, 1368, 1370, and 1438-39 in order to determine whether the attorney-client privilege was properly invoked. These specific documents were not identified in the Rule 37.1 conferences.

Weiss is willing to produce document 1362, but otherwise stands by the adequacy of the log and represents that it has sifted through the documents involving Mr. Golden in order to distinguish those which are business-related from those which are legal in nature.

I have reviewed all the listed entries in the August 8 log that describe Golden-related documents. All are adequately described and all provide a basis for invoking either the attorney-client and/or work product doctrines. Kotva's motion with respect to these documents is therefore denied.

<u>Lars Bader and Jason LaRoux Documents</u>

Kotva challenges the application of the common interest doctrine to Lars Bader and Jason LaRoux. Kotva contends that Weiss has failed to describe the scope and duration of any common interest between Bader and LaRoux, on the one hand, and Weiss on the other. Kotva specifically

19

challenges log entries 1317, 1320-21, 1323, 1326, 1433, 1416-1420, 1422-1432.  Kotva has

declined Weiss's offer to produce certain of these documents under a stipulation that the

production would not constitute a subject matter waiver.

Weiss in response notes, accurately, that the May 26 Order did not require that the log

explain the basis for all claims of privilege based on common interest and then represents that

Bader was employed by QVT, the beneficial owner of a portion of the ring-fenced assets owned

by CVF Investments, Ltd, including shares of Kotva and Trend.  LaRoux was employed by

HSBC/Bank of Bermuda, which was the custodian of CVF's shares in Kotva.  Accordingly, QVT

and Weiss shared an identical interest with respect to proceedings involving Kotva, and

HSBC/Bank of Bermuda was the entity subject to a freezing order with respect to CVF

Investment's shared in Kotva.

While it is true that the May 26 Order expressly addressed only the Woolf documents and

the showing necessary to invoke the privilege on the basis of the alleged common interest between

Weiss and Woolf, the principles stated therein are applicable generally.  The privilege log has to

be sufficiently detailed so that it permits challenges and review.  It should not be necessary to

resort to motion practice in order to flush out the basis for an invocation of a privilege.

That said, the common interest between Weiss and Bader/LaRoux seems evident and

Kotva does not mount a challenge on the merits of the invocation.  I note in this regard that

Kotva has taken the deposition of Lars Bader and is therefore presumably quite familiar with the

relationship between them, their employers, and Weiss.  Rather, Kotva takes the position that

Weiss forfeited the privilege by failing to describe the common interest in the log.  I am not

prepared to hold Weiss to such a standard, given that the May 26 Order did not expressly require

20

the log to set forth the factual foundation for an assertion of privilege based on the common interest doctrine.

I have reviewed all the log entries listed by Kotva in its motion with respect to Bader and LaRoux. It is unclear to me why an email transmitting a draft power of attorney, or the draft itself, is privileged (1359, 1382-1383, *et seq.*). I invite counsel to Weiss to supplement its justification for invoking the privilege with respect to the draft powers of attorney, documents presumably not intended to be confidential, along with its submission of those documents for *in camera* review. The balance of the entries are adequate and appropriately invoke either the attorney-client or work product privileges.

### II.  Kotva's Motion to Compel, filed August 11, 2006

Kotva's Motion to Compel seeks answers to interrogatories and documents concerning:

- the Czech criminal file and Weiss's access thereto;

- Weiss's attempts to have the criminal charges against him dismissed;

- Weiss's other blackmail schemes;

- Weiss's private investigator's accusations that a Kotva representative "did in" a Czech police investigator

- fee agreements with Czech counsel; and

- communications with the Weiss defendants' investors concerning changes to the Investment Management Agreement of BGO made after the filing of this action.

These topics relate to First Set of Interrogatories Nos. 7, 8, 9, 12, 13, and 14; Second Set of Interrogatories, No. 1, and Third Set of Interrogatories, No. 1, and Second Set of Document Requests Nos. 5, 10, 15, 16, and 26.

### A.  Criminal File

Denied.  The request is overbroad and not reasonably calculated to lead to the discovery of admissible evidence. As I stated at the August 30 hearing, the criminal file, in its entirely, is not *per se* relevant and it is now apparent that it contains privileged documents which the Czech police seized and disclosed to Kotva.  While it is not a defense to production of otherwise relevant and responsive documents that they came from or are now in the criminal file, Kotva is not entitled to discovery of the entire criminal file without regard to what is contained in it, whether the documents are privileged, from whom and how the information was obtained, whether the information in the file is relevant or irrelevant, etc.  While "discovery is a two-way street", as Kotva contends, Kotva and Weiss do not stand in the same position with respect to the criminal file.  Kotva simply has no right to unfettered access to materials compiled and seized by the Czech authorities in connection with its investigation of Weiss, no more than Weiss would have a right to unfettered access to such a file compiled about Kotva.  Kotva's access to Weiss's criminal file may be relevant to demonstrate that Kotva directed or influenced the Czech authorities to prosecute Weiss.  Weiss's access to its own criminal file is irrelevant to any issue in the case.  Weiss's privacy interest in the criminal file is decidedly different from Kotva's privacy interest in the same file.  Thus, the argument that Weiss must produce exactly what it demanded Kotva produce does not bear scrutiny.

I repeat, however: if otherwise unobjectionable requests call for the production of documents which, by happenstance, came from the criminal file (*e.g.*, unprivileged witness statements, tape recordings of witnesses, relevant and unprivileged  documents that had been in Weiss's possession but were seized by the Czech police), then they must be produced.  This appears to be an academic distinction in light of the fact that Kotva has had unimpeded access to

the criminal file and was permitted to copy what it chose to from it; indeed, it apparently copied

the entire file, according to Mr. Harazim's deposition testimony.  Indeed, Kotva does not identify

a single document it believes Weiss has from the criminal file that it does not have and needs.

Thus, it appears that Kotva is only interested in obtaining Weiss's work product or alternatively,

that the request is simply intended to harass and oppress.

      B.  <u>Weiss's Attempts to Have Criminal Charges Against Him Dismissed</u>

      Denied.  Weiss's attempts to have the criminal charges against him dismissed are irrelevant

to any issue in this lawsuit.  Weiss's representations and admissions about the facts and

circumstances giving rise to the criminal charges and this lawsuit are, of course, relevant and

admissible, but the request goes far beyond a request for Weiss's representations and admissions.

Indeed, interrogatory no. 8 does not even ask for Weiss's statements and admissions, but rather

identification of "all actions" taken not only by Weiss but by others.

      C.  <u>Other Alleged Blackmail Schemes (Interrogatories Nos. 12, 13, and 14)</u>

      Allowed.  While Weiss has answered that he has no personal knowledge of the requested

information, he must either, at his option, review business records in his possession or control

which contain the information in order to answer the interrogatories, or specify the records from

which the answer may be derived and afford Kotva a reasonable opportunity to inspect the

records and to make copies.  Fed. R. Civ. P. 33(d).  I understand that the documents at issue are

stored in five or six boxes.  It may well be less onerous to simply find the answers to the

interrogatories from the stored files and answer the interrogatories than to produce all five or six

boxes, vet them for privileged material, etc., but I leave it to Weiss and his counsel to make that

assessment.

D. Information Concerning Private Investigator  (Interrogatory No. 9, Request No. 15)

Denied.  The information requested is not reasonably calculated to lead to the discovery of relevant, admissible evidence.  Contrary to Kotva's contention, Weiss has not placed the investigative work of Ladislav Pavek "at issue" unless and until Mr. Pavek is intended to be called as a witness.  Weiss has represented that Mr. Pavek is not going to be a witness in this case.  Accordingly, even if it were relevant, his investigative work is protected by the work product privilege, as to which there has been no waiver.  Kotva has not argued, much less demonstrated, that there are exceptional circumstances which would warrant overriding the privilege.

