UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| KOTVA a.s. | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05-10679-WGY |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW WEISS and WEISS ASSET MANAGEMENT, LLC | ) ) | |
| | ) | |
| Defendants. | ) ) | |

**KOTVA'S OPPOSITION
TO DEFENDANTS' MOTION TO ADD EXPERT(S)**

**INTRODUCTION**

**"Discovery has gone on long enough: it is time to bring this case to trial."**

*Weiss Parties'* <u>October 30, 2006</u> *Opposition to Plaintiff's Motion to Extend Discovery at 5.*

This is what the Defendants represented to the Court <u>five months ago</u>. Nevertheless, with trial less than four weeks away, Defendants now seek to reopen discovery and call an expert that was never disclosed. Pursuant to the Court's Order, Defendants' written expert disclosures were due on October 31, 2006. Defendants' gambit is woefully late, and they have provided no justification for the delay. Allowing Defendants' motion to reopen and expand expert discovery violates the Federal Rules, breaches the Court's Scheduling Order, contradicts the Defendants' own prior position, and will cause severe prejudice to Kotva as it prepares for trial.

Defendants completely disregard the burden and cost Kotva will face. With trial scheduled to begin on April 23, 2007, Defendants expect Plaintiff to shelve its trial preparation,

depose Defendants' new witness, search for, locate, retain, and prepare its own rebuttal expert witness, and draft and disclose a rebuttal expert report. There is neither time nor need for such a distraction, and Plaintiff respectfully requests that the motion be denied.

## BACKGROUND

This is not a complicated case. Defendants Andrew Weiss and Weiss Asset Management manage a fund called Brookdale Global Opportunity ("BGO") that owned approximately 12% of the stock in Kotva. In May 2004, after learning of press reports about a potential sale of Kotva's department store in downtown Prague, Weiss launched a scheme from Boston to blackmail Kotva, ultimately demanding that Kotva purchase BGO's Kotva shares and shares in a Czech investment fund called "Trend" for over $12 million. Weiss threatened to stop the sale of the department store unless he received a "pay-off" for BGO's shares. When Kotva refused, Weiss followed through on his threats: he arranged for shell companies to purchase token shares of Kotva and file sham lawsuits that challenged the transfer of the department store building to a Kotva subsidiary - - a transfer that had occurred four years earlier; he contacted Markland, the buyer of the department store and its lender, to interfere with and stop the sale. He conditioned the withdrawal of his interference with the department store sale upon meeting his price demands. In February 2005, Weiss was charged with extortion by the Czech police.

Revealingly, Weiss <u>denied</u> his involvement in the sham lawsuits (though now he admits it); denied that he threatened to stop the sale (though internal e-mails say otherwise); and denied that he made ever increasing blackmail demands (though he now also admits this). Defendants' conduct interfered with the sale of the department store, including a delay on the closing of six months and causing $24 million in sale proceeds to still be held in escrow.

Defendants hasten a full retreat from the undisputed facts surrounding Weiss' blackmail, and instead assert the following:

> It was not until the depositions of Mr. Harazim, Mr. Benda and Mr. Weiss in January 2007 that it became clear to defendants that Kotva would rely on the trades of very small amounts of Kotva shares on the public markets in the Czech Republic to argue what the fair market price was for the blocks of shares held by CVF. Not only is this completely wrong, *see* Ross Report ¶14, such testimony threatens to lead the jury into a labyrinth of complex market factors. The Kotva stock was so thinly traded on the Czech exchange that the average American investor or juror would likely be confused and find it difficult to understand the lack of relationship between the trading price and value without the assistance of expert testimony. At Andrew Weiss's deposition in January, when the subjects of market values and share prices were broached, it became obvious that the area was complex and perhaps misunderstood. For people who do not have a Ph.D. in economics, or experience in the valuation of companies, many of the issues surrounding the appropriate ways to value CVF's Kotva and Trend shares are opaque.

Memo. at 4-5. First, Kotva is not relying on trades in the Czech securities market as the basis for its claims. Second, as demonstrated below, this is not a new issue. In Defendants' answers to interrogatories signed under oath in July 2006, Weiss asserted that "the market price for the Kotva shares is irrelevant" and that "independent valuations of the Kotva and Trend shares guided Weiss' decision." (Weiss Response to Interrogatory No. 20, dated July 24, 2006).

