UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ANDREW WEISS and WEISS ASSET ) | |
| MANAGEMENT, LLC, ) | |
| ) | |
| Defendants. ) | C.A. No. 05-10679-WGY |
| ) | |
| ANDREW WEISS and WEISS ASSET ) | |
| MANAGEMENT LLC, ) | |
| ) | |
| Counterclaim-plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| KOTVA a.s. and RICHARD HARAZIM, ) | |
| ) | |
| Counterclaim-defendants. ) | |

## OPPOSITION TO MOTION FOR LEAVE TO FILE SUPPLEMENT

Kotva's "Motion for Leave to File Supplemental Brief" is nothing more than a back door attempt to amend without facing Rule 15 and Rule 11 scrutiny. The documents it seeks to put in front of the Court are suspect, to say the least. Kotva seeks to resurrect its flawed Complaint by asking the Court to rely on documents which were submitted for the first time, two weeks ago, after the depositions of the alleged signatories were taken. The key documents, the assignments, state that they were created "as of" October 4, 2004. They have no date of execution. They purport to be assignments from one corporation to another. But, as stated below one of the

assignors was not a corporation at all, and one of the assignees, as of this moment, has no legal existence—although that is being questioned in the Czech Republic.

These documents surfaced in a suspicious manner, and bear several indicia of lack of authenticity and, perhaps, an attempt to defraud. For whatever reasons, Kotva, fully aware of Defendants' pending Motion for Judgment on the Pleadings for almost one year, has deliberately refused to submit SPV CO to the jurisdiction of this Court. The Court should reject Kotva's continued shell game, deny the Motion for Leave, and grant Defendants' Motion for Judgment on the Pleadings.

**I.      THE PROCEDURAL HISTORY OF THIS CASE WAS SHAPED IN LARGE PART BY THE DECISION TO HAVE KOTVA SERVE AS THE PLAINTIFF WHILE SPV CO HID IN ITS OFFSHORE HAVEN**

Kotva filed its Complaint on April 6, 2006. On June 15, 2006, the Weiss Parties filed their First Amended Answer and Counterclaim against, among others, Kotva and SPV CO. SPV CO is a Cyprus company. In order to serve SPV CO, the Weiss Parties had to obtain certified translations of the Complaint and Summons into Greek (rather than Czech) and, through the Hague Convention, have a bailiff personally serve the company at its registered address in Nicosia, Cyprus. Due to the delays inherent with such a procedure, service was effected on January 12, 2006.

On August 1, 2005, the Weiss Parties served written discovery on Kotva. In direct contravention of Rule 34, Kotva refused to produce *any documents at all* unless the Weiss Parties would agree to a confidentiality order. The Weiss Parties filed a motion to compel. On January 6, 2006, the Discovery Master allowed the motion to compel and ordered Kotva to produce documents by January 17, 2006. Kotva did not produce the assignments or inter-company agreement attached to its Supplemental Brief.

On February 17, 2006, Richard Harazim stated under oath in response to an interrogatory that any agreement between Kotva, Kotva Nemovitosti and SPV CO "may be ascertained or derived from Kotva's annual reports, which identify any such inter-company agreements and/or allocation of revenues and expenses to the extent such allocations occurred." Exhibit A at 7. Czech counsel for the Weiss Parties has reviewed both the 2004 and 2005 annual reports of Kotva, and no reference to the now-tendered assignments or inter-company agreement can be found. Kotva has never supplemented, added to or subtracted from this interrogatory response.

On February 21, 2006, Mr. Beckman—counsel for Kotva—filed a motion to dismiss on behalf of SPV CO on the grounds that this Court lacked personal jurisdiction over SPV CO, which was a separate corporate entity from Kotva. In support of this Motion, Mr. Beckman argued:

> The Counterclaim Plaintiffs must prove that the Court has personal jurisdiction over *each individual defendant*, including SPV Co.

> \* \* \* \*

> Nor has SPV Co. been involved in the criminal complaint or civil litigation against Weiss and Weiss and WAM, respectively

> \* \* \* \*

> Contrary to counterclaim-plaintiffs' blanket jurisdictional allegation, SPV Co. did not file this suit—Kotva did.

> \* \* \* \*

> SPV Co. is a wholly-owned subsidiary of a wholly-owned subsidiary of Kotva. Kolibal Decl. at ¶4. The mere fact that SPV Co is ultimately owned by Kotva does not subject it to jurisdiction in this Court. The parent-subsidiary relationship alone does not destroy the principle of corporate separateness and the requirement that jurisdiction over SPV Co. must be demonstrated. The notion that SPV Co. could twist the parent-subsidiary relationship in such a way that Kotva served as SPV Co.'s agent and/or alter ego as alleged in this case is also unsupported.10 Counterclaim-plaintiffs have provided no evidence to demonstrate that SPV Co. is subject to the jurisdiction of this Court under any theory.

SPV CO's Mem. in Support of Motion to Dismiss at 2, 4, 7, 9–10 (emphasis in original; citations omitted).

One of SPV CO's directors also submitted a declaration, sworn under the pains and penalties of perjury, in support of SPV CO's motion to dismiss, stating:

> SP CO has never initiated a lawsuit in any Massachusetts court.

> * * * *

> SPV CO has no knowledge of or any involvement in any negotiations that Richard Harazim or Martin Benda may have had with Andrew Weiss or Weiss Asset Management regarding the purchase of shares of Kotva.

> SPV CO has never been contacted by Weiss Asset Management, LLC, or Andrew Weiss regarding an offer to buy Kotva shares

> SPV CO did not instruct Kotva, Richard Harazim, or Martin Benda to file a lawsuit or criminal complaint against Weiss Asset Management, LLC or against Andrew Weiss.

Kolíbal Declaration, ¶¶ 9, 14–16

In Opposition to SPV CO's motion, the Weiss Parties specifically raised the argument that SPV CO and Kotva were alter egos. *See* Opp. at 9–11. The Court rejected this argument and, on June 14, 2006, applying the prima facie standard for motions to dismiss for lack of personal jurisdiction, the Court allowed SPV CO's Motion to Dismiss.

As a result of the Court's June 14, 2006 Order, counterclaim-plaintiffs K T, Inc. and CVF Investments Ltd. sought to voluntarily dismiss their remaining counterclaims, writing:

> In view of the Court's June 14, 2006 Order relating to personal jurisdiction, there is a serious question as to whether this Court can afford the Shareholder Parties complete relief with respect to Counts VI or VIII. Forminster—which claims to own the Kotva shares at issue—is no longer a party. The proceeds of the purported sale of Kotva's assets were received by SPV CO, which is no longer a party. Although the Court could award damages against Kotva under Count II of the Counterclaim, the Shareholder Parties do not want to pursue that claim in this Court without the other counterclaim-defendants present. Accordingly, the Shareholder Parties seek to dismiss their counterclaims in this action without prejudice to pursuing those claims in any other forum (some similar claims are

pending in the Czech courts) or appealing the Court's decision with respect to personal jurisdiction.

Motion of K T, Inc. and CVF Investments Ltd. to Dismiss Their Counterclaims Without Prejudice at 3.

On April 4, 2006, the Defendants filed a motion for judgment on the pleadings. On May 23, 2006 Kotva filed an Opposition, in which it sought to masquerade as another company (Kotva Nemovitosti) in an effort to mislead the Court about the contents of the very Share Purchase Agreement that figures so heavily in its Complaint. *See* Defs.' Reply at 1–2. Kotva did not mention any assignments in its Opposition or otherwise raise the issue with the Court or with the Defendants.

In early March 2007, Kotva suggested that it might be willing to agree to allow the Defendants to add an expert witness if Defendants would drop their argument that Kotva could not claim damages for any losses suffered by SPV CO. On March 15, 2007, with no explanation, Kotva produced for the first time the assignments and inter-company agreement attached to its Motion for Leave.

On March 29, 2007, the Court held a hearing on Defendants' Motion for Judgment on the Pleadings. Counsel for Kotva spoke first. Rather than bring the assignments and inter-company agreement to the Court's attention, counsel for Kotva continued to press his fundamentally flawed argument that Kotva could claim damages suffered by SPV CO because they were part of the same corporate group.

