UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
KOTVA a.s. and SPV Co.,                             )
                                                    )
                    Plaintiffs,                     )          Case No. 05-10679-WGY
                                                    )
                    v.                              )
                                                    )
ANDREW WEISS and WEISS ASSET                        )
MANAGEMENT, LLC                                     )
                                                    )
                    Defendants                      )
                                                    )
_____)

## FIRST AMENDED COMPLAINT

### INTRODUCTION

Plaintiff Kotva a.s. ("Kotva" or the "Company") was at all relevant times a public

company traded on the Czech securities market.  Through its wholly owned subsidiaries, the

Company owned and operated the famous downtown Prague department store named Kotva (the

"Shopping Centre").  Defendant Andrew Weiss ("Weiss"), through his Boston-based investment

firm Weiss Asset Management, LLC, is the investment manager of the Brookdale Global

Opportunity Fund ("Brookdale"), which owns nearly 12% of Kotva's shares.  In an audacious

scheme--confirmed in communications written from Boston, Massachusetts--Weiss blackmailed

Kotva after he learned through the press that Kotva planned to sell the Shopping Centre property

to an Irish investment group.  Sensing an opportunity to "cash-in," Weiss demanded that the

Company "repurchase" Brookdale's 12% ownership interest in Kotva.  When Kotva refused,

Weiss launched a scheme from Boston to interfere with the sale of the Shopping Centre and

fraudulently force the Company to purchase his shares.  Specifically, Weiss utilized a shell

company based in Cyprus named Gilroy Limited ("Gilroy"), and later a Delaware shell company named KT, Inc. ("KT"), to purchase nominal shares of Kotva's stock and file lawsuits in the Czech Republic solely for the improper purpose of interfering with the Shopping Centre's sale. Weiss then made ever increasing price demands on Kotva to purchase the Brookdale shares (eventually seeking almost eight times the publicly traded market value) with the carrot that he would "attempt to influence" Gilroy and KT to drop the suits. As a result of the lawsuits, Kotva's sale of the Shopping Centre was severely impaired and ultimately cost the Plaintiffs millions of dollars.

Weiss' own written communications from his Boston office to Kotva exposed his fraudulent scheme. Shortly after filing the Gilroy action, in an August 23, 2004 letter from Weiss to Kotva, Weiss stated he would sell Brookdale's Kotva stock for 131 million Czech crowns ("CZK") ($5.6 million USD) and would "attempt to influence Gilroy to withdraw the complaint questioning the ownership of assets by Kotva." Weiss in fact <u>conditioned</u> the sale "on withdrawal of the existing lawsuit where Gilroy is present." In November 2004, Weiss raised his demand to 295.75 million CZK ($12.7 million USD). When Kotva balked, Weiss directed a second shell company, KT, to file a second action against Kotva which mirrored the Gilroy action. In all his communications to Kotva, Weiss denied any connection with Gilroy or KT, but stated that he would "influence" the companies if Brookdale's shares were purchased for $12.7 million.

In February 2005, Weiss was criminally charged by the Czech government for his role in the blackmailing scheme against Kotva. In a feeble "damage control" effort, Weiss broadcasted a video press conference from Boston on March 15, 2005, abruptly changing his story regarding his control of Gilroy and KT, and now admitting: "I had no choice but to instruct my lawyers to

take appropriate legal actions." Denying that he was out simply to enrich himself at the expense of Kotva and his fellow Kotva shareholders, Weiss now claims that "the main goals of the petitions that my lawyers filed in the Czech courts are very simple - to return the assets of Kotva and Trend that were transferred to other entities…" Multiple written communications, however, prove otherwise.

Weiss' fraudulent scheme has had a cataclysmic effect on the Plaintiffs. Kotva's sale of the Shopping Centre was delayed over 8 months, costing the Plaintiffs the use of $65.3 million, enormous legal fees, and lost business opportunities. When the sale finally closed, the buyer held back $24.3 million (37 % of the sale price), which will not be released until the Gilroy and KT lawsuits are finally and conclusively resolved by the Czech courts.

By means of this action, Plaintiffs bring claims against the Weiss Defendants for violation of M.G.L. c. 93A, and common law claims of abuse of process and tortious interference with advantageous business relations. The Weiss Defendants fraudulently utilized the purchase of securities by Gilroy and KT to unfairly influence the sale price of Brookdale's shares, and to effectuate their blackmail scheme against Kotva. The fraudulent conduct that gives rise to this action occurred in the United States, including the fact that the operative written and oral communications from the Weiss Defendants were sent by mail or e-mail or telephone from Boston, Massachusetts, and that Weiss directed the actions of Gilroy and KT from Massachusetts.

## JURISDICTION

1.     This Court has jurisdiction pursuant to 28 U.S.C. §1332.

2.     Venue is proper pursuant to 28 U.S.C. §1391.

3.     The amount in controversy exceeds $75,000.

## PARTIES

4.     Kotva was at all relevant times a public company incorporated in the Czech Republic.  SPV Co. is a wholly-owned subsidiary of KN, which at all relevant times has been a wholly-owned subsidiary of Kotva, a.s.  For purposes of diversity jurisdiction, Kotva is an entity that was organized under the laws of the Czech Republic, and SPV Co. is an entity organized under the laws of Cyprus.

5.     Andrew Weiss is an individual residing in Brookline, Massachusetts and a Massachusetts citizen.  Weiss is the manager and registered agent of Weiss Asset Management, LLC.  Upon information and belief, Weiss is the 100% owner of Weiss Asset Management, LLC.

6.     Weiss Asset Management, LLC is a Foreign Limited Liability Company organized in Delaware with a principal place of business at 29 Commonwealth Avenue, Boston, Massachusetts.

## FACTS

7.     Kotva, through its wholly owned subsidiaries, owned and operated the Kotva Shopping Centre in Prague, Czech Republic until March 4, 2005.  The Kotva Shopping Centre opened in 1975 and is the largest department store in the Czech Republic.

8.     In 1995, after the fall of the communist regime and the resulting privatization of property, Kotva became a publicly traded company on the Czech securities market.

4

**Defendants' Ownership of Kotva's Shares**

9.       Weiss Asset Management, LLC ("WAM") is an investment firm headquartered in Boston, Massachusetts, owned and controlled by Weiss.  WAM is the investment manager of Brookdale.

10.      In 1997, the predecessor in interest to Brookdale purchased a block of 11.6% of Kotva shares.  In 1999, the Brookdale Group, Ltd., owned in part by Weiss, became Brookdale's investment manager and, thereafter, WAM became the investment manager.

11.      Upon information and belief, Weiss and/or WAM are entitled to 25% of any proceeds resulting from the sale of Brookdale's shares in Kotva above 30.9 million CZK ($1.3 million USD).

**Kotva's History**

12.      During the 1990's, following the privatization of Czech Republic's industry, there were protracted legal disputes concerning the ownership of certain Kotva shares.  In a well-known dispute, a Czech investment fund known as "TREND" sought to recover some of the Kotva shares held by a private company, Forminster Enterprises Limited ("Forminster").  In December 1999, a settlement agreement was concluded in which TREND acknowledged Forminster as the owner of 55% of the shares of Kotva.

