UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| KOTVA a.s. and SPV Co., | ) ) | |
| Plaintiffs, | ) ) | Case No. 05-10679-WGY |
| v. | ) ) ) | |
| ANDREW WEISS and WEISS ASSET MANAGEMENT, LLC | ) ) ) | |
| Defendants and Counterclaimants, | ) ) ) ) | |
| v. | ) ) | |
| KOTVA a.s., SPV Co., and RICHARD HARAZIM | ) ) ) | |
| Counterclaim-Defendants | ) ) ) ) | |

**KOTVA'S OPPOSITION TO DEFENDANTS' MOTION TO INCLUDE
EXPERT WITNESS CONCERNING VALUATION AND LOSS OF BUSINESS**

**INTRODUCTION**

At the risk of sounding like a broken record, Defendants have overstated the Court's Orders in an attempt to expand the scope of this case. Despite the Court's May 1, 2007 Order, the Defendants again take the position that discovery, in this case expert discovery, has been reopened without limitation. But the Court's May 1 Order did not create a discovery free-for-all in which Defendants could re-plow whatever ground they wished.

Defendants now re-submit a previously denied motion to add Stephen Ross, Ph.D, as an expert witness. The proposed testimony from Dr. Ross, however, has nothing to do with the limited areas of additional discovery that the Court allowed following the April 4, 2007 pretrial

conference. Simply put, Defendants' motion was untimely in March and it is equally untimely now. Defendants could have and should have disclosed Dr. Ross before the original October 31, 2006 deadline.

As demonstrated below, the two areas for which Defendants seek testimony from Dr. Ross fall outside the limited additional discovery concerning counterclaims against SPV Co. Indeed, Defendants do not dispute that they submitted essentially the same motion in March, which was denied. Memorandum at 2. They also filed a motion for reconsideration, which was similarly denied. Order dated March 30, 2007. The areas of testimony from Dr. Ross that Defendants identify are: (1) whether the prices Weiss requested for CVF's Kotva and Trend shares were reasonable (valuation); and (2) what effect the lawsuit has had on Defendants' ability to obtain new business (damages). Neither subject matter pertains to new claims asserted against SPV Co. Plaintiffs should not be burdened with additional expense and additional discovery simply because Defendants' again want to expand the scope of this case.

## ARGUMENT

I.  **The Court has Limited Additional Discovery to Newly Asserted Counterclaims Against SPV Co.**

At the April 4, 2007 pretrial conference, the Court ruled that Defendants may reassert counterclaims against SPV Co. if it was added as a plaintiff. Following the conference, however, Defendants insisted that previously dismissed claims raised by previously dismissed parties had been reinstated. Plaintiff, on the other hand, viewed the Court's ruling as allowing the Defendants in the case, *i.e.*, Andrew Weiss ("Weiss") and Weiss Asset Management, LLC ("WAM"), to assert and reassert counterclaims against the newly-added plaintiff, SPV Co., and as limiting additional discovery accordingly.

On April 25, 2007, the parties submitted their competing views of the Court's ruling in a case management proposal. With respect to additional discovery, Plaintiffs stated:

