UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KOTVA a.s. and SPV Co,<br><br>    Plaintiffs,<br><br>v.<br><br>ANDREW WEISS and WEISS ASSET MANAGEMENT, LLC,<br><br>    Defendants.<br><br>ANDREW WEISS and WEISS ASSET MANAGEMENT LLC,<br><br>    Counterclaim-plaintiffs,<br><br>v.<br><br>KOTVA a.s., RICHARD HARAZIM and SPV Co,<br><br>    Counterclaim-defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   C.A. No. 05-10679-WGY<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

Kotva's management was looking for a scapegoat when they started down the road toward taking legal action in the Fall of 2004. They were concerned that they would be blamed if the proposed sale of Kotva's real estate and department store in Prague fell through. Exhibit 3, pp. 92–93 (attached to Statement of Undisputed Facts. However, the transaction succeeded.

After the parties met in Prague on May 12, 2004, the defendants allegedly caused minority shareholder suits to be brought in the Czech courts to protect shares in Kotva owned by

the defendants' beneficiaries. As this Court ruled in dismissing Defendants' Chapter 93A counterclaim, what is at issue was a private transaction.

Further, this Court refused to allow any counter claims brought by *defendants* which concern the Czech court system to proceed in America because they concern Czech law and policy. There is no dispute that Kotva, its real estate, the litigation concerning them, and the ultimate benefits from the sale of the real estate all concern the Czech Republic. Nor is there any dispute that Kotva sold its property to Markland at a more than adequate price, and that the proceeds are invested in the Czech Republic. For all of these reasons and those stated below, the Defendants' Motion for Summary Judgment brought now pursuant to this Court's Scheduling Order should be granted in full.

## STATEMENT OF UNCONTROVERTED FACTS

### A.    Matters in Litigation

On June 30, 2004, Gilroy, Ltd., a Cyprus company controlled by Vladimir Hoffman, who was affiliated at the time with the defendants as an independent contractor, brought a declaratory rights lawsuit against Kotva a.s. and other Kotva entities in a Court seated in Prague. *See* Ex. 1. In October, 2004, Gilroy brought additional lawsuits seeking that a Czech court declare that shares voted by Forminster, Kotva's controlling shareholder, were actually owned, not by Forminster, but by a Czech investment fund called Trend. In December, 2004 and February, 2005, K T, Inc., a Delaware corporation, controlled allegedly by the defendants, brought nearly identical lawsuits in the Czech courts against the same parties seeking the same relief.

The K T lawsuits, called hereinafter the "Czech lawsuits" or "Czech cases", are still pending and are being vigorously prosecuted and defended. Most concern the same allegations initially pleaded in the Gilroy cases, as follows: By 2002, Kotva a.s., the owner of the Kotva

Department Store and real estate, transferred the Department Store and real estate to a subsidiary called Kotva Nemovitosti (Nemovitosti means real estate in Czech). This purported transfer took place pursuant to actions taken at a general meeting of Kotva in 2002. Gilroy and K T claimed that the vote was improper because Forminster – the controlling shareholder - allegedly was not the true owner of Kotva shares because it had obtained those shares illegally from Trend. Ex. 1.

The case brought by Gilroy on June 30, 2004 sought a declaration that Kotva rather than another company, SPV KN, was the true owner of the real estate and Department Store. Importantly, Kotva and SPV KN were controlled by the same people. The later cases also sought similar declarations of rights. Thus, the Gilroy and K T lawsuits would not have prevented a sale of the property. Rather, they would have required a proper general vote of Kotva's shareholders, whomever they were, to approve any sale. Ex. 1.

At the time the June 2004 Gilroy case was commenced, Kotva's management was in negotiation to sell the department store and property to the subsidiary of an Irish property company, based in Dublin, but with an operation in Prague, named Markland Holdings Ltd., ("Markland" hereinafter). Kotva's Richard Harazim represented to Markland that the Gilroy case was baseless and sought to proceed ahead. Ex. 3, p. 83. Among the important matters left to be worked out was the exact form of the transaction, including who the seller would be, and the tax consequences. Ex. 3, pp. 50-56 Another was that a separate shareholder, James Woolf, a substantial property holder in Prague and a bitter minority shareholder of Kotva had commenced a series of cases and an international arbitration involving many of the same facts as those alleged in the Gilroy case. Woolf, an Englishman whose family is the controlling shareholder of Britain's largest drug company, had written an angry letter alleging criminal misconduct on the

3

part of Kotva and its largest shareholder to Markland and had even threatened to go to British law enforcement to commence an investigation into Markland's participation in the deal. Ex. 4.

