**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| KOTVA a.s. and SPV Co, | ) ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) ) ) | |
| ANDREW WEISS and WEISS ASSET MANAGEMENT, LLC, | ) ) ) | |
| Defendants. | ) ) | C.A. No. 05-10679-WGY |
| ANDREW WEISS and WEISS ASSET MANAGEMENT LLC, | ) ) ) | |
| Counterclaim-plaintiffs, | ) ) | |
| v. | ) ) | |
| KOTVA a.s., RICHARD HARAZIM and SPV Co, | ) ) ) | |
| Counterclaim-defendants. | ) ) | |

## DEFENDANTS' REPLY BRIEF ON SUMMARY JUDGMENT

Despite the plaintiffs' penchant for evil-sounding terms – "extortion," "blackmail," and their latest, "pay off," – this case boils down to a common investor/company dispute, but with a distinct Czechoslovakian twist.   The Weiss parties are investment managers charged with fiduciary responsibilities to their shareholders.   The company, Kotva, owned the largest and most valuable retail property in Prague.   When the events at issue occurred, Kotva's management was in the

process of selling off its assets.  The parties met and disagreed about how Kotva's shareholders, particularly its principal minority shareholder, managed by the Weiss parties, should be treated.

Plaintiffs have presented a volume of irrelevant "evidence" to avoid joining the issue, but the few facts necessary for summary judgment are not in genuine dispute. Plaintiffs have not denied, nor can they, that the lawsuits at issue were brought in the Czech Republic, and that those cases, as well as the plaintiffs' claims based on them in this case, concern difficult questions of Czech law. It cannot be denied that the impact or harm, if any, from the litigation filed in the Czech Republic has occurred in the Czech Republic. The facts underlying the plaintiffs' claims involve Czech real estate and the sale of Czech property by a Czech company. Further, a criminal case in the Czech Republic was begun prior to this case as a result of a complaint from Kotva, and the plaintiffs can recover restitution from it. The Czech tariffization law creates a procedure under which Czech Courts must award fees as well as costs to the prevailing party (see Exhibit 1 attached hereto).

Further, the background facts are not in genuine dispute.

There is a corrupt practice in the Czech Republic known as "tunneling" by which the management of public companies "tunnel" assets into their own or friendly hands.  Kotva's majority shareholder, Forminster, was subject to a court order obtained by a local prosecutor to prevent it from selling its Kotva shares through a tunneling scheme.  The Kotva/Forminster tunneling case was famous in Prague, and it was still pending when the parties held their fateful meeting at a French restaurant there on May 12, 2004.  That litigation bears on this one: the allegation was (indeed, is) that the head of Trend, a Czech investment fund, tunneled its substantial ownership of Kotva to Forminster.  Various shareholders – including James Woolf

and Gerald Streitberg – were involved with trying to undo the transfer. The Czech Value Fund, CVF, is a 40% owner of Trend, and Woolf was trying to enlist CVF in the effort.

For several years, Howard Golden, formerly Andrew Weiss' brother-in-law and partner, had been discussing the sale of CVF's Kotva shares with Richard Harazim and Martin Benda, who wore various hats as directors/officers of Kotva and representatives of Forminster. After Golden and Weiss fell out, Weiss (in 2003) retained Vladimir Hoffman, a Prague businessman, to try to sell CVF's holding. Hoffman, who was well-known to Harazim, was working on a brokerage basis, so he had a distinct interest in effectuating a sale. Pl. Ex. J.

The substance of the conversation at the restaurant is in dispute, but the outline of it is not. Andrew Weiss mentioned a report in the local press that the sale of the Kotva real estate and store, as well as the Kotva name, were in negotiation with an Irish property company for 1.5 billion Czech crowns.[1] Was it true? Weiss asked. If so, what would happen to the proceeds? Had the shareholders approved the sale? Would they be asked to?

These questions were more subtle than they seemed. Kotva's board had previously engineered the transfer of the real estate and store to newly formed subsidiaries under their control. The questions really meant: was there a sale and how could Weiss be assured that it was not part of a tunneling scheme?

It is undisputed that Harazim and Benda refused to answer, indeed, refused to provide any information at all, and suggested that one could not believe everything one read in Czech

---

[1] Figuring Czech crowns at 20 to the dollar, this made the sale value $75 million. Kotva had 300 million crowns in debt, reducing the net value to 1.2 billion crowns. CVF owned 12%, which amounts to 140 million crowns out of $1.2 billion. The Weiss parties' highest offer was 131 million crowns. It was only after Harazim asked that CVF's Trend shares be included that the offer was increased.

newspapers. Andrew Weiss, frustrated by what he was hearing, left the table and went to cool off at the bar. When he returned, he allegedly threatened to bring Heaven and Earth down upon Kotva if Harazim and Benda refused to "pay off"[2] by buying CVF's shares.

It is undisputed that the plaintiffs did not take the conversation seriously – nor did it cause them to change their behavior. They continued to negotiate with the Irish purchaser as if nothing of consequence had happened at the meeting. After the meeting, the Weiss parties sought advice of counsel and at the end of the month, they hired Peterka & Partners, who commenced an action against Kotva and its subsidiaries, asking the Prague Court to return the real estate and store from the subsidiaries to Kotva. The case was begun by Gilroy & Co., a Cypress corporation owned by Vladimir Hoffman. However, Peterka was hired and paid by Weiss.

While plaintiffs have adduced evidence that blocking the potential sale of Kotva's assets was preliminarily discussed by Hoffman and Peterka, there is no dispute that the lawsuit filed could not have had that effect. There is no evidence that the Weiss parties opposed to the sale. Plaintiffs allege that defendants' real motive in bringing the lawsuits was to force Kotva to take the proceeds, rather than leave them in the subsidiary and subject them to diversion or even to effectuate a buyout of CVF's position. But, it is undisputed that the Weiss parties are duty-bound to protect their shareholders, in this case, Czech Value Fund. The plaintiffs have alleged that the Weiss parties sought a buyout on behalf of CVF. They have not, however, answered the critical question: Even if they have identified plaintiffs' true motive, why was that motive improper?[3]

---

[2] This phrase, "pay off," means purchase CVF's shares, or distribute the benefits of the Kotva sale. The plaintiffs have attempted a play-on-words out of the phrase for summary judgment purposes.

[3] To try to get past this problem, the plaintiffs argue that the Weiss parties kept upping their offers. It is undisputed that Mr. Harazim changed his position. He asked initially just to purchase the Kotva shares, then he changed and required that CVF's holdings in Trend be included as well. At plaintiffs' request, this Court has refused to allow expert testimony on whether the Weiss parties' settlement offers exceeded reasonable

During the summer Markland, the Irish purchaser, and Kotva discussed Gilroy as part of the overall consideration of what to do about dissident shareholders, including Woolf, Streitberg, and CVF. Quite contrary to plaintiffs' argument, the closing was not delayed by the lawsuit. Plaintiffs themselves have produced documents which show that Markland wanted to close as soon as possible, but that Kotva put it off. [4] They negotiated modifications into the fall, but the parties had still not agreed to or formed the actual purchase and sale entities in Cypress, nor worked out the tax implications of the sale until early 2005. The closing occurred in March for the same purchase price they had negotiated in 2004, a price, which, according to Richard Harazim, is higher than could be achieved today. "Assuming a 10% rate of return" – plaintiffs' words – see footnote, page 15, page 12, and page 13, first paragraph – the damages, they say, are in the millions.

