UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
KOTVA a.s. and SPV Co.                              )
                                                    )
            Plaintiff,                              )        Case No. 05-10679-WGY
                                                    )
            v.                                      )
                                                    )
ANDREW WEISS and WEISS ASSET                        )
MANAGEMENT, LLC                                     )
                                                    )
            Defendants.                             )
_____)

## PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE
## EVIDENCE OF DEFENDANTS' ALLEGED DAMAGES

Defendants' only remaining counterclaim is for abuse of process.  Defendants, however,

should be precluded from introducing any evidence of damages[1] at trial for at least three reasons:

(i) defendants have failed in discovery to substantiate their purported damages resulting from

Kotva's alleged abuse of process; (ii) defendants have failed to demonstrate their alleged

damages with any specificity; and (iii) any alleged damages were sustained by an entity -- Weiss

Capital -- which is not even a party to this action.  Accordingly, the Court should grant plaintiffs'

motion in limine.

## I.    Defendants Failed to Substantiate Their Damages in Discovery

In discovery, plaintiffs repeatedly sought the bases of defendants' alleged damages.  In

defendants' interrogatory answers served in May 2006, defendants responded as follows:

---

[1] See e.g. Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 775-76 (1986) (essential elements of the tort are "(1) process was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage.").

Andrew Weiss and Weiss Asset Management have suffered damage to their respective reputations as a result of Kotva's and Harzim's conduct.  Andrew Weiss and Weiss Asset Management have also been damaged through the loss of time of Andrew Weiss.  As a result of injury to reputation and disruption of business, Weiss <u>believes</u> that some investors have chosen not to invest with Weiss . . . <u>The basis for these damages calculations will be established through the testimony of Andrew Weiss and Georgiy Nikitin</u>. (emphasis added).

(<u>See</u> Second Supplemental Response to Interrogatory No. 18 of Andrew Weiss's Second Supplemental Response to Kotva's First Set of Interrogatories, attached as Ex. A).  In deposition, however, Weiss, individually and/or as WAM's Rule 30(b)(6) designee, either could not answer or refused to answer questions concerning defendants' damages:

Q.  What is the total dollar value of the damages Weiss and Weiss Asset Management are claiming in this case?

A.  I don't know.  I don't know.

Q.  If you don't know, who does?

A.  That hasn't been -- I think those will be determined at trial.

***

Q.  Can you identify one person who has declined to invest with any of your companies as a result of this lawsuit?

A.  That's confidential information that we don't reveal.

Q.  So you won't answer that question?

A.  I will not.  We have a policy of committing to that.

Q.  So how are you going to prove your damages at trial, if you won't identify the investor?

A.  I might be able to ask for a waiver from the people at trial.  That's one possibility.

(<u>See</u> Weiss deposition testimony at pp. 461, 463-64 attached as Ex. B).

SPV Co. also served interrogatories seeking the basis for defendants' alleged damages. This time, defendants responded by stating that they "<u>have already provided documents</u>"

demonstrating their damages and "the other losses of opportunity <u>can be testified to by Bonnie</u> <u>Weiss, Andrew Weiss, and Georgiy Nikitin</u>."  (<u>See</u> Answer No. 15 of Defendants' Response to First Set of Interrogatories of SPV Co., attached as Ex. C).  This response is patently insufficient, not to mention false because, as set forth above, Weiss refused to answer questions in deposition concerning defendants' damages.

Contrary to defendants' interrogatory answers, moreover, defendants have produced <u>no</u> <u>documents</u> supporting their alleged damages.  To the extent defendants believe that they have produced such documents, defendants have failed to identify which of the documents from their approximate 24,000 page production they are relying upon as evidence of their damages.[2]  It is defendants' burden to establish their damages.  Statements such as "records have been produced which demonstrate the Weiss' parties loss of business opportunity" (<u>see</u> Ex. C, Answer No. 15 at p. 15) are simply inadequate to afford plaintiffs an opportunity to effectively cross-examine defendants' testimony at trial concerning damages and otherwise challenge their evidence of damages.

