UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                          )
KOTVA a.s. and SPV Co.,                                   )
                                                          )
                   Plaintiffs                             )        Case No. 05-10679-WGY
                                                          )
                   v.                                     )
                                                          )
ANDREW WEISS and WEISS ASSET                              )
MANAGEMENT, LLC                                           )
                                                          )
                   Defendants and                         )
                   Counterclaimants,                      )
                                                          )
                   v.                                     )
                                                          )
KOTVA a.s., SPV Co., and RICHARD HARAZIM                  )
                                                          )
                   Counterclaim-Defendants                )
                                                          )
_____)


### DEFENDANTS' MEMORANDUM ON THE APPLICATION OF CZECH LAW


As the opinion of Professor Kuhn, incorporated herein with its exhibits, demonstrates,

there are significant differences between Czech and American tort law as they relate to the facts

of this case.  Professor Kuhn, a well-regarded author and professor at Prague's leading

university, appointed recently as an *ad hoc* justice to the European Court of Human Rights on the

designation of the Czech Government, has crafted a superb and comprehensive explication of the

only section of the Civil Code, Section 424, which could be applied to this case.  While Professor

Kuhn states that there is no case decided by any Czech judge within the last hundred years in

which a plaintiff was awarded damages based on a claim of abuse of civil process, he concludes

that Czech civil law is sufficiently well-established to apply it to the facts of this case and details

the legal requirements for establishing tortious abuse of process. The other torts pleaded by the

plaintiffs collapse into one tort—intentional and unjustified abuse of rights—under his analysis.

He has provided a comprehensive summary of the applicable law and provided the exhibits to

support his statements of the law.  He concludes that with the right state of facts a Czech court

could find an unjustified abuse of rights which trumps the Czech Constitutional protection of

every citizen's right to seek redress in Czech courts.  As American citizens, the Weiss parties are

entitled to the same protection under the Bilateral Investment Treaty between the United States

and the Czech Republic.   *See* Treaty, attached as Exhibit 1 to Defendants' First Amended

Answer and Counterclaims, Article 1, section 2(a) and 6. Professor Kuhn's approach renders the

instant case triable before an American tribunal applying Czech law and mirrors the approach the

Second Circuit followed in the closest applicable American case. Curley v. AMR Corp., 153

F.3d 5 (2d Cir. 1998) (alleged willful violation of good customs and habits under Mexican law).

    This Court has ruled that Czech law applies. *See* Restatement (2) of Conflict of Laws,

Section 145.  The questions now are legal questions to be decided as a matter of law: have the

defendants provided sufficient legal proof of Czech law and have they provided a pathway to

apply it.  Federal Rules of Civil Procedure, Rule 44.1; 9 Wright and Miller, Federal Practice and

Procedure (1995), Sections 2441, 2447.

    Plaintiffs have signaled that they intend to try to shoe horn American law into Czech

law—claiming that they are identical.  With all due respect, their expert, a practitioner who has

provided legal services to Kotva's board at general meetings over the years, does not begin to

2

bring the depth and sophistication to the issues brought by Professor Kuhn. For the reasons stated in Professor Kuhn's opinion and below, plaintiffs' approach is erroneous.

I. <u>The Massachusetts Law of Abuse of Process</u>

Taking plaintiffs' view of Massachusetts law from their first amended complaint and their opposition to summary judgment, ECF## 229 and 260, they need only prove that the defendants caused lawsuits to be filed in the Czech Republic for the ulterior motive of trying to obtain a super high price for the Kotva and Trend shares owned by their (the Weiss parties') beneficiaries and that the plaintiffs were damaged thereby: "The KT and Gilroy actions were filed for the improper purpose of forcing Kotva to purchase the Brookdale shares in Kotva and Trend for an exorbitant amount, and was unrelated to any purported rights of the nominal shareholders, Gilroy and KT." ECF#229 (First Amended Complaint, ECF#229, paragraph 79, p. 17. In opposition to summary judgment, plaintiffs argued that they had proof that defendants "misused" the process and asserted that the protection afforded to Massachusetts citizens by the Anti-Slapp statute to citizens seeking redress of rights through the courts does not apply. This proposition, which plaintiffs say is based on <u>Adams</u> v. <u>Whitman</u>, 62 Mass. 850 (Mass. App. 2005)—that those lawsuits brought to seek higher shareholder value are not justified if the grounds of the lawsuit seek only a declaration to protect other shareholder rights—is simply not consonant with Czech law. Stripping away the plaintiffs' inflammatory language, what they are saying is that those with legitimate business fish to fry are still liable for abuse of process if their lawsuit is based on other fish which will gain them commercial advantage. In the Czech Republic, where access to courts is still considered without cynicism to be a pillar of a newly

free society, any commercial justification will defeat a lawsuit claiming an abuse of rights.  An ulterior motive is not enough; the plaintiffs must prove that defendants' only motive was illegal and solely intended to cause harm to the plaintiffs, and that the defendants had no other legitimate economic motive.  Proof that the defendants hoped that the lawsuits would cause their shares to be purchased is not enough; however, this is just what the plaintiffs argued was sufficient in their opposition to defendants' efforts to bring in an independent valuation expert.  True, the expert was tendered after the time for expert designations had elapsed; but the Court re-opened the date for designating experts, the defendants complied, and the plaintiffs still sought exclusion on the ground that the valuation question was unimportant under Massachusetts law.

As the Court will soon see, it was the <u>plaintiffs</u>, not the defendants, who made the first written and oral offers to buy the defendants' shares (at ludicrously low prices).  The plaintiffs' case is based on their claims that the counter-offers were at high prices (which, defendants can show is untrue), and that the defendants <u>failed</u> to include an offer to drop the lawsuits in their responses.  Further, the plaintiffs claim that the use of Gilroy, rather than the defendants' beneficiary, CVF, was an abuse of process—even though it is uncontroverted that the shares of CVF could not be legally used under Czech law because of custodial issues with the Bank of Bermuda.  As will be shown below, that simply does not begin to state a case of unjustified use of litigation under Czech law.

Further, plaintiffs argue that the Massachusetts law of burden of proof—the preponderance standard, including inexact proof of damages—applies. Under Czech law a standard approximating proof beyond a reasonable doubt, something more stringent than clear and convincing evidence, applies to liability and damages.

4

II. <u>The Massachusetts Law of Unfair Business Interference</u>

Using the allegations in their first amended complaint as a guide, the plaintiffs maintain that the defendants committed the tort of interference with advantageous business relations by showing that "Kotva had advantageous business relations with the Irish investors", (¶ 85), and "the Weiss Defendants have interfered with Plaintiffs' advantageous business relations," (¶ 86). The sale to Markland closed at the same price that the parties agreed to before the Gilroy lawsuit. In their opposition to summary judgment, plaintiffs indicated that despite the unchanged sale price, they intended to prove damages by showing that the closing was delayed and that they were required to escrow a portion of the sale price and denied use of the money (because they gave up the right to the "carry" in the escrow agreement and the money was invested at low risk/low yield rates). Plaintiffs say that they need to prove only that "(1) Plaintiffs had a business relationship with Markland; (2) the Weiss parties knew of the relationship; (3) the defendants interfered with the relationship through both improper motive and improper means; and as a result of defendants' conduct, Plaintiffs lost the benefit of the original deal, suffered substantial delays, and continue to incur massive damages." Pl. Opp. S/J, p. 11.

As shown below, Czech law could not be more different.

III. <u>Massachusetts Chapter 93A</u>

According to plaintiffs they are entitled to treble damages and attorneys fees because "the Weiss parties were engaged in…business," and they committed "unfair and deceptive actions", "willfully and knowingly." Pl. First Amended Cmplt., p. 16. Such allegations do not begin to make out a tort under Czech law. The plaintiffs do not allege, nor could they, that they were competitors of the Weiss parties and that the Weiss parties' actions—the causing of lawsuits to

be filed-- were intended to compete improperly with plaintiffs.  There is no allegation that the

Weiss parties approached Markland in an effort to sell their shares.  It was the plaintiffs who

brought Markland to the one settlement negotiation meeting where that was discussed months

after the Gilroy case was filed.

The plaintiffs maintain that the "actions" of defendants were planned and

committed in Massachusetts and therefore they have met the "primarily and substantially" in

Massachusetts test.  Without ploughing old ground, they have not begun to meet that test.  The

most they could conceivably allege is that a plan to disrupt the Markland sale and documents in

support of the plan were sent from Massachusetts to representatives in Prague who executed

them by filing lawsuits there.  These are almost exactly the allegations the First Circuit rejected

in Reicher, so often cited without success to this Court, where the First Circuit held that

Maryland law applied.  In Reicher, although the insurance policy emanated from Massachusetts,

and the strategy of wrongfully defending the claim, the failure to review their own medical

evaluations and so forth all occurred in Massachusetts, the Court ruled that Chapter 93A did not

apply, because the lawsuit was filed in Maryland and the harm was felt there.  Reicher v.

Berkshire Life Ins. Co., 360 F.3d 1 (1st Cir. 2004).   As Professor Kuhn's opinion states, Chapter

93A is not consistent with Czech law and policy.  The Czech Commercial Code does not expand

the law of torts beyond the Civil Code.  There is no allowance for any damages in excess of

compensatory damages for the direct harm directly caused by the defendants' actions.

IV. Czech Law

What follows is at best an executive summary of Professor Kuhn's opinion, and as with

most executive summaries, it fails by comparison.  What is somewhat amusing is that Professor

Kuhn apologizes for the fact that Czech law appears so open-ended in comparison with the American law of torts. His opinion makes it clear that Czech and American law start with broad statements of policy before they get down to brass tacks. The policies are different in a country first tasting its freedoms and seeking to protect vigorously economic development. But the differences arise as much from the brass tacks as they do from the level of deterrence they choose for their distinct tort laws.

In brief, there is only one cause of action, and it arises from Section 424 of the Civil Code. The defendants' right to seek redress in court is a constitutionally protected right. Plaintiffs must allege an <u>unjustified</u> abuse of that right through egregious conduct to cause direct harm through litigation, claiming that the defendants had no legitimate economic interest in bringing the lawsuit and has brought it solely to cause direct harm to the plaintiff. "In my opinion one cannot abuse process under Czech law if, by using that process (by filing an action, appealing, etc.) he strives for legitimate interest protected by law. Lawful interest will be legitimate if it is recognized by law; moreover, the only motive behind it should not be an act of revenge or any other similarly prohibited acts." Kuhn Opinion, p. 18 (underlines omitted). Further, the plaintiffs must prove direct causation and damages, as well as the elements stated above, by more than clear and convincing evidence. Kuhn Opin. ¶¶ 39, 47, 52, 53.

Professor Kuhn's opinion is well supported by the attachments to it. However, should the Court want more authority or opinions on other subjects of Czech law, the defendants will obtain them. Defendants realize it is important that they satisfy the Court with the opinions and sources they provide. Should the Court find them inadequate, Wright and Miller suggest that the remedy

should be that the Court request more from the parties, rather than the "harsh result" of rejecting

a defense or claim properly raised under foreign law. 9 Wright and Miller, *supra*, Section 2447.

CONCLUSION

For all of the above reasons, the Court should apply Section 424 of the Civil Code of the

Czech Republic as the only tort applicable to this case and should adopt the points made by

Professor Zdnek Kuhn in his opinion and exhibits, attached hereto and incorporated herein.

Respectfully submitted,

ANDREW WEISS and WEISS ASSET
MANAGEMENT, LLC

By their counsel,

___/s/Edward T. Dangel, III___
Edward T. Dangel, III (BBO#113580)
Dangel & Mattchen, LLP
Ten Derne Street
Boston, MA 02114
617-557-4800

## RULE 7.1 CERTIFICATE OF CONSULTATION

I hereby certify that I conferred with counsel for the plaintiffs and attempted in good faith
to resolve or narrow the issues presented by this Motion, but was unsuccessful. The plaintiffs
oppose this motion.

 /s/ Edward T. Dangel, III___

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system and all attachments will
be sent electronically to the registered participants as identified on the Notice of Electronic Filing
(NEF) and paper copies will be sent to those indicated as non-registered participants on October
19, 2007.

___/s/ Edward T. Dangel, III_____

8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KOTVA a.s., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ANDREW WEISS and WEISS ASSET | ) |
| MANAGEMENT, LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) C.A. No. 05-10679-RCL |
| | ) |
| ANDREW WEISS, WEISS ASSET | ) |
| MANAGEMENT LLC, K T, INC. and CVF | ) |
| INVESTMENTS, LTD., | ) |
| | ) |
| Counterclaim-plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| KOTVA a.s., MARTIN BENDA, RICHARD | ) |
| HARAZIM, FORMINSTER ENTERPRISES, | ) |
| LTD., SPV CO and JOHN DOES 1–5, | ) |
| | ) |
| Counterclaim-defendants. | ) |
| | ) |

## DECLARATION OF ZDENĚK KÜHN

1. I am an Associate Professor of Law at the Charles University Law School, Prague, the Czech Republic. My specialization is legal theory, criminal law, selected issues of constitutional law and torts. I graduated from the Charles University Law School in 1997, and subsequently obtained a Juris Doctor degree and a Ph.D. degree in law. I teach legal theory and criminal law as mandatory and several other subjects as electives at the Charles University Law School and torts at the School of Economics,

Prague. Moreover, I lecture for judges of the Czech Republic in seminars organized by the Judicial Academy of the Czech Republic. I have published three books in Czech in the areas of criminal law, comparative law, constitutional law and legal theory. In addition, I have co-authored and edited a book on the judicial use of precedents and on discrimination, and almost 100 articles in the Czech Republic and Slovakia in the areas of legal theory, constitutional law, torts, criminal law, European law, comparative and international law. Moreover, I have published numerous articles in the United States, the United Kingdom, Germany, the Netherlands, Russia, Croatia, and Hungary. My first English book on the postcommunist judiciaries is forthcoming. Besides the Czech Republic, I have lectured in the United States, Germany, Hungary, and Croatia. I am a frequent participant at many international law conferences including the congresses of the International Academy of Comparative Law.

2. In September 2007 the government of the Czech Republic designated me as *ad hoc* Justice of the European Court of Human Rights in four cases pending before the Fifth Section of the European Court of Human Rights (relating to rent control in the Czech Republic).

3. I lived in the United States between 2001 and 2003. In 2002 I received an L.L.M. (Master of Laws) degree, in 2006 an S.J.D. (Doctor of Juridical Sciences) degree at the University of Michigan Law School. The product of my American academic research is the book about the transformation of legal thinking and methodology in postcommunist Central Europe and challenges to new democratic rule-of-law principles. See Exhibit A: my curriculum vitae.

4. I have been asked to prepare an opinion on selected questions of Czech law as it may apply to tortious interference, unfair and deceptive trade practices in violation of Chapter 93A, and abuse of process claims. I would like to highlight that my opinions provided in this declaration are of my own and do not reflect the views of the institutions I am involved in.

5. Before I started this analysis I had reviewed the documents specified in the enclosure. See Exhibit B: The List of the Documents. My subsequent analysis does not evaluate any document as a matter of fact but explains what the Czech law is.

## I. GENERAL INTRODUCTION

### A. The nature of Czech law of torts

6. The Czech legal system belongs to the Civil (Continental) Tradition, and more specifically, to the Germanic Legal Family. Its law of torts is based on the Civil Code, amended many times since its enactment in 1964. Some commercial torts are regulated by the Commercial Code of 1991; the Civil Code applies to commercial relations unless the Commercial Code provides otherwise. The Czech Civil Code, similarly to all other Continental civil codes, contains only few general (and vague) clauses on torts. That is why a Continental lawyer is naturally predisposed against casuistry and construction of many specific and independent torts. Unlike the U.S. tort law, Czech law deals (in contrast with the U.S., much less plaintiff-friendly) with the problem of torts in few general clauses on torts; there is no need for a numerous collection of various kinds of casuistic torts common lawyers are used to. That is why there is no need to construct an independent tort of abuse of process, tortious interference, unfair practices or like in Czech law; rather, abuse of process and all sort of other unfair behavior is covered under

the general prohibition of abuse of rights and actions contrary to good morals (S. 3 para. 1 of the Czech Civil Code); damages caused by abuse of process or any other type of unfair actions are covered under the general provision of the Civil Code which deals with damages caused by abuse of rights (S. 424 of the Czech Civil Code). <u>See</u> Exhibit C: <u>Civil Code, selected provisions</u>.

7. The general tort rule of Czech law is that everyone shall be liable for damage caused by violating a legal duty (Czech Civil Code, S. 420, cf. also a general principle of S. 415). This general rule which imposes liability on those who violate their legal duty is followed by more concrete "special" clauses on torts. The special clauses of the Civil Code (or those of other laws) are applied instead of the general rule of S. 420 if either the general rule is not applicable or a special clause provides an exception from the general rule. If there is a tort of abuse of process in Czech law (which I accept for the purpose of this analysis, and I personally believe it exists), then only the special clause of S. 424 of the Civil Code applies to the case. This clause says that a person who causes damage by intentional conduct against good morals shall be liable for it. <u>See</u> Exhibit C.

**B. A remedy for a person who has been injured by an improper use of litigation is generally provided by the court's decision on the costs of litigation**

8. We must keep in mind that a successful defendant in most Continental legal systems finds herself in a completely different situation than in the United States of America. In the Czech legal system the need for the tort of abuse of process is much less urgent than in the U.S. because of the general rule which states that the unsuccessful party pays also the expenses of the party who was successful in proceedings before the civil court. According to the law, a participant who had a full success in the case shall be awarded by the court a reimbursement of costs necessary to a useful exercise or defense

of her right against the participant who has had no success in the case (section 142 of the Czech Civil Procedure Code). See Exhibit D: <u>Czech Civil Procedure Code, Costs of Civil Proceedings</u>.

9. In other words, a remedy for a person who has been injured by an improper use of litigation is generally provided by the court's decision which grants a reimbursement of costs of litigation. Thus it is not surprising that there is no case law support to show any example of abuse of process which would be considered tortious. Thus, only the most extreme and very exceptional cases of abusive lawsuits might be tortious. This may also explain strictness of Czech law in the analyzed issue.

**C. The methodology of my analysis**

10. In theory, the Continental civil codes are complete and provide all answers to legal issues. In practice, however, facing the general text of the code, one must find the ultimate answer in jurisprudence and, especially, in case law. The Czech courts and sophisticated Czech practitioners look to jurisprudence and especially to case law. Therefore, to say what the law is, facing the general and vague text of the code, one must always refer to case law and legal writings.

11. Whereas common law supreme courts enjoy the privilege of selecting which cases they will review (e.g., by *writ of certiorari*) and typically choose to hear only a few dozen of the most important cases per year, most of them setting new precedents, the Czech Supreme Court (similarly to other Continental supreme courts) enjoys only a very limited power of selection. Thus the Supreme Court is obliged each year to decide thousands of cases, obviously not *en banc*, but in its numerous senates. It is thus not surprising that unifying numerous decisions within the various senates of the Supreme

Court represents a key problem in practice. That is why <u>the Supreme Court is not free to deviate from its earlier case law</u>. Any Supreme Court senate, if it intends to deviate from a previous decision of another senate (to overrule its <u>ratio decidendi</u>), must refer the question to be decided by the Grand Senate of the Supreme Court. The <u>ratio decidendi</u> of the decision of the Grand Senate is then binding on any future case until the next decision of the Grand Senate to the contrary. What is more, because of the limited power of selection exercised by the Supreme Court, which makes thousands of decisions annually, its case law provides a very good picture what the law is. I have made an extensive research of the Czech Supreme Court's case law, other Czech case law, and Czech legal writings, and reached the results stated below.

**D. Abuse of a civil or commercial lawsuit might - very exceptionally - constitute, if all its conditions are fulfilled, a tort under S. 424 of the Czech Civil Code**

12. As a matter of law, bringing a lawsuit is the exercise of one's right which is, by its very definition, lawful, and protected as the fundamental right by the Czech Bill of Rights. As such, damages caused by bringing an abusive lawsuit cannot be recovered under the general Section 420 because bringing a lawsuit is a protected right. However, damages caused by abusive lawsuits (or abusive threats to sue or to use civil or criminal process) are actionable very exceptionally under the doctrine of abuse of rights.

13. To put it briefly, abuse of rights means the exercise of one's rights in order to harm another rather than to enjoy those rights. Although there is no reported case law, and although scholars do not mention expressly abusing one's right to file a lawsuit, the general definition provided by the authoritative textbook on Civil Law fits this perfectly (talking about vexation [šikana], "i.e. the exercise of a right with the intention exclusively or primarily to harm another"). <u>See</u> Exhibit E: <u>Civil Substantive Law 510, 511 (2006)</u>.

The abuse of rights is prohibited by the general Section 3 (1) of the Civil Code. <u>See</u> Exhibit C: <u>Civil Code,</u> S. 3 (1).

14. The most cited Czech case on the abuse of right, which set the tone for the following case law, is the judgment of the Supreme Court file no. 21 Cdo 992/99, decided on June 28, 2000. By early October 2007, this case has been approvingly quoted in 35 cases of the Supreme Court,[1] and its impact covers (despite its origins in a labor law issue) various disciplines of private law including civil and commercial law.[2] Because of its significance, I will quote the <u>ratio</u> of the case:[3]

> However, if the actor acts within the limits of his right, but through the realization of the lawful action he wants to harm another party, it is still the exercise of one's right, but the malicious exercise of one's right; this action and its result are, perhaps, consistent with the result foreseen by the law, but the action was made not in order to reach the result protected by the law but rather to reach different results which are usually considered unwelcome secondary consequence of that action. Such an exercise of one's right, although formally consistent with the law, is in fact only illusive; <u>its purpose is not to exercise any right but to harm another - contrary to the established good morals the actor directly intends to harm another party whereas the achievement of the meaning and purpose of the legal norm remains secondary and is of no value for the actor.</u>
> (emphases added, <u>see</u> Exhibit F: <u>the judgment of the Supreme Court file no. 21 Cdo 992/99 of 6/28 2000</u>)

15. There is no recent reported Czech case relating to the application of S. 424 to the case when the plaintiff argues that he suffered damages because of the defendant who abused a civil lawsuit. Still, facing the earlier analysis, it is my opinion that the action "against good morals" as defined by Section 424 covers abuse of both civil and criminal process. The case law prior to 1948 (the year of the communist takeover in

---

[1]    I used the list of all cases decided by the Czech Supreme Court since 2000, available at <www.nsoud.cz>, last viewed on October 14, 2007.

[2]    Accord Aleš Gerloch, Jan Tryzna, Nad vázaností soudce zákonem z pohledu některých soudních rozhodnutí [On the binding nature of the statute for judges from the perspective of some judicial decisions], 15 Právní rozhledy 23 (2007) (arguing that the abuse of law shall be interpreted consistently throughout the various disciplines of private law). See Exhibit G.

[3]    All decisions of the Supreme Court of the Czech Republic are quoted according to the authentic version provided at <www.nsoud.cz> (in Czech, searchable through a file number).

Czechoslovakia) explicitly held that filing an unjustified criminal complaint "only in order to satisfy hostility" makes the person liable for an act contrary to good morals. Likewise, bringing a civil lawsuit only in order to harm another party makes the plaintiff liable for the act contrary to good morals. See Exhibit H: The Commentary on the Czechoslovak Civil Code § 1295 (1937). This case law would be influential for current Czech judges if they face a gap in the written law. I should note, however, that - to my knowledge - there is no case ever decided by any Czech judge within the last hundred years when the plaintiff would be actually awarded damages based on abuse of civil process.

16. Considering all the foregoing arguments, it appears to me that S. 424 of the Czech Civil Code makes a person liable for bringing a civil lawsuit if the principal reason for that lawsuit is to intentionally harm another. The type of harm under S. 424 (caused by intentional conduct against good morals) includes in a commercial context a malicious intent to bring ruination. An illustrative case concerned the lessee of commercial premises who was evicted from the said premises by a malicious and fraudulent modification of the contract made by the landlord which multiplied the rent. All this happened without any economic motive on the part of the landlord, only in order to push the lessee out of the said premises. The harm was the ruination of the lessee and his end as an entrepreneur. See for the detailed description ¶ 34 infra.

17. There is no separate tort under the Commercial Code which would cover abuse of process. If a commercial issue is not regulated by the provisions of the Commercial Code, it is governed by the Civil Code (See Exhibit I: Commercial Code in English, Section 1 and commentary). If the opposing party argues that the Czech

Commercial Code applies I refer the court to Section 3 of the Civil Code (which brings us back to the Civil Code Section 424 which deals with the damages caused by the activity described in S. 3 para. 1). <u>See</u> Exhibit J: <u>Commercial Code. Commentary by Professor Jan Dědič</u>, at 346 (the leading authority of Czech commercial law making the same point, referring in relation to the abuse of lawsuits to S. 3 Civil Code).

18. Last but not least, it shall be emphasized that Czech law treats the damages caused by the abusive litigation of a shareholder to her company as based on tort law rather than on law of contracts.[4] It means that the defendant is more protected against the lawsuit because the Commercial Code liability (which deals primarily with contractual liability) is based on a concept closed to strict liability, whereas a tort liability under the Civil Code is based on fault (and a tort of action against good morals, as I will show below, on direct intent).

**E. Any claim of unfair and deceptive trade practices under Massachusetts Chapter 93A, if proved, must be considered under Section 424 Civil Code**

19. A lawyer applying Czech law must also consider whether Massachusetts Chapter 93A, taking into account the facts claimed by Kotva a.s. and SPV Co., constitutes any separate tort under Czech law. I will opine it does not. If threats "to disparage Kotva, so no one would consider purchasing the department store" or to use civil or criminal process, or interfering with the purchase of Kotva's department store (as the plaintiffs claim) are proved, they must be considered under Section 424.

---

[4]  Accord, e.g., Vlastimil Pihera, K obecným limitům akcionářských práv [On the general limits of the rights of shareholders], 15 Právní rozhledy 361 (2007) (noting that the relations between shareholders and the company are not governed by law of contracts but rather by torts; in the author's opinion, in addition to the duties provided by the Commercial Code, the concept of good morals of Section 3 Civil Code applies to the abusive litigation). See Exhibit

20. The Czech law of unfair competition is governed by the Commercial Code, Part One, Chapter 5. The Code defines unfair competition and legal procedure against it. According to the law, unfair competition is any conduct in conflict with morals of competition, which could be harmful to other competitors or consumers. The law explicitly declares unfair competition as illegal. The forms of unfair competition include false or comparative advertisement, derogatory practices (spreading false information about another competitor or spreading true information if they could cause harm to another competitor, unless it is justified by self-defense), bribery, or a breach of business secret. See Exhibit I: Commercial Code, Section 44.

21. However, there are three conditions which limit the impact of the provisions on unfair competition. First, the Czech Code does not apply to conduct to the extent such conduct has an impact abroad. See Section 43. Second, and more importantly, the Code applies only to the conduct (1) between competitors (Section 41 and specific provisions such as Section 50) and only (2) while competitors participate in competition (Section 44). The Supreme Court in its leading case added that (3) the conduct must be made because of competition and not because of something else (it means the plaintiff must prove that the action was provoked by the desire to compete). For instance, if a creditor spreads derogatory information about his debtor only in order to get paid (and not in order to compete by such unfair means) the unfair competition provisions do not apply. See Exhibit L: the judgment of the Supreme Court file no. 29 Odo 106/2001 of 10/23 2003.

22. In order to apply unfair competition Section of the Commercial Code, the plaintiffs would have to claim that the defendant acted as a competitor against another

competitor because of competition (because he wanted to compete with a plaintiff by unfair means described in the Commercial Code). A shareholder who uses threats in order to receive a "pay-off for his shares" (as the plaintiffs claim) and not in order to compete (or to get advantage in competition by unfair methods against morals of competition) cannot be viewed as a competitor within the meaning of the Commercial Code. Moreover, in what is described in Joint Pretrial Memorandum I see no action while participating in competition and because of competition. That is why all the actions attributed by the plaintiffs to the defendants must be considered under Section 424.

23. I am informed that Chapter 93A includes double or treble damages. This is in clear conflict with the very basic principles of Czech law, and contrary to the Czech public order. To my knowledge there is no Continental European jurisdiction which permits punitive damages. Therefore it is my conclusion that Chapter 93A is contrary to Czech law and policy (see in detail ¶¶ 49-51 <u>infra</u>).

**II. THE LIMITS OF CAUSE OF ACTION UNDER THE CIVIL CODE S. 424**

24. Czech law recognizes the following elements of tortious action under S. 424: unlawful action accompanied by the intent to cause harm (see parts A & B), damages (see parts C & D) and causation (part E).

**A. Abuse of process presupposes that a lawsuit is brought in order to do harm; at the same time, the lawsuit itself shall have no legitimate economic or like reason for the one who makes it**

25. In Czech jurisprudence good morals are equated with "the set of generally shared, recognized and respected rules of human behavior in the sense of fidelity, fairness, not cheating, i.e. consistent with the value order of the society." <u>See</u> Exhibit E: <u>Civil Substantive Law 510 (2006)</u>.

26. The tort of causing damage "by an intentional conduct against good morals" is based on intent. Therefore, the plaintiff has to prove that the defendant had the intent to harm another by abusing civil process (for instance by bringing a civil or commercial lawsuit). Intent according to Czech law comprises either direct intent or recklessness (indirect intent). Direct intent means that the tortfeasor actually intended to cause harm by his action against good morals (e.g. abuse of process); recklessness (indirect intent) means that the tortfeasor was aware that his or her action might cause harm and accepted this consequence as inevitable even without directly desiring them. Case law seems to reject the very possibility that indirect intent might be sufficient; virtually all the cases I refer to in this analysis emphasize that harm must be intended by a tortfeasor <u>directly</u> which disallows indirect intent (recklessness). To sum up, the very definition of abuse of rights in Czech law takes for granted that harm must be intended directly (an actual intention to do the particular kind of harm that in fact was done). Direct intent is roughly equivalent to the term malice in American law.

27. Any civil or criminal action, whether a lawsuit, a criminal complaint, a motion for injunction, appeal or like, causes some harm to the second party which is an inevitable result of defending one's right. Thus to be successful the plaintiff must prove that the defendant directly intended to cause "unlawful" harm by abusing the process. Only abuse would qualify as acting against "good morals". Thus, a crucial question is what might qualify as "abuse".

28. Based on my research of the published case law, it is clear that Czech courts apply the concept of abuse of one's right very narrowly. For instance, in the "foundational" case on the abuse of one's right file no. 21 Cdo 992/99 of June 28, 2000

(see ¶ 14 <u>supra</u>) a plaintiff sued his ex-employee for the abuse of the latter's right to terminate the labor contract. The scenario was that the employee and all his family traveled at the employer's expense to a foreign country where the employee was supposed to work for the employer (the plaintiff). Although the plaintiff paid all the costs of this very expensive relocation to the defendant and all his family, the defendant terminated the employment contract the following day he arrived at his destination. Still the Supreme Court was unwilling to award the damages because it did not accept that the defendant abused his right to terminate labor contract. According to the Supreme Court, all the conditions of the case showed that the harm was rather an unwelcome and secondary consequence of the action of the defendant. According to the facts of the case the defendant was rather careless and did not take into account the mood of his family vis-à-vis his stay abroad in advance; there was no evidence that he had planned any fraudulent action in relation to his employer. I emphasize again that this case (which emphasizes that a tortfeasor must <u>directly</u>[5] intend to cause harm) is the most frequently cited case on the abuse of right by the Czech Supreme Court, and is cited in a whole range of legal issues including not only labor cases but also civil and commercial ones (see ¶ 14 <u>supra</u>). If a Czech lawyer would ever start to plan the lawsuit for damages caused by abuse of process, first he would have to consider this case.

29. The analyzed "foundational" case file no. 21 Cdo 992/99 is even more helpful for my analysis because the Supreme Court has subsequently applied its reasoning to the issue whether or not the party abused her right to bring a counterclaim.[6] The judgment

---

[5]   Interestingly, the plaintiff argued that there <u>was</u> a direct intent to harm but was not able to prove it.
[6]   Here, the damages caused by the lawsuit were not at stake; rather, the Supreme Court decided whether or not the claim will be adjudicated because the lower court considered it malicious.

file no. 21 Cdo 1493/2006 of May 17, 2007 is the proof that <u>the Supreme Court provides</u> <u>to the party a very broad discretion whether or not to bring a lawsuit</u> (the court did not deal with damages but just with the question whether the counterclaim should be dismissed because of the abuse of process). In the case file no. 21 Cdo 1493/2006, the defendant brought a claim against the (future) plaintiff, then he withdrew it (for an unknown reason) only to bring the same lawsuit again (it seemed that the defendant acted in a sort of revenge, responding to the earlier action of the plaintiff). The appellate court found that the counterclaim was brought only in order to harm the plaintiff. The Supreme Court rebuffed this opinion and emphasized the constitutional value of the right to bring a lawsuit and to dispose of that lawsuit. First, the Supreme Court recited the <u>ratio</u> of its leading precedent file no. 21 Cdo 992/99 (quoted ¶ 14 <u>supra</u>). Then, it added:

> [...] Freedom of the parties of private law who are protected in civil proceedings is reflected in [the principles which give the right to the party to dispose of process and determine what shall be adjudicated]. Broad possibilities of free disposal of the merits of the case, of selecting various tools of judicial protection, but also of the free use of evidence must remain to the parties in order not to turn civil proceedings into the authoritarian institution which is not freely affected by free will of its parties. [...]

30. Following this argument, the Supreme Court did not find any abuse of the right to file a claim (or counterclaim) as the party exercised her constitutional right to dispose of and fully control her lawsuit. <u>See</u> Exhibit M: <u>the Supreme Court's judgment</u> <u>file no. 21 Cdo 1493/2006 of 5/17 2007</u>. The decision has stopped short from rejecting any possibility of the abuse of civil process.

31. There are many other cases which refused the argument that the lawsuit shall be dismissed because it constitutes abuse of process. For instance, the Supreme Court's decision file no. 22 Cdo 1917/2004 of March 22, 2005 rebuffed the defendant's claim that the plaintiff abused his right to sue when the plaintiff asked the court to determine

ownership of real property. Referring to the "foundational" case file no. 21 Cdo 992/99, the Supreme Court claimed that the plaintiff's lawsuit to determine his ownership of real property can never be abusive within the meaning of the Civil Code Section 3 para. 1 because it follows the economic aim foreseen by the legal norm – to determine that the plaintiff owns real property in question (with further references to its earlier case law). See Exhibit N: the Supreme Court's decision file no. 22 Cdo 1917/2004 of 5/22 2005.

32. However, we shall not read both decisions too literally. The cases must be interpreted rather narrowly facing their facts. It will be wrong to read Czech law that the lawsuit to determine ownership can never establish the abuse of law, as at least the latter case seems to indicate. What both cases should say to the U.S. judge applying Czech law is rather 1) the value the Czech Supreme Court is willing to give to the constitutional protection of the autonomy of the party in deciding the question whether or not to bring a lawsuit, and 2) that the abuse of civil process is extremely difficult to prove under Czech law. That is why in all but the most egregious cases it is ultimately up to the party whether or not to file a lawsuit.

33. To understand what constitutes the abuse of one's right under Czech law one must see the case when a Czech judge found this tort. I will show that the rule is that tort is established when it is proved that a tortfeasor exercised his right although this exercise had no legitimate economic or business meaning for him but rather directly aimed at harming another. I have shown that already a "foundational" case emphasized that the purpose of the abusive action is "not to exercise any right but to harm another - contrary to the established good morals the actor directly intends to harm another party whereas the achievement of the meaning and purpose of the legal norm remains secondary and is

of no value for the actor" (see ¶ 14 supra, emphases added). A recent judgment of the

Supreme Court (file no. 25 Cdo 874/2005) of January 31, 2007 is a beautiful example of

this.

34. In the judgment file no. 25 Cdo 874/2005 a plaintiff (lessee) – company with

liability limited – sought damages relating to the closure of its business caused by a

coercive and fraudulent action of a defendant (landlord) who forced the plaintiff (despite

the existence of an old lease) to sign a new lease with a much higher rent (the new lease

multiplied the earlier rent). This effectively meant that the plaintiff was not able to pay

the new rent so was pushed to leave the premises. Consequential damages then put the

plaintiff out of business. Soon afterwards the defendant rented the place to another

company for much less money. Both the trial court and the appellate court held that the

defendant was liable for "an intentional conduct against good morals" within the meaning

of S. 424. The Supreme Court approvingly noted:

> According to the Civil Code S. 424 one is liable for damages caused by an intentional
> conduct against good morals. The application of the Civil Code S. 424 does not require a
> breach of any contractual duty […] [in case of a breach of a contractual duty the general
> liability under the Civil Code S. 420 or the Commercial Code applies]. The liability for
> an intentional conduct against good morals covers both actions unregulated by law and
> the lawful exercise of rights which aspires to harm another; [the latter action] is not
> directly in conflict with the law and does not reach the level of unlawfulness but is in
> conflict with good morals. It means that even though the tortfeasor exercises his right he
> does so by harming another intentionally which leads to disproportional results; this is a
> so-called vexatious exercise of rights which is dealt with by S. 424. […] [The real
> purpose of the new contract] was not to continue the lease but rather - by arranging
> unrealistic conditions – to disable any further business of the plaintiff on the premises.
> [The Court then pointed out that after the plaintiff left the premises] the defendant rented
> the premises to another lessee for much lower payments.
> See Exhibit O: judgment of the Supreme Court file no. 25 Cdo 874/2005 of 1/31 2007

35. The case file no. 25 Cdo 874/2005 thus proves that to constitute the abuse of

rights the action should have no legitimate economic or business meaning for the one

who exercises his or her right. The Court used (together with other evidence) the fact that

the defendant achieved no economic benefit from his action as a proof that <u>the only reason</u> why the defendant exercised his right to change the contract was the direct intent to harm the plaintiff.

36. <u>The requirement of the absence of any legitimate economic or like motive</u> intertwines through case law. In another judgment file no. 21 Cdo 1893/2002 of April 22, 2003 the Supreme Court expressly held that the right of the employee to ask her employer for a certificate of her labor character can be abused if the demand is made in order not to use the certificate in the search for a new job but rather to cause the employer (intentionally) harm contrary to good morals; the achievement of the meaning and purpose of the legal norm remains secondary and is of no value for the actor (referring to the foundational case quoted <u>supra</u>, ¶ 14). <u>See</u> Exhibit P: <u>judgment file no. 21 Cdo 1893/2002 of April 22, 2003</u>. Likewise, as the Supreme Court held in another case, the right to retain a car as a guarantee for the costs of repair could be abused by a provider of an automobile repair shop if the provider acts

> not in order to reach the result protected by the law [retaining a vehicle to ensure that the price will be paid by his customer] but rather to reach different results which are usually considered unwelcome secondary consequence of that action. Such an exercise of one's right, although formally consistent with the law, is in fact only illusive; <u>its purpose is not to exercise any right but to harm another - contrary to the established good morals the actor directly intends to harm another party whereas the achievement of the meaning and purpose of the legal norm remains secondary and is of no value for the actor</u>.
> (the Supreme Court's judgment file no. 21 Cdo 624/2001, 3/6 2002, emphases added; the case thus recites the core of reasoning of the "foundational" case explained ¶ 14 supra without quoting it expressly).

37. Although the plaintiff (the owner of the vehicle) argued that the defendant (the provider of the repair shop) abused his right to keep the vehicle (especially considering the length of time during which the defendant retained the car – almost eight years! - and

his excessive price demands), the Supreme Court rejected any such argument.[7] The plaintiff was not able to prove that the reason behind the defendant's action was different from the reason envisaged by law to guarantee the price of repair; in the same way, the plaintiff did not prove (to quote the Supreme Court again) that "the only genuine purpose of the defendant's action was to harm the plaintiff." The defendant did not "directly" intend to cause harm to the plaintiff. Although the plaintiff was (naturally) harmed by the action (he had no access to his vehicle for over eight years), this was nothing but "unwelcome secondary result of the action of the defendant". See Exhibit R: the Supreme Court's judgment file no. 21 Cdo 624/2001, 3/6 2002.

38. Facing the cited case law, many scholars (including the Dean of the Charles University Law School Professor Aleš Gerloch) claim that the very meaning of the abuse of right in private law presupposes the exercise of right whose "only purpose is to harm another"[8] (see Exhibit G: Gerloch & Tryzna, part III, emphases added). In my opinion one cannot abuse process under Czech law if, by using the process (by filing an action, appealing etc.), he strives for a legitimate interest protected by law. Lawful interest will be legitimate if it is recognized by law; moreover, the only motive behind it should not be an act of revenge or any other similar prohibited motive.

39. To summarize findings of this section: (1) Under Czech law, in order to succeed in claiming the abuse of process one must prove that the tortfeasor directly intended to harm another by using process (e.g. by bringing a lawsuit or by threats to use

---

[7]    The plaintiff finally succeeded before the Supreme Court with his claim, but for a different reason – the lower court did not address another argument made by the plaintiff (unrelated to the subject of my analysis here).

[8]    Aleš Gerloch & Jan Tryzna, Nad vázaností soudce zákonem z pohledu některých soudních rozhodnutí [On the binding nature of the statute for judges from the perspective of some judicial decisions], 15 Právní rozhledy 23 part III (2007).

process). A mere recklessness is not enough. What constitutes harm is difficult to say in general. For instance, the mere fact that the lawsuit did interfere with advantageous business operation of the plaintiff who suffered damages thereby does not suffice on itself to establish harm as the cause of action unless the plaintiff is able to show that the genuine and only real reason behind the lawsuit was to harm the plaintiff in making the business operation. (2) In addition, it must be proved that there was an absence of any legitimate lawful interest on the part of the defendant. The abusive lawsuit or any other abusive civil action is thus brought exclusively in order to harm the plaintiff, whereas any lawful benefit[9] the defendant was able to achieve by the lawsuit or a like action remained secondary and was of no real value for the actor.

**B. When deciding whether the defendant abused his right in relation to the plaintiff the earlier plaintiff's action should be also considered.**

40. The Czech and Slovak legal systems suffered from a separation from modern legal thinking and Western legal culture during the four decades of communism in Central Europe (1948-1989). During the communist dictatorship, most complex legal issues were not adjudicated because commercial law and private business activity did not exist. Thus it is not surprising that Czech private law is still in transition and some important legal questions remain still unanswered by law courts.

41. In considering whether a lawsuit was abusive it might be important to take into account the question whether there could be any legitimate expectation that the actor would succeed with his lawsuit. If it should have been clear from the very beginning to a reasonable entrepreneur that there was no hope that his lawsuit could be successful in the

---

[9] The "lawful benefit" means the sort of redress the law does relate to the type of action used by the defendant.

court of law, then it is likely that the real reason behind the lawsuit was different from the alleged one.

42. On the other hand, in adjudicating the question whether the defendant brought an abusive lawsuit it must be also considered the status of law at the time the defendant brought the lawsuit and whether the law as explained by case law and legal scholars was clear. If law in question was unclear, to be explained only by the future judgment (decided after the lawsuit was made) or future legislative clarification, it is likely that the plaintiff at the moment he was bringing a lawsuit was not aware that the way he was using the procedural law could bring no benefit.

43. To put just one example, it was unclear until May 10, 2006 (the judgment file no. 29 Odo 1168/2005) whether a partner can sue nullity of a decision of a general assembly of company with liability limited (similar reasoning might be imputed to a joint stock company) only because of the defects relating to invitation to the assembly, the voting procedure and the content of the decision itself, or also because of other abusive actions of partners towards the partner who is willing to challenge the decision of the general assembly. Although the answer might seem easy to someone, the Supreme Court exercised its (limited) right to select this case as worthy setting precedent and decided that the former conclusion, despite possible other arguments, is right. See Exhibit S: the judgment of the Supreme Court file no. 29 Odo 1168/2005 of 5/10 2006. If - after this judgment was made - someone challenges the decision of the general assembly only because of actions of remaining partners unrelated to that decision, then it is more likely (though still not certain – direct intent must be proved – see above) that he is abusing his right to sue (law is clear now). However, the one who sued for the same reason before the

judgment was made is more likely to sue in good will that he is bringing a valid issue to the court.

44. The judgment just analyzed seems to advise us that earlier abusive practices of partners (or shareholders) do not establish the cause of action to claim nullity of the decision of the general assembly which was not achieved by abuse. Yet an entirely different question is to say to what extent earlier abusive practices might be taken into account when the subsequent abuse of process of one party is being invoked (after the lawsuit which one party now claims was abusive had failed). I opine that the earlier abusive practices can be considered when deciding whether the current action might constitute abuse of process. One should take into account the extent of mutual abuse of each party. Although I do not think that the earlier abuses will automatically excuse the later abuse of process by the second party (which was originally a victim to the abuse), they might at least move the line of what is possible according to good morals. I emphasize again that good morals are a contextual phenomenon, there is no abstract formula which would define them. The question whether an action is really abusive (and thus contrary to good morals) must be decided based on all facts of the case including earlier behavior of those who claim abuse by posterior action (like threats to sue or bringing the lawsuit).

45. An example of this taken from general civil law is the judgment of the Supreme Court file no. 22 Cdo 432/2002 of April 17, 2002. Although this case is by its facts and controlling law very different from the dispute which is now before the U.S. court (and thus cannot be used as authority), it indicates some standards which show the general way one should approach the case if both parties behave in an abusive way.

According to this opinion, in considering whether someone abused process (and thus violated good morals) a complete history of the dispute (including earlier abusive behavior of other parties) must be taken into account. See Exhibit T: judgment of the Supreme Court file no. 22 Cdo 432/2002 of 4/17 2002.

46. Thus, my conclusion is that if it was not clear at the time when the defendant brought an action whether or not the action might be a lawful protection of his rights and only later a judicial practice found out that such type of action was destined to fail, the doubtfulness about the law must be in favor of the defendant. Second, when deciding whether the defendant abused process in relation to the plaintiff, the earlier plaintiff's actions towards the defendant should be also considered.

**C. The rules for determining damages under the Czech Civil Code**

47. The basic rule of Czech law of damages is that the compensation shall include both real damages (what the party has lost) and lost profit (what the party would have gained but for the action of the tortfeasor). The damage must be foreseeable. The court does not have the power to reduce the compensation of the damage caused by intentional conduct against good morals, unlike in negligence cases where this power to reduce exists. See Exhibit C: Czech Civil Code (S. 442 & S. 450).

48. In case of multiple tortfeasors, the rule is that all of them shall be liable for damages jointly and severally. However, it is within judge's discretion to decide exceptionally that that those who caused the damages shall be liable individually according to the participation in causing the damages. The latter exceptional possibility to divide liability between tortfeasors vis-à-vis the plaintiff shall be based on their participation in causing the damages (for instance, on the level of their guilt or active

participation in wrongdoing); it must be always justified by specifics of the case and a judge must provide a detailed justification why he does not apply the rule but rather the exception. <u>See</u> Exhibit C (Section 438.).

**D. Czech law does recognize neither punitive nor exemplary damages. The claim to recover costs and multiple and / or treble damages is clearly in sharp conflict with Czech law**

49. Based on the aforementioned in the preceding section (see ¶ 47 <u>supra</u>), it is clear that the basic purpose of damages under Czech law is compensatory. What shall be paid under Czech law are only real damages and lost profit. Although the Civil Code does cover some other types of damages (loss of earnings, damages to health etc.), all of them are compensatory in their nature and are not applicable to our scenario (they do not belong to corporations).[10] In addition, satisfaction shall be awarded to the victim of immaterial harm; however, the Code expressly provides that it shall be as a rule provided in a form of apology or like and only very exceptionally in money (pecuniary satisfaction). Again, even if satisfaction is (very exceptionally) provided in money, it is <u>always very low</u> (normally around 1,000 USD) and lacks any punitive element. <u>See</u> Exhibit C (Sections 11 & 13).

50. The very notion of punitive or exemplary damages is completely unknown to Czech law. <u>There is a consensus of Czech legal scholarship and case law that there is no penal element in damage awards. Czech law provides for compensation, not for enrichment of a victim of tort (no matter how serious that tort might be).</u>

---

[10]   The Code emphasizes that intentional torts present a more serious threat to the society merely by the fact that damages caused intentionally cannot be reduced (see ¶ 47 <u>supra</u>). There are also some other differences, like the longer periods of statute of limitations for intentional torts. However, this is not important for my analysis.

51. Therefore, the claim to recover costs and multiple and / or treble damages is clearly in sharp conflict with Czech law. Moreover, this sort of damages is very likely to be considered against the Czech public order and would never be enforceable in the Czech legal system (in fact, because this issue is so clear I am not aware of any case when someone would try to enforce punitive damages awarded by a U.S. court in the Czech Republic).[11]

**D. Causation**

52. Finally, there must be causation. Damages which constitutes an element of tort must be caused but for the act of the defendant (conditio sine qua non, in principle identical to the U.S. concept cause-in-fact) and must be natural and predictable result of the defendant's wrongdoing (in Czech legal system called the concept of adequate causation, roughly equivalent to the term legal cause in U.S. law). If damages are caused by plaintiff's own action then he is not entitled to recover.

**E. The burden to prove unlawful action, direct intent, damages, and causation rests entirely with the plaintiff**

53. To succeed, the plaintiff must first of all prove that the action which might be deemed unlawful really happened. Second, because the tort of Section 424 is within a realm of intentional torts, it is entirely up to the plaintiff to prove a direct intent to harm (thus the more plaintiff-friendly rule of Section 420 on general liability based on negligence, which establishes rebuttable presumption of negligence, does not apply). Third, the successful plaintiff must prove the extent of damages (both real damages and

---

[11]    Accord, for instance, Vlastislav Kusák & Albrecht Piltz, Odpovědnost za škody způsobené vadou výrobku ve Spojených státech amerických a český výrobce [Liability for damages caused by defective product in the United States of America and a Czech producer], **7** Právní rozhledy 532 (1999) (claiming in part VIII that U.S. punitive damages are in clear conflict with the Czech public order and as such would never be enforceable in the Czech Republic). See Exhibit U.

lost profit). In relation to lost profit, the court under Czech law has got a wide discretion what shall be taken into account to establish the value of lost profit (to see just one example, I might refer to the case file no. 25 Cdo 874/2005 explained ¶ 34 <u>supra</u>). Last but not least, the plaintiff has to prove causation.

54. Even if all four elements are proved (unlawfulness, direct intent to harm, damages, causation), and even if it is established that the plaintiff suffered substantial damages caused by the defendant's action, the defendant will still prevail if he is able to prove a legitimate economic, business or like interest behind his action (see ¶ 38 & 39 <u>supra</u>).

## F. The civilian standards of proof in the U.S. and the Czech Republic are strikingly different

55. Last but not least, I would like to highlight a different standard of proof in the U.S. legal system and the Czech Republic (another explanation why the U.S. system is much more plaintiff-friendly than the Czech legal system).

56. Under the Czech law, the court shall proceed so that facts in question between the participants are ascertained reliably. <u>Civil Procedure Code, Section 6</u>. The quoted Section 6 must be read together with Section 120 (3) which demands that the court must find out "the factual state". <u>See</u> Exhibit D: <u>Civil Procedure Code</u>. This is very close to a standard of proof beyond a reasonable doubt. Thus the said Czech standard puts a higher demand on fact-finder and are much less plaintiff-friendly than the American preponderance rule, which is basically probabilistic (something is more likely than something else). The Czech standard of proof also applies to liability portion of the case <u>and to damages</u>.

I declare under penalty of perjury under the laws of the United States of America
that the foregoing is true and correct.

Prague, the Czech Republic

October 18, 2007

_____
Zdeněk Kühn

# EXHIBITS

---

**CONTENT**

**Exhibit A:** <u>Curriculum vitae and the list of the most important publication</u>          **ii**
**Exhibit B:** <u>The List of the Documents</u>          **ix**
**Exhibit C:** <u>Czech Civil Code, Selected Provisions</u>          **x**
**Exhibit D:** <u>Czech Civil Procedure Code</u>          **xiv**
**Exhibit E:** <u>Civil Substantive Law 510, 511 (2006)</u>          **xix**
**Exhibit F:** <u>judgment of the Supreme Court file no. 21 Cdo 992/99 (in Czech only)</u>          **xxiii**
**Exhibit G:** <u>Gerloch & Tryzna, On the binding nature of the statute for judges</u>
<u>from the perspective of some judicial decisions (2007) (in Czech only)</u>          **xxviii**
**Exhibit H:** <u>The Commentary on the Czechoslovak Civil Code § 1295 (1937)</u>          **xxxvii**
**Exhibit I:** <u>Commercial Code in English</u>          **xliii**
**Exhibit J:** <u>Commercial Code. Commentary by Professor Jan Dědič</u>          **xliv**
**Exhibit K:** <u>Pihera, On the general limits of the rights of shareholders (2007) (in Czech only)</u> **xlvi**
**Exhibit L:** <u>judgment of the Supreme Court file no. 29 Odo 106/2001 (in Czech only)</u>          **lii**
**Exhibit M:** <u>judgment of the Supreme Court file no. 21 Cdo 1493/2006 (in Czech only)</u>          **lvi**
**Exhibit N:** <u>decision of the Supreme Court file no. 22 Cdo 1917/2004 (in Czech only)</u>          **lxii**
**Exhibit O:** <u>judgment of the Supreme Court file no. 25 Cdo 874/2005 (in Czech only)</u>          **lvi**
**Exhibit P:** <u>judgment of the Supreme Court file no. 21 Cdo 1893/2002 (in Czech only)</u>          **lxxiv**
**Exhibit R:** <u>judgment of the Supreme Court file no. 21 Cdo 624/2001 (in Czech only)</u>          **lxxxi**
**Exhibit S:** <u>judgment of the Supreme Court file no. 29 Odo 1168/2005 (in Czech only)</u>          **lxxxviii**
**Exhibit T:** <u>judgment of the Supreme Court file no. 22 Cdo 432/2002 (in Czech only)</u>          **xci**
**Exhibit U:** <u>Kusák & Piltz, Liability for damages caused by defective product in</u>
<u>the United States of America and a Czech producer (1999) (in Czech only)</u>          **xcv**

# Zdeněk Kühn
zdenku@seznam.cz

---

**Date of Birth**              October 8, 1973, Nymburk, Czechoslovakia

**Country of Citizenship**     Czech Republic

**PROFESSIONAL
EXPERIENCE**          **Charles University Law School, Prague, the Czech Republic**
Associate Professor (since 2006)
Assistant Professor (since 1999)
Lecturer in Legal Theory, Criminal Law

**European Court of Human Rights**
Justice of the Court *ad hoc* (since 2007)

**Legislative Council of the Government of the Czech Republic**
Member (2006-2007)

**School of Economics, Prague, the Czech Republic**
Lecturer in law and economics of torts (since 2006)

**New York University in Prague**
Lecturer for NYU overseas students on legal issues in postcommunism (since 2003)

**The Parliament of the Czech Republic**
Adviser to a Vice-President of the House of Representatives (2004-2006)

**The Judicial Academy of the Czech Republic (JA)**
Lecturer for Czech judges at seminars organized by JA (since 2004)

**Heller Ehrman White & McAuliffe LLP**
A Legal Expert on Czech and Slovak law in the case In Re: Assicurazioni Generali S.p.A. Holocaust Insurance Litigation, United States District Court Southern District of New York, an author of the Declaration in Opposition to Defendant Assicurazioni Generali S.p.A.'s Motion To Dismiss, Strike, and/or For Judgment on All Plaintiffs' Claims, on Choice of Law and Related (April 2003) (reference: (213) 244-7812, Deanna M. Wilcox, Los Angeles, CA)

**Bar Exam of the Czech Republic**
*Summa cum laude* (December 2000)

**Law Firm Stoklasek & Partners**
Prague, the Czech Republic (reference: +420-257311313)
Associate (1997-2001), cooperation with the Belgian Law Offices Bertouille and Partners, Brussels

**The Parliament of the Czech Republic**
Adviser to a Deputy (1999-2001)

# EDUCATION

**University of Michigan Law School, Ann Arbor, MI**
S.J.D. (Juridical Sciences Doctor), October 2006

**University of Michigan Law School, Ann Arbor, MI**
L.L.M. (Master of Laws), May 2002, GPA 3.813

**Charles University Law School, Prague, Czech Republic**
Ph.D., June 2001, Dissertation: Legal Principles in Adjudication

**Charles University Law School, Prague, Czech Republic**
Magister ("Master"), May 1997, *Summa cum laude*

**Languages**    Czech (native), fluent in English and Russian, good in German and Polish.

# HONOURS & PRIZES

- **The Hessel Yntema Prize, Berkeley, California** for the best article written by the author up to 40 years published in the volume 52 of *American Journal of Comparative Law*
- Honorably Mentioned Submission by the **Ius Commune Research School** (one of three best articles in Ius Commune Prize 2003), Maastricht 2003
- **Bolzano Award for the Best Czech Dissertation of 2001 (2002)**
- **Hlávka Foundation Award for the best university graduate of the Czech Republic (2000)**

# FELLOWSHIPS & GRANTS

- **Michigan Grotius Fellowship** (2004) for Summer 2005
- **Curriculum Resource Center**, Central European University, Budapest (2004)
- **Michigan Grotius Fellowship** (2003) for Summer 2004
- **University of Michigan Center for Russian and Eastern European Studies Mellon Fellowship** (2003)
- **Summer Stipend for Issues of European Integration provided by the Milton and Miriam Handler Foundation and the Horace H. Rackham School of Graduate Studies at the University of Michigan** (2003).
- **Univ. of Michigan Václav Havel Graduate Fellowship** (2002-3).
- **Fulbright Scholarship for the study in the US** (2001-2).

# PUBLICATION

Three books in Czech (one in the area of criminal law, another one on the theory of law application, the last one on the transformation of the postcommunist judiciary), an editor of two books (on the judicial use of precedents and equality), and about hundred published articles in the Czech Republic and Slovakia (in the areas such as constitutional law, criminal law, legal theory, European law, and international law), nine publications in English in the United States (American Journal of Comparative Law), the United Kingdom, Germany, the Netherlands, Hungary and Croatia, one publication in Russia

# OTHER ACTIVITIES

Member of the Editorial Board of the *Jurisprudence*, a Czech law journal specializing on commenting case law, with the responsibility for the Czech and foreign case law (since 1999)
Member of the Editorial Board of the Croatian Yearbook of European Law and Policy (since 2005)

Co-director of the international seminars 'Constitutionalism: Europe and the United States in Comparative Perspective', IUC Dubrovnik, 2004, 2005, 2006

**Main Professional Interests**

Comparative law, law of torts, Criminal Law, legal reasoning

## The list of the most important publications

**English:**

- Kühn Z.: Application of European Law in Central European candidate countries. 28 European Law Review, 551-560 (2003).
- Kühn Z.: Worlds Apart. Western and Central European Judicial Culture at the Onset of the European Enlargement. 52 American Journal of Comparative Law 531 - 567 (2004)
- Kühn Z.: The Application of European Law in the New Member States: Several (Early) Predictions, German Law Journal vol. 6 No. 3, 563-582 (2005), available at http://www.germanlawjournal.com
- Kühn Z.: European Law in the Empires of Mechanical Jurisprudence: The Judicial Application of European Law in Central European Candidate Countries. Croatian Yearbook of European Law & Policy, vol. 1, 55-74 (2005)
- Kühn Z.: Making a European Transnational Constitution: Some Central European Perspectives, in: Pernice I., Zemánek J., A Constitution for Europe: The IGC, the Ratification Process and Beyond, Nomos, Baden-Baden 2005, 127-140
- Kühn Z.: Making Constitutionalism Horizontal: Three Different Central European Strategies, In: Andras Sajó, Renata Uitz (eds.), The Constitution in Private Relations: Expanding Constitutionalism, Eleven International Publishing, Utrecht 2005, 217-240
- Kühn Z.: Comparative Law in Eastern Europe, in: Zimmerman R., Reimann M. (eds.), The Oxford Handbook of Comparative Law, Oxford University Press 2006
- Kühn Z.: The Judicialization of European Politics, In: Erik Jones, Paul Heywood, Uli Sedelmeier, Martin Rhodes (eds.). Development in European Politics, Macmillan/Palgrave 2006

**Czech books:**

- Kühn Z.: Ochrana lidského plodu [The Protection of Human Fetus], Ministry of Justice, Volume 57, Praha 1998
- Kühn Z.: Aplikace práva ve složitých případech. Právní principy v judikatuře. [The Application of Law in Hard Cases. Legal Principles in Case Law] Karolinum, Praha 2003.
- Kühn Z.: Aplikace práva soudcem v éře středoevropského komunismu a transformace. Analýza příčin postkomunistické právní krize [The Judicial Application of Law in the Era of Central European Communism and its Transformation. The Analysis of the Origins of Postcomunist Legal Crisis]. Praha: C.H. Beck 2005
- Kühn Z., Bobek M., Polčák R. (eds.): Judikatura a právní argumentace. Teoretické a praktické aspekty práce s judikaturou [Case Law and Legal Argumentation. Theoretical and Practical Problems of Working with Case Law]. Auditorium, Praha 2006
- Bobek M., Boučková P., Kühn Z. (eds.), Rovnost a diskriminace [Equality and Discrimination], Praha: C.H. Beck 2007

**Selected Articles in Czech**

- Kühn Z.: Trest smrti v americkém common law a přístup Nejvyššího soudu k Ústavě USA [Death penalty in American common law and Interpretation of the US Constitution], Trestní právo [Criminal Law] 2/1999
- Kühn Z.: Doktrína stare decisis v zemích common law [Doctrine stare decisis in the countries common law], Právník [Lawyer] 138, vol. 1999, 8, 689-714
- Kühn Z.: O určitosti a neurčitosti práva (Úvaha nad ústavností § 187a trestního zákona), [On Certainty and Uncertainty in Law (Reflections on Unconstitutionality of Section 187a of the Criminal Code)], Trestní právo [Criminal law] 5/1999, 12-16
- Kühn Z.: Aktivismus ústavních soudů ve střední a východní Evropě. [Activism of Constitutional Courts in Central and Eastern Europe] In: Transformace ústavních systémů zemí střední a východní Evropy [The Transformation of Constitutional Systems of Central and Eastern Europe], edit.: Pavlíček, Václav, Praha 2000, Univerzita Karlova 2000, 721-736

- Kühn Z.: Je Parlament ČR vázán odůvodněním nálezů Ústavního soudu ČR? [Is the Parliament Bound by the Opinions of the Constitutional Courts?], Právník [Lawyer] vol. 139, 2000, 8, 721 ff.
- Kühn Z.: K výkladu shromažďovacího práva německým Spolkovým ústavním soudem; k interpretaci trestněprávních norem a otázce hranic ústavně konformní interpretace zákona [On the interpretation of the right to assembly by the German Federal Constitutional Court; on the interpretation of criminal rules and the limits of constitutionally conform interpretation of the statute], Jurisprudence 6-7/2000, 3 - 11
- Kühn Z.: Srovnání stylu soudního rozhodnutí v České republice, západní Evropě a USA [The Comparison of the Style of Judicial Decisions in the Czech Republic, Western Europe and the USA], Soudce 1/2001, 8 – 15
- Kühn Z.: Základní modely soudcovské argumentace [Basic Models of Judicial Argumentation], Právník 140, 2001, 4, 342 – 368
- Kühn Z.: Nová koncepce normativity judikatury obecného soudnictví na pozadí rozhodnutí Ústavního soudu [A New Conception of Normativity of Judicial Decisions of Ordinary Judiciary On the Background of the decision of the Constitutional Court], Právní rozhledy, 9, 2001, 6, 265 – 269
- Kühn Z.: Ke vztahu zákona a práva [On the Relation Between the Law and the Statute], Soudce [Judge], 2001, 8, 10 - 15
- Kühn Z., Derka L.: Odůvodnění rozhodnutí vyššími soudy po 1. 1. 2001 a některé poznámky související [Justification of the decisions by higher courts and some corresponding remarks], Právní rozhledy [Law Review], 9, 2001, 8, 380 - 383
- Kühn Z.: K otázce závaznosti rozhodnutí Ústavního soudu [On the Question of Binding Force of decisions of the Constitutional Court], Právník, 140, 2001, 9, 857-887
- Kühn Z.: Spolkový ústavní soud SRN: Střelba u Berlínské zdi [The Federal Constitutional Court: Shootings on the Berlin Wall], Jurisprudence 3, 3, 2001, str. 10 – 18
- Kühn Z.: Působení rozhodnutí ústavního soudu ve vztahu k soudům obecným [Impact of the decisions of the Constitutional Court vis-à-vis ordinary judiciary], Právný obzor, 84, 2001, 6, 465 – 496
- Kysela, J., Kühn, Z.: Aplikace mezinárodního práva po přijetí tzv. Euronovely Ústavy ČR [The application of international law after the enactment of the so-called Euro-amendment to the Czech Constitution], Právní rozhledy, 10, 2002, 7, 301 – 312
- Kühn, Z.: Srovnávací metoda výkladu práva ve srovnávací perspektivě [Comparative Method of Interpretation of Law in Comparative Perspective], Právník, 141, 2002, 10, 1071-1106.
- Kühn Z., Kysela J.: Je ústavou vždy to, co Ústavní soud řekne, že ústava je? (Euronovela Ústavy ve světle překvapivého nálezu Ústavního soudu) [Is the Constitution Always What the Constitutional Court Says It Is? (Euro-Amendment to the Constitution in the Light of the Surprising Decision of the Constitutional Court)], Časopis pro právní vědu a praxi, 10, 2002, 3, 199 – 214
- Kühn Z.: České lustrační rozhodnutí – role srovnávacího práva a nedostatky v soudcovské argumentaci [Czech Lustration Decision – the Role of Comparative Law and Deficiency in Judicial Argumentation], In: Novotný O. /ed./: Pocta V. Mikulemu, ASPI Publishing, Praha 2002, 361 – 381
- Kühn Z.: Závaznost nálezů Ústavního soudu pro obecné soudy: pokus o strukturování problému [Binding Force of the Decisions of the Constitutional Court: An Attempt At the Classification of the Problem], In: Gerloch A. /ed./: Pocta J. Boguszakovi k 75. narozeninám, Carolinum, Praha 2002, 103 – 114
- Kysela J., Kühn Z.: Kreace ústavních soudů ze srovnávací perspektivy [Creation of constitutional courts in comparative perspective], Časopis pro právní vědu a praxi, 11, 2003, 1, 1 ff.
- Kühn Z.: O konci jednoho právního paradigmatu, třech středoevropských ústavních režimech a perspektivě aplikace komunitárního práva [About the End of One Legal Paradigm, Three Central European Constitutional Systems and Perspective of Application of European Law],

In: Kysela J. /ed./: Deset let Ústavy České republiky: východiska, stav, perspektivy, Eurolex Bohemia, Praha 2003, 190-209.

- Kühn Z.: Fikce samostatnosti právnických osob a její prolomení [Fiction of legal independence of juridical person and its breakdown], Právní rozhledy, vol. 11, 2003, No. 11, 542 – 552

- Kühn Z.: Derogace a aplikační přednost ve vztahu domácího, mezinárodního a komunitárního práva [Derogation and Setting Aside in the Relation of Domestic, International and Community Law]. Soudní rozhledy [Judicial Review], vol. 10, 2004, No. 1, str. 1-9

- Kühn Z.: Jusnaturalismus vs. juspozivitismus? Prvních deset let Ústavního soudu a proměna soudcovské ideologie aplikace práva [Ius Naturale vs. Ius positivum? The First Ten Years of the Constitutional Court and the Transformation of the Judicial Ideology of the Application of Law] In: Hloušek V., Šimíček V. (eds.), Dělba soudní moci v České republice, Masarykova univerzita, Brno 2004, 92-117

- Kühn Z.: Ústavní soud ČR 1993-2003 a jeho význam pro proměnu soudcovské ideologie aplikace práva [The Constitutional Court 1993-2003 and its Importance in the Transformation of the Judicial Ideology of Law]. Právní rozhledy, vol. 12, 2004, No. 4, 123 – 129

- Kühn Z.: Iura novit curia: aplikace starého principu v nových podmínkách [Iura novit curia: the Application of the Old Principle Under New Circumstances]. Právní rozhledy, vol. 12, 2004, No. 8, 295 – 299

- Kühn Z.: Samovykonatelnost, přímá účinnost a některé teoretické otázky aplikace mezinárodních smluv ve vnitrostátním právu [Self-executing nature, direct effect and some theoretical questions of the application of international agreements in municipal law]. Právník, vol. 143, 2004, No. 5, 471 - 501

- Kühn Z.: Rozšíření Evropské unie a vztahy šestadvaceti ústavních systémů [The European Enlargement and the Relations between 26 Constitutional Systems]. Právník, vol. 143, 2004, No. 8, 745 - 786.

- Kühn Z.: Proč si kontinentální právníci myslí, že jejich judikatura není závazná aneb patero důvodů pro odlišnou kontinentální koncepci precedentu [Why Continental Lawyers Think that Their Precedents Are Not Binding Alas Five Reasons for Different Continental Conception of Precedent], in: Závaznost rozhodnutí ústavních soudů. Sborník příspěvků. Mezinárodní teoretický seminář pořádaný dne 23. 4. 2004 Právnickou fakultou Západočeské univerzity v Plzni. Západočeská univerzita, Plzeň 2004, 39-46

- Kühn Z.: K otázce závaznosti rozhodnutí Evropského soudu pro lidská práva pro domácí soudnictví [On the Question of Binding Force of Decisions of European Courts of Human Rights for the National Judiciary], Právní rozhledy, vol. 13, 2005, No. 1, 1 – 9

- Kühn Z.: K přezkumu ústavnosti českých aktů implementujících evropské právo nejen ve vztahu k tzv. eurozatykači [On the Review of Czech Acts Implementing European Law not only in Relation to the So-Called European Arrest Warrant], Trestněprávní revue [Criminal Law Review] 2005, vol. 4, No. 3, 57-62

- Kühn Z.: Stanoviska nejvyšších soudů: specifikum středoevropské právní kultury nebo komunistické reziduum? [Statements of Supreme Court: A Specific Novelty of Central European Culture or Postcommunist residuum] Jurisprudence 2005, No. 4, 34-36

- Kühn Z.: Rozhodnutí českých soudů v kauze skupiny Plastic People : argumentace soudů v průběhu tří desetiletí [Decisions of Czech Courts in the Case of Plastic People: Reasoning of Courts in the Course of Three Decades], EMP Jurisprudence, vol. 14, No. 2, 2005, 60-65

- Kühn Z.: Zrušil Nejvyšší správní soud zákaz „švarcsystému"? [Has the Supreme Administrative Court Abolished the Prohibition of the so-called „švarcsystém"?], EMP Jurisprudence, vol. 14, 2005, No. 6, 65-75

- Kühn Z.: K interpretaci a aplikaci starých předpisů z doby rakouské monarchie [On the interpretation and application of old laws from the time of the Austrian Empire], EMP Jurisprudence, vol. 14, 2005, No. 8, 61-64

- Kühn Z., Baňouch H.: O publikaci a citaci judikatury aneb proč je někdy judikatura jako císařovy nové šaty [On the Publication and Citation of Case Law Alas Why Case Law is Sometimes Like Emperor's New Clothes], Právní rozhledy No. 13/2005, 484-491

- Kühn Z., Teoretické problémy aplikace komunitárního práva v nových členských státech [Theoretical Problems of the Application of Community Law in New Member States], Právní fórum, vol. 2, No. 9, 2005, 335-347

**Exhibit B: <u>The List of the Documents I reviewed because of this analysis</u>**
- Joint Pretrial Memorandum filed 10/09/2007, 24 pages

**Exhibit C: <u>Czech Civil Code, Selected Provisions</u>**

§ 3

(1) Exercise of rights and duties following from civil legal relationships must not groundlessly infringe rights and lawful interests of others and must not be in conflict with good morals.

§ 11

An individual shall have the right to protection of his or her personhood, in particular of his or her life and health, civic honor and human dignity as well as of privacy, name and expressions of personal nature.

§ 13

(1) The individual shall be entitled in particular to demand that unlawful violation of his or her personhood be abandoned, that consequences of this violation be removed and that an adequate satisfaction be given to him or her.

(2) If the satisfaction under paragraph 1 appears insufficient due to the fact that the individual's dignity or honor has been considerably reduced, the individual shall also have a right to a pecuniary satisfaction of the immaterial harm.

(3) The amount of the satisfaction under paragraph 2 shall be specified by the court with regard to intensity and circumstances of the infringement.

**PART SIX**
**LIABILITY FOR DAMAGE AND FOR UNJUSTIFIED ENRICHMENT**
CHAPTER ONE
PREVENTION OF THREATENING DAMAGES
§ 415

Everyone must act so as to avoid damages to health, property, nature and environment.

CHAPTER TWO
LIABILITY FOR DAMAGE
Title one
General liability
§ 420

(1) Everyone shall be liable for damage caused by violating a legal duty.

(2) The damage shall be considered caused by a legal entity or by an individual also if they were caused in the course of their activity by those who were used in such activity. These persons themselves shall not be liable according to this Act for the damage caused in this way; their liability under labor law regulations shall not be affected by this rule.

(3) A person who proves not to have caused the damage shall relieve himself of the liability for them.

Title two
Special cases of liability
Liability for damages caused by an intentional conduct against good morals
§ 424

A person who caused damage by an intentional conduct against good morals shall be liable for it.

x

Title three
Joint provisions on compensation of damages
Joint liability
§ 438

(1) If the damages are caused by more damage-doers, they shall be liable for them jointly and severally.

(2) If it is justified, the court may decide that those who caused the damages shall be liable individually according to the participation in causing of the damages.

\*\*\*

§ 441

If the damages were caused also by intention or negligence of the damaged party, the damaged party shall bear the damages proportionally; if the damages were caused exclusively by the damaged party's intention or negligence, the damaged party shall bear the damages on its own.

§ 442

(1) The compensation shall include compensation of the real damages as well as of what the damaged party did not gain (lost profit).

(2) The damages shall be compensated in cash; however, the damages shall be compensated by way of restitution in integrum if the damaged party demands so and if it is possible and purposeful.

(3) If the damages were caused by an intentional crime resulting in a property benefit to the criminal, the court may decide that the right to compensation of damages may be satisfied even from things acquired from the property benefit even if they are otherwise not subject to enforcement of a decision according to the provisions of the Civil Procedure Code. Unless the right to compensation of damages is satisfied, the debtor must not dispose of such things mentioned in the decision.

\*\*\*

§ 450

For reasons worth a special respect, the court shall adequately reduce the compensation of damages. In deciding on the reduction, the court shall particularly take account of how it came to the damages as well as to personal and property relations of the individual who caused them; the court shall also take account of the relations of the individual damaged party. However, the reduction is not admissible if the damages were caused intentionally.

Občanský zákoník, vybraná ustanovení

§ 3

(1) Výkon práv a povinností vyplývajících z občanskoprávních vztahů nesmí bez právního důvodu zasahovat do práv a oprávněných zájmů jiných a nesmí být v rozporu s dobrými mravy.

§ 11

Fyzická osoba má právo na ochranu své osobnosti, zejména života a zdraví, občanské cti a lidské důstojnosti, jakož i soukromí, svého jména a projevů osobní povahy.

§ 13

(1) Fyzická osoba má právo se zejména domáhat, aby bylo upuštěno od neoprávněných zásahů do práva na ochranu její osobnosti, aby byly odstraněny následky těchto zásahů a aby jí bylo dáno přiměřené zadostiučinění.

(2) Pokud by se nejevilo postačujícím zadostiučinění podle odstavce 1 zejména proto, že byla ve značné míře snížena důstojnost fyzické osoby nebo její vážnost ve společnosti, má fyzická osoba též právo na náhradu nemajetkové újmy v penězích.

(3) Výši náhrady podle odstavce 2 určí soud s přihlédnutím k závažnosti vzniklé újmy a k okolnostem, za nichž k porušení práva došlo.

**ODPOVĚDNOST ZA ŠKODU A ZA BEZDŮVODNÉ OBOHACENÍ**

HLAVA PRVNÍ

PŘEDCHÁZENÍ HROZÍCÍM ŠKODÁM

§ 415

Každý je povinen počínat si tak, aby nedocházelo ke škodám na zdraví, na majetku, na přírodě a životním prostředí.

HLAVA DRUHÁ

ODPOVĚDNOST ZA ŠKODU

Oddíl první

Obecná odpovědnost

§ 420

(1) Každý odpovídá za škodu, kterou způsobil porušením právní povinnosti.

(2) Škoda je způsobena právnickou osobou anebo fyzickou osobou, když byla způsobena při jejich činnosti těmi, které k této činnosti použili. Tyto osoby samy za škodu takto způsobenou podle tohoto zákona neodpovídají; jejich odpovědnost podle pracovněprávních předpisů není tím dotčena.

(3) Odpovědnosti se zprostí ten, kdo prokáže, že škodu nezavinil.

ODDÍL DRUHÝ

Případy zvláštní odpovědnosti

Odpovědnost za škodu způsobenou úmyslným jednáním proti dobrým mravům

§ 424

Za škodu odpovídá i ten, kdo ji způsobil úmyslným jednáním proti dobrým mravům.

Oddíl třetí

Společná ustanovení o náhradě škody

Společná odpovědnost

§ 438

(1) Způsobí-li škodu více škůdců, odpovídají za ni společně a nerozdílně.

(2) V odůvodněných případech může soud rozhodnout, že ti, kteří škodu způsobili, odpovídají za ní podle své účasti na způsobení škody.

Zavinění poškozeného

§ 441

Byla-li škoda způsobena také zaviněním poškozeného, nese škodu poměrně; byla-li škoda způsobena výlučně jeho zaviněním, nese ji sám.

Způsob a rozsah náhrady

§ 442

(1) Hradí se skutečná škoda a to, co poškozenému ušlo (ušlý zisk).

(2) Škoda se hradí v penězích; požádá-li však o to poškozený a je-li to možné a účelné, hradí se škoda uvedením do předešlého stavu.

(3) Byla-li škoda způsobena úmyslným trestným činem, z něhož měl pachatel majetkový prospěch, může soud rozhodnout, že je možno právo na náhradu škody uspokojit z věcí, které z majetkového prospěchu nabyl, a to i tehdy, jestliže jinak podle ustanovení občanského soudního řádu výkonu rozhodnutí nepodléhají. Dokud není právo na náhradu škody uspokojeno, nesmí dlužník s takovými věcmi v rozhodnutí uvedenými nakládat.

Snížení náhrady

§ 450

Z důvodů zvláštního zřetele hodných soud náhradu škody přiměřeně sníží. Vezme přitom zřetel zejména k tomu, jak ke škodě došlo, jakož i k osobním a majetkovým poměrům fyzické osoby, která ji způsobila; přihlédne přitom také k poměrům fyzické osoby, která byla poškozena. Snížení nelze provést, jde-li o škodu způsobenou úmyslně.

**Exhibit D: <u>Czech Civil Procedure Code, Costs of Civil Proceedings</u> (selected provisions)**

(a full text of English translation available at http://mujweb.cz/www/vaske/osr.htm, accessed on October 17, 2007, reviewed and modified by Zdenek Kühn)

# CHAPTER THREE
## COSTS OF PROCEEDINGS

### Kinds of costs of proceedings
### § 137

(1) Costs of proceedings are in particular as follows: cash expenses of the participants and their representatives including the judicial fee, loss of earnings of the participants and their legal representatives, costs of evidence, remuneration of a notary for acts of the judicial commissioner and his cash expenses, remuneration of inheritance trustee and his cash expenses, interpreter's remuneration, reward for value added tax, and remuneration for representation.

(2) The remuneration for representation shall be considered costs of proceedings only if the participant is represented by an attorney of law or by a notary within the scope of his authorization provided by special regulations.57) …

…

-------------------

57) § 3 of the Act No. 358/1992 Sb., on notaries and their activity (Notarial Code), as amended by the Act No. 30/2000.

[…]

### Paying the costs of proceedings
### § 140

(1) Every participant shall pay the costs of proceedings occurred to him and the costs of his representative. Common costs shall be paid by the participants according to the proportion of their participation in the case and in the proceedings; unless the proportion of the participation can be ascertained, the costs shall be paid share and share alike. The participants referred to in § 91 para. 2 shall pay the common costs jointly and severally.

(2) If the court appointed an attorney of law for a participant, his cash expenses and remuneration for representation shall by paid by the state; in justified cases, the state shall provide the attorney of law upon his request with an adequate advance payment.

[…]

### Reimbursement of the costs of proceedings
### § 142

(1) A participant who had a full success in the case shall be awarded by the court a reimbursement of costs necessary to a useful exercise or defense of a right against the participant who has had no success in the case.

(2) If the participant had only a partial success in the case, the court shall divide the reimbursement of the costs in a proportionate way; as the case may be, the court shall decide that none of the participants has a right to the reimbursement of costs.

(3) Even if the participant had only a partial success in the case, the court may award him a full reimbursement of costs of the proceedings if the participant failed only in an inappreciable part or if the decision on the amount of the performance depended on an expert's report or on the court's discretion.

…

## § 143

A defendant who lost the case shall have the right to a reimbursement of costs of the proceedings against the plaintiff if the defendant's behavior was not the cause of submission of the petition for commencement of the proceedings.

…

## § 146

(1) None of the participants shall have the right to reimbursement of costs of proceedings according to the results thereof if the proceedings
a) could have been commenced even without a petition; this rule shall not apply if the circumstances of the case justify awarding the reimbursement;

b) ended by concluding a settlement unless anything else was agreed therein concerning the reimbursement of the costs;

c) were stayed.

(2) If a participant has caused by his intention or negligence that the proceedings had to be stayed, such participants shall reimburse the costs thereof. However, if a well-grounded petition was withdrawn due to the behavior of the defendant (another participant of the proceedings), the costs of the proceedings shall be reimbursed by the defendant (another participant of the proceedings).

(3) If the court rejects the lawsuit or another petition for commencement of proceedings, the actor (petitioner) must give the other participants a reimbursement of their costs.

## § 147

(1) The court may order that a participant or his representative reimburse costs of the proceedings that would not have arisen otherwise if they caused them by their intention or negligence or by a chance occurred to them.
(2) If witnesses, experts, interpreters or those who had any duty related to carrying out evidence have caused by their intention or negligence costs of proceedings that would not have arisen otherwise, the court may order that they give the participants a reimbursement thereof.

[…]

## § 149

(1) If an attorney of law represented a participant who was awarded a reimbursement of proceedings, the person upon whom the reimbursement was imposed shall pay it to the attorney of law.

(2) If an appointed attorney of law represented a participant who was awarded reimbursement of costs of proceedings, the person upon whom the reimbursement of these costs was imposed shall pay the state the reimbursement of cash expenses of the attorney of law and a remuneration for representation.

(3) The provision of paragraph 1 shall apply analogously if the participant was represented by a notary within the scope of his authorization provided by special regulations.[57]

## § 150

If there are reasons deserving a special regard, exceptionally, the court shall not have to award a reimbursement of costs of proceedings fully or in part.

**OBČANSKÝ SOUDNÍ ŘÁD**

HLAVA TŘETÍ

NÁKLADY ŘÍZENÍ

Druhy nákladů řízení

§ 137

(1) Náklady řízení jsou zejména hotové výdaje účastníků a jejich zástupců, včetně soudního poplatku, ušlý výdělek účastníků a jejich zákonných zástupců, náklady důkazů, odměna notáře za prováděné úkony soudního komisaře a jeho hotové výdaje, odměna správce dědictví a jeho hotové výdaje, tlumočné, náhrada za daň z přidané hodnoty a odměna za zastupování.

(2) Odměna za zastupování patří k nákladům řízení, jen je-li zástupcem advokát nebo notář v rozsahu svého oprávnění stanoveného zvláštními předpisy. 57) …

_____

57) § 3 zákona č. 358/1992 Sb. , o notářích a jejich činnosti (notářský řád), ve znění zákona č. 30/2000 Sb.

…

Placení nákladů řízení

§ 140

(1) Každý účastník platí náklady řízení, které vznikají jemu osobně, a náklady svého zástupce. Společné náklady platí účastníci podle poměru účastenství na věci a na řízení; nelze-li poměr účastenství určit, platí je rovným dílem. Účastníci uvedení v § 91 odst. 2 platí společné náklady společně a nerozdílně.

(2) Byl-li ustanoven účastníku zástupcem advokát, platí jeho hotové výdaje a odměnu za zastupování, popřípadě též náhradu za daň z přidané hodnoty, stát. V odůvodněných případech stát poskytne advokátovi přiměřenou zálohu.

Náhrada nákladů řízení

§ 142

(1) Účastníku, který měl ve věci plný úspěch, přizná soud náhradu nákladů potřebných k účelnému uplatňování nebo bránění práva proti účastníku, který ve věci úspěch neměl.

(2) Měl-li účastník ve věci úspěch jen částečný, soud náhradu nákladů poměrně rozdělí, popřípadě vysloví, že žádný z účastníků nemá na náhradu nákladů právo.

(3) I když měl účastník ve věci úspěch jen částečný, může mu soud přiznat plnou náhradu nákladů řízení, měl-li neúspěch v poměrně nepatrné části nebo záviselo-li rozhodnutí o výši plnění na znaleckém posudku nebo na úvaze soudu.

…

§ 143

Žalovaný, který neměl úspěch ve věci, má právo na náhradu nákladů řízení proti žalobci, jestliže svým chováním nezavdal příčinu k podání návrhu na zahájení řízení.

§ 146

(1) Žádný z účastníků nemá právo na náhradu nákladů řízení podle jeho výsledku, jestliže řízení

a) mohlo být zahájeno i bez návrhu; to neplatí, odůvodňují-li okolnosti případu přiznání náhrady nákladů řízení;

b) skončilo smírem, pokud v něm nebylo o náhradě nákladů ujednáno něco jiného;

c) bylo zastaveno.

(2) Jestliže některý z účastníků zavinil, že řízení muselo být zastaveno, je povinen hradit jeho náklady. Byl-li však pro chování žalovaného (jiného účastníka řízení) vzat zpět návrh, který byl podán důvodně, je povinen hradit náklady řízení žalovaný (jiný účastník řízení).

(3) Odmítne-li soud žalobu nebo jiný návrh na zahájení řízení, je žalobce (navrhovatel) povinen nahradit ostatním účastníkům jejich náklady.

§ 147

(1) Účastníku nebo jeho zástupci může soud uložit, aby hradili náklady řízení, které by jinak nebyly vznikly, jestliže je způsobili svým zaviněním nebo jestliže tyto náklady vznikly náhodou, která se jim přihodila.

(2) Soud může uložit svědkům, znalcům, tlumočníkům nebo těm, kteří při dokazování měli nějakou povinnost, jestliže zavinili náklady řízení, které by jinak nebyly vznikly, aby je nahradili účastníkům.

§ 149

(1) Zastupoval-li advokát účastníka, jemuž byla přisouzena náhrada nákladů řízení, je ten, jemuž byla uložena náhrada těchto nákladů, povinen zaplatit ji advokátu.

(2) Zastupoval-li ustanovený advokát účastníka, jemuž byla přisouzena náhrada nákladů řízení, je ten, jemuž byla uložena náhrada těchto nákladů, povinen zaplatit státu náhradu hotových výdajů advokáta a odměnu za zastupování.

(3) Ustanovení odstavce 1 platí obdobně, zastupoval-li účastníka notář v rozsahu svého oprávnění stanoveného zvláštními předpisy. 57)

§ 150

Jsou-li tu důvody hodné zvláštního zřetele, nemusí soud výjimečně náhradu nákladů řízení zcela nebo zčásti přiznat.

**Exhibit E: <u>Civil Substantive Law 510, 511 (2006)</u>**

# Civil

# Substantive Law

## 2

Part Three: Law of Obligations

Marta Knappová

Jiří Švestka

Jan Dvořák

et alia

4th updated edition

ASPI Wolters Kluwer

[510]

…

The concept of good morals is defined by legal theory as well as by theory of other scientific disciplines in many ways. Good morals can be considered, as stated above, as the set of generally shared, recognized and respected rules of human behavior in the sense of fidelity, fairness, not cheating, i.e. consistent with the value order of the society. ...

….

[511]

...

The provision on intentional conduct against good morals according to Art. 424 applies also when someone intentionally exercised his or her right in order not to reach an allowed purpose but exclusively or primarily to harm another (the exercise of one's right via vexation, i.e. the exercise of one's right exclusively or primarily to harm another).

**Exhibit F: <u>judgment of the Supreme Court file no. 21 Cdo 992/99 of 6/28 2000</u> (in Czech only)**

**21 Cdo 992/99**

ČESKÁ REPUBLIKA
ROZSUDEK
JMÉNEM REPUBLIKY

Nejvyšší soud České republiky rozhodl v senátě složeném z předsedy JUDr. Zdeňka Novotného a soudců JUDr. Ljubomíra Drápala a JUDr. Mojmíra Putny v právní věci žalobce Ministerstva zahraničních věcí České Republiky, Praha 1, Loretánské nám. č. 5, proti žalovanému J. D., o 117.565,80 Kč s příslušenstvím, vedené u Obvodního soudu pro Prahu 9 pod sp. zn. 19 C 182/97, o dovolání žalobce proti rozsudku Městského soudu v Praze ze dne 21. května 1998, č. j. 14 Co 124/98-39, takto:

I. Dovolání žalobce se zamítá.

II. Žádný z účastníků nemá právo na náhradu nákladů dovolacího řízení.


O d ů v o d n ě n í :

Žalobce se domáhal, aby mu žalovaný zaplatil 117.565,80 Kč s 21% úrokem od 28. 3. 1997 do zaplacení. Žalobu odůvodnil tím, že žalovaný byl dne 15. 9. 1996 dlouhodobě přeložen k výkonu práce v zahraničí na zastupitelský úřad v D. Následujícího dne 16.9. 1996 sdělil žalovaný velvyslanci, že je jeho „neměnným rozhodnutím" rozvázat pracovní poměr výpovědí a s ohledem na toto sdělení se účastníci dne 17. 9. 1996 dohodli na skončení pracovního poměru dohodou. Protože žalovaný odjel z místa výkonu práce v zahraničí dne 18. 9. 1996 po dvou dnech pobytu, aniž by vykonával v místě přeložení jakoukoliv práci, představují za dané situace žalobcem vynaložené náklady na leteckou přepravu žalovaného a jeho rodinných příslušníků a na přepravu svršků do místa přeložení a nazpět, na které by měl jinak žalovaný právo, bezdůvodné obohacení žalovaného na úkor žalobce.

Obvodní soud pro Prahu 9 rozsudkem ze dne 25. 9. 1997 č.j. 19 C 182/97-20 žalobu zamítl a rozhodl, že žádný z účastníků nemá právo na náhradu nákladů řízení. Dospěl k závěru, že náklady vynaložené v souvislosti s cestou žalovaného do místa jeho přeložení a zpět nelze považovat za bezdůvodné obohacení získané plněním bez právního důvodu, neboť právním důvodem cesty žalovaného bylo přeložení a právním důvodem jeho návratu potom dohoda o skončení pracovního poměru. Podle názoru soudu prvního stupně žalobce také neprokázal, že by poskytnuté plnění bylo bezdůvodným obohacením získaným plněním na základě neplatného právního úkonu.

K odvolání žalobce Městský soud v Praze rozsudkem ze dne 21. 5. 1998 č.j. 14 Co 124/98-39 rozsudek soudu prvního stupně potvrdil, rozhodl, že žádný z účastníků nemá právo na náhradu nákladů odvolacího řízení, a vyslovil proti svému rozsudku přípustnost dovolání „pro otázku, zda § 7 odst. 2 zák. práce může být podkladem pro vrácení náhrad některých výdajů poskytnutých zaměstnancům rozpočtových a příspěvkových organizací s pravidelným pracovištěm v zahraničí". Odvolací soud vyšel ze skutečnosti, že částky, kterých se žalobce domáhal, představují náklady vynaložené v souvislosti s pravidelným pracovištěm v zahraničí, které jsou upraveny nařízením vlády č. 62/1994 Sb., a že podle ustanovení § 17 zákona č. 119/1992 Sb. ve znění pozdějších předpisů, zaměstnanci přidělenému k výkonu práce v zahraničí, který je odměňován podle zvláštních předpisů (mj. též podle výnosu ministra zahraničních věcí č. 013.147/62), přísluší za dny cesty do místa přidělení a zpět a při pracovních cestách v zahraničí náhrady jako při zahraniční pracovní cestě. Na tomto základě dovodil, že žalovaný na náhradu nákladů spojených s jeho přepravou včetně členů rodiny a s přepravou jeho osobních věcí měl nárok. Důvodem placení těchto náhrad bylo právě jeho vyslání k výkonu práce do zahraničí podle § 38 odst. 3 zák. práce s místem přidělení v D., a z těchto důvodů nelze považovat poskytnuté plnění za bezdůvodné obohacení získané plněním bez právního důvodu (plnění z neplatného právního úkonu nepřichází podle názoru odvolacího soudu v úvahu). Protože žalobce neprokázal své tvrzení, že mu v souvislosti s jednáním žalovaného vznikla škoda, a protože „nemůže tvrdit, že žalobce (správně žalovaný) cokoliv porušil", není dána příčinná souvislost mezi údajným porušením § 38 odst. 3 zák. práce žalovaným a údajným vznikem škody, a z těchto důvodů nebylo možné „nárok podřadit ani pod příslušná ustanovení zákoníku práce týkající se náhrady škody". Odvolací soud nepovažoval za možné akceptovat názor žalobce, jestliže se domáhal přiznání požadované částky „přímým použitím § 7 zák. práce", neboť v tomto ustanovení se jen „souhrnně definovalo výkladové pravidlo při použití jiných ustanovení zákoníku práce" a toto ustanovení „nezakládá samo o sobě žádný hmotný nárok, pouze se použije tam, kde je dána zákonem smluvní volnost při úpravě některých vztahů mezi zaměstnavatelem a

zaměstnancem, na hodnocení jejich smluvních ujednání".

Proti tomuto rozsudku odvolacího soudu podal žalobce dovolání. „V souladu se závěry odvolacího soudu, že § 7 odst. 2 zák. práce se použije tam, kde je dána zákonem smluvní volnost při úpravě některých vztahů mezi zaměstnancem a zaměstnavatelem", dovolává se „použití tohoto ustanovení při porušení dohody o délce přeložení do jiného místa výkonu práce podle § 38 odst. 3 zák. práce žalovaným". Zdůraznil, že žalovaný byl srozuměn s tím, že byl vyslán se svou rodinou na zastupitelský úřad v D. na čtyři roky (tj. po dobu nezbytné provozní potřeby zaměstnavatele), a že v souvislosti s jeho přeložením žalobce vynaložil značnou částku. Tím, že žalovaný nedodržel tuto dohodu a vynutil si předčasné odvolání ze zastupitelského úřadu v D., došlo k vynaložení finančních prostředků, se kterými se nepočítalo a které by nebyly vynaloženy, kdyby dohodu o dlouhodobém vyslání dodržel. V souvislosti s jednáním žalovaného vznikla žalobci škoda, která byla spojena i s vysláním nového zaměstnance s jeho rodinou na zastupitelský úřad v D. Žalobce navrhl, aby dovolací soud napadený rozsudek zrušil a aby věc vrátil odvolacímu soudu k dalšímu řízení.

Nejvyšší soud České republiky jako soud dovolací (§ 10a o. s. ř.) po zjištění, že dovolání proti pravomocnému rozsudku odvolacího soudu bylo podáno ve lhůtě uvedené v ustanovení § 240 odst. 1 o.s.ř. a že jde o rozsudek, proti kterému je i podle ustanovení § 239 odst. 1 o.s.ř. dovolání přípustné, přezkoumal napadený rozsudek bez jednání (§ 243a odst. 1, věta první o.s.ř.) a dospěl k závěru, že dovolání není opodstatněné.

Podle ustanovení § 7 odst. 2 zák. práce nikdo nesmí výkonu práv a povinností vyplývajících z pracovního poměru zneužít na újmu jiného účastníka pracovněprávního vztahu.

V posuzované věci bylo z hlediska skutkového stavu zjištěno, že žalovaný, který pracoval u žalobce na základě pracovní smlouvy ze dne 11.6.1981 jako odborný referent, byl dne 15.9.1996 přeložen k dlouhodobému výkonu práce v zahraničí na zastupitelský úřad v D. V rámci příprav na tento pobyt žalovaný kromě jiného zaplatil předem nájemné za svůj byt v P. na dobu od září 1996 do srpna 1997, prodal jeden rok starý osobní automobil Škoda Felicia GLXi, jeho manželka rozvázala pracovní poměr a stanovením individuálního studijního plánu byla provedena úprava školní docházky jeho dcery na základní škole. Dne 15.9.1996 přicestoval i s manželkou a dcerou do D., dne 16.9.1996 sdělil velvyslanci, že rozvazuje pracovní poměr, dne 17. 9. 1996 předal velvyslanci výpověď z pracovního poměru „s tím, že pracovní poměr skončí k 30. listopadu 1996, pakliže nebude uzavřena dohoda o dřívějším skončení pracovního poměru". Téhož dne se účastníci dohodli s ohledem na „zájem ZÚ na včasném, efektivním a kvalitním obsazení místa na obchodním úseku" o rozvázání pracovního poměru dohodou dnem 18.9.1996. Žalovaný i s rodinou odcestoval dne 18.9.1996 nazpět; náklady na přepravu žalovaného i jeho rodinných příslušníků a náklady na přepravu svršků v celkové výši 117.565,80 Kč platil žalobce.

Otázka, v čem lze spatřovat postup, který je v rozporu s ustanovením§ 7 odst. 2 zák. práce, a jaké důsledky má pro vzájemné právní vztahy účastníků pracovního poměru, nebyla v rozhodovací praxi soudů doposud řešena a ani právní nauka se dosud tímto problémem výrazněji způsobem nezabývá.

K realizaci práva a naplňování jeho obsahu, dochází - obecně vzato - jednak prostřednictvím veřejnoprávních aktů (vydáváním individuálních aktů aplikace práva), vydáváním aktů řízení - individuálních i normativních interních instrukcí a dále - jako je tomu v posuzované věci - výkonem práva na základě soukromoprávních úkonů. Vlastní výkon je třeba důsledně odlišovat od šířeji pojímaného dovoleného chování podle práva vyjádřeného zásadou, že právem každého je činit, co není zákonem zakázáno, a nikdo nesmí být nucen činit, co zákon neukládá (srov. čl. 2 odst. 4 Ústavy České republiky vyhlášené pod č. 1/1993 Sb.), neboť bezpochyby ne každé chování, které není protiprávní a které je tak řečeno bezúhonné, může představovat uplatňování subjektivního práva jako takového.

V právních vztazích, ve kterých jsou vztahy účastníků charakterizovány jejich vzájemnou rovností, je výkonem práva převážně míněno uskutečňování subjektivního práva (dovoleným) chováním jeho subjektu, které spočívá v konání právních úkonů a vyžadování splnění povinnosti od druhého, včetně uplatnění práva na státní ochranu ohroženého či poškozeného subjektivního práva (srov. Knapp, V.: Teorie práva, 1. vydání, Praha, C.H.Beck 1995, str.181 a násl.). Subjektivní právo lze uskutečňovat, mimo výše uvedeného, rovněž dovoleným chováním, jemuž sice nelze přiznat charakter právního úkonu, protože samo o sobě nesměřuje ke vzniku, změně nebo zániku právních vztahů, a kterým ani není vyžadováno splnění povinnosti od druhého, ale které se uskutečňuje s vůlí způsobit právní následky, popř. vytvořit předpoklady pro další právní postup. Jde o tzv. faktické úkony, jimiž je v pracovněprávních vztazích vykonáváno (konzumováno) právo z právním úkonem již založeného právního vztahu, jako je kupř. rozhodnutí o organizační změně v pracovním poměru, rozhodnutí o rozvržení týdenní pracovní doby, písemné upozornění na možnost dání výpovědi (§ 46 odst. 1 písm. f) i.f. zák. práce), předchozí souhlas příslušného odborového orgánu podle ustanovení§ 59 odst. 2 zák. práce apod.

Objektivní právo předpokládá, že výkon subjektivního práva směřuje k uskutečnění cíle sledovaného právní normou. Z logiky věci, dané vzájemně opačným postavením zúčastněných stran, vyplývá, že výkon subjektivního práva (vynucení splnění subjektivní povinnosti) může mít někdy za následek újmu na straně povinného subjektu, což by bylo možné vnímat jako rozpor s obecně přijímaným právním pravidlem, že každý se má chovat tak, aby nerušil práva jiného. Nelze mít pochybnosti o tom, že v pracovněprávních vztazích bývá rozvázání pracovního poměru některým ze způsobů skončení pracovního poměru uvedených v ustanovení § 42 odst. 1 zák. práce pro účastníky z hlediska jejich zájmů nestejně výhodné, neboť výkon nezadatelného práva ukončit zákonem stanoveným způsobem pracovní vztah, má pro druhého účastníka nikoliv ojediněle za následek vznik určité újmy. Je tomu tak nejen tehdy, jestliže je pracovněprávní vztah rozvazován bez zřetele na stanovisko druhé strany jednostranným právním úkonem, ale i v případě, jestliže je pracovní poměr rozvázán - jak tomu bylo také v posuzované věci - na základě souhlasného projevu vůle dohodou obou účastníků pracovněprávního vztahu. Protože však výkon práva vylučuje protiprávnost, protože stejný stav nemůže být současně stavem právním i právu se příčícím, je třeba, vycházeje ze zásady „neminem laedit, qui iure sui utitur", chování, které směřuje k zákonem předpokládanému výsledku, považovat za dovolené i tehdy, je-li jeho (eventuelním) vedlejším následkem vznik majetkové, popř. nemajetkové újmy na straně dalšího účastníka právního vztahu.

Výkon práva, jak již bylo uvedeno, postrádá protiprávnosti, děje-li se v souladu s právem. Objektivní právo předpokládá, že výkon práva směřuje k uskutečnění cíle sledovaného právní normou. Jestliže však jednající sice koná v mezích svého práva, ale prostřednictvím realizace chování jinak právem dovoleného sleduje poškození druhého účastníka právního vztahu, jedná se sice o výkon práva, ale o výkon práva závadný, kdy jednání a jeho výsledek se snad zcela shodují s výsledkem, který mělo právo na zřeteli, ale kdy jednání bylo učiněno nikoliv za účelem dosažení výsledků, k jejichž docílení byla jednajícímu propůjčena ochrana, nýbrž aby bylo dosaženo výsledků jiných, které jsou jinak považovány za nevítaný vedlejší následek tohoto jednání. Takový výkon práva, i když je se zákonem formálně v souladu, je ve skutečnosti výkonem práva jen zdánlivým; účelem zde není vykonat právo, ale poškodit jiného, neboť jednající v rozporu s ustálenými dobrými mravy je přímo veden úmyslem způsobit jinému účastníku újmu, zatímco dosažení vlastního smyslu a účelu sledovaného právní normou zůstává pro něho vedlejší a je z hlediska jednajícího bez významu. Toto zneužití výkonu subjektivního práva (označované rovněž jako šikana), kdy je výkon práva ve skutečnosti toliko prostředkem umožňujícím poškodit jiného účastníka pracovněprávních vztahů, ustanovení § 7 odst. 2 zák. práce nepřipouští.

Dovolatel se „dovolává použití" tohoto ustanovení z toho důvodu, že žalovaný nedodržel předpokládanou délku pobytu v místě trvalého přeložení, se kterou byl původně srozuměn, „vynutil si předčasné odvolání ze zastupitelského úřadu" a v důsledku toho došlo k vynaložení finančních prostředků, „se kterými se nepočítalo" a které by jinak nebyly vynaloženy. Vzhledem k výše uvedenému se tedy jednalo o to, zda žalovaný při rozvazování pracovního poměru, jímž si vlastně podle názoru žalobce své odvolání „vynutil", byl žalovaný veden přímým úmyslem žalobce poškodit.

V posuzovaném případě z výsledků dokazování vyplývá, že v důsledku rozvázání pracovního poměru účastníků, popřípadě v souvislosti s výkonem práva žalovaného skončit pracovní poměr, vznikla žalobci újma spočívající v tom, že vynaložil náklady na přepravu žalovaného i jeho rodinných příslušníků a náklady na přepravu jejich svršků v celkové výši 117.565,80 Kč. I když právní důvod, na jehož podkladě byly tyto náklady poskytnuty, je založen příslušnou úpravou danou zákonem č. 119/1992 Sb., o cestovních náhradách, (ve znění změn a doplňků) a nařízením vlády č. 62/1994 Sb., o poskytování náhrad některých výdajů zaměstnancům rozpočtových a příspěvkových organizací s pravidelným pracovištěm v zahraničí, lze rovněž připustit, že z hlediska žalobce byly tyto náklady vynaloženy neúčelně, resp. nadbytečně, neboť stejné náklady musel vynaložit na vyslání dalšího zaměstnance. Z výsledků dokazování ale nevyplývá, že žalovaný byl při cestě do místa přidělení v zahraničí a následně při jednání o rozvázání pracovního poměru přímo veden úmyslem způsobit žalobci tuto újmu. Z obsahu spisu se podává, že zmíněná újma je spíše výše uvedeným nevítaným vedlejším následkem jednání žalovaného, což samo o sobě neumožňuje učinit závěr o zneužití práva. Okolnost, že žalovaný nezvážil dostatečně předem všechny souvislosti dlouhodobého pobytu v zahraničí a - jak se podává z výpovědi jeho manželky - postoje svých rodinných příslušníků k tomuto pobytu, rovněž nepředstavuje možnost spatřovat v jeho následném jednání po příjezdu do místa dlouhodobého přidělení zneužití práva rozvázat zákonem stanoveným způsobem vzájemný pracovněprávní vztah účastníků.

Z uvedeného vyplývá, že rozsudek odvolacího soudu je z hlediska uplatněných dovolacích důvodů věcně správný. Protože nebylo zjištěno (a ani dovolatelem tvrzeno), že by rozsudek odvolacího soudu byl postižen některou z vad uvedených v ustanovení § 237 odst. 1 o.s.ř. nebo jinou vadou, která by mohla mít za následek nesprávné rozhodnutí ve věci, Nejvyšší soud České republiky dovolání žalobce podle ustanovení § 243b odst. 1,

části věty před středníkem o.s.ř. zamítl.

O náhradě nákladů dovolacího řízení bylo rozhodnuto podle ustanovení § 243b odst. 4, věty první, § 224 odst. 1 a § 151 odst. 1, věty první o.s.ř., neboť žalobce s ohledem na výsledek řízení na náhradu svých nákladů nemá právo a žalovanému, který měl v dovolacím řízení plný úspěch a který by měl právo na náhradu účelně vynaložených nákladů tohoto řízení (srov. § 142 odst. 1, větu první o.s.ř.), v dovolacím řízení žádné náklady nevznikly.

Proti tomuto rozsudku není přípustný opravný prostředek.

V Brně 28. června 2000


JUDr. Zdeněk N o v o t n ý
předseda senátu

**Exhibit G: <u>Aleš Gerloch & Jan Tryzna, Nad vázaností soudce zákonem z pohledu některých soudních rozhodnutí [On the binding nature of the statute for judges from the perspective of some judicial decisions]</u>, 15 Právní rozhledy 23 (2007) (a law review article, in Czech only)**

Literatura

**Název**: Nad vázaností soudce zákonem z pohledu některých soudních rozhodnutí

Autor: **Prof. JUDr. Aleš Gerloch, CSc., JUDr. Jan Tryzna**

Vydavatel: **C.H.BECK**
Titul: **Právní rozhledy**
Datum vydání: **11.01.2007**
Číslo sešitu: **1/2007**
Rok: **2007\Diskuse**

Poznámky:str. 23 - 28

Text

# Nad vázaností soudce zákonem z pohledu některých soudních rozhodnutí

*Prof. JUDr. Aleš Gerloch, CSc., JUDr. Jan Tryzna, Praha* [*]

## I. Právní normy a pravidla jejich interpretace[1]

Jednou z věčných otázek, kterými se zabývá obecná právní teorie, jakož i právní odvětví platného práva, je míra vázanosti soudce určitými pravidly při rozhodování konkrétních případů. Možná řešení tohoto problému si lze představit jako pomyslnou osu, kde na jedné straně se nachází takový přístup soudce k aplikaci práva, který se vyznačuje maximální snahou o dodržení textu zákona (právní formalismus, resp. legalismus), na straně druhé je naopak maximální oproštění soudce od předem stanovených pravidel (právní pragmatismus, resp. volné nalézání práva). Prvnímu přístupu by odpovídal v evropském právním myšlení nejen tradiční právní pozitivizmus 19. stol. (exegetické přístupy), ale i např. učení normativizmu či tzv. ryzí nauky právní, zaměřené výlučně na text právního předpisu a odhlížející od všech morálních, spravedlnostních, sociálních, ekonomických a jiných aspektů, které mohou rozhodování ovlivnit, pokud k nim nenařizuje přihlédnout samotný právní předpis. Příkladem směru zastávajícího opačné stanovisko může být tzv. *Freirechtsschule*, která našla určitý ohlas v německém a rakouském právním myšlení na přelomu 19. a 20. stol.[2]
Problematika vázanosti soudce předem stanovenými pravidly může mít více rovin.[2] Základním východiskem je představa, že musí existovat předem stanovená pravidla, která soudce aplikuje při rozhodování konkrétní kauzy. Tato pravidla mají určitou formu, pomocí níž je lze identifikovat jako pravidla právní, tedy taková, která soudce musí použít, protože je mu tato povinnost samotnými pravidly uložena. Příkladem formy takových pravidel jsou právní předpisy (mezi nimi zvláště zákony). Zákonné normy měly v evropské právní tradici moderní doby dlouho výsadní postavení, v posledních desetiletích se však formální rozsah těchto pravidel rozšiřuje, mimo jiné i v důsledku působení práva mezinárodního a specifického práva evropského.
Je ovšem potřeba rozlišovat formální vyjádření těchto pravidel a jejich obsah. Z hlediska formy jsou právní pravidla vyjádřena jednotlivými větami v textech právních předpisů (či v případě soudních precedentů např. v textech soudních rozhodnutí), v nichž jsou seřazena podle určité systematiky do paragrafů nebo článků nezřídka členěných na odstavce a věty, ty pak do hlav a částí zákona atd. Vlastní pravidla, podle kterých soudce má rozhodovat, nelze ztotožňovat s těmito větami, neboť vyplývají ze smyslu jednotlivých vět, které jsou zařazeny do kontextu celého právního předpisu, resp. právního odvětví nebo i celého právního řádu.
Je proto nezbytné si vždy připomenout, že zjišťování smyslu ustanovení právního předpisu, zjišťování významu právních pravidel (práv a povinností, které jsou jimi založeny), se samo o sobě řídí dalšími pravidly, která již nemají, alespoň ve většině případů, povahu pravidel právních, resp. právně závazných. Existují tak na straně jedné vlastní pravidla chování, která lze považovat za pravidla právní, protože jsou vyjádřena v právním předpise, na straně druhé pak pravidla vytvářející

argumentační aparát pro jejich interpretaci a aplikaci. Tato pravidla jsou v současné době, zejména v českém právním řádu, pravidly právními jen v omezeném počtu případů. Z historie lze připomenout např. § 7 Obecného zákoníku občanského,[3] kde byla normativně zakotvena některá interpretační pravidla, jež dnes v pozitivním právu vyjádřena nejsou (nebo jen s určitými výjimkami). Lze si přitom snadno představit, že význam určitého ustanovení právního předpisu (tedy vlastní pravidlo chování) bude záviset právě na metodě, kterou bude takové ustanovení vykládáno. Výkladové metody (metody interpretace) nejsou přitom nic jiného než soubory pravidel o tom, jakým způsobem postupovat při pochopení normativního textu.

Z uvedeného by mělo být zřejmé, že při zkoumání míry vázanosti soudce zákonem je potřeba vzít v úvahu různé faktory, které mohou mít vliv na obsah vlastního pravidla chování, které je v něm stanoveno. Problémem se někdy stává již samotná zjistitelnost těchto pravidel, dále případné (třeba i zdánlivé) mezery v takových pravidlech, rozpory mezi nimi a v neposlední řadě (zejména v poslední době) i zdroje těchto pravidel.

Problém poslední je řešen stanovením určitých pramenů práva, v nichž soudce pravidla pro své rozhodování hledá. V posledních desetiletích je ovšem patrná snaha rozšiřovat okruh pramenů práva nad tradiční rámec. Naopak problém zjistitelnosti obsahu právních pravidel se snaží řešit právní hermeneutika, resp. teorie interpretace práva, která vybavuje soudce dalšími pravidly, s jejichž pomocí se snaží dobrat obsahu zjišťované právní normy. Jde zejména o různé interpretační a argumentační metody. Problém mezerovitosti právního řádu, tedy problém chybějícího právního pravidla, které je potřeba k rozhodnutí určité kauzy, je možno řešit např. za pomoci rozšiřujících výkladových metod (extenzivní výklad), analogií zákona nebo práva, nebo, zejména v oblasti veřejného práva, podle zásad legality zamítavým výrokem. Jinou možností řešení mezer v právu je odkaz na určité extralegální standardy, různé spravedlnostní úvahy apod.

Stejně tak, jako je mnohovrstevná problematika zjišťování právních pravidel, je komplikovaná i otázka míry volnosti soudce určitými pravidly, resp. volnosti soudce určitá pravidla neaplikovat. Tak např. lze rozlišit situace, kdy je soudce vázán „zákonem" na straně jedné, od případů, kdy je vázán „právem", resp. „právním řádem". Z hlediska určitého historického porovnání, a zejména s ohledem na vývoj českého, resp. československého práva, není jistě bez zajímavosti, že základní vymezení limitů, v nichž se soudce musí pohybovat, může být značně variabilní. Je možno připomenout, že před změnou režimu v roce 1989 a ještě určitou dobu poté byli soudci v Československu vázáni „právním řádem".[4] Teprve v důsledku novelizace provedené ústavním zákonem č. 326/1991 Sb. došlo ke změně příslušného ustanovení tak, že soudci nadále měli být vázáni „jedině zákonem". V drobné modifikaci (vypuštění slova „jedině") platí takové pravidlo dodnes (čl. 95 Ústavy) s tím, že je přesněji formulováno oprávnění soudce případně neaplikovat podzákonné právní předpisy. Provedená změna v okruhu pravidel, jimiž je soudce vázán, bývá zdůvodňována nutností posílit nezávislost soudcovské moci a posílením postavení parlamentu jakožto jediného přímou volbou občany legitimovaného státního orgánu, který je oprávněn přijímat primární obecně závazné normativní právní akty, a to na úkor moci výkonné, která je oprávněna přijímat pouze obecně závazné normativní právní akty sekundární (a ovšem i vnitřní předpisy). Vzhledem k historicko-politickým souvislostem jde o změnu jistě pochopitelnou. Souvisí též s důrazem na ochranu základních práv a svobod, jejichž meze mohou být stanoveny pouze zákonem (čl. 4 Listiny), případně v širším smyslu s tzv. výhradou zákona vůbec. Přesto s tímto postupem kontrastuje přístup jiných států k této problematice. Tak např. již v roce 1963 došlo ke změně v podstatě přesně opačné v Nizozemí, kde byl Nejvyšší soud (*Hoge Raad*) nově oprávněn aplikovat nikoliv pouze zákony, ale obecněji „právo".[5]

Jinou možností, jak do jisté míry rozšířit okruh pravidel, která mohou soudci aplikovat, je uznání relevance tzv. obecných právních principů (obecných zásad právních), které soudy používají ve svých normativních úsudcích. Posilování významů pravidel tohoto druhu je patrné zejména v posledních desetiletích, přičemž lze soudit, že velký vliv na tento trend má sbližování právních řádů jednotlivých států prostřednictvím mezinárodních, resp. nadnárodních organizací, resp. jejich soudních institucí, jejichž rozhodnutí mají v řadě případů značný vliv na národní právní řády.[6] Uznání relevance právních principů, které jsou navíc často nepsané, významně rozšiřuje argumentační aparát soudců. Je to patrné i v našem právním řádu, neboť právní principy jsou významnou součástí argumentačního aparátu v judikatuře Ústavního soudu, a to často právě pod vlivem mezinárodních soudních institucí. Ústavní soud totiž přiznal právním principům dokonce (nikoliv zcela nesporně) relevanci samostatného pramene práva v nálezu č. 30/1998 Sb. a tuto doktrínu rozvíjí i v dalších nálezech.

Přesto, že by se mohlo zdát, že aplikaci právních principů v soudcovském rozhodování je nutno hodnotit bez dalšího pozitivně, nemusí tomu tak být vždy, neboť jejich použití může vyvolat určité kontroverze.

V prvé řadě je nutno zmínit problém s určitelností existence právního principu v rámci právního řádu. Z výsledků zkoumání právní komparatistiky plyne, že jen zřídka najdeme právní principy, o nichž by bylo možno tvrdit, že existují ve všech právních řádech ve všech historických epochách. Naopak, spíše se zdá, že řada právních principů je podmíněna určitými historickými, sociálními a politickými souvislostmi. To dokládá i skutečnost, že jsou postupem času formulovány principy nové. Dalším problémem je skutečnost, že v některých případech nelze jednoznačně určit obsah právního principu.[7] Nakonec problémem, který je nutno považovat za nejzávažnější, je vyřešení otázky, zda vůbec a za jakých okolností má být určitý právní princip aplikován. Situace je komplikovaná proto, že právní princip není zpravidla vyjádřen v podobě určitého ustanovení právního předpisu, ale je spíše dovozován z kontextu více ustanovení právního předpisu, celých právních předpisů či dokonce celého právního řádu. Není proto jednoznačně stanoveno, kdy a zda vůbec má být právní princip aplikován. Vzhledem k vysoké abstraktnosti právních principů je totiž patrné, že je lze aplikovat téměř vždy.[8]

## II. Extralegální standardy v soudcovském právu

Další skutečností, která umožňuje určitou volnost soudcovského rozhodování, a to případně i v podmínkách právních řádů, které kladou důraz na vázanost soudce zákonem (nebo obecněji právním předpisem), je průnik různých extralegálních elementů do práva. Příkladem mohou být dobré mravy, zásady poctivého obchodního styku a podobné prvky, jejichž obsah je ve své podstatě definován mimo právní řád. Tak např. Nejvyšší soud vymezuje pojem dobrých mravů takto: „Dobrými mravy se rozumí souhrn společenských, kulturních a mravních norem, jež v historickém vývoji osvědčují jistou neměnnost, vystihují podstatné historické tendence, jsou sdíleny rozhodující částí společnosti a mají povahu norem základních."[9] Z podané definice je patrná otevřenost právního řádu extralegálním pravidlům, která se v důsledku odkazu v právním předpise stávají součástí právního řádu.

Relevance dobrých mravů a podobných standardů pro soudní rozhodování jako určitého korektivu potenciální tvrdosti zákona je v současné době poměrně značná a vzhledem k některým legislativním změnám stále roste. Z teoretického hlediska je ovšem zajímavé, že takovéto standardy nacházejí při aplikaci práva uplatnění pouze v případě, že právní předpis na ně odkazuje, neboť není v zásadě příliš patrná snaha prosazovat relevanci takovýchto standardů v případech, kdy s nimi právní předpis sám nepočítá.[10] Za důkaz rostoucího vlivu extralegálních standardů je možno považovat změny zákoníku práce, k nimž došlo v roce 2004. Zatímco občanský zákoník počítá s dobrými mravy jako korektivem pro výkon (subjektivního) práva od roku 1991, zákaz jednání, které je v rozporu s dobrými mravy, byl do zákoníku práce zaveden až v roce 2004 (zákonem č. 436/2004 Sb.).

Lze soudit, že základní požadavky pozitivistického přístupu k aplikaci práva stále ještě v rozhodovací praxi soudů převládají,[11] i když je možné zejména v judikatuře vyšších soudů, zvláště pak Ústavního soudu, shledat snahy rozšiřovat rozhodovací kritéria nad rámec relativně jednoznačně stanoveny zákonem.[12]

V neposlední řadě nelze při zkoumání míry vázanosti soudce zákonem opominout, že samotný text právního předpisu může zakládat pochybnosti o obsahu právních norem v něm vyjádřených, a to vzhledem k přílišné abstraktnosti či vágnosti používaných pojmů, které vyžadují upřesnění. Určité míry abstrakce se ovšem normotvůrce vždy vyvarovat nemůže, neboť zcela kazuistická právní úprava je stejně nefunkční jako vysoce abstraktní. K odstranění problémů tohoto druhu slouží již zmíněná interpretační pravidla, resp. interpretační postupy.

Je potřeba mít na paměti, že i při aplikaci práva by měly být dodrženy některé základní principy vyjádřené na ústavní úrovni, které stanoví meze „volného nalézání práva". Z hlediska aplikace práva je to již zmíněný princip legality výkonu státní moci, který vyžaduje, aby se veškeré státní orgány řídily zákonem. Ve vztahu k soudům je tento požadavek upřesněn čl. 95 Ústavy, resp. čl. 36 Listiny. Aplikace takových standardů, s nimiž pozitivní právo výslovně nepočítá, tak může být nejen problematická, ale též protiústavní.

Obzvlášť zajímavé jsou kauzy, kdy se extralegální standardy dostávají (někdy možná zdánlivě) do rozporu s jednoznačně zakotvenými subjektivními právy. V relativně nedávné době se např. rozvinula polemika ohledně možnosti tvrdit, že vznesení námitky promlčení je v rozporu s dobrými mravy. Na

první pohled se takový závěr zdá absurdní. Promlčení práva představuje právní skutečnost, která je objektivní, nastane pouhým uplynutím doby (má povahu právní události). Teprve mají-li nastat účinky promlčení, je potřeba jednostranného právního úkonu osoby, které je promlčení na prospěch, tj. osoby, která je nositelem povinnosti korelativní k promlčenému právu. Vzhledem k tomu, že možnost vznést námitku promlčení není v žádném právním předpisu nijak omezována, zdá se pochybné, že by mohla obstát námitka, že vznesení námitky promlčení je v rozporu s dobrými mravy. Přesto soudní judikatura tento závěr, byť s jistým váháním, přijala.

První rozhodnutí o vztahu dobrých mravů a námitky promlčení vydal Ústavní soud, který bez jakýchkoliv pochybností prohlásil: „Ustanovení § 3 ObčZ, dle kterého výkon práv nesmí být v rozporu s dobrými mravy, platí i pro výkon práva vznést námitku promlčení.“[13] Další rozhodnutí soudů tento paušalizující a v odůvodnění nálezu nepříliš argumentovaný závěr doplnila o podmínky, za nichž je možné tvrdit, že vznesená námitka promlčení je v rozporu s dobrými mravy.[14] Výsledkem byla relativizace stanoviska Ústavního soudu.

## III. Zneužití práva

Obdobně, jako je tomu v případě dobrých mravů, zachází soudní judikatura s institutem tzv. zneužití práva. Je opět zajímavé, že pozitivněprávně není zákaz zneužití práva zakotven ve všech právních odvětvích, která by přicházela v úvahu. Svým charakterem se institut zákazu zneužití práva blíží zákazu výkonu práva v rozporu s dobrými mravy. Jde o to, že existuje určité subjektivní právo, jehož je jistá osoba nositelem. Subjektivní právo opravňuje svého nositele k určitému jednání, zejména k možnosti domáhat se případné ochrany svého práva, tj. možnosti vynutit jeho respektování ze strany povinné osoby. Právní předpis ovšem umožňuje, aby soud výkonu subjektivního práva ochranu neposkytl, neboť takový výkon bude kvalifikován jako zneužití práva. Vzniká pak otázka, jak případy zneužití práva od případů jeho legitimního výkonu odlišit. Poměrně zřetelné hranice jsou vytvářeny soudní judikaturou.

Již bylo naznačeno, že institut zneužití práva není explicitně formulován ve všech odvětvích, kde by to přicházelo v úvahu. Občanský zákoník jej nezná vůbec, obsahuje pouze zákaz výkonu práva v rozporu s dobrými mravy. V obchodním zákoníku lze v § 265 nalézt zakotvený důsledek výkonu práva v rozporu se zásadami poctivého obchodního styku, který spočívá v neposkytnutí ochrany jednání vykazujícímu takové znaky. Jde o modifikovaný zákaz zneužití práva (šikanózního výkonu práva) pro oblast obchodněprávních vztahů, který lze uplatnit zejména tehdy, je-li ujednáno či požadováno plnění, které neodpovídá zvyklostem či běžným ujednáním při obchodním styku.[15] Zákaz zneužití práva neobsahuje ani zákon o rodině.

Zákonem, v němž byl institut zneužití práva zakotven explicitně, byl zákoník práce, a to do novelizace provedené zákonem č. 436/2004 Sb. V § 7 odst. 2 bylo stanoveno: „Nikdo nesmí výkonu práv a povinností vyplývajících z pracovněprávních vztahů zneužívat na újmu jiného účastníka pracovněprávního vztahu ...“.[16] V soudní praxi tak vznikla otázka, za jakých okolností může jít o zneužití práva.

Srozumitelné stanovisko k tomuto problému zaujal Nejvyšší soud v rozsudku sp. zn. 21 Cdo 992/99: „Objektivní právo předpokládá, že výkon subjektivního práva směřuje k uskutečnění cíle sledovaného právní normou. Z logiky věci, dané vzájemně opačným postavením zúčastněných stran, vyplývá, že výkon subjektivního práva (vynucení splnění subjektivní povinnosti) může mít někdy za následek újmu na straně povinného subjektu, což by bylo možné vnímat jako rozpor s obecně přijímaným právním pravidlem, že každý se má chovat tak, aby nerušil práva jiného... Protože však výkon práva vylučuje protiprávnost, protože stejný stav nemůže být současně stavem právním i právu se příčícím, je třeba, vycházeje ze zásady ‚neminem laedit, qui iure sui utitur‘, chování, které směřuje k zákonem předpokládanému výsledku, považovat za dovolené i tehdy, je-li jeho (eventuálním) vedlejším následkem vznik majetkové, popř. nemajetkové újmy na straně dalšího účastníka právního vztahu... Výkon práva, jak již bylo uvedeno, postrádá protiprávnost, děje-li se v souladu s právem. Objektivní právo předpokládá, že výkon práva směřuje k uskutečnění cíle sledovaného právní normou. Jestliže však jednající sice koná v mezích svého práva, ale prostřednictvím realizace chování jinak dovoleného sleduje poškození druhého účastníka právního vztahu, jedná se sice o výkon práva, ale o výkon práva závadný, kdy jednání a jeho výsledek se snad zcela shodují s výsledkem, který mělo právo na zřeteli, ale kdy jednání bylo učiněno nikoliv za účelem dosažení výsledků, k jejichž docílení byla

*jednajícímu propůjčena ochrana, nýbrž aby bylo dosaženo výsledků jiných, které jsou jinak považovány za nevítaný vedlejší následek tohoto jednání. Takový výkon práva, i když je se zákonem formálně v souladu, je ve skutečnosti výkonem práva jen zdánlivým; účelem zde není vykonat právo, ale poškodit jiného, neboť jednající v rozporu s ustálenými dobrými mravy je přímo veden úmyslem způsobit jinému účastníku újmu, zatímco dosažení vlastního smyslu a účelu sledované právní normou zůstává pro něho vedlejší a je z hlediska jednajícího bez významu."* Právní věta z tohoto rozhodnutí byla později převzata v této podobě: *„Za zneužití práva ve smyslu citovaného ustanovení lze považovat takové jednání, jehož cílem není dosažení účelu a smyslu sledované právní normou, nýbrž které je v rozporu s ustálenými dobrými mravy vedeno přímým úmyslem způsobit jinému účastníku újmu."* (rozsudek sp. zn. 21 Cdo 1893/2002).

Určitý význam při formulaci uvedeného stanoviska možná sehrála doktrína vztahující se k institutu důsledků zneužití práva, tak jak byl formulován v Obecném zákoníku občanském v souvislosti s odpovědností za škodu. V § 1295 OZO totiž bylo zakotveno následující: *„I ten, kdo způsobí úmyslně škodu způsobem, příčícím se dobrým mravům, odpovídá za ni; stalo-li se to však při výkonu práva, jen tehdy, když poškozená jiného bylo patrně účelem výkonu práva."* V tomto ustanovení je naznačena distinkce mezi výkonem práva sankcionovaným v tomto případě povinností k náhradě škody a případy, kdy je výkon práva bez sankce.

Občanský zákoník explicitně formulovaný institut zneužití práva nezná. Případy, kdy by šlo výkon práva označit za šikanózní, jsou řešeny prostřednictvím rozporu jednání s dobrými mravy, jak dokládá např. rozsudek Nejvyššího soudu sp. zn. 22 Cdo 2576/2000: *„Platný občanský zákoník pojem zneužití práva ve smyslu šikany, tj. výkonu práva se zjevným úmyslem někoho poškodit, neobsahuje a zákaz zneužívání práv je dovozován z § 3 odst. 1 ObčZ, který stanoví, že výkon práv a povinností vyplývajících z občanskoprávních vztahů nesmí bez právního důvodu zasahovat do práv a nesmí být v rozporu s dobrými mravy. Zákaz zneužití vlastnického práva je stanoven v čl. 11 odst. 3 Listiny základních práv a svobod takto: ,Vlastnictví zavazuje. Nesmí být zneužito na újmu práv druhých nebo v rozporu se zákonem chráněnými obecnými zájmy. Jeho výkon nesmí poškozovat lidské zdraví, přírodní a životní prostředí nad míru stanovenou zákonem'. Nejvyšší soud v rozsudku z 28. 6. 2000, sp. zn. 21 Cdo 992/99, publikovaném v časopise Soudní judikatura č. 11/2000 uvedl, že ,za zneužití výkonu práva lze považovat pouze takové jednání, jehož cílem není dosažení účelu a smyslu sledovaného právní normou, nýbrž které je v rozporu s ustálenými dobrými mravy vedeno přímým úmyslem způsobit jinému účastníkovi újmu'."*

Z citovaných judikátů je patrné, že kvalifikace určitého jednání jako zneužití práva je poměrně přísná. Jde o výkon práva, jehož smyslem však není dosáhnout uspokojení vlastních zájmů či potřeb, ale *výlučně způsobit jiné osobě újmu.* Fakticky to znamená, že za zneužití práva nelze považovat situace, kdy se konající subjekt snaží dosáhnout též uspokojení vlastních zájmů.

Ve srovnání s naznačeným relativně střízlivým přístupem k výkladu pojmu zneužití práva, resp. jednání v rozporu s dobrými mravy, pak zajímavě kontrastuje rozhodnutí Nejvyššího správního soudu z oblasti daňového práva. Jedná se o rozhodnutí sp. zn. 1 Afs 107/2004, v němž Nejvyšší správní soud řešil případ, kdy rozhodnutím správce daně byla doměřena daň z příjmů fyzických osob na základě toho, že správce daně neuznal hodnotu darů zaplacených podle § 15 odst. 8 zákona o daních z příjmů, protože dary byly poskytnuty sdružení, jehož členy byli daňový subjekt a blízcí členové rodiny a prostředky poskytnuté sdružení byly použity výlučně na potřeby členů sdružení, resp. jejich dětí. Nejvyšší správní soud dovodil, že takové jednání ze strany daňového subjektu je zneužitím práva a jako takové nepožívá soudní ochrany. Kasační stížnost proto zamítl. Rozhodnutí je zajímavé v několika směrech. Především právní úprava daní spadá do oblasti práva veřejného. Ve veřejném právu by se měla zásada legality uplatňovat bezvýhradně. Zákon o správě daní a poplatků nezná pojem zneužití práva. Může se proto zdát sporné, zda mohl Nejvyšší správní soud s použitím argumentu zneužití práva kasační stížnost zamítnout. Zdá se totiž, že možnost použít takový argument zde není dána, neboť zákon o správě daní a poplatků s ním prostě nepočítá. Navíc institut zneužití práva je pojmově institutem soukromoprávním a jeho smyslem je chránit jiné subjekty před šikanou ze strany osob jim postavených na roveň. Tak tomu však nemůže v podstatě být ve vztahu stát - daňový poplatník. Lze soudit, že „šikana" státu ze strany daňového poplatníka je vyloučena.

Institutu zneužití práva byl soudní judikaturou již přiznán určitý obsah, byť pro oblast soukromého práva. Zdálo by se tedy vhodné z hlediska udržení konzistence právního řádu, aby byl tentýž institut, pokud by se ovšem vůbec dospělo k potřebě jeho použití, vykládán shodně v celém právním řádu. Zde

tomu tak nebylo, protože pojmovým znakem zneužití práva ve smyslu soukromoprávním je takový výkon práva, který má za cíl výlučně škodit jinému. Ovšem tím, že daňový subjekt snížil základ daně způsobem, o němž soudil, že je legální, sledoval vlastní prospěch.

Je třeba říci, že prezentované stanovisko Nejvyššího správního soudu není jednotné. Skutkově totožná situace byla řešena v jiném rozhodnutí soudu sp. zn. 7 Afs 115/2004. Zde Nejvyšší správní soud dospěl sice ke stejnému výsledku, ovšem s jinou argumentací. Na případ totiž vztáhl § 2 odst. 7 zákona o správě daní a poplatků, který umožňuje správci daně posoudit právní úkon z hlediska obsahu, nikoliv výlučně dle jeho formy.

Srovnání obou rozhodnutí je zajímavé právě z hlediska použité argumentace. Závěr je sice tentýž, použité argumenty jsou však odlišné. V druhém případě vyhovuje požadavku legality zejména odkaz na platné ustanovení zákona, zatímco první zmíněné rozhodnutí v tomto směru vykazuje deficit.

## IV. Závěr

Smyslem příspěvku bylo upozornit na možná úskalí soudcovského rozhodování vyplývající z relativně značné volnosti, kterou právní řád poskytuje soudcům při své aplikaci. Problémem se zdá být zodpovězení otázky, zda vůbec a jakým způsobem tuto volnost omezit. Nelze jednoznačně říci, že rozšíření soudcovské diskrece, která je, jak by mělo vyplývat ze shora uváděných případů, relativně značná, je v každém případě nežádoucí. Je-li soudci umožněno brát do úvahy různorodé faktory, je možno učinit rozhodování v konkrétních případech spravedlivějším ve smyslu větší konformity s názorem na řešení určitých situací převládajícím ve společnosti. Prostřednictvím odkazů na různé extralegální standardy je soudcům umožněno považovat za relevantní i taková jednání, která by z hlediska čistě formálněprávního byla nenapadnutelná, avšak lze je považovat za nežádoucí z hlediska společenského v širokém slova smyslu. Z tohoto důvodu lze hodnotit ta rozhodnutí, v nichž je k extralegálním standardům přihlíženo, kladně.

Nebezpečí, která z takového přístupu mohou vzniknout, jsou poměrně snadno identifikovatelná. Může např. dojít ke zneužití pravomoci soudce v podobě kladného rozhodnutí pro jednu stranu sporu, které bude argumentačně nesprávně zdůvodněno při použití širokého argumentačního aparátu, nebo může hrozit nejednotnost posuzování skutkově stejných případů apod.

V zásadě je potřeba mít na paměti, že by to neměli být soudci, kteří budou rozhodovat o tom, která pravidla při svém rozhodování použijí. Okruh takových pravidel by měl určit, alespoň v podmínkách českého právního řádu, zákonodárce, který jediný je k tomu povolán. Požadavek legality výkonu státní moci, který je pro právní stát stěžejní, by měl být akceptován za všech okolností, tj. zejména v případech, kdy zákon pro použití určitého pravidla neskýtá žádnou, a to ani zdánlivou, oporu, ba dokonce i v případech, kdy není jisté, zda lze k takovému pravidlu přihlédnout či nikoliv. Restriktivní přístup při určování okruhu aplikovatelných pravidel by se měl uplatnit zejména v oblasti veřejného práva.

Nelze ovšem nevidět, že stanovení úplného souboru pravidel, která poskytnou „návod" určitého řešení každého případu, přičemž dodržení těchto pravidel zaručí vždy stejný výsledek, je v podstatě nemožné. Do rozhodování totiž vstupují nejen pravidla zakotvená v právních předpisech, ale též pravidla určující, jak právní pravidlo poznat a použít je. K tomu přistupuje alespoň určitá míra abstrakce při vyjádření právních pravidel, která vyžaduje jejich konkretizaci postupy, které zcela sjednotit a dosáhnout tak vždy stejného výkladu není pravděpodobně dost dobře možné. Zůstává však požadavek přezkoumatelnosti použité argumentace a míra její přesvědčivosti v hermeneutickém smyslu.

---

[*] Prof. JUDr. Aleš Gerloch, CSc., je děkanem Právnické fakulty UK v Praze a vedoucím katedry teorie práva a právních učení a vedoucím katedry ústavního práva na této fakultě; JUDr. Jan Tryzna je odborným asistentem na katedře teorie práva a právních učení Právnické fakulty UK.

[1] Srov. k tomu *Gerloch, A.* Problémy interpretace a argumentace v soudobé právní teorii a právní praxi, in *Gerloch A., Maršálek, P. (ed.)* Problémy interpretace a argumentace v soudobé právní teorii a právní praxi. Praha : Eurolex Bohemia, 2003, s. 13 a násl., k problematice pozitivněprávní úpravy interpretačních a argumentačních pravidel pak *Tryzna, J.* K pozitivněprávnímu mezím výkladu práva, tamtéž, s. 77 a násl.

[2] Srov. k tomu např. *Kühn, Z.* Aplikace práva soudcem v éře středoevropského komunismu a transformace. Analýza příčin postkomunistické právní krize. Praha : C. H. Beck, 2005, s. 3. a násl.

[3] „Nelze-li právní případ rozhodnouti ani podle slov ani z přirozeného smyslu zákona, jest hleděti k podobným případům v

zákonech zřejmě rozhodnutým, a k důvodům jiných, s tím příbuzných zákonů. Zůstane-li právní případ ještě pochybný, musí býti rozhodnut podle přirozených zásad právních, se zřetelem k okolnostem pečlivě shrnutým a zrale uváženým." Srov. k tomu např. *Holländer, P.* Mezera v zákoně, § 7 o. z. o. a ryzí nauka právní (Poznámky k úvaze Franze Bydlinského), in *Machalová, T. (ed.)* Místo normativní teorie v soudobém právním myšlení (K odkazu Františka Weyra a Hanse Kelsena). Sborník z mezinárodní konference. Brno : MU, 2003.

[4] Srov. čl. 102 ústavního zákona č. 100/1960 Sb., ve znění do novely provedené zákonem č. 326/1991 Sb.
[5] *Hoecke, M. van* The Use of Unwritten Legal Principles by Courts. Ratio Juris, 1995, č. 3, s. 249.
[6] Tak např. poměrně "moderní" právní princip proporcionality hraje velmi významnou roli v rozhodování Evropského soudu pro lidská práva a Evropského soudního dvora; částečně též pod vlivem rozhodovací činnosti těchto soudů jej přebírají "národní" ústavní soudy a další soudní instituce.
[7] Příkladem může být princip tzv. rovnosti v právech. Tento princip byl vykládán jako princip tzv. akcesorický, tj. rovnost v postavení subjektů se zkoumala ve vztahu k určitému právu či svobodě. Přesto byl v průběhu doby tento přístup narušen uznáním principu rovnosti tzv. neakcesorické, ve své podstatě absolutní [Srov. např. z poslední doby nález Ústavního soudu č. 280/2006 Sb., v něm se Ústavní soud zabýval návrhem na zrušení § 711 písm. g) a h) ObčZ, kde jsou obsaženy výpovědní důvody z nájmu bytu, a to ve vztahu k nájmu bytu družstevnímu, a argument principem neakcesorické rovnosti byl jedním z použitých argumentů. Zůstává skutečností, že poprvé byl princip neakcesorické rovnosti aplikován v nálezu č. 403/2002 Sb., tj. v podstatě až po 9 letech činnosti Ústavního soudu, ačkoliv do té doby se Ústavní soud zabýval principem rovnosti doslova v desítkách rozhodnutí].
[8] Lze připomenout, že k možnosti aplikovat právní principy vedle právních předpisů se vyslovil Ústavní soud též v již zmíněném nálezu č. 30/1998 Sb. tak, že právní principy lze aplikovat jen tehdy, pokud "psané právo nestanoví jinak". To je ovšem problematické, protože právní principy jsou aplikovány i tehdy, stanoví-li právní předpis něco jiného, ovšem zdá se, že v konkrétním případě je jeho důsledky nutno korigovat právě aplikací principu. To byl případ nálezu č. 30/1998 Sb., kde Ústavní soud posuzoval otázku běhu lhůty 15 dnů, která je stanovena pro uplatnění prezidentského veta. Ústava pravidla o počítání času nezná, takže lhůtu 15 dnů je možno počítat *a dies ad diem*, nepřihlížeje přitom ke dnům pracovního klidu. Ústavní soud ovšem dovodil, že právní principy týkající se počítání času se musí uplatnit, takže pokud je 15. dnem lhůty den pracovního klidu, skončí lhůta až v nejbližší pracovní den. Srov. k tomu též *Holländer, P.* Dotváření Ústavy judikaturou Ústavního soudu, in *Kysela, J. (ed.)* Deset let Ústavy České republiky (východiska, stav, perspektivy). Sborník příspěvků. Praha : Eurolex Bohemia, 2003. Podle našeho názoru lze jistě pochybovat o tom, že pravidla o počítání času je možné za právní principy považovat.
[9] Rozsudek sp. zn. 3 Cdon 69/96, Soudní judikatura 8/1997, pod č. 62. Řada autorů však tuto definici kritizuje. Namítá se, že jde o tautologii, když dobré *mravy* jsou částečně definovány jako *mravní* normy, dále že normy společenské, kulturní a mravní nejsou neustále stejné úrovně, ale normy společensky implikují normy kulturní a ty zase normy mravní, a upozorňuje na vágnost pojmu "normy základní". S poukazem na existenci více morálních systémů v každé společnosti je odmítáno ztotožnění dobrých mravů s morálkou a s veřejným míněním nebo s "výrazem právního citu" (*Hurdík, J.* Zásady soukromého práva. Brno : MU, 1998, s. 74 a násl.). Obdobně je definice kritizována Salačem (*Salač, J.* Rozpor s dobrými mravy a jeho následky v civilním právu. Praha : C. H. Beck, 2000, s. 153 a násl.), když preferuje posuzování dobrých mravů v jednotlivých případech bez nutnosti jejich definování. Salač také upozorňuje na moderní trendy při posuzování souladnosti jednání s dobrými mravy, kdy se jako rozhodné jeví subjektivní okolnosti jednání, nikoliv samotná nerovnost plnění či nerovnost ve vyjednávací síle stran (*Salač, J.* Nepřípustné, resp. nepřiměřené znevýhodnění založené smlouvou a lichva. Právní rozhledy, 1999, č. 8, s. 407). Shrnutí současného náhledu na problematiku dobrých mravů lze nalézt v článku J. Spáčila (*Spáčil, J.* Dobré mravy v českém občanském zákoníku a v judikatuře. Právní rozhledy, 2004, č. 18, s. 664 a násl.). Soudy ve svých rozhodnutích nezkoumaly žádná ustálená morální pravidla, nezabývaly se žádným většinovým stanoviskem. Na základě analýzy soudní judikatury (rozhodnutí svého senátu) provedené v tomto článku byl proto učiněn závěr, že pojem dobré mravy je právním pojmem, jehož obsah je nutný hledat v platném právu (je upozorňováno na podobnost s analogií). Dobré mravy tak spíše než morální pravidla či vazbě na veřejné mínění vyjadřují spíše základní zásady, na nichž stojí právní řád.
[10] Výjimku by snad mohly představovat situace, kdy právní normy neposkytují (třeba i zdánlivě) odpověď na hledanou otázku. Příkladem může být použití ústavních zvyklostí za situace, kdy z Ústavy jednoznačné řešení nevyplývá. Srov. např. nález Ústavního soudu č. 285/2001 Sb. týkající se ustavování členů Bankovní rady ČNB.
[11] Příkladem může být stanovisko Nejvyššího soudu sp. zn. Cpjn 201/2005, které poměrně striktně pozitivněprávně řeší problematiku důsledků odstoupení od kupní smlouvy pro právní úkony učiněné ohledně prodané věci později. Nejvyšší soud, vycházeje z § 48 odst. 2 ObčZ, podle kterého se odstoupením od smlouvy smlouva od počátku ruší, dovozuje, že všechny další právní úkony (zejména další smlouvy, kterými byla určitá věc dále prodána) pozbývají platnosti. Opomíjí se tak např. požadavek právní jistoty, zájem na určité pružnosti majetkoprávních vztahů, ochrana dobré víry dalších nabyvatelů atd. Z hlediska teoretického srov. k této problematice *Holländer, P.* Soudce dnes: bariéra postmoderní dekonstrukce nebo industriální továrna na rozhodnutí? Soudce, 2001, č. 8, s. 2-16.
[12] Tak např. v nálezu sp. zn. Pl. ÚS 20/05 (č. 256/2006 Sb.) Ústavní soud judikoval: "*Podrobíme-li argumentaci Nejvyššího soudu analýze ve světle těchto pravidel, docházíme k závěru, že Nejvyšší soud i další obecné soudy chybují, pokud odmítají poskytnout ochranu právům fyzických a právnických osob, které se na ně obrátily se žádostí o spravedlnost...*" Na vysvětlenou třeba dodat, že v tomto nálezu dospěl Ústavní soud k závěru, že obecné soudy mohou nahrazovat svými rozsudky projevy vůle stran nájemní smlouvy o nájmu bytu, pokud není nájemce ochoten dohodnout se na zvýšení nájemného, a to i přesto, že neexistoval právní předpis, který by dával pronajímateli právo jednostranně nájemné zvyšovat. Rozsudek soudu je v takových případech rozsudkem konstitutivním, takže v souladu se zásadou legality výkonu státní moci (čl. 2 odst. 3 Ústavy) by bylo potřeba, aby pravomoc soudu rozhodnout o zvýšení nájemného zakotvil zákon. Problém ovšem řeší zákon č. 107/2006 Sb., o jednostranném zvyšování nájemného.
[13] Nález sp. zn. II. ÚS 309/95. Je zajímavé, že v textu odůvodnění je Ústavní soud ještě striktnější než v tzv. právní větě: "*Dle § 3 ObčZ výkon práv nesmí být v rozporu s dobrými mravy, toto ustanovení pak dle názoru Ústavního soudu samozřejmě platí i pro výkon práva vznést námitku promlčení.*"

[14] Srov. např. rozhodnutí Nejvyššího soudu sp. zn. 25 Cdo 1839/2000: „*Podle § 3 odst. 1 ObčZ výkon práv a povinností vyplývajících z občanskoprávních vztahů nesmí bez právního důvodu zasahovat do práv a oprávněných zájmů jiných a nesmí být v rozporu s dobrými mravy. Smyslem tohoto ustanovení je zamezit výkonu práva, který sice odpovídá zákonu, avšak odporuje dobrým mravům, jež lze definovat jako souhrn společenských, kulturních a mravních norem, jež v historickém vývoji osvědčují jistou neměnnost, vystihují podstatné historické tendence, jsou sdíleny rozhodující částí společnosti a mají povahu norem základních (srov. rozsudek Nejvyššího soudu ČR ze dne 26. 6. 1997, sp. zn. 3 Cdon 69/96, publikovaný v časopise Soudní judikatura 8/1997 pod č. 62). Není tedy vyloučeno, že i takový výkon práva, který odpovídá zákonu, může být shledán v rozporu s dobrými mravy, a že mu proto bude soudem odepřena právní ochrana. Na druhé straně však fungování systému psaného práva je založeno zejména na důsledném dodržování pravidel vyplývajících z právních předpisů a korektiv dobrých mravů nesmí být na újmu principu právní jistoty a nesmí nepřiměřeně oslabovat subjektivní práva účastníků vyplývající z právních norem. Postup soudu podle § 3 odst. 1 ObčZ má proto místo jen ve výjimečných situacích, kdy k výkonu práva založeného zákonem dochází z jiných důvodů, než je dosažení hospodářských cílů či uspokojení jiných potřeb, kdy hlavní nebo alespoň převažující motivací je úmysl poškodit či znevýhodnit povinnou osobu (tzv. šikanózní výkon práva), případně kdy je zřejmé, že výkon práva vede k nepřijatelným důsledkům projevujícím se jak ve vztahu mezi účastníky, tak na postavení některého z nich navenek. Dobrým mravům zásadně neodporuje, namítá-li někdo promlčení práva uplatňovaného vůči němu, neboť institut promlčení přispívající k jistotě v právních vztazích je institutem zákonným, a tedy použitelným ve vztahu k jakémukoliv právu, které se podle zákona promlčuje. Uplatnění promlčecí námitky by se příčilo dobrým mravům jen v těch výjimečných případech, kdy by bylo výrazem zneužití tohoto práva na úkor účastníka, který marné uplynutí promlčecí doby nezavinil, a vůči němuž by za takové situace zánik nároku na plnění v důsledku uplynutí promlčecí doby byl nepřiměřeně tvrdým postihem ve srovnání s rozsahem a charakterem jím uplatňovaného práva a s důvody, pro které své právo včas neuplatnil. Tyto okolnosti by přitom musely být naplněny v natolik výjimečné intenzitě, aby byl odůvodněn tak významný zásah do principu právní jistoty, jakým je odepření práva uplatnit námitku promlčení.*"

[15] Srov. k tomu např. rozsudek Nejvyššího soudu ze dne 9. 1. 2001, sp. zn. 29 Cdo 821/2000.

[16] Právě zákonem č. 436/2004 Sb. byl pro oblast pracovního práva institut zneužití práva opuštěn a nahrazen jednáním v rozporu s dobrými mravy. Nový zákoník práce (č. 262/2006 Sb.) tento koncept zachovává a k institutu zneužití práva se již nevrací.
.

**Exhibit H: <u>The Commentary on the Czechoslovak Civil Code § 1295 (1937)</u>**

# Commentary to the Czechoslovak General Civil Code and Civil Law in Slovakia and Ruthenia

František Rouček                    Jaromír Sedláček

Volume five

(§§ 1090 through 1341)
Praha 1937

**[page 697]**
**On duty to provide compensation of damages**
**1. Damage based on fault**
**§ 1295.** Everybody is entitled to demand compensation for the damage from a person causing the damage by his fault; the damage may have been caused either by the violation of a contractual duty or without regard to a contract.

A person who intentionally injures another in a manner in violation of good morals is liable therefor; however, if the injury was caused in the exercise of legal rights, the person causing it shall be liable therefor only when the exercise of this right obviously has the purpose to cause damage to the other.
.....

**[page 705]**

IV. The abuse of rights and the damage caused by conduct against good morals

...

**[page 708]**

...

b) Moreover, these are cases of the abuse of the right ... to file a criminal complaint only in order to satisfy hostility (case law no. 424 and § 1297 nos. 25, 26). The abuse of civil lawsuits is also the abuse of right. … Filing a lawsuit is the abuse of right if the lawsuit was filed obviously in order to harm the defendant (no. 433).

xl

**Exhibit I: <u>Commercial Code in English</u>**

**Exhibit J: <u>Commercial Code. Commentary by Professor Jan Dědič</u>**

# Commercial Code. Commentary

**Volume I.**
**§ 1 - § 92e**
Professor JUDr. Jan Dědič et alia

POLYGON

September 2002

**[page 344]**

§ 56a

(1) Abuse of a majority or a minority of votes in a company is prohibited.

**Commentary**

**[…]**

**[page 346]**

It is possible to abuse not only votes (rights to votes), but also other rights of the partner. A classical example is the abuse of the right to bring an unjustified lawsuit to annul the decision of the general assembly. However, this must be judged under Section 3 para. 1 of the Civil Code.

**Exhibit K: <u>Vlastimil Pihera, K obecným limitům akcionářských práv [On the general limits of the rights of shareholders], 15 Právní rozhledy 361 (2007)</u>** <u>(law review article, in Czech only)</u>

**Název:** K obecným limitům akcionářských práv

Autor: **JUDr. Vlastimil Pihera**

Vydavatel: **C.H.BECK**
Titul: **Právní rozhledy**
Datum vydání: **23.05.2007**
Číslo sešitu: **10/2007**
Rok: **2007\Články**

Poznámky:str. 361 - 364

Text

# K obecným limitům akcionářských práv

## JUDr. Vlastimil Pihera, Praha [*]

*Mezi nejzajímavější otázky právní úpravy kapitálových společností patří i obecná otázka charakteru vztahů mezi jednotlivými společníky. Vzhledem k tomu, že mnoho dílčích aspektů těchto vztahů v současné době upravují konkrétní zákonná ustanovení, není význam této otázky vždy zřejmý, což nicméně na druhou stranu může být na překážku pochopení širšího významu a vzájemné souvislosti těchto partikulárních pravidel.*

## I. Vztahy mezi akcionáři

Klademe-li si otázku po kvalitě vzájemných právních vztahů mezi akcionáři, je podle mého názoru nutné vyjít z toho, že vztahy mezi akcionáři nemají charakter smluvního, relativního právního vztahu. Tím se zásadně odlišují od vztahů mezi jednotlivými členy sdružení, ale i od vztahů mezi společníky osobních obchodních společností, které mají v zásadě podobnou povahu jako vztahy mezi členy sdružení, byť současná pozitivní právní úprava jejich smluvní podstatu nedostatečně postihuje. Zatímco v případě sdružení jeho členové vstupují do smluvního vztahu s ostatními členy sdružení a zavazují se společně vyvíjet činnost za sjednaným účelem, společník akciové společnosti je zpravidla investorem, který je při koupi akcie veden záměrem nabýt akcii jako investiční nástroj, nikoli zájmem spolupracovat s ostatními akcionáři. Investor předpokládá, že společnost je řízena profesionálním managementem a že jednotliví akcionáři zasahují do řízení společnosti pouze v omezeném rozsahu působnosti valné hromady. Akcionářem se investor stává zpravidla bez znalosti ostatních akcionářů nebo minimálně jejich většiny a akcionář nemůže změny v akcionářské struktuře ovlivnit. Jeho vztah ke společnosti a ostatním akcionářům je tak důsledkem nabytí vlastnického práva k cennému papíru, a jako takový je tedy výrazem vlastnického práva, resp. aspektem absolutního majetkového práva každého akcionáře. Výkon akcionářských práv je tak způsobem výkonu vlastnického práva každého ze společníků akciové společnosti, nikoli realizací smluvního oprávnění či povinnosti. Vztah mezi akcionáři je tak diametrálně odlišný od vztahu mezi smluvními kontrahenty. (Ostatně i z tohoto důvodu nelze přiznat stanovám povahu smlouvy.)

Z podstaty fungování akciové společnosti, která je řízena profesionálním managementem, je ostatně identita ostatních společníků pro akcionáře nesrovnatelně méně významná, než jak je tomu u osobních obchodních společnostech. Výjimku představují případy, kdy některý z akcionářů získá postavení ovládající osoby, resp. se dostane do postavení, které mu umožňuje ovlivňovat řízení společnosti v míře, která jako by jej posouvala směrem k postavení managementu společnosti. Vzniká otázka, jak posuzovat majoritního akcionáře, resp. zda lze legitimně pohlížet na majoritního akcionáře stejně jako na minoritního. V této souvislosti je možné poukázat na americké (USA) právo obchodních společností, které se zabývalo otázkou aplikovatelnosti závěrů právní doktríny týkajících se sdružení, podle nichž jsou členové sdružení povinni jednat vůči ostatním členům v souladu s požadavky fiduciární péče *(fiduciary duty)*, na kapitálové obchodní společnosti. Podle slavného amerického

soudního rozhodnutí ve věci *Meinhard v. Salmon* z roku 1928[1] jsou členové sdružení „po dobu činnosti sdružení povinni ke vzájemné vysoké loajalitě. Mnohá jednání přípustná při běžném obchodním styku jsou zakázána mezi těmi, kteří jsou vázáni fiduciárními pouty... Nejen pouhá poctivost, ale ta nejvyšší míra zodpovědnosti a cti *(punctilio of an honor)* je standardem vzájemného chování." Podotýkám, že požadavek na tento stupeň péče je v anglickém i americkém právu kladen i na management společnosti. Americká doktrína dospěla k závěru, že požadavek fiduciární péče sice není obecně aplikovatelný na všechny akcionáře, ovšem lze jej vztáhnout na majoritního akcionáře. Zároveň však dospívá k závěru, že na rozdíl od fiduciární povinnosti managementu společnosti není obsahem fiduciární povinnosti majoritního akcionáře povinnost jednat jako strážce společnosti pověřený činit úkony vedoucí ke zhodnocení podílů všech společníků, ale pouze povinnost společnost nepoškozovat. Smyslem tohoto požadavku nemá být zabránit hlavnímu akcionáři jednat ve svém vlastním zájmu, ale zajistit, aby i v takovém případě nebyly poškozeny zájmy společnosti.[2]

Tento závěr však nemůže být bez dalšího přejímán. Především si je totiž nutné uvědomit, že americké právo obchodních společností tu pod jedním pojmem fiduciární povinnosti rozumí (minimálně) dva obsahově odlišné požadavky na kvalitu jednání dotčených subjektů. Americké právo se navíc vyznačuje určitým zaměřením na řešení praktických, na druhé straně nutně partikulárních otázek, což je spojeno s nezájmem o obecné koncepční uchopení materie. Požadavek na fiduciární péči při výkonu akcionářských práv majoritního akcionáře ostatně i americké obchodní právo vztahuje pouze v několika konkrétních situacích: při obchodování mezi společností a majoritním akcionářem, v případech podobných *squeeze-out(u)* a při prodeji rozhodného podílu.[3] Americká právní doktrína tak dochází v zásadě ke shodnému závěru jako anglické právo obchodních společností, které aplikaci požadavků fiduciární péče na majoritní akcionáře výslovně vylučuje.[4] Zároveň však anglická právní doktrína vytvořila určitý, ne příliš systematický soubor pravidel omezujících možnost majoritního akcionáře neomezeně disponovat se svými akcionářskými právy, mezi něž patří především obecný zákaz prosazení jakéhokoli jednání, které nespravedlivě poškozuje jiné (minoritní) akcionáře *(unfairly prejudicial conduct)*.[5] V této souvislosti je často citováno anglické rozhodnutí *Clemens v. Clemens Bros Ltd.* z roku 1976,[6] v němž se soud zabýval obecnou povahou omezení výkonu akcionářských práv a dospěl k závěru, že by nebylo moudré snažit se definovat konkrétní obsah těchto pravidel, protože na každý z případů je nutné aplikovat s ohledem na různorodé konkrétní okolnosti.[7] Podobnou otázkou se zabývala i německá právní doktrína, a to především v souvislosti s problematikou koncernu. Německá doktrína vychází z toho, že akcionáři jsou zavázáni vůči společnosti i vůči ostatním akcionářům povinností vykonávat svá hlasovací práva s péčí označovanou jako *Treupflicht*, kterou lze definovat jako požadavek odpovědnosti nebo loajality. Tento požadavek se opírá o obecný princip německého smluvního práva zakotvený v § 242 německého občanského zákoníku, podle něhož je účastník smluvního vztahu povinen při plnění svých povinností postupovat zodpovědně a poctivě s ohledem na druhou smluvní stranu a v shodě s obchodními zvyklostmi. Tento princip byl judikaturou německých soudů rozšířen i na některé případy, kdy absentuje znak vzájemného smluvního vztahu (německá doktrína hovoří o tzv. *Sonderverbindung*),[8] mezi něž patří také výkon akcionářských práv. Požadavek loajality byl vztažen především na majoritní akcionáře (v této souvislosti lze odkázat na rozhodnutí ve věci *ITT* ),[9] nicméně především z rozhodnutí ve věci *Grimes-AG*,[10] v němž soud přiznal právo na náhradu škody pro porušení loajality i vůči akcionáři, který nebyl v pozici ovládající osoby. Toto rozhodnutí, byť v odborné literatuře kritizované,[11] etabluje požadavek loajality jako obecný limit výkonu akcionářských práv. Byť rakouské právo nemá ustanovení odpovídající § 242 německého občanského zákoníku, přesto pod vlivem německého práva přejalo v oblasti obchodních společností tento požadavek. Z hlediska pozitivního práva je pak chápán jako jeden z aspektů požadavku poctivého obchodního styku. Rakouský vrchní soud judikoval již v roce 1988 v kauze *Reich-Rohwig*, že požadavek *Treupflicht* se vztahuje i na majoritní akcionáře kapitálových obchodních společností. Byť je v tomto ohledu rakouská doktrína zřejmě nejednotná, podle převládajícího názoru je tuto povinnost nutné chápat jako obecný aspekt vztahu společníků kapitálových společností, resp. vzájemných povinností péčlivosti a ohleduplnosti společníků *(Sorgfalts- und Rücksichtnahmepflichten)*.[12]

## II. Dobré mravy versus výkon akcionářských práv

České právo je na tom z hlediska pozitivní právní úpravy podobně jako právo rakouské. Na rozdíl od

rakouské však naše právní doktrína ani právní praxe otázku obecného korektivu akcionářských práv neřeší. Snad pouze ojediněná rozhodnutí rakouských či prvorepublikových soudů zmiňují zjevně pod vlivem německého práva existenci „zásady věrnosti a víry", aniž by se však této otázce blíže věnovala.[13] Platí však, že pokud bychom hledali odpověď na tuto otázku, nelze zřejmě najít jiné řešení než její rozpracování v rámci aplikace korektivu dobrých mravů. Pokud však má být tento korektiv aplikován legitimním způsobem, musí být především respektovány principy, na nichž stojí pozitivní právní úprava akciové společnosti.

Jak jsem argumentoval výše, nejsou akcionáři ve vzájemném smluvním vztahu. Výkon akcionářských práv má povahu výkonu vlastnického práva, nikoli smluvních práv či povinností. Z tohoto důvodu nelze podle mého názoru na akcionáře při výkonu akcionářských práv klást o mnoho vyšší požadavky, než jakými lze omezit výkon vlastnického práva. Mezi akcionáři existuje vzájemný vztah v zásadě shodné povahy jako mezi vlastníky sousedních nemovitostí. Pouze v tomto rozsahu „sousedských práv" lze hovořit o povinnostech ohleduplnosti mezi společníky. Kapitálové obchodní společnosti vznikly za účelem koncentrace kapitálu, kdy účast v „akciovém podniku" představuje pro akcionáře investici ve smyslu uložení a zhodnocení jejich peněz. Zájem každého akcionáře je tedy soustředěn především na výnos této investice, přičemž všechna akcionářská práva slouží především k zajištění tohoto cíle. Samotná skutečnost, že cíl všech akcionářů je z obecného hlediska stejný – tj. zvyšování hodnoty společnosti, resp. hodnoty podílu každého ze společníků, není dostatečným důvodem pro to, aby mohla být mezi nimi dovozována existence jiného (kvazismluvního) vztahu. Jak poznamenává Wilhem, vztah tohoto charakteru existuje např. mezi studenty jedné univerzity či mezi všemi občany jednoho státu.[14] Proto není možné omezovat výkon akcionářských práv stejnými požadavky, jaké jsou kladeny na výkon smluvně převzatých povinností, mezi něž patří především požadavek odborné péče či péče řádného hospodáře. K tomuto závěru ostatně dospěla i americká právní doktrína, která, jak jsem již uvedl, byť (podle mého názoru nesprávně) hovoří o fiduciární povinnosti akcionáře, dává v tomto případě tomuto pojmu podstatně odlišný obsah, než jak je tomu v případě fiduciárních povinností smluvně převzatých členy managementu společnosti.

V této souvislosti je nutné se vypořádat s otázkou, zda lze na akcionáře, kteří sami nebo jednáním ve shodě s jinými akcionáři ovládají akciovou společnost, vztáhnout odlišné, resp. přísnější požadavky. Takový závěr musí být podle mého názoru jednoznačně odmítnut. Platí, že korektiv dobrých mravů je nutné aplikovat na všechna jednání bez ohledu na osobu účastníka právního vztahu. Není důvod, proč by nemravné mohlo být pouze jednání majoritního akcionáře a nikoli také akcionáře minoritního. Je samozřejmě logické, že pokud bude vykonávat akcionářská práva způsobem, který se příčí dobrým mravům, majoritní akcionář, bude mít takové jednání za následek zásah do práv ostatních akcionářů s daleko vyšší pravděpodobností, než pokud se tak bude chovat akcionář minoritní. Nicméně na druhou stranu šikanózní výkon akcionářských práv ze strany profesionálních minoritních akcionářů, jako jsou např. věcně neopodstatněné žaloby na neplatnost valné hromady, je na českém trhu snad ještě častější. Lze citovat závěr, k němuž dospěl již v roce 1932 A. Kappe: „Usnesení valné hromady příčí se dobrým mravům, když správa společnosti, anebo většina akcionářů nebo společníků, bez ohledu na blaho společnosti a za vědomého poškozování zájmů menšiny, sleduje vlastní výhody."[15] V této souvislosti lze zřejmě rozlišit dvě základní roviny problému. Především je nutné jako nemravné označit jakékoli jednání, které má charakter šikanózního výkonu práva, tj. úmyslného právního jednání, jehož jediným účelem je poškození druhé strany. Určité pochybnosti ovšem vyvstávají v případech, kdy v důsledku určitého jednání sice dojde k poškození jiných osob, nicméně účelem jednání nebylo způsobit vznik takové újmy, ale výhradně snaha dosáhnout zisku či jiné výhody pro vykonavatele práva. V takovém případě A. Kappe v souladu se starou judikaturou německých soudů požaduje, aby jednání sledovalo zájem společnosti. Tento zdánlivě elegantní požadavek však neobstojí. Naráží především na problém, co je zájmem společnosti a kdo takový zájem definuje. Zájem společnosti nemůže být chápán jako úhrn zájmu všech jejích akcionářů. Akciová společnost je založena na tom, že akcionáři vyjadřují svoji vůli na valné hromadě formou většinového rozhodování podle velikosti svých podílů na základním kapitálu, s tím, že o řízení společnosti rozhoduje většina hlasů. Závěr, že zájmem společnosti je zájem všech akcionářů, je tedy v nesouladu s podstatou akciové společnosti.

## III. Porušení pravidel hry

Byť lze do určité míry souhlasit s výše citovaným závěrem anglického soudu relativizujícím význam konkrétní formulace pravidel v této otázce, přesto nelze podle mého názoru připustit, aby debata nad limity akcionářských práv ustala konstatováním, že takové jednání nesmí být v rozporu s dobrými mravy. V tomto ohledu považuji za odstraňující příklad vnitřně nejasnou a v podstatě prázdnou argumentaci rakouské a částečně i německé právní teorie bez dalšího odkazující na nedefinované povinnosti vzájemné ohleduplnosti. Tato argumentace problematiku neosvětluje, spíše naopak. Domnívám se, že limity výkonu akcionářských práv nelze ztotožnit s obecným zákazem zneužití práva podle § 56a ObchZ, resp. pokud by tomu tak mělo být, bylo by jej nutné chápat podstatně šířeji, než je obvyklé.[16] Takto úzce vymezený okruh nepřípustného jednání nepostihuje specifika postavení akcionářů a neodpovídá ani jejich pozitivnímu očekávání. Tento závěr lze dokumentovat i na vývoji německého práva, kde se právě samotný zákaz šikany upravený zvláštním ustanovením § 226 německého občanského zákoníku ukázal jako nedostatečný a judikatura pro své rozhodování našla oporu v odlišně koncipovaném § 424 německého občanského zákoníku. Tento posun byl v podstatě odůvodněn přesvědčením, že vztah mezi akcionáři vykazuje takové specifika, která odůvodňují vyšší požadavky na způsob výkonu akcionářských práv, než jaké jsou kladeny na výkon absolutních práv. S tímto závěrem lze podle mého názoru souhlasit, nicméně chceme-li se pokusit naznačit povahu těchto požadavků, musíme reflektovat specifickou povahu akciové společnosti a výkon akcionářských práv omezovat pouze v případech, kdy zde existuje hrubý rozpor mezi jeho účelem a dotčeným postavením. Podstata nepřípustného výkonu akcionářských práv podle mého názoru nespočívá v jednání, které sleduje pouze vlastní výhody akcionáře a nebere v úvahu „blaho společnosti". Takový závěr by popřel povahu akcie coby investičního instrumentu a v svém důsledku i smysl akciové společnosti, kterým je především kumulace kapitálu mnoha investorů. Z podstaty věci nemá pro investora nákup akcie jiný význam, než je zhodnocení této investice. Obsahem úvahy předcházející takovému investičnímu rozhodnutí je tedy výhradně zhodnocení pravděpodobnosti a rozsahu zhodnocení takové investice s tím, že investor nepředpokládá, že by se skutečně osobně podílel na řízení společnosti nebo navazoval vztahy s ostatními akcionáři. Na druhou stranu však takový investor nepochybně předpokládá, že i role ostatních akcionářů je podobná, s tím, že i oni participují na společnosti pouze kapitálově a že jejich zájem je v podstatě shodný s jeho zájmem. Předpoklad takového postavení akcionáře *inter partes* (ve smyslu výše zmíněném) představuje implicitní podmínku takového investičního rozhodnutí a je zároveň podstatou pozitivního očekávání všech ostatních akcionářů. Domnívám se, že jednání, které je s tímto očekáváním v rozporu, lze označit za nepřípustné.

Takové jednání lze označit jako porušení pravidel hry. K porušení pravidel dojde v případě, kdy se akcionář pokusí dosáhnout výhody, popř. jiného cíle, kterých nedosahuje realizací některého akcionářského práva, ale jiným způsobem (tj. svým jednáním sleduje výhodu plynoucí mu z jiného důvodu, než je samotné členství ve společnosti, přičemž zároveň poškodí ostatní akcionáře. Tedy nikoli samo sobectví a lačnost po zhodnocení investice bez ohledu na zájmy ostatních hráčů, ale výkon akcionářských práv z pozice jiného neakcionářského postavení. S trochou literární licence lze tento závěr přiblížit tak, že hrát špatně fotbal a dát si vlastní branku není samo o sobě nemravné, ovšem nemravným se stane v případě, kdy tak činíte proto, že jste si vsadili na vlastní prohru. Tak je např. přípustné, aby akcionář na valné hromadě prosadil přijetí usnesení o zrušení společnosti v případě, kdy by společnost měla veškeré předpoklady pro hospodářský růst, byť by jediným důvodem, proč tak učinil, byla jeho aktuální potřeba finančních prostředků, kterou však ostatní akcionáři nesdílejí. Takové rozhodnutí je zcela legitimní a v rámci pravidel právní regulace akciových společností. Jako nepřípustné je naopak nutné posoudit jednání, kdy by akcionář např. prosadil přijetí uzavření nevýhodné transakce, z níž bude přímo či nepřímo profitovat. Takové jednání pak mají charakter nespravedlivého poškození ostatních akcionářů, kteří nemají možnost dosáhnout výhod, kterých dosahuje takový akcionář.

Odlišně je podle mého názoru nutné hodnotit situace, kdy akcionář vykonává svůj vliv na společnost mimo standardní struktury společnosti, především jiným způsobem než hlasováním na valné hromadě. V těchto případech jde v podstatě o porušení pravidel fungování akciové společnosti, nicméně nelze již vůbec hovořit o výkonu akcionářských práv a je v těchto případech nutné nahlížet jako na jakoukoli jinou osobu, která se staví do role managementu společnosti. Je pak zcela legitimní, aby v takovém případě na něj bylo pohlíženo jako na faktického člena managementu společnosti s tím, že požadavky na něj kladené budou logicky vyšší než na standardní výkon akcionářských práv. Anglická právní doktrína v této souvislosti přiléhavě hovoří o tzv. *shadow directors* (stínových

ředitelích). Tuto otázku řeší § 66 odst. 6 ObchZ, který pak ovšem podle mého názoru přirozeně nelze aplikovat na případy, kdy např. majoritní akcionář hlasuje na valné hromadě, ale pouze na případy, kdy půjde o jednání, které nelze považovat za výkon akcionářských práv. Pouze tehdy lze legitimně konstruovat fikci smluvního vztahu, o kterou v tomto ustanovení prakticky jde.

V souvislosti s touto problematikou bývá mnohdy zmiňována zásada rovnosti akcionářů. Domnívám se, že tato zásada (jak ostatně vyplývá z formulace § 155 ObchZ) vyjadřuje jen jisté omezení společnosti ve vztahu k jejímu jednání a sekundárně i pravidlům, kterými se takové jednání řídí, nemá však povahu omezení kladeného na každého akcionáře při výkonu jeho akcionářských práv. Tak podle mého názoru platí, že pokud by např. majoritní akcionář prosadil na valné hromadě usnesení, které by tuto zásadu porušovalo, mohl by soud sice prohlásit takové usnesení za neplatné, nicméně předmětné hlasování by nemohlo být považováno za neoprávněný výkon akcionářských práv ze strany majoritního akcionáře.

## IV. Místo závěru

Překročením výše naznačených limitů akcionářských práv se akcionář dopouští jednání v rozporu s dobrými mravy i zásadami poctivého obchodního styku (v tomto případě se podle mého jedná o jednání, které je možné podřadit pod obě tyto kategorie), které není výkonem práva, ale protiprávním jednáním, se všemi důsledky, které s takovým jednáním spojuje soukromé právo. Takovému jednání, byť může mít formálně povahu výkonu akcionářských práv, nelze podle § 265 ObchZ přiznat soudní ochranu. Např. při šikanózních žalobách minoritních akcionářů by soud měl po vzoru německé úpravy hned v prvním stadiu řízení zkoumat, zda žaloba svojí povahou není zjevně šikanózní, a pokud by tak shledal, žalobu bez dalšího zamítnout. Akcionář odpovídá za škodu, kterou takovým jednáním způsobil (§ 432 ObčZ). V případech, kdy tu je reálné nebezpečí, že se akcionář dopustí takového jednání, se ostatní akcionáři, příp. i společnost samotná, mohou domáhat, aby soud uložil provést opatření k odvrácení hrozící škody podle § 417 odst. 2 ObčZ. Takové opatření může mít jakoukoli podobu, včetně případného zákazu výkonu hlasovacích práv.

---

* Autor je advokátním koncipientem v AK Kocián Šolc Balaštík.
[1] *Meinhard v. Salmon*, 249 N.Y. 458, 164 N.E. 545 (N.Y. 1928).
[2] *Cox, J., Hazen, T.* Corporations. 2. vydání. New York : Aspen Publishing, 2003, s. 253.
[3] *Shade, J.* Business Associations in a Nutshell. 2.vydání. St.Paul : West, 2005, s. 184.
[4] *Peters' American Delicacy Co. Ltd. v. Heath* (1939) 61 CLR 457; *Carruth v. Imperial Chemical Industries Ltd.* (1937) AC 707 a jiné.
[5] *Mayson, S., French, D., Ryan, Ch.* Company Law. 23. vydání. Oxford : Oxford University Press, 2007, s. 476.
[6] *Clemens v. Clemens Bros Ltd.*, (1976) 2 All ER 268.
[7] *Mantysaari, P.* Comparative Corporate Governance. Berlin : Springer, 2005, s. 229.
[8] *Palandt, O. a kol.* Bürgerliches Gesetzbuch. München : C. H. Beck, 1986, s. 214 a násl.
[9] Rozhodnutí Spolkového soudního dvora (BGH) z roku 1975 v němž soud přiznal akcionářům společnosti náhradu škody vůči ovládajícímu akcionáři z důvodů porušení „*Treupflicht*" na straně ovládajícího akcionáře (BGHZ 65, 15).
[10] Rozhodnutí BGH z roku 1995 (BGHZ 129, 136).
[11] *Wilhem, J.* Kapitalgesellschaftrecht. 2.vydání. Berlin : De Gruyter Recht, 2005, s. 255 a násl.
[12] *Torggler, U.* Treupflichten im faktischen GmbH-Konzern. Dissertation. Universität Wien, 1996, s. 114 a násl.
[13] Např. rozhodnutí Nejvyššího soudu ČR sp. zn. Rc 1747 (Vážný, 22 IV. b: 599). Srov. dále např. *Kubeš, V.* Smlouvy proti dobrým mravům. Brno-Praha : Orbis, 1933, s. 276, kde Kubeš v souvislosti s touto problematikou cituje výhradně rozhodnutí německých soudů.
[14] Op. cit. sub 11, s. 258.
[15] *Knappe, A.* Nichigkeit von Generalversammlungsbeschlüssen der Kapitalgesellschaften wegen Verstosses gegen die guten Sitten. Dizertační práce, 1932, citováno podle op. cit. sub 13, s. 278.
[16] Srov. *Kanda, A.* K problematice zákazu zneužívání subjektivních práv. Právník, 1970, s. 764 a násl.

**Exhibit L: <u>the judgment of the Supreme Court file no. 29 Odo 106/2001 (in Czech only)</u>**

**29 Odo 106/2001**

ČESKÁ REPUBLIKA
ROZSUDEK
JMÉNEM REPUBLIKY

Nejvyšší soud České republiky rozhodl v senátě složeném z předsedy JUDr. Zdeňka Krčmáře a soudců JUDr. Františka Kučery a JUDr. Ivany Štenglové v právní věci žalobce Mgr. M. K., jako správce konkursní podstaty úpadkyně I. spol. s r. o., zastoupeného , advokátem, proti žalovanému F. n. m. Č. r., zastoupenému, advokátem, o nároky z jednání nekalé soutěže, vedené u Městského soudu v Praze pod sp. zn. 2 Cm 152/94, o dovolání žalobce proti rozsudku Vrchního soudu v Praze ze dne 26. dubna 2000, č.j. 3 Cmo 110/99 - 91, takto:

I. Dovolání se zamítá.
II. Žádný z účastníků nemá právo na náhradu nákladů dovolacího řízení.

O d ů v o d n ě n í :

Vrchní soud v Praze rozsudkem ze dne 26. dubna 2000, č.j. 3 Cmo 110/99 - 91, potvrdil rozsudek ze dne 14. října 1998, č. j. 2 Cm 152/94-62, jímž Krajský obchodní soud v Praze zamítl žalobu o zaplacení částky 200.000.000,- Kč a o to, aby žalobci bylo přiznáno právo zveřejnit rozsudek na náklady žalovaného. Odvolací soud - vycházeje ze skutkových zjištění soudu prvního stupně - přisvědčil jeho závěru, že jednání, z nějž žalobce usuzoval na existenci uplatněného nároku (zveřejnění údaje, že pozdější úpadkyně I… spol. s r. o. neuhradila žalovanému kupní cenu ze smlouvy o prodeji části státního podniku E…, kterou žalovaný uzavřel 20. listopadu 1992 s jejím právním předchůdcem – I…, D. o. v. o. /dále též jen „smlouva"/), nebylo porušením obchodního tajemství ve smyslu ustanovení § 17 a § 20 obchodního zákoníku (dále též jen „obch. zák.") a že jednání žalovaného není - ve vazbě na ustanovení § 44 odst. 1 a § 50 obch. zák. - ani jednáním učiněným soutěžitelem, takže je nelze míti ani za jednání nekalé soutěže. Podle odvolacího soudu toto jednání žalovaného směřovalo k řešení pohledávky vzniklé ze smlouvy, bylo projevem snahy informovat o postupech proti dlužníkům a obhajobou činnosti související s privatizací státního majetku. Z diametrálně odlišné činnosti účastníků řízení nelze nijak dovodit, že by snad mezi účastníky vznikl jakýkoli vztah hospodářské soutěže v určité, okruhem subjektů omezené a pro jejich činnost specifické části trhu, a že by bylo cílem jednání žalovaného poškodit žalobce či zvýhodnit žalovaného. Výrokem svého rozsudku pak odvolací soud připustil dovolání k otázce, zda vytýkané jednání lze hodnotit jako jednání učiněné v hospodářské soutěži.

Proti rozsudku odvolacího soudu podal žalobce včas dovolání, namítaje, že je dán dovolací důvod dle ustanovení § 241 odst. 3 písm. d/ občanského soudního řádu (dále též jen „o. s. ř."), jehož prostřednictvím lze odvolacímu soudu vytýkat, že jeho rozhodnutí spočívá na nesprávném právním posouzení věci. Konkrétně dovolatel nesouhlasí se závěrem odvolacího soudu, že jednání žalovaného nebylo jednáním nekalé soutěže. Dovolatel cituje ustanovení § 4 odst. 2, § 18 odst. 1 a 2 a § 20 odst. 1 zákona č. 171/1991 Sb., o působnosti orgánů České republiky ve věcech převodů majetku státu na jiné osoby a o F. n. m. České republiky (dále též jen „zákon") a odtud usuzuje, že uzavírá-li žalovaný smlouvy svým jménem a je-li výčet jeho úkonů v zákoně pouze demonstrativní, pak může činit také úkony směřující k dosažení zisku, k náhradě škody, bezdůvodnému obohacení, úrokům z prodlení atd.; proto není ani důvod vyloučit jej z režimu nekalé soutěže. Dále dovolatel argumentuje závěry obsaženými v článku uveřejněném v časopise Právní rozhledy č. 8, ročník 1997 (Ryška, M.: K ochraně netradičních subjektů ve sporech vyplývajících z nekalé soutěže), str. 418 a v usnesení Vrchního soudu v Praze ze dne 11. ledna 1995, č. j. 3 Cmo 1336/94-22, vydaném v průběhu řízení v této věci. Odtud přejímá závěr, že nekalosoutěžního jednání se může dopustit i ten, kdo neposkytuje plnění téhož druhu, i nepodnikatel.
Dále dovolatel uvádí, že za otázku zásadního právního významu považuje i otázku, zda nejde o jednání, které lze charakterizovat jako poškozování pověsti právnické osoby a zda žalobě nemělo být vyhověno z tohoto důvodu. K tomu pak rozvíjí tezi, že hranice mezi posuzováním jednání žalovaného jako jednání z nekalé soutěže nebo jako poškozování pověsti právnické osoby je natolik nejasná, že stačí uplatnit příslušný požadavek na odškodnění, popsat přesně skutkový stav a soud pak posoudit případ z hlediska odpovídajícího právního ustanovení. To se v daném případě nestalo a soudy pouze zamítly nárok žalobce, ač z provedeného dokazování je nepochybné, že jednání žalobce vedlo k razantnímu snížení obratu, nepřiměřeným obchodním podmínkám na straně obchodních partnerů a v konečném důsledku až ke konkursu.
Konečně dovolatel nesouhlasí se závěry odvolacího soudu o zveřejňování smlouvy. Podle dovolatele je každá

smlouva přiměřeného hospodářského významu sama o sobě předmětem obchodního tajemství, takže žalovaný nebyl oprávněn zveřejňovat údaje o smlouvě, tím spíše, že byla předmětem reklamace a později soudního sporu. Žalovaný tímto postupem zneužil svého politického a mocenského postavení k tomu, aby neřešil skutečný problém na své straně a zakrýval chyby v privatizaci, na které nakonec doplatil žalobce i žalovaný. Dovolatel proto požádal, aby Nejvyšší soud zrušil rozhodnutí soudů obou stupňů.

Podle bodu 17., hlavy první, části dvanácté, zákona č. 30/2000 Sb., kterým se mění zákon č. 99/1963 Sb., občanský soudní řád, ve znění pozdějších předpisů, a některé další zákony, dovolání proti rozhodnutím odvolacího soudu vydaným přede dnem nabytí účinnosti tohoto zákona se projednají a rozhodnou podle dosavadních právních předpisů (to jest podle občanského soudního řádu ve znění účinném před 1. lednem 2001). O takový případ jde - se zřetelem k datu vydání napadeného rozsudku - i v této věci.

Nejvyšší soud se nejprve zabýval přípustností dovolání.

Jelikož výroku, jímž odvolací soud připustil dovolání, nepředcházel návrh dovolatele na vyslovení přípustnosti dovolání, podaný (ve smyslu § 239 odst. 2 o. s. ř.) před vyhlášením napadeného rozsudku, je dovolání přípustné podle § 239 odst. 1 o. s. ř. jen pro řešení právní otázky tímto výrokem odvolacího soudu formulované. Jiné otázky, jejichž přezkumu se dovolatel rovněž domáhá (otázku, zda žalovaný uvedeným jednáním porušil obchodní tajemství a otázku, zda nejde o jednání, které lze charakterizovat jako poškozování pověsti právnické osoby) Nejvyšší soud zkoumat nemohl, jelikož jiná ustanovení občanského soudního řádu (srov. § 237 a § 238 o. s. ř.) přípustnost dovolání nezakládají.

Vady řízení, k nimž dovolací soud přihlíží z úřední povinnosti (§ 242 odst. 3 o. s. ř.), nebyly dovoláním namítány a ze spisu se nepodávají, takže Nejvyšší soud se v mezích dovolacího důvodu dle § 241 odst. 3 písm,. d/ o. s. ř. zabýval toliko prověřením správnosti závěru odvolacího soudu, že jednání žalovaného není jednáním učiněným (ve smyslu § 44 odst. 1 obch. zák.) v hospodářské soutěži.

Právní posouzení věci je obecně nesprávné, jestliže odvolací soud posoudil věc podle právní normy, jež na zjištěný skutkový stav nedopadá, nebo právní normu, sice správně určenou, nesprávně vyložil, případně ji na daný skutkový stav nesprávně aplikoval.

Podle ustanovení § 44 odst. 1 obch. zák. ve znění platném roce 1994 (kdy mělo k jednání, z nějž dovolatel dovozuje odpovědnost žalovaného, dojít) i v době rozhodování odvolacího soudu, nekalou soutěží je jednání v hospodářské soutěži, které je v rozporu s dobrými mravy soutěže a je způsobilé přivodit újmu jiným soutěžitelům nebo spotřebitelům. Nekalá soutěž se zakazuje.

Ustanovení § 20 odst. 1 zákona určuje, že v rámci privatizačního projektu schváleného podle § 2 uzavírá Fond svým jménem smlouvy a činí jiné právní úkony při nakládání svým majetkem, a to zejména: (…) g/ uzavírá smlouvy o prodeji podniků, jejich organizačních složek a částí jejich majetku, jež tvoří jeho majetek; přitom může využít též veřejné soutěže.

Pro zodpovězení otázky, zda jednání žalovaného (to, že v roce 1994 zveřejnil /tisku a třetím osobám poskytl/ údaje, že pozdější úpadkyně I… spol. s r. o. neuhradila žalovanému kupní cenu ze smlouvy o prodeji části státního podniku E…, kterou žalovaný uzavřel 20. listopadu 1992 s jejím právním předchůdcem – I…, D. o. v. o.) bylo jednáním v hospodářské soutěži, je určující zjištění, zda v konkrétním případě šlo skutečně o soutěžní vztah. Přitom ve vztahu soutěže, popřípadě soutěžitelů nejsou (obecně vzato) jen přímí soutěžitelé, ale vůbec všechny subjekty, které působí v podobných nebo navzájem substituovatelných oborech nebo hospodářských činnostech (srov. v právní teorii shodně např. Štenglová, I., Plíva, S., Tomsa, M. a kol: Obchodní zákoník. Komentář. 7. vydání. Praha: C. H. Beck, 2002, str. 123).

Pro úvahu, zda jednání konkrétního subjektu je jednáním v hospodářské soutěži, tedy není rozhodné, že jde o subjekt, jenž vedle jiných (zákonem mu svěřených) úkolů může vykonávat vlastním jménem a na vlastní odpovědnost soustavnou činnost za účelem dosažení zisku (podnikat ve smyslu ustanovení § 2 obch. zák.), nýbrž to, zda šlo o jednání soutěžitele tedy, zda bylo motivováno soutěžním záměrem a nikoli záměrem jiným (srov. k tomu shodně např. Právní rádce č. 8, ročník 1996, Hajn, P.: Generální klauzule proti nekalé soutěži a její funkce, str. 9-11). Takový charakter však nemá jednání, jímž žalovaný zveřejnil informace o dluhu dovolatele z právního vztahu vzniklého při plnění úkolů žalovaného podle § 20 odst. 1 písm. g/ zákona. Tím není nikterak dotčen závěr vyslovený v rozhodnutí uveřejněném pod číslem 57/1994 Sbírky soudních rozhodnutí a stanovisek, jejž má Nejvyšší soud nadále za platný, a podle kterého činnost F. n. m. může mít podle jednotlivých ustanovení zákona č. 171/1991 Sb. v jednotlivých případech jak podnikatelský, tak i nepodnikatelský charakter.

Odvolací soud výklad podaný k ustanovení § 44 odst. 1 obch. zák. spojoval (v reakci na žalobní tvrzení) s úpravou obsaženou v ustanovení § 50 obch. zák., upravující (ve spojení s ustanovením § 44 odst. 2 písm. f/ obch. zák.) jednu z forem nekalé soutěže, jíž je zlehčování.

Podle § 50 obch,. zák. zlehčováním je jednání, jímž soutěžitel uvede nebo rozšiřuje o poměrech, výrobcích nebo výkonech jiného soutěžitele nepravdivé údaje způsobilé tomuto soutěžiteli přivodit újmu (odstavec 1). Tamtéž se pak v odstavci druhém praví, že zlehčováním je i uvedení a rozšiřování pravdivých údajů o poměrech, výrobcích či výkonech jiného soutěžitele, pokud jsou způsobilé tomuto soutěžiteli přivodit újmu. Nekalou soutěží však

liv

není, byl-li soutěžitel k takovému jednání okolnostmi donucen (oprávněná obrana).

V této souvislosti má Nejvyšší soud za to (shodně s názorem formulovaným např. v časopise Obchodní právo č. 3, ročník 1998, Kulhánek, M.: Je uveřejnění dlužníka nekalou soutěží? str. 2-5), že i kdyby informaci o výši splatných, leč dosud neuhrazených, závazků svých dlužníků zveřejnil soutěžitel v hospodářské soutěži, pak za předpokladu, že šlo o informaci pravdivou, a že její zveřejnění směřovalo k vymáhání dluhu (např. k zajištění plurality věřitelů pro účely podání návrhu na prohlášení konkursu) by o nekalou soutěž ve smyslu ustanovení § 50 obch. zák. nešlo.

Jelikož závěr, odvolacího soudu že jednání F. n. m. České republiky nebylo jednáním v hospodářské soutěži ve smyslu ustanovení § 44 odst. 1 obch. zák., je správný, Nejvyšší soud, aniž nařizoval jednání (§ 243a odst. 1 věta první o. s. ř.), dovolání zamítl (§ 243b odst. 1 část věty před středníkem o. s. ř.).

Dovolatel se svým dovoláním úspěšný nebyl, u žalovaného však žádné prokazatelné náklady dovolacího řízení zjištěny nebyly. Tomu ve smyslu ustanovení § 243b odst. 4, § 224 odst. 1 a § 142 odst. 1 o. s. ř. odpovídá výrok, podle kterého na náhradu těchto nákladů nemám právo žádný z účastníků.

Proti tomuto rozhodnutí není přípustný opravný prostředek.

V Brně 23. října 2003
JUDr. Zdeněk Krčmář,v.r.
předseda senátu

**Exhibit M: <u>judgment of the Supreme Court file no. 21 Cdo 1493/2006 (in Czech only)</u>**

**21 Cdo 1493/2006**

ČESKÁ REPUBLIKA
ROZSUDEK
JMÉNEM REPUBLIKY

Nejvyšší soud České republiky rozhodl v senátě složeném z předsedy senátu JUDr. Mojmíra Putny a soudců JUDr. Ljubomíra Drápala a JUDr. Zdeňka Novotného v právní věci žalobce Ing. J. H., zastoupeného advokátem, proti žalovanému B. a. s., zastoupenému advokátem, o 20.000,- Kč a o vzájemné žalobě o 53.300,- Kč s úrokem z prodlení, vedené u Okresního soudu ve Vsetíně – pobočky ve Valašském Meziříčí pod sp. zn. 16 C 53/2000, o dovolání žalovaného proti rozsudku Krajského soudu v Ostravě ze dne 2. listopadu 2005, č. j. 16 Co 364/2005-178, takto:

Rozsudek krajského soudu se zrušuje a věc se vrací Krajskému soudu v Ostravě k dalšímu řízení.

Odůvodnění:

Žalovaný se žalobou ze dne 23. 11. 1999 ve věci vedené u Okresního soudu ve Vsetíně, pobočky ve Valašském Meziříčí, pod sp. zn. 11 C 358/99, domáhal, aby mu žalobce zaplatil 70.800,- Kč „s úrokem z prodlení podle nařízení vlády č. 142/1994 Sb. od 16. 10. 1999 do zaplacení". Podáním ze dne 2. 2. 2000 vzal žalovaný žalobu na zaplacení částky 70.800,- Kč s příslušenstvím v celém rozsahu zpět.

Žalobce se vzájemnou žalobou domáhal, aby mu žalovaný zaplatil 20.000,- Kč „jako doplatek odměny pro vedoucího zakázky stavby k. d. v B., vedené pod č. zak.: S.". Vzájemnou žalobu odůvodnil tím, že dne 4. 1. 1993 uzavřel se žalovaným pracovní smlouvu se sjednaným druhem práce „samostatný technik IČ, zástupce vedoucího oddělení IČ". Dohodou mezi účastníky ze dne 29. 11. 1996 byl žalobce s účinností od 1. 12. 1996 jmenován „vedoucím zakázky K. d. B. S. vedené pod č. zak.: S."; zároveň bylo ujednáno, že vedoucí předkládá vedení společnosti zprávu o průběhu zakázky a jejím ukončení a že na základě schválení finančních prostředků na odměny pro vedoucího zakázky a zhodnocení zakázky vedením budou v průběhu zakázky uvolňovány zálohy na odměnu vedoucímu zakázky. Po ukončení zakázky mělo dojít k jejímu vyhodnocení a konečnému odsouhlasení celkové odměny pro vedoucího zakázky. Takto byly žalobci vyplaceny za vykonanou práci zálohy v roce 1997 ve výši 23.500,- Kč a v roce 1998 ve výši 47.300,- Kč. Z důvodů zapříčiněných žalovaným došlo k ukončení pracovního poměru žalobce ještě před ukončením zakázky. Proto by podle stanovených kritérií měla být žalobcova práce na zakázce ke dni ukončení pracovního poměru vyhodnocena a po odečtení vyplacených záloh by měla být vyplacena zbývající část odměny, která dle výpočtu žalobce činí 20.000,- Kč.

Okresní soud ve Vsetíně, pobočka ve Valašském Meziříčí, usnesením ze dne 24. 2. 2000, č. j. 11 C 358/99-48, vzájemnou žalobu ze dne 9. 2. 2000, kterou se žalobce domáhá zaplacení 20.000,- Kč, vyloučil k samostatnému řízení a věc byla dále projednávána Okresním soudem ve Vsetíně, pobočka ve Valašském Meziříčí, pod sp. zn. 16 C 53/2000.

Vzájemnou žalobou ze dne 20. 6. 2000 (obsaženou ve vyjádření k žalobě o zaplacení 20.000,- Kč) se žalovaný domáhal, aby mu žalobce zaplatil 70.800,- Kč s 11% úroky z prodlení od 16. 10. 1999 do zaplacení. Vzájemnou žalobu odůvodnil tím, že v písemném jmenování žalobce vedoucím zakázky ze dne 29. 11. 1996 je stanovena cílová odměna, která nenahrazuje mzdu a která měla být žalobci vyplacena při splnění podmínek stanovených v písemném jmenování vedoucím zakázky. Základní podmínkou bylo dokončení zakázky, úhrada zakázky objednatelem, vyhodnocení zakázky a stanovení celkové odměny podle daných kritérií. V průběhu zakázky mohly být podle ujednání uvolňovány zálohy na odměnu a tyto zálohy měly být od celkové stanovených odměn odečítány. Na těchto zálohách bylo žalobci vyplaceno celkem 70.800,- Kč. Protože ale zakázka nebyla dosud dokončena, nenastala splatnost cílové odměny, jež měla být vyplacena teprve po dosažení stanoveného cíle. Žalobci tak vzniklo bezdůvodné obohacení ve výši vyplacených záloh na odměnu, jehož vydání se žalovaný vzájemnou žalobou domáhá.

Okresní soud ve Vsetíně, pobočka ve Valašském Meziříčí rozsudkem ze dne 10. 10. 2001, č. j. 16 C 53/2000-54, ve znění usnesení ze dne 10. 10. 2001, č. j. 16 C 53/2000-58, návrh žalobce, aby byl žalovaný povinen zaplatit mu 20.000,- Kč i vzájemnou žalobu žalovaného, aby žalobce byl povinen zaplatit žalovanému 70.800,- Kč s 11% úrokem z prodlení za dobu od 16. 10. 1999 do zaplacení, zamítl a rozhodl, že žalovaný je povinen zaplatit žalobci na nákladech řízení 1.897,20 Kč „k rukám JUDr. L. P.“. Po provedeném dokazování měl za prokázáno, že žalobce, který byl s účinností od 1. 12. 1996 jmenován vedoucím zakázky „k. d. B. S. vedené pod č. zak. S.“, obdržel na zálohách na odměnu pro vedoucího uvedené zakázky celkem 70.800,- Kč. Dopisem ze dne 29. 12. 1998 byla žalobci dána výpověď z pracovního poměru podle ustanovení § 46 odst. 1 písm. c) zákoníku práce a jeho pracovní poměr skončil u žalovaného ke dni 31. 3. 1999. Ujednání mezi účastníky o stanovení cílové odměny obsažené v listině ze dne 29. 11. 1996, jíž byl žalobce jmenován vedoucím zakázky „k. d. B. S. vedené pod č. zak. S.“, posoudil jako neurčité a nesrozumitelné, neboť „výpočet odměny je stanoven tak, že jednotlivé pojmy nejsou dále specifikovány, rozvedeny a určeny, a to např. hrubý zisk, kdo konkrétně hodnotí předmětná kritéria apod.“. Pro neurčitost a nesrozumitelnost považoval toto ujednání jako neplatné, a proto žalobu na zaplacení 20.000,- Kč jako nárok z tohoto ujednání plynoucí zamítl. I když žalovaný na základě tohoto neplatného ujednání žalobci na zálohách vyplatil 70.800,- Kč a jednalo se o bezdůvodné obohacení žalobce ve smyslu ustanovení § 243 zák. práce, „vzhledem k délce plnění ze strany žalovaného a vzhledem k tehdy uspokojivým pracovním výsledkům žalobce nemohl ani vědět, ani předpokládat z okolností, že jde o částky nesprávně vyplacené“; proto ve smyslu ustanovení § 243 odst. 3 zák. práce povinnost žalobci tyto částky vrátit žalovanému neuložil. Navíc nárok na vrácení vyplacené zálohy ve výši 9.000,- Kč z dubna 1997 a ve výši 8.500,- Kč z května 1997 posoudil k námitce žalobce jako promlčený.

K odvolání obou účastníků Krajský soud v Ostravě usnesením ze dne 26. 2. 2002, č. j. 16 Co 384/2001-75 – poté, co žalovaný podáním ze dne 28. 11. 2001 vzal vzájemnou žalobu ohledně částky 17.500,- Kč zpět – rozsudek soudu prvního stupně „ve výroku II.“ (o zamítnutí vzájemné žaloby), „pokud byla žaloba na zaplacení částky 17.500,- Kč s příslušenstvím zamítnuta“, zrušil a řízení v tomto rozsahu zastavil, „v odstavci I.“ (o zamítnutí žaloby), „odstavci II.“ (o zamítnutí vzájemné žaloby), „pokud jím byla zamítnuta žaloba na zaplacení částky 53.300,- Kč s příslušenstvím“, a „v odstavci III.“ (o nákladech řízení) rozsudek soudu prvního stupně zrušil a věc mu v tomto rozsahu vrátil k dalšímu řízení. Jako nesprávný posoudil závěr soudu prvního stupně, že ujednání o sjednání „cílové odměny“ je neplatné, neboť „o nesrozumitelnosti „nemůže být řeč“, když z předmětné dohody je nepochybná vůle obou účastníků, a projev vůle nemůže být ani neurčitý, neboť tak by tomu bylo pouze tehdy, kdyby byl projev vůle sice srozumitelný, ale nebyl by zřejmý jeho obsah; v projednávané věci tomu tak není. I když není výslovně uvedeno, kdo konkrétně hodnotí předmětná kritéria, je zřejmé, že „hodnocení kritérií nepochybně provádí nadřízený pracovník žalobce“. Protože soud prvního stupně vycházel z nesprávného právního názoru o neplatnosti ujednání o cílové odměně, uložil mu, aby poté, co provede vyhodnocení systému odměňování v souvislosti se jmenováním žalobce vedoucím zakázky, zjistil, zda na základě této smlouvy je důvodný nárok žalobce na vyplacení žalované částky a zda je důvodný požadavek žalovaného na vrácení záloh, které žalobce obdržel na základě této smlouvy.

Okresní soud ve Vsetíně, pobočka ve Valašském Meziříčí, rozsudkem ze dne 25. 5. 2005, č. j. 16 C 53/2000-155, žalobu na zaplacení 20.000,- Kč i vzájemnou žalobu na zaplacení 53.300,- Kč s 11% úrokem z prodlení od 16. 10. 1999 do zaplacení zamítl a rozhodl, že žalovaný je povinen zaplatit žalobci na náhradě nákladů řízení 21.999,60 Kč „k rukám JUDr. L. P.“. Ujednání mezi účastníky v listině ze dne 29. 11. 1996, jíž byl žalobce jmenován vedoucím zakázky „k. d. B. S. vedené pod č. zak S.“ v oddílu označeném jako „stanovení cílové odměny“, posoudil jako platné; protože podmínkou pro přiznání odměny vedoucímu zakázky bylo úspěšné dokončení zakázky, k čemuž ke dni ukončení pracovního poměru žalobce u žalovaného (ke dni 31. 3. 1999) nedošlo, žalobci nárok na odměnu vedoucímu zakázky nevznikl. Ve vztahu ke vzájemné žalobě žalovaného na vrácení částek vyplacených coby zálohy na cílovou odměnu dovodil, že žalobce jako zaměstnanec v době vyplacení jednotlivých částí záloh nevěděl a ani nemohl z okolností předpokládat, že jde o částky buď omylem vyplacené či nesprávně určené, a proto s odkazem na ustanovení § 243 odst. 3 zák. práce žalobci povinnost k vrácení takto obdržených částek neuložil.

K odvolání žalovaného Krajský soud v Ostravě rozsudkem ze dne 2. 11. 2005, č. j. 16 Co 364/2005-178 rozsudek soudu prvního stupně „v odstavci II. a III.“ (o zamítnutí vzájemné žaloby a o nákladech řízení) potvrdil a rozhodl, že žalovaný je povinen zaplatit žalobci na nákladech odvolacího řízení 16.791,- Kč k rukám advokáta. Vycházel z toho, že „je nepochybné, že v rámci jmenování vedoucího zakázky ze dne 29. 11. 1996 a v systému odměňování, který je zahrnut v tomto jmenování, vyplývá zcela jasně, že žalobci budou poskytovány zálohy a že po úspěšném dokončení zakázky bude provedeno vyhodnocení celé zakázky a odsouhlasení celkové odměny pro žalobce s odpočtem poskytnutých zálohových odměn a rovněž vyplývá mimo jiné, že tato odměna by nebyla vyplacena, kdyby hrubý zisk zakázky byl nižší než 5 %“, dovodil, že žalobci byly poskytnuty peněžní částky jako zálohy na odměnu, která však následně nebyla kryta prací žalobce z důvodu ukončení pracovního poměru

výpovědí ze strany žalovaného, a že tedy „nemůže přicházet v úvahu" aplikace ustanovení § 243 odst. 3 zák. práce v tom smyslu, že by žalobce, přijal-li zálohy, byl v dobré víře; žalobce si musel být vědom, že jde o zálohu, která bude později vyúčtována. Dovodil dále, že výkon práva žalovaného spočívající v tom, že vznesl vzájemnou žalobu proti žalobci na zaplacení 70.800,- Kč není v souladu s právem. Vycházel přitom z toho, že takovýto výkon práva žalovaného „je ve skutečnosti toliko prostředkem umožňujícím poškodit jiného účastníka pracovního vztahu, tedy žalobce, kterému vyplácel po dobu dvou let zálohy na odměnu vedoucímu zakázky, poté s ním z organizačních důvodů rozvázal pracovní poměr, rozhodl se upustit od vymáhání této částky" (tím, že vzal dne 2. 2. 2000 zpět žalobu na zaplacení 70.800,- Kč), „ovšem pro chování žalobce" (proto, že žalobce podal žalobu na zaplacení 20.000,- Kč) tak učinil opět, a „nelze tedy dospět k jinému závěru, než že s ohledem na tyto skutečnosti je nutno odepřít žalovanému výkon práva podle ustanovení § 7 odst. 2 věta prvá zákoníku práce".

V dovolání proti rozsudku odvolacího soudu žalovaný namítá, že svým postupem při uplatnění vzájemné žaloby nesledoval nic jiného, než cíl původní, tj. vrácení neoprávněně vyplacené částky. Kdyby tak žalobce učinil dobrovolně, nemuselo k soudnímu řízení vůbec dojít. Závěr odvolacího soudu o zavinění žalovaného (byl veden úmyslem způsobit podáním vzájemné žaloby žalobci škodu) nevychází ze zjištění v řízení učiněných, neboť v tomto směru nebylo žádné důkazní řízení vedeno. Ani v případě, že by žalovaný vzal žalobu zpět a následně podal vzájemnou žalobu bez jakýchkoli důvodů, pouze dle vlastní vůle, nelze dospět k závěru, že tím bylo jednáno v rozporu s dobrými mravy. Svým postupem tak žalovaný žalobci žádnou škodu nezpůsobil. Za nesprávný tak považuje závěr odvolacího soudu, že podáním vzájemné žaloby v té samé věci, kde byla předtím vzata žaloba zpět, je v rozporu s dobrými mravy, což pak může být důvodem k odepření žádaného práva. Navrhl, aby dovolací soud rozsudek odvolacího soudu zrušil a aby mu věc vrátil k dalšímu řízení.

Žalobce navrhl, aby dovolání žalovaného bylo zamítnuto jako nedůvodné, neboť rozsudek odvolacího soudu je zcela správný.

Nejvyšší soud České republiky jako soud dovolací (§ 10a o. s. ř.) po zjištění, že dovolání proti pravomocnému rozsudku odvolacího soudu bylo podáno oprávněnou osobou (účastníkem řízení) ve lhůtě uvedené v ustanovení § 240 odst. 1 o.s.ř., se nejprve zabýval otázkou přípustnosti dovolání.

Dovoláním lze napadnout pravomocná rozhodnutí odvolacího soudu, pokud to zákon připouští (§ 236 odst. 1 o.s.ř.).

Podmínky přípustnosti dovolání proti rozsudku odvolacího soudu jsou obsaženy v ustanovení § 237 o.s.ř.

Dovolání je přípustné proti rozsudku odvolacího soudu, jímž bylo změněno rozhodnutí soudu prvního stupně ve věci samé [§ 237 odst. 1 písm. a) o.s.ř.] nebo jímž bylo potvrzeno rozhodnutí soudu prvního stupně, kterým soud prvního stupně rozhodl ve věci samé jinak než v dřívějším rozsudku (usnesení) proto, že byl vázán právním názorem odvolacího soudu, který dřívější rozhodnutí zrušil [§ 237 odst. 1 písm. b) o.s.ř.], anebo jímž bylo potvrzeno rozhodnutí soudu prvního stupně, jestliže dovolání není přípustné podle ustanovení § 237 odst. 1 písm. b) o.s.ř. a dovolací soud dospěje k závěru, že napadené rozhodnutí má ve věci samé po právní stránce zásadní význam [§ 237 odst. 1 písm. c) o.s.ř.]; to neplatí ve věcech, v nichž dovoláním dotčeným výrokem bylo rozhodnuto o peněžitém plnění nepřevyšujícím 20.000,- Kč a v obchodních věcech 50.000,- Kč, přičemž se nepřihlíží k příslušenství pohledávky [§ 237 odst. 2 písm. a) o.s.ř.], a ve věcech upravených zákonem o rodině, ledaže jde o rozsudek o omezení nebo zbavení rodičovské zodpovědnosti nebo pozastavení jejího výkonu, o určení (popření) rodičovství nebo o nezrušitelné osvojení [§ 237 odst. 2 písm. b) o.s.ř.].

Žalovaný dovoláním napadá rozsudek odvolacího soudu ve výroku, jímž byl potvrzen rozsudek soudu prvního stupně ve věci samé. Podle ustanovení § 237 odst. 1 písm. b) o.s.ř. dovolání není přípustné, a to již proto, že v obou rozsudcích soud prvního stupně rozhodl stejně (vzájemnou žalobu žalovaného zamítl). Dovolání žalovaného proti rozsudku odvolacího soudu tudíž může být přípustné jen při splnění předpokladů uvedených v ustanovení § 237 odst. 1 písm. c) o.s.ř..

Rozhodnutí odvolacího soudu má po právní stránce zásadní význam ve smyslu ustanovení § 237 odst. 1 písm. c) o.s.ř. zejména tehdy, řeší-li právní otázku, která v rozhodování dovolacího soudu dosud nebyla vyřešena nebo která je odvolacími soudy nebo dovolacím soudem rozhodována rozdílně, nebo řeší-li právní otázku v rozporu s hmotným právem [§ 237 odst. 3 o.s.ř.].

Dovolací soud je při přezkoumání rozhodnutí odvolacího soudu zásadně vázán uplatněnými dovolacími důvody

(srov. § 242 odst. 3 o.s.ř.); vyplývá z toho mimo jiné, že při zkoumání, zda napadené rozhodnutí odvolacího soudu má ve smyslu ustanovení § 237 odst. 3 o.s.ř. ve věci samé po právní stránce zásadní právní význam, může posuzovat jen takové právní otázky, které dovolatel v dovolání označil.

Přípustnost dovolání podle ustanovení § 237 odst. 1 písm. c) o.s.ř. není založena již tím, že dovolatel tvrdí, že napadené rozhodnutí odvolacího soudu má ve věci samé po právní stránce zásadní význam. Přípustnost dovolání nastává tehdy, jestliže dovolací soud za použití hledisek, příkladmo uvedených v ustanovení § 237 odst. 3 o.s.ř., dospěje k závěru, že napadené rozhodnutí odvolacího soudu ve věci samé po právní stránce zásadní význam skutečně má.

V projednávané věci odvolací soud řešil mimo jiné právní otázku výkladu ustanovení § 7 odst. 2 zák. práce. Protože tuto otázku odvolací soud vyřešil jinak, než jak je posuzována v judikatuře soudů (srov. rozsudek Nejvyššího soudu ČR ze dne 28. 6. 2000, sp. zn. 21 Cdo 992/99, uveřejněný pod č. 126 v časopise Soudní judikatura, roč. 2000), představuje napadený rozsudek odvolacího soudu rozhodnutí, které má po právní stránce zásadní význam. Dovolací soud proto dospěl k závěru, že dovolání proti rozsudku odvolacího soudu je přípustné podle ustanovení § 237 odst. 1 písm. c) o. s. ř.

Po přezkoumání rozsudku odvolacího soudu ve smyslu ustanovení § 242 o. s. ř., které provedl bez jednání (§ 243a odst. 1 věta první o. s. ř.), Nejvyšší soud České republiky dospěl k závěru, že dovolání žalovaného je důvodné.

Protože v projednávané věci se žalovaný vzájemnou žalobou domáhá zaplacení částek, které měly být žalobci neoprávněně vyplaceny v roce 1997 a 1998, je třeba věc posuzovat podle zákona č. 65/1965 Sb., zákoníku práce ve znění do 30. 9. 1999, tj. do dne, než nabyl účinnosti zákon č. 167/1999 Sb., kterým se mění zákon č. 1/1991 Sb., o zaměstnanosti, ve znění pozdějších předpisů, zákon č. 9/1991 Sb., o zaměstnanosti a působnosti orgánů České republiky na úseku zaměstnanosti, ve znění pozdějších předpisů, zákon č. 368/1992 Sb., o správních poplatcích, ve znění pozdějších předpisů, a zákon č. 65/1965 Sb., zákoník práce ve znění pozdějších předpisů - dále jen „zák. práce".

Podle ustanovení § 7 odst. 2 věty první zák. práce nikdo nesmí výkonu práv a povinností vyplývajících z pracovněprávních vztahů zneužívat na újmu jiného účastníka pracovněprávního vztahu.

Jak správně uvedl odvolací soud v dovoláním napadeném rozsudku, objektivní právo předpokládá, že výkon subjektivního práva směřuje k uskutečnění cíle sledovaného právní normou. Z logiky věci, dané vzájemně opačným postavením zúčastněných stran, vyplývá, že výkon subjektivního práva (vynucení splnění subjektivní povinnosti) může mít někdy za následek újmu na straně povinného subjektu, což by bylo možné vnímat jako rozpor s obecně přijímaným právním pravidlem, že každý se má chovat tak, aby nerušil práva jiného. Protože však výkon práva vylučuje protiprávnost, protože stejný stav nemůže být současně stavem právním i právu se příčícím, je třeba, vycházeje ze zásady „neminem leadit, qui iure suo utitur", chování, které směřuje k zákonem předpokládanému výsledku, považovat za dovolené i tehdy, je-li jeho (eventuelním) vedlejším následkem vznik majetkové, popř. nemajetkové újmy na straně dalšího účastníka právního vztahu.

Jestliže však jednající sice koná v mezích svého práva, ale prostřednictvím realizace chování jinak právem dovoleného sleduje poškození druhého účastníka právního vztahu, jedná se sice o výkon práva, ale o výkon práva závadný, kdy jednání a jeho výsledek se snad zcela shodují s výsledkem, který mělo právo na zřeteli, ale kdy jednání bylo učiněno nikoliv za účelem dosažení výsledků, k jejichž docílení byla jednajícímu propůjčena ochrana, nýbrž aby bylo dosaženo výsledků jiných, které jsou jinak považovány za nevítaný vedlejší následek tohoto jednání. Takový výkon práva, i když je se zákonem formálně v souladu, je ve skutečnosti výkonem práva jen zdánlivým; účelem zde není vykonat právo, ale poškodit jiného, neboť jednající v rozporu s ustálenými dobrými mravy je přímo veden úmyslem způsobit jinému účastníku újmu, zatímco dosažení vlastního smyslu a účelu sledovaného právní normou zůstává pro něho vedlejší a je z hlediska jednajícího bez významu. Za zneužití práva v smyslu ustanovení § 7 odst. 2 zák. práce tedy lze považovat pouze takové jednání, jehož cílem není dosažení účelu a smyslu sledovaného právní normou, nýbrž které je v rozporu s ustálenými dobrými mravy vedeno přímým úmyslem způsobit jinému účastníku újmu (srov. již zmíněný rozsudek Nejvyššího soudu ze dne 28. 6. 2000, sp. zn. 21 Cdo 992/99, uveřejněný pod č. 126 v časopise Soudní judikatura, roč. 2000).

Uvedeným způsobem však odvolací soud při posuzování projednávané věci nepostupoval. Přehlédl totiž, že v projednávané věci žalovaný tím, že podáním ze dne 20. 6. 2000 vzájemnou žalobou uplatnil právo na zaplacení částky 70.800,- Kč s úroky z prodlení, realizoval své petiční právo, jež vyplývá z ustanovení článku 36 odst. 1 Listiny základních práv a svobod. Toto ustanovení zaručuje každému, aby se stanoveným postupem (zde

postupem podle o.s.ř.) domáhal svého práva u soudu. Tím, že žalovaný podáním ze dne 2. 2. 2000 vzal svůj návrh na zaplacení částky 70.800,- Kč zpět, realizoval své právo dispoziční, jež je rovněž chápáno jako významný prostředek ochrany subjektivních práv jednotlivců v českém právním řádu.

Svoboda subjektů soukromého práva, jimž je v civilním procesu poskytována ochrana, se totiž projevuje zejména v zásadě dispoziční a projednací. Široké možnosti svobodné dispozice nejen předmětem řízení a různými prostředky soudní ochrany, ale také volné nakládání procesními prostředky zjišťování skutkového stavu musí zůstat procesním stranám zachovány, nemá-li civilní proces nabýt charakter autoritativní instituce, jež není podstatně ovlivňována svobodnou vůlí stran. Tak jako je procesní strana oprávněna volně rozhodnout, zda podá či nepodá žalobu, vezme ji zpět, uzavře soudní smír, uzná nárok žalobce atd. (zásada dispoziční), stejně má právo rozhodovat o tom, jaký skutkový materiál vnese do řízení, jaká budou její skutková tvrzení, důkazní návrhy, vyjádření k provedeným důkazům atd. (zásada projednací).

Účel civilního procesu lze charakterizovat nejen na úrovni ochrany subjektivních práv, ale také na objektivní úrovni ochrany právního (soukromoprávního) řádu. Výkon soudnictví je realizací jedné z důležitých funkcí státu, zájem na řádném výkonu soudnictví a na plnění jeho úloh je zájmem veřejným a realizuje se prostřednictvím veřejnoprávních institucí. Ochrana soukromoprávního řádu se však nemůže uskutečňovat jeho autoritativní, nucenou kontrolou či vynucováním plnění subjektivních povinností bez ohledu na stanovisko a vůli subjektů oprávněných. Plně záleží na tom, zda tyto subjekty samy o ochranu požádají a v jakém rozsahu tak učiní. Ochrana právního řádu se nemůže uskutečňovat jinak než v mezích civilního soudního řádu a civilního procesu, ovládaného zásadou dispoziční, zásadou projednací, zásadou rovnosti stran a dalšími zásadami, upravujícími průběh civilního řízení. Veřejný zájem na ochraně soukromoprávního řádu nelze tedy realizovat jinak než uspokojením individuálních, soukromých zájmů fyzických a právnických osob na poskytnutí ochrany jejich subjektivním právům. Naopak zase těmto soukromým zájmům nelze poskytnout ochranu jinak než realizací veřejného zájmu na výkonu soudnictví, založeného na úplném a pravdivém zjišťování sporných skutečností. Znamená to, že veřejný zájem, realizovaný cestou uspořádání pravidel pro uplatňování soukromých práv v procesním předpise (Občanském soudním řádu) nemůže potlačovat nebo být vykládán tak, že by omezoval právo petiční nebo dispoziční, jež je právě výrazem ochrany soukromých práv.

Jestliže tedy, jako tomu bylo v projednávané věci, žalobce nejprve své právo uplatní, následně z důvodů, jež neuvedl (ani nebyly blíže objasněny), vezme žalobu zpět, a poté stejné právo znovu uplatní, nelze v tomto jeho jednání spatřovat výkon práva, jehož cílem není dosažení účelu a smyslu sledovaného právní normou, nýbrž které je v rozporu s ustálenými dobrými mravy vedeno přímým úmyslem způsobit jinému účastníku újmu. Jde totiž o zcela konkrétní realizaci práva petičního ve spojení s právem disponovat žalobou.

Z uvedeného vyplývá, že napadený rozsudek odvolacího soudu není správný. Nejvyšší soud České republiky jej proto zrušil a věc vrátil Krajskému soudu v Ostravě k dalšímu řízení (§ 243b odst. 2 část věty za středníkem, § 243b odst. 3 věta první o.s.ř.).

Právní názor vyslovený v tomto rozsudku je závazný; v novém rozhodnutí o věci rozhodne soud nejen o náhradě nákladů nového řízení a dovolacího řízení, ale znovu i o nákladech původního řízení (§ 226 odst. 1, § 243d odst. 1 část věty za středníkem a věta druhá o.s.ř.).

Proti tomuto rozsudku není přípustný opravný prostředek.

V Brně dne 17. května 2007

JUDr. Mojmír Putna, v. r.
předseda senátu

**Exhibit N: <u>decision of the Supreme Court file no. 22 Cdo 1917/2004 (in Czech only)</u>**

**22 Cdo 1917/2004**

U S N E S E N Í

Nejvyšší soud České republiky rozhodl v senátě složeném z předsedy JUDr. Jiřího Spáčila, CSc., a soudců JUDr. Františka Baláka a JUDr. Marie Rezkové ve věci žalobce B. K., zastoupeného advokátem, proti žalovaným: 1) Z. J., a 2) V. J., zastoupeným advokátem, o určení vlastnictví k nemovitostem, vedené u Okresního soudu Brno-venkov pod sp. zn. 12 C 715/97, o dovolání žalovaných proti rozsudku Krajského soudu v Brně ze dne 18. listopadu 2003, č. j. 21 Co 344/2001-111, takto:

I. Dovolání se odmítá.
II. Žalovaní jsou povinni zaplatit společně a nerozdílně žalobci na náhradu nákladů dovolacího řízení částku 2.575,- Kč do tří dnů od právní moci tohoto usnesení k rukám Mgr. Z. M.
O d ů v o d n ě n í :

Žalobce se domáhal, aby soud určil, že je vlastníkem níže podrobně specifikovaných nemovitostí, neboť kupní smlouva, kterou ohledně nich uzavřel 23. 8. 1990 s žalovanou 1), je neplatná pro simulaci; úmyslem účastníků bylo totiž uzavřít smlouvu darovací a kupní smlouvu uzavřeli jen na oko.

Okresní soud Brno-venkov (dále „soud prvního stupně") rozsudkem ze dne 4. prosince 2000, č. j. 12 C 715/97-68, výrokem pod bodem I. určil, „že žalobce je vlastníkem ideální ½ nemovitostí zapsaných pro obec a k. ú. V. B., a to domu č. p. 451 postaveného na pozemku p. č. 1902 o výměře 276 m², pozemku p. č. 1902 o výměře 276 m² a pozemku p. č. 1903 – zahrada o výměře 912 m²". Dále rozhodl o nákladech řízení.

Soud prvního stupně zjistil, že žalobce se stal vlastníkem ideální poloviny předmětných nemovitostí na základě kupních smluv uzavřených 17. 12. 1966 a 12. 12. 1989 a na základě dědického řízení z roku 1989. Vlastnictví jejich druhé ideální poloviny nabyla žalobcova sestra L. Ř. s manželem. Žalobce se žalovanou 1) uzavřel 23. 8. 1990 ohledně svého podílu na nemovitostech kupní smlouvu s kupní cenou 122.491,- Kč. Ačkoliv kupní smlouva obsahovala údaj, že kupní cena byla vyplacena v hotovosti před podpisem smlouvy, do dne podání žaloby od žalované 1) neobdržel. Uzavření kupní smlouvy byl simulovaný právní úkon, neboť na straně účastníků neexistovala vůle kupní smlouvu uzavřít; ve skutečnosti šlo o darování. Darovací smlouvou, uzavřenou 12. 3. 1996, převedla žalovaná 1) předmětné nemovitosti v podílu ¼ na svého manžela, žalovaného 2). Soud dospěl k názoru, že úmyslem žalobce a žalované 1) za situace, kdy mezi nimi ještě existovaly dobré vztahy, bylo uzavřít ohledně předmětných nemovitostí darovací smlouvu; až v průběhu jednání u státního notáře uzavřeli místo darovací smlouvu kupní, a to po informaci o výši poplatkové povinnosti podle zákona č. 146/1984 Sb., o notářských poplatcích. Žalovaná 1) soudu nepředložila žádný důkaz o tom, že by dohodnutou kupní cenu žalobci uhradila. Pokud tedy úmyslem žalobce a žalované 1) bylo uzavřít smlouvu darovací a výše poplatkové povinnosti je vedla k uzavření smlouvy kupní, přičemž kupní cena uhrazena nebyla, je kupní smlouva z 23. 8. 1990 absolutně neplatná pro obcházení zákona a žalobce nadále zůstal vlastníkem ideální ½ předmětných nemovitostí. Žalovaná 1) pak nemohla platně převést jejich ideální ¼ na žalovaného 2).

Krajský soud v Brně jako soud odvolací k odvolání žalovaných rozsudkem ze dne 18. listopadu 2003, č. j. 21 Co 344/2001-111, potvrdil rozsudek soudu prvního stupně ve výroku pod bodem I., změnil jej ve výroku pod bodem II. o náhradě nákladů řízení, a dále rozhodl o nákladech odvolacího řízení. Výrokem pod bodem IV. rozhodl, že „dovolání proti tomuto rozsudku se nepřipouští".

Odvolací soud předně konstatoval, že věc projednal a rozhodl v souladu s čl. 15 přechodných a závěrečných ustanovení zákona č. 30/2000 Sb. podle občanského soudního řádu ve znění účinném do 31. 12. 2000. Po doplnění dokazování výpisem z příslušného katastru nemovitosti se ztotožnil se skutkovými i právními závěry soudu prvního stupně. Shrnul rozhodující skutková zjištění s akcentem na skutečnost, že zmíněný převod vlastnictví sporných nemovitostí byl součástí realizace rodinné dohody ve vztahu k předmětným nemovitostem, neboť žalovaná 1) je žalobcovou neteří a dcerou L. Ř., vlastnící druhou ideální poloviny předmětných nemovitostí. Konstatoval, že vůle účastníků smluvního vztahu směřovala k bezúplatnému převodu a pokud byla uzavřena smlouva kupní, stalo se tak pouze ve snaze obejít povinnost hradit poplatek z převodu nemovitostí v nepoměrné výši. Uzavřel, že jednajících směřovala k uzavření disimulovaného právního úkonu – darovací smlouvy, zatímco navenek byl simulován právní úkon – kupní smlouva. Simulovaný právní úkon je neplatný pro absenci skutečné a vážné vůle jednajících stran - § 34, § 37 odst. 1 občanského zákoníku (dále „ObčZ"), která nikdy nesměřovala k uzavření kupní smlouvy. Obstát nemůže ani disimulovaný právní úkon podle § 41a odst. 2 ObčZ, neboť ačkoliv vůle účastníků odpovídala uzavření darovací smlouvy, nebyla splněna náležitost písemné

formy úkonu. I kdyby došlo k uzavření kupní smlouvy, byl by takový právní úkon neplatný podle § 39 ObčZ. Odvolací soud se ztotožnil se soudem prvního stupně i ohledně otázky naléhavého právního zájmu na podání žaloby na straně žalobce, a neztotožnil se naopak s námitkou žalovaných, že výkon práva založený žalobou nutno považovat za šikanu. Dovolání žalovaných proti svému rozsudku nepřipustil s odůvodněním, že z jejich návrhu „nevyplývalo pro jakou konkrétní otázku by dovolání mělo být připuštěno".

Proti rozsudku odvolacího soudu podávají žalovaní dovolání. Jeho přípustnost opírají o ustanovení § 239 odst. 2 občanského soudního řádu účinného do 31. 12. 2000. Uvádějí, že rozhodnutí odvolacího soudu je po právní stránce zásadního významu, a to proto, že rozhodnutí řeší takovou právní otázku, která judikaturou vyšších soudů nebyla vyřešena, resp. rozhodnutí odvolacího soudu představuje odlišné řešení této právní otázky. Citují odůvodnění rozsudku odvolacího soudu v části, v níž se soud zabývá otázkou simulovaného a disimulovaného právního úkonu ve vztahu k vůli žalobce a žalované 1); s jeho právním názorem zde uvedeným nesouhlasí a ve vztahu k „uzavření právního aktu ze dne 23. 8. 1990" uvádějí, že pokud jde o otázku tzv. poplatkových povinností soud z nepochopitelných důvodů odhlíží, že diskriminující zákonná úprava zneuvýhodňovala institut darování mezi příbuznými a nutila je tak proti přirozenosti rodinných vztahů volit formu kupních či postupních smluv a jinak zastírat jejich skutečnou vůli. Jde o popření této notoriety soudem, k nepřihlédnutí k povinnosti dané § 130 OSŘ a k odhlížení od absurdity právní úpravy, nutící k tomu, že blízcí lidé museli platit tam, kde tak činit nechtěli. V tomto světle dovolatelé považují žalobu za šikanu, a na určení nebyl dán naléhavý právní zájem. V této souvislosti poukazují na rozsudek Nejvyššího soudu sp. zn. 22 Cdo 471/99. Uvádějí, že se žalobce nedomáhal vrácení daru v intencích § 630 ObčZ, kdy by byla aktuální otázka chování žalovaných k žalobci v návaznosti na porušování dobrých mravů a šlo o rovinu obecnější. Uzavírají, že není v zájmu společnosti chránit deformovanou právní úpravu, ani deformovaný výkon práva žalobce, dovolávajícího se vlastní nepoctivosti. Poukazují na článek 36 Listiny základních práv a svobod a článek 6 Úmluvy o ochraně lidských práv a základních svobod. Navrhují, aby „rozsudek Krajského soudu v Brně ze dne 18. 11. 2003 21 Co 344/2001 byl zrušen a věc vrácena k dalšímu řízení".

Žalobce ve vyjádření k dovolání namítá, že dovolání není přípustné. Argumentaci žalovaných považuje za totožnou s tou, jež byla uplatněna v odvolacím řízení, a odvolací soud se s ní beze zbytku vypořádal. Navrhuje, aby dovolací soud dovolání žalovaných odmítl.

Nejvyšší soud jako soud dovolací podle bodu 17. hlavy první části dvanácté zákona č. 30/2000 Sb. projedná a rozhodl o dovolání podle zákona č. 99/1963 Sb., občanský soudní řád, ve znění před novelou provedenou zákonem č. 30/2000 Sb. (dále jen „OSŘ"). Dovolací soud věc přezkoumal s hlediska námitek uvedených v dovolání a zjistil, že dovolání bylo podáno včas řádně zastoupeným účastníkem řízení, není však přípustné.

Podle § 236 odst. 1 OSŘ lze dovoláním napadnout pravomocné rozhodnutí odvolacího soudu, pokud to zákon připouští.

Vzhledem k tomu, že předpoklady přípustnosti proti potvrzujícímu rozsudku odvolacího soudu podle § 237 odst. 1, § 238 odst. 1 písm. b) a § 239 odst. 1 OSŘ nejsou dány (ani dovolatelé je netvrdí), soustředil se dovolací soud na řešení přípustnosti dovolání podle § 239 odst. 2 OSŘ.

Podle § 239 odst. 2 OSŘ nevyhoví-li odvolací soud návrhu účastníka na vyslovení přípustnosti dovolání, který byl učiněn nejpozději před vyhlášením potvrzujícího rozsudku, je dovolání podané tímto účastníkem přípustné, jestliže dovolací soud dospěje k závěru, že napadené rozhodnutí odvolacího soudu má po právní stránce zásadní význam.

Dovolání může být podle tohoto ustanovení přípustné jen tehdy, jde-li o řešení právní otázky zásadního významu. O takovou otázku se jedná tehdy, když dovolací soud posuzoval právní otázku, která byla zásadní nejen z hlediska rozhodované věci, ale tato otázka má po právní stránce zásadní význam z hlediska rozhodovací činnosti soudů vůbec. Z tohoto pohledu má rozhodnutí odvolacího soudu zásadní význam zpravidla tehdy, jestliže řeší takovou právní otázku, která judikaturou vyšších soudů nebyla vyřešena nebo jejíž výklad je v judikatuře těchto soudů dosud neustálil nebo jestliže odvolací soud posoudil určitou právní otázku jinak, než je řešena v konstantní judikatuře vyšších soudů. Napadené rozhodnutí otázky zásadního právního významu neřeší.

Problematikou vztahu simulované kupní a disimulované darovací smlouvy se dovolací soud již vícekrát zabýval. V rozsudku ze dne 4. září 2002, sp. zn. 22 Cdo 101/2001, publikovaném pod č. C 1410 ve svazku 20 Souboru rozhodnutí Nejvyššího soudu, vydávaného nakladatelstvím C. H. Beck, uvedl: „V případě, že účastníci uzavřeli

simulovanou písemnou kupní smlouvu ohledně nemovitosti, kterou chtěli zastřít darování této nemovitosti, není darovací smlouva platná, pokud nebyla uzavřena písemně tak, že by z jejího znění plynulo, že šlo o darování". Viz též rozsudek Nejvyššího soudu ze dne 10. 5. 2000, sp. zn. 22 Cdo 102/99, publikovaný v Soudních rozhledech, 2000, č. 8. V daném případě ze smlouvy o převodu nemovitostí rozhodně neplyne, že by úmyslem účastníků byl bezúplatný převod nemovitostí, tj. uzavření darovací smlouvy; rozhodnutí odvolacího soudu je tak v souladu s citovanými rozhodnutími dovolacího soudu. K námitce týkající se zásady, že nikdo se nemůže dovolávat vlastní nepoctivosti (nemo turpitudinem suam allegans auditur) se poznamenává, že tato zásada chrání poctivou stranu proti nepoctivé; v daném případě věděly o simulaci obě strany.


K námitce týkající se zneužití práva – šikany - se uvádí: „Za zneužití výkonu práva lze považovat pouze takové jednání, jehož cílem není dosažení účelu a smyslu sledovaného právní normou, nýbrž které je v rozporu s ustálenými dobrými mravy vedeno přímým úmyslem způsobit jinému účastníku újmu" (rozsudek Nejvyššího soudu z 28. 6. 2000, sp. zn. 21 Cdo 992/99, Soudní judikatura 11/2000). Je zřejmé, že v dané věci mělo podání žaloby jasný hospodářský cíl stanovený právní normou – určení vlastnického práva žalobce. Ostatně Nejvyšší soud opětovně vyslovil, že uplatnění žaloby na určení vlastnictví nemůže být posuzováno jako výkon práva, který by byl v rozporu s dobrými mravy ve smyslu § 3 odst. 1 ObčZ (např. rozsudek ze dne 4. 5. 1999 sp. zn. 22 Cdo 471/99, publikovaný v Právních rozhledech č. 8/1999).


Vzhledem k tomu, že dovolání v dané věci není přípustné ani podle § 239 odst. 2 OSŘ, ani podle jiného ustanovení OSŘ, dovolací soud je podle § 243b odst. 4 a § 218 písm. c) OSŘ odmítl.
O náhradě nákladů dovolacího řízení bylo rozhodnuto s přihlédnutím ke skutečnosti, že dovolání žalovaných bylo odmítnuto a žalobci vznikly náklady (§ 243b odst. 5, § 224 odst. 1 a § 146 odst. 3 občanského soudního řádu ve znění po novele provedené zákonem č. 30/2000 Sb.); představují odměnu advokáta za jeden úkon právní služby – vyjádření k dovolání podle § 11 odst. 1 písm. k) vyhlášky č. 177/1996 Sb., advokátní tarif, a činí podle § 5 písm. b), § 10 odst. 3, § 14 odst. 1, § 15 a § 18 odst. 1 vyhlášky č. 484/2000 Sb. částku 2.500,- Kč a dále náhradu hotových výdajů 75,- Kč podle § 13 odst. 3 advokátního tarifu. Platební místo a lhůta k plnění vyplývají z § 149 odst. 1 a § 160 odst. 1 občanského soudního řádu ve znění po novele provedené zákonem č. 30/2000 Sb. Proti tomuto usnesení není opravný prostředek přípustný.


Nesplní-li žalovaní dobrovolně, co jim ukládá toto rozhodnutí, může žalobce podat návrh na soudní výkon rozhodnutí.

V Brně dne 22. března 2005

JUDr. Jiří S p á č i l, CSc.,v.r.
předseda senátu

**Exhibit O: judgment of the Supreme Court file no. 25 Cdo 874/2005 (in Czech only)**

25 Cdo 874/2005

ČESKÁ REPUBLIKA
ROZSUDEK
JMÉNEM REPUBLIKY

Nejvyšší soud České republiky v senátě složeném z předsedkyně JUDr. Marty Škárové a soudců JUDr. Petra Vojtka a JUDr. Jana Eliáše, Ph.D., v právní věci žalobce K. – S., s. r. o. v likvidaci, zastoupeného likvidátorem, právně zastoupeného advokátem, proti žalované M. č. P. 6, zastoupené advokátem, o náhradu škody, vedené u Obvodního soudu pro Prahu 6 pod sp. zn. 7 C 227/2001, o dovolání žalované proti rozsudku Městského soudu v Praze ze dne 19. března 2004, č. j. 14 Co 582/2003-94, takto:

I. Dovolání se zamítá.
II. Žalovaná je povinna zaplatit žalobci na náhradě nákladů dovolacího řízení částku 91.255,- Kč k rukám advokáta do tří dnů od právní moci tohoto rozsudku.

O d ů v o d n ě n í :

Obvodní soud pro Prahu 6 rozsudkem ze dne 8. 12. 2003, č. j. 7 C 227/2001-56, uložil žalované povinnost zaplatit žalobci částku 15,712.657,- Kč s úroky z prodlení 7,5 % od 20. 12. 2001 do zaplacení a rozhodl o náhradě nákladů řízení. Rozhodl tak o nároku žalující společnosti (dále jen žalobce) na náhradu ušlého zisku z podnikání, z podnájmu a na náhradu škody vzniklé nuceným odprodejem zboží a zařízení provozovny. Soud vyšel ze zjištění, že žalovaná jako vlastník objektu D. v P. 6 uzavřela dne 31. 7. 1990 dohodu se společností P.-U., a. s., na jejímž základě tato společnost vykonávala jako zmocněnec žalované správu objektu D. a při správě měla oprávnění ke všem úkonům vlastníka. S touto společností žalobce uzavřel dne 6. 9. 1994 smlouvu o nájmu prostor v uvedeném objektu na dobu určitou do 31. 12. 2005 s nájemným stanoveným pevnými částkami. Žalobce v těchto prostorách podnikal a byl mu udělen souhlas i s podnájmem těchto prostor. Žalovaná 29. 4. 1998 a 30. 4. 1998 pod zjevným nátlakem přinutila žalobce k uzavření nových nájemních smluv ohledně těchto prostor s novým správcem nemovitostí A., s. r. o., v nichž bylo sjednáno několikanásobně vyšší nájemné, a některé části předmětných prostor žalovaná duplicitně pronajala jinému. Přinutila tak žalobce pod pohrůžkou okamžitého vyklizení k uzavření nových smluv za nereálných podmínek, o nichž věděla, že je žalobce nemůže plnit, a pro neplacení nájemného pak dala 5. 8. 1998 žalobci výpověď z nájmu ze všech prostor. Peněžní ústavy odmítly žalobce dále financovat a žalobce dne 14. 8. 1998 vstoupil do likvidace, když se mu nepodařilo zajistit další provozní úvěry. Poté, co žalobce předmětné prostory v objektu D. opustil, žalovaná je pronajala jiným společnostem za nájemné, které přibližně odpovídalo nájemnému, které žalobce platil před rokem 1998. Soud dospěl k závěru, že smlouvy ze dne 29. 4. 1998 a 30. 4. 1998 jsou absolutně neplatné podle § 37 odst. 1 a 2 obč. zák., neboť k jejich uzavření chyběla žalobcova svobodná a vážná vůle a navíc nebyla splněna podmínka tehdy platného § 3 odst. 2 a 4 zákona č. 116/1990 Sb.; jednáním žalované vznikla žalobci škoda, za kterou žalovaná odpovídá podle § 424 obč. zák., neboť jako vlastník objektu protiprávně zasáhla do smluvních vztahů upravujících žalobcovo užívání předmětných prostor, pod nátlakem ho přinutila k uzavření nových smluv a v důsledku toho byl žalobce nucen své podnikání zlikvidovat. Tento výkon práva, který – bez ohledu na to, zda se ve své podstatě mohl jevit jako oprávněný – směřoval záměrně ke způsobení škody jinému a byl úmyslně šikanózní, neboť jakmile žalobce prostory vyklidil, žalovaná je pronajala jiným subjektům za podstatně výhodnějších podmínek. Námitku promlčení „části nároku" neshledal soud důvodnou, neboť žalobce svůj nárok uplatnil ke kompenzaci ve sporu vedeném žalovanou proti němu u Obvodního soudu pro Prahu 6 pod sp. zn. 19 C 92/99, a to do celé výše částky proti němu zažalované (4.721.167,- Kč), a v tomto řízení řádně pokračoval, takže promlčecí doba až do skončení tohoto řízení, tj. do 27. 3. 2003 se stavěla (§ 112 obč. zák.). Vzniklou

škodu žalobce specifikoval v podáních ze dne 3. 4. 2000 a 29. 11. 2001 v uvedeném sporu, v němž byly předloženy potřebné dokumenty vážící se ke vzniklé škodě. Soud dospěl k závěru, že ušlý zisk za část roku 1998 mohl být vyčíslen nejdříve k 30. 6. následujícího roku v souvislosti s podáním daňového přiznání, a nároky i za rok 1998 byly uplatněny včas. Na základě provedených, zejména listinných důkazů soud zjistil celkovou výši škody v částce 17,053.513,- Kč (8,775.500,- Kč na ušlém zisku z prodeje zboží, 3,101.040,- Kč na ušlém příjmu z podnájemních smluv, 1,836.513,- Kč na věcné škodě z likvidace zboží a zařízení, které byl žalobce nucen v krátké době prodat bez ohledu na nevýhodnost prodeje, a 3,340.460,- Kč na ušlém zisku z ostatních služeb), přičemž na tuto škodu byla ve výše zmíněném soudním sporu vedeném u Obvodního soudu pro Prahu 6 pod sp. zn. 19 C 92/99 započtena částka 1,340.856,- Kč; soud tedy žalobci přiznal zbývající částku 15,712.657,- Kč.

K odvolání žalované Městský soud v Praze rozsudkem ze dne 19. 3. 2004, č. j. 14 Co 582/2003-94, rozsudek soudu prvního stupně ve výroku o věci samé potvrdil, změnil jej ve výroku o náhradě nákladů řízení před soudem prvního stupně a rozhodl o náhradě nákladů odvolacího řízení. Vyšel ze skutkového stavu zjištěného soudem prvního stupně, který nedoznal změn ani po doplnění dokazování, a ztotožnil se i s jeho právním posouzením. Podle smlouvy uzavřené dne 31. 7. 1990 s tehdejším Obvodním národním výborem v P. 6 spravovala předmětnou nemovitost P.-U., a. s., a byla oprávněna uzavírat nájemní smlouvy a inkasovat nájemné a poplatky za služby. Příspěvková organizace S. P. 6 – správa nemovitostí, jejímž předmětem byla správa nemovitostí žalované, byla zřízena až 1. 12. 1992 a ohledně výkonu těchto práv uzavřela dne 15. 8. 1997 mandátní smlouvu se společností A., s. r. o. I když vznikla řada sporů o výklad smlouvy ze dne 31. 7. 1990, byly tyto spory řešeny smírně, nájemní i podnájemní smlouvy byly uznány a usnesením ze dne 20. 8. 1997 Obvodní rada M. č. P. 6 (dále jen „Rada") schválila všechny stávající nájemní a podnájemní smlouvy. Zhojila tak nedostatek svého předchozího souhlasu a akceptovala dané nájemné. Přesto Rada v dopise ze dne 22. 4. 1998 a následně A., s. r. o., vyzývaly žalobce k uzavření nových smluv v jiných cenových relacích pod pohrůžkou vyklizení a nutily tak žalobce k uzavření nových smluv, ačkoliv dosavadní smlouvy byly schváleny. Odvolací soud shodně se soudem prvního stupně dospěl k závěru, že nepřípustný nátlak na žalobce k uzavření nových smluv při několikanásobně vyšším nájemném za situace, že žalovaná následně uzavřela nájemní smlouvy s jinými subjekty za nájemné v obdobné výši jako v roce 1994, je jednáním proti dobrým mravům, a z tohoto jednání vyplývá i úmysl žalované ukončit za každou cenu vztah s žalobcem. Protože bylo prokázáno, že v důsledku tohoto jednání žalované musel žalobce ukončit svou podnikatelskou činnost, odvolací soud dovodil, že úmyslné jednání proti dobrým mravům je v příčinné souvislosti se vznikem škody na straně žalobce, a to jak ve formě skutečné škody, tak i ušlého zisku ve výši zjištěné soudem prvního stupně. Žalovaná za tuto škodu odpovídá podle § 424 obč. zák.

Proti tomuto rozsudku podala žalovaná dovolání. Uvádí, že v řadě právních otázek má napadené rozhodnutí zásadní význam, a jako dovolací důvod uplatňuje nesprávné právní posouzení věci. Namítá, že dohoda o pronájmu objektu D. ze dne 31. 7. 1990, uzavřená s P.-U., a. s., není smlouvou o nájmu budovy, nýbrž je třeba ji posoudit jako hospodářskou smlouvu o dočasném užívání majetku podle § 71 a § 348 hospodářského zákoníku, která však nesplňuje náležitosti předepsané hospodářským zákoníkem či dalšími předpisy, a je proto podle § 21 odst. 1 hospodářského zákoníku neplatná. Dovolatelka nesouhlasí se závěrem soudů obou stupňů, že na základě této dohody mohla P.-U., a. s., jednat jako zmocněnec vlastníka a že měla oprávnění ke všem úkonům vlastníka, neboť z obsahu dohody nelze dovodit, že by ONV v P. 6 udělil této společnosti plnou moc k jednání svým jménem. Z dohody vyplývá, že úmyslem obou smluvních stran bylo dočasné úplatné přenechání budovy do užívání, a nikoli postoupení práv a povinností. Usnesení Rady ze dne 20. 8. 1997 pak nemohlo zhojit nedostatek předchozího souhlasu Rady a schválit stávající nájemní a podnájemní smlouvy, neboť usnesení obvodní rady nemůže mít žádné účinky v soukromoprávních vztazích vůči třetím osobám a zpětné vyslovení souhlasu k uzavření smlouvy nemůže „ratihabovat" neplatný právní úkon. Žalovaná tedy dovozuje, že v roce 1998 před tím, než byly uzavřeny nové nájemní smlouvy se žalobcem, neexistoval žádný právní vztah, který by opravňoval žalobce užívat předmětné nebytové prostory. Pokud žalobce takové právo dříve měl, jednalo se o podnájem, kdy nájemcem byla společnost P.-U., a. s., a se zánikem oprávnění společnosti P.-U., a. s., užívat předmětnou budovu zaniklo i oprávnění žalobce. Uvádí, že žalovaná naopak chtěla žalobci užívání těchto prostor umožnit,

proto mu nabízela uzavření nájemních smluv v roce 1998, což není v rozporu s dobrými mravy, a nelze přičítat žalované, že s ní žalobce uzavřel smlouvy, které nebyl schopen plnit. Dovolatelka namítá nedostatek příčinné souvislosti mezi jejím jednáním a škodou vzniklou žalobci, neboť kdyby nebyly uzavřeny smlouvy z roku 1998, které byly teprve později shledány neplatnými, musel by žalobce předmětné prostory vyklidit už tehdy, neboť je užíval bez právního důvodu. Nesouhlasí se způsobem, jakým byla zjištěna výše ušlého zisku z podnikání žalobce, a to jako násobek ročního průměrného příjmu z let 1996 a 1997, neboť tento způsob odpovídá úpravě v § 380 obchodního zákoníku, který však nelze na vztahy žalobce a žalované aplikovat. S poukazem na rozhodnutí Nejvyššího soudu sp. zn. 25 Cdo 676/2001 namítá, že od ušlého zisku z podnájmů měly být odečteny náklady, které je nutné na jejich dosažení vynaložit. Dovozuje, že samotným prodejem zboží a zařízení nemohla žalobci vůbec škoda vzniknout, neboť inventární cena zboží a zařízení nemusí odpovídat tržní ceně, za kterou by tyto věci prodány. Nesouhlasí dále se závěrem odvolacího soudu ohledně promlčení nároku na náhradu ušlého zisku, neboť okolnost, že 30. 6. 1999 uplynulo zdaňovací období za rok 1998, nemohla mít vliv na vědomost žalobce o výši škody z podnájmů, vzniklé v předchozím kalendářním roce. I kdyby počala subjektivní promlčecí doba běžet až od 1. 7. 1999, jak dovodily soudy obou stupňů, právo na náhradu ušlého zisku se promlčelo dne 1. 7. 2001, neboť u soudu bylo uplatněno až dne 20. 12. 2001 a skutečnost, že žalobce v jiném sporu část svého nároku započetl proti pohledávce žalované, nemá žádný vliv na běh promlčení u nezapočtené části nároku. Navrhl, aby dovolací soud rozsudek odvolacího soudu zrušil a věc mu vrátil k dalšímu řízení.

Žalobce ve vyjádření k dovolání uvedl, že nejsou splněny podmínky přípustnosti dovolání podle ust. § 237 o. s. ř., neboť aplikace ust. § 424 obč. zák. byla správná a nejednalo se o věc zásadního právního významu. Vyvrací důvody dovolání s tím, že dovolatelka nesprávně interpretuje obsah rozhodnutí soudu, polemizuje se skutečnostmi, které nejsou relevantní pro rozhodnutí, a uvádí v dovolání nová stanoviska a tvrzení, která jsou nepřípustnými novotami podle § 241a odst. 4 o. s. ř. Ať už je právní povaha smlouvy uzavřené mezi žalovanou a P.-U., a. s., jakákoli, soudy správně dovodily, a to i v předchozím sporu vedeném u Obvodního soudu pro Prahu 6 pod sp. zn. 19 C 92/99, že tato společnost jednala se žalobcem jako zmocněnec žalované, správce nemovitostí, a to se souhlasem žalované na základě jejího pověření, uvedeného v dohodě ze dne 31. 7. 1990 pod písm. f). V řízení bylo prokázáno, že žalovaná v roce 1998 přinutila žalobce uzavřít nové - absolutně neplatné -smlouvy se zcela nereálnými podmínkami, jednání žalované bylo jednoznačně zaměřeno na likvidaci podnikání žalobce a žalovaná tak jednala úmyslně v rozporu s dobrými mravy ve smyslu ust. § 424 obč. zák. Tvrzení, že před uzavřením smluv z roku 1998 nebyl žalobce k užívání předmětných prostor oprávněn, nebere v úvahu jeho smlouvu s P.-U., a. s. ze dne 6. 9. 1994 s dodatky z roku 1996, jejichž platnost byla usnesením Rady potvrzena. Pokud jde o výši škody, žalovaná uplatňuje nově skutečnosti, které nebyly v předchozím řízení uplatněny a nejsou proto přípustné. Poukazuje na to, že ušlý zisk byl doložen listinnými důkazy a stanoven podle výnosů dosahovaných z podnikatelské činnosti žalobce v předchozích letech, přičemž náklady na jeich dosažení byly již od příjmů odečteny. Pokud jde o promlčení, škoda byla způsobena úmyslně, což má z hlediska aplikace ust. § 106 odst. 2 obč. zák. zásadní význam. Námitka promlčení byla vznesena k „části nároku", tedy neurčitě, což neodpovídá požadavku § 37 obč. zák. na platnost právního úkonu. Odvolací soud správně dovodil, že o výši škody se žalobce dozvěděl až na konci zúčtovacího období, neboť při dlouhodobějších a kolísavých nákladech lze až tehdy stanovit výši zisku. Žalobce nesouhlasí s názorem v dovolání, že z hlediska běhu promlčecí doby k uplatnění nároku nemá započtení vliv na běh promlčení u nezapočtené části. Navrhl, aby dovolání žalované bylo odmítnuto, případně zamítnuto.

Žalovaná pak dodatečně uvedla, že dovoláním napadené rozhodnutí považuje za zásadně významné po právní stránce, neboť řeší otázku odpovědnosti za škodu způsobenou úmyslným jednáním proti dobrým mravům, která nebyla v rozhodovací praxi dovolacího soudu zatím vyřešena, a další otázky týkající se platnosti a charakteru smluvních vztahů mezi žalobcem, žalovanou a P.-U., a. s., odpovědnosti za skutečnou škodu a ušlý zisk a jejich výše, promlčení nároku žalobce, vzniku odpovědnosti a účinků usnesení obvodní rady M. č. P. 6. Opakuje a rozvádí své výhrady uvedené v dovolání, popírá, že by se dopustila úmyslného jednání proti dobrým mravům.

Žalobce v dalším vyjádření k replice žalované poukázal na to, že některé z otázek předložených žalovanou dovolacímu soudu již byly řešeny v jeho rozhodnutích.

Nejvyšší soud jako soud dovolací (§ 10a o. s. ř.) po zjištění, že dovolání bylo podáno včas, účastníkem řízení, zastoupeným advokátem ve smyslu ust. § 241 odst. 1 o. s. ř., se nejprve zabýval otázkou jeho přípustnosti.

Podmínky přípustnosti dovolání proti rozsudku odvolacího soudu upravuje ustanovení § 237 o. s. ř.

Podle ustanovení § 237 odst. 1 o. s. ř. je dovolání přípustné proti rozsudku odvolacího soudu a proti usnesení odvolacího soudu, jimiž bylo změněno rozhodnutí soudu prvního stupně ve věci samé [písm. a)], jimiž bylo potvrzeno rozhodnutí soudu prvního stupně, kterým soud prvního stupně rozhodl ve věci samé jinak než v dřívějším rozsudku (usnesení) proto, že byl vázán právním názorem odvolacího soudu, který dřívější rozhodnutí zrušil [písm. b)], jimiž bylo potvrzeno rozhodnutí soudu prvního stupně, jestliže dovolání není přípustné podle ustanovení písmena b) a dovolací soud dospěje k závěru, že napadené rozhodnutí má ve věci samé po právní stránce zásadní význam [písm. c)].

Rozhodnutí odvolacího soudu má po právní stránce zásadní význam zejména tehdy, řeší-li právní otázku, která v rozhodování dovolacího soudu dosud nebyla vyřešena nebo která je odvolacími soudy nebo dovolacím soudem rozhodována rozdílně, nebo řeší-li právní otázku v rozporu s hmotným právem (§ 237 odst. 3 o. s. ř.).

Přípustnost dovolání proti potvrzujícímu výroku ve věci samé se řídí ustanovením § 237 odst. 1 písm. c) o. s. ř. Dovolání je podle tohoto ustanovení přípustné jen tehdy, jde-li o řešení právních otázek (jiné otázky, zejména posouzení správnosti nebo úplnosti skutkových zjištění přípustnost dovolání nezakládají – srov. ust. § 241a odst. 3 o. s. ř.) a současně se musí jednat o právní otázku zásadního významu. Při úvaze, zda napadené rozhodnutí odvolacího soudu má ve smyslu ustanovení § 237 odst. 3 o. s. ř. ve věci samé po právní stránce zásadní právní význam, dovolací soud může posuzovat jen ty právní otázky, které dovolatel v dovolání označil, a při přezkoumávání správnosti rozhodnutí je pak vázán uplatněnými dovolacími důvody (srov. § 242 odst. 3 o. s. ř.). Především jde o to, zda v napadeném rozhodnutí řešená a dovoláním vymezená právní otázka má zásadní význam nejen pro rozhodnutí projednávané konkrétní věci, ale i z hlediska rozhodovací činnosti soudů vůbec, a za splnění tohoto předpokladu pak dovolací soud zkoumá, zda jde o takovou právní otázku, kterou dosud neřešil, popř. o právní otázku řešenou rozdílně, anebo – z hlediska judikatorního – řešenou v rozporu s hmotným právem (srov. např. usnesení Nejvyššího soudu ze dne 25. 7. 2006, sp. zn. 25 Cdo 1312/2005).

Z právních otázek, předložených dovolacímu přezkumu, nemůže mít zásadní význam pro rozhodnutí otázka platnosti či neplatnosti smlouvy mezi bývalým ONV P. 6 a společností P.-U., a. s., z 31. 7. 1990, a to nejen proto, že příčina vzniku škody vzniklé žalobci nespočívá v uzavření této smlouvy, nýbrž v nájemní smlouvě mezi spol. A. a žalobcem z r. 1998, jejíž neplatnost byla v řízení vyřešena, ale zejména proto, že z hlediska aplikace § 424 obč. zák. není tato otázka rozhodující. Z hlediska tohoto ustanovení nemá zásadní význam ani otázka právních účinků usnesení rady M. č. P. 6 o schválení dosavadních nájemních smluv a ostatně ani otázka platnosti či neplatnosti nájemní smlouvy žalobce z r. 1994 – 6.

Podle ust. § 424 obč. zák. za škodu odpovídá i ten, kdo ji způsobil úmyslným jednáním proti dobrým mravům.

Aplikace § 424 obč. zák. nevyžaduje, aby ze strany škůdce došlo přímo k porušení smluvního závazku, tedy k porušení právní povinnosti vyplývající ze smlouvy, neboť v takovém případě nastupuje odpovědnost za porušení právní povinnosti podle § 420 obč. zák. Odpovědnost za úmyslné jednání proti dobrým mravům zahrnuje jak případy právem neupraveného jednání, tak právě případy

oprávněného výkonu práva, který směřuje k poškození jiného, neodporuje sice přímo zákonu a nedosahuje intenzity protiprávnosti, ale je v rozporu s dobrými mravy. Znamená to, že i když škůdce vykonává své právo, avšak způsobem, který záměrně poškozuje jiného a vede k nepřiměřeným důsledkům, jde o tzv. šikanozní výkon práva, jenž je sankcionován právě ustanovením § 424 obč. zák. Úmyslné jednání proti dobrým mravům, jež má za následek vznik škody, je předpokladem vzniku odpovědnosti za škodu. Nemůže obstát námitka dovolatelky, že právě uzavřením nájemní smlouvy v r. 1998 mělo být žalobci umožněno pokračovat v dosavadním užívání prostor v objektu D., neboť - jak vyplývá ze skutkového stavu, jak byl v řízení zjištěn - nešlo o navázání nájmu, nýbrž o snahu stanovením nereálných podmínek znemožnit mu jeho další podnikání v tomto objektu. Ze skutkových zjištění, jež nejsou předmětem dovolacího přezkumu, vyplývá, že v důsledku toho, že žalobce byl donucen nájemní smlouvy v r. 1998 uzavřít a podle nich plnit, musel zanechat své podnikatelské činnosti a vznikla mu tak škoda, zatímco poté žalovaná pronajala tyto prostory jinému za výrazně nižší nájemné. Proto – i kdyby zde před r. 1998 neexistoval platný nájemní vztah mezi účastníky – ač obě strany vycházely z opaku – platí, že šikanozní výkon práva (tedy nikoliv jen „nemravný" zásah do smluvních vztahů) je jednáním proti dobrým mravům. Zásada „nikdo nesmí zneužívat svého práva jednáním proti dobrým mravům" platí právě v případech, kdy jde o jednání dovolené, nikoliv protiprávní, avšak v konkrétních souvislostech naplňující znaky nemravného jednání.

Vzhledem k tomu, že na závěr o zásadním významu napadeného rozhodnutí po právní stránce lze usuzovat jen z okolností, uplatněných dovolacím důvodem podle ustanovení § 241a odst. 2 písm. b) o. s. ř., nemůže být při posuzování, zda je dovolání přípustné podle ustanovení § 237 odst. 1 písm. c) o. s. ř. přihlédnuto k okolnostem uplatněným jinými dovolacími důvody, (srov. např. usnesení Nejvyššího soudu ze dne 29.6.2004 sp. zn. 21 Cdo 541/2004, uveřejněné pod č. 132 v časopise Soudní judikatura, roč. 2004). Právním posouzením ve smyslu ust. § 241a odst. 2 písm. b) o. s. ř. je činnost soudu, při níž aplikuje konkrétní právní normu na zjištěný skutkový stav, tedy dovozuje ze skutkového zjištění, jaká mají účastníci podle příslušného právního předpisu práva a povinnosti. Podmínky přípustnosti dovolání ve smyslu § 237 odst. 1 písm. c), odst. 3 o. s. ř. proto nesplňují dovolací námitky, směřující proti skutkovým zjištěním, z nichž odvolací soud vycházel při svém rozhodnutí.

To se týká zejména námitek ohledně stanovení výše náhrady škody. Zjištění výše vzniklé škody je především otázkou skutkového zjištění na základě provedeného dokazování. Nesouhlas s tím, jak byl na základě zhodnocení provedených důkazů zjištěn skutkový stav, není námitkou nesprávného řešení otázky právní, tím méně může být otázkou zásadního právního významu. Pokud jde o námitky ke způsobu, jakým byla stanovena výše ušlého zisku v daném případě, je třeba uvést, že občanský zákoník nestanoví kogentní pravidla, jakým způsobem je soud povinen při zjišťování výše ušlého zisku podnikatele – obchodní společnosti postupovat. Vždy je rozhodující stav, jaký zde byl před vznikem škody, tedy předtím, než poškozenému začala vznikat škoda. Způsob zjišťování výše ušlého zisku pak v každém jednotlivém případě závisí na skutkových okolnostech a na tvrzených konkrétní poškozené společnosti o konkrétních okolnostech, z nichž dovozuje, že by v zažalovaném období dosahovala při svém podnikání zisku, o který přišla. V daném případě byla výše ušlého zisku žalující společnosti zjišťována konkrétně z výsledků její podnikatelské činnosti v předchozích letech ve výši, v jaké by zisku skutečně dosáhla v době, za níž je náhrada požadována, a nikoliv - jak je s odkazem na § 380 (správně § 381) obchodního zákoníku namítáno v dovolání – že by byla stanovena zjednodušeným způsobem jako náhrada zisku ve výši zpravidla dosahované za srovnatelných podmínek v obdobném okruhu podnikání. Už z toho důvodu nemá zásadní význam námitka, že právní názor na způsob stanovení výše ušlého zisku v dané věci nemá oporu v občanském zákoníku. Ostatně lze dodat, že ani v občanskoprávních vztazích není vyloučena možnost stanovit výši nároku na náhradu ušlého zisku (§ 136 o. s. ř.) formou tzv. fiktivního příjmu, tj. příjmu, jakého by poškozený v rozhodném období dosahoval, nebýt jeho vyřazení z výdělečné činnosti, v porovnání s jiným srovnatelným podnikatelem.

Ani skutkový závěr, kdy se žalobce dozvěděl o rozsahu, v jakém mu ušel zisk z podnikání za část roku 1998, nemůže být předmětem dovolacího přezkumu. Dozvědět se o škodě znamená mít k dispozici takové skutkové údaje, které umožňují výši škody - aspoň orientačně – vyčíslit tak, aby bylo možno podat žalobu, samozřejmě s možností dodatečného upřesnění, přičemž pro začátek běhu subjektivní

promlčecí doby se vyžaduje skutečná (prokázaná) a nikoliv jen předpokládaná vědomost poškozeného. Rozhodující je skutkové zjištění, kdy se poškozený dozvěděl o skutkových okolnostech, z nichž lze dovodit rozsah škody na ušlém zisku za r. 1998, nikoliv – jak je namítáno v dovolání – zda s ohledem na právní úpravu zákona o daních z příjmu a o správě daní a poplatků lze předpokládat, že již předtím mohl určit výši majetkové újmy v penězích. V tomto směru dovolatel zpochybňuje především skutková zjištění, která byla podkladem pro právní posouzení věci; nejedná se proto o námitku týkající se nesprávného řešení otázky právní, ale o námitku týkající se zjišťování skutkového stavu věci, tedy o dovolací důvod podle § 241a odst. 3 o. s. ř.

Otázkou zásadního právního významu, která nebyla v rozhodovací praxi dovolacího soudu vyřešena a má i judikatorní přesah, je otázka běhu promlčecí doby k uplatnění práva na plnění z pohledávky, jež byla předtím v jiném sporu namítnuta k započtení a zčásti k jejímu započtení nedošlo. Řešení, jež ohledně této otázky odvolací soud v projednávané věci přijal, je zpochybňováno v dovolání. Z hlediska této otázky představuje napadený rozsudek odvolacího soudu rozhodnutí, které má po právní stránce zásadní význam, a dovolání je v tomto směru přípustné podle ustanovení § 237 odst. 1 písm. c) o. s. ř.

Stavení promlčecí doby podle § 112 obč. zák. předpokládá, že věřitel v promlčecí době uplatnil své právo u soudu, popř. jiného příslušného orgánu, a v řízení řádně pokračoval, tedy svými úkony nebránil průběhu řízení a meritornímu rozhodnutí. Věřitel může uplatnit své právo proti dlužníkovi u soudu nejen podáním žaloby na plnění (§ 79 o. s. ř.), ale v řízení vedeném dlužníkem proti němu i podáním vzájemné žaloby (§ 97 odst. 1 o. s. ř.) a rovněž tzv. kompenzační námitkou, tedy projevem, jímž uplatňuje svou pohledávku k započtení proti pohledávce žalobce (§ 98 o. s. ř.). Od okamžiku, kdy bylo právo takto v řízení uplatněno, promlčecí doba až do skončení řízení neběží; po jeho skončení pak její běh pokračuje. V rozsahu, v jakém se kryjí, zanikají započtením vzájemné pohledávky dlužníka a věřitele, a to zásadně okamžikem, kdy se setkaly, tj. kdy nastala splatnost pohledávky později splatné (§ 580 obč. zák.). Započtení je jeden z důvodů zániku dluhu. Pohledávka, jež nezanikla započtením, však trvá dále a běh promlčecí doby k jejímu uplatnění pokračuje po pravomocném skončení řízení, v němž byla vznesena kompenzační námitka. Na tom nic nemění okolnost, že z celkové výše pohledávky namítnuté k započtení proti pohledávce dlužníka zanikla jen její část. Ke stavení běhu promlčecí doby dochází totiž v tom rozsahu, v jakém bylo právo u soudu uplatněno. Jestliže započtením zanikla jen část pohledávky namítnuté k započtení, ohledně zbývající (nezaniklé) části pohledávky se promlčecí doba stavěla po dobu řízení, v němž byla takto uplatněna (§ 112 obč. zák.), a teprve po jeho skončení pokračoval běh promlčecí doby k uplatnění této zbývající části pohledávky.

Jestliže tedy v daném případě v soudním řízení, v němž se žalovaná domáhala na žalobci plnění, žalobce namítl proti pohledávce na něm vymáhané svou protipohledávku k započtení, a to do výše pohledávky proti němu uplatněné (4,721.167.-Kč) a svými úkony nebránil pokračování v tomto řízení, došlo ke stavení promlčecí doby ohledně celé takto uplatněné pohledávky, a to od okamžiku vznesení kompenzační námitky až do pravomocného skončení řízení. Započtením vzájemných pohledávek zanikly obě sice jen do výše, v níž byla pohledávka uplatněná proti žalobci shledána důvodnou (tj. 1,340.856,- Kč), avšak až do pravomocného skončení řízení (27. 3. 2003) běh promlčecí doby v rozsahu celé uplatněné protipohledávky (4,721.167.-Kč) nepokračoval. Nelze proto přisvědčit názoru vyslovenému v dovolání, že na běh promlčecí doby nemá vliv skutečnost, že pohledávka žalobce proti žalované byla namítnuta k započtení v jiném řízení.

Jak z výše uvedeného vyplývá, rozhodnutí odvolacího soudu je z hlediska uplatněných dovolacích důvodů správné, Nejvyšší soud tedy dovolání jako nedůvodné zamítl (§ 243b odst. 2 o. s. ř.).

O náhradě nákladů dovolacího řízení bylo rozhodnuto podle ust. § 243b odst. 5, věty první, § 224 odst. 1 a § 142 odst. 1 o. s. ř., neboť s ohledem na výsledek dovolacího řízení má žalobce právo na náhradu účelně vynaložených nákladů řízení, které sestávají z odměny za zastoupení advokátem za 1 úkon v částce 91.180,- Kč (odměna z částky určené podle § 10 odst. 3 vyhlášky č. 484/2000 Sb., ve znění

účinném do 31. 8. 2006, vypočítaná podle ust. § 3 odst. 1 bod 7. vyhlášky, zaokrouhlená podle § 16 odst. 2 vyhlášky a snížená o polovinu podle § 18 odst. 1 vyhlášky) a náhrady hotových výdajů podle ust. § 13 odst. 3 vyhlášky č. 177/1996 Sb., ve znění účinném do 31. 8. 2006 (vyjádření k dovolání bylo sepsáno dne 1. 11. 2004), v částce 75,- Kč.

Proti tomuto rozsudku není přípustný opravný prostředek.

V Brně dne 31. ledna 2007

JUDr. Marta Škárová, v. r.
předsedkyně senátu

**Exhibit P: <u>judgment of the Supreme Court file no. 21 Cdo 1893/2002 (in Czech only)</u>**

21 Cdo 1893/2002

ROZSUDEK
JMÉNEM REPUBLIKY

Nejvyšší soud České republiky rozhodl v senátě složeném z předsedy senátu JUDr. Ljubomíra Drápala a soudců JUDr. Zdeňka Novotného a JUDr. Mojmíra Putny v právní věci žalobce J. M., zastoupeného advokátem, proti žalované České republice - Ministerstvu zahraničních věcí v Praze 1, Loretánské nám. č. 5, IČ 45769851, o vydání posudku o pracovní činnosti, vedené u Obvodního soudu pro Prahu 1 pod sp.zn. 27 C 43/2000, o dovolání žalované proti rozsudku Městského soudu v Praze ze dne 27. února 2002 č.j. 13 Co 60/2002-25, takto:

I. Dovolání žalované se zamítá.

II. Žalovaná je povinna zaplatit žalobci na náhradě nákladů dovolacího řízení 2.575,- Kč k rukám advokáta.

O d ů v o d n ě n í :

Žalobce se domáhal, aby mu žalovaná vydala posudek o pracovní činnosti. Žalobu zdůvodnil tím, že pracoval u žalované v pracovním poměru od 8.11.1995 do 15.5.1998. V souvislosti s rozvázáním pracovního poměru požádal žalovanou o vydání posudku o pracovní činnosti, avšak žalovaná dosud jeho žádosti nevyhověla.

Žalovaná potvrdila, že pracovní poměr mezi účastníky skončil dnem 15.5.1998. Žalobce o vydání posudku o pracovní činnosti požádal dne 4.1.1999. Protože zaměstnavatel je povinen vydat posudek o pracovní činnosti pouze zaměstnanci, který o to požádá, a nikoliv také osobě, která dříve byla jeho zaměstnancem, nemá žalovaná právní povinnost žalobci posudek o pracovní činnosti vydat.

Obvodní soud pro Prahu 1 rozsudkem ze dne 25.4.2001 č.j. 27 C 43/2000-14 žalobě vyhověl a rozhodl, že žalovaná je povinna zaplatit žalobci na náhradě nákladů řízení 2.725,- Kč k rukám advokáta. Při svém rozhodování vycházel ze zjištění, že žalobce pracoval u žalované na základě pracovní smlouvy ze dne 7.11.1995 ode dne 8.11.1995 až do dne 15.5.1998, kterým uplynula sjednaná doba trvání pracovního poměru. Žalobce dopisem ze dne 4.1.1999 žalovanou požádal o vydání posudku o pracovní činnosti, žalovaná však jeho žádosti dosud nevyhověla. Na základě uvedených skutkových zjištění soud prvního stupně dovodil, že podle ustanovení § 60 odst.1 zákoníku práce byla žalovaná povinna vydat žalobci posudek o pracovní činnosti do 15 dnů od doručení žádosti. Obranu žalované, podle které povinnost vydat posudek o pracovní činnosti \"postihuje\" pouze zaměstnavatele v době trvání pracovního poměru, soud odmítl s odůvodněním, že \"výraz zaměstnanec i zaměstnavatel\" použitý v ustanovení § 60 odst.1 zákoníku práce je třeba vyložit tak, že \"se vztahuje i na bývalé partnery pracovněprávního vztahu, tedy i na bývalého zaměstnance a bývalého zaměstnavatele\".

K odvolání žalované Městský soud v Praze rozsudkem ze dne 27.2.2002 č.j. 13 Co 60/2002-25 rozsudek soudu prvního stupně potvrdil a rozhodl, že žalovaná je povinna zaplatit žalobci na náhradě nákladů odvolacího řízení 5.150,- Kč k rukám advokáta. Odvolací soud se ztotožnil s posouzením věci soudem prvního stupně. Názor žalované, že na základě žádosti podané po skončení pracovního poměru nemá zaměstnavatel povinnost vydat bývalému zaměstnanci posudek o pracovní činnosti, nemá podle odvolacího soudu oporu v zákoně. Možnost žádat vydání posudku o pracovní činnosti \"není nijak časově omezena\" a není vázána \"na existenci zaměstnání v době podání žádosti o posudek\". Žalovaná proto bezdůvodně odmítá vydat žalobci posudek o pracovní činnosti.

Proti tomuto rozsudku odvolacího soudu podala žalovaná dovolání. Namítá, že v ustanovení § 60 odst.1 zákoníku práce je \"povinný i oprávněný subjekt přesně definován\". Musí se jednat o

zaměstnavatele a zaměstnance, přičemž \"bývalý zaměstnavatel není zaměstnavatelem a bývalý zaměstnanec není zaměstnancem\"; již ze samotného znění ustanovení § 60 odst.1 zákoníku práce tedy vyplývá, že zaměstnavatel nemůže mít povinnost vydat pracovní posudek bývalému zaměstnanci, a proto ani nebyla v zákoně stanovena zaměstnanci lhůta k uplatnění tohoto nároku. Kdyby měl možnost požádat o posudek o pracovní činnosti i bývalý zaměstnanec, mohl by podat žádost také až po uplynutí značné doby a zaměstnavatel by nemusel být vždy schopen splnit svou povinnost, zejména proto, že už u něj nebudou zaměstnáni ti, kteří by mohli práci bývalého zaměstnance řádně vyhodnotit. Má-li být naplněn smysl, k jakému se pracovní posudek vydává (jde o \"reference\" o zaměstnanci jeho příštímu zaměstnavateli), nemohl by zaměstnavatel v uvedeném (a obdobném) případě své povinnosti dostát a rozhodnutí soudu, kterým by mu byla přesto taková povinnost uložena, by bylo \"nerealizovatelné a nevykonatelné\". Žalovaná dále poukazuje na to, že podle ustanovení § 60 odst.4 zákoníku práce se může zaměstnanec domáhat ve lhůtě tří měsíců ode dne, kdy se dozvěděl o obsahu posudku o pracovní činnosti, u soudu, aby zaměstnavateli bylo uloženo posudek přiměřeně upravit. V případném sporu, který by byl zahájen se značným časovým odstupem po skončení pracovního poměru, by bylo obtížné \"nalezení objektivních skutečností\" a zaměstnavatel by mohl být vystaven nepřiměřenému riziku dalších možných soudních sporů. Přípustnost dovolání žalovaná dovozuje z ustanovení § 237 odst.1 písm.c) o.s.ř. a navrhuje, aby dovolací soud rozsudky soudů obou stupňů zrušil a aby věc vrátil soudu prvního stupně k dalšímu řízení.

Žalobce navrhl, aby dovolací soud dovolání zamítl. Uvedl, že žalovaná vykládá pojmy \"zaměstnavatel\" a \"zaměstnanec\" v rozporu \"s celým obsahem zákoníku práce\" restriktivně a že při přijetí takového názoru by nemohl žádnému zaměstnanci vzniknout nárok na vydání posudku o pracovní činnosti v případě okamžitého zrušení pracovního poměru. Prekluzi nebo promlčení nároku žalobce na vydání posudku o pracovní činnosti zákoník práce nestanoví a \"nepřichází tudíž v úvahu\". Podle názoru žalobce je třeba celou záležitost posuzovat zejména z hlediska dobrých mravů; v době od 14.5. do 13.9.1998 žalobce byl v pracovní neschopnosti a \"zápočtový list\" obdržel od žalované až dne 2.12.1998. Kdyby žalovaná chtěla dostát své povinnosti, mohla tak na základě žádosti ze dne 4.1.1999 dávno učinit.

Nejvyšší soud České republiky jako soud dovolací (§ 10a o.s.ř.) po zjištění, že dovolání proti pravomocnému rozsudku odvolacího soudu bylo podáno ve lhůtě uvedené v ustanovení § 240 odst. 1 o.s.ř., se nejprve zabýval otázkou přípustnosti dovolání.

Dovoláním lze napadnout pravomocná rozhodnutí odvolacího soudu, pokud to zákon připouští (§ 236 odst. 1 o.s.ř.).

Podmínky přípustnosti dovolání proti rozsudku odvolacího soudu jsou obsaženy v ustanovení § 237 o.s.ř.

Dovolání je přípustné proti rozsudku odvolacího soudu, jímž bylo změněno rozhodnutí soudu prvního stupně ve věci samé [§ 237 odst.1 písm.a) o.s.ř.] nebo jímž bylo potvrzeno rozhodnutí soudu prvního stupně, kterým soud prvního stupně rozhodl ve věci samé jinak než v dřívějším rozsudku (usnesení) proto, že byl vázán právním názorem odvolacího soudu, který dřívější rozhodnutí zrušil [§ 237 odst.1 písm.b) o.s.ř.], anebo jímž bylo potvrzeno rozhodnutí soudu prvního stupně, jestliže dovolání není přípustné podle ustanovení § 237 odst.1 písm.b) o.s.ř. a dovolací soud dospěje k závěru, že napadené rozhodnutí má ve věci samé po právní stránce zásadní význam [§ 237 odst.1 písm.c) o.s.ř.]; to neplatí ve věcech, v nichž dovoláním dotčeným výrokem bylo rozhodnuto o peněžitém plnění nepřevyšujícím 20.000,- Kč a v obchodních věcech 50.000,- Kč, přičemž se nepřihlíží k příslušenství pohledávky [§ 237 odst.2 písm.a) o.s.ř.], a ve věcech upravených zákonem o rodině, ledaže jde o rozsudek o omezení nebo zbavení rodičovské zodpovědnosti nebo pozastavení jejího výkonu, o určení (popření) rodičovství nebo o nezrušitelné osvojení [§ 237 odst.2 písm.b) o.s.ř.].

Rozhodnutí odvolacího soudu má po právní stránce zásadní význam ve smyslu ustanovení § 237

odst.1 písm.c) o.s.ř. zejména tehdy, řeší-li právní otázku, která v rozhodování dovolacího soudu dosud nebyla vyřešena nebo která je odvolacími soudy nebo dovolacím soudem rozhodována rozdílně, nebo řeší-li právní otázku v rozporu s hmotným právem [§ 237 odst.3 o.s.ř.].

Žalovaná dovoláním napadá rozsudek odvolacího soudu, jímž byl potvrzen rozsudek soudu prvního stupně ve věci samé. Podle ustanovení § 237 odst.1 písm.b) o.s.ř. dovolání není přípustné, a to již proto, že ve věci nebylo soudem prvního stupně vydáno rozhodnutí ve věci samé, které by bylo odvolacím soudem zrušeno. Dovolání žalované proti rozsudku odvolacího soudu tedy může být přípustné jen při splnění předpokladů uvedených v ustanovení § 237 odst.1 písm.c) o.s.ř.

Přípustnost dovolání podle ustanovení § 237 odst.1 písm.c) o.s.ř. není založena již tím, že dovolatel tvrdí, že napadené rozhodnutí odvolacího soudu má ve věci samé po právní stránce zásadní význam. Přípustnost dovolání nastává tehdy, jestliže dovolací soud za použití hledisek, příkladmo uvedených v ustanovení § 237 odst.3 o.s.ř., dospěje k závěru, že napadené rozhodnutí odvolacího soudu ve věci samé po právní stránce zásadní význam skutečně má.

V projednávané věci bylo soudy zjištěno (správnost uvedených zjištění dovolatelka nezpochybňuje), že žalobce pracoval u žalované na základě pracovní smlouvy ze dne 7.11.1995 ode dne 8.11.1995 až do dne 15.5.1998, kterým uplynula sjednaná doba trvání pracovního poměru. Žalobce dopisem ze dne 4.1.1999 žalovanou požádal o vydání posudku o pracovní činnosti, žalovaná však jeho žádosti odmítla vyhovět s odůvodněním, že je povinna vydat posudek o pracovní činnosti pouze svému zaměstnanci a že žalobce již není jejím zaměstnancem.

Za tohoto skutkového stavu bylo pro rozhodnutí odvolacího soudu mimo jiné významné posouzení právní otázky, zda zaměstnavatel ve smyslu ustanovení § 60 odst.1 zákoníku práce povinen vydat posudek o pracovní činnosti (pracovní posudek) svému (bývalému) zaměstnanci, který o něj požádal až po dni rozvázání (skončení) pracovního poměru. Uvedená právní otázka dosud nebyla v rozhodování dovolacího soudu vyřešena. Vzhledem k tomu, že její posouzení bylo pro rozhodnutí projednávané věci významné (určující), představuje napadený rozsudek odvolacího soudu rozhodnutí, které má ve věci samé po právní stránce zásadní význam. Dovolací soud proto dospěl k závěru, že dovolání proti rozsudku odvolacího soudu je přípustné podle ustanovení podle § 237 odst.1 písm.c) o.s.ř.

Po přezkoumání rozsudku odvolacího soudu ve smyslu ustanovení § 242 o.s.ř., které provedl bez jednání (§ 243a odst. 1 věta první o.s.ř.), Nejvyšší soud ČR dospěl k závěru, že dovolání není opodstatněné.

Projednávanou věc je třeba i v současné době posuzovat - vzhledem k tomu, že žalobce požádal žalovanou o vydání posudku o pracovní činnosti dopisem ze dne 4.1.1999 - podle zákona č. 65/1965 Sb., zákoníku práce, ve znění zákonů č. 88/1968 Sb., č. 153/1969 Sb., č. 100/1970 Sb., č. 20/1975 Sb., č. 72/1982 Sb., č. 111/1984 Sb., č. 22/1985 Sb., č. 52/1987 Sb., č. 98/1987 Sb., č. 188/1988 Sb., č. 3/1991 Sb., č. 297/1991 Sb., č. 231/1992 Sb., č. 264/1992 Sb., č. 590/1992 Sb., č. 37/1993 Sb., č. 74/1994 Sb., č. 118/1995 Sb., č. 287/1995 Sb. a č. 138/1996 Sb., tedy podle zákoníku práce ve znění účinném do 30.9.1999 (dále jen \"zák. práce\").

Pracovněprávní vztahy vznikají mezi zaměstnanci a zaměstnavateli (§ 1 odst.1 zák. práce). Pokud zákoník práce nebo jiný právní předpis nestanoví jinak, vznikají pracovněprávní vztahy nejdříve od uzavření pracovní smlouvy, dohody o provedení práce nebo dohody o pracovní činnosti, a zakládá-li se pracovní poměr zaměstnance volbou nebo jmenováním, nejdříve od jeho zvolení nebo jmenování (§ 1 odst.2 zák. práce).

Individuální pracovněprávní vztahy vznikají v souvislosti s výkonem nesamostatné (závislé) práce zaměstnance pro zaměstnavatele, tj. práce, kterou fyzická osoba neprovádí vlastním jménem a na vlastní riziko, ale pro zaměstnavatele, podle jeho pokynů a na jeho nebezpečí. Tyto vztahy - jak je

zřejmé ze zákoníku práce a z dalších právních předpisů - nevznikají jen mezi zaměstnancem a zaměstnavatelem, ale i mezi zaměstnavatelem a dalšími osobami, například pozůstalými nebo dědici po zemřelém zaměstnanci anebo ručitelem za závazek zaměstnance vůči zaměstnavateli. Pracovněprávní vztahy současně nejsou omezeny jen na dobu trvání pracovního poměru, dohody o provedení práce nebo dohody o pracovní činnosti. Ustanovení § 1 odst.2 zák. práce určuje zásadně počátek vzniku pracovněprávních vztahů (dobu, kdy nejdříve pracovněprávní vztahy vznikají), žádné ustanovení zákoníku práce nebo jiného právního předpisu však nestanoví dobu, do kdy pracovněprávní vztahy trvají (kdy nejpozději pracovněprávní vztahy končí); pracovněprávními vztahy jsou proto také například nároky zaměstnavatele nebo zaměstnance na náhradu škody podle ustanovení § 172 a násl. zák. práce, i když ke škodě došlo až po skončení pracovního poměru. Za pracovněprávní nelze ovšem považovat takové vztahy, které postrádají časový, místní a zejména věcný (vnitřní účelový) poměr k výkonu nesamostatné (závislé) práce, jako je například nájem služebního bytu zaměstnavatele zaměstnancem, půjčka poskytnutá zaměstnavatelem zaměstnanci apod. (srov. například odůvodnění rozsudku Nejvyššího soudu ze dne 18.12.2001 sp. zn. 21 Cdo 615/2001, uveřejněného pod č. 60 ve Sbírce soudních rozhodnutí a stanovisek, roč. 2002).

Podle ustanovení § 60 odst.1 věty první zák. práce požádá-li zaměstnanec zaměstnavatele o vydání posudku o pracovní činnosti (pracovní posudek), je zaměstnavatel povinen do 15 dnů zaměstnanci tento posudek vydat; zaměstnavatel však není povinen vydat mu jej dříve, než v době dvou měsíců před skončením jeho pracovního poměru.

Z citovaného ustanovení vyplývá, že zaměstnavatel je povinen vydat zaměstnanci posudek o jeho pracovní činnosti (pracovní posudek), jen jestliže ho o to zaměstnanec požádá; posudek o pracovní činnosti (pracovní posudek) je zaměstnavatel povinen vydat zaměstnanci do 15 dnů po obdržení žádosti, nejdříve však v době dvou měsíců před skončením pracovního poměru. V ustanovení § 60 odst.1 zák. práce a ani v jiném ustanovení zákoníku práce nebo jiného pracovněprávního předpisu není stanovena lhůta, v níž by zaměstnanec musel (pod sankcí prekluze nebo promlčení) uplatnit nárok na vydání posudku o pracovní činnosti (požádat o něj). Pracovněprávní předpisy nestanoví ani dobu, jejímž uplynutím by povinnost zaměstnavatele vydat zaměstnanci jím vyžádaný posudek o pracovní činnosti zanikla.

Nárok zaměstnance na vydání posudku o pracovní činnosti (pracovního posudku) je nepochybně nárokem z individuálních pracovněprávních vztahů; posudkem o pracovní činnosti (pracovním posudkem) jsou veškeré písemnosti týkající se hodnocení práce zaměstnance, jeho kvalifikace, schopností a dalších skutečností, které mají vztah k výkonu práce (srov. § 60 odst.1 větu druhou zák. práce), a nárok na jeho vydání tedy vychází z právního vztahu vzniklého v příčinné souvislosti s výkonem nesamostatné (závislé) práce zaměstnance pro zaměstnavatele.

Pracovněprávní vztahy nejsou - jak uvedeno již výše - omezeny jen na dobu trvání pracovního poměru. Nároky z pracovněprávních vztahů lze proto uplatnit i po skončení (rozvázání) pracovního poměru, ledaže by zákoník práce nebo jiný pracovněprávní předpis stanovil něco jiného. U nároku na vydání posudku o pracovní činnosti (pracovního posudku) jako nároku z pracovněprávního vztahu zákoník práce a ani jiný pracovněprávní předpis nic jiného nestanoví a zaměstnanec tedy může požádat zaměstnavatele o vydání posudku i po skončení (rozvázání) jejich pracovního poměru.

Opačný závěr nelze úspěšně dovozovat ani z toho, že se v ustanovení § 60 odst.1 zák. práce hovoří o \"zaměstnanci\" a \"zaměstnavateli\" a že - jak uvádí žalovaná v dovolání - \"bývalý zaměstnavatel není zaměstnavatelem a bývalý zaměstnanec není zaměstnancem\". Kdyby argumentace žalované měla být relevantní, pak by také mimo jiné muselo platit, že po skončení (rozvázání) pracovního poměru by tu již nebyla povinnost vydat již \"bývalému zaměstnanci\" potvrzení o zaměstnání, že \"bývalý zaměstnanec\" by se nemohl úspěšně domáhat, aby \"bývalému zaměstnavateli\" bylo uloženo přiměřeně upravit posudek o pracovní činnosti nebo potvrzení o zaměstnání, že \"bývalý zaměstnanec\" nemá povinnost nahradit \"bývalému zaměstnavateli\" škodu, kterou mu způsobil za

trvání pracovního poměru porušením povinností při plnění pracovních úkolů nebo v přímé souvislosti s ním, a že \"bývalý zaměstnavatel\" nemá povinnost nahradit \"bývalému zaměstnanci\" škodu vzniklou následkem pracovního úrazu, neboť i z pohledu ustanovení § 60 odst.2, § 60 odst. 4, § 172 odst.1 a § 190 odst.1 zák. práce (a samozřejmě mnoha dalších), v nichž se stejně jako v ustanovení § 60 odst.1 zák. práce hovoří o \"zaměstnanci\" a \"zaměstnavateli\", by muselo být přihlédnuto k tomu, že \"bývalý zaměstnavatel není zaměstnavatelem a bývalý zaměstnanec není zaměstnancem\". Žalobce v této souvislosti rovněž důvodně poukazuje na to, že před skončením pracovního poměru zaměstnanec dobře nemůže požádat o vydání posudku o pracovní činnosti (pracovního posudku), došlo-li k rozvázání pracovního poměru okamžitým zrušením nebo zrušením ve zkušební době (ať ze strany zaměstnance nebo zaměstnavatele). K ukončení pracovního poměru při jeho okamžitém zrušení dochází vždy a při zrušení ve zkušební době zpravidla dnem doručení příslušného právního úkonu druhému účastníku pracovního poměru a je prakticky, zejména tehdy, není-li druhému účastníku znám záměr uvedenými způsoby rozvázat pracovní poměr, vyloučeno, aby do té doby zaměstnanec mohl uplatnit svůj nárok; o vydání posudku o pracovní činnosti (pracovního posudku) by (samozřejmě v rozporu s ustanovením § 60 odst.1 zák. práce) zaměstnanec mohl do skončení pracovního poměru požádat jen při jeho rozvázání výpovědí nebo dohodou. Dovolací soud proto i za pomoci výkladových argumentů reductio ad absurdum a reductio ad impossible dovodil, že zaměstnanci nelze upřít nárok požádat zaměstnavatele o vydání posudku o pracovní činnosti (pracovního posudku) jen proto, že pracovní poměr účastníků již skončil.

S dovolatelkou lze souhlasit v tom, že pro zaměstnavatele může být v některých případech obtížné vypracovat řádný posudek o pracovní činnosti (pracovní posudek), zejména požádá-li zaměstnanec o jeho vydání až po uplynutí delší doby po skončení pracovního poměru. Na druhé straně je však třeba si uvědomit, že smyslem (účelem), proč je posudek o pracovní činnosti (pracovní posudek) zaměstnanci vůbec vydáván, je informovat toho, u něhož se zaměstnanec uchází o zaměstnání, o hodnocení práce zaměstnance dosavadním zaměstnavatelem, o kvalifikaci zaměstnance, jeho schopnostech a dalších skutečnostech, které mají vztah k výkonu práce, a že přijetí zaměstnance do nového zaměstnání může další zaměstnavatel důvodně podmiňovat předložením posudku o pracovní činnosti (pracovního posudku), vydaným předchozím zaměstnavatelem.

Podle ustanovení § 7 odst.2 zák. práce nikdo nesmí výkon práv a povinností vyplývajících z pracovního poměru zneužít na újmu jiného účastníka pracovněprávního vztahu.

Za **zneužití práva** ve smyslu citovaného ustanovení lze považovat takové jednání, jehož cílem není dosažení účelu a smyslu sledovaného právní normou, nýbrž které je v rozporu s ustálenými dobrými mravy vedeno přímým úmyslem způsobit jinému účastníku újmu (srov. rozsudek Nejvyššího soudu ze dne 28.6.2000 sp. zn. 21 Cdo 992/99, uveřejněný pod č. 126 v časopise Soudní judikatura, roč. 2000).

**Zneužití práva** ve smyslu ustanovení § 7 odst.2 zák. práce může představovat při splnění uvedených předpokladů i žádost zaměstnance o vydání posudku o pracovní činnosti (pracovního posudku). Podáním žádosti o vydání posudku o pracovní činnosti (pracovního posudku) může (bývalý) zaměstnanec zneužít právo například tehdy, jestliže o vydání posudku nežádá proto, aby jej předložil tomu, u něhož se uchází o zaměstnání, ale se záměrem (s úmyslem) způsobit tím zaměstnavateli v rozporu s ustálenými dobrými mravy újmu a dosažení výše uvedeného vlastního smyslu (účelu) sledovaného právní normou při vydávání posudků o pracovní činnosti (pracovních posudků) zůstává pro něho vedlejší a je z jeho hlediska bez významu.

Z uvedených důvodů dospěl Nejvyšší soud ČR k závěru, že zaměstnavatel je povinen vydat zaměstnanci na jeho žádost do 15 dnů posudek o pracovní činnosti (pracovní posudek), i když zaměstnanec o vydání posudku požádal až po skončení (rozvázání) jejich pracovního poměru, ledaže by jednání zaměstnance představovalo **zneužití práva** ve smyslu ustanovení § 7 odst.2 zák. práce.

V projednávané věci odvolací soud - jak vyplývá z odůvodnění napadeného rozsudku - dospěl k závěru, který je v souladu s výše uvedeným právním názorem, a v průběhu řízení před soudy nebyly

tvrzeny a ani jinak nevyšly najevo skutečnosti, které by mohly nasvědčovat tomu, že žalobce podáním žádosti o vydání posudku o pracovní činnosti zneužil právo ve smyslu ustanovení § 7 odst.2 zák. práce. Rozsudek odvolacího soudu je tedy z pohledu uplatněných dovolacích důvodů správný. Protože nebylo zjištěno (a ani dovolatelkou tvrzeno), že by rozsudek odvolacího soudu byl postižen některou z vad, uvedených v ustanovení § 229 odst.1 o.s.ř., § 229 odst.2 písm.a) a b) o.s.ř. nebo v § 229 odst.3 o.s.ř. anebo jinou vadou, která by mohla mít za následek nesprávné rozhodnutí ve věci, Nejvyšší soud České republiky dovolání žalované podle ustanovení § 243b odst. 2 části věty před středníkem o.s.ř. zamítl.

V dovolacím řízení vznikly žalobci v souvislosti se zastoupením advokátem náklady, které spočívají v odměně za zastupování ve výši 2.500,- Kč (srov. § 7 písm. c), § 10 odst.3 a § 18 odst.1 vyhlášky č. 484/2000 Sb. ve znění vyhlášky č. 49/2001 Sb.) a v paušální částce náhrady výdajů za jeden úkon právní služby ve výši 75,- Kč (srov. § 13 odst. 3 vyhlášky č. 177/1996 Sb. ve znění vyhlášek č. 235/1997 Sb. a č. 484/2000 Sb.), celkem 2.575,- Kč. Protože dovolání žalované bylo zamítnuto, soud jí ve smyslu ustanovení § 243b odst. 5 věty první, § 224 odst. 1 a § 142 odst. 1 o.s.ř. uložil, aby tyto náklady žalobci nahradila; ve smyslu ustanovení § 149 odst. 1 o.s.ř. je žalovaná povinna náhradu nákladů řízení zaplatit k rukám advokáta, který žalobce v tomto řízení zastupoval.


Proti tomuto rozsudku není přípustný opravný prostředek.

V Brně dne 22. dubna 2003

JUDr. Ljubomír Drápal, v. r.
předseda senátu

**Exhibit R: <u>judgment of the Supreme Court file no. 21 Cdo 624/2001 (in Czech only)</u>**

21 Cdo 624/2001

ROZSUDEK
JMÉNEM REPUBLIKY

Nejvyšší soud České republiky rozhodl v senátě složeném z předsedy JUDr. Ljubomíra Drápala a soudců JUDr. Zdeňka Novotného a JUDr. Mojmíra Putny v právní věci žalobce P. S., zastoupeného advokátem, proti žalovanému R. Š., zastoupenému advokátem, o vydání věci, vedené u Okresního soudu v Šumperku pod sp. zn. 9 C 251/94, o dovolání žalobce proti rozsudku Krajského soudu v Ostravě - pobočky v Olomouci ze dne 27. dubna 2000 č.j. 40 Co 936/98-127, takto:

Rozsudek krajského soudu se zrušuje a věc se vrací Krajskému soudu v Ostravě k dalšímu řízení.

O d ů v o d n ě n í :

Žalobce se domáhal, aby mu žalovaný vydal osobní automobil zn. Dacia 1310 Break. Žalobu zdůvodnil zejména tím, že uvedený osobní automobil, jehož je vlastníkem, předal na základě smlouvy ze dne 4.1.1994 žalovanému k provedení opravy; ve smlouvě byla sjednána \"generální oprava karoserie a lak\", cena opravy byla dohodnuta ve výši 35.000,- Kč a termín jejího dokončení 4.3.1994. Žalovaný mu dne 2.6.1994 zaslal fakturu č. 2/94, v níž vyčíslil cenu opravy ve výši 43.427,- Kč. Žalobce \"vzhledem k platnému smluvnímu ujednání\" odmítl tuto částku uhradit a žalovaný mu odmítl vydat osobní automobil. Na svém stanovisku žalovaný setrval i poté, co znalec Ing. I. K. stanovil cenu opravy ve výši 34.214,- Kč a co žalobce dopisem ze dne 29.7.1994 od smlouvy o opravě automobilu odstoupil.

Žalovaný namítal, že smlouva o opravě osobního automobilu byla \"dodatečně rozšířena o další práce - příprava a zajištění technické kontroly a kontroly na emise\", za něž nebyla sjednána cena, a že žalovaný sice nedodržel sjednaný termín opravy, ale žalobce \"nijak dodržení termínu neurgoval\". Dne 31.5.1994 byl žalovaný připraven předat opravený automobil žalobci a požadoval přitom zaplacení ceny opravy ve výši 40.698,- Kč, neboť hodlal žalobci \"poskytnout slevu z ceny za překročení termínu\". Žalobce mu však byl ochoten zaplatit pouze 24.000,- Kč, žalovaný proto \"vzal s jeho vědomím auto zpět jako zajištění dlužné částky\" a následně vystavil žalobci fakturu \"na celou cenu opravy a všech vynaložených nákladů\". Odstoupení od smlouvy provedené dopisem žalobce ze dne 29.7.1994 považuje žalovaný za \"bezpředmětné\", neboť bylo učiněno \"za dva měsíce po dokončení opravy\". Žalovaný současně požadoval, aby žalobci bylo uloženo zaplatit mu na ceně opravy 43.427,- Kč s poplatkem z prodlení ve výši 0,5% z částky za každý den prodlení a poplatek za garážování vozidla ve výši 5,- Kč za každý den od 1.6.1994 \"až do dne vydání\".

Okresní soud v Šumperku - poté, co vzájemnou žalobu žalovaného vyloučil \"k samostatnému řízení\" - rozsudkem ze dne 7.9.1995 č.j. 9 C 251/94-58 žalobě vyhověl a rozhodl, že žalovaný je povinen zaplatit žalobci na náhradě nákladů řízení 3.433,- Kč. Soud prvního stupně dospěl k závěru, že žalovaný je povinen vydat žalobci sporný osobní automobil, neboť žalobce prokázal k této věci své vlastnické právo a žalovaný tím, že \"váže vydání automobilu na zaplacení ceny opravy\", neoprávněně zasahuje do vlastnického práva žalobce.

K odvolání žalovaného Krajský soud v Ostravě - pobočka v Olomouci usnesením ze dne 17.6.1996 č.j. 40 Co 26/96-69 rozsudek soudu prvního stupně zrušil a věc vrátil tomuto soudu k dalšímu řízení. Odvolací soud dovodil, že žalovaný odmítá vydat žalobci sporný osobní automobil s poukazem na zadržovací právo podle ustanovení § 151s obč. zák., a soudu prvního stupně uložil, aby se v dalším řízení zabýval tím, zda žalovaný zadržuje žalobcův osobní automobil v souladu se zákonem.

Okresní soud v Šumperku poté rozsudkem ze dne 18.6.1998 č.j. 9 C 251/94-102 žalobě znovu vyhověl a rozhodl, že žalovaný je povinen zaplatit žalobci na náhradě nákladů řízení 3.464,- Kč. Vycházel přitom ze zjištění, že mezi účastníky \"probíhá soudní řízení\" o zaplacení ceny za opravu žalobcova osobního automobilu. Vzhledem k tomu, že žalobce \"se opakovaně pokoušel\" zaplatit alespoň část ceny, kterou žalovaný účtuje za opravu automobilu (částku 34.000,- Kč), což žalovaný odmítl, a že žalovaný automobil skladuje od roku 1994 na dvoře a automobil \"s léty ztrácí výrazně na své hodnotě\", žalovaný nemůže podle názoru soudu prvního stupně \"spravedlivě uplatňovat své zadržovací právo\". Soud prvního stupně dospěl k závěru, že žalovaný zadržuje žalobci jeho osobní automobil \"svémocně\" a že je proto povinen mu tuto věc vydat.

K odvolání žalovaného Krajský soud v Ostravě - pobočka v Olomouci rozsudkem ze dne 27.4.2000 č.j. 40 Co 936/98-127 rozsudek soudu prvního stupně změnil tak, že žalobu zamítl a že žádný z účastníků nemá právo na náhradu nákladů řízení před soudem prvního stupně, a rozhodl, že žalobce je povinen zaplatit žalovanému na náhradě nákladů odvolacího řízení 3.984,- Kč k rukám advokáta. Odvolací soud - poté, co doplnil dokazování - vycházel ze zjištění, že mezi účastníky \"byl založen závazkový právní vztah ze smlouvy o opravě předmětného vozidla\" a že žalovaný má vůči žalobci \"z titulu provedené opravy vozidla\" peněžitou pohledávku, kterou mu vyúčtoval ve výši 43.427,- Kč a která se stala - bez ohledu na

to, že žalobce namítal nesprávnost její výše - splatnou dnem 9.6.1994. Žalobce za této situace důvodně uplatnil k žalobcově osobnímu automobilu zadržovací právo podle ustanovení § 151s odst.1 obč. zák. Námitku žalobce, že \"byl připraven svůj finanční závazek ve změněné podobě uhradit\" a složil \"finanční částku\" do notářské úschovy, odvolací soud odmítl s odůvodněním, že \"toto opatření nevedlo ani k částečné úhradě částky, vyčíslené za opravu vozidla\", neboť \"dispoziční právo s takto uloženými prostředky měl nadále žalobce\". Vzhledem k tomu, že žalobce neuspokojil zajištěnou pohledávku a ani neposkytl dostatečnou jistotu, zadržovací právo nezaniklo žádným ze způsobů uvedených v ustanovení § 151v obč. zák.; žalovaný proto nemůže být zavázán k vydání sporného osobního automobilu žalobci.

Proti tomuto rozsudku odvolacího soudu podal žalobce dovolání. Namítá v první řadě, že uplatnění zadržovacího práva žalovaným muselo předcházet řádné uzavření smlouvy o dílo a následné splnění povinností žalovaným. Žalovaný však v rozporu s ustanovením § 636 obč. zák. překročil cenu opravy určenou odhadem, aniž by na to žalobce písemně upozornil a sdělil mu novou cenu. Nemůže proto po žalobci důvodně požadovat více než sjednaných 35.000,- Kč a od této částky je třeba odečíst slevu za vady laku ve výši 8.056,- Kč a slevu za pozdní dokončení díla ve výši \"asi 2.000,- Kč\". Žalobce opakovaně nabízel žalovanému úhradu části jím požadovaného plnění (a to i ve větším rozsahu, než na ně má podle názoru žalobce nárok) s tím, aby mu vydal automobil a aby o zbytek jím účtované ceny vedli spor, avšak žalovaný jeho nabídku vždy odmítl; žalobce takové jednání žalovaného považuje za odporující ustanovení § 3 obč. zák. Žalobce dále odvolacímu soudu vytýká, že se nezabýval otázkou platnosti smlouvy o dílo, sjednané mezi účastníky, a že nepřihlédl k tomu, že dopisem ze dne 29.7.1994 žalobce od smlouvy o dílo odstoupil. Žalobce rovněž nesouhlasí s názorem odvolacího soudu, že by bylo \"bez významu složení peněz do notářské a později soudní úschovy\". Žalobce dal totiž \"pokyn\", že žalovaný si peníze může vyzvednout \"oproti předání vozidla\", a žalovaný měl tedy možnost si převzít \"velmi podstatnou část požadovaných peněz\"; takovýto postup je podle názoru žalobce \"relevantní\". Žalovaný uplatnil zadržovací právo neoprávněně, neboť žalobce mu nabízel za opravu automobilu \"zcela odpovídající částku\". Využití zadržovacího práva sice není zákonem omezeno pro \"nějakou minimální částku\", ale \"tato částka je limitována § 3 obč. zák. stejně jako celkový postup\". Vzhledem k tomu, že žalovaný jako zhotovitel díla \"řadu nesrovnalostí způsobil a vyvolal\", že opravu neprovedl řádně a ani včas, že nesplnil svou oznamovací povinnost podle ustanovení § 636 obč. zák. a že neoprávněně požadoval na ceně opravy 43.427,- Kč, a při \"uvážení nejasností kolem platnosti smlouvy o dílo\" má žalobce za to, že žalovaný uplatnil zadržovací právo v rozporu s ustanovením § 3 obč. zák. a že mu protiprávním jednáním způsobil škodu. Žalovaný navíc osobní automobil zadržuje, i když žalobce nikdy nevyrozuměl ve smyslu ustanovení § 151s odst. 4 obč. zák. o zadržení a důvodech. Po \"procesní stránce\" žalobce odvolacímu soudu vytýká, že překročil meze odvolacího přezkumu, když dokazování \"značně doplnil a přehodnotil\", což vedlo k tomu, že žalobci byla odepřena \"možnost přezkumu názoru soudu\"; řízení před odvolacím soudem je proto postiženo vadou podle ustanovení § 237 odst.1 písm.f) o.s.ř. Žalobce navrhl, aby dovolací soud zrušil rozsudek odvolacího soudu a aby mu věc vrátil k dalšímu řízení.

Žalovaný navrhl, aby dovolací soud dovolání zamítl. Námitka žalobce o tom, že řízení před odvolacím soudem je postiženo vadou uvedenou v ustanovení § 237 odst.1 písm.f) o.s.ř., není podle jeho názoru důvodná, neboť dokazování bylo doplněno v souladu s ustanovením § 213 o.s.ř. a v dovolacím řízení nešlo \"o zásadní nová skutková zjištění\". Opodstatněná nejsou ani další námitky žalobce. Dokazováním bylo zjištěno, že žalovaný dne 31.5.1994 žalobci cenu opravy po odstranění vytčených vad řádně vyúčtoval, přičemž z listiny sepsané dne 31.5.1994 a podepsané účastníky jednoznačně vyplynulo, že automobil zůstane v držení žalovaného, neboť nedošlo k dohodě o výši ceny. Poukazování žalobce na ustanovení § 3 obč. zák. považuje žalovaný za snahu umožnit mu dosáhnout vydání věci, aniž by musel zaplatit za opravu jakoukoliv částku.

Nejvyšší soud České republiky jako soud dovolací (§ 10a o.s.ř.) věc projednal podle Občanského soudního řádu ve znění účinném do 31.12.2000 - dále jen \"o.s.ř.\" (srov. Část dvanáctou, Hlavu I, bod 17. zákona č. 30/2000 Sb., kterým se mění zákon č. 99/1963 Sb., občanský soudní řád, ve znění pozdějších předpisů, a některé další zákony). Po zjištění, že dovolání proti pravomocnému rozsudku odvolacího soudu bylo podáno ve lhůtě uvedené v ustanovení § 240 odst. 1 o.s.ř. a že proti rozsudku odvolacího soudu je podle ustanovení § 238 odst. 1 písm. a) o.s.ř. dovolání přípustné, přezkoumal napadený rozsudek bez nařízení jednání (§ 243a odst. 1 věta první o.s.ř.) a dospěl k závěru, že vadou uvedenou v ustanovení § 237 odst.1 písm.f) o.s.ř. není postižen a že dovolání je zčásti opodstatněné.

Podle ustanovení § 237 odst.1 písm.f) a § 241 odst.3 písm.a) o.s.ř. je dovolání proti rozhodnutí odvolacího soudu přípustné a důvodné, jestliže účastníku řízení byla v průběhu řízení nesprávným postupem soudu odňata možnost jednat před soudem.

Odnětím možnosti jednat před soudem se ve smyslu ustanovení § 237 odst.1 písm.f) o.s.ř. rozumí postup soudu, jímž znemožnil účastníku řízení realizaci procesních práv, která mu občanský soudní řád dává, například právo účastnit se jednání, činit přednesy, navrhovat důkazy apod. (srov. například usnesení Nejvyššího soudu ze dne 23.4.1997 sp. zn. 2 Cdon 1420/96, uveřejněné pod č. 1 v časopise Soudní judikatura, roč. 1997). O vadu ve smyslu ustanovení § 237 odst. 1 písm. f) o.s.ř. jde přitom jen

tehdy, jestliže šlo o postup nesprávný (uvažováno z hlediska postupu soudu určeného zákonem nebo dalšími obecně závaznými právními předpisy) a jestliže se postup soudu projevil v průběhu řízení a nikoliv jen při rozhodování.

V posuzovaném případě žalobce ani netvrdí, že by mu postupem odvolacího soudu byla znemožněna realizace procesních práv, která mu občanský soudní řád dává. Naplnění vady podle ustanovení § 237 odst.1 písm.f) o.s.ř. spatřuje v tom, že odvolací soud dokazování \"značně doplnil a přehodnotil\", což mělo vést k tomu, že mu byla odepřena \"možnost přezkumu názoru soudu\".

Podle ustanovení § 213 odst. 1 o.s.ř. odvolací soud není vázán skutkovým stavem, jak jej zjistil soud prvního stupně. Podle ustanovení § 213 odst.2 věty první o.s.ř. odvolací soud může opakovat dokazování nebo je i doplnit, nejde-li o rozsáhlejší doplnění a lze-li je provést bez průtahů.

Doplnil-li odvolací soud dokazování způsobem, který mu ustanovení § 213 odst.2 věty první o.s.ř. neumožňuje, nelze v tom spatřovat naplnění vady podle ustanovení § 237 odst.1 písm.f) o.s.ř., neboť takový postup nemůže mít sám o sobě za následek, že by účastníku byla znemožněna realizace procesních práv, která mu občanský soudní řád dává. V případě, že odvolací soud provedl v rozporu s ustanovením § 213 odst.2 věty první o.s.ř. rozsáhlejší doplnění dokazování, neznemožnil tím bez dalšího účastníkům řízení realizovat jejich procesní práva, jestliže jim umožnil účastnit se jednání, činit přednesy, navrhovat důkazy, vyjadřovat se k provedeným důkazům a jiným podobným způsobem vykázat vliv na řízení. Skutečnosti uváděné dovolatelem proto nepředstavují naplnění vady podle ustanovení § 237 odst.1 písm.f) o.s.ř.

Je-li ke správnému rozhodnutí o věci samé zapotřebí podstatných (pro rozhodnutí zásadně významných) skutkových zjištění, která neučinil soud prvního stupně, popřípadě která tento soud učinil, ale vzhledem k nesprávnému právnímu názoru, který zaujal, na nich své rozhodnutí nezaložil, jde o vadu řízení, která mohla mít za následek nesprávné rozhodnutí ve věci, jestliže odvolací soud nedostatek těchto rozhodujících (pro rozhodnutí o věci samé zásadně významných) skutkových zjištění nahradí vlastním doplněním dokazování podle § 213 odst. 2 o.s.ř. (srov. právní názor vyslovený v rozsudku Nejvyššího soudu ze dne 24.3.1999 sp.zn. 21 Cdo 1901/98, uveřejněný pod č. 30 ve Sbírce soudních rozhodnutí a stanovisek, roč. 2000). V posuzovaném případě se však o takovou situaci nejedná.

Ze srovnání výsledků dokazování před soudem prvního stupně s doplněním dokazování odvolacím soudem vyplývá, že před odvolacím soudem nebyla zjištěna žádná nová podstatná (pro rozhodnutí o věci samé zásadně významná) skutková zjištění, která by nebyla známa v řízení před soudem prvního stupně nebo která by nebyla mezi účastníky nesporná. Akcentoval-li soud prvního stupně pro právní posouzení věci jiná skutková zjištění než odvolací soud, bylo to důsledkem odlišného právního názoru, než jaký ve věci zaujal odvolací soud. Doplnění dokazování odvolacím soudem za této situace nepřekročilo rámec daný ustanovením § 213 odst.2 věty první o.s.ř. a řízení před odvolacím soudem nemůže být z tohoto důvodu postiženo vadou, která by měla za následek nesprávné rozhodnutí ve věci. Uvedeným postupem odvolací soud neodepřel žalobci \"možnost přezkumu názoru soudu\"; tím, že odvolací soud dospěl k jinému právnímu názoru než soud prvního stupně a že z tohoto důvodu změnil rozsudek soudu prvního stupně, založil přípustnost dovolání proti svému rozsudku [§ 238 odst.1 písm.a) o.s.ř.] a poskytl tím žalobci možnost domáhat se přezkumu názoru odvolacího soudu cestou dovolání.

Z hlediska skutkového stavu bylo v projednávané věci mimo jiné zjištěno (správnost těchto zjištění dovolatel nenapadá), že žalobce na základě smlouvy ze dne 4.1.1994 předal žalovanému svůj osobní automobil zn. Dacia 1310 Break k provedení sjednané opravy. Dne 31.5.1994 žalovaný hodlal po provedení opravy osobní automobil vrátit žalobci a požádal zaplacení ceny opravy ve výši 41.028,- Kč. Vzhledem k tomu, že žalobce odmítl tuto částku zaplatit, žalovaný osobní automobil zadržel k zajištění své pohledávky za žalobcem.

Otázku vzniku zadržovacího práva žalovaného k osobnímu automobilu zn. Dacia 1310 Break je třeba i v současné době posuzovat - s ohledem na to, kdy žalovaný zadržovací právo uplatnil - podle zákona č. 40/1964 Sb., občanský zákoník, ve znění zákonů č. 58/1969 Sb., č. 131/1982 Sb., č. 188/1988 Sb., č. 87/1990 Sb., č. 105/1990 Sb., č. 116/1990 Sb., č. 87/1991 Sb., č. 509/1991 Sb. a č. 264/1992 Sb., tedy podle občanského zákoníku ve znění účinném do 31.12.1994 (dále jen \"obč. zák.\").

Podle ustanovení § 151s odst.1 obč. zák. kdo je povinen vydat movitou věc, může ji zadržet, aby zajistil svou splatnou peněžitou pohledávku vůči tomu, jemuž je jinak povinen věc vydat. Nelze však zadržovat věc svémocně nebo lstivě odňatou.

Podle ustanovení § 151s odst.4 obč. zák. je věřitel povinen bez zbytečného odkladu vyrozumět dlužníka o zadržení věci a o jeho důvodech.

Podle ustanovení § 151u obč. zák. má věřitel na základě zadržovacího práva při výkonu soudního rozhodnutí právo na přednostní uspokojení z výtěžku zadržované věci před jiným věřitelem, a to i zástavním věřitelem.

Podle ustanovení § 151v obč. zák. zástavní právo zanikne uspokojením zajištěné pohledávky nebo poskytnutím dostatečné jistoty.

Zadržovací právo slouží k zajištění pohledávky věřitele tím, že mu umožňuje, aby si ponechal movitou věc dlužníka, kterou by mu byl povinen jinak vydat, a aby tímto způsobem přiměl dlužníka alespoň k dodatečnému splnění jeho povinnosti. Zadržovací právo je současně prostředkem k uhrazení věřitelovy pohledávky za dlužníkem, neboť poskytuje věřiteli při soudním výkonu rozhodnutí právo na přednostní uspokojení z výtěžku prodeje zadržované věci před jinými věřiteli dlužníka.

Zadržovacím právem podle ustanovení § 151s odst.1 obč. zák. může věřitel zajistit jen svou splatnou peněžitou pohledávku a pouze vůči dlužníku, jemuž by byl jinak povinen zadrženou movitou věc vydat. Zadržovací právo může věřitel uplatnit k zajištění jakékoliv své splatné peněžité pohledávky za tímto dlužníkem, tedy nimo jiné bez ohledu na to, z jakého důvodu (titulu) mu pohledávka vznikla, zda souvisí se zadrženou movitou věcí a o jak vysokou pohledávku jde.

V posuzovaném případě žalovaný uplatnil zadržovací právo k movité věci žalobce (k jeho osobnímu automobilu zn. Dacia 1310 Break) za účelem zajištění pohledávky, která mu vůči žalobci vznikla z důvodu provedení opravy této věci. Vzhledem k tomu, že podle výsledků dokazování nejsou pochybnosti o tom, že žalobce byl osobou, které by byl žalovaný jinak povinen věc vydat, že pohledávka za žalobcem spočívala v peněžitém plnění a že šlo o splatnou pohledávku, dospěl odvolací soud ke správnému závěru, že žalovaný uplatnil zadržovací právo v souladu s ustanovením § 151s odst.1 obč. zák.

Mezi účastníky - jak vyplývá z obsahu spisu - nebylo pochyb o tom, že žalovaný má vůči žalobci z důvodu provedení opravy osobního automobilu pohledávku. Sporné mezi nimi bylo pouze to, jak vysoká je tato pohledávka, tedy kolik je žalobce povinen za provedenou opravu žalovanému zaplatit. Otázka výše pohledávky, která je předmětem jiného řízení před soudem, však nebyla pro důvodnost uplatnění zadržovacího práva žalovaným významná, neboť ustanovení § 151s odst.1 obč. zák. věřiteli umožňuje - jak výše uvedeno - použít zadržovací právo ve prospěch své splatné peněžité pohledávku bez ohledu na její výši. Tím, zda žalovaný při určení ceny opravy postupoval v souladu s ustanovením § 636 obč. zák., zda žalobce má právo na slevu z ceny opravy a jak byly v tomto směru plněny další povinnosti ze smlouvy ze dne 4.1.1994, proto nebylo potřebné se v tomto řízení zabývat.

Námitka žalobce, že se odvolací soud nesprávně nezabýval otázkou platnosti smlouvy ze dne 4.1.1994 a odstoupením od této smlouvy, které žalobce provedl dopisem ze dne 29.7.1994, není opodstatněná. I kdyby totiž byla smlouva ze dne 4.1.1994 neplatná nebo kdyby byla v důsledku účinného odstoupení zrušena, je nepochybné, že i za této situace by žalovaný měl vůči žalobci splatnou peněžitou pohledávku. Nešlo by sice o pohledávku, která by měla původ ve smluvě účastníků, ale vyplývala by - vzhledem k tomu, že by za tohoto stavu věci bylo ze strany žalovaného plněno z neplatného právního úkonu nebo z právního důvodu, který odpadl - ze závazku z bezdůvodného obohacení (srov. § 451 a § 458 odst.1 obč. zák.). Rovněž v těchto případech žalovaný mohl v souladu se zákonem uplatnit zadržovací právo k osobnímu automobilu zn. Dacia 1310 Break, neboť věřitel může - jak výše uvedeno - využít zadržovacího práva bez ohledu na to, z jakého důvodu (titulu) mu splatná pohledávka za dlužníkem vznikla.

Žalobce namítá, že v rozporu s ustanovením § 151s odst.4 obč. zák. nebyl vyrozuměn o zadržení věci a o jeho důvodech. Nehledě k tomu, že vyrozumění o zadržení věci a o jeho důvodech není předpokladem pro vznik zadržovacího práva (smyslem ustanovení § 151s odst.4 obč. zák. je splnění informační povinnosti vůči dlužníku), neodpovídá toto tvrzení skutečnosti, neboť již z obsahu žaloby je zřejmé, že byl o zadržení věci a o jeho důvodech informován, a tento závěr potvrzují i další výsledky dokazování.

Se žalobcem nelze souhlasit ani v tom, že by žalovaný při uplatnění zadržovacího práva postupoval v rozporu s ustanovením § 3 odst.1 obč. zák.

Podle ustanovení § 3 odst.1 obč. zák. výkon práv a povinností vyplývajících z občanskoprávních vztahů nesmí bez právního důvodu zasahovat do práv a oprávněných zájmů jiných a nesmí být v rozporu s dobrými mravy.

Žalobce spatřuje jednání žalovaného odporující ustanovení § 3 odst.1 obč. zák. v tom, že mu opakovaně nabízel úhradu části jím požadovaného plnění (a to i ve větším rozsahu, než na ně má podle názoru žalobce nárok) s tím, aby mu vydal automobil a aby o zbytek jím účtované ceny vedli spor, avšak žalovaný jeho nabídku vždy odmítl, a v tom, že žalovaný jako zhotovitel díla \"řadu nesrovnalostí způsobil a vyvolal\", že opravu neprovedl řádně a ani včas, že nesplnil svou oznamovací povinnost podle ustanovení § 636 obč. zák. a že neoprávněně požadoval na ceně opravy 43.427,- Kč, a poukazoval na \"nejasnosti kolem platnosti smlouvy o dílo\".

Při úvaze, v čem lze spatřovat jednání, které je v rozporu s ustanovením § 3 odst.1 obč. zák., je třeba vzít v úvahu, že k realizaci práva a naplňování jeho obsahu, dochází - obecně vzato - jednak

prostřednictvím veřejnoprávních aktů (vydáváním individuálních aktů aplikace práva), vydáváním aktů řízení - individuálních i normativních interních instrukcí a dále - jako je tomu v posuzované věci - výkonem práva na základě soukromoprávních úkonů. Vlastní výkon práva je třeba důsledně odlišovat od šířeji pojímaného dovoleného chování podle práva vyjádřeného zásadou, že právem každého je činit, co není zákonem zakázáno, a že nikdo nesmí být nucen činit, co zákon neukládá (srov. čl. 2 odst. 4 Ústavy České republiky vyhlášené pod č. 1/1993 Sb.), neboť bezpochyby na každé chování, které není protiprávní a které je tak řečeno bezúhonné, může představovat uplatňování subjektivního práva jako takového.

V občanskoprávních vztazích, které se vyznačují rovností práv účastníků, je výkonem práva převážně míněno uskutečňování subjektivního práva (dovoleným) chováním jeho subjektu, které spočívá v konání právních úkonů a vyžadování splnění povinnosti od druhého, včetně uplatnění práva na státní ochranu ohroženého či poškozeného subjektivního práva (srov. Knapp, V.: Teorie práva, 1. vydání, Praha, C.H.Beck 1995, str.181 a násl.). Subjektivní právo lze uskutečňovat, mimo výše uvedeného, rovněž dovoleným chováním, jemuž sice nelze přiznat charakter právního úkonu, protože samo o sobě nesměřuje ke vzniku, změně nebo zániku právních vztahů, a kterým ani není vyžadováno splnění povinnosti od druhého, ale které se uskutečňuje s vůlí způsobit právní následky, popř. vytvořit předpoklady pro další právní postup.

Objektivní právo předpokládá, že výkon subjektivního práva směřuje k uskutečnění cíle sledovaného právní normou. Z logiky věci, dané vzájemně opačným postavením zúčastněných stran, vyplývá, že výkon subjektivního práva (vynucení splnění subjektivní povinnosti) může mít někdy za následek újmu na straně povinného subjektu, což by bylo možné vnímat jako rozpor s obecně přijímaným právním pravidlem, že každý se má chovat tak, aby nerušil práva jiného. Nelze mít pochybnosti o tom, že uplatnění zadržovacího práva podle ustanovení § 151s obč. zák. bývá pro účastníky z hlediska jejich zájmů nestejně výhodné, neboť výkon práva zadržet movitou věc k zajištění pohledávky věřitelem má pro dlužníka nikoliv ojediněle za následek vznik určité újmy.

Protože však výkon práva vylučuje protiprávnost, protože stejný stav nemůže být současně stavem právním i právu se příčícím, je třeba vycházet ze zásady \"neminem laedit, qui iure sui utitur\"; chování, které směřuje k zákonem předpokládanému výsledku, je třeba tedy považovat za dovolené i tehdy, je-li jeho (eventuelním) vedlejším následkem vznik majetkové, popř. nemajetkové újmy na straně dalšího účastníka právního vztahu.

Výkon práva, jak již bylo uvedeno, postrádá protiprávnosti, děje-li se v souladu s právem. Objektivní právo předpokládá, že výkon práva směřuje k uskutečnění cíle sledovaného právní normou. Jestliže však jednající sice koná v mezích svého práva, ale prostřednictvím realizace chování jinak právem dovoleného sleduje poškození druhého účastníka právního vztahu, jedná se sice o výkon práva, ale o výkon práva závadný, kdy jednání a jeho výsledek se snad zcela shodují s výsledkem, který mělo právo na zřeteli, ale kdy jednání bylo učiněno nikoliv za účelem dosažení výsledků, k jejichž docílení byla jednajícímu propůjčena ochrana, nýbrž aby bylo dosaženo výsledků jiných, které jsou jinak považovány za nevítaný vedlejší následek tohoto jednání. Takový výkon práva, i když je se zákonem formálně v souladu, je ve skutečnosti výkonem práva jen zdánlivým; účelem zde není vykonat právo, ale poškodit jiného, neboť jednající v rozporu s ustálenými dobrými mravy je přímo veden úmyslem způsobit jinému účastníku újmu, zatímco dosažení vlastního smyslu a účelu sledovaného právní normou zůstává pro něho vedlejší a je z hlediska jednajícího bez významu. Toto zneužití výkonu subjektivního práva (označované rovněž jako šikanózní výkon práva), kdy je výkon práva ve skutečnosti toliko prostředkem umožňujícím poškodit jiného účastníka občanskoprávních vztahů, ustanovení § 3 odst. 1 obč. zák. nepřipouští.

V posuzovaném případě nelze z okolností uváděných žalobcem dovozovat, že by žalovaný výkonem zadržovacího práva nesledoval zajištění své splatné peněžité pohledávky za žalobcem a že by tedy skutečným cílem jeho chování bylo jen poškození žalobce. Z výsledků dokazování nevyplývá, že žalovaný byl při zadržení osobního automobilu přímo veden úmyslem způsobit žalobci škodu nebo jinou újmu. Došlo-li u žalobce ke škodě, jde spíše jen o nevítaný vedlejší následek jednání žalovaného, což samo o sobě neumožňuje učinit závěr o **zneužití práva** nebo jednání v rozporu s dobrými mravy.

Při posouzení následků uplatnění zadržovacího práva žalovaným na majetkovou sféru žalobce nelze pominout ani to, že žalobce mohl ještě před vyřešením sporu se žalovaným o výši ceny za opravu osobního automobilu dosáhnout zániku zadržovacího práva a tím i vydání žalovaným zadrženého automobilu, a to již vzápětí poté, co žalovaný automobil zadržel, a že této možnosti nevyužil.

Zadržovací právo zaniká - jak vyplývá z ustanovení § 151n obč. zák. - nejen tím, že dlužník zajištěnou pohledávku splní, ale i tím, že dlužník poskytne věřiteli dostatečnou jistotu. Jistotu lze poskytnout zejména (srov. § 555 až 557 obč. zák.) zřízením zástavního práva, ručením, které převezme způsobilý ručitel, zajišťovacím postoupením pohledávky (například z vkladů v bankách), zajišťovacím převodem práva a dalšími právními prostředky, které slouží k zajištění pohledávek. Jistota je dostatečná tehdy, jestliže odpovídá zajištěné pohledávce. Kdyby žalobce dal žalovanému dostatečnou jistotu, dosáhl by tím

- aniž by mu musel poskytnout plnění, na něž podle jeho názoru nemá žalovaný nárok - zániku zadržovacího práva a pro něj nepříznivé následky, na které nyní poukazuje (nebo alespoň některé z nich), by nemusely nastat.

Z výsledků dokazování vyplývá, že žalobce dne 3.2.1995 uložil do úschovy u notářky JUDr. V. A. částku 29.878,50 Kč s tím, že má být vydána žalovanému \"proti předložení listiny podepsané žalobcem, kdy podpis na této listině by byl úředně ověřen, obsahující souhlas s vydáním této částky z notářské úschovy\".

S názorem odvolacího soudu, že uvedené uložení peněz do notářské úschovy bylo pro rozhodnutí tohoto sporu bezvýznamné, dovolací soud souhlasí.

Notář přijme do úschovy peníze, jestliže mu je předá žadatel v souvislosti s jeho činností za účelem vydání další osobě. Peníze vydá notář tomu, komu mají být vydány. Nepodaří-li se mu peníze vydat, vrátí je žadateli [srov. § 85 odst.1 a § 87 zákona č. 358/1992 Sb., o notářích a jejich činnosti (notářský řád) ve znění pozdějších předpisů]. Účelem úschovy peněz u notáře je obstarání předání peněz určenému příjemci. V případě, že určený příjemce peníze nepřevezme (lhostejno z jakých důvodů), nemá to pro něj žádné právní následky a peníze musí být vráceny jejich složiteli. Vzhledem k tomu, že žalovaný peníze pro něj uložené u notářky JUDr. V. A. skutečně nepřevzal a že podle zákona uložení peněz u notáře a ani jejich nepřijetí určeným příjemcem nemá pro právní vztahy mezi účastníky žádné následky, nemohlo tímto uložením zadržovací právo žalovaného zaniknout a toto uložení nemohlo mít pro právní vztahy účastníků ani jiné následky.

Odvolací soud dospěl mimo jiné k závěru, že zadržovací právo žalovaného k osobnímu automobilu zn. Dacia 1310 Break nezaniklo splněním zajištěné pohledávky.

Z výsledků dokazování je nepochybné, že žalobce na pohledávku žalobce nic nezaplatil. Splněním však peněžitý dluh zaniká nejen jeho zaplacením, ale i uložením peněz do úřední úschovy; účinky splnění v tomto případě nastávají, nemůže-li dlužník splnit svůj závazek věřiteli, protože věřitel je nepřítomen nebo je v prodlení, nebo má-li dlužník důvodné pochybnosti, kdo je věřitelem, nebo věřitele nezná (§ 568 obč. zák.). Věřitel je v prodlení, jestliže nepřijal řádně nabídnuté plnění nebo neposkytl v době plnění potřebnou součinnost ke splnění dluhu (§ 522 věta první obč. zák.). Úřední úschovou se rozumí úschova u soudu (srov. § 185a a násl. o.s.ř.).

Zadržovací právo podle ustanovení § 151s odst.1 obč. zák. slouží - jak uvedeno již výše - k zajištění splatné peněžité pohledávky, a to pohledávky ve skutečné výši (tj. v takové výši, jakou je dlužník poprávu povinen věřiteli zaplatit) a nikoliv ve výši věřitelem jen tvrzené (tj. v takové výši, o níž se věřitel jen domnívá, že na ni má nárok).

V posuzovaném případě žalobce v průběhu odvolacího řízení (srov. jeho vyjádření k odvolání ze dne 17.9.1998) tvrdil, že dne 10.9.1998 uložil částku 29.875,50 Kč do úschovy u Okresního soudu v Olomouci. Učinil-li tak proto, že žalovaný byl jako věřitel v prodlení, představovala-li uložená částka plnění, odpovídající jeho skutečnému dluhu z titulu opravy osobního automobilu, a šlo-li skutečně o úschovu u soudu ve smyslu ustanovení § 185a a násl. o.s.ř., pak takovým uložením zaniklo i zadržovací právo žalovaného k osobnímu automobilu zn. Dacia 1310 Break (srov. § 151v občanského zákoníku, jehož znění bylo ke dni 10.9.1998 shodné se zněním občanského zákoníku účinným do 31.12.1994). Odvolací soud se věcí z tohoto hlediska - jak vyplývá z odůvodnění napadeného rozsudku - nezabýval. Jeho závěr, že zadržovací právo žalovaného k osobnímu automobilu zn. Dacia 1310 Break nezaniklo splněním zajištěné pohledávky, je proto předčasný.

Z uvedeného vyplývá, že rozsudek odvolacího soudu není správný. Nejvyšší soud České republiky jej proto podle ustanovení § 243b odst. 1 části věty za středníkem o.s.ř. zrušil a věc podle ustanovení § 243b odst.2 věty první o.s.ř. vrátil odvolacímu soudu k dalšímu řízení.

Právní názor vyslovený v tomto rozsudku je závazný; v novém rozhodnutí o věci rozhodne soud nejen o náhradě nákladů nového řízení a dovolacího řízení, ale znovu i o nákladech původního řízení (§ 243d odst. 1 věta druhá a třetí o.s.ř.).

Proti tomuto rozsudku není přípustný opravný prostředek.

V Brně dne 6. března 2002

JUDr. Ljubomír Drápal, v. r.
předseda senátu

**Exhibit S: <u>judgment of the Supreme Court file no. 29 Odo 1168/2005 (in Czech only)</u>**

NEJVYŠŠÍ SOUD
ČESKÉ REPUBLIKY
**29 Odo 1168/2005**


U S N E S E N Í

Nejvyšší soud České republiky rozhodl v senátu složeném z předsedkyně JUDr. Ivany Štenglové a soudců JUDr. Františka Faldyny, CSc. a JUDr. Hany Gajdziokové v právní věci návrhu na změnu zápisu V. – I. s. r. o., do obchodního rejstříku, za účasti Ing. J. B., vedené u Krajského soudu v Ostravě pod sp. zn. C 18169, o dovolání Ing. J. B. proti usnesení Vrchního soudu v Olomouci ze dne 28. února 2005, č. j. 5 Cmo 457/2004-405, takto:

I. Dovolání se zamítá.
II. Dovolatel je povinen zaplatit navrhovatelce náhradu nákladů dovolacího řízení ve výši 3.175,- Kč do rukou jejího advokáta.


O d ů v o d n ě n í :

Napadeným usnesením potvrdil odvolací soud usnesení Krajského soudu v Ostravě ze dne 26. května 2004, č. j. F 20201/2001 F 22131/2001 F 35339/2001 F 39287/2001 F 42505/2001 F 43652/2001 F 47102/2001 F 7270/2002 F 14372/2002 F 19911/2002 F 20696/2002 F 35700/2002 F 43895/2002 F 45665/2002 F 45586/2002 F 47884/2002 F 2386/2003 F 15827/2003 F 23161/2003 F 24179/2003 F 33302/2003/C 18169-382, kterým tento soud povolil zápis obchodního podílu 25/5000 Ing. J. B. do obchodního rejstříku.
V odůvodnění rozhodnutí odvolací soud uvedl, že předchozí rozhodnutí soudu prvního stupně, kterým tento soud vyhověl návrhu V. – I. s. r. o. (dále jen „společnost") na povolení zápisu obchodního podílu společníka Ing. J. B. 25/5000, zrušil se závazným právním názorem, že soud prvního stupně dříve, než znovu ve věci rozhodne, se bude zabývat námitkami Ing. J. B. týkajícími se neplatnosti rozhodnutí valné hromady společnosti konané dne 27. dubna 2001, na které bylo rozhodnuto o zvýšení základního kapitálu dalšími vklady společníků ve smyslu ustanovení § 142 a násl. obchodního zákoníku (dále jen „ obch. zák."). Soud prvního stupně poté rozhodl napadeným usnesením stejně jako v usnesení předchozím.
Odvolací soud uzavřel, že podle § 56a odst. 1, 2 obch. zák. je zakázáno zneužití většiny stejně jako menšiny hlasů ve společnosti. Jakékoli jednání, jehož cílem je některého ze společníků zneužívajícím způsobem znevýhodnit, je zakázáno.
Odvolatel spatřuje neplatnost usnesení valné hromady společnosti konané dne 27. dubna 2001, která rozhodla o zvýšení základního kapitálu, v okolnostech, za kterých ke zvýšení základního kapitálu došlo. Tyto okolnosti spočívaly v tom, že ke dni rozhodování valné hromady nebyly ujasněné finanční vztahy mezi odvolatelem a společností. Nevyjasněnou zůstala otázka půjčky společnosti v částce 2,150.000,- Kč od odvolatele a všechny skutečnosti na ni navazující, včetně společností tvrzeného jednání odvolatele v rozporu se společenskou smlouvou při vystavení směnky ve výši 2,430.000,- Kč ve prospěch třetí osoby bez vědomí ostatních společníků.

Podle názoru odvolacího soudu se tyto skutečnosti jeví pro rozhodnutí o zápisu výše obchodního podílu odvolatele do obchodního rejstříku jako právně bezvýznamné. Společnost měla právo (i bez ohledu na podmínky, které zadala Česká spořitelna v rámci uzavírání úvěrové smlouvy), zvýšit základní kapitál jakýmkoliv zákonným způsobem. Dovozovat, že rozhodnutí učiněné v souladu se zákonem, tj. s ustanovením § 142 odst. 2 a násl. obch. zák. je současně v rozporu s ustanovením § 56a obch. zák., což je v podstatě jediná odvolací námitka odvolatele, jistě lze, ale je nutno postavit najisto, zda je tak možno učinit úspěšně. Odvolací soud má za to, že formuluje-li osoba, ať již právnická či fyzická, svou vůli v souladu se zákonem, jak se to v tomto případě nepochybně stalo, chová se dovoleně a svého práva nijak nezneužívá a její výsledné jednání je tak z pohledu jejího vzniku zákonné a správné. Nikdo ze společníků odvolateli nebránil podílet se na zvyšování základního kapitálu, když nepochybně zvýšením základního kapitálu společnosti by se zvýšila jeho šance vymoci po obchodní společnosti zpět plnění ze shora uvedené smlouvy o půjčce, ukázalo-li by se ovšem, že je tomu tak po právu.
Proti usnesení odvolacího soudu podal Ing. J. B. dovolání. Co do jeho důvodu uvedl, že řízení je postiženo vadou, která mohla mít za následek nesprávné rozhodnutí ve věci a namítá rovněž nesprávné právní posouzení věci odvolacím soudem.
V dovolání podrobně popisuje skutkovou situaci ve společnosti, která předcházela rozhodnutí o zvýšení základního kapitálu. Dovozuje, že pokud ustanovení § 56a odst. 1 obch. zák. hovoří o zneužití a ustanovení odstavce 2 téhož paragrafu o jednání, nelze si v reálném životě věc představit tak, že jde o jednorázový, nekomplikovaný, zcela zřetelný projev vůle. Dovolatel tvrdí, že se odvolací soud dostatečně nezabýval aplikací ustanovení § 56a obch. zák. na jím tvrzený skutkový stav a že se nevypořádal se všemi jeho tvrzeními a

námitkami.

Společnost ve vyjádření k dovolání snáší argumenty pro podporu závěrů odvolacího soudu.

Dovolání je přípustné podle ustanovení § 237 odst. 1 písm. c) občanského soudního řádu (dále jen „o. s. ř.").

Dovolatel výslovně neformuluje otázku zásadního právního významu, pro kterou se domáhá připuštění dovolání, z odůvodnění dovolání však lze dovodit, že se domáhá rozhodnutí o tom, zda může být konkrétní usnesení valné hromady neplatné z důvodu zneužití většiny, popřípadě z důvodu jednání společníků zneužívajícím způsobem znevýhodňující jiného společníka, ve smyslu ustanovení § 56a odst. 1 a 2 obch. zák. i tehdy, kdy zneužívající není obsah takového usnesení, ale jednání ostatních společníků ve vztahu k dovolateli v průběhu jeho účasti ve společnosti. Tuto otázku shledává dovolací soud zásadně právně významnou.

K posuzované právní otázce dovolací soud uzavřel, že platnost usnesení valné hromady lze napadat pro rozpor jeho obsahu se zákonem, společenskou smlouvou či stanovami, pro nezákonnost postupu při svolání valné hromady nebo při přijímání usnesení a rovněž z důvodu, že valná hromada přijala usnesení, které nepatří do její působnosti. Z toho důvodu, že se ostatní společníci chovají ke společníkovi v rozporu s ustanovením § 56a obch. zák. mimo přijímání usnesení valné hromady však toto usnesení napadat nelze. Pokud se ostatní společníci v průběhu účasti dovolatele ve společnosti ve vztahu k němu chovali zneužívajícím způsobem, jak dovolatel tvrdí, měl možnost z toho důvodu napadat jednotlivé úkony společníků, které považoval za zneužívající. Jde-li však o posouzení platnosti usnesení valné hromady, musel by být, jak shora uvedeno, zneužívající buď způsob svolání valné hromady nebo hlasování na valné hromadě anebo obsah usnesení, jehož platnost se posuzuje. To však dovolatel netvrdí, a proto nelze než uzavřít, že rozhodnutí odvolacího soudu je správné.

Protože rozhodnutí odvolacího soudu je správné, Nejvyšší soud dovolání podle ustanovení § 243b odst. 2 věta první o. s. ř. zamítl.

O nákladech dovolacího řízení rozhodl dovolací soud podle ustanovení § 243b odst. 5, § 224 odst. 1 a § 146 odst. 1 písm. a) o. s. ř., tak, jak se uvádí ve výroku, a přiznal společnosti náhradu nákladů řízení podle ustanovení § 8 písm. b) a § 18 odst. 1 vyhlášky č. 484/2000 Sb. ve výši 3.100,-Kč a paušální náhradu nákladů řízení podle § 13 odst. 3 vyhlášky č. 177/1996 Sb.

Proti tomuto rozhodnutí není přípustný opravný prostředek.

Jestliže povinný nesplní dobrovolně co mu ukládá vykonatelné rozhodnutí, může se oprávněná domáhat jeho výkonu.

V Brně 10. května 2006

JUDr. Ivana Štenglová, v.r.
předsedkyně senátu

xc

**Exhibit T: <u>judgment of the Supreme Court file no. 22 Cdo 432/2002 (in Czech only)</u>**

22 Cdo 432/2002

ČESKÁ REPUBLIKA
ROZSUDEK
JMÉNEM REPUBLIKY

Nejvyšší soud České republiky rozhodl v senátě složeném z předsedy JUDr. Jiřího Spáčila, CSc., a soudců JUDr. Františka Baláka a JUDr. Marie Rezkové ve věci žalobkyně JUDr. K. B., zastoupené advokátem, proti žalovaným: 1/ Doc. RNDr. B. Š., CSc., zastoupené advokátem, a 2/ Ing. J. Š., CSc., zastoupenému RNDr. B. Š., CSc., jako opatrovnicí, za účasti vedlejších účastníků na straně žalovaných: 1/ Ing. K. B. a 2/ P. Š., o odstranění stavby a o vzájemném návrhu žalovaných a vedlejších účastnic na přikázání vlastnictví, vedené u Okresního soudu v Havlíčkově Brodě pod sp. zn. 4 C 222/88, o dovolání první žalované proti rozsudku Krajského soudu v Hradci Králové ze dne 8. října 1998, čj. 23 Co 237/97-309, takto:

Rozsudek Krajského soudu v Hradci Králové ze dne 8. října 1998, čj. 23 Co 237/97-309, se zrušuje a věc se vrací tomuto soudu k dalšímu řízení.

O d ů v o d n ě n í :

Okresní soud v Havlíčkově Brodě (dále jen „soud prvního stupně") rozsudkem ze dne 20. února 1997, čj. 4 C 222/88-253, ve výroku rozsudku pod bodem I. rozhodl, že „žalovaní jsou povinni odstranit montovaný rodinný domek ze stavební parcely č. 21 v kat. území Š., a to do 60ti dnů od právní moci tohoto rozhodnutí", ve výroku pod bodem II. zamítl „žalobu na přikázání a) části pozemku žalobkyně o výměře 67 m2, zapsané u Katastrálního úřadu v H. na listu vlastnictví č. 190 pro kat. území Š., obec L. jako stavební parcela č. 21, na které stojí stavba ve vlastnictví žalovaných, do společného vlastnictví první žalované a druhého žalovaného bez náhrady, b) části pozemku první žalované a obou vedlejších účastnic o výměře 88 m2 zapsané u Katastrálního úřadu v H. na listu vlastnictví č. 536 pro katastrální území Š., obec L. jako parc. č. 142, na které stojí stavba ve vlastnictví žalobkyně, do vlastnictví žalobkyně bez náhrady, c) části pozemku první žalované a obou vedlejších účastnic o výměře 86 m2 zapsané u Katastrálního úřadu v H. na listu vlastnictví č. 536 pro katastrální území Š., obec L. jako parc. č. 143, na které stojí stavba ve vlastnictví žalobkyně, do vlastnictví žalobkyně bez náhrady". Výrokem pod bodem III. zamítl návrh na nařízení předběžného opatření, a výroky pod body IV. a V., rozhodl o nákladech řízení.

Soud prvního stupně vyšel ze zjištění, že žalobkyně uplatňuje nárok na odstranění neoprávněné stavby podle § 135c odst. 1 občanského zákoníku (dále jen „ObčZ"). Je vlastnicí obytné a hospodářské části domu čp. 4 v Š. a pozemkové parcely č. 21 o výměře 1260 m2. Žalovaní 1) a 2) v roce 1977 část zmíněného pozemku v rozsahu 67 m2 neoprávněně zastavěli částí montovaného rodinného domku. Domek vybudovali bez stavebního povolení. Na druhé straně také obytná část domu žalobkyně čp. 4 s nově zbudovaným přístavkem částečně stojí na pozemku ve vlastnictví žalovaných.

Na základě těchto zjištění soud prvního stupně uložil žalovaným povinnost stavbu domku odstranit. Zamítl návrh žalovaných a vedlejších účastnic na straně žalovaných, aby soud podle § 98 občanského soudního řádu (dále jen „OSŘ") započetl 174 m2 jejich pozemků, částečně též neoprávněně zastavěných budovou žalobkyně, a aby rozhodl podle § 135c odst. 3 ObčZ tak, aby tyto pozemky byly bezúplatně přikázány do vlastnictví žalobkyně a aby pozemek žalobkyně, zastavěný domkem žalovaných, byl přikázán do jejich vlastnictví.

Krajský soud v Hradci Králové jako soud odvolací rozsudkem ze dne 8. října 1998, čj. 23 Co 237/97-309, rozsudek soudu prvního stupně potvrdil a rozhodl o nákladech odvolacího řízení. Odvolací soud vyšel ze skutkových zjištění soudu prvního stupně a ztotožnil se i s jeho právními závěry. Neuznal námitku promlčení nároku žalobkyně na odstranění neoprávněné stavby. Konstatoval, že předmětný domek byl postaven bez řádného stavebního povolení, což je zásadní okolnost pro rozhodování, zda je účelné nařídit odstranění stavby. Odvolací soud nepřisvědčil tvrzení žalovaných, že jednání žalobkyně, která nechtěla přistoupit na směnu pozemků, je šikana; občana nelze do vlastnictví k věci nutit. Žalovaní navrhovali připuštění dovolání pro řešení právních otázek „zda je možné promlčení nároku na odstranění stavby podle § 135c ObčZ" a „zda byl či nebyl v souladu s dobrými mravy procesní postoj žalobkyně, když setrvala na nároku na odstranění stavby i za situace, kdy ji žalovaní spolu s vedlejšími účastnicemi nabízeli pro ni výhodné řešení vypořádání vztahu mezi účastníky". Odvolací soud připustil dovolání pouze k otázce promlčení.

Proti rozsudku odvolacího soudu podává žalovaná 1/ dovolání, jehož přípustnost opírá o § 239 odst. 1 a 2 OSŘ

ve znění před novelou provedenou zákonem č. 30/2000 Sb. a uplatňuje dovolací důvod ve smyslu § 241 odst. 3 písm. d) OSŘ. Uvádí, že meze dovolání jsou stanoveny výrokem odvolacího soudu ve vztahu k řešení právní otázky zda lze promlčet nárok na odstranění stavby vyplývající z § 135c ObčZ, když soud naopak neakceptoval další návrh na připuštění dovolání, a to k řešení otázky, zda vyhovění žalobnímu řízení žalobkyně není v rozporu s dobrými mravy, když žalovaní nabídli žalobkyni na vypořádání vzájemných vztahů pozemek pod její stavbou, mající větší výměru, než pozemek žalobkyně, na němž stojí stavba žalovaných, kterou mají být povinni odstranit. Uvádí, že se soud v otázce, zda se právo vlastníka pozemku na odstranění neoprávněné stavby promlčuje, přiklonil k názoru, že nikoliv, avšak tento názor nezdůvodnil přesvědčivě. V této souvislosti dovolatelka namítá, že je důležité, jaký dopad takové promlčení pro vlastníka pozemku má. Nutno vycházet z principu vyjádřeného v § 120 odst. 2 ObčZ, že stavba není součásti pozemku, a nepřijatelný je stav právní nejistoty, v níž by se vlastník stavby nacházel po neomezenou dobu v obavě, zda se vůči němu nebude vlastník pozemku domáhat práv z titulu neoprávněné stavby. To platí tím spíš, stojí-li stavba na cizím pozemku jen z části. Odkazuje na stať „K některým aktuálním otázkám občanskoprávního institutu neoprávněné stavby", Právní rozhledy č. 12/1997 a na § 418 a násl. občanského zákoníku obecného z roku 1811. Potvrdila-li žalobkyně, že již v roce 1977 věděla, že stavba žalovaných na jejím pozemku a žalobu na odstranění stavby podala podle § 221 tehdy platného ObčZ až 5. 10. 1988, kdy se dověděla o tvrzeném porušení svého vlastnického práva, pak v době podání žaloby bylo její právo promlčeno, a vznesli-li žalovaní námitku promlčení, měl odvolací soud podle toho rozhodnout. K otázce, zda postup žalobkyně nebyl v rozporu s dobrými mravy, jíž odvolací soud dovolání nepřipustil, ač jde rovněž o otázku právní, se dovolatelka dožaduje přezkumu, zda právní význam má. Nutno ji spatřovat v tom, zda se jeví jako **zneužití práva** stav, kdy stavba účastníků řízení stojí navzájem zčásti na pozemku druhé strany a kdy žalovaní nabízejí, leč marně, vyřešit vzniklou situaci výměnou pozemků nacházejících se pod stavbami. Uzavírá, že by bylo v rozporu s dobrými mravy přiznat žalobkyni žalované právo, i kdyby promlčeno nebylo. Navrhuje, aby dovolací soud zrušil rozsudek odvolacího soudu a věc mu vrátil k dalšímu řízení, a současně navrhuje rozhodnout o odložení vykonatelnosti rozhodnutí.

Ve vyjádření k dovolání žalobkyně odkazuje na správné skutkové i právní závěry soudu prvního stupně i soudu odvolacího. Navrhuje dovolání zamítnout.

Nejvyšší soud v řízení o dovolání postupoval podle procesních předpisů, platných k 31. 12. 2000 (část dvanáctá, hlava první, bod 17 zák. č. 30/2000 Sb., tedy podle OSŘ ve znění před novelou, provedenou tímto zákonem, a po zjištění, že dovolání je podáno osobou k tomu oprávněnou, je přípustné podle § 239 odst. 1, 2 OSŘ, že je uplatněn dovolací důvod uvedený v § 241 odst. 3 písm. d) OSŘ a že jsou splněny i další náležitosti dovolání a podmínky dovolacího řízení (§ 240 odst. 1, § 241 odst. 1 OSŘ), dovoláním napadené rozhodnutí přezkoumal a shledal dovolání důvodným.

V řízení o žalobě na vypořádání neoprávněné stavby podle § 135c ObčZ, podané proti spoluvlastníkům stavby, jde o taková společná práva a povinnosti žalovaných spoluvlastníků, že rozsudek se musí vztahovat na všechny žalované (§ 91 odst. 2 OSŘ). Proto dovolací soud podle § 242 odst. 2 písm. c) OSŘ přezkoumal napadený rozsudek ve vztahu ke všem žalovaným, i když dovolání podala jen žalovaná 1).

Dovolání je přípustné nejen podle § 239 odst. 1 OSŘ k řešení otázky, zda žaloba na vypořádání neoprávněné stavby podle § 135c ObčZ podléhá promlčení, ale je přípustné i podle § 239 odst. 2 OSŘ. Za otázku, jejíž řešení činí z rozsudku odvolacího soudu rozhodnutí po právní stránce zásadní, považuje dovolací soud otázku, zda při rozhodování o neoprávněné stavbě má právní význam skutečnost, že v žalobce zřídil na pozemku žalovaného neoprávněnou stavbu a žalovaný nabízí směnu zastavených pozemků.

Promlčením právo nezaniká, ale je oslabeno, neboť jeho významná složka, kterou představuje nárok (vymahatelnost práva v soudním řízení) se stává podmíněným. Nárok směřuje proti konkrétní osobě a je složkou práva, které tvoří obsah relativního právního vztahu. Řízení o vypořádání neoprávněné stavby je řízením, kde z právního předpisu vyplývá určitý způsob vypořádání vztahu mezi účastníky a kde tedy soud není vázán návrhem účastníků (§ 153 odst. 2 OSŘ); pokud soud dospěje k závěru, že žalobcem navržené vypořádání není přijatelné, musí upravit vztah mezi účastníky i jiným způsobem, vyplývajícím z § 135c ObčZ (rozhodnutí publikované pod č. 42/2001 Sbírky soudních rozhodnutí a stanovisek). Z § 135c ObčZ vyplývá právo vlastníka pozemku žádat soud o vypořádání neoprávněné stavby, nikoliv právo na konkrétní majetkové plnění.

Promlčují se všechna práva majetková s výjimkou práva vlastnického (§ 100 odst. 2 ObčZ). Právo vlastníka pozemku žádat soud o rozhodnutí o neoprávněné stavbě podle § 135c ObčZ se nepromlčuje. Jde o právo žádat soud o vydání konstitutivního rozhodnutí, které neobsahuje hmotněprávní nárok vztahující se k žalovanému. Nárok vzniká až v okamžiku, kdy konstitutivní rozhodnutí nabude právní moci. Teprve poté jde uvažovat o promlčení. Právo žádat soud o vydání konstitutivního rozhodnutí se může promlčet (nebo prekludovat) jen v

případě, že to zákon výslovně stanoví. Skutečnost, že vlastník pozemku delší dobu stavbu trpěl a došlo tak k určité stabilizaci poměrů, by měla být zohledněna při rozhodování o osudu neoprávněné stavby.

Z § 135c ObčZ vyplývá, že nelze nařídit odstranění stavby tam, kde to není účelné. Účelnost odstranění neoprávněně zřízené stavby je třeba vždy hodnotit objektivně, tj. s přihlédnutím ke všem okolnostem a povaze každého jednotlivého případu. V rámci této volné úvahy soud musí přihlížet také k tomu, zda by odstranění stavby nebylo v rozporu s dobrými mravy (§ 3 odst. 1 ObčZ). Přihlíží se zejména k povaze a rozsahu hospodářské ztráty, která by odstraněním stavby vznikla, k tomu, zda vlastník stavby a jeho rodina ve stavbě bydlí či nikoliv, jaký je rozsah zastavěného pozemku, zda vlastník stavby věděl, že staví na cizím pozemku či naopak, zda stavěl v dobré víře, že mu pozemek patří a teprve dodatečně podle geodetického zaměření a podle provedené opravy zjistil opak. Soud musí v těchto případech porovnat hospodářskou a jinou ztrátu, která by odstraněním stavby vznikla, se zájmem na dalším využití stavby. Je třeba přihlédnout i k důvodům, pro které vlastník pozemku řádně nezakročil proti neoprávněné stavbě v době její realizace a pokud vlastník pozemku o neoprávněné stavbě věděl též k době, která od zřízení stavby uplynula. Nelze předvídat všechny okolnosti, které bude nutno při rozhodování o neoprávněné stavbě vzít v úvahu. Soud musí pečlivě přihlédnout ke všemu, co vyšlo v řízení najevo, a vzniklou situaci komplexně zhodnotit.

V případě, že vlastník pozemku od počátku o neoprávněné stavbě věděl a bez vážného důvodu se u stavebního úřadu nebo u soudu nedomáhal zastavení stavebních prací a bránil se až po dokončení stavby, je třeba zvážit, zda jeho jednání není šikanou a zda by rozhodnutí o odstranění stavby nebylo v rozporu s dobrými mravy.

V dané věci vyšlo najevo, že účastníci na obou stranách sporu vzájemně zasahují do vlastnického práva k pozemkům tím, že na nich mají zřízeny neoprávněné stavby. Soudy správně konstatovaly, že žalovanými navrhované vzájemné vyrovnání nároků směnou pozemků není proti vůli žalobce možné. Avšak tato okolnost byla právně významná při posouzení otázky, zda je na místě, a to i s přihlédnutím k dobrým mravům, rozhodnout o odstranění stavby žalovaných. V této souvislosti bylo též nutno zvážit, jaká újma objektivně žalobkyni v důsledku neoprávněné stavby vznikla a jak je omezena v užívání zbývající části pozemku. Bylo třeba přihlédnout i k dalším kritériím rozhodování o neoprávněné stavbě, uvedeným shora. Pokud se soudy v nalézacím řízení těmito hledisky nezabývaly, je jejich úvaha o tom, že na místě je jen rozhodnutí o odstranění stavby, předčasná, a rozhodnutí odvolacího soudu tak spočívá na nesprávném právním posouzení věci.

Z uvedeného je zřejmé, že dovolání je důvodné. Proto nezbylo, než rozhodnutí odvolacího soudu zrušit (§ 243b odst. 1 OSŘ, věta za středníkem); vzhledem k tomu, že důvody, pro které bylo zrušeno rozhodnutí odvolacího soudu, platí i pro rozhodnutí soudu prvního stupně, zrušil dovolací soud i toto rozhodnutí a věc vrátil soudu prvního stupně k dalšímu řízení. (243b odst. 2 OSŘ). O náhradě nákladů dovolacího řízení rozhodne soud v novém rozhodnutí o věci (243d odst. 1 OSŘ).

Proti tomuto rozhodnutí není opravný prostředek přípustný.

V Brně dne 17. dubna 2002


JUDr. Jiří Spáčil, CSc., v.r.
předseda senátu

**Exhibit U:** <u>Vlastislav Kusák & Albrecht Piltz, Odpovědnost za škody způsobené vadou výrobku ve Spojených státech amerických a český výrobce [Liability for damages caused by defective product in the United States of America and a Czech producer], 7 Právní rozhledy 532 (1999)</u> **(law review article, in Czech only)**

## Literatura

**Název**: Odpovědnost za škody způsobené vadou výrobku ve Spojených státech amerických a český výrobce

Autor: **Mgr. Vlastislav Kusák, Dr. Albrecht Piltz**

Vydavatel: **C.H.BECK**
Titul: **Právní rozhledy**
Datum vydání: **11.10.1999**
Číslo sešitu: **10/1999**
Rok: **1999\Články**

Poznámky:str. 532 - 535

Text

# Odpovědnost za škody způsobené vadou výrobku ve Spojených státech amerických a český výrobce

*Mgr. Vlastislav Kusák, Dr. Albrecht Piltz, Praha* [*]

## I. Úvod

Relativně snadný přístup na trh v USA sebou nese i rizika zejména v oblasti odpovědnosti za škody způsobené vadou výrobku. Právě Spojené státy jsou kolébkou objektivní odpovědnosti za vady výrobku. Vzhledem k tomu, že v USA neexistuje jednotná kodifikace v dané oblasti práva a celý systém je založen na judikatuře soudů (case law), je institut odpovědnosti za škody způsobené vadou výrobku v USA velmi komplikovaný a ne zcela přehledný. Každý z padesáti států federace má svá specifika, která zde lze jen stěží v detailech obsáhnout.

O tom, že otázka odpovědnosti za škody způsobené vadou výrobku je pro zúčastněné osoby, zejména pro výrobce, důležitá, svědčí i to, že se soudy ve Spojených státech zabývají ročně cca 100 000 žalob ze škod způsobených vadou výrobku. Na rozdíl od českého, ale např. i německého práva mohou americké soudní spory vyústit v astronomicky vysoké částky, které jsou podloženy nejen výší skutečně způsobené škody, ale zejména tzv. sankčním odškodněním (punitive damages). Nezanedbatelnou je také skutečnost, že náklady soudního sporu nese každá strana sporu sama bez ohledu na výsledek soudního řízení.

## II. Právní úprava

Jak již bylo výše zmíněno, základ právní úpravy odpovědnosti za škody způsobené vadou výrobku tvoří soudní judikatura jednotlivých států USA. Ačkoliv již v minulosti existovala řada pokusů o prosazení zákona na federální úrovni, všechny z nich doposud ztroskotaly, zejména díky protestům zájmových skupin spotřebitelů anebo advokátů. Poslední z pokusů byl návrh federálního zákona nazvaného Product Liability Reform Act 1997, který sice schválily obě komory parlamentu, ale neprošel díky vetu prezidenta.

To však neznamená, že by jednotlivé státy neměly vlastní zákonnou úpravu. Většinou se nejedná o komplexní úpravu celé materie, ale o částečné modifikace práva již založeného judikaturou (např. stanovení promlčecích lhůt, omezení výše tzv. punitive damages, apod.).

Celá řada výrobků jako potraviny, kosmetika, léky, dopravní prostředky podléhají požadavkům speciálních zákonů vydaných jak na federální úrovni, tak i na úrovni jednotlivých států.

Spojené státy zatím nepodepsaly Haagskou úmluvu o odpovědnosti za škody způsobené vadou

výrobku, a proto se nelze ve sporech tohoto druhu odvolávat na ustanovení zmíněné dohody.

### III. Odpovědnost za škody způsobené vadou výrobku a její druhy

Odpovědnost za škody způsobené vadou výrobku lze definovat jako odpovědnost osob podílejících se na výrobě a distribuci výrobků (výrobci, dovozci, velkoobchodní i maloobchodní řetězce atd.) za škody na zdraví a majetku, které vznikly spotřebiteli či uživateli vadného výrobku.

Obecně lze říci, že nároky z náhrady škody způsobené vadou výrobku lze uplatňovat na základě tří právních institutů, které se v průběhu doby vyvinuly:
1) odpovědnost subjektivní (negligence),
2) odpovědnost ze záruky (warranty),
3) objektivní odpovědnost (strict liability).

*1. Odpovědnost subjektivní založená na nedbalostním zavinění (negligence)*

Předpokladem subjektivní odpovědnosti je porušení povinnosti pečlivosti (duty of care) vůči poškozenému a s tím související vznik škody, tzn. musí existovat povinnost pečlivého chování žalovaného vůči žalobci, žalovaný tuto povinnost porušil a konečně porušením této povinnosti vznikla škoda (kausální nexus).

Měřítkem pečlivosti je chování osoby srovnatelného postavení a vzdělání ve stejné situaci.[1] Výše uvedená povinnost může být dána i zákonem. Judikatura usnadnila poškozenému jako žalobci jeho důkazní povinnost tzv. pravidlem „res ipsa loquitur".[2] V případě jeho použití se nedbalost žalovaného předpokládá, jestliže:
- žalovaný měl nad vadným výrobkem v době dispozice s ním výlučnou kontrolu,
- ke škodě by bez nedbalosti žalovaného za normálních okolností nedošlo, a
- žalobce nepřispěl podstatným způsobem ke škodě.
Je-li použito pravidlo „res ipsa loquitur", přenáší se důkazní břemeno na žalovaného. Ten musí prokázat, že nejednal nedbale, resp. jednal s náležitou péčí.

Ačkoliv převažující většina žalob na náhradu škody je vedena na základě objektivní odpovědnosti právě díky snazšímu důkaznímu postavení žalobce, používá se tento typ odpovědnosti k podepření nároku na sankční odškodnění (punitive damages), které bývá mnohdy velmi vysoké.

*2. Odpovědnost ze záruky (warranty)*

Záruka vzniká buďto smluvně nebo je stanovena zákonem. Za záruku je třeba považovat jakékoliv výslovné či konkludentní smluvní ujištění o vlastnostech a kvalitě výrobku. Konkludentně daná záruka může vyplývat např. z reklamy (reklama proklamuje určité vlastnosti výrobku) nebo z vlastností předváděného vzorku atd.

Právní úprava pro záruky je obsažena v ustanoveních Uniform Commercial Code (U.C.C.).[3] V oblasti konzumního zboží existuje federální i státní zákonodárství, zajišťující minimální požadavky na formu a obsah záruk (např. Federal Consumer Warranty Act).

Žalobce musí prokázat existenci takové záruky a dále, že škoda byla způsobena právě vadou, která byla zárukou kryta.

Na rozdíl od subjektivní odpovědnosti za zavinění a objektivní odpovědnosti je u odpovědnosti ze záruky jednáo smluvně založený nárok na náhradu škody. Nabyvatel zboží má povinnost zboží řádně při předání prohlédnout, jinak nemůže následně reklamovat vady, které mělo zboží při předání. Jakákoliv zjištěná vada musí být reklamována bez zbytečného odkladu. Další rozdíly mohou být v běhu a délce promlčecích lhůt. V některých státech mohou být např. nároky na náhradu ušlého zisku uplatněny pouze v případech odpovědnosti ze záruky.

Odpovědnost ze záruky může nastoupit i v případě, kdy mezi stranami neexistuje smluvní vztah. Tak se v mnohých státech může náhrady škody z titulu záruční odpovědnosti domáhat např. rodinný příslušník nebo osoba (např. host) zdržující se v domácnosti vlastního smluvního partnera, kterému vznikla škoda, protože výrobek neměl zaručenou kvalitu. Žalovaný se pak nezprostí svojí záruční odpovědnosti poukazem na to, že mezi ním a žalobcem neexistuje smluvní vztah, jehož součástí záruka byla.

## 3. Objektivní odpovědnost (strict liability)

Základem objektivní odpovědnosti za škody způsobené vadou výrobku je „nepřiměřená nebezpečnost" výrobku (unreasonably dangerous)[4] a to bez ohledu na to, zda byla někým zaviněna. Nepřiměřená nebezpečnost je dána vždy, když výrobek neodpovídá normálním očekáváním běžného spotřebitele. Rozlišují se tři druhy vad výrobku:

> - výrobní vada (manufacturing defect)
> O výrobní vadu se jedná, jestliže kvalita a vlastnosti konkrétního výrobku neodpovídají kvalitě a vlastnostem ostatních výrobků dané výrobní řady.
> - konstrukční vada (design defect)
> Otázka konstrukční vady je mnohem složitější zejména proto, že není jednoduché najít objektivní měřítko. V zásadě se používá tzv. metoda srovnání rizika a užitku (risk-utility test).[5] Tato metoda srovnává mezi rizikem, které je spojeno s konstrukcí určitého výrobku, užitečností a výrobními náklady výrobku. Rovněž bývá srovnáváno konstrukční řešení s nižší, resp. nulovou rizikovostí, jeho náklady a efektivnost. Je-li riziko vyšší než užitečnost výrobku, má se za to, že výrobek má konstrukční vadu. Protože takové dokazování vyžaduje řadu specifických znalostí, kterými spotřebitel těžko může disponovat, stíhá v řadě států důkazní břemeno o neexistenci konstrukční vady žalovaného.
> - vadná instrukce (failure to warn)
> Vadná instrukce přichází v úvahu v případech, kdy žalovaný neupozornil žalobce na nebezpečí výrobku, ke kterým může docházet i při jeho řádném používání, ačkoliv žalovaný takové nebezpečí mohl v době uvedení výrobku na trh předvídat. Proto by měl být výrobek vybaven odpovídajícím, snadno srozumitelným návodem, který upozorní spotřebitele na nebezpečnost výrobku (např. přiloženým letáčkem, návodem k použití nebo nápisy na samotném výrobku). Výrobce má tuto povinnost i v případě, že později zjistí další nebezpečí spojená s užíváním výrobku. Uživatel by měl být upozorněn i na předvídatelná nebezpečí spojená s nesprávným používáním výrobku.

Tento druh odpovědnosti stíhá všechny subjekty, které se jakkoliv podílejí na cestě výrobku ke spotřebiteli - zejména výrobce, ale i dovozce, velkoobchod, maloobchod, obchodní zástupce apod. Proto mohou být např. žalováni i výrobci vadných součástek. Stejně tak mohou být žalovány i mateřské společnosti, které nemají sídlo v USA, i když jsou na americkém trhu zastoupeny svými dceřinnými společnostmi.

Otázkou zůstává, zda objektivní odpovědnosti podléhají i osoby, které provádějí služby, jako jsou opravy nebo uvedení výrobku do chodu. Většina amerických soudů je objektivní odpovědnosti zbavuje. Není však vyloučena jejich subjektivní odpovědnost za nedbalost.

Oprávněným je každý spotřebitel nebo uživatel výrobku, kterému přes řádné používání výrobku vznikla škoda. Navíc mohou náhradu škody požadovat i zúčastněné osoby (bystanders), tj. např. pasažéři, kteří byli zraněni díky konstrukční vadě dopravního prostředku.

## IV. Rozsah náhrady škody

Poškozený má nárok na náhradu:
> - osobních škod (poškození zdraví, náklady na léčení, bolestné, ušlý výdělek)

Náhrada škody v USA je obsažena v jednorázové částce. Poškozený nemá nárok např. na pravidelné měsíční dávky. Proto jsou veškeré, tj. i budoucí škody, žalovány již v daném soudním procesu. Žalobci nebudou uhrazeny škody, kterým mohl předejít.

- věcných škod (poškození, popř. zničení věcí), a
- majetkových škod (soudní náklady, náklady právního zastoupení, ušlý zisk, nároky z odpovědnosti vůči třetím osobám).

Předpokladem nároku na náhradu majetkové škody je pouze skutečnost, že výrobce mohl předvídat, že taková majetková škoda by mohla vzniknout.

Vedle toho přichází v úvahu i tzv. sankční odškodnění (punitive damages), které přesahuje rámec náhrady vzniklých škod. Má povahu postihu za nekvalitní výrobky a má působit i preventivně. V mnoha případech však svým rozsahem přesahuje několikanásobně vlastní náhradu škody. I když je institut sankčního odškodnění napadán z hlediska jeho protiústavnosti, je jen v malém počtu států federace ze zákona zcela vyloučen. V některých státech stanovil zákonodárce maximální hranici sankčních odškodnění.

Sankční odškodnění bývá žalobci přiznáno většinou pouze v případech, kdy žalovaný zjevně jednal nepřípustně. Takové chování žalovaného musí žalobce prokázat.

## V. Omezení, popř. zproštění se odpovědnosti

Mezi uznávané a účinné způsoby obrany, které mohou vést k omezení, popř. zproštění odpovědnosti žalovaného, patří zejména námitky:

- spoluzavinění poškozeného,
- nepřiměřené použití výrobku poškozeným, které nemohl výrobce předpokládat, resp. s kterým nemohl počítat,
- dobrovolné užívání výrobku, ačkoliv poškozený o jeho vadě věděl nebo vědět musel,
- běžné opotřebení výrobku,
- promlčení, většina promlčecích lhůt začíná běžet okamžikem vzniku škody,
- zánik nároku, v řadě států je odpovědnost omezena lhůtou, která se počítá od uvedení výrobku do oběhu,
- odkaz na úroveň vědy a technického pokroku.

## VI. Regresní náhrada

Je-li některý ze subjektů zúčastněných na distribuci výrobku odsouzen k náhradě škody způsobené vadou výrobku, ačkoliv ji nezavinil ani k ní nepřispěl, má tento regresní nárok vůči svému dodavateli nebo přímo vůči výrobci. Rozsah náhrady však může být mezi smluvními partnery omezen nebo podmíněn.

## VII. Příslušnost soudu a hmotné právo

V případě škody vzniklé vadou výrobku bude samozřejmě v zájmu poškozeného žalovat výrobce v některém ze států federace a použít jeho materiálního práva. Americký soud pak bude zkoumat svou příslušnost a následně i otázku, které hmotné právo je na daný případ třeba aplikovat.

Základním měřítkem příslušnosti je zásada minimálního kontaktu (minimum contact) a zásada přiměřenosti a odůvodněnosti (fair and reasonable). Tyto předpoklady budou v zásadě vždy splněny, má-li žalovaný sídlo ve státě soudu nebo provozuje-li na území daného státu svou činnost. Rovněž bude soud zvažovat, zda je jeho příslušnost odůvodněná, resp. zda by jiný soud neměl k projednávané věci užší vztah.

Vysloví-li soud svoji příslušnost, pak zpravidla použije na daný případ hmotné právo svého státu (lex fori) nebo v úvahu přicházející hmotné právo, které je pro poškozeného nejvýhodnější.

## VIII. Vykonatelnost soudního rozhodnutí v ČR

Skončí-li soudní řízení v USA v neprospěch českého subjektu a ten je odsouzen k náhradě škody, je nezbytné, pokud daný subjekt nemá majetek v USA, vykonat rozsudek v České republice.

Mezi USA a ČR doposud neexistuje žádná bilaterální úmluva o uznávání a výkonu soudních rozhodnutí. Rozsudek musí být nejdříve českými soudy uznán. Podle ustanovení § 64 zák. č. 97/1963 Sb, o mezinárodním právu soukromém a procesním, nelze zejména uznat a následně ani vykonat takové rozsudky:

> - kdy byla účastníku řízení, vůči němuž má být rozhodnutí uznáno, odňata postupem cizího orgánu možnost řádně se účastnit řízení, zejména nebylo-li mu doručeno do vlastních rukou předvolání nebo návrh na zahájení řízení, nebo nebyl-li odpůrci návrh na zahájení řízení doručen do vlastních rukou;
> - uznání by se příčilo veřejnému pořádku České republiky;
>> V této souvislosti je nezbytné zmínit, že český právní řád nezná soukromoprávní institut sankční škody (punitive damages). Sankční postihy jsou vyhrazeny výlučně státní moci, a proto je nejvýše pravděpodobné, že by rozsudek v rozsahu punitive damages nebyl uznán a nebylo by jej možné v tomto rozsahu na území ČR vykonat. Stejně k této otázce přistupují i německé soudy.[6]
> - není zaručena vzájemnost.
>> Otázku vzájemnosti řeší soudy dotazem na Ministerstvo spravedlnosti ČR, které pak cestou Ministerstva zahraničních věcí ČR zjišťuje, zda daný stát (v konkrétním případě USA) uznává rozsudky českých soudů. Podle dosavadních zkušeností soudy USA rozsudky českých soudů neuznávají. Tudíž není vzájemnost zaručena a rozsudek vydaný v USA by v ČR nebyl uznán, a ani vykonán.

Jinak je tomu u nálezů rozhodčích soudů. Jak Česká republika, tak i USA jsou signatáři Newyorské úmluvy o uznávání a výkonu rozhodčích nálezů. Většina rozhodčích nálezů cizích rozhodčích soudů je v České republice na základě Newyorské úmluvy vykonatelná.

## IX. Způsoby minimalizace odpovědnosti za vady výrobků

Rizika spojená s odpovědností za vady výrobků nelze zcela vyloučit. Neexistuje ani jednotný recept na stanovení nejúčinnějšího postupu při jejich omezování.

Zejména je třeba detailně promyslet veškerá rizika spojená s užíváním výrobku, a to nejenom rizika spojená s řádným užíváním, ale i předvídatelná rizika při jiném než řádném užití výrobku. Na ně musí být uživatel včas a řádně upozorněn. O nově získaných poznatcích z oblasti bezpečnosti výrobku je vhodné uživatele co nejdříve informovat.

Je vždy třeba vycházet z nejnovějších poznatků technického vývoje. Produkt musí odpovídat všem požadovaným standardům daného odvětví.

V této souvislosti je důležité zmínit nezbytnost řádné archivace dokumentů, týkajících se zkoušek vlastností a kvality výrobku, dokumenty týkající se kontroly výroby, popř. certifikáty státních a zkušebních institucí. Tyto dokumenty pak slouží zejména jako důkazní prostředky.

Zvláštní pozornost je třeba věnovat případné reklamě, např. reklamním letáčkům, inzerátům atd. Ty je nutno podrobit důkladnému přezkumu, zda neobsahují nějaké zavádějící, popř. přehnané informace, které by mohly vyvolat klamný dojem o vlastnostech a kvalitě výrobku. Veškeré návody, upozornění apod. by měly být přezkoumány zejména z hlediska jejich srozumitelnosti a dostatečnosti.

Vhodným se zdá být uzavření pojištění odpovědnosti za škody způsobené vadou výrobku. Uzavření takového pojištění v USA je poměrně nákladnou záležitostí a ve většině případů nepokryje celý rozsah náhrady škody. Zejména jsou z pokrytí pojištěním vyloučeny punitive damages. Doporučuje se uzavření tzv. comprehensive general liability policy.

c

V oblasti smluvních vztahů by měly být vzájemná práva a povinnosti podřízeny jinému právnímu řádu, např. českému či německému. Rovněž tak je vhodné stanovit si smluvně soudní příslušnost, nejlépe u státních či rozhodčích soudů, jejichž právní řád má být na smluvní vztah aplikován.

V případě, že bude na smluvní vztah smluvena použitelnost právního řádu některého ze států USA, pak lze sjednat smluvní omezení rozsahu náhrady škody vůči smluvnímu partnerovi, např. omezit odpovědnost pouze na zaviněné vady. Taková smluvní ujednání však působí jen mezi stranami smlouvy a nikoliv vůči třetím osobám.

## X. Závěr

Problematika odpovědnosti za škody způsobené vadou výrobků by neměla být českými výrobci, kteří vstupují na trh USA, podceňována. I když je vykonatelnost rozhodnutí amerického soudu v rozsahu punitive damages v České republice problematická, není vyloučeno, že by rozsudek byl v rozsahu skutečně vzniklé škody v budoucnu vykonatelný. Výše skutečné škody je v případě poškození amerického spotřebitele bezesporu mnohanásobně vyšší, než by byla náhrada škody vůči českému subjektu. Proto doporučujeme českým výrobcům pronikat na trh USA formou Joint-Ventures za účasti amerického partnera, který má v otázkách odpovědnosti za škody způsobené vadou výrobku zajisté více zkušeností.

---

[*] Mgr. Vlastislav Kusák je advokátním koncipientem v AK Schürmann & Partners, tento článek by rád věnoval jako poděkování advokátu JUDr. Karolu Hrádelovi za jeho dosavadní odborné vedení. Dr. Albrecht Piltz je advokátem v AK Gaedertz.

[1] Palsgraf v. Long. Island Railroad Company, 248 N. Y. 339, 162 N. E. 99 (1928).

[2] Gherna v. Ford Motor Co., 246 Cal. App. 2d 639, 55 Cal. Rptr. 94, (1996).

[3] Uniform Commercial Code (U.C.C.) je federální právně nezávazný návrh obchodních pravidel, která byla s určitými modifikacemi uzákoněna v jednotlivých státech USA.

[4] Greenman v. Yuba Power Products, Inc. 59 Cal.2d 57, 377 P. 2d 897 (1963).

[5] Barker v. Lull Engineering Company, 20 Cal. 3d 413, 573 P 2. d 443 (1978).

[6] Rozsudek Nejvyššího spolkového soudu z 4. 6. 1992 IX ZR 149/91, publikovaný v NJW 1992, str. 3096 a násl.

I declare under penalty of perjury under the laws of the United States of America that the foregoing has been translated to the best of my knowledge.


Prague, the Czech Republic

October 18, 2007                                     _____

                                                              Zdeněk Kühn

# Občanské
# právo hmotné
# 2

DÍL TŘETÍ: ZÁVAZKOVÉ PRÁVO

MARTA KNAPPOVÁ
JIŘÍ ŠVESTKA
JAN DVOŘÁK
a kolektiv

Knihovna UK PF



3125060285

4., aktualizované a doplněné vydání



ASPI

Wolters Kluwer

## C. Odpovědnost za škodu způsobenou úmyslným jednáním proti dobrým mravům

Ke vzniku odpovědnosti za škodu podle § 424 se vyžaduje existence těchto předpokladů:
– jednání (konání či opomenutí) porušující dobré mravy,
– škody,
– příčinné souvislosti mezi a) a b),
– zavinění ve formě úmyslu.

Prvním předpokladem odpovědnosti za škodu podle § 424 je, aby škoda nastala v důsledku **jednání, které v době, kdy bylo se škodlivým účinkem uskutečněno, porušuje dobré mravy.** Jde o pravidla, která sice jako taková nejsou výslovně vyjádřena v žádné konkrétní právní normě, vyplývají však z obecně sdíleného, přijímaného a respektovaného mravního řádu společnosti. Lze však soudit, že i jednání, které úmyslně porušilo pouze dobré mravy, nabývá za předpokladu, že jím byla jinému způsobena škoda a že je jako takové § 424 výslovně postihováno sankcí náhrady, zároveň povahu protiprávního jednání (§ 415 ve spojení s § 420).

Pojem **dobrých mravů** je v právní teorii i teorii jiných vědních disciplín různě definován. Dobré mravy lze považovat, jak již bylo výše uvedeno, za souhrn obecně sdílených, uznávaných a respektovaných základních norem určujících chování lidí ve smyslu poctivosti, slušnosti, nepodvádění atd., tj. v souladu s mravním řádem společnosti. Podat však nějaký vyčerpávající výčet dobrých mravů nelze; každý pokus o takové vymezení by byl nutně víceméně neúplný, neboť souhrn dobrých mravů nelze zejména se zřetelem k jejich značné mnohotvárnosti a i obsahové pestrosti v celistvosti plně postihnout. Zároveň je třeba uvážit, že dobré mravy jako projev mravního řádu společnosti se v důsledku společenského rozvoje vyvíjejí a v té či oné míře zároveň mění (platí to zejména ve smyslu časovém; dobré mravy však prodělávají určité změny i podle toho, o jaká zeměpisná místa se jedná).

Úprava odpovědnosti za škodu v § 424 nepostihuje každé porušení dobrých mravů, ze kterého vznikla škoda. Taková právní úprava, která by postihovala i případy jejich porušení z nedbalosti, by nebyla přiměřená a mohla by vést ke společensky neúnosným následkům. Z těchto důvo-

dů se občanský zákoník omezil výjimečně pouze na sankcionování škod způsobených nejzávažnějším a nejodsouzeníhodnějším zásahem do dobrých mravů, tj. jejich **úmyslným porušením** (srov. i § 41 odst. 2 švýcarského obligačního zákona, § 1295 odst. 2 rakouského občanského zákoníku, § 826 německého občanského zákoníku). Tuto kvalifikovanou úmyslnou formu zavinění, která je nezbytným předpokladem vzniku odpovědnosti za způsobenou škodu, občanský zákoník **nepředpokládá (nepresumuje). V důsledku toho musí poškozený – kromě ostatních předpokladů – dokazovat i úmysl škůdce.**

Obecně lze říci, že pod § 424 by spadaly případy úmyslného sdělení nesprávné informace, úmyslného poskytnutí špatné rady, lstivého uvedení jiné osoby v omyl, úmyslné – zavrženíhodné zamlčení (opomenutí) určité činnosti apod. O případ úmyslného porušení dobrých mravů podle § 424 by se však jednalo i tam, kde by někdo **úmyslně uskutečnil výkon svého práva,** a to nikoli za účelem, aby dosáhl společensky dovoleného cíle, nýbrž výlučně anebo hlavně proto, aby dosáhl poškození jiného (tzv. **šikanózní výkon práva,** tj. výkon vedený výlučně či hlavně s cílem způsobit jinému škodu).

## D. Odpovědnost za škodu způsobenou těmi, kteří nemohou posoudit následky svého jednání

Způsobí-li škodu nezletilý anebo ten, kdo je v době jejího způsobení postižen duševní poruchou, přicházejí v úvahu jako **subjekty odpovědnosti podle § 422 jednak ti, kdo zanedbali dohled (dozor) založený zákonem či úředním rozhodnutím anebo dohodou, jednak sami nezletilí nebo sami ti, kteří jsou stiženi duševní poruchou.**

**Těmi, kdo zanedbali náležitý dohled (dozor),** budou v prvé řadě **rodiče – § 31, 32, 34 a 36 ZoR** (zásadně se jedná o oba rodiče – § 34 odst. I zákona o rodině), a to bez ohledu na to, jsou-li manželé či nikoli; bude-li nezletilé dítě svěřeno soudním rozhodnutím či soudem schválenou dohodou pouze jednomu z rodičů, bude z hlediska zanedbání náležitého dohledu, a tím i jeho odpovědnosti přicházet v úvahu zásadně on; bude-li např. rodič zbaven rodičovské odpovědnosti (§ 41 odst. 3 a 4 ZoR), **osvojitelé, budoucí osvojitelé** (§ 63 a 69 ZoR), **poručník** (§ 78 n. ZoR), **opatrovník** (§ 83o ZoR), **pěstouni** (§ 45a ZoR, § 44n. zákona č. 359/1999 Sb., o soci-

»KOMENTÁŘE VELKÝCH ZÁKONŮ
ČESKOSLOVENSKÝCH«

Svazek 1.

KOMENTÁŘ K ČSL. OBECNÉMU ZÁKONÍKU OČANSKÉMU

A OBČANSKÉ PRÁVO PLATNÉ NA SLOVENSKU

A V PODKARPATSKÉ RUSI.

Knihovna PF UK



3125511684

VYDÁVÁ

PRÁVNICKÉ KNIHKUPECTVÍ A NAKLADATELSTVÍ V. LINHART

V PRAZE.

---

# KOMENTÁŘ

## K ČESKOSLOVENSKÉMU OBECNÉMU

## ZÁKONÍKU OBČANSKÉMU

A OBČANSKÉ PRÁVO PLATNÉ NA SLOVENSKU

A V PODKARPATSKÉ RUSI

Zpracovali a uspořádali

UNIVERSITNÍ PROFESOR
Dr FRANTIŠEK ROUČEK        Dr JAROMÍR SEDLÁČEK

a kruh spolupracovníků

univ. prof. Dr BEDŘICH ANDRES, univ. prof. Dr
univ. prof. Dr FRANTIŠEK ČÁDA, docent Dr
docent Dr JOSEF FUNDÁREK, docent Dr
univ. prof. Dr K. HERMANN-OTAVSKÝ, univ.
univ. prof. Dr JAN KRČMÁŘ, docent Dr VLADIMÍR
univ. prof. Dr ZDENĚK NEUBAUER, univ.
univ. prof. Dr RUDOLF RAUSCHER, univ. prof.
univ. prof. Dr FRANTIŠEK ŠTAJGR, univ.

Judikaturu spracovali a uspořádali

ANTONÍN HARTMANN,
odborový přednosta ministerstva spravedlnosti v. v.

Právo platné na Slovensku a Podkarpatské Rusi
zejména z druhého vydání Nástinu soukr.
spracovali podle díla univ. prof. Dr

Univ. prof. JUDr VLADIMÍR FAJNOR, JUDr
první president nejvyššího soudu.

Slovenskou judikaturu zpracoval

Dr JOSEF NOŽIČKA
vrchní odborový rada ministerstva pro

Díl pátý.
(§§ 1090 až 1341.)

PRAHA 1937.
NÁKLADEM PRÁVNICKÉHO KNIHKUPECTVÍ A NAKLADATELSTVÍ
V PRAZE.

mohl souditi, že se může u něho jednati o pohlavní chorobu (9504).

31. Zaměstnavatel odpovídá zaměstnanci za škodu, jež mu vznikla tím, že mu nemohla býti pro opominutí včasné přihlášky k pensijnímu pojištění započítána do čekací doby služební doba vykonaná za účinnosti zákona ze dne 16. prosince 1906, čís. 1 ř. zák. na r. 1907, nejen proto, že ho nepřihlásil k pojištění v dodatečné lhůtě podle § 73 [7] čís. nař. ze dne 25. června 1914, č. 138 ř. zák., nýbrž i proto, že ho nepřihlásil k pojištění již za účinnosti zákona ze dne 16. prosince 1906, čís. 1 ř. zák. na rok 1907, předpokládajíc, že nešlo o výjimečný případ podle § 5 [1] zák. Zaměstnavatel odpovídá zaměstnanci i za škodu, již mu způsobil tím, že ho po začátku působnosti zákona ze dne 16. prosince 1906, čís. 1 ř. zák. na rok 1907 přeložil z měsíční do týdenní mzdy, stalo-li se tak k obejítí tohoto zákona (9576).

32. Předpisy § 1294 obč. z. o odpovědnosti platí i pro poměr patentní. Žaloval-li vlastník patentu dřívějšího uživatele v dobré víře na odpovědnost za škodu tím vzniklou pozdějšímu uživateli, který později proti němu pronikl (Gl. U. N. F. 6786).

33. Kdo svým chováním dá podnět jednomu ze snoubenců k odstoupení od zasnoubení, není s ohledem na §§ 45 a 46 obč. z. povinen k náhradě škody (ZBl. sv. 34, str. 696, čís. 276).

34. Náhradu útrat nesporného řízení nelze požadovati od toho, kdo je zavinil, pokud ho nestíhá zavinění, zejména však náhradu útrat vzniklých přibráním advokáta (Gl. U. N. F. 7464).

35. Není odpovědnosti za ztrátu zásilky, vrátí-li ji příjemce stejným způsobem, jak mu byla zaslána (ZBl. sv. 36, str. 761, čís. 299).

36. Stát odpovídá za náhradu škody, použila-li vojenská stráž neprávem zbraně proti tomu, kdo se dopustil pouhého přestupku silničního řádu. Lhostejno, že v tratě době bylo v místě činu vyhlášeno stanné právo. Spoluzavinění poškozeného nemůže se stát shovívavati (9667). Viz č. 136, 138 u § 1295.

37. Podlehnutím ve sporu pro rušenou držbu není ještě prokázáno zavinění podle §§ 1294, 1295, 1299 ob. zák. obč. (10.003).

38. Zaměstnanec nemůže se domáhati na zaměstnavateli náhrady škody proto, že nepřihlásil podnik k úrazovému (nemocenskému) pojištění (10.223).

39. Je-li zjištěno trestním rozsudkem zavinění na úrazu dělníka, jest škůdce povinen k náhradě škody podle § 47 zák. o úrazovém pojištění dělni-

ckém. Škůdce jest povinen k náhradě celé škody, i když byla škoda spoluzavinená třetí osobou, aniž lze zjistiti podíl škůdců na škodě (10.291).

40. Nároku na náhradu škody majitele studní proti hornímu podniku není na závadu, že studny, již zřízením bylo vyhověno předpisům požárního policejního řádu, nebyly zřízeny se svolením stavebního (živnostenského) úřadu (11.253).

41. Nároku na náhradu za zohyzdění obličeje ztrátou oka není na závadu, že poškozený odmítá dáti si zasaditi a nositi umělé oko (11.864).

42. Pozůstalí po redaktoru nemohou se domáhati na jeho zaměstnavateli náhrady škody proto, že smluvní podmínkou redaktorova služebního poměru bylo, aby redaktor nebyl příslušníkem stavovské organisace, následkem čehož prý vzhledem k § 124 zákona ze dne 21. února 1929, čís. 26 Sb. z. a n., nebyly jim vyměřeny zvýšené zaopatřovací požitky (13.000).

43. S hlediska § 2 aut. zák. nezáleží na tom, zda řidič odpovídá podle všeobecných zásad občanského zákoníka za vlastní zavinění. Mohl-li řidič silostroje vynaložením možné opatrnosti zabrániti úrazu dítěte, nepřichází v úvahu případné spoluzavinění rodičů dítěte z důvodu opominutého dozoru (14.255).

44. Kdo žaluje na náhradu škody způsobené podle tvrzení, nedbalostí několika osob, musí dokázati, že škodný výsledek nastal nedbalostí každého ze žalovaných. Důkazní břímě je v takovémto případě ulehčeno poškozenému jen potud, že nemusí dokazovati určitý díl škodného výsledku, který připadá na každého z nich (16.430).

**Rozhodnutí rakouského nejv. soudu:**

Nárok z neoprávněného vedení exekuce spočívá na protiprávním jednání. Vztahují se naň jen předpisy práva občanského (§ 1294 obč. z.). Vedení sporu v dobré víře může sice založiti odpovědnost za následky prodlení, nezakládá však hrubé zavinění a tudíž ani náhradu za ušlý zisk. Ušlý zisk může býti samozřejmě konkretní škodou, jest-liže na př. kupec vešel již v dodací závazky, které nemůže splniti. I s abstraktní škodou tohoto druhu lze však nakládati stejně jako se škodou konkretní, bylo-li lze podle obvyklého běhu věcí bez nastalého prodlení prodatelova zisk očekávati (§ 1293 obč. z.). Než poškozený nesmí zanedbati možnost krytí (11. V. 1926, Ob III 333/26, sb. rozh. roč. 8., str. 153).

b) Rozhodnutí nejv. správ. soudu

viz u § 1295.

---

**Právo slovenské k § 1294:**

*je shodné.*

**Judikatúra:**

**Rozhodnutia najv. súdov:**

*1. Povinnosť k náhrade škody predpokladá podľa obecných zásad právny pomer založený na smluve, na zavinenom konaní alebo opominutí alebo na*

*iných zvláštnych okolnostiach, ktorých neľze subsumovať pod obecnú právnu normu (Kúria, č. 5332/1898).*

*2. Povinnosť k náhrade škody môžu založiť tiež dovolené konania, pokračovania a funkcie (Kúria, č. 6338/1899).*

## O povinnosti nahraditi škodu;

### 1. O škodě ze zavinění;

**§ 1295.** Každý jest oprávněn požadovati na škůdci náhradu škody, kterou mu způsobil ze zavinění, ať byla škoda způsobena přestoupením smluvní povinnosti nebo bez vztahu ke smlouvě.

Také ten, kdo způsobí úmyslně škodu způsobem příčícím se dobrým mravům, jest za to odpovědným, ale stalo-li se to u výkonu práva, jen tehdy, měl-li výkon práva zřejmě účel jiného poškoditi (III. díl. nov. § 154).

§ 1295.

**Úřední text:**

### Von der Verbindlichkeit zum Schadenersatze:

#### 1. Von dem Schaden aus Verschulden:

**§ 1295.** Jedermann ist berechtigt, von dem Beschädiger den Ersatz des Schadens, welchen dieser ihm aus Verschulden zugefügt hat, zu fordern; der Schade mag durch Übertretung einer Vertragspflicht oder ohne Beziehung auf einen Vertrag verursacht worden sein.

Auch wer in einer gegen die guten Sitten verstoßenden Weise absichtlich Schaden zufügt, ist dafür verantwortlich, jedoch falls dies in Ausübung eines Rechtes geschah, nur dann, wenn die Ausübung des Rechtes offenbar den Zweck hatte, den anderen zu schädigen (Nov. III, § 154).

[Původní text:]

§ 1295 jako odst. 1 novelového textu.

§ 1295. Jedermann ist berechtigt, von dem Beschädiger den Ersatz des Schadens, welchen dieser ihm aus Verschulden zugefügt hat, zu fordern; der Schade mag durch Übertretung einer Vertragspflicht, oder ohne Beziehung auf einen Vertrag verursacht worden sein.]

*Osnova čsl. zákona:*

#### 1. Odpovědnost za poškození zavinené.

§ 1114. [1] Každý má právo domáhati se náhrady škody na tom, kdo mu ji protiprávně způsobil svou vinou, ať škoda vznikne porušením povinnosti vyplývající z právního jednání, ať mimo takovou povinnost.

[2] Kdo způsobí úmyslně škodu způsobem příčícím se dobrým mravům, odpovídá za ni; stane-li se však poškození při výkonu práva, odpovídá jen tehdy, když výkon práva neměl míti jiného účelu než způsobiti škodu. Jinak odpovídá ten, kdo způsobí škodu výkonem práva, za škodu vzniklou, jen když překročí meze určené právem.

*Vládn. návrh:*

§ 1123 téhož znění jako odst. 1 § 1114 osnovy.

§ 1124. Také ten, kdo způsobí úmyslně škodu způsobem příčícím se dobrým mravům, odpovídá za ni; stane-li se však poškození při výkonu práva, odpovídá jen tehdy, když poškozený byl patrně dolením výkonu práva.

§ 1125. Mimo tento případ neodpovídá za vzniklou škodu ten, kdo nepřekročí hranice určené právním řádem (§ 1124).

že jednatelé společnosti s r. o. neohradili lom, který tato společnost provozovala,

c) za zaměstnance odpovídá právnická osoba podle §§ 1313 a, 1315.

27.    Také **stát** jako majetkový subjekt odpovídá za zavinění svých zástupců (judikatura č 123), odpovídá za vadný stav mostu (judikatura č. 129), nikoli však za vadný stav silnice (č. 139), za vadný stav úředních místností (č. 130, 131), za kursovní diferenci pro neoprávněně zabavenou valutu (č. 132, proti č. 145), za kočího vojenského povozu (č. 133), za poraněná vojína (č. 134). Neodpovídá za plenění při demonstracích (č. 142).

28.    O b e c odpovídá jako majetkový subjekt podle zásad o. z. o., ale za vrchnostenské výkony jen, je-li to stanoveno zvláštními předpisy, ale judikatura je značně kolísavá, takže se nedá zjistiti, že by se nejvyšší soud řídil nějakým obecným pravidlem. Kasuistika je uvedena v judikatuře pod č. 156—175.

29.    Podnikatelé mají někdy stanovenu odpovědnost, zvláště tak železnice (zák. č. 86/1937 a vlád. nař. č. 167/1937 Sb. z. a n., min. nař. č. 238/1854 ř. z.), doly (zák. č. 146/1854 ř. z.), při provozu motorových vozidel (§§ 45—55 zák. č. 81/1935 Sb. z. a n.), letadel (§§ 29 až 40 zák. č. 172/1925, zák. č. 243/1933 a č. 15/1935 Sb. z. a n.). Jinak nezná naše právo zvláštní odpovědnosti podnikatele průmyslového podniku (judikatura č. 210), ale podnikatel musí učiniti všechna opatření podle stavu vědy a techniky účelná a spolehlivá (č. 211, 212, 226), musí míti zdatný personál a učiniti opatření vyhovující řádné organisaci a provozu (č. 213), podle této zásady odpovídá podnikatel stavby vodovodu za zničení hromádek štěrku zúžením silnice při stavbě vodovodu (č. 217), za vadné trhání skal (č. 215). Podnikatel neodpovídá za stavbyvedoucího úředně schváleného (č. 239). Jiné případy uvedené v judikatuře jsou jen výrazem obecného zavinění a neupravují zvláštní podnikatelské risiko.

30.    3. Zvláštní otázkou jest odpovědnost za **úrazy na chodníku.** Otázka tato se točí kolem okolnosti, zda vlastník domu je podle policejních předpisů povinen chodník čistiti (judikatura č. 273, 296, 297, 298), což náš nejv. soud vykládá extensivně (č. 279, 280, 286) podle hlediska řádné pečlivosti (č. 281). I obcí nepřevzatý chodník musí vlastník domu opatrovati (č. 289). Jiné stanovisko zaujal n. s. v případě opatrování příchodu k domu a pravil: »Jest samozřejmou povinností majitele obytného domu, aby, není-li chodníku u domu, udržoval cestu ke vchodu do domu, pokud vede po pozemku patřícím k domu, ve schůdném stavu, t. j. v takovém stavu, aby lidé mohli po ní bezpečně do domu vcházeti a z domu vycházeti, a odpovídá za škodu z opominutí této povinnosti podle §§ 1293, 1294, 1295, 1325 o. z. o. Není třeba, aby opominutí záleželo v nešetření zvláštního policejního předpisu, neboť jde tu o povinnost, náležející majiteli domu z všeobecných ohledů bezpečnostních« (Vážný č. 8607). To znamená, že upravil-li někdo místo tak, aby lidé po něm chodili, má je udržovati, aby lidé po něm mohli choditi bezpečně, čili jinými slovy má jednati tak, jak se to od slušného člověka očekává. Rozhodnutí se netýká veřejného chodníku u domů. Starší judikatura stála na stanovisku, že majitel domu je podle policejních předpisů

povinen chodník obcí převzatý čistiti. V rozhodnutí Vážný č. 12.318 zaujal n. s. hledisko, že podle vyhlášky gubernia z 25. května 1838 (prov. sb. čes. č. 134) a podle § 28, č. 3 obec. zříz. českého může obec uložiti majitelům domu, že mají čistiti chodníky a že předpis takový je podle § 35 obec. zříz. čes. závazný. Stejné rozhodl n. s. v případech pražských (Vážný č. 6724, 12.803). Praha (vyhláška gubernia z 25. V. 1838) a Krnov (zák. č. 33/1906 z. z. slez.) mají zvláštní předpisy, jimiž se ukládá majitelům domů, aby odklizeli sníh a náledí s chodníků podél svých realit. Pokud se týče ostatních obcí v zemích historických, stál nejvyšší soud správní na stanovisku shodném se stanoviskem n. s., ale rozhodnutím z 2. dubna 1936, č. 8074/33 (Bohuslav 12.358) postavil se n. s. na stanovisko, že obce v Čechách (mimo Prahu) nejsou oprávněny ukládati majitelům domů, aby pečovali o chodníky obcí převzaté. Druhý případ týkal se Brna (Bohuslav 12.294/36). Poněvadž jinak venkovské obce moravsko-slezské (kromě Krnova) řídí se obdobnými předpisy, je za to míti, že pro ostatní obce platí stejné zásady (srov. k tomu H o r a, Právní prakse I., str. 113). Tolik n. s. s. Je jisto, že tím nastává divergence judikatury n. s. a n. s. s. Poněvadž soudce řeší pro svůj případ samostatně i prejudiciální otázku práva správního, není jisto, zda se n. s. postaví na stejné stanovisko jako n. s. s. Situace nyní je ta, že obec sice nemůže ukládati pokuty za nečištění, ale civilně (pokud nezaujme n. s. stejné mínění jako n. s. s.) je majitel domu odpověden za řádné čištění chodníků. N. s. s. ex professo musí se zabývati otázkou, která jest pro civilního soudce pouze prejudiciální; bylo by záhodno, aby se n. s. přizpůsobil n. s. s. To platí, pokud jde o chodníky obcí převzaté; pokud jde však o chodníky obcí nepřevzaté, jest civilní odpovědnost majitele domu nesporně dána. Odpovědnost za úrazy na chodníku jest v případě, že sníh nebyl odstraněn, nebo že náledí nebylo posypáno. Praxe stojí na stanovisku, že za znečištění chodníku třetí osobou majitel domu neodpovídá (na př. pohozená slupka, judikatura č. 290).

Podobně jako rozhodnutí Vážný č. 8607 (viz odstavec předcházející), že vlastník odpovídá za řádný příchod do domu, stojí n. s. na stanovisku, že majitel domu má pečovati o řádné osvětlení schodiště (judikatura č. 303, 304, 305) a za bezpečnostní poměry ve veřejně přístupných místech domu (judikatura č. 300, 302, 360, 399, 400, 402).

## IV. Zneužívání práva a škoda způsobená jednáním proti dobrým mravům.

1. U § 1294 čís. 17 bylo řečeno, že protiprávnost jednání je stanovena velmi pružně, poněvadž o. z. o. vychází nejen z porušení právních předpisů, nýbrž i z porušení subjektivních práv a že subjektivní práva v o. z. o. jsou tak široce pojata, že soudci zůstává široké pole volné úvahy. Zdálo by se, že jest tedy další rozšíření zbytečné. Bohužel nauka, která kotvila v pojmu subjektivního práva, dovedla z toho velmi málo vytěžiti a tím, že přehlédla kvalifikaci tohoto pojmu jako pojmu systematického, domnívala se, že ideologie skrytá v tomto pojmu jest vlastním poznáním práva. Tím se ovšem utápěla v nekonečných a neplodných rozpravách. Za těchto svízelných poměrů si praxe jen zcela pomalu razila cestu, ale myslím, že i bez druhého odstavce byla by praxe dovedla vytěžiti to, co v § 1294 a v prvém od-

gačnímu, tu může se domáhati i ten, který tímto překročením byl dotčen, náhrady jak proti zciziteli, tak i proti nabyvateli, je-li u nich dán úmysl tuto třetí osobu poškoditi, po případě pouze proti jednomu z nich, jednal-li jen on úmyslně.

36.     b) Dále jsou případy zneužití petičního práva učiniti trestní oznámení pouze k ukojení nevraživosti (judikatura č. 424 a u § 1297, č. 25, 26). Také zneužívání civilní žaloby jest zneužitím práva. Tak ten, kdo z konkurenční zášti pohne druhého, aby žaloval třetího konkurenta (č. 425). Nebo dosažení kontumačního rozsudku lstivým předstíráním (č. 427). Podání žaloby je tehdy zneužitím práva, byla-li žaloba podána patrně za účelem poškoditi žalovaného (č. 433). Také exekuce může býti šikanou (zneužitím práva, č. 429), podobně návrh na prohlášení konkursu (č. 435).

37.     c) Uvádí se pak také zneužití výkonu vlastnického práva, poněvadž však toto je zakázáno již § 364 I o. z. o., je zneužití práva vlastnického již jinde reprobováno a sankce zneužití vlastnického práva proti sousedům a jiným vlastníkům spadá pod prvý odstavec § 1295. Praxe zahrnuje však i tyto případy pod druhý odstavec, ale nesprávně, dále sem počítá případy nezahrnuté již v § 364 (viz judikatura č. 428). Z toho je nejlépe viděti, jak redaktoři novel nerozuměli o. z. o. a že jim šlo více o německé obč. zák., než o staré právo. Pro praxi by bylo lhostejno, zda reprobované případy se staví pod sankci prvého nebo druhého odstavce, ale podle prvého odstavce dostačí lehké nedopatření, kdežto podle druhého vyžaduje se úmysl. (Srov. k tomu Sedláček: Vlastnické právo, str. 23, 93). Rozdíl mezi případy spadajícími pod prvý a druhý odstavec jsou tyto:

aa) pod prvý odstavec spadají případy, kdy jeden vlastník užívá své věci takovým způsobem, že omezuje volnost druhého v užívání jeho věci,

bb) pod druhý případ spadají případy, kdy sice volnost druhého vlastníka není omezována, ale jinak jest mu způsobena újma.

Hranice jsou tedy úplně plynulé a bude na soudci, aby uvážil, kdy dostačí lehké zavinění a kdy se vyžaduje úmyslu.

38.     d) Podle § 1459 se volno každému nakupovati zboží, kde chce. Tím byla stanovena zásada smluvní volnosti proti dřívějším omezením smluvním. Kdo je omezuje, dopouští se zásahu do práva druhé osoby a jest odpovědem podle prvého odstavce. Není zásahem do práva obchodníka, odrazuje-li se mu zákaznictvo, není-li to nekalou soutěží. Jinak, děje-li se tak záměrně za tím účelem, aby tato osoba

39.     byla zničena. S tím souvisí zásadně otázka bojkotu. **Bojkot** se definuje jako hnutí, vycházející od několika osob, jiným množstvím osob provedené a směřující k tomu, aby byly přerušeny hospodářské styky s určitou osobou nebo osobami, aby tyto byly tímto poškozením donuceny k určitému jednání nebo opominutí nebo aby byly hospodářsky potrestány. Bojkot může býti bojkotem zboží nebo bojkotem práce, buď se strany zaměstnance nebo zaměstnavatele, stávka, výluka, černé listiny atp. Bojkot sám o sobě jest dovoleným bojovným prostředkem a není sám o sobě protiprávní snad tím, že jsou tím dotčeny cizí hospodářské zájmy, ale může se státi za určitých okolností protiprávním. Západoevropská praxe posuzovala nepřípustnost bojkotu se dvou hledisek. Starší hledisko vycházelo ze zá-

sady, že se tím porušuje hospodářská osobnost, která má býti uznávána, z čehož se vyvozovalo subjektivní právo na nerušený výkon povolání a živnosti, při čemž platila zásada rovné svobody pro všechny. Podle toho posuzovala se přípustnost bojkotu podle účelu, zda sledoval cíle oprávněné nebo podle práva a podle dobrých mravů srovnatelné, dále podle prostředků, zda neodporují účelu nebo zda nejsou úměrné. Z toho se pak vyvozovalo, že je nepřípustný bojkot, který může míti v zápětí zkázu hospodářské existence, poněvadž tato je hodnotnější než účely bojkotem sledované. V novější době se bojkot posuzuje podle toho, zda odporuje dobrým mravům bez ohledu na to, zda je schopen způsobiti zkázu bojkotovaného. Právo na uznávání hospodářské existence spočívá sice na osobním právu jednotlivce a s tím spojenými hodnotami jako obchodní pověst, jméno, živnostenské individualisační prostředky a možnost, svou podnikavost v hospodářském životě uplatňovati, ale nedává nárok na úplnou ochranu na nerušenou z obchodu nebo z povolání a na absolutní ochranu obchodních a hospodářských zájmů proti třetím, také nemá nikdo nárok na práci v tom smyslu, že by práci musil obdržeti, poněvadž není zákonného nároku na nerušenou činnost a výkon práce, který by byl bojkotem porušen a proto není bojkot protiprávní. V úmyslném poškození hospodářských zájmů a obchodních spojení, což je známou každého bojkotu, může býti protiprávní jednání, odporuje-li dobrým mravům, buď že bojkotem sledované zájmy nebo prostředky bojkotu odporují dobrým mravům, anebo že jest zřejmý nepoměr mezi způsobenou škodou a docíleným užitkem. Novější praxe je pružnější, ačkoliv se od starší praxe zásadně neodchyluje, ale není zapotřebí, aby bojkot měl za následek hospodářskou zkázu poškozeného, dostačí, že podnikání jeho bylo ztíženo. Na druhé straně i zničení hospodářské existence nemusí odporovati dobrým mravům. Bojkot jest protiprávní tehdy, involvuje-li v sobě trestné činy (vydírání, útisk), tento případ posuzuje se podle prvého odstavce, jinak podle druhého odstavce. (Srov. O s e r : Das Obligationenrecht I. k čl. 41, str. 289—291). Sem patří i úmyslné znemožnění úvěru.

40.     e) Využitkuje-li někdo vědomě pro sebe formální nedostatky, které sám způsobil, jest to úmyslné jednání proti dobrým mravům, tak na př. přemluví-li rukojmí věřitele, aby netrval na písemném prohlášení a uplatňuje-li ve sporu tento nedostatek; jestliže žalobce přemluvil žalovaného, aby nepodával odpověď na žalobu, poněvadž řízení zůstane v klidu a vymohl-li si pak rozsudek pro zmeškání. Kdo ví o tajné plné moci, ale spoléhá se na zjevnou plnou moc, ač jednání jeho s plnomocníkem je tajné plné moci, aniž odporuje zjevné, obzvláště je-li kolise mezi zmocněncem a třetím na škodu zmocnitelovu. Dále sem patří námitky, o nichž nabyvatel ví, a který směnku na sebe převedl proti tím účelem, aby námitky příslušející dlužníku proti dřívějšímu směnečnému věřiteli byly zmařeny. Sem patří exceptio rei judicatae, námitky z právního jednání, které bylo podkladem vystavené směnky, na př. že jde o lichvu, námitka nesplněné smlouvy podle § 1052 o. z. o., že závazek zanikl mimosměnečně, že závazek byl posledního, že jde o jednání proti dobrým mravům, že závazek byl zaplacen, že směnka byla proti úmluvě do-

# COMMERCIAL CODE
## "Obchodní zákoník"

### Act No. 513/1991 Coll.,
### as amended

**Translation and Commentary by**



Knihovna UK PF

3125061561

**Copyright © Trade Links, s.r.o., June 2006**

# PART ONE
# GENERAL PROVISIONS

## CHAPTER I
## FUNDAMENTAL PROVISIONS

### Division I
### Introductory Provisions

### Section 1
### Scope of the Code

(1)   This Code regulates the status of entrepreneurs\*, business contractual relationships and some other relationships connected with business activities\*\*.

(2)   Legal relationships pursuant to subsection (1) are subject to the provisions of this Code. Where it proves impossible to resolve certain issues in accordance with the provisions of this Code, they shall be resolved under the civil law provisions. In the event that such issues cannot be resolved in accordance with the civil law provisions (rules), they shall be considered according to trade usage (commercial practices) and, in their absence, according to the principles upon which this Code is based.

**Commentary on section 1:**

*The Czech Commercial Code can be compared - to some extent - with the Companies Act and the Sale of Goods Act in the UK and the Uniform Commercial Code in the USA.*

*The Czech Commercial Code is primarily a legislative Act of private law, but the status of entrepreneurs is also subject to public law provisions (e.g. the Trades Licensing Act; see section 2).*

*The scope of regulation outlined in subsection (1) is not exhaustive. Parts One and Two of the Commercial Code deal with "the status of entrepreneurs", including the regulation of partnerships, companies and co-operatives and also with "some other relationships connected with*

---

\* The Czech word "podnikatelé" is also translated as "businessmen" or "businesspersons" and refers to legal entities and individuals (i.e. to legal and natural persons) undertaking business activity in accordance with section 2(2).
\*\* The Czech word "podnikání" is translated as "business activity", "business activity", "commercial activity" or "entrepreneurial activities".

---

*business activities" (e.g. unfair competition). The term "entrepreneur" is defined in section 2. Wholly or partly foreign-owned businesses in the Czech Republic and the protection of their property (sections 21-26) are also subject to the Commercial Code, which repealed the former Joint Venture Act. The Commercial Code further applies to "persons other than entrepreneurs" if the Commercial Code or another Act so provides.*

*The extensive Part Three of the Commercial Code regulates individual types of business contracts.*

*Legal relationships under subsection (1) are subject to the Commercial Code, unless they are regulated in another Act.*

*Where an issue is not regulated by the provisions of the Commercial Code or another Act, it is considered in accordance with the civil law provisions, mainly the Civil Code. The civil law provisions apply, for example to acts-in-law (also referred to as "legal acts" or "legal transactions"; in Czech "právní úkony"), ownership, etc.*

*Where it proves impossible to resolve an issue under the Commercial Code or civil law provisions, it is considered in the light of trade usage (i.e. the established practice in a particular trade and/or between the parties concerned).*

*As regards business (contractual) obligations, further details of the relationship between the Commercial Code and the Civil Code are laid down in section 261 and the details of applicability of trade usage in section 264.*

*The provisions of this Code apply, unless an international agreement (treaty, convention) that is binding on the Czech Republic provides for otherwise [see section 756 and also section 25(3) and 43(1)]. As of 1 May 2004 the Czech Republic is a Member State of the European Union, i.e. a party to the European Community Treaty seeking to achieve the creation of the common market. EC Regulations directly apply to the Czech Republic and to persons in the Czech Republic. EC Directives have been largely transposed (or are in the process of being transposed) into the Czech law.*

### Section 2
### Business Activity

(1)   "Business activity" (also referred to as "entrepreneurial activity"; in Czech "podnikání") is understood to be systematic activity which is independently undertaken by an entrepreneur in his\* own name, and at his own liability (responsibility), with a view of making a profit.

---

\* "His" also refers to "her" and "its", and similarly "he" refers to "she" and "it".

# CHAPTER IV
# BUSINESS ACCOUNTING

### Section 39

(1)   Business companies, partnerships and co-operatives must have their financial statements and annual report audited (when so required) under this Code or another Act.

(2)   An entrepreneur shall provide his auditor with all accounting records and necessary explanations for the purpose of the (statutory) audit pursuant to subsection (1).

(3)   The cost of auditing shall be settled by the entrepreneur whose financial statements are audited.

**Commentary on section 39:**

*Business entities must keep their accounts in accordance with the Accounting Act, Decree on Double-Entry Accounting and the Czech Accounting Standards.*

*Under the Accounting Act, the following entities must have their financial statements and annual reports audited:*

*– joint stock companies if at the close of the balance-sheet day of the current and previous accounting periods their total gross assets attained or exceeded CZK 40 million, or their net annual turnover attained or exceeded CZK 80 million, or if their average number of employees was at least 50;*

*– other business entities if at the close of the balance-sheet day of the current and previous accounting periods they attained or exceeded at least two of the three criteria mentioned above;*

*– all banks and regulated financial institutions;*

*– foundations and certain other non-profit organizations.*

*All consolidated financial statements and annual reports must also be audited. Auditing is regulated by the Act on Auditors (No. 254/2000 Coll., as amended).*

### Section 40

Business companies, partnerships and co-operatives shall make public their financial statements and annual reports in the way laid down in this Code and in another Act.

**Commentary on section 40:**

*Financial statements and annual reports, together with an auditor's report (if an auditor's report is compulsory), are required to be filed in the registry*

*of instruments kept by the registration court. Businesses whose financial statements and annual reports are subject to the statutory audit must also publish their financial statements in the Commercial ("Business") Bulleting ("Obchodní věstník") in accordance with section 21(4) of the Accounting Act.*

# CHAPTER V
# ECONOMIC COMPETITION

## Division I
## Participation in Economic Competition

### Section 41

Individuals and legal entities taking part in economic competition (hereafter referred to as "competitors"), even if they are not entrepreneurs, have the right freely to develop their competitive activity in order to achieve economic benefits and to associate themselves for the pursuit of such activity. However, they are required to observe the statutory (legally binding) provisions on economic competition and may not abuse their participation in such economic competition.

**Commentary on section 41:**

*The term "competitor" is wider than "entrepreneur." The European Union has introduced a number of anti-trust provisions. See also commentary on section 42.*

### Section 42

(1)   Abuse of participation in economic competition means unfair competitive activity (hereafter referred to as "unfair competition") and unlawful restriction of economic competition.

(2)   Unlawful restriction of economic competition is subject to another Act.

**Commentary on section 42:**

*The general provisions on unfair competition are included in the Commercial Code (sections 44 to 55). The Act on Protection of Economic Competition (also referred to as the Antitrust Act) aims to protect economic competition of products and services on the market against restriction, distortion or elimination (referred to as "interference"). The Office for the Protection of Economic Competition has extensive powers in protecting economic competition. Unfair competition is further subject to sanctions under*

*the Criminal Code (in particular sections 149 et seq) and the Minor Offences Act [section 24(1)(c)].*

*The EC legislation is relevant with regard to EU-wide distortion of competition and abuse of dominance in the relevant market.*

### Section 43

**(1)** Unless it is provided for otherwise in international agreements (treaties) binding the Czech Republic and promulgated in the Collection of Laws or the Collection of International Agreements (Treaties), the provisions of this Chapter shall not apply to business transactions having effects abroad.

**(2)** Foreign persons who undertake business activity in the Czech Republic under this Code shall have equal status with Czech persons in respect of protection against unfair competition. In addition, foreign persons may seek protection on the basis of international agreements (treaties) binding on the Czech Republic, provided that these agreements (treaties) have been promulgated in the Collection of Laws or the Collection of International Agreements (Treaties); or if there are no such agreements, they may do so on the basis of reciprocity.

*Commentary on section 43:*

*Subsection (1) restricts the applicability of the (Czech) provisions on economic competition to the territory of the Czech Republic, unless the relevant international agreement provides for otherwise. The Czech Republic is harmonizing its statutory provisions on interference in economic competition with the EC (EU) relevant provisions.*

## Division II
## Unfair Competition

### Section 44
### Fundamental Provisions

**(1)** "Unfair competition" (in Czech "nekalá soutěž") means such activity in economic competition which conflicts with the accepted practices (good morals) of competition and which may be detrimental to other competitors or customers. Unfair competition is prohibited.

**(2)** Unfair competition pursuant to subsection (1) means in particular the following:

**(a)** misleading advertising (deceptive advertising);

**(b)** misbranding;

**(c)** passing off;

**(d)** sponging on the reputation of another competitor's enterprise, products or services;

**(e)** bribery (corruption);

**(f)** disparagement;

**(g)** comparative advertising;

**(h)** violation of trade secrets;

**(i)** repetitive endangering of health of consumers and the environment.

*Commentary on section 44:*

*Section 44 defines unfair competition and states instances of unfair competition. See also comments on section 42.*

### Section 45
### Misleading Advertising (Deceptive Advertising)

**(1)** "Misleading advertising" (or "deceptive advertising"; in Czech "klamavá reklama") is the dissemination of information by a competitor about his own or someone else's enterprise, products or services, with the aim of creating misleading perceptions as to the advantage of his own or someone else's enterprise at the expense of other competitors or consumers.

**(2)** "Dissemination of information" (in Czech "šíření údajů") is deemed to be communication through the spoken or written word, the press, pictures, photographs, radio or television broadcasts or other communications media.

**(3)** The use of a fact which in itself is true but which, owing to the circumstances or context in which it is presented, may be deceptive, is also considered to be misleading.

*Commentary on section 45:*

*In addition to the Commercial Code's provisions, the Consumer Protection Act lays down that "no one may mislead a consumer, particularly by providing untruthful (false), unsubstantiated, incomplete, inaccurate, unclear, ambiguous or exaggerated information, or by concealing information about the real properties of products or services". Compliance with the Consumer Protection Act is mainly followed by the Czech Trade Inspectorate ("Česká obchodní inspekce"). Advertising is further subject to the Advertising Act, the Radio and Television Broadcasting Act and other statutory provisions. See further section 50a of the Commercial Code on comparative advertising. The EC Directive No. 84/450/EEC also deals with misleading (i.e. deceptive) advertising.*

## Section 46
## Misbranding

**(1)** "Misbranding" (in Czech "klamavé označení zboží a služeb") means the marking of goods and services in such a way as to create an erroneous impression in the market place about the country, region or location where the goods or services so marked originated or are made by a certain manufacturer (producer), or about special characteristics or quality of such goods or services. It is irrelevant whether such markings appear on the goods, the packaging, or in commercial documentation, etc. It is also irrelevant whether the misleading marking was provided directly or indirectly, or by what means. Section 45(3) applies as appropriate (mutatis mutandis).

**(2)** Misbranding also means incorrect marking of goods or services with expressions such as "(of) the kind", "(of) the type", or "(using) the method" in order to distinguish such goods or services from an authentic original, if such marking is capable of creating an erroneous impression with regard to the origin or nature of the goods or services involved.

**(3)** The marking of goods and services which is commonly used in business to describe a particular kind or a particular quality is not considered misleading, unless accompanied by additional words which might be misleading, e.g. "genuine", "original", etc.

**(4)** The above provisions do not affect the rights and duties ensuing from the registered origin designation of products, trademarks, protected plant varieties and livestock (animal) breeds, as laid down in other Acts.

*Commentary on section 46:*
*In addition to the provisions of the Commercial Code, misbranding may also be subject to the provisions of other Acts, such as the Act on Protecting the Origin Designation of Products, the Trademarks Act, etc.*
*The Czech Republic has adopted the international regulation of trademarks as laid down in the Madrid Agreement, the registration of the origin of goods as set out in the Lisbon Agreement and the protection of intellectual property as defined in accordance with the Paris Agreement. The Directives 84/450/EEC, 89/104/EEC, 91/250/EEC and 2004/48/EEC also apply to misbranding.*

## Section 47
## Passing Off

"Passing off" (or "palming off"; in Czech "vyvolávání nebezpečí záměny") means:

**(a)** using a commercial name or designation or special designation (logo) of an enterprise which is already legitimately being used by another competitor;

**(b)** using a special designation of an enterprise, a special marking or a specific design related to products, services, or commercial materials which customers associate with a particular enterprise, or a particular branch of an enterprise (e.g. packaging, printed matter, catalogues, advertising materials, etc.);

**(c)** imitating a competitor's products, packaging or performance, unless this imitation involves elements which are predetermined functionally, technically or aesthetically, and the imitator has taken every possible measure which could be required of him to avoid the danger of mistaken identity, or at least has substantially restricted such danger;

if such activity is capable of creating the danger of passing off (i.e. mistaken identity or a misleading notion about a particular enterprise, its commercial name or logo).

*Commentary on section 47:*
*The use of one and the same commercial name by two different entrepreneurs in one or similar line of business is also subject to the provisions of sections 8 to 12. In the case of use of a competitor's logo or markings, the decisive consideration is whether customers associate them with a particular enterprise. Protection is also granted against the imitation of a competitor's products and/or their design and packaging. In the European Union, Directives 84/450/EEC and 2004/48/EEC relate to passing off.*

## Section 48
## Sponging on Another's Reputation

"Sponging on another's reputation" (in Czech "parazitování na pověsti") means the use by a competitor of the reputation of another competitor's enterprise, products or services to gain extra benefits for own or a third party's business activity which would not otherwise have been achieved by such person.

*Commentary on section 48:*
*Sponging on another's reputation makes use of another competitor's goodwill. Directive No. 2004/48/EEC is applicable.*

## Section 49
## Bribery (Corruption)

Under this Code, "bribery" (or "corruption"; in Czech "podplácení") means activity whereby:

(a)   a competitor offers, promises or renders benefits, directly or indirectly, to an individual who is a member of another competitor's statutory or similar organ or employee (or an individual of similar status) to gain an advantage by means of unfair procedure for himself or a third party (another competitor) to the detriment of other competitors, or an unjustified competitive advantage (benefit); or

(b)   an individual pursuant to (a) directly or indirectly demands or solicits or accepts any kind of benefit for the same purpose.

### Commentary on section 49:

*A bribe under section 49 may be material (e.g. money) or non-material (e.g. honorary membership). Bribery (corruption) is also subject to the provisions of the Criminal Code.*

## Section 50
## Disparagement

(1)   "Disparagement" (or "disparaging"; in Czech "zlehčování") means activity whereby one competitor states or disseminates false information about the circumstances, products or services of another competitor, such false information being likely to be detrimental.

(2)   Disparagement also involves stating and disseminating truthful information about the circumstances, products or services of another competitor, if such information is capable of causing detriment to that competitor. However, it is not considered unfair competition if a competitor is forced by circumstances to such conduct (e.g. in justified defence).

### Commentary on section 50:

*Disparagement (more narrowly termed "trade libel") consists in discrediting a particular competitor's reputation (goodwill). Unjustified interference which harms the good reputation of a particular legal entity is to be prevented (section 19b of the Civil Code). See also section 49(1)(a) of the Minor Offences Act and section 206 of the Criminal Code.*

## Section 50a
## Comparative Advertising

(1)   "Comparative advertising" ("srovnávací reklama") means any advertising which explicitly or by implication identifies a competitor or goods or services offered by a competitor.

(2)   Comparative advertising is admissible where:

(a)   it is not misleading;

(b)   it compares only goods or services meeting the same needs or intended for the same purpose;

(c)   it objectively compares only such features of the goods or services which are fundamental (material), relevant, verifiable and representative; as a rule, several features must be compared and these may include the price; only exceptionally may comparison of one feature be permitted, provided that such comparison fully meets all the prescribed conditions (requirements);

(d)   it does not create confusion in the market place between the person (entity) whose products or services are advertised and a competitor, or between their enterprises, goods or services, or trademarks, commercial names or other distinguishing marks typical of one or the other;

(e)   it does not discredit by false information a competitor's enterprise, goods or services, or trademarks, commercial name or other distinguishing marks which are typical of the competitor or of such competitor's activity, relationships or other circumstances;

(f)   it relates to products for which the competitor concerned is authorized to use the protected origin designation and compares them to other products with protected origin designation;

(g)   it does not take unfair advantage of the goodwill (reputation) related to a competitor's trademark, commercial name or other distinguishing marks which have become typical of such competitor, or of the origin designation of competing products (goods);

(h)   it does not offer goods or services as imitations or replicas of goods or services bearing a protected trademark or trade name or commercial name.

(3)   Any comparison referring to a special offer shall indicate in a clear and unequivocal way the date on which the offer terminates or, where appropriate, that the special offer is subject to availability of the goods or services which are offered. When the special offer has not yet begun, the competitor must also state the date of the beginning of the period during which the special price or other specific conditions shall apply.

### Commentary on section 50a:

*Section 50a has been added to the Commercial Code to include the provisions on comparative advertising in the process of harmonization with the EU legislation.*

*Misleading (deceptive) advertising is subject to section 45 of the Commercial Code. Subliminal advertising and concealed advertising are prohibited.*

*Directive No. 97/55/EC which deals with comparative advertising supplements Directive No. 84/450/EEC on misleading advertising. Directive No. 2004/48/EEC is also relevant to this issue.*

## Section 51
### Violation of Trade Secrets

"Violation (infringement) of a trade secret" (in Czech "porušení obchodního tajemství") involves acts whereby an acting person unlawfully informs another person about a trade secret (section 17), or provides him with access to it, or exploits it for his own or another person's benefit, if such trade secret (inside information) can be made use of in competition, and of which the acting person learned:

(a) as a result of having been entrusted with that secret, or by having gained access to it (through technical documentation, instructions, drawings, models or patterns) on the basis of an employment or other relationship with the competitor, or while performing a function (office) to which the individual was appointed by a court or some other authority (organ); or

(b) through his own or another person's unlawful acts.

**Commentary on section 51:**
*A trade secret is defined in section 17 of the Commercial Code. The right (title) to it is regulated in sections 18 to 20. See also section 513.*
*The duty not to disclose trade secrets is further subject to the Act on Protection of Economic Competition and the Labour Code. Sanctions under the Criminal Code, if relevant, are regulated in its section 128.*

## Section 52
### Repetitive Endangering of Health of Others and the Environment

"Repetitive endangering of health of others and the environment" (in Czech "ohrožování zdraví a životního prostředí") is activity whereby a competitor distorts the conditions of economic competition by manufacturing and marketing products, or by carrying out activities, which endanger health or the environment protected by law, in order to acquire benefits for himself or for another person at the expense of other competitors or consumers.

**Commentary on section 52:**
*Section 52 applies to activity by which a competitor benefits from not observing a particular limit (standard) set for manufacturing (processing) or the sale of certain products.*

## Division III
### Legal Protection against Unfair Competition

## Section 53

Persons whose rights have been violated (infringed) or endangered as a result of unfair competition can demand that the offender desist from such acts and remove the unlawful state of affairs. They can also demand appropriate satisfaction (which may be rendered in money), compensation for harm (i.e. damages) and the surrender of unjust enrichment.

**Commentary on section 53:**
*Section 53 specifies what can be claimed under the Commercial Code by a person whose rights have been violated (infringed) or endangered as a result of unfair competition. Sanctions pursuant to the Criminal Code, if relevant, are laid down in sections 149 to 152 (of the Criminal Code).*

## Section 54

(1) The right that an offender desists from his unlawful acts and removes the unlawful state of affairs may also be claimed, apart from the cases referred to in sections 48 to 51, by a legal entity authorized to protect the interests of competitors or consumers.

(2) If the right that the offender desists from his unlawful acts or removes the unlawful state of affairs is claimed in the cases pursuant to sections 44 to 47 and section 52 by a consumer, the offender must prove that his acts did not involve acts of unfair competition. The same shall apply to the offender's duty to provide damages if clarification is needed as to whether harm was caused by acts regarded as unfair competition and to provide appropriate satisfaction and to surrender unjust benefit (to the other party); however, the amount of harm caused, the significance and extent of other detriment, the nature and extent of unjust enrichment must always be proved by the claimant, even if he is a consumer.

**Commentary on section 54:**
*The right to defend the interests of competitors or consumers also pertains to a legal entity, such as an entrepreneurs' association, a consumers' union, etc.*

## Section 55
### Repealed

*Business activity which, under the Trades Licensing Act, can only be carried out by individuals is entered in the Commercial Register as a particular company's (entity's) business, if the applicant proves that the business activity will be effected by individuals who have the required trade certificate or trade licence.*

*Although all partnerships and companies are regarded as legal entities, there are some differences in their income tax regime (laid down in the Income Taxes Act). In 2006 the (general) corporate income tax is 24%.*

*An individual or a legal entity may bear unlimited liability only in one entity. Under Czech law, unlimited liability for the entity's obligations is borne by any partner in a general partnership and any general partner in a limited liability partnership.*

### Section 56a

**(1)**   Abuse of a majority or a minority of votes in a company is prohibited.

**(2)**   Any activity (conduct, negotiation) aimed at putting some of the company's members at a disadvantage by means of abusive practices is prohibited.

**Commentary on section 56a:**

*The provision of subsection (1) is of a proclamatory nature. Where a minority shareholder (member) files an unreasonable (chicanery) lawsuit to prevent or to delay the implementation of the relevant general meeting's resolution, the competent court does not take a preliminary examination of the lawsuit in order to establish whether the filing of such lawsuit is, or is not, abuse of a minority shareholder's right.*

*As regards subsection (2), it is not entirely clear whether the law refers to another member's or a board member's activity (conduct) aimed at putting some of the company's members at a disadvantage by means of abusive practices.*

### Section 57
### Company Formation

**(1)**   Unless other provisions of this Code imply otherwise, a company is formed (founded) on the basis of a deed of association, signed by all of the promoters (incorporators, founders). The promoters' (incorporators') signatures must be officially certified (authenticated). A deed of association of a limited liability company or a joint stock company must be in the form of a notarial deed.

70

**(2)**   Where a representative concludes (signs) a deed of association on the basis of a power of attorney, the principal's signature (i.e. the signature of the person represented) on the power of attorney must be officially certified. This power of attorney shall be attached to the deed of association.

**(3)**   Where this Code permits the formation of a company by a single person, a deed of association shall be replaced by a deed of formation ("zakladatelská listina") in the form of a notarial deed. A deed of formation must include the same essential data as a deed of association.

**Commentary on section 57:**

*Legal aspects of a company formation are briefly dealt with in section 57. A lawyer's advice and co-operation with a (public) notary are necessary in the process of forming a company. Special attention should be paid to instruments (documents) issued abroad and to their official certification ("legalization"). In some cases, "superlegalization" of such instruments is required (see section 62 of the Act on Private International Law, No. 97/1963 Coll., as amended).*

### Section 58
### Registered Capital (Share Capital)

**(1)**   "Registered capital" (also referred to as "share capital"; in Czech "základní kapitál") of a company shall mean the total of all its members' monetary and nonmonetary investment contributions to such capital. It must be expressed in pecuniary terms (in units of Czech currency). A member participates in registered capital by his investment contribution ("vklad"). Registered capital is a part of equity capital.

**(2)**   It is mandatory for a limited partnership, a limited liability company and a joint stock company to have registered capital. Its amount shall be entered in the Commercial Register where the law so provides.

**Commentary on section 58:**

*Registered capital ("share capital", "capital stock" or "basic capital") expresses the monetary amount of assets invested in a company (entity). Minimum amounts of registered (share) capital are prescribed for a limited liability company and a joint stock company.*

### Section 59
### Investment Contributions

**(1)**   A member's investment contribution in a company shall be the aggregate of his pecuniary funds ("monetary investment contribution") and (or) another asset appraisable in money ("nonmonetary investment contribution" or "in-kind

71

*Commentary on section 263:*
*Section 263 lists those provisions of the Commercial Code which are mandatory (i.e. those which the contracting parties may not exclude by agreement). Other Acts which regulate certain specific relationships may include their own mandatory provisions.*

### Section 264

(1) In determining the rights and duties arising from a relationship of obligation, account is also taken of the business practices (trade usage) prevalent in a particular field of business, unless these are contrary to the contents of the contract or to the law.

(2) The business practices (trade usage) to be taken into consideration pursuant to the contract take precedence in their application over those provisions of this Code which are not of a mandatory nature.

*Commentary on section 264:*
*When determining rights and duties arising from a relationship of obligation (mostly from a contract), business practices (i.e. trade usage) are taken into consideration, unless such business practices contradict statutory provisions.*

### Section 265

The exercise of a right which is contrary to the principles of fair business dealings (practices) is not granted legal protection.

*Commentary on section 265:*
*The provision of section 265 is mandatory.*

# Division II
# Some Provisions on Acts-in-Law

### Section 266

(1) A manifestation of will is interpreted according to the intent of the acting party if this intent was known or must have been known to the party to which the manifestation of will was directed.

(2) In cases where a manifestation of will cannot be interpreted pursuant to subsection (1), it is interpreted according to the meaning usually attributed to it by a person who is in the same position as the person to whom the manifestation of will is directed. Expressions (i.e. terminology) used in business contacts (i.e. dealings) are interpreted according to the meaning usual in such contacts.

(3) When interpreting a manifestation of will pursuant to subsections (1) and (2), due account shall be taken of all the circumstances related to

the manifestation of will, including the negotiations about conclusion of the contract in question and the practices which the parties have introduced between themselves, as well as the subsequent conduct of the parties, if the nature of the case so permits.

(4) A manifestation of will which contains an expression which permits different interpretations shall be interpreted, if in doubt, to the disadvantage of the party which used the expression in the dealings (negotiations) first.

(5) If under the provisions of this Part of the Code, the decisive factor is to be the seat, the place of business, the location of works or an establishment, or the home address of a contracting party, it shall be the location (address) as stated in the contract, until a change is communicated to the other party.

*Commentary on section 266:*
*The general regulation of acts-in-law (legal transactions) is included in the Civil Code (section 34 et seq). The Commercial Code regulates only those interpretations of acts-in-law which are within its scope of applicability (section 266) and the nullity of acts-in-law (sections 267 and 268).*

### Section 267

(1) Where the nullity of an act-in-law is laid down in order to protect only one of the parties, such nullity may be invoked only by the party in question. This shall not apply to contracts concluded under Part Two of this Code.

(2) The provisions of section 49 of the Civil Code shall not apply to the relationships governed by this Code.

(3) Where an otherwise void contract includes an agreement (a clause) on the choice of law or this Code (section 262), or an agreement (a clause) on resolving a dispute between contracting parties, then these agreements (clauses) are void only if the grounds of nullity apply to them as well. On the other hand, nullity of these agreements (clauses) does not mean that the contract of which they are part is void.

*Commentary on section 267:*
*Either of the parties to an act-in-law may invoke its nullity unless such nullity is to protect only a specific party and provided that the law so admits.*

### Section 268

Anyone who has caused an act-in-law to become void is to compensate the harm caused to the party to which the act-in-law was directed, unless such party was aware of the nullity of the act-in-law. Compensation for such harm is governed mutatis mutandis by the provisions on damages caused by a breach of a contractual obligation (section 373 et seq).



..... 314
..... 317
..... 318
..... 318
..... 318
..... 320
..... 322
..... 322

...... 323
...... 323
...... 323
...... 344
...... 347
...... 353
...... 357
...... 391
...... 407
...... 419
...... 423
...... 429
...... 435
...... 439
...... 441
...... 475
...... 517
...... 523
...... 524
...... 528
...... 536
...... 566
...... 579
...... 579
...... 600
...... 612
...... 616
...... 626
...... 653
...... 656
...... 677
........ 680



# OBCHODNÍ
# ZÁKONÍK

# KOMENTÁŘ

Díl I.
§ 1 – § 92e

Prof. JUDr. Jan Dědič a kol.

Knihovna UK PF


3125030396

POLYGON

ZÁŘÍ 2002

9



3.  Zákon č. 36/1967 Sb., o znalcích a tlumočnících, nepředepisuje, aby právnické osoby, zapsané do seznamu znalců, vykonávaly znaleckou činnost pomocí fyzických osob oprávněných ke znalecké činnosti; tento zákon ani jiný zákon rovněž nestanoví, že znaleckou činnost mohou vykonávat pouze fyzické osoby, tak jak to uvádí ustanovení § 30 odst. 2 ObchZ.

**SR 1/1997, s. 7:** Zaměstnance, který je společníkem s.r.o., nelze jen z důvodu jeho účasti v s.r.o. považovat za podnikatele (osobu vykonávající výdělečnou činnost formou podnikání). Činnost společníka s.r.o. spočívající jen v realizaci práv a povinností společníka, vyplývajících z jeho kapitálové účasti ve společnosti, není takovou výdělečnou činností, jakou má na mysli § 75 odst. 1 zák. práce, i když jde o společnost konkurující zaměstnavateli společníka.

**EPP 4/1997, s. 97:** Jestliže se tichý společník domáhá splnění povinností z uzavřené smlouvy o tichém společenství vůči druhé smluvní straně, pak jeho žaloba musí směřovat proti obchodní společnosti jako právnické osobě, nikoli proti společníkům jako fyzickým osobám.

**PPP 4/1998, s. 24:** K zásadám, kterými se řídí právní úprava akciových společností, patří zásada ochrany minoritních akcionářů, zásada ochrany všech akcionářů před svévolným a nekorektním chováním představenstva a včasném informování akcionářů o možnosti výkonu jejich práv atd.

**SJ 12/1998, s. 275, z odůvodnění:** Právo stát se společníky obchodních společností nebo členy družstev není zákonem omezeno ani u osob, které jsou v pracovněprávním nebo obdobném vztahu, úprava, obsažená v pracovním řádu, v pracovní smlouvě nebo v pokynu nadřízeného vedoucího pracovníka, zakazující pracovníku být společníkem (členem) obchodní společnosti (družstva), by byla neplatná, neboť by odporovala ústavně zaručenému právu vlastnit majetek. Není proto ani porušením pracovní kázně, jestliže se pracovník stal společníkem společnosti nebo členem družstva; okolnost, zda obchodní společnost (družstvo), jejíž je pracovník společníkem (členem), má shodný předmět činnosti s jeho zaměstnavatelem, zde není právně významná. O důvod k rozvázání pracovního poměru pro porušení pracovní kázně může jít jen tehdy, kdyby pracovník vykonával u takovéto společnosti (družstva), popřípadě u jiné společnosti (družstva) v rozporu s ust. § 75 zák. práce výdělečnou činnost.

**SprJ 16/1998, s. 484:** Zřízení práva odpovídajícího věcnému břemeni ve prospěch právnické osoby není důvodem pro zamítnutí návrhu na vklad do katastru nemovitostí.

**SJ 7/1999, s. 268:** Podmínka převodu do vlastnictví obce podle § 2 odst. 1 písm. c) zák. č. 172/1991 Sb., aby majetek byl ve vlastnictví ČR, není splněna, jestliže tento majetek byl ve vlastnictví akciové společnosti, byť její akcie ČR vlastnila.

**PR 6/1999, s. 329:** Z hlediska § 3 odst. 1 zákona č. 87/1991 Sb., o mimosoudních rehabilitacích, nebyla prostá komanditní společnost právnickou osobou.

### § 56a

(1) Zneužití většiny stejně jako menšiny hlasů ve společnosti je zakázáno.

### Komentář

V ustanovení 56a odst. 1 ObchZ je pro účely práva obchodních společností konkretizován obecný princip zákazu zneužití práva vyplývající z § 3 odst. 1 ObčZ. Zde se stanoví, že výkon práv a povinností z občanskoprávních vztahů nesmí bez právního důvodu zasahovat do práv a právem chráněných zájmů jiných a nesmí být v rozporu s dobrými mravy.

344

---



Výkon práv a povinností společníků obchodních společností je vždy třeba posuzovat z hlediska tohoto základního principu, na němž je postaven nejen obchodní zákoník, ale celé soukromé právo. Zneužití hlasů připadá v úvahu zejména při rozhodování společníků, ať již na valné hromadě nebo mimo ni, jestliže zákon výkon hlasovacích práv mimo valnou hromadu dovoluje. O zneužití hlasovacího práva půjde v případě, kdy se bez právního důvodu vždy výkonem hlasovacího práva zasahuje do práv a právem chráněných zájmů jiných osob (společnosti nebo jiných společníků). Zneužít hlasů však mohou i členové statutárního orgánu či dozorčí rady, neboť z ustanovení § 56a odst. 1 ObchZ nelze dovodit, že se vztahuje pouze na hlasovací práva společníků.

Z pojmu „zneužití" plyne, že nemůže jít pouze o faktický stav, ale jde o úmyslný zásah do práv a právem chráněných zájmů jiných osob výkonem hlasovacího práva. Může jít např. o prosazení jednostranně výhodné změny stanov nebo společenské smlouvy. O zneužití většiny hlasů by však nemělo jít tam, kdy rozhodnutí je výhodné pro společnost a na jeho realizaci se může podílet každý společník, i když ve svých důsledcích může omezit postavení určitého společníka, protože nemá ekonomickou možnost se na realizaci takového rozhodnutí podílet. Jde například o rozhodnutí valné hromady o zvýšení základního kapitálu, jež může znamenat omezení pro určité společníky, kteří nemají prostředky na zvýšení vkladu nebo splacení emisního kursu nových akcií, což povede ke snížení rozsahu jejich účasti na společnosti. Mohlo by však jít o zneužití většiny hlasů, bylo-li by cílem tohoto rozhodnutí jen to, aby se omezil vliv určitého společníka, a nikoliv i potřeba společnosti zvýšit základní kapitál. Dokázat takovou skutečnost však bude problematické.

O zneužití menšiny hlasů by mohlo jít v případě, kdy menšinový společník vahou svých hlasů bude bránit přijetí určitého rozhodnutí, které je objektivně v zájmu společnosti, nebo kdy zákon dokonce učiní takové rozhodnutí společnosti ukládá (např. upravit stanovy či společenskou smlouvu nebo snížit základní kapitál či dosahovat kapitálové přiměřenosti), přičemž menšinový společník tak činí s cílem získat pro sebe určité výhody (např. zákonem uloženou změnu stanov bude podmiňovat tím, že k určitým rozhodnutím valné hromady bude zapotřebí nad rámec zákona tolik hlasů, že bez jeho souhlasu nebude možno dané rozhodnutí přijmout).

Výkon hlasovacích práv, jež má charakter jejich zneužití, je protiprávní, a proto i rozhodnutí, které bylo přijato vahou hlasů, při nichž došlo ke zneužití hlasů, může být důvodem neplatnosti příslušného rozhodnutí, resp. k těmto hlasům by se nemělo při zjišťování výsledku hlasování přihlížet, neboť takto nemohou být hlasovací práva vykonávána. Ten, kdo hlasů ve společnosti zneužil, od-

345





povídá za škodu z toho vzniklou na základě § 757 ObchZ podle ustanovení § 373 a násl. ObchZ.

Ustanovení § 56a odst. 1 ObchZ představuje jak závazné pravidlo chování, tak interpretační pravidlo pro případy, kdy v zákoně chybí výslovná úprava určitého zákazu jednání.

Zneužít však lze nejen hlasy (hlasovací práva), ale i jiná práva společníka. Klasickým případem zneužití práva je neopodstatněný návrh na prohlášení neplatnosti usnesení valné hromady. To je však již třeba posuzovat podle § 3 odst. 1 ObčZ.

\* \* \*

(2) Jakékoli jednání, jehož cílem je některého ze společníků zneužívajícím způsobem znevýhodnit, je zakázáno.

### Komentář

V § 56a odst. 2 ObchZ je obsažen zákaz jakéhokoliv jednání, jehož cílem je zneužívajícím způsobem znevýhodnit společníka. Musí jít o úmyslné jednání, jehož cílem je zásah do práv a právem chráněných zájmů jiných společníků tak, že určitý společník buďe znevýhodněn oproti jiným společníkům. I v tomto případě může jít jak o jednání ze strany jiného společníka, tak ze strany samotné společnosti či osob, které jsou jejím orgánem nebo jeho členem, ale i jakýchkoliv třetích osob.

Takovým jednáním znevýhodňujícím společníka může být jednání (smlouva), jehož cílem je skrytý převod zisku ze společnosti na určitého společníka na úkor ostatních společníků jinak než smlouvou o převodu zisku. Smlouva uzavřená s takovým cílem by byla neplatná pro rozpor se zákonem (s ustavením § 56a odst. 2 ObchZ) podle § 39 ObčZ. U akciové společnosti je taková smlouva prohlášena přímo zákonem za neplatnou (viz § 178 odst. 11 ObchZ). V rozporu s ustanovením § 56a odst. 2 ObchZ by byla jednání společnosti, která by nerespektovala princip rovného zacházení se všemi společníky, jež je u akciové společnosti výslovně zakotven v § 155 odst. 7 ObchZ. Zneužívajícím znevýhodněním akcionáře třetí osobou by mohla být situace, kdy třetí osoba kupuje akcie od určitého akcionáře za určitou cenu a ve stejné době a za stejných podmínek kupuje stejné akcie od jiného akcionáře za jinou cenu.

O zneužívající jednání (popřípadě zneužití hlasů) by mohlo jít i v případě, kdy bude do společenské smlouvy prosazeno, že obchodní podíl společníka je podstatně nižší než jeho podíl na základním kapitálu, aniž by pro to byly závažné důvody. Takovým závažným důvodem může být, že společník s nižším vkla-

dem do základního kapitálu se na rozdíl od ostatních společníků i osobně podílí jako společník na podnikání společnosti, tedy je osobně činný pro společnost na základě společenské smlouvy.

Porušení zákazu uvedeného v § 56a odst. 2 ObchZ má za následek neplatnost právního úkonu a odpovědnost za škodu obdobně jako porušení ustanovení § 56a odst. 1 ObchZ.

### § 57
### Založení společnosti

(1) Nevyplývá-li z jiných ustanovení tohoto zákona něco jiného, zakládá se společnost společenskou smlouvou podepsanou všemi zakladateli. Pravost podpisu zakladatelů musí být úředně ověřena. Společenská smlouva společnosti s ručením omezeným a zakladatelská smlouva akciové společnosti musí mít formu notářského zápisu.

### Komentář

Obchodní zákoník důsledně rozlišuje mezi pojmy „založení" a „vznik" obchodní společnosti. Založení obchodní společnosti je nezbytným předpokladem jejího vzniku. Založením obchodní společnosti se rozumí konstituování vztahů mezi zakladateli obchodní společnosti jako právních vztahů směřujících ke vzniku obchodní společnosti a vztahů zakladatelů k budoucí obchodní společnosti. Z toho plyne, že právní úkony, jimiž se zakládá společnost, jsou úkony ve prospěch i k tíži třetího, který navíc v dané době neexistuje, čímž se významně odlišují od jiných právních úkonů.

Společenskou smlouvou se zakládá vždy veřejná obchodní společnost (§ 78 ObchZ), komanditní společnost (§ 94 ObchZ) a společnost s ručením omezeným, pokud má alespoň dva zakladatele (§ 110 ObchZ). K založení společnosti se vyžaduje, aby společenská smlouva byla podepsána všemi zakladateli. Zákon nestanoví, kterým okamžikem je společnost na základě společenské smlouvy založena. Z obecné úpravy právních úkonů v občanském zákoníku lze dovodit, že k založení společnosti dochází uzavřením společenské smlouvy, ledaže zakladatelé odložili ve společenské smlouvě okamžik založení společnosti na pozdější dobu nebo je založení společnosti vázáno na splnění odkládací podmínky podle § 36 ObčZ.

Výjimka ze zakládání společnosti společenskou smlouvou je upravena v § 57 odst. 3 ObchZ, kde se připouští zakládání společnosti jediným zakladatelem. Kromě toho je vyloučeno použití § 57 odst. 1 ObchZ na akciovou společnost ustanovením § 162, § 171 a § 172 ObchZ. Akciová společnost je založena buď