UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
KOTVA a.s. and SPV Co.,                             )
                                                    )
            Plaintiffs                              )        Case No. 05-10679-WGY
                                                    )
            v.                                      )
                                                    )
ANDREW WEISS and WEISS ASSET                        )
MANAGEMENT, LLC                                     )
                                                    )
            Defendants and                          )
            Counterclaimants,                       )
                                                    )
            v.                                      )
                                                    )
KOTVA a.s., SPV Co., and RICHARD HARAZIM            )
                                                    )
            Counterclaim-Defendants                 )
                                                    )
_____)


## DECLARATION OF EDWARD T. DANGEL, III CONCERNING EXHIBIT FS

1. My name is Edward T. Dangel, III. I have been a member of the bar of the Supreme

    Judicial Court of the Commonwealth of Massachusetts since November 14, 1967. I

    practice law at Dangel & Mattchen, LLP, 10 Derne Street, Boston. I am counsel of

    record for the defendants in the above-entitled case. Being duly sworn, under oath, I

    duly swear and affirm that what I have written below is true.

2. My affidavit concerns Exhibit FS, listed by the plaintiffs. In Court last Friday I

    represented to the Court that I had never seen this document before and further I

    doubted very much that it had been produced in discovery. After an extremely

thorough search by my law firm and defendants' predecessor law firm, McDermott, Will, and Emery, I stand by those representations.

3. At Court, as counsel started to question Richard Harazim about Exhibit FS, I noticed that the document was new to me and that it had no Bates Stamp. I immediately turned and started to look through the Plaintiffs' Exhibits Books. Because mine were not in court, I had borrowed one of the plaintiffs' copies. The plaintiffs' exhibits run in three books from A-BD, EF-FF, and FT-HX. Because there was no apparent place for FS, I whispered to defense counsel who said I should look at the end of the FF book and the beginning of the FT book. When there was no FS, I approached the bench.

4. At side bar, plaintiffs' counsel told the Court that the exhibit had been produced at the end of March, 2007, and that it had been included in the exhibit books provided to defense counsel, suggesting to me that perhaps it was located in the books they had provided to defense counsel shortly before the trial. I did not believe this to be accurate but could not be sure until I checked those books at my office. FS was not included.

5. In order to know whether or not I had ever received FS I took 5 steps which I described in an e-mail to counsel yesterday. I strongly believe that FS was never produced. The five steps I followed were:

    a.  I caused the entire database of documents produced in the case to be reviewed.
        When MWE withdrew from the case, they turned over every document

produced by either side. Georgiy Nikitin, a Ph.D. economist at Weiss Capital reviewed the database exhaustively and found nothing;

b.   I reviewed all of my files myself. I found nothing;

c.   I called Ned Leibensperger at MWE who said he had no memory of the document but that he would ask Beth Mueller, the paralegal who had been in charge of the Kotva case documents to make an exhaustive review, which she did. The results of her search are included herein as Attachments A, B, and C. As can be seen, Ms. Mueller checked the database completely. Of particular importance, she checked and sent over to me the Official Translation file which plaintiffs' counsel forwarded to MWE on March 29, 2007. The document was not among any of those. I personally checked each of the translated documents included in Ms. Mueller's transmittal to me, Attachment C. One of the documents came from J&T Bank, but it was a mortgage (or Secured Debt of some kind).  The document FS was not in the translated documents file.

d.   As Ms. Mueller notes, the document now listed as FS was not on the 3/28/07 Trial Exhibit List. This is not surprising given that its translation was undertaken—according to the document—on that date. As she further notes, the plaintiffs refer to FS as Exhibit 289 on the March Trial List, and 289 is a completely different document. After receiving her e-mails, I checked the current trial list and discovered that it refers to 289 as J&T Bank statements. A

3

copy of a typical J&T Bank Statement, is included herein. It is from Exhibit EO and it is entirely different from FS.

