UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KOTVA a.s. and SPV Co., <br><br> Plaintiffs, <br><br> v. <br><br> ANDREW WEISS and WEISS ASSET MANAGEMENT, LLC <br><br> Defendants. | Case No. 05-10679-WGY |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR DIRECTED VERDICT**

**INTRODUCTION**

Defendants have filed a motion for judgment as a matter of law on all three of plaintiffs' claims. Defendants, however, have not articulated any reasons why they are entitled to judgment as a matter of law on plaintiffs' tortious interference or abuse of process claims. Defendants' silence concedes that there is ample evidence to support a plaintiffs' verdict on both claims. Accordingly, the motion should be denied with respect to plaintiffs' tortious interference and abuse of process claims.

Defendants' motion also should be denied with respect to plaintiffs' Chapter 93A claim because defendants have failed to prove that no reasonable juror could find against them. Indeed, defendants bear the burden of proving that 93A does not apply because their unfair and deceptive conduct did not occur "primarily and substantially" in Massachusetts. Not only have they failed this burden, but the evidence reveals that their unfair and deceptive conduct occurred

in Massachusetts. From their headquarters in Boston, defendants hatched a scheme to extort Kotva, struck deals with agents to execute that scheme, directed their agents every move, approved and financed blocking lawsuits, and issued blackmail demands to Kotva. Defendants further sought to divert the sale proceeds - - the payoff from their extortion - - to BGO in Boston, and pocket millions of dollars in success fees. As demonstrated below, the state of the evidence is more than sufficient to sustain a plaintiffs' verdict for violation of Chapter 93A. Accordingly, the Court should deny the motion and submit the claim to the jury for their decision.

## ARGUMENT

### I. Defendants Bear the Burden of Proof

As an affirmative defense to plaintiffs' Chapter 93A §11 claim, defendants assert that their unfair and deceptive conduct did not occur "primarily and substantially" within the Commonwealth. Defendants, however, bear the burden of proof in this defense:

> No action shall be brought or maintained under this section unless the actions and transactions constituting the unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the Commonwealth. For purposes of this paragraph, the burden of proof shall be upon the person claiming that such transactions and actions did not occur primarily and substantially within the Commonwealth.

See M.G.L. ch. 93A §11; Omni-Wave Electronics Corp. v. Marshall Indus., 17 F.R.D. 644, 649 (D. Mass. 1989) (holding defendant must prove as an affirmative defense that actions did not occur "primarily and substantially" in Massachusetts).

### II. Defendants' Offending Conduct Occurred in Massachusetts

Massachusetts applies a "center of gravity" test to determine whether the unfair and deceptive conduct occurred "primarily and substantially" in Massachusetts. Kuwaiti Danish Computer Co. v. Digital Equipment Corp., 438 Mass. 459, 473 (2003). The test is a two step

2

analysis. The <u>first</u> step is a fact intensive analysis to identify and separate the unfair and deceptive conduct (the "offending conduct") from other conduct (the "non-offending conduct"). <u>Kuwaiti Danish</u>, 438 Mass. at 471-73; <u>Kenda Corporation, Inc. v. Pot O'Gold Money Leagues, Inc.</u>, 329 F.3d 216, 234-35 (1st Cir. 2003) ("Chapter 93A permits relief only for unfair and deceptive <u>actions</u> that primarily and substantially occur within the Commonwealth of Massachusetts."). The <u>second</u> step is to determine where the offending conduct occurred. <u>Id.</u> If the offending conduct occurred in multiple jurisdictions, then courts must determine the center of gravity of that conduct. <u>Id</u>. This determination is a totality of circumstances analysis that considers the offending conduct and its overall relationship to the claim. <u>Kuwaiti Danish</u>, 438 Mass. at 472.

Defendants claim that their offending conduct was the filing of lawsuits in the Czech Republic. The mere filing of lawsuits, however, is neither tortious nor offending conduct. Rather, it is only the **improper use** of those lawsuits (<u>i.e.</u>, using them as leverage to extort some collateral advantage) that creates liability. <u>See</u> <u>Broadway Management Services Ltd. v. Cullinet Software, Inc.</u>, 652 F.Supp. 1501, 1503 (D. Mass. 1987) ("The essence of the tort of abuse of process is use of process as a threat or a club to coerce or extort some collateral advantage not properly involved in the proceeding."). Similarly, refusal to pay undisputed amounts due and owing is not, in and of itself, unfair and deceptive. But when that refusal is used as a wedge to gain leverage in a separate dispute, then it becomes unfair and deceptive. <u>Pepsi-Cola Metro Bottling Co. v. Checkers, Inc.</u>, 754 F.2d 10, 18 (1st Cir. 1985) (93A liability where defendant refused to pay undisputed amount for goods sold and delivered unless plaintiff agreed to remove certain restrictions in parties' contract).[1] That is precisely what happened in this case. Indeed,

---

[1] <u>See also</u> <u>Piccicuto v. Dwyer</u>, 32 Mass. App. Ct. 137, 138-39 (1992) (93A liability where landlord's agent demanded $50,000 of the sale price of the tenant's business as a condition to giving his consent to assign the lease);

3

defendants sought to "stop the deal" (a $65 million sales transaction) to force Kotva to buy their BGO shares, and thereby divert $12 million of the sale proceeds to BGO in Boston.[2]

### III. The Center of Gravity of Defendants' Offending Conduct is in Boston

Defendants' extortion scheme was conceived in Massachusetts and directed from Massachusetts.[3] Indeed, the evidence shows that from their headquarters in Boston, defendants: recruited their team to carry out the plan (Exhibits 11 & 35), issued all instructions (Exhibits 73, 87, 93, 102, 182), and sent all blackmail demands to Kotva, including those lying about their control of Gilroy and KT. (Exhibits 54, 61, 74, 79, 108) Mr. Weiss, moreover, specifically instructed Kotva to contact him directly, giving his Massachusetts address and telephone numbers. (Exhibit 108) And he informed Kotva that "[he] would have to approve any final agreement." (Exhibit 112). Indeed, Mr. Weiss testified that he worked out of his only office (which is in Boston) and that "from September 2003 to today any action that [he's] taken with respect to Kotva has occurred outside of the Czech Republic except for one meeting." See Transcript of the Evidence Volume 5 at 43.