E. Identification of Legal and Beneficial Owners of BIP (Interrogatory Nos. 7 (First Set) and 1 (Third Set), Request Nos. 16 and 26

Denied.  Kotva has been given full rein to ask for Weiss's representations to investors about this case.  While it is theoretically conceivable that Kotva may unearth something more by contacting individual investors in order to verify Weiss's responses to discovery or to unearth other communications, I find that the request is unduly burdensome and not reasonably calculated to lead to anything useful to Kotva's case.  The identity of investors is confidential business information and Kotva does not present a need for the discovery sufficiently compelling to warrant overriding the investors' reasonable expectation of privacy or compromising Weiss's business relationship with the investors.  In fact, the request appears to be nothing more than a fishing expedition for an investor who will say that Weiss admitted that he had no basis to sue Kotva and knew the case was unjustified and was bringing suit in order to extort an inflated price for the Kotva shares.  The success of this proposed discovery venture, particularly in light of how attenuated BIP's investors are to the Kotva and Trend shares at issue in this case, is speculative at best.  The fact of the matter is, the core of this case is what Weiss demanded of Kotva in order to

24

settle the litigation and whether the demands were justified and legitimate and the means used to achieve Weiss's objectives proper – not what Weiss told his investors.

While Weiss's personal ownership stake in BIP may be relevant to establish bias, it is only marginally so. It is already clear that Weiss Capital LLC is the General Partner of BIP and that Weiss personally controls Weiss Capital LLC; it is already clear that he has a financial interest in the outcome of this case and, specifically, in BIP. More is overkill and unnecessary. Kotva is in no way compromised from asking Weiss about his financial interest in the outcome of this litigation at trial. The request for the names of Weiss's family members who hold interests in BIP borders on abusive. Finallly, Kotva has exceeded the number of interrogatories permitted by Rule 33 and has not sought leave to expand the number. While Kotva's three sets of interrogatories comprise a total of 23 enumerated interrogatories, several of them have distinct and discrete subparts which should have been separately enumerated. I note, too, that Kotva objected generally to interrogatories with multiple subparts to the extent the total number exceeded 25, and, as Kotva states, discovery is a two-way street. But, even if Kotva had requested leave to exceed the total, I would deny the request as excessive, unreasonable, and unduly burdensome.

F.  Fee Agreements with Weiss's Czech Counsel

Denied. While fee agreements with counsel are not necessarily privileged, neither are they relevant to the issues in this case. Kotva offers two theories of relevance, but they cut in opposite ways. On the one hand, it wants to prove that Weiss was involved in or directed the Czech lawsuits to block the sale of the department store, presumably by showing that Weiss was in an attorney-client relationship with Czech counsel who initiated the lawsuits, and, on the other, it seeks to discredit the claim that Weiss stood in an attorney-client relationship with Czech counsel

25

in order to undermine Weiss's invocation of the attorney-client privilege. First, Rule 26 does not authorize Kotva to employ the tools of discovery to investigate and police whether an asserted privilege is properly invoked, and second, production of the fee agreements is not necessary in order to determine whether and by whom Weiss is or has been represented.

If, as appears to be the case, the parties wish to exchange fee agreements, they are free to do so, but I decline to order production in the absence of a better showing of relevance.

G. Communications with Investors Concerning Changes to the Investment Management Agreement of BGO

Denied. Changes to the Investment Management Agreement after this lawsuit was initiated make no fact alleged in the complaint more or less likely. Whether a change does or does not remove any limit on what the defendants can spend on legal fees is completely irrelevant to any issue in this case.

Pursuant to Rule 37(a)(4)(A) and (B), the parties are ordered to submit affidavits concerning attorneys' fees and costs and a memorandum showing cause why the Court should not apportion costs and fees between them within fourteen days of receipt of this Order. An opportunity to be heard shall be granted and a hearing scheduled at a later date. If the parties wish to waive their right to be heard, they may submit the issue on the papers.


III.    **Weiss's Motion to Compel Production of Documents and Answers to Interrogatories by Richard Harazim and for Sanctions, filed August 29, 2006**

The Weiss defendants move to compel counterclaim defendant Richard Harazim ("Harazim") to produce documents and to answer interrogatories, and seek sanctions for his alleged failures to date. While this motion was not addressed in the hearing held on August 30, I

do not think that oral argument is necessary in order to clarify the issues.

Weiss has sued Harazim in a counterclaim which, as currently formulated after the Court's dismissal of certain counts and parties, alleges abuse of process. Among other things, Harazim challenged the court's jurisdiction over him. That motion was granted in part and denied in part on June 28, 2006. Harazim successfully resisted discovery before that date. On June 30, 2006, Weiss served document requests and interrogatories upon Harazim, the answers and responses to which were due a month later, on July 31, 2006. Shortly before that date, Harazim's counsel asked for an extension of time until August 9, 2006. On August 15, responses and answers were served.

<u>Document Requests</u>

In sum, forty-six days after receiving the document request, Harazim responded that Local Rule 26.1(C) bars the document request because Weiss has already served two sets of requests and did not seek leave to serve a third set. Moreover, Harazim responded, he does not possess responsive documents. Harazim does not indicate in his Opposition which requests he considers the first and second requests. According to Weiss's motion papers, the earlier requests were served on August 1, 2005, and March 3, 2006, and Harazim responded to neither. As to the assertion that Harazim does not possess responsive documents, that is apparently not true, according to the representations of counsel that additional responsive documents, such as cell phone records, planners and calendars and business cards, might exist.

Weiss argues that the late response to the request for production effects a waiver to all objections. Harazim counters that the request was void *ab initio* and required no response because leave was not granted to file it.

As I understand the facts, Harazim, a party, has never produced documents in his individual capacity and has never responded to a document request. Under Fed. R. Civ. P. 34, "[a]ny party may serve on any other party a request . . . to produce . . .". Local Rule 26.1(C) limits the total number of discovery events for "each side" but does not specify whether the restriction applies per responding party or with respect to all responding parties, taken together. The reported cases all seem to deal with the problem of a single responding party being bombarded with multiple sets of interrogatories or requests for admission issued by several requesting parties (*see, e.g., St. Paul Fire and Marine Insurance Co. v. Birch, Stewart, Kolasch & Birch, LLP*, 217 F.R.D. 288 (D. Mass. 2003)(Collings, M.J.), not the situation presented here, where the other sets of requests were apparently served on Kotva, not Harazim. If the Local Rule were read to preclude one party from requesting documents from another party, the Local Rule would be inconsistent with Rule 34. The Local Rule must yield to permit Weiss to obtain documents from Harazim. *Cf. St Paul Fire and Marine Insurance Co., supra*, in which Magistrate Judge Collings ruled that Local Rule 26.1(C)'s limit of 25 interrogatories *per side* was invalid because it was inconsistent with Rule 33.

Accordingly, I rule that the document request was not void *ab initio*. Moreover, Harazim's failure to respond within the time allowed by the Rules, and without seeking either a stipulation extending the time or an order from the court extending the time evidences a nonchalance and cavalier attitude that cannot be excused. Accordingly, objections are deemed waived, pursuant to Local Rules 34.1(c)(1) and 33.1(c)(1). *See Tropix, Inc. v. Lyon & Lyon*, 169 F.R.D. 3 (D. Mass. 1996). Harazim is directed to respond to the requests in full, and to make production of all documents not previously produced. Production shall be made forthwith and in

28

no event later than October 10, 2006.

Interrogatories

Weiss seeks to compel answers to Interrogatory Nos. 1 and 2, and argues that Harazim, by serving his answers late, waived his objections to the interrogatories, and that this court has no discretion to rule otherwise.

Indeed, Harazim served his answers to interrogatories late, whether or not one considers the conditioning of the extension on Harazim's answering as opposed to objecting to the requests "too cute" as Harazim contends. The answers were not served until August 15, six days after the asked-for and agreed-to extension to August 9, even disregarding any condition attached to the extension. Harazim offers no excuse for the late service, nor for his failure to move for a protective order on the scope and breadth of the interrogatories. Not a single responsive, allegedly privileged communication was logged. The objection that the information sought in interrogatory nos. 1 and 2 "is more appropriately obtained at deposition" is not properly stated as an objection unless it is followed promptly with a motion for a protective order pursuant to Fed. R. Civ. P. 26(c). Instead of moving for a protective order, Harazim chose to delay responding, and then to interpose an objection to both interrogatories in their entirety. While complaining that the interrogatories were overbroad, Harazim did not describe a single communication between himself and any other individual concerning either the decision to bring this lawsuit or concerning the criminal charges against Weiss. This was plainly improper. Even if Harazim believed that the interrogatories were overbroad, unduly burdensome, etc., such objection is not a license to refuse to make any substantive response whatsoever.