In any event, this case is not about share valuation and "complex market factors," as the Defendants would have the Court believe. This case is about the Defendants' attempts to blackmail and force Kotva into buying back a block of shares it had no obligation to purchase--at any price. The jurors do not need to have "a Ph.D in economics or experience in the valuation of companies." Indeed, blackmail is simple to understand. Thus, the wrongfulness of Defendants' conduct does not turn upon the precise valuation of the shares they were trying to force Kotva to buy; and no jury will be "lost at sea" when they hear the testimony about what happened. In

3

reality, the only effect of Defendants' proposed expert testimony would be prejudice to Kotva and confusion of the issues, not clarification.

## ARGUMENT

### I.  Defendants' Motion is Untimely and Defendants Have Failed to Show Either Good Cause or Substantial Justification for their Delay

On March 14, 2007, new counsel for Weiss entered an appearance.[1] After apparently reviewing the case, Defendants' new counsel seeks to make strategic changes in the defense:

> When defendants hired new co-counsel, he found the [share valuation] area incomprehensible and concluded that he did not believe a lay juror had a prayer of getting the evidence in this crucial area.

Memo. at 5.  Until March 2007, Defendants had been represented exclusively by counsel from one of the largest law firms in the world.  Defendants' counsel has aggressively litigated this case.  Defendants' counsel presumably considered the extent to which expert testimony was necessary before designating and disclosing its one expert.  An eleventh-hour, internecine disagreement over the sufficiency of the Defendants' evidence does not excuse the Defendants from failing to make timely expert disclosures.  And it certainly does not justify imposing new costs, expenses, and distractions upon Plaintiff in the final weeks before trial.

Defendants admit that under the Rules, expert disclosures "shall be made at least 90 days before the trial date . . . ." Fed. R. Civ. P. 26(a)(2)(C); Memo. at 3.  They further admit that the expert disclosure deadline in this case expired months ago, on October 31, 2006.[2]  Memo. at 3.  That deadline was previously extended sixty days (from the original August 31, 2006 deadline) by joint motion of the parties and the Court's July 26, 2006 Order.  Defendants did not seek any

---

[1] Edward T. Dangel, III, co-signed the Defendants' motion on March 13, 2007 and filed a notice of appearance in this case on March 14, 2007.

[2] Defendants cannot seek shelter in the part of the rule that states, "These disclosures shall be made at the times and in the sequence directed by the court." Fed. R. Civ. P. 26(a)(2)(C).  <u>The Court directed that the disclosures were to be made by October 31, 2006</u>.

4

further extension for expert disclosures. On October 31, 2006, Defendants disclosed one expert, Zdenek Kuhn.[3] Defendants now seek to insert a newly disclosed expert into this case less than thirty days before trial.

Defendants have failed to meet their burden for the relief requested. In opposing Kotva's previous motion, Defendants set forth the relevant test for modifying a scheduling order:

> "A schedule shall not be modified except upon a showing of good cause and by leave of the district judge." Fed. R. Civ. P. 16(b); *see also* Local Rule 16.1(g) ("The scheduling order shall specify that [it] can be modified only by order of the judge . . . and only upon a showing of good cause supported by affidavits, other evidentiary materials, or references to pertinent portions of the record."). . . . "If the party seeking the modification was not diligent, the inquiry should end and the motion to modify should not be granted." *Zikovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (internal quotation marks omitted).

Weiss Parties' October 30, 2006 Opposition to Plaintiff's Motion to Extend Discovery at 3. Now, Defendants do not even attempt to satisfy this standard. They have made no showing of good cause for the delay, they have submitted no affidavits, and they have made no demonstration of diligence.[4]

In fact, Defendants knew about the market price/share valuation issue (for which they now seek to submit expert testimony) since the inception of the lawsuit.

> "Weiss enclosed with the new offer a detailed calculation supporting the valuation of BGO's holdings in both Kotva and Trend." Counterclaim ¶ 31 (**June 15, 2005**); see also Compl. Ex. C (Weiss's **Nov. 23, 2004** letter)

> "Due to lack of trading, the reputation of Forminster, and the questions about whether Forminster will be successful in looting Kotva's assets, **the market price for Kotva shares is irrelevant**. . . .Independent valuations of the Kotva and

---

[3] According to his declaration, Mr. Kuhn intends to provide testimony about Czech criminal law.