The day after the hearing, Kotva filed the present Motion for Leave, which the Defendants oppose.

## II.    THE ASSIGNMENT DOCUMENTS ARE SUSPECT

The purported assignments bear a number of indicia of an attempt to defraud.

5

- The assignments are undated, but purport to be dated "as of" October 4, 2004. Counsel for Kotva now states in the Motion for Leave that the documents were executed October 24, 2004, but there is no affidavit from any party with personal knowledge of this fact. In reality, the documents were most likely created within the past few months. How else to explain Kotva's failure to produce the documents until March 15, 2007 and Mr. Harazim's interrogatory response, under oath, that any inter-company agreements were listed in Kotva's annual report, but, in fact, there was no mention of any such assignments.

- The second assignment is executed by "Martin Benda, Its: director." However, Martin Benda has not been a director of SPV CO since March 7, 2005. *See* Exhibit B at 3. Thus, if this assignment was executed after that date, it is invalid, since Mr. Benda was no longer a director.

- The second assignment (from SPV CO) to "Kotva Nemovitosti a.s." purports to assign claims to a company that, as of October 12, 2004, no longer existed. In the Czech parlance "a.s." is the designation for a joint stock company, much like the American "Inc." and "k.s." is the designation for a limited partnership, much like the American "L.P." or "Ltd." By October 2004, Kotva Nemovitosti was no longer a joint stock company—it was a limited partnership. *See* Exhibit C. *See also* Exhibit A to Motion for Judgment on the Pleadings at 1.

- The first assignment (from Kotva Nemovitosti) is executed by "Richard Harazim Its: CEO." Limited partnerships, like Kotva Nemovitosti k.s., do not have CEOs. Rather, they take action through a general (or "unlimited") partner. In the case of Kotva Nemovitosti, k.s., that is Kotva Spravcovska a.s. or Kotva Obchodni a.s., which is represented by its director or directors. *See* Exhibit C. It appears that Mr. Harazim is not even one of Kotva Obchodni's directors, let alone Kotva Nemovitosti's non-existent "CEO". *See id.* Thus, this first assignment is invalid as well, regardless of when it was executed.[1]

It appears that Kotva is again trying to have it both ways. It has manufactured evidence in an attempt to convince this Court that only Kotva a.s. need submit to this Court's jurisdiction, while ensuring that the evidence offers them plausible deniability that any assignment occurred should any Czech government authority, including regulators or taxing authorities, inquire.

---

[1] If executed after the deletion of Kotva a.s. from the Commercial Register, it is likely invalid for that reason as well.

III.  **IT WOULD BE UNFAIR TO ALLOW KOTVA TO USE THESE SUSPECT ASSIGNMENTS AND ALTER ITS THEORY OF THE CASE AT THIS LATE DATE**

Given the suspicious nature of these documents and Kotva's assertion that discovery has closed, it would be unfair to permit Kotva to use these documents for the Court to consider them in ruling on the Motion for Judgment on the Pleadings or for Kotva to be able to use those documents at trial.  Defendants have no opportunity to again depose Mr. Benda who allegedly executed one of the assignments or Mr. Harazim who allegedly executed the other assignment. Kotva has not produced the books and records of any of the three companies that would indicate whether these "assignments" were actually recorded by the companies.  Moreover, Kotva successfully argued that it lacks the time to obtain an expert on valuation.  Likewise, Defendants lack the time to get a new expert on the authenticity of the assignment documents.

"The fate of a motion to dismiss under Rule 12(b)(6) ordinarily depends on the allegations contained within the four corners of the plaintiff's complaint." *Young v. Lepone*, 305 F.3d 1, 10–11 (1st Cir. 2002).  Although there are exceptions for documents of unquestioned authenticity referenced in or attached to the Complaint, the assignments at issue here meet neither test.  The Complaint does not reference them or even allow for the possibility that they exist.  Moreover, Defendants contest their authenticity.

This is not, as Kotva suggests, a "real party in interest" issue.  It is a question of whether a corporation that has a partnership interest in a partnership that owns a second corporation has standing to claim damages suffered by that second corporation.  Controlling precedent answers this question in the negative.  At stake is not just double liability for Defendants, but also whether a cash-rich corporation like SPV CO can shield its assets from counterclaims by assigning its claims to Kotva and then claim that it is a separate legal entity not subject to the jurisdiction of the Court.

7

In view of Kotva's failure to plead the assignments, Kotva's failure to produce the assignments and the suspect nature of the assignments themselves, the Court should deny Kotva's Motion and enter judgment on the pleadings against Kotva.

Respectfully Submitted,

ANDREW WEISS and WEISS ASSET MANAGEMENT LLC

By their attorneys,

/s/ Benjamin A. Goldberger
Edward P. Leibensperger (BBO# 292620)
Benjamin A. Goldberger (BBO# 654357)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts 02109-1775
(617) 535-4000

Edward T. Dangel, III (BBO#113580)
Dangel & Mattchen, LLP
10 Derne Street
Boston, MA 02114
(617) 557-4800

Dated:    March 30, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system and all attachments will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 30, 2007.

/s/ Benjamin A. Goldberger
Benjamin A. Goldberger

BST99 1536359-3.072198.0012

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KOTVA a s | ) ) ) | |
| Plaintiff, | ) ) | Case No  05-10679-RCL |
| v. | ) ) ) | |
| ANDREW WEISS and WEISS ASSET MANAGEMENT, LLC | ) ) ) | |
| Defendants. | ) ) ) | |

## OBJECTIONS AND RESPONSES OF KOTVA A.S. TO DEFENDANTS' THIRD SET OF INTERROGATORIES

Pursuant to Fed. R  Civ. P  33, Local Rule 33 1, Plaintiff, Kotva, a s  ("Kotva") hereby responds to the Third Set of Interrogatories of Defendants Andrew Weiss and Weiss Asset Management, LLC (collectively "Weiss")

## GENERAL OBJECTIONS

I.      Kotva objects to each interrogatory to the extent it seeks information that is beyond the scope of Rules 26 or 33 of the Federal Rules of Civil Procedure, is beyond the proper scope of discovery because of the attorney client relationship, prepared in anticipation of litigation or trial or constitutes attorney work product, or is otherwise immune from discovery.

II.      In providing answers to these interrogatories, Kotva does not in any way waive or intend to waive but rather intends to preserve the following:

    a.      All objections as to competency, relevancy, materiality and admissibility;

b    All rights to object on any ground to the use of any of the Answers herein, including the trial of this or any other action;

c.    All objections as to vagueness or ambiguity; and

d.    All rights to object on any ground to any further interrogatories or other discovery requests involving or related to any of the interrogatories in Weiss' First Set of Interrogatories.

III    Privileged information responsive to any interrogatory below is not being provided  Kotva does not waive, and intends to preserve and is preserving the attorney client privilege, the work product doctrine, and every other privilege with respect to each and every answer, document or other repository of information protected by such a privilege.

IV.    Kotva objects to the Instructions and/or Definitions contained in the Interrogatories to the extent that they attempt to impose obligations on Kotva that are inconsistent with and/or in addition to those required under the Federal Rules of Civil Procedure and the Local Rules

V.    Kotva objects to the Interrogatories to the extent each interrogatory contains several subparts and therefore exceeds the number of interrogatories permitted under Fed. R. Civ. P. 33(a)

VI.    Kotva objects to the Interrogatories to the extent that they demand production of any information containing any confidential, proprietary and/or trade secret information.