13.      In 2000, new management was installed at Kotva following the TREND/Forminster settlement to effectuate a turn around of Kotva's business, which was on the brink of bankruptcy.  Banks refused to refinance Kotva's existing high interest rate loans because of concerns that Kotva was a credit risk.  Kotva looked into selling the company but it was apparent from discussions with investment bankers that potential buyers lacked interest because of the Company's recent troubled history and the concern of undisclosed liabilities.

14.    In 2000, Kotva engaged Ernst & Young to make strategic recommendations regarding the Company's future.  Ernst & Young opined that Kotva could unlock the value of its assets by separating the property ownership and the department store operations.  Ernst & Young, therefore, suggested the transfer of the Shopping Centre real estate from Kotva to a wholly owned subsidiary.

15.    In late 2000, following Ernst & Young's recommendation, Kotva established two separate wholly owned subsidiaries: Kotva Nemovitosti ("KN") (which in Czech means Kotva real estate) and Kotva Obchodni (which in Czech means Kotva retail).  The Shopping Centre was transferred from Kotva to KN in November 2000.  The 2001 general meeting of Kotva approved the transfer of the Shopping Centre to KN, with only two Kotva shareholders voting against this measure, (i.e. Brookdale with 82,782 shares and another shareholder with 12 shares).  In 2001, a bank refinanced Kotva's existing loans at a much lower interest rate.

16.    Although bankruptcy was averted, the Shopping Centre was 26 years old, and Kotva lacked the financial strength to modernize the Shopping Centre to compete with the growing number of new western style shopping malls.  Kotva therefore decided to seek a buyer for the Shopping Centre.

**Proposed Sale of Kotva's Real Estate**

17.    In February 2002, the international real estate firm Jones Lang LaSalle began marketing the Shopping Centre on behalf of Kotva.  In 2003, negotiation for the sale of the Shopping Centre commenced with an Irish investment group.  In October 2003, a future purchase contract was signed which led to a January 2004 purchase agreement.

18.    To effectuate the sale in 2004, the Shopping Centre was transferred from KN to another wholly owned Kotva subsidiary known as SPV KN.

**Weiss' May 2004 Meeting with Kotva**

19.     In the beginning of May 2004, reports appeared in the press of a pending sale of the Shopping Centre to the Irish investors.  The press, however, reported wildly inflated figures relating to the purchase price.

20.     On May 12, 2004, Weiss and Hoffmann met with the CEO of Kotva, Richard Harazim ("Harazim") and Martin Benda, chairman of the Kotva supervising board.  Weiss stated he was aware of the press reports of the Shopping Centre's pending sale and first broached the subject of Kotva "repurchasing" Brookdale's shares.  Harazim informed Weiss that it was doubtful Kotva could purchase Brookdale's shares under Czech law and, in any event, Kotva had no interest in doing so.  Harazim informed Weiss that if he wanted to sell Brookdale's shares he could offer them on the securities market.  Weiss argued that the Brookdale shares were worth far greater than the market price.  Weiss conveyed that he was an important businessman, that he could make serious problems for Kotva, and cited some examples, including an investment in Kazakhstan where his target "begged him to stop."

**Weiss Follows Through With His Threat to Tie-Up the
Sale of the Shopping Centre Property**

21.     Jilted by Kotva, Weiss thereafter devised a scheme from his Boston, Massachusetts office to blackmail Kotva into buying the Brookdale shares at an exorbitant price.

22.     Specifically, Weiss and WAM utilized the services of Vladimir Hoffmann ("Hoffmann"), a Czech national, to act as a straw man in negotiations with Kotva and to place a stranglehold on Kotva's sale of the Shopping Centre by commencing a lawsuit claiming that the wholly owned Kotva subsidiary SPV KN, which had acquired the Shopping Centre in April 2004, was not the legal owner of the Shopping Centre, but that Kotva itself was the legal owner. Hoffmann's contract with Weiss and WAM included a "success fee" if the group prevailed in

their shakedown of Kotva. Hoffmann's monthly bill for "advisory services on Kotva and Trend" were sent directly to Brookdale and WAM in Boston. The Weiss Defendants, moreover, communicated with Hoffmann and the Czech attorney Ondrej Peterka ("Peterka") and directed their activities from WAM's Boston office.

23. At the direction of the Weiss Defendants, Hoffmann utilized Gilroy - - a Cyprus shell corporation - - to purchase a nominal stock holding in Kotva, solely to confer standing for legal action against the Company. Specifically, on June 23, 2004, Gilroy opened an account at the Securities Centre permitting Gilroy to purchase shares in the Czech Republic. On the next day, Gilroy purchased one share of Kotva for 430 CZK. On June 29, 2004. Gilroy purchased an additional 134 shares of Kotva for 430 CZK per share.

24. The next day, on June 30, 2004, Gilroy filed a civil lawsuit against Kotva, KN and SPV KN in Prague challenging the transfers of the Kotva Shopping Centre from Kotva to the wholly owned Kotva subsidiary KN and the subsequent transfer from KN to the wholly owned Kotva subsidiary SPV KN, and seeking to restore the ownership of the Shopping Centre to Kotva. The sole purpose of the lawsuit was to block the property's sale and give the Weiss Defendants leverage against Kotva. Indeed, Kotva first transferred the Shopping Centre to the Kotva subsidiary KN in November 2000. This action was approved in 2001 by the general meeting of Kotva with only Brookdale and a shareholder with 12 shares opposing this measure. Tellingly, Weiss did not seek a court declaration that Kotva was the owner of the Shopping Centre until almost four years later, and only after Weiss learned of the Shopping Centre sale and Kotva's refusal to purchase Brookdale's Kotva shares.

25. On July 2, 2004, Gilroy's lawyers submitted a copy of the lawsuit to the public property registry office responsible for the Kotva Shopping Centre, with a formal request that the

property registry note in the public records that a lawsuit disputing SPV KN's ownership of

Kotva Shopping Centre had been filed.  Weiss knew that the Gilroy lawsuit would deprive Kotva

of clean legal title to sell the Shopping Centre and that the Irish investors would have concerns

about purchasing the shares of SPV KN because of the uncertainty caused by the Gilroy lawsuit.

26.    Kotva lacked any information concerning the ownership structure of Gilroy or

who was behind the lawsuit, but suspected Weiss.

**Weiss' Commercial Extortion of Kotva**

27.    On August 17, 2004, Weiss sent Kotva a written "offer" to sell Brookdale's

shares for 131 million CZK ($5.6 million USD), almost <u>four</u> times the shares' market value.  (A

true copy of the offer letter signed by Weiss is attached hereto as Exhibit A).

28.    In an attempt to "smoke out" Weiss' interest in Gilroy, Kotva immediately

responded to the August 17th letter by e-mail stating that Kotva would not be able to consider any

deal to purchase the Brookdale shares "without resolving [the Gilroy lawsuit] and any other

potential lawsuits against our company raised by BGO [Brookdale] or by BGO controlled

entities."

29.    WAM immediately took the bait and responded that "[w]e are preparing another

counter offer, which would deal with the lawsuits brought regarding the ownership of Kotva

property."  On August 23, 2004, Weiss sent a "revised" offer to Kotva restating the terms of the

August 17th letter, but then adding:

> We will attempt to influence Gilroy to withdraw the complaint questioning
> ownership of assets by Kotva a.s.  Since we do not exert control over
> Gilroy and Balfindor or petitions submitted by them, we cannot guarantee
> a withdrawal of the complaint.  The sale agreement shall be conditional on
> withdrawal of the existing lawsuit where Gilroy is the plaintiff.