> Plaintiff agrees to the preceding schedule for additional discovery <u>to the extent that discovery is tailored to the Defendants' reinstated counterclaims against SPV Co. only</u>. [FN: As discussed below, those counterclaims are limited to counts I and II of the counterclaim (abuse of process and conspiracy to abuse process by Weiss and WAM against SPV Co.). <u>Plaintiff does not agree that the Court intended to re-open discovery completely</u>. For example, as the Court noted during the conference with respect to Defendants' proposed valuation expert witness, Defendants need to renew their motion if they seek to add expert witnesses.]…
>
> Despite this history of extensive discovery, Defendants disagree that the additional discovery contemplated by the Court should be limited to their reinstated counterclaims against SPV Co. To the contrary, Defendants have taken the position that discovery is "wide open" in the wake of the April 4, 2007 conference, and that the Court intended to allow the parties to start discovery anew regarding every issue in the case. <u>Plaintiff, on the other hand, believes that the Court intended to allow Weiss and WAM to reassert their counterclaims against SPV Co. (Counts I and II) and to allow additional *necessary* discovery about only those claims. Any additional discovery, therefore, should be limited to claims Defendants asserted against SPV Co</u>.--which are the same claims that the Defendants asserted against Kotva, *i.e.*, counts I and II.…
>
> Kotva agrees that some additional discovery from SPV Co. is in order as a result of the Court's ruling on the motion for judgment on the pleadings, including written discovery directed to SPV Co., a 30(b)(6) deposition of SPV Co., <u>and perhaps expert discovery that pertains specifically to Weiss and WAM's reinstated counterclaims against SPV Co. for abuse of process and conspiracy to abuse process</u>. But Kotva does not believe that the Court intended to treat the past two years of discovery in this case merely as an expensive dress rehearsal for another four months of unlimited discovery, and to re-plow old ground.

Case Management Proposal at 2, 3-4, 6 (emphasis added). On May 1, 2007, the Court ruled on the case management proposal: "Plaintiff's View Of The Court's Order Is Correct <u>and Discovery Is Limited Accordingly</u>." (emphasis added).

Despite the Court's ruling, Defendants again seek to throw open the doors of discovery. The subject matters about which Defendants want to have Ross testify fall well outside the limitation proscribed by the Court's May 1 Order. Defendants have simply renewed a previously

3

denied motion. But nothing in the May 1 Order, or any other ruling since the April 4 conference, makes the instant motion appropriate.

## II.  The Proposed Testimony from Ross Does Not Relate to SPV Co.

The fact that Defendants sought to introduce the same expert testimony before SPV Co. was a party to this case confirms that the proposed testimony has nothing to do with the Defendants' reasserted counterclaims against SPV Co. The requested discovery, therefore, falls outside the parameters of the May 1 Order, and Defendants motion should again be denied.

### A.  The Proposed Share Valuation Testimony is of Marginal Relevance

This case is not about whether Weiss's <u>price</u> demands were "reasonable." Defendants' attempt to pigeon-hole the claims in this case as contingent upon "an allegedly extortionate price" is misleading at best. Memo. at 3. <u>This case is about the Defendants' attempts to blackmail and force Kotva into buying back a block of shares it had no obligation to purchase--at any price</u>. Weiss knew that Kotva had no obligation to buy back the shares at issue. Indeed, Weiss's Czech attorney recently admitted that point during his deposition in Prague. *See* Peterka Dep. Tr. at 85, attached hereto as Ex. 1. Nevertheless, Weiss demanded that Kotva purchase his shares or face the consequences of his interference with Kotva's business.[1] In other words, this case is <u>not</u> about share valuation and complex market factors, as the Defendants would have the Court believe. The jurors do not need to have "a Ph.D in economics or experience in the valuation of companies," as Defendants represented in their first motion on this subject. Indeed, blackmail is simple to understand.

---

[1] The scenario is akin to someone demanding that you buy a car from them for $200,000, even though you do not want to buy the car or have any obligation to do so. After you refuse to buy the car, the "seller" finds out you are in the process of selling your house and files a sham lawsuit challenging the title to your home, which he knows will interfere with your ability to sell the house. The "seller" then continues to pressure you to buy the car. Whether the "seller" demanded $200,000 or $20,000 is irrelevant. Whatever the price of the car, the "seller's" conduct is extortionate.

The only effect of Defendants' proposed expert testimony would be prejudice to Plaintiffs and confusion of the issues, not clarification. For example, based on the chronology of events submitted with the motion, Defendants intend to dredge up issues from 1995 that have nothing to do with the allegations in this case. Defendants' true intent, therefore, appears to be the introduction of a "credentialed" expert to parrot the claims of Czech market "corruption," which purportedly form the basis of Weiss's position. As described in Kotva's March 2006 motion to dismiss and Plaintiffs' motion to dismiss Restated Counterclaim counts III-VII, those historical allegations about Trend and spy-novel theories about the "Forminster Group" have nothing to do with the claims in this case.