In September, 2004, with the form of the transaction still not finalized, Markland informed Kotva's management that it was concerned enough about the lawsuits to consider withdrawing from the proposed transaction. Ex.3, p.86. Thereafter, Kotva's management swore out a criminal complaint against Andrew Weiss and Vladimir Hoffmann. Ex. 3, pp. 86, 90. Shortly thereafter, Kotva, SPV Co and the in-between partnership, Kotva Nemovitosti—all under the control of Richard Harazim and Martin Benda—met in contemplation of this case and decided that the "spoils," as it were, from proceeding against the defendants should be divided as they chose later. Ex. 2. Thus, it had apparently resolved as of that time to bring this lawsuit as a hedge if the Markland deal fell apart or to seek damages from an alleged shortfall from the escrow agreement if the deal proceeded.

By October 2004 the parties (Kotva and Markland) had worked out modifications to the original escrow agreement, allowing a portion of the sale proceeds to be set aside pending resolution of the dissident shareholders' lawsuits. Ex. 6. Importantly, the agreement provided that any investment use of the escrow money flowed to Markland, not Kotva. Ex. 8, p.4 ¶ 5.

In March, 2005, a month before the case at bar was commenced, Kotva sold the property at issue to Markland for about $75 million, an amount greater, according to Richard Harazim, than the property would fetch today. Ex. 3, pp. 112–13.

### B.   The Allegations and Prior Rulings in the Case at Bar

All of plaintiffs' claims in the Czech criminal complaint and the complaint in this case stem from the allegation that the Weiss Parties abused Czech civil process. Kotva filed its original complaint in April 2005, but amended it on May 2, 2007, adding SPV Co as a plaintiff

to avoid dismissal of all of its claims. The Amended Complaint purports to assert seven counts against Defendants. However counts I to III and VI have been "omitted," left as placeholders for counts dismissed from Kotva's original complaint. At its core, Kotva's complaint is that the Defendants abused Czech civil process, which is alleged as Count V. As part of that alleged scheme to abuse process, Kotva also alleges that the filing of the Czech lawsuits violated Chapter 93A (Count IV) and constituted interference with advantageous relations (Count VII).

On November 28, 2006, this Court issued an Order with respect to, among other claims, Defendants' Counterclaims asserting that Kotva had abused Czech criminal process. The Court determined that "the counterclaims raise difficult issues of Czech law" and dismissed them without prejudice. After SPV Co was allowed to enter this case—in order to save the Complaint from dismissal—this Court initially allowed defendants to re-assert counterclaims. The Court, however, upheld the original dismissal of the counterclaims as to abuse of process in the Czech Republic.

### C. Other Undisputed Facts

#### 1. Alleged Delay of the Transaction

There is a dispute between the parties as to the degree of completeness of the negotiation of the sale of the Kotva Department Store and real estate to Markland at various stages before it closed. There is no dispute, however, that it was not complete as of the filing of the Gilroy case. Ex. 3, pp. 50-56. There is also no dispute that, through no fault of the defendants, it took from October, 2004 (when the negotiation of the escrow hold-back was worked out) until March, 2005 to complete the transaction. Further, the sale price before the Gilroy case was filed was the same price as that paid in March 2005 by Markland. Ex. 3A, pp. 183–85.

5

2.  The Question of the Legitimacy of the Tapes Is the Subject of a Pending Proceeding in the Czech Republic

After Kotva became concerned that Markland might withdraw from the transaction, Kotva's directors, which included Kotva's high management—Richard Harazim and Martin Benda—voted to file a criminal complaint with police authorities in Prague. This was three months after the May, 2004 meeting when threats were allegedly made and two months after the Gilroy case. Ex. 3, pp. 86, 90, 92-93. The allegations are strikingly similar to the claims made in the case at bar. While the criminal allegations held out the possibility of incarceration and fines, they also provided two other potential remedies which Kotva sought. First, restitution damages are awarded in the Czech Republic where, after conviction, the victim can show economic loss. Second, as Richard Harazim has admitted, the criminal investigation was useful to demonstrate to Kotva's upper board and owners that it was not management's fault that the Markland transaction did not proceed. Ex. 3, pp. 92-93.