1. THE PRIOR ORDERS OF THE COURT DO NOT BAR CONSIDERATION OF ANY ISSUE RAISED BY THE DEFENDANTS ON SUMMARY JUDGMENT

Plaintiffs' argument at pages 1-2 of their brief that this Court should not consider summary judgment now is disingenuous. When the summary judgment motion period was originally set for October, 2006, the parties did not anticipate that the motion for judgment on the pleadings would still be pending and that witnesses would not be available to be deposed well into 2007, nor that Court rulings rendered in November, 2006 and January, 2007 would create summary judgment issues. Therefore, the June, 2007 Case Management Order in this case established a new summary judgment motion date, July 27. There is nothing in the draft order

---

value. Since the offers never exceeded CVF's proportional share of the sales proceeds, it must be concluded that the offers at least as to CVF's 12% direct ownership of Kotva were fair.
[4] Plaintffs' Exhibit DD, cited at page 9 of their brief.

submitted by the parties nor the order entered by the court limiting the Court's consideration of summary judgment. The argument that the parties meant that the order should only allow for summary judgment as to "new claims" is untrue and irrelevant. SPV Co. is the only real plaintiff in interest. If summary judgment is granted as to it, the plaintiffs are left with no claims. The pending motion is meant to be comprehensive, and it is the one and only.

Further, the prior ruling dismissing defendants' abuse of process counterclaims bears on the instant motion. Nowhere in the Court's Order of November 23, 2006, attached to Defendants' Motion for Summary Judgment as Exhibit 1, did the Court indicate that a party's desire to apply Massachusetts law to Czech process claims has any bearing on its decisions. The Court stated among the reasons for dismissal that the counterclaims "raise difficult issues of Czech law." The other bases for dismissal for *forum non conviens* had been removed by the time the defendants re-pleaded Czech abuse of criminal process in their re-stated counterclaims, but this Court reaffirmed the dismissal in July. As the defendants have argued in a number of motions and responses over the last 18 months, the difficult conflicts between Czech and American law presented in the abuse of process and Chapter 93A claims render those counts, at least, non-justiciable and, as such, this Court should abstain. This is not novel. At the very least, the prior orders of the Court support this position, and the prior Orders are the Orders. Plaintiffs' attempts to reformulate them do not add anything.

Plaintiffs argue that this Court's denial of the Motion for Judgment on the Pleadings mandates that plaintiffs' Chapter 93A claim must be allowed to stand. However, this Court's ruling on that motion did not reach the "private transaction" question. The Court's Order of January, 2007 dismissing defendants' Chapter 93A claim did. The Court ruled *sua sponte* that

the transactions upon which the claims were based were private– a shareholder's effort to sue the company for abusive litigation practices and the company's response to that. The "multiple parties" exception has no application merely because plaintiffs may have stated their Chapter 93A claim in more expansive language. The only parties to the case are the shareholder and the company. The gravamen of both party's 93A claims are expressions of their rights and wrongs against each other.

Finally, contrary to the plaintiffs' argument, the Court's prior ruling concerning the attorney-client privilege between the Weiss parties and Ondrej Peterka, their Czech counsel, has no bearing at all on whether Mr. Peterka's viewpoint on Czech law relevant to this case is admissible and properly puts the plaintiffs to their burden to prove otherwise. The only testimony this Court indicated would be excluded at trial were those relating to areas where the defendants had claimed a privilege and refused to provide discovery. The question of whether the Czech lawsuits and the filing in the Cadastre represented process, and whether under Czech procedure a Czech court finding in Kotva's favor would necessarily have to award fees and costs under the tariffization process did not involve attorney-client communications (or work product) and therefore are not blocked by the Court's prior order. The testimony is admissible, at least, to put the plaintiffs to the task of proving that process was implicated and that fees are not awarded to the prevailing party under the Czech system. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L. Ed. 265(1986).

2. THE CONFLICTS OF LAW ARE CLEAR

Plaintiffs have ignored what is already in the record of this case. First, there are the portions of the Czech Civil Procedures Act and examples of Tariffization, submitted as Exhibit 1; second,

there are the portions to the Czech Civil Code attached to Plaintiffs' Brief as Exhibit X, reproduced as Exhibit 2 to this memorandum. Third, there are the proposed jury instructions previously submitted by the plaintiffs and defendants, attached hereto as Exhibit 3.

Plaintiffs are relying on general legislation which provides that people should be held liable who do not exhibit good morals to claim that American law and Czech law are not in conflict.[5] There's not a scintilla of proof that a Czech Court has ever applied Section 424 or indeed any other section of the Code to abuse of process, a Chapter 93A business situation, or a minority shareholder/company dispute – or, indeed, a business dispute at all. There is no indication that the good morals law contains any specific elements or reaches matters like legal fees.[6]

Indeed, the whole question of whether one party will pay another's legal fees is different under Civil Law. The differences of foreign law to Massachusetts Law are a matter of record in Ondrej Peterka's testimony, but are added to by Exhibit 1 attached hereto. As can be readily seen, the plaintiffs' argument that the assessment of costs means court costs and not the costs expended by a party in legal representation, including fees, is entirely false.

It is axiomatic that American and Civil Code jurisdictions differ in their treatment of litigation fees. Ordinarily, each party pays its own fees in America. The opposite is true in Europe. Section 142(1) of the Czech Civil Code establishes the "tariffization" system applicable in the Czech

---

[5] Such generated torts are not decided by juries in the Czech Republic.

[6] Indeed, the parties do not seem to agree on even the American law of abuse of process. Plaintiffs have incorrectly argued that defendants' counterclaim for abuse of process suffers from the same defect as the plaintiffs' claim–namely, that the cause of action is based solely on the filing of this lawsuit. As to the counterclaim this is not true. Plaintiffs brought a RICO claim and securities fraud claim, both of which have devastating effects on a party in the private investment business, and then subpoened defendants' most important investors, forcing them to turn over documents and face depositions for no other reason than to "advertise" their claims and harass the defendants and their investors.

Republic. As "The Judgement" in the Gilroy case, Exhibit W to Plaintiffs' memorandum states:

> The Defendants were successful in the matter, and are therefore entitled to a compensation of costs under Sec. 142(1) of the Civil Procedures Act. The Defendants' costs arose due to its legal representations, where the rate is CZK 10,000, measured by 20% for representing multiple persons, plus 6 flat fees at CZK 75. Pl. Ex. W, p.3.