In short, defendants have bounced from initially responding that they would provide the bases of their damages by deposition testimony, then refusing to answer questions relating to damages in depositions, to claiming that they have provided documentary evidence of their damages without actually producing such documents and/or without specifying such documents. Defendants' flip-flopping and failure to comply with its discovery obligations is grounds for exclusion at trial.

---

[2] Defendants' reference to three pages of its production in Answer No. 18 (Ex. A) are completely irrelevant to their claim for damages.

## II.    Defendants Have Failed to Demonstrate Their Alleged Damages with Specificity

The sum of defendants' answers to interrogatories explaining their damages is that they have lost business as a result of this action against them.  For example, defendants state:

- "There are numerous examples, included within the documents already provided, and to be provided through oral testimony, of foundations' and endowments' unwillingness to proceed with the Weiss Funds as a result of the disclosure of the plaintiffs' abuse of process." (Ex. C, Answer No. 15 at p. 13).

- "the firm has been unable to contract with Charles Schwab and J.P. Morgan – **and others** – which are important gateways to business opportunities."  (Ex. C, Answer No. 15 at 14) (emphasis added).

- "These and **other important counter-parties** have refused to do business with the Weiss funds."  (Ex. C, Answer No. 15 at 14) (emphasis added).

Despite these general, self-serving assertions, defendants have presented no specific evidence of any deals or contracts with Schwab, J.P. Morgan, or any "others" that were broken as a result of this litigation.  Cf. Jorgensen v. Massachusetts Port Auth., 905 F.2d 515,  526 (1st Cir. 1990) (Massachusetts courts require proof of "specific lost job opportunities before they would allow reputation damages").  Defendants, moreover, have not identified who the "others" or "other important counter-parties" may be, and apparently defendants intend to reveal their identities on the stand.  That tactic subverts the discovery process and cannot be allowed.

Further, defendants' damages are entirely speculative, as evidenced by the following email in which Weiss writes:

> My largest damages from the civil and criminal suits come from the lack of attention I've been able to pay to my business.  I spoke with my employees in November and December about shorting sub-prime residential mortgages, if I had not been involved in these case (sic) I would have made sure that this was done . . .

(A copy of this email is attached as Ex. D).  In other words, the "largest" aspect of defendants' damages is that Weiss' time spent attending to this action has caused him to spend less time at his business, which has caused his employees to fail in their responsibilities (i.e. shorting sub-

4

prime residential mortgages), which has caused damage to Weiss and his business.  Quite simply, the link between any lost profits suffered by defendants and this lawsuit is too attenuated to support a damages award.

### III.    Weiss and WAM Have Suffered No Damages

Even assuming defendants produced sufficient evidence of damages to present at trial, the undisputed evidence shows that any damage as a result of the lost profits claimed by defendants actually has been suffered by Weiss Capital, not Weiss or WAM.  Defendants admit that Weiss Capital is the investment manager of the funds and, as such, the party who allegedly lost business opportunities.  (See Defendants' Re-Stated Counterclaims for the First and Second Trials at ¶ 14 ("In 2002, Weiss Capital took over the management of Brookdale Global Opportunity Fund ("BGO")…"); see also Agreed Upon Trial Ex. 150 at p. 32 (bates no. WP0004185 (Weiss Capital is the investment manager), attached as Ex. E).  Defendants further admit that their damages are based on loss of the management fee that would have been generated by the loss of business sustained.  (See Ex. C, Answer No. 15).  Accordingly, by their own admission, defendants Weiss and WAM have suffered no damages and should be precluded from introducing any such damages evidence at trial.

## CONCLUSION

For the foregoing reasons, the Court should exclude any evidence of defendants' alleged damages at trial.

Respectfully submitted,

KOTVA A.S. and SPV CO.,

By their attorneys,

/s/ Joel G. Beckman
Joel G. Beckman (BBO# 553086)
William C. Nystrom (BBO# 559656)
Dana A. Zakarian (BBO# 641058)
NYSTROM BECKMAN & PARIS LLP
10 St. James Ave., 16th Floor
Boston, Massachusetts 02116
(617) 778-9100
(617) 778-9110 (fax)

Dated: October 17, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 17th day of October, 2007.