e.  I searched other places for clues about whether FS is or is not an entirely new document. For instance, I checked my files for the preparation of the depositions of Jaromir David and Richard Harazim, both of whom were 30(b)(6) witnesses relating to plaintiffs' damage claims. There were no references to an offer from J&T Bank. Nor did either witness mention such an offer in their depositions. To the contrary, the plaintiffs claimed a loss of 15% return on real estate investments with a company called Develplan and other "partners" of CIS, Kotva's new parent, which I thought very conjectural. As a result, I moved for summary judgment as to damages. Attachment D. Defendants' response, filed with the Court at the end of August, did not contain the document, made no mention of a proposal from J&T Bank and made no mention of any bank returns of 8.5% or the like. Attachment E.

f.  I spoke to Benjamin Goldberger, formerly of MWE and now quite recently an Assistant District Attorney in Suffolk County, about FS. He has an excellent memory, and we reviewed together his memory of the 30 (b)(6) depositions and of the Kotva files. He logged thousands of hours on the case and has no memory of ever seeing FS. After speaking with him I checked my files and exhibit books again and found nothing.

g.  I enclose one more document, marked as Exhibit IT on the Trial Exhibit List, which casts doubt on the reliability of J&T Bank.

4

h.  I can never say never, but I am as close as I can be to affirming that FS was

never produced, not listed on the Trail Exhibit List, and not included in the

Exhibit Books.

Signed and Sworn under the pains and penalties of perjury this October 28, 2007.


Respectfully submitted,

____/s/Edward T. Dangel, III____
Edward T. Dangel, III (BBO#113580)
Dangel & Mattchen, LLP
Ten Derne Street
Boston, MA 02114
617-557-4800


**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system and all attachments will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 28, 2007

___/s/ Edward T. Dangel, III_____
Edward T. Dangel, III

## Terry Dangel

**From:** Mueller, Elizabeth [EMueller@mwe.com]

**Sent:** Friday, October 26, 2007 7:39 PM

**To:** Leibensperger, Edward; Terry Dangel

Last thing, I promise. On the last page of each document contained in the previous email, there is an identical "Interpreter's Clause." Although the "Interpreter's Clause" is dated on the same day (3/28/07), you'll notice that the certification page is patently different from that of the document in question (which, in contrast, calls the certification page a "Translator's Note"). I think this is added evidence that the document in question was from a different set of translations than the ones sent to us by Beckman on 3/28/07.

Thanks,
Beth


Beth Mueller
Paralegal
McDermott, Will & Emery LLP
28 State Street
Boston, MA 02109-1775
P: (617) 535-4423
F: (617) 535-3800

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
IRS Circular 230 Disclosure: To comply with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained herein (including any attachments), unless specifically stated otherwise, is not intended or written to be used, and cannot be used, for the purposes of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter herein.

This message is a PRIVILEGED AND CONFIDENTIAL communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Please visit http://www.mwe.com/ for more information about our Firm.

10/27/2007

**Terry Dangel**

| | |
|---|---|
| **From:** | Mueller, Elizabeth [EMueller@mwe.com] |
| **Sent:** | Friday, October 26, 2007 7:32 PM |
| **To:** | Terry Dangel; Leibensperger, Edward |
| **Subject:** | FW: |
| **Attachments:** | EAS.dat |

IKONECOPY_LDAP_SMTP_03292007-040928.pdf IKONECOPY_LDAP_SMTP_03292007-035849.pdf IKONECOPY_LDAP_SMTP_03292007-035955.pdf IKONECOPY_LDAP_SMTP_03292007-040059.pdf IKONECOPY_LDAP_SMTP_03292007-040134.pdf IKONECOPY_LDAP_SMTP_03292007-040210.pdf IKONECOPY_LDAP_SMTP_03292007-040244.pdf IKONECOPY_LDAP_SMTP_03292007-040336.pdf IKONECOPY_LDAP_SMTP_03292007-040412.pdf IKONECOPY_LDAP_SMTP_03292007-040516.pdf IKONECOPY_LDAP_SMTP_03292007-040557.pdf IKONECOPY_LDAP_SMTP_03292007-040634.pdf IKONECOPY_LDAP_SMTP_03292007-040830.pdf

Beth Mueller
Paralegal
McDermott, Will & Emery LLP
28 State Street
Boston, MA 02109-1775
P: (617) 535-4423
F: (617) 535-3800

---

**From:** Mueller, Elizabeth
**Sent:** Friday, October 26, 2007 7:30 PM
**To:** Terry Dangel; Leibensperger, Edward
**Subject:** FW:

Here's the email from Linda Ginsberg in Document Production sent on 3/29/07 containing scanned copies of the official translations from Beckman.