It is well established that where offending conduct is part of an extortionate or fraudulent scheme, the center of gravity of that scheme is the location from which it was conceived and emanated. Kansallis Finance Ltd. v. Fern, 40 F.3d 476, 480-81 (1st Cir. 1994) (fraudulent scheme that originated in Massachusetts was primarily and substantially within Commonwealth);

---

Dunkin Donuts of Mass., Inc. v. Bell, 1999 WL 339949 *6 (Mass. Super. Jun. 21, 1996) (93A liability where commercial landlord threatened to default tenant unless it assumed utility charges that were not required under the lease); Anthony's Pier Four, Inc. v. HBC Associates., 411 Mass. 451, 455-56 (1991) (defendants "wrongful purpose was to extract a favorable settlement from [plaintiff] for less than the amount defendant knew it owed by repeatedly promising to pay, not doing so, stringing out the process, and forcing [plaintiff] to sue")

[2] Defendants have admitted that they were using unfair leverage to force Kotva to buy their shares. Indeed, they have claimed that it was necessary for them to use this leverage in order to make up for their lack of information. This is what defendants have referred to this defense as "asymmetric information" and "economics of information."

4

see also Mankino, U.S.A., Inc. v. Metlife Capital Credit Corp., 25 Mass. App. Ct. 302 (1988) ("concerted course of deceptive conduct" originating and emanating from Massachusetts toward a Chicago-based plaintiff occurred "primarily and substantially" within Massachusetts); Auto Shine Car Wash Systems, Inc. v. Nice 'N Clean Car Wash, Inc., 58 Mass. App. Ct. 685, 689 (2003) (Massachusetts defendant's scheme to fraudulently induce New Hampshire plaintiff to cancel sale of car washing system and return deposit emanated from Massachusetts and occurred "primarily and substantially" in Massachusetts);

For instance, Kansallis concerned a fraudulent scheme that was part of a loan and lease financing transactions in Maine. 40 F.3d at 476.[4] The offending conduct was a Massachusetts' partnership's sending a fraudulent opinion letter to a Finnish company. The letter contained several intentional misstatements concerning the transaction and was part of a conspiracy to defraud the plaintiff. Id. The trial court held that the fraudulent scheme originated from Massachusetts and, therefore, occurred primarily and substantially in Massachusetts. Id. at 478. The First Circuit affirmed, finding that the letter that formed the basis for the entire cause of action was executed in and came from Massachusetts, and the proceeds of the fraud were distributed in Massachusetts. Id. at 481.

In this case, defendants extortionate scheme not only originated and emanated from Boston, but it also sought to divert $12 million of the sale proceeds to BGO in Boston. From those proceeds, Weiss would then pay himself a 25% success fee. Just as the loot from the fraud

---

[4] In 1987, Kansallis, a Finnish company, loaned Armory Hotel Associates, a joint venture located in Portland, Maine, $1.3 million in connection with Amory's development of a hotel property in Portland. See Brief filed in Kansallis v. Fern, No. SJC-06732, 1994 WL 16196768, at *2-3 (Mass. 1994). One of the Armory joint venturers was controlled by Stephen Jones, an attorney in private practice in Hyannis, Massachusetts. Id. In return for the loan, Kansallis was to receive from Armory and/or its joint venturers a perfected first priority secured interest in Maine in the hotel's equipment. Id. Jones caused a letter to be sent to Kansallis' New York attorneys on letterhead of the Massachusetts law partnership of Fern, Anderson, Donahue, Jones & Sabatt, P.A. opining that, among other things, Kansallis had a legal, valid and perfected first priority lien in the hotel equipment, a representation which, it was later learned, was false. Id. at *8.

in Kansallis was disbursed in Massachusetts, Weiss' payoff from the extortion scheme also would be paid in Boston.

## CONCLUSION

Defendants' have failed to prove their affirmative defense, let alone carry their burden of proving that no reasonable juror could conclude that their conduct did not occur primarily and substantially in Massachusetts. To the contrary, the evidence shows that the center of gravity of their offending conduct - - their extortion of Kotva - - occurred in Boston. As Massachusetts residents, defendants' conduct in the Commonwealth is governed by Massachusetts law. Accordingly, they cannot be heard to complain about the application of Chapter 93A in this case.

Respectfully submitted,

KOTVA A.S. and SPV CO.,

By their attorneys,

/s/ Joel G. Beckman
Joel G. Beckman (BBO# 553086)
William C. Nystrom (BBO#559656)
Dana A. Zakarian (BBO# 641058)
NYSTROM BECKMAN & PARIS LLP
10 St. James Ave., 16th Floor
Boston, Massachusetts 02116
(617) 778-9100
(617) 778-9110 (fax)

Dated: November 1, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 1st day of November, 2007.

/s/ Joel G. Beckman