Given that the answers were filed late and given that no privileged communication was

even identified in a log and given that no motion for a protective order was filed, I am compelled

to find that the objections to the interrogatories are deemed to be waived.  Hence, Harazim is

ordered to answer interrogatories nos. 1 and 2 forthwith, and in no event later than October 10,

2006.

Harazim and counsel are further ordered to show cause why Weiss should not be awarded

costs and fees incurred in filing this motion.  Weiss is invited to submit an affidavit of costs and

fees.  Submissions shall be filed by October 18.  The parties shall be afforded an opportunity to be

heard on the question of sanctions, unless they agree to submit the matter on the papers.

IV.  Marta Guthova Documents

By letter dated August 3, 2006, counsel to Weiss submitted so-called Guthova documents

for *in camera* review.  According to counsel, Ms. Guthova was a director of Flow East, a

company affiliated with James Woolf, and was working with Mr. Woolf on Kotva-related matters.

I have reviewed the following documents.  I incorporate herein my analysis of the Woolf-

Weiss relationship and documents contained in my order dated June 19, 2006.  In many instances,

the documents most recently submitted do not convey legal advice, but they do relate to litigation

strategy, the hiring of attorneys, collection and review of documents.  All fall within  the period of

common interest between Woolf and Weiss.  The documents that relate to the evaluation of

various attorneys and the fees the attorneys may charge are not in my view relevant, although they

are not, strictly speaking, attorney-client privileged.  They are, arguably, work product-protected.

As noted in my earlier order, documents that bear on the relationship of cooperation between

Weiss and Woolf are potentially relevant, however.  Finally, communications between Peterka

and/or Weiss with Woolf or Marta Ghutova relating to the collection of documents, etc. are

protected work product in anticipation of litigation.  Consonant with these principles, Weiss is ordered to produce the documents or portions thereof indicated in the table below.

| No. | Description | Action Required |
| --- | --- | --- |
| 216 | Email regarding terms for legal work and potential attorneys | Produce.  The document is relevant to the relationship between Weiss and Woolf. |
| 221 | Email regarding terms for legal work and potential attorneys | Do not produce.  The document relates to the evaluation and fees of a specific attorney. Not relevant. |
| 222 | Email regarding terms for legal work and potential attorneys | Do not produce.  The document relates to the fees of a specific firm. Not relevant. |
| 230 | Email regarding retention of counsel in Czech Republic | Do not produce.  The document relates to the evaluation of specific attorneys and law firms.  Not relevant. |
| 233 | Email regarding terms for work and potential attorneys | Do not produce.  The document relates to the evaluation of specific attorneys and law firms.  Not relevant. |
| 234 | Email regarding terms for work and potential attorneys | Do not produce.  The document relates to the evaluation of specific attorneys and law firms.  Not relevant. |
| 432 | Correspondence regarding potential legal proceedings and materials gathered for those proceedings | Do not produce.  Attorney-client privileged communication; work product-protected material. |
| 441 | Correspondence regarding material gathered for legal proceedings | Produce header of first message without the subject line. Produce the three lines of the message, beginning "Dear Mr Peterka, as you can read" and ending "111."  The subject line and the balance of the message and the remainder of the document may be redacted. |

So ordered this 29th day of September, 2006.

/s/ Jeanne M. Kempthorne

31

_____
Special Master

# MEMORANDUM IN OPPOSITION TO KOTVA'S MOTION TO COMPEL
## (Docket No. 106)

## April 26, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW WEISS and WEISS ASSET MANAGEMENT, LLC, <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| ANDREW WEISS, WEISS ASSET MANAGEMENT LLC, K T, INC. and CVF INVESTMENTS, LTD., <br><br> Counterclaim-plaintiffs, <br><br> v. <br><br> KOTVA a.s., MARTIN BENDA, RICHARD HARAZIM, FORMINSTER ENTERPRISES, LTD., SPV CO and JOHN DOES 1–5, <br><br> Counterclaim-defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

C.A. No. 05-10679-RCL

## MEMORANDUM IN OPPOSITION TO KOTVA'S MOTION TO COMPEL

**I.     INTRODUCTION AND FACTUAL BACKGROUND**

The plaintiff, Kotva, filed this lawsuit for the improper purpose of exerting pressure on Andrew Weiss in a business dispute in the Czech Republic. Kotva's complaint fails to state a claim upon which relief can be granted, and the defendants have moved for judgment on the pleadings. Nevertheless, Kotva pushes forward with discovery requests that are designed to unnecessarily increase litigation costs and interfere with Mr. Weiss's business relationships. More specifically, Kotva seeks to sift through privileged documents to which it is not entitled, go

legal issues have been withheld.

### D.    THE CRIME-FRAUD EXCEPTION DOES NOT APPLY TO THIS CASE

In its Motion to Compel, Kotva repeats its slanderous, unfounded allegation that the Weiss Parties used the services of Czech counsel "to foster a crime or fraud." Kotva's Mem. at 18 (quoting *In re Grand Jury Proceedings*, 417 F.3d 18, 23 (1st Cir. 2005)). The Weiss Parties contacted Czech counsel to initiate litigation in the Czech Republic. Filing a lawsuit is not criminal behavior.[12] Thus, Kotva cannot meet *its burden* of demonstrating: "(1) that the client was engaged in (or was planning) criminal or fraudulent activity when the attorney-client communications took place; and (2) that the communications were intended by the client to facilitate or conceal the criminal or fraudulent activity."[13]

The crime fraud exception does not apply to situations where the client sought the attorney's advice with the intent of legally accomplishing its business goals.[14] Moreover, since filing lawsuits is not a crime under U.S. law,[15] it is irrelevant for purposes of the crime-fraud exception that Kotva was able to use its influence over Czech law enforcement to bring sham criminal charges against Mr. Weiss. "[C]riminal law should be recognized for purposes of

---

[12] *E.g.*, *Raney v. Allstate Ins. Co*, 370 F.3d 1086, 1088 & n.2 (11th Cir. 2004) (holding that neither threats to litigate nor actual litigation can constitute extortion under federal law); *Deck v. Eng'd Laminates*, 349 F.3d 1253, 1257–58 (10th Cir. 2003) ("[W]e join a multitude of other courts in holding that meritless litigation is not extortion under § 1951."); *I.S. Joseph Co v. J. Lauritzen A/S*, 751 F.2d 265, 267 (8th Cir. 1984) ("We cannot agree that the threat [to bring a civil action] alleged here constituted the infliction of 'fear' for purposes of the extortion statute."); *Dias v. Bogins*, No. 97-1612, 1998 U.S. App. LEXIS 536, at *2 (1st Cir. Jan. 13, 1998) (unpublished) ("[A] threat to sue . . . is not extortion under federal law."); *Di Giambattista v. McGovern*, No. 92-1168, 1992 U.S. App. LEXIS 23569, at *10 (1st Cir. Sept. 4, 1992) (unpublished) (same).

[13] *In re Grand Jury Proceedings*, 417 F.3d 18, 22 (1st Cir. 2005) (holding that the crime-fraud exception applies where the client "sought or employed legal representation *in order* to commit or facilitate a crime or fraud") (emphasis added).

[14] *In re Grand Jury Subpoena*, 220 F.R.D. 130, 151–52 (D. Mass. 2004) ("The client must have actual or constructive intent to engage in wrongful activity . . .").