[4] Defendants also are estopped from seeking this scheduling deviation by their own prior opposition to extending discovery. See Patriot Cinemas, Inc. v. Gen. Cinema Corp., 834 F.2d 208, 212 (1st Cir. 1987) (application of judicial estoppel warranted when "intentional self-contradiction" is being used to obtain unfair advantage) (citation omitted); Elfman v. Glaser, 313 Mass. 370, 376-377 ("proposition that a litigant cannot assume inconsistent and contradictory positions is established by our decisions."). In October 2006, Defendants successfully opposed Kotva's request to extend discovery by thirty days.

>Trend shares guided Weiss's decision."  Weiss Defendants' Response to Interrogatory 20, **July 24, 2006** (emphasis added).

From the outset, Weiss has been alleging that his price demands were guided by independent valuations (which he has argued were reasonable), and not the market price for the shares (which he believes is irrelevant).  In short, this is not a new issue.  If Defendants wanted or needed an expert on this issue, they should have submitted an expert report in October 2006.

Under Fed. R. Civ. P. 37(c), moreover, there is no substantial justification for Defendants' failure to make timely disclosures in this case.  This case is similar to Gagnon v. Teledyne Princeton, Inc., 437 F.3d 188, 197 (1st Cir. 2006) to the extent that the reason for Defendants' untimely disclosure can reasonably be described as "a miscalculated strategy topped by an inexcusable failure to observe a long-established deadline."  Defendants have the burden of proving there was substantial justification for their failure.  Alves v. Mazda Motor of Am., Inc., 448 F. Supp. 2d 285, 295 (D. Mass. 2006).  They also have the burden of proving that their late disclosures are harmless.  Id.  They have done neither.  Defendants' disclosures were made on the eve of trial, and they do not fall into the limited concept of harmlessness illustrated by the Advisory Committee notes to Rule 37.  Id.  As noted herein, Defendants' late disclosure will result in substantial prejudice to Kotva as it makes its final preparations for trial.  And contrary to Defendants' contention, reopening and expanding expert discovery will very likely require postponement of the presently scheduled trial.

## II. With Trial Four Weeks Away, Reopening and Expanding Expert Discovery Prejudices Kotva's Ability to Prepare for Trial

This case has been pending since April 2005.  The parties are currently preparing the Joint Pretrial Memorandum (due March 28, 2007).  There is a motion hearing on March 29, 2007.  A pretrial conference is scheduled for April 4, 2007.  And there is much to do to get ready

6

for the April trial. Nevertheless, Defendants want to reopen and expand expert discovery to address deficiencies in their case. Simply put, that ship has sailed.

Defendants assert that reopening and expanding expert discovery will result in "no prejudice" to plaintiff. Motion at 2. Time, effort, expense, and distraction from trial preparation apparently do not rise to the level of "prejudice" in Defendants' estimation. When is Kotva expected to locate and retain a rebuttal expert, confer with that rebuttal expert, prepare and file a rebuttal expert disclosure, depose Defendants' proposed expert, and prepare its own expert for deposition, while simultaneously finalizing its preparations for trial? There is no reason why Defendants could not have designated and disclosed additional expert witnesses before the October 31, 2006 deadline. They chose not to do so.

### III.    The Proposed Share Valuation Testimony is of Marginal Relevance

The share valuation issues about which Defendants seek to have their expert testify are not "crucial." Further, Defendants will not be deprived of testimony on the subject without their new expert. Andrew Weiss certainly can testify about this subject. (See Weiss Answer to Interrogatory No. 20, dated July 24, 2006). Indeed, Mr. Weiss devised the valuations that allegedly supported his demands and sent them to Kotva in November 2004. Defendants' true intent, therefore, appears to be the introduction of a "credentialed" expert to parrot the claims of Czech market "corruption," which purportedly form the basis of Weiss's position. In reality, the precise valuation of the shares that Weiss tried to force Kotva to repurchase is ancillary. The primary issue in this case is that Weiss sought to force Kotva to purchase the shares--at any price--or face the consequences of his interference with the department store sale.