VII.    Kotva's answers to the Interrogatories are qualified by the General Objections. Failure to restate any General Objection in response to a particular interrogatory does not

2

constitute a waiver of such General Objection  By responding to these Interrogatories, Kotva

does not waive any asserted objection

## Interrogatory No. 1

Please identify the legal and beneficial owners of an interest, including shares of stock or a partnership interest, in each of the Listed Companies, for the period from January 1, 2000 until to present

## Response to Interrogatory No. 1

Kotva objects to this interrogatory to the extent it is overly broad, unreasonable, unduly

burdensome, seeks irrelevant information, and is not reasonably calculated to lead to the

discovery of admissible evidence. Plaintiff further objects to this interrogatory to the extent it

seeks information concerning entities unaffiliated with Plaintiff  Plaintiff also objects to the

extent this interrogatory has been previously asked and fully responded to by Plaintiff  (See

Defendants' Second Set of Interrogatories, No. 1 and response thereto)  Subject to the foregoing

General and Specific Objections, Plaintiff responds as follows:

a.    Forminster Enterprises. Ltd.

Unknown

b.    Kotva. a.s.

Kotva's approximately 694,209 shares are publicly traded on the Czech securities market,

and there are currently approximately 7,700 shareholders  Given that Kotva's shares are publicly

traded, Kotva's ownership changes regularly  Shareholders currently owning more than 10% of

Kotva's outstanding shares are:

| | | |
|---|---|---|
| Forminster Enterprises Limited/Sprint | 385,038 shares | 55 74% |
| Ardmore Risk Management Limited | 97,753 shares | 14.08% |

HSBC Bank plc                    81,082 shares              11.92%

Kotva cannot identify those persons who have an "indirect ownership interest" in Kotva's shares

     b    <u>Kotva Nemovitosti ("KN")</u>

Kotva owns 100% of KN

     c.    <u>SPV KN</u>

Pursuant to the Share Purchase Agreement with Markland, (which has been produced to

Defendants) SPV KN was sold to Markland in connection with the department store sale in 2005,

and Plaintiff does not know the current ownership status of SPV KN

     d.    <u>SPV Co., Ltd. "(SPV")</u>

SPV is owned 100% by KN. In further answering, see response to Interrogatory 1(c) and

the documents produced in response to Defendants' document requests (Bates No. K5106)

     f-j.    Unknown. Interrogatory 1(f-j) seeks information regarding entities that have no

relationship to Plaintiff, and Plaintiff has no information or documents responsive to this

interrogatory concerning such entities

     k.    <u>Kotva správcovská a.s.</u>

K Spra is owned 100% by Kotva Parking s.r.o

     l.    <u>Kotva obchodni' a.s. ("KO")</u>

Kotva owns 100% of KO.

     m.    <u>Kotva Parking s.r.o. ("KP")</u>

Kotva owns 100% of KP.

     n.    <u>Kotva International, Ltd. ("KI")</u>

Kotva sold KI sometime ago and the current status is not known of Kotva. Kotva will

supplement its answer if information responsive to this interrogatory is discovered

<u>Interrogatory No. 2</u>

Please identify the directors, officers and managers of the Listed Companies, for the period from January 1, 2000 until the present

<u>Answer No. 2</u>

Kotva objects to this interrogatory to the extent it is overly broad, unreasonable, unduly burdensome, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this interrogatory to the extent the information is publicly available to Defendants. Subject to the foregoing General and Specific Objections, Plaintiff responds as follows: Pursuant to Fed R. Civ P. 33(d), with respect to the Kotva owned Czech entities (i.e. Kotva a.s.; Kotva Nemovitosti; Kotva Správcovská a s ; Kotva Obchodni a s ; Kotva Parking s r o.), the identities of individuals who served as officers, directors and managers since 2000 may be ascertained from Kotva's annual reports, which will be produced to Defendants.

The directors, officers and managers of SPV C O. are as follows:

Marek Kolíbal
SPVCO
Pavlou 15
Ledra House
Aglos Andreas
P C. 1105
Nicosia, Cyprus


Paraskevas Zacharoullis
SPVCO
Pavlou 15
Ledra House
Aglos Andreas
P.C. 1105
Nicosia, Cyprus

Elena Makrigiorgi
SPVCO
Pavlou 15
Ledra House
Aglos Andreas
P.C. 1105
Nicosia, Cyprus

## Interrogatory No. 3

Please identify all documents, including but not limited to meeting minutes, concerning any meetings of shareholders, directors or supervisory board members of the Listed Companies at which one or more of the following topics was discussed: (a) the sale or potential sale of the Department Store; (b) the value of the Department Store; (c) the value of Kotva a.s. or its shares; (d) any transfer of the Department Store or an entity owning the Department Store from one person to another; (e) Weiss, WAM, K.T, Inc. or CVF Investments, Ltd., Weiss Capital LLC or Vladimir Hoffmann; (f) this lawsuit; (g) criminal complaints or proceedings in the Czech Republic in which Andrew Weiss, Vladimir Hoffman or Edita Simkova are defendants or potential defendants, or (h) Kotva's relationship with Forminster Enterprises Ltd.

## Answer No. 3

Kotva objects to this interrogatory to the extent it is overly broad, unreasonable, unduly

burdensome, seeks irrelevant information, and is not reasonably calculated to lead to the

discovery of admissible evidence. Notwithstanding the foregoing General and Specific

Objections, Plaintiff responds as follows: Plaintiff has produced the documents identified in

Interrogatory No. 3 and, pursuant to Fed. R. Civ. P. 33(d), the answer to this interrogatory may

be ascertained or derived from the documents produced by Plaintiffs in response to Defendants'

document requests.

## Interrogatory No. 4

Please identify any describe in detail all agreements between and among the Listed Companies from the period January 1, 2000 to the present, including but not limited to, any promissory notes, loans, mortgages, security interests, option agreements, other contracts, and agreements on inter-company allocation of revenues or expenses.

6

## Answer No. 4

Kotva objects to this interrogatory to the extent it is overly broad, unreasonable, unduly

burdensome, seeks irrelevant information, and is not reasonably calculated to lead to the

discovery of admissible evidence. Notwithstanding the foregoing General and Specific

Objections, Plaintiff responds as follows: Pursuant to Fed. R. Civ. P. 33(d), the answer to this

interrogatory may be ascertained or derived from Kotva's annual reports, which identify any

such inter-company agreements and/or allocation of revenues and expenses to the extent such

allocations occurred.

## Interrogatory No. 5

Please identify any powers of attorney issued by one or more of the Listed Companies,
including but not limited to powers of attorney naming Miroslav Hálek, for the period from
January 1, 1996 to the present.

## Answer No. 5

Kotva objects to this interrogatory to the extent it is overly broad, unreasonable, unduly

burdensome, seeks irrelevant information, and is not reasonably calculated to lead to the

discovery of admissible evidence. Plaintiff further objects to this interrogatory to the extent

Defendants seek documents dating back to 1996, which is beyond the scope of discovery

permitted by the Discovery Master. Notwithstanding the foregoing General and Specific

Objections, Plaintiff is unaware of any powers of attorney naming Miroslav Hálek from 2000 to

the present.

## Interrogatory No. 6

For each and every interrogatory response in which Kotva claims that it is unable to
answer, in whole or in part, please describe in detail the efforts Kotva took to gather responsive
information.

**Answer No. 6**

Plaintiff is able to and has fully answered the foregoing interrogatories

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY ON THIS ___ DAY OF
FEBRUARY, 2006.