(A true copy of the August 23rd letter is attached hereto as Exhibit B).  As detailed below, Kotva has uncovered documents which reveal that the Weiss Defendants directed, controlled and funded the Gilroy action.

30.     Believing that the extortion scheme had worked, Weiss raised the ante.  On November 23, 2004, Weiss sent another offer to Kotva to sell the Brookdale shares for 167 million CZK ($7.2 million USD).  Weiss, however, also now insisted that Kotva purchase Brookdale's 1,098,617 shares of Trend for an additional 128.75 million CZK ($5.5 million USD).  The Trend shares had no market value because Trend was bankrupt and faced more claims than assets.  Weiss therefore sought a total of 295.75 million CZK ($12.7 million USD).  This is an amount equivalent to 3573 CZK per Kotva share.  Upon information and belief, Weiss would personally receive approximately $2.5 million from this fraudulent offer.  In the offer, Weiss again stated that:

> We will attempt to influence Gilroy to withdraw the complaint questioning ownership of assets by Kotva, a.s.  Since we do not exert control over Gilroy and Balfindor or petitions submitted by them, we cannot guarantee a withdrawal of the Complaint. The sale agreement shall be conditional on withdrawal of the existing lawsuits where Gilroy and Ballfindor are the plaintiffs.

(A true copy of Weiss' November 23, 2004 offer is attached hereto as Exhibit C).

31.     Upon receipt of Weiss' latest "demand" of 295.75 CZK ($12.7 million USD), Kotva sought to arrange a face-to-face meeting with Weiss in an effort to uncover his role in the Gilroy action.  By e-mails, Kotva told Weiss that his valuation of Kotva shares was wrong, and also that Kotva had no interest in purchasing the Trend shares.  Kotva also raised the issue of whether it could share internal financial data with Weiss, which could be considered insider information.  WAM responded via e-mail, however, that "we do not mind to be [sic] insiders."

32.     On December 21, 2004, KT Inc. ("KT"), a Delaware corporation of which

Andrew Weiss is the director, purchased 1000 shares of Kotva for 425 CZK per share.  On

December 23, 2004, KT filed a lawsuit against Kotva, with virtually identical allegations as the

Gilroy action.  The KT action was filed by Ondrej Peterka, who also served as Gilroy's attorney.

33.     Immediately upon filing this second action, Peterka notified the Irish investors of

the lawsuit:

> We have been informed that your law firm represents a group of Irish
> investors that intend to buy the Kotva Department Store in Prague, Czech
> Republic.  Today the company KT, Inc. (as a shareholder of the company
> Kotva, a.s.) has submitted a petition for declaration of ownership to real
> estate.  In this petition, the plaintiff requests the court to declare that the
> company Kotva, a.s. is the real and true owner of the real estate – Kotva
> Department Store, including the land on which the department store is
> located.

34.     On January 4, 2005, Kotva asked Weiss by e-mail whether KT's new lawsuit

would be included as part of the settlement offer of November 23, 2004.  Weiss responded by e-

mail from Boston that "KT is not controlled by Weiss Asset Management; however, if a

satisfactory resolution of all matters can be achieved, I would try to persuade KT to settle its

lawsuits, and I am highly confident that I would be successful in that endeavor."

35.     Again, as set forth below, contrary to his representations, the Weiss Defendants in

fact directed, controlled, and funded the KT action.

36.     The Czech securities market provided Weiss methods to sell Brookdale's Kotva

shares for more than the market price established through anonymously traded shares.  Weiss

could have offered the entire 12% holding as a block direct trade at a price of his choosing.

Kotva, however, is not aware of any attempt by Weiss to offer Brookdale's shares on the

securities market at any price.  Weiss knew that no buyer on the market would purchase

Brookdale's shares for the price Weiss was demanding that Kotva pay.

**The Damage Caused by the Weiss Defendants' Scheme**

37.    As a result of the Gilroy and KT actions, which purported to challenge SPV KN's ownership of the Shopping Centre, Kotva was unable to effectuate the sale of the Shopping Centre as written for over eight months, losing the benefit of sales proceeds amounting to 1.52 billion CZK ($65.3 million USD).  Under the terms of the sale agreement with the Irish investors, the sale proceeds were to be paid to SPV Co.  When the deal finally closed, the buyer held back 567 million CZK ($24.3 million USD) from the Shopping Centre sale (37 % of the sales price), which SPV Co. and Kotva cannot utilize until the Gilroy and KT lawsuits are conclusively resolved in the Czech courts.

38.    The Weiss Defendants' fraudulent scheme also threatened Kotva's efforts to refinance a loan of approximately 200 million CZK that was due late in 2004.  Kotva informed Peterka and Hoffmann of this in a meeting on October 18, 2004.  Peterka dutifully informed Weiss of this in a memorandum of the same date:

> The representatives of Kotva further stated that a bank providing operational financing to Kotva (a loan in the amount approx. CZK 200 million due at the end of this year) is concerned about the pending lawsuit on the declaration of ownership to the Kotva Department Store and is reluctant to extend this loan.  In our opinion they seemed to derive liability of Gilroy for damages suffered by Kotva as a consequence of the lawsuit.

(A true copy of the October 18, 2004 Memorandum is attached hereto as Exhibit D).

39.    Weiss's response to Kotva's financial troubles on November 23, 2004 was to increase his demand from 131 million CZK to 295.75 million CZK.  In short, Weiss was not concerned if his actions damaged Kotva and/or his fellow Kotva shareholders.

**The Criminal Charges Against Hoffmann and Weiss**

40.    In February 2005, Weiss and Hoffmann were criminally charged by the Czech Republic government for their roles in the blackmail plot against Kotva.

41.     On March 15, 2005, Weiss held a "video press conference" from his office in

Boston.  Contradicting the multiple representations he made to Kotva, Weiss now fully admits

his role in the Gilroy and KT lawsuits:

> I have a fiduciary responsibility to protect the interests of BGO
> [Brookdale] and its investors.  *Therefore I had no choice but to instruct my
> lawyers to take appropriate legal actions.*  The main goals of the petitions
> that my lawyers filed in the Czech courts are very simple – to return the
> assets of KOTVA and TREND that were transferred to other entities,
> especially to return shares of KOTVA currently held by FORMINSTER
> back to TREND and to place the department store back under the control
> of KOTVA a.s. and its shareholders.

(emphasis added)  (A true and accurate copy of Weiss' written statement is attached hereto as

Exhibit E).

42.     Weiss waited almost four years after the transfer of the Shopping Centre to Kotva

subsidiary KN to seek the return of the Shopping Centre to Kotva -- only after Weiss learned of

the Shopping Centre sale and Kotva's refusal to purchase Brookdale's Kotva shares.  If the

Shopping Centre was returned to Kotva, the Irish investors could only purchase the Shopping

Centre in a straight property transfer from Kotva, which would result in Kotva paying

approximately 250 million CZK in additional property and income taxes.  In short, the return of

the Shopping Centre to Kotva would have no benefit to Kotva or its shareholders.