Finally, Defendants will not be deprived of testimony on the subject without their new expert. Andrew Weiss certainly can testify about this subject. (See Weiss Answer to Interrogatory No. 20, dated July 24, 2006) (quoted below). Indeed, Mr. Weiss devised the valuations that allegedly supported his demands and sent them to Kotva in November 2004. It also appears that many of the issues Defendants seek to have Ross testify about are actually factual issues, such as the amount of times a stock was traded. *See* Memo. at 3.

### 1. There Have Been No New Developments that Warrant New Expert Discovery

From the outset of this case, Weiss has been alleging that his price demands were guided by independent valuations (which he has argued were reasonable), and not the market price for the shares (which he believes is irrelevant). In fact, Defendants knew about the market price/share valuation issue (for which they now seek to submit expert testimony) since the inception of the lawsuit.

> "Weiss enclosed with the new offer a detailed calculation supporting the valuation of BGO's holdings in both Kotva and Trend." Counterclaim ¶ 31 (**June 15, 2005**); see also Compl. Ex. C (Weiss's **Nov. 23, 2004** letter)

5

> "Due to lack of trading, the reputation of Forminster, and the questions about whether Forminster will be successful in looting Kotva's assets, **the market price for Kotva shares is irrelevant**. . . .Independent valuations of the Kotva and Trend shares guided Weiss's decision."

Weiss Defendants' Response to Interrogatory 20, **July 24, 2006** (emphasis added). In short, this is not a new issue. If Defendants wanted or needed an expert on this issue, they should have submitted an expert report in October 2006.

Under Fed. R. Civ. P. 37(c), moreover, there is no substantial justification for Defendants' failure to make timely disclosures in this case. This case is similar to Gagnon v. Teledyne Princeton, Inc., 437 F.3d 188, 197 (1st Cir. 2006) to the extent that the reason for Defendants' untimely disclosure can reasonably be described as "a miscalculated strategy topped by an inexcusable failure to observe a long-established deadline." Defendants have the burden of proving there was substantial justification for their failure. Alves v. Mazda Motor of Am., Inc., 448 F. Supp. 2d 285, 295 (D. Mass. 2006). They also have the burden of proving that their late disclosures are harmless. Id. They have done neither. Plaintiffs should not be forced to incur additional costs and fees and expend additional litigation resources for unnecessary expert witness discovery.

### B. The Proposed Damages Testimony is Also Untimely.

As with the valuation testimony, the proposed testimony regarding Defendants' damages is also beyond the scope of the Court's May 1 Order and untimely. Defendants designated only one expert in this case. They did not designate any expert on the subject of damages. To the contrary, in response to Plaintiff's damages interrogatory, Defendants identified Andrew Weiss and Georgiy Nikitin (a Weiss employee) as the witnesses who would testify about damages: "The basis for these damages calculations will be established through the testimony of Andrew Weiss and Georgiy Nikitin." Andrew Weiss's Second Supplemental Response to Kotva's First

Set of Interrogatories, Interrogatory No. 18, dated October 20, 2006. Defendants never supplemented or changed their interrogatory answer.

Defendants now try to add Dr. Ross on the issue of damages. See Ross Report at ¶¶ 19-20. Dr. Ross was not identified as part of Defendants' initial disclosures or discovery responses. Defendants cannot meet their burden of demonstrating substantial justification for their failure to disclose such information. Dr. Ross, therefore, should be barred as a "damages" witnesses.

### III.    The Disclosure of Ross as an Expert was Inexcusably Late

On March 14, 2007, new counsel for Weiss entered an appearance. After apparently reviewing the case, Defendants' new counsel seeks to make strategic changes in the defense:

> When defendants hired new co-counsel, he found the [share valuation] area incomprehensible and concluded that he did not believe a lay juror had a prayer of getting the evidence in this crucial area.