In an effort to bolster the criminal charges against Andrew Weiss and Vladimir Hoffman, Martin Benda taped conversations he participated in with Vladimir Hoffman and Ondrej Peterka, the Weiss Parties' lawyer in the Czech Republic. Mr. Benda pretended to be offering to buy the Kotva shares from the defendants and kept changing the terms to make it appear that the defendants were asking ever higher prices. The police then put the tapes into the criminal file. Last spring, they opened the file—including the tapes—to the "victim" and the defendants. Now, the plaintiffs seek to use the tapes in the trial of this case.

The Weiss Parties have brought the equivalent of a motion to suppress in the Czech Republic. According to Czech procedure, the request must be filed in the first instance with the Public Prosecutor—the person charged with prosecuting Mr. Weiss. Thereafter, assuming the

6

prosecutor refuses to suppress the tapes voluntarily, it will be filed with the Court. A copy of the Request, translated into English, is attached hereto as Exhibit 5.

## ARGUMENT

The Czech Republic has its own law and policy to deal with the plaintiffs' complaints. The plaintiffs reside there, the property and shares at issue are located there, the lawsuits which give rise to all of the plaintiffs' claims were filed there, the only meeting of the parties occurred there, and the claimed damages—loss of use of the sales proceeds—will be felt there. The Czech Republic has shown a great interest in this matter; any interest of the Commonwealth of Massachusetts is the imagination of creative counsel. *See Reicher v. Berkshire Life Ins. Co. of Am.,* 360 F. 3d 1 (1st Cir. 2004).

**I.   CZECH LAW APPLIES TO THE ABUSE OF PROCESS CLAIM, AND IT SHOULD THEREFORE BE DISMISSED**

**A.   Czech Law Governs Plaintiff's Claim for Abuse of Czech Civil Process**

Massachusetts' choice of law principles govern which sovereign's substantive law supplies the rules of decision for Plaintiffs' claims. *See, e.g.*, *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 73 (1st Cir. 2006) (diversity jurisdiction); *Bi-Rite Enters., Inc. v. Bruce Miner Co., Inc.*, 757 F.2d 440, 442 (1st Cir. 1985) (supplemental jurisdiction) (both citing, *inter alia*, *Klaxon*, 313 U.S. at 496). In this case, there is a clear conflict between Massachusetts law and Czech law as is vividly illustrated by the competing jury instructions for Kotva's claims submitted by the parties as attachments to the joint pretrial memorandum.

"Massachusetts applies a 'functional approach to choice of law' . . . [that] 'is explicitly guided by the Restatement (Second) of Conflict of Laws (1971).'" *Levin*, 459 F.3d at 74 (quoting *Bushkin Assocs., Inc. v. Raytheon Co.*, 473 N.E.2d 662, 668 (Mass. 1985) and *Clarendon Nat'l Ins. Co. v. Arbella Mut. Ins. Co.*, 803 N.E.2d 750, 753 (Mass. App. Ct. 2000)).

7

The Restatement sets forth the following rule for determining which jurisdiction's substantive law governs an abuse of process claim:

> [t]he rights and liabilities of the parties for malicious prosecution or abuse of process *are determined by the local law of the state where the proceeding complained of occurred*, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

REST. (SECOND) CONFLICT OF LAWS § 155 (emphasis added).

This Court twice previously has concluded that a Massachusetts court, if confronted with the question, would follow the Restatement's rule. *See Am. Mgmt. Svcs., Inc. v. George S. May Int'l Co.*, 933 F. Supp. 64, 69 (D. Mass. 1996); *Continental Cablevision, Inc. v. Storer Broadcasting Co.*, 653 F. Supp. 451, 456 (D. Mass. 1986).

In abuse of process cases, "(t)he likelihood that some state other than that where the proceeding complained of occurred is the state of most significant relationship is greater in those relatively rare situations where the state where the proceeding complained of occurred bears little relation to the occurrence and the parties." REST. (SECOND) CONFLICT OF LAWS § 155, cmt. b. Moreover, "the place of injury is of particular importance . . . in the case . . . of malicious prosecution and abuse of process." REST. (SECOND) CONFLICT OF LAWS § 145, cmt. f.

The cases at issue were filed in Prague, and the injury, if there is one, occurred there.