The fees awarded may not amount to much in America, but Czech lawyers do not charge as they do here, and it is up to the Czech Republic to decide how it deals with legal fees. Exhibit 1. The Czech Republic has established its own policy and mechanism for dealing with opposing party fees, and that should be respected by this Court.

The plaintiffs have tried to graft the American law of abuse of process into the very general "tort" of "good morals," to argue that Czech Courts would allow an abuse of process case to proceed. Plaintiffs' Proposed Jury Instruction – on the tort of "good morals" – is attached as Exhibit 3. Imagine an American jury deciding how Czech community standards should be gleaned without a Czech legal expert.

Further, Chapter 93A's statutory scheme finds no equivalent in the Czech Civil Code. The plaintiffs have not even attempted to argue that there is an analogue. Implicit in the First Circuit's holding in <u>Reicher</u> v. <u>Berkshire Life Insurance Co.</u>, 360 F.3d 1(1st Cir. 2004) is the notion that Chapter 93A represents a unique statement of Massachusetts policy which should not be exported where the harm is suffered elsewhere. Section 420a of the Civil Code does have a general business damages provision, but it is not analogous to Chapter 93A, which mandates double and treble damages in certain circumstances.

A potential overlap between Massachusetts and Czech law comes in the area of tortuous interference. If Section 420a includes damage other than injury to the person or real estate, the

apparent limits of (b) and (c), it could conceivably include damages for business interference. However, the plaintiffs have made no showing, nor have they argued that 420(a) could be applied to a strictly economic harm, and it is doubtful from reading the statute that it would. It is yet another unsettled issue of Czech law.

Plaintiffs would require defendants to "prove" that 420a does not include business interference and is limited to tangible non-business injury. This places matters in reverse. Under Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 265 (1986) and its progeny, the law works differently. The defendants have made a reasonable showing that there is a conflict between Section 420a and the American law of tortuous interference. This requires the Court to consider whether Czech law applies. Curley v. AMR Corp., 153 F. 3d 5, 13-16 (2d Cir. 1998).

The Weiss parties have filed various motions urging the Court to accept that Czech law applies – including their July 25, 2005 Opposition, their Motion In Limine in support of abstention, which was filed in early 2007 but not heard, and the instant motion. How the plaintiffs can claim that they lack notice of the foreign law question is beyond comprehension.

III. CHAPTER 93A DOES NOT APPLY

Any harm caused by the instigation of Czech litigation occurred in the Czech Republic. The parties met there. Their representative met and spoke there. The police activities, including the taping, occurred in Prague. Any harm alleged occurred there. It is a stretch to implicate Massachusetts at all. Reicher v. Berkshire Life Ins. Co., 360 F 3d 1 (1st Cir. 2004).

Kotva and SPV Co. have been merged into another Czech company, CIS, which is a quintessentially Czech enterprise. CVF, the fund managed by the Weiss parties, is now a shareholder in CIS. There is litigation between the parties over the legality of the merger and the

valuation of CVF's shares as part of the merger process. The lawsuits filed in the Czech Republic involve corporate actions internal to Kotva and were brought by its shareholders. Even if this were an extortion case – it is far from it – the extortion alleged concerns an attempt receive a decent price for CVF's Kotva shares, not some extra-enterprise under-the-table payment. James Woolf, Gerald Streitberg, Balfindor, KT, and Gilroy are or were shareholders concerned about what Kotva was doing. This was, in short, a private transaction.

### 4. PLAINTIFFS HAVE NO COMPENSABLE DAMAGES.

Plaintiffs claim that damages are a matter of disputed fact outside of summary judgment consideration. They claim, for instance, that the question of whether the transaction succeeded, that it occurred at the same price originally negotiated in 2004 and that it was a good price, is open to genuine dispute. The problem is that Richard Harazim put those facts in the record, as was noted in Defendants' original brief, and those facts have not been contradicted.

Further, they claim, without any proof other than Richard Harazim's say-so, that the deal was delayed six to nine months because of the Gilroy case. The problem is that the record shows – and it is uncontroverted – that Markland wanted to close immediately and Kotva delayed. Pl. Ex. DD, e-mail of Prestage to Harazim, 7/24/04. They try to fudge this inconvenient fact, but the record is clear: Markland wanted to close immediately and put the proceeds into escrow, but Kotva resisted. *Id.,* e-mail Harazim-Prestage. Kotva now wants to hold the Weiss parties liable for its resistance. They seek banking penalties of $250,000, a wildly made-up number which could have been avoided if Kotva had closed (a matter under its control). They claim use of the proceeds "caused" by the delay, which, in or out of escrow would have been drawing interest, and they claim all of the legal fees in this case (which are not recoverable in tortuous interference). Pl. Mem. p. 12-13.

11

Post-closing, Kotva seeks "lost investment opportunities" on the escrowed money and "the costs associated" with keeping SPV Co. alive, which, as Mr. Harazim testified, is basically the cost of maintaining a checkbook. Mr. Harazim also testified that Markland and Kotva disagree about who is entitled to the interest from the escrow account. Plaintiffs describe this as Markland's "assertion". This is what the escrow agreement says. It is Kotva which is making the assertion, namely, that it was bilked into signing the agreement. Kotva also argues that it has been damaged by Markland's "insistence" that the funds be invested "only in low risk, low yield investments." "Assuming" a 10% return, the damages, they say, are more than $5,000,000. This is like a Las Vegas gambler who was not allowed to gamble at the blackjack table claiming damages because he won a few hands or a jackpot a few nights before which returned a handsome profit. There is no one who would support this view of investment outside the confines of a mental institution (or a Las Vegas gaming tables.)

Aside from giddy speculation, plaintiffs have made another key assumption, namely, that general causation, not *direct* causation is sufficient to sustain a tortuous interference damages claim. That is, they admit they delayed the closing, they may have given up the right to the return on the escrowed funds, and they agreed to the mode of investment of those funds, but they claim, although they made these decisions themselves, the Weiss parties should pay compensation for the consequences of their actions. Under the Czech system this is nonsense. Section 420 §3; Section 420a §3. Under American law, this fails for lack of proof of direct causation.

Further, it is clear that damages of this sort are not allowed where the economic advantages are prospective and not a matter of existing contract, a point which has already been briefed for this Court. Defendants respond by citing two cases which do not say differently. In Amy Jewelers LLC v. IBIJC Business Credit Corp., 414 F. Supp. 2d 90 (D. Mass. 2006), the damages sought were for

12

the loss of the sole business deal, not due to an alleged loss for being offered (and refusing) a less favorable loan: "were it not for the defendants' February 28, 2001 communications, Foothill's December offer would have remained on the table and the Kriegel's stock purchase would have gone forward." Id., at 93. The plaintiffs were not seeking damages based on the use of the money before the deal closed. In <u>McNamee</u> v. <u>Jenkins</u>, 52 Mass App. Ct 503, the plaintiff police sergeant was under contract when the patrol officer made a false allegation of race discrimination and cost the plaintiff a tangible difference in his rate of pay from being denied the opportunity to work the night shift. That is a far cry from the damages alleged in this case. It is not for nothing that the Restatement requires an actual break-off of the prospective relationship before damages can be allowed.