/s/ Joel G. Beckman



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s.,<br><br>   Plaintiff,<br><br>  v.<br><br>ANDREW WEISS and WEISS ASSET<br>MANAGEMENT, LLC,<br><br>   Defendants.<br><br>───────────────────────<br><br>ANDREW WEISS, WEISS ASSET<br>MANAGEMENT LLC, K T, INC. and CVF<br>INVESTMENTS, LTD.,<br><br>   Counterclaim-plaintiffs,<br><br>  v.<br><br>KOTVA a.s., MARTIN BENDA, RICHARD<br>HARAZIM, FORMINSTER ENTERPRISES,<br>LTD., SPV CO and JOHN DOES 1–5,<br><br>   Counterclaim-defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 05-10679-RCL<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ANDREW WEISS'S SECOND SUPPLEMENTAL RESPONSE
## TO KOTVA'S FIRST SET OF INTERROGATORIES

### GENERAL OBJECTIONS

Weiss incorporates by reference all general objections set forth in his response to Kotva's

First and Second Set of Interrogatories as if set forth fully herein.

**Supplemental Response to Interrogatory No. 17:**

Weiss objects to this interrogatory on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to this Objection and the General Objections above, Weiss answers as follows:

The valuations of Kotva referred to in Weiss's initial response to this interrogatory are the valuations outlined in documents K0016 and WP0000684.

**Interrogatory No. 18**

Identify any and all damages that Defendants and Counterclaim Plaintiffs are claiming in this action and state the basis for each category of damages. If your claimed damages include recovery of legal fees paid to McDermott Will & Emery LLP, legal fees paid to Czech counsel, and/or fees paid to Madeline Albright and/or The Albright Group, state whether those fees have been paid or funded by BGO investors or BIP investors, and whether Weiss has informed BGO investors or BIP investors that they are paying or funding such fees.

**Initial Response to Interrogator No. 18:**

Weiss objects to this interrogatory on the grounds that it is vague, seeks information that the parties agreed would not be the subject of discovery at this phase in the litigation, is not reasonably calculated to lead to the discovery of admissible evidence, and to the extent it calls for information protected by the attorney-client privilege or work product doctrine. Subject to these Objections and the General Objections above, Weiss answers as follows:

Weiss's damages include the following categories: legal fees and other fees incurred defending against this case; legal fees and other fees incurred in connection with the Czech criminal investigation, lost business opportunities, damage to reputation, and lost time.

After legal proceedings had already commenced, BIP and QVT have advanced loans to CVF Investments. CVF Investments has paid legal fees on behalf of the Counterclaim-Plaintiffs. The amount of BIP's loan is, in the opinion of its auditor, not material and has not been disclosed.

11

**First Supplemental Response to Interrogatory No. 18:**

Weiss incorporates by reference his objections and responses to this Interrogatory as set forth in his Response to Kotva's First and Second Set of Interrogatories as if set forth fully herein. Subject to these objections, Weiss further answers as follows:

Weiss's initial answer to this interrogatory included the following statement:

> After legal proceedings had already commenced, BIP and QVT have advanced loans to CVF Investments. CVF Investments has paid legal fees on behalf of the Counterclaim-Plaintiffs. The amount of BIP's loan is, in the opinion of its auditor, not material and has not been disclosed.

At the time Weiss answered the interrogatory, Weiss believed these statements to be true. However, the final sentence is inaccurate. In fact, footnote 6 of the December 31, 2005 BIP audited financial statements issued by KPMG describes BIP's loan to CVF Investments. *See* WP0017151.

**Second Supplemental Response to Interrogator No. 18:**

Weiss incorporates by reference his objections and responses to this Interrogatory as set forth in his Response to Kotva's First and Second Set of Interrogatories as if set forth fully herein. Subject to these objections, Weiss further answers as follows:

Andrew Weiss and Weiss Asset Management have been damaged in that Kotva and Richard Harazim have unjustly forced them to incur attorneys' fees and associated costs in the amount of approximately $2.2 million as of the end of August 2006. This figure does not include fees paid to Peterka & Partners because, at this stage of the litigation, Peterka & Partners has not segregated time spent in defense of the civil and criminal litigation initiated by Kotva from time spent by Peterka & Partners on other matters. These damages continue to grow.