Beth Mueller
Paralegal
McDermott, Will & Emery LLP
28 State Street
Boston, MA 02109-1775
P: (617) 535-4423
F: (617) 535-3800

---

**From:** Ginsberg, Linda
**Sent:** Thursday, March 29, 2007 4:14 PM
**To:** Mueller, Elizabeth
**Subject:**

Linda M. Ginsberg
McDermott, WIII & Emery
617-535-3946
lginsberg@mwe.com
----- Forwarded by Linda M Ginsberg/BST/MWE on 03/29/2007 04:12 PM -----
**Ginsberg; Linda M. <lginsberg@mwe.com>**

|  | 03/29/2007 03:58 PM | To |
|---|---|---|
| <lginsberg@mwe.com> | | cc |
| <lginsberg@mwe.com> | | Subject |

Scanned document from Ginsberg, Linda M.

----- Forwarded by Linda M Ginsberg/BST/MWE on 03/29/2007 04:12 PM -----
**Ginsberg; Linda M. <lginsberg@mwe.com>**

|  | 03/29/2007 03:59 PM | To |
|---|---|---|
| <lginsberg@mwe.com> | | cc |
| <lginsberg@mwe.com> | | Subject |

Scanned document from Ginsberg, Linda M.

----- Forwarded by Linda M Ginsberg/BST/MWE on 03/29/2007 04:11 PM -----
**Ginsberg; Linda M. <lginsberg@mwe.com>**

|  | 03/29/2007 04:01 PM | To |
|---|---|---|
| <lginsberg@mwe.com> | | cc |
| <lginsberg@mwe.com> | | Subject |

Scanned document from Ginsberg, Linda M.

----- Forwarded by Linda M Ginsberg/BST/MWE on 03/29/2007 04:11 PM -----

**Ginsberg; Linda M. <lginsberg@mwe.com>**

03/29/2007 04:01 PM  To

cc

<lginsberg@mwe.com>

<lginsberg@mwe.com>                                              Subject

Scanned document from Ginsberg, Linda M.

----- Forwarded by Linda M Ginsberg/BST/MWE on 03/29/2007 04:11 PM -----
**Ginsberg; Linda M. <lginsberg@mwe.com>**

03/29/2007 04:02 PM  To

cc

<lginsberg@mwe.com>

<lginsberg@mwe.com>                                              Subject

Scanned document from Ginsberg, Linda M.

----- Forwarded by Linda M Ginsberg/BST/MWE on 03/29/2007 04:11 PM -----
**Ginsberg; Linda M. <lginsberg@mwe.com>**

03/29/2007 04:02 PM  To

cc

<lginsberg@mwe.com>

<lginsberg@mwe.com>                                              Subject

Scanned document from Ginsberg, Linda M.

----- Forwarded by Linda M Ginsberg/BST/MWE on 03/29/2007 04:11 PM -----
**Ginsberg; Linda M. <lginsberg@mwe.com>**

03/29/2007 04:03 PM  To

cc

<lginsberg@mwe.com>

<lginsberg@mwe.com>

Subject

Scanned document from Ginsberg, Linda M.

<span style="color:purple">----- Forwarded by Linda M Ginsberg/BST/MWE on 03/29/2007 04:10 PM -----</span>
**Ginsberg; Linda M. <lginsberg@mwe.com>**

03/29/2007 04:04 PM  To

cc

<lginsberg@mwe.com>

<lginsberg@mwe.com>

Subject

Scanned document from Ginsberg, Linda M.

<span style="color:purple">----- Forwarded by Linda M Ginsberg/BST/MWE on 03/29/2007 04:10 PM -----</span>
**Ginsberg; Linda M. <lginsberg@mwe.com>**

03/29/2007 04:05 PM  To

cc

<lginsberg@mwe.com>

<lginsberg@mwe.com>

Subject

Scanned document from Ginsberg, Linda M.

<span style="color:purple">----- Forwarded by Linda M Ginsberg/BST/MWE on 03/29/2007 04:10 PM -----</span>
**Ginsberg; Linda M. <lginsberg@mwe.com>**

03/29/2007 04:05 PM  To

cc

<lginsberg@mwe.com>

<lginsberg@mwe.com>

Subject

Scanned document from Ginsberg, Linda M.