[15] Nor is it a crime under Czech law. Kotva can point to no case in which someone was convicted of extortion under Czech law for filing a lawsuit or threatening to file a lawsuit.

federal common law crime-fraud analysis only when it has an analogue in American jurisprudence."[16]  Indeed, the notion that petitioning the courts for redress can be a criminal act is so contrary to our common understanding that even if it could constitute a crime as a matter of law, Kotva cannot demonstrate that Mr. Weiss had the sort of specific intent to commit a crime that is a necessary component of establishing the crime-fraud exception.[17]

### E.    THE WEISS PARTIES' CLAIMS OF WORK PRODUCT PROTECTION ARE ENTIRELY PROPER

Contrary to Kotva's unsubstantiated allegation, documents created in anticipation of litigation or potential litigation in the Czech Republic are not documents created in the ordinary course of business by the Weiss Parties.[18]  Weiss Capital LLC is in the business of investment management.  Lawsuits are the exception—not the rule.  As Weiss Capital employees and others learned about the tremendous damage the Forminster Group has wreaked on the shareholders of Trend and Kotva, they prepared documents in anticipation of potential litigation to redress those wrongs.  These documents are classic work product.

That Mr. Hoffmann was involved with the creation of some of these documents or reviewed other such documents after they were created does not change the analysis.  As discussed in more detail above, Mr. Hoffmann was acting as the local representative for the Weiss Parties and his involvement in the creation of work product does not diminish the scope of

---

[16] *Madanes v. Madanes*, 199 F.R.D. 135, 148 (S.D.N.Y. 2001) (holding that the crime fraud exception did not apply because the alleged crimes were violations of law of Argentina, but the conduct would not constitute a crime in the United States)

[17] *In re Grand Jury Proceedings*, 417 F.3d 18, 22 (1st Cir. 2005) (holding that the crime-fraud exception applies where the client "sought or employed legal representation *in order* to commit or facilitate a crime or fraud") (emphasis added).

[18] Work product materials need not be prepared by an attorney to qualify as work product.  *See Sprague v. Director, Office of Workers' Comp. Programs*, 688 F.2d 862, 870 (1st Cir. 1982) ("Furthermore, the fact that *a doctor* and not *an attorney* prepared this letter is irrelevant for purposes of Rule 26(b)(3) work-product protection."); *In re Grand Jury Subpoena*, 220 F.R.D. 130, 142 & n.6 (D. Mass. 2004).

# COUNTERCLAIM-PLAINTIFF'S RESPONSE TO PLAINTIFF'S OBJECTION TO DISCOVERY MASTER'S ORDER (Docket No. 120)

## June 26, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW WEISS and WEISS ASSET MANAGEMENT, LLC, <br><br> Defendants. <br> _____ <br><br> ANDREW WEISS, WEISS ASSET MANAGEMENT LLC, K T, INC. and CVF INVESTMENTS, LTD., <br><br> Counterclaim-plaintiffs, <br><br> v. <br><br> KOTVA a.s., MARTIN BENDA, RICHARD HARAZIM, FORMINSTER ENTERPRISES, LTD., SPV CO and JOHN DOES 1–5, <br><br> Counterclaim-defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )     C.A. No. 05-10679-RCL |

## COUNTERCLAIM-PLAINTIFFS' RESPONSE TO
## PLAINTIFF'S OBJECTION TO DISCOVERY MASTER'S ORDER

Counterclaim-plaintiffs Andrew Weiss ("Weiss"), Weiss Asset Management LLC ("WAM"), K T, Inc. ("K T") and CVF Investments Ltd. ("CVF") (collectively, the "Weiss Parties") hereby submit their Response to the Objection of plaintiff Kotva a.s. ("Kotva") to the Discovery Master's May 26, 2006 Order. This Objection is Kotva's latest effort to resist discovery that the Weiss Parties propounded over *ten months ago*. The Court should overrule it.

## IV.   OBJECTION RELATING TO PRIVILEGED DOCUMENTS

Kotva objects to: (1) the Discovery Master's finding that it has not made the sort of threshold showing to justify *in camera* review of privileged communications between the Weiss Parties and Czech counsel; and (2) the Discovery Master's decision to exercise her discretion not to conduct such a review even had Kotva made the requisite showing.  Neither the finding nor the exercise of discretion was in error, and either is sufficient to justify the Discovery Master's decision.

With respect to the Discovery Master's finding that Kotva has failed to make the requisite showing to permit *in camera* review, Kotva mischaracterizes the Discovery Master's decision. First, the Discovery Master never suggested that the crime-fraud exception does not apply in civil cases or that a discovering party must make a greater showing in order to permit *in camera* review in civil cases.  Rather, the Discovery Master noted that there are different considerations in the context of civil litigation that "counsel the exercise of great caution in piercing the privilege."  May 26, 2005 Order at 4.  This statement, and the paragraph of which it is part, focuses on the decision whether to pierce the privilege rather than the decision whether to conduct *in camera* review of documents.  It is the decision not to conduct *in camera* review that Kotva is appealing.

Second, contrary to Kotva's suggestion, the Discovery Master applied the proper standard in deciding not to conduct *in camera* review of communications with Czech counsel. The Discovery Master made an explicit finding that "Kotva's showing falls short of demonstrating a good faith basis upon which a reasonable person may believe that *in camera* inspection may reveal documents that should lose their status as privileged or protected documents."  May 26, 2006 Order at 4.  This finding is correct for two reasons.

First, it is undisputed that the Weiss Parties engaged Czech counsel for the purpose of initiating litigation in the Czech Republic. The crime fraud exception does not apply to situations where the client sought the attorney's advice with the intent of legally accomplishing its business goals. Filing a lawsuit is not criminal behavior under U.S. law.[1] The Court should look to U.S. law to determine if the conduct at issue is criminal because "[c]riminal law should be recognized for purposes of federal common law crime-fraud analysis only when it has an analogue in American jurisprudence." *Madanes v. Madanes*, 199 F.R.D. 135, 148 (S.D.N.Y. 2001) (holding that the crime fraud exception did not apply because the alleged crimes were violations of law of Argentina, but the conduct would not constitute a crime in the United States).

Notwithstanding the myriad decisions—including two unpublished First Circuit decisions—holding that filing a lawsuit or threatening to file a lawsuit cannot constitute extortion under U.S. law, Kotva claims in a footnote that there is precedent to the contrary in this Circuit. This assertion is incorrect.

In *Gonzalez-Morales v. Hernandez-Arencibia*, 221 F.3d 45, 51–52 (1st Cir. 2000), the First Circuit did not address the question of whether alleged meritless litigation was a crime that could serve as a RICO predicate. Rather, the First Circuit *assumed for the purpose of argument* that this was the case and rejected the RICO claim on other grounds. *Id.* ("Although we will assume that the filing of frivolous suits may constitute RICO extortion in some instances . . . .

---

[1] *E.g.*, *Raney v Allstate Ins Co*, 370 F.3d 1086, 1088 & n.2 (11th Cir. 2004) (holding that neither threats to litigate nor actual litigation can constitute extortion under federal law); *Deck v. Eng'd Laminates*, 349 F.3d 1253, 1257–58 (10th Cir. 2003) ("[W]e join a multitude of other courts in holding that meritless litigation is not extortion under § 1951."); *I.S. Joseph Co v J Lauritzen A/S*, 751 F.2d 265, 267 (8th Cir. 1984) ("We cannot agree that the threat [to bring a civil action] alleged here constituted the infliction of 'fear' for purposes of the extortion statute."); *Dias v Bogins*, No. 97-1612, 1998 U.S. App. LEXIS 536, at *2 (1st Cir. Jan. 13, 1998) (unpublished) ("[A] threat to sue . . . is not extortion under federal law."); *Di Giambattista v McGovern*, No. 92-1168, 1992 U.S. App. LEXIS 23569, at *10 (1st Cir. Sept. 4, 1992) (unpublished) (same).

[T]he Gonzalezes have not alleged a pattern of racketeering activity. Thus, we need not address whether the other elements of RICO (such as the allegation of an 'enterprise') were pled appropriately.").

In the two cases where the First Circuit squarely confronted the question, it consistently held that "[a] threat to sue, even if groundless and made in bad faith, may be tortious under state law, but it is not extortion under federal law." *Di Giambattista v McGovern*, No. 92-1168, 1992 U.S. App. LEXIS 23569, at *10 (1st Cir. Sept. 4, 1992) (unpublished); *Dias v. Bogins*, No. 97-1612, 1998 U.S. App. LEXIS 536, at *2 (1st Cir. Jan. 13, 1998) (unpublished) ("[A] threat to sue . . . is not extortion under federal law."). The Court should not read the First Circuit's "assum[ption]" in *Gonzalez* as a decision to depart from the consensus reached by "a multitude of other courts in holding that meritless litigation is not extortion under § 1951." *Deck v. Eng'd Laminates*, 349 F.3d 1253, 1257–58 (10th Cir. 2003).