### A.  The Testimony of Henry Prestage Has No Bearing on this Issue

Defendants cannot claim that they were somehow placed at a disadvantage because Henry Prestage, a former employee of Markland, the Irish real estate firm that purchased the department store, was not deposed.  Again, this is nothing more than misdirection.  Defendants obtained letters rogatory for the deposition of two Irish nationals in this case, Aidan Scully and Sean Mulryan, the most senior level people at Markland.  For more than two years, Defendants could have--but did not--request letters rogatory for the deposition of Mr. Prestage.  In addition, Markland's counsel advised Defendants that Mr. Prestage had much more relevant information about the negotiations with Kotva than either of Messrs. Scully and Mulryan, and even offered to have Mr. Prestage appear for his deposition voluntarily in exchange for not burdening Mr. Scully about a subject he knows virtually nothing about.  See July 12, 2006 Letter from William Fry to Benjamin Goldberger, attached as Ex 1.  Defendants, however, refused.  Instead of deposing Mr. Prestage, Defendants insisted on the deposition of Mr. Scully, and later Mr. Mulryan, apparently to intimidate or harass Markland's senior management.  In short, Defendants sat on their hands to their own peril.  They cannot cry foul about discovery failings that they created.

### IV.  Defendants Cannot Disclose New Damages Witnesses on the Eve of Trial

Defendants designated only one expert in this case.  They did not designate any expert on the subject of damages.  To the contrary, in response to Plaintiff's damages interrogatory, Defendants identified Andrew Weiss and Georgiy Nikitin (a Weiss employee) as the witnesses who would testify about damages: "The basis for these damages calculations will be established through the testimony of Andrew Weiss and Georgiy Nikitin."  Andrew Weiss's Second Supplemental Response to Kotva's First Set of Interrogatories, Interrogatory No. 18, dated October 20, 2006. Kotva deposed Weiss and WAM about damages.  Defendants never supplemented or changed their interrogatory answer.

8

Defendants now try to add two previously <u>undisclosed</u> witnesses regarding damages. Specifically, Defendants seek to have Bonnie Weiss, <u>Andrew Weiss's wife</u>, provide fact and/or expert testimony about damages. Defendants also seek to call Dr. Ross on the issue of damages. <u>See</u> Ross Report at ¶¶ 19-20. After first mentioning Mrs. Weiss in conjunction with Dr. Ross as a proposed new "expert," Defendants changed their mind. They did not provide an expert disclosure report from Mrs. Weiss. Instead, Defendants' counsel claimed Mrs. Weiss would be called as a "fact" witness, but then left the door open for an expanded role. <u>See</u> March 19, 2007 Letter attached as Ex. 2 ("…Bonnie Weiss, who may testify at trial, <u>primarily</u> as a fact witness on damages.") (emphasis added). When Kotva sought discovery about Weiss's family members who may be investors in the relevant Weiss funds, however, Defendants successfully resisted such discovery.

Neither witness was identified as part of Defendants' initial disclosures or discovery responses. The prospect of Mrs. Weiss testifying was only revealed after Defendants' new co-counsel became involved in the case. Defendants cannot meet their burden of demonstrating substantial justification for their failure to disclose such information. Both newly proposed "damages" witnesses, therefore, should be barred.

**V.    Defendants Cannot Use Fed. R. Evid. 701 to Circumvent Fed. R. Evid. 702 And Submit Expert Testimony They Failed to Timely Disclose**

Defendants' counsel have represented that they believe Fed. R. Evid. 701 permits them to introduce expert testimony through fact witnesses, and that they may try to elicit proposed expert testimony from Dr. Ross, <u>an investor in Weiss's funds,</u> as a "fact witness." <u>See</u> March 19, 2007 Letter attached as Ex. 3 ("Dr. Ross may testify at trial as a fact witness with respect to his experience with Andrew Weiss and his experience with efforts to raise investment funds, and

9

also as a character witness[5] familiar with Mr. Weiss's reputation in the relevant communities.")