_____
Richard Harazim

As to objections:

_____
Joel G. Beckman (BBO #553086)
William C. Nystrom (BBO# 559656)
Daniel J. Pasquarello (BBO# 647379)
NYSTROM BECKMAN & PARIS LLP
10 St. James Avenue, 16th Floor
Boston, Massachusetts 02116
(617) 778-9100
(617) 778-9110 (fax)

Dated: February 17, 2006

## CERTIFICATE OF SERVICE

I, Daniel Pasquarello, hereby certify that on February 17, 2006 I caused and a true copy
of the foregoing document to be served by email and First Class mail postage pre-paid upon all
counsel of record

_____
Daniel Pasquarello

8

**SPV CO. LTD**
REPORT AND FINANCIAL STATEMENTS
31 December 2005

K 6398

k006398

# SPV CO. LTD

REPORT AND FINANCIAL STATEMENTS
31 December 2005

## CONTENTS

| | PAGE |
|---|---|
| Board of Directors and other officers | 1 |
| Report of the Board of Directors | 2 |
| Auditors' report | 3 |
| Statement of operations | 4 |
| Balance sheet | 5 |
| Statement of changes in equity | 6 |
| Cash flow statement | 7 |
| Notes to the financial statements | 8 - 15 |
| Additional information to the income statement | 16 - 17 |

K 6399

K006399

# SPV CO. LTD

## BOARD OF DIRECTORS AND OTHER OFFICERS

| | |
|---|---|
| **Board of Directors:** | Malek Kolibal (appointed 7 March 2005)<br>Paraskevas Zacharoullis (appointed 27 May 2004)<br>Elena Makrigiorgi (appointed 7 March 2005)<br>Martin Benda (appointed 27 May 2004 and retired 7 March 2005)<br>Evangelos Gregoriou (appointed 27 May 2004 and retired 7 March 2005) |
| **Company Secretary:** | Paraskevas Zacharoullis<br>Karaiskaki 8<br>Aradippou<br>Larnaca, Cyprus |
| **Auditors:** | BDO Philippides Ltd<br>Chartered Accountants<br>70 JF Kennedy Avenue<br>Papabasiliou House, 2nd floor<br>P O Box 27007<br>1641 Nicosia, Cyprus |
| **Registered Office:** | Agiou Pavlou 15<br>Ledra House, Agios Andreas<br>CY-1105 Nicosia<br>Cyprus |

# SPV CO. LTD

## REPORT OF THE BOARD OF DIRECTORS

The Board of Directors presents its report together with the audited financial statements of the Company for the year ended 31 December 2005

**Principal activities**
The principal activities of the Company, which are unchanged from last year, are those of an investment company

**Review of current position and future developments**
The current financial position as presented in the financial statements is considered satisfactory. The Board of directors does not expect major changes in the principal activities of the Company in the forseeable future

**Results**
The Company's results for the year are set out on page 4. The net loss for the year is carried forward

**Share capital**
By special resolution of the members dated 17 May 2005 the capital of the company was reduced by 19 shares of nominal value 10 million each. The shares were redeemed at par

**Board of Directors**
The members of the Board of Directors of the Company as at 31 December 2005 and at the date of this report are shown on page 1. Mr Evangelos Gregoriou and Mr Martin Benda, who were appointed on incorporation, resigned on 7 March 2005 and Mr Marek Kolibal and Mrs Elena Makrigiorgi were appointed in their stead. Mr Paraskevas Zacharoullis was appointed on 27 May 2004

In accordance with the Company's Articles of Association all directors retire and being eligible, offer themselves for re-election

**Auditors**
The auditors, BDO Philippides Ltd have expressed their willingness to continue in office and a resolution giving authority to the Board of Directors to fix their remuneration will be proposed at the Annual General Meeting

By order of the Board of Directors



Elena Makrigiorgi
Director

Nicosia, Cyprus 14 April 2006

2

K 6401

K006401

## AUDITORS' REPORT TO THE MEMBERS OF SPV CO. LTD

**Report on the financial statements**

1. We have audited the financial statements of SPV CO. LTD on pages 4 to 15, which comprise the balance sheet as at 31 December 2005 the statement of operations. statement of changes in equity and cash flow statement for the year then ended  and the related notes These financial statements are the responsibility of the company's Board of Directors  Our responsibility is to express an opinion on these financial statements based on our audit  This report is made solely to the Company's members. as a body. in accordance with Section 156 of the Companies Law, Cap. 113  Our audit work has been undertaken so that we might state to the Company's members those matters we are required to state to them in an auditor's report and for no other purpose  To the fullest extent permitted by law, we do not accept or assume responsibility to anyone other than the Company and the Company's members as a body. for our audit work. for this report. or for the opinions we have formed

2. We conducted our audit in accordance with International Standards on Auditing  Those Standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement  An audit includes examining, on a test basis. evidence supporting the amounts and disclosures in the financial statements  An audit also includes assessing the accounting principles used and significant estimates made by the Board of Directors as well as evaluating the overall presentation of the financial statements  We believe that our audit provides a reasonable basis for our opinion

3. In our opinion the financial statements give a true and fair view of the financial position of SPV CO. LTD as at 31 December 2005 and of its financial performance and its cash flows for the year then ended in accordance with International Financial Reporting Standards as adopted by the EU and International Financial Reporting Standards as issued by the IASB and the requirements of the Cyprus Companies Law. Cap. 113

**Report on other legal requirements**

4. Pursuant to the requirements of the Companies Law. Cap. 113. we report the following:
- We have obtained all the information and explanations we considered necessary for the purposes of our audit
- In our opinion. proper books of account have been kept by the Company
- The Company's financial statements are in agreement with the books of account
- In our opinion and to the best of our information and according to the explanations given to us. the financial statements give the information required by the Companies Law. Cap. 113  in the manner so required
- In our opinion. the information given in the report of the Board of Directors on page 2 is consistent with the financial statements

Nicosia, Cyprus. 14 April 2006

**BDO Philippides Ltd**
**Chartered Accountants**

K 6402

K006402

# SPV CO. LTD

## STATEMENT OF OPERATIONS
Year ended 31 December 2005

| | Note | 2005 CZK | 2004 CZK |
|---|---|---|---|
| Revenue | 4 | (10,275,971) | - |
| Other income | 5 | 1,743,722 | . |
| Administration expenses | | (17,131,706) | (347,183) |
| Other expenses | 6 | (547,000,000) | (1,358,313) |
| Operating loss | 7 | (572,663,955) | (1,705,496) |
| Finance costs | 8 | (39,613) | (330) |
| Loss before tax | | (572,703,568) | (1,705,826) |
| Tax | 9 | (634,961) | - |
| Net (loss) for the year | | (573,338,529) | (1,705,826) |

The notes on pages 8 to 15 form an integral part of these financial statements

4

# SPV CO. LTD

## BALANCE SHEET
31 December 2005

|  | Note | 2005 CZK | 2004 CZK |
|---|---|---|---|
| **ASSETS** | | | |
| **Current assets** | | | |
| Intangibles | 10 | - | 141,000,000 |
| Trade and other receivables | 12 | 10,993,166 | 173,250,000 |
| Available-for-sale investments | 11 | 730,228,838 | 1,360,960,440 |
| Cash at bank and in hand | | 5,096,363 | - |
| **Total assets** | | 746,318,367 | 1,675,210,440 |
| | | | |
| **EQUITY AND LIABILITIES** | | | |
| **Capital and reserves** | | | |
| Share capital | 13 | 1,290,000,000 | 1,480,000,000 |
| Fair value reserves | 14 | (4,827,228) | - |
| Accumulated (losses) | | (575,044,355) | (1,705,826) |
| | | 710,128,417 | 1,478,294,174 |
| **Current liabilities** | | | |
| Trade and other payables | 15 | 35,554,989 | 196,916,266 |
| Current tax liabilities | 16 | 634,961 | - |
| | | 36,189,950 | 196,916,266 |
| **Total equity and liabilities** | | 746,318,367 | 1,675,210,440 |

On 14 April 2006, the Board of Directors of SPV CO. LTD authorised these financial statements for issue

Marek Kolibal
Director

Elena Makrigiorgi
Director

The notes on pages 8 to 15 form an integral part of these financial statements

5

K 6404

K006404

# SPV CO. LTD

## STATEMENT OF CHANGES IN EQUITY
Year ended 31 December 2005

| | Note | Share capital CZK | Fair value reserves CZK | Accumulated (losses) CZK | Total CZK |
|---|---|---|---|---|---|
| Net loss for the year | | - | - | (1,705,826) | (1,705,826) |
| Issue of share capital | 13 | 1,480,000,000 | - | - | 1,480,000,000 |
| | | 1,480,000,000 | - | (1,705,826) | 1,478,294,174 |
| At 31 December 2004 /1 January 2005 | | 1,480,000,000 | - | (1,705,826) | 1,478,294,174 |
| Available-for-sale investments | | | | | |
| Fair value gains | 14 | - | (4,827,228) | - | (4,827,228) |
| Net gains and losses recognised directly in equity | | - | (4,827,228) | - | (4,827,228) |
| Net loss for the year | | - | - | (573,338,529) | (573,338,529) |
| Total recognised loss for 2005 | | - | (4,827,228) | (573,338,529) | (578,165,757) |
| Reduction of share capital | 13 | (190,000,000) | - | - | (190,000,000) |
| | | (190,000,000) | (4,827,228) | (573,338,529) | (768,165,757) |
| At 31 December 2005 | | 1,290,000,000 | (4,827,228) | (575,044,355) | 710,128,417 |

Companies, which do not distribute 70% of their profits after tax, as defined by the relevant tax law, within two years after the end of the relevant tax year, will be deemed to have distributed as dividends 70% of these profits. Special contribution for defence at 15% will be payable on such deemed dividends to the extent that the shareholders (companies and individuals) are Cyprus tax residents. The amount of deemed distribution is reduced by any actual dividends paid out of the profits of the relevant year during the following two years. This special contribution for defence is payable for the account of the shareholders.