### The Admissions in the Weiss Defendants' Own Documents

43.     As a result of the criminal charges against Weiss and Hoffmann, multiple internal

documents have been disclosed which demonstrate Weiss and WAM's control over Gilroy's and

KT's actions, and exposes their scheme to extort millions of dollars from Kotva.

44.     For example, by memorandum dated October 12, 2004, Weiss' Prague counsel,

Mr. Peterka notified Weiss that yet another legal action the Weiss Defendants were planning to

file would be submitted by Gilroy and KT.  The memorandum provides in pertinent part:

> As agreed the petition will be submitted on behalf of GILROY and later KT Inc. will join GILROY as another plaintiff.

(A true copy of the October 12, 2004 Memorandum is attached hereto as Exhibit F).

45.     Indeed, commencing in late October, 2004 WAM continued to press Hoffmann regarding the status of KT, and its purchase of Kotva shares (which would be necessary for KT to file the second lawsuit against Kotva).  For example, on October 20, 2004, WAM sent an e-mail to Hoffmann stating:  "Any news regarding registration of the shares in KT?"  WAM sent Hoffmann the same message a day later:  "Please, keep me updated on the status of KT registration with the Securities Center."  (KT had to open an account at the Securities Centre before KT could purchase any Kotva shares.)  In that same e-mail, WAM states:  "We can show that if they [Kotva] do not settle with us, their cost of financing will be very high; and they will pay most of this increased cost since we have only 11% of the shares" and "If they [Kotva] do not settle, they will be able to realize the value of the property only in several years, which will be diminished by the discount rate and discounted probability of winning the lawsuits."

46.     Internal e-mails also confirm that Weiss and WAM were financing the Gilroy and KT actions.  For example, by an internal e-mail dated October 25, 2004, Hoffmann states to Weiss, "If we let this opportunity go by, we will have no options except to pursue the lawsuits with very uncertain results to occur a very long time in the future at a large expense to BGO [Brookdale ]."

47.     In November 2004, a rift developed between Hoffmann and Weiss relating to the "negotiation" strategy with Kotva.  In a November 25, 2004 memorandum, Weiss offered a settlement to Hoffmann, which included the provision that "BGO [Brookdale] shall purchase your company Gilroy from you."  (A true copy of the November 25th memorandum is attached hereto as Exhibit G).

48.     In short, there is overwhelming evidence that the Weiss Defendants used Gilroy and KT to file actions against Kotva <u>not</u> to adjudicate any rights of those nominal shareholders, but rather to interfere with the Shopping Centre sale and shake down Kotva for millions of dollars.  As part of the criminal investigation of Weiss, the Czech authorities obtained court approval for wiretaps and recorded numerous conversations involving Weiss and his agents. Those recorded conversations, which have been made available to Weiss and Kotva in the Czech Republic, leave no doubt that the Defendants intended to blackmail Kotva, including descriptions by Weiss' own employees and agents of their demands to Kotva as "blackmail."

## Count I
### (intentionally omitted)

49.     Intentionally omitted.

50.     Intentionally omitted.

51.     Intentionally omitted.

52.     Intentionally omitted.

53.     Intentionally omitted.

54.     Intentionally omitted.

## Count II

### (intentionally omitted)

55.     Intentionally omitted.

56.     Intentionally omitted.

57.     Intentionally omitted.

58.     Intentionally omitted.

59.     Intentionally omitted.

60.     Intentionally omitted.

61.    Intentionally omitted.

62.    Intentionally omitted.

63.    Intentionally omitted.

64.    Intentionally omitted.

65.    Intentionally omitted.

66.    Intentionally omitted.

67.    Intentionally omitted.

68.    Intentionally omitted.

## **Count III**

### **(intentionally omitted)**

69.    Intentionally omitted.

70.    Intentionally omitted.

## **Count IV**
### **(Violations of M.G.L. c. 93A)**

71.    Kotva and SPV Co. repeat, reallege, and incorporate by this reference the allegations contained in the preceding paragraphs.

72.    At all relevant times Plaintiffs and the Weiss Defendants were engaged in trade or commerce within the meaning of M.G.L. c. 93A.

73.    By their unfair and deceptive actions described above, the Weiss Defendants violated M.G.L. c. 93A §§ 2, 11.

74.    Defendants' unfair and deceptive actions occurred primarily and substantially in Massachusetts.

75.    The Weiss Defendants' actions were performed willfully and knowingly.

76.     As a direct and proximate result of the Weiss Defendants' unfair and deceptive practices, Kotva and SPV Co. have suffered damages in an amount to be proven at trial.

**Count V**
**(Abuse of Process)**

77.     Kotva repeats, realleges, and incorporates by this reference the allegations contained in the preceding paragraphs.

78.     The Weiss Defendants utilized process with the filing of the Gilroy and KT actions.

79.     The Gilroy and KT actions were filed for the improper purpose of forcing Kotva to purchase the Brookdale shares in Kotva and Trend at an exorbitant amount, and was unrelated to any purported rights of the nominal shareholders, Gilroy and KT.

80.     In short, the process was used for an ulterior purpose for which it was not designed or intended (i.e. to force the purchase of the Brookdale shares).

**Count VI**
**(intentionally omitted)**

81.     Intentionally omitted.

82.     Intentionally omitted.

83.     Intentionally omitted.

**Count VII**
**(Tortious Interference with Advantageous Relations)**

84.     Kotva and SPV Co. repeat, re-allege, and incorporate by reference the allegations contained in the preceding paragraphs.

85.     As detailed above, Kotva had advantageous business relations with the Irish investors.

86.     As detailed above, the Weiss Defendants have interfered with Plaintiffs'

advantageous business relations.

87.     As a result, Kotva and SPV Co. have suffered damages in an amount to be proven

at trial.

REQUESTS FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

A.     Enter judgment in favor of plaintiffs and against defendants on Counts IV, V and VII of the Complaint and award damages in an amount to be determined at trial;

B.     Under Count IV, award plaintiffs multiple and/or treble damages, attorney's fees and costs; and

C.     Award such other relief as the Court deems just and proper.


**PLAINTIFFS HEREBY REQUEST A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**


KOTVA, A.S. AND SPV CO.

By their attorneys,


/s/ Joel G. Beckman
Joel G. Beckman BBO#553086
William C. Nystrom BBO#559656
Daniel J. Pasquarello BBO# 647379
Nystrom Beckman & Paris LLP
10 St. James Ave., 16th Floor
Boston, Massachusetts 02116
(617) 778-9100
Dated: May 2, 2007        (617) 778-9110 (fax)

# EXHIBIT A

FROM : NORMAN                    FAX NO. : 5088278769              Aug. 16 2004 12:40AM P2



WEISS ASSET MANAGEMENT

**PRIVATE AND CONFIDENTIAL**

August 16th, 2004

To: Martin Benda
From: Andrew Weiss,
Weiss Asset Management

August 17, 2004

Dear Mr. Benda

Based on our previous correspondence and based on your request we herewith submit our counter-offer to sell you the shares of Kotva held by Brookdale Opportunity Fund (BGO).

Conditions of the offer:

1. We offer to sell the 82,781 shares of Kotva held by BGO for a purchase price of 131 million CZK, no additional obligations or restrictions are placed on either the buyer or seller.
2. This offer expires on August 31, 2004.