Defendants' March 14, 2007 Memo. at 5. Until March 2007, Defendants had been represented exclusively by counsel from one of the largest law firms in the world, who had aggressively litigated this case. Defendants' counsel certainly considered the extent to which expert testimony was necessary before designating and disclosing its one expert. An internecine disagreement over the sufficiency of the Defendants' evidence does not excuse the Defendants from failing to make timely expert disclosures. And it certainly does not justify imposing new costs, expenses, and distractions upon Plaintiff. The expert disclosure deadline in this case expired months ago, on October 31, 2006, when Defendants disclosed their one expert witness. In short, the May 1, 2007 Order did not give the Defendants *carte blanche* to designate expert witnesses that had no connection to the limited additional discovery in this case.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to add an expert should be denied in its entirety.

>Respectfully submitted,
>
>KOTVA, A.S., SPV CO.
>
>By their attorneys,
>
>/s/ Joel G. Beckman
>Joel G. Beckman (BBO# 553086)
>Daniel J. Pasquarello (BB0# 647379)
>NYSTROM BECKMAN & PARIS LLP
>10 St. James Ave., 16th Floor
>Boston, Massachusetts 02116
>(617) 778-9100
>(617) 778-9110 (fax)

Dated: May 31, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 31st day of May, 2007.

>/s/ Daniel J. Pasquarello

1

IN THE MATTER OF THE FOREIGN TRIBUNALS EVIDENCE ACT 1856
AND IN THE MATTER OF CIVIL PROCEEDINGS NOW PENDING BEFORE
THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
MASSACHUSETTS (CIVIL ACTION NO. 05-10679-RCL)

KOTVA a.s.

    Plaintiff

v.

ANDREW WEISS and WEISS ASSET
MANAGEMENT, LLC

    Defendants

Deposition of:

Mr. Ondrej Peterka

Taken at:
Courtroom No 126
District Court for Prague 1,
Ovocny trh 14

On: April 18th, 2007
Commencing at 9.00 am

|     |    |                                                                      |
| --- | -- | -------------------------------------------------------------------- |
|     | 1  | buy and sell some shares and that the discussion would              |
|     | 2  | be between Mr Harazim, Benda and Hoffmann. And if there             |
|     | 3  | is an agreement that there is that willingness, then                |
|     | 4  | what are the other terms of such transaction, what is               |
|     | 5  | the price, what are those lawsuits that possibly should             |
|     | 6  | be withdrawn, because should these be also lawsuits that            |
|     | 7  | pertain to the ownership structure of Kotva, then we                |
|     | 8  | wouldn't be speaking about a 12% block de facto but                 |
|     | 9  | a 40% block de facto. And this was what I expected that             |
|     | 10 | the discussion between Mr Benda and Mr Harazim and                  |
|     | 11 | Mr Hoffmann would centre on. And what we instead                    |
|     | 12 | witnessed was this somewhat bizarre monologue on the                |
|     | 13 | part of Mr Benda and Mr Harazim that was designed for               |
|     | 14 | the microphones and the police.                                     |
| 158 | 15 | Q.  To your understanding was Kotva obligated to                    |
|     | 16 | purchase -- to your understanding was Kotva obligated to            |
|     | 17 | purchase the 12% shares?                                            |
|     | 18 | A.  Certainly I didn't have this information but they               |
|     | 19 | still kept telling us that it is Kotva who has to, which            |
|     | 20 | has to buy their shares.                                            |
| 159 | 21 | Q.  To your understanding was Forminster obligated to               |
|     | 22 | buy the 12% shares of Kotva?                                        |
|     | 23 | A.  There was no such obligation with Forminster or                 |
|     | 24 | anybody else.                                                       |
| 160 | 25 | Q.  Mr Peterka, what is the last numbered exhibit                   |
|     | 26 | that you have in front of you, the ones that have been              |
|     | 27 | marked?                                                             |
|     | 28 | THE INTERPRETER:  These are my notes, he                            |
|     | 29 | says.                                                               |

*Gwen Malone Stenography Services Ltd.*