### B.  There Has Been No Violation Under Czech Law

Ondrej Peterka was asked in his deposition whether the filing of the declaratory rights lawsuits constituted process as that term is understood under Czech law. He has been a Czech lawyer for many years and is the lead partner in a substantial Czech firm. He responded that the lawsuits do not implicate process. The lawsuits did not seek damages or a higher price for stock, an injunction, an asset transfer, or an asset freeze. What was sought was a declaration that the

8

transfer of the Kotva shares to Forminster, creating a majority interest in Kotva, were not legal and, he testified, this is not process. Ex. 7, pp. 119-122.

Further, Mr. Peterka's testimony was that the filing of the notice of the lawsuits in the Cadastre, the rough equivalent of the Registry of Deeds, did not block the transfer of the real estate and did not constitute process under Czech law. Ex. 7, pp. 122. According to Mr. Peterka, the filing of the notice in the Cadastre in Prague is a notification only, not process, in the form in which he filed it. Ex. 7, pp.119-123.

Around the time that the criminal prosecution described below was opened against Mr. Hoffmann, he sold his interest in Gilroy. The Gilroy case was then dismissed, and no appeal was taken. In connection with that dismissal, the Czech court awarded Kotva damages in the amount of approximately $750 under the Czech tariff system, a procedure whereby those who claim they have been damaged by the filing of meritless civil litigation may recover damages. Kotva sought and was awarded $750 from Gilroy and the new owners—who Mr. Peterka believes were in cahoots with Kotva—did not object. Ex. 7, pp. 109–110.

The plaintiffs have presented no evidence to contradict Mr. Peterka's view of Czech law, and they cannot in good faith do so. The plaintiffs have not listed an expert on the subject. Nor have they controverted the facts that the Gilroy case has been finally adjudicated and that a specific sum was awarded relating to alleged litigation abuse. If they try to present false, conflicting evidence—to try to create a fact dispute on the issue—this Court should not try to resolve it. The Czech courts are in the best position to decide the issue.

Even under Massachusetts law, there is considerable doubt that the declaratory rights actions taken by Gilroy and K T would be actionable. *Adams v. Whitman*, 62 Mass. App. Ct. 850 (Mass. App. 2005); G.L. c. 231, § 59H. As Judge Greenberg points out, the cases which allow an

9

abuse of process claim based on the initiation of a lawsuit are for the most part long gone. They included cases begun by attachment, a *lis pendens*, an eviction petition, a garnishing of wages and so forth. The mere filing of a civil lawsuit alone did not provide a basis for claiming use of process, even if there was an ulterior motive. *Id.* at 854–55. This would be particularly true where the lawsuit concerned declaratory relief, classic petitioning activity.

If Massachusetts law applies (for some reason), an abuse of process claim would be dismissed under G.L.c. 231, section 59H, the Anti-SLAPP statute. *Id.*

### C. Kotva Has Advocated, and This Court Has Already Determined that It Will Not Decide Claims Governed by Czech Law

In 2005, the Weiss Defendants filed counterclaims, alleging that Kotva and others abused Czech criminal process by filing a criminal complaint against Andrew Weiss and abused U.S. civil process by filing this lawsuit. In March 2006, Kotva filed a motion styled *Kotva's Motion to Dismiss "Counterclaim-Plaintiffs" KT and CVF*. In support of that Motion, Kotva argued that "all Czech-law Counterclaims should be dismissed on grounds of international comity and *forum non conveniens*." Kotva's Mem. at 4; *see also id.* at 2, 7, 17. On November 28, 2006, the Court granted Kotva's motion.

On April 2, 2007, the plaintiffs amended their complaint pursuant to an Order which permitted the plaintiffs to include SPV Co in this case. The Court also granted the defendants the right to assert counterclaims, new and old against SPV Co. Nevertheless, the Court recently granted the plaintiffs' motion to dismiss those counterclaims which involved process and events based in the Czech Republic, including, again, the defendants' claims for abuse of Czech criminal process.

The ongoing criminal proceedings in the Czech Republic, initiated by Kotva's August 2004 complaint, pre-date the filing of this civil action. Professor Weiss is a named defendant in

10

those proceedings, which are based on the identical facts and circumstances as alleged by Kotva in this civil action. However, no claim for abuse of criminal process has been asserted in the Czech Republic. The Court found these factors sufficient to dismiss Mr. Weiss's claim for abuse of Czech criminal process, a claim governed by Czech law.