Here, the basis on which damages are sought is well-established: after defendants filed suit, plaintiffs chose to delay and negotiate what they now say were unfavorable terms of an escrow agreement which is returning low yields. Their damages claims raise at least the following legal issues appropriate for consideration on summary judgment: where the advantages were prospective, may the plaintiffs receive damages for their alleged lost opportunity to risk the proceeds on high yield/ high risk investments? May they seek these damages when the questions of the rights to the interest from the investment are an open question between the purchaser and themselves? May they seek these damages because they allegedly received high rewards for high risks taken with some of the proceeds they received? Can the Federal Courts be turned into a gambler's paradise?

CONCLUSION

For all of the above reasons and those stated in defendants' original memorandum on summary judgment, the defendants' motion should be allowed and all of the plaintiffs' remaining causes of action should be dismissed.

Respectfully submitted

ANDREW WEISS and WEISS ASSET MANAGEMENT, LLC

By their counsel,

_____
Edward T. Dangel, III (BBO#113580)
Dangel & Mattchen, LLP
Ten Derne Street
Boston, MA 02114
617-557-4800
*Counsel for the Defendants*

CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of this Reply Memorandum on summary Judgment to be hand-delivered to opposing counsel of record at their usual office address this 7th day of September, 2007.

_____
Edward T. Dangel, III, Esq.

14

EXHIBIT 1.

**The Ministry of Justice Decree No. 484/2000**, of December 18, 2000 on flat rates of attorney or notary fees for representation of a participant when awarding reimbursement of costs of the civil proceedings, amending the Ministry of Justice ordinance No. 177/1996, on attorney fees and reimbursement awarded to attorneys for providing legal services (attorney rate) as amended

The Ministry of Justice provides in accordance with s 374a (a) of the Act No. 99/1963, civil procedure code as amended by Act No. 263/1992, Act No. 24/1993 and Act No. 30/2000 Sb.:

## PART ONE

CHAPTER ONE
GENERAL PROVISIONS

Art. 1

(1) When deciding about the reimbursement of the costs of the proceedings (art. 151 of civil procedure code) the court determines the amount of attorney fees or notary fees for representation of a participant in the civil proceedings in accordance with the rates and under presumptions stipulated in present ordinance.

(2) In case of notary fees for representation, present ordinance applies only if notary represents a participant to the extent of its authorization granted in special legal act.*1

*1: Art. 3 of the Act No. 358/1992, on notaries and their activities (notary code), as amended

Art. 2

(1) Rates of fees are set, concerning proceedings in first instance, from the amount of money or from value of other money appreciable performance being objects of the proceedings, or pursuant to the kind of the matter.

(2) The rates pursuant to section 1 include all acts effectuated within the scope of legal service provided by attorney or notary, with exception of the fees for acts, reimbursement of which is decided in accordance with the art. 147 of the civil procedure code.

CHAPTER TWO
RATE OF FEES

*Tome one*
*Rate of fees in proceedings under part three of the civil procedure code*

Art. 3

(1) Unless otherwise provided, in matters where object of proceedings is payment of amount of money or other money appreciable performance the rate of the fees is as follows

| | |
|---|---|
| 1. up to CZK 1,000 | CZK 4,500 |
| 2. over CZK 1,000 up to CZK 5,000 | CZK 6,000 |
| 3. over CZK 5,000 up to CZK 10,000 | CZK 9,000 |
| 4. over CZK 10,000 up to CZK 200,000 | CZK 9,000 and 17 % of the amount exceeding CZK 10,000 |
| 5. over CZK 200,000 Kč up to CZK 10,000,000 | CZK 41,300 and 2 % of the amount exceeding CZK 200,000 |
| 6. over CZK 10,000,000 Kč | CZK 237,300 Kč and 0,15 % of the amount |

exceeding CZK 10,000,000.

...

Art. 5

In matters when determining whether legal relationship or a right exists or not, the rate of the fees is

a)    concerning legal relationship or right to a business undertaking
                                                        CZK 25,000

b)    concerning legal relationship or right to a real estate
                                                        CZK 20,000

c)    concerning legal relationship or a right form industrial or other intellectual property
                                                        CZK 15,000

d)    other cases
                                                        CZK 10,000.

# Act No. 99/1963, civil procedure code

CHAPTER THREE
COSTS OF PROCEEDINGS

**Kinds of costs of proceedings**

§ 137

(1) Costs of proceedings are in particular as follows: cash expenses of the participants and their representatives including the judicial fee, lost earnings of the participants and their legal representatives, costs of evidence, fees of a notary for acts of the judicial commissioner and his cash expenses, fees of inheritance trustee and his cash expenses, interpreter's fees, remuneration of value added tax and fees of representation.

(2) The fees of representation shall be considered costs of proceedings only if the participant is represented by an attorney of law or by a notary within the scope of his authorization provided by special regulations.57) The costs of the proceedings include as well the fees of a patent attorney (art. 25); its determination is set analogically special legal act providing the fees and remuneration of attorneys for providing legal services.

(3) The remuneration of value added tax is considered as costs of proceedings only if the legal representative is an attorney, notary to the scope of his authorization provided by special legal regulations57), or a patent attorney who is value added taxpayer pursuant to special legal regulations 57d) or if the legal representative is an attorney who is a partner of legal entity established for provision of attorney practice pursuant to special legal regulations 57e) and the legal entity is a value added taxpayer pursuant to special legal regulations 57d), or if the acts of judicial commissioner in the inheritance proceedings are effectuated by a notary who is a value added tax payer pursuant to special legal regulations 57d).

-------------------
57) § 3 of the Act No. 358/1992 Sb., on notaries and their activity (Notarial Code), as amended by the Act No. 30/2000.
57d) Act No. 235/2004, on value added text, as amended
57e) § 11 (1) and § 15 of the Act No. 85/1996, on advocacy, as amended

§ 138

(1) Upon a petition, the presiding judge may grant a participant a full or partial exemption from judicial fees if it is justified by the participant's condition and unless the matter is an obviously unsuccessful exercise or defense of a right. Unless the presiding judge decides otherwise, the exemption shall apply to the entire proceedings and shall have a retroactive validity; however, fees paid before the decision on exemption shall not be returned.

(2) The presiding judge shall withdraw the awarded exemption at any moment during the proceedings even with a retroactive effect if it is revealed until the final and conclusive termination of the proceedings that the participant's condition do not or did not justify the exemption.

(3) If a representative was appointed for a participant exempted from judicial fees, the exemption shall apply within the granted scope even to cash expenses of the representative and to a remuneration for representation.