Andrew Weiss and Weiss Asset Management have suffered damage to their respective reputations as a result of Kotva's and Harazim's conduct. Andrew Weiss and Weiss Asset

Management have also been damaged through the loss of time of Andrew Weiss. As a result of injury to reputation and disruption of business, Weiss believes that some investors have chosen not to invest with Weiss. *See, e.g.*, WP0018334–WP0018336. These damages have two components. For each million dollars not invested, Weiss and Weiss Asset Management have lost approximately $19,000 in management fees and approximately $95,000 in performance fees for the period from February 2005 to date. These damages continue to grow and would continue to grow indefinitely. Accordingly, Weiss claims the net present value of the lost revenue stream as of the date of judgment.

Andrew Weiss and Weiss Asset Management have been damaged through the loss of time of Georgiy Nikitin for which the Weiss Parties claim damages of a pro rata share of his annual compensation, which is approximately $155,000. A conservative estimate of the amount of time spent by Mr. Nikitin as a result of the counterclaim-defendants' conduct is twenty-five hours per week.

Andrew Weiss has been damaged through the loss of his time, for which he claims damages based on the fair market value of his time, such value to be determined by the jury. A conservative estimate of the amount of time spent by Professor Weiss as a result of the counterclaim-defendants' conduct is twenty hours per week.

The basis for these damages calculations will be established through the testimony of Andrew Weiss and Georgiy Nikitin. Weiss specifically reserves the right to supplement this interrogatory as additional information is gathered and additional costs are incurred.

## Interrogatory No. 19

With respect to the August 23, 2004 letter to Martin Benda and Richard Harazim (attached thereto) please state in complete detail (1) why you are willing to "attempt to influence Gilroy" to withdraw its complaint in exchange for sale of Kotva shares for 131 million CZK; and (2) state the basis of the representation that "we do not exert control over Gilroy (and Balfindor) or petitions submitted by them."

I declare under penalty of perjury that the foregoing is true and correct.

As to objections,

ANDREW WEISS

Edward P. Leibensperger (BBO# 292620)
Benjamin A. Goldberger (BBO# 654357)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts  02109-1775
(617) 535-4000

*Counsel for Andrew Weiss*

Dated: October 20, 2006

Dated: October 20, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document is being served by regular mail and electronic mail on counsel for Kotva a.s. and Richard Harazim on October 20, 2006.

Benjamin A. Goldberger

BST99 1520296-1.072198.0012

15

B

345

Volume:  II

Pages:  345 - 618

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

C.A. No. 05-10679-RCL


KOTVA, a.s.,

        Plaintiff,

    v.

ANDREW WEISS and WEISS ASSET

MANAGEMENT, LLC,

        Defendants.




\*\*\*\*\*\*\*\*\*\*

DEPOSITION OF ANDREW WEISS

Friday, January 26, 2007

Nystrom, Beckman & Paris, LLP

10 St. James Avenue

Boston, Massachusetts

9:37 a.m. to 6:15 p.m.

Reporter:  Linda M. Grieco

Andrew Weiss

460

1    Nikitin that could have been spent on other matters.

2    Damages due to the loss of my time, my personal time

3    that could have been spent on other matters.

4    Possibly damages due to the time that other

5    employees have spent on this matter, aside from

6    Georgiy Nikitin and myself.  Possibly a pro rata

7    share of the rent that we pay for the business.  Let

8    me -- since you want me to be exhaustive, give me a

9    few moments to think if I've omitted anything.

10    Travel expenses, Xeroxing costs.  Any travel

11    expenses we've incurred, Xeroxing costs, any other

12    costs associated with that, copying costs, telephone

13    calls, cost of phone calls, retrieval of documents,

14    document retrieval.  I haven't discussed this with

15    my lawyers, but possibly pain and suffering incurred

16    by my wife because of the harassments.