----- Forwarded by Linda M Ginsberg/BST/MWE on 03/29/2007 04:10 PM -----
**Ginsberg; Linda M. <lginsberg@mwe.com>**

03/29/2007 04:06 PM  To

<lginsberg@mwe.com>

cc

<lginsberg@mwe.com>

Subject

Scanned document from Ginsberg, Linda M.

----- Forwarded by Linda M Ginsberg/BST/MWE on 03/29/2007 04:10 PM -----
**Ginsberg; Linda M. <lginsberg@mwe.com>**

03/29/2007 04:08 PM  To

<lginsberg@mwe.com>

cc

<lginsberg@mwe.com>

Subject

Scanned document from Ginsberg, Linda M.

----- Forwarded by Linda M Ginsberg/BST/MWE on 03/29/2007 04:10 PM -----
**Ginsberg; Linda M. <lginsberg@mwe.com>**

03/29/2007 04:09 PM  To

<lginsberg@mwe.com>

cc

<lginsberg@mwe.com>

Subject

Scanned document from Ginsberg, Linda M.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IRS Circular 230 Disclosure:  To comply with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained herein (including any attachments), unless specifically stated otherwise, is not intended or written to be used, and cannot be used, for the purposes of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter herein.

_____

This message is a PRIVATE communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited.  Please notify the sender of the delivery error by replying to this message, and then delete it from your system.  Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Please visit http://www.mwe.com/ for more information about our Firm.

Attachments:
    IKONECOPY_LDAP_SMTP_03292007-040928.pdf (187256 Bytes)
    IKONECOPY_LDAP_SMTP_03292007-040830.pdf (300254 Bytes)
    IKONECOPY_LDAP_SMTP_03292007-040634.pdf (795578 Bytes)
    IKONECOPY_LDAP_SMTP_03292007-040557.pdf (1539048 Bytes)
    IKONECOPY_LDAP_SMTP_03292007-040516.pdf (2061932 Bytes)
    IKONECOPY_LDAP_SMTP_03292007-040412.pdf (77629 Bytes)
    IKONECOPY_LDAP_SMTP_03292007-040336.pdf (446729 Bytes)
    IKONECOPY_LDAP_SMTP_03292007-040244.pdf (140682 Bytes)
    IKONECOPY_LDAP_SMTP_03292007-040210.pdf (409902 Bytes)
    IKONECOPY_LDAP_SMTP_03292007-040134.pdf (967818 Bytes)
    IKONECOPY_LDAP_SMTP_03292007-040059.pdf (502222 Bytes)
    IKONECOPY_LDAP_SMTP_03292007-035955.pdf (97327 Bytes)
    IKONECOPY_LDAP_SMTP_03292007-035849.pdf (109755 Bytes)
    IKONECOPY_LDAP_SMTP_03292007-040928.pdf (2362 Bytes)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IRS Circular 230 Disclosure: To comply with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained herein (including any attachments), unless specifically stated otherwise, is not intended or written to be used, and cannot be used, for the purposes of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter herein.

_____

This message is a PRIVILEGED AND CONFIDENTIAL communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Please visit http://www.mwe.com/ for more information about our Firm.

**Terry Dangel**

| | |
|---|---|
| **From:** | Mueller, Elizabeth [EMueller@mwe.com] |
| **Sent:** | Friday, October 26, 2007 7:12 PM |
| **To:** | Terry Dangel |
| **Cc:** | Leibensperger, Edward |
| **Subject:** | RE: |

Terry,
I couldn't find a copy of the document on the Concordance database. I completed probably thirty or forty textual searches, using terms found in either the Czech or the English translation of the document (for example, Ivan, 200 million, 3.2%, January, 2005, Benda/Bendy, Bratislava/Bratislave, translator, etc). I also searched through the hard files that I have on site, as well as my email folders, with the same results.