*Lemelson v. Wang Laboratories, Inc.*, 874 F. Supp. 430 (D. Mass. 1994) is not to the contrary. The counterclaim-plaintiff in *Lemelson* did not even take the position that the filing of a lawsuit was a crime. *See* Exhibit A at 7–9. Instead, it alleged that Lemelson had engaged in a scheme to defraud the U.S. Patent and Trademark Office (the "PTO") to obtain a series of patents. *Id* The RICO predicates in *Lemelson* were mail fraud and wire fraud—not extortion. *Id* Thus, *Lemelson* stands for the narrow proposition that a scheme to defraud the PTO can constitute mail fraud or wire fraud.

As an initial matter, it appears that *Lemelson* is no longer good law. In *Semiconductor Energy Laboratory Co. v. Samsung Electronics Co*, 204 F.3d 1368, 1378–80 (Fed. Cir. 2000), the Federal Circuit held that a scheme to defraud the PTO in order to obtain a patent and then use that patent to extort others does not constitute mail fraud or wire fraud. More importantly, the

conduct alleged in *Lemelson* has no parallel in Kotva's allegations in the case. In this case, Kotva has not alleged a scheme to defraud a third party in order to obtain a right that can serve as the basis of a lawsuit. Instead, it alleges that the filing of the lawsuit is itself a crime.

The notion that petitioning the courts for redress can be a criminal act is so contrary to common understanding that even if it could constitute a crime as a matter of law, Kotva cannot demonstrate that Mr. Weiss had the sort of specific intent to commit a crime that is a necessary component of establishing the crime-fraud exception. *See In re Grand Jury Proceedings*, 417 F.3d 18, 22 (1st Cir. 2005) (holding that the crime-fraud exception applies where the client "sought or employed legal representation *in order to* commit or facilitate a crime or fraud") (emphasis added).

Second, there is no evidence to suggest that the two categories of documents Kotva claims it might find even exist. Kotva states that it hopes to find documents stating that there is no basis under Czech law for the lawsuits. However, experienced Czech counsel did file the lawsuits. Undersigned counsel also filed counterclaims in this case that, according to Kotva, "request[] the same basic relief" as the Czech lawsuits. Kotva's Mem. in Support of Motion to Dismiss "Counterclaim-Plaintiffs" K T and CVF at 8. The mere fact that the lawsuits were filed indicates that no documents stating that the lawsuits lack merit exist. Moreover, as a result of the efforts of Mr. Peterka, a Czech court recently entered an injunction preventing Forminster from voting its shares in order to merge Kotva a.s. with another company.[2] *See* Exhibit B.

The evidence of a "crime" that Kotva identifies in its Objection is the sort of evidence that one would likely see in any settlement discussion in any lawsuit. The Discovery Master correctly described the email that Kotva characterized as "damning" in its Motion to Compel as

---

[2] Kotva also states that it hopes to find documents concerning "the intentional stalling of litigation," but offers no evidence that the Czech litigation has, in fact, been "stalled" by the Weiss Parties

"an evaluation of litigation and business strategy designed to maintain the value of the Kotva shares rather than 'damning' evidence of extortion." May 26, 2006 Order at 5. The only difference between this case and any other is that Kotva has used its influence over Czech law enforcement to bring sham criminal charges against Mr. Weiss and others.[3]

Finally, the Discovery Master wrote that "[e]ven if Kotva's showing meets *Zolin*'s lesser threshold for *in camera* review, I decline, in the exercise of my discretion, to conduct such review at this time." May 26, 2006 Order at 4. This decision was correct for all the reasons the Discovery Master lays out on pages 4 and 5 of the Order. Kotva places no limits on the review it asks the Discovery Master to undertake, has not offered to pay the substantial expenses involved in reviewing thousands of documents, and has offered no good reason for the Discovery Master—or the Court—to exercise its discretion in Kotva's favor.

## V.   REQUEST FOR SANCTIONS

Kotva's Objection to the Discovery Master's May 26, 2006 Order is Kotva's latest effort to resist legitimate discovery and delay this case. The Objection is not "substantially justified" on the merits. FED. R. CIV. P. 37(a)(4). Rather, its purpose is to impose additional costs, including the costs of delay, on the Weiss Parties. The Objection is part of pattern of discovery abuse that began with Kotva's refusal to produce non-confidential documents unless the Weiss Parties agreed to a burdensome blanket confidentiality order. This resistance continued with a meritless motion for a protective order, an objection to the discovery master's denial of that

---

[3] The Weiss Parties note that counsel for Kotva continues to mischaracterize Weiss's motion for a protective order as a motion filed "to avoid having to invoke the Fifth Amendment privilege against self-incrimination." The motion for a protective order sought to sequence Mr. Weiss's deposition based on the unfairness of Kotva collaborating with the Czech police to bring sham criminal charges and then using the pendency of those charges to improperly refuse to provide discovery. The Discovery Master denied the particular relief sought by Mr. Weiss's Motion, but did enter an order precluding Kotva from taking Mr. Weiss's deposition until it had complied with its outstanding discovery obligations, including answering questions at its 30(b)(6) deposition that it had refused to answer based on the pending criminal investigation in the Czech Republic.

# MEMORANDUM IN OPPOSITION TO KOTVA'S MOTION TO COMPEL AND REQUEST FOR SANCTIONS
## (Docket No. 134)

## August 28, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s.,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW WEISS and WEISS ASSET MANAGEMENT, LLC,<br><br>Defendants.<br>——————————————————————<br>ANDREW WEISS, WEISS ASSET MANAGEMENT LLC, K T, INC. and CVF INVESTMENTS, LTD.,<br><br>Counterclaim-plaintiffs,<br><br>v.<br><br>KOTVA a.s., MARTIN BENDA, RICHARD HARAZIM, FORMINSTER ENTERPRISES, LTD., SPV CO and JOHN DOES 1–5,<br><br>Counterclaim-defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    C.A. No. 05-10679-RCL |

## MEMORANDUM IN OPPOSITION TO
## KOTVA'S MOTION TO COMPEL AND REQUEST FOR SANCTIONS

### I.    INTRODUCTION

Kotva's motion to compel seeks to impose burdens on the Defendants that have no basis in the Federal Rules or the Court's prior orders and should be denied. Kotva takes a second bite at the apple, persisting in its requests for additional information on the Defendants' privilege log that Kotva made in April 2006 and that the Discovery Master rejected in issuing the May 26, 2006 Order. This Motion, and Kotva's failures to make a good faith attempt to resolve the disputed issues, reflects Kotva's desire to engage in motion practice for its own sake. Finally,

## V.    THE REMAINDER OF KOTVA'S MOTION FAILS TO COMPLY WITH THE LOCAL RULES

Before turning to the remainder of Kotva's motion, Defendants point out that Kotva has failed to comply with the applicable rules in filing this motion. Kotva seeks relief that was never discussed during *any* discovery conference. The portions of Kotva's motion labeled sections III and IV on pages 11–20 raise issues for the first time with the Court that Kotva failed to raise with the Defendants, as required by Local Rule 37.1. Tellingly, Kotva's motion is devoid of any claim that these issues were discussed during any discovery conference. The Court should not encourage Kotva's zeal to litigate issues rather than resolve them through the negotiating process that the Rules are designed to foster. Instead, the Court should deny Kotva's motion with respect to issues on which it failed to meet and confer and award the Weiss Parties' costs for time spent responding to those issues.