The opinion testimony contemplated by Rule 701, however, is not so broad:

> Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing. Under the amendment, a witness' testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702. By channeling testimony that is actually expert testimony to Rule 702, the amendment also ensures that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 and Fed. R. Civ. P. 16 by simply calling an expert witness in the guise of a layperson.

Advisory Committee's Note to 2000 Amendment to Fed. R. Evid. 701 (citations omitted). In other words, Rule 701 is not a backdoor for the admission of expert testimony that a party fails to disclose.

Defendants have also indicated that they might offer expert testimony from Andrew Weiss and two of his employees, Georgiy Nikitin and Eitan Milgram, assuming they were called as fact witnesses.

> Assuming that one or more of [Andrew Weiss, Georgiy Nikitin and Eitan Milgram] testifies at trial as a fact witness, it is possible that we may use them to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence as well.

October 31, 2006 Letter attached as Ex. 4. Defendants never provided any expert disclosure reports for these purported experts, however, and none of them may testify as "experts" at trial. In short, Defendants cannot elicit Rule 702 "expert" testimony from fact witnesses through the mechanism of Rule 701. To the extent that Defendants intend to employ this tactic for any of

---

[5] It is black letter law that the character evidence Defendants contemplate is not admissible. See Fed. R. Evid. 404; see also Whitney v. Lynch, 222 Mass. 112, 116 (1915) (in fraud case involving the sale of stock, "reputation of the defendant for honesty and fair dealing was inadmissible."). Kotva will be filing a motion in limine to exclude such evidence.

10

their proposed witnesses, including Bonnie Weiss, Dr. Ross, Eitan Milgram, Georgiy Nikitin, and Andrew Weiss, Plaintiff objects and is moving in limine to exclude such testimony.

## CONCLUSION

For the foregoing reasons, Defendants' motion to add an expert should be denied in its entirety.

Respectfully submitted,

KOTVA A.S. AND RICHARD HARAZIM

By their attorneys,

/s/ Joel G. Beckman
Joel G. Beckman (BBO# 553086)
Daniel J. Pasquarello (BB0# 647379)
NYSTROM BECKMAN & PARIS LLP
10 St. James Ave., 16th Floor
Boston, Massachusetts 02116
(617) 778-9100
(617) 778-9110 (fax)

Dated: March 27, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 27th day of March, 2007.

/s/ Daniel J. Pasquarello



# William Fry

Our Ref    016226.0054.MJK                                              12 July 2006

**By fax and post**

Attention: Benjamin A. Goldberger

McDermott Will & Emery
28 State Street
Boston
Massachusetts 02109 - 1775

**Kotva a.s. v. Andrew Weiss and Weiss Asset Management, LLP**

Dear Sirs

We refer to your letter of 30 June.

Your clients wish to take evidence from Mr. Mulryan regarding Markland's purchase of the Kotva Department Store because "according to the evidence provided by Aidan Scully, Mr. Mulryan was present at a number of important meetings concerning the purchase of this building".

This misrepresents Mr. Scully's testimony. Mr. Mulryan does not have any relevant evidence to the matters at issue in the above proceedings. Indeed, Mr. Scully's evidence confirms this fact, notwithstanding your representations to the contrary. Mr. Mulryan is not referred to by name at any time during Mr. Scully's deposition. In particular, Mr. Mulryan had no involvement in the negotiation of the deal by which the Kotva Department Store was purchased. Mr. Scully makes reference to only a single meeting attended by Mr. Mulryan.

In short, and as your clients can no doubt confirm, Mr. Mulryan has never met with nor spoken to any of the parties to this litigation or their representatives. The negotiations for the purchase of the Department Store were carried out on Markland's behalf by Henry Prestage, Frank Walker and Markland's Czech attorney, Bryan Wilson of Linklaters. Tellingly, you have not yet sought to take evidence from any of these individuals.

We also understand that Mr. Weiss' claims have been dismissed by the Federal Court in Boston. Furthermore, the documents produced to date in the underlying case establish that Mr. Mulryan had no involvement in the negotiation of the purchase of the Kotva Department Store.