The notes on pages 8 to 15 form an integral part of these financial statements

6

# SPV CO. LTD

## CASH FLOW STATEMENT
Year ended 31 December 2005

|  | Note | 2005 CZK | 2004 CZK |
|---|---|---|---|
| **CASH FLOWS FROM OPERATING ACTIVITIES** | | | |
| Loss before tax | | (572,703,568) | (1,705,826) |
| Adjustments for: | | | |
| Provisions for liabilities and charges | | 547,000,000 | - |
| Loss on disposal of intangibles | | 6,000,000 | - |
| Profit on disposal of available for sale investments | 8 | 17,586,880 | - |
| **Operating (loss) before working capital changes** | | (2,116,688) | (1,705,826) |
| Changes in working capital: | | | |
| Amounts deposited in escrow | | (15,750,000) | - |
| Proceeds from sale of investments and intangibles | | 947,123,560 | - |
| Trade and other receivables | | 162,256,834 | (173,250,000) |
| Purchase of available for sale investments and intangibles | | (724,545,160) | (1,501,960,440) |
| Interest accrued on available for sale investments | | (10,510,906) | |
| Trade and other payables | | (161,361,277) | 196,916,266 |
| **Net cash from / (used in) operating activities** | | 195,096,363 | (1,480,000,000) |
| | | | |
| **CASH FLOWS FROM INVESTING ACTIVITIES** | | - | - |
| | | | |
| **CASH FLOWS FROM FINANCING ACTIVITIES** | | | |
| Proceeds from issue of share capital | | (190,000,000) | 1,480,000,000 |
| **Net cash (used in) / from financing activities** | | (190,000,000) | 1,480,000,000 |
| | | | |
| **Net increase in cash and cash equivalents** | | 5,096,363 | - |
| Cash and cash equivalents: | | | |
| At beginning of the year | | - | - |
| At end of the year | | 5,096,363 | - |

The notes on pages 8 to 15 form an integral part of these financial statements

7

K 6406

K006406

**SPV CO. LTD**

# NOTES TO THE FINANCIAL STATEMENTS
Year ended 31 December 2005

**1. Incorporation and principal activities**

**Country of incorporation**

The company was incorporated in Cyprus on 27 May 2004 as an international business company with limited liability under the Companies Law, Cap. 113. Its registered office is at Agiou Pavlou 15, Ledra House, Agios Andreas, CY-1105 Nicosia, Cyprus

**Principal activities**

The principal activities of the Company, which are unchanged from last year, are those of an investment company

**2. Accounting policies**

The principal accounting policies adopted in the preparation of these financial statements are set out below. These policies have been consistently applied to all years presented in these financial statements unless otherwise stated

**Basis of preparation**

The financial statements have been prepared in accordance with International Financial Reporting Standards (IFRSs) as adopted by the EU and International Financial Reporting Standards (IFRSs) as issued by the IASB. The financial statements comply with both these reporting frameworks because at the time of their preparation all applicable IFRSs issued by the IASB have been adopted by the EU through the endorsement procedure established by the European Commission. In addition, the financial statements have been prepared in accordance with the requirements of the Cyprus Companies Law, Cap 113. The financial statements have been prepared under the historical cost convention as modified by the revaluation of land and buildings, investment property, available-for-sale investments, and financial assets and financial liabilities held for trading

The preparation of financial statements in conformity with IFRSs as adopted by the EU requires the use of certain critical accounting estimates and requires management to exercise its judgment in the process of applying the Company's accounting policies. It also requires the use of assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period. Although these estimates are based on management's best knowledge of current events and actions, actual results ultimately may differ from those estimates.

**Revenue recognition**

Revenue comprises proceeds from the disposal of available-for-sale investments and trademarks and interest income. Revenues earned by the Company are recognised on the following bases:

- **Sale of available for sale investments**

  Sales of available for sale investment are recognised when significant risks and rewards of ownership of the goods have been transferred to the buyer

**Finance costs**

Interest expense and other borrowing costs are charged to the income statement as incurred

**Tax**

Current tax liabilities and assets for the current and prior periods are measured at the amount expected to be paid to or recovered from the taxation authorities using the tax rates and laws that have been enacted or substantively enacted by the balance sheet date

Deferred tax is provided in full, using the liability method, on temporary differences arising between the tax bases of assets and liabilities and their carrying amounts in the financial statements. Currently enacted tax rates are used in the determination of deferred tax

Deferred tax assets are recognised to the extent that it is probable that future taxable profit will be available against which the temporary differences can be utilised

8

K 6407

K006407

**SPV CO. LTD**

## NOTES TO THE FINANCIAL STATEMENTS
Year ended 31 December 2005

### 2. Accounting policies (continued)

**Operating leases**

Leases where a significant portion of the risks and rewards of ownership are retained by the lessor are classified as operating leases Payments made under operating leases are charged to the income statement on a straight-line basis over the period of the lease

**Investments**

The Company classifies its investments in the following categories: trading, held to maturity and available-for-sale  The classification is dependent on the purpose for which the investments were acquired  Management determines the classification of its investments at initial recognition and re-evaluates this designation at every reporting date

Investments that are acquired principally for the purpose of generating a profit from short-term fluctuations in price are classified as trading investments and included in current assets

Investments with fixed or determinable payments and fixed maturity that the management has the positive intent and ability to hold to maturity, other than loan and receivables originated by the Company, are classified as held-to-maturity investments  Such investments are included in non-current assets, except for maturities within twelve months from the balance sheet date, which are classified as current assets  During the year the Company did not hold any investments in this category

Investments intended to be held for an indefinite period of time, which may be sold in response to needs for liquidity or changes in interest rates, are classified as available-for-sale; these are included in non-current assets unless management has the express intention of holding the investment for less than 12 months from the balance sheet date or unless they will need to be sold to raise operating capital, in which case they are included in current assets

Purchase and sales of investments are recognised on the trade date, which is the date that the Company commits to purchase or sell the asset  The cost of the purchase includes transactions costs  Trading and available-for-sale investments are subsequently carried at fair value  Held-to-maturity investments are subsequently carried at amortised cost using the effective interest method

Realised and unrealised gains and losses arising from changes in the fair value of trading investments are included in the income statement in the year in which they arise  Unrealised gains and losses arising from changes in the fair value of available-for-sale investments are recognised in fair value reserves in equity

When available-for-sale investments are sold or impaired, the accumulated fair value adjustments are included in the income statement as gains and losses from available-for-sale investments

The fair value of investments is based on quoted bid prices or amounts derived from cash flow models  Fair values for unlisted equity investments are estimated using applicable price/earnings or price/cash flow ratios refined to reflect the specific circumstances of the issuer  Equity investments for which fair values cannot be measured reliably are recognised at cost less impairment  When available-for-sale investments are sold or impaired, the accumulated fair value adjustments are included in the income statement as gains and losses from available-for-sale investments