Sincerely yours,

Andrew Weiss

29 Commonwealth Avenue • Boston • Massachusetts • 02116
Phone: (617) 778-7780 • Fax: (617) 778-7781 • E-mail: info@weissasset.com

Received  Aug-17-04  12:08am       From-5088278769            To-Weiss Asset Management      Page 002

# EXHIBIT B



**PRIVATE AND CONFIDENTIAL**
Without Prejudice

August 23rd, 2004

To:  Martin Benda, Richard Harazim
From: Andrew Weiss, Weiss Asset Management


Dear Mr. Benda and Mr. Harazim,

Based on our previous correspondence and based on your request we herewith submit our
counter-offer to sell you 82,771 shares of Kotva, a.s.

Conditions of the offer:

1. We offer to sell you 82,771 shares of Kotva for a total consideration of 131
   million CZK.
2. We will attempt to influence Gilroy to withdraw the complaint questioning
   ownership of assets by Kotva, a.s. Since we do not exert control over Gilroy and
   Balfindor or petitions submitted by them, we cannot guarantee a withdrawal of
   the complaint. The sale agreement shall be conditional on withdrawal of the
   existing lawsuit where Gilroy is the plaintiff.
3. We provide a guarantee that no legal or physical entities controlled by us will
   initiate attacks against the ownership or transfer of KOTVA Department Store.
4. This offer expires on August 31st.

Please, note that this is a non-binding offer, which will be subject to contract.
We will be looking forward to your reply.


Sincerely yours,
Andrew Weiss


Signed by Georgiy Nikitin on behalf of Andrew Weiss:


Georgiy Nikitin

---

29 Commonwealth Avenue • Boston • Massachusetts • 02116
Phone: (617) 778-7780 • Fax: (617) 778-7781 • E-mail: info@weissasset.com

# EXHIBIT C



# WEISS ASSET MANAGEMENT

**PRIVATE AND CONFIDENTIAL**
Without Prejudice

November 23, 2004

To: Martin Benda, Richard Harazim
From: Andrew Weiss, Weiss Asset Management

Dear Mr. Benda and Mr. Harazim,

Based on our previous correspondence and based on your request we herewith submit our counter-offer to sell you all our holdings in Kotva, a.s. (82,782 shares or 11.92%) and Trend VIF (1,098,617 shares or 39.73%)

Conditions of the offer:

1.  We offer to sell you 82,782 shares of Kotva and 1,098,617 shares of Trend for a total consideration of 295.75 million CZK (our computations are detailed in Appendix A).
2.  We will attempt to influence Gilroy and Balfindor to withdraw the complaint questioning ownership of assets by Kotva, a.s. Since we do not exert control over Gilroy and Balfindor or petitions submitted by them, we cannot guarantee a withdrawal of the complaint. The sale agreement shall be conditional on withdrawal of the existing lawsuits where Gilroy and Balfindor are the plaintiffs.
3.  We provide a guarantee that no legal or physical entities controlled by us will initiate litigation against the ownership or transfer of Kotva, a.s. shares, KOTVA Department Store, or Kotva subsidiaries.
4.  This offer expires on December 10, 2004.

Please, note that this is a non-binding offer, which will be subject to contract.
I am looking forward to your reply. Please contact me directly.

Sincerely yours,

Andrew Weiss

---

29 Commonwealth Avenue · Boston · Massachusetts · 02116
Phone: (617) 778-7780 · Fax: (617) 778-7781 · E-mail: info@weissasset.com

## Appendix A. Valuation of BGO holdings of Kotva and Trend

BGO holdings: 1,098,617 shares of Trend (39.73%) and 82,782 shares of Kotva (11.92%).

### Estimated value of Kotva:
Assets = CZK 1.7 billion (value of the Kotva Department Store building)
Estimated Liabilities = CZK 0.3 billion
Net Asset Value of Kotva = CZK 1.4 billion
**BGO's share of Kotva's NAV = CZK 167 million**

### Estimated value of Trend:
**Scenario 1:**
Assets:
Kotva shares held in Forminster and Melodia to be sold to Mr. Woolf: 277,036 shares (as per Paragraph 101 of London Court of International Arbitration Case No. 0250 decision that those shares legally belong to Trend) at CZK 1,350 per share (the option strike price from the agreement with Mr. Woolf) = CZK 373,998,600; receivable with 80% probability: CZK 283,198,880.
Other assets, including undisputed shares of Kotva and claim for 327 237 shares in Sokolovska Uhelna = CZK 35 million
Estimated Liabilities = CZK 45 million
Net Asset Value of Trend = CZK 273,198,880
**BGO's share of Trend's NAV = CZK 108.5 million**


**Scenario 2:**
Assets:
Penalty payable under Moffitt-Forminster agreement = CZK 350 million plus interest (10% per annum) = CZK 559 million.
Other assets, including undisputed shares of Kotva and claim for 327 237 shares in Sokolovska Uhelna = CZK 35 million
Total Assets = CZK 594 million
Estimated Liabilities = CZK 110 million (CZK 45 million as above plus CZK 65 million for Moffitt's claim) plus the CZK 109 million awarded by the London Court of International Arbitration Case No. 0250 decision.
Total Estimated Liabilities = CZK 219 million.
Net Asset Value of Trend ≈ CZK 375 million
**BGO's share of Trend's NAV = CZK 149 million**


The total price for the assets is the value of Kotva shares plus the average of the Trend value under the two valuation scenarios = CZK 295.75 million

29 Commonwealth Avenue • Boston • Massachusetts • 02116
Phone: (617) 778-7780 • Fax: (617) 778-7781 • E-mail: info@weissasset.com