Whether most properly characterized as law of the case, judicial estoppel or otherwise, it is simply unfair for Kotva to be permitted to pursue Czech law claims in this Court when Mr. Weiss's attempt to pursue analogous Czech law claims have been, at Kotva's request, rejected by the Court. When this problem was argued before this Court on Kotva's and SPV Co.'s Motion to Dismiss, the Court responded that the fairness argument "resonated" and that Kotva and SPV Co might well find themselves subject to dismissal of their Czech law claims. Motion Ex. 2. All of the problems and pitfalls that the Court has identified with resolving the Weiss Parties' claims for abuse of Czech process governed by Czech law apply equally to Kotva's and SPV Co's claims. It is noteworthy that Kotva has designated no expert on this issue.

### D. This Court Should Abstain from Deciding Unsettled Issues of Czech Law

"A federal court, by abstaining, may avoid having to decide a uniquely difficult question of state law of great local impact and uniquely important local concern." *Bath Mem. Hosp. v. Me. Health Care Fin. Comm'n*, 853 F.2d 1007, 1012–13 (1st Cir. 1988) (citing *La. Power & Light Co. v. Thibodaux*, 360 U.S. 25 (1959)). The same is true with respect to uniquely difficult questions of the law of other sovereign nations. Indeed, due to language barriers and the differences between the common law system and the civil law system, federal courts have stronger reasons to abstain from deciding difficult questions of Czech law than they have for abstaining from deciding difficult questions of state law.

The Czech Civil Code, Article 424, establishes liability for causing damage by intentional conduct against good morals. There is no specific provision of the Czech Civil Code referencing

11

the tort of abuse of process. In order for Kotva to prevail on its claim for abuse of Czech civil process, a court would first have to determine whether the Czech civil law system, based on its civil code, would recognize the tort. The court would then have to establish the elements of the tort. The court would need to take into account, among other things, that under Czech law, a plaintiff who commences a lawsuit and loses may have to pay the damages incurred by defendant in defending the lawsuit. These unsettled issues of Czech law should not be decided by a court in the United States. *See Currie v. Group Ins. Comm'n*, 290 F.3d 1, 11 (1st Cir. 2002) (discussing policies underlying various abstention doctrines).

Further, the Czech system has developed a method for dealing with litigation abuse—the tariff system described in the statement of facts above. It should be a Czech court, not an American one, which decides whether the policies in place in that system are preferred, subsidiary, or co-existent with the Czech tort of good morals. It should also be a Czech court which determines whether the final adjudication of the Gilroy case forecloses a later abuse of process claim. These complex questions requires delicate law and policy judgments that the Czech Republic should make. *Cf. Minot v. Eckardt-Minot*, 13 F.3d 590 (2d Cir. 1994).

## II. COUNT VII OF THE AMENDED COMPLAINT—THE CLAIM FOR TORTIOUS INTERFERENCE—IS GOVERNED BY CZECH LAW AND MUST BE DISMISSED

### A. If Czech Law Applies, This Court Should Dismiss

In this case, where the principal means by which Defendants allegedly interfered with an advantageous business relationship was the filing of lawsuits, the Court should apply the same choice of law rules to the tortious interference claim that apply for abuse of process claims. Thus, as explained in Part I.A, *supra*, Czech law governs this claim as well.

Massachusetts courts generally apply the substantive tort law of the jurisdiction that "has the most significant relationship to the occurrence and the parties". *Daynard v. MRRM, P.A.*,

335 F. Supp. 2d 156, 163 (D. Mass. 2004) (quoting REST. (SECOND) CONFLICT OF LAWS § 145 and citing *Cosme v. Whitin Mach. Works, Inc.*, 417 Mass. 643, 646 (1994)). That, clearly, is the Czech Republic. Recently, applying New York's analogous choice of law principles to a tortious interference with contractual relations claim, the Second Circuit placed significant emphasis on the location where the alleged harm to the corporate plaintiff occurred: its headquarters and primary place of business. *See White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281, 283–85 (2d Cir. 2006); *See Daynard*, 335 F. Supp. 2d at 163 (citing, *inter alia*, *Cosme*, 417 Mass. at 646); *accord Dasha v. Adelman*, 699 N.E.2d 20, 23–24 (Mass. App. Ct. 1998).