§ 139

(1) Witnesses shall have the right to a reimbursement of cash expenses and of the lost earnings (witness payment). This right shall become extinct unless it is exercised within three days from the examination or from the day when the witness was notified that the examination shall not take place. The court must instruct the witness thereof.

(2) An expert who submitted a report or an interpreter who provided his service shall have the right to a reimbursement of cash expenses and to remuneration (expert's payment and interpreter's payment). Special regulations shall provide to whom and in what sum the expert's payment and the interpreter's payment shall be given.

(3) If the court imposed upon a person a duty relating to evidence, in particular to submit a document, such person shall have the same rights as a witness unless he is a participant. The entitled person must exercise his rights under the same conditions as a witness.

(4) The presiding judge shall decide on the rights referred to in paragraphs 1 to 3 in the form of a ruling.

**Paying the costs of proceedings**
§ 140

(1) Every participant shall pay the costs of proceedings occurred to him and the costs of his representative. Common costs shall be paid by the participants according to the proportion of their participation in the case and in the proceedings; unless the proportion of the participation can be ascertained, the costs shall be paid share and share alike. The participants referred to in § 91 section 2 shall pay the common costs jointly and severally.

(2) If the court appointed an attorney of law for a participant, his cash expenses and a fees, eventually also the value added tax, for representation shall by paid by the state; in justified cases, the state shall provide the attorney of law upon his request with an adequate advance payment.

(3) In inheritance proceedings, the notary's fees and his cash expenses shall be paid by the heir who acquired the inheritance that is not over indebted; if there are more heirs, they shall pay these costs according to the proportion of the net value of their portions of inheritance. In other cases, these costs shall be paid by the state.

§ 141

(1) The presiding judge may order that a participant not meeting the conditions for exemption from judicial fees deposit an advance payment of costs of a proof proposed by him or ordered by the court if the proof concerns the facts specified by the participant or is in his interest.

(2) The costs of the proof not covered by the advance payment as well as cash expenses of an appointed representative being no attorney of law and costs connected with the fact that a participant acts in his native language or by gestures shall be paid by the state.

**Reimbursement of the costs of proceedings**
§ 142

(1) A participant who had a full success in the case shall be awarded by the court a reimbursement of costs necessary to a useful exercise or defense of a right against the participant who has had no success in the case.

(2) If the participant had only a partial success in the case, the court shall divide the reimbursement of the costs in a proportionate way; as the case may be, the court shall decide that none of the participants has a right to the reimbursement of costs.

(3) Even if the participant had only a partial success in the case, the court may award him a full reimbursement of costs of the proceedings if the participant failed only in an inappreciable part or

if the decision on the amount of the performance depended on an expert's report or on the court's consideration.

(4) Where the proceedings were commenced upon a petition of the Supreme State Representative or of a state representation according to special regulations,[58)] under conditions referred to in paragraphs 1 to 3, the reimbursement of the costs shall be awarded by the court to the defendant against the state.

-------------------
58) Such as § 21 and 29 of the Act No. 2/1991 Sb., on collective bargaining, § 62 and 62a of the Act No. 94/1963 Sb., on family, as amended by the Act No. 91/1998 Sb.

## § 143

A defendant who lost the case shall have the right to a reimbursement of costs of the proceedings against the claimant if the defendant's behavior was not the cause of submission of the petition for commencement of the proceedings.

## § 144

The participants shall not have the right to reimbursement of costs of proceedings on divorce or on nullity of marriage or on determination whether the marriage exists or not. However, the court may award even reimbursement of these costs or a part thereof if it is justified by the circumstances of the case or by the condition of the participants.

## § 145

If the court has awarded a participant reimbursement of costs of proceedings, the court shall award him also reimbursement of costs of a preliminary measure or of conservation of evidence.

## § 146

(1) None of the participants shall have the right to reimbursement of costs of proceedings according to the results thereof if the proceedings

a) could have been commenced even without a petition; this rule shall not apply if the circumstances of the case justify awarding the reimbursement;

b) ended by concluding a settlement unless anything else was agreed therein concerning the reimbursement of the costs;

c) were stayed.

(2) If a participant has caused by his intention or negligence that the proceedings had to be stayed, such participants shall reimburse the costs thereof. However, if a well-grounded petition was withdrawn due to the behavior of the defendant (another participant of the proceedings), the costs of the proceedings shall be reimbursed by the defendant (another participant of the proceedings).

(3) If the court rejects the lawsuit or another petition for commencement of proceedings, the claimant (petitioner) must give the other participants a reimbursement of their costs.

## § 147

(1) The court may order that a participant or his representative reimburse costs of the proceedings that would not have arisen otherwise if they caused them by their intention or negligence or by a chance occurred to them.

(2) If witnesses, experts, interpreters or those who had any duty related to carrying out evidence have caused by their intention or negligence costs of proceedings that would not have arisen otherwise, the court may order that they give the participants a reimbursement thereof.

### § 149

(1) According to the results of the proceedings, the state shall have a right against the participants to reimbursement of costs of the proceedings paid by the state unless the participants meet the requirements for exemption from judicial fees.

(2) If witnesses, experts, interpreters or those who had any duty related to carrying out evidence have caused by their intention or negligence costs of proceedings that would not have arisen otherwise, the court may order that they pay the reimbursement to the state.

### § 150

(1) If an attorney of law represented a participant who was awarded a reimbursement of proceedings, the person upon whom the reimbursement was imposed shall pay it to the attorney of law.

(2) If an appointed attorney of law represented a participant who was awarded reimbursement of costs of proceedings, the person upon whom the reimbursement of these costs was imposed shall pay the state the reimbursement of cash expenses of the attorney of law and a remuneration for representation.

(3) The provision of paragraph 1 shall apply analogously if the participant was represented by a notary within the scope of his authorization provided by special regulations.[57]
--------------------
57) § 3 of the Act No. 358/1992 Sb., on notaries and their activity (Notarial Code), as amended by the Act No. 30/2000.

### § 150

If there are reasons deserving a special regard, exceptionally, the court shall not have to award a reimbursement of costs of proceedings fully or in part.

## Deciding on the costs of proceedings
### § 151

(1) The duty to reimburse the costs of proceedings shall be decided by the court even without a petition in the decision by that the proceedings before the court are terminated; in case of the reimbursement of the costs of proceedings according to § 147 and § 148 section 2, the court may do so even in the course of the proceedings; in this case, the court shall usually decide as soon as these costs arise.

(2) In deciding on the reimbursement of costs of proceedings, the amount of fees for representation by an attorney of law or by a notary in the framework of his authorization provided by a special regulation[57] shall be decided by the court according to flat rates provided by a special regulation for proceedings in one instance; however, if the matter is awarding a reimbursement of costs of proceedings according to § 147 or if it is justified by the circumstances of the case, the court shall proceed according to the provisions of a special legal regulation concerning extracontractual remuneration.[64] Reimbursement of the value added tax is determine by the court from the fess of representation, form the remunerations, from the notary's fees for the acts as judicial commissioner and from his cash expenses pursuant to the rate of the value added tax provided by special legal regulations. 57d) Reimbursement of wage (salary) and reimbursement of cash

expenses shall be determined by the court according to special legal regulations. Otherwise, the court shall proceed from the costs that have provable occurred to the participant.