17        Q.  Did you say harassments?  I didn't hear you.

18        A.  Yes, because possibly the pain and suffering

19    due to my wife -- caused to my wife and myself and

20    my children.  Possibly relationships with counter

21    parties that changed the nature of our contracts

22    because of the lawsuits, that the contracts -- we

23    might have more onerous contract terms or they might

24    terminate our contracts because of the lawsuits

Andrew Weiss

461

1    and/or because of the criminal charges.  We might

2    not be able to enter into certain contracts with

3    parties because of the criminal charges.  It's

4    possible that we might have some shareholders

5    withdraw because of that.  We might have had

6    shareholders withdraw because of the charges and the

7    negative publicity.  Those are the -- I might think

8    of others.  But that's the ones that come to my mind

9    right now.

10       Q.  What is the total dollar value of the

11   damages Weiss and Weiss Asset Management are

12   claiming in this case?

13       A.  I don't know.  I don't know.

14       Q.  If you don't know, who does?

15       A.  That hasn't been -- I think those will be

16   determined at trial.

17       Q.  Prior to yesterday and today's deposition,

18   did you do anything to prepare to give testimony on

19   the damages that Weiss and Weiss Asset Management

20   are claiming in this case?

21       A.  Yes.

22       Q.  What did you do?

23       A.  I told Georgiy Nikitin to help compute them.

24       Q.  Did he do so?  You told him that yesterday,

Andrew Weiss

462

1   right, during your deposition?

2      A.   Yes.

3      Q.   Has that been done?

4      A.   Yes.

5      Q.   Do you have that information?

6      A.   In my -- I have a piece of paper that Mr. --

7   a piece of paper with me that has that information

8   on it.

9           MR. BECKMAN:  Why don't we mark that as

10  the next exhibit. Just so the record is clear, I've

11  yet to be given this document, whatever we're

12  marking as an exhibit.

13          (Exhibit 18 marked for identification)

14          MR. BECKMAN:  Ben, could I use your

15  copy, since I don't have a copy?

16          MR. GOLDBERGER:  Sure.

17     Q.   Sir, I'm handing you what's been marked as

18  Exhibit Number 18.

19          (Document exhibited to witness)

20     Q.   Before I get to 18, what facts are you aware

21  of to support your allegation that your reputation

22  has been damaged?

23          MR. GOLDBERGER:  Objection.

24     A.   The numerous -- the newspaper articles that

Andrew Weiss

463

1    appeared in the Wall Street Journal and in the

2    Boston Globe, in particular the Wall Street Journal

3    newspaper articles.  The fact that we had to report

4    in our annual report the lawsuits.  The fact that

5    we're being sued was included in our lawsuits.

6    Telephone calls I've received from investors and

7    friends asking about this matter, and from other

8    prominent former government -- former officials,

9    prominent individuals asking about this.  The CNBC

10   told me that they would not be putting me on

11   television anymore because of these lawsuits.  I

12   used to be a regular -- I used to regularly appear

13   on CNBC as a commentator.

14       Q.  Can you identify one person who has declined

15   to invest with any of your companies as a result of

16   this lawsuit?

17       A.  That's confidential information that we

18   don't reveal.

19       Q.  So you won't answer that question?

20       A.  I will not.  We have a policy of committing

21   to that.

22       Q.  So how are you going to prove your damages

23   at trial, if you won't identify the investor?

24       A.  I might be able to ask for a waiver from the

Andrew Weiss

464

1    people at trial.  That's one possibility.

2        Q.   Have you asked for a waiver yet as of today?

3        A.   Not yet.

4        Q.   Is it your testimony that you do have a list

5    of investors that have refused to invest in

6    companies you're affiliated with as a result of this

7    lawsuit?

8        A.   No, that's not my -- no, that is not.

9        Q.   Can you -- you don't have to by name, but

10   sitting here today, are there investors that you

11   know of that declined to invest with companies

12   you're affiliated with because of this lawsuit?