Ned mentioned that opposing counsel said that they marked the document as "289" on their trial exhibit list. I only have two preliminary exhibit lists in front of me, dated 3/27/07 and 3/28/07. I believe a later draft of their exhibit list was included in the boxes that I sent Katie a couple weeks ago (containing the trial exhibits for both Kotva and Weiss from March). I would advise checking that list if you haven't already. Just to be thorough, I looked through the two exhibit lists--specifically looking at the document listed as exhibit 289, the date, and the description columns.

-- The 3/27/07 draft listed "Kotva Trades by CVF" (WP 0005075) as exhibit 289--I looked at the document bearing this bates number on Concordance and confirmed that it is not the same as the document in question. The 3/28/07 draft did NOT have an exhibit listed as 289.

-- Both the 3/27/07 and 3/28/07 drafts had one document listed for the date in question (1/11/2005), which is described as "Email Prestage to Walker" (M0082-3)--I looked at the document bearing this bates number on Concordance and confirmed that it is not the same as the document in question.

-- Neither exhibit list contains a description that would match the letter (i.e. something along the lines of "letter from Ivan Jakabovic to Martin Benda," J&T Bank, etc).

The one interesting thing I found was a letter from Beckman sent on 3/28/07 enclosing "official translations of documents that have been produced in this case that we intend to use at trial." I had those documents scanned for uploading onto the Concordance database, which I'll forward to you under separate cover. All of those documents had "translator certifications" dated on 3/28/07--which, you'll note, is the same date as that on the translator's note on the document in question. I don't think it's a stretch to infer that Kotva had a bunch of documents translated in March 2007 (including the document in question), but ultimately only sent a portion of the translations to us. I do have a file off-site called "Kotva's Official Translations" which I believe simply contained the same documents that I had scanned, but I cannot be 100% certain.

Please let me know if you have any questions or concerns.

Thanks,
Beth

Beth Mueller
Paralegal
McDermott, Will & Emery LLP
28 State Street
Boston, MA 02109-1775
P: (617) 535-4423
F: (617) 535-3800

**From:** Terry Dangel [mailto:tdangel@danmatllp.com]
**Sent:** Friday, October 26, 2007 6:00 PM
**To:** Leibensperger, Edward
**Cc:** Mueller, Elizabeth
**Subject:**

Dear Ned—Here is a pdf of the document Joel claims you guys received without a Bates Stamp relating to their claim that J& T Bank offered them and 8.5% return on interest. Thanks for searching your data base and files of documents not on your database (if any). Time is of the essence.

Terry Dangel

*******************************************************************************************************
IRS Circular 230 Disclosure: To comply with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained herein (including any attachments), unless specifically stated otherwise, is not intended or written to be used, and cannot be used, for the purposes of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter herein.
_____

This message is a PRIVILEGED AND CONFIDENTIAL communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Thank you.
*******************************************************************************************************

Please visit http://www.mwe.com/ for more information about our Firm.

**J&T**

Výpis č.:    14
Datum:      31.12.2006
Strana č.:   1
Účet:        ▉▉▉▉618▉▉▉▉▉▉
IBAN:        ▉▉▉▉▉▉▉▉▉▉▉▉618
Název:       **SPV CO. LIMITED**
Typ:         **Klientské běžné účty**

> *SPV CO. LIMITED*
>
> K-T-V finance, k.s.
>
> Revoluční 3
>
> 110 00    Praha 1

| Počáteční zůstatek | 30.11.2006 | 17 120 401,61CR |
|---|---|---|
| Obrat debet | | 3 619 124,10 |
| Obrat kredit | | 247 709 717,61 |
| **Nový zůstatek** | **31.12.2006** | **261 210 995,12CR** |