## VI.    KOTVA PRESENTS NOTHING NEW IN SUPPORT OF ITS REQUEST THAT THE DISCOVERY MASTER REVIEW DOCUMENTS *IN CAMERA*

Kotva asks the Discovery Master to reconsider her lengthy, detailed decision—upheld by the Court—to not conduct an *in camera* review of documents listed on the Weiss Parties' privilege log. Undaunted by the repeated rejection of its argument by the Court, Kotva presents nothing new in support of its request that the Discovery Master review over 1,000 documents. Of the three documents now quoted by Kotva in its Motion as if it had new evidence, two are *exhibits to its Complaint* and the third was *produced by Kotva*—not Defendants—in 2005. All three documents are internal communications among the Weiss Parties and their counsel that Kotva apparently obtained from the Czech criminal file after the police seized privileged material from the offices of Peterka & Partners, Weiss's Czech counsel. These documents add nothing to the arguments and materials Kotva supplied in its April 3, 2006 Motion to Compel, its May 19, 2006 letter to the Discovery Master addressing the crime/fraud issue, or its June 12,

2006 Objection filed with Judge Lindsay, which sought reversal of the May 26, 2006 Order with respect to the Discovery Master's decision rejecting Kotva's crime/fraud argument. Allowing Kotva to take a fourth bite at the apple is three bites too many.

In any event, these documents—like the "damning evidence" that Kotva submitted previously and the Discovery Master and Court flatly rejected—do not evidence a crime. First and most importantly, Kotva fails to establish how filing a lawsuit—the purpose for which the Weiss Parties retained Peterka & Partners—could ever be a crime. Second, the specific exhibits Kotva cites do not support Kotva's argument. Rather, Kotva's Exhibit I reveals that it was Messrs. Benda and Harazim, rather than Mr. Weiss, who insisted on tying a purchase of shares to the withdrawal of lawsuits. Kotva's Exhibit J relates to a lawsuit to which Kotva is not a party. The standing question on which it comments—whether a shareholder of Trend has standing to bring a petition against the bankruptcy trustee of SPRINT relating to his efforts to seize control over shares in Kotva embezzled from Trend—is not at all analogous to whether a shareholder of Kotva has standing to challenge the validity of corporate actions taken by Kotva. It is in this capacity that K T, Inc. brought the litigation that Kotva claims caused it harm. K T's lawsuit is still pending in the Czech courts. Kotva's Exhibit K is of the same ilk as the documents submitted by Kotva in April—"an evaluation of litigation and business strategy designed to maintain the value of the Kotva shares rather than 'damning' evidence of extortion." May 26, 2006 Order at 5.

Kotva has not provided the Court with any additional evidence of a crime. It has failed completely to prove that any law of the Czech Republic or the United States has been broken. Instead, it seeks by rhetoric to put the conclusion (crime/fraud) before the proof in order to gain unwarranted access to privileged information. This tactic, like filing the criminal complaint in

12

the first place, it Kotva's way to use criminal allegations as a club to gain advantage in civil litigation. Thus, the Court should not reconsider its earlier finding that Kotva had not made the sort of threshold showing to authorize *in camera* review. Nor has Kotva given the Court any reason why, if *in camera* review were permitted, the Court should exercise its discretion to sift through over 1,000 documents in search of a crime that was never committed.

## VII. THE INADVERTENT DISCLOSURE OF A THREE PAGES OF PRIVILEGED MATERIALS AMONG OVER 17,500 PAGES PRODUCED DOES NOT EFFECT A SUBJECT MATTER WAIVER

### A. The Discovery Master Ordered the Weiss Parties to Produce the Documents Kotva Has Submitted as Exhibits I, J, L and M

In the May 26, 2006 Order, the Discovery Master ordered the Weiss Parties to produce all documents provided to the State Department that the Weiss Parties had withheld on work product grounds. Two days after the period for objecting to the Order had expired, the Weiss Parties produced documents bates-labeled WP0013542–WP0014848, notifying Kotva that "[t]his production also includes documents disclosed to the press or State Department as referenced in paragraph A.4 of the Discovery Master's May 26, 2006 Order." Exhibit J. Each of Kotva's Exhibits I, J, L and M were sent to the State Department. Accordingly, their production was not inadvertent—it was ordered by the Court.

Kotva's Exhibits I (WP0013980–81) and J (WP0013983–84) were attached to a March 31, 2006 communication from counsel to an individual at the State Department. *See* Exhibit K. In filing its Motion to Compel, Kotva not only failed to alert the Court to this fact, but also attempted to obscure the fact that these pages are *copies of exhibits to Kotva's Complaint* by omitting the surrounding pages in the production. *Id.* at WP0013545 n.15; WP13978–84. There can be no waiver by a defendant producing documents provided to it by the plaintiff. Nor can a forcible seizure of documents from an attorney's office by the Czech police be construed as a

# WEISS PARTIES' SUPPLEMENTAL MEMORANDUM REGARDING SANCTIONS AND APPORTIONMENT OF FEES
## (Docket No. 157)

## November 7, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s.,<br><br>        Plaintiff,<br><br>    v.<br><br>ANDREW WEISS and WEISS ASSET<br>MANAGEMENT, LLC,<br><br>        Defendants.<br><br>ANDREW WEISS, WEISS ASSET<br>MANAGEMENT LLC, K T, INC. and CVF<br>INVESTMENTS, LTD.,<br><br>        Counterclaim-plaintiffs,<br><br>    v.<br><br>KOTVA a.s., MARTIN BENDA, RICHARD<br>HARAZIM, FORMINSTER ENTERPRISES,<br>LTD., SPV CO and JOHN DOES 1–5,<br><br>        Counterclaim-defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   C.A. No. 05-10679-RCL<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## WEISS PARTIES' SUPPLEMENTAL MEMORANDUM
## REGARDING SANCTIONS AND APPORTIONMENT OF FEES

The Weiss Parties make this submission in response to the Discovery Master's October 24, 2006 email allowing the parties an opportunity to respond to each other's responses to the September 29, 2006 Order.

## I.   KOTVA IS IMPROPERLY ATTEMPTING TO RE-LITIGATE ISSUES THAT THE COURT HAS ALREADY DECIDED

Kotva spends the bulk of its effort in its Memorandum Regarding Apportionment of Fees and Costs in Response to the Special Master's September 29, 2006 Order (pages 1–15) in a

misdirected and unsupported attempt to re-litigate the issues decided by the Discovery Master.

Kotva's attempt to re-argue the merits of its motion to compel is blatantly outside the scope of

the briefing ordered in the September 29, 2006 Order. The Court's order was clearly divided

into three sections with bold headings marked by roman numerals. With respect to Kotva's

Motion for Sanctions and to Compel, filed on August 2, 2006, the Court ordered "Kotva and its

counsel [to] show cause why sanctions should not enter against either or both of them" with

respect to the single issue of subject matter waiver. Sept. 29, 2006 Order at 18. No other

briefing was requested or warranted with respect to this Motion. Kotva filed a response to this

portion of the September 29, 2006 Order.

With respect to Kotva's Motion to Compel, filed August 11, 2006, the Court ordered the

parties to "submit . . . a memorandum showing cause why the Court should not apportion costs

and fees between them." This instruction, which appeared in Part II of the September 29, 2006

Order, is clearly limited to the August 11, 2006 Motion to Compel. Kotva spends fewer than

three of the eighteen pages of its submission addressing this Motion, spending the bulk of its

submission attempting to re-litigate why its August 2, 2006 motion should have been decided

differently.

Kotva's attempt to use the opportunity to submit memoranda in response to the Court's

orders to show cause is entirely improper. In allowing a motion to strike arguments that were

outside the scope of the Court's briefing orders, this Court wrote:

> The court finds that although the importance of the issues raised by AAHC for the
> first time in its Supplemental Memorandum was certainly more clear after the
> April 23, 2003 hearing, there was no reason that AAHC could not have raised
> these issues [in one of four briefs or at a hearing.] *See* Local Rule 7.1(b)(3)
> (requiring leave of court for filing additional papers in support of or in opposition
> to motions); *CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504,
> 1526 (1st Cir. 1996) ("Not only can parties not claim error based on arguments
> which the district court never had a chance to timely consider, but <u>courts are also</u>

2

entitled to expect represented parties to incorporate all relevant arguments in the papers that directly address a pending motion."); *McCoy v. Massachusetts Inst. of Technology*, 950 F.2d 13, 23 (1st Cir. 1991) ("The plaintiff has an affirmative responsibility to put his best foot forward in an effort to present some legal theory that will support his claim."); *cf. Rivera-Muriente v. Agosto-Alicea*, 959 F.2d 349, 354 (1st Cir. 1992) ("It is well settled in this court, for good reason which need not be rehearsed here, that a legal argument made for the first time in an appellant's reply brief comes too late and need not be addressed.").