William Fry, Solicitors, Fitzwilton House, Wilton Place, Dublin 2, Ireland    DX23 Dublin
T: +353-1-639 5000  F: +353-1-639 5333  E: info@williamfry.ie  W: www.williamfry.ie

Also at 300 Park Avenue - Suite 1700, New York, NY 10022

A list of partners appears on the reverse
**In association with Tughans, Northern Ireland**

In the circumstances, Mr. Mulryan will not agree to give evidence. Any effort to oblige him to be deposed will be resisted. Such a deposition is unnecessary, not relevant to the matters at issue and will force Mr. Mulryan to incur significant legal, management and other costs. Your efforts to take evidence from Mr. Mulryan is nothing more than an effort to harass him. If your clients nonetheless seek to apply to depose Mr. Mulryan, you should do so on notice to this firm so that we are given an opportunity to raise our client's objections before the appropriate forums.

Yours faithfully

William Fry

WF-606594-v3

# McDermott
# Will & Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Benjamin A. Goldberger
bgoldberger@mwe.com
617.535.4483

March 19, 2007

VIA E-MAIL AND U.S. MAIL

Joel G. Beckman, Esq.
Nystrom Beckman & Paris LLP
10 St. James Avenue, 16th Floor
Boston, MA 02116

Re:   Kotva a.s. v. Andrew Weiss et al., C.A. No. 05-10679-RCL

Dear Joel:

I know you have told Terry that you may still want to depose Bonnie Weiss, who may testify at trial, primarily as a fact witness on damages. If that is the case, please propose some dates.

Mrs. Weiss's address is:

Bonnie Weiss
Weiss Capital LLC
29 Commonwealth Avenue
10th Floor
Boston, MA 02116
617.778.7780

Truly,

Benjamin A. Goldberger
cc:   Edward T. Dangel, III
      Edward P. Leibensperger

BST99 1534956-1 072198.0012

U.S. practice conducted through McDermott Will & Emery LLP.
28 State Street Boston, Massachusetts 02109-1775 Telephone: 617.535.4000 Facsimile: 617.535.3800 www.mwe.com

# McDermott Will & Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D C

Benjamin A. Goldberger
bgoldberger@mwe.com
617.535.4483

March 19, 2007

VIA E-MAIL AND U.S. MAIL

Joel G. Beckman, Esq.
Nystrom Beckman & Paris LLP
10 St. James Avenue, 16th Floor
Boston, MA 02116

Re:   Kotva a.s. v. Andrew Weiss et al., C.A. No. 05-10679-RCL

Dear Joel:

As Terry wrote in his email yesterday, Dr. Ross may testify at trial as a fact witness with respect to his experience with Andrew Weiss and his experience with efforts to raise investment funds, and also as a character witness familiar with Mr. Weiss's reputation in the relevant communities.

Professor Ross's address is:

Stephen A. Ross
MIT Sloan School of Management
50 Memorial Drive, E52-443
Cambridge, MA 02142
617.258.8371

Truly,

Benjamin A. Goldberger
cc:   Edward T. Dangel, III
      Edward P. Leibensperger

BST99 1535180-1 072198.0012

U.S. practice conducted through McDermott Will & Emery LLP.
28 State Street Boston, Massachusetts 02109-1775  Telephone: 617.535.4000  Facsimile: 617.535.3800  www.mwe.com

# McDermott
# Will & Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Benjamin A. Goldberger
bgoldberger@mwe.com
617 535 4483

October 31, 2006

BY ELECTRONIC MAIL AND FIRST CLASS MAIL

Joel G. Beckman
Nystrom Beckman & Paris LLP
10 St. James Ave., 16th Floor
Boston, MA 02116

Re: <u>Kotva a.s. v. Andrew Weiss et al.</u>, C.A. No. 05-10679-RCL

Dear Joel:

Pursuant to Federal Rule of Civil Procedure 26, enclosed please find the expert report of Zdeněk Kühn. Professor Kühn may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.

Additionally, you have noticed depositions of Andrew Weiss, Georgiy Nikitin and Eitan Milgram. Assuming that one or more of these individuals testifies at trial as a fact witness, it is possible that we may use them to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence as well. Accordingly, we are disclosing their identities to you pursuant to Federal Rule of Civil Procedure 26(a)(2)(A).

Truly,

Benjamin A. Goldberger
cc: Edward P. Leibensperger (w/out enclosure)

BST99 1521387-1 072198 0012