The Company assesses at each balance sheet date whether there is any objective evidence that a financial asset is impaired  A financial asset is impaired if its carrying amount is greater than its estimated recoverable amount  The amount of the impairment loss for assets carried at amortised cost is calculated as the difference between the assets carrying amount and the present value of expected future cash flows discounted at the financial instrument's original effective interest rate  By comparison, the recoverable amount of an instrument measured at fair value is the present value of expected future cash flows discounted at the current market rate of interest for a similar financial asset

**Impairment of long-lived assets**

Property, plant and equipment and other non-current assets are reviewed for impairment losses whenever events or changes in circumstances indicate that the carrying amount may not be recoverable  An impairment loss is recognised for the amount by which the carrying amount of the asset exceeds its recoverable amount  The recoverable amount is the higher of an asset's net selling price and value in use  For the purposes of assessing impairment, assets are grouped at the lowest levels for which there are separately identifiable cash flows

9

K 6408

K006408

**SPV CO. LTD**

## NOTES TO THE FINANCIAL STATEMENTS
Year ended 31 December 2005

**2. Accounting policies (continued)**

**Trade receivables**

Trade receivables are carried at original invoice amount less provision made for impairment of these receivables. A provision for impairment of trade receivables is established when there is objective evidence that the Company will not be able to collect amounts due according to the original terms of receivables. The amount of the provision is the difference between the carrying amount and the recoverable amount. The amount of the provision is recognised in the income statement.

**Share capital**

Ordinary shares are classified as equity.

**Provisions**

Provisions are recognised when the Company has a present legal or constructive obligation as a result of past events, it is probable that an outflow of resources will be required to settle the obligation, and a reliable estimate of the amount can be made. Where the Company expects a provision to be reimbursed, for example under an insurance contract, the reimbursement is recognised as a separate asset but only when the reimbursement is virtually certain.

**Cash and cash equivalents**

For the purposes of the cash flow statement, cash and cash equivalents comprise cash at bank and in hand.

**3. Financial risk management**

**(1) Financial risk factors**
The Company is exposed to market price risk, interest rate risk, credit risk, liquidity risk and currency risk arising from the financial instruments it holds. The risk management policies employed by the Company to manage these risks are discussed below:

**(1.1) Market price risk**
Market price risk is the risk that the value of financial instruments will fluctuate as a result of changes in market prices. The Company's available-for-sale investments and trading investments are susceptible to market price risk arising from uncertainties about future prices of the investments. The Company's market price risk is managed through diversification of the investment portfolio.

**(1.2) Interest rate risk**
Interest rate risk is the risk that the value of financial instruments will fluctuate due to changes in market interest rates. The Company's income and operating cash flows are substantially independent of changes in market interest rates as the Company has no significant interest-bearing assets. The Company is exposed to interest rate risk in relation to its non-current borrowings. Borrowings issued at variable rates expose the Company to cash flow interest rate risk. Borrowings issued at fixed rates expose the Company to fair value interest rate risk. The Company's management monitors the interest rate fluctuations on a continuous basis and acts accordingly.

**(1.3) Credit risk**
Credit risk arises when a failure by counter parties to discharge their obligations could reduce the amount of future cash inflows from financial assets on hand at the balance sheet date. The Company has no significant concentration of credit risk. The Company monitors on a continuous basis the ageing profile of its receivables.

**(1.4) Liquidity risk**
Liquidity risk is the risk that arises when the maturity of assets and liabilities does not match. An unmatched position potentially enhances profitability, but can also increase the risk of losses. The Company has procedures with the object of minimising such losses.

**(1.5) Currency risk**
Currency risk is the risk that the value of financial instruments will fluctuate due to changes in foreign exchange rates. Currency risk arises when future commercial transactions and recognised assets and liabilities are denominated in a currency that is not the Company's measurement currency. The Company is exposed to foreign exchange risk arising from various currency exposures primarily with respect to the Cyprus pounds and the Euro. The Company's management monitors the exchange rate fluctuations on a continuous basis and acts accordingly.

K 6409

K006409

# SPV CO. LTD

## NOTES TO THE FINANCIAL STATEMENTS
Year ended 31 December 2005

3. Financial risk management (continued)

(2) Fair value estimation
The fair values of the Company's financial assets and liabilities approximate their carrying amounts at the balance sheet date

The fair value of financial instruments traded in active markets, such as publicly traded trading and available-for-sale investments is based on quoted market prices at the balance sheet date. The quoted market price used for financial assets held by the Company is the current bid price. The appropriate quoted market price for financial liabilities is the current ask price

### 4. Revenue

|  | 2005 | 2004 |
|---|---|---|
|  | CZK | CZK |
| Loss from disposal of available for sale investments | (17,586,908) | - |
| Loss from disposal of intangibles | (6,000,000) | - |
| Interest earned on available for sale investments | 13,310,937 | - |
|  | (10,275,971) | - |

### 5. Other income

|  | 2005 | 2004 |
|---|---|---|
|  | CZK | CZK |
| Interest receivable on loan to fellow subsidiary (Note 12) | 155,367 | - |
| Interest on loan to shareholder (Note 17) | 1,040,111 | - |
| Other interest income | 548,244 | - |
|  | 1,743,722 | - |

### 6. Other expenses

|  | 2005 | 2004 |
|---|---|---|
|  | CZK | CZK |
| Incorporation expenses | - | 31,523 |
| Capital issue costs | - | 1,326,790 |
| Provisions for liabilities and charges (Note 12) | 547,000,000 | - |
|  | 547,000,000 | 1,358,313 |

### 7. Operating (loss)

|  | 2005 | 2004 |
|---|---|---|
|  | CZK | CZK |
| Operating (loss) is stated after charging the following items |  |  |
| Auditors' remuneration | 353,406 | 111,536 |
| Operating lease rentals | 601,959 | 235,647 |
| Legal costs | 14,188,169 | - |

11

K 6410

K006410

# SPV CO. LTD

## NOTES TO THE FINANCIAL STATEMENTS
Year ended 31 December 2005

### 8. Finance costs

| | 2005 | 2004 |
|---|---|---|
| | CZK | CZK |
| Net foreign exchange transaction gains | (112) | - |
| Other finance expenses | 39,725 | 330 |
| | 39,613 | 330 |

### 9 Tax

| | 2005 | 2004 |
|---|---|---|
| | CZK | CZK |
| Corporation tax - current year | 632,757 | - |
| Defence contribution - current year | 2,204 | - |
| Total charge for the year | 634,961 | - |

The tax on the Company's results before tax differs from the theoretical amount that would arise using the applicable tax rates as follows:

| | 2005 | 2004 |
|---|---|---|
| | CZK | CZK |
| Loss before tax | (572,703,568) | (1,705,826) |
| | | |
| Tax calculated at the applicable tax rates | (57,270,357) | (170,583) |
| Tax effect of expenses not deductible for tax purposes | 56,118,812 | 735,833 |
| Tax effect of allowances and income not subject to tax | 1,759,792 | (600,000) |
| Tax effect of tax losses brought forward | (33,014) | - |
| Tax effect of tax loss for the year | - | 34,750 |
| 10% additional charge | 57,524 | - |
| Defence contribution current year | 2,204 | - |
| Tax charge | 634,961 | - |

The Company is subject to corporation tax on its taxable profits at the rate of 10%.

Under certain conditions interest may be subject to defence contribution at the rate of 10%. In such cases 50% of the same interest will be exempt from corporation tax, thus having an effective tax rate burden of approximately 15%. In certain cases, dividends received from abroad may be subject to defence contribution at the rate of 15%.