# EXHIBIT D

# PETERKA & PARTNERS v.o.s.

~~~~cial Register: Municipal Court in Prague
~~~~n A, Enclosure 42561

~~~~ess Identification Number: 26 16 97 20

Law Offices
Na Příkopě 15/583, 110 00 PRAHA 1
TEL. :   (420) 272 143 400, 246 085 300
FAX :    (420) 272 143 470, 246 085 370

www.cabinet.cz

E-mail of October 18, 2004

| | | |
|---|---|---|
| From: | Ondrej Peterka | peterka@cabinet.cz |
| To: | Andrew Weiss | AWeiss@WeissAsset.com |
| Cc: | Georgiy Nikitin | georgiy@weissasset.com |
| | Eitan Milgram | eitan@weissasset.com |
| | Ing. Vladimir Hoffmann | vladol@volny.cz |
| Re: | KOTVA / TREND | |

Dear Andrew,

Today I had together with Mr. Hoffmann a meeting with Messrs Benda and Harazim of KOTVA and Mr. Prestage representing the prospective Irish buyers of KOTVA Department Store. I would like to inform you in brief about the basic points we discussed.

At the beginning the representatives of KOTVA confirmed that they are willing to purchase the whole of BGO's stake in KOTVA for CZK 131 million. We responded that the offer of BGO for the sale of these shares contained in your letter of August 23, 2004 expired on August 31, 2004. We told them that we will get in touch with you in order to receive your instructions.

The representatives of KOTVA further stated that their condition for purchasing the shares is the withdrawal of certain initiated lawsuits. They did not specify in detail what lawsuits they want to be withdrawn. We may assume that the representatives of KOTVA were today still unaware of the new lawsuits initiated by Gilroy last Friday that concerned the shares in KOTVA held by Forminster/bankruptcy trustee of SPRINT.

Messrs Benda and Harazim then stated that the buyer of the shares is to be KOTVA, a.s. and Mr. Prestage declared that the Irish investors are prepared to finance this acquisition. As we have already stated in our e-mail of August 31, 2004 we consider it as being risky to sell shares to KOTVA, a.s., or to any of its subsidiaries.

The representatives of KOTVA further stated that a bank providing operational financing to KOTVA (a loan in the amount approx. CZK 200 million due at the end of this year) is

PETERKA & PARTNERS v.o.s.

concerned about the pending lawsuit on the declaration of ownership to the KOTVA Department Store and is reluctant to extend this loan. In our opinion they seemed to derive liability of Gilroy for damages suffered by KOTVA as a consequence of the lawsuit.

We suggest setting up a conference call tomorrow and discussing these issues in detail.

Best regards,

Ondrej

# EXHIBIT E

**Professor Andrew Weiss's statement at video press conference scheduled for Tuesday, March 15, 2005**

I'm Andrew Weiss, the Chief Investment Officer of Weiss Asset Management, which manages BGO, a fund that has invested in KOTVAa.s. and TREND IF. I have also been a professor of economics at Boston University and Columbia University for over 25 years.

Weiss Asset Management specializes in investing in international markets. BGO has invested in Czech companies and acquired approximately 40 per cent of the shares in the TREND Investment Fund and 12 per cent of the shares in KOTVA.

We all know from the media the history of the TREND case. The Czech police have charged former members of Trend's management with embezzling approx. 1 billion Czech Crowns from TREND in 1995 and 1996.

The most valuable assets that were embezzled from TREND were shares in KOTVA as. After a complicated chain of transactions these shares ended up being bought by a Cyprus company known as FORMINSTER ENTERPRISES Ltd. for a ridiculously low price. TREND was not able to survive the tunneling of its KOTVA shares and went bankrupt in 2000.

In response to these facts, in 1997, the public prosecutor froze all of the KOTVA shares held by FORMINSTER, which represent 56 per cent of the company. These shares are still frozen. KOTVA is, however, still controlled by management that FORMINSTER installed. Richard Harazim and Martin Benda were the key members of FORMINSTER and now are the key persons in charge of KOTVA. But no one seems to know who are the real owners of FORMINSTER. Even Richard Harazim claims to not know who owned the shares of the company on whose board he served, and on whose behalf he negotiates. The ownership of FORMINSTER should not be a mystery, but it is.

KOTVA's only valuable asset was a property – a department store – in the center of Prague worth more than CZK 1.5 billion. Over the past few years, the management of KOTVA as who was appointed by FORMINSTER has created a complicated structure of subsidiaries and several times transferred the ownership of the department store. As a consequence of these transfers, KOTVA and its shareholders lost direct control over the department store. As an economist I can't see any economic justification for these transactions, and no explanation was ever offered to KOTVA shareholders. The only effect seems to be to hide the identity of the people who will benefit from the sale of KOTVA's assets.

I think the shareholders of KOTVA a.s. have a right to know who is going to benefit from the sale of KOTVA's assets.

I have a fiduciary responsibility to protect the interests of BGO and its investors. Therefore I had no choice but to instruct my lawyers to take appropriate legal actions. The main goals of the petitions that my lawyers filed in the Czech courts are very simple – to return the assets of KOTVA and TREND that were transferred to other entities, especially to return shares of KOTVA currently held by FORMINSTER back to TREND and to place the department store back under the control of KOTVA a.s. and its shareholders.

On February 4, 2005, the Czech Press Agency published a story saying that my former Czech associate was charged by the police with blackmailing KOTVA and that charges against me are imminent. I was in shock. I'm 58 years old, and have ever been accused of any form of misconduct – no less charged with a serious crime. My wife and children can't believe this is happening to me. None of my employees have ever been accused of misconduct. My employees are told before that they are hired that they will be held to the highest ethical standards, that they should never do anything that they would not be proud to have their children to learn about.

I still have not received an official notification about the inception of a criminal proceeding against me, so I can't even find out what I'm being accused of – of course there is the hope that charges are not going to be brought. I even learned from the media that all of the shares in KOTVA owned by BGO were frozen by the prosecutor in relation to these criminal proceedings. This prosecution is absurd and can only be based on false accusations by people linked to FORMINSTER.

In the past few days, announcements were published that a group of Irish investors bought the real property of the KOTVA Department Store. They should understand that we will not stop our efforts to protect our rights as shareholders. How can they honestly claim they are unaware of the suspicious circumstances of the transfers of assets of TREND and KOTVA.

Investors all over the world go to court and seek legal protection of shareholders' rights. I don't think anyone in the world has ever been prosecuted for doing this. Is the Czech Republic going to be the first country to prosecute an investor for petitioning the courts to protect his rights? The people responsible for transferring TREND's assets have not been punished. No one has ever given justice to TREND and its shareholders. I think the criminal charges against my former associate and the threat of bringing charges against me serve only one purpose, and that is to discourage me from protecting BGO's investment in TREND and KOTVA. The prosecution of me only facilitates the deprivation of all minority shareholders of their assets.

The actions that are being taken against me are clear violations of the Czech – U.S. Bilateral Investment Treaty. Under this Treaty the Czech authorities are obliged to guarantee full protection and security to U.S. investments and to provide effective means of enforcing rights with respect to investment. Contrary to this, the criminal prosecution is designed to pressure me to drop the lawsuits and enable FORMINSTER to take all of the sale proceeds. I am outraged that a Czech prosecutor has violated the treaty obligations in order to help people behind FORMINSTER take money that belongs to the shareholders of KOTVA and TREND.