Using the Restatement section 145 factors to evaluate Count VII, the Court should conclude that Czech law governs. Kotva's alleged injury took place in the Czech Republic—the location of its incorporation and principal place of business. The conduct that purportedly caused Kotva's alleged injury—the filing of lawsuits—also took place in the Czech Republic, where the two lawsuits were filed. The "domicil" factor yields mixed results—the Czech Republic for Kotva and Massachusetts for the Weiss Defendants—but the Court should focus its attention on Kotva's domicil in light of the analysis in the *White Plains Coat & Apron* and *Trent* courts referenced above. The fourth and final factor in the analysis resoundingly calls for the application of Czech law because there can be no dispute that the relationship between Kotva and the Defendants was centered in the Czech Republic rather than Massachusetts.[1] Thus, two

---

[1] The relevant relationship for purposes of the Restatement is the relationship between the parties to the litigation, which is centered in the Czech Republic. The advantageous business relationship allegedly interfered with was a contract between a Czech subsidiary of an Irish company (Markland), that may have been owned through an intermediary in Luxembourg, and a Cypriot subsidiary of a Czech company, that was owned through a number of Czech intermediaries, ultimately related to Kotva. The contract was governed by Czech law, and the closing took place in Vienna, Austria. Thus, it is clear that the focus of this relationship was not Massachusetts.

of the four Restatement § 145 factors unequivocally direct the Court to apply Czech law. The other two factors either lend further support to that conclusion or are neutral.

In short, whether the Court applies the Restatement's specific rule governing abuse of process claims or applies the Restatement's general choice of law rule for tort claims, the Court should conclude that Czech law governs count VII of Plaintiff's Complaint. There are difficult issues of Czech law surrounding the plaintiffs' claims of interference, which is as of now not recognized as a tort in the Czech Republic. Whether the tort of good morals would include business wrongs is a serious question, whether it would include alleged litigation abuse within the tort's rubric is yet another. A third is what kind of damages are allowed under the Czech legal system. The plaintiffs are claiming that they are entitled to damages for "use of the money" for alleged delay in their receipt of the funds from the sale of the Kotva assets in Prague to SPV Co and Kotva. Does the Czech Republic permit those kinds of damages? If so, how does it determine the rate of return?

### B. If Massachusetts Law Applied, the Court Should Still Dismiss Count VII

#### 1. There Is No Actionable Interference When the Transaction Succeeds

Massachusetts relies heavily on the Restatement in the area of tortious interference. Sections 766 and 766B, which deal with a defendant's interference with a third party requires that the third party *actually break off the relationship* with the plaintiff as a result of the defendant's interference in order to be actionable, as Kotva's Proposed Jury Instruction, attached hereto, explicitly stated.

Sections 766A of the Restatement is not applicable. "This section is concerned only with the actor's intentional interference with the plaintiff's performance." RESTATEMENT (SECOND) TORTS § 766 (A), cmt. a. *Shafir v. Steele,* 431 Mass. 365 (2000), is a case on point. In *Shafir*, the plaintiff sued when the malicious threat of a lawsuit and public ridicule caused her not to

14

proceed with the purchase of property in Provincetown, allowing it to fall to the defendant, publisher of a newspaper in town, who presented her with an unsigned, unfilled, groundless potential federal lawsuit to induce plaintiff to back away. In adopting 766A, the Court stated, "the only difference between the torts described in section 766 . . . and 766A is that, under section 766, the tortious conduct causes the third person not to perform, whereas section 766A involves interference preventing the plaintiff from performing his own part of the contract." *Id.* at 369.

The plaintiffs, no doubt, would like to argue that 766A applies to them—since it is the only section which would possibly allow it the type of claim and damages they seek here. However, they have styled the case entirely as a claim that the defendants' conduct caused *Markland*, a third party, to delay entering into the contract and then to hold back some of the funds *pendente lite*. That allegation does not support a claim under Section 766A. And damages for delay are not allowed under Section 766 or Section 766B unless the third party backs away from the transaction or proposed transaction, which did not occur here. *See Blackstone v. Cashman*, 448 Mass. 250 (2007). The case at bar is a perfect example of the Restatement's wisdom in restricting damages in the prospective relations with third party cases to instances where the parties' potential contract is broken off and the benefits are not merely delayed: any effort to calculate those damages would be hopelessly and impermissibly speculative.

2.  The Damages Sought by Plaintiffs Are Completely Pie-In-The-Sky

In this case, the plaintiffs allege the loss of many, many millions of dollars on account of the alleged delay in their receiving the full fruits of their contract. They ignore completely that they went through an arm's length negotiation with Markland in which they agreed to give Markland any returns on investment in escrowed funds and agreed to have the funds invested in

15

low yield, low risk investments. Easy for the plaintiffs to do, one supposes. They were already planning to sue the defendants for any shortfall. Ex. 3, pp. 8, 9, 11, 14-17, 19, 20, 22, 23,25, 26.