(3)  The presiding judge may determine the amount of the costs in the written execution of the decision.

(4)  Even if the court has decided on the reimbursement of costs of proceedings by a separate decision, the period of performance shall start running from the moment when the decision awarding the reimbursement became final and conclusive.

--------------------

57) § 3 of the Act No. 358/1992 Sb., on notaries and their activity (Notarial Code), as amended by the Act No. 30/2000.
64) § 6 ff. of the Ordinance No. 177/1996 Sb., on fees of attorneys of law and reimbursements of attorneys of law for provision of legal services (Bar Tariff).

§ 151a

The issue who and in what sum has to pay the remuneration of a notary and his cash expenses shall be decided in the inheritance proceedings by the court in the ruling terminating the proceedings before the court.

\*          \*          \*

§ 374a

The Ministry determines in a ordinance

a)  amount and method of determination of fees and remuneration of cash expenses of notaries as judicial commissioners,
b)  cases in which consultation of file cannot be allowed since the content of the file has to remain in secret
c)  flat rates of fees for representation of a participant by an attorney or notary to the extent of his authorization provided by special legal regulations 57) for the purpose of decision of reimbursement of costs of the proceedings
d)  amount of the fees of administrators of undertakings, method of its determination and determination of remuneration of their cash expenses.

EXHIBIT 2.

# CZECH REPUBLIC



## CIVIL CODE
### "Občanský zákoník"

**2005 edition**

*TradeLinks*

the pledge (the thing subject to lien) instead of the lien creditor (sublienor).

(3) The provisions on lien shall apply as appropriate to sublien.

## Division 2
## Right of Retention (Possessory Lien)

### Section 175

(1) A person who is obliged to hand over another person's movable thing held by him may retain it for the purpose of securing a receivable due to him from the person to whom he would otherwise be obliged to hand over the thing.

(2) A right of retention (possessory lien) also arises in the case of a receivable which is not yet due (mature) provided that a bankruptcy petition has been filed against the debtor.

### Section 176

(1) A right to retain a thing shall not arise if the person in whose favour such right might arise holds the thing unlawfully, in particular if the person acquired the thing in an unlawful manner or by means of a trick.

(2) A right to retain a thing shall not pertain to a person who was ordered, when a thing was passed on to him, to handle it in a manner which is incompatible with proper exercise of the right of retention; this shall not apply if a bankruptcy petition has been filed against the debtor.

### Section 177

(1) A right of retention (possessory lien) arises when an entitled person expresses his will (unilateral act) to retain (withhold) a certain thing.

(2) An entitled person is obliged to inform the debtor of his retention of the thing and the reasons for this without delay; if the contract under which which such thing is with the person was made in writing, the person must also notify the debtor in writing.

### Section 178

Regarding the care of a retained thing and reimbursement of the related expenses, the person who retains the thing has the same status as a lien creditor has in relation to a thing delivered in pledge.

### Section 179

Based on his right of retention, the creditor is entitled to preferential satisfaction from the proceeds of the retained thing when the judicial ruling is executed, his entitlement being satisfied before the other creditors' claims, even before the claim of the lien creditor.

### Section 180

(1) A right of retention extinguishes when the secured receivable is discharged, or when the retained thing ceases to exist, or when it is handed over to the debtor.

(2) A right of retention also extinguishes if the debtor provides the entitled person, subject to his consent, with another securement.

## PARTS THREE, FOUR AND FIVE
## (Sections 181 to 414)
## Repealed

## PART SIX
## LIABILITY FOR DAMAGE AND UNJUST ENRICHMENT

## CHAPTER I
## PREVENTION OF IMPENDING DAMAGE

### Section 415

Everybody is obliged to behave in such a way that no damage (injury) to health, property, nature and the environment occurs.

Civil Code     § 415 - § 417

*Relating provisions of the Civil Code:*
- *sections 3 to 6, 13, 43, 420, 420a, 421, 441, 451*

*Some relating provisions of other Acts:*
- *sections 170, 171, 175 of the Labour Code;*
- *Act on Railways;*
- *sections 86(2), 88(1) of the Building Code*

*Commentary on section 415:*
The provision of section 415 contains one of the fundamental principles of the Civil Code. Liability for damage is regulated in sections 420 to 450 and liability for unjust enrichment in sections 451 to 459. Liability for defects is regulated individually (with regard to specific issues) and liability for delay (default) is subject to sections 517 to 523.

## Section 416
## Repealed

## Section 417

(1) Anyone who is threatened with damage must take measures to avert its occurrence in a manner appropriate to the circumstances of the threat.

(2) If the threat is serious, the person threatened has the right to demand at a court that it orders suitable and commensurate precautions to avert the impending damage.

*Relating provisions of the Civil Code:*
- *sections 6, 127, 418, 419, 441*

*Some other relating provisions:*
- *section 364 of the Commercial Code*

*Commentary on section 417:*
A person who is threatened with damage may be either an individual or a legal entity. Such person is obliged to take measures to avert the impending damage. Non-performance of this duty may be sanctioned under section 441.

130

---

Civil Code     § 418 - § 419

## Section 418

(1) Anyone who has caused damage in an effort to avert directly impending danger, which he has not himself brought about, shall not be liable for such damage, unless, in the given circumstances, the danger could have been averted in a different manner or unless the consequences of his conduct are obviously equally serious or even more serious than the consequences of the danger which threatened.

(2) Likewise, a person is not liable for damage caused by acts that are necessary to his defence against an impending or persisting attack. However, a defence which is obviously disproportionate to the nature and danger of the attack shall not be deemed as necessary.

*Some relating provisions of other Acts:*
- *sections 13, 14 of the Criminal Code;*
- *section 15 of the Labour Code*

*Commentary on section 418:*
The regulation in section 418 corresponds to the provisions of the Criminal Code. A person who has caused damage when averting a directly impending danger which he has not brought about, or when acting in necessary defence against an impending or persisting attack is excluded from liability for such damage.

## Section 419

Any person who averted impending damage has the right to reimbursement for expenses which he reasonably incurred, as well as to compensation for damage which he thereby suffered, and he has this right also against the party in whose interest he acted. However, such compensation shall not exceed the total sum of the averted damage.

*Relating provisions of the Civil Code:*
- *sections 417, 418, 443 to 450*

*Some other relating provisions:*
- *sections 192, 205 of the Labour Code*

131

*Commentary on section 419:*

*Damages and reimbursement of expenses are due to a person who acted in accordance with the provisions of sections 417 and 418. Damages can be provided up to the amount of the damage averted.*

# CHAPTER II
# LIABILITY FOR DAMAGE

## Division 1
## General Liability

### Section 420

(1) Any person is liable for damage which he caused by breaching a legal obligation (duty).