13       A.   Yes.

14       Q.   How many investors?

15       A.   I don't know the number.

16       Q.   Can you give an approximation?

17       A.   No.

18       Q.   Do you have any idea?

19       A.   I'm not in charge of investor relations.

20   The investor relations people have told me that

21   there are investors who won't invest.  I know of one

22   specific one.  The first time it happened, I was

23   told.  And then subsequently, I don't know.  I don't

24   get involved with the investor relations aspects

C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s. and SPV Co.,      ) | |
|                 ) | |
|        Plaintiffs        ) | Case No. 05-10679-WGY |
|                 ) | |
|        v.                 ) | |
|                 ) | |
| ANDREW WEISS and WEISS ASSET    ) | |
| MANAGEMENT, LLC              ) | |
|                 ) | |
|        Defendants and     ) | |
|        Counterclaimants,    ) | |
|                 ) | |
|        v.                 ) | |
|                 ) | |
| KOTVA a.s., SPV Co., and RICHARD HARAZIM) | |
|        (Counterclaim-Defendants ) | |

## DEFENDANTS' RESPONSE TO FIRST SET OF INTERROGATORIES OF SPV CO.

To the extent that the definitions and instructions provided in the interrogatories
of SPV Co. do not conform to Rules 26 and 33 of the Federal Rules of Civil Procedure,
to the extent that application of definitions and instructions make the interrogatories
unduly broad and burdensome and would require the Weiss parties to repeat answers
already provided in deposition testimony or in answer to previous interrogatories, the
Weiss parties object and respectfully refuse to follow the definitions and instructions
provided by SPV Co., except where new information has become available. With these
caveats, the Weiss parties respond, as follows:

Czech legal question and depends upon whether Kotva took action in selling off its assets and merging into CIS and whether that created certain by-back rights. If so, it is beyond the scope of this litigation. It is the Weiss parties' contention that the above-stated parties had expressed an interest in purchasing CVF's shares several times prior to May 12, 2004, but were unwilling to do so at a fair and reasonable price, and wanted to create the conditions under which they would be able to purchase the shares at a bargain basement price.

15.     State the basis of your allegation (Paragraph 35 of the Re-Stated Counterclaim) that "Weiss and WAM have incurred and continue to incur damages in Massachusetts, including damages to reputation, disruption of their business, loss of new business, lost time and attorneys' fees, as a result of the counterclaim-defendants decision to try to gain an unfair advantage in a business negotiation through civil and criminal litigation for the Forminster Conspiracy." Please include in your answer a detailed itemization of each of your alleged damages, including the dollar amount Defendants claim to have suffered with respect to damage to reputation, disruption of their business, loss of new business, lost time and attorneys' fees, identify person(s) with knowledge of the foregoing allegations and identify all documents concerning this allegation.

**ANSWER**:     The damages have two components: attorney's fees and lost profits.

1. Attorney's fees. The counterclaim plaintiffs have already provided a recent billing of McDermott Will and Emery relating to the legal expenses for the civil charges brought by the plaintiffs against the Weiss parties. Together with the other bills of MWE already

11

provided, this brings the balance of fees on the civil matter brought in the United States to approximately $1,350,000. Further, the Weiss parties reserve the right to amend this response to include additional legal fees and expenses, including those of Dangel & Mattchen, LLP, as the case comes closer to trial.

2. Lost Profits. The counterclaim plaintiffs have already provided documents which demonstrate that they have lost well over $100,000,000 in additional potential investment into their Funds as a direct result of the civil charges brought in this litigation. The lost profits from May, 2005 to the present are $12.8 million on the $100,000,000, based on 2005 calendar year return which was the worst year in the last 5 years. The profit and loss statement for 2005 has already been provided. Claims that the counterclaim plaintiffs violated Civil RICO and committed securities fraud, together with subpoenas issued to investors, have directly caused them to lose this business. The Weiss parties' Funds have had 17 consecutive quarters of highly successful positive returns on investors' funds. The Funds are an extremely attractive investment vehicle.