| Datum | Popis | Valuta | Debet | Kredit |
|---|---|---|---|---|
| 01.12.2006 | Vypořádání úroku BÚ - DT+CR | 01.12.2006 | | 25 308,56 |
| | Daň z úroků BÚ | 01.12.2006 | 2 530,00 | |
| 01.12.2006 | Poplatek BÚ - perioda A | | | |
| | Výpisy z účtu-periodicky 02/11/2006 - 01/12/2006 | | | |
| | vypisy z účtu - poplatek | 01.12.2006 | 20,00 | |
| 01.12.2006 | Poplatek BÚ - perioda A | | | |
| | Poplatek za vedení účtu 02/11/2006 - 01/12/2006 | | | |
| | Popl: Vedení běžného účtu | 01.12.2006 | 100,00 | |
| 04.12.2006 | Vypořádání úroku TV - DT+CR ▉▉▉890 | 04.12.2006 | | 12 149,32 |
| | Daň z úroků TV | 04.12.2006 | 1 214,00 | |
| 05.12.2006 | Enter general ledger | | | |
| | ▉▉▉▉.*335 | | | |
| | Doúčtování popl. OUR k úhradě do zahr. - ref. ▉▉▉▉100 | | | |
| | Popl: OUR | 05.12.2006 | . 726,60 | |
| 11.12.2006 | Vypořádání úroku TV - DT+CR ▉▉▉890 | 11.12.2006 | | 12 082,19 |
| | Daň z úroků TV | 11.12.2006 | 1 208,00 | |
| 14.12.2006 | Zahraniční platba klienta  ▉▉▉▉▉▉▉355 | 14.12.2006 | 14 162,00 | |
| | VASILIADES CHRISTODOULOS  15 AGIOU PAVLOU STREET,LEDRA HOU | | | |
| | ▉▉▉206/8 | | | |
| | Zahraniční platba klienta Professional Services Rendered | | | |
| | Popl: odchozí zahraniční platba | 14.12.2006 | 250,00 | |
| 18.12.2006 | Vypořádání úroku TV - DT+CR ▉▉▉890 | 18.12.2006 | | 12 082,19 |
| | Daň z úroků TV | 18.12.2006 | 1 208,00 | |
| | | | **21 418,60** | **61 622,26** |

K7980

J&T BANKA a.s • POBŘEŽNÍ 14/297, 186 00 PRAHA 8, ČESKÁ REPUBLIKA, TEL: +420 221 710 111, FAX: +420 221 710 211, SW:



VÝPIS Z ÚČTU/<br/>ACCOUNT STATEMENT

Výpis č.:   14
Datum:     31.12.2006
Strana č.:  2
Účet:      ████████618 █████████████
IBAN:      ███████████████████████618
Název:     **SPV CO. LIMITED**
Typ:       **Klientské běžné účty**

| Datum: | Popis | Valuta | Debet | Kredit |
|---|---|---|---|---|
| | | | 3 619 124,10 | 247 709 717,61 |
| 18.12.2006 | Příkaz k úhradě ████████400 | 18.12.2006 | 3 595 450,00 | |
| | ████████181 | | | |
| | Popl. odchozí lokální platba | 10.12.2006 | 10,00 | |
| 19.12.2006 | Enter general ledger | | | |
| | ████████*335 | | | |
| | Doúčtování popl. OUR k úhradě do zahr. - rel. ████████06/6 | | | |
| | Popl. OUR | 19.12.2006 | 554,00 | |
| 19.12.2006 | Enter general ledger | | | |
| | ████████*335 | | | |
| | Doúčtování popl. za NON STP - rel. ████████106/8 | | | |
| | Popl. OUR | 19.12.2006 | 138,50 | |
| 27.12.2006 | Vypořádání úroku TV - DT+CR ████████990 | 27.12.2006 | | 15 534,25 |
| | Daň z úroků TV | 27.12.2006 | 1 553,00 | |
| 28.12.2006 | Příchozí platba ████████████████████700 | 28.12.2006 | | 194 103 794,00 |
| | ████████████ | | | |
| | ████████ | | | |
| | 28/12/2006 | | | |
| 28.12.2006 | Příchozí platba ████████████████████700 | 28.12.2006 | | 53 528 767,10 |
| | ████████████ | | | |
| | 28/12/2006 | | | |

K7981

# J&T

| | |
|---|---|
| Výpis č.: | 1 |
| Datum: | 03.01.2007 |
| Strana č.: | 1 |
| Účet: | ████████890████████ |
| IBAN: | ████████████████890 |
| Název: | SPV CO. LIMITED |
| Typ: | Klientská depozita - ke splatnosti |