*Official Comm. of Unsecured Creditors for the Bankruptcy Estate of Boston Reg'l Med. Ctr. v.*

*Ricks (In re Boston Reg'l Med. Ctr.)*, 328 F. Supp. 2d 130, 142–43 (D. Mass. 2004) (emphasis

added). Besides, there is no basis for the Court to reconsider its September 29, 2006 Order.

## II.     THE COURT SHOULD NOT RECONSIDER ITS RULING WITH RESPECT TO KOTVA'S MOTION FOR SANCTIONS AND TO COMPEL, FILED ON AUGUST 2, 2006

### A.     The Weiss Parties' Privilege Log Complied With the Court's Orders

The Court has now had the opportunity to review a number of documents from the Weiss

Parties' privilege log. Although the Court has disagreed with a small number of judgment calls

counsel for the Weiss Parties made with respect to privilege, the Court generally found the Weiss

Parties' invocations of privilege to be appropriate.[1]  Moreover, as illustrated in its Opposition,

the Weiss Parties' log provides *more information* than Kotva's log. Kotva's efforts to apply a

double-standard to the Weiss Parties' log should be rejected.

The Weiss Parties have, throughout this process, attempted to work with Kotva to

provide it with detailed information about documents withheld on the grounds of the attorney-

---

[1] This is also the case for entries 1039 and 1100—privileged documents provided to Kotva by the Czech police that Kotva attached to its submission. These documents are, respectively, a communication regarding ongoing litigation and a communication regarding negotiations and pending lawsuits. Both were sent to attorneys, among others. Both are documents prepared as a result of ongoing litigation that discuss the interaction between negotiations and litigation strategy, including information either provided by counsel (e.g., length, expense and potential outcome of lawsuits) or to be delivered to counsel (e.g., thoughts regarding potential settlement of lawsuits).

client privilege and work product doctrine. Kotva now claims that it was ready to discuss individual documents during the Rule 37.1 process, but counsel for Weiss "stopped" counsel for Kotva from doing so. However, even the attachments to Kotva's submission include one of the many requests counsel for the Weiss Parties made to focus on individual entries. *See* Kotva's Response Ex. 3 at 2 ("I again invite you to provide specific references to privilege log entries that you claim are deficient in some way other than that an attorney is not identified by name or a proceeding is not identified by party."). Counsel for Kotva now acknowledges that it had available during the 37.1 process a list of entries for which it had particular concerns, but failed to provide that list to counsel for the Weiss Parties.[2] *See* Kotva's Response at 7 ("Kotva's counsel . . . had the specific list of deficient entries at hand.").

## B.    The Court Should, for the Third Time, Reject Kotva's Crime-Fraud Argument

Kotva's "timeline" (pages 10–12) is nothing more than an effort to argue its case on the merits, based on the assertions of counsel rather than any evidence or testimony. The timeline contains a number of material omissions and inaccuracies. For example:

- In 2005, when it was able to open an account at the Czech Securities Center, CVF Investments Ltd. successfully joined the key lawsuit at issue.

- This lawsuit, which seeks a declaration that Kotva is the owner of the Department Store, is still pending today. Unlike the Gilroy lawsuit, it has not been dismissed by the Czech courts.

---

[2] Although Kotva is correct that entries 17–26 were discussed at a discovery conference, Kotva conflates the two footnotes in the Weiss Parties' Opposition. *See* Kotva's Response at 6 n.7. Entries 17–25 are copies of the same document. Entry 26 is a different document. In footnote four, the Weiss Parties identify entries 17–<u>26</u> as entries for which "Kotva complained that no attorney was specified." In footnote eight, the Weiss Parties identified entries 17–<u>25</u> as entries that could have been redacted had the parties discussed that issue during the 37.1 process. The only context in which counsel for the Weiss Parties recall discussing entries 17–25 (and 26) was as examples of entries for which Kotva wanted to know which attorney was at issue.

4

- The price Professor Weiss allegedly demanded was lower than the value of CVF Investments' shares if Kotva were liquidated.

- Kotva would have the Court believe that Professor Weiss was negotiating with Kotva—a company that all parties acknowledge could not have purchased Professor Weiss's shares; rather than Forminster—a company that could have purchased the shares. Thus, according to Kotva, Professor Weiss's efforts to sell his shares could never have born fruit. The truth is that Professor Weiss believed he was negotiating with Mr. Harazim, a representative of Forminster. On two prior occasions, Mr. Harazim had made offers to buy the shares at issue.

- Professor Weiss did not make any offer to sell Trend shares until Messrs. Harazim and Benda demanded that litigation relating to the Trend Tunneling be dismissed in connection with Forminster's purchase of CVF Investments' Kotva shares.

In any event, Kotva's argument boils down to the idea that any effort by a minority shareholder to sell its shares while shareholder litigation is pending is a crime. Kotva offers nothing to distinguish this case from any other shareholder dispute, except that the Czech police have, at Kotva's bidding, interjected themselves into this commercial dispute. As this Court has repeatedly held, this is simply not sufficient to justify *in camera* review. Kotva offers no good reason to depart from these holdings.

## III.    THE COURT SHOULD SANCTION KOTVA AND/OR ITS COUNSEL FOR RAISING THE ISSUE OF SUBJECT MATTER WAIVER IN THE MANNER THAT IT DID FOR THE FOUR REASONS THAT THE COURT IDENTIFIED

The Court identified four reasons that it was considering sanctions for the portion of Kotva's motion relating to subject matter waiver:

> Kotva (1) failed to disclose in its motion that it had taken the position in its responses to discovery requests in this litigation that inadvertent disclosure would not constitute subject matter waiver of privileged communications; (2) failed to disclose in its Motion that Exhibits I and J had been attached to the Complaint; (3) failed to cite, much less distinguish, *XYZ Corp.*, which is controlling authority on the question of the scope of an implied waiver of attorney-client privileged documents in its Motion and relegated the case to a footnote in its supplemental submission; (4) failed to comply with Rule 37.1 with respect to the issue of subject matter waiver,

September 29, 2006 Order at 18. The Weiss Parties address these issues in turn:

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KOTVA A.S.,               )
                          )
                          )     Civil Action No. 05-10679-RCL
       v.                 )
                          )
WEISS, ET AL.             )


ORDER OF SPECIAL MASTER
(January 27, 2007)


By letter dated January 19, 2007, Kotva's counsel submitted an affidavit of Richard

Harazim executed on the same date. This filing is made in response to the Order of Special

Master, dated November 17, 2006, in which I ordered Kotva to explain further why documents

referred to in Exhibits F and G were not produced. Among other issues, I noted Kotva's claim

that the attachments referred to in the Exhibits were the same documents, which appeared to me

from context to not be the case. Kotva asks me to rescind the portion of my order imposing

sanctions on this issue.

Mr. Harazim's Affidavit states that Kotva did not withhold either the embedded emails or

the attached documents referred to in Exhibits F and G on the grounds of privilege and therefore

did not log them. Mr. Harazim maintains that Kotva does not have copies of the embedded

emails as stand-alone documents and that the attached documents were either produced or Kotva

does not have them. Mr. Harazim does not clarify whether the attachments were in fact produced

or whether they cannot be found. Finally, Mr. Harazim's Affidavit does not explain whether

Exhibits F and G refer to the same document – the specific issue I asked Kotva to clarify.

1

The motion for reconsideration of the imposition of sanctions is denied.  The sanctions imposed are intended to shift to the appropriate party the costs associated with an unmeritorious motion or defense to a motion for which there is no substantial basis.  Kotva's original submission was not properly supported by affidavit.  Mr. Harazim's Affidavit, while it supports Kotva's assertion that there are no documents in Kotva's possession which were withheld and not logged, does not cure  the original defect in Kotva's submission.  Indeed, it does not answer the question I posed in the November 17 Order.