12

K006411

# SPV CO. LTD

## NOTES TO THE FINANCIAL STATEMENTS
Year ended 31 December 2005

### 10. Intangible assets

| | Research and development | Total 2005 | Total 2004 |
|---|---|---|---|
| | CZK | CZK | CZK |
| **Cost** | | | |
| On 1 January | 141,000,000 | 141,000,000 | - |
| Additions | - | - | 141,000,000 |
| Disposals | (141,000,000) | (141,000,000) | - |
| **Closing net book amount** | - | - | 141,000,000 |

### 11. Available-for-sale investments

| | 2005 | 2004 |
|---|---|---|
| | CZK | CZK |
| Opening net book amount | 1,360,960,440 | - |
| Additions | 724,545,160 | 1,360,960,440 |
| Accrued interest on available for sale investments | 10,510,906 | |
| Disposals | (1,360,960,440) | |
| Revaluation difference transferred to equity (Note 14) | (4,827,228) | - |
| **Closing net book amount** | 730,228,838 | 1,360,960,440 |

Available-for-sale investments, comprising principally securities, are fair valued annually at the close of business on the balance sheet date. For investments traded in active markets, fair value is determined by reference to Stock Exchange quoted bid prices. For other investments, fair value is estimated by reference to the current market value of similar instruments or by reference to the discounted cash flows of the underlying assets.

Available-for-sale investments are classified as non-current assets, unless they are expected to be realised within twelve months of the balance sheet date or unless they will need to be sold to raise operating capital.

### 12. Trade and other receivables

| | 2005 | 2004 |
|---|---|---|
| | CZK | CZK |
| Funds blocked in escrow account (Note 15) | 547,000,000 | 173,250,000 |
| Less provisions for liabilities and charges | (547,000,000) | |
| Loan to fellow subsidiary - Kotva Obchodni a s | 10,993,166 | - |
| | 10,993,166 | 173,250,000 |

The loan advanced to Kotva Obchodni a s bears interest at the rate of 1.75% per annum and is repayable by 31 December 2006.

During the year 2005 the Company disposed of its shareholding in SPV KN and its trademarks for total proceeds of CZK 1,501,960,440. An action is pending against the Company disputing its right to sell these assets and over the ownership of the disposal proceeds. In accordance with the terms of the sale agreement an amount of CZK 547,000,000 was placed in escrow to provide for potential liabilities and costs to the purchaser that might arise in respect of these claims. The Directors believe that it may take a number of years for this matter to be resolved in the courts. Due to the inherent uncertainties, the complexity of the legal arguments and the considerable legal costs of defending such action, the funds in escrow have been provided against in full. The company has not recognised interest earned in the balance held in escrow amounting to CZK 5,918,285 in the year.

13

K 6412

# SPV CO. LTD

## NOTES TO THE FINANCIAL STATEMENTS
Year ended 31 December 2005

### 13. Share capital

|  | 2005 Number of shares | 2005 CZK | 2004 Number of shares | 2004 CZK |
|---|---|---|---|---|
| **Authorised** |  |  |  |  |
| Ordinary shares of CY£1 each | 400 | 4,000,000,000 | 400 | 4,000,000,000 |
| **Issued and fully paid** |  |  |  |  |
| On 1 January | 148 | 1,480,000,000 | 148 | 1,480,000,000 |
| Reduction of share capital | (19) | (190,000,000) | - | - |
| At 31 December | 129 | 1,290,000,000 | 148 | 1,480,000,000 |

By special resolution of the members dated 17 May 2005 the capital of the company was reduced by 19 shares of nominal value 10 million each  The shares were redeemed at par

### 14. Fair value reserves

|  | Available-for-sale investments CZK | Total CZK |
|---|---|---|
| Balance - 27 May 2004 |  |  |
| At 31 December 2004 / 1 January 2005 | - | - |
| Fair value adjustment (Note 11) | (4,827,228) | (4,827,228) |
| **At 31 December 2005** | (4,827,228) | (4,827,228) |

### 15. Trade and other payables

|  | 2005 CZK | 2004 CZK |
|---|---|---|
| Shareholders' current account - Kotva Nemovitosti k s  (Note 17) | 34,239,493 | 39,069,083 |
| Accruals | 1,302,548 | 347,183 |
| Other creditors | 12,948 | 157,500,000 |
|  | 35,554,989 | 196,916,266 |

### 16. Current tax liabilities

|  | 2005 CZK | 2004 CZK |
|---|---|---|
| Corporation tax | 632,757 | - |
| Special contribution for defence | 2,204 | - |
|  | 634,961 | - |

### 17. Related party transactions

Loans to related parties are disclosed in note 12 and current account balances with the parent are disclosed in note 15

14

K 6413

K006413

# SPV CO. LTD

## NOTES TO THE FINANCIAL STATEMENTS
Year ended 31 December 2005

### 17. Related party transactions (continued)

During the year the company had advanced loans to the parent which were subsequently settled against amounts payable to the parent from the reduction in capital (see Note 13). The company earned interest of CZK 1 046 111 on these loans

### 18. Commitments

#### Operating lease commitments

The future aggregate minimum lease payments under non-cancellable operating leases are as follows:

|                        | 2005 CZK | 2004 CZK |
|------------------------|----------|----------|
| Not later than 1 year  | -        | 434,075  |
|                        | -        | 434,075  |

### 19. Post balance sheet events

There were no material post balance sheet events, which have a bearing on the understanding of the financial statements

Auditors' report page 3

K. 6414

K006414

# SPV CO. LTD

## COMPUTATION OF DEFENCE CONTRIBUTION
Year ended 31 December 2005

|  | Income CZK | Income CY£ | Rate | Defence CY£ c |
|---|---|---|---|---|
| INTEREST |  |  |  |  |
| Interest that was not subject to deduction at source | 22,042 | 435 |  |  |
|  | 22,042 | 435 | 10% | 43.50 |
| DEFENCE CONTRIBUTION DUE TO IRD |  |  |  | 43.50 |

16

K 6415

K006415

# SPV CO. LTD

## COMPUTATION OF CORPORATION TAX
Year ended 31 December 2005

|  | Page | CZK | CZK |
|---|---|---|---|
| Net loss per income statement | 4 |  | (572,703,568) |
| **Less:** |  |  |  |
| Expenses not allowable for taxation purposes: |  |  |  |
| Provisions for liabilities and charges(see note 14) |  | 547,000,000 |  |
| Legal costs |  | 14,188,169 |  |
| Loss from sale of available-for-sale investments |  | 17,586,880 |  |
|  |  |  | 578,775,049 |
| **Net trading income for the year** |  |  | 6,071,481 |
| **Interest receivable** |  |  |  |
| Bank interest received |  | 22,042 |  |
| Total credit interest |  | 22,042 |  |
| Less special 50% allowance on total credit interest |  | (11,021) |  |
|  |  |  | 11,021 |
| **Chargeable income for the year** |  |  | 6,082,502 |

|  |  |  | CY£ |
|---|---|---|---|
| Converted into CY£ at CZK 50.6586 = CY£1 |  |  | 120,068 |
| (Loss) brought forward |  |  | (6,517) |
| **Chargeable income 31 December 2005** |  |  | 113,551 |

| **Calculation of corporation tax** | Income | Rate | Total |
|---|---|---|---|
|  | CY£ | % | CY£ c |
| **Tax at normal rates:** |  |  |  |
| Chargeable income as above | 113,551 | 10 | 11,355 10 |
| Tax paid provisionally | - |  | - |
|  |  |  | 11,355 10 |
| 10% penalty |  |  | 1,135 51 |
| **TAX PAYABLE** |  |  | 12,490 61 |

17

K 6416

K006416

MINUTES OF A SPECIAL MEETING OF UNLIMITED PARTNERS OF
KOTVA NEMOVITOSTI, k.s. – THE SOLE SHAREHOLDER OF THE COMPANY SPV
CO. LIMITED
ON NON-CASH CONTRIBUTION TO THE COMPANY

A special meeting of Unlimited Partners of the company KOTVA NEMOVITOSTI, k s
(hereinafter referred to as the "KN") has been held at the address: Prague 1, Nám
Republiky 8, Czech Republic on 21 December 2004 at the address Prague 1,
Nám Republiky 8, Czech Republic


PRESENT:        KOTVA SPRÁVCOVSKÁ, a s      - UNLIMITED PARTNER

Represented by:

Michal Vlach – the chairman of the Board of Directors

Jaromír David - the member of the Board of Directors

Pavel Richter – the member of the Board of Directors


KOTVA OBCHODNÍ, a s  -  UNLIMITED PARTNER

Represented by:

Michal Vlach – the chairman of the Board of Directors

Jiří Brada · the member of the Board of Directors

Pavel Richter - the member of the Board of Directors


Michal Vlach acted as Chairman and Jiří Brada recorded the minutes thereof


The Chairman deemed it convenient for the business of KN being the sole shareholder of
the company SPV CO  LIMITED incorporated on the 27 day of May 2004 under the law of
Cyprus, with Incorporation No  148845 (hereinafter referred to as the "SPV CO") to
convene a meeting of Unlimited Partners (hereinafter referred to as "the Meeting")

Prior to further discussion, the Chairman has informed and brought to the attention of the
Meeting the following:

a) That the whole issued share capital of SPV CO is 1,480,000,000 CZK (one  billion four
   hundred and eighty million Czech Crowns) that is 148 shares of 10,000,000 CZK (ten
   million Czech Crowns) (hereinafter referred to as "the Shares of SPV CO")

b) As per
   (i)    the resolutions of the special meeting of Unlimited Partners of the KN on
          establishment of the Company that has been held at the address of Prague 1,
          Nám  Republiky 8, Czech Republic on April 27, 2004 at 10 00 a m  and

K 5609

LIMITED PARTNERS OF
COMPANY SPV

(ii)    the Memorandum and Articles of Association of the Company which is
incorporated on the May 27, 2004

KN has subscribed the Shares of the Company

The Chairman then explained to those present that the Meeting has been convened in
order to examine the matter of payment and or contribution by KN of the capital of SPV
CO through a non cash-contribution described as follows:

(a)    the ordinary shares on bearer issued by the company SPV KN a s , with registered
office at Příkop 4, Brno, zip code: 602 00, business identification number: 26910705,
incorporated in the Commercial Register kept by the Regional Court in Brno, Section
B, Insert 4043, namely the following:

10 bearer stock certificates with a nominal value of 200,000 - CZK, No  1-10
13 bearer stock certificates with a nominal value of 100,000,000 - CZK, No 11-23
2 bearer stock certificates with a nominal value of 20,000,000 - CZK, No 24-25
8 bearer stock certificates with a nominal value of 1,000,000 - CZK, No 28-35
2 bearer stock certificates with a nominal value of 100,000 - CZK, No 37-38 and
4 bearer stock certificates with a nominal value of 10,000 - CZK, No 46-49

being owned by the KN representing 97% of the issued share capital of the
company SPV KN a s  (hereinafter referred to as 'the Shares of SPV KN')

(b)    The following trademarks being exclusively owned by the KN:

(i)    word-device trademark registered in the KN's name in the register of trademarks kept
by the Institute of Industrial Ownership of the Czech Republic under application
number 56381, entry number 167478, with the preemptive right  date of June 23,
1989 and with the entry date of December 6, 1989, applicable to products and
services in categories 3, 14, 18, 21, 24, 25, and 28, as well as to cosmetic products,
perfumery products, including etheric  oils, hair lotions, toothpaste and tablets
Objects made of precious metals such as: gold bracelets, rings, broaches, necklaces,
earrings, and watches; costume jewelry made of metal and plastics, clocks,
chronometric equipment, including special casings, artistic objects made of bronze
Fur coats, leather handbags, attaché cases, suitcases and travel bags Goods made
of glass, products made of porcelain and stoneware Fabrics, blankets, and textile
ware. Clothes, lingerie, boots and shoes, slippers Sports goods, winter sport
equipment and swimwear

(ii)    word device trademark registered in the KN's name in the register of trademarks kept
by the Institute of Industrial Ownership of the Slovak Republic under application
number 56381, entry number 167478, with the preemptive right date of June 23, 1989
and with the entry date of December 6, 1989, applicable to products and services in
categories 3, 14, 18, 21, 24, 25, and 28, as well as to cosmetic products, perfumery
products, including etheric  oils, hair lotions, toothpaste and tablets Objects made of
precious metals such as: gold bracelets, rings, broaches, necklaces, earrings, and
watches; costume jewelry made of metal and plastics, clocks, chronometric
equipment, including special casings, artistic objects made of bronze Fur coats,
leather handbags, attaché cases, suitcases and travel bags Goods made of glass,
products made of porcelain and stoneware Fabrics, blankets, and textile ware
Clothes, lingerie, boots and shoes, slippers Sports goods, winter sport equipment

K 5610

and swimwear

(iii)    word trademark having been used by the KN not yet registered in the KN´s name in the register of trademarks kept by the Institute of Industrial Ownership of the Czech Republic for which registration the KN has applied by the application **No. 355 884** filed with Institute of Industrial Ownership of the Czech Republic on 1st of July 2004, with the preemptive right date of July the 1st, 2004

(iv)    word device trademark having been used by the KN not yet registered in the KN´s name in the register of trademarks kept by the Institute of Industrial Ownership of the Czech Republic for which registration the KN has applied by the application **No. 355 885** filed with Institute of Industrial Ownership of the Czech Republic on 1st of July 2004, with the preemptive right date of July the 1st, 2004

(hereinafter referred to as **'the Trademarks'**)

The Trademarks are further specified in an expert opinion **ZU-881/2004**

The Chairman has made available to the Meeting copies of the expert opinions reflecting and or determining the total value of the Trademarks and the Shares of SPV KN respectively in the following description (copies are attached herewith as Exhibits A and B respectively)

(a)    According to an expert opinion ZU-881/2004 produced by KOPREA – Znalecký ústav s r o /Expertise Institute Ltd / the license Ref No: ŽO/0000105/98/Vj/007 of 07 Aug 2001, registered with the CR Minister of Justice under the Ref No: 170/98-OD on July 10, 2004 that has been acquainted by the Unlimited partners of the KN the total value of the Trademarks is **141.000.000,- CZK**

(b)    Total value of the Shares of SPV KN has been determined by an expert opinion ZU 327/2004 produced by KOPREA – Znalecký ustav s r o /Expertise Institute Ltd / the license Ref No: ŽO/0000105/98/Vj/007 of 07 Aug 2001, registered with the CR Minister of Justice under the Ref No: 170/98-OD on July 10, 2004 that has been acquainted by the Unlimited partners of the KN The total value of the Shares of SPV KN is **1.360.960.440,- CZK**

**HAVING EXAMINED AND OR CONSIDERED ALL THE INFORMATION PRESENTED TO THE MEETING IT WAS RESOLVED:**

1    That the non-cash contribution namely the Shares of SPV KN and the Trademarks shall be paid up by the KN by the end of the year 2004 (by December 31st) the latest

2    That KN shall pay up the non-cash contribution in the following manner:

(i)    KN shall <u>transfer to the SPV CO the Trademarks</u> with regard to all the products and services for which those rights were registered making the transfer as a non-cash contribution to the issued capital of the SPV CO

(ii)    KN and the SPV CO will conclude a respective Agreement on a non-cash contribution under which the Trademarks and the Shares of SPV KN will be transferred to SPV CO (hereinafter referred to as 'the Agreement')

(iii)    On the day such Agreement comes into force

K 5611

- the part of non-cash contribution to the SPV CO represented by the Trademarks <u>deems to be paid up and the SPV CO shall acquire the right to the Trademarks</u>

- KN shall transfer and or release the Shares of SPV KN with all the respective rights attached to these shares to SPV CO The transfer of the Shares of SPV KN will be executed by their hand over to the SPV CO

(iv) SPV CO and KN shall execute a record of delivery and acceptance of the Shares of SPV KN which will consist an integral part of the Agreement


There being no further business, the Chairman declared the meeting closed


**KOTVA SPRÁVCOVSKÁ, a.s.      - UNLIMITED PARTNER**
Represented by:
Michal Vlach – the chairman of the Board of Directors

Jaromír David - the member of the Board of Directors

Pavel Richter – the member of the Board of Directors

**KOTVA OBCHODNÍ, a.s.      - UNLIMITED PARTNER**
Represented by:
Michal Vlach – the chairman of the Board of Directors

Jiří Brada - the member of the Board of Directors

Pavel Richter – the member of the Board of Directors

K 5612