**Úvodní slovo prof. Weisse na tiskové videokonferenci 15. března 2005**

Jmenuji se Andrew Weiss a jsem vrchním investičním ředitelem společnosti Weiss Asset Management, která spravuje investiční fond BGO. Ten investoval mimo jiné i do akciové společnosti Kotva a do investičního fondu Trend IF. Současně jsem již více než 25 let profesorem ekonomie na Boston University a Columbia University.

Společnost Weiss Asset Management se specializuje na investování na mezinárodních trzích. Fond BGO investoval i do českých podniků a společností. V investičním fondu Trend získal přibližně 40 % akcií a ve společnosti Kotva necelých 12 %.

Jak probíhal případ Trend, víme všichni z médií. Policie ČR obvinila bývalé členy managementu fondu Trend za jeho vytunelování v hodnotě přibližně 1 miliardy korun v letech 1995 až 1996.

Mezi nejcennější zcizená aktiva fondu Trend patřily akcie společnosti Kotva a.s. Po komplikovaném sledu nejrůznějších transakcí koupila tyto akcie za směšně nízkou cenu kyperská společnost známá pod názvem Forminster Enterprices Ltd. Investiční fond Trend toto vytunelování svých akcií ve společnosti Kotva nepřežil a v roce 2000 zbankrotoval.

V reakci na tyto události zajistil v roce 1997 státní zástupce 56 % akcií společnosti Kotva, které se tehdy nacházely v držení společnosti Forminster. Tento stav dosud platí. Přesto je však společnost Kotva ovládána managementem dosazeným společností Forminster. Richard Harazim a Martin Benda byli klíčovými členy vedení společnosti Forminster a nyní jsou klíčovými osobami, které ovládají společnost Kotva. Zdá se však, že nikdo neví, kdo je skutečným vlastníkem společnosti Forminster. Dokonce i sám Richard Harazim tvrdí, že neví, kdo vlastní akcie ve společnosti, v jejímž vedení působí a jejímž jménem jedná. Vlastnictví společnosti Forminster je stále, ač by nemělo, zahaleno tajemstvím.

Jediným cenným aktivem společnosti Kotva byla nemovitost v centru Prahy - stejnojmenný obchodní dům - v hodnotě přesahující 1,5 miliardy korun. V minulých letech vytvořilo vedení společnosti Kotva dosazené Forminsterem komplikovanou síť dceřiných společností, v jejichž rámci došlo několikrát ke změně vlastnictví obchodního domu. Jako ekonom nespatřuji žádné opodstatnění pro takové transakce. A navíc akcionáři společnosti Kotva nikdy neobdrželi žádné vysvětlení. Zdá se, že jediným cílem všech těchto operací bylo zatajení identity lidí, kteří mají mít prospěch z prodeje aktiv společnosti Kotva.

Jsem však přesvědčen, že akcionáři společnosti Kotva mají plné právo se dozvědět, komu poplynou výnosy z prodeje jejích aktiv.

Jsem odpovědný za ochranu zájmů fondu BGO a investorů, které sdružuje. Neměl jsem tedy jinou možnost než vydat instrukce svým právníkům, aby zahájili příslušné kroky. Smysl dosud jimi podaných žalob u českých soudů je zřejmý. Jde o navrácení aktiv společnosti Kotva a investičního fondu Trend, které byly převedeny na jiné subjekty. Zejména se jedná o vrácení akcií společnosti Kotva, které jsou nyní v držení společnosti Forminster, zpět do fondu Trend a o navrácení obchodního domu pod kontrolu společnosti Kotva a jejích akcionářů.

ČTK oznámila 4. února 2005, že jeden z mých bývalých českých spolupracovníků byl Policií ČR obviněn z vydírání společnosti Kotva, a že obvinění mé osoby může bezprostředně následovat. Byl jsem šokován. Je mi 58 let a dosud jsem nikdy nebyl obviněn z žádného přestupku, natož ze závažného trestního činu. Má rodina nemůže uvěřit, že něco takového by mohlo potkat právě mě. Ani žádný z mých spolupracovníků nikdy nebyl obviněn z jakéhokoli porušování svých zákonných povinností. Již při jejich výběru je jim řečeno, že při výkonu práce musejí dodržovat ty nejpřísnější etické standardy a nikdy nesmějí udělat nic, za co by se museli stydět, kdyby se to dozvěděly jejich děti.

Žádné oficiální vyrozumění o zahájení trestního stíhání jsem dosud neobdržel. Proto nemohu ani zjistit, v čem má mé obvinění spočívat. Samozřejmě doufám, že k ničemu takovému vůbec nedojde. Z českých médií jsem se dokonce dozvěděl, že veškeré akcie ve společnosti Kotva v držení fondu BGO byly státní zástupkyní zajištěny právě v souvislosti s probíhajícím trestním řízením. Jde o zcela absurdní postup, který může být zcela jistě založen jen na nepravdivých obviněních ze strany lidí napojených na společnost Forminster.

V minulých dnech se v médiích objevily informace, že nějaká skupina irských investorů koupila nemovitosti OD Kotva. Měli by však vzít na vědomí, že v našich snahách hájit vlastní akcionářské zájmy neustaneme. Nedokážu si představit, že by mohli čestně tvrdit, že jim nejsou známy podezřelé okolnosti převodů aktiv investičního fondu Trend a společnosti Kotva.

Všude na světě se investoři obracejí na soudy, aby se domáhali ochrany svých akcionářských práv. Není mi znám ani jeden případ, že by kdekoli na světě byl někdo za takový postup trestně stíhán. Bude tedy Česká republika první zemí na světě, která bude stíhat investora za to, že se obrátil na soud kvůli ochraně svých práv? Lidé, kteří vytunelovali Trend potrestáni nebyli. Zdá se, že Trend ani jeho akcionáři se dosud nedočkali spravedlnosti. Jsem přesvědčen, že trestní stíhání mého bývalého spolupracovníka i vyhrůžka, že budu obviněn já sám, slouží pouze jedinému účelu: odradit mě od ochrany investice BGO jak v investičním fondu Trend, tak ve společnosti Kotva. Trestní stíhání vedené proti mně má zcela evidentně umožnit úplné pošlapání zájmů minoritních akcionářů.

Je zjevné, že kroky, které jsou v současné době vůči mé osobě v ČR činěny, jsou zřejmým porušením bilaterální česko-americké Úmluvy o vzájemné podpoře a ochraně investic. Podle této Úmluvy jsou orgány ČR povinny zajistit nejen úplnou ochranu a bezpečnost amerických investic, ale také musejí zajistit efektivní průchod práva. V přímém rozporu s těmito povinnostmi mě má trestní stíhání mé osoby donutit, abych stáhl podané žaloby. Současně jsem však pobouřen tím, že český státní zástupce si dovoluje porušit závazky plynoucí z Úmluvy, aby umožnil lidem stojícím za společností Forminster přivlastnit si peníze, které po právu patří akcionářům společnosti Kotva a investičního fondu Trend.

# EXHIBIT F

# PETERKA & PARTNERS v.o.s.

Commercial Register: Municipal Court in Prague
Section A, Enclosure 42561

Business Identification Number: 26 16 97 20

Law Offices
Na Příkopě 15/583, 110 00 PRAHA 1
TEL. :    (420) 272 143 400, 246 085 300
FAX :    (420) 272 143 470, 246 085 370

www.cabinet.cz

E-mail of October 12, 2004

From:  Ondrej Peterka                    peterka@cabinet.cz

To:    Andrew Weiss                      AWeiss@WeissAsset.com

Cc:    Georgiy Nikitin                   georgiy@weissasset.com

       Eitan Milgram                     eitan@weissasset.com

       Ing. Vladimir Hoffmann            vlado1@volny.cz

Re:    KOTVA / TREND

_____

Dear Andrew,

Today we have finalized the petition for the withdrawal of 384 971 shares in KOTVA held by Forminster from the bankrupt's assets of SPRINT, a.s. The arguments we are using in this petition are similar to the arguments we have already used in the petition for a declaration that the owner of 212 935 shares in KOTVA is TREND (a translation of this petition we have already sent to you).

As agreed the petition will be submitted on behalf of GILROY and later KT Inc. will join GILROY as another plaintiff. As we already informed you before that the standing of both GILROY and KT Inc. is very problematic since they derive it from the fact that they are shareholders of TREND. The previous court rulings have so far acknowledged only the standing of a previous owner to submit such a petition.

We have broadened the subject matter of the petition to include all shares in KOTVA held by Forminster even if they were not previously in the ownership of TREND. Please note that with respect to the above mentioned rulings the prospect of success as regards the difference between the total number of shares of Forminster in KOTVA (384 971) and the number of shares previously in the ownership of TREND (212 935) is only limited one.

The immediate effect of this petition is that it prevents the bankruptcy trustee from further transferring shares. This restriction on the transferability of the shares is valid as long as the court has not finally decided about the petition, which may take several years. In the meantime it is necessary that BGO assumes control over TREND and TREND joins the petition or submits a new petition in its own name.