Plaintiffs admit but ignore the fact that, if there was a delay, they got the full purchase price they agreed to with Markland, and that it is in all likelihood a higher price than they could receive today. Ex. 3, pp. 112-113, Ex. 3A, pp. 183-185. They claim that the delay in closing should be assessed entirely to the defendants and that they should pay for the "use of the money", as well as for the full interest they might have obtained from the escrowed funds. This is in spite of the fact that they agreed to give Markland any interest derived from the escrow money, and agreed that the funds should be invested in low yield money market instruments. *Id.*; Ex. 3, p. 44. Their theory is that they should receive damages based on the highest yield they have obtained on any investment of the purchase price funds they received to date: 16%. But, as SPV Co's Rule 30(b)(6) deposition demonstrates, its "returns" on the non-escrowed funds provides no credible track record of high yields, since the "investments" have been made through self-dealing—that is, in companies privately owned by or strongly affiliated with Kotva's successor, CIS. Ex. 9, pp. 8, 9, 12, 19, 23, 28, 29, 30, 32, 69, 70, 71.  Of the 788 million Czech crowns received by SPV Co in the sale, there were no investments to speak of for almost a year, and then approximately two-thirds of the funds have been "lent" as part of a self-dealing plan to CIS and other affiliated companies (one of them was actually half-owned by CIS until May, 2006, and no longer is, though Richard Harazim is still one of three board members). Ex 9, p. 52. It is impossible to determine whether these loans provided some track record because CIS has only consolidated financials, which they have not produced. Ex. 9, p. 28. Those few internal SPV Co financials produced show only heavy losses. Ex. 9, pp. 99. Further, when purchase proceeds have been invested outside the CIS umbrella—which represents one-third of the funds—they

16

have been invested in the type of low yield, low risk investments that the escrowed funds have been. Ex. 9, pp. 7-8, 86; Ex. 3, p. 106. And, Kotva initially agreed this is how the escrow funds should be invested. Ex. 3, p. 44.

It is uncontroverted that Kotva freely negotiated the terms of its escrow agreement with Markland. There are no restrictions in the agreement as to what the investments must be. Kotva may be unhappy that the returns go to Markland. It may be trying to re-negotiate that and it may be unhappy with the low yield investments, but its beef is with Markland. Ex. 3, pp. 32, That Kotva would seek to hold the Weiss Parties accountable for its poor negotiation with Markland, or the "fact" (if it is) that it was hoodwinked by Markland, is absurd. Richard Harazim, who negotiated the escrow agreement holds an American MBA and is a sophisticated businessman. Ex. 3, pp. 8-9. The Weiss Parties did not draft the escrow agreement nor force Kotva to accede to Markland's wishes as to how the escrow funds would be invested. Ex. 3, pp. 44-45. In a tortious interference case they are liable only for the actual losses they have actually caused. *See Med. Air Tech. Corp. v. Marwan Inv., Inc.*, 303 F.3d 11, 22 (1st Cir. 2002). Nor is there anything inherently wrong with choosing low yield investments. That Kotva seeks a recovery because it might have done better, without taking higher risks, is rank speculation and flies in the face of every principle of freedom of contract.

This Court and others have had occasion to disapprove of these type of pie-in-the-sky requests for damages, as the Court did recently in *dicta* in *Evans v. Akers*, 466 F. Supp. 2d 371, 378 (D. Mass. 2006), and in *Weiss v. United States*, 146 F. Supp. 2d 113, 124-129 (D. Mass. 2001). See *Cabot Corporation v. Ashland Oil, Inc.,* 597 F. Supp. 436, 438-39 (D. Mass. 1984). In similar situations where plaintiffs have sought these types of damages, the First Circuit has

been quick to deny recovery. *Hendricks & Associates, Inc. v. Daewoo Corp.,* 923. F. 2d 209, 217-220 (1st Cir. 1991); *Cordeco Dev. Corp. v. Vasquez,* 539 F.2d 256, 260-263 (1st Cir. 1976).

The plaintiffs' tortious interference claim amounts to a request that this Court create a new tort for situations where the parties succeeded in entering into a transaction and followed out its terms, but where one of the contracting parties is unhappy with some of the terms and would like to hold a third party responsible, indeed, responsible to the extent of its wildest dreams. Such a tort does not exist, the Restatement and Massachusetts law do not permit it, and this Court should not go there.