(2) Damage is deemed to have been caused by a legal entity or an individual if it was caused within the scope of performance of activity by persons whom the legal entity or individual assigned to perform such activity (or certain tasks within the framework of such activity). These persons are not themselves liable under this Code for the damage thus caused; their liability under labour provisions is not thereby affected.

(3) A person (an entity or an individual) shall be relieved of his liability if he proves that he did not cause the damage.

*Relating provisions of the Civil Code:*
– sections 7 to 10, 18 to 21, 420a to 423, 428, 432, 433, 442 to 450

*Some relating provisions of other Acts:*
– section 135(2) of the Civil Procedure Code;
– sections 172 to 186, 205(1) of the Labour Code;
– sections 4, 5 of the Criminal Code;
– sections 40(2), 228 of the Criminal Procedure Code;
– section 78(2) and (3) of the Act on People's Health Care;
– sections 373 to 386 of the Commercial Code

*Commentary on section 420:*

*The prerequisites for liability for damage are:*
– *a breach of a legal obligation (duty);*
– *damage caused (detriment);*
– *a connection between such damage and the damage caused;*
– *bringing about such damage, or objective liability for such damage.*

### Section 420a

(1) Any person shall be liable for damage which he causes to another person while operating a business (an enterprise).

(2) Damage is considered to have been caused while operating a business (an enterprise) if it was caused:

(a) by an activity performed in the operation of a business, or by a thing used in such activity;

(b) by the physical, chemical, or biological effects of an operation on its surroundings;

(c) by the lawful performance, or the making of arrangements for such performance, of those kinds of work which cause damage to someone else's real estate, or which substantially impede or make impossible the use of some one else's real estate.

(3) A person (entity or individual) shall only be released from liability for damage caused upon proving that such damage was caused either by an unavoidable event not arising from the operation of a certain business (an enterprise), or by own conduct of the person injured.

*Relating provisions of the Civil Code:*
– sections 420, 421

*Some relating provisions of other Acts:*
– sections 281(1)(a), 273 to 386 of the Commercial Code;
– sections 187 to 205c of the Labour Code;
– Act on Roads

Civil Code                                                    § 422 - § 424

- a minor or a person suffering from a mental disorder is liable for damage;
- a person exercising supervision over another person is liable for damage (because the duty to supervise has been neglected);
- a minor or a person suffering from a mental disease and the supervising person are liable for damage;
- nobody is liable.

### Section 423

Any person who is guilty of having brought himself into a condition (sane) in which he is incapable of controlling his conduct or estimating its consequences must provide compensation for the damage he causes while he is in such condition; persons who have intentionally put him into such condition shall be liable jointly and severally with him.

*Relating provisions of the Civil Code:*
- sections 420, 420a, 442, 809(2), 820, 826

*Some relating provisions of other Acts:*
- section 12(3) of the Criminal Code;
- section 186 of the Labour Code

*Commentary on section 423:*
This section applies to liability for damage when caused by an incarcerated person.

### Liability for Damage Caused by an Intentional Contravention of Morality
### Section 424

Any person who causes damage by an intentional contravention of morality (good morals) shall be liable for the damage.

*Relating provisions of the Civil Code:*
- sections 3, 39, 415

*Some other relating provisions:*
- section 187(1) of the Labour Code

136

---

§ 424 - § 428                                                    Civil Code

*Commentary on section 424:*
The term "morality" ("good morals") is not defined. Whether damage has been caused by an intentional contravention of morality is determined by the judge.

### Section 425
### Repealed

### Section 426
### Repealed

### Liability for Damage Caused by the Operation of Means of Transport
### Section 427

(1) Individuals and legal entities operating means of transport as their business shall be liable for any damage caused by the special nature of those operations.

(2) The same liability shall be borne by any other operator of a motor vehicle or a motor vessel, or an aircraft.

*Relating provisions of the Civil Code:*
- sections 7 to 10, 18 to 21, 420, 420a, 430, 764(1), 769(3), 772

*Some relating provisions of other Acts:*
- section 15 of the Act on Private International Law;
- Act on Railways;
- Act on Civil Aviation;
- Inland Water Transport Act;
- Act on Ocean Transport (Shipping)

*Commentary on section 427:*
Liability under section 427 is general (objective) liability.

### Section 428

The operator cannot exonerate himself from liability if the damage was caused by circumstances which originated from his operations.

137

EXHIBIT 3.

1.    Instructions Relating to Kotva's Claim for Violation of the Czech Civil Code

1.1    Introduction

The Czech Civil Code provides that:

"Any person who causes damage by an intentional contravention of proper morality shall

be liable for the damage."

Authority

Czech Civil Code § 424

- 4 -

1.2    Elements

In order to find Andrew Weiss or Weiss Asset Management liable for intentional contravention of proper morality, you must be convinced that Kotva has proven each of the following things:

First, that the defendant committed some act that contravened proper morality;

Second, that the defendant intended to contravene proper morality by committing that act;

Third, that the defendant's act that contravened proper morality damaged Kotva.

In order to find that a defendant has intentionally contravened proper morality, you must find that the defendant acted intentionally—that is not because of ignorance, mistake or accident—and also that the defendant intended to contravene proper morality.

In order to find the defendants liable, it is not enough for you to find that the defendant acted improperly. Rather, you must find that the act was so outrageous that it shocks the conscience, and a failure to outlaw the act is inconsistent with the need to ensure a relationship between legal norms and the moral code of society. You must also consider the defendant's alleged actions in context. What is outrageous in one setting may not be outrageous in another setting.

Authority

Commentary on section 424 ("The term 'proper morality' is not defined. Whether damage has been caused by an intentional contravention of proper morality is determined by the judge.").

Commentary on the Czech Civil Code (Jehlicka/ Svestka/ Skarova; C H Beck, 8th edition) ("[T]he Civil Code imposes sanctions only on the most serious behaviour against good

- 5 -

Case 1:05-cv-10679-WGY    Document 217    Filed 03/28/2007    Page 6 of 17

morals. It concerns presumably the cases of direct intention (when the person who causes damages intends by its act against good morals to cause damages).")

Czech Supreme Court ruling dated April 26, 2006 (ref. no. 32 Odo 466/2004) ("[T]he circumstances of the case must indicate the existence of exceptional circumstances of the stated case which justify the need of the remedy of morality as a fair balancing measure for the assessment of the relevant circumstances of the relevant case. The application of the good morals has to be considered as an ultimate solution needed to ensure necessary relation between legal norms and the moral code of society . . . .").

- 6 -

1.3    Right to Access the Courts

In the Czech Republic, everyone has the right to assert, through the legally prescribed

procedure, his rights before an independent and impartial court.