To understand the effect that the abuse of process caused it is necessary to understand why the abuse caused the counterclaim plaintiffs to lose business and profits. Because of federal laws and regulations, the Counterclaim plaintiffs' Funds approached capacity in early 2006. As a result, in order to accept more individual investment funds and to grow the Weiss parties' funds, it was necessary to attract foundation and institutional money into the Funds. Various employees of the funds, including Andrew Weiss, Bonnie Weiss, and others, attempted to attract significant

foundation and institutional funds, but were thwarted in this activity as a direct result of the spurious Civil RICO and Securities Fraud charges. Foundations and endowments often use gatekeeper services such as Cambridge Associates to determine whether various Funds are suitable for investment. As the Cambridge Associates form already provided indicates, the Weiss parties were required to disclose this litigation. In addition, the Weiss parties were required, as a matter of good accounting practice, to disclose this pending law suit in their annual statements. Numerous endowment funds required the Weiss parties to provide them with annual statements which disclosed this litigation. There are numerous examples, included within the documents already provided, and to be provided through oral testimony, of foundations' and endowments' unwillingness to proceed with the Weiss Funds as a result of the disclosure of the plaintiffs' abuse of process. As a direct result of the spurious charges brought by the plaintiffs in this case, the Weiss parties have been unable to develop the institutional and endowment investment business as they planned, and therefore, have had to limit new personal investments and repeat personal investments in their funds. An example of lost profits is the refusal of the California Institute of Technology [[CalTech] endowment fund to invest in the Weiss parties' funds as a result of the false civil charges. The practice of endowments and gatekeepers to avoid investing in a fund which is enduring civil action is reflected by their comprehension that civil charges of securities fraud and Civil RICO, as well as other such charges, affects the ability of the Fund to realize its investment potential because of the time taken of the Funds' principals to defend the litigation, the inability of the Fund to contract with important counter-parties, and the stigma that such litigation creates. In this case, a great deal of

13

Andrew Weiss's and Georgiy Nikitin's time has been taken with defending against Kotva's and SPV Co's spurious charges, the firm has been unable to contract with Charles Schwab and J.P. Morgan– and others–which are important gateways to business opportunities. In Schwab's case, this has prevented the Weiss parties from hedging– that is short-selling– a number of important stocks. In J.P Morgan's case, it has closed off further investment in stocks in India and China, whose stock markets have seen enormous growth from mid-2005-the present. These and other important counter-parties have refused to do business with the Weiss funds. As a result, the endowments and foundations the Weiss parties have sought to attract have invested elsewhere.

The Weiss parties derive profits from management fees generated by investment funds and through their profit participation, all outlined in contracts already provided. The costs of the Funds' operation are covered, almost completely, through separate expense payments made by investors. As a result the 1% management fee on the total under investment and 25% participation in the funds' net income represent profits to WAM. Over the last several years, Andrew Weiss has re-invested almost all of the after-tax profits back into the business in order to grow it. Companies like Weiss Asset Management do go public and are sold or taken over at multiples of earnings or money under management. In a sale of the Weiss Funds the loss of additional funds under management represents a significantly greater loss of profit than the $12.8 million the counterclaim plaintiffs have lost in profits from operations over the past two and a half years.

14

It should be noted that the loss of profits described herein stands in stark contrast to Kotva's and SPV Co's damages claims. Here, the returns on invested funds are fully known and have persistent over the course of several years, and represent the outcome of the investment expertise that has been developed over many years by the counterplaintiffs and acknowledged over time. Rather than speculation about outcomes from management with no investment expertise or relevant experience and that has made very few investments.  Further, the Weiss parties audited profit and loss statements show the gains, management fees, and profit figures, whereas SPV Co's statements show only losses. The loss of profits can be easily testified to, whereas, without knowing the costs and risk of investment, SPV Co's claims are sheer speculation. Further, records have been produced which demonstrate the Weiss parties' loss of business opportunity.

CalTech alone represents a significant loss. Professor Steven Ross is a trustee of CalTech and an investor in the Weiss funds and can testify from personal knowledge about the loss of opportunity at CalTech. The other losses of opportunity can be testified to by Bonnie Weiss, Andrew Weiss, and Georgiy Nikitin.

SIGNED AND SWORN under the pains and penalties of perjury this 18th day of September, 2007.

Andrew Weiss, individually, and on behalf of
Weiss Asset Management, LLC

D

**Georgiy Nikitin**

| | |
|---|---|
| **From:** | Andrew Weiss |
| **Sent:** | Thursday, March 15, 2007 4:51 PM |
| **To:** | 'Terry Dangel'; 'BGoldberger@mwe.com'; 'ELeibensperger@mwe.com' |
| **Cc:** | Eitan Milgram; Georgiy Nikitin; Paul Sherman |
| **Subject:** | damages |

My largest damages from the civil and criminal suits come from the lack of attention I've been able to pay to my business. I spoke with my employees in November and December about shorting sub-prime residential mortgages, if I had not been involved in these case I would have made sure that this was done, in particular I would have had them shorting the ABX index of Credit Default Swaps of sub-prime residential mortgages. I didn't know at the time of this index. We probably would have made over $10 million if I had not been distracted. We also were pursuing Credit Default Swaps of Investment Banks, again we didn't do anything but if I'd been focused on them we would probably have made around $2 million.
If they want to discuss their lost opportunities from the lawsuits, is there anyway to use this to quantify the value of my time. We could ask Georgiy to look for relevant emails, and get Eitan to testify. Andrew Weiss

Weiss Asset Management

Office 617 778 7780

Fax 617 778 7781

Mobile 617 548 0580

8/30/2007

E



## BROOKDALE GLOBAL OPPORTUNITY FUND

Notes to Financial Statements (continued)

December 31, 2003
*(stated in United States dollars)*

8.  **Management and performance fees**

The investment activities of the Company were previously managed by The Brookdale Group Limited ("BGL"), a related party because BGL is owned by Andrew Weiss who is a director of Brookdale Global Opportunity Fund ("BGO"). BGL received a management fee equivalent to 1% per annum of the monthly net asset value of the Company. The fee was accrued and paid monthly at the rate of one-twelfth (1/12) of one percent (1%) per annum.

Effective July 15, 2003, Weiss Capital, LLC, (the "Investment Manager"), became the Investment Manager of the Company. The Investment Management Agreement provides that the Investment Manager will receive a management fee and a performance fee. The Investment Manager is a related party because Andrew Weiss is a director of BGO and owns Weiss Capital LLC. The Management Fee shall be equal to 1.0% per annum of each Series' net asset value, chargeable to each Series monthly in arrears. A pro rata management fee also will be assessed on any amount not invested with the Company for a complete month. As of the last day of each calendar quarter, the Investment Manager will receive a performance fee equal to a percentage of the increase in the net asset value of each Series during such quarter (after reduction for the management fee). Any such increase may be based on realised and unrealised gains and shall be adjusted for dividends, redemptions and purchases during such year. For investors first becoming shareholders of the Company on or after July 1, 2003, the performance fee shall equal 25%. The performance fee for investors that became shareholders prior to July 1, 2003 shall equal 20% (including for investments made by such shareholders on and after July 1, 2003). The increase in the net asset value and, therefore, the amount of the performance fee may vary between differing Series of each Class. In the event of a redemption on a date other than the last day of a quarter, the performance fee in respect of the shares to be redeemed will be computed on the redemption amount as of the date of such redemption. In the event any Series has losses in net asset value for prior periods, the performance fee for such Series shall not be earned until such losses have been recovered (known as a "high watermark"), provided however, that the loss amount which must be recovered will be adjusted pro rata to account for any redemptions. The Investment Manger, in its sole discretion, may waive, rebate or modify the management fee and/or the performance fee with respect to the shares owned by any shareholder, including shareholders affiliated with the Investment Manager, or share any such fees with third parties, including persons who introduce investors to the Company.

Included in accounts payable and accrued expenses are management fees of US$81,600 and US$6,251 for Class A and Class B respectively. Also included in accounts payable and accrued expenses are performance fees of US$729,217 and US$69,929 for Class A and Class B respectively.

WP0004185