SPV CO. LIMITED

Agiou Pavlou, 15 LEDRA HOUSE

P.C. 1105 Nicosia

Kypr

| | | |
|---|---|---|
| Počáteční zůstatek | 27.12.2006 | 35 000 000,00CR |
| Obrat debet | | 35 000 000,00 |
| Obrat kredit | | 0,00 |
| Nový zůstatek | 03.01.2007 | 0,00CR |

| Datum: | Popis | Valuta | Debet | Kredit |
|---|---|---|---|---|
| 03.01.2007 | *Pro informaci:* Vypořádání úroku TV - DT+CR ████████618████ | | | |
| | CZK        12 082,19 CR | 03.01.2007 | *Splatné úroky CR* | |
| 03.01.2007 | CZK         1 208,00 DT   TX002 | 03.01.2007 | *Daň z úroků TV* | |
| | CZK        10 874,19 CR   Nett | | | |
| 03.01.2007 | Prolongace TV        ████████890████ | 03.01.2007 | 35 000 000,00 | |
| | SPV CO. LIMITED Agiou Pavlou, 15 LEDRA HOUSE Nicosia | | | |

K7993

proceed with the purchase of property in Provincetown, allowing it to fall to the defendant, publisher of a newspaper in town, who presented her with an unsigned, unfilled, groundless potential federal lawsuit to induce plaintiff to back away. In adopting 766A, the Court stated, "the only difference between the torts described in section 766 . . . and 766A is that, under section 766, the tortious conduct causes the third person not to perform, whereas section 766A involves interference preventing the plaintiff from performing his own part of the contract." *Id.* at 369.

The plaintiffs, no doubt, would like to argue that 766A applies to them—since it is the only section which would possibly allow it the type of claim and damages they seek here. However, they have styled the case entirely as a claim that the defendants' conduct caused *Markland*, a third party, to delay entering into the contract and then to hold back some of the funds *pendente lite*. That allegation does not support a claim under Section 766A. And damages for delay are not allowed under Section 766 or Section 766B unless the third party backs away from the transaction or proposed transaction, which did not occur here. *See Blackstone v. Cashman*, 448 Mass. 250 (2007). The case at bar is a perfect example of the Restatement's wisdom in restricting damages in the prospective relations with third party cases to instances where the parties' potential contract is broken off and the benefits are not merely delayed: any effort to calculate those damages would be hopelessly and impermissibly speculative.

2.    The Damages Sought by Plaintiffs Are Completely Pie-In-The-Sky

In this case, the plaintiffs allege the loss of many, many millions of dollars on account of the alleged delay in their receiving the full fruits of their contract. They ignore completely that they went through an arm's length negotiation with Markland in which they agreed to give Markland any returns on investment in escrowed funds and agreed to have the funds invested in

15

low yield, low risk investments. Easy for the plaintiffs to do, one supposes. They were already planning to sue the defendants for any shortfall. Ex. 3, pp. 8, 9, 11, 14-17, 19, 20, 22, 23,25, 26.

Plaintiffs admit but ignore the fact that, if there was a delay, they got the full purchase price they agreed to with Markland, and that it is in all likelihood a higher price than they could receive today. Ex. 3, pp. 112-113. They claim that the delay in closing should be assessed entirely to the defendants and that they should pay for the "use of the money", as well as for the full interest they might have obtained from the escrowed funds. This is in spite of the fact that they agreed to give Markland any interest derived from the escrow money, and agreed that the funds should be invested in low yield money market instruments. *Id.*; Ex. 3, p. 44. Their theory is that they should receive damages based on the highest yield they have obtained on any investment of the purchase price funds they received to date: 16%. But, as SPV Co's Rule 30(b)(6) deposition demonstrates, its "returns" on the non-escrowed funds provides no credible track record of high yields, since the "investments" have been made through self-dealing—that is, in companies privately owned by or strongly affiliated with Kotva's successor, CIS. Ex. 4, pp. 8, 9, 12, 19, 23, 28, 29, 30, 32, 69, 70, 71 . Of the 788 million Czech crowns received by SPV Co in the sale, there were no investments to speak of for almost a year, and then approximately two-thirds of the funds have been "lent" as part of a self-dealing plan to CIS and other affiliated companies (one of them, Deveplan was actually half-owned by CIS until May, 2006, and no longer is, though Richard Harazim is still one of three board members). Ex 4, p. 52. It is impossible to determine whether these loans provided some track record because CIS has only consolidated financials, which they have not produced. Ex. 4, p. 28. Those few internal SPV Co financials produced show only heavy losses. Ex. 4, pp. 99. Further, when purchase proceeds have been invested outside the CIS umbrella—which represents one-third of the funds—they have

been invested in the type of low yield, low risk investments that the escrowed funds have been. Ex. 4, pp. 7-8,86; Ex. 3, 106. And, Kotva initially agreed this is how the escrow funds should be invested. Ex. 3, p. 44.

It is uncontroverted that Kotva freely negotiated the terms of its escrow agreement with Markland. There are no restrictions in the agreement as to what the investments must be. Kotva may be unhappy that the returns go to Markland. It may be trying to re-negotiate that and it may be unhappy with the low yield investments, but its beef is with Markland. Ex. 3, pp. 32, That Kotva would seek to hold the Weiss Parties accountable for its poor negotiation with Markland, or the "fact" (if it is) that it was hoodwinked by Markland, is absurd. Richard Harazim, who negotiated the escrow agreement holds an American MBA and is a sophisticated businessman. Ex. 3, pp. 8-9. The Weiss Parties did not draft the escrow agreement nor force Kotva to accede to Markland's wishes as to how the escrow funds would be invested. Ex. 3, pp. 44-45. In a tortious interference case they are liable only for the actual losses they have actually caused. *See Med. Air Tech. Corp. v. Marwan Inv., Inc.*, 303 F.3d 11, 22 (1st Cir. 2002). Nor is there anything inherently wrong with choosing low yield investments. That Kotva seeks a recovery because it might have done better, without taking higher risks, is rank speculation and flies in the face of every principle of freedom of contract.

This Court and others have had occasion to disapprove of these type of pie-in-the-sky requests for damages, as the Court did recently in *dicta* in *Evans v. Akers*, 466 F. Supp. 2d 371, 378 (D. Mass. 2006), and in *Weiss v. United States*, 146 F. Supp. 2d 113, 124-129 (D. Mass. 2001). See *Cabot Corporation v. Ashland Oil, Inc.,* 597 F. Supp. 436, 438-39 (D. Mass. 1984). In similar situations where plaintiffs have sought these types of damages, the First Circuit has

been quick to deny recovery. *Hendricks & Associates, Inc. v. Daewoo Corp.,* 923. F. 2d 209, 217-220 (1st Cir. 1991); *Cordeco Dev. Corp. v. Vasquez,* 539 F.2d 256, 260-263 (1st Cir. 1976).

The plaintiffs' tortious interference claim amounts to a request that this Court create a new tort for situations where the parties succeeded in entering into a transaction and followed out its terms, but where one of the contracting parties is unhappy with some of the terms and would like to hold a third party responsible, indeed, responsible to the extent of its wildest dreams. Such a tort does not exist, the Restatement and Massachusetts law do not permit it, and this Court should not go there.

### III.    THE CHAPTER 93A CLAIM MUST BE DISMISSED BECAUSE THE CZECH SYSTEM HAS ITS OWN POLICIES FOR DEALING WITH ALLEGEDLY SHAM LAWSUITS AND BECAUSE THE DEALINGS UPON WHICH THE LAWSUITS WERE BASED WERE ENTIRELY PRIVATE TRANSACTIONS

#### A.    The Czech System Has Different Policies in Place than Massachusetts

In *Reicher v. Berkshire Life Insurance Company of America*,  360 F.3d 1 (1st Cir. 2004), the First Circuit dismissed a Chapter 93A claim *sua sponte*.  A Maryland resident sued on a disability insurance policy issued by a Massachusetts insurance company in Maryland, when the insurer refused to pay the benefits. After a protracted court battle in Maryland, the insurer paid—but not until there had been a substantial delay and large legal fees incurred by the plaintiff. The theory was that since all of the insurer's important decisions had been made in Massachusetts, the Massachusetts insurer should be held accountable under Massachusetts Chapter 93A for the legal fees. The case was dismissed in the lower court on a ground not sustained above. Although there was a case cited in passing in plaintiff's brief in which the Maryland Court of Appeals had spoken kindly about Chapter 93A, the First Circuit determined that Chapter 93A did not apply notwithstanding the fact that Maryland had no private consumer remedy to protect the insured, holding, "Because Maryland chooses to resolve insurance disputes via an administrative process

18