So Ordered this 27th day of January, 2007.


/s/ Jeanne M. Kempthorne

_____

Special Master

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s., )<br><br>Plaintiff, )<br><br>v. )<br><br>ANDREW WEISS and WEISS ASSET MANAGEMENT, LLC, )<br><br>Defendants. )<br>————————————————— )<br>ANDREW WEISS, WEISS ASSET MANAGEMENT LLC, K T, INC. and CVF INVESTMENTS, LTD., )<br><br>Counterclaim-plaintiffs, )<br><br>v. )<br><br>KOTVA a.s., MARTIN BENDA, RICHARD HARAZIM, FORMINSTER ENTERPRISES, LTD., SPV CO and JOHN DOES 1–5, )<br><br>Counterclaim-defendants. )<br>————————————————— ) | C.A. No. 05-10679-RCL |

## **WEISS PARTIES' MEMORANDUM IN RESPONSE TO ORDER TO SHOW CAUSE**

In ruling on Kotva's Motion to Compel Regarding Defendants' Responses to Interrogatories and Document Requests, filed on August 11, 2006 (the "Motion"), the Discovery Master wrote:

> Pursuant to Rule 37(a)(4)(A) and (B), the parties are ordered to submit affidavits concerning attorneys' fees and costs and a memorandum showing cause why the Court should not apportion costs and fees between them within fourteen days of receipt of this Order.

September 29, 2006 Order at 26.[1]

In response, the Weiss Parties state:

1.     Federal Rule of Civil Procedure 37(a)(4) establishes a presumption in favor of expense shifting that can be overcome only if: (1) the losing party's position was "substantially justified;" or (2) other circumstances make expense shifting unjust.  *See* FED. R. CIV. P. 37(a)(4)(A), 37(a)(4)(B).  "In a similar context, the Supreme Court has said that 'substantially justified' does not mean 'justified to a high degree,' but only 'justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person.'"  *Sheppard v. River Valley Fitness One, L.P.*, 428 F.3d 1, 11–12 (1st Cir. 2005); *see also* ("The standard of 'substantially justified' has been said to have been satisfied if there is a 'genuine dispute,' . . . or 'if reasonable people could differ . . . .'") (citations omitted).

2.     The Motion raised seven distinct issues.  The Discovery Master found in favor of the Weiss Parties with respect to six issues and in favor of Kotva with respect to one issue.  The Weiss Parties respectfully suggest that the Discovery Master engage in the following allocation of costs:

    a.     <u>Criminal File</u>:  Shift expenses to Kotva.  The Discovery Master found that "it appears that Kotva is only interested in obtaining Weiss's work product or alternatively, that the request is simply intended to harass and oppress."

---

[1] The September 29, 2006 Order also provides that Kotva and Harazim must show cause why sanctions and/or costs should not be imposed with respect to part of Kotva's Motion for Sanctions and to Compel and Harazim's responses to the Weiss Parties' discovery requests.  The Weiss Parties understand that no written response is required from them at this stage other than information regarding attorneys' fees incurred, but do seek the opportunity to be heard on the substance of whether sanctions and/or costs should be imposed.

b.    <u>Weiss's Attempts to Have Criminal Charges Against Him Dismissed</u>:
Shift expenses to Kotva.  The Discovery Master found that the discovery
Kotva sought and filed a motion to compel to obtain is "irrelevant to any
issue in this lawsuit."

c.    <u>Other Alleged Blackmail Schemes (Interrogatories Nos. 12, 13, and 14)</u>:
Each party to bear its own costs.  The Weiss Parties' position was
substantially justified.  As Kotva admits, in the May 26, 2006 Order, the
Discovery Master found that "the document requests [corresponding to
these interrogatories] were too onerous."  Kotva's Mem. in Support of
Motion to Compel at 8.  Relying on this finding, the Weiss Parties
understood that they had no obligation to review the large number of
boxes that might contain information responsive to these interrogatories.
In view of the September 29, 2006 Order, the Weiss Parties have obtained
approximately *thirty-five* boxes from storage and are searching through
them for any documents that relate to the information Kotva identified in
its interrogatories.

d.    <u>Information Concerning Private Investigator (Interrogatory No. 9, Request
No. 15)</u>:  Shift expenses to Kotva.  The discoverability of information
gathered by a non-testifying expert such as a private investigator is clearly
not discoverable under Rule 26(b)(4)(B).  Kotva never even attempted to
explain how this Rule does not apply or how it met the "exceptional
circumstances" on which the Rule conditions discovery.

e.    <u>Identification of the Legal and Beneficial Owners of BIP (Interrogatory
Nos. 7 (First Set) and 1 (Third  Set), Request Nos. 16 and 26)</u>:  Shift

expenses to Kotva.  The Discovery Master found that "the request appears to be nothing more than a fishing expedition," "more [discovery] is overkill and unnecessary," and "[t]he request for the names of Weiss's family members who hold interests in BIP borders on abusive."  Kotva's motion to compel discovery of this information is the latest in a series of steps that Kotva has taken to use the discovery process as a weapon to attempt to embarrass Professor Weiss, to upset his relationship with his investors and to inflict additional damage.  Sanctions are appropriate.

f.      <u>Fee Agreements with Weiss's Czech Counsel</u>: Each party to bear its own costs.  There was a genuine dispute about this issue.

g.      <u>Communications with Investors Concerning Changes to the Investment Management Agreement of BGO</u>:  Shift costs to Kotva.  The Discovery Master found that the discovery sought was "completely irrelevant to any issue in this case."  The reason that Kotva sought this information was not because it wanted the information to prepare its case, but rather to try to find additional ways it might be able to drive a wedge between Professor Weiss and his investors.

3.      In this case, shifting expenses to Kotva is particularly appropriate.  Kotva has, throughout this litigation, engaged in discovery misconduct, seeking to use the discovery process as a weapon against the Weiss Parties while flouting its obligations under the Rules.  In the fall of 2005, Kotva refused to produce any documents at all unless the Weiss Parties agreed to a confidentiality order.  In the winter of 2006, Kotva served investors, including another professor at Boston University, with subpoenas falsely claiming that Professor Weiss had been indicted.  Then, after the Court ordered Kotva to respond to the Weiss Parties' discovery requests, Kotva

took recordings of some of the events described in its complaint and, rather than give copies to the Weiss Parties, gave them to the Czech police. Kotva now claims to be unable to retrieve those recordings. In February 2006, counsel for Kotva repeatedly disrupted the deposition of Kotva's 30(b)(6) witness, Richard Harazim, with inappropriate speaking objections and allowed the witness to refuse to answer questions on the wholly improper ground that Czech counsel had told him not to answer while the criminal case was ongoing. When Mr. Harazim, who is also a party to this case, finally responded to discovery requests, he did so in a manner that the Discovery Master found "evidences a nonchalance and cavalier attitude that cannot be excused." September 29, 2006 Order at 28.

4.    The amendments to Rule 37 were designed to "press[] the court to address itself to abusive practices." Notes of Advisory Committee on 1970 Amendments to Rules. The notes to Rule 37 further explain:

> [T]he rules should deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine dispute exists. And the potential or actual imposition of expenses is virtually the sole formal sanction in the rules to deter a party from pressing to a court hearing frivolous requests for or objections to discovery.

*Id.* Sanctions in the form of shifting expenses to Kotva are not only appropriate; they are exactly what the drafters of the Rules had in mind for a litigant that has engaged in the course of conduct that Kotva has in this case.

Respectfully Submitted,

ANDREW WEISS, WEISS ASSET
MANAGEMENT LLC, K T INC. and CVF
INVESTMENTS LTD.

By their attorneys,


/s/ Benjamin A. Goldberger
Edward P. Leibensperger (BBO# 292620)
Benjamin A. Goldberger (BBO# 654357)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts  02109-1775
(617) 535-4000

Dated: October 18, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system and all
attachments will be sent electronically to the registered participants as identified on the Notice of
Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered
participants on October 18, 2006.

/s/ Benjamin A. Goldberger
Benjamin A. Goldberger

BST99 1519872-1.072198.0012