we will announce the submission of the petition to the bankruptcy trustee. At the same time we will ask the court to enable us to access the court file kept in the bankruptcy proceedings of SPRINT. We hope we will in this way acquire information now only guess at. the bankruptcy trustee seized the shares held by Forminster, which we can

At the same time we will submit the petition for a declaration that TREND is the owner of 212 935 shares in KOTVA. In this context we would like to respond to the suggestions contained in the e-mail of Mr. Nikitin of September 20, 2004 as regards paragraph 4.6 of the petition. Under Czech law the fact that Forminster did not pay the settlement amount does not make the settlement agreement void. The same applies even if Forminster intended from the beginning not to pay the settlement amount. Under the circumstances this fact may entitle Trend to withdraw from the settlement agreement. This is, however, possible only within a certain statutory limit that has already elapsed.

Please confirm to us that you agree with these steps.

As regards the envisaged settlement between the companies of Mr. Woolf, the bankruptcy trustee of TREND and Suringham Enterprises Ltd. we will provide you with our opinion tomorrow after we visit the court in Prague and inspect the files on the disputed claims of Mr. Woolf towards TREND.

Best regards,


Ondrej Peterka

# EXHIBIT G

| | |
|---|---|
| : | "Andrew Weiss" <AWeiss@WeissAsset.com> |
| omu: | "Vladimir Hoffmann" <vlado@anezska10.cz>; <vlado1@volny.cz> |
| Kopie: | "Georgiy Nikitin" <georgiy@weissasset.com>; "Eitan Milgram" <eitan@weissasset.com> |
| Odesláno: | 25. listopadu 2004 7:49 |
| Přílojít: | AW letter to Hoffmann 11-25-04.doc |
| Předmět: | AW letter to Hoffmann 11-25-04.doc |

PRIVATE AND CONFIDENTIAL
WITHOUT PREJUDICE

November 25, 2004

To:   Vladimir Hoffmann
From:  Andrew Weiss, Weiss Asset Management

Dear Vlado,

I have been considering your long-term attitude to the Trend and Kotva case solution:

To summarize, it consists of an effort to persuade BGO to agree to a settlement as soon as such an opportunity arises and at a price close to whatever the counter-party is willing to offer. The arguments you are using to convince BGO of the execution of the settlement are always the same: you always argue that it is better to execute the settlement under the conditions offered by the counter-party at any given moment, since you have always considered any possible enforcement of BGO's position for further negotiations (not speaking of the potential success of the court proceedings leading to the recovery of the assets stolen from Trend) as highly improbable.

It was only the determination of BGO and its disregard of your advice that resulted in the counter-party's settlement offer having grown gradually up to 5-times higher since the spring of this year.

I conclude from the above that your willingness of undergoing an increased risk under the possible promise of a higher gain has always been rather small.

Therefore I believe that it would be better, both for you and for BGO, to finally and conclusively settle our mutual relations.

Without trying to make any judgment on the preceding cooperation between you and BGO, I've decided to offer the following solution to you:

(i)   BGO shall purchase your company Gilroy from you;
(ii)  Balfindor and you personally shall retract the petitions under the hearing, which relate to the case of Trend and Kotva;
(iii) Neither you nor any persons connected to you shall at any point of time in the future commence any further lawsuits relating to the case of Trend and Kotva; neither shall you cooperate with anybody in connection to this case in the future;
(iv)  BGO shall pay to you, as the final settlement of all legal relations concerning the case of Trend and Kotva, the amount of $225,000; $100,000 to be paid immediately upon your compliance with the terms of this offer and $100,000 to be paid at the time at which BGO gets the money from tendering its position in Harvard Holdings. An additional $25,000 will be paid when BGO sells its Kotva shares. This final payment will be conditional on your cooperation up until that date.
(v)   BGO is authorised to request from you *ad hoc* services in relation to the case of Trend and Kotva with no further financial consideration.

Please, note that this is a non-binding offer to be subject to a contract.

Georgiy and I will be checking my email today and tomorrow for your reply.

Best regards,

Andrew Weiss
Weiss Asset Management

This email is confidential and is intended solely for the addressee(s). If you are not an addressee, you must not disclose, copy, circulate or in any other way use or rely on the information contained in this email. If received in error, please notify the sender immediately and then delete this email. Any disclosure, copying, distribution or use of this communication is prohibited and may be unlawful.

s or opinions expressed do not necessarily represent those of Weiss Asset Management or any affiliated companies. Please
the content of this e-mail may be intercepted, monitored or recorded for compliance purposes. Sensitive personal data should
ally be transmitted by e-mail.

Asset Management or any affiliated companies shall not be liable to the recipient or any third party for any loss or damage
ever arising from this e-mail and/or its content, including loss or damage caused by virus. It is the responsibility of the recipient to
e that the opening or use of this message and any attachments shall not adversely affect systems or data.

ss Asset Management
Commonwealth Avenue
oston, MA 02116
EL: (617) 778-7780
FAX: (617) 778-7781
www.weissasset.com

PRIVATE AND CONFIDENTIAL
WITHOUT PREJUDICE

November 25, 2004

To:   Vladimir Hoffmann
From: Andrew Weiss, Weiss Asset Management

Dear Vlado,

I have been considering your long-term attitude to the Trend and Kotva case solution:

To summarize, it consists of an effort to persuade BGO to agree to a settlement as soon as such an opportunity arises and at a price close to whatever the counter-party is willing to offer. The arguments you are using to convince BGO of the execution of the settlement are always the same: you always argue that it is better to execute the settlement under the conditions offered by the counter-party at any given moment, since you have always considered any possible enforcement of BGO's position for further negotiations (not speaking of the potential success of the court proceedings leading to the recovery of the assets stolen from Trend) as highly improbable.

It was only the determination of BGO and its disregard of your advice that resulted in the counter-party's settlement offer having grown gradually up to 5-times higher since the spring of this year.

I conclude from the above that your willingness of undergoing an increased risk under the possible promise of a higher gain has always been rather small.

Therefore I believe that it would be better, both for you and for BGO, to finally and conclusively settle our mutual relations.

Without trying to make any judgment on the preceding cooperation between you and BGO, I've decided to offer the following solution to you:

(i)    BGO shall purchase your company Gilroy from you;
(ii)   Balfindor and you personally shall retract the petitions under the hearing, which relate to the case of Trend and Kotva;
(iii)  Neither you nor any persons connected to you shall at any point of time in the future commence any further lawsuits relating to the case of Trend and Kotva; neither shall you cooperate with anybody in connection to this case in the future;
(iv)   BGO shall pay to you, as the final settlement of all legal relations concerning the case of Trend and Kotva, the amount of USD 225,000 $100,000 to be paid immediately and $100,000 to be paid at the time at which BGO gets the money from tendering its position in Harvard Holdings. According to you we should receive this money in the middle of December. An $25,000 will be paid when BGO sells its Kotva shares. This final payment will be conditional on your cooperation up until that date.
(v)    BGO is authorised to request from you *ad hoc* services in relation to the case of Trend and Kotva with no further financial consideration.

Please, note that this is a non-binding offer to be subject to a contract.

I look forward to your reply by no later than December 1, 2004.

Best regards,

Andrew Weiss
Weiss Asset Management