**III.   THE CHAPTER 93A CLAIM MUST BE DISMISSED BECAUSE THE CZECH SYSTEM HAS ITS OWN POLICIES FOR DEALING WITH ALLEGEDLY SHAM LAWSUITS AND BECAUSE THE DEALINGS UPON WHICH THE LAWSUITS WERE BASED WERE ENTIRELY PRIVATE TRANSACTIONS**

**A.   The Czech System Has Different Policies in Place than Massachusetts**

In *Reicher v. Berkshire Life Insurance Company of America*, 360 F.3d 1 (1st Cir. 2004), the First Circuit dismissed a Chapter 93A claim *sua sponte*. A Maryland resident sued on a disability insurance policy issued by a Massachusetts insurance company in Maryland, when the insurer refused to pay the benefits. After a protracted court battle in Maryland, the insurer paid—but not until there had been a substantial delay and large legal fees incurred by the plaintiff. The theory was that since all of the insurer's important decisions had been made in Massachusetts, the Massachusetts insurer should be held accountable under Massachusetts Chapter 93A for the legal fees. The case was dismissed in the lower court on a ground not sustained above. Although there was a case cited in passing in plaintiff's brief in which the Maryland Court of Appeals had spoken kindly about Chapter 93A, the First Circuit determined that Chapter 93A did not apply notwithstanding the fact that Maryland had no private consumer remedy to protect the insured, holding, "Because Maryland chooses to resolve insurance disputes via an administrative process

18

and does not allow the type of private action advanced by (the plaintiffs) under Massachusetts General Laws, Chapter 93A, we *affirm* the district court's dismissal." *Id.* at 6–7.

Here, the facts and policy issues point even more compellingly to a dismissal of the 93A claim than they did in *Reicher*. The Chapter 93A claim arises from the filing of lawsuits in Czech courts. The cases are still pending there and have not been decided on the merits. A Czech court has the right to determine whether the cases are or not shams and can redress the problem under the tariff system against the plaintiff—or indeed, can assess fees and costs against the defendants—in those cases. There is no Massachusetts contractual connection, as there was in *Reicher*. The Kotva shareholder represented by the Mr. Weiss at the May 12, 2004 meeting in Prague was CVF Investments Limited, a Cyprus company but a Czech investor.

The policy reasons advanced by the *Reicher* court apply with even more vigor than in *Reicher*, and, therefore, this Court should dismiss the 93A claim.

**B.     Chapter 93A Does Not Apply Because This Was a Private Transaction**

Finally, even if Chapter 93A applied, Chapter 93A, § 11 requires that both the plaintiff and defendant be engaged in trade or commerce, and the Court has already ruled that the parties were not engaged in trade or commerce with respect to this intracorporate dispute. *See Riseman v. Orion Research, Inc.*, 394 Mass. 311, 313–14 (1985); *Zimmerman v. Bogoff*, 402 Mass. 650, 662–63 (1980); *Kurker v. Hill*, 44 Mass. App. Ct. 184, 190–91 (1998); *Horizon House-Microwave, Inc. v. Bazzy*, 21 Mass. App. Ct. 190, 200 (1985); *Newton v. Moffie*, 13 Mass. App. Ct. 462, 467 (1982).

Kotva filed a motion to dismiss the Weiss Parties' 93A claim, but did not raise this argument in support of its motion. Rather, the Court raised it *sua sponte* during the January 23, 2006 motion hearing and correctly dismissed the Weiss Parties' Chapter 93A claims on this ground. *See* Motion Ex. 3. Certainly, if the Defendants cannot maintain a Chapter 93A claim

19

against Kotva because the parties were not engaged in trade or commerce, then the Kotva Parties may not maintain a Chapter 93A claim against the Defendants for the very same reason.

## CONCLUSION

For the foregoing reasons, the Court should enter judgment for the Defendants on Count IV and either abstain from hearing Counts V and VII or enter judgment for the Defendants on those counts.

Respectfully submitted,

ANDREW WEISS and WEISS ASSET MANAGEMENT, LLC

By their counsel,

Dated: August 3, 2007

/s/ Edward T. Dangel, III
Edward T. Dangel, III (BBO#113580)
Dangel & Mattchen, LLP
10 Derne Street
Boston, MA 02114
617-557-4800

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system and all attachments will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 3, 2007.

/s/ Edward T. Dangel, III
Edward T. Dangel, III