<u>Authority</u>

Charter of Fundamental Rights and Basic Freedoms of the Czech Republic, Article 36(1)

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 2

### Existence of Prospective Business Relationship

In order to show that it had a prospective business relationship with the Irish Investors, the plaintiff need not establish that it actually had entered into any specific contract or agreement with the Irish Investors. Rather, it is sufficient if you find from the evidence that there were either prior dealings or a prior course of conduct between the plaintiff and the Irish Investors, from which the plaintiff had a reasonable expectation of future economic benefit. The plaintiff must show this expected benefit with some degree of specificity, demonstrating that it was a realistic expectation, but need not show reasonable expectation of future economic benefit with certainty, because prospective things in nature are necessarily uncertain. The law requires more than a mere hope or optimism; what is required is a reasonable likelihood or probability.

Powers v. Leno, 24 Mass. App. Ct. 381, 385 (1987); Owen v. Williams, 322 Mass. 356, 362 (1948); Hon. Patrick F. Brady, Massachusetts Superior Court Civil Practice Jury Instructions, §12.5.2 (MCLE 1998 & Supp. 2001).

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 3

### Requirement of Knowledge

To find for the plaintiff, you must also find that the defendants knew of the existence of the
prospective business relationship between the plaintiff and the Irish Investors. The requirement
of knowledge may be found if, from the facts and circumstances of which the defendants had
knowledge, the defendants should have known of the existence of the prospective business
relationship between the plaintiff and the Irish Investors.

Keene Lumber Co. v. Leventhal, 165 F.2d 815, 821-22 (1st Cir. 1948); Hon. Patrick F. Brady,
Massachusetts Superior Court Civil Practice Jury Instructions, §12.4.3 (MCLE 1998 & Supp.
2001).

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 4

### Requirement of Intent

A person's intent is his objective or purpose.

Under the law, an actor is presumed to have intended the consequences of his act if the actor either desired to cause those consequences or knew that the consequences were certain, or substantially certain, to result from his act. In the present case, therefore, in determining whether the defendants intended to interfere with plaintiff's prospective business relationship with the Irish Investors, you should consider whether the defendants either desired to achieve that result or knew that such interference was certain, or substantially certain, to result from his actions.

Restatement (Second) of Torts § 8(a) (1979); Hon. Patrick F. Brady, Massachusetts Superior Court Civil Practice Jury Instructions, §12.4.4 (MCLE 1998 & Supp. 2001).

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 5

### Improper Motive or Means

You may find that defendants acted for an improper purpose in interfering with the plaintiff's prospective business relationship with the Irish Investors if you find that it acted for some unlawful purpose, such as to extort the plaintiff.

Also, you may find that the defendant used improper means to interfere with the plaintiff's prospective business relationship with the Irish Investors if you find that the defendant's conduct involved fraud or other unlawful conduct, such as abusing process.

To satisfy this element of the tort, plaintiff must prove that the defendants acted with either improper motive or improper means. The plaintiff need not prove both improper motive and improper means. One will suffice.

United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 816-17 (1990); Restatement (Second) of Torts § 767 (1979); Hon. Patrick F. Brady, Massachusetts Superior Court Civil Practice Jury Instructions, §12.4.5 (MCLE 1998 & Supp. 2001).

Case 1:05-cv-10679-WGY    Document 217-4    Filed 03/28/2007    Page 7 of 32

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 6

### Damages for Tortious Interference

If you find for the plaintiff on its claim for tortious interference with a prospective business relationship, you may award the plaintiff such a sum as you believe, from the evidence, will fairly and reasonably compensate the plaintiff for the damage, if any, it sustained because of the defendant's acts, and for the anticipated profits of which it was deprived, provided they are of such a nature as have been proved by a preponderance of the evidence and are not speculative in nature.

In the case of business torts, like tortious interference with advantageous business relations, an element of uncertainty in the assessment of damages is not a bar to their recovery. An award of damages can stand on less than substantial evidence, particularly in the case of business torts, where the critical focus is on the wrongfulness of the defendant's conduct.

Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 777 (1986); National Merchandising Corp. v. Leyden, 370 Mass. 425, 430 (1976); Ricky Smith Pontiac, Inc. v. Subaru of New England, Inc., 14 Mass. App. 396, 426 (1982); Hon. Patrick F. Brady, Massachusetts Superior Court Civil Practice Jury Instructions, §12.5.3 (MCLE 1998 & Supp. 2001).

PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 7

Abuse of Process - Elements

The elements of the tort of abuse of process in Massachusetts are: (1) that process is used (2) for an ulterior or illegitimate purpose, (3) resulting in damage to the plaintiff. The essence of the tort is use of process as a threat or club to coerce or extort some collateral advantage not properly involved in the proceeding.

Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 775-76 (1986); Refuse & Environmental Sys., Inc. v. Industrial Services of America, Inc., 932 F.2d 37, 41 (1st Cir. 1991); Broadway Mgmt. Services, Ltd. v. Cullinet Software, Inc., 652 F.Supp. 1501, 1503 (1987); Hon. Patrick F. Brady, Massachusetts Superior Court Civil Practice Jury Instructions, §21.1 (MCLE 1998 & Supp. 2001).

PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 8

**Process**

"Process" refers to papers issued by a court to bring a party or property within the jurisdiction of the court.

Jones v. Brockton Pub. Mkts., Inc., 369 Mass. 387, 390 (1975); Silvia v. Building Inspector of W. Bridgewater, 35 Mass. App. Ct. 451, 454 n.4 (1993); Ferraro v. First Safety Fund Nat'l Bank, 11 Mass. App. Ct. 928 (1981) (rescript); Chemawa Country Gulf, Inc. v. Wnuk, 9 Mass. App. Ct. 506, 508 (1980); Hon. Patrick F. Brady, Massachusetts Superior Court Civil Practice Jury Instructions, §21.2 (MCLE 1998 & Supp. 2001).

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 9

### Ulterior Purpose

The plaintiff must show that the process was used to accomplish some ulterior purpose for which the process was not designed or intended, or that was not a legitimate purpose for the particular process employed.

Ladd v. Polidoro, 424 Mass. 196, 198–00 (1997); Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 775-76 (1986); Refuse & Environmental Sys., Inc. v. Industrial Services of America, Inc., 932 F.2d 37, 41 (1st Cir. 1991); Broadway Mgmt. Services, Ltd. v. Cullinet Software, Inc., 652 F.Supp. 1501, 1503 (1987); FDIC v. Greenberg, 851 F. Supp. 15, 24 (D. Mass. 1994); Hon. Patrick F. Brady, Massachusetts Superior Court Civil Practice Jury Instructions, §21.2.1 (MCLE 1998 & Supp. 2001)

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 10

### Damages for Abuse of Process

The plaintiff must show that damage occurred as the natural and probable consequence of the
process initiated by the defendants.  You may consider damages to compensate the plaintiff for
injury to its business.

Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 775-76 (1986); Malone v.
Belcher, 216 Mass. 209, 212 (1913); Hon. Patrick F. Brady, Massachusetts Superior Court Civil
Practice Jury Instructions, §21.3 (MCLE 1998 